**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA and
DEMETRIO VALERGA
on their own behalf and on behalf of all others similarly situated,

      Plaintiffs,

v.

THE GEO GROUP, INC.,

      Defendant.

---

**CLASS ACTION COMPLAINT FOR UNPAID WAGES AND FORCED LABOR**
_____

The Plaintiffs in this case are current and former civil immigration detainees who were incarcerated and employed by the GEO Group, Inc. (GEO), a for-profit, multinational corporation engaged in the business of incarceration. GEO owns and operates the Aurora Detention Facility, a 1,500 bed detention center located in Aurora, CO. When it built and expanded the Aurora Detention Facility, GEO promised to create of hundreds of quality jobs in Aurora. However, GEO unlawfully uses detainees to clean, maintain, and operate the facility. **GEO pays detainees $1 per day, or no wages at all, for their labor**. In 2013, The GEO Group, Inc. reported $1.52 billion in total revenues.

GEO violated Colorado's Minimum Wage Order when it paid its detained employees **one dollar ($1) per day** for their labor. Plaintiffs seek to recover, on their own behalf and on behalf of all others similarly situated, the difference between the wages they earned and the $1 per day they were paid.

In addition, GEO violated federal law prohibiting forced labor when it forced Plaintiffs and others to work, **for no pay whatsoever,** cleaning the "pods" where they were housed. GEO coerced detainees to clean pods by threatening to put those who refused to work (for no pay) in "the hole," or solitary confinement. In 2011, The United Nations Special Rapporteur on Torture called for the end of solitary confinement, citing the severe mental pain and suffering it causes.[1]

GEO's pay policies violate principles of justice, equity, and good conscience. GEO was unjustly enriched when it paid its employees $1 per day, or nothing at all, for their labor.

## STATEMENT OF THE CASE

1.      In the course of their employment by GEO, Plaintiffs and others scrubbed bathrooms, showers, toilets, and windows throughout GEO's Aurora facility. They cleaned and maintained GEO's on-site medical facility, cleaned the medical facility's toilets, floors and windows, cleaned patient rooms and medical staff offices, swept, mopped, stripped, and waxed the floors of the medical facility, did medical facility laundry, swept, mopped, stripped, and waxed floors throughout the facility, did detainee laundry, prepared and served detainee meals, assisted in preparing catered meals for law enforcement events sponsored by GEO, performed clerical work for GEO, prepared clothing for newly arriving detainees, provided barber services to detainees, ran the

---

[1] *See also,* Rick Raemisch, <u>My Night in Solitary</u>, N.Y. Times, Feb. 20, 2014.

facility's law library, cleaned the facility's intake area and solitary confinement unit, deep cleaned and prepared vacant portions of the facility for newly arriving detainees, cleaned the facility's warehouse, and maintained the exterior and landscaping of the GEO building, *inter alia*.

2.      Defendant paid Plaintiffs and all its other detainee-employees one dollar ($1) per day for their above-listed labor.

3.      Defendant thus violated Colorado's Minimum Wage Order ("MWO") because that Order requires employers like GEO to pay their employees at least the statutory minimum wage for each hour worked. 7 CCR 1103-1.

4.      As a result of Defendant's violation of the MWO, Plaintiffs seek actual damages, on their own behalf and on behalf of all Defendant's other similarly-situated employees, as well as costs of suit.

5.      GEO or its agents also randomly selected six detainees per pod each day and forced them to clean the pods. In the handbook that GEO distributed to the detainees, GEO announced a "Housing Unit Sanitation" policy informing the people held at the facility that "[e]ach and every detainee must participate in the facility's sanitation program."

6.      GEO or its agents forced Plaintiffs and other civil immigration detainees to clean the facility's pods for no pay and under threat of solitary confinement as punishment for any refusal to work.

7.      Defendant thus violated federal law prohibiting forced labor. 18 U.S.C. § 1589.

8.      As a result of Defendant's violation of the federal forced labor statute,

Plaintiffs seek actual damages, punitive damages, and mandatory restitution, on their own behalf and on behalf of all Defendant's other similarly-situated detainees, as well as attorneys fees and costs, pursuant to 18 U.S.C. §§ 1593 and 1595.

9.      Finally, GEO was unjustly enriched when it paid its employees $1 per day for their labor. GEO's pay policies violate principles of justice, equity, and good conscience.

### PARTIES, JURISDICTION, AND VENUE

10.     Plaintiff Alejandro Menocal worked at Defendant's facility from approximately June, 2014 through September, 2014.

11.     Plaintiff Marcos Brambila worked at Defendant's facility from approximately December, 2013 through October, 2014.

12.      Plaintiff Grisel Xahuentitla worked at Defendant's facility from approximately May, 2014 through September, 2014.

13.     Plaintiff Hugo Hernandez has been working at Defendant's facility since approximately December, 2013 through the present.

14.     Plaintiff Lourdes Argueta has been working at Defendant's facility since approximately May, 2014 through the present.

15.     Plaintiff Jesus Gaytan has been working at Defendant's facility since approximately April, 2014 through the present.

16.     Plaintiff Olga Alexaklina worked at Defendant's facility from approximately January, 2013 through October, 2014.

17.     Plaintiff Dagoberto Vizguerra has been working at Defendant's facility since approximately April, 2014 through the present.

18.     Plaintiff Demetrio Valerga worked at Defendant's facility from approximately

September, 2013 through July, 2014.

19.    Defendant The GEO Group, Inc. is a registered Florida corporation with a principal office street address of 624 NW 53rd Street, Suite 700, Boca Raton, FL 33487.

20.    Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, this case arising under 18 U.S.C. § 1595.

21.    Jurisdiction is conferred upon this Court by 28 U.S.C. § 1332(d), as the putative members of the alleged classes seek damages in excess of $5,000,000.00.

22.    Plaintiffs request that this Court exercise supplemental jurisdiction over their state law claims arising under the Colorado Minimum Wage Order and the Colorado common law. 28 U.S.C. § 1367.

23.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred in the District of Colorado.

## RULE 23 CLASS ALLEGATIONS AS TO THE "MINIMUM WAGE CLASS"

24.    Plaintiffs bring their Count I MWO claim, below, as a Fed. R. Civ. P. 23 class action, on their own behalf and on behalf of a class for which Plaintiffs seek certification.

25.    Plaintiffs' Count I MWO claim concerns Defendant's employment of the Plaintiffs and others similarly situated in GEO's "Detainee Voluntary Work Program". Plaintiffs' Count I MWO claim does not concern the mandatory, uncompensated work Plaintiffs and others similarly situated performed under Defendant's Housing Unit Sanitation Policy.

26.    Pending any modifications necessitated by discovery, Plaintiffs preliminarily define this Minimum Wage Class as follows:

> All civil immigration detainees who performed work for GEO at the Aurora Detention Facility in the "Detainee Voluntary Work Program" between

October 22, 2012 and the present.

27.     This action is properly brought as a class action for the following reasons:

28.     All of Defendant's employees in the "Detainee Voluntary Work Program" were uniformly paid $1/day of work and were thereby denied required minimum wages for all hours worked.

29.     The class is so numerous that joinder of all the potential class members is impracticable.  Plaintiffs do not know the exact size of the class since that information is within the control of Defendant. However, upon information and belief, Plaintiffs allege that the number of class members exceeds 300. Membership in the class is readily ascertainable from Defendant's detention and employment records.

30.     The operative questions of law and fact regarding the liability of Defendant are common to the class and predominate over any individual issues which may exist. Common questions of law and of fact include: whether Plaintiffs and the class members were entitled to the protections of the MWO, whether Plaintiffs and the class members performed compensable work, and whether Plaintiffs and the class members were paid $1 per day for their labor. The claims asserted by Plaintiffs are typical of the claims of all class members. This is an uncomplicated case of unpaid minimum wages. The claim at issue arises from a policy applicable to all members of the class. Each member of the class suffered the same violations that give rise to Plaintiffs' claims. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging identical causes of action would not serve the interests of judicial economy.

31.     The representative Plaintiffs will fairly and adequately protect the interests of

the members of the class. Because all class members were subject to the same violations of law perpetrated by Defendant, the interests of absent class members are coincident with, and not antagonistic to, those of Plaintiffs. The representative Plaintiffs will litigate the claims fully.

32.     The representative Plaintiffs are represented by counsel experienced in wage and hour class action litigation.

33.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members and would establish incompatible standards of conduct for Defendant. If Defendant's $1 per day policy was unlawful as applied to the representative Plaintiffs, it was unlawful as applied to the absent members of the putative class.

34.     Those class members who worked for Defendant for short periods of time have small claims which they are unlikely to bring individually. All members of the class have claims which are factually very similar and legally identical to Plaintiffs'. Thus, the interest of members of the class in individually controlling the prosecution or defense of separate actions is slight, while the broad remedial purpose of the MWO counsels toward vindicating the rights of those employees with small claims as part of the larger class.

35.     Plaintiffs are unaware of any members of the putative class who are interested in presenting their claims in a separate action.

36.     Plaintiffs are unaware of any pending litigation commenced by members of the class concerning the instant controversy.

37.     It is desirable to concentrate this litigation in this forum because all claims

arose in this Judicial District.

38.     This class action will not be difficult to manage due to the uniformity of claims among the class members and the susceptibility of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

39.     The contours of the class will be easily defined by reference to the detention and payroll documents Defendant created and maintained.

**COUNT I**
**Colorado Minimum Wages of Workers Act, § 8-6-101, *et seq.***
**as implemented by the Colorado Minimum Wage Order, 7 CCR 1103-1**

40.     Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-23 above as if fully set forth herein.

41.     As set forth in paragraphs 24-39, *supra*, Plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

42.     This Count concerns Defendant's employment of the Plaintiffs and others similarly situated in GEO's "Detainee Voluntary Work Program". This Count does not concern the mandatory, uncompensated work Plaintiffs and others similarly situated performed under Defendant's Housing Unit Sanitation policy.

43.     Defendant The GEO Group, Inc. was Plaintiffs' and others' "employer" as that term is defined by the MWO because it employed Plaintiffs and others in Colorado. 7 CCR 1103-1(2).

44.     The GEO Group operates a Retail and Service business or enterprise covered by the Wage Order. 7 CCR 1103-1(1)(A). GEO sells the service of incarcerating people. According to GEO, it "is the world's leading provider in the delivery

of diversified correctional, detention, and residential treatment services to government agencies around the globe." GEO generates 50% or more of its annual dollar volume of business from the sale of such services.

45.     The GEO Group operates a Health and Medical business or enterprise covered by the Wage Order. 7 CCR 1103-1(1)(D). GEO provides health services to the detainee population at the Aurora Detention Facility.

46.     The GEO Group operates a Food and Beverage business or enterprise covered by the Wage Order. 7 CCR 1103-1(1)(C). GEO prepares and offers for sale food for consumption both on and off the premises of its Aurora facility. GEO produces food at the Aurora Detention Facility for consumption by outside entities, that conduct training exercises at the Aurora Detention Facility. GEO also prepares and offers for sale food and beverages at its on-site commissary.

47.     Plaintiffs were engaged in the performance of work connected with or incidental to GEO's covered business or enterprise.

48.     Plaintiffs and others were GEO's "employees" as that term is defined by the MWO because they performed labor for the benefit of GEO in which GEO commanded when, where, and how much labor they would perform. 7 CCR 1103-1(2).

49.     GEO violated the MWO when it refused to pay Plaintiffs and others minimum wages for all hours worked. 7 CCR 1103-1(4).

50.     Plaintiffs performed numerous hours of work for GEO in GEO's "Detainee Voluntary Work Program". GEO did not compensate Plaintiffs' work at the required Colorado State Minimum Wage rates specified in the applicable, annual Wage Orders. GEO compensated Plaintiffs' work in the "Detainee Voluntary Work Program" at the rate

of $1/day.

51.     Plaintiffs and others have suffered lost wages and lost use of those wages in an amount to be determined at trial.

52.     Plaintiffs and others are entitled to recover unpaid minimum wages and costs of the suit.  C.R.S. § 8-6-118; 7 CCR 1103-1(18).

### RULE 23 CLASS ALLEGATIONS AS TO THE "FORCED LABOR CLASS"

53.     Plaintiffs bring their Count II Forced Labor claim, below, as a Fed. R. Civ. P. 23 class action, on their own behalf and on behalf of a class for which Plaintiffs seek certification.

54.     Plaintiffs' Count II Forced Labor claim concerns the mandatory, uncompensated work Plaintiffs and others similarly situated performed under Defendant's Housing Unit Sanitation policy.  Plaintiffs' Count II Forced Labor claim does not concern the work the Plaintiffs and others performed within GEO's "Voluntary Detainee Work Program".

55.     Pending any modifications necessitated by discovery, Plaintiffs preliminarily define this Forced Labor Class as follows:

> All detainees who were forced to perform uncompensated work for GEO at the Aurora Detention Facility under Defendant's Housing Unit Sanitation policy between October 22, 2004 and the present.

56.     This action is properly brought as a class action for the following reasons:

57.     All of the members of the Forced Labor Class were forced to work for GEO for no pay during their detention.

58.     The class is so numerous that joinder of all the potential class members is impracticable.  Plaintiffs do not know the exact size of the class since that information is

within the control of Defendant. However, upon information and belief, Plaintiffs allege that the number of class members exceeds 1000.  Membership in the class is readily ascertainable from Defendant's detention records.

59.    The operative questions of law and fact regarding the liability of Defendant are common to the Class and predominate over any individual issues which may exist. Common questions of law and of fact include: whether Defendant's policy of requiring Plaintiffs and the class members to clean the cells on their pods under threat of solitary confinement violated 18 U.S.C. § 1589 and whether Plaintiffs and the class members were not paid for their work cleaning cells. The claims asserted by Plaintiffs are typical of the claims of all of the Class Members. The claim at issue arises from a policy applicable to all members of the class. Each member of the class suffered the same violations that give rise to Plaintiffs' claims. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging identical causes of action would not serve the interests of judicial economy.

60.    The representative Plaintiffs will fairly and adequately protect the interests of the members of the class. Because all class members were subject to the same violations of law perpetrated by Defendant, the interests of absent class members are coincident with, and not antagonistic to, those of Plaintiffs. The representative Plaintiffs will litigate the claims fully.

61.    The representative Plaintiffs are represented by counsel experienced in class action and labor litigation.

62.    The prosecution of separate actions by individual class members would

create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for Defendant. If Defendant's forced labor policy was unlawful as applied to the representative Plaintiffs, it was unlawful as applied to the absent members of the putative class.

63.    Those class members who worked for Defendant for short periods of time have small claims which they are unlikely to bring individually. All members of the class have claims which are factually very similar and legally identical to Plaintiffs'. Thus, the interest of members of the class in individually controlling the prosecution or defense of separate actions is slight, while the remedial purpose of the Forced Labor Statute counsels toward vindicating the rights of those employees with small claims as part of the larger class.

64.    Plaintiffs are unaware of any members of the putative class who are interested in presenting their claims in a separate action.

65.    Plaintiffs are unaware of any pending litigation commenced by members of the class concerning the instant controversy.

66.    It is desirable to concentrate this litigation in this forum because all claims arose in this Judicial District.

67.    This class action will not be difficult to manage due to the uniformity of claims among the class members and the susceptibility of this case to both class litigation and the use of representative testimony and representative documentary evidence.

68.    The contours of the class will be easily defined by reference to the detention records Defendant created and maintained.

**COUNT II**
**Forced Labor**
**18 U.S.C. § 1589**

69.     Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-23 above.

70.     As set forth in paragraphs 53-68, *supra*, Plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

71.     This Count concerns the mandatory, uncompensated work Plaintiffs and others similarly situated performed under Defendant's Housing Unit Sanitation policy. This Count does not concern the work the Plaintiffs and others performed within Defendant's "Voluntary Detainee Work Program".

72.     Defendant violated the federal Forced Labor statute when it coerced Plaintiffs and others to work cleaning pods for no pay.

73.     Defendant coerced this labor through threats that those who refused to perform such uncompensated work would be subjected to discipline, up to and including solitary confinement.

74.     Defendant coerced this labor through a uniform policy subjecting detainees who refused to perform such uncompensated work to discipline, up to and including solitary confinement.

75.     Defendant saved costs associated with paying for custodial work by using the uncompensated and coerced labor of Plaintiffs and others to clean cells and living areas.

76.     Defendant provided or obtained the labor or services of Plaintiffs and others by means of physical restraint or threats of physical restraint to Plaintiffs and others.  18 U.S.C. § 1589(a)(1).

77.     Defendant provided or obtained the labor or services of Plaintiffs and others by means of serious harm or threats of serious harm to Plaintiffs and others.  18 U.S.C.§ 1589(a)(2).

78.     Defendant provided or obtained the labor or services of Plaintiffs and others by means of a scheme, plan, or pattern intended to cause the Plaintiffs and others to believe that, if they did not perform such labor or services, they would suffer serious harm or physical restraint, including solitary confinement.  18 U.S.C. § 1589 (a)(4).

79.     Plaintiffs and others similarly situated were victims of forced labor as defined by 18 U.S.C. § 1589.

80.     Defendant perpetrated the offense of forced labor against the Plaintiffs and others.  18 U.S.C. § 1595(a).

81.     Defendant knowingly benefitted financially from participation in a venture Defendant knew or should have known engaged in unlawful coercion of labor in violation of 18 U.S.C. § 1589.

82.     Plaintiffs and others have suffered damages in an amount to be determined at trial.

83.     Plaintiffs and others are entitled to recover compensatory and punitive damages.  18 U.S.C. § 1595(a).

84.     Plaintiffs and others are entitled to recover mandatory restitution in the full amount of their losses. 18 U.S.C. § 1593.

85.     Plaintiffs and others are entitled to recover their reasonable attorneys fees. 18 U.S.C. § 1595(a).

## RULE 23 CLASS ALLEGATIONS AS TO THE "UNJUST ENRICHMENT CLASS"

86.     Plaintiffs bring their Count III Unjust Enrichment claim, below, as a Fed. R. Civ. P. 23 class action, on their own behalf and on behalf of a class for which Plaintiffs seek certification.

87.     Pending any modifications necessitated by discovery, Plaintiffs preliminarily define this Unjust Enrichment Class as follows:

> All civil immigration detainees who performed work for GEO at the Aurora Detention Facility in the "Detainee Voluntary Work Program" between October 22, 2012 and the present.

88.     This action is properly brought as a class action for the following reasons:

89.     All of Defendant's employees in the "Detainee Voluntary Work Program" were uniformly paid $1/day of work and Defendant was thereby unjustly enriched.

90.     The class is so numerous that joinder of all the potential class members is impracticable.  Plaintiffs do not know the exact size of the class since that information is within the control of Defendant. However, upon information and belief, Plaintiffs allege that the number of class members exceeds 300. Membership in the class is readily ascertainable from Defendant's detention and employment records.

91.     The operative questions of law and fact regarding the liability of Defendant are common to the class and predominate over any individual issues which may exist. Common questions of law and of fact include: whether Defendants' retention of any benefit collected directly and indirectly from Plaintiffs' and others' labor violated principles of justice, equity, and good conscience, and whether Plaintiffs and the class

members were paid $1 per day for their labor. The claims asserted by Plaintiffs are typical of the claims of all class members. This is an uncomplicated case of Defendant procuring very nearly free labor from a detained workforce. The claim at issue arises from a policy applicable to all members of the class. Each member of the class suffered the same violations that give rise to Plaintiffs' claims. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging identical causes of action would not serve the interests of judicial economy.

92.     The representative Plaintiffs will fairly and adequately protect the interests of the members of the class. Because all class members were subject to the same violations of law perpetrated by Defendant, the interests of absent class members are coincident with, and not antagonistic to, those of Plaintiffs. The representative Plaintiffs will litigate the claims fully.

93.     The representative Plaintiffs are represented by counsel experienced in labor class action litigation.

94.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members and would establish incompatible standards of conduct for Defendant. If Defendant's $1 per day policy was unlawful as applied to the representative Plaintiffs, it was unlawful as applied to the absent members of the putative class.

95.     Those class members who worked for Defendant for short periods of time have small claims which they are unlikely to bring individually. All members of the class have claims which are factually very similar and legally identical to Plaintiffs'. Thus, the

interest of members of the class in individually controlling the prosecution or defense of separate actions is slight.

96.    Plaintiffs are unaware of any members of the putative class who are interested in presenting their claims in a separate action.

97.    Plaintiffs are unaware of any pending litigation commenced by members of the class concerning the instant controversy.

98.    It is desirable to concentrate this litigation in this forum because all claims arose in this Judicial District.

99.    This class action will not be difficult to manage due to the uniformity of claims among the class members and the susceptibility of labor cases to both class litigation and the use of representative testimony and representative documentary evidence.

100.    The contours of the class will be easily defined by reference to the detention and payroll documents Defendant created and maintained.

## COUNT III
## <u>Unjust Enrichment</u>
## Colorado Common Law

101.    Plaintiffs repeat and reallege each of the allegations contained in paragraphs1-23 above.

102.    As set forth in paragraphs 87-101, *supra*, Plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

103.    This Count concerns Defendant's employment of the Plaintiffs and others similarly situated in GEO's "Detainee Voluntary Work Program". This Count does not concern the mandatory, uncompensated work Plaintiffs and others similarly situated performed under Defendant's Housing Unit Sanitation policy.

104.    By paying Plaintiffs and others $1 per day for all hours worked, Defendant was unjustly enriched at the expense of and to the detriment of Plaintiffs and others.

105.    Defendant's retention of any benefit collected directly and indirectly from Plaintiffs' and others' labor violated principles of justice, equity, and good conscience. As a result, Defendant has been unjustly enriched.

106.    Plaintiffs and others are entitled to recover from Defendant all amounts that Defendant has wrongfully and improperly obtained, and Defendant should be required to disgorge to Plaintiffs and others the benefits it has unjustly obtained.

107.    Plaintiffs and others are entitled to recover exemplary damages.  C.R.S. § 13-21-102.

**WHEREFORE**, Plaintiffs pray that:

As to their Count I Claim brought under the Colorado Minimum Wages of Workers Act, as implemented by the Colorado Minimum Wage Order and described in paragraphs 40-52 above, Plaintiffs respectfully request an Order from the Court that:

    a. This Count be certified as a class action pursuant to Fed. R. Civ.P. 23;

    b. Plaintiffs be certified as class representatives of the Minimum Wage Class as defined in ¶ 26 *supra*;

    c. Undersigned counsel be appointed Rule 23 class counsel;

    d. Prompt notice of this litigation be sent to all potential Minimum Wage Class members;

    e. Plaintiffs and the Minimum Wage Class be awarded the unpaid balance of the full amount of wages due, together with the costs of this suit.  C.R.S. § 8-6-118; 7 CCR 1103-1(18).

  f. Plaintiffs and the Minimum Wage Class be awarded such other and further relief as may be necessary and appropriate.

As to their Count II Claim brought pursuant to the Forced Labor Statute 18 U.S.C. § 1589, and described in paragraphs 69-85 above, Plaintiffs respectfully request an Order from the Court that:

  a. This Count be certified as a class action pursuant to Fed. R. Civ.P. 23;

  b. Plaintiffs be certified as class representatives of the Forced Labor Class as defined  in ¶ 56 *supra*;

  c. Undersigned counsel be appointed Rule 23 class counsel;

  d. Prompt notice of this litigation be sent to all potential Forced Labor Class members;

  e. Plaintiffs and the Forced Labor Class be awarded compensatory and punitive damages; 18 U.S.C. § 1595.

  f. Plaintiffs and the Forced Labor Class be awarded mandatory restitution; 18 U.S.C. § 1593.

  g. Plaintiffs and the Forced Labor Class be awarded their reasonable attorneys fees; 18 U.S.C. § 1595.

  h. Plaintiffs and the Forced Labor Class be awarded such other and further relief as may be necessary and appropriate.

As to their Count III Claim brought pursuant Colorado common law, and described in paragraphs 102-107 above, Plaintiffs respectfully request an Order from the Court that:

  a. This Count be certified as a class action pursuant to Fed. R. Civ.P. 23;

  b. Plaintiffs be certified as class representatives of the Unjust Enrichment Class as defined in ¶ 88 *supra*;

  c. Undersigned counsel be appointed Rule 23 class counsel;

    d.  Prompt notice of this litigation be sent to all potential Unjust Enrichment Class members;

    e.  Plaintiffs and the Unjust Enrichment Class be awarded compensatory and exemplary damages.

    f.  Plaintiffs and the Class be awarded such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*S/ Brandt Milstein*
MILSTEIN LAW OFFICE
595 Canyon Boulevard
Boulder, CO 80302
303.440.8780
brandt@milsteinlawoffice.com

*S/ Andrew Turner*
BUESCHER, KELMAN & PERERA, P.C.
600 Grant St., Suite 450
Denver, CO 80203
303.333.7751
aturner@laborlawdenver.com

*S/ Alexander Hood*
TOWARDS JUSTICE
601 16th St. Suite C #207
Golden, CO 80401
720.239.2606
alex@towardsjustice.org

*S/ Hans Meyer*
Meyer Law Office, P.C.
P.O. Box 40394
Denver, CO 80204
303.831.0817
hans@themeyerlawoffice.com

*S/ R. Andrew Free**
Of Counsel
LAW OFFICE OF R. ANDREW FREE
Bank of America Plaza

414 Union St., Suite 900
Nashville, TN 37219
615.244.2202
Andrew@ImmigrantCivilRights.com

*Attorneys for Plaintiffs*

*Motion for *pro hac vice* admittance forthcoming.