**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-CV-02887-JLK-CBS

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

    Plaintiffs,

vs.

THE GEO GROUP, INC.,

    Defendant.

---

## MOTION TO DISMISS

---

Defendant THE GEO GROUP, INC., by its attorneys, Vaughan & DeMuro, moves to dismiss Plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. In support of this motion, Defendant states:

### I. BACKGROUND

Defendant, The GEO Group, Inc., is a private provider of correctional, detention, and residential treatment services to federal, state and local governments around the world. Defendant operates a private detention facility in Aurora, Colorado, known as the Aurora Detention Facility (hereinafter "the Aurora facility"). The Aurora facility is a secure detention

center that provides housing to alleged illegal aliens awaiting administrative hearings pertaining to deportation. It is privately owned by Defendant and is operated pursuant to a contract with the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("DHS/ICE").

Plaintiffs are current and former detainees in the custody of and placed into the Aurora facility by DHS/ICE. DHS/ICE permits certain detainees to volunteer in a work program through which they are allowed to earn one-dollar ($1.00) per day for performing various duties in the facility. Detainees are also required to keep their living areas clean. Plaintiffs bring this class action complaint asserting they are owed a minimum wage under Colorado law; they were subjected to forced labor under 18 U.S.C. § 1589 of the Trafficking Victims Protection Act; and that Defendant was unjustly enriched by their labor. Defendant seeks to dismiss all of Plaintiffs' claims for failure to state a claim.

## II. DISMISSAL UNDER FED.R.CIV.P. 12(b)(6)

When deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all of the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This does not mean

a complaint needs to state detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 544 U.S. at 570).  A complaint that merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 544 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (alteration omitted) (quoting Twombly, 544 U.S. at 557).

On a motion to dismiss, the court is not, however, required to accept legal conclusions.  Id.  Thus, to analyze the sufficiency of the complaint, a court should begin by identifying allegations that "are not entitled to the assumption of truth," such as legal conclusions, bare assertions, and statements that are merely conclusory. Id. at 1949-51. The court should then consider only the well-pleaded factual allegations "to determine whether they plausibly give rise to an entitlement to relief."  Id. at 1950.  Where the well-pleaded allegations do not establish facial plausibility, the complaint should be dismissed.

Defendant has attached several documents to this Motion which need not convert the Motion to one for summary judgment as stated in Fed.R.Civ.P. 12(d).  "[I]f a document is referenced in and central to a complaint, a court need not convert the motion but may consider that document on a motion to dismiss."  Martinez v. The City and County of Denver, Civil Action No. 08-cv-01503-PAB-MJW, 2010 WL 1380529, *1 (D.Colo. March 31, 2010), *citing* GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997).  Therefore, as referred to in Plaintiffs' complaint, the "Detainee Voluntary Work Program" (Doc. 1 ¶¶ 25, 28, 42, 50, 89, 103) is attached as Exhibit A; and the Housing Unit Sanitation policies (Doc. 1 ¶¶ 5, 54, 59, 71, 103) are attached as Exhibit B.

Additionally, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." Id. *quoting* Tal v. Hogan, 453 F.3d 1244, 1264 n. 24 (10th Cir.2006). Regarding judicial notice in this case, the Tenth Circuit and courts in this District have previously recognized that Defendant is a private corporation that operates the Aurora facility pursuant to a contract with DHS/ICE for the detention of persons in DHS/ICE custody who are awaiting administrative hearings concerning immigration, removal and other issues.[1] Therefore, this Court may take judicial notice that Plaintiffs were in DHS/ICE custody and housed at the Aurora facility and notice of the DHS/ICE contact that governs their detention. The pertinent portions of that contract are attached as Exhibit C.

### III. ARGUMENT AND AUTHORITY

#### A. THE COLORADO WAGE ACT AND COLORADO MINIMUM WAGE ORDER DO NOT APPLY IN THIS CASE.

Plaintiffs allege that while detained by DHS/ICE in the Aurora facility they were employees of Defendant and were paid one dollar ($1.00) per day for their voluntary work, instead of the minimum wage mandated by Colorado law. Defendant did not make the determination that DHS/ICE detainees who volunteer to work should be paid $1.00 per day. That decision was made by DHS/ICE pursuant to 8 U.S.C. § 1555(d), which states that the Immigration and Naturalization Service ("INS," now known as DHS/ICE) can

---

[1] Cohen v. Zaki, 411 F. App'x 136, 137 (10th Cir. 2011), Cohen v. Zaki, GEO-ICE, et al, 09-cv-02966-LTB-CBS, *3 (D.Colo. May 28, 2010), Haithcox v. The GEO Group, Inc., Civil No. 07-cv-00160-REB-MEH, 2008 WL 2487913, *1 (D.Colo. June 16, 2008); Andrews v. The GEO Group, Inc., Civil Case No. 06-cv-00844-REB-BNB, 2007 WL 3054967 (D.Colo. Oct. 18, 2007); Valencia v. The GEO Group, Inc., Civil Action No. 05-cv-296-LTB-PAC, 2007 WL 628067 (D.Colo. Feb. 26, 2007).

appropriate money for work performed by persons held in custody under the immigration laws. The amount of payment was set by the Department of Justice Appropriation Act, 1978, Pub.L. No. 95-86, 91 Stat. 426 (1978), at a rate not to exceed $1.00 per day. DHS/ICE included this term in the contract for services with Defendant (Exhibit C) and in the ICE Detainee Voluntary Work Program (Exhibit A).

Plaintiffs' first claim for relief is brought pursuant to the Colorado Minimum Wage of Workers statute, C.R.S. § 8-6-101, *et seq.* and Colorado Minimum Wage Order 30, 7 CCR 1103-1. Plaintiffs allege that they should have been paid the minimum wage set forth under Colorado law for their participation in the DHS/ICE voluntary work program. However, C.R.S. § 8-6-101 and the Colorado Minimum Wage Order ("CMWO") do not apply as Defendant is not an employer as that term is defined under the CMWO and Plaintiffs are not employees under state or federal law.

### 1. Defendant Is Not an Employer

Defendant is not an employer under the CMWO because the CMWO regulates wages only for employers in four industries: (1) retail and service, (2) food and beverage, (3) health and medical, and (4) commercial support service. Plaintiffs assert that Defendant falls within the first three industries. Doc. 1 ¶¶ 44, -46.

Plaintiffs assert Defendant is a retail and service industry because it "sells the service of incarcerating people." Doc. 1 ¶ 44. Retail and service industries are defined as businesses offering services for sale "to the **consuming public**." 7 CCR 1103-1(1)(A) (emphasis added). Defendant, however, does not offer services to the "consuming public" as is required by the CMWO. As stated, this Court may take judicial notice of the fact that

Defendant's services are only provided to local, state, and federal governments and agencies. Additionally, detention services, such as Defendant provides, are not included in the definition of "retail and service" industries.

The CMWO lists several industries which qualify as "retail and service," including "amusement and recreation, public accommodations, banks, credit unions, savings and loans." The fact that detention, correction, and residential treatment facilities are not included suggests that the Division of Labor rejected such facilities as part of the retail industry. See Boldozier v. Am. Family Mut. Ins. Co., 375 F.Supp.2d 1089, 1091 (D.Colo. 2005) (the fact that the wage order was promulgated without reference to the insurance industry suggests that the Division rejected inclusion of that industry). For these reasons, Defendant is not a retail/service business under the CMWO.

Defendant is also not a food and beverage industry as claimed by Plaintiff. Doc. 1 ¶ 46. The CMWO defines this type of industry as one that prepares and offers food for sale to be consumed on or off premises. 7 CCR 1103-1(1)(C). In Salazar v. Butterball, LLC, this Court addressed the examples of food and beverage industries listed in the CMWO, stating that the examples should be interpreted "as narrowing the definition provided in the Wage Order." Salazar, No. 08-CV-02071-MSK-CBS, 2009 WL 6048979, at *16 (D.Colo. Dec. 3, 2009), *report and recommendation adopted*, 2010 WL 965353, at *11 (D.Colo. Mar. 15, 2010). Upholding that decision, the Tenth Circuit held that this portion of the CMWO applies to "employers . . . that sell food directly to the **consuming public**." Salazar v. Butterball, LLC, 644 F.3d 1130, 1144 (2011) (emphasis added).

Plaintiffs' assertion that Defendant is a food and beverage industry has no support in fact or law. Defendant is a detention facility. The food that is prepared in the facility is to feed the detainees that are housed there. The food is not prepared for the purpose of selling it to anyone, certainly not the consuming public, and it is not prepared to be consumed off the facility.

Finally, contrary to Plaintiffs' assertion (Doc. 1 ¶ 45), Defendant is not a health and medical business under the CMWO. 7 CCR 1103-1(1)(D). The examples identified in the CMWO include "medical and dental offices, hospitals, home health care, hospice care, nursing homes, and mental health centers." Id. All of these examples are similar in that they provide care to the general public. As held by this Court in Salazar, the examples of "health and medical" industries should be interpreted to narrow the definition to those businesses and entities that provide health and medical care to the consuming public. Salazar, 2009 WL 6048979, at *16. Therefore, because Defendant does not provide any health or medical services to the consuming public, it is not covered by the CMWO. DHS/ICE determines who will be housed at the Aurora facility and health services are provided only to those persons pursuant to Defendant's contract with DHS/ICE.

For these reasons, Defendant is not an employer covered by the CMWO and Plaintiffs' first claim should be dismissed.

### 2. Plaintiffs Are Not Employees

Defendant also asserts that Plaintiffs are not employees under the CMWO. Pursuant to 7 CCR 1103-1, "if either of the following two situations applies to an employee, then the employee is entitled to the [ ] state minimum wage...:" (1) the employee is covered

7

by the CMWO, or (2) the employee is covered by the Fair Labor Standards Act. Plaintiffs here are covered by neither.

First, Plaintiffs do not meet the definition of "employees" because they are excluded from the Fair Labor Standards Act. ("FLSA"). In <u>Alvarado Guevara v. I.N.S.</u>, 902 F.2d 394 (5th Cir. 1990), current and former alien detainees in INS custody brought an action for violation of the minimum wage provisions of the FLSA. Precisely as Plaintiffs here, the detained aliens in <u>Alvarado</u> alleged that they were employed in grounds maintenance, cooking, laundry and other services at the rate of one dollar ($1.00) per day. In <u>Alvarado</u>, the court acknowledged that:

> [p]ursuant to 8 U.S.C. § 1555(d), which provides for payment of allowances to aliens for work performed while held in custody under the immigration laws, volunteers are compensated one dollar ($1.00) per day for their participation. The amount of payment was set by congressional act. Department of Justice Appropriation Act, 1978, Pub.L. No. 95-86, 91 Stat. 426 (1978).

<u>Id</u>. at 396 (footnote quoting 8 U.S.C. § 1555(d) omitted). The court then held that it:

> would not be within the legislative purpose of the FLSA to protect those in Plaintiffs' situation. The congressional motive for enacting the FLSA, found in the declaration of policy at 29 U.S.C. § 202(a), was to protect the "standard of living" and "general well-being" of the worker **in American industry**. [Citation omitted.] Because they are detainees removed from American industry, Plaintiffs are not within the group that Congress sought to protect in enacting the FLSA.

<u>Id</u>. (emphasis added).

Finding no other cases exactly on point, the <u>Alvarado</u> court found the INS detainee situation similar to those cases holding that prison inmates are not covered under the

FLSA. The court reasoned that inmates and detainees are similar "in that they have been incarcerated and are under the direct supervision and control of a governmental entity." Id. Again, the Alvarado court relied on prior decisions that recognized "imprisoned individuals are not covered under the FLSA because they do not fit the statutory definition of employee and because the congressional intent of the FLSA was to protect the standard of living and general well-being of the worker **in American industry**." Id. (emphasis added).

This is the holding in all circuits that have addressed the issue as to prisoners, inmates, and pretrial detainees.[2] See e.g. Franks v. Oklahoma State Industries, 7 F.3d 971, 972 (10th Cir. 1993) (dismissal pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that Congress did not intend to extend the FLSA's definition of "employee" to inmates working in prison; relationship with the Bureau of Prisons arises out of his status as an inmate, not an employee); Miller v. Dukakis, 961 F.2d 7 (1st Cir. 1992) (persons committed to treatment center for sexually dangerous persons not employees under the FLSA); Danneskjold v. Hausrath, 82 F.3d 37 (2nd Cir. 1996) (prisoners not covered by FLSA); Tourscher v. McCullough, 184 F.3d 236 (3rd Cir. 1999) (same for pretrial detainee); Harker v. State Use Industries, 990 F.2d 131 (4th Cir. 1993); Loving v. Johnson, 455 F.3d 562 (5th Cir. 2006); Vanskike v. Peters, 974 F.2d 806 (7th Cir. 1992); McMaster v. State of Minn., 30 F.3d 976 (8th Cir. 1994); Hale v. State of Ariz., 993 F.2d 1387 (9th Cir. 1993); Villarreal v. Woodham, 113 F.3d 202 (11th Cir. 1997).

---

[2] This issue does not appear to have been addressed by the Sixth Circuit.

Therefore, because Plaintiffs are not "employees" under the FLSA, the CMWO does not apply to them.

For the very same reasons, Plaintiffs are not employees as that term is used in the CMWO itself. Detainees are not whom the minimum wage laws were intended to protect. The minimum wage law was enacted in Colorado to ensure wages are adequate to "supply the necessary cost of living and to maintain the health of the workers so employed." C.R.S. § 8-6-104. In the present case, because Plaintiffs are detained in Defendant's facility, the cost of their living and health is provided for pursuant to Defendant's contract with DHS/ICE. Exhibit C. Plaintiffs do not require a living wage because they are not required to provide for their own living. Therefore, Plaintiffs do not require the protection intended by the CMWO.

Similarly, as with the FLSA, the Colorado Department of Labor ("CDOL") has excluded prisoners from the definition of employee. The CDOL issued an Advisory Bulletin and Resource Guide dated March 31, 2012, (Exhibit D) that states,

> Inmates confined to a city or county jail or any department of corrections facility as an inmate and who, as a part of such confinement, is working, performing services, or participating in a training or work release program are not employees according to Colorado law.

The same reasoning applied by the federal courts that prisoners and detainees are not employees under the FLSA should be applied here to find that Plaintiffs are not employees under the CMWO – the purpose of the minimum wage is protect the standard of living and general well-being of the worker. Plaintiffs do not need that protection as their living is provided for by DHS/ICE.

Because Plaintiffs are not employees under Colorado minimum wage law, the first claim should be dismissed.

 **B.** **THE TRAFFICKING VICTIMS PROTECTION ACT DOES NOT APPLY IN THIS CASE**.

Plaintiffs' second claim asserts that because detainees must assist in housekeeping duties (Exhibit B), Defendant has violated 18 U.S.C. § 1589.  Section 1589 was enacted "as part of the Trafficking Victims Protection Act of 2000, a subset of the Victims of Trafficking and Violence Protection Act of 2000, Pub.L. No. 106–386, 114 Stat. 1464 (2000)."  United States v. Kaufman, 546 F.3d 1242, 1261 (10th Cir. 2008).  "The stated purpose of the Trafficking Victims Protection Act is to 'combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims.' 22 U.S.C. § 7101(a)."  Id.  The Trafficking Victims Protection Act ("TVPA") was amended in 2008 to provide a civil remedy for violations.[3]  See 18 U.S.C. § 1595.

The TVPA was applied by the District of Colorado in Camayo v. John Peroulis & Sons Sheep, Inc., Civil Action Nos. 10-cv-00772-MSK-MJW, 11-cv-01132-MSK-MJW, 2012 WL 4359086 (D.Colo. Sept. 24, 2012), where the defendants operated two ranches and recruited the plaintiffs to come from Peru to work on the ranches.  The plaintiffs alleged that after they arrived, at great personal financial expense, the defendants confiscated their passports, visas, and other immigration authorization forms. The plaintiffs

---

[3] At that time, the TVPA became known as the Trafficking Victims Protection Reauthorization Act of 2008.  In 2013, the entirety of the Trafficking Victims Protection Act was passed as an amendment to the Violence Against Women Act.

further contended that the defendants required them to work 17-hour days of difficult labor, did not provide them with sufficient food, threatened to return them to Peru, and threatened to call immigration officials and the police. Based on these allegations, the court held that the plaintiffs sufficiently alleged a claim under Sec. 1589.

In contrast, Plaintiffs TVPA claim is based on six detainees being randomly selected each day to clean the housing pods in which they live. Doc. 1 ¶¶ 5, 59, 71, 72. Plaintiffs further aver they were forced to clean their housing units for no pay and under threat of solitary confinement if they refused to work.[4] Doc. 1 ¶¶6, 73. Defendant's "Housing Unit Sanitation policy" referred to in Plaintiffs' complaint is attached as Exhibit B. That policy states that all detainees are required to participate in keeping "clean and sanitary all commonly accessible areas of the housing unit including walls, floors, windows, window ledges, showers, sinks, toilets, tables, and chairs." Id. Detainees are also required to keep their personal living area clean and sanitary including his/her bunk and the immediate floor area around the bunk. Id.

Plaintiffs' second claim for relief should be dismissed because the TVPA does not prohibit, and was not intended to stop, prison wardens from requiring that prisoners, inmates, pretrial detainees, or civil detainees like Plaintiffs keep the areas in which they live clean and sanitary. In fact, Congress provided the purpose of the TVPA with great clarity by listing 24 findings including, "[t]rafficking in persons is a modern form of slavery, and it

---

[4] Defendant contests these factual allegations, but understands that under Fed.R.Civ.P. 12(b)(6), for purposes of this motion only, those allegations must be taken as true.

is the largest manifestation of slavery today;" trafficking is a growing transnational crime; "[t]raffickers primarily target women and girls;" "[t]raffickers often transport victims from their home communities to unfamiliar destinations;" and "[t]rafficking in persons is increasingly perpetrated by organized, sophisticated criminal enterprises."  In contrast, Defendant did not traffic Plaintiffs into the Aurora facility with the purpose of putting them to work. Plaintiffs are in the custody of DHS/ICE and are only in the facility pursuant to the authority of DHS/ICE.  Therefore, Plaintiffs do not have a claim under the TVPA.

Defendant did not locate any cases applying the TVPA to anyone similarly situated to Plaintiffs.  Rather, the case law is limited to criminal and civil violations related to trafficking persons for labor and/or sex.  See also U.S. v. Marcus, 628 F.3d 36 (2nd Cir. 2010), U.S. v. Calimlim, 538 F.3d 706, 710 (7th Cir. 2008), U.S. v. Toviave, 761 F.3d 623 (6th Cir. 2014), Catalan v. Vermillion Ranch Ltd. P'ship, No. 06-cv-01043-WYD-MJW, 2007 WL 38135, at *8 (D.Colo. Jan. 4, 2007); Kiwanuka v. Bakilana, 844 F.Supp.2d 107 (D.D.C. 2012); and Adhikari v. Daoud & Partners, 697 F.Supp.2d 674, 684 (S.D.Tex. 2009)

In the situation most closely analogous to Plaintiffs' allegations, courts have addressed the idea of involuntary servitude of detainees.  In Channer v. Hall, 112 F.3d 214 (5th Cir. 1997), an INS detainee alleged that he was forced to work in the kitchen of the detention facility every day or face solitary confinement in violation of the Thirteenth Amendment's prohibition against involuntary servitude.  The Fifth Circuit cited U.S. v. Kozminski, 487 U.S. 931, 952, 108 S.Ct. 2751, 2765 (1988), which held that involuntary servitude in the context of the Thirteenth Amendment and 18 U.S.C. § 1584 means being "forced to work for the defendant by the use or threat of physical restraint or physical injury,

or by the use or threat of coercion through law or the legal process." Channer, 112 F.3d at 217.

The Fifth Circuit in Channer went on to hold that a judicially-created exception to "involuntary servitude" exists for when the government requires the performance of civic duties such as jury duty. Id. at 218. The court noted that this exception has been applied by the courts to mental health patients who are required to perform a variety of work activities while hospitalized, such as fixing meals, scrubbing dishes, laundry, and cleaning the building. Id. at 219.[5] Applying that reasoning, the court held, "the federal government is entitled to require a communal contribution by an INS detainee in the form of housekeeping tasks," and that the kitchen work was not involuntary servitude. Id.[6]

The law and facts from Channer are easily applied to Plaintiffs in the present case. Logically, the definition of "involuntary servitude" used in Channer is substantially similar to the standard set forth in 18 U.S.C. § 1589, because both are part of the same chapter of the U.S. Code. Further, in both cases, it is alleged that the detainees are being forced to perform housekeeping chores under threat of solitary confinement. As such, the holding in Channer is persuasive here and any housekeeping duties performed by Plaintiffs are, as a matter of law, not involuntary servitude.

---

[5] The Channer court relied on Bayh v. Sonnenburg, 573 N.E.2d 398, 412 (Ind.1991), and Jobson v. Henne, 355 F.2d 129, 131-32 (2nd Cir.1966).

[6] Plaintiffs may assert that Channer is distinguishable because the detainee was paid for his kitchen work while Plaintiffs were not paid. However, the decision in Channer did not rely on whether detainees were paid for their work. The issue was that the work was not voluntary.

For these reasons, Plaintiffs' claim under the TVPA should be dismissed.

### C.     UNJUST ENRICHMENT

Plaintiffs' third claim asserts Defendant has been unjustly enriched by the Detainee Voluntary Work Program in violation of state common law.  Doc. 1 ¶¶ 89, 103, 104. Because unjust enrichment is an equitable theory of relief, and Plaintiffs have an adequate remedy at law, Plaintiffs are not entitled to an award of damages for unjust enrichment. Harris Grp., Inc. v. Robinson, 209 P.3d 1188, 1205 (Colo.App. 2009) (dismissing unjust enrichment claim as improper where there was adequate remedy at law, the value of the benefits unjustly received were contained in the damages awarded for another claim).  See also Touchtone Grp., LLC v. Rink, 913 F.Supp.2d 1063, 1084 (D.Colo. 2012) (dismissing unjust enrichment claim as duplicative of UFTA claims); Chytka v. Wright Tree Serv., Inc., 925 F.Supp.2d 1147, 1173 (D.Colo. 2013) (dismissing unjust enrichment claim as far as it related to "any claim of failure to pay minimum wages...under the FLSA")).

Similarly, Plaintiffs' unjust enrichment claim should be dismissed as duplicative of their first claim for relief pursuant to the CMWO.  Both claims assert Plaintiffs should have been paid more than $1.00 per day for the voluntary work that they allege they performed. See e.g. L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc., 863 F.Supp.2d 1066, 1090-91 (D.Colo. 2012) (where there was no clear distinction between the two types of claims, and no articulation of one claim that would squarely place it outside the scope of the other, claim dismissed as redundant).

For these reasons, Plaintiffs unjust enrichment claim should be dismissed.

### D.     THE STATE CLAIMS SHOULD BE DISMISSED

Finally, because the TVPA claim is the only federal claim pled in this case and should be dismissed, this Court should also exercise its discretion to dismiss the state law minimum wage claim and unjust enrichment claim.  See 28 U.S.C. § 1367(c)(3) (supplemental jurisdiction may be declined if "the district court has dismissed all claims over which it has original jurisdiction").

### IV.     CONCLUSION

For the reasons set forth above, Plaintiffs' complaint should be dismissed for failure to state a claim.

Submitted November 14, 2014.

                                VAUGHAN & DeMuro

                                */s/ Shelby A. Felton*
                                David R. DeMuro
                                Shelby A. Felton
                                3900 E. Mexico Ave., Suite 620
                                Denver, Colorado 80210
                                (303) 837-9200
                                (303) 837-9400 fax
                                Email:sfelton@vaughandemuro.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2014, I electronically filed Defendant's **MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following

Brandt Milstein
brandt@milsteinlawoffice.com

Andrew Turner
aturner@laborlawdenver.com

Alexander Hood
alex@towardsjustice.org

Hans Meyer
hans@themeyerlawoffice.com

R. Andrew Free
Andrew@ImmigrantCivilRights.com


/s/Shelby A. Felton
Shelby A. Felton
3900 E. Mexico Ave., Suite 620
Denver, Colorado 80210
(303) 837-9200
(303) 837-9400 fax
Emails:sfelton@vaughandemuro.com