## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:14-cv-02887-JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA and
DEMETRIO VALERGA
on their own behalf and on behalf of all others similarly situated,

    Plaintiffs,

v.

THE GEO GROUP, INC.,

    Defendant.

_____

### PLAINTIFFS' SUR-REPLY ON THE MOTION TO DISMISS
_____

GEO asserts for the first time in its Reply that it may avail itself of the doctrine of government contractor immunity as an affirmative defense to liability on Plaintiffs' statutory Colorado minimum wage and federal forced labor claims. Doc. 18 ("Reply") at 9-11 (asserting government contractor immunity for Plaintiffs' CMWO claims); *id.* at 28 (asserting government contractor defense for TVPA claims). But this defense to liability at common law has never been applied to immunize a government contractor from statutory legal obligations.

GEO's suggestion that it cannot be held liable for CMWO or TVPA violations also rests on a flawed premise: that the company is immune because it is doing exactly what the federal government requires that it do under the contract. *Id.* To the contrary, the federal government requires GEO to comply with state labor laws and does not require GEO to force detainees to work for no pay under threat of solitary confinement. Finally, the government contractor defense is unavailable to GEO because there is no conflict between GEO's obligations under state and federal law and its obligations under the contract.

Defendant also argues for the first time in its Reply that the McNamara-O'Hara Service Contract Act, 41 U.S.C. § 6701, *et. seq.* (the "SCA") preempts the application of Colorado's minimum wage laws to GEO's employment of detainees at the Aurora Detention Facility. Reply at 7-8. However, courts have unanimously concluded that the SCA does not preempt state wage laws, and GEO can make no argument that federal preemption is required here.

### I. The Government Contractor Defense Is Not Available to GEO.

The government contractor defense is a <u>common law</u> doctrine applied sparingly to grant government contractors immunity from <u>state common law</u> liability. *In re Joint E. & S. Dist. New York Asbestos Litig.*, 897 F.2d 626, 627 (2d Cir. 1990) ("In *Boyle*, the Supreme Court recognized a federal common law defense for military contractors which, in certain instances, displaces duties imposed pursuant to state tort law.") (internal citation omitted). Accordingly, GEO offers numerous cases applying the government contractor exemption to displace state common law causes of action. Reply at 9-10. The

defense does not grant government contractors immunity from state or federal <u>statutory</u> obligations. GEO takes the untenable position that the federal common law government contractor defense, which is meant to protect – in very proscribed instances – government contractors from suits brought via state common law causes of action, should be expanded to protect GEO from suits brought under state (here the CMWO), and even federal (here the TVPA) statutory enactments. GEO provides, and the Plaintiffs have located, no authority expanding the common law defense to immunize private contractors from state or federal statutory obligations. This is to be expected: federal government contractors like GEO are expected to comply with state and federal statutory law as a precondition to doing business with the federal government. *See, e.g.*, Reply at 6, n.4. Moreover, Defendant's attempt to apply what is, at its core, a doctrine meant to protect government contractors from state common law causes of action to the TVPA, a federal statute, simply makes no sense; it is axiomatic that federal common law (the Government Contractor Defense) cannot preempt a Federal statute (the TVPA). *See, generally, Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). As such, there is no basis to grant GEO immunity from its obligations under the CMWO or the TVPA.

      **A.    GEO's Contract With ICE Does Not Convert It Into An Exempt 'Government Agency' Under The CMWO.**

Even if it were available, the government contractor defense does not shield GEO from liability because there is no conflict between GEO's contractual obligations to ICE and its obligations under state statutory law. Government contractor "immunity" is an affirmative defense that must be promptly raised and proven by a preponderance of the

evidence. *McKay v. Rockwell Int'l Corp.*, 704 F.2d 444, 453 (9th Cir. 1983). *See also Cook v. Rockwell Int'l Corp.,* No. 90-cv-00181-JLK, 2006 U.S. Dist. LEXIS 89515 at *94, *152 (D. Colo. Dec. 7, 2006). The Supreme Court articulated the bounds of this defense in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). In *Boyle*, the Court examined whether a military contractor could be held liable under state tort law for injuries suffered as a result of its defective design. *Id.* at 502. The 5-4 majority in *Boyle* held military contractors are shielded from state products liability actions "only when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Freiberg v. Swinerton & Walberg Prop. Servs.*, 245 F. Supp. 2d 1144, 1151 (D. Colo. 2002) (Kane, J.) (quoting *Boyle*, 487 U.S. at 512)).

Under *Boyle*, a defendant's mere status as a government contractor does not automatically immunize it from state tort liability. Instead, the Court required not only that the federal contractor invoking the defense identify one or more "uniquely federal interests" that could be impeded by applying state law, but also that a "significant conflict" exist "between an identifiable 'federal policy or interest and the [operation] of state law.'" *Id.* at 507 (quoting *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68 (1966)). As the Court explained: where the contractor is able to comply with both the federal contract and state common law obligations, the government contractor defense does not apply. *Id.* at 508-09 ("The contractor could comply with both its contractual obligations and the state-prescribed duty of care. No one suggests that state law would

4

generally be pre-empted in this context.").

To determine whether the significant a conflict between state common law duties and federal interests exists such that immunity from state tort law should be granted, the Court in *Boyle* analogized the discretionary function exemption to tort liability for federal actors to the design tasks undertaken by the government contractor. 487 U.S. at 509-13. The Court thus tightly limited government contractor immunity to state common law suits implicating discretionary decisions by the private contractor. *Id.* at 512. ("The first two of these conditions assure that the suit is within the area where the policy of the 'discretionary function' would be frustrated[.]").

Applying this clearly established precedent, the government contractor defense does not immunize GEO from liability under the CMWO by converting it into a *de facto* government agency. By its terms, GEO's contract requires the company to comply with federal, state, and local labor laws and codes. Reply at 6, n. 4 (admitting a section of the contract GEO previously withheld imposes such a requirement); *cf.* DE 11, Motion to Dismiss, at 4 (asserting, incorrectly, that "the pertinent portions of the contract are attached[.]"). This express federal directive requiring compliance with state law is a far cry from GEO's bald assertion that its status as a government contractor automatically transforms the company into a government entity exempt from the Colorado Minimum Wage Order. Reply at 9-10 ("Because the CMWO would not apply to DHS/ICE, Defendant, acting pursuant to DHS/ICE directives, should not be liable either."). Neither *Boyle* nor any of the cases GEO cites supports such a sweeping application of the government contractor defense. *See* Reply at 9-10.

5

GEO advances an if-then test that treats contractors as exempt government agencies under the CMWO simply *because* they are government contractors. *Boyle* requires more. Specifically, (a) a conflict must exist between state law and federal interests, 487 U.S. at 507-08, *and* (b) a compelling federal policy justification must support displacing state common law. *Id.* at 512-13. No conflict exists here. Though the contract sets $1/day as the amount ICE will reimburse GEO for each detainee's participation in the Voluntary Work Program, neither the contract nor 8 U.S.C. § 1555(d) nor the 2011 Performance Based National Detention Standards (PBNDS) preclude GEO from paying detainees more to comply with Colorado statutory labor law. The PBNDS states that "[t]he compensation is *at least* $1.00 (USD) per day." Doc. 11-1 at 5 (emphasis added).[1] There is no conflict because $8.23/hour is *at least* $1/day. (7 CCR 1103-1(3)). The contractor can comply with both. Because "[t]he contractor could comply with both its contractual obligations and the state-prescribed" law, no authority "suggests that state law would generally be pre-empted in this context." *Boyle*, 487 U.S. at 508-09.

### B. The Government Contractor Defense Does Not Immunize GEO From Liability Under the TVPA.

The government contractor defense is simply unavailable as a defense to violations of federal statutes. It is only available where the federal government requires

---

[1] Importantly, in 2008, the PBNDS held that "the compensation **is** $1.00 per day." Pl. Ex. 1 at pg. 4, available at http://www.ice.gov/detention-standards/2008. In 2011, the PBNDS was revised to hold that "the compensation **is at least** $1.00 per day." Doc. 11-1 at 5 (emphasis added). This change gives lie to GEO's assertion that the federal government prohibits it from complying with state minimum wage laws.

contractors to perform an act that violates state law. *Peoples v. CCA Det. Centers*, 422 F.3d 1090, 1104 n. 9 (10th Cir. 2005), *opinion vacated in part on reh'g en banc*, 449 F.3d 1097 (10th Cir. 2006) ("We recognize that the Supreme Court, in dicta, suggested that the government contractor defense might apply to a ***state-law tort claim*** against a privately-operated federal prison ***when 'the government has directed the contractor to do the very thing that is the subject of the claim***.'")(quoting *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 74 n. 6, (2001).")(emphases added). Even if the government contractor defense state law analysis were somehow applicable to claims brought pursuant to the federal TVPA, in no way did ICE direct GEO to force detainees to clean the facility under the threat of solitary confinement and in violation of the TVPA. Further, GEO's suggestion that the governmental contractor defense to state law tort claims should be expanded to immunize GEO from federal statutory claims finds no support in the case creating the defense, *Boyle,* or in any other case applying the defense. The government contractor defense does not immunize GEO from liability under the TVPA.

"[O]fficial immunity comes at a great cost, and thus absolute immunity for federal officials is justified only when the contributions of immunity to effective government in particular contexts outweigh the perhaps recurring harm to individual citizens." *Freiberg*, 245 F. Supp. 2d at 1151, n.5 (D. Colo. 2002) (Kane, J.) (citations and quotation marks omitted). Plaintiffs plausibly allege that GEO, through its Housing Sanitation Policy, forces detainees to perform unpaid work that is outside the scope of the Voluntary Work Program, and extends beyond normal housekeeping duties condoned by ICE in the

PBNDS. *See* Plaintiff's Response in Opposition to GEO's Motion to Dismiss, DE 15 at 25, 29-31. Nothing in the contract, in federal law, or anywhere else indicates that ICE requires GEO to do this. Thus, no conflict exists between any uniquely federal interest and the TVPA. In the absence of such conflict, the government contractor defense does not apply. *Boyle,* 487 U.S. at 507.  GEO's forced labor policy—which includes threatening noncompliant detainees with solitary confinement—provides no contribution to effective government, but a healthy contribution to GEO's bottom line. Under these circumstances, GEO is not immune from TVPA liability as a government contractor.

**II. The Colorado Minimum Wage Law Is Not Preempted.**

Defendant argues that the McNamara-O'Hara Service Contract Act, 41 U.S.C. § 6701, *et. seq.* ("SCA") preempts the application of Colorado's minimum wage laws to the detainees that GEO employs at the Aurora Detention Facility. Doc. 18 at 7-8. Defendant cites no example of any court concluding that the SCA preempts the minimum wage laws of Colorado or of any other state. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947)(U.S. Warehouse Act); *English v. General Electric Co.*, 496 U.S. 72 (1990)(Energy Reorganization Act).

The regulation of wages is squarely within the purview of Colorado's historic police power. *Cal. Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 331 (U.S. 1997); *WSB Electric, Inc. v. Curry*, 88 F.3d 788, 791 (9th Cir. 1996) ("It is well settled that wages are a subject of traditional state concern…'"). "[W]e start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v.*

*Levine*, 555 U.S. 555, 565 (2009)(internal quotation marks omitted). This presumption "applies with particular force" where, as here, Colorado acts in "a field traditionally occupied by the States." *Altria Group v. Good,* 555 U.S. 70, 77 (2008).

The numerous courts to consider Defendant's argument have rejected it, concluding unanimously that the SCA does not preempt state and local wage laws. *Inkrote v. Prot. Strategies, Inc.*, No. 3:09-CV-51, 2009 U.S. Dist. LEXIS 101070, *20-21 (N.D. W. Va. Oct. 13, 2009)(West Virginia Minimum Wage and Hours Law); *Diaz v. General Sec. Servs. Corp.*, 93 F. Supp. 2d 129, 136 (D.P.R. 2000)(Puerto Rico's Christmas bonus and sick leave laws);[2] *Naranjo v. Spectrum Security Services, Inc.,* 172 Cal.App.4th 654, 665-670 (Cal. App. 2d Dist. 2009)(claims for "higher or additional wages" under the California Labor Code);[3] *Dept. of Labor & Indus. v. Lanier Brugh*, 147 P.3d 588, 594 (Wash. Ct. App. 2006)(Washington Minimum Wage Act); *Butler v. Fidelity Technologies Corp.*, 685 So.2d 676, 678-80 (La.App. 3rd Cir. 1996), *cert. denied,* 691 So. 2d 84 (La. 1997) *and cert. denied,* 522 U.S. 821, 118 S. Ct. 77, 139 L. Ed. 2d 36 (1997)(Louisiana wage payment statute); *see also, Kelly v. Lockheed Martin Servs. Group*, 25 F. Supp. 2d 1, 7 (D.P.R. 1998)(noting in *dicta* that "[The SCA] requires

---

[2] The Court in *Diaz v. General Sec. Services Corp.* went beyond rejecting SCA preemption of Puerto Rico wage laws, further opining in *dicta* that the SCA provides the "clear and unambiguous authorization" of state and local regulation that would permit its application even within federal enclaves. 93 F.Supp. 2d at 141 (citing *Goodyear Atomic Corp. v.* Miller, 486 U.S. 174, 180 (1988)); *But See, Manning v. Gold Belt Falcon*, 681 F. Supp. 2d 574, 577 (D.N.J. 2010). While the Aurora Detention Facility is not a federal enclave for the purposes of U.S. Const. art. I, § 8, cl 17, the application of Colorado wage laws would not be preempted even if it were. *Diaz,* 93 F.Supp. 2d at 141.

[3] Like the instant case, *Naranjo v. Spectrum Security Services,* arose in the context of an SCA contract with DHS/ICE. 172 Cal.App.4th at 660.

service contractors working for the United States to comply with local minimum wage, fringe benefit, safety and notification laws.").

Federal law preempts state law in three circumstances: where Congress expressly preempts it; where federal regulation is so pervasive and federal interest so dominant as to occupy the whole field; and where conflict between state and federal law makes compliance with both impossible or presents an obstacle to the achievement of Congressional purposes. *English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990).

Congress has not expressly preempted the application of state wage laws to workplaces governed by the SCA. Rather, the text of the SCA expressly contemplates the application of both state and federal law, as it requires "*bona fide* fringe benefits not otherwise required by Federal, State or local law to be provided by the contractor or subcontractor." 41 U.S.C. § 6703(2). "This language manifestly assumes the application of [state and] local laws benefiting workers and adds other provisions to insure that benefits and protections for contract employees reach a certain minimum." *Diaz*, 93 F.Supp. 2d at 135-36; *see also, Inkrote*, 2009 U.S. Dist. LEXIS 101070 at *21.

Whole field preemption has also been roundly rejected. "The weight of authority thus recognizes that the SCA neither expressly preempts [Plaintiff's wage] suit in state court nor reflects a congressional intent to bar his suit through 'field preemption,' that is, through a comprehensive scheme of remedies that leaves no room for such suits." *Naranjo*,  172 Cal. App. 4th at 666 (collecting cases)(internal citation omitted). "The focus of our inquiry, therefore, is narrowed to whether the SCA preempts [Plaintiff's]

action in state court because the litigation would conflict with the SCA or hinder the achievement of its goals." *Id*.

The only courts to have decided the issue have also rejected conflict and obstacle preemption, finding the SCA to be complemented rather than impeded by the application of supplemental state wage laws. *Diaz,* 93 F.Supp. 2d at 142 ("The only reasonable inference to be drawn from the SCA is that local and state laws were to provide the foundation upon which the SCA was to be built, to insure that contract employees received certain minimum benefits."); *Naranjo*, 172 Cal. App. 4th at 666; *Lanier Brugh*, 147 P.3d at 593 ("Here, the SCA's protection for employees to receive a minimum wage is served when the employees receive the protections of both state and federal laws."). Indeed, to deprive workers of otherwise available state wage law protections would be incongruous with the SCA's purpose of "ensur[ing] that federal service contract employees are treated equally with employees in that locality." *Butler v. Fidelity Techs. Corp.*, 685 So. 2d 676, 680 (La.App. 3 Cir. Dec. 26, 1996). "In sum, the federal statutes at issue provide a floor, not a ceiling, in protecting the workers." *Lanier Brugh*, 147 P.3d at 594. An employer paying any of the SCA wage rates assigned Defendant would also necessarily satisfy the requirements of Colorado minimum wage law. *Compare*, 7 CCR 1103-1(3) (currently establishing a minimum wage rate of $8.23/hr) *with* Doc. 18-2 at 2-8. Application of the Colorado's minimum wage laws would not present an obstacle to the accomplishment of the objectives of the SCA. The Colorado Minimum Wages of Workers Act and the Colorado Wage Order are not preempted.

This conclusion that state and local labor laws pertain to work occurring in the Aurora Detention Facility is consistent with the federal government's expressed understanding of that contract. Had DHS/ICE regarded Colorado wage laws as preempted, it would not have required the Defendant contractor's adherence to "[a]pplicable federal, state and local labor laws and codes". Doc. 11-2 at 16 ¶18. Defendant's federal contract further incorporates by reference 48 C.F.R. 52.222-41. Doc. 18-1 at 10. This contract provision recognizes the application of multiple minimum wage rates and disclaims the preemptive intent Defendants attribute to their contract:

> (e) Minimum Wage. In the absence of a minimum wage attachment for this contract, neither the Contractor nor any subcontractor under this contract shall pay any person performing work under this contract (regardless of whether the person is a service employee) less than the minimum wage specified by section 6(a)(1) of the Fair Labor Standards Act of 1938. *Nothing in this clause shall relieve the Contractor or any subcontractor of any other obligation under law or contract for payment of a higher wage to any employee.*

48 C.F.R. 52.222-41(e)(emphasis added). The *Naranjo* and *Lanier Brugh* Courts considered the same provision in determining that the wage laws of California and Washington were not preempted by the SCA. *Naranjo*, 172 Cal. App. 4th at 667; *Lanier Brugh*, 147 P.3d at 590. Neither the Service Contract Act nor Defendant's federal contract preempts the application of Colorado minimum wage law to this case.[4]

---

[4] Defendant contends that language in its DHS/ICE contract prohibiting the employment of non-citizens pursuant to that contract prevents the State of Colorado from protecting the Plaintiffs as "employees" subject to its minimum wage laws. Doc. 18 at 19. Defendant makes the same contention with respect to contract provisions reimbursing GEO for detainee labor at the rate of $1/day. Doc. 18 at 4-5. This contractual preemption argument is without merit. "The Supremacy Clause makes plain that the terms of a federal contract cannot by themselves preempt state law; only federal law can preempt state law. See U.S. Const. Art. VI, cl. 2." *Empire Healthchoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 156 (2d Cir. N.Y. 2005)(Raggi, J. dissenting); *Arthur D. Little, Inc. v. Commissioner of Health & Hospitals*, 395 Mass. 535, 481 N.E.2d 441, 452 (Mass.

Finally, Defendant's suggestion that the federal government exercises field preemption over all matters touching immigrant detention is unpersuasive. Doc. 18 at 7-8. First, an administrative agency lacks the power to preempt state law through informal publications like the PBNDS, [5] which were not subject to formal notice and comment procedures. *Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 245-46 (3d Cir. 2008). Second, the PBNDS lack the express and specific statement of preemption required of an administrative agency affecting preemption. *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 583 (1987); *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 717-18 (1985). For all these reasons, The Colorado Minimum Wages of Workers Act and the Colorado Wage Order are not preempted.

**Conclusion**

Based on the foregoing authority, Plaintiffs respectfully request that the Motion to Dismiss be denied.

Respectfully submitted,

*S/ Brandt Milstein*
MILSTEIN LAW OFFICE
595 Canyon Boulevard
Boulder, CO 80302
303.440.8780
brandt@milsteinlawoffice.com

---

1985) ("This court has been unable to locate authority in this or any other jurisdiction which supports the proposition that a contract to which the Federal government is a party somehow constitutes Federal law for the purposes of the supremacy clause."). Defendant's federal contract lacks the power to preempt Colorado wage law.

[5] *See,* Doc. 11-1 at 5.

13

*S/ Andrew Turner*
BUESCHER, KELMAN & PERERA, P.C.
600 Grant St., Suite 450
Denver, CO 80203
303.333.7751
aturner@laborlawdenver.com

*S/ Alexander Hood*
TOWARDS JUSTICE
601 16th St. Suite C #207
Golden, CO 80401
720.239.2606
alex@towardsjustice.org

*S/ Hans Meyer*
Meyer Law Office, P.C.
P.O. Box 40394
Denver, CO 80204
303.831.0817
hans@themeyerlawoffice.com

*S/ R. Andrew Free*
Bank of America Plaza
414 Union St., Suite 900
Nashville, TN 37219
615.244.2202
Andrew@ImmigrantCivilRights.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I filed this *Surreply* electronically through the CM/ECF system, which caused all parties entitled to service to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

*S/ Brandt Milstein*