IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 14-cv-02887-JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALEGRA,
on their own behalf and on behalf of all others similarly situated,

            Plaintiffs,

v.

THE GEO GROUP, INC.,

            Defendant.

---

## MEMORANDUM OPINION AND ORDER

**Kane, J.**

This matter comes before the Court on Defendant's Motion to Dismiss (Doc. 11). For the reasons that follow, the motion is **GRANTED** in part and **DENIED** in part.

### Background

Plaintiffs are current and former detainees at the Aurora Facility, a private, for-profit immigration detention facility owned and operated by defendant GEO Group in Aurora, Colorado under contract with the Federal government. Doc. 1 at p.1. Plaintiffs allege that detainees participate in a "Voluntary Work Program" at the facility where they perform tasks such as maintaining the on-site medical facility, doing laundry, preparing meals, and cleaning various

parts of the facility for compensation of $1 per day.   Doc. 1 ¶¶ 1, 28.  Plaintiffs also allege that

each day, six randomly selected detainees (whether they participate in the Voluntary Work

Program or not) are required to clean the facility's "pods" without compensation under threat of

solitary confinement.  Doc. 1 ¶¶ 5-6.  Plaintiffs bring three claims.  First, Plaintiffs allege that the

Voluntary Work Program violates the Colorado Minimum Wage Order ("CMWO") because

Plaintiffs are paid $1/day instead of the Colorado minimum wage.  Doc. 1 at ¶¶ 40-52.  Second,

Plaintiffs allege that forcing detainees to clean their living areas under threat of solitary

confinement violates the Trafficking Victims Protection Act's ("TVPA") prohibition on forced

labor.  Doc. 1 at ¶¶ 69-85.  Third, Plaintiffs allege that the Defendant was unjustly enriched

through the operation of the Voluntary Work Program.  Doc. 1 at ¶¶ 101-107.

Defendant has  moved to dismiss all three of Plaintiffs' claims.  First, Defendant argues

that it is not an "employer," and that the detainees are not "employees," within the meaning of the

CMWO.  Doc. 11 at 5-11.  Second, Defendant argues that the TVPA does not apply to

immigration detainees.  *Id*. at 11-15.  Finally, Defendant argues that Plaintiffs' unjust enrichment

claim should be dismissed as duplicative of their claim for violation of the CMWO.  *Id*. at 15.  In

its reply brief, Defendant also asserts that Plaintiffs' claims are barred by the government

contractor defense and are preempted by the McNamara-O'Hara Service Contract Act ("SCA").

Doc. 18 at 5-8.  Plaintiffs sought and were granted leave to file a sur-reply responding to these

additional arguments.  *See* Doc. 21.

## Analysis

### I.  Whether the Parties Are Subject to the Colorado Minimum Wage Order

#### a.  Whether Plaintiffs are Employees Under the CMWO

The CMWO defines "employee" as "any person performing labor or services for the benefit of an employer in which the employer may command when, where, and how much labor or services shall be performed." 7 Colo. Code Regs. 1103-1:2. Defendant argues that prisoners are not "employees" under the Fair Labor Standards Act ("FLSA"), and that similarly the CMWO was not intended to be extended to those working in government custody. Doc 11 at 7-11; *see Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 396 (5th Cir. 1990) (finding that immigration detainees did not qualify for protection under the FLSA because they were not "employees"). Defendants also cite a March 31, 2012 Advisory Bulletin from the Colorado Department of Labor ("CDOL"), which finds that inmates and prisoners are exempt from the CMWO and "are not employees according to Colorado law." *See* Doc. 11 Ex. D. Plaintiffs respond that the Advisory Bulletin does not apply because plaintiffs are civil immigration detainees in a private detention facility, and not prisoners in government custody. Doc. 15 at 19-22. Defendant argues that the reasoning applied in *Alvarado* to conclude that prisoners are not employees under the FLSA applies here because immigration detainees are housed by the government and do not require the minimum wage to bring up their standard of living. Doc. 18 at 19-22.

I find the Plaintiffs are not "employees" under the CMWO. Although immigration detainees appear to fall under the broad definition of "employee," so do prisoners, and the CDOL has found that the CMWO's definition of "employee" should not apply to prisoners. In addition, because immigration detainees, like prisoners, do not use their wages to provide for themselves, the purposes of the CMWO are not served by including them in the definition of employee. *See* C.R.S. § 8-6-104 (purpose of the minimum wage is to "supply the necessary cost of living and to maintain the health of the workers"). Finally, the Fifth Circuit has held that immigration detainees are not employees under the FLSA's similarly broad definition ("any individual

3

employed by an employer") because the congressional motive for enacting the FLSA, like the

CMWO, was to protect the "standard of living" and "general well-being" of the worker in

American industry.  *Alvarado*, 902 F.2d at 396.

### b.  Whether Defendant is an "employer" under the CMWO

The CMWO applies to employers and employees in four industries:  (1)  Retail and

Service; (2) Commercial Support Service; (3) Food and Beverage; and (4) Health and Medical.  7

Colo. Code Regs. 1103-1:1.  Plaintiffs allege that Defendant is a "Health and Medical" employer,

a "Food and Beverage" employer, and a "Retail and Service" employer.  Doc. 15 at 7-19.

Although it is not necessary to reach the question of whether the Defendant is an "employer"

under the CMWO because I have concluded that the Plaintiffs are not employees, each of these

definitions is analyzed below in order to have a complete record in the event of an appeal.

### i.  Health and Medical

The CMWO defines "Health and Medical" employers as:

> [A]ny business or enterprise engaged in providing medical, dental, surgical or other health
> services including but not limited to medical and dental offices, hospitals, home health
> care, hospice care, nursing homes, and mental health centers, and includes any employee
> who is engaged in the performance of work connected with or incidental to such business
> or enterprise, including office personnel.

7 Colo. Code Regs. 1103-1:2(D).  Plaintiffs allege that because of Defendant's "on-site

medical facility," which provides health services to the detainees and which is partly maintained

and operated by detainees, *see* Doc. 1 ¶¶ 1, 45, Defendant meets the definition of a "Health and

Medical" employer.  Defendant responds that this definition should be read to reach only those

businesses that provide health or medical services to the general public.  Doc. 11 at 7; *see Salazar

v. Butterball, LLC,* 644 F.3d 1130, 1144 (10th Cir. 2011) (interpreting the food and beverage

section of the CMWO to require that the food or beverage be sold "to the ultimate consumer").

4

Plaintiffs respond that the drafters knew how to include a requirement that the services be provided to the "public," as they did in the "Retail and Service" section of the same regulations, and that private, for-profit hospitals not necessarily accessible to the general public are expressly included in an opinion of the CDOL interpreting the "Health and Medical" provision.  Doc. 15 at 11-13.   Defendants reply that Plaintiff's interpretation means that any business with any on-site medical component would qualify under the CMWO, which is an absurd result, and that  the Tenth Circuit has read a requirement that "Food and Beverage" sales be to the "general public," even though that language does not appear in the section of the regulations defining "Food and Beverage" employers.  Doc. 18 at 15-19; *Salazar,* 644 F.3d at 1144.

I find that Defendant is not a "Health and Medical" employer under the CMWO.  I agree with Defendant that this section of the CMWO requires that the business at issue offer services in some capacity to the general public.  *See Salazar,* 644 F.3d at 1144.  Defendant does not provide any health or medical services to the general public, and the CDOL Advisory Bulletin 24(I) takes the position that "state and government-operated hospitals are not covered by Colorado wage law and the Wage Order."  *See* Doc. 15 at 12 n.10.  I find that the medical facility at the Aurora facility is more akin to a government operated hospital than a private business that provides health care to the general public.

## ii.  Retail and Service

The CMWO also applies to Retail and Service industry employers, defined as:

> Retail and Service: any business or enterprise that sells or offers for sale, any service, commodity, article, good, real estate, wares, or merchandise to the consuming public, and that generates 50% or more of its annual dollar volume of business from such sales. The retail and service industry offers goods or services that will not be made available for resale. It also includes amusement and recreation, public accommodations, banks, credit unions, savings and loans, and includes any employee who is engaged in the

5

performance of work connected with or incidental to such business or
enterprise, including office personnel.

7 Colo. Code Regs. 1103-1:2(A).  Defendant argues that it does not provide any services

to the "consuming public," and that it is not like the other examples of retail and service industry

employers given, which do offer services to the public.  Doc. 11 at 5-6.  Plaintiffs respond that

Defendant "sells incarceration services to governmental customers."  Doc. 15 at 14.  The

Plaintiffs also argue that the Retail and Service definition has been applied to businesses making

sales to other businesses, despite the language requiring sales "to the consuming public," and that

the government is a "public consumer."  *See Bowe v. SMC Elec. Products, Inc.*, 935 F.Supp.

1126, 1134 (D. Colo. 1996) (Kane, J.) (finding that business selling mining equipment to other

companies covered by previous version of CMWO language governing sales "to the consumer").

Defendants respond that the ordinary definitions of "consumer" and "retail" do not include their

business and that *Bowe* involved a different version of the CMWO which used the language "to

the consumer," as opposed to the current version which uses the language "to the consuming

public."  Doc. 18 at 11-13.

I find that Defendant is not a "Retail and Service" employer under the CMWO.

"Incarceration services" are completely unlike the other services given by example in the CMWO,

and I find that the meaning of "consuming public" does not include the federal government.  *See,*

*e.g.*, Doc. 18 at 12 n. 9 (citing various examples of statutory definitions of "consumer" as a

natural person).

### iii.  Food and Beverage

The Wage Order also applies to the Food and Beverage industry, defined as:

Food and Beverage: any business or enterprise that prepares and offers for
sale, food or beverages for consumption either on or off the premises. Such

> business or enterprise includes but is not limited to: restaurants, snack bars,
> drinking establishments, catering services, fast-food businesses, country
> clubs and any other business or establishment required to have a food or
> liquor license or permit, and includes any employee who is engaged in the
> performance of work connected with or incidental to such business or
> enterprise, including office personnel.

7 Colo. Code Regs. 1103-1:2(C).  Plaintiffs allege that detainees "prepared and served

detainee meals [and] assisted in preparing catered meals for law enforcement events sponsored by

[Defendant]."  Doc 1 at p.2.  Defendant argues that it is not a "Food and Beverage" employer

because under *Salazar* the examples should be read to narrow the definition to those businesses

that sell food directly to the consuming public.  Doc. 11 at 6-7.  Plaintiffs respond that Defendant

prepares and offers food for sale because the food prepared is purchased by the government and

served to detainees, and because food and beverages prepared on site are offered for sale at the

commissary and to entities conducting training at the facility.   Doc. 15 at 16-19.  In addition,

Plaintiffs argue that because Defendant's contract with ICE requires an inspection by an external

inspector, Defendant is required to have a "food license or permit" as defined in the Wage order.

*Id*. at 17.  Plaintiff also says *Salazar* turns on the distinction between direct sales and resale, and

not any requirement that food be sold to the "consuming public."  *Id*. at 18 n.14.  Defendants

reply that Plaintiff's interpretation would mean that any business with an on-site cafeteria would

be part of the food and beverage industry, an absurd result.  Doc. 18 at 13-15.

I find that Defendant is not a "Food and Beverage" employer under the CMWO.

Defendant does not sell food to the consuming public and is unlike all the other examples given in

the CMWO.  *See Salazar,* 644 F.3d at 1144.

### 2.  Whether the TVPA applies to Plaintiffs

Plaintiffs allege that by requiring detainees to clean their "pods" under threat of solitary confinement, Defendant has violated the Trafficking Victims Protection Act ("TVPA"), which provides a civil remedy against anyone who "knowingly provides or obtains the labor or services of a person by . . . means of force, threats of force, physical restraint, or threats of physical restraint." 18 U.S.C. § 1589(a); *see id*. § 1595 (providing civil remedy). Defendants argue that the TVPA is inapplicable because its purpose was to prevent human trafficking, and cases exclusively apply the TVPA to trafficking persons for labor and/or sex. Doc. 11 at 12-13.

Defendants also argue that 18 U.S.C. § 1584, which appears in the same Title as § 1589 and prohibits "knowingly and willfully hold[ing any person] to involuntary servitude," requires that Plaintiffs' TVPA claims be dismissed. In *U.S. v. Kozminski*, 487 U.S. 931 (1988), the Supreme Court held that § 1584 reaches only compulsion of services by use of physical or legal, as opposed to psychological, coercion. *Id*. at 948. In *Channer v. Hall*, 112 F.3d 214 (5th Cir. 1997), the Fifth Circuit held that an immigration detainee forced to work in the kitchen under threat of solitary confinement was not subjected to involuntary servitude in violation of the Thirteenth Amendment. *See id*. at 219 ("We hold that the federal government is entitled to require a communal contribution by an INS detainee in the form of housekeeping tasks, and that Channer's kitchen service, for which he was paid, did not violate the Thirteenth Amendment's prohibition of involuntary servitude."). Defendants argue that § 1589 should be interpreted similarly to include a "civic duty" exception, because § 1589 appears in the same chapter as § 1584 and because both sections are meant to protect persons from trafficking. Doc. 18 at 25.

Plaintiffs respond that the plain text of the TVPA reaches any type of forced labor, citing *Nunag-Tanedo v. East Baton Rouge Parish School Bd.*, 790 F.Supp.2d 1134 (C.D. Cal. 2011), which held that teaching high school math and science could qualify as forced labor under §

1589(a). *See id.* at 1144-46; *U.S. v. Kaufman*, 546 F.3d 1242, 1263 (10th Cir. 2008) (finding that the "involuntary servitude and forced labor statutes apply to coerced acts other than 'work in an economic sense'"). Plaintiffs also argue that § 1589 should not be interpreted similarly to § 1584 because Congress enacted § 1589 in order to broaden the narrow definition of coercion adopted by the Supreme Court in *Kozminski*. *See Kaufman*, 546 F.3d at 1261 ("The legislative history reveals that, in enacting § 1589, Congress sought to expand *Kozminski*'s limited definition of coercion under § 1584, stating that '[s]ection 1589 will provide federal prosecutors with the tools to combat severe forms of worker exploitation that do not rise to the level of involuntary servitude as defined in *Kozminski*.'").[1] Finally, Plaintiffs argue that the civic duty exception to the Thirteenth Amendment discussed in *Channer* should not apply to private for-profit corporations such as Defendant, although neither Plaintiffs nor Defendants have cited any authority discussing whether the exception applies to private enterprises under contract with the government.

I deny Defendant's motion to dismiss with respect to Plaintiffs' TVPA claim. Both *Kozminski* and *Channer* interpreted the term "involuntary servitude" (in § 1584 and in the Thirteenth Amendment, respectively), whereas § 1589 reaches "whoever . . . obtains the labor or services of a person by . . . threats of physical restraint." The language at issue here is thus broader than the language at issue in *Kozminski* and *Channer*, and intentionally so. *See Kaufman*, 546 F.3d at 1261. In addition, Defendants have cited no authority for reading a civic duty exception into § 1589, or for applying such an exception to a private, for-profit corporation under

---

[1] Plaintiffs also argue that the duties Plaintiffs were required to perform fall outside of the scope of personal housekeeping obligation set forth in ICE's own standards. *See* Doc. 15 at 30-31. Defendants respond that the scope of the duties set out in ICE's standards is simply irrelevant. Doc. 18 at 26-27.

contract with the government.   Thus, for purposes of surviving a motion to dismiss, Plaintiffs'

TVPA claim will be allowed to go forward.

### 3. Whether Plaintiffs' Unjust Enrichment Claim is Duplicative

Defendant argues that Plaintiffs' unjust enrichment claim should be dismissed because

Plaintiffs have an adequate remedy at law, and because it is duplicative of their claims under the

CMWO.  Doc. 11 at 15.  Plaintiffs argue that because the measure of damages for unjust

enrichment is the difference between the value of Plaintiffs' services and the amount paid, their

unjust enrichment claim is not duplicative.  Doc. 15 at 34-35.

I will not dismiss Plaintiffs' unjust enrichment claim.   Although the claim appears to be

largely based on Plaintiffs' CMWO claim and therefore Plaintiffs would have an adequate remedy

at law, the CMWO claim is dismissed and not available.  In any event, Plaintiffs are permitted to

plead in the alternative.  *See Bolsa Resources, Inc. v. AGC Resource, Inc.*, No. 11–cv–01293,

2011 WL 6370409, *4 n.5 (D.Colo. Dec. 20, 2011) (allowing unjust enrichment claim to go

forward in the alternative on motion to dismiss).

Under their CMWO claim, Plaintiffs seek the minimum wage, whereas under their unjust

enrichment claim, Plaintiffs seek the fair value of their services.  *See* Doc. 1 at ¶ 106 (asking that

defendant "disgorge . . . the benefits it has unjustly obtained"); *id*. at p. 20 (seeking

"compensatory and exemplary damages"); *id*. at ¶ 52 (seeking "unpaid minimum wages"); *id*. at

p. 18 (seeking "unpaid balance of the full amount of wages due").  To the extent Plaintiffs allege

that the fair market value of their services exceeds the minimum wage, the remedies sought by the

CMWO claim and the unjust enrichment claim are different, and the unjust enrichment claim is

not duplicative.  *See Bock v. American Growth Fund Sponsors, Inc.*, 904 P.2d 1381, 1387

(Colo.App. 1995) (proper measure of unjust enrichment is difference between consideration paid

and fair market value of employee's services); *Edwards v. ZeniMax Media Inc.*, No. 12–cv–00411, 2013 WL 5420933, \*10 (D. Colo. Sep. 27, 2013) (denying motion to dismiss unjust enrichment claim as duplicative where remedies sought were different).

### 4. Whether Plaintiffs' Claims Are Preempted by the Service Contract Act

In its reply brief, Defendant argues that the McNamara-O'Hara Service Contract Act ("SCA"), 41 U.S.C. § 6702 *et seq.*, preempts the application of the Colorado Minimum Wage Order. Doc. 18 at 7-8. The SCA applies to contracts to provide services to the United States that exceed $2,500, and requires the payment of a minimum wage and fringe benefits to government contractors. *See* 41 U.S.C. §§ 6702-6707. Defendant attaches its contract with the government and the Department of Labor wage determination under the SCA, which determines the minimum wage for all employees at Defendant's Aurora facility. *See* Doc. 18 Exs. E,F. However, there is no minimum wage for detainees as they are excluded from employment under the contract because they are not U.S. citizens. *See* Doc. 18 at 7 n.6. Defendant argues that the SCA completely occupies the field and leaves no room for application of Colorado's minimum wage law. Doc. 18 at 7-8.

Plaintiffs argue that the SCA does not expressly preempt state minimum wage laws, and in fact quite the opposite. Specifically, the SCA requires service contracts to which it applies to include a provision for fringe benefits "not otherwise required by Federal, State, or local law to be provided by the contractor or subcontractor." 41 U.S.C. § 6703(2); *see also American Waste Removal Co. v. Donovan*, 748 F.2d 1406, 1410 (10th Cir. 1984) ("The [Service Contract] Act is also intended to protect service contract competitors from unfair competition by employers paying subminimum wages."). This language "manifestly assumes the application of [state and] local laws benefitting workers, and adds other provisions to insure that benefits and protections

11

for contract employees reach a certain minimum." *Lebron Diaz v. General Sec. Services Corp.*, 93 F.Supp.2d 129, 135-36 (D.Puerto Rico 2000).    In addition, the Plaintiffs cite numerous cases rejecting the argument that the SCA preempts state and local labor laws. *See, e.g.*, *Inkrote v. Protection Strategies Inc.*, No. 3:09-CV-51, 2009 WL 3295042, *7 (N.D.W.Va. Oct. 13, 2009) (rejecting argument that SCA completely preempts state law); *Lebron Diaz*, 93 F.Supp.2d at 135-36 (similar); *Naranjo v. Spectrum Sec. Services, Inc.*, 172 Cal.App.4th 654, 663-668 (Cal.App. 2009) (finding that SCA did not preempt claims for additional wages under the California Labor Code); Doc. 21 at 9.  Because enforcing Colorado's minimum wage laws is consistent with the purpose and  the text of the SCA, I find that the SCA does not preempt Plaintiff's claim under the Colorado Minimum Wage Order.

### 4.  Whether Plaintiffs' Claims Are Barred by the Government Contractor Defense

The Defendant argues that Plaintiffs' claims are barred by the government contractor defense, because the government has directed Defendant to take the actions that form the basis of the claim, i.e., establish a volunteer detainee work program and pay detainees $1/day.  *See* Doc. 18 at 5-6.  Under *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), the government contractor defense precludes liability for state law tort claims regarding design defects where "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id*. at 512. Defendants also cite language in *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001) suggesting that the logic of *Boyle* means that state law claims are barred where  "the government has directed [the defendant] to do the very thing that is the subject of the claim." *Id*. at 74 n.6.

The government contractor defense requires a "significant conflict" between an identifiable "federal policy or interest and the [operation] of state law." *Boyle*, 487 U.S. at 507.

The parties dispute whether this conflict requirement is satisfied, i.e., whether Defendant's contract with DHS/ICE prohibits Defendant from paying detainees more than $1/day.   The contract submitted by the Defendant provides a line item for "Stipend for Detainee Work Program" and indicates that "Reimbursement for this line item will be at an actual cost of $1.00 per day per detainee.  The contractor shall not exceed the quantity shown without prior approval by the Contracting Officer."   Doc. 11-2 at p.21.   The "quantity" amount has been redacted from the version of the contract submitted by the Defendant.  *Id.*   The standards for the "Detainee Voluntary Work Program"  provide that "[d]etainees shall receive monetary compensation . . . in accordance with the facility's standard policy" and that "[t]he compensation is **at least** $1.00 (USD) per day."  Doc. 11-1 at p.5 (emphasis added).  I find that Plaintiffs are correct that the contract only defines how Defendant will be reimbursed for the Detainee Work Program and does not prohibit Defendant from paying detainees in excess of $1/day in order to comply with Colorado labor laws.   In fact, the contract specifically contemplates that the Defendant will perform under the contract in accordance with "[a]pplicable federal, state and local labor laws and codes" Doc. 11-2 at p.43; and the contract is subject to the SCA, which assumes that wages and benefits will be paid as "in accordance with prevailing rates in the locality" and as "required by Federal, State, or local law," *see* 41 U.S.C. § 6703(1) & (2).   Therefore, I find that there is no "significant conflict" between a federal interest and state law as required for the assertion of the government contactor defense.

## **Conclusion**

For the reasons given above, Plaintiffs' CMWO claims are dismissed, and Defendant's

motion is denied with respect to Plaintiffs' TVPA and unjust enrichment claims.

Dated:  July 6, 2015                                **s/ John L. Kane**
                                                      Senior U.S. District Judge