**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-CV-02887-JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

      Plaintiffs,

vs.

THE GEO GROUP, INC.,

      Defendant.

---

**MOTION FOR AN ORDER CERTIFYING AN INTERLOCUTORY APPEAL
AND MOTION TO STAY LITIGATION PENDING APPEAL**

---

Defendant THE GEO GROUP, INC. ("GEO"), by its attorneys, Vaughan & DeMuro and Norton Rose Fulbright US LLP, moves the Court, pursuant to 28 U.S.C. § 1292(b), for an order certifying an interlocutory appeal from the Court's order (Doc. 23) denying GEO's Motion to Dismiss the Plaintiffs' claims for relief under the Trafficking Victims Protection Act ("TVPA") and state law unjust enrichment claims, and denying GEO's federal contractor defense, and from the Court's order (Doc. 33) denying GEO's Motion for Reconsideration. GEO further

moves the Court to enter a stay of litigation pending a decision by the Tenth Circuit on the certified questions.

**Certification Pursuant to D.C.COLO.LCivR 7.1(a).** Defendant's counsel have conferred with the Plaintiffs' counsel regarding these motions and the Plaintiffs oppose the motions.

## INTRODUCTION AND PROPOSED CERTIFIED QUESTIONS

The case involves claims for compensation for work performed by immigration detainees—both household chores, and paid work performed pursuant to the federally authorized Detainee Voluntary Work Program ("VWP")—while the detainees were held in the custody of Immigration and Customs Enforcement ("ICE") and detained at GEO's Aurora, Colorado facility.

Plaintiffs filed their Complaint on October 22, 2014, bringing claims under (1) the Colorado Minimum Wages of Workers Act (C.R.S. § 8-6-101, et seq.), as implemented through the Colorado Minimum Wage Order (the "Minimum Wage claim"); (2) the TVPA, 18 U.S.C. §§ 1589, 1593, 1595; and (3) a state common law claim for unjust enrichment. Doc. 1 at ¶¶ 40-52, 69-85, 101-07. Plaintiffs seek to certify a separate class under Fed. R. Civ. P. 23 for each of these causes of action. Doc. 1 at ¶¶ 24-39, 53-68, 86-100.

On November 11, 2014, GEO filed a Motion to Dismiss the Complaint in its entirety. Doc. 11. On July 6, 2015, the Court granted GEO's Motion to Dismiss as to the Minimum Wage claim, but denied dismissal as to both the TVPA and

unjust enrichment claims.  Doc. 23.  Thereafter, on August 4, 2015, GEO filed a Motion for Reconsideration of the order denying the Motion to Dismiss, Doc. 29, which the Court denied on August 26, 2015.  Doc. 33.

GEO respectfully requests that the Court certify the following questions of law for interlocutory appeal to the Tenth Circuit pursuant to 28 U.S.C. § 1292(b):

1.  Whether civil detainees lawfully held in the custody of a private detention facility under the authority of the United States can state a claim for "forced labor" under the TVPA, 18 U.S.C. § 1589, for allegedly being required to perform housekeeping duties.

2.  Whether, under Colorado law, civil detainees may state a claim for unjust enrichment based on work performed pursuant to the Voluntary Work Program, absent any alleged reasonable expectation of being paid more than $1 per day.

3.  Whether a state law claim for unjust enrichment brought by civil detainees against a federal contractor is barred by the "government contractor" defense, where such claims would require that detainees receive additional compensation even though the contract expressly requires that compensation of more than $1 per day be approved by the government's contracting officer.

If the Court certifies one or more of these questions for interlocutory appeal, GEO respectfully requests that the Court enter a stay of litigation pending

appellate proceedings in the Tenth Circuit because doing so would ensure the most efficient use of the Court's and parties' time and resources.

## STANDARDS FOR CERTIFICATION

Under 28 U.S.C. § 1292(b), the Court is authorized to certify an order in a civil action for interlocutory appeal if the order (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." See 28 U.S.C. § 1292(b).

A question of law is "controlling" if it has "the potential for substantially accelerating disposition of the litigation." In re Grand Jury Proceedings June 1991, 767 F. Supp. 222, 225 (D. Colo. 1991); see also United Fire & Cas. Co. v. McCrerey & Roberts Const. Co., No. 06-CV-00037, 2007 WL 2332085, at *1 (D. Colo. Aug. 14, 2007) (same). And "[i]f the correct answer to the question will end the matter pending, the question is controlling." Grand Jury Proceedings, 767 F. Supp. at 225; United Fire, 2007 WL 2332085, at *1 (same). "Questions of law" under § 1292(b) include pure questions of law, as well as mixed-questions of law and fact, where the "factual setting is straightforward, with the complaint's allegations accepted as true for purposes of Defendant's operative motion to dismiss[.]" Kerr v. Hickenlooper, No. 11-cv-01350, 2012 WL 4359076, at *2 (D. Colo. Sept. 21, 2012) (citing In re Text Messaging Antitrust Litig., 630 F.3d 622, 624-27 (7th Cir. 2010)).

Substantial ground for difference of opinion exists where "the question is difficult, novel, and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions." Grand Jury Proceedings, 767 F. Supp. at 226.

An interlocutory appeal may "materially advance the ultimate termination of the litigation," where, inter alia, reversal on appeal would extinguish all of a plaintiff's claims. See Hart v. The Boeing Co., No. 09 CV-00397, 2010 WL 2635449, at *2 (D. Colo. June 28, 2010) (holding that an interlocutory appeal could "materially advance" the termination of the litigation because it might "terminate, fully and finally, [the] lawsuit").

## ARGUMENT

## I. THE COURT SHOULD CERTIFY THE QUESTIONS OF LAW PRESENTED.

The requirements for certifying an order for interlocutory appeal are fully satisfied in this case.

### A. The Questions Of Law Are Controlling.

The questions of law raised by GEO's Motion to Dismiss are "controlling." Plaintiffs' Complaint seeks relief under three theories: (1) the Colorado Minimum Wage Order, (2) the TVPA, and (3) common law unjust enrichment. See Doc. 1 at ¶¶ 40-52, 69-85, 101-07. The Court's July 6, 2015 Order dismissed the Minimum Wage claim, but denied GEO's Motion to Dismiss as to the TVPA and unjust enrichment causes of action. See Doc. 23 at 14.

If, on interlocutory appeal, the Tenth Circuit agrees with GEO that Plaintiffs' TVPA and unjust enrichment claims should have been dismissed under Fed. R. Civ. P. 12(b)(6), and that the unjust enrichment claim is barred by the government contractor defense, the decision will "end the matter pending," because all of Plaintiffs' claims will have been dismissed.  See Grand Jury Proceedings, 767 F. Supp. at 225; see also Hickenlooper, 2012 WL 4359076, at *2 (concluding that "two questions of law, when considered together," were "manifestly controlling" because reversal on appeal "would conclusively resolve the litigation in favor of Defendant");  Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria, 921 F.2d 21, 24 (2d Cir. 1990) ("[I]t is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action.").

Moreover, each of the proposed certified questions is independently "controlling" because each has "the potential for substantially accelerating disposition of the litigation."  See Grand Jury Proceedings, 767 F. Supp. at 225. If either the TVPA or unjust enrichment claim are dismissed on appeal, this result would significantly narrow the legal questions at issue, and greatly reduce the amount of discovery needed.  In particular, the TVPA claim only pertains to the allegations regarding unpaid housekeeping work.  Doc. 1 at ¶ 71.  The unjust enrichment claim, by contrast, pertains only to $1 per day work under the VWP. Id. at ¶ 103.  Therefore, the claims involve factually different issues, and

eliminating even one claim would significantly reduce the amount of discovery needed and the issues for trial.

**B.    There Is A "Substantial Ground For Difference Of Opinion" On Each Question.**

There is a "substantial ground for difference of opinion" as to whether Plaintiffs have alleged a legally cognizable TVPA or unjust enrichment claim. <u>See</u> § 1292(b).  There is also a "substantial ground for difference of opinion" as to whether the government contractor defense precludes Plaintiffs' unjust enrichment claim.

**1.  <u>TVPA claim</u>**:    The Court recognizes that whether the TVPA applies to the alleged facts in this case is a matter of first impression.  <u>See</u> Doc. 33 at 2.  And the positions of the Plaintiffs and GEO could hardly be farther apart: Plaintiffs claim that they can sue under the TVPA for "forced labor," while GEO believes the TVPA was unintended to apply to detainee claims for forced labor against a private entity that houses them while in the custody of the United States government.

The Plaintiffs contend that the "plain language" of the TVPA applies to them, and that the legislative history provides "no indication that Congress intended to exempt people in Plaintiffs' situation from the [TVPA's] new protections against forced labor."  Doc. 15 at 25, 28.  By contrast, GEO has shown that Congress passed the TVPA to combat human and sex trafficking of women and children, and, particularly to target traffickers who rely on "means

other than overt violence" to coerce individuals into forced labor.  <u>See</u> Motion to Dismiss, Doc. 11  at 11; Motion for Reconsideration, Doc. 29 at 15 (quoting <u>Victims of Trafficking and Violence Protection Act of 2000</u>, H.R. Conf. Rep. 106-939 at 101 (Oct. 5, 2000)).  This purpose is made eminently clear by Congress' express findings, and by the legislative history.  <u>Id</u>. at 13-15.

Plaintiffs contend that the TVPA's application to "whoever" engages in forced labor is so broad as to include GEO, Doc. 15 at 29, but even Plaintiffs do not attempt to allege that they have been "trafficked" by GEO in any sense of the word.  <u>See</u> <u>Black's Law Dictionary</u>, 8th ed. at 1534 ("traffic" means "to trade or deal in").  Instead, Plaintiffs are persons who, while in detention, are lawfully held at GEO's facility in the custody of ICE.  Nothing in the congressional findings or the legislative history indicates—or even suggests—that Congress intended § 1589 of the TVPA to operate outside of the trafficking context, especially in the wholly unrelated context of a federal detention facility.  <u>See</u> Motion to Dismiss, Doc. 11 at 11-13; Motion for Reconsideration, Doc. 29 at 13-16.

The U.S. Supreme Court and the Tenth Circuit have concluded on many occasions that, even where the plain language of a statute may reach alleged conduct, the plain meaning should not be applied because doing so is contrary to legislative intent.  Motion for Reconsideration, Doc. 29 at 11-13; <u>see</u>, <u>e.g.</u>, <u>Rector, Etc. of Holy Trinity Church v. United States</u>, 143 U.S. 457 (1892); <u>United States v. Black</u>, 773 F.3d 1113, 1115-16 (10th Cir. 2014).  Likewise, here,

construing the TVPA to create a cause of action for detainees to recover damages and/or restitution for performing household chores at GEO's facility is "absurd." However, as no case law has decided this specific issue, certification of an interlocutory appeal is warranted.

Moreover, as GEO has also argued (but Plaintiffs dispute, <u>see</u> Doc. 15 at 29-30), Congress is presumed to have added § 1589 to the TVPA against the backdrop of relevant case law, including the decision in <u>Channer v. Hall</u>, 112 F.3d 214, 217-19 (5th Cir. 1997), in which a federal detainee argued that "forcing him to work" in a food service department during his detention violated the 13th Amendment's prohibition against involuntary servitude—essentially the same prohibition found in § 1584 of the TVPA. <u>See</u> 18 U.S.C. § 1584 ("Whoever knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude, any other person for any term" commits an offense). The Fifth Circuit held that a "civic duty" exception precluded the plaintiff's involuntary servitude claim, which arose from allegations nearly identical to those in this case. <u>Channer</u>, 112 F.3d at 219 ("We hold that the federal government is entitled to require a communal contribution by an INS detainee in the form of housekeeping tasks . . ."). <u>See</u> Motion to Dismiss, Doc. 11 at 14; Motion for Reconsideration, Doc. 29 at 17-23.

This Court did not accept the "civic duty" exception on the grounds that § 1589's language is broader than the involuntary servitude prohibition in § 1584.

See Doc. 23 at 9. But the Court did not explain why its conclusion must follow in light of the fact that §§ 1584 and 1589 overlap, and that Plaintiffs' allegations in this case are of the same kind (i.e., forced labor by physical coercion) as those in the cases that applied a "civic duty" exception. See Motion for Reconsideration, Doc. 29 at 21. While this Court noted that no case has affirmatively held that the "civic duty" exception does apply to § 1589, see Doc. 23 at 9-10, neither this Court nor Plaintiffs have cited any authority that has found the "civic duty" exception inapplicable to § 1589. By requiring GEO to affirmatively disprove the TVPA's application, the Court reversed the burden of proof.

There are also "substantial ground[s]" for difference of opinion as to whether Plaintiffs have stated a claim under § 1589 of the TVPA because of the novelty of the issue. The standard for this element "implies that the question is difficult, novel, and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions." Grand Jury Proceedings, 767 F. Supp. at 226; see also Boellstorff v. State Farm Mut. Auto. Ins. Co., No. 05 CV 02192, 2007 WL 552247, at *3 (D. Colo. Feb. 20, 2007) aff'd, 540 F.3d 1223 (10th Cir. 2008) (finding a substantial grounds for debate "[a]lthough [the] Court did not adopt [the movant's] argument" because "it [was] clear that there [was] room for reasonable debate"). This standard is met in the present case as there is no precedent and, therefore, the question of law is undeniably novel.

**2. Unjust Enrichment Claim**.   There are substantial grounds for disagreement regarding whether the Plaintiffs are entitled to recover under an "unjust enrichment" theory for work that they voluntary accepted to perform for $1 per day under the VWP.  Compl., Doc. 1 at ¶¶ 101-07.

In fact, here there appears to be a tri-partite difference of opinion between the Plaintiffs, GEO, and the Court.  The Plaintiffs alleged that GEO was unjustly enriched, and that "any benefit collected directly and indirectly from Plaintiffs' and others' labor violated principles of justice, equity, and good conscience."  Compl., Doc. 1 at ¶¶ 104-06.  The Complaint, however, does not allege that Plaintiffs were entitled to, expected, and were denied, fair market value for their work in the VWP.  Instead, Plaintiffs seek disgorgement of profits.  Id. at ¶ 106.  To the extent the Court's statements create an unjust enrichment claim for the "fair market value" of services, that claim varies from (and exceeds) the Plaintiffs' own allegations—a point made by GEO but not addressed by the Court.  See Motion for Reconsideration, Doc. 29 at 24-25 & n.10.[1]

---

[1]      GEO recognizes the Court's view that GEO's argument that Plaintiffs lack a reasonable expectation of being compensated in excess of $1 per day was "not raised in [GEO's] original motion to dismiss."  Doc. 33 at 2.  GEO respectfully submits, however, that Plaintiffs did not plead the "fair market value" theory addressed in the Court's order, and therefore reconsideration was warranted.  The Court should certify the unjust enrichment issue to determine whether a valid claim can be stated for unjust enrichment, rather than waiting to rule on the issue later in these proceedings. The issue of whether Plaintiffs state a valid claim will remain in this case.  GEO has pled its Fed. R. Civ. P. 12(b)(6) defense to the unjust enrichment claim in its answer.  Doc. 26 at 14 ¶ 9.  The defense that the Plaintiffs have failed to state a claim upon which relief can be granted could be raised in a motion for judgment on the pleadings or at trial.  Fed. R. Civ. P. 12(g), (h)(2). The better path would be to resolve the Rule 12(b)(6) sufficiency of

Plaintiffs have failed to state a claim for unjust enrichment because they have "no sustainable expectation of compensation under the circumstances," as required under Colorado law.  See Motion for Reconsideration, Doc. 29 at 23-24; Stanford v. Ronald H. Mayer Real Estate, Inc., 849 P.2d 921, 923 (Colo. App. 1993);  Britvar v. Schainuck, 791 P.2d 1183, 1184 (Colo. App. 1989); 42 C.J.S. Implied Contracts § 28 (Supp. June 2015).  Plaintiffs identify no case that has recognized an analogous recovery for unjust enrichment by detainees.  Nor do they allege facts that establish that they have a reasonable basis to expect fair market compensation for their VWP work in the civil detention context.  See Motion for Reconsideration, Doc. 29 at 25-27.  Nor could they.  ICE and its predecessor agency have clearly stated that detainees performing work are not "employees."  See INS Gen. Counsel, Applicability of Employer Sanctions to Alien Detainees Performing Work in INS Detention Facilities, Genco Op. No. 92-8, 1992 WL 1369347 (Feb. 26, 1992); see also Alvarado Guevara v. INS, 902 F.2d 394, 395-96 (5th Cir. 1990) (detainees not "employees" under Fair Labor Standards Act).[2]  Congress has never appropriated funds for compensation exceeding $1 per day for detainees in custody under the immigration laws, see Motion for Reconsideration, Doc. 29 at 26, and the Complaint does not allege

---

the unjust enrichment claim at this time, before discovery and other proceedings progress further.

[2]    The Court also rejected Plaintiffs' Minimum Wage claim, in part by concluding that Plaintiffs are not "employees" and GEO is not an "employer" under Colorado law. See Doc. 23 at 2-7.

that GEO ever paid detainees at Aurora more than $1 for work under the VWP. <u>See</u> Doc. 1 at ¶ 89 (alleging "All of Defendant's employees in the 'Detainee Voluntary Work Program' were uniformly paid $1/day of work"). Therefore, there is no possibility that Plaintiffs could have had a reasonable basis for expecting greater compensation. <u>See</u> Motion for Reconsideration, Doc. 29 at 26.

Instead, to the extent the Court's order authorizes an unjust enrichment claim, that claim depends on postulating a non-existent market (i.e., a market for civil detainee housekeeping services within a civil detention facility) for the performance of their work under the VWP. Plaintiffs' allegations do not establish that any such market exists, and GEO is not aware of any case allowing civil detainees to recover restitution or damages on an unjust enrichment theory in circumstances similar to this case, and Plaintiffs cite no case so holding.

Although the Court declined to consider this argument as raised in GEO's Motion for Reconsideration (and in response to the Court's statements regarding "fair market value" in its order), GEO respectfully submits that there are nonetheless "substantial ground[s]" for difference of opinion as to whether Plaintiffs have stated an unjust enrichment claim. <u>See</u> § 1292(b). Because of the absence of controlling authority, the ultimate resolution of Plaintiffs' unjust enrichment claim is "not substantially guided by previous decisions" and is both "difficult" and "novel." <u>See</u> <u>Grand Jury Proceedings</u>, 767 F. Supp. at 226.

3. <u>Government Contractor Defense</u>:  GEO has argued, and Plaintiffs dispute, that Plaintiffs' state law unjust enrichment claim should also be dismissed under the "government contractor" defense.  Reply in Support of Motion to Dismiss, Doc. 18 at 5-6.  The Court disagreed, concluding that this defense did not apply because it could not identify a "'significant conflict' between a federal interest and state law."  Doc. 23 at 13 (citing <u>Boyle v. United Techs. Corp.</u>, 487 U.S. 500, 507 (1988)).  GEO respectfully submits that there is "substantial ground for difference of opinion" as to the availability of the government contractor defense, specifically whether allowing the Plaintiffs to sue for unjust enrichment for VPW work would cause a conflict between GEO and ICE's contractual relationship and the state law.  And the issue is important, because "the ability of the United States to contract and to supervise the actions of its agents and employees can apply equally to other contracts and is an integral function for government administration."  <u>Richland-Lexington Airport Dist. v. Atlas Props. Inc.</u>, 854 F. Supp. 400, 421 (D.S.C. 1994).[3]

GEO's contract with ICE provides that the reimbursement rate for VWP work "will be at actual cost of $1.00 per day per detainee" and "[t]he contractor shall not exceed the quantity shown without prior approval by the Contracting Officer."  Doc. 11-2, Ex. C. at 3, 21 (ICE/GEO Contract); <u>see</u> Motion for

---

[3]    The <u>Boyle</u> defense is available in the context of civil service contracts.  <u>Gadsen Indus. Park v. United States</u>, --- F. Supp. 3d ----, 2015 WL 2450649, at *7 (N.D. Ala. May 22, 2015) (collecting cases applying *Boyle* defense to contracting outside the military context, including service contracts).

Reconsideration, Doc. 29 at 29. The requirement that exceeding $1 per day occur only with the "approval of the Contracting Officer" indicates a strong federal interest in controlling the levels of reimbursement provided to detainees under the VWP, and in not having such reimbursement calculated based on a post-hoc "fair market value" analysis. See id. at 29-30. Allowing a Colorado equitable claim to be inserted into the federal government-contractor relationship to vary a material pricing term of the GEO/ICE contract—i.e., paying excess of $1 per day without the "approval of the Contracting Officer"—directly and significantly conflicts with the government-contractor relationship. See id. at 30 (citing United States v. City of Las Cruces, 289 F.3d 1170, 1186 (10th Cir. 2002)).

The Court disagreed with GEO's position, pointing to the fact that the published standards for the VWP provide that "'[t]he compensation is at least $1.00 (USD) per day," and that "the contract specifically contemplates that [GEO] will perform … in accordance with '[a]pplicable federal, state, and local labor laws and codes[.]'" Doc. 23 at 13 (citing Doc. 11-1 at 5 and Doc. 11-2 at 43) (emphasis omitted). Strictly speaking, the "at least" qualification is consistent with the contract, which provides that more than $1 per day **could** be paid with approval of the Contracting Officer. But that language alone does not authorize payment of more than $1 per day, and does not override the contractual prohibition that the $1 per day rate not be exceeded without "approval of the Contracting Officer."

Moreover, the Plaintiffs' do <u>not</u> rely on a "state [or] local labor law[] or code[]" to support their argument that they are entitled to more than $1 per day in reimbursement. <u>Cf</u>. Doc. 23 at 13. Plaintiffs, rather, rely on an <u>equitable</u> remedy arising from Colorado common law, which does not constitute a "state [or] local labor law[] or code[]" in any sense of those terms. <u>See id</u>. at 13 (citing Doc. 11-2, at 43). Thus, even assuming <u>arguendo</u> that the GEO/ICE contract were construed to allow for reimbursement in excess of $1 per day because of state or local labor laws (and without "approval by the Contracting Officer"), there are no grounds for allowing such excess reimbursement based on an equitable claim for unjust enrichment.

GEO respectfully submits that the availability of the government contractor defense in this case is a "difficult" question on which there are "substantial ground[s] for difference of opinion." <u>See Boellstorff</u>, 2007 WL 552247, at *3 (finding substantial grounds for disagreement when the court "cannot say" that the movant is "patently wrong" and the court "irrefutably correct").

### C. An Interlocutory Appeal Could "Materially Advance The Ultimate Termination Of The Litigation."

An interlocutory appeal would "materially advance the ultimate termination of the litigation." <u>See</u> § 1292(b). If the Tenth Circuit were to reverse the Court's orders allowing Plaintiffs' TVPA and unjust enrichment claims to proceed, all causes of action contained in Plaintiffs' Complaint would be dismissed. This potential outcome undoubtedly would "materially advance" the termination of this

litigation because it would dispose of all of Plaintiffs' claims before the parties are forced to undergo extensive and costly discovery, and potentially litigate this case through trial. See, e.g., Hart, 2010 WL 2635449, at *2 (holding that interlocutory appeal could "materially advance" termination of litigation because it might "extinguish" all existing claims); Boellstorff, 2007 WL 552247, at *3 (finding that an interlocutory appeal would "hasten the termination" of the litigation because reversal would require that the entire action be dismissed, thereby "obviating the need for any further motion practice or trial").

Furthermore, the court of appeals' determination that the government contractor defense applied would resolve whether GEO is entitled to raise the defense to the Plaintiffs' unjust enrichment claim. There is no reason to postpone a determination of the validity of the defense in this case until after trial, when the defense, if available now, could provide a complete defense to the Plaintiffs' unjust enrichment claim.

## II. THIS COURT SHOULD ENTER A STAY OF LITIGATION PENDING THE APPEAL.

Upon granting an order certifying the controlling questions of law in this case, the Court should also enter a stay of the present litigation pending appeal. "A court has inherent power to stay proceedings 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" Ellis v. J.R.'s Country Stores, Inc., No. 12-CV-01916, 2012 WL 6153513, at *1 (D. Colo. Dec. 11, 2012) (quoting Landis v. N. Am. Co., 299 U.S.

248, 254 (1936)).  To determine whether to grant a stay pending appeal, this Court undertakes a four-part analysis: (1) whether defendants have made a strong showing that they are likely to prevail on the merits of the appeal; (2) whether defendants have shown irreparable injury if the [stay] is not granted; (3) whether a stay will substantially harm the other parties in the litigation; and (4) where the public interests lie.  Evans v. Bd. of Cnty. Comm'rs of Cnty. of Boulder, Colo., 772 F. Supp. 1178, 1181 (D. Colo. 1991); see also Sec. Investor Prot. Corp. v. Blinder, Robinson & Co., 962 F.2d 960, 968 (10th Cir. 1992); CGC Holding Co., LLC v. Hutchens, 965 F. Supp. 2d 1277, 1278 (D. Colo. 2013).

A. **GEO's Likelihood of Success**:  With respect to the first prong of this analysis, since a court will almost never find that its own order is likely to be reversed on appeal, the Court has recognized that the "true test is whether the movant has made a substantial case on the merits…. and presented a serious and substantial legal question."  Desktop Images, Inc. v. Ames, 930 F. Supp. 1450, 1452 (D. Colo. 1996); see id. (recognizing that a district court will not find its own order likely to be reversed unless "the district court followed a precedent which it thought was clearly overdue for reversal").

GEO respectfully submits that the legal arguments raised in its Motion to Dismiss and its Motion for Reconsideration present a "substantial case on the merits" and presents "serious and substantial legal question[s]," Desktop Images, 930 F. Supp. at 1452.  As argued supra at 7-10, Plaintiffs' TVPA claim is

legally infirm because the legislative history clearly demonstrates Congress' intent that § 1589 serve as a remedy for victims of human and sex traffickers— not federal immigration detainees.  See Motion to Dismiss, Doc. 11 at 11-13; Motion for Reconsideration, Doc. 29 at 13-16.  And though the "civic duty" exception has not yet been applied to § 1589, it has been applied to the same kind of conduct as Plaintiffs allege here (i.e., prison or detention facility labor), and Congress is presumed to have legislated against that jurisprudential backdrop when drafting § 1589.  See Motion to Dismiss, Doc. 11 at 14; Motion for Reconsideration, Doc. 29 at 17-23.

Likewise, and as argued above, supra at 11-13, Plaintiffs' unjust enrichment claim is legally infirm because Plaintiffs' have not alleged any facts that support a sustainable or reasonable expectation for receiving compensation in excess of $1 per day, as is required under Colorado law.  See Motion for Reconsideration, Doc. 29 at 23-24.  Nor is GEO aware of any case that has allowed lawfully-held detainees to utilize an "unjust enrichment" theory to recover additional monies for participation in a voluntary work program.   And to the extent Plaintiffs can state an unjust enrichment claim, GEO has presented a substantial case and a serious and substantial legal question as to whether such a claim is barred by the government contractor defense, because the state law claim would conflict with a significant federal interest in ICE's contracting relationship with GEO.  Supra at 14-16.

GEO respectfully submits that, for all the reasons argued in its Motion to Dismiss, Reply in Support of its Motion to Dismiss, and the Motion for Reconsideration, it has "made a substantial case on the merits," <u>Desktop Images</u>, 930 F. Supp. at 1452, and has therefore "made a strong showing that [it] [is] likely to prevail on the merits of the appeal. <u>Evans</u>, 772 F. Supp. at 1181; <u>see</u> <u>also</u> <u>CGC Holding</u>, 965 F. Supp. 2d at 1278 (granting stay pending appeal even though court "[could not] find that [the appellant's] are substantially likely to succeed" in part because "the appeals potentially raised" novel legal issues).

B. <u>Irreparable Injury to GEO</u>: GEO will suffer irreparable injury if the Court does not stay this litigation pending appeal. The discovery in this case that has occurred is already costly, and the unique nature of the Plaintiffs' allegations (<u>see</u> <u>also</u> <u>infra</u> at 23-24), including its Rule 23 class allegations, create a high likelihood that discovery costs will be exorbitant. Plaintiffs seek to certify classes for their TVPA and unjust enrichment claims. <u>See</u> Compl., Doc. 1 at ¶¶ 55, 87. Plaintiffs estimate that the putative TVPA class consists of over 1000 persons, extending from October 22, 2004 to the present. <u>Id</u>. at ¶¶ 55, 58. Plaintiffs' putative unjust enrichment class is alleged to consist of over 300 persons, extending from October 22, 2012 to the present. <u>Id</u>. at ¶¶ 87, 90. In addition to discovery on the merits of Plaintiffs' TVPA and unjust enrichment claims, GEO will be subject to additional discovery to ascertain the actual size of the classes that Plaintiffs seek to certify, and the identities of the persons within these

putative classes. And, after discovery, the parties will be required to prepare dispositive motions, and prepare for trial.

Courts in this District have recognized that a party may suffer irreparable harm where it will be required to expend resources on discovery and other litigation that it will not be able to recoup from the other party, and this Court has recognized that "it is a matter of common sense that there is some benefit in sparing the parties unnecessary expense," where the Tenth Circuit might rule in a manner that ends the case. See CGC Holdings, 965 F. Supp. 2d at 1278.

Both of these principles weigh in favor of granting a stay pending appeal in this case. The monetary harm GEO will suffer—as a result of undergoing class- and merits-based discovery and further litigating the case—is the same type of "unnecessary expense" identified in CGC Holdings. GEO will incur that expense unnecessarily if the Tenth Circuit in this case ultimately reverses the Court's orders, and that harm will be "irreparable" as GEO will likely not be able to "recoup that monetary loss from the [P]laintiffs." Id. at 1279. And, as noted, there is a substantial likelihood that this harm would be realized since GEO has "made a substantial case on the merits" that the Court erred in allowing Plaintiffs' TVPA and unjust enrichment claims to proceed. See Hickenlooper, 2012 WL 4359076, at *4 (granting stay of litigation sua sponte following § 1292(b) certification where doing so would "obviate the need for the lengthy and costly phases of discovery and trial"); J.R.'s Country Stores, 2012 WL 6153513, at *2

(finding irreparable harm in absence of a stay where party "will be required to expend resources briefing issues in this case … that probably need not be decided, given Defendant's likelihood of success on its motion for summary judgment" and will "have to conduct potentially unnecessary discovery").

Furthermore, GEO operates numerous facilities in the United States pursuant to contracts with the federal government, and the VPW is available to a majority of detainees at these facilities.  While most of these facilities are outside of the Tenth Circuit, there is still a real possibility that detainees or inmates at other facilities may file similar suits even during the pendency of this litigation. Therefore, it is urgent for GEO to obtain prompt review of the Court's rulings before incurring expensive and extensive litigation.

C. Substantial Harm to Plaintiffs:  Plaintiffs will not suffer substantial harm if this Court grants GEO's request for a stay pending appeal.  This case is at its inception: discovery has only just begun.  In fact, Plaintiffs would likely benefit from a stay of litigation as it would prevent Plaintiffs or Plaintiffs' counsel from expending unnecessary resources on discovery proceedings, dispositive motions, and potentially trial, were the Tenth Circuit ultimately to reverse its rulings.   See, e.g., J.R.'s Country Stores, 2012 WL 6153513, at *2 (concluding that issuance of stay pending appeal would not cause "substantial harm[]" to a plaintiff who would "likely save herself expenses on the same motion and discovery-related issues as Defendant").

D. <u>Public Interest</u>:   Finally, the public interest will be best served by granting a stay of litigation pending appeal.   "The public has, as a primary interest, the efficient and just resolution of actions pending before the Court, and "'[a]voiding wasteful efforts by the Court clearly serves this interest.'"   <u>J.R.'s Country Stores</u>, 2012 WL 6153513, at *3 (quoting <u>Blixseth v. Cushman & Wakefield of Colo., Inc.</u>, No. 12-CV-00393-PAB-KLM, 2012 WL 3962800, at *3 (D. Colo. Sept. 11, 2012) (granting stay of discovery pending resolution of motion to dismiss)).   Granting a stay of litigation pending appeal in this case would further the "efficient and just resolution" of this case, by avoiding the unnecessary expenditure of judicial resources on additional litigation of claims that involve difficult and novel questions of law.

Additionally, this case has attracted national publicity, some of which notes the "historic" nature of the Court's rulings.[4]   The Court's ruling may imply (erroneously) to the public that the federal government and its contractors are engaged in a regime of forced labor of foreign citizens.   Indeed, there is a

---

[4]      <u>See</u>, <u>e.g.</u>, Hilary Hurd Anyaso, <u>Clinic Influences Historic Decision on Forced Labor of Detainees</u> (July 9, 2015) (www.northwestern.edu/newscenter/ stories/2015/07/clinic-influences-historic-decision-on-forced-labor-of-detainees.html) (quoting professor as stating that Court's decision is "the first time a court has told a private prison firm housing people under U.S. immigration laws that it couldn't force them to work and that if it did, restitution and damages for this 'unjust enrichment' could be pursued"); Daniel M. Kowalski, <u>Slave Labor Suit Against GEO Advances in Denver: Menocal v. Geo Group</u>, Law360 (July 8, 2015) (www.lexisnexis.com/legalnewsroom/ immigration/b/outsidenews/archive/2015/07/09/slave-labor-suit-against-geo-advances-in-denver-menocal-v-geo-group.aspx_); Huffington Post, <u>Private Prison Company Forced Immigrants To Work For Free, Lawsuit Says</u> (July 10, 2015) (www.huffingtonpost.com/entry/private-prison-immigrant-detainees_559eee31e4b05b1d 02900daa).

vigorous dispute between the parties as to whether the TVPA and unjust enrichment claims are valid. However, the unusually public and inflammatory nature of these claims makes it all the more important that a federal appellate court determine the validity of those claims now, and stay litigation in the interim, rather than proceeding toward a trial with the validity of the underlying legal claims in doubt.

## CONCLUSION

GEO respectfully moves the Court to grant an order certifying the above-stated questions for interlocutory appeal, and further moves the Court to enter a stay of litigation pending the outcome of the certified interlocutory appeal.

Dated: September 22, 2015               Respectfully submitted,

/s/ Shelby A. Felton                    /s/ Charles A. Deacon
Shelby A. Felton                        Charles A. Deacon
David DeMuro                            Norton Rose Fulbright US LLP
Vaughan & DeMuro                        300 Convent Street, Suite 2100
3900 E. Mexico Ave., Suite 620          San Antonio, Texas 78205-3792
Denver, CO  80210                       Tel +1 210 270-7133
Tel +1 (303) 837-9200                   Fax +1 210 270-7205
Fax +1 (303) 837-9400                   charlie.deacon@nortonrosefulbright.com
sfelton@vaughandemuro.com
                                        Mark Emery
                                        Norton Rose Fulbright US LLP
                                        799 9th Street, NW, Suite 1000
                                        Washington, DC 20001-4501
                                        Tel +1 202-662-0210
                                        Fax +1 202-662-4643
Counsel for Defendant                   mark.emery@nortonrosefulbright.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2015, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following attorneys for the Plaintiffs:

Brandt Milstein
brandt@milsteinlawoffice.com

Andrew Turner
aturner@laborlawdenver.com

Alexander Hood
alex@towardsjustice.org

Hans Meyer
hans@themeyerlawoffice.com

R. Andrew Free
Andrew@ImmigrantCivilRights.com

/s/ Charles A. Deacon
Charles A. Deacon
Norton Rose Fulbright US LLP
300 Convent Street, Suite 2100
San Antonio, Texas 78205-3792
Tel +1 210 270 7133
Fax +1 210 270 7205
charlie.deacon@nortonrosefulbright.com

Counsel for Defendant