## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 14-CV-02887-JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

       Plaintiffs,

vs.

THE GEO GROUP, INC.,

       Defendant.

---

**DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

---

# Exhibit 2



# Performance-Based National Detention Standards 2011



U.S. Immigration
and Customs
Enforcement

# Preface

In keeping with our commitment to transform the immigration detention system, U.S. Immigration and Customs Enforcement (ICE) has revised its detention standards. These new standards, known as the Performance-Based National Detention Standards 2011 (PBNDS 2011), are an important step in detention reform.

ICE is charged with removing aliens who lack lawful status in the United States and focuses its resources on removing criminals, recent border entrants, immigration fugitives, and recidivists. Detention is an important and necessary part of immigration enforcement. Because ICE exercises significant authority when it detains people, ICE must do so in the most humane manner possible with a focus on providing sound conditions and care. ICE detains people for no purpose other than to secure their presence both for immigration proceedings and their removal, with a special focus on those who represent a risk to public safety, or for whom detention is mandatory by law.

The PBNDS 2011 reflect ICE's ongoing effort to tailor the conditions of immigration detention to its unique purpose. The PBNDS 2011 are crafted to improve medical and mental health services, increase access to legal services and religious opportunities, improve communication with detainees with no or limited English proficiency, improve the process for reporting and responding to complaints, and increase recreation and visitation.

The PBNDS 2011 are also drafted to include a range of compliance, from minimal to optimal. As such, these standards can be implemented widely, while also forecasting our new direction and laying the groundwork for future changes.

In closing, I would like to thank the ICE employees and stakeholders who provided significant input and dedicated many hours to revising these standards. I appreciate the collaboration and support in this important mission - reforming the immigration detention system to ensure it comports with our national expectations. The PBNDS 2011 are an important step in a multiyear process and I look forward to continued collaboration within ICE, with state and local governments, nongovernmental organizations, Congress, and all of our stakeholders as we move forward in reforming our detention system.

John Morton
Director

# Table of Contents

1. SAFETY ...................................................... 1
  1.1 Emergency Plans .......................................... 1
  1.2 Environmental Health and Safety ........................... 22
  1.3 Transportation (by Land) ......................... 42
2. SECURITY ...................................................... 57
  2.1 Admission and Release ........................... 57
  2.2 Custody Classification System .................. 70
  2.3 Contraband .............................................. 90
  2.4 Facility Security and Control ...................... 95
  2.5 Funds and Personal Property ....................105
  2.6 Hold Rooms in Detention Facilities ........................116
  2.7 Key and Lock Control ...........................122
  2.8 Population Counts ...............................131
  2.9 Post Orders ....................................135
  2.10 Searches of Detainees ...........................139
  2.11 Sexual Abuse and Assault Prevention and
     Intervention ...............................................150
  2.12 Special Management Units ...................178
  2.13 Staff-Detainee Communication ..................195
  2.14 Tool Control ...................................199
  2.15 Use of Force and Restraints ...................208
3. ORDER ...................................................... 225
  3.1 Disciplinary System ...............................225
4. CARE ...................................................... 241
  4.1 Food Service ......................................241
  4.2 Hunger Strikes ...................................272

4.3 Medical Care ......................................... 277
4.4 Medical Care (Women) .......................... 304
4.5 Personal Hygiene ................................ 309
4.6 Significant Self-harm and Suicide Prevention and
   Intervention ...................................... 314
4.7 Terminal Illness, Advance Directives and Death ..... 320
5. ACTIVITIES ...................................... 327
  5.1 Correspondence and Other Mail ........................... 327
  5.2 Trips for Non-Medical Emergencies ...................... 335
  5.3 Marriage Requests ................................ 339
  5.4 Recreation ....................................... 342
  5.5 Religious Practices ............................... 348
  5.6 Telephone Access ................................ 359
  5.7 Visitation ....................................... 367
  5.8 Voluntary Work Program ..................... 382
6. JUSTICE ...................................... 388
  6.1 Detainee Handbook .............................. 388
  6.2 Grievance System ................................ 392
  6.3 Law Libraries and Legal Materials ...................... 401
  6.4 Legal Rights Group Presentations ......................... 417
7. ADMINISTRATION AND MANAGEMENT ......... 425
  7.1 Detention Files .................................. 425
  7.2 Interview and Tours ............................. 430
  7.3 Staff Training ................................... 438
  7.4 Detainee Transfers .............................. 443
  7.5 Definitions ..................................... 451

# 1.2 Environmental Health and Safety

## I. Purpose and Scope

This detention standard protects detainees, staff, volunteers and contractors from injury and illness by maintaining high facility standards of cleanliness and sanitation, safe work practices and control of hazardous substances and equipment.

This detention standard applies to the following types of facilities housing ERO detainees:

- Service Processing Centers (SPCs);

- Contract Detention Facilities (CDFs); and

- State or local government facilities used by ERO through Intergovernmental Service Agreements (IGSAs) to hold detainees for more than 72 hours.

*Procedures in italics are specifically required for SPCs, CDFs, and Dedicated IGSA facilities.* Non-dedicated IGSA facilities must conform to these procedures or adopt, adapt or establish alternatives, provided they meet or exceed the intent represented by these procedures.

Various terms used in this standard may be defined in standard "7.5 Definitions."

## II. Expected Outcomes

The expected outcomes of this detention standard are as follows (specific requirements are defined in "V. Expected Practices").

1. Facility cleanliness and sanitation shall be maintained at the highest level.

2. Compliance with all applicable federal, state and local safety and sanitation laws shall be ensured by documented internal and external inspections, and by corrective action when indicated.

3. Compliance with all applicable fire safety codes and fire safety performance requirements for facility furnishings shall be ensured.

4. Flammable, poisonous, toxic and caustic materials shall be controlled and used in a safe manner.

5. Compliance with fire prevention regulations, inspection requirements and other practices, including periodic fire drills, shall ensure the safety of detainees, staff and visitors.

6. Staff shall be knowledgeable about procedures an.3

7. d responsibilities during emergency situations, including those that require evacuation, in accordance with a written plan and with training at least annually.

8. The facility shall have a written plan for immediate release of detainees from locked areas, and provisions for a back-up system.

9. A sufficient number of properly positioned emergency exits, clear from obstruction, shall be distinctly and permanently marked.

10.                         Preventive maintenance and regular inspections shall

be performed to ensure timely emergency repairs or replacement and to prevent dangerous and life-threatening situations.

11. Potential disease transfer shall be minimized through proper sanitization of barbering equipment and supplies.

12. Pests and vermin shall be controlled and eliminated.

13. Safe, potable water shall be available throughout the facility.

14. Emergency lighting and life-sustaining equipment shall be maintained and periodically tested.

15. Disposal of garbage and hazardous waste shall be in compliance with applicable government regulations.

16. The applicable content and procedures in this standard shall be communicated to the detainee in a language or manner the detainee can understand.

All written materials provided to detainees shall generally be translated into Spanish. Where practicable, provisions for written translation shall be made for other significant segments of the population with limited English proficiency.

Oral interpretation or assistance shall be provided to any detainee who speaks another language in which written material has not been translated or who is illiterate.

## III. Standards Affected

This detention standard replaces "Environmental Health and Safety" dated 12/2/2008.

## IV. References

American Correctional Association, *Performance-based Standards for Adult Local Detention Facilities*, 4th Edition: 4-ALDF-1A-01, 1A-02, 1A-03, 1A-07, 1A-14, 1A-15, 1A-16, 1A-17, 1A-18, 1A-19, 1A-20,1C-01, 1C-02, 1C-03, 1C-04, 1C-05, IC-07, 1C-08, 1C-09, 1C-10, 1C-11, 1C-12, 1C-13, 1C-14, 1C-15, 4B-07, 4C-18.

Occupational Safety and Health Administration (OSHA) Regulations.

NFPA Standards.

U.S. Public Health Service Report on Carcinogens.

## V. Expected Practices

### A. Environmental Health and Safety

#### 1. General Environmental Health

Environmental health conditions shall be maintained at a level that meets recognized standards of hygiene, including those from the:

a. American Correctional Association;

b. Occupational Safety and Health Administration;

c. Environmental Protection Agency;

d. Food and Drug Administration;

e. National Fire Protection Association's Life Safety Code; and

f. National Center for Disease Control and Prevention.

The health services department or equivalent shall assist in the identification

and correction of conditions that could adversely impact the health of detainees, employees and visitors. The facility administrator designee for environmental health is responsible for developing and implementing policies, procedures and guidelines for the environmental health program that are intended to identify and eliminate or control as necessary, sources of injuries and modes of transmission of agents or vectors of communicable diseases.

The facility administrator designee shall:

a. conduct special safety investigations and comprehensive surveys of environmental health conditions; and

b. provide advisory, consultative, inspection and training services regarding environmental health conditions.

The health services administrator or equivalent is responsible for:

a. implementing a program that assists in maintaining a high level of environmental sanitation; and

b. providing recommendations to the facility administrator concerning environmental health conditions, in consultation with the environmental health designee.

### 2. Staff and Detainee Safety

The facility administrator shall ensure that adequate provisions are made for staff and detainee safety, in accordance with these detention standards and applicable law. Standard "7.3 Staff Training" further addresses employee training-related issues. Standard "5.8 Voluntary Work Program" addresses detainee training issues for workers. Detainees shall receive safety instruction as necessary for living area-related assignments, such as working with cleaning products to clean general use areas.

Detainee living area safety shall be emphasized to staff and detainees to include providing, as noted in the standards, a housekeeping plan. For example, when there are safety concerns with a detainee sleeping in a top bunk that is not along a wall and that has no bed rail, accommodations shall be made to ensure safety. (Because of the potential safety risk they pose, bed rails are not common in detention settings except for medical housing units.) In locations where ladders are unavailable, alternate accommodations, such as the use of bottom bunks or the addition of a ladder or step, shall be made for detainees on a case-by-case basis. Detainees who have medical or physical problems that may be aggravated by sleeping on a top bunk shall be referred to the medical unit for consideration of a lower bunk permit.

### 3. General Housekeeping

The facility administrator shall ensure that staff and detainees maintain a high standard of facility sanitation and general cleanliness. When possible, the use of non-toxic cleaning supplies is recommended.

a. All horizontal surfaces shall be dampdusted daily with an approved germicidal solution used according to the manufacturer's directions.

b. Windows, window frames and windowsills shall be cleaned on a weekly schedule.

c. Furniture and fixtures shall be cleaned daily.

d. Floors shall be mopped daily and when soiled, using the double-bucket mopping technique and with a hospital disinfectant-detergent solution mixed according to the manufacturer's directions.

e. A clean mop head shall be used each time the floors are mopped.

f. Waste containers shall weigh less than 50 lbs., be non-porous and lined with plastic bags; the liner shall be changed daily.

g. Waste containers shall be washed weekly at a minimum, or as needed when they become soiled.

h. Cubicle curtains shall be laundered monthly or during terminal cleaning following treatment of an infectious patient.

### 4. Pests and Vermin

The facility administrator shall contract with licensed pest-control professionals to perform monthly inspections to identify and eradicate rodents, insects and other vermin. The contract shall include a preventive spraying program for indigenous insects and a provision for callback services as necessary. Doors to the outside should be tight fitting and door sweeps should be installed to prevent the entry of vermin from outside.

### 5. Certification of Facility Water Supply

At least annually, a state laboratory shall test samples of drinking and wastewater to ensure compliance with applicable standards. A copy of the testing and safety certification shall be maintained on site.

### 6. Emergency Electrical Power Generator

At least every two weeks, emergency power generators shall be tested for one hour, and the oil, water, hoses and belts of these generators shall be inspected for mechanical readiness to perform in an emergency situation.

Power generators are to be inspected weekly and load-tested quarterly at a minimum, or in accordance with manufacturer's recommendations and instruction manual. Technicians shall check starting battery voltage, generator voltage and amperage output at a minimum, and shall perform all other necessary checks as well.

Other emergency equipment and systems shall be tested quarterly, and all necessary follow-up repairs or replacement shall be performed as soon as feasible.

### 7. Garbage and Refuse

a. Garbage and refuse includes all trash, rubbish and other putrescible and non-putrescible solid waste, except the solid and liquid waste discharged into the sanitary sewer system of the facility.

b. Garbage and refuse shall be collected and removed from common areas at least daily to maintain sanitary conditions and to avoid creating health hazards.

c. Facilities shall comply with all federal, state and local environmental regulations and requirements governing methods for handling and disposing of refuse.

## B. Hazardous Materials

Every facility shall establish a system for storing, issuing, using and maintaining inventories of and accountability for

# Appendix 3.1.A: Offense Categories

## I. "Greatest" Offense Category

### A. Prohibited Acts

100  Killing

101  Assaulting any person (includes sexual assault)

102  Escape from escort; escape from a secure facility

103  Setting a fire (charged with this act in this category only when found to pose a threat to life or a threat of serious bodily harm or in furtherance of a prohibited act of greatest severity [e.g., a riot or an escape]; otherwise the charge is classified as Code 218 or 321)

104  Possession or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, escape tool, device or ammunition

105  Rioting

106  Inciting others to riot

107  Hostage-taking

108  Assaulting a staff member or any law enforcement officer

109  Threatening a staff member or any law enforcement office with bodily harm

*198  Interfering with a staff member in the performance of duties (conduct must be of the greatest severity; this charge is to be used only if another charge of greatest severity is not applicable)

*199  Conduct that disrupts or interferes with the security or orderly running of the facility (conduct must be of the greatest severity; this charge is to be used only if another charge of greatest severity is not applicable)

### B. Sanctions

1. Initiate criminal proceedings

2. Disciplinary transfer (recommend)

3. Disciplinary segregation (up to 60 days)

4. Make monetary restitution, if funds are available

5. Loss of privileges (e.g., commissary, vending machines, movies, recreation, etc.)

## II. "High" Offense Category

### A. Prohibited Acts

200  Escape from unescorted activities open or secure facility, proceeding without violence

201  Fighting, boxing, wrestling, sparring and any other form of physical encounter, including horseplay, that causes or could cause injury to another person, except when part of an approved recreational or athletic activity

202  Possession or introduction of an unauthorized tool

203  Loss, misplacement or damage of any restricted tool

204  Threatening another with bodily harm

205  Extortion, blackmail, protection and demanding or receiving money or anything of value in return for protection against others, avoiding bodily harm or avoiding a threat of being informed against

206  Engaging in sexual acts

207  Making sexual proposals or threats

208  Wearing a disguise or mask

209  Tampering with or blocking any lock device

210  Adulterating of food or drink

211  Possessing, introducing, or using narcotics, narcotic paraphernalia or drugs not prescribed for the individual by the medical staff

212  Possessing an officer's or staff member's clothing

213  Engaging in or inciting a group demonstration

214  Encouraging others to participate in a work stoppage or to refuse to work

215  Refusing to provide a urine sample or otherwise cooperate in a drug test

216  Introducing alcohol into the facility

217  Giving or offering an official or staff member a bribe or anything of value

218  Giving money to, or receiving money from, any person for an illegal or prohibited purpose (e.g., introducing/conveying contraband)

219  Destroying, altering, or damaging property (government or another person's) worth more than $100

220  Being found guilty of any combination of three or more high moderate or low moderate offenses within 90 days

222  Possessing or introducing an incendiary device (e.g., matches, lighter, etc.)

223  Engaging in any act that could endanger person(s) and/or property

*298  Interfering with a staff member in the performance of duties (conduct must be of highest severity; this charge is to be used only when no other charge of highest severity is applicable)

*299  Conduct that disrupts or interferes with the security or orderly operation of the facility (conduct must be of highest severity; this charge is to be used only when no other charge of highest severity is applicable)

### B. Sanctions

1. Initiate criminal proceedings

2. Disciplinary transfer (recommend)

3. Disciplinary segregation (up to 30 days)

4. Make monetary restitution, if funds are available

5. Loss of privileges (e.g., commissary, vending machines, movies, recreation, etc.)

6. Change housing

7. Remove from program and/or group activity

8. Loss of job

9. Impound and store detainee's personal property

10.   *Confiscate contraband*

11.   *Restrict to housing unit*

12.   *Warning*

## III. ""High Moderate" Offense Category

### A. Prohibited Acts

300   *Indecent exposure*

301   *Stealing (theft)*

302   *Misusing authorized medication*

303   *Loss, misplacement or damage of a less restricted tool*

304   *Lending property or other item of value for profit/increased return*

305   *Possessing item(s) not authorized for receipt or retention and not issued through regular channels*

306   *Refusing to clean assigned living area*

307   *Refusing to obey the order of a staff member or officer (may be categorized and charged as a greater or lesser offense, depending on the kind of disobedience: continuing to riot is Code 105—Rioting; continuing to fight Code 201—Fighting; refusing to provide a urine sample, Code 215— Refusing to provide a urine sample or otherwise cooperate in a drug test).*

308   *Insolence toward a staff member*

309   *Lying or providing false statement to staff*

310   *Counterfeiting, forging or other unauthorized reproduction of money proceedings or other official document or item (e.g., security document,*

*identification card, etc.); may be categorized as greater or lesser offense, depending on the nature and purpose of the reproduction (e.g., counterfeiting release papers to effect escape—Code 102 or 200).*

311   *Participating in an unauthorized meeting or gathering*

312   *Being in an unauthorized area*

313   *Failing to stand count*

314   *Interfering with count*

315   *Making, possessing, or using intoxicant(s)*

316   *Refusing a breathalyzer test or other test of alcohol consumption*

317   *Gambling*

318   *Preparing or conducting a gambling pool*

319   *Possessing gambling paraphernalia*

320   *Unauthorized contact with the public*

321   *Giving money or another item of value to, or accepting money or another item of value from, anyone, including another detainee, without staff authorization*

322   *Destroying, altering, or damaging property (government or another person's) worth more than $100*

323   *Signing, preparing, circulating, or soliciting support for prohibited group petitions*

*398   *Interfering with a staff member in the performance of duties (offense must be of high moderate severity; this charge*

*to be used only when no other charge in this category is applicable)*

*399    Conduct that disrupts or interferes with the security or orderly running of the facility (offense must be of high moderate severity; this charge is to be used only when no other charge in this category is applicable)*

NOTE:    Any combination of high moderate and low moderate offenses during a 90-day period shall constitute a high offense.

### B. Sanctions

1. Initiate criminal proceedings

2. Disciplinary transfer (recommend)

3. Disciplinary segregation (up to 72 hours)

4. Make monetary restitution, if funds are available

5. Loss of privileges (e.g. commissary, vending machines, movies, recreation, etc.)

6. Change housing

7. Remove from program and/or group activity

8. Loss of job

9. Impound and store detainee's personal property

10.    Confiscate contraband

11.    Restrict to housing unit

12.    Reprimand

13.    Warning

## IV. ""Low Moderate" Offense Category

### A. Prohibited Acts

400    Possessing property belonging to another person

401    Possessing unauthorized clothing

402    Malingering; feigning illness

403    Smoking where prohibited

404    Using abusive or obscene language

405    Tattooing, body piercing or self-mutilation

406    Unauthorized use of mail or telephone (with restriction or temporary suspension of the abused privileges often the appropriate sanction)

407    Conduct with a visitor in violation of rules and regulations (with restriction or temporary suspension of visiting privileges often the appropriate sanction)

408    Conducting a business

409    Possessing money or currency, unless specifically authorized

410    Failing to follow safety or sanitation regulations

411    Unauthorized use of equipment or machinery

412    Using equipment or machinery contrary to posted safety standards

413    Being unsanitary or untidy; failing to keep self and living area in accordance with posted standards

*498    Interfering with a staff member in the performance of duties (offense must be of low moderate severity; this charge

*is to be used only when no other
charge in this category is applicable)*

*499  Conduct that disrupts or interferes
with the security or orderly running of
the facility (offense must be of low
moderate severity; this charge is to be
used only when no other charge in this
category is applicable)*

**B. Sanctions**

*1. Loss of privileges, commissary, vending
machines, movies, recreation, etc*

*2. Change housing*

*3. Remove from program and/or group
activity*

*4. Loss of job*

*5. Impound and store detainee's personal
property*

*6. Confiscate contraband*

*7. Restrict to housing unit*

*8. Reprimand*

*9. Warning*

# 5.8 Voluntary Work Program

## I. Purpose and Scope

This detention standard provides detainees opportunities to work and earn money while confined, subject to the number of work opportunities available and within the constraints of the safety, security and good order of the facility.

While not legally required to do so, ICE/ERO affords working detainees basic Occupational Safety and Health Administration (OSHA) protections.

This detention standard applies to the following types of facilities housing ERO detainees:

- Service Processing Centers (SPCs);

- Contract Detention Facilities (CDFs); and

- State or local government facilities used by ERO through Intergovernmental Service Agreements (IGSAs) to hold detainees for more than 72 hours.

*Procedures in italics are specifically required for SPCs, CDFs, and Dedicated IGSA facilities.* Non-dedicated IGSA facilities must conform to these procedures or adopt, adapt or establish alternatives, provided they meet or exceed the intent represented by these procedures.

Various terms used in this standard may be defined in standard "7.5 Definitions."

## II. Expected Outcomes

The expected outcomes of this detention standard are as follows (specific requirements are defined in "V. Expected Practices").

1. Detainees may have opportunities to work and earn money while confined, subject to the number of work opportunities available and within the constraints of the safety, security and good order of the facility.

2. Detainees shall be able to volunteer for work assignments but otherwise shall not be required to work, except to do personal housekeeping.

3. Essential operations and services shall be enhanced through detainee productivity.

4. The negative impact of confinement shall be reduced through decreased idleness, improved morale and fewer disciplinary incidents.

5. Detainee working conditions shall comply with all applicable federal, state and local work safety laws and regulations.

6. There shall be no discrimination regarding voluntary work program access based on any detainee's race, religion, national origin, gender, sexual orientation or disability.

7. The applicable content and procedures in this standard shall be communicated to the detainee in a language or manner the detainee can understand.

All written materials provided to detainees shall generally be translated into Spanish. Where practicable, provisions for written translation shall be

made for other significant segments of the population with limited English proficiency.

Oral interpretation or assistance shall be provided to any detainee who speaks another language in which written material has not been translated or who is illiterate.

# III. Standards Affected

This detention standard replaces "Voluntary Work Program" dated 12/2/2008.

This detention standard incorporates the requirements regarding detainees' assigned to work outside of a facility's secure perimeter originally communicated via a memorandum to all Field Office Directors from the Acting Director of U.S. Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) (11/2/2004).

# IV. References

American Correctional Association, *Performance-based Standards for Adult Local Detention Facilities*, 4th Edition: 4-ALDF-5C-06, 5C-08, 5C-11(M), 6B-02.

ICE/ERO *Performance-based National Detention Standards 2011:*

- "1.2 Environmental Health and Safety"; and
- "4.1 Food Service."

# V. Expected Practices

## A. Voluntary Work Program

Detainees who are physically and mentally

able to work shall be provided the opportunity to participate in a voluntary work program. The detainee's classification level shall determine the type of work assignment for which he/she is eligible. Generally, high custody detainees shall not be given work opportunities outside their housing units/living areas. Non-dedicated IGSAs will have discretion on whether or not they will allow detainees to participate in the voluntary work program.

## B. Work Outside the Secure Perimeter

ICE detainees may not work outside the secure perimeter of non-dedicated IGSA facilities.

*In SPCs, CDFs, and dedicated IGSAs, low custody detainees may work outside the secure perimeter on facility grounds. They must be directly supervised at a ratio of no less than one staff member to four detainees. The detainees shall be within sight and sound of that staff member at all times.*

## C. Personal Housekeeping Required

Work assignments are voluntary; however, all detainees are responsible for personal housekeeping.

*Detainees are required to maintain their immediate living areas in a neat and orderly manner by:*

1. *making their bunk beds daily;*

2. *stacking loose papers;*

3. *keeping the floor free of debris and dividers free of clutter; and*

4. *refraining from hanging/draping clothing, pictures, keepsakes, or other objects from*

*beds, overhead lighting fixtures or other furniture.*

## D. Detainee Selection

The facility administrator shall develop site-specific rules for selecting work detail volunteers. These site-specific rules shall be recorded in a facility procedure that shall include a voluntary work program agreement. The voluntary work program agreement shall document the facility's program and shall be in compliance with this detention standard.

*The primary factors in hiring a detainee as a worker shall be his/her classification level and the specific requirements of the job.*

1. *Staff shall present the detainee's name to the shift supervisor or the requesting department head.*

2. *The shift supervisor or department head shall review the detainee's classification and other relevant documents in the detainee's detention file.*

3. *The shift supervisor or department head shall assess the detainee's language skills because these skills affect the detainee's ability to perform the specific requirements of the job under supervision. To the extent possible, work opportunities shall be provided to detainees who are able to communicate with supervising staff effectively and in a manner that does not compromise safety and security.*

4. *Inquiries to staff about the detainee's attitude and behavior may be used as a factor in the supervisor's selection.*

*Staff shall explain the rules and regulations*

*as well as privileges relating to the detainee worker's status. The detainee shall be required to sign a voluntary work program agreement before commencing each new assignment. Completed agreements shall be filed in the detainee's detention file.*

## E. Special Details

Detainees may volunteer for temporary work details that occasionally arise. The work, which generally lasts from several hours to several days, may involve labor-intensive work.

## F. Discrimination in Hiring Prohibited

Detainees shall not be denied voluntary work opportunities on the basis of such factors as a detainee's race, religion, national origin, gender, sexual orientation or disability.

## G. Physically and Mentally Challenged Detainees

While medical or mental health restrictions may prevent some physically or mentally challenged detainees from working, those with less severe disabilities shall have the opportunity to participate in the voluntary work program in appropriate work assignments.

1. The selecting official must consider the precise limitations of a disabled individual before rejecting that individual for selected work assignments.

2. Expediency or convenience is insufficient justification to reject or "pigeonhole" a detainee who, with reasonable accommodation, can perform essential functions of the work assignment.

3. In disputed cases, the selecting official shall consult medical personnel to ascertain the detainee's suitability for a given project.

## H. Hours of Work

Detainees who participate in the volunteer work program are required to work according to a schedule.

The normal scheduled workday for a detainee employed full time is a maximum of 8 hours. Detainees shall not be permitted to work in excess of 8 hours daily, 40 hours weekly.

Unexcused absences from work or unsatisfactory work performance may result in removal from the voluntary work program.

## I. Number of Details in One Day

The facility administrator may restrict the number of work details permitted a detainee during one day.

*In SPCs, CDFs, and dedicated IGSAs a detainee may participate in only one work detail per day.*

## J. Establishing Detainee Classification Level

If the facility cannot establish the classification level in which the detainee belongs, the detainee shall be ineligible for the voluntary work program.

## K. Compensation

Detainees shall receive monetary compensation for work completed in accordance with the facility's standard policy.

The compensation is at least $1.00 (USD) per day. The facility shall have an established system that ensures detainees receive the pay owed them before being transferred or released.

## L. Removal of Detainee from Work Detail

A detainee may be removed from a work detail for such causes as:

1. unsatisfactory performance;

2. disruptive behavior, threats to security, etc.;

3. physical inability to perform the essential elements of the job due to a medical condition or lack of strength;

4. prevention of injuries to the detainee; and/or

5. a removal sanction imposed by the Institutional Disciplinary Panel for an infraction of a facility rule, regulation or policy.

When a detainee is removed from a work detail, the facility administrator shall place written documentation of the circumstances and reasons in the detainee detention file.

Detainees may file a grievance to the local Field Office Director or facility administrator if they believe they were unfairly removed from work, in accordance with standard "6.2 Grievance System."

## M. Detainee Responsibility

The facility administrator shall establish procedures for informing detainee volunteers about on-the-job responsibilities and

reporting procedures.

The detainee is expected to be ready to report for work at the required time and may not leave an assignment without permission.

1. The detainee shall perform all assigned tasks diligently and conscientiously.

2. The detainee may not evade attendance and performance standards in assigned activities nor encourage others to do so.

3. The detainee shall exercise care in performing assigned work, using safety equipment and taking other precautions in accordance with the work supervisor's instructions.

4. In the event of a work-related injury, the detainee shall notify the work supervisor, who shall immediately implement injury-response procedures.

## N. Detainee Training and Safety

All detention facilities shall comply with all applicable health and safety regulations and standards.

The facility administrator shall ensure that all department heads, in collaboration with the facility's safety/training officer, develop and institute appropriate training for all detainee workers.

1. The voluntary work program shall operate in compliance with the following codes and regulations:

   a. Occupational Safety and Health Administration (OSHA) regulations;

   b. National Fire Protection Association 101 Life Safety Code; and

   c. International Council Codes (ICC).

   Each facility administrator's designee is responsible for providing access to complete and current versions of the documents listed above.

   The facility administrator shall ensure that the facility operates in compliance with all applicable standards.

2. Upon a detainee's assignment to a job or detail, the supervisor shall provide thorough instructions regarding safe work methods and, if relevant, hazardous materials, including:

   a. safety features and practices demonstrated by the supervisor; and

   b. recognition of hazards in the workplace, including the purpose for protective devices and clothing provided, reporting deficiencies to their supervisors (staff and detainees who do not read nor understand English shall not be authorized to work with hazardous materials).

   A detainee shall not undertake any assignment before signing a voluntary work program agreement that, among other things, confirms that the detainee has received and understood training from the supervisor about the work assignment.

   The voluntary work program agreement, which each detainee is required to sign prior to commencing each new assignment, shall be placed in the detainee's detention file.

3. For a food service assignment, medical

staff, in conjunction with the U.S. Public Health Service, shall ensure that detainees are medically screened and certified before undertaking the assignment.

4. The facility shall provide detainees with safety equipment that meets OSHA and other standards associated with the task performed.

5. The facility administrator shall ensure that the facility operates in compliance with all applicable standards.

## O. Detainee Injury and Reporting Procedures

The facility administrator shall implement procedures for immediately and appropriately responding to on-the-job injuries, including immediate notification of ICE/ERO.

If a detainee is injured while performing his/her work assignment:

1. The work supervisor shall immediately notify facility medical staff. In the event the accident occurs in a facility that does not provide 24-hour medical care, the supervisor shall contact the on-call medical officer for instructions.

2. First aid shall be administered as necessary.

3. Medical staff shall determine what treatment is necessary and where that treatment shall take place.

4. The work supervisor shall complete a detainee accident report and submit it to the facility administrator for review and processing and file it in the detainee's detention file and A-file.