## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 14-CV-02887-JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

      Plaintiffs,

v.

THE GEO GROUP, INC.,

      Defendant.

---

## REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

---

# **TABLE OF CONTENTS**

I.   Introduction ................................................................................................. 2

II.  Argument ..................................................................................................... 6

   A.  Rule 23(a) Prerequisites ...................................................................... 6

     1.   Numerosity ...................................................................................... 6

     2.   Commonality .................................................................................... 8

       a.   Forced Labor Class ................................................................... 8

       b.   VWP Class .............................................................................. 13

     3.   Typicality ........................................................................................ 16

   B.  Rule 23(b)(3) Requirements ................................................................ 17

     1.   Predominance ................................................................................. 17

       a.   Forced Labor Class ................................................................. 17

       b.   VWP Class .............................................................................. 21

     2.   Superiority ....................................................................................... 23

# I.   INTRODUCTION

In its opposition to Plaintiffs' Motion for Class Certification, Defendant Geo

Group, Inc. ("GEO") waxes at length about the purported "legal deficiencies" of

Plaintiffs' claims. Def.'s Opp. to Mot. for Class Certification, Doc. No. 51, at 2 ("Opp.").

GEO seems to acknowledge that these arguments are not relevant to the question at issue

here—whether Plaintiffs' claims ought to be adjudicated on a classwide basis. *Id.* ("GEO

is not attempting to reargue the merits of the Plaintiffs' remaining claims at this

juncture."); *see also CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087

(10th Cir. 2014) ("[O]ur primary function is to ensure that the requirements of Rule 23

are satisfied, not to make a determination on the merits of the putative class's claims.").

And yet it cannot help itself from again engaging these merits questions.

The problem for GEO at this stage is that its indignant defenses of the policies that

Plaintiffs challenge in this case tend to support Plaintiffs' arguments that these challenges

should be adjudicated on a classwide basis. First, according to GEO, the issues at the core

of Plaintiffs' claims under the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C.

§§ 1589 *et seq*., are whether these claims are barred by the "civic duty" exception to the

constitutional proscription against indentured servitude and whether these claims can be

brought at all against a private civil detention facility. Opp. at 6 (citing *Channer v. Hall*,

112 F.3d 214, 219 (5th Cir. 1997)). GEO cites to a string of cases, suggesting that the

civic duty exception might, in some cases, stretch to cover Thirteenth Amendment-based

claims brought by prisoners forced to clean areas outside of their immediate living vicinity. Opp. at 7 n.4.

GEO, however, ignores the numerous reasons why its merits arguments fail, and why this Court denied its motion to dismiss. For one, the "civic duty" exception applies to the constitutional prohibition against "indentured servitude," U.S. Const. am. XIII, § 1; it does not apply to the TVPA's proscription against "forced labor," 18 U.S.C. § 1589(1), which was designed to *expand* the protections against compelled labor that had existed under predecessor statutes incorporating the Thirteenth Amendment. *Menocal v. Geo Grp., Inc.*, 113 F. Supp. 3d 1125, 1132-33 (D. Colo. 2015) (distinguishing *United States v. Kozminski*, 487 U.S. 931, 940 (1988)). Furthermore, the "civic duty" exception allows for indentured servitude that the government exacts from its citizens as part of their civic obligation to the state. *See, e.g.*, *Arver v. United States*, 245 U.S. 366, 390 (1918) (noting that the Thirteenth Amendment does not prohibit selective service, or the "exaction by government from the citizen of the performance of his supreme and noble duty of contributing to the defense of the rights and honor of the nation . . . ."). It does not apply to a private corporation's conscription of non-citizen labor. And it certainly does not apply when that corporation extracts that labor to perform functions that the government (as procurer) designated to be performed by paid subcontractors. Pls.' Mot. for Class Certification, Doc. No. 49 ("Mot.") at 5. The Court need not, however, decide any of these questions now. It is enough at this stage to observe that these important questions—

critical to the resolution of this case—are also common to the class of people who worked under the Forced Labor Policy.

Second, according to GEO, the issue at the core of Plaintiffs' state unjust enrichment claims is whether Plaintiffs' can pursue these claims notwithstanding that Plaintiffs' were not "employees" under state wage-and-hour law and therefore could not have had any "reasonable expectation" of additional compensation. Opp. at 13. It is now the law of this case that Plaintiffs were not employees under federal or state law. Order, Doc. No. 23 at 2-7. But Plaintiffs need not themselves subjectively have expected greater compensation at the time they provided their services in order to assert an unjust enrichment claim now.[1] Plaintiffs can recover in restitution on their unjust enrichment claims if it would be unjust for GEO to retain the benefits of Plaintiffs' $1-a-day labor. Plaintiffs' challenge to the Voluntary Work Program ("VWP") through an unjust

---

[1] *Provident Life & Acc. Ins. Co. v. Waller*, 906 F.2d 985, 993-94 (4th Cir. 1990) ("As summarized by a national commentator, three elements encompass the equitable remedy of unjust enrichment and quasi-contract: the plaintiff must show that (1) he had a reasonable expectation of payment, (2) the defendant should reasonably have expected to pay, *or* (3) society's reasonable expectations of person and property would be defeated by nonpayment. C. Kaufman, Corbin on Contracts § 19A, at 50 (Supp. 1989)." (emphasis added)); *cf. Grynberg v. Shell Expl. B.V.*, 433 F. Supp. 2d 1229, 1235 (D. Colo. 2006) ("Should the plaintiffs succeed on their claim of unjust enrichment, their recovery would be not expectation damages but rather restitution of any benefit conferred at their expense."); *Cablevision of Breckenridge v. Tannhauser Condominium Ass'n*, 649 P. 2d 1093, 1096-98 (Colo. 1982) (discussing unjust enrichment, as opposed to an express or implied in fact contract, under Colorado law).

enrichment theory is firmly rooted in history and law. [2] But, once again, the Court need

not decide any of these issues now. It is enough to observe that these core, critical issues

are common across all of those who provided labor under the VWP Policy.[3]

At other points in this case, GEO has sought to streamline this litigation to avoid

inconsistent adjudications. Doc. No. 40, at 2 (moving for certification of issues for

interlocutory appeal). Now, in stark juxtaposition to that position, GEO wants tens of

thousands of mostly poor, unsophisticated plaintiffs, located abroad and without

eligibility to travel to the United States, to pursue these claims individually,

notwithstanding that this Court has already determined that they have sufficiently alleged

---

[2] The $1-per-day minimum wage payment policy was enacted by Congress in response to the 1949 Geneva Conventions, which required payment of about $1 per day to prisoners of war. Anita Sinha, *Slavery by Another Name: "Voluntary" Immigrant Detainee Labor & the Thirteenth Amendment*, 11 Stan. J. Civ. Rts. & Civ. Liberties 1, 29 (2015). The Geneva Conventions adopted this requirement in the wake of widespread exploitation of prisoner-of-war labor during World War II. The legal status of that labor has been the subject of historical scrutiny, and one of the most prominent works on the use of American POW labor in Japan during World War II is titled "Unjust Enrichment." Linda Goetz Holmes, *Unjust Enrichment* (2000).

In light of this historical context, the basis for Plaintiffs' unjust enrichment claims and the reasons those claims should be certified as a class action challenging the VWP policy make even more sense. Even if the Geneva Conventions were intended to address abusive practices during World War II, including the use of American POW labor in Japan, many factors suggest that the VWP policy as implemented by GEO has fallen off the trajectory set in Geneva. Those factors include, among others, the status of the detainees as civil immigrant detainees, and not POWs, GEO's private, for-profit status, GEO's misrepresentations, and GEO's reliance on a minimum wage set more than 60 years ago.

[3] GEO also contends that its payment of $1.00 per day is insulated from challenge because DHS/ICE established and required payment of that rate.  As this Court has found, DHS/ICE does not in fact require payment of $1.00/per day and would permit payment of more.  *Menocal*, 113 F. Supp. 3d at 1135.

that the policies under which they labor plausibly violate state and federal law. In light of the circumstances of the absent class members, that is a recipe designed solely to forestall the resolution of these important but complex issues and to insulate GEO from liability for these claims.

At bottom, Plaintiffs' Motion for Class Certification is straightforward. This case raises many important issues, but all of those issues are common to the putative classes, and easily predominate over any individual questions that may later be implicated by this litigation. This is a case challenging undisputedly uniform institutional policies. To the degree they are unlawful, they are unlawful classwide. To the degree they are defensible, they are defensible classwide. Moreover, the putative class members are current and former detainees of a private immigrant detention facility. By definition, most have been deported from the United States. They number in the tens of thousands and tend to be scared and unfamiliar with the American legal process. They are extraordinarily unlikely to bring these claims individually.

## II.    ARGUMENT

### A. **Rule 23(a) Prerequisites**

#### 1. **Numerosity**

There can be no dispute that the proposed classes are so "numerous that joinder is impracticable." Fed. R. Civ. P. 23(a)(1). GEO urges the Court to deny class certification because, it says, that beyond pointing to the exceptionally large class size in this case

(tens of thousands for the Forced Labor Class and thousands for the VWP Class),

Plaintiffs have not provided any other evidence to support numerosity.

This argument fails as a legal matter. A plaintiff's conclusory allegation that

numerosity is present is not alone sufficient. But when there are facts in the record from

which numerosity can be inferred, the requirement is satisfied. *See, e.g.*, *Delarosa v.*

*Boiron, Inc*. 275 F.R.D. 582, 587 (C.D. Cal. 2011). In this case, reliable evidence

suggests that the putative Forced Labor class has approximately 50,000-60,000 members[4]

and that the putative unjust enrichment class has well over 2,000 members.[5]

GEO points to cases establishing that plaintiffs who cannot identify a likely

number of class members may rely on other factors to establish numerosity. And it is

certainly true that even in cases where the likely number of class members is relatively

small, class certification may be appropriate for other reasons. Doc. No. 51 at 17-18. But

GEO has not pointed to a single case where a court denied certification on numersosity

grounds for a class with tens of thousands of members because the plaintiffs did not set

out all of the reasons that certification was proper in their initial motion for certification.

GEO's bold challenge to the numerosity of the putative classes does not have any

------

[4] *See* Doc. 50-1, Pl. Ex. 1 ("GEO Dep.") at 49:8-50:6.

[5] In November of 2012 alone 780 distinct individuals worked in the VWP program. *See* Doc. 50-6, Pl. Ex. 15 (Man-Days Billing Report: 11/1/2012-11/30/2012) at GEO_MEN 00001594-GEO_MEN 00001611.

grounding in the law. But GEO calling attention to the issue gives Plaintiffs an opportunity to reiterate the number of important (and even unique) reasons why class adjudication is proper and efficient. The tens of thousands of putative class members are located around the world; many are not fluent in English and certainly not fluent in the American legal system; and all of them worked for GEO while detained at an immigrant detention facility and subject to extraordinary coercion. Under these facts, joinder would be—at the very least—impracticable. *See Marcus v. BMW of N. Am., L.L.C.*, 687, F.3d 583, 596-97 (3d Cir. 2012) (describing circumstantial factors that plaintiffs may point to in establishing the impracticability of joinder).

### 2.  Commonality

There are also "questions of law or fact common to the class[es]." Fed. R. Civ. Proc. 23(a)(2). The Supreme Court has explained that a common question under Rule 23(a)(2) is "a common contention . . . of such a nature that it is capable of class-wide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). But the Court has also reminded that for "purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359 (internal quotation marks and brackets omitted).

### a.  Forced Labor Class

GEO's main dispute with the commonality of the proposed Forced Labor Class is that some of the common questions identified by Plaintiffs in their motion—(1) whether GEO "obtains the labor of class members"; (2) whether GEO "threatens class members

with physical restraint, serious harm, or abuse of the legal process"; and (3) whether GEO "knowingly" obtains class members' labor "by . . . means of" these threats—mirror elements of Plaintiffs' forced labor claims under. 18 U.S.C. § 1589(a)(1). GEO argues that Plaintiffs' reliance on the elements of the forced labor statute in articulating commonality violates *Dukes*'s admonition that plaintiffs cannot certify a class where the only common questions are whether all of the class members were injured by violation of the statute that serves as the basis for their claims. *Dukes*, 544 U.S. at 350.

GEO's argument distorts *Dukes* and would lead to absurd results if accepted. In *Dukes*, the Court acknowledged that all cases could be said to raise common questions. But those common questions fail to satisfy the commonality requirement if they do not "resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke." *Id.* at 350. A question fails that test if, though capable of classwide resolution, it is not central to the class members' claims. For example, in that case, the plaintiffs could have asked common questions like "Do all of us plaintiffs indeed work for Wal–Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get?" *Id.* at 349. But those questions would have not satisfied commonality. Alternatively, common questions fail if, though central to the issues in the case, are not answerable "in one stroke." For example, in that case, whether all of the class members were harmed by violations of Title VII. "Quite obviously, the mere claim by employees of the same company that they have suffered a

Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once." *Id.*

This does not mean, however, that common questions can never be grounded in the substantive legal framework applicable to the putative class claims. Indeed, they must be grounded in exactly this. After all, "considering whether questions of law or fact common to class members predominate begins, of course, with the ***elements of the underlying cause of action***." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1088 (10th Cir. 2014) (internal quotation marks and brackets omitted; emphasis added). Common questions certainly satisfy Rule 23(a) if they ask whether a common policy affecting class members violates the law. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1039 (2016) ("The District Court concluded that common questions, such as whether donning and doffing protective gear was compensable under the FLSA, were susceptible to classwide resolution even if not all of the workers wore the same gear."); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1254 (10th Cir. 2014) (common questions of whether there was a conspiracy and whether there was antitrust "impact"—elements of the plaintiffs' antitrust claims—predominated). And in this case, the common questions include whether the "forced labor" policy amounts to a threat that GEO knowingly uses to obtain labor from putative class members in violation of the TVPA.

GEO additionally argues that the Forced Labor Class does not satisfy commonality because the question of whether that policy includes a threat of physical

restraint, serious harm, or abuse of the legal process "would require an individualized assessment into what, if anything, each individual detainee perceived to be threatened in each instance that the detainee performed housekeeping chores." Opp. at 21. This position may more appropriately be considered under the predominance rubric, but in either case, the court should reject it. Neither TVPA law nor the facts of this case suggest that Plaintiffs' forced labor claims will be subject to significant individualized analyses.

As for the legal framework applicable to Plaintiffs' TVPA claims, further described below, the TVPA prohibitions against forced labor do not call for an individualized inquiry into the state-of-mind of the laborer. *See, e.g.*, *Tanedo v. E. Baton Rouge Par. Sch. Bd.*, No. LA CV10-01172 JAK, 2011 WL 7095434, at *7 (C.D. Cal. Dec. 12, 2011). But, also as explained under the predominance analysis, even if the Court concludes that some subjective analysis is necessary to determine whether putative class members were compelled to provide labor "by means of" the threats at issue, there are still fundamental common questions at the core of Plaintiffs' TVPA claims. For example, it is a common question, across the entire class, whether GEO's forced labor policy, which includes the threat of solitary confinement for failing to perform labor, supports an inference that putative class members labored ***because of*** these threats. *See, e.g.*, *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120, 122 (2d Cir. 2013).

GEO's contention that the class was not uniformly subjected to the alleged forced labor policy is belied by the factual record. Under the forced labor statute, the relevant

inquiry is whether GEO's policy constituted "abuse or threatened abuse of law or legal process," 18 U.S.C. § 1589(a)(3), or a "scheme, plan, or pattern intended to cause [the plaintiff class members] to believe that, if [they] did not perform such labor or services, that [they] would suffer serious harm or physical restraint," *id.* at § 1589(a)(4). Both of these provisions prohibit maintaining a policy that induces another to perform labor because of a ***threat***, even if the threat is never realized. In this case, for example, the mere threat of the formal administrative process triggered by the failure to provide labor amounts to the threat of abuse of legal process whether or not any of the putative class members were actually subject to this administrative process. And the mere threat of solitary confinement violates the statute if GEO intended for it to cause Plaintiffs to think that they might be subject to such confinement if they did not work, whether or not putative class members were actually subjected to physical restraint as a consequence of not working.

As facts in the record demonstrate, all detainees are subject to the alleged forced labor policy. Doc. 50-1, PL. Ex. 1 (GEO Dep.) at 29:13-16; 37:23-38:5. The policy's cleaning requirements are communicated to all detainees. *Id* at 29:13-30:2; 84:19-85:15. And all detainees receive a written statement of GEO policy defining failure to perform this work as a 300-level disciplinary offense, subject to up to 72 hours in disciplinary segregation. *Id* at 51:21-52:25; 79:8-80:25; 84:19-85:15; 88:7-90:3; Doc. 50-3, Pl. Ex. 4

at PL000054. Such uniform, pattern conduct is appropriate for class adjudication.[6]

### b.  VWP Class

With respect to Plaintiffs' VWP class, GEO suggests that Plaintiffs' have not raised a common classwide question because unjust enrichment law calls for a careful, close, and factually-intensive equitable analysis. *See Lewis v. Lewis*, 189 P.3d 1134 (Colo. 2008). The fact-intensive nature of this inquiry should not, however, be confused as an *individualized* determination. Where the facts supporting the plaintiff's claims that it would be unjust for the defendant to retain a benefit provided by the plaintiff are susceptible to classwide determination, class certification of the plaintiff's unjust enrichment claims is appropriate. *See, e.g.*, *Martinez v. Wells Fargo Bank, N.A.*, 307 F.R.D. 630, 647 (S.D. Fla. 2015) (collecting cases); *Pennsylvania Emp., Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 477 (D. Del. 2010); *County of Monroe v.*

_____

[6] The Court need not resolve merits questions to certify the Forced Labor Class. But, particularly in light of GEO's strident and extensive merits arguments, Plaintiffs point out that there is no reason to believe that the civic duty exception applies to the forced labor statute. *See Menocal*, 113 F. Supp. 3d at 1132 ("In addition, Defendants have cited no authority for reading a civic duty exception into § 1589, or for applying such an exception to a private, for-profit corporation under contract with the government."). Despite this, GEO may still be able to require uncompensated work with sanctions—unlike the sanctions here—that are not violitive of the TVPA. Further, while ICE is not empowered to authorize its contractors to violate the TVPA, even if the civic duty exception were to apply and even if ICE were able to extend the exception to a for-profit contractor, it did not extend the exception to GEO at the Aurora facility. *See* Mot. 4-5. Most importantly, whether, when, and how GEO may legally require detainees to perform uncompensated labor is not appropriately determined here. Rather, the Court need simply recognize that these are common, classwide questions that support certification.

*Priceline.com, Inc.*, 265 F.R.D. 659, 671 (S.D. Fla. 2010) ("It is undisputed that Defendants' business operations are the same as to all members of the putative class. Given this fact, it is difficult to conceive of any significant equitable differences between class members, and Defendants do not suggest any. Accordingly, the County's unjust enrichment claim does not preclude a finding of predominance."); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 73 (D.N.J. 2009).

There are numerous classwide bases for evaluating Plaintiffs' unjust enrichment claims. GEO's retention of the benefits of Plaintiffs' $1-dollar-per-day labor is unjust in light of, among other things, (1) GEO's misrepresentations that ICE sets VWP wages; (2) the nature of detainees' confinement; and (3) GEO's substantial cost savings. The Court should ultimately weigh these and other facts in determining whether Plaintiffs' have made out an unjust enrichment claim, but it should perform that weighing by examining the VWP ***policy*** and not the treatment of any particular detainee relative to any other.

Furthermore, GEO challenges what it calls Plaintiffs' "misrepresentation theory," as a basis for certification of the VWP Class because that theory, GEO asserts, rests on "individualized proof about what a detainee read and heard in the circumstance." Opp. at 25. The record leaves no doubt, however, that GEO publicized and disseminated its erroneous position that ICE required it to pay VWP participants $1.00 per day. The uniformly applicable GEO policy states that "[d]etainees shall receive a stipend of $1.00 per day, to be paid daily." Doc. 50-4, Pl. Ex. 13, (Policy & Procedure Manual 8.1.8-

AUR) at GEO_MEN 00001397; Doc. 50-5 Pl. Ex. 14 GEO Dep. (Furst) at 43:13-44:5. And when two class representatives submitted written grievances to GEO regarding the rate of pay, they received uniform, verbatim identical responses from GEO, stating that "[t]he pricing is approved by ICE.  GEO does not set the pricing.  ICE tells us what the daily pay is for [VWP participants]."  Doc. No. 50-7, Pl. Ex. 16; Doc. No. 50-5, Pl. Ex. 14, GEO Dep. (Furst) 39:7-40:10. As Defendant's 30(b)(6) deposition representative explained, "GEO's position is we're required by the contract to pay them what ICE has stipulated."  Doc. 50-5, GEO Dep at 46:11-12. It is strange indeed that GEO now questions the dissemination of this clear position, which it published not only to the members of the detainee class, but to this Court as well. Doc. No. 11 at 4 ("Defendant did not make the determination that DHS/ICE detainees who volunteer to work should be paid $1.00 per day.  That decision was made by DHS/ICE…"); Doc. No. 18 at 5-6 ("In the present case, DHS/ICE specifically directed Defendant to do the very thing that is the subject of the claim… pay the detainees who volunteer for that program $1.00 per day.").

Furthermore, even if the Court were somehow not persuaded by this evidence of common treatment, it should nonetheless reject GEO's argument. As the Colorado Supreme Court has explained in other contexts, Colorado law recognizes that reliance may be established through classwide circumstantial evidence. *BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 110 (Colo. 2011). In this case, the inherently coercive conditions of confinement accompanying GEO's inflexible offer of $1.00 per day

coupled with classwide misrepresentations regarding the basis for the $1-per-day wage

create a common factual question irrespective of whether individual class members

"inquired as to additional pay." Opp. at 24.

### 3. Typicality

GEO's objections to the typicality of Plaintiffs' claims turn, at bottom, on its

misguided assertions that Plaintiffs' claims depend individualized inquiries. As for the

Forced Labor Class, GEO argues that Plaintiffs are not typical because none "were placed

in segregation themselves for refusing to clean." Opp. at 28. That assertion ignores the

text of the forced labor statute, which turns on the defendant's ***threats*** and whether those

threats are intended to cause laborers to believe that they will be subject to sanctions, not

on whether the defendant follows through on those threats. 18 U.S.C. § 1589(a)(1)

("threats of . . . physical restraint"), § 1589(a)(2) ("threatened abuse . . . of legal

process"), § 1589(a)(3) ("plan . . .  intended to cause the person to believe").

As for the VWP Class, GEO argues that Plaintiffs are not typical because they did

not all "inquire as to whether [they] could receive higher pay." Opp. at 29. Even if

Plaintiffs' unjust enrichment claims turned on individualized reliance, which they do not,

they would certainly not depend on whether Plaintiffs inquired about additional pay.

Plaintiffs unjust enrichment claims are supported by the context of confinement, by

GEO's substantial cost savings, and by GEO's classwide communications that ICE sets

the wage paid VWP laborers. To the extent that Plaintiffs' awareness of those

communications is relevant, it can be inferred on a classwide basis from GEO's clear communications.

## B. Rule 23(b)(3) Requirements

### 1. Predominance

#### a. Forced Labor Class

Once again, GEO's argument that individual issues predominate over common ones for the purposes of establishing a violation of the TVPA is based on the premise that the "required causal connection in this case"—in other words, the purported need to show that class members provided labor because of GEO's threats—"will require a highly individualized inquiry into the reasons for why each of the putative class members performed the cleaning duties required of Aurora detainees." Opp. at 33. GEO goes on: "[E]ven under Plaintiffs' theory, there would be no reason to award damages or restitution to a detainee who performed chores because, for example, he or she wished to stay busy; but the reasons each detainee performed the chores cannot be ascertained without individual inquiry." *Id.* at 34. In other words, GEO argues that the possibility that some detainees do their "chores" to stay busy, no matter how remote and hypothetical, undermines class certification to decide the important questions at the core of this case.

There are numerous problems with this argument, beginning with the text and purposes of the forced labor statute. First, as explained in Plaintiffs' Motion for Class Certification, the forced labor statute looks at the intent of the defendant, not the

subjective feelings of the laborer. 18 U.S.C. § 1589 ("[w]hoever **knowingly** provides or obtains the labor or services of a person by . . . ." (emphasis added)); *see also United States v. Dann*, 652 F.3d 1160, 1169-70 (9th Cir. 2011); *Tanedo v. E. Baton Rouge Par. Sch. Bd.*, No. LA CV10-01172 JAK, 2011 WL 7095434 (C.D. Cal. Dec. 12, 2011).

Second, even courts that have denied class certification of forced labor TVPA claims have recognized that in certain circumstances, the slight possibility of subjective variation should not undermine class certification of forced labor claims.[7] After all, could a group of trafficked laborers not obtain class certification for forced labor claims based on the threat of being handcuffed for failure to work because in some instances some of the laborers might have preferred working to idleness? Even accepting GEO's suggestion that subjectivity matters to the forced labor analysis for the purpose of establishing causation, this case is precisely the type of forced labor case where class certification is appropriate. GEO cannot dispute that the threat of solitary confinement is a threat of "physical restraint," and neither can it dispute that the threat of an administrative, legal process, even were it to result in a mere warning, is the "threat of abuse of . . . legal process." 18 U.S.C. §§ 1589(a)(1), (a)(3), (a)(4). So it rests its opposition to class

---

[7] *David v. Signal Int'l*, LLC, No. CIV.A. 08-1220, 2012 WL 10759668, at *21 (E.D. La. Jan. 4, 2012) (suggesting there are TVPA cases where "where consent becomes irrelevant" given that "some 'choices' might be so illegitimate that any decision to work is 'involuntary.'").

certification on the possibility, no matter how remote, that some detainees in some instances would not have minded the work. The Court should not sanction those efforts.

Third, the TVPA provides a civil remedy for attempted, as well as completed forced labor, and further specifies that the two should violations be sanctioned identically. 18 U.S.C. § 1595(a) (civil right of action for any violation of Chapter 77 of Title 18); 18 U.S.C. § 1594(a)(punishing an attempted violation of section 1589 in the same manner as a completed violation of that section). Again, the analysis begins and ends with the GEO's intent to obtain labor through a scheme plan or pattern intended to cause the Plaintiff class to believe that non-compliance would result in serious harm or physical restraint.  18 U.S.C. § 1589.  Even if some class members labored for the love of labor, rather than because of GEO's scheme threatening solitary confinement, GEO certainly attempted to secure their forced labor, thereby committing a TVPA violation subject to the same civil remedy available to the rest of the class. 18 U.S.C. § 1594(a).

Finally, GEO's argument is inconsistent with the law of class certification. The possibility that some detainees in some instances would not have minded the work would undermine class certification only if predominance were defeated by the presence of any individual questions. As the Tenth Circuit forcefully articulated in *CGC Holding*, however, the predominance prong of the class certification inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." 773 F.3d at 1087 (internal

quotation marks omitted). In other words, GEO cannot defeat class certification merely

by pointing to the fact that the legal claims at issue may call, in some cases, for an

analysis of individual subjectivity in order to establish causation.

As *CGC Holding* further elaborates in affirming certification of a civil RICO class

notwithstanding the possibility of some individualized questions of reliance,

individualized, subjective issues do not defeat certification as long as class-wide evidence

provides an "aggregation-enabling" mechanism for evaluating class members' claims:

> Reliance, as a means of establishing RICO causation and beyond,
> takes on uncommon gravity when it arises in the context of establishing
> predominance under Rule 23. In practice, efforts to certify classes based on
> causes of action that require an element of causation, including RICO, often
> turn on whether the class can demonstrate that reliance is susceptible to
> generalized proof.
>       The status of reliance as a focal point at the class certification stage
> is primarily a forward-looking evidentiary concern. Since reliance is often a
> highly idiosyncratic issue that might require unique evidence from
> individual plaintiffs, it may present an impediment to the economies of time
> and scale that encourage class actions as an alternative to traditional
> litigation.
>       In terms of Rule 23 doctrine, individualized issues of reliance often
> preclude a finding of predominance. But that is not always the case.
> Sometimes issues of reliance can be disposed of on a classwide basis
> without individualized attention at trial. For example, where circumstantial
> evidence of reliance can be found through generalized, classwide proof,
> then common questions will predominate and class treatment is valuable in
> order to take advantage of the efficiencies essential to class actions. Under
> certain circumstances, therefore, it is beneficial to permit a commonsense
> inference of reliance applicable to the entire class to answer a
> predominating question as required by Rule 23.

*Id.* at 1089-90. Just as a factfinder could conclude based on reasonable inferences that

any individual class member in this case performed labor because of the threat of solitary

confinement or the threat of legal process, so too can this reasonable inference be applied classwide. *Klay v. Humana, Inc.,* 382 F.3d 1241, 1259 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

### b. *VWP Class*

GEO's arguments against predominance also fail with respect to the VWP class. GEO seems to think that unjust enrichment claims cannot be certified for class treatment because they can sometimes turn on the evaluation of a panoply of equitable considerations, including the "intentions, expectations, and behavior of the parties." Opp. at 41. That argument ignores, however, that unjust enrichment claims are susceptible to classwide treatment where they allege that the defendant's policy leads to the unjust retention of a benefit provided by the plaintiffs. *See, e.g.*, *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. 2011) ("Although unjust enrichment ordinarily requires individualized inquiries, this is not an ordinary case…. [Defendant]'s  conduct was the same with regard to each class member in all relevant respects… [Defendant] has failed to explain why it would be equitable for it to retain the amounts collected from some of the putative class members, but inequitable to retain the amounts collected from others."); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 279 (D. Mass. 2004).

In this case, Plaintiffs attack GEO's policy applied uniformly across the VWP class. That policy allows GEO to benefit from tremendous cost savings through the

conscription of nearly free labor provided by a captive workforce detained by GEO. Compounding the unfairness, GEO tells workers that they cannot possibly ask for more because the price GEO will pay is capped by law. The Court may later determine whether this policy results in GEO's unjust enrichment based on an evaluation of the circumstances at GEO's Aurora facility and the history and purposes of the VWP Policy. *See* note 2, *supra*. Those circumstances raise difficult and important questions. But all of them are classwide.

GEO also takes issue with the fact that unjust enrichment damages may differ for individual VWP class members depending on the number of hours they worked. But this will almost always be the case for class actions involving an employer's failure to pay legal wages. *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 379 (7th Cir. 2015). And class actions based on a policy (official or unofficial) of not paying legal wages may be certified even if "scores of separate trials might be necessary to determine which class members were actually adversely affected by the policy and if they were, what loss each class member sustained." *Id.* at 379-80.

There is no requirement that Plaintiffs produce expert testimony at the class certification stage to establish the precise formula that the Court might ultimately use to determine damages for individual class members. Class certification is appropriate, notwithstanding the possibility of disparate damages awards for class members, if the plaintiffs establish that the class members' injuries flowed from the alleged classwide

harm. *See Starr v. Chicago Cut Steakhouse, LLC*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014) (plaintiffs need not produce "expert testimony or a particular damage model; [they simply must show] the damages sought are the result of the class-wide injury that the suit alleges." (internal quotation marks omitted)). In this case, Plaintiffs and putative VWP class members were all harmed by the same VWP Policy.

Moreover, although Plaintiffs need not finally establish the formula for determining individualized damages, in this case, that formula will involve a straightforward analysis of the number of hours worked by each class member and the wage he should have been paid for that work. That wage can be determined based on a number of considerations—including the state minimum wage, the USDOL determined wage that GEO would otherwise pay an employee to do that work, or the fair market value of the work according to government contractors in the industry. The Court may interpret the appropriate wage, however, for the entire VWP Class.

Finally, as GEO effectively concedes, if the unjust enrichment claims satisfy predominance as to liability but raise too many individual questions to support classwide adjudication of damages, then the Court can certify a liability-only unjust enrichment class. Opp. at 44.

### 2. Superiority

For all of the reasons Plaintiffs have articulated here and in their Motion for Class Certification, a class action is the superior mechanism of resolving this dispute. Contrary

to GEO's argument the important issues in this case turn on classwide questions; there are no "individualized mini-trial type determinations that inhere in the Plaintiffs' remaining causes of action." Opp. at 46. The questions here are whether the Forced Labor Policy violates the forced labor statute and whether the VWP Policy results in GEO's unjust enrichment under state law.

Finally, the unique circumstances of the putative classes militate strongly in favor of class treatment. It is difficult to see how a significant the putative class members could ever individually seek relief for the ways that they were harmed by GEO's common practices were it not for the Rule 23 device.

Dated: June 15, 2016                        Respectfully Submitted,


                                            *S/ Alexander Hood*
                                            Alexander Hood
                                            David Seligman
                                            Andrew Schmidt
                                            Towards Justice
                                            1535 High St., Suite 300
                                            Denver, CO 80218
                                            (720) 441-2236
                                            alex@towardsjustice.org
                                            david@towardsjustice.org
                                            andy@towardsjustice.org

                                            Brandt Milstein
                                            Milstein Law Office
                                            595 Canyon Boulevard
                                            Boulder, CO 80302
                                            (303) 440-8780
                                            brandt@milsteinlawoffice.com

Andrew Turner
Beuscher, Kelman, Perera, & Turner, P.C.
600 Grant St., Suite 450
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com

R. Andrew Free
1212 7th Avenue North
Nashville, Tennessee 37208
(844) 321-3221
(615) 829-8959
Andrew@ImmigrantCivilRights.com

Hans Meyer
Meyer Law Office, P.C.
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Attorneys for Plaintiffs*

**Certificate of Service**

I hereby certify that on 6/15/2016, the above was filed using this Court's CM/ECF system, which caused all counsel of record to be served electronically pursuant to FRCP 5.

s/ Alexander Hood
Alexander Hood
Attorney for the Plaintiffs