No. __-____

---

In The

# United States Court of Appeals for the Tenth Circuit

---

ALEJANDRO MENOCAL, MARCOS BRAMBILA, GRISEL XAHUENTITLA, HUGO HERNANDEZ, LOURDES ARGUETA, JESUS GAYTAN, OLGA ALEXAKLINA, DAGOBERTO VIZGUERRA, and DEMETRIO VALEGRA, on their own behalf and on behalf of all others similarly situated,

Plaintiffs,

v.

THE GEO GROUP, INC.,

Defendant-Petitioner.

---

On Petition to Appeal from the U.S. District Court for the District of Colorado, Civil Action No. 1:14-cv-02887-JLK, Judge John L. Kane, Presiding

---

## THE GEO GROUP, INC.'S PETITION
## FOR PERMISSION TO APPEAL CLASS CERTIFICATION

---

Dana Eismeier
BURNS, FIGA & WILL
6400 S. Fiddlers Green Circle
Suite 1000
Greenwood Village, Colorado 80111
(303) 796-2626
deismeier@bfwlaw.com

Mark Emery
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
(202) 662-0210
mark.emery@nortonrosefulbright.com

Charles A. Deacon
NORTON ROSE FULBRIGHT US LLP
300 Convent Street
San Antonio, Texas 78205
(210) 270-7133
charlie.deacon@nortonrosefulbright.com

March 13, 2017

Counsel for Defendant-Petitioner

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, The GEO Group, Inc. states that it is a publicly-traded corporation (NYSE: GEO) that has no parent company, and that The Vanguard Group, Inc. and BlackRock Fund Advisors own more than 10% of GEO's stock.

*/s/ Mark Emery*
Counsel for Defendant-Petitioner

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ...................................................... i

TABLE OF AUTHORITIES ............................................................................ iii

INTRODUCTION AND QUESTIONS PRESENTED ...........................................1

BACKGROUND ............................................................................................4

    A.    ICE Contracts With GEO To Provide Detention Facilities .......4

    B.    The Requirement That Detainees Perform Housekeeping Chores ...............................................................................5

    C.    The $1.00 Daily Allowance Under The VWP ..........................6

    D.    The Plaintiffs' Claims And The District Court's Rulings .........7

STANDARD OF REVIEW ...............................................................................8

WHY IMMEDIATE REVIEW IS APPROPRIATE ...............................................8

  I.    The District Court Provided No "Rigorous Analysis" Of Whether  Plaintiffs' Novel And Indeterminate Claims Pass Rule 23's Strict Standards ...............................................................8

    A.    The Trafficking Claim Is Unfit For Class Treatment ..............10

    B.    The Unjust Enrichment Claim Is Unfit For Class Treatment ...............................................................................17

    C.    There Is No Damages Model ..................................................21

  II.    GEO's Status As A Federal Contractor Strongly Favors Immediate Review ..............................................................................22

RELIEF REQUESTED ....................................................................................23

CERTIFICATE OF COMPLIANCE WITH WORD VOLUME LIMITATION

CERTIFICATE OF DIGITAL SUBMISSION

CERTIFICATE OF SERVICE

ii

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*Alioto v. Hoiles*,
   No. 04-CV-00438, 2010 WL 3777129 (D. Colo. Sept. 21, 2010) ................18

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................................................16

*Bayh v. Sonnenburg*,
   573 N.E.2d 398 (Ind. 1991) ............................................................18

*Bijeol v. Nelson*,
   579 F.2d 423 (7th Cir. 1978) ..........................................................12

*Britvar v. Schainuck*,
   791 P.2d 1183 (Colo. App. 1989)....................................................17

*In re Busetta-Silvia*,
   314 B.R. 218 (B.A.P. 10th Cir. 2004) .............................................11

*CGC Holding Co., LLC v. Broad & Cassel*,
   773 F.3d 1076 (10th Cir. 2014) ...................................................9, 17

*Channer v. Hall*,
   112 F.3d 214 (5th Cir. 1997) ..........................................................12

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013).....................................................................21

*David v. Signal Int'l, LLC*,
   No. 08-cv-1220, 2012 WL 10759668 (E.D. La. Jan. 4, 2012).......................14

*Downes v. Rivera*,
   No. 15-705, 2015 WL 9022001 (10th Cir. Dec. 8, 2015) ................................8

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
   304 F.R.D. 601 (D. Colo. 2015) ..................................................9, 20

*Gene & Gene LLC v. BioPay LLC*,
   541 F.3d 318 (5th Cir. 2008) .......................................................................9

*Goodyear Atomic Corp. v. Miller*,
   486 U.S. 174 (1988)....................................................................................12

*Guevara v. INS*,
   902 F.2d 394 (5th Cir. 1990) .....................................................................19

*Guevara v. INS*,
   No. 90-1476, 1992 WL 1029 (Fed. Cir. Jan. 6, 1992) ...................................19

*Hause v. Vaught*,
   993 F.2d 1079 (4th Cir. 1993) ...................................................................12

*Holy Trinity Church v. United States*,
   143 U.S. 457 (1892)....................................................................................11

*Lagasan v. Al-Ghasel*,
   92 F. Supp. 3d 445 (E.D. Va. 2015) ...........................................................21

*Lewis v. Lewis*,
   189 P.3d 1134 (Colo. 2008)........................................................................17

*Mazengo v. Mzengi*,
   No. 07–756, 2007 WL 8026882 (D.D.C. Dec. 20, 2007) .............................21

*Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*,
   287 P.3d 842 (Colo. 2012)...................................................................17, 20

*Shook v. Bd. of Cty. Comm'rs*,
   543 F.3d 597 (10th Cir. 2008) .....................................................................9

*Stanford v. Ronald H. Mayer Real Estate*,
   849 P.2d 921 (Colo. App. 1993)..................................................................18

*Tourscher v. McCullough*,
   184 F.3d 236 (3rd Cir. 1999) .....................................................................12

*Trevizo v. Adams*,
   455 F.3d 1155 (10th Cir. 2006) ......................................................................8

*United States v. Am. Trucking Ass'ns, Inc.*,
   310 U.S. 534 (1940)......................................................................................10

*United States v. Black*,
   773 F.3d 1113 (10th Cir. 2014) ....................................................................11

*United States v. Todd*,
   627 F.3d 329 (9th Cir. 2010) ........................................................................11

*Vallario v. Vandehey*,
   554 F.3d 1259 (10th Cir. 2009) ......................................................2, 8, 9, 22

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).........................................................................................8

*Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*,
   725 F.3d 1213 (10th Cir. 2013) ......................................................9, 17, 20

*Whyte v. Suffolk Cty. Sheriff's Dep't*,
   No. 15-00444-E (Sup. Ct. Mass. Jan. 8, 2016)............................................19

*Yates v. United States*,
   135 S. Ct. 1074 (2015)...........................................................................10, 11

## STATUTES:

8 U.S.C. § 1103...................................................................................................4

8 U.S.C. § 1225...................................................................................................4

8 U.S.C. § 1226...................................................................................................4

8 U.S.C. § 1226a.................................................................................................4

8 U.S.C. § 1231...................................................................................................4

8 U.S.C. § 1555(d) ............................................................................................18

18 U.S.C. § 1589 ....................................................................2, 13, 15, 17

18 U.S.C. § 1593 .................................................................................2

18 U.S.C. § 1595 .................................................................................2

22 U.S.C. § 7101 ...............................................................................11

28 U.S.C. § 1292(e) .............................................................................1

Dep't of Justice Appropriation Act, 1979,
    Pub. L. No. 95-431, 92 Stat. 1021 (1978) ......................................18

**RULES:**

Fed. R. App. P. 5 .................................................................................1

Fed. R. Civ. P. 23(a) ....................................................................3, 9, 13

Fed. R. Civ. P. 23(b) ....................................................................3, 16

Fed. R. Civ. P. 23(f) ...................................................................1, 8, 22

**OTHER SOURCES:**

Aurora Detention Center, Policies & Procedures ..............................6, 7

BLACK'S LAW DICTIONARY (8th ed. 2004). .......................................11

ICE Aurora Facility Detainee Handbook .........................................5, 6

ICE Nat'l Detainee Handbook ..............................................................5

U.S. Dep't of Justice, Immigration & Naturalization Serv., Opinion
    Letter (Nov. 13, 1992) 1992 WL 1369402 ......................................18

U.S. Dep't of Justice, Immigration & Naturalization Serv., Opinion
    Letter (Feb. 26, 1992) 1992 WL 1369347 ......................................19

Performance-Based Nat'l Detention Standards 2011 ........................5, 6

## INTRODUCTION AND QUESTIONS PRESENTED

The district court's class certification presents legally unsettled issues of national importance and manifest errors that warrant immediate review. Order Granting Motion for Class Certification, Docket Number ("Dkt.") 57 ("Order") (Attachment A); Fed. R. Civ. P. 23(f); 28 U.S.C. § 1292(e); Fed. R. App. P. 5. This case asks the Court to decide whether the district court properly certified classes authorizing an alleged 60,000 immigration detainees to seek monetary relief based on two novel theories:

(1) Does a contractor operating a detention facility for the federal government compel "forced labor" in violation of a federal human trafficking statute by requiring detainees to periodically perform housekeeping chores, when that contractor and its housekeeping policies are subject to extensive federal contractual and regulatory requirements as well as direct federal supervision, and the housekeeping policy is both longstanding and judicially-accepted?

(2) Is the contractor "unjustly enriched," and required to pay restitution to detainees for the detainees' participation in a federally-created, sponsored and supervised voluntary work program, when the settled expectation for decades has been that participants are provided a daily allowance of $1?

Defendant-Petitioner The GEO Group, Inc. ("GEO") operates immigration detention facilities under contracts with the Department of Homeland Security

("DHS") and Immigration and Customs Enforcement ("ICE"), subject to extensive contractual, regulatory and statutory requirements.  Since 1986, GEO has operated Colorado's Aurora Detention Center (the "Facility"), where this dispute arises.

Plaintiffs are current and former immigration detainees at the Facility.  They have obtained certified classes on two theories: (1) the "Trafficking Claim," alleging that they are entitled to damages and restitution under the Trafficking Victims Protection Act ("TVPA" or "Trafficking Act"), 18 U.S.C. §§ 1589, 1593, 1595, which GEO has allegedly violated by requiring detainees to perform housekeeping chores under an ICE-approved and -supervised policy ("Sanitation Policy"); and (2) the "Unjust Enrichment Claim," alleging that GEO has been unjustly enriched, under Colorado law, by work ICE detainees performed under the federally-sanctioned Voluntary Work Program ("VWP") for the $1 daily allowance paid by GEO, authorized by Congress, and reimbursed by ICE.

As the district court recognized, these claims are unprecedented.  Order 2, 20.  Other than the court below, no court in the U.S. has recognized either of the claims, much less certified classes of up to 60,000 members.  Nonetheless, the court *denied* GEO's motion for interlocutory appeal of the merits, thereby shielding the merits from this Court's review.  Such unprecedented claims deserve extra vigilance to ensure that class certification based on them follows "rigorous analysis."  *Vallario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir. 2009).

2

The district court's class analysis did not meet this standard.  Instead of demanding evidence required by Federal Rules of Civil Procedure 23(a) and 23(b)(3), the district court found commonality, typicality, predominance, and superiority based solely on presumptions and inferences.  The TVPA aims to punish human traffickers, not to award damages to immigration detainees against an ICE contractor implementing federal sanitation policies.  Even if the TVPA applied, it would necessarily require individualized, subjective determinations of what—if any—action by GEO caused a particular detainee to labor.

Unjust enrichment claims under Colorado law turn on the "reasonable expectations" of the parties, making them notoriously unfit for classwide resolution.  The district court failed to require *any* evidence that a single detainee—much less a class—reasonably expected to receive more than the $1 daily VWP allowance.  This allowance was ratified by Congress decades ago, upheld by courts, and adopted in ICE's contractual reimbursement rate to GEO at the Facility.  Detainees are not employees.  Any reasonable expectation of more than the established allowance must therefore be predicated on specific reasons explaining why a particular detainee expected special treatment.

Finally, the district court certified a class on unprecedented claims without requiring *any* evidence regarding Plaintiffs' model for damages—a clear example of extending every presumption and inference in Plaintiffs' favor.

Claims like these could be filed against ICE's contracting partners across the U.S., creating potentially immense costs.  GEO remains subject to ongoing contractual and regulatory strictures requiring it to carry out the very conduct for which it would be tried.  Its obligations to the federal government mean that any change to its programs on account of the Plaintiffs' claims could land it in trouble with the government.  Plaintiffs and their counsel dislike ICE's policies, but instead of taking those grievances to Congress or petitioning for changes in agency policy, they are pursuing a class action lawsuit for monetary relief that puts GEO in an acutely problematic and intolerable position of carrying out federal government directives while facing potentially massive financial harm for doing so.  Before similar Trafficking Act and unjust enrichment claims become the next class action cottage industry, this Court should grant permission for GEO to appeal the district court's unprecedented order.

## BACKGROUND

### A.    ICE Contracts With GEO To Provide Detention Facilities.

The Immigration and Nationality Act ("INA") authorizes DHS/ICE to detain aliens awaiting removals or hearings and mandates that ICE detain certain classes of immigrants.  *See* 8 U.S.C. §§ 1225, 1226, 1226a, 1231.  DHS/ICE may contract with private entities, such as GEO, to provide secure facilities for confinement.  *Id.* §§ 1231(g), 1103(a), (c).

4

## B.      The Requirement That Detainees Perform Housekeeping Chores.

ICE requires that detention facilities "maintain the highest sanitation standards at all times in all locations without exception."  ICE Aurora Facility Detainee Handbook ("Aurora Handbook"), Dkt. 51-1, at PL46; *see* Performance-Based Nat'l Detention Standards 2011 ("PBNDS"), Dkt. 51-2, § 1.2; ICE Nat'l Detainee Handbook ("Nat. Handbook"), Dkt. 51-3, at PL92.  Sanitation at detention facilities is "an organized, supervised and continuous program of daily cleaning by all detainees[.]"  Aurora Handbook, at PL46.  GEO implements these requirements through an ICE-approved program.

Detainees are required to keep their "personal living area[s] clean and sanitary."  *Id.*; *see* PBNDS § 5.8(V). Additionally, the "[h]ousing units and all common areas must be kept clean and should be ready for inspection at any time."  Aurora Handbook, at PL46.  Each day, staff prepare and post a list of detainees designated to perform these duties.  *Id.* at PL47.  ICE requires all detainees to participate in this sanitation program.  *Id.*; PBNDS § 5.8(V).

Under ICE policy, refusing to clean an assigned living area usually results in the typical sanctions of a warning or reprimand.  PBNDS, App'x 3.1.A, § III.  A permissible, but rare, step is to place a detainee in disciplinary segregation.  Ceja Dep., Dkt. 50-1, 88:24-90:3.  In such rare cases, the detainee is administratively segregated while awaiting a hearing.  During this segregation, detainees may still

watch television and participate in two hours of daily social time.  *Id*. at 54:4-54:12, 55:15-55:19.  GEO's corporate representative could recall only one detainee complaint related to segregation for a cleaning issue.  *Id*. at 69:5-69:22, 71:12-71:18.  None of the parties who submitted declarations in support of class certification claim to have been placed in segregation for refusing to clean.

### C.     The $1.00 Daily Allowance Under The VWP.

Some Facility detainees volunteer to perform painting, food, laundry, barbershop, and sanitation services through the ICE-authorized VWP.  Aurora Handbook, at PL36; Aurora Detention Center, Policies & Procedures ("P&P"), Dkt. 50-4, § 8.1.8(A).  GEO administers the VWP at the Facility under ICE's broad standards, and specific ICE-approved policies and procedures.  VWP aims to offer constructive work opportunities that contribute to the orderly operation of the Facility, improve essential operations and services, and reduce idleness and disciplinary-code violations.  P&P § 8.1.8(B); *see* PBNDS § 5.8.  Participation in the VWP is voluntary.  PBNDS § 5.8

The $1 daily allowance for VWP work is not an hourly wage and has never been negotiated with detainees.  ICE states that "[d]etainees shall receive monetary compensation for work completed in accordance with the facility's standard policy.  The compensation is at least $1.00 (USD) per day."  *Id.*  Thus, a facility may lawfully provide an allowance of $1.00 per day under ICE policy.  GEO's standard

policy for the Facility provides this allowance.  P&P § 8.1.8(J).  GEO pays detainees directly on a daily basis and is reimbursed by ICE.  The daily allowance follows the Facility contract's reimbursement rate, which cannot be raised without federal authorization.  Aurora Facility Contract, Dkt. 11-2, at 3.

### D.      The Plaintiffs' Claims And The District Court's Rulings.

The Plaintiffs brought three claims:  (1) a claim that GEO violated Colorado's Minimum Wage Order ("CMWO Claim"); (2) the Trafficking Claim; and (3) the Unjust Enrichment Claim.  GEO moved to dismiss all three.  The district court dismissed the CMWO Claim, but declined to dismiss the other two. Memorandum Opinion & Order, Dkt. 23.  The district court also denied both GEO's motion for reconsideration, Order on Motion for Reconsideration, Dkt. 33, and its motion for an order granting an interlocutory appeal of the dismissal order, Order on Motion for Interlocutory Appeal, Dkt. 48.

After  limited discovery, Plaintiffs moved for class certification of the Trafficking Claim, proposing a class of "[a]ll persons detained in [GEO's] Aurora Detention [Center] in the ten years prior to the filing of this action."  Plaintiffs' Motion for Class Certification, Dkt. 49, at 10 ("Mot.").  Plaintiffs also proposed a class of "[a]ll people who performed work [at] [GEO's] Aurora Detention [Center] under [GEO's] VWP policy in the three years prior to the filing of this action" for the Unjust Enrichment Claim.  *Id.* at 19.  On February 27, 2017, the district court

7

certified Plaintiffs' proposed classes, naming Plaintiffs as class representatives, Plaintiffs' counsel as class counsel.  Order 21.

## STANDARD OF REVIEW

This Court has "unfettered" discretion to grant permission to appeal a class certification order on an interlocutory basis for "any consideration [the Court] find[s] persuasive" and has rejected a "rigid test" restricting Rule 23(f) review. *Vallario*, 554 F.3d at 1262-63 (quoting Fed. R. Civ. P. 23(f) Advisory Committee note).  A Rule 23(f) appeal "may be appropriate when the class certification order implicates unresolved legal issues and may facilitate development of the law." *Downes v. Rivera*, No. 15-705, 2015 WL 9022001, at *1 (10th Cir. Dec. 8, 2015). Review is also appropriate when a class certification order is manifestly erroneous, such as when it contains "significant and readily ascertainable" deficiencies. *Vallario*, 554 F.3d at 1263-64.

## WHY IMMEDIATE REVIEW IS APPROPRIATE

**I.    The District Court Provided No "Rigorous Analysis" Of Whether Plaintiffs' Novel And Indeterminate Claims Pass Rule 23's Strict Standards.**

A party seeking class certification must "affirmatively demonstrate" compliance with Rule 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  That party bears "a strict burden of proof" to show Rule 23's requirements "are clearly met."  *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).  A

8

district court must conduct a "rigorous analysis" of whether Rule 23 is satisfied. *Vallario*, 554 F.3d at 1267.  A district court errs by "'relaxing and shifting Rule 23(a)'s strict burden of proof' to the party opposing certification, 'liberally construing' the class certification requirements, or resolving doubts 'in favor of certification.'" *Friedman v. Dollar Thrifty Auto. Grp., Inc*., 304 F.R.D. 601, 605 (D. Colo. 2015) (quoting *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc*., 725 F.3d 1213, 1218 (10th Cir. 2013)).  "Actual, not presumed, conformance" with Rule 23 is "indispensable." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014).

Finally—and crucially—"it is impractical to construct 'an impermeable wall' that will prevent the merits from bleeding into the class certification decision to some degree." *CGC Holding*, 773 F.3d at 1087 (quoting *Shook v. Bd. of Cty. Comm'rs*, 543 F.3d 597, 612 (10th Cir. 2008)).

Here, the novel and indeterminate nature of the Plaintiffs' claims creates an insurmountable barrier to class certification.  *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008) (trial court must consider "how a trial on the merits would be conducted if a class were certified").  The Trafficking Act was not remotely designed for claims against a private contractor implementing a housekeeping policy in a federal detention facility.  Separately, an unjust enrichment theory assumes that parties exhibit intentions to bilaterally form

9

reasonable expectations about a contract or other agreement. This application is wholly inapposite given voluntary participation in a program where the daily allowance has long been established by federal policy and independent contracts. The district court manifestly erred by ignoring the problems caused by all of this conjecture, an error exacerbated by its denial of an interlocutory appeal on the merits. And in attempting to make the claims work in the class action context, the district court improperly made presumptions and liberal inferences in favor of class certification.

### A.    The Trafficking Claim Is Unfit For Class Treatment.

The district court manifestly erred by ignoring the purpose and text of the Trafficking Act and by failing to rigorously scrutinize multiple elements of the Plaintiffs' certification showing.

Courts interpret statutes by "constru[ing] the language so as to give effect to the intent of Congress." *United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 542 (1940). Statutory language should be interpreted "not only by reference to the language itself, but as well by the specific context in which that language is used, and the broader context of the statute as a whole." *Yates v. United States*, 135 S. Ct. 1074, 1081-82 (2015) (plurality opinion) (holding that the term "tangible object[s]" did not include fish, since the context of the statute showed it was intended to address banking misconduct). Although the Plaintiffs argue that the

plain language of the Trafficking Act applies to GEO's conduct, that conduct is clearly outside the scope of the provision when viewed in context. *See id.* at 1088-89 (plurality opinion); *id.* at 1090 (Alito, J., concurring). *See also Holy Trinity Church v. United States*, 143 U.S. 457, 458-65 (1892).[1]

Congress did not intend the TVPA to apply to cases like this one. Congress enacted the TVPA "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." 22 U.S.C. § 7101(a). Congress based the Trafficking Act on "a substantial amount of evidence on the traffic in the sexual services of women based on importing women from around the world by force or fraud." *United States v. Todd*, 627 F.3d 329, 333 (9th Cir. 2010). ***None*** of Congress's twenty-four separate findings indicates that Congress intended the TVPA to apply to detainees lawfully held in United States custody at a private detention facility.

Plaintiffs' allegations categorically differ from the type of conduct the TVPA was intended to proscribe. To "traffic" means "to trade or deal in." *Traffic*, BLACK'S LAW DICTIONARY (8th ed. 2004). GEO did not, and does not, "trade or

---

[1] *See United States v. Black*, 773 F.3d 1113, 1115-16 (10th Cir. 2014) (interpreting criminal statute to avoid "strange results" in the application of the statute); *In re Busetta-Silvia*, 314 B.R. 218, 223 n.25 (B.A.P. 10th Cir. 2004) (recognizing *Holy Trinity*'s doctrine).

deal in" the Plaintiffs or anyone else.  And housekeeping chores expected of detainees, under ICE-approved policies, do not involve GEO in "trafficking" persons for forced labor.  Detainees, including Plaintiffs, are at the Facility in the custody of ICE, which exercises exclusive authority to detain them.  Nobody trafficked them there.

Further, the Sanitation Policy requires detainees to do chores, not to engage in "forced labor."  A policy that requires detainees to help clean has long been upheld in decisions that preceded the TVPA's enactment in 2000, further reinforcing Congress' lack of intent that it prevent such activity.[2]  *See Channer v. Hall*, 112 F.3d 214, 219 (5th Cir. 1997) (holding that "the federal government is entitled to require a communal contribution by an INS detainee in the form of housekeeping tasks").[3]

---

[2] *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988) ("We generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts.").

[3] *See also Tourscher v. McCullough,* 184 F.3d 236, 243-44 (3d Cir. 1999) (pretrial detainee not entitled to minimum wage because standard of living is guaranteed and work "bears no indicia of traditional free-market employment"); *Hause v. Vaught*, 993 F.2d 1079, 1081, 1085 (4th Cir. 1993) (pretrial detainees may be required to "assist in cleaning the common areas of their cell-block"); *Bijeol v. Nelson*, 579 F.2d 423, 424–25 (7th Cir. 1978) (pretrial detainee "may constitutionally be compelled to perform simple housekeeping tasks in his or her own cell and community areas").

Allowing Plaintiffs to use a human trafficking statute to seek monetary relief over cleaning duties renders the TVPA absurd and makes certification of a class based on it impossible.  The TVPA does not apply to the alleged conduct, and the Trafficking Claim is inappropriate for class treatment on this basis alone.

Nonetheless, the district court's denial of the motion to dismiss—and of an interlocutory appeal of that ruling—required GEO to oppose class certification with the assumption that the TVPA somehow applied, and the district court made many presumptions and liberal inferences as to how the claims would apply. According to the district court, Plaintiffs' "circumstances are uniquely suited for a class action" because "[a]ll share the experience of having been detained in the Facility and subjected to uniform policies that purposefully eliminate nonconformity."  Order 2.  Under this view, the court found Rule 23(a) commonality because the "uniformly applicable Sanitation Policy . . . is the glue that holds the allegations of the [Plaintiffs] and putative class members together, creating a number of crucial questions with common answers."  Order 8.

As GEO argued, however, the Trafficking Act requires that a defendant knowingly obtain labor "by means of" various coercive actions, such as threats.  18 U.S.C. § 1589(a).  The case law establishes (and the district court agreed), that when the TVPA *does* apply in other contexts, it contains an inescapably subjective

element.  *See David v. Signal Int'l, LLC*, No. 08-cv-1220, 2012 WL 10759668, at

*16-22 (E.D. La. Jan. 4, 2012).

This subjective element pervades the proposed class with individualized

determinations necessary to determine when alleged TVPA violations have

occurred.  One of the three "common" questions identified by the district court

was:  "Does GEO knowingly obtain detainees' labor using that [Sanitation

Policy?"  Order 8.  Indeed, Plaintiffs' Trafficking Claims explicitly "turn on"

whether GEO "obtained Plaintiffs' labor 'by . . . means of' the threat of solitary

confinement."  Mot. at 15.  But to prove that this "threat" was the "means" by

which a detainee's labor was obtained, Plaintiffs would need to establish that this

sanction alone was the subjective reason each individual detainee performed labor

in every instance.  Detainees—like all persons—have their own motivations.  They

may like to have a sanitary environment.  They may respect and willingly obey the

Sanitation Policy. Or they may just wish to stay busy.  Damages and restitution

cannot be awarded to detainees who performed chores for a reason other than the

threat of disciplinary segregation.  But the certified class undoubtedly includes at

least some such parties.[4]

---

[4] Even if 1% of supposed 50,000-60,000 class members held other reasons for
performing household chores, 500 or more of the class members would get
improper relief under the TVPA.

14

Further, this commonality analysis lacked rigor.  Plaintiffs provided no evidence foreclosing the possibility that detainees performed housekeeping chores for some reason other than the threat of disciplinary segregation; the district court simply presumed this was true.  Order 2, 8.  The district court noted that members are not required to share an "identical" fact situation, Order 9, but here causation is dispositive as to class membership:  if a detainee was not coerced to work "by means of" some action prohibited by Section 1589, then that detainee suffered no Trafficking Act violation.

With respect to typicality, the district court found it "irrelevant" that none of the Plaintiffs was actually disciplined for violating the Sanitation Policy, and that none were at the Facility prior to 2011 (although the Plaintiffs seek class relief back to 2004).  *Id.*  Again, the district court presumed or liberally inferred the factual predicates that the Plaintiffs were required to prove, finding typicality because  "[t]he nature of detention is unique in that it allows the detainer to almost fully control the experience of the detainee," making the Plaintiffs' experience typical of all class members.  *Id.*  The court has simply presumed that the policy somehow gives GEO full control over the subjective motives of all detainees.  The district court cites no support for this overbroad statement, which would also imply that a contractor could coerce not just labor, but virtually anything.

15

The district court did the same with the "far more demanding" Rule 23(b)(3) predominance requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). The district court agreed that the Trafficking Act contains a subjective component, requiring the plaintiff to show "whether the victims actually labored ***because of*** the perpetrator's conduct." Order 12-13 (emphasis original). But it found the subjective component did not foreclose class certification by drawing robust inferences in favor of class certification:

> Representatives argue, as an alternative to eliminating the subjective component of the statu[t]e, that the 'by means of' element can be satisfied by inferring from classwide proof that the putative class members labored because of GEO's improper means of coercion. Representatives are correct that ***there is nothing preventing such an inference***. I have not found and GEO has not provided any authority requiring that, for TVPA claims, causation must be proven by direct and not circumstantial evidence.

Order 13 (emphasis added). The court further added that "[g]iven the climate in which they were detained, ***it is possible that an inference of causation*** would be appropriate even despite some class members' purported willingness to work for reasons other than GEO's improper means of coercion." *Id*. (emphasis added).

This is not the rigorous analysis required by Rule 23. Rather than demanding proof that the "proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623, the district court posited an unsupported social-psychological profile of the "climate" of detention, which made it "possible" to create an "inference of causation" on a circumstantial

basis.  By this string of inferences, the district court impermissibly evaded the insurmountable problem that causation under Section 1589 would be subjective and individualized, preventing class certification.  *See XTO Energy*, 725 F.3d at 1218; *CGC Holding*, 773 F.3d at 1086.

### B.   The Unjust Enrichment Claim Is Unfit For Class Treatment.

With respect to the Unjust Enrichment Claim, the district court manifestly erred by assuming that all putative class members shared the same expectations and by shifting the burden to GEO to prove the opposite.

Under Colorado law, unjust enrichment requires a plaintiff to establish that (1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation.  *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008).  Whether retention of the benefit is unjust involves considering "among other things, the intentions, expectations, and behavior of the parties."  *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 287 P.3d 842, 847 (Colo. 2012).  Specifically, the compensation must be ***reasonably expected***.  *Britvar v. Schainuck*, 791 P.2d 1183, 1185 (Colo. App. 1989) (upholding jury verdict denying unjust enrichment claim because "plaintiff had failed to prove that

defendant had accepted the benefits of her services under circumstances that would warrant a reasonable expectation that compensation should be paid").[5]

The $1 daily allowance for participation in the VWP has been Congressionally authorized for decades. From 1950 to 1979, Congress authorized "payment of allowances ... to aliens, while held in custody under the immigration laws, for work performed." 8 U.S.C. § 1555(d). The appropriations bills authorized reimbursement for the VWP "at a rate not in excess of $1.00 per day." *See*, *e.g.*, Dep't of Justice Appropriation Act, 1979, Pub. L. No. 95-431, 92 Stat. 1021, 1027 (1978).

Later, Congress opted to authorize general appropriations for the VWP. U.S. Dep't of Justice, Immigration & Naturalization Serv., Opinion Letter (Nov. 13, 1992) 1992 WL 1369402, at *1. ICE now reimburses contractors for VWP allowances, at an amount typically dictated—as it is here—by contract, making the

---

[5] *See also Stanford v. Ronald H. Mayer Real Estate, Inc.*, 849 P.2d 921, 923 (Colo. App. 1993) (a claim for unjust enrichment should be denied where a plaintiff "had no sustainable expectation of compensation under the circumstances"); *Alioto v. Hoiles*, No. 04-CV-00438, 2010 WL 3777129, at *15 (D. Colo. Sept. 21, 2010) (concluding in the context of legal services that "it is unjust … to retain a benefit … in situations where there was a reasonable expectation by both parties that compensation to the attorney is appropriate") *aff'd*, 531 F. App'x 842 (10th Cir. 2013); *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408-09 (Ind. 1991) (detainees not entitled to recover in quantum meruit because they had no reasonable expectation of payment when hospital officials told them they would not be paid for their work).

$1.00 per day allowance "a matter of legislative [and agency] discretion." *Guevara v. INS*, No. 90-1476, 1992 WL 1029, at *2 (Fed. Cir. Jan. 6, 1992).

The $1.00 daily allowance has withstood legal challenges for decades. *See Guevara v. INS*, 902 F.2d 394, 396 (5th Cir. 1990) (rejecting challenge to $1.00 per day allowance to immigration detainees as violation of the minimum wage provisions of the Fair Labor Standards Act because immigration detainees are "removed from American industry," they are "not within the group that Congress sought to protect in enacting the FLSA"); *Whyte v. Suffolk Cty. Sheriff's Dep't*, No. 15-00444-E (Sup. Ct. Mass. Jan. 8, 2016) (ICE detainee challenging $1 allowance not entitled to state minimum wage) (Attachment B).  The allowance is not a negotiated wage; it is "a valid exercise of the congressional power to regulate the conduct of aliens." U.S. Dep't of Justice, Immigration & Naturalization Serv., Opinion Letter (Feb. 26, 1992) 1992 WL 1369347, at *1 (concluding that "[a]lien detainees who perform work for the [DHS/ICE]. . . are not considered 'employees' for purposes of employer sanctions," as a detainee performs work for "institution maintenance, not compensation").

Given this backdrop, no detainee could reasonably expect that his or her VWP job would pay a negotiated or minimum wage without offering specific grounds showing that GEO would depart from the established allowance in his or her case.  Indeed, because of the "fact-intensive" nature of unjust enrichment

claims, *Melat*, 287 P.3d at 847, "courts generally find that unjust enrichment claims are not appropriately certified for class treatment, as common questions will rarely, if ever, predominate." *Friedman*, 304 F.R.D. at 611 (citation omitted). The same holds true here.

The district court committed manifest error by certifying a class without requiring Plaintiffs to establish their reasonable expectation of payment beyond the daily allowance. Indeed, the district court did not address the requirement at all. Instead, it reverted to the Order's flawed central theme: that "detainment presents distinctive conditions," and Plaintiffs and class members working in the VWP "in an environment GEO controlled," made the Plaintiffs' experience typical and the class questions common. Order 17. The court concluded that "[i]t is not necessary to analyze the intentions, expectations, and behavior of each individual class member; it is enough to consider the overall context based on classwide proof." Order 18. But as the foregoing authorities show, the "overall context" leads the conclusion that the $1 daily allowance is ***not*** a basis for unjust enrichment. The court erred by shifting the burden ***to GEO*** to explain why it would be "equitable" to "retain a benefit from some class members, but not others." *Id.*; *XTO Energy, Inc.*, 725 F.3d at 1218.

### C.     There Is No Damages Model.

A court must engage in a rigorous analysis to ensure evidentiary proof of damages at the class certification stage, including a method to determine possible damages on a classwide basis.  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-33 (2013).  The district court provided no rigorous analysis of damages or restitution for either claim.

In proper TVPA cases, courts look to "all relevant circumstances ..., including sex, age, condition in life and any other fact indicating susceptibility of the injured person to [the] type of harm." *Mazengo v. Mzengi*, No. 07–756, 2007 WL 8026882, at *7 (D.D.C. Dec. 20, 2007); *see*, *e.g.*, *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 457-58 (E.D. Va. 2015) (awarding $400 per day for severe emotional distress to worker trafficked into the U.S. and forced to work excessive hours in terrible conditions).

Plaintiffs, however, have never explained which damages would factor into their Trafficking Claim, and whether those damages support commonality or typicality.  To the extent they may seek to analogize damages or restitution to a wage claim, Plaintiffs provide no basis for valuing the household chores.  The district court merely concluded that "considering the numerous questions common to the class, I find that the possible need for specific damages determinations does

not predominate." Order 14. The court manifestly erred by failing to make findings as to a classwide damages model.

The district court's analysis of the Unjust Enrichment Claim also lacked rigor. It acknowledged that "VWP participants worked varying hours and did not all perform the same type of work" and that any award "would need to account for those individual factors." Order 19. Given the history of the daily allowance, however, no detainee had any reasonable expectation of receiving an hourly wage for VWP work. Nonetheless, the district court took the Plaintiffs at their word that "individual damages in this case should easily be calculable using a simple formula." *Id.* If so, Plaintiffs should have been required to provide a damages model.

## II.   GEO's Status As A Federal Contractor Strongly Favors Immediate Review.

The Court is receptive to granting permission to appeal under Rule 23(f) in "death knell" cases, in which "a questionable class certification order is likely to force either a plaintiff or a defendant to resolve the case based on considerations independent of the merits," such as by settlement. *Vallario*, 554 F.3d at 1263. This scenario is *more* intolerable. GEO is the sole defendant here. But its financial and legal position is dictated by its contracts with the federal government. These contracts were drafted on the assumption that the sanitation policy and daily VWP allowance would continue to be effective—a reasonable assumption given

22

that both policies have withstood legal scrutiny for decades.  But the district court's novel certification of a class comprising all people detained at the Facility over the past ten years poses a potentially catastrophic risk to GEO's ability to honor its contracts with the federal government.[6]   And the skeleton of this suit could potentially be refiled against privately operated facilities across the United States, causing GEO and other contractors to defend them even though GEO firmly believes that policies give the Plaintiffs no legal claim.  GEO's status as a government contractor puts it in the position of having to answer for what are essentially grievances against Congressional and DHS/ICE policies, and to face substantial claims for monetary relief that it will be unlikely able to settle.

## RELIEF REQUESTED

The Court should grant GEO's petition, reverse the certification order, and grant all other relief to which GEO is entitled.

Dated:  March 13, 2017              Respectfully submitted,

                                   /s/ Mark Emery
                                   Mark Emery
                                   Norton Rose Fulbright US LLP
                                   799 9th Street NW, Suite 1000
                                   Washington, DC 20001
                                   (202) 662-0210
                                   mark.emery@nortonrosefulbright.com

---

[6] Because the district court did not require, or even describe, a damages model, GEO cannot even estimate a ceiling for damages.

Charles A. Deacon
NORTON ROSE FULBRIGHT US LLP
300 Convent Street
San Antonio, Texas 78205
(210) 270-7133
charlie.deacon@nortonrosefulbright.com

Dana Eismeier
BURNS, FIGA & WILL
6400 S. Fiddlers Green Circle
Suite 1000
Greenwood Village, Colorado 80111
(303) 796-2626
deismeier@bfwlaw.com

## CERTIFICATE OF COMPLIANCE
## WITH WORD VOLUME LIMITATION

This petition complies with the type-volume limitations of Fed. R. App. P. 5 because it contains 5,196 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman typeface.

Dated: March 13, 2017

_____
                    */s/ Mark Emery*
              Counsel for Defendant-Petitioner

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing document:

a. all required privacy redactions have been made per 10th Cir. R. 25.5;

b. if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

c. The digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, McAfee antivirus software, version 4.8.0.1938, last updated March 13, 2017, and according to the program is free of viruses.

Dated: March 13, 2017

_____
                    */s/ Mark Emery*
              Counsel for Defendant-Petitioner

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2017, I sent by overnight mail and by

email copies of the petition to the appointed class counsel for the Plaintiffs:

Alexander N. Hood
Towards Justice-Denver
1535 High Street, Suite 300
Denver, CO 80218
(720) 239-2606
alex@towardsjustice.org

Andrew H. Turner
Kelman Buescher Firm
600 Grant Street, Suite 450
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com

Hans C. Meyer
Meyer Law Office, P.C.
P.O. Box 40394
1029 Santa Fe Drive
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

R. Andrew Free
R. Andrew Free Law Office
414 Union Street, Suite 900
Nashville, TN 37209
(615) 244-2202
Andrew@lmmigrantCivilRights.com

Brandt P. Milstein
Milstein Law Office
595 Canyon Boulevard
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

Dated: March 13, 2017

_____
       */s/ Mark Emery*
Counsel for Defendant-Petitioner