## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.: 1:14-cv-02887-JLK**

ALEJANDRO MENOCAL, *et al*.,

     Plaintiffs,

v.

THE GEO GROUP, INC.,

     Defendant.

## PROPOSED SCHEDULING AND DISCOVERY ORDER

### 1. DATE OF CONFERENCE

     None Set.

### 2. STATEMENT OF CLAIMS AND DEFENSES

    a.   <u>Class Representatives' statement</u>:

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the case arises under 18 U.S.C. § 1595. The Court may exercise jurisdiction over Plaintiffs' Colorado common law unjust enrichment claims pursuant to 28 U.S.C. § 1367. Class Representative Plaintiffs (Representatives) and the certified class they represent (collectively, "the Class") are current and former civil immigration detainees who are being held or were held at Defendant The GEO Group, Inc.'s ("GEO") Aurora Detention Facility. GEO is a private, for-profit prison corporation. Representatives brought suit on their own behalf and on behalf of the Class to challenge GEO's practice of forcing civil immigration detainees to clean GEO's facility, under threat of solitary confinement, for no

pay. The Class also challenges GEO's practice of paying detainees $1 per day for their work scrubbing and waxing GEO's floors, running GEO's laundry and kitchen, performing GEO's clerical work, and landscaping GEO's grounds, among other tasks.

The Class is comprised of two overlapping subclasses—one proceeding under the Trafficking Victims Protection Act (TVPA), and one proceeding on an unjust enrichment cause of action. The Class proceeds under the TVPA because GEO "knowingly provides or obtains the labor or services of [civil immigrant detainees] by… means of force, threats of force, physical restraint, or threats of physical restraint." (18 U.S.C. § 1589(a) and § 1595). The Class also proceeds under an unjust enrichment cause of action because GEO's retention of the benefits it collected from the sub-class's labor violates principles of justice, equity, and good conscience.

The Court dismissed Representatives' claims under the Colorado Minimum Wage Order but allowed their TVPA and unjust enrichment claims to proceed. [Doc. No. 23] The Court denied GEO's request for reconsideration of its TVPA and unjust enrichment rulings [Doc. No. 33] and then denied GEO's request to certify its orders for interlocutory appeal. [Doc. No. 48]. The Court then granted Representatives' motion to certify their proposed classes, appoint them as class representatives, and appoint their counsel as class counsel. [Doc. No. 57].

GEO has now filed a petition for interlocutory appellate review [Doc. No. 58]. Representatives oppose GEO's petition. (Attached as Exhibit A).

   b.    Defendants' statement:

The GEO Group, Inc. ("GEO") operates immigration detention facilities under

contracts with the Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE"), subject to extensive contractual, regulatory and statutory requirements. The Immigration and Nationality Act ("INA") authorizes DHS/ICE to detain aliens awaiting removals or hearings and mandates that ICE detain certain classes of immigrants. See 8 U.S.C. §§ 1225, 1226, 1226a, 1231. DHS/ICE may contract with private entities, such as GEO, to provide secure facilities for confinement. *Id.* §§ 1231(g), 1103(a), (c).

Since 1986, GEO has operated Colorado's Aurora Detention Facility, where this dispute arises. Persons detained at the Aurora facility are in the lawful custody of ICE. While housed at the facility, detainees have the opportunity to participate in ICE's Voluntary Work Program ("VWP"), where they earn $1 per day for performing certain work. GEO also implements ICE's Housing Unit Sanitation policy, under which detainees are expected to perform basic housekeeping chores to keep their personal living areas clean and sanitary.

Plaintiffs' TVPA claim is not legally actionable. Congress did not intend the TVPA to apply to cases like this one, and Plaintiffs' TVPA claim is barred by the government contractor defense. (See GEO's Motion to Dismiss (Doc. No. 11) at pp. 11-14; GEO's Reply in Support of Motion to Dismiss (Doc. No. 18) at pp. 5-6, 22-28; GEO's Motion for Reconsideration (Doc. No. 29) at pp. 10-23, 29-30.)

DHS' role in combating human trafficking highlights the absurdity of applying the TPVA to this case. DHS is part of the task force responsible for enforcing the TVPA's criminal prohibitions by monitoring and combating trafficking. See 18 U.S.C. § 1589(d);

22 U.S.C. § 7103(b).  GEO administers, under DHS's supervision, the DHS sanitation program that Plaintiffs allege equates to human trafficking.  Plaintiffs are therefore alleging that DHS, an agency charged with investigating and arresting traffickers, is actually authorizing and overseeing a massive human trafficking operation.  That is absurd.

Additionally, the TVPA requires that the defendant "knowingly" obtain the labor of another person by specified means.  Section 1589 of the TVPA "requires proof" that the defendant "knowingly" took certain action "as a means to coerce the victim to provide labor or services against her will."  *Muchira v. Al-Rawaf*, --- F.3d ----, 2017 WL 836059, at *10 (4th Cir. Mar. 2, 2017).  GEO's implementation of ICE-approved and -supervised sanitation and work policies is insufficient to prove that GEO "knowingly" violated the TVPA.

Finally, the TVPA requires proof that GEO obtained the Plaintiffs' labor "by means of" force or threat.  28 U.S.C. § 1589(a).  Plaintiffs cannot prove that force or threat alone was the subjective reason each individual detainee performed labor in every instance.  Indeed, on the application to participate in the VWP, many detainees (including five of the nine named Plaintiffs) marked a box expressing that they would work without pay if the paid positions were filled.

Plaintiffs' unjust enrichment claim is also legally untenable.  Plaintiffs must prove that (1) GEO received a benefit, (2) at the Plaintiffs' expense, (3) under circumstances that would make it unjust for GEO to retain the benefit without commensurate compensation.  *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008).  Whether retention of

the benefit is unjust involves considering "among other things, the intentions, expectations, and behavior of the parties." *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 287 P.3d 842, 847 (Colo. 2012). Specifically, the compensation must be "**reasonably expected**." *Britvar v. Schainuck*, 791 P.2d 1183, 1185 (Colo. App. 1989) (emphasis added).

Plaintiffs cannot prove this subjective element by representative evidence, as doing so would violate the Rules Enabling Act, *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1048 (2016), GEO's Due Process rights, *Hilao v. Estate of Marcos*, 103 F.3d 767, 785 (9th Cir. 1996), and GEO's Seventh Amendment right to a trial by jury, *Cimino v. Raymark Industries, Inc.*, 151 F.3d 297, 320 (5th Cir. 1998).

Furthermore, no Plaintiff could have a reasonable expectation that his or her VWP job would pay a negotiated or minimum wage because the detainees agreed, in writing, to the $1.00 daily allowance in the Detainee Voluntary Work Program Agreements. And beyond the Plaintiffs' reasonable expectations, the Detainee Voluntary Work Program Agreements preclude Plaintiffs' unjust enrichment claims, as "[a] party generally cannot recover for unjust enrichment . . . when there is an express contract addressing the subject of the alleged obligation to pay." *Pulte Home Corp. v. Countryside Cmty. Ass'n*, 382 P.3d 821, 833 (Colo. 2016). *See also Pernick v. Computershare Trust Co.*, 136 F. Supp. 3d 1247, 1267–69 (D. Colo. 2015) (holding that the plaintiff's unjust enrichment claim was precluded by a written agreement).

As damages for GEO's alleged unjust enrichment, Plaintiffs seek the fair market value of their work, but courts have recognized that people under the lawful custody of

ICE are not free market participants. *See Tourscher v. McCullough*, 184 F.3d 236, 244 (3rd Cir. 1999); *Alvarado Guevara v. INS*, 902 F.2d 394, 396 (5th Cir. 1990). Thus, even if Plaintiffs' had a valid claim for unjust enrichment, "fair market value" would not be determined by analyzing free market wages, but by analyzing wages earned by people held in ICE custody pursuant to the laws of the United States.

Plaintiffs and their counsel dislike ICE's policies, but instead of taking those grievances to Congress or petitioning for agency rulemaking, they have pursued a class action lawsuit for monetary relief against GEO. Similar claims could be filed against ICE contracting partners across the U.S., creating potentially immense costs for the U.S. government and taxpayers. GEO remains bound by ongoing contractual and regulatory strictures requiring it to carry out the very conduct for which it would be tried. Plaintiffs' claims put GEO in an unfair and intolerable position of carrying out federal government directives while facing potentially massive financial liability for doing so.

GEO also incorporates by reference the affirmative defenses stated in its Answer. [1]

### 3.    UNDISPUTED FACTS

The following facts are undisputed:

a.  Plaintiffs were in ICE custody while detained at GEO's Aurora Detention Facility.

b.  Some Plaintiffs participated in the "Voluntary Work Program."

---

[1] On March 13, 2017, GEO filed a petition for interlocutory review under Fed. R. Civ. P. 23(f) in the Tenth Circuit Court of Appeals. GEO requested Plaintiffs' consent to the stay the case while the Tenth Circuit proceedings are pending, which Plaintiffs declined. If Plaintiffs' position is unchanged, GEO may petition for a stay.

c. Detainees who participate in the Voluntary Work Program are paid $1 per day for their work.

## 4. COMPUTATION OF DAMAGES

<u>Plaintiffs</u>:

**Unjust Enrichment Damages:** Representatives bring their unjust enrichment claims to recover for themselves and the Class an amount in damages equal to (a) the difference between the amount they were paid for their work (W) and the fair market value of their work (FMV), plus (b) the amount of their exemplary damages (E) under Colorado law, such that:

Unjust Enrichment Damages = (FMV) – (W) + (E)

## **<u>Computing FMV</u>**

To compute the Fair Market Value of work through the VWP, Representatives begin with the 30(b)(6) testimony of GEO's representative, Dawn Ceja, regarding the proper wage comparator. GEO indicated that the appropriate comparator for the hourly rate of pay for VWP Class members is the prevailing wage for a detention officer. Ceja 30(b)(6) Dep. at 171-172. According to GEO's contract with ICE, the prevailing wage determination for detention officers is $24.05 per hour.

In addition to wages, the Fair Market Value of labor GEO retained unjustly would include leave, benefits, and other costs attendant to recruiting, screening, hiring and retention of workers. Plaintiffs will seek additional damages discovery from GEO and introduce at least one expert regarding the proper method for computing these additional costs and arriving at an FMV.

## Computing W

As to the computation of (W)—the amount actually paid to class members—GEO has produced invoices for VWP reimbursement covering most months in the class period. Using those invoices, and additional invoices to be obtained through discovery, the Class will provide the (W) variable for computation.

During a single month—in November of 2012—GEO paid for 1680 shifts of detainees' work (also referred to as "man days"). Ceja 30(b)(6) Dep. at 179-180. So, for example, (W) for the month of November 2012 would be 1,680 shifts multiplied by $ 1 (one dollar) per shift, equaling $1,680.

## Computing FMV Minus W

The initial wage difference between what GEO would have to pay a detention officer, and what it paid a single detainee, would be calculated by (a) multiplying $24.05 times hours worked, then (b) subtracting the one dollar paid *per shift* to the detainee. (Shifts range in length from four (4) to eight (8) hours). So, for November 2012, the initial wage damages could be computed as 1680 shifts, x hours worked per shift, x $24.05 per hour, minus the $1 per daily shift paid to detainees.

**TVPA Damages:** As to the Representatives and Class's TVPA claims, they seek compensatory damages, punitive damages, restitution, and attorney fees and costs. As in the Unjust Enrichment claims damages calculation above, Representatives and the Class's compensatory damages will be calculated based on the fair market value of the work for which GEO paid nothing.

Precise calculations of Representatives and Class's actual damages (e.g. restitution)

cannot be made until Defendant produces records of the hours worked by Class in Defendant's "Housing Unit Sanitation" program.

Class's damages for punitive damages will be decided by the trier of fact.

Class's attorney fees and litigation costs are described in section 5(i) below.

<u>Defendant</u>:

GEO disputes that Plaintiffs are entitled to any damages. GEO's implementation of federal policies and programs does not subject it to liability to detainees in the custody of ICE pursuant to the laws of the United States. GEO anticipates offering expert opinions to rebut Plaintiffs' damages calculations. GEO does not claim damages, but reserves the right to seek its reasonable costs and attorney fees under applicable federal and Colorado law.

**5. REPORT OF SUPPLEMENTAL DISCOVERY & MEETING UNDER Fed. R.Civ. P. 26(f)**

a. Date of Rule 26(f) meeting: March 21, 2017

b. Names of each participant and each party represented:

> Andrew Free, Attorney for Plaintiffs
> Charlie Deacon, Dana Eismeier, and Mark Emery, Attorneys for Defendant.

c. Proposed changes, if any, in timing or requirement of disclosures under Fed.R.Civ.P. 26(a)(1):

Rule 26(a)(1) disclosures have already been made. Plaintiffs intend to timely supplement their Rule 26 disclosures. GEO intends to serve Supplemental Rule 26 disclosures with respect to the certified classes as soon as practicable after the Court

resolves the parties' dispute regarding the *Touhy* doctrine, as discussed in Section 6(i), below.

    d.      Statement as to when Rule 26(a)(1) disclosures were made or will be made:

    See above.

    e.      Statement concerning any agreements to conduct informal discovery:

<u>Representatives</u>: Representatives intend to informally request GEO provide any records it has containing the names and last known contact information for all members of each certified sub-class.

Defendant: None.

    f.      Statement concerning any agreements or proposals regarding electronic discovery:

Consistent with this District's Guidelines Addressing the Discovery of Electronically Stored Information, the parties have conferred regarding the conduct of E-discovery in this case. The parties have discussed all issues in this District's Meet-and-Confer Checklist regarding ESI.

    g.      Statement concerning any other agreements or proposals to reduce discovery and other litigation costs:

On March 13, 2017, GEO filed a Petition for Permission to Appeal Class Certification to the Tenth Circuit Court of Appeals.  Under Fed. R. Civ. P. 23(f), GEO may petition an appropriate court for an order staying proceedings in the District Court during the pendency of any appeal.  A stay would minimize the immediate costs of class discovery while the Court of Appeals reviews the merits of class certification.

Representatives have informed GEO they believe interlocutory appellate review is improper given the law of this Circuit, and that they oppose a stay of discovery.

Representatives have proposed a stipulation pursuant to Fed. R. Civ. P. 30(b)(4) permitting the deposition of any witness located outside the territorial jurisdiction of the United States via internet video conference, thus eliminating the need for witnesses, attorneys, and/or court reporters to travel internationally, and greatly reducing the costs of obtaining such depositions. GEO requests the right to be present in person for any deposition and opposes a general order that depositions made be conducted by video-conference.

h.      Statement regarding use of the unified exhibit numbering system:

The parties have previously agreed to use a unified exhibit numbering system.

i.      Each party shall set forth its anticipated costs of conducting this litigation, itemizing costs including travel and attorney fees for taking depositions, paralegal expenses, costs of preparations, costs of drafting written discovery, anticipated motions and costs of complying with discovery requests.

<u>Representatives</u>:

Representatives estimate the remaining costs of litigating this case to judgment before the district court will range from $380,000 - $570,000.

- Anticipated cost of <u>class notice</u>:

  o   $60,000-$80,000

- Anticipated <u>deposition costs</u> including attorney fees and travel:

  o   $200,000

- Anticipated attorney fees for <u>drafting written discovery</u>:

- $10,000

- Anticipated attorney fees for <u>responding to written discovery</u>:

    - $20,000 - $40,000, depending on scope

- Anticipated costs and attorney fees for <u>motions practice arising out of GEO's *Touhy* objection</u>s:
-

    - $5,000-$15,000

- Anticipated costs of and attorney fees for <u>summary judgment briefing</u>:

    - $50,000

- Anticipated costs and attorney fees of <u>briefing discovery-related motions</u>

    - $25,000

- Anticipated <u>expert witness costs and fees</u>:

    - $15,000 - $25,000

- Anticipated <u>trial costs</u>:

    - $100,000

- Additional miscellaneous costs and expenses:

    - $5,000 - $25,000

<u>Defendant</u>:

GEO estimates the costs and fees associated with litigating this case through trial will total between 590,000 and $1,290,000**.**  This range contemplates discovery and trial testimony from the Parties and experts.  GEO reserves the right to amend this estimate. Below is an itemization of this estimate.

- Anticipated <u>deposition costs</u> including attorney fees and travel: $75,000 to $150,000.

- Anticipated costs and attorney fees for <u>drafting written discovery</u>: $10,000 to $15,000.

- Anticipated costs and attorney fees for <u>responding to written discovery</u>: $100,000 to $500,000, depending upon the scope of the requests.

- Anticipated costs and attorney fees for <u>opposing class certification</u>: $75,000 to $100,000.

- Anticipated costs of <u>Rule 23(f) appeal, including petition, briefing, and oral argument</u>: $75,000 to $100,000.

- Anticipated costs and attorney fees for <u>briefing Defendant's Motion for Summary Judgment</u>: $50,000 to $75,000.

- Anticipated costs and attorney fees for <u>briefing discovery motions, Daubert motions, and other miscellaneous motions practice</u>:  $50,000 to $75,000.

- Defendant's anticipated <u>expert witness costs and fees</u>: $30,000 to $60,000.

- Anticipated <u>Trial costs</u>: $100,000 to $150,000.

- Other miscellaneous costs and fees: $25,000 to $65,000.

## 6. CASE PLAN AND SCHEDULE

The plan and schedule must include the following items:

**a.    Deadline for Joinder of Parties**

The Parties agree the deadline for joinder of Parties has passed.

**b.**      **Deadline to Amend Pleadings**

<u>Representatives</u>: The Representatives propose an amendment deadline of 90 days following the entry of this Court's scheduling order.

<u>Defendant: GEO proposes an amendment deadline of 60 days following the entry of this Court's scheduling order.</u>

**c.**      **Discovery Cut-off**

See Proposed Case Schedule, attached as Exhibit A.

**d.**      **Dispositive Motion Deadline**

See Proposed Case Schedule, attached as Exhibit A.

**e.**      **Expert Witness Disclosure**

(1)      Statement regarding anticipated fields of expert testimony, if any:

<u>Representatives</u>: Representatives anticipate designating the following experts:

- Economist or statistician regarding Representatives' and the Class's economic damages;

- Labor expert regarding the fair market value of services provided by Representatives and the Class to GEO.

- Federal government contracting expert

- Detention Policy, Procedure, and Oversight Expert

<u>Defendant</u>: GEO anticipates designating experts in the following fields:

- Economist/Statistician.

- Psychologist/Psychiatrist.

- Labor expert.

- Government Contracting.

- DHS/ICE Policies and Procedures.

(2)     Statement regarding any limitations proposed on the use or number of expert witnesses:

        None.

(3)     The parties shall designate all experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2): See Proposed Case Schedule, attached as Exhibit A.

(4)     The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2): See Proposed Case Schedule, attached as Exhibit A..

(5)     All designations of experts shall include a statement describing the methodology to be used by the particular expert. *Daubert/Kumho Tire* motions challenging any proposed methodology may be considered before the expert is deposed. Such a motion does not preclude the filing of any subsequent motions. The aim is to cut off faulty methodology before undertaking extensive discovery and may result in amended designation with either a new expert, a revised methodology or both.

(6)     Notwithstanding the provisions of Fed. R. Civ. P. 26(a)(2), no exception to the requirements of the rule will be allowed by stipulation of the parties unless the stipulation is approved by the court.

**f.     Deposition Schedule**

<u>Representatives</u>:

Representatives anticipate deposing the following individuals:

| Name of Deponent | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|
| 1. ICE 30(b)(6) Witness from Office of Acquisition Management | TBD | TBD | 4 hours |

| | | | |
|---|---|---|---|
| 2. ICE 30(b)(6) Witness from Officer of Detention Policy and Planning | TBD | TBD | 7 hours |
| 3. ICE 30(b)(6) Witness from Enforcement and Removal Operations | TBD | TBD | 7 hours |
| 4. GEO 30(b)(6) Accounting and Payroll Witness | TBD | TBD | 7 hours |
| 5. David Venturella | TBD | TBD | 7 hours |
| 6. Dawn Ceja | TBD | TBD | 7 hours |
| 7. Representative GEO Correctional Officer #1 | TBD | TBD | 7 hours |
| 8. Representative GEO Correctional Officer #2 | TBD | TBD | 7 hours |
| 9. Representative GEO Correctional Officer #3 | TBD | TBD | 7 hours |
| 10. Representative GEO Supervisor #1 | TBD | TBD | 7 hours |
| 11. Representative GEO Supervisor #2 | TBD | TBD | 7 hours |

<u>Defendant</u>:

GEO anticipates deposing the following individuals:

| Name of Deponent | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|
| 1. Alejandro Menocal | TBD | TBD | 7 hours |
| 2. Marcos Brambila | TBD | TBD | 7 hours |
| 3. Grisel Xahuentitla | TBD | TBD | 7 hours |

| | | | |
|---|---|---|---|
| 4. Hugo Hernandez | TBD | TBD | 7 hours |
| 5. Lourdes Argueta | TBD | TBD | 7 hours |
| 6. Jesus Gaytan | TBD | TBD | 7 hours |
| 7. Olga Alexaklina | TBD | TBD | 7 hours |
| 8. Dagoberto Vizguera | TBD | TBD | 7 hours |
| 9. Demetrio Valerga | TBD | TBD | 7 hours |
| 10. 30(b)(6) deposition of representative(s) of ICE | TBD | TBD | 7 hours |
| 11- GEO may depose a statistically significant sample of the classes. | TBD | TBD | 7 hours each |

g.      **Interrogatory Schedule**

Responses shall be made 60 days after service of the corresponding discovery request. The last interrogatories shall be served 60 days before the end of the discovery period in the Proposed Case Schedule.

h.      **Schedule for Request for Production of Documents**

Responses shall be made 60 days after service of the corresponding discovery request. The last requests shall be served 60 days before the end of the discovery period in the Proposed Case Schedule.

i.      **Discovery Limitations**

The Parties intend to bring to the Court a disputed legal issue related to DHS's *Touhy* regulations in this case.  The Parties' positions are very briefly summarized below:

<u>Representatives:</u>

Representatives understand that GEO claims that because it is a DHS contractor, it is subject to DHS's *Touhy* regulations, 6 C.F.R. §§ 5.41 *et seq.* Representatives respectfully submit that GEO has already waived this argument. Even assuming *arguendo* that it has not, the corporations objections to releasing information are patently frivolous. That is because, as this Court and others across the country have long held (and as GEO would know if it were actually subject to *Touhy*), *Touhy* does not apply where the federal government receiving the information request—in this case, the contractor, under GEO's theory, *see* 6 C.F.R. 5.41(c)—is a *party* to the litigation. *Romero v. United States*, 153 F.R.D. 649, 652 (D. Colo. 1994) (Borchers, J.) ("[I]t simply makes no sense that a party [the federal government] would be allowed to determine whom the other side may endorse as a witness," and, "[b]y the same token, the Government cannot use its regulation to gain an unfair advantage in precluding the best evidence from being presented in this Court at trial."). *See also Alexandra v. FBI*, 186 F.R.D. 66, 70 (D.D.C. 1998 ("The Supreme Court's holding in *Touhy* is applicable only in cases where the United States is not a party to the original legal proceeding.") (citing *State of Louisiana v. Sparks*, 978 F.2d 226, 234 (5th Cir. 1992); *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989). That is being "[w]hen the United States is a party to litigation, 'judicial control over the evidence in the case cannot be abdicated to the caprice of executive officers. This would create a significant separation of powers problem" *Alexander*, 186 F.R.D. at 70 (quoting *United States v. Reynolds*, 345 U.S. 1, 9-10 (1953).

*Touhy* governs third-party subpoenas—not discovery requests to parties in the litigation. ICE is not a party to this litigation. GEO is. Representatives intended to seek

fees and costs associated with any further attempts by the Defendant to use *Touhy* as a justification for withholding party discovery.

Defendant:

The position of the U.S. government, which GEO has followed as a government contractor, is that the DHS *Touhy* regulations do apply. Citing the DHS *Touhy* regulations, the government has refused to allow disclosure of some information sought by Plaintiffs.

Plaintiffs cite cases for the proposition that *Touhy* regulations do not apply when the U.S. government is a party to the litigation. The U.S. government is not a party to this litigation and the reasoning in Plaintiffs' cases does not apply. The straightforward rule of *Touhy* controls: A department head "may by regulation or order withdraw from his subordinates and consolidate in himself the authority to release [department] documents." *Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp. 2d 1268, 1272 (D. Colo. 2011) (citing *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)). Additionally, GEO does not have the ability to waive duly enacted DHS regulations.

Thus far in this case, GEO has acted as the go-between for Plaintiffs and the government. GEO is amenable to continue in that role, but in the event Plaintiffs disagree with a *Touhy* decision made by the government, Plaintiffs' recourse is with the government—who owns and controls the information—not GEO.

Even if Plaintiffs were correct, which GEO disputes, it would be far less burdensome for Plaintiffs to subpoena the documents and information directly from the government. That would avoid putting GEO in the middle of a potential disagreement

between the United States judicial and executive branches. Under Rule 26(c)(1)(C), the Court may prescribe "a discovery method other than the one selected by the party seeking discovery." The Court should order Plaintiffs to seek documents and information directly from the government.

      (1)     Any limits any party proposes on the length of any deposition:

Unless stipulated by the parties, or authorized by the Court, a deposition is limited to one (1) day of seven (7) hours per Rule 30(d)(1).

      (2)     Any modifications any party proposes on the presumptive numbers of depositions or interrogatories contained in the federal rules:

<u>Representatives:</u> Representatives propose that interrogatories be limited to 40 per side, not including those that were already served exclusively for the purpose of class discovery. Representatives agree to the deposition of all named Plaintiffs, at least seven GEO officials, at least three ICE deponents, plus experts.

<u>Defendant</u>: GEO proposes that interrogatories be limited to 25 per side, including discovery that has already been severed, and that GEO may take the depositions of all of the named Plaintiffs plus a statistically significant number of class members, plus three others, plus experts.

      (3)     Any limitations any party proposes on the number of requests for production of documents and/or requests for admissions:

<u>Representatives</u>: Each side is permitted up to 25 requests for production, not including requests that have already been served for the purpose of class discovery, and 25 requests for admission, not including requests that have already been served for the purpose of class discovery.

Defendant: Each side is permitted up to 25 requests for production of documents, including requests that have already been served, and 25 requests for admission, including requests that have already been served.

### j. Other Planning or Discovery Orders

The Parties remain bound by the confidentiality order entered by this Court. [Doc. No. 47]

## 7. SETTLEMENT

The Parties certify that they have discussed the possibilities for settlement or resolution of the case by alternative dispute resolution. The Parties do not believe that it would be beneficial at this time to appoint a magistrate judge for settlement purposes.

## 8. OTHER SCHEDULING ISSUES

a. Statement of those discovery or scheduling issues, if any, on which counsel, after a good faith effort, were unable to reach an agreement:

1. GEO may request a stay of discovery pending interlocutory appeal. Representatives oppose a stay.

2. Impact of DHS's *Touhy* regulations on GEO's production of responsive evidence and testimony.

b. Statement of anticipated motions-to be filed, by whom, estimated time of filing, and any proposed briefing schedule:

The Parties intend to brief the *Touhy* issue identified in section 6(i) above. The Parties shall file their opening briefs in any motion they choose to bring related to this issue no later than 21 days after the entry of the Court's Order. Responses will be due 14 days later. Replies, if desired, will be due within 7 days after that.

Representatives:

- Representatives may file a motion to enforce any subpoenas served in federal officers or agencies.

- Representatives may file a motion for partial summary judgment as to liability.

- Representatives will file a motion to strike as untimely any motion to join an indispensable party GEO files.

- Representatives may file a motion seeking leave to amend their complaint, to the extent the circumstances render such motion appropriate.

Defendant:

- GEO may file a motion to stay proceedings in an appropriate court.

- GEO may file a motion to dismiss for failure to join an indispensable party with respect to Plaintiffs' TVPA claim.  GEO anticipates filing this motion within 60 days following entry of this Order.  This issue may be raised at any time, even *sua sponte*.  *McCowen v. Jamieson*, 724 F.2d 1421, 1424 (9th Cir. 1984) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968)); *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 382–83 (2d Cir. 2006) (citing cases).

- GEO may file additional motions to dismiss related to GEO's affirmative and other defenses.

- GEO will file a motion for summary judgment by the dispositive motion

deadline.

- GEO may file a motion to decertify the two classes in this action.

  c.    Statement whether trial is to the court or jury. If a mixed trial, e.g. declaratory judgment and damages, specify which claims are to tried to a jury and which to the court.

<u>Representatives</u>: Trial as to liability and damages on both claims is to the Court.

<u>Defendant</u>: Trial is to a jury. (*See* Answer, Doc. No. 26, p. 16.)

### 9. AMENDMENTS TO DISCOVERY AND SCHEDULING ORDER

This Stipulated Scheduling and Discovery Order may be altered or amended only upon motion showing good cause and order entered thereon. As stated elsewhere herein, I will almost always grant stipulated motions for extensions of time and changes in deadlines up to and including the signing of a pretrial order. If the parties cannot agree on such extensions, my inclination is, the absence of abuse, to be permissive. On the contrary, I am not permissive or lenient in changing trial dates.

## Exhibit A – Proposed Case Schedule

| Event | Proposed Date |
|---|---|
| File Proposed Scheduling Order | March 31, 2017 |
| Fact Discovery Cut-Off | <u>Plaintiffs propose</u>:<br><br>October 28, 2017<br><br><u>Defendant proposes</u>:<br><br>12 months after resolution of *Touhy* dispute, subject to change if the case is stayed under Fed. R. Civ. P. 23(f) or otherwise. If the case is stayed, 12 months after the stay ends. |
| Plaintiffs' deadline to designate experts and serve information specified in Fed. R. Civ. P. 26(a)(2) | <u>Plaintiffs propose</u>:<br><br>October 28, 2017<br><br><u>Defendant proposes</u>:<br><br>35 days after the close of fact discovery |
| Defendant's deadline to designate rebuttal experts and serve rebuttal information specified in Fed. R. Civ. P. 26(a)(2) | 35 days after disclosure of Plaintiffs' experts |
| Deadline to complete expert discovery | 49 days after disclosure of Defendant's rebuttal experts |
| Deadline to file *Daubert* motions and dispositive motions | 35 days after the close of expert discovery |

DATED this____day of_____, 2017

BY THE
COURT:

_____
JOHN L. KANE, Senior Judge
United States District Court

**STIPULATED SCHEDULING AND
DISCOVERY ORDER APPROVED:**

/s R. Andrew Free
R. Andrew Free
LAW OFFICE OF R. ANDREW FREE
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

Alexander Hood
David Seligman
Andrew Schmidt
TOWARDS JUSTICE
1535 High St., Suite 300
Denver, CO 80218
(720) 441-2236
alex@towardsjustice.org
david@towardsjustice.org
andy@towardsjustice.org

Brandt Milstein
MILSTEIN LAW OFFICE
595 Canyon Boulevard
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

Andrew Turner

/s Dana Eismeier
BURNS, FIGA & WILL
Suite 1000
6400 S. Fiddlers Green Circle
Greenwood Village, Colorado 80111
T: (303) 796-2626
deismeier@bfwlaw.com

Mark Emery
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
(202) 662-0210
mark.emery@nortonrosefulbright.com

Charles A. Deacon
NORTON ROSE FULBRIGHT US LLP
300 Convent Street
San Antonio, Texas 78205
(210) 270-7133
charlie.deacon@nortonrosefulbright.com

*Counsel for Defendants*

THE KELMAN BEUSCHER FIRM
600 Grant St., Suite 450
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com

Hans Meyer
MEYER LAW OFFICE, P.C.
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*

## Certificate of Service

I hereby certify that on this date I served the foregoing document on counsel of record for all parties in this case via this Court's CM/ECF system.

March 31, 2017                                /s R. Andrew Free