**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-CV-02887-JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

   **Plaintiffs**,

v.

THE GEO GROUP, INC.,

   **Defendant**.

## MOTION FOR PROTECTIVE ORDER

  Defendant, The GEO Group, Inc. ("GEO"), through its undersigned attorneys, requests that the Court enter a protective order pursuant to Fed. R. Civ. P. 26(c) with respect to certain Department of Homeland Security ("DHS") documents and information requested by Plaintiffs. In support, GEO states as follows:

  **D.C.COLO.LCivR 7.1 Certification**: The undersigned certifies that GEO's counsel conferred in good faith with Plaintiffs' counsel regarding the relief requested in

1

this Motion for Protective Order. GEO's counsel conferred with Plaintiffs' counsel via email and telephone both before and after submission of the proposed Scheduling Order. Plaintiffs oppose the relief requested in this Motion for Protective Order.

## I. INTRODUCTION AND BACKGROUND

GEO is squarely in the middle of a dispute between Plaintiffs and the federal government as to whether GEO must disclose information Plaintiffs seek in discovery. The government has instructed GEO that the DHS *Touhy* regulations, 6 C.F.R. §§ 5.41–49 (the "DHS Regulations"), apply to GEO in this case. *See* letters to GEO attached as **Exhibits A, B C** and **D** from attorneys with DHS and Department of Justice.[1] If the government is correct that the DHS Regulations apply, then GEO has **no legal authority** to unilaterally disclose the DHS documents and information requested by Plaintiffs. Rather, DHS has **sole legal authority** to authorize such disclosure.

Plaintiffs disagree with the government's position that the DHS Regulations apply. It is expected Plaintiffs will argue that *Touhy* does not ever apply to discovery directed to parties in a case, and GEO is a party. Contemporaneously with GEO filing this motion, GEO understands Plaintiffs are filing a motion to compel production of information the government has instructed GEO not to supply. GEO's review of applicable 10th Circuit law, recited below, finds support for the government's legal position. But even if

---

[1] As reflected in the letters, thus far in the litigation, GEO's counsel has acted as a go-between for Plaintiffs and DHS. GEO's counsel did this as a courtesy and means of expediting communication of DHS's *Touhy* position on various documents and information requested by Plaintiffs. This process has clearly broken down.

Plaintiffs are correct that the DHS Regulations do not apply to GEO in this case, it would be more convenient and less burdensome for Plaintiffs to seek the DHS documents and information directly from DHS—which has **unquestioned** authority to authorize disclosure of those documents and information. Indeed, without commenting on this regulation's enforceability or legality, Section 5.47 of the DHS Regulations instructs GEO to "respectfully decline" to comply with an order of production. GEO should not face this dilemma when an alternative path is readily available.

In this Motion, GEO requests that the Court exercise its authority under Rule 26(b) and (c) to prescribe "a discovery method other than the one selected by the party seeking discovery." Specifically, GEO requests that the Court order Plaintiffs to seek documents and information subject to the DHS Regulations directly from DHS. If Plaintiffs are dissatisfied with DHS's response, Plaintiffs can directly challenge DHS's decision, rather than attempting to indirectly challenge DHS's decision through GEO. If the Court grants this Motion and requires Plaintiffs to seek DHS documents and information directly from DHS, there will be no need for the Court to decide whether the DHS Regulations apply to GEO in this case.

## II.  GOVERNING LAW

### A.  Legal Standard for Issuance of a Protective Order

Determining the "scope of discovery" requires considering "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Even if within the "scope of discovery," the Court "must limit" the "extent of discovery . . . if it determines that: (i) the discovery . . . can be obtained some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Similarly, under Rule 26(c)(1)(C), the Court may "for good cause, issue an order to protect a party from . . . undue burden or expense, including one or more of the following: . . . (C) prescribing a discovery method other than the one selected by the party seeking discovery."

The "good cause" standard in Rule 26(c) "is highly flexible, having been designed to accommodate all relevant interests as they arise." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (internal citations omitted). Evaluating "good cause" involves balancing the requesting party's need for information against the hardship to the other party. *See Landco Equity Partners, LLC v. City of Colo. Springs*, 259 F.R.D. 510, 512 (D. Colo. 2009); *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 169 (E.D.N.Y. 1988) (citing cases).

**B.   Background of *Touhy* Regulations**

5 U.S.C. § 301, called the Housekeeping Act, provides:

The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

In *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 467–70 (1951), the Court considered a regulation, promulgated by the Department of Justice under the Housekeeping Act, vesting sole authority to release DOJ documents in the Attorney General. As an initial matter, the Court declined to rule on the merits of the Attorney General's decision to not produce the requested documents because "[t]he Attorney General was not before the trial court." *Id.* at 467. Rather, the Court limited its analysis to whether the DOJ subordinate properly refused to comply with a document request, which the Court determined could be decided regardless of the propriety of the Attorney General's refusal to provide the documents. *Id.* at 467–69.

The Court held that the DOJ rule was a valid exercise of the Attorney General's authority under the Housekeeping Act. *Id.* at 468. Specifically, the Attorney General could "validly withdraw from his subordinates the power to release department papers." *Id.* at 467. The Court stated: "When one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas duces tecum will be willingly obeyed or challenged is obvious." *Id.* at 468.

The authority of the Attorney General upheld in *Touhy* has been expanded to other federal agencies and their employees. *Touhy* thus stands for two "unremarkable" propositions:

> (1) [a department head] may by regulation or order withdraw from his subordinates and consolidate in himself the authority to release [department] documents; and (2) the issue of the propriety of the [department head's] decision not to release the documents was not properly presented for determination because the party with the sole authority to decide the matter, the [department head], had not been personally served with the subpoena and was not before the district court.

*Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp. 2d 1268, 1272 (D. Colo. 2011).

*Touhy* has been applied by the Tenth Circuit in *Saunders v. Great Western Sugar Co.*, 396 F.2d 794 (10th Cir. 1968) and *United States Steel Corp. v. Mattingly*, 663 F.2d 68 (10th Cir. 1980) to authorize federal officers to limit discovery of agency information. The Tenth Circuit's application of *Touhy* was well-summarized by Magistrate Judge Mix in *Quezada v. Mink*, No. 10-cv-00879-REB-KLM, 2010 WL 4537086, at *3 (D. Colo. Nov. 3, 2010). After discussing the pertinent cases, Judge Mix concluded: "This line of authority makes clear that this Circuit has interpreted *Touhy* to allow federal officials to limit subordinates' authority to produce documents or provide testimony pursuant to duly-enacted regulations." *Id.* at *5.

C.  **DHS *Touhy* Regulations**

Like many other federal agencies, DHS has adopted its own *Touhy* regulations under the Housekeeping Act. The DHS Regulations apply to DHS "employees", and "employees" is clearly defined to include "contractors" such as GEO. 6 C.F.R. § 5.41(c). Section 5.43 of the DHS regulations provides in pertinent part:

> [O]nly the Office of General Counsel is authorized to receive and accept subpoenas, or other demands or requests directed to the Secretary, the Department, or any component thereof, or its employees, whether civil or criminal in nature, for: (1) Material, including documents, contained in the files of the Department; (2) Information, including testimony, affidavits, declarations, admissions, responses to interrogatories, or informal statements, relating to material contained in the files of the Department or which any Department employee acquired in the course and scope of the performance of his official duties . . . .

The Regulations apply to requests for oral testimony, written testimony, and documents. Specifically, Section 5.44 provides:

> (a) No employee, or former employee, of the Department shall, in response to a demand or request, including in connection with any litigation, provide oral or written testimony by deposition, declaration, affidavit, or otherwise concerning any information acquired while such person is or was an employee of the Department as part of the performance of that person's official duties or by virtue of that person's official status, unless authorized to do so by the Office of the General Counsel, or as authorized in § 5.44(b).
>
> (b) No employee, or former employee, shall, in response to a demand or request, including in connection with any litigation, produce any document or any material acquired as part of the performance of that employee's duties or by virtue of that employee's official status, unless authorized to do so by the Office of the General Counsel or the delegates thereof, as appropriate.

7

Under Section 5.45 of the Regulations, DHS employees, including contractors, cannot unilaterally disclose DHS information:

> Department employees may only produce, disclose, release, comment upon, or testify concerning those matters which were specified in writing and properly approved by the appropriate Department official designated in § 5.44.

Under Section 5.47, DHS employees must "respectfully decline" to produce documents and information that the Department has instructed it not to produce:

> [I]f the court or other authority rules that the demand must be complied with irrespective of the Department's instructions not to produce the material or disclose the information sought, the employee upon whom the demand has been made shall respectfully decline to comply with the demand, citing this subpart and *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

### III.  ARGUMENT

A Protective Order is needed for both legal and practical reasons.  Like the DOJ employee in the *Touhy* case, GEO is a DHS subordinate.  Plaintiffs have served discovery on GEO, but GEO has refused to produce certain information because DHS has told GEO, as its subordinate, that GEO is forbidden to respond based upon the DHS Regulations.  Contemporaneously with GEO filing this Motion, GEO understands that Plaintiffs are filing a motion to compel GEO to produce the withheld information because, in Plaintiff's opinion, the DHS Regulations do not ever apply to a party, and GEO is a party.  Plaintiffs take this position despite knowledge of the government's stance that the DHS Regulations do apply and the government's corresponding instructions to GEO.  GEO is therefore in the middle of a dispute between Plaintiffs and

DHS as to the applicably of the DHS Regulations. If ordered by this Court to produce documents and information subject to the DHS Regulations, GEO would face a conundrum. If GEO produces the documents and information, it would be in violation of DHS Regulation 5.47. If it does not, it is in violation of an order of this Court. Either way is a "no win".

Fortunately, there is a practical solution that does not require this Court to reach any conclusions about how the DHS Regulations apply to GEO. Under Rule 26(b), this court can limit discovery if it "can be obtained from some other source that is more convenient." The Court can also direct "a discovery method other than the one selected by the party seeking discovery." Fed. R. Civ. P. 26(c)(1)(C). Here, there is a readily available alternative—requiring Plaintiffs to seek DHS documents and information from DHS, the party with **unquestioned** authority to authorize disclosure. 6 C.F.R. § 5.41, *et seq*.

If the Court grants this Motion for Protective Order—as it clearly can under Rule 26(b)—Plaintiffs would simply need to direct a request or subpoena to DHS. Plaintiffs cannot seriously complain of hardship, as they could have requested information from DHS any time over the past 2½ years. Plaintiffs have known of the government's *Touhy* position since, at the latest, September 2015—when GEO served its written discovery responses. All the while, a more convenient and expeditious means of requesting information has been available; Plaintiffs have simply chosen not to pursue it.

WHEREFORE, pursuant to Fed. R. Civ. P. 26(b) and (c), GEO requests that the Court enter a protective order requiring Plaintiffs to seek documents and information subject to the DHS Regulations directly from DHS.

Respectfully submitted this 26th day of April, 2017.

S/Dana Eismeier
Dana L. Eismeier (#14379)
Michael Y. Ley (#43733)
BURNS, FIGA & WILL, P.C.
6400 S. Fiddlers' Green Circle, Suite 1000
Greenwood Village, CO  80111
303-796-2626
deismeier@bfwlaw.com
mley@bfwlaw.com

Charles A. Deacon, Esq.
NORTON ROSE FULBRIGHT US LLP
300 Convent Street, Suite 2100
San Antonio, TX  79205-3792
(210) 270-7133

Mark Emery, Esq.
NORTON ROSE FULBRIGHT US LLP
799 9th Street, NW, Suite 1000
Washington, DC  20001-4501
(202) 662-0210

**Attorneys for Defendant**
**The GEO Group, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of April, 2017, I electronically filed the foregoing **MOTION FOR PROTECTIVE ORDER** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following or deposited a copy of the filing in the United States mail, postage prepaid, addressed as follows:

Brandt Milstein, Esq.
Milstein Law Office
5959 Canyon Boulevard
Boulder, CO  80302

Andrew Turner, Esq.
Buescher, Kelman & Perera, P.C.
600 Grant Street, Suite 450
Denver, CO  80203

Alexander Hood, Esq.
Towards Justice
601 16th Street, Suite C #207
Golden, CO  80401

Hans Meyer, Esq.
Meyer Law Office, P.C.
P.O. Box 40394
Denver, CO  80204

R. Andrew Free, Esq.
Law Office of R. Andrew Free
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219

 S/ Dana Eismeier
Dana L. Eismeier (#14379)
Michael Y. Ley (#43733)
BURNS, FIGA & WILL, P.C.
6400 S. Fiddlers' Green Circle, Suite 1000
Greenwood Village, CO  80111
Phone:	303-796-2626
Fax:	303-796-2777
Email:	deismeier@bfwlaw.com

**Attorneys for Defendant**
**The GEO Group, Inc.**