## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.: 1:14-cv-02887-JLK**

ALEJANDRO MENOCAL, *et al.*,
        Plaintiffs,

v.

THE GEO GROUP, INC.,

        Defendant.

---

## PLAINTIFFS' RESPONSE IN OPPOSITION
## TO THE GEO GROUP, INC.'S MOTION FOR PROTECTIVE ORDER

---

Plaintiffs, through their undersigned counsel, hereby respectfully submit the following Response in Opposition to The GEO Group, Inc. ("GEO")'s Motion for Protective Order:

### Introduction

The Federal Rules of Civil Procedure are designed and interpreted to facilitate a "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. GEO seeks a protective order that will do the opposite. Relying on a patently erroneous legal premise and a demonstrably incorrect interpretation of the factual record, GEO proposes that this Court force Plaintiffs to redirect their party discovery against the Defendant in this case to a third-party, namely, the Department of Homeland Security ("DHS"). The sole legal justification GEO offers for this proposal is the convenience of the parties. GEO contends the source of the claimed inconvenience is the set of regulations DHS promulgated under the authority of the Federal Housekeeping Act, 5

U.S.C. § 301 and *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). 6 C.F.R. §§ 5.41-5.48 ("*Touhy* regulations"). The company, which everyone agrees *arguendo* fits within the regulatory definition of a DHS "employee" by virtue of its status as a contractor, contends that it cannot comply with Plaintiffs discovery and DHS's regulations at the same time. Consequently, GEO urges this Court to direct Plaintiffs to seek records GEO is withholding directly from DHS.

GEO's Motion must be denied because the corporation fails to carry its burden of demonstrating good cause exists to cut off party discovery. Neither the legal nor the practical hurdles GEO throws up find any basis in reality. GEO is a federal agency employee and a party to this litigation. As such, binding Tenth Circuit precedent dictates that its responses to party discovery cannot be limited by DHS's *Touhy* regulations. Moreover, the record demonstrates GEO's refusal to respond to Plaintiffs' discovery requests is the fault of the company, rather than DHS, its *Touhy* regulations, or the Plaintiffs. Forcing Plaintiffs to avail themselves of non-party discovery where the party seeking the protective order is the entity responsible withholding the documents is a non sequitur. Yet that is what GEO seeks. Finally, as GEO is well aware, the protective order the company proposes will require the Plaintiffs to engage in costly, protracted satellite litigation against the federal government to get the same information GEO is currently withholding in violation of the Federal Rules. For these reasons, GEO fails to meet its burden of showing good cause for a protective order. Its motion should be denied.

## Background

The facts of the parties' discovery dispute are straightforward. And with one major exception, they are undisputed. Plaintiffs served discovery requests on GEO in 2015. GEO provided an initial set of responses in September 2015, ECF No. 73-5, and then a supplemental set of responses in late February 2016. ECF No. 73-6. In both responses, GEO asserted DHS's *Touhy* regulations apply to the company. *See e.g.,* ECF No. 73-5 at 2-3; ECF No. 73-6 at 2-3. GEO maintains that because it is a DHS contractor, it is also an "employee" as defined at 6 C.F.R. § 5.41(c). GEO provided Plaintiffs letters from the Department of Justice ("DOJ") that confirm DHS shares this interpretation. ECF No. 72-1; ECF No. 72-2. For the purposes of this Motion, Plaintiffs do not dispute that GEO is a DHS "employee" under § 5.41(c).[1] It is at this point that the parties' (and non-party's) view of the facts diverge.

GEO paints itself as "squarely in the middle of a dispute between Plaintiffs and the federal government as to whether GEO must disclose information Plaintiffs seek in discovery." ECF No. 72 at 2; *see also* ECF No. 72 at 8-9 ("GEO is therefore in the middle of a dispute between Plaintiffs and DHS as to the applicability of the DHS [r]egulations."). GEO contends:

> [T]hus far in the litigation, GEO's counsel has acted as a go-between for Plaintiffs and DHS. GEO's counsel did this as a courtesy and means of expediting communication of DHS's *Touhy* position on various documents

---

[1]	Plaintiffs reserve the right to challenge Section 5.41(c), as applied to GEO by DHS in this case, as *ultra vires* of the Housekeeping Statute, 5 U.S.C. § 301, and in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* However, because the agency is not a party to this litigation, and the question of the regulation's legality is not before the Court, Plaintiffs do not raise this challenge here.

> and information requested by Plaintiffs. This process has clearly broken
> down.

ECF No. 72 at 2, n.1. The company therefore frames the problem as follows: "Plaintiffs have served discovery on GEO, but GEO has refused to produce certain information because DHS has told GEO, as its subordinate, that GEO is forbidden to respond based upon the DHS regulations." ECF No. 72 at 8. It is this view of the facts that leads GEO to conclude that being ordered to comply with Plaintiffs' discovery would be "a no win."

The federal government's correspondence with GEO paints a different picture. In its communication with GEO, DHS does not treat the company as merely an intermediary. Rather, the agency repeatedly informed GEO that the corporation itself—not Plaintiffs— must follow DHS's *Touhy* regulations before producing discoverable documents and information. *First*, in a September 17, 2015 letter to GEO's counsel, U.S. Immigration and Customs Enforcement ("ICE"), speaking through Assistant United States Attorney Timothy B. Jafek, informed GEO that the corporation itself must comply with the *Touhy* regulations:

> In order for ICE to evaluate your client's request that it release ICE documents or information related to ICE documents, **your client must first comply with the *Touhy* regulations**. That requires, as an initial step, that **your client** must first 'set forth in writing, with as much specificity as possible, the nature and relevance of the official information sought.' 6 C.F.R. § 5.45(a). My understanding is that you have collected the detainee files you propose to produce. Providing copies of those, with your proposed redactions, should satisfy the requirement of describing the nature of the information sought. Please supplement **your request** with a detailed description of the relevance of the information as it pertains to the issue at hand. ICE will review **your request** in light of the factors it must consider pursuant to 6 C.F.R. § 5.48.

ECF No. 72-1 at 2 (emphasis added).

4

*Second*, a week later, ICE, once again through AUSA Jafek, reiterated the agency's position:

> In order for ICE to evaluate **your client's request** that it release document [sic] subject to DHS's *Touhy* regulations, **your client** must comply with the *Touhy* regulations. That requires, as an initial step, that **your client** must 'set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought.' 6 C.F.R. § 5.45(a). ICE will then review **your request** in light of the factors it must consider pursuant to 6 C.F.R. § 5.48.

ECF No. 72-2 (emphasis added).

*Third*, on December 2, 2015, AUSA Jafek emailed GEO's counsel on behalf of ICE and U.S. Customs and Border Protection ("CBP") to inform the company that ICE was authorizing release of several documents in discovery and providing a spreadsheet identifying questions the agency had regarding releases of others. ECF No. 73-4 at 11.[2] ("ICE looked at the discovery requests to make that relevancy determination. As you can see, the relevance of most ICE or CBP documents was not apparent to ICE."). On behalf of DHS, AUSA Jafek again required GEO—not Plaintiffs—to comply with DHS's *Touhy* regulations by setting forth in detail and in writing the relevancy of documents Plaintiffs requested in discovery: "If you still want to release the ICE and CBP documents listed in the spreadsheet, please let me know what the relevance of those documents is." ECF No. 73-4 at 11. *Fourth*, and finally, on January 14, 2016, AUSA Jafek emailed GEO's counsel instructing the company to apply redactions to certain discovery productions. ECF No. 73-4 at 10.

---

[2]   GEO has not supplied Plaintiffs or this Court the spreadsheet AUSA Jafek sent. Plaintiffs' counsel first learned of its existence approximately one week before the parties' briefs on the *Touhy* issue were due.

GEO, in its initial discovery responses, tried to shift the burden onto the Plaintiffs to comply with DHS's instructions regarding the relevance requirements of *Touhy*. The company's September 2015 responses state:

> At this time, pursuant to a letter from the US Attorney's [O]ffice, Defendant is unable to provide those reports until approval is received from DHS/ICE/DOJ. See attached letters. Defendant understands that if Plaintiffs want these documents, **they must provide** DHS/ICE/DOJ with the 'detailed description of the relevance of the information as it pertains to the issue at hand.' See attached letters.

ECF No. 73-5 at 4 (GEO Response to Plaintiffs' Interrogatory No. 1). *See also id.* at 14 (GEO Response to Plaintiffs' Request for Production No. 1) ("Upon approval from DHS/ICE/DOJ, Defendant may also be able to permit inspection of 47+ boxes of 'daily sheets' which the detainees sign each day when they work.").

Subsequently, GEO informed Plaintiffs in its February 2016 set of supplemental discovery responses:

> Pursuant direction from DHS/ICE and the Department of Justice, Defendant objects to and cannot provide the [requested information] because [it] is not relevant to any claim or defense, is not likely to lead to the discovery of admissible evidence, and because the A Number is confidential subject to the Privacy Act, 5 U.S.C. § 552a, FR Doc No.:2013-27895.

ECF No. 73-6 at 4 (GEO's First Supplemental Response to Interrogatory No. 1). As to Plaintiffs' other requests, GEO states, "ICE requested that [some documents in detainee files] not be provided until the relevant requirements of Touhy are met." ECF No. 73-6 at 9 (GEO's First Supplemental Response to Interrogatory No. 5).

In sum, the evidence currently before the Court consists of repeated instructions from DHS to GEO's counsel—by way of lawyers at ICE and in the U.S. Attorney's Office—

that GEO must comply with the relevancy requirements of the DHS's *Touhy* regulations. ECF No. 72-1, 72-2, 73-4. GEO, through its discovery responses, then attempted to task Plaintiffs with *Touhy* compliance. ECF No. 73-5. The record is devoid of any other attempt by GEO to heed the instructions of DHS that the corporation itself must comply with *Touhy*. It is on this factual record that the Court must decide whether GEO has established good cause for a protective order under Fed. R. Civ. P. 26(c).

### Legal Standard

As the party seeking a protective order, GEO bears the burden of demonstrating good cause. Fed. R. Civ. P. 26(c); *Exum v. United States Olympic Committee*, 209 F.R.D. 201, 206 (D. Colo. 2002). To establish good cause, mere "conclusory statements" will not suffice; GEO must put forward "a particular and specific demonstration of fact." *Gulf Oil Co. v. Bernard*, 89 U.S. 102 n.16 (1981). In evaluating whether good cause exists, courts must balance the potential injury to or burden on the movant, the opposing party's need for the information, and any third party or public interests. *Crew Tile Distribution, Inc. v. Porcelanosa Los Angeles, Inc.*, No. 13-cv-3206-WJM-KMT, 2015 WL 5608122 at * (D. Colo. Sept. 24, 2015). To show good cause, GEO "must show specific facts demonstrating that the challenged discovery will result in a clearly defined and serious injury[.]" *E.E.O.C. v. Los Indios, Inc.*, No. 09-cv-02316-PAB-MEH, 2011 WL 93724 at *2 (D. Colo. Jan. 11, 2011) (internal citations omitted).

### Summary of Argument

GEO's Motion should be denied because its sole justification—convenience—fails. ECF No. 72 at 4-5, 9 (citing Fed. R. Civ. P. 26(b)(2)(C)(i) and Fed. R. Civ. P.

26(c)(1)(C)). The premise of GEO's "convenience" claim is that the company faces an impossible "no win" choice. ECF No. 72 at 9. GEO asserts it is caught between the Scylla of producing responsive discovery pursuant to a Court order and in asserted violation of DHS's *Touhy* regulations and the Charybdis of withholding this discovery in contempt of a Court order but in perceived compliance with DHS's *Touhy* regulations. ECF No. 72 at 8-9. GEO even contends that, by virtue of DHS's *Touhy* regulations, it lacks the legal authority to disclose the responsive discovery. ECF No. 72 at 2.

GEO's proposed solution to its "dilemma" is for this Court to force Plaintiffs to begin their discovery anew by issuing subpoenas to the Department of Homeland Security—a non-party—under Rule 45. ECF No. 72-3. According to GEO, if Plaintiffs do not receive complete responses, they "can directly challenge DHS's decision, rather than attempting to indirectly challenge DHS's decision through GEO." ECF No. 72 at 3. As GEO tacitly acknowledges through the precedents it cites, such a challenge would require Plaintiffs to file a separate action under Administrative Procedure Act ("APA"). ECF No. 72 at 6 (citing *Quezada v. Mink*, No. 10-cv-00879-REB-KLM, 2010 WL 4537086, at *3 (D. Colo. Nov. 3, 2010). This, GEO says, would be the more "convenient" approach because it would avoid a decision from the Court as to "whether the DHS [r]egulations apply to GEO in this case." ECF No. 72 at 3.

GEO's attempt to shift costs and impose the burdens of non-party discovery on Plaintiffs in the name of "convenience" must fail for at least three reasons—one legal, one factual, and one practical. *First*, as a legal matter, binding Tenth Circuit precedent forecloses GEO's legal claim that a federal agency's *Touhy* regulations can wrest control

of the substance and timing of discovery from Article III courts. *Sperandeo v. Milk Drivers & Dairy Employees Local Union 537*, 334 F.2d 381, 384-85 (10th Cir. 1964). Rather, the long-settled law of this Circuit is that federal employees who are parties to litigation may not invoke their agencies' *Touhy* regulations to limit party discovery. *Id.* at 384. The dilemma GEO presents is thus a false choice. There is no conflict between GEO's compliance with party discovery and DHS's *Touhy* regulations because GEO is a federal "employee" and party to the litigation, placing the company beyond reach of the regulations' anti-disclosure provisions.

*Second*, as a factual matter, the record reveals GEO, and not DHS, is the party responsible for denying Plaintiffs access to discovery. Because DHS did not cause the denial of discovery, requiring Plaintiffs to subpoena this discovery from DHS is not the solution. Time and time again, DHS's attorneys instructed GEO's counsel that the company was responsible for complying DHS's *Touhy* regulations. These requirements included providing detailed, written statements as to the relevance of each type of record sought in discovery.

GEO repeatedly failed to comply. Instead, the corporation unilaterally assumed the mantle of middleman and attempted to put the onus on Plaintiffs to satisfy DHS's *Touhy* regulations. Plaintiffs refused. They did so because GEO was essentially attempting an end-run around the law forbidding application of *Touhy* regulations to party discovery when federal agencies or agents are parties to litigation. In response, GEO declared the process broken. The dilemma GEO purportedly faces could have been avoided had the company simply heeded the instructions of the U.S. Attorney's Office to supply the

detailed, written statements required by DHS's *Touhy* regulations. Because GEO itself is the cause of the inconvenience in this case, it cannot demonstrate good cause for shifting that inconvenience onto Plaintiffs.

*Third,* as a practical matter, the long history of non-party *Touhy* subpoena litigation in this Circuit and elsewhere demonstrates that the solution GEO proposes is a recipe for protracted, expensive satellite litigation. GEO all but concedes that Plaintiffs will have to "directly challenge" the agency's attempts to withhold discoverable information. ECF No. 72 at 3. The positions adopted by the United States in *Quezada* litigation cited by GEO are a harbinger of the predictable, disruptive effects of forcing Plaintiffs to obtain non-party discovery from ICE through subpoena. Imposing such a requirement will almost certainly force Plaintiffs into a separate federal district court action under the APA challenging the agency's decision to withhold evidence or instruct witnesses not to answer, as ICE has already done in this case. ECF No. 72-3; ECF No. 72-4. This is hardly a more convenient path.

The fact that GEO would prefer not to challenge its contracting partners' extrajudicial determinations of which documents and testimony are discoverable in this case does not justify requiring Plaintiffs to incur the time and expense of doing so. This is particularly true where the party in custody of the documents and information requested—GEO—is the party Plaintiffs sued. These legal, factual, and practical considerations, taken individually or together, all require a finding that GEO has not established good cause for a protective order. Accordingly, the Court should deny the motion.

**A. Binding Tenth Circuit Law Resolves GEO's Concerns As to the Effect of DHS's *Touhy* Regulations on Party Discovery.**

The legal dilemma GEO presents to this Court does not exist. Nothing in DHS's *Touhy* regulations authorizes GEO to decline—respectfully or otherwise—to answer discovery where it is a party to the litigation. The law of this Circuit on this issue is well-established and unequivocal.

The Tenth Circuit has squarely addressed whether a federal agency's housekeeping regulations may limit discovery against federal employee who is a party to litigation and concluded that they may not. *Sperandeo*, 334 F.2d at 384. To understand why *Sperandeo* controls in this case, some discussion of the facts of that case may be instructive. Francis Sperandeo was the Petitioner in the case before the district court. *Id.* at 382. He sued in his official capacity as a federal employee, namely, the Acting Regional Director for the 27th Region of the National Labor Relations Board ("NLRB"). *Id.* Sperandeo sought an injunction against a union pending resolution of matters before the Board. *Id.* at 382.

When the union sought to compel the Regional Director's testimony as an adverse witness and require production of documents, Sperandeo moved to quash. *Id.* 383. He claimed (1) the NLRB's rules and regulations "forbid the disclosure or production of information, files, records or documents of the Board without the prior consent of the Board or its general counsel; (2) that the documents covered by the subpoena are official papers of the Board and neither the Board nor the general counsel had granted the requisite written consent for their disclosure; and (3) the general counsel had not granted the requisite written consent for the witness to testify." *Id.* These NLRB housekeeping

regulations were codified at 29 U.S.C.A. App. § 102.118 (1964). As several courts have contemplated, they are the functional equivalent of *Touhy* regulations. *See, e.g.*, *NLRB v. Capitol Fish Co.*, 294 F.2d 868 (5th Cir. 1961); *Olson Rug Co. v. NLRB*, 291 F.2d 655 (7th Cir. 1961).

In chambers, the federal employee subsequently offered to "permit"—i.e., comply with a federal court order for—*in camera* inspection of the documents, but only on condition that the agency would reserve the right to decline to comply with the court's order if the records were to be produced in open court. *Id.* at 383-84. The district court treated this conditional compliance as a refusal and imposed sanctions, namely, dismissal of the petition for an injunction against the union, for failure to comply with the Federal Rules of Civil Procedure. *Id.* at 384.

The Tenth Circuit affirmed the judgment. It observed that a federal official who is the party to litigation "is in no different position than any ordinary litigant and is, therefore, bound by the same discovery provisions of the Federal Rules of Civil procedure in the same respects as any ordinary litigant." *Id.* at 384. The court based this observation on the fact that the "Government as a litigant is, of course, subject to the rules of discovery." *Id.* at 384 (quoting *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 (1958)).

With these principles in mind, the panel concluded the NLRB's housekeeping regulations, which forbade testimony or production of agency records without the prior consent of the agency's general counsel, did not justify withholding records from the district court for *in camera* inspection to assess claims of work product privilege. *Id.* at 384-85. Because the court—and not the federal agency acting through administrative

fiat—has the power to determine which discovery should be produced and which may be subject to claims of privilege, the court of appeals affirmed the district court's imposition of sanctions in the form of dismissal. *Id.* at 385.

GEO cites *Saunders v. Great Western Sugar Co.* for the proposition that "*Touhy* has been applied by the Tenth Circuit to authorize federal officers to limit discovery of agency information." ECF No. 72 at 6 (citing 396 F.2d 794 (10th Cir. 1968)). What GEO curiously fails to mention is that *Saunders* itself distinguishes *Sperandeo* on the express basis that a government official was a party to the litigation. *Saunders*, 396 F.2d at 795. In *Saunders*, federal officials with the Small Business Administration ("SBA") appealed a district court's order honoring a **third-party** *subpoena duces tecum* against them issued in the course of an antitrust case. *Id.* at 794. The basis of their objection was that the SBA's *Touhy* regulations prevented them from disclosing documents without authorization, and such authorization had not been provided. *Id.* at 795 (citing 13 C.F.R. §§ 102.1-102.7).

The litigants issuing the third-part subpoena relied on *Sperandeo* to argue that the SBA could not resist the subpoena. But the Tenth Circuit found *Sperandeo* distinguishable because:

> [T]here the governmental agency brought suit to seek judicial action and then refused to disclose. Here the SBA and its officials **are not parties** to the antitrust suit in the district court in which disclosure is sought.

*Id.* at 795 (emphasis added).

The lead Tenth Circuit authority GEO relies upon acknowledges that *Touhy* regulations cannot limit party discovery where an agency or its employee is a party to the

litigation. *Saunders*, 396 F.2d at 795. Contrary to GEO's claim, there is no difficult question about the applicability of DHS's *Touhy* regulations to avoid. *Sperandeo* stands for the proposition that neither GEO nor DHS has any legal authority under DHS's *Touhy* regulations to impose limits on party discovery in this case.

## B. Because GEO Is the Party Responsible for Denying Plaintiffs Discovery, the Company Cannot Relieve Itself of Its Discovery Obligations.

GEO has not demonstrated good cause for the protective order it seeks because GEO itself is the cause of the claimed inconvenience —not DHS, its *Touhy* regulations, or the Plaintiffs. DHS informed GEO repeatedly that it must comply with DHS's *Touhy* regulations before releasing discoverable information to Plaintiffs. ECF No. 72-1 at 2; ECF No. 72-2; ECF No. 73-4 at 11. GEO chose not to fully comply with DHS's repeated admonitions, particularly those requiring detailed, written statements as to relevancy from the company. Instead, GEO attempted to shift the burden of compliance onto the Plaintiffs by requiring them to supply *Touhy* statements before getting discovery responses. ECF No. 73-5 at 4, 18. Contrary to DHS's position, which treated GEO's *Touhy* compliance as mandatory, GEO ultimately characterized its communications with DHS as "a courtesy" and chose to portray itself as a beleaguered middleman. ECF No. 72 at 2 n.1. When Plaintiffs refused to assume the burden DHS placed on GEO, the record reflects GEO did nothing and declared the process had broken down. ECF No. 72 at 2 n.1. The record before the Court reveals that DHS has not withheld discoverable evidence from Plaintiffs. Rather, the record demonstrates it is GEO's failure to meet its *Touhy* obligations that denied Plaintiffs the evidence they seek. Now GEO comes to the Court

with unclean hands seeking a protective order and judicial imprimatur for its abject refusal to heed DHS's instructions, comply with *Touhy*, and produce the evidence Plaintiffs seek.

## C. Requiring Plaintiffs to Subpoena DHS Will Almost Certainly Spawn Costly and Protracted Satellite Litigation under the APA.

Finally, GEO has not demonstrated good cause for a protective order to issue because GEO's proposed "convenient and expeditious" alternative is anything but. Based on the agency's positions in this case and historically, requiring Plaintiffs to serve a Rule 45 subpoena on DHS pursuant to the agency's *Touhy* regulations will almost certainly require Plaintiffs to file a separate APA action to enforce it. *See, e.g.*, ECF No. 72-3 & 73-4 (instructing GEO witnesses not to answer various anticipated lines of questioning during 30(b)(6) deposition testimony.). Unlike several of its sister circuits, the Tenth Circuit requires parties seeking to compel agency compliance with subpoenas to sue under the APA. *See Quezada v. Mink*, No. 10-cv-00879-REB-KLM, 2010 WL 4537086 at (D. Colo. Nov. 3, 2010) (citing *Oklahoma v. Hopkins*, 162 F.3d 1172 (table case) (10th Cir. 1998)) (declining to enforce a subpoena under *Touhy* and suggesting the APA is the proper remedy). *Cf. Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994) (holding a Rule 45 contempt proceeding is the proper means of addressing non-an agency's non-compliance with a Rule 45 subpoena based on *Touhy*) and *Watts v. SEC*, 482 F.3d 501 (D.C. Cir. 2007) (same). *But see COMSTAT Corp. v. NSF*, 190 F.3d 269 (4th Cir. 1999) (holding sovereign immunity bars federal courts from conducting Rule 45 contempt proceedings against recalcitrant federal agencies and

finding instead that the APA's Congressional waiver of sovereign immunity provides the exclusive means of doing so).

The U.S. Attorney for the District of Colorado clearly articulated DHS's position in the briefing in *Quezada v. Mink. See Quezada v. Mink*, No. 1:10-cv-00879-WJM-KLM, ECF No. 73, Interested Party Department of Homeland Security's Response to Mink's Objection to Magistrate Judge's Order on Motion to Quash Subpoena (DKT. NO. 70) (filed Nov. 30, 2010) (copy attached). In this submission, DHS asserts the doctrine of sovereign immunity to contend "nonparty federal employees may not be compelled to testify without agency approval unless a court has found that such action violated the Administrative Procedure Act ("APA")." *Id.* at 7. The Department of Homeland Security's brief, authored by the same Assistant U.S. Attorney who has been in contact with GEO in this case, removes any doubt that a *Touhy* subpoena to ICE will yield Plaintiffs only so much discovery as the agency sees fit to give it. Anything beyond that will require Plaintiffs to file a separate APA suit, imposing significant costs and potentially derailing the discovery schedule on the merits of the Class's claims.

GEO impishly questions Plaintiffs' reluctance to avail themselves of a far more limited, far more expensive discovery tool in the name of "convenience." The Court should see GEO's attempt to re-channel discovery in that direction for what it is: an attempt to increase costs on the Plaintiffs and delay the process of their claims. Because GEO has offered no evidence that imposing such burden would increase the convenience on any party but the corporation itself, its motion for protective order should be denied.

## Conclusion

For the foregoing reasons, GEO's Motion for Protective Order should be DENIED and the Court should impose reasonable attorney's fees and costs incurred in responding to it.

Date: May 10, 2017                    Respectfully Submitted by:


*s/ Brandt Milstein*
Brandt Milstein
MILSTEIN LAW OFFICE
595 Canyon Boulevard
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

R. Andrew Free
LAW OFFICE OF R. ANDREW FREE
PO Box 90568
Nashville, TN 37209
(844) 321-3221
Andrew@ImmigrantCivilRights.com

Alexander Hood
David Seligman
Andrew Schmidt
TOWARDS JUSTICE
1535 High St., Suite 300
Denver, CO 80218
(720) 441-2236
alex@towardsjustice.org
david@towardsjustice.org
andy@towardsjustice.org

Andrew Turner
THE KELMAN BEUSCHER FIRM
600 Grant St., Suite 450

Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com

Hans Meyer
MEYER LAW OFFICE, P.C.
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*

## Certificate of Service

I hereby certify that on this date I served the foregoing document on counsel of record for all parties in this case via this Court's CM/ECF system.


/s Brandt Milstein