IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00879-REB-KLM

LUIS QUEZADA,

    Plaintiff,

v.

TED MINK, in his official capacity as the Sheriff of Jefferson County, Colorado;
JOHN LONGSHORE, in his individual capacity as Director of the ICE Denver Field Office;
JASON CLEMENS, in his individual capacity as Immigration Enforcement Agent in ICE's Denver Field Office;
BRET R. TALBOT, in his individual capacity as Immigration Enforcement Agent in ICE's Denver Field Office;
KELLI SAYERS, in her individual capacity as Immigration Enforcement Agent in ICE's Denver Field Office;
WAYNE RICHARDSON, in his individual capacity as an employee in ICE's Denver Field Office;
JEFF JENKINS, in his individual capacity as an employee in ICE's Denver Field Office;
EDDIE SANCHEZ, in his individual capacity as an employee in ICE's Denver Field Office;
and
SHANNON SANTOS, in his individual capacity as an employee in ICE's Denver Field Office,

    Defendants.

---

**INTERESTED PARTY DEPARTMENT OF HOMELAND SECURITY'S RESPONSE TO MINK'S OBJECTION TO MAGISTRATE JUDGE'S ORDER ON MOTION TO QUASH SUBPOENA (DKT. NO. 70)**

---

    This Court should not ignore the carefully reasoned order by Magistrate Judge Mix quashing the subpoena issued on Captain Kuhl, an employee of the United States Immigration and Customs Enforcement ("ICE"), a sub agency of the Department of Homeland Security ("DHS"). Dkt. No. 69. Nor should it ignore its own decisions quashing subpoenas in similar circumstances. *See, e.g., Haithcox v. GEO Group, Inc.*,

EXHIBIT 1

Case No. 07-cv-160-REB-MEH, 2008 WL 2487914 (D. Colo. June 16, 2008) (Blackburn, J.). Finally, this Court must not ignore Tenth Circuit precedent requiring this Court to quash a subpoena served on a federal employee when the federal agency has followed its *Touhy* regulations and decided not to authorize that employee to provide testimony and documents. *See, e.g., U.S. Steel Corp. v. Mattingly*, 663 F.2d 68 (10th Cir. 1980). Thus, this Court is bound by Tenth Circuit precedent and should uphold Judge Mix's order quashing the subpoena because that order is not clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

**Standard of Review**

Under Fed. R. Civ. P. 72(a), where an objection has been made to an order of a magistrate judge on a non-dispositive motion, a district judge may modify or set aside any part of the order only if it "is clearly erroneous or is contrary to law." This Court has described the clearly erroneous or contrary to law standard as "less than a de novo review." *See, e.g., Trujillo v. Burlington Northern Santa Fe R.R.*, Case No. 09-cv-2468-WYD-MEH, 2010 WL 4627650, *1 n.1 (D. Colo. November 8, 2010).[1] More specifically, this Court has stated that "under this standard, [the district judge will] affirm the decision unless 'on the entire evidence [one] is left with the definite and firm conviction that a mistake has been committed.'" *Ariza v. U.S. West Communications, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996) (citation omitted). The Tenth Circuit has held that a review under Fed. R. Civ. P. 72(a) requires some deference to the decision of the magistrate

---

[1]The structure of Fed. R. Civ. P. 72 also demonstrates that the clearly erroneous or contrary to law standard is different from the de novo standard because subsection (a) contains the clearly erroneous or contrary to law standard while subsection (b)(3) contains the de novo standard. The use of different standards of review within such close proximity demonstrates that the standards of review have different meanings.

judge. *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997) ("Mr. Hutchinson sought reconsideration as required by 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) . . . . The district court must defer to the magistrate judge's ruling unless clearly erroneous or contrary to law.") (citations omitted). Mink cannot meet that standard here.

**Factual background**

DHS incorporates by reference the Factual Background section of its Motion to Quash (Dkt. No. 41), pages 1 to 10, and its Notice of Superceding *Touhy* Decision (Dkt. No. 50).

DHS notes that neither it, nor Kuhl, the employee whose subpoena is at issue in this appeal, is a party to this action.

**Argument**

    **A.    The Tenth Circuit has quashed a subpoena issued by a federal court to a nonparty federal employee and, in so doing, rejected Mink's arguments.**

This Court must apply Tenth Circuit precedent. "A district court must follow the precedent of this circuit, regardless of its views concerning the advantages of the precedent of our sister circuits." *United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990). The Tenth Circuit has held that subpoenas issued to nonparty federal officials, like Kuhl in this case, must be quashed when the federal employee has been instructed not to testify based on its *Touhy* regulations. *Mattingly*, 663 F.2d at 68. Therefore, the Court must quash the Kuhl subpoena.

In *Mattingly,* the Tenth Circuit reversed a decision by District Judge Carrigan of this Court. *U.S. Steel v. Mattingly*, 89 F.R.D. 301 (D. Colo. 1980), *rev'd*, 663 F.2d 68 (10th Cir. 1980). (The remainder of this brief refers to the district court decision as "*Mattingly I*" and the Tenth Circuit decision as "*Mattingly II*".) As explained by Judge Mix

3

in her order, the *Mattingly* cases involve the explosion or rupture of a large steel cylinder manufactured by United States Steel ("USS"), an event which killed two men, injured four others, and damaged property. Dkt. No. 69 at 7. An employee of the National Bureau of Standards ("NBS") wrote an accident report adverse to USS. *Id.* The Court ruled that the NBS report would be admissible at trial, and USS subpoenaed the NBS employee who authored the report. *Id.* at 8. However, NBS, applying its *Touhy* regulations, instructed the NBS employee not to comply with the subpoena. *Id.*

In *Mattingly I*, the district court relied on many of the same arguments Mink offers here. That is, the district court examined the legislative history of the Housekeeping Act and, in particular, the 1958 amendment. *Id.* The district court also opined that it would be "egregiously unfair" not to enforce the subpoena. *Id.* (quoting *Mattingly I,* 89 F.R.D. at 304. Thus, the district court ordered the NBS employee to appear for a deposition and ordered the NBS to produce the requested documents. *Id.*

The Tenth Circuit reversed. It held that "the merits of this dispute are controlled by *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951) and *Saunders v. The Great Western Sugar Company*, 396 F.2d 794 (10th Cir. 1968)." *Mattingly II,* 663 F.2d at 68. Relying on that precedent, the Tenth Circuit reversed the district court and remanded with instructions to recall the subpoena. *Id.*

*Mattingly II* continued Tenth Circuit precedent holding that subpoenas on nonparty federal employees must be quashed when the federal agency has complied with its *Touhy* regulations. It remains the law in this circuit. As Judge Mix observed,

4

"The message of *Mattingly II* has been heeded by District Courts in the Tenth Circuit ever since." Dkt. No. 69 at 8.[2]

Given the Tenth Circuit's clear precedent, Mink's cites to law review articles, treatises, and cases from other circuits should not persuade this Court. Mink does cite a Supreme Court case, which he characterizes as "strongly indicat[ing] in 1979 that there is no 'housekeeping privilege.'" Dkt. No. 70 at 8. But the case Mink cites has no such "strong indication" and, in any case, the Supreme Court makes its interpretations of the law through holdings, not "indications," strong or otherwise.[3] Thus, Judge Mix properly followed Tenth Circuit precedent, and Mink cannot plausibly claim that her decision to quash the subpoena served on Kuhl "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Accordingly, this Court must affirm her decision.

### B.  This Court has quashed subpoenas issued by a federal court and state courts and must quash the subpoena in this case.

This Court has repeatedly followed Tenth Circuit precedent and quashed subpoenas in similar circumstances. For example, in *Haithcox*, 2008 WL 2487913, *1, a plaintiff with a case pending in this Court served a federal subpoena on a DHS

---

[2]Judge Mix also noted that the Tenth Circuit has, in subsequent unpublished decisions, declined to enforce subpoenas on federal employees when those employee's agencies followed *Touhy* regulations in not authorizing compliance with the subpoenas. Dkt. No. 69 at 9 (citing *Kansas v. Call*, 961 F.2d 220 (table) (10th Cir. 1992); *Oklahoma v. Hopkins*, 162 F.3d 1172 (table) (10th Cir. 1998)).

[3]And even Mink recognizes, albeit backhandedly, that even if there were no "housekeeping privilege" a court still may not be able to enforce a subpoena on a federal employee against that employee's agency's determination not to allow compliance because sovereign immunity provides an independent bar. Dkt. No. 70 at 8 ("Even those Circuits that have declined to enforce third-party federal subpoenas on the Federal Government have stated that there is no 'housekeeping privilege." *See, e.g., Comsat Corporation v. National Science Foundation*, 190 F.3d 269, 277 (4th Cir. 1999) ('[I]t is sovereign immunity, not housekeeping regulations, that gives rise to the [Federal] Government's power to refuse compliance with a subpoena.').").

5

employee to testify at trial in an action to which the agency was not a party. The Court through Judge Blackburn quashed the subpoena for two reasons. First, the subpoena was not served as required by DHS's regulations. *Id.* Second, DHS analyzed the request under the factors outlined in 6 C.F.R. § 5.48 and determined that the DHS employee should not be permitted to testify. *Id.* The Court stated: "Applying its regulations, the DHS has determined that Jameson's [sic] should not be permitted to testify as required in the subpoena. Given this determination, the subpoena is not enforceable." *Id.* (citing *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468-70 (1951)). The outcome should be the same in this case.

*Haithcox* was not unusual. Judge Mix summarized two other cases in which this Court quashed subpoenas on federal employees based on *Touhy*:

- "In *Smith v. C.R.C. Builders Co., Inc.*, 626 F. Supp. 12 (D. Colo. 1983), this Court rejected the argument that '*Touhy* is outdated and no longer the law in light of a post-*Touhy* amendment' to the Housekeeping Act. Instead, the Court held that 'the long-established rule that a superior government official [can] withdraw from his subordinates the power to release government documents' remains intact. *Id.* at 14."

- "In *Colorado v. Rodarte*, No. 09-cv-02912, 2010 WL 924099, at *2-3 (D. Colo. Mar. 9, 2010) (unpublished decision), this Court quashed a subpoena previously enforced by a state court against an FBI agent. The Court held, pursuant to *Touhy*, that the agent could not be required by the state court to release information in the absence of authorization from a superior, which had not been provided. *Id.* at *2. The Court explained that the appropriate means for challenging an agency's decision under *Touhy* is 'an action under the Administrative Procedure Act in federal court.' *Id.* (citing *In re Elko County Grand Jury,* 109 F.3d 554, 557 n.1 (9th Cir. 1997))."

Dkt. No. 69 at 8-9. Thus, this Court has repeatedly recognized that it is bound by Tenth Circuit precedent to quash subpoenas on federal employees when their federal agencies followed their *Touhy* regulations and declined to authorize compliance with the subpoenas. Given that, this Court must affirm Judge Mix's decision because the Court

6

cannot conclude that her decision is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

### C. Sovereign immunity bars compelling a federal employee from providing evidence in violation of his agency's *Touhy* decision.

The decisions of this Court and the Tenth Circuit are supported by those courts that have held that, as a matter of sovereign immunity, ==nonparty federal employees may not be compelled to testify without agency approval unless a court has found that such action violated the Administrative Procedure Act ("APA").==

Sovereign immunity shields the government unless Congress has explicitly waived that immunity. As the Tenth Circuit has summarized: "The government consents to be sued only when Congress unequivocally expresses its intention to waive the government's sovereign immunity in the statutory text. If the waiver is not unequivocal from the text, the government retains its sovereign immunity." *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 930 (10th Cir. 1996) (citations and internal quotation marks omitted).

Sovereign immunity shields the federal government from liability, but also from "the burdens of becoming involved in any part of the litigation process, from pretrial wrangling to trial itself." *United States v. Moats*, 961 F.2d 1198, 1203 (5th Cir. 1992), quoted in *Raccoon Recovery, LLC v. Navoi Mining & Metallurgical Kombinat*, 244 F. Supp. 2d 1130, 1141 (D. Colo. 2002). A governmental party's "full enjoyment of [its] sovereign immunity is irrevocably lost once [it] is compelled to endure the burdens of litigation." *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1172 (10th Cir. 1998); *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998) ("Sovereign immunity is an

immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits.") (internal quotation marks omitted).

Sovereign immunity applies to subpoenas against nonparty federal officials. Although a subpoena is enforced against a particular federal employee, the action is, in fact, against the United States and subject to sovereign immunity. *See, e.g., Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989) ("It is well established that an action seeking specific relief against a federal official, acting within the scope of his delegated authority, is an action against the United States, subject to governmental privilege of immunity.") (citations omitted). This is a specific application of the general rule that an action is against the sovereign, and thus triggers sovereign immunity, if the effect of the judgment would be to "'expend itself on the public treasury or domain, or interfere with the public administration'" or "'retrain the Government from acting, or to compel it to act.'" *Dugan v. Rank*, 372 U.S. 609, 620 (U.S. 1963) (citations omitted). Responding to a subpoena compels the government to act and therefore implicates sovereign immunity. *U.S. EPA v. Gen. Elec. Co.*, 197 F.3d 592, 597 (2d Cir. 1999) ("We agree with the district court that the enforcement of this subpoena duces tecum issued by General Electric to the EPA would compel the EPA to act and therefore is barred by sovereign immunity in the absence of a waiver.") Thus, "it is sovereign immunity, not housekeeping regulations, that gives rise to the Government's power to refuse compliance with a subpoena." *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999).

In summary, sovereign immunity shields the federal government from being compelled to act, for example, to respond to a subpoena, unless Congress has explicitly waived that immunity.

### D. The APA provides the only procedure and standards for challenging an agency's *Touhy* decision.

If a party seeking information from a nonparty federal employee wants to compel him or her despite the agency's decision not to authorize testimony or a document production, the proper remedy is an independent action under the APA. This is because only the APA provides a sufficient waiver of sovereign immunity. The Fourth Circuit has so held, reasoning that "[w]hen an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources." *COMSAT*, 190 F.3d at 276; *see also United States v. Williams*, 170 F.3d 431, 434 (4th Cir. 1999). *Id.* at 276. When the government is not a party, that decision is committed to agency discretion. *Id.* That decision may be reviewed through the procedures and standards established by the APA. *Id.* Mink recognizes that the APA is the only possible waiver of sovereign immunity. Dkt. No. 70 at 11-12. Even so, however, he argues that he does not have to comply with the APA's requirement of an independent action. *Id.* at 14-15. Mink's argument is not supported by the decisions of this Court or the Tenth Circuit.

This Court and the Tenth Circuit have agreed that the appropriate means to challenge an agency's *Touhy* decision is under the APA. *See, e.g., Rodarte* 2010 WL 924099, *2 ("'The appropriate means for challenging the Department of Agriculture's decision under Touhy is an action under the Administrative Procedure Act in federal court.'") (quoting *In re Elko County Grand Jury*, 109 F.3d at 557 n.1). The Tenth Circuit has stated that among the potential remedies for a person dissatisfied with an agency's *Touhy* decision is an APA action. *In re Gray*, 1998 WL 712663, *1. Judge Mix recognized that the Tenth Circuit requires an independent APA action if a party is

9

dissatisfied with a federal agency's *Touhy* decision: "Although both efficiency and economy are compromised by the requirement of a separate claim brought pursuant to the Administrative Procedure Act, that is what the law of this Circuit requires." Dkt. No. 69 at 10.

The Second Circuit agrees that the APA is the only source for a waiver of sovereign immunity to require a nonparty federal employee to respond to a subpoena. *U.S. EPA*, 197 F.3d at 598 ("the only identifiable waiver of sovereign immunity that would permit a court to require a response to a subpoena in an action in which the government is not a party is found in the APA"). The Second Circuit also evaluates such standards under the standards of review established by the APA. *Id.* at 599. However, the Second Circuit does not require that an independent action be filed. *Id.*

Many other circuits have also applied the APA to review an agency's decision not to authorize information disclosure under *Touhy* regulations. *See, e.g., Commonwealth of Puerto Rico v. U.S.,* 490 F.3d 50, 71 (1st Cir. 2007); *Davis Enterprises v. U.S. EPA*, 877 F.2d 1181, 1186 (3d Cir. 1989); *Edwards v. U.S. Dept. of Justice*, 43 F.3d 312, 316-17 (7th Cir. 1994); *Kwan Fai Mak v. FBI*, 252 F.3d 1089, 1090 (9th Cir. 2001).

A few courts have not required an independent APA action to challenge an agency's *Touhy* decision. Most notable is the D.C. Circuit. In *Watts v. Securities and Exchange Com'n*, 482 F.3d 501, 508 (D.C. Cir. 2007), that court found that a challenge to an agency's refusal to comply with a subpoena should proceed under Fed. R. Civ. P. 45, rather than as an APA action.

The biggest shortcoming with the *Watts* court's analysis is that it does not address the issue of sovereign immunity. Its only mention of sovereign immunity is in a footnote. *Id.* at 509 n.* (so designated in opinion). The *Watts* court implicitly suggests

that Fed. R. Civ. P. 45 provides the waiver of sovereign immunity. But the Federal Rules of Civil Procedure, by their own terms, do not waive sovereign immunity. *See, e.g.,* Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts . . . "); *see also United States v. Sherwood*, 312 U.S. 584, 589-90 (1941) (Federal Rules do not authorize maintenance of a suit against the United States to which it has not otherwise consented; the Rules do not enlarge the jurisdiction of the district courts). And a waiver of sovereign immunity must be explicit and must be made by Congress. *Murdoch*, 81 F.3d at 930. Fed. R. Civ. P. 45 fulfills neither of those requirements. Regardless, even if Fed. R. Civ. P. 45 did waive sovereign immunity, there is no reason to assume that it also establishes the standards against which an agency's *Touhy* decision must be evaluated. A waiver of sovereign immunity may also be conditional. For example, in cases brought under Title VII of the Civil Rights Act of 1964, sovereign immunity is only waived if a party exhausts his or her claim administratively. *Steiner v. Henderson*, 354 F.3d 432 (6th Cir. 2003) ("In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'") (quoting *Brown v. General Servs. Admin.*, 425 U.S. 820, 833 (1976)). Another example is the conditional waiver of sovereign immunity in tort cases. Although the federal government waives sovereign immunity to many types of tort claims through the Federal Tort Claims Act ("FTCA"), that waiver is conditional on filing a timely claim. *In re Franklin Savings Corp.*, 385 F.3d 1279, 1287 (10th Cir.2004) ("one of the conditions of the government's waiver of sovereign immunity under the FTCA and the district court lacks subject matter jurisdiction to proceed under the FTCA if a plaintiff fails to satisfy the FTCA's timing requirements set forth in" 28 U.S.C. § 2401(b)). In this

case, the waiver of sovereign immunity — the APA — conditions that waiver by specifying the standard of review on which agency decisions may be evaluated. That standard is whether the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). Thus, the *Watts* court erred by ignoring sovereign immunity and then failing to apply the standard of review dictated by the APA.

The *Watts* court also suggests a false issue as a result of its failure to analyze sovereign immunity. It states in a footnote that subpoenas issued from state courts, rather than federal courts, present different issues because of the Supremacy Clause and sovereign immunity. *Watts*, 482 F.3d at 509 n.*. But that dicta is incorrect with respect to sovereign immunity. The federal government can waive sovereign immunity to actions brought against it in state court. *See, e.g.,* 15 U.S.C. § 634(b)(1) (stating that Small Business Administration may sue and be sued in state and federal court). Thus, the same principles regarding sovereign immunity apply in state or federal court, *i.e.*, sovereign immunity can only be waived by an explicit statement from Congress and that waiver is subject to the limitations established by Congress. In any case, this Court and the Tenth Circuit have quashed subpoenas from federal courts. *See, e.g., Haithcox*, 2008 WL 2487914, *1; *Mattingly II*, 663 F.2d at 68.

The holding in *Watts* is similar to *Exxon Shipping Co. v. United States Dep't of the Interior*, 34 F.3d 774 (9th Cir.). In that case, brought under the APA, the Ninth Circuit applied the substantive rules of Fed. R. Civ. P. 45 to a challenge to an agency's *Touhy* decision. *Exxon* is different from this case because it was brought under the APA and the APA has a waiver of sovereign immunity. The *Exxon* court's refusal to apply the APA's arbitrary and capricious standard to an agency's *Touhy* decision has

been rejected by the Second and Fourth Circuits.  *U.S. EPA*, 197 F.3d at 598; *COMSAT*, 190 F.3d at 277-78.

### E. The APA would not require reversal of DHS's *Touhy* decision.

If the Court were to find that Judge Mix's decision was clearly erroneous and contrary to law regarding both quashing the subpoena *and* that the proper way to contest DHS's *Touhy* decision was though an independent APA action, then the Court would have to evaluate whether DHS's *Touhy* decision was arbitrary and capricious. That is, the Court would have to apply the APA's standard of review to the facts of the case.  If the Court were to determine that it had to make that analysis, DHS incorporates pages 21 to 27 of its Motion to Quash (Dkt. No. 41) and its Notice of Superceding *Touhy* Decision (Dkt. No. 50).

**Conclusion**

For the reasons given above, in DHS's Motion to Quash (Dkt. No. 41) and in Judge Mix's Order on Motion to Quash Subpoena (Dkt. No. 69), the Court should find that Judge Mix's Order on Motion to Quash Subpoena is not clearly erroneous or contrary to law.

DATED November 30, 2010.

Respectfully Submitted,          JOHN F. WALSH
                                 United States Attorney

                                 s/ *Timothy B. Jafek*
                                 TIMOTHY B. JAFEK
                                 Assistant United States Attorney
                                 1225 Seventeenth Street, Suite 700
                                 Denver, Colorado  80202
                                 Telephone:(303) 454-0100
                                 Fax: (303) 454-0407
                                 timothy.jafek@usdoj.gov

                                 Attorney for Interested Party DHS

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on November 30, 2010, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following e-mail addresses:

dwilliams@faegre.com
jsroberts@faegre.com
kneste@faegre.com
msilver2@att.net
ojadwat@aclu.org
rtwallace@aclu-co.org
jburgess@jeffco.us
wmott@jeffco.us

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand delivery, etc.) indicated by the nonparticipant's name:

*s/ Timothy B. Jafek*
TIMOTHY B. JAFEK