IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-CV-02887-JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

**Plaintiffs**,

v.

THE GEO GROUP, INC.,

**Defendant**.

## RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

Defendant The GEO Group, Inc. ("GEO"), through its undersigned attorneys, hereby responds to Plaintiffs' Motion to Compel ("Motion") as follows:

## INTRODUCTION

Plaintiffs' Motion creates a false narrative in which GEO is unilaterally invoking the Department of Homeland Security *Touhy* regulations to obstruct Plaintiffs' access to relevant information. The truth is that the United States government has instructed GEO not to produce certain information within the scope of the DHS *Touhy* regulations, 6

1

C.F.R. §§ 5.41–49 (the "DHS Regulations").  (*See* Exhibits A–D to GEO's Motion for Protective Order, Doc. Nos. 72-1, 72-2, 72-3, & 72-4.)  If the government is correct that the DHS Regulations apply, then GEO has **no legal authority** to unilaterally disclose the DHS documents and information requested by Plaintiffs.  Rather, DHS has **sole legal authority** to authorize such disclosure.

To bolster their argument, Plaintiffs inaccurately characterize the government's position as GEO's position—"whether GEO may rely," "GEO's position," "GEO's continuing reliance," "GEO wants."  The Plaintiffs' characterizations obscure the fact that Plaintiffs' dispute is with the government, not GEO, and Plaintiffs have thus far refused to involve the government.  Ultimately, as argued in GEO's Motion for Protective Order, the most convenient and least burdensome solution would be for Plaintiffs to seek the DHS documents and information directly from DHS—which has **unquestioned** authority to authorize disclosure of those documents and information.

Putting this issue aside, Plaintiffs argue *Touhy* regulations do not apply when the government is a named party, but the government is undisputedly not a named party in this case.  In cases like this one—where the government is not a party—the law of the Tenth Circuit is that *Touhy* applies.  The government can legally instruct a subordinate, such as GEO, not to produce information.  Based on the law of this Circuit, Plaintiffs' Motion to Compel should be denied.[1]

---

[1] The following legal background is also provided in GEO's Motion for Protective Order (Doc. No. 72), but for completeness and clarity is also included here.

## GOVERNING LAW

### A.   Background of *Touhy* Regulations

5 U.S.C. § 301, called the Housekeeping Act, provides:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

In *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 467–70 (1951), the Court considered a regulation, promulgated by the Department of Justice under the Housekeeping Act, vesting sole authority to release DOJ documents in the Attorney General. As an initial matter, the Court declined to rule on the merits of the Attorney General's decision to not produce the requested documents because "[t]he Attorney General was not before the trial court." *Id.* at 467. Rather, the Court limited its analysis to whether the DOJ subordinate properly refused to comply with a document request, which the Court determined could be decided regardless of the propriety of the Attorney General's refusal to provide the documents. *Id.* at 467–69.

The Court held that the DOJ rule was a valid exercise of the Attorney General's authority under the Housekeeping Act. *Id.* at 468. Specifically, the Attorney General could "validly withdraw from his subordinates the power to release department papers." *Id.* at 467. The Court stated: "When one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted

3

disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas duces tecum will be willingly obeyed or challenged is obvious." *Id.* at 468.

The authority of the Attorney General upheld in *Touhy* has been expanded to other federal agencies and their employees. *Touhy* thus stands for two "unremarkable" propositions:

> (1) [a department head] may by regulation or order withdraw from his subordinates and consolidate in himself the authority to release [department] documents; and (2) the issue of the propriety of the [department head's] decision not to release the documents was not properly presented for determination because the party with the sole authority to decide the matter, the [department head], had not been personally served with the subpoena and was not before the district court.

*Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp. 2d 1268, 1272 (D. Colo. 2011).

The Tenth Circuit has applied *Touhy* in *Saunders v. Great Western Sugar Co.*, 396 F.2d 794 (10th Cir. 1968) and *United States Steel Corp. v. Mattingly*, 663 F.2d 68 (10th Cir. 1980) to authorize federal officers to limit discovery of agency information. The Tenth Circuit's application of *Touhy* was well-summarized by Magistrate Judge Mix in *Quezada v. Mink*, No. 10-cv-00879-REB-KLM, 2010 WL 4537086, at *3 (D. Colo. Nov. 3, 2010). After discussing the pertinent cases, Judge Mix concluded: "This line of authority makes clear that this Circuit has interpreted *Touhy* to allow federal officials to

4

limit subordinates' authority to produce documents or provide testimony pursuant to duly-enacted regulations." *Id.* at *5.

## B. DHS *Touhy* Regulations

Like many other federal agencies, DHS has adopted its own *Touhy* regulations under the Housekeeping Act. The DHS Regulations apply to DHS "employees," and "employees" is clearly defined to include "contractors" such as GEO. 6 C.F.R. § 5.41(c). The DHS Regulations specifically provide that they apply to "responses to discovery requests." *Id.* § 5.41(d).

Section 5.43 of the DHS regulations provides in pertinent part:

> [O]nly the Office of General Counsel is authorized to receive and accept subpoenas, or other demands or requests directed to the Secretary, the Department, or any component thereof, or its employees, whether civil or criminal in nature, for: (1) Material, including documents, contained in the files of the Department; (2) Information, including testimony, affidavits, declarations, admissions, responses to interrogatories, or informal statements, relating to material contained in the files of the Department or which any Department employee acquired in the course and scope of the performance of his official duties . . . .

The Regulations apply to requests for oral testimony, written testimony, and documents. Specifically, Section 5.44 provides:

> (a) No employee, or former employee, of the Department shall, in response to a demand or request, including in connection with any litigation, provide oral or written testimony by deposition, declaration, affidavit, or otherwise concerning any information acquired while such person is or was an employee of the Department as part of the performance of that person's official duties or by virtue of that person's official status, unless authorized to do so by the Office of the General Counsel, or as authorized in § 5.44(b).

5

> (b) No employee, or former employee, shall, in response to a demand or request, including in connection with any litigation, produce any document or any material acquired as part of the performance of that employee's duties or by virtue of that employee's official status, unless authorized to do so by the Office of the General Counsel or the delegates thereof, as appropriate.

Under Section 5.45 of the Regulations, DHS employees, including contractors, cannot unilaterally disclose DHS information:

> Department employees may only produce, disclose, release, comment upon, or testify concerning those matters which were specified in writing and properly approved by the appropriate Department official designated in § 5.44.

## THE GOVERNMENT'S INVOLVEMENT

GEO's instructions from the government were summarized for Plaintiffs' counsel via email dated April 19, 2017. (Motion, Exhibit C, Doc. No. 73-3.) GEO's email included the pertinent communications from DHS and DOJ. (*Id.*, Exhibit D, Doc. No. 73-4.) As reflected in those communications, thus far GEO's counsel has acted as a go-between for Plaintiffs and DHS. GEO's counsel did this as a courtesy and means of expediting communication of DHS's *Touhy* position on various documents and information requested by Plaintiffs.

This process generally worked until Plaintiffs disagreed with the decisions the government made under the DHS Regulations. It further broke down when DOJ requested additional information regarding the relevancy of certain documents sought in Plaintiffs' discovery requests. (*Id.* pp. 6–9.) Under section 5.45(a) of the DHS Regulations, "the party seeking [official information] must . . . set forth in writing, and

6

with as much specificity as possible, the nature and relevance of the official information sought." GEO forwarded Plaintiffs' discovery requests to the government, but the discovery requests were apparently not sufficient to satisfy section 5.45(a).

As stated in GEO's email, GEO does not believe it is appropriate for GEO to argue the relevancy of Plaintiffs' discovery requests to the government, nor does GEO imagine that the Plaintiffs would choose to delegate that task to GEO. (*Id.*, Exhibit C, Doc. No. 73-3.) It strains credulity for Plaintiffs to assert that it is GEO's responsibility to effectively change sides and argue the relevancy of Plaintiffs' discovery requests to the government. Plaintiffs have not taken any steps to provide an explanation of relevancy to GEO for GEO to pass on to the government. Nor have Plaintiffs provided that explanation directly to the government.

The government has made a final *Touhy* determination and instructed GEO not to disclose the information sought by Plaintiffs' Interrogatories 1 and 2. Specifically, the government refused to allow disclosure of GEO's full government contract and Alien Registration Numbers. (*Id.*, Exhibit D, Doc. No. 73-4.)

With respect to information in the detainee files, DHS/ICE has not made a final *Touhy* determination, but has instructed GEO not to disclose certain information in the detainee files until DHS/ICE has enough information to make a final *Touhy* determination. (*Id.*, pp. 6–9.)[2] Rather, as noted above, the government is awaiting further explanation regarding the relevancy of the requested documents. Plaintiffs'

---

[2] The spreadsheets GEO received from AUSA Timothy Jafek are attached as **Exhibit A**.

7

discovery requests subject to the government's instruction regarding detainee files include: Interrogatories 1, 2, 5, 6; and Requests for Production 5, 6, 7, 8, 15, and 16.

Finally, despite GEO providing Plaintiffs with a detailed list of the information withheld pursuant to the government's *Touhy* instructions, Plaintiffs' Motion seeks to compel significantly broader categories of information. Specifically, information sought in the following discovery requests is beyond the scope of the parties' *Touhy* dispute, as clarified in GEO's email of April 19: Interrogatories 3, 4, and 7; Requests for Production 1, 2, 3, 4, 9, 10, 11, 13, and 14; Request for Admission 1. First, Plaintiffs have not conferred with GEO regarding these other categories of information, as required by Rule 37(a)(1) and section I(B) of the Court's Civil Trial Procedures Memorandum. Second, the Court specifically directed the parties to brief "the effect of the relevant *Touhy* regulations, 6 C.F.R. 5.41, *et seq.*, on discovery proceedings in this case." (Doc. No. 62.) The Court did not invite Rule 37 motions beyond the scope of *Touhy*. Therefore, the Court should disregard Plaintiffs' Motion to the extent it addresses information beyond the parties' *Touhy* dispute.

## ARGUMENT

**A.    Plaintiffs have not shown that judicial estoppel or waiver apply.**

Plaintiffs' argument for judicial estoppel fails. *See Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005). The doctrine of judicial estoppel provides that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have

8

changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id.* For judicial estoppel to apply, the "position to be estopped must generally be one of fact rather than of law or legal theory." *Id.* The factors used to consider whether to apply judicial estoppel include whether the later position is "clearly inconsistent" with the earlier position, whether acceptance of the later position would lead to "the perception that either the first or second court was misled," and whether the party seeking to assert the inconsistent position would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.*

Plaintiffs' Motion does not establish any of these factors. First, Plaintiffs have not identified an inconsistent position of fact. Plaintiffs allege the government did not enforce the DHS Regulations with respect to service of process, but is enforcing the DHS Regulations with respect to discovery. Those are legal positions, not factual positions. Additionally, those legal positions are not inherently inconsistent. It would not be inconsistent for the government to waive the formal requirements for service of process while enforcing the DHS Regulations' procedures with respect to discovery.

Second, Plaintiffs do not explain how the Court was "misled." This element typically necessitates that "the party has succeeded in persuading a court to accept that party's earlier position." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Without prior success, "a party's later inconsistent position introduces no risk of inconsistent court

9

determinations." *Id.* at 751 (internal citations omitted). Here, there was no "success" associated with the alleged "prior position." Therefore, acceptance of the government's position regarding the DHS Regulations has no potential to mislead the Court.

Finally, Plaintiffs were not prejudiced by the government's position regarding the service of process requirements in the DHS Regulations. On the contrary, Plaintiffs clearly benefitted by avoiding a dispute regarding the sufficiency of service of process.

Plaintiffs' argument for waiver likewise fails. Plaintiffs incorrectly argue that GEO and ICE waived any right to enforce the DHS Regulations by failing to object to service of process, which Plaintiffs argue was not done in accordance with the DHS Regulations. (Motion, Doc. No. 73, pp. 7–8.) The elements of waiver are: (i) an existing right, (ii) knowledge of such right, and (iii) an intention to relinquish or surrender it. *Yates v. Am. Republics Corp.*, 163 F.2d 178, 180 (10th Cir. 1947). The first element is not satisfied with respect to GEO because the right to enforce the DHS Regulations belongs to DHS, not GEO. GEO thus had no right that it could have waived. Plaintiffs also have not shown that relinquishment of a right was done intentionally. Neither have Plaintiffs explained why a waiver of the DHS Regulations pertaining to service of process would also amount to a waiver of the DHS Regulations pertaining to discovery.

**B.     In accord with Tenth Circuit law, GEO has complied with the government's instructions that the DHS Regulations apply to this case.**

The Tenth Circuit applies the straightforward rule of *Touhy*—a department head "may by regulation or order withdraw from his subordinates and consolidate in himself

the authority to release [department] documents." *Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp. 2d 1268, 1272 (D. Colo. 2011) (citing *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)). Despite the straightforward rule, Plaintiffs argue that *Touhy* regulations do not apply here, citing cases in which the U.S. government was a party. Plaintiffs concede "that neither the United States nor ICE is a party to the litigation," but claim this is a "distinction without a difference." (Motion, Doc. No. 73, p. 11.)

On the contrary, it makes all the difference. The *Touhy* case addressed the limited issue of whether the Attorney General could "withdraw from his subordinates and consolidate in himself the authority to release Justice Department documents." *Ceroni*, 793 F. Supp. 2d at 1272. *Touhy* did not address the merits of the Attorney General's decision to not produce the requested documents because the authorized decisionmaker (*i.e.*, the Attorney General) "was not before the trial court." 340 U.S. at 467. But, when the government is a party, the authorized decisionmaker ***is before the trial court***. Thus, when an executive agency is a party, the question is not whether the agency may validly consolidate decisionmaking authority. There is no need. *See Alexander v. F.B.I.*, 186 F.R.D. 66, 70 (D.D.C. 1998) ("In cases originating in federal court in which the federal government is a party to the underlying litigation, the *Touhy* problem simply does not arise."). Rather, when the government is a party, the analysis focuses on the

government's ultimate decision not to produce information—which necessarily goes beyond the scope of the *Touhy* decision.

Unique separation of powers problems arise when an executive agency is a named party in litigation and invokes its own *Touhy* regulations to withhold information. *See Alexander*, 186 F.R.D. at 70. Those unique separation of powers concerns are not present here because GEO is not withholding information. Rather, just like the DOJ subordinate in *Touhy*, GEO is relaying the government's instruction that GEO is not the authorized decisionmaker.

Attempting to get around this problem, Plaintiffs repeatedly conflate the definition of "employee" under the DHS Regulations with the common law meaning of employment. Plaintiffs employ this tactic, apparently, in an attempt to strengthen their argument that the Court should proceed as if the government were a party to this case. However, GEO is a government contractor. Plaintiffs have acknowledged as much in this lawsuit. (*See* Motion for Class Certification, Doc. No. 49, p. 3.) Indeed, GEO's status as a "contractor" is the only reason it falls under the definition of "employee" in section 5.41(c) of the DHS Regulations. If GEO were actually a government employee, it would be immune from Plaintiffs' claims.

Plaintiffs also cite cases from the D.C., Ninth, and Sixth Circuits, but those circuits are on the other side of a circuit split with the Tenth, Second, and Fourth Circuits as to whether *Touhy* regulations take precedence over the Federal Rules of Civil Procedure

12

when the two conflict. As observed by the U.S. District Court for the Southern District of New York:

> Setting aside the details of the doctrinal disputes that underlie the various Circuits' positions, the practical effect of the disagreement is that the Second, Fourth and Tenth Circuits as a general rule give primacy to agencies' *Touhy* regulations over the Federal Rules of Civil Procedure when the two conflict, requiring litigants to exhaust their administrative remedies before moving to compel production from a governmental agency, while the D.C., Ninth, and Sixth Circuits generally give primacy to the Federal Rules over conflicting *Touhy* regulations.

*Wultz v. Bank of China, Ltd.*, 61 F. Supp. 3d 272, 279 (S.D.N.Y. 2013).

The present situation—with no named government party—has been squarely addressed by the Tenth Circuit. Indeed, in *Quezada v. Mink,* Magistrate Judge Mix thoroughly analyzed the legal landscape, including the *Watts* and *Exxon* cases cited in Plaintiffs' Motion. No. 10-cv-00879-REB-KLM, 2010 WL 4537086 (D. Colo. Nov. 3, 2010). Judge Mix reviewed the applicable Tenth Circuit law and concluded: "This line of authority makes clear that this Circuit has interpreted *Touhy* to allow federal officials to limit subordinates' authority to produce documents or provide testimony pursuant to duly-enacted regulations." *Id.* at *5. Judge Mix's decision was affirmed by Judge Martinez on March 1, 2011, at ECF 124.

The Tenth Circuit law analyzed by Judge Mix included *United States Steel Corp. v. Mattingly*, 663 F.2d 68 (10th Cir. 1980). At the district court level, Judge Carrigan adopted similar arguments raised by Plaintiffs, finding no authority for a federal agency "to restrict the availability of evidence in a judicial proceeding or to confer a testimonial

13

privilege on its employees or records." 89 F.R.D. 301, 304 (D. Colo. 1980). The Tenth Circuit reversed, concluding in a brief order that "the merits of this dispute are controlled by" *Touhy*. 663 F.2d 68.

Plaintiffs, obviously, would prefer that the DHS Regulations not control when they conflict with the Federal Rules of Civil Procedure. But, as determined by Judge Mix after reviewing Tenth Circuit law: "that is what the law of this Circuit requires." 2010 WL 4537086, at *5.

## CONCLUSION

GEO has complied with the instructions it has received from the federal government. GEO's independent review has found Tenth Circuit support for the government's position that the DHS Regulations apply here. Plaintiffs acknowledge that their cases from other circuits are not directly on point, yet Plaintiffs seek attorney fees against GEO for GEO's refusal to disobey direct instructions from DHS and DOJ—instructions that appear to be consistent with Tenth Circuit law. The Court should deny Plaintiffs' Motion and, as requested in GEO's Motion for Protective Order, order Plaintiffs to seek documents and information subject to the DHS Regulations directly from DHS.

WHEREFORE, GEO respectfully requests that the Court deny Plaintiffs' Motion to Compel and grant GEO's Motion for Protective Order.

Respectfully submitted this 11th day of May, 2017.

 S/ Dana L. Eismeier
Dana L. Eismeier (#14379)
Michael Y. Ley (#43733)
BURNS, FIGA & WILL, P.C.
6400 S. Fiddlers' Green Circle, Suite 1000
Greenwood Village, CO  80111
Phone Number:  303-796-2626
Fax Number:     303-796-2777
E-mails:         deismeier@bfwlaw.com
                 mley@bfwlaw.com

Charles A. Deacon, Esq.
NORTON ROSE FULBRIGHT US LLP
300 Convent Street, Suite 2100
San Antonio, TX  79205-3792
(210) 270-7133

Mark Emery, Esq.
NORTON ROSE FULBRIGHT US LLP
799 9th Street, NW, Suite 1000
Washington, DC  20001-4501
(202) 662-0210

**Attorneys for Defendant
The GEO Group, Inc.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 11th day of May, 2017, I electronically filed the foregoing **RESPONSE TO PLAINTIFFS' MOTION TO COMPEL** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following or deposited a copy of the filing in the United States mail, postage prepaid, addressed as follows:

Brandt Milstein, Esq.  
Milstein Law Office  
5959 Canyon Boulevard  
Boulder, Colorado  80302

Alexander Hood, Esq.  
Towards Justice  
601 16th Street, Suite C #207  
Golden, Colorado  80401

R. Andrew Free, Esq.  
Law Office of R. Andrew Free  
Bank of America Plaza  
414 Union Street, Suite 900  
Nashville, Tennessee  37219

Mark Emery, Esq.  
Norton Rose Fulbright US LLP  
799 9th Street, NW, Suite 1000  
Washington, DC  20001-4501

Andrew Turner, Esq.  
Buescher, Kelman & Perera, P.C.  
600 Grant Street, Suite 450  
Denver, Colorado  80203

Hans Meyer, Esq.  
Meyer Law Office, P.C.  
P.O. Box 40394  
Denver, Colorado  80204

Charles A. Deacon, Esq.  
Norton Rose Fulbright US LLP  
300 Convent Street, Suite 2100  
San Antonio, Texas  79205-3792

     S/ Dana L. Eismeier  
Dana L. Eismeier (#14379)  
BURNS, FIGA & WILL, P.C.  
6400 S. Fiddlers' Green Circle, Suite 1000  
Greenwood Village, CO  80111  
Phone Number:   303-796-2626  
Fax Number:   303-796-2777  
E-mail:   eschuessler@bfwlaw.com

**Attorneys for Defendant**  
**The GEO Group, Inc.**

16