**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-CV-02887-JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

**Plaintiffs**,

v.

THE GEO GROUP, INC.,

**Defendant**.

**REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

Defendant, The GEO Group, Inc. ("GEO"), through its undersigned attorneys, replies as follows in support of its Motion for Protective Order ("Motion"):

**INTRODUCTION**

Nothing in Plaintiffs' response provides any factual, legal or practical reason to deny GEO's Motion. As to matters of fact, Plaintiffs once again selectively narrate their dealings with GEO and GEO's dealing with the government. Primarily, Plaintiffs argue

1

that it was GEO's responsibility to advocate the relevance of Plaintiffs' discovery requests to the government. But, critically, Plaintiffs do not mention that this issue is still outstanding because Plaintiffs failed to respond to GEO's request, made nineteen months ago, that Plaintiffs explain the relevance of their discovery requests to the government. It defies common sense that Plaintiffs would delegate to GEO the job of arguing the relevance of Plaintiffs' own discovery requests. Plaintiffs, not GEO, dropped the ball on this.

Plaintiffs' legal and "practical" arguments are likewise unavailing. The case Plaintiffs rely upon, *Sperandeo ex rel. National Labor Relations Board v. Milk Drivers & Dairy Employees Local Union 537*, 334 F.2d 381 (10th Cir. 1964), is inapplicable because a governmental agency was a named party to that case. In fact, Plaintiffs omit the "*ex rel. National Labor Relations Board*" when citing *Sperandeo*. (*See* Response, Doc. No. 74, p. 9.) When the government is a party to the litigation, the *Touhy* problem "simply does not arise." *Alexander v. F.B.I.*, 186 F.R.D. 66, 70 (D.D.C. 1998). Further, Plaintiffs' practical arguments fail by assuming the existence of some costs, ignoring the existence of others, and altogether avoiding the fact that Plaintiffs knew of the present situation for over nineteen months before filing a Motion to Compel against GEO.

Contrary to Plaintiffs' rhetoric, there is nothing "impish" about GEO's Motion. The relief requested in Plaintiffs' Motion to Compel would put GEO between opposing directives from the United States executive and judicial branches. This conundrum is at

the heart of GEO's Motion. GEO should not be placed between the countervailing powers of the executive and judicial branches when a readily available alternative exists.

## ARGUMENT

Plaintiffs' Response offers arguments that Plaintiffs refer to as factual, legal, and practical. (Response, Doc. No. 74, p. 8.) As noted above, all three fail. Because Plaintiffs' Response heavily relies on inaccurate characterizations of fact, GEO first addresses Plaintiffs' factual argument.

### I.  Plaintiffs mischaracterize GEO's communications with the government.

GEO has worked with the government to facilitate the disclosure of thousands of pages of official DHS information in response to Plaintiffs' discovery requests and has facilitated Plaintiffs' Rule 30(b)(6) deposition of GEO. (Motion to Compel, Exhibit F, Doc. No. 73-6, pp. 4, 7; Motion for Protective Order; Exhibits C & D; Doc. Nos. 72-3 & 72-4.) GEO acted in this go-between role as a courtesy and means of expediting communication of DHS's *Touhy* position on various documents and information requested by Plaintiffs. But, after enjoying the benefits of GEO's work, Plaintiffs are now unhappy with some decisions made by the government with respect to some of the documents sought in Plaintiffs' discovery requests. Rather than taking their dispute to the government, Plaintiffs incorrectly allege that GEO "is the entity responsible for withholding the documents." (Response, Doc. No. 74, p. 2.) They allege this despite the government instructing GEO that, pursuant to the DHS Regulations, GEO lacks authority

to disclose DHS information unless expressly authorized by the government. (Motion to Compel, Exhibit D, Doc. No. 73-4, pp. 8–9.)

The government's responses to requests for information can be broken down into three categories: (1) information that has already been disclosed; (2) information that the government has refused to disclose after considering the factors set forth in the DHS Regulations; and (3) information for which the government has requested relevance explanations in order to decide whether to authorize disclosure under the DHS Regulations.

With respect to the first category, GEO has facilitated disclosure of thousands of pages of documents and a Rule 30(b)(6) deposition. Upon reading Plaintiffs' Response, one would not know any of this happened.

Regarding the second category, the government made final *Touhy* determinations not to authorize disclosure of GEO's full government contract and detainees' Alien Registration Numbers. (Motion to Compel, Exhibit D, Doc. No. 73-4, pp. 2–4.) Plaintiffs requested this information in Interrogatories 1 and 2. GEO objected to those Interrogatories, noted the government's position, and redacted the documents in accordance with the government's instructions. (Motion to Compel, Exhibit E, Doc. No. 73-5, pp. 3, 5.)

Plaintiffs' Response focuses on the third category of information: information for which the government has requested relevance explanations in order to decide whether to

authorize disclosure. Upon receiving Plaintiffs' discovery requests, GEO contacted the government regarding production of certain documents, including the nine named Plaintiffs' detainee files. (Motion to Compel, Exhibit D, Doc. No. 73-4, p. 6.) In response, AUSA Timothy Jafek requested two things: (1) a description of "the nature of the information sought" and (2) "a detailed description of the relevance of the information as it pertains to the issue at hand." (*Id.* p. 7.) Mr. Jafek's request was made pursuant to section 5.45(a) of the DHS Regulations, which provides that "the party seeking [official information] must . . . set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought."

In response to Mr. Jafek's requests, GEO collected, organized, and sent the documents to Mr. Jafek for the government's consideration. (*See id.* p. 11.) The government authorized production of some documents ("Hearing Board & Disciplinary Procedure; Sanitation; and Voluntary Work Program"), which GEO subsequently disclosed. (*Id.*) With respect to other documents, primarily the detainee files, Mr. Jafek noted that their relevance "was not apparent to ICE." (*Id.*) Mr. Jafek provided a spreadsheet identifying the documents for which the government needed additional relevance information. (*Id.*) Mr. Jafek stated that for these documents to be disclosed, the government needed to know "what the relevance of those documents is." (*Id.*)[1]

---

[1] Mr. Jafek's spreadsheet was attached to GEO's Response to Plaintiff's Motion to Compel as Exhibit A (Doc. No. 75-2.)

GEO produced the portions of the detainee files not noted on Mr. Jafek's spreadsheet. With respect to the pages identified on Mr. Jafek's spreadsheet, GEO Bates numbered and largely redacted those pages, but redacted in a way that Plaintiffs could identify the document type. GEO then sent Plaintiffs the redacted documents and copies of GEO's correspondence with the government and **notified Plaintiffs that they must supply the relevance explanation**. Plaintiffs acknowledge that this occurred. (Response, Doc. No. 74, p. 6.) In GEO's Supplemental Discovery Responses, GEO explained that it applied the redactions pursuant to the government's direction and that "ICE requested that such documents not be provided until the relevance requirements of *Touhy* are met." (Motion to Compel, Exhibit F, Doc. No. 73-6, p. 9.) GEO also orally explained the government's position to Plaintiffs' counsel. (Motion to Compel, Exhibit C, Doc. No. 73-3, p. 2.)

In response, Plaintiffs did nothing for over a year-and-a-half. Plaintiffs did not even tell GEO that Plaintiffs would not be providing the relevance explanation. Now, focusing entirely on the third category of information, Plaintiffs argue that GEO's "refusal to respond to Plaintiffs' discovery requests is the fault of the company" and that GEO "is the entity responsible [for] withholding the documents." (Response, Doc. No. 74, p. 2.) Plaintiffs base these allegations upon the argument that "GEO must comply with the relevancy requirements of the DHS's *Touhy* regulations." (*Id.* p. 7.)

Plaintiffs' position is not credible. Plaintiffs effectively argue that GEO must change sides and advocate the relevance of Plaintiffs' discovery requests to the government. GEO does not believe that is appropriate. Further, it has been over nineteen months since GEO told Plaintiffs' counsel that they must make a relevance showing to the government. Plaintiffs did not, until now, claim that is actually GEO's responsibility.

There is no support for Plaintiffs' accusation that GEO obstructed the flow of information. Despite Plaintiffs' tone, their only substantive criticism of GEO is that GEO did not attempt to make Plaintiffs' relevance arguments to the government. Plaintiffs do not dispute that the government requested additional relevance information to determine whether to authorize production. Neither do Plaintiffs dispute that GEO relayed the government's position to Plaintiffs and instructed Plaintiffs what to do—provide the relevance information to the government. Plaintiffs have since taken no action other than recently filing their Motion to Compel that accuses GEO of withholding information. If anyone is at fault for the nonproduction of the detainee files, Plaintiffs are. At the very least, Plaintiffs' arguments are no reason to deny GEO's Motion.[2]

## II.     Plaintiffs' legal authority is incorrect and inapplicable.

Plaintiffs begin their legal argument section by inaccurately stating that the DHS Regulations do not "authorize[] GEO to decline . . . to answer discovery where it is a party to the litigation." (Response, Doc. No. 74, p. 11.) Plaintiffs' position is not correct:

---

[2] Although not required to do so, GEO has again informed Plaintiffs that if they will provide GEO with a detailed description of relevance, GEO will pass on it to the government.

7

the DHS Regulations *require* GEO to decline to answer certain discovery without the government's authorization. Section 5.44 of the DHS Regulations restricts disclosure "in connection with any litigation." Section 5.41(d) defines "litigation" to include "all pre-trial, trial, and post-trial stages of all judicial or administrative actions," including "responses to discovery requests." Plainly, the DHS Regulations do require GEO to obtain DHS's authorization before producing DHS information.

Plaintiffs then argue, again inaccurately, that "[t]he Tenth Circuit has squarely addressed whether a federal agency's housekeeping regulations may limit discovery against [a] federal employee who is a party to litigation and concluded that they may not." (Response, Doc. No. 74, p. 11.) The sole case Plaintiffs cite in support of their position is *Sperandeo ex rel. National Labor Relations Board v. Milk Drivers & Dairy Employees Local Union No. 537*, 334 F.2d 381, 384 (10th Cir. 1964).

The *Sperandeo* case is not applicable for two reasons. First, *Sperandeo* does not involve a "federal employee" who is a party to litigation. Rather, the *Sperandeo* case was brought on behalf of an executive agency—the National Labor Relations Board. The *Sperandeo* court specifically noted this. *Id.* p. 384. So did the court in *Saunders v. Great Western Sugar Co.*, 396 F.2d 794, 795 (10th Cir. 1968). In *Saunders*, subordinates of the Small Business Administration appealed a trial court order compelling them to respond to subpoenas duces tecum. *Id.* at 794. The subordinates cited *Touhy* and argued that the SBA's authorized decisionmaker had not authorized disclosure. *Id.* The party issuing the

subpoena relied upon *Sperandeo*. *Id.* at 795. The *Saunders* court distinguished *Sperandeo* because in *Sperandeo* "the **governmental agency** brought suit seeking judicial action and then refused to disclose." *Id.* (emphasis added).

As GEO argued in its Response to Plaintiffs' Motion to Compel, the *Touhy* problem—*i.e.*, whether a governmental agency may consolidate the authority to disclose information and, conversely, whether an agency subordinate may lawfully decline to disclose information—is not present when the agency itself is a party to the litigation. (Response to Motion to Compel, Doc. No. 75-1, pp. 10–14.) When a governmental agency is a party, the analysis focuses on the agency's decision to withhold information, not a subordinate's claim that it lacks authorization to produce information. As the *Saunders* court determined, *Sperandeo* is distinguishable.

Second, even if *Sperandeo* did involve a "federal employee," GEO is not a federal employee. Plaintiffs interchangeably use the definition of "employee" under the DHS Regulations and the meaning of employment under the common law. Plaintiffs employ this tactic to support their argument that the Court should proceed as if the government were a party to this case. However, GEO is a government contractor. Plaintiffs have acknowledged as much in this lawsuit. (*See* Motion for Class Certification, Doc. No. 49, p. 3.) Indeed, GEO's status as a "contractor" is the only reason it falls under the definition of "employee" in section 5.41(c) of the DHS Regulations. If GEO were actually a government employee, it could assert the defense of sovereign immunity.

In sum, Plaintiffs' only legal authority, *Sperandeo*, is a case where the governmental agency was a party. In *Saunders*, the court distinguished *Sperandeo* and applied the rule of *Touhy* for that very reason. *Saunders*, 396 F.2d at 795. When a governmental agency is not a party, the law of the Tenth Circuit is that a department head "may by regulation or order withdraw from his subordinates and consolidate in himself the authority to release [department] documents." *Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp. 2d 1268, 1272 (D. Colo. 2011) (citing *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)).

### III. As a practical matter, granting GEO's Motion would decrease burdens and expenses.

Plaintiffs argue the Court should deny GEO's Motion for "practical" reasons, but those reasons are not rooted in reality. Plaintiffs address their own potential costs on the assumption that this Court will require them to file a separate Administrative Procedure Act ("APA") lawsuit to enforce a subpoena to DHS. Plaintiffs state that "GEO tacitly acknowledges" the necessity of an APA action "through the precedents it cites." (Response, Doc. No. 74, p. 8.) Again, Plaintiffs are demonstrably incorrect. GEO has repeatedly cited *Ceroni*, in which Judge Boland faced similar arguments made by the Department of Justice on behalf of the United States Postal Service. 793 F. Supp. 2d at 1275–77. Judge Boland determined that where "a federal court is asked to enforce its own subpoena issued in connection with a federal proceeding, no such requirement [to file a separate APA lawsuit] exists." *Id.* at 1275. Rather, "the proper procedure is for

the federal court, on the filing of a motion to compel or for protective order, to review the discovery dispute in the pending action." *Id.* Thus, the party issuing the subpoena "is not required to file a separate and ancillary APA lawsuit to resolve the discovery dispute." *Id.* at 1277. Plaintiffs' cost arguments rest upon a flawed foundation.

Contrary to Plaintiffs' assumed costs, GEO would face certain costs if forced to navigate opposing directives from the judicial and executive branches. In *Touhy*, a similar situation resulted in the government subordinate being found guilty of contempt, which had to be reversed by the Seventh Circuit before ultimately reaching the Supreme Court. 340 U.S. 462, 463–65 (1951). If the Court grants Plaintiffs' Motion to Compel, the parties would likely head down a similar road.

Plaintiffs' delay arguments are also unconvincing. First, Plaintiffs argue that granting GEO's Motion would "potentially derail the discovery schedule on the merits of the Class's claims," but there is no discovery schedule. The discovery schedule is yet to be decided by the Court. Further, there would be little delay if Plaintiffs are not required to file a separate APA action. Last, Plaintiffs can hardly complain of delay when Plaintiffs have known of this situation for the past nineteen months.

In contrast to Plaintiffs' purported costs and delays, the burden of granting Plaintiffs' Motion to Compel is real and apparent. The most pressing burden is the one GEO would face, to use Plaintiffs' language, between the Scylla and Charybdis of the United States executive and judicial branches. The Court should not put GEO and its

counsel in that position when Plaintiffs can seek documents and information directly from DHS.

WHEREFORE, pursuant to Fed. R. Civ. P. 26(b) and (c), GEO requests that the Court enter a protective order requiring Plaintiffs to seek documents and information subject to the DHS Regulations directly from DHS.

Respectfully submitted this 17th day of May, 2017.

 S/Dana Eismeier
Dana L. Eismeier (#14379)
Michael Y. Ley (#43733)
BURNS, FIGA & WILL, P.C.
6400 S. Fiddlers' Green Circle, Suite 1000
Greenwood Village, CO  80111
303-796-2626
deismeier@bfwlaw.com
mley@bfwlaw.com

Charles A. Deacon, Esq.
NORTON ROSE FULBRIGHT US LLP
300 Convent Street, Suite 2100
San Antonio, TX  79205-3792
(210) 270-7133

Mark Emery, Esq.
NORTON ROSE FULBRIGHT US LLP
799 9th Street, NW, Suite 1000
Washington, DC  20001-4501
(202) 662-0210

**Attorneys for Defendant
The GEO Group, Inc.**

## CERTIFICATE OF SERVICE

      I hereby certify that on this 17th day of May, 2017, I electronically filed the foregoing **REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Brandt Milstein, Esq.  
Milstein Law Office  
5959 Canyon Boulevard  
Boulder, CO  80302  

Alexander Hood, Esq.  
Towards Justice  
601 16th Street, Suite C #207  
Golden, CO  80401  

R. Andrew Free, Esq.  
Law Office of R. Andrew Free  
Bank of America Plaza  
414 Union Street, Suite 900  
Nashville, TN  37219  

Andrew Turner, Esq.  
Buescher, Kelman & Perera, P.C.  
600 Grant Street, Suite 450  
Denver, CO  80203  

Hans Meyer, Esq.  
Meyer Law Office, P.C.  
P.O. Box 40394  
Denver, CO  80204  

    S/ Dana Eismeier  
Dana L. Eismeier (#14379)  
Michael Y. Ley (#43733)  
BURNS, FIGA & WILL, P.C.  
6400 S. Fiddlers' Green Circle, Suite 1000  
Greenwood Village, CO  80111  
Phone:        303-796-2626  
Fax:        303-796-2777  
Email:        deismeier@bfwlaw.com  
**Attorneys for Defendant**  
**The GEO Group, Inc.**