# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.: 1:14-cv-02887-JLK**

ALEJANDRO MENOCAL, *et al*.,

      Plaintiffs,

v.

THE GEO GROUP, INC.,

      Defendant.

_____

## STIPULATION AND ORDER CONCERNING PRODUCTION OF ELECTRONICALLY STORED INFORMATION
_____

**Kane, J.**

      WHEREAS, Class Counsel and Defendant (collectively, the "Parties," and each, a "Party") have met and conferred regarding discovery of electronically stored information ("ESI") of the Parties;

      WHEREAS, the Parties have reached agreement on certain of the issues discussed regarding such discovery;

      WHEREAS, the Parties have entered into a Stipulation Concerning Production of Electronically Stored Information to facilitate the just, speedy, and inexpensive conduct of discovery involving ESI and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention;

      IT IS HEREBY ORDERED that:

1.     All Parties are bound by and subject to the terms of this Order.

2.     <u>Definitions</u>.

      a.     "Discovery Material" is defined as all products of discovery and all information derived there from, including, but not limited to, documents, objects and things, deposition testimony, interrogatory/request for admission responses, and any copies, excerpts or summaries thereof, produced by any Party in the above-captioned matter.

      b.     Plaintiffs and Defendant, as well as their officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this Protocol.

c.    "Plaintiffs" as used herein shall mean Named Plaintiffs and Class Representatives Alejandro Menocal, Marcos Brambila, Grisel Xahuentitla, Hugo Hernandez, Lourdes Argueta, Jesus Gaytan, Olga Alexaklina, Dagoberto Vizguerra, and Demetrio Valegra, as well as any other individually named plaintiff in this case or in any case that is consolidated with this matter.

3.    <u>Cooperation</u>.  The Parties shall conduct discovery in a cooperative manner, as discussed in The Case for Cooperation, The Sedona Conference Journal, Fall 2009, p. 342, and in the United States District Court for the District of Colorado Guidelines Addressing the Discovery of Electronically Stored Information, including without limitation, by reasonably drafting discovery requests and responses in accordance with Fed R. Civ. P. 1 and 26(g)(1); and producing ESI in accordance with Fed R. Civ. P. 34; and by meeting and conferring in good faith on topics such as identification of custodians of relevant ESI, potentially relevant data sources, search methodologies, and such other issues as may arise during the course of discovery.  The parties will confer in good faith regarding reasonable discovery deadline extensions when necessary to facilitate the meet and confer process.

4.    <u>Search Methodology</u>.

a.    The Parties expect to employ one or more search methodologies, including possibly but without limitation the use of advanced search and retrieval technologies, to identify potentially relevant ESI.  The Parties will, after taking into consideration the relevance and proportionality factors set forth in FRCP 26(b)(1), meet and confer and attempt in good faith to reach agreement regarding:

i.    the method of searching and, if applicable, the words, terms, and phrases to be searched to include, if requested, validation methodology and results of testing proposed search terms; and

ii.    the individual and departmental custodians from whom ESI will be collected and searched.

b.    <u>Use of Technology Assisted Review</u>.  No Party can compel another Party to use technology assisted review or to produce documents without human review over their objection. The Parties may use technology assisted review to prioritize the order of review of the documents identified by search terms (the "Review Set"). If a Producing Party elects to use technology assisted review to cull documents from the Review Set, it will inform the Requesting Parties when the Producing Party decides to do so.  The Parties reserve the right to object to such use of technology assisted review, but by allowing a party the right to reserve their objection no party is agreeing, either explicitly or implicitly, that such objections are legitimate.  If a Producing Party is going to use technology assisted review to cull documents, the Producing Party shall maintain any culled documents in the Review Set if needed for further review and provide sufficient notice such that if an objection is sustained, then review can be completed reasonably promptly.

2

c.      The scope of the Parties' search for ESI shall be limited to those reasonably accessible ESI sources where the responding party reasonably believes there will be potentially relevant documents, the preservation, collection, review and production of which would not be disproportionate under the factors set forth in FRCP 26(b)(1).  Consistent with the local E-Discovery Guidelines, the Parties will meet and confer to discuss and disclose likely sources of ESI that a party reasonably believes hold potentially relevant documents.  Given the age of the information and the issues in the case, the Parties anticipate that most of the relevant information may be contained in paper and reporting from proprietary database systems.

d.      Once a final search protocol has been agreed to and executed, a requesting Party may, for good cause, seek to expand the scope of the search.  Where such a request is made, the Parties will meet and confer and attempt in good faith to reach agreement as to the timing and conditions of such expansion.  If the Parties cannot reach agreement, any dispute shall be presented to the Court.

e.      With respect to non-searchable files, such as non-searchable PDFs, corrupt, encrypted files, zip/compressed files, wave files and pictures, the parties agree that they will make reasonable efforts to review such files: (1) if the producing Party has reasonable reason to believe that the item may contain relevant information, and (2) if the difficulties of dealing with such information do not lead to the producing Party's conclusion that such information should be classified as inaccessible or the discovery would be disproportionate.  To the extent that a file is reasonably believed by the producing Party to contain relevant information, but the producing Party nevertheless concludes that it is not accessible or disproportionate, the producing Party shall identify any such files.  Both Parties will attempt to OCR non-searchable PDFs that are collected from an electronic source.  A party shall not be required to OCR hard copy documents scanned into TIFF images for the purposes of litigation.

5.      <u>Deduplication</u>.  The Parties shall make reasonable efforts to deduplicate ESI.  ESI shall be deduplicated horizontally across custodians.  ESI will be considered duplicative if it is identical through a hashing algorithm.  For example, duplicates would include copies of the same electronic file saved on the local hard drives and/or network shared drives of multiple custodians, even if different instances of the file reflect different dates created.

6.      <u>Email Threading</u>.  In order to reduce the volume of entirely duplicative content within email threads, the Parties shall utilize "email thread suppression."  As used in this agreement, "email thread suppression" means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string.  Duplicative emails suppressed under this paragraph need not be reflected on the Party's privilege log.

3

7.     Privilege Logs and Redaction.

a.     Contents of Privilege Logs.  Documents withheld from production that a Party believes are covered by an attorney-client privilege and/or work product protection that do not fall into the categories specifically excluded below, should be logged on a privilege log on a document-by-document basis, except as identified below.  Consistent with Local Rule 26(e) and Fed. R. Civ. P. 26(b)(5), the following information should be provided (as applicable) in the privilege log for each document: (1) unique document identification number; (2) document type; (3) family relationship; (4) date; (5) author; (6) each recipient; (7) copies(s); (8) any other email thread participants not in the top email thread; (9) privilege or protection claimed; and (10) description of the subject matter of the document or electronically stored information sufficient to enable the requesting party to assess the validity of the privilege claim.

b.     An email thread for which a party claims a privilege may be logged in a single entry provided that such entry identifies all senders and recipients appearing at any point in the thread.

c.     Privilege Log Exclusions.  The Parties agree that the following documents need not be included on a privilege log:

i.     Communications between the Parties and counsel (including internal communications within a law firm or a legal department of a corporation) on and after the filing of this lawsuit and before the lawsuit in anticipation of this litigation regarding the litigation or litigation strategy.

ii.     Work product created by or for trial counsel in this matter after commencement of this action.

d.     Redactions.  To the extent that a responsive document contains (a) privileged content; (b) Personally Identifiable Information or (c) non-responsive Confidential Information (as that term is defined in the Protective Order), the Producing Party may produce that document in a redacted form.  Any redactions shall be clearly indicated on the face of the document and each page of the document from which information is redacted shall bear a designation that it has been redacted.

e.     Non-Responsive Attachments.  The Parties agree that fully non-responsive attachments to responsive parent documents need not be produced.  For such fully non-responsive attachments, a placeholder slip-sheet endorsed "Withheld Non-Responsive" will be produced to capture the family relationship. The metadata produced for non-responsive attachments will include the following fields: File Name or Title, Document Date, File Extension, and withheld status.

8.     Production Format for ESI.

a.     General Provisions.  Unless the Parties agree to a different format, documents should be produced with TIFF images and named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image.  The Bates number should be consistent across the production, contain no special characters, and be numerically sequential within a given document.  Attachments to documents should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder.  All images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI.  Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These .TIFF images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

b.     Production Format.  Except as noted below, a party can choose to produce a document either in TIFF format (with searchable text and metadata) or as it is ordinarily maintained (*i.e.*, as a native file).  A party cannot be required to produce a document in two formats.

c.     Color.  Color documents (*e.g.*, color photographs or graphical representations in color) shall be scanned as black & white, single-page TIFF images in accordance with the technical specifications set out above.  Each party will accommodate reasonable requests for production of images in color.

d.     Document Text.  All unredacted electronic documents should be provided with complete document-level extracted text files.  In the event a document contains text which is to be redacted, OCR text files should be provided for any un-redacted portions of the documents.  Document level OCR text files will be provided for any unredacted portions of redacted documents, and for all hard copy scanned documents for which the producing party has otherwise created OCR files for their own purposes. The extracted full text and/or OCR text for all deliverables should be in separate document-level TXT files.  These TXT files may either be provided in a separate folder or included in the same folder as their corresponding images. The number of TXT files per folder should be limited to 1,000 files.

e.     Parent-Child Relationships.  For email collections, the parent-child relationships (the association between emails and attachments) should be preserved.  Email attachments should be consecutively produced with the parent email record.

f.     Dynamic Fields.  Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

g.     Unitization.  If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes should be maintained as it

existed when collected by the Producing Party. Parties may unitize their documents using either physical unitization (*i.e.*, based on physical binding or organizational elements present with the original paper documents like staples, clips and binder inserts) or logical unitization (*i.e.*, a manual review of the paper to determine what logically constitutes a document like page numbers or headers). If unitization cannot be reasonably maintained, the original unitization should be documented in the data load file or otherwise electronically tracked if reasonably possible.

    h. <u>Word Processing Files</u>.  All word processing files, including without limitation Microsoft Word files, will be produced as *.tiff  images showing track changes and comments. A UNC file path (if available) must be included in the ESI load file.

    i. <u>Unredacted Spreadsheet Files</u>.  Unredacted spreadsheet files, including without limitation Microsoft Excel files, which do not require redactions, will be produced as native files showing comments and similar data.  A UNC file path (if available) must be included in the ESI load file. Additionally a bates-stamped *.tiff placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file. To the extent Parties prefer native file redaction of Spreadsheet File, the Parties will meet and confer to discuss the form of production.

    j. <u>Unredacted Presentation Files</u>.  Unredacted presentation files, including without limitation Microsoft PowerPoint files, will be produced as native files showing comments, hidden slides, speakers' notes, and similar data.  A UNC file path (if available) must be included in the ESI load file. Additionally a bates-stamped *.tiff placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file. The Parties will meet and confer regarding production of presentation files with alternate default settings.

    k. <u>Organization of Production</u>**.**  To the extent a Producing Party organizes its production of paper files as they are kept in the ordinary course of business, Producing Party should scan and produce folders, redwelds, binder-covers and other organizational structure. Such materials should be produced as independent documents and be produced before the documents that were contained in these elements to the extent reasonably accomplishable by the above-addressed unitization (*e.g.*, the file folder should have a Bates Label immediately before the documents contained in the file folder).  The Producing Party will provide the name of the custodian who had possession of the document when it was collected.  A custodian can include an employee or person's name, a department, or an archive storage if the document was stored in archive when the Party's duty to preserve was triggered.  The requirements of this paragraph (other than the identification of custodian) will not apply to paper documents already collected and scanned at the time this protocol is issued.

    l. <u>Database Records and Structured Data</u>.  To the extent a response to discovery requires <u>production </u>of discoverable electronic information contained in a database , the Parties agree to meet and confer regarding the format of the production (e.g., Excel, csv, sql, commercial database, or some other agreed-upon format).  If the structured data exists in a

6

proprietary database format, and an exportable electronic file cannot be created in a reasonably usable format, then the Parties will meet and confer regarding utilizing the proprietary software to generate the production in an alternative format.

m.    <u>Embedded Files</u>.  To the extent a file is deemed responsive and has embedded files that are also deemed responsive, they shall be produced as they would appear in the ordinary course. The Parties will meet and confer to discuss production format on a case by case basis for any non-extracted embedded files that do not properly render as they appeared in the form in which they were ordinarily maintained.

n.    <u>Time Zone</u>.  Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Universal Coordinated Time (UTC).  The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hardcoded text within a file.  Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text in accordance with Concordance and Summation formats, below.

o.    <u>Bates Numbering</u>.  Files will be named according to the Bates number of the corresponding *.tiff image.  The Bates number will:

i.    be consistent across the production;

ii.    contain no special characters; and

iii.    be numerically sequential within a given document.

Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be noted.  In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.

p.    <u>Load File Formats</u>.  ESI will be produced in standard Concordance load file format and an image file that is in .OPT format.

q.    <u>Metadata to be Produced</u>.  Metadata to be produced: The following metadata fields should be produced for each document to the extent that such information is available at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.  All requests should be read to include a request for the below metadata associated with all documents responsive to the request.

7

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **BEGDOC** | Starting bates | Hardcopy, edoc, email **and** attachment |
| **ENDDOC** | Ending bates | Hardcopy, edoc, email **and** attachment |
| **CUSTODIAN** | Custodial **or** departmental custodian from which the **document** was collected | Hardcopy (if coded), edoc, email **and** attachment (populated through processing) |
| **ALL CUSTODIANS** | Custodial source(s) from which document was collected but subsequently suppressed as a duplicate during processing. | Edoc, email **and** attachment (populated through processing) |
| **FAMILYIDOR ATTACHID** | Family (Range of bates related **documents** (i.e. email & attachment) - this field will be populated for **all** records in the family), and will distinguish parent documents from attachments. | Hard copy, edoc, emails **and** attachments (populated through processing) |
| **FROM** | Email Author | Emails (populated through processing) |
| **TO** | Recipient | Emails (populated through processing) |
| **CC** | CC field - In the event of emails | Emails (populated through processing) |
| **BCC** | Bcc field - in the event of emails | Emails (populated through processing) |
| **SUBJECT** | Subject | Emails (populated through processing) |
| **DOCTITLE** | **Document** Title/name of the original native file as it existed at the time of collection. | Edoc **or** attachment (populated  through processing) |

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **DOCDATE** | **Document** Date/Date Sent, format MM/DD/YYYY, this is the SORT_DATE field, so populate across families | Email **and** Attachments |
| **DATESENT** | Email Sent Date, format MM/DD/YYYY | Emails (populated through processing) |
| **TIMESENT** | Time sent, format 00:00:00 AM/PM | Emails (populated through processing) |
| **DATECREATED** | Date first created, format MM/DD/YYYY | Edoc **or** attachment (populated  through processing) |
| **DATESVD** | Date last saved/modified, format MM/DD/YYYY | Edoc **or** attachment (populated  through processing) |
| **TIMESVD** | Time saved, format 00:00:00 AM/PM | (populated through processing) |
| **PAGECOUNT** | **Document** page count | Edoc **or** attachment (populated  through processing) |
| **ATTILE** | File name/attachment name | Electronic files **and/or** attachments (populated through processing) |
| **APPLICAT** | Application used to open the file (Word, PowerPoint, Adobe, Excel, Explorer, Quicken, etc.) | Electronic files **and/or** emails, attachments (populated through processing) |

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **FOLDERID OR ORIGFOLDERPATH OR FILEPATH** | File path/folder structure of original native file as it existed at the time of collection.  This shall not be a requirement for any document already collected where file path information was not collected.  In other words, the Parties shall not be required to incur the burden and expense of recollecting any information to capture file path information.<br><br>i.e. path of email in mailbox (populate for email attachments also); filepath of edocs **or** scanned **documents** (if requested) | Electronic files **and/or** emails, attachments (populated through processing) |
| **ALL FILEPATHS** | File path/folder structure of original native file as it existed at the time of collection but subsequently removed as a duplicate.<br><br>i.e. path of email in mailbox (populate for email attachments also); filepath of edocs **or** scanned **documents** (if requested) when duplicate copies were suppressed during processing. | Electronic files **and/or** emails, attachments (populated through processing) |
| **DOCLINK or NATIVEFILE** | Active link reflecting current filepath back to the native file | Electronic files **and/or** emails, attachments (populated through processing **and only provided if receiving native files**.) |
| **FILEEXTEN** | In the event of attachments **or** emails, this will enable us to search by **document** type.  Sample contents: *PST*, *MSG*, *PDF*, *DOC*, *PPT*, *HTM*, etc. | Electronic files **and/or** emails, attachments (populated through processing) |

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| FILESIZE | Numerical file size, in bytes, of any natively-produced documents. | Electronic files and/or edocs (populated through processing). |
| AUTHOR | In the event of attachments, this field contains the 'author' of the **document** | Electronic files **and/or** attachments (populated through processing) |
| HASH | MD5 Hash value for de-dupe | Electronic files **and/or** attachments (populated through processing) |
| WITHHELD STATUS | In the event of non-responsive attachments the value "Withheld" will be listed. | Non-responsive attachments |

9.      Production Format for Hard Copy Documents.  Hard copy documents will be
scanned and processed as .tiff images.   Document level OCR text files will be provided for all
hard copy scanned documents for which the producing party has otherwise created OCR files for
their own purposes.  To the extent this production format is not feasible or causes the producing
Party undue burden, the Parties agree to meet and confer to discuss the different form of
production.  The individual custodian of a document shall be provided, or if not reasonably
available, the departmental custodian.

10.      Encryption. To maximize the security of information in transit, any media on
which documents are produced may be encrypted by the producing Party. In such cases, the
producing Party shall transmit the encryption key or password to the requesting Party, under
separate cover, contemporaneously with sending the encrypted media.

11.      Data Security.  Recipients of a Producing Party's data have an obligation to
reasonable secure the Producing Party's information to protect it from corporate theft, espionage,
hacking and other cyber intrusion.  To that end, a receiving party has the following obligations:
        a.   Any person in possession of another Party's information shall exercise the
             same care with regard to the storage, custody, or use of information as they
             would apply to their own material of the same or comparable sensitivity.
             Receiving Parties must take reasonable precautions to protect information
             from loss, misuse and unauthorized access, disclosure, alteration and
             destruction.  Such measures include:
          i.   Reasonably preventing unauthorized persons from gaining access to
               INFORMATION (physical access control);
          ii.  Reasonably preventing INFORMATION from being used without
               authorization (logical access control) including the use of passwords;

     iii.  Reasonably ensuring that persons entitled to use INFORMATION gain access only to INFORMATION they are entitled to access, and that, in the course of processing or use and after storage, INFORMATION cannot be read, copied, modified or deleted without authorization (data access control);

     iv.  Reasonably ensuring that INFORMATION cannot be read, copied, modified or deleted without authorization during electronic transmission, transport or storage on storage media, and that the target entities for any transfer of INFORMATION by means of data transmission facilities can be established and verified (data transfer control);

     v.  Reasonably ensuring the establishment of an audit trail to document whether and by whom INFORMATION have been accessed in systems under a Party's control or the control of a third party review vendor hired by a Party. A party in receipt of INFORMATION shall maintain system audit logs tracking all access to INFORMATION. These logs shall be kept from the time a Party receives the INFORMATION until the case ends and the data is destroyed. The parties agree to meet and confer if a third party (other than the above document review vendor) needs access to the data and cannot comply with the above requirements;

b.  A party may satisfy its obligations under paragraph (a) above by storing the produced INFORMATION in a secure litigation support site(s) that applies industry best practices regarding data security, including but not limited to application of access control rights to those persons entitled to access INFORMATION under this Order and disclosing that litigation support site to the Producing Party.

c.  Any INFORMATION in electronic format downloaded from the litigation support site(s) shall be password protected and/or encrypted at the file level with access limited to persons entitled to access INFORMATION under this Order.

d.  Any mobile device (e.g., laptop, tablet, smartphone, thumb drive, portable hard drive) that INFORMATION in electronic format is downloaded to or stored on shall be either password-protected and/or encrypted, with access limited to persons entitled to access INFORMATION under this Order.

e.  INFORMATION in paper format is to be maintained in a secure location with access limited to persons entitled to access INFORMATION under this Order

f.  Summaries of INFORMATION including any lists, memorandum, indices or compilations prepared or based on an examination of INFORMATION, that quote from or paraphrase INFORMATION can be identified shall be accounted the same status of confidentiality as the underlying INFORMATION.

g.  If the Receiving Party discovers a breach of security relating to the INFORMATION of a Producing Party, the Receiving Party shall: (1) provide written notice to the Producing Party of the breach within 24 hours of the Receiving Party's discovery of the breach; (2) investigate and remediate the effects of the breach, and provide the Producing Party with assurance

reasonably satisfactory to the Receiving Party that the breach shall not recur; and (3) provide sufficient information about the breach that the Producing Party can ascertain the size and scope of the breach. The Receiving Party agrees to cooperate with the Producing Party or law enforcement in investigating any such security incident.

12.     <u>Variance</u>.  Any practice or procedure set forth herein may be varied by agreement of the Parties without order of the Court.  Failure of the Parties to agree on any modifications may be raised with the Court as necessary and in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules.

13.     <u>Costs</u>.  The Parties agree each party shall bear the cost of its own production. In the event, however, a Party requests the production of cumulative or repetitive information or information that otherwise imposes an undue burden, or is from a source that is not reasonably accessible due to undue burden or cost, the producing Party may object. Upon objection, the Parties shall work in good faith to resolve the issue, for instance by producing samples or summaries of such documents. In the event the parties are unable to resolve their differences, the parties may proceed consistent with the Federal Rules of Civil Procedure, including Rule 26(b)(2), and any applicable Local Rules.

14.     <u>Designated ESI Liaison.</u>  Each Party shall designate an individual(s) to act as e- discovery liaison(s) for purposes of meeting, conferring, and attending court hearings on the subject ("Designated ESI Liaison").  The Designated ESI Liaison must:

    a.  be prepared to participate in e-discovery discussions and dispute resolution;

    b.  be knowledgeable about the Party's e-discovery efforts;

    c.  be, or have reasonable access to those who are, familiar with the Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

    d.  be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

Date:  August 22, 2017

SO ORDERED:

_____
John L. Kane
Senior U.S. District Court Judge

13

By: /s/ Juno Turner
Juno Turner
Ossai Miazad
Elizabeth Stork
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005
E-Mail: jturner@outtengolden.com
E-Mail: om@outtengolden.com
E-Mail: estork@outtengolden.com

David Lopez
**OUTTEN & GOLDEN LLP**
601 Massachusetts Avenue NW
Second Floor West Suite
Washington, D.C. 20001
Telephone:  (202) 847-4400
Facsimile:  (202) 847-4410
E-Mail: pdl@outtengolden.com

R. Andrew Free
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

Alexander Hood
David Seligman
Andrew Schmidt
**TOWARDS JUSTICE**
1535 High St., Suite 300
Denver, CO 80218
(720) 441-2236
alex@towardsjustice.org
david@towardsjustice.org
andy@towardsjustice.org

Brandt Milstein
**MILSTEIN LAW OFFICE**
595 Canyon Boulevard
Boulder, CO 80302

By: /s/ Dana Eismeier
Dana Eismeier
**BURNS, FIGA & WILL**
Suite 1000
6400 S. Fiddlers Green Circle
Greenwood Village, Colorado 80111
T: (303) 796-2626
deismeier@bfwlaw.com

Mark Emery
**NORTON ROSE FULBRIGHT US LLP**
799 9th Street NW, Suite 1000
Washington, DC 20001
(202) 662-0210
mark.emery@nortonrosefulbright.com

Charles A. Deacon
**NORTON ROSE FULBRIGHT US LLP**
300 Convent Street
San Antonio, Texas 78205
(210) 270-7133
charlie.deacon@nortonrosefulbright.com

*Counsel for Defendant*

14

(303) 440-8780
brandt@milsteinlawoffice.com

Andrew Turner
**THE KELMAN BEUSCHER FIRM**
600 Grant St., Suite 450
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com

Hans Meyer
**MEYER LAW OFFICE, P.C.**
P.O. Box 40394  Denver, CO 80204  (303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*