**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**February 9, 2018**

**FOR THE TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

_____

ALEJANDRO MENOCAL, MARCOS
BRAMBILA, GRISEL XAHUENTITLA,
HUGO HERNANDEZ, LOURDES
ARGUETA, JESUS GAYTAN, OLGA
ALEXAKLINA, DAGOBERTO
VIZGUERRA, and DEMETRIO
VALEGRA, on their own behalf and on
behalf of all others similarly situated,

     Plaintiffs - Appellees,

v.                                                                  No. 17-1125

THE GEO GROUP, INC.,

     Defendant - Appellant,

and

NATIONAL ADVOCACY CENTER OF
THE SISTERS OF THE GOOD
SHEPHERD; NATIONAL
EMPLOYMENT LAW PROJECT;
NATIONAL GUESTWORKER
ALLIANCE; NATIONAL IMMIGRANT
JUSTICE CENTER; NATIONAL
IMMIGRATION LAW CENTER;
PANGEA LEGAL SERVICES; PUBLIC
CITIZEN; SANCTUARY FOR
FAMILIES; SOUTHERN POVERTY
LAW CENTER; AMERICAN
IMMIGRANTS FOR JUSTICE; ASIAN
AMERICANS ADVANCING JUSTICE;
DETENTION WATCH NETWORK;
HUMAN RIGHTS DEFENSE CENTER;
ILLINOIS COALITION FOR

IMMIGRANT AND REFUGEE RIGHTS;
JUSTICE STRATEGIES; LEGAL AID
AT WORK; HUMAN TRAFFICKING
PRO BONO LEGAL CENTER; TAHIRIH
JUSTICE CENTER; ASISTA
IMMIGRATION ASSISTANCE;
FREEDOM NETWORK USA,

        Amici Curiae.

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:14-CV-02887-JLK)**

_____

Mark Emery, Norton Rose Fulbright US LLP, Washington, D.C. (Charles A. Deacon
Norton Rose Fulbright US LLP, San Antonio, Texas; and Dana Eismeier, Burns, Figa &
Will, Greenwood Village, Colorado, with him on the brief), for Defendant-Appellant.

David Lopez, Outten & Golden LLP, Washington, D.C. (Juno Turner and Elizabeth V.
Stork, Outten & Golden LLP, New York, New York; R. Andrew Free, Law Office of R.
Andrew Free, Nashville, Tennessee; Alexander Hood, David Seligman, and Andrew
Schmidt, Towards Justice, Denver, Colorado; Brandt Milstein, Milstein Law Office,
Boulder, Colorado; Andrew H. Turner, The Kelman Beuscher Firm, Denver, Colorado;
and Hans Meyer, Meyer Law Office, P.C., Denver, Colorado, with him on the brief), for
Plaintiffs-Appellees.

Scott D. McCoy and Shalini Agarwal, Southern Poverty Law Center, Tallahassee,
Florida, Alia Al-Khatib, Southern Poverty Law Center, Miami, Florida, and Lisa
Graybill, Southern Poverty Law Center, New Orleans, Louisiana, filed a brief for the
Southern Poverty Law Center as Amicus Curiae, in support of Appellees.

Adina H. Rosenbaum and Scott L. Nelson, Public Citizen Litigation Group, Washington,
D.C., filed a brief for Public Citizen, Inc., and The National Employment Law Project, as
Amici Curiae, in support of Appellees.

Katherine E. Melloy Goettel, Mark Fleming, Claudia Valenzuela, and Keren Zwick,
National Immigration Justice Center, Chicago, Illinois, filed a brief for National
Immigrant Justice Center, et al., as Amici Curiae, in support of Appellees.

Andrew C. Lillie, Nathaniel H. Nesbitt, and Ann C. Stanton, Hogan Lovells US LLP, Denver, Colorado, filed a brief for Human Trafficking Pro Bono Legal Center, Tahirih Justice Center, Asista Immigration Assistance, Freedom Network USA, and Sancuary for Families, as Amici Curiae, in support of Appellees.

_____

Before **MATHESON**, **BACHARACH**, and **McHUGH**, Circuit Judges.

_____

**MATHESON**, Circuit Judge.

_____

This appeal addresses whether immigration detainees housed in a private contract detention facility in Aurora, Colorado (the "Aurora Facility") may bring claims as a class under (1) 18 U.S.C. § 1589, a provision of the Trafficking Victims Protection Act (the "TVPA") that prohibits forced labor; and (2) Colorado unjust enrichment law.

The GEO Group, Inc. ("GEO") owns and operates the Aurora Facility under government contract.  While there, the plaintiff detainees (the "Appellees") rendered mandatory and voluntary services to GEO.  Under GEO's mandatory policies, they cleaned their housing units' common areas.  They also performed various jobs through a voluntary work program, which paid them $1 a day.

The district court certified two separate classes:  (1) all detainees housed at the Aurora Facility in the past ten years (the "TVPA class"), and (2) all detainees who participated in the Aurora Facility's voluntary work program in the past three years (the "unjust enrichment class").

On interlocutory appeal, GEO argues that the district court abused its discretion in certifying each class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  It primarily contends that the Appellees' TVPA and Colorado unjust enrichment claims

both require predominantly individualized determinations, making class treatment inappropriate.  Exercising jurisdiction under 28 U.S.C. § 1292, we affirm.

## I.  BACKGROUND

### A.  *Factual History*

At all times relevant to this appeal, GEO owned and operated the Aurora Facility under contract with the U.S. Immigration and Customs Enforcement ("ICE").  In operating this facility, GEO implemented two programs that form the basis for this case: (1) the Housing Unit Sanitation Policy, which required all detainees to clean their common living areas; and (2) the Voluntary Work Program, which compensated detainees $1 a day for performing various jobs.

### 1.  **Housing Unit Sanitation Policy ("Sanitation Policy")**

The Aurora Facility's Sanitation Policy had two components:  (1) a mandatory housing unit sanitation program, and (2) a general disciplinary system for detainees who engaged in "prohibited acts," including refusal to participate in the housing unit sanitation program.

Under the mandatory housing unit sanitation program, GEO staff generated daily lists of detainees from each housing unit who were assigned to clean common areas after meal service.  Upon arriving at the Aurora Facility, every detainee received a handbook (the "Aurora Facility Supplement") notifying them of their obligation to participate in this program.  Dawn Ceja, the Aurora Facility's Assistant Warden for Operations, confirmed at her deposition that "all of the detainees will have a turn on [the common area cleaning assignments]."  App., Vol. II at 483.

Under the disciplinary system, detainees who refused to perform their cleaning assignments faced a range of possible sanctions, including:  (1) the initiation of criminal proceedings, (2) disciplinary segregation—or solitary confinement—up to 72 hours, (3) loss of commissary, (4) loss of job, (5) restriction to housing unit, (6) reprimand, or (7) warning.  The Aurora Facility Supplement included an explanation of the disciplinary system and the possible sanctions for refusing to clean.

The Appellees alleged that the TVPA class members were all "forced . . . to clean the [housing units] for no pay and under threat of solitary confinement as punishment for any refusal to work."  App., Vol. I at 19.  Five of the nine named plaintiffs and three other detainees filed declarations further explaining that they had fulfilled their cleaning assignments because of the Sanitation Policy's threat of solitary confinement.

## 2.  **Voluntary Work Program ("VWP")**

Under the Aurora Facility's VWP, participating detainees received $1 a day in compensation for voluntarily performing jobs such as painting, food services, laundry services, barbershop, and sanitation.  Detainees who wished to participate in the VWP had to sign the "Detainee Voluntary Work Program Agreement," which specified that "[c]ompensation shall be $1.00 per day."  App., Vol. V at 779.  The Aurora Facility Supplement also specified that detainees would "be paid $1.00 per day worked (not per work assignment)" under the VWP.  App., Vol. V at 761.  Detainees had the additional option of working without pay if no paid positions were available.

The complaint alleged that the VWP class members were all "paid . . . one dollar ($1) per day for their [VWP] labor."  App., Vol. I at 19.  Five of the nine named plaintiffs

and three other detainees who had participated in the VWP filed declarations further describing their work.  Their jobs had included serving food, cleaning the facilities, doing laundry, and stripping and waxing floors.  Their hours had ranged from two to eight hours a day, and they had all received $1 a day in compensation.

## B.  *Procedural History*

The Appellees filed a class action complaint against GEO in the U.S. District Court for the District of Colorado on behalf of current and former ICE detainees housed at the Aurora Facility.  The complaint alleged:  (1) a TVPA forced labor claim based on the Sanitation Policy, and (2) an unjust enrichment claim under Colorado law based on the VWP.[1]

### 1.  **GEO's Motion to Dismiss**

GEO moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  Regarding the TVPA claim, GEO argued that the Thirteenth Amendment's civic duty exception to the prohibition on involuntary servitude should also apply to the TVPA's ban on forced labor.[2]  It further contended that such an exception would extend to government contractors in addition to the federal government.  Regarding the unjust enrichment claim, GEO asserted sovereign immunity

---

[1] The complaint brought a third claim under the Colorado Minimum Wages of Workers Act, but the district court dismissed this claim, and it is not at issue here.

[2] GEO cited the Fifth Circuit's decision in *Channer v. Hall*, 112 F.3d 214 (5th Cir. 1997), which relied in part on the "judicially-created exception[]" to the Thirteenth Amendment to hold that "the federal government is entitled to require a communal contribution by an [immigration] detainee in the form of housekeeping tasks."  *Id.* at 218-19.

as a government contractor because ICE "specifically directed [it] to . . . establish a voluntary detainee work program, and pay the detainees who volunteer for that program $1.00 per day." App., Vol. I at 198-99.

The district court rejected these arguments and denied GEO's motion to dismiss the TVPA and unjust enrichment claims. *See Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015). GEO moved for reconsideration of the court's rulings. The court denied the motion, finding that GEO "d[id] not identify any intervening change in controlling law or new evidence previously unavailable" to warrant reconsideration. *Menocal v. GEO Grp., Inc.*, No. 14-cv-02887-JLK, 2015 WL 13614120, at *1 (D. Colo. Aug. 26, 2015).

GEO then moved for an order certifying an interlocutory appeal from the orders denying its motion to dismiss and its motion for reconsideration. It requested that the district court certify the following questions for interlocutory appeal:

> (1) Whether civil detainees lawfully held in the custody of a private detention facility under the authority of the United States can state a claim for "forced labor" under the TVPA, 18 U.S.C. § 1589, for allegedly being required to perform housekeeping duties.

> (2) Whether, under Colorado law, civil detainees may state a claim for unjust enrichment based on work performed pursuant to the Voluntary Work Program, absent any alleged reasonable expectation of being paid more than $1 per day.

> (3) Whether a state law claim for unjust enrichment brought by civil detainees against a federal contractor is barred by the "government contractor" defense, where such claims would require that detainees receive additional compensation even though the contract expressly requires that compensation of more than $1 per day be approved by the government's contracting officer.

App., Vol. II at 346.  The district court denied GEO's motion to certify an interlocutory

appeal on all three of these questions.  Accordingly, the district court's rulings on these

questions are not properly before us in this appeal.  *See* 28 U.S.C. § 1292(b) (providing

that a court of appeals may only permit an interlocutory appeal to be taken from most

non-final decisions if the district judge first certifies the interlocutory appeal).

### 2.  **The Appellees' Motion for Class Certification**

After they prevailed on the motion to dismiss, the Appellees moved for

certification of a separate class for each claim under Rules 23(a) and (b)(3) of the Federal

Rules of Civil Procedure.  For the TVPA claim, the Appellees proposed a class of "all

persons detained in [GEO's] Aurora Detention Facility in the ten years prior to the filing

of this action" (the "TVPA class").  App., Vol. II at 409.  For the unjust enrichment

claim, they proposed a class of "all people who performed work [for the] Aurora

Detention Facility under [GEO's] VWP Policy in the three years prior to the filing of this

action" (the "unjust enrichment class").  *Id.* at 418.

GEO opposed the certification of both proposed classes.  It argued that neither

class adequately satisfied the Rule 23 requirements.  The district court rejected GEO's

arguments and certified both classes as proposed by the Appellees.  *See Menocal v. GEO*

*Grp., Inc.*, 320 F.R.D. 258 (D. Colo. 2017).  It also approved the nine named plaintiffs as

the representatives of both classes.  *Id.* at 271.

GEO petitioned this court for interlocutory review of the class certifications.  We

granted GEO's petition for permission to appeal under Rule 23(f).  *See* Fed. R. Civ. Pro.

23(f) ("A court of appeals may permit an appeal from an order granting or denying class-

action certification . . . ."); 28 U.S.C § 1292(e) (authorizing the Supreme Court to

"prescribe rules . . . provid[ing] for an appeal of an interlocutory decision to the courts of

appeals that is not otherwise provided for" by statute).  Accordingly, only the district

court's order granting class certification—and not its rulings on whether the complaint

stated TVPA and unjust enrichment claims—is before us.

## II.  **DISCUSSION**

We begin with our standard of review.  We then provide an overview of the Rule

23 class certification requirements relevant to this appeal, and additional background on

the TVPA and Colorado unjust enrichment law as needed.  We consider the TVPA and

the unjust enrichment classes in turn, and conclude that the district court did not abuse its

discretion in certifying each class under Rule 23.

### A.  *Standard of Review*

"We review the district court's decision to certify [a] class for an abuse of

discretion.  The district court abuses its discretion when it misapplies the Rule 23

factors—either through a clearly erroneous finding of fact or an erroneous conclusion of

law—in deciding whether class certification is appropriate.  Our review is only de novo

to the extent we must determine whether the district court applied the correct standard.  In

the end, as long as the district court applies the proper Rule 23 standard, we will defer to

its class certification ruling provided that decision falls within the bounds of rationally

available choices given the facts and law involved in the matter at hand."  *Soseeah v.

Sentry Ins.*, 808 F.3d 800, 808 (10th Cir. 2015) (citations and quotations omitted).

### B. *Class Certification Requirements*

Rule 23 of the Federal Rules of Civil Procedure provides the class certification requirements. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Plaintiffs seeking class certification must show that the underlying case (1) satisfies each of Rule 23(a)'s prerequisites, and (2) falls under at least one of Rule 23(b)'s categories of class actions. *See Soseeah*, 808 F.3d at 808. The district court must undertake a "rigorous analysis" to satisfy itself that a putative class meets the applicable Rule 23 requirements. *CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014) (quotations omitted).

Rule 23(a) sets forth four threshold requirements:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Only requirements (2) (the "commonality" requirement) and (3) (the "typicality" requirement) are contested in this appeal.

Of the class action categories set forth in Rule 23(b), only the Rule 23(b)(3) class action is at issue here. A Rule 23(b)(3) class action must satisfy two additional requirements: (1) the "questions of law or fact common to class members [must] predominate over any questions affecting only individual members" (the "predominance" requirement), and (2) a class action must be "superior to other available methods for

fairly and efficiently adjudicating the controversy" (the "superiority" requirement).  Fed.

R. Civ. P. 23(b)(3).

We provide additional background on each of the Rule 23 requirements contested

in this appeal:  commonality, typicality, predominance, and superiority.

1.  **Rule 23(a)'s Threshold Requirements:  Commonality and Typicality**

a.  *Commonality*

To satisfy the commonality requirement, a party seeking class certification must

demonstrate "there are questions of law or fact common to the class."  Fed. R. Civ. P.

23(a)(2).  In other words, the class members' claims must "depend upon a common

contention . . . of such a nature that it is capable of classwide resolution—which means

that determination of its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350.  In the context of

class-wide proof by statistical evidence, the Supreme Court has instructed that a question

is common if there is "some glue holding the [class members' allegations] together."  *Id.*

at 352.

"A finding of commonality requires only a single question of law or fact common

to the entire class."  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir.

2010); *see also Wal-Mart*, 564 U.S. at 359 ("We quite agree that for purposes for Rule

23(a)(2) even a single common question will do." (brackets and quotations omitted)).

b.  *Typicality*

To satisfy the typicality requirement, a party seeking class certification must

demonstrate that "the claims or defenses of the representative parties are typical of the

claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[D]iffering fact situations of

class members do not defeat typicality . . . so long as the claims of the class

representative and class members are based on the same legal or remedial theory." *Colo.*

*Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir.

2014) (quotations omitted).

### 2.   **Rule 23(b)(3)'s Additional Requirements:  Predominance and Superiority**

####    a.   *Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 623 (1997). "It is not necessary that all of the elements of the

claim entail questions of fact and law that are common to the class, nor that the answers

to those common questions be dispositive." *CGC Holding*, 773 F.3d at 1087. "Put

differently, the predominance prong asks whether the common, aggregation-enabling,

issues in the case are more prevalent or important than the non-common, aggregation-

defeating, individual issues." *Id.* (quotations omitted).

In reviewing the district court's predominance determination, we must

"*characterize* the issues in the case as common or not, and then *weigh* which issues

predominate." *Id.* We do so by "consider[ing] . . . how the class intends to answer

factual and legal questions to prove its claim—and the extent to which the evidence

needed to do so is common or individual." *Id.* And because we must thus consider the

class's underlying cause of action and determine which elements are amenable to

common proof, "it is impractical to construct an impermeable wall that will prevent the

merits from bleeding into the class certification decision to some degree." *Id.* (quotations omitted). But "[f]or the purposes of class certification, our primary function is to ensure that the requirements of Rule 23 are satisfied, not to make a determination on the merits of the putative class's claims." *Id.*

b. *Superiority*

A putative class proceeding under Rule 23(b)(3) must show that a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) includes a non-exhaustive list of factors pertinent to the superiority analysis:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); Fed. R. Civ. P. 23(b) advisory committee's note to the 1966 amendment.[3]

Courts and commentators have observed that the Rule 23(b)(3) class action is superior when it allows for the "vindication of the rights of groups of people who

---

[3] Although Rule 23(b)(3) states that these factors are pertinent to both superiority and predominance, "most courts analyze [these factors] solely in determining whether a class suit will be a superior method of litigation." 2 William B. Rubenstein, Newberg on Class Actions § 4:64 (5th ed., Dec. 2017 update).

individually would be without effective strength to bring their opponents into court at all." *See Amchem*, 521 U.S. at 617 (quotations omitted); *see also Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) (crediting unlikelihood that class members would individually pursue their claims due to risks, small recovery, and costs of litigation as the consideration "at the heart" of the superiority analysis). For this reason, "the class action device is especially pertinent to vulnerable populations." 2 William B. Rubenstein, Newberg on Class Actions § 4:65 (5th ed., Dec. 2017 update) (Newberg). Considerations such as class members' limited understanding of the law, limited English skills, or geographic dispersal therefore weigh in favor of class certification. *See id.*[4]

## C. *The TVPA Class*

We affirm the district court's certification of the TVPA class. We first provide background on the TVPA. We then analyze whether the district court abused its discretion in applying the Rule 23 requirements to certify the TVPA class. In reviewing the class certification decision, "our primary function is to ensure that the requirements of Rule 23 are satisfied, not to make a determination on the merits of the putative class's claims." *CGC Holding*, 773 F.3d at 1087.

---

[4] *See, e.g.*, *Silva-Arriaga v. Texas Express, Inc.*, 222 F.R.D. 684, 691 (M.D. Fla. 2004) (citing class members' "limited English skills and . . . understanding of the legal system" in support of superiority finding); *In re Monster Worldwide, Inc. Securities Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008) (finding superiority based in part on class members' geographic dispersal).

1.  **TVPA's Forced Labor Provision—18 U.S.C. § 1589**

The TVPA establishes a civil cause of action for victims of prohibited trafficking

activity.  18 U.S.C. § 1595.  As relevant to this appeal, the TVPA's forced labor

provision prohibits persons from:

> *knowingly provid[ing] or obtain[ing] the labor or services of a person* by
> any one of, or by any combination of, the following means—
>
> > (1) *by means of* force, threats of force, physical restraint, or *threats of
> > physical restraint* to that person or another person;
> >
> > (2) *by means of serious harm or threats of serious harm* to that person
> > or another person;
> >
> > (3) by means of the abuse or threatened abuse of law or legal process; or
> >
> > (4) *by means of any scheme, plan, or pattern intended to cause the
> > person to believe that*, if that person did not perform such labor or
> > services, that person or another person *would suffer serious harm or
> > physical restraint*[.]

*Id.* § 1589(a) (emphases added).  The term "serious harm" denotes "any harm, whether

physical or nonphysical, including psychological, financial, or reputational harm, that is

sufficiently serious, under all the surrounding circumstances, to compel a reasonable

person of the same background and in the same circumstances to [render labor] . . . to

avoid incurring that harm."  *Id.* § 1589(c)(2).

2.  **Application of Rule 23 Requirements**

GEO contends that the district court abused its discretion in determining that the

TVPA class satisfies commonality, typicality, predominance, and superiority.  The

parties' arguments—both in their briefs and at oral argument—focus primarily on

predominance, the closest issue.  We address predominance last, after commonality,

typicality, and superiority.  The court did not abuse its discretion as to any of these requirements in certifying the TVPA class.

a.  *Commonality*

The TVPA class meets Rule 23(a)'s commonality requirement.  The district court identified "a number of crucial questions with common answers."  *Menocal*, 320 F.R.D. at 264.  These questions include:  (1) whether the Sanitation Policy "constitutes improper means of coercion" under § 1589, (2) whether GEO "knowingly obtain[s] detainees' labor using [the Sanitation Policy]", and (3) whether a civic duty exception exempts the Sanitation Policy from § 1589.  *Id.* at 264-65.  Because all members of the TVPA class base their claims on the Sanitation Policy, we agree with the district court that the answers to these questions would "resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350.  Indeed, any one of these questions alone would satisfy the commonality requirement for the TVPA class.  *See id.* at 359; *Stricklin*, 594 F.3d at 1195.  The district court therefore did not abuse its discretion in applying the Rule 23(a) commonality requirement to the TVPA class.

b.  *Typicality*

The TVPA class satisfies Rule 23(a)'s typicality requirement.  Typicality requires only that "the claims of the class representative and class members are based on the same legal or remedial theory."  *Colo. Cross-Disability*, 765 F.3d at 1216 (quotations omitted).  Here, the claims of all the class members—including the representatives—share the same theory:  that GEO knowingly obtained class members' labor by means of the Sanitation Policy, which threatened—or was intended to cause them to believe they would suffer—

serious harm or physical restraint if they did not fulfill their cleaning assignments.  The class representatives allege that they—just like all other Aurora Facility detainees in the relevant period—performed "mandatory, uncompensated work . . . under [GEO's] Housing Unit Sanitation policy."  App., Vol. I at 26; *see* App., Vol. II at 483 (Assistant Warden Ceja confirming that "all of the detainees . . . have a turn on [the cleaning assignments]").  And the class representatives' declarations present no circumstances that would give rise to a different theory of liability.[5]  The district court therefore did not abuse its discretion in applying the Rule 23(a) typicality requirement to the TVPA class.

c. *Superiority*

The TVPA class meets the Rule 23(b)(3) superiority requirement.  The TVPA class members would have to overcome significant hurdles to adjudicate their individual claims and thus have little "interest[] in individually controlling the prosecution or defense of separate actions."  *See* Fed. R. Civ. P. 23(b)(3).  As the district court noted—and GEO does not dispute—"the putative class members reside in countries around the world, lack English proficiency, and have little knowledge of the legal system in the United States."  *Menocal*, 320 F.R.D. at 268.  Based on these considerations, the court

---

[5] The only factual differences among the class representatives' experiences pertain to their specific interactions with Aurora Facility guards and whether they witnessed firsthand other individual detainees being sanctioned or threatened with solitary confinement for refusal to clean.  But these factual differences do not defeat typicality because the class members' legal theory—that GEO knowingly obtained their labor through the uniform Sanitation Policy—does not change based on their personal interactions with GEO staff or their knowledge of specific instances in which GEO threatened or carried out the threat of solitary confinement.  *See Colo. Cross-Disability*, 765 F.3d at 1216.

did not abuse its discretion in applying Rule 23(b)(3)'s superiority requirement to the

TVPA class. *See* Newberg § 4:65 (identifying these considerations as factors in favor of

class certification); *see also Amchem*, 521 U.S. at 617 (explaining that Rule 23(b)(3)

classes seek to "vindicat[e] . . . the rights of groups of people who individually would be

without effective strength to bring their opponents into court at all" (quotations

omitted)).[6]

    d. *Predominance*

    Although Rule 23(b)(3)'s predominance requirement "regularly presents the

greatest obstacle to class certification," *CGC Holding*, 773 F.3d at 1087, it does not

defeat the TVPA class in this case. To determine whether the district court abused its

discretion in applying the predominance requirement, we first "*characterize* the issues in

the case as common or not, and then *weigh* which issues predominate." *See id.* GEO

contends that two of the TVPA class's issues are not susceptible to generalized proof:  (i)

the causation element, and (ii) damages. But as the following analysis shows, (i) the

causation element is susceptible to generalized proof and thus cannot defeat class

certification, and (ii) individual damages assessments would not predominate over the

class's common issues.

---

    [6] GEO also suggests that the class should instead seek to have the ICE standards relating to the Sanitation Policy "changed by the agency, declared invalid, or enjoined," Aplt. Br. at 45. But such actions, even if feasible, would not provide damages relief and thus are not "superior . . . available methods for fairly and efficiently adjudicating the controversy," especially for *former* detainees in the TVPA class. *See* Fed. R. Civ. P. 23(b)(3).

i.  The causation element

The causation element is susceptible to generalized proof and thus cannot defeat

class certification under Rule 23(b)(3)'s predominance requirement.  As discussed above,

the TVPA's forced labor provision prohibits the knowing procurement of labor "by

means of" the use or threat of—or a scheme intended to threaten—serious harm or

physical restraint.  *See* 18 U.S.C. § 1589(a)(1)-(4).  Although the statute does not use the

word "cause," to show a § 1589 violation, plaintiffs must prove that an unlawful means

of coercion caused them to render labor.  *See United States v. Kalu*, 791 F.3d 1194, 1211-

12 (10th Cir. 2015) (affirming a jury instruction on § 1589 that advised the jury to

consider whether "as a result of [the defendant's] use of  . . . unlawful means, the [victim

rendered labor] where, if [the defendant] had not resorted to those unlawful means, the

[victim] would have declined to" (quotations omitted)).

The parties dispute whether a plaintiff may use a reasonable person standard to

make this causation showing.  The TVPA class contends that a plaintiff need only show

that the unlawful means—here, the Sanitation Policy—would have caused a reasonable

person to render the labor.[7]  In contrast, GEO argues that a plaintiff must show that the

unlawful means in fact caused the labor.  But we need not decide which of these

standards applies to § 1589's causation requirement in resolving the class certification

---

[7] For purposes of deciding the class certification question, we do not address the merits of whether the Sanitation Policy qualifies as an unlawful means of coercion under § 1589.  GEO does not dispute—and neither do we—the district court's determination that this question can be answered on a class-wide basis.  *See Menocal*, 320 F.R.D. at 264 & n.2.

question.  Even assuming GEO's proposed standard applies, the causation element is

susceptible to class-wide proof and thus does not preclude the TVPA class from

satisfying the predominance requirement.

This analysis proceeds in three parts.  <u>First</u>, in *CGC Holding*, this court held—at

least in the fraud context—that plaintiffs may prove causation by class-wide inference.

<u>Second</u>, *CGC Holding* applies to the circumstances of this case.  <u>Third</u>, the mere

speculative possibility that a class-wide inference would not apply to some TVPA class

members does not make causation insusceptible to class-wide proof.

> 1) *CGC Holding*:  Class-wide proof of causation from common
>    circumstantial evidence

In *CGC Holding*, this court recognized that plaintiffs may prove class-wide

causation based on inference from common circumstantial evidence.  773 F.3d at 1092-

93.  In that case, a putative class of borrowers brought a civil RICO claim[8] against the

defendants, a group of lenders.  *Id.* at 1080.  The plaintiffs alleged that the defendants

had fraudulently induced them to pay upfront fees for loans that the defendants never

actually had the intent or ability to fund.  *Id.*  The putative class consisted of "at least 100

borrowers . . . who paid advance fees to defendants."  *Id.* at 1084.  We determined that

---

[8] The Racketeer Influenced and Corrupt Organizations Act ("RICO") prohibits
various activities performed in connection with an ongoing criminal organization.  *See* 18
U.S.C. §§ 1961-68.  In addition to enacting criminal penalties for racketeering activities,
RICO also created a private cause of action for "[a]ny person injured in his business or
property *by reason of*" the defendant's RICO violations.  *Id.* § 1964(c) (emphasis added).
A plaintiff bringing a civil RICO claim must show causation.  *CGC Holding*, 773 F.3d at
1088.  In civil RICO claims arising from fraud, reliance "frequently serves as a proxy for
both legal and factual causation."  *Id.*

"the fact that a class member paid the nonrefundable up-front fee in exchange for the loan commitment constitutes *circumstantial proof of reliance* on the misrepresentations and omissions regarding . . . the defendant entities' ability or intent to actually fund the promised loan." *Id.* at 1091-92 (emphasis added).

Because we would allow an individual plaintiff to establish an inference of reliance from this type of circumstantial proof, we saw "no reason why a putative class containing plaintiffs, who all paid substantial up-front fees in return for financial promises, should not be entitled to posit the same inference to a factfinder on a classwide basis." *Id.* at 1092.  By allowing such an inference, the issue of reliance "becomes solvable with a uniform piece of circumstantial evidence [i.e., the payment of the up-front fee]." *Id.*  We therefore held that "the putative class is not stymied, for purposes of class certification, under Rule 23(b)'s predominance element." *Id.*

2)  Application of *CGC Holding*'s class-wide circumstantial evidence analysis to this case

*CGC Holding* said that, when a class member could individually establish causation based on circumstantial evidence, a court may likewise allow a class to rely on circumstantial evidence that the class shares to establish causation on a class-wide basis. *CGC Holding*'s reasoning applies with equal force to the facts of this case because (1) a court could permit an individual TVPA class member to establish causation through circumstantial evidence, and (2) the TVPA class members share the relevant evidence in common because their claims are based on allegations of a single, common scheme.

First, a TVPA class member could individually establish causation based on circumstantial evidence.[9] In *CGC Holding*, we said a jury could infer that a given class member relied on the defendants' misrepresentations. *Id.* at 1091-92. The circumstantial evidence in *CGC Holding* included: (1) the plaintiff received a loan commitment agreement promising funds and requiring payment of an upfront fee in exchange for financing, and (2) the plaintiff in fact paid the fee. *Id.* at 1082, 1091-92. Here, a class member detainee could present the following circumstantial evidence to support an analogous inference that the Sanitation Policy caused the detainee to work: (1) the detainee received notice of the Sanitation Policy's terms, including the possible sanctions for refusing to clean; and (2) the detainee performed housing unit cleaning work for GEO when assigned to do so.

Second, because the TVPA class allegations are based on a single, common scheme, class members share the relevant circumstantial evidence in common, thus making class-wide proof possible. In *CGC Holding*, the lender defendants allegedly "engaged in a common scheme to defraud" the borrower plaintiffs. *Id.* at 1082. Under this "cookie-cutter scheme," potential borrowers received formulaic loan commitment agreements that required payment of non-refundable upfront fees before receiving the falsely promised financing. *Id.* Likewise, the TVPA class members allege that GEO "coerced [their] labor through a *uniform* policy subjecting detainees who refused to

---

[9] Plaintiffs are generally free to introduce any relevant admissible evidence to prove their claims, with no distinction between direct and circumstantial evidence. *See* Fed. R. Evid. 401; *see also* 1A Fed. Jury Prac. & Instr. § 12:04 (6th ed., Aug. 2017 update).

perform such uncompensated work to discipline, up to and including solitary confinement."  App., Vol. I at 29 (emphasis added).

GEO acknowledges that each class member received notice of the Sanitation Policy's terms upon admission to the Aurora Facility.  *See* App., Vol. II at 480 (Assistant Warden Ceja testifying that upon admission to the Aurora Facility, each detainee "signs [a document] memorializing that he or she received this policy").  Under these circumstances, the Sanitation Policy provides the "glue" that holds together the class members' reasons for performing housing unit cleaning duties assigned by GEO.  *Wal-Mart*, 564 U.S. at 352.[10]  As in *CGC Holding*, we "see no reason why a putative class

---

[10] In *Wal-Mart*, the Supreme Court held that anecdotal and statistical evidence "are insufficient to establish that [the plaintiffs' gender discrimination] theory can be proved on a classwide basis."  564 U.S. at 356.  The *Wal-Mart* plaintiffs had "held a multitude of different jobs, at different levels of Wal–Mart's hierarchy, for variable lengths of time, in 3,400 stores, sprinkled across 50 states, with a kaleidoscope of supervisors (male and female), subject to a variety of regional policies that all differed."  *Wal-Mart*, 564 U.S. at 359-60 (quotations omitted).  The *Wal-Mart* plaintiffs therefore lacked "some glue holding the alleged *reasons* for [their adverse employment decisions] together."  *Id.* at 352.

As the Court later explained in *Tyson Foods, Inc. v. Bouaphakeo*, the *Wal-Mart* plaintiffs could not have relied on statistical evidence even in *individual* suits—much less a class action—because they "were not similarly situated."  136 S. Ct. 1036, 1048 (2016).  In contrast, the employees in *Tyson Foods*, who "worked in the same facility, did similar work, and w[ere] paid under the same policy," could have introduced statistical evidence in a series of individual suits.  *Id.*

Here, the TVPA class members—unlike the *Wal-Mart* and *Tyson Foods* plaintiffs—do not rely on statistical evidence.  A TVPA class member bringing an *individual* suit against GEO therefore would not need to make a "similarly situated" showing to rely on the circumstantial evidence discussed above.  And, as *CGC Holding* instructs, because an individual TVPA class member could rely on this evidence and because the same evidence applies to all class members, class-wide proof is possible in this case.  But even assuming that *Wal-Mart* and *Tyson Food*'s "similarly situated" analysis applies where—as here—the plaintiffs do not rely on statistical evidence, the TVPA class members are more like the *Tyson Foods* plaintiffs:  they were detained in the

containing plaintiffs, who all [performed housing unit cleaning work under the uniform Sanitation Policy], should not be entitled to posit the same inference to a factfinder on a classwide basis." *See CGC Holding*, 773 F.3d at 1092.

       3)  Hypothetical possibilities do not defeat the class-wide inference

Based on the foregoing, the Appellees have met their burden to show that the causation element would not cause individual questions to predominate. *See id.* at 1087 ("The real question is whether plaintiffs have sufficiently met their burden under Rule 23(b) . . . [to] show that common questions subject to generalized, classwide proof predominate over individual questions."). Specifically, the Appellees have shown that the TVPA class could establish causation on a class-wide basis from the available circumstantial evidence. In contrast, as the district court noted, "GEO does not allege and there is nothing in the record to show that detainees who are not on the daily list still choose to perform the additional duties or that detainees work autonomously." *Menocal*, 320 F.R.D. at 265 n.3. GEO offers in rebuttal only speculative assertions regarding the class members' subjective motivations for performing their cleaning duties.[11]

GEO's hypothetical alternative explanations for the class members' labor do not defeat the Appellees' showing that the causation element is susceptible to class-wide

---

same facility, did the same work, and faced the same potential sanctions for refusing to work under the same Sanitation Policy.

    [11] GEO posits possible alternative reasons class members may have worked: "They may like to have a sanitary environment. They may like to be social while working, or participate because of peer pressure. They may willingly obey the facility's policy out of respect for it. Or they may simply wish to stay busy." Aplt. Br. at 37.

proof.  The permissibility of a class-wide inference depends on whether the class members' claims are "solvable with a uniform piece of circumstantial evidence" or instead "involve significant individualized or idiosyncratic elements."  *CGC Holding*, 773 F.3d at 1092.  Here, as we explained above, a factfinder could reasonably draw a class-wide inference of causation from common evidence pertaining to the uniform Sanitation Policy.

Had GEO "presented evidence that could rebut the Plaintiffs' common inference of [causation] on an individualized basis, we and the district court might have concluded that individual issues . . . would predominate at trial."  *See Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 644 (5th Cir. 2016) (en banc), *cert. denied*, 138 S. Ct. 76 (mem.) (2017).  But even after three months of discovery regarding class certification issues, GEO did not present any individualized rebuttal evidence to the district court that would cause individual causation questions to predominate at trial.[12]  In any event, "the district court may revisit its decision and choose to decertify the class should [GEO] eventually produce individualized rebuttal evidence."  *See Torres*, 838 F.3d at 645.

---

[12] At oral argument, GEO's counsel pointed to two pieces of rebuttal evidence. Oral Argument at 9:42-10:59.  First, counsel cited Assistant Warden Ceja's deposition testimony stating that detainees may "help out" with housing unit cleaning because "[s]ometimes people just like to keep busy" and "[i]t makes the time go by faster."  App., Vol. II at 483.  Apart from its conjectural nature, this testimony does not raise concerns about individual issues predominating because GEO could introduce this same testimony against all class members at trial.  Second, counsel suggested that the detainee declarations filed in this suit rebut causation as to the declarants:  "Does that make sense—that the same detainees would be volunteering to step up and work a variety of jobs in food service and laundry for a dollar a day but yet at the same time say that they only performed occasional housekeeping chores as a result [of the Sanitation Policy.]"  Oral Argument at 10:42-10:59.  We see no inconsistency in the declarants' statements.

In *CGC Holding*, we stated that "causation can be established through an inference of reliance where the behavior of plaintiffs and the members of the class *cannot be explained in any way other than* reliance upon the defendant's conduct." 773 F.3d at 1089-90 (emphasis added) (quotations omitted). GEO interprets this language to mean that conjectural possibilities alone may preclude an otherwise permissible class-wide inference. We disagree. Even on *CGC Holding*'s facts, it is at least conceivable that a class member may have paid advance loan fees even though he or she did not actually rely on the defendant's misrepresentations. For example, a hypothetical class member may instead have paid the fees solely because he or she trusted the judgment of a third party, who, for whatever reason, maliciously recommended entering into a loan agreement with the defendants. We nevertheless allowed a class-wide inference in *CGC Holding* because "the same considerations could lead a reasonable factfinder to conclude beyond a preponderance of the evidence that each individual plaintiff relied on the defendants' representations." *See id.* at 1090 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004)).[13] And here, for the reasons already stated above, the same

---

[13] In *CGC Holding*, we also "note[d] that the inference of reliance here is limited to *transactional* situations—almost always financial transactions—where it is sensible to assume that *rational economic actors* would not make a payment unless they assumed that they were receiving some form of the promised benefit in return." 773 F.3d at 1091 n.9 (emphases added). But we nowhere announced a brightline rule limiting class-wide inferences to cases involving an economic transaction amenable to rational choice theory. *See Torres*, 838 F.3d at 642 (emphases added) (explaining that our opinion in *CGC Holding* "says only that the absence of another rational explanation for the plaintiffs' behavior is *sufficient* to infer reliance—it does not say it is a *necessary* condition"). Our case—which involves alleged group coercion rather than individual arm's length transacting—not only allows for a class-wide inference of causation for the reasons stated above but arguably supports an even stronger inference.

considerations could lead a reasonable factfinder to conclude by a preponderance of the evidence that each TVPA class member would not have performed his or her assigned cleaning duties without being subject to the Sanitation Policy.

* * * *

In assessing the causation element's susceptibility to class-wide proof, we take no position on whether the class would ultimately succeed on such proof at trial. *See id.* at 1087 ("For the purposes of class certification, our primary function is . . . not to make a determination on the merits of the putative class's claims."). Rather, we must affirm the district court's class certification determination if it "falls within the bounds of rationally available choices given the facts and law involved in the matter at hand." *See Soseeah*, 808 F.3d at 808 (quotations omitted). Under the circumstances here, the district court concluded that a factfinder could—but need not—accept a class-wide inference of causation. *Menocal*, 320 F.R.D. at 267. For the foregoing reasons, we are satisfied that the district court did not abuse its discretion.

ii. <u>Damages</u>

The presence of individualized damages issues does not defeat the predominance of questions common to the TVPA class. "[T]he fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013) (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008)); *see also* Newberg § 4:54 & n.2 (stating that "courts in every circuit have

uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations" and listing cases).

Here, the district court reasonably determined that, "considering the numerous questions common to the class, . . . the possible need for specific damages determinations does not predominate." *Menocal*, 320 F.R.D. at 267. The TVPA class's common questions include: (1) whether the Sanitation Policy qualifies as an unlawful means under § 1589, (2) scienter, (3) causation, (4) whether a civic duty exception exempts the Sanitation Policy from § 1589, and (5) if so, whether it extends to government contractors like GEO. As we said in another case, "[t]he district court reasonably concluded that these questions drove the litigation and generated common answers that determined liability in a single stroke." *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1256 (10th Cir. 2014) (quotations omitted). Moreover, the district court could "preserve the class action model in the face of individualized damages," *XTO Energy*, 725 F.3d at 1220, such as by limiting the class action to liability issues. The court therefore did not abuse its discretion in determining that individual damages would not predominate.

\* \* \* \*

The district court did not abuse its discretion in certifying the TVPA class based on its "rigorous analysis" of the Rule 23 requirements contested here. *See CGC Holding*, 773 F.3d at 1086. The court reasonably determined that the class members could show causation through class-wide inference and that individual damage assessments would not predominate over the class's common issues. Its findings on commonality, typicality, and superiority were likewise reasonable and fell within its discretion.

### D. *The Unjust Enrichment Class*

We affirm the district court's certification of the unjust enrichment class.  We first provide background on unjust enrichment under Colorado law.  We then analyze whether the district court abused its discretion in applying the Rule 23 requirements to certify the unjust enrichment class.  As with the TVPA class, "our primary function is to ensure that the requirements of Rule 23 are satisfied, not to make a determination on the merits of the putative class's claims."  *Id.* at 1087.

### 1.  **Unjust Enrichment under Colorado Law**

Unjust enrichment "is an equitable theory of recovery that exists independent of any contract."  *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm*, 287 P.3d 842, 847, 849 (Colo. 2012).  Under Colorado common law, "a party claiming unjust enrichment must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation."  *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008).

The third element—whether the defendant's retention of the benefit would be unjust—calls for "a fact-intensive inquiry in which courts look to, *among other things*, the intentions, expectations, and behavior of the parties."  *Melat*, 287 P.3d at 847 (emphasis added).  Whether a plaintiff had a reasonable expectation of payment—while potentially relevant to the unjustness inquiry—is not itself an element of unjust enrichment under Colorado law.  *See Ninth Dist. Prod. Credit Ass'n v. Ed Duggan, Inc.*, 821 P.2d 788, 799-800 & n.19 (Colo. 1991).  In *Ed Duggan*, the Colorado Supreme Court

explained that the plaintiff's reasonable expectation of payment is an element of implied-in-fact contract claims but *not* unjust enrichment (or implied-in-law contract) claims. *Id.*[14]

## 2.  **Application of Rule 23 Requirements**

GEO argues the district court abused its discretion in determining that the unjust enrichment class satisfies commonality, typicality, predominance, and superiority.  We address predominance, the closest issue, last.  We conclude that the court did not abuse its discretion as to any of these requirements in certifying the unjust enrichment class.

### a.  *Commonality*

The unjust enrichment class meets Rule 23(a)'s commonality requirement.  The district court found "the existence of at least a single common question—whether GEO received a benefit from VWP participants' labor."  *Menocal*, 320 F.R.D. at 269.  GEO does not dispute—and neither do we—that answering this question would "resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350.  And this question alone suffices to establish the commonality requirement for the unjust enrichment class.  *See id.* at 359; *Stricklin*, 594 F.3d at 1195.

---

[14] The trial court in *Ed Duggan* had given an "erroneous[]" unjust enrichment instruction by conflating two distinct legal claims:  (1) implied-in-fact contract, and (2) unjust enrichment (or implied-in-law contract).  *Ed Duggan*, 821 P.2d at 800.  A contract implied in fact "arises from the parties' conduct," which "must evidence a mutual intention by the parties to contract with each other."  *DCB Constr. Co. v. Cent. City Dev. Co.*, 940 P.2d 958, 961 (Colo. App. 1996), *as modified on denial of reh'g* (Aug. 29, 1996), *aff'd*, 965 P.2d 115 (Colo. 1998).  In contrast, a contract implied in law—or unjust enrichment—arises "not from consent of the parties, . . . but from the law of natural immutable justice and equity."  *Id.* at 962 (quotations omitted).

The district court therefore did not abuse its discretion in applying the Rule 23(a)

commonality requirement to the unjust enrichment class.

 b.  *Typicality*

The unjust enrichment class satisfies Rule 23(a)'s typicality requirement.

Typicality requires only that "the claims of the class representative and class members

are based on the same legal or remedial theory."  *Colo.Cross-Disability*, 765 F.3d at 1216

(quotations omitted).  Here, the claims of all the class members—including the

representatives—share the same theory:  that GEO unjustly retained a benefit from class

members' labor under the VWP.  The class representatives allege that they—just like all

detainees participating in the Aurora Facility's VWP in the relevant period—"were

uniformly paid $1 [per] day of work" and that GEO "was thereby unjustly enriched" by

their work.  App., Vol. I at 31.  And the class representatives' declarations present no

circumstances that would give rise to a different theory of liability.[15]  The district court

therefore did not abuse its discretion in applying the Rule 23(a) typicality requirement to

the unjust enrichment class.

 c.  *Superiority*

The unjust enrichment class, a subset of the TVPA class, meets Rule 23(b)(3)'s

superiority requirement for the same reasons the TVPA class does.  The district court

---

 [15] The only factual differences among the class representatives' experiences
pertain to the nature of their jobs and the hours they worked.  But these factual
differences do not defeat typicality because the class members' legal theory—that GEO
unjustly retained a benefit from their labor under the VWP—does not change based on
the nature of their jobs or their hours worked.  *See Colo. Cross-Disability*, 765 F.3d at
1216.

noted that "[a]s stated above, many of the putative class members are immigrant detainees who lack English proficiency[,] . . . have limited financial resources and reside in countries around the world." *Menocal*, 320 F.R.D. at 270.  It also was "not aware of any other suit asserting the claims brought in this case and no other class member has demonstrated an interest in controlling the litigation." *Id*.  Based on these considerations, the court did not abuse its discretion in applying the Rule 23(b)(3) superiority requirement to the unjust enrichment class.  *See* Newberg § 4:65; *see also Amchem*, 521 U.S. at 617.[16]

>    d. *Predominance*

Although Rule 23(b)(3)'s predominance requirement "regularly presents the greatest obstacle to class certification," *CGC Holding*, 773 F.3d at 1087, it does not defeat the unjust enrichment class.  GEO contends that two of the unjust enrichment class's issues are not susceptible to generalized proof:  (i) the unjustness element, and (ii) damages.  But as we show below, (i) the unjustness element is susceptible to generalized proof, and (ii) individual damages assessments would not predominate over the class's common issues.

---

[16] GEO's suggestion that class members should "challenge ICE's underlying policy authorizing the $1 per day practice as violating some federal law or constitutional right," Aplt. Br. at 54, again ignores the nature of the controversy at hand.  Notwithstanding GEO's attempts to divine "the Plaintiffs' real complaint," *id.*, the alternatives proposed by GEO would not address the class members' claims for monetary relief and thus are not "superior . . . available methods for fairly and efficiently adjudicating the controversy."  *See* Fed. R. Civ. P. 23(b)(3).

> i.   The unjustness element

The unjustness element is susceptible to generalized proof and thus cannot defeat

class certification under Rule 23(b)(3)'s predominance requirement.  This analysis

proceeds in two parts.  First, unjustness presents a common question here because the

class members seek to establish this element through shared circumstances susceptible to

class-wide proof.  *See CGC Holding*, 773 F.3d at 1087 (explaining that we consider "how

the class intends to answer factual and legal questions to prove its claim—and the extent

to which the evidence needed to do so is common or individual").  Second, GEO's sole

argument to the contrary—that the common evidence cannot establish a reasonable

expectation of payment on the part of the class members—fails because Colorado law

does not require such a showing as an element of unjust enrichment.

> 1)  The class members' unjustness showings rely on common
>     circumstances

Although the unjustness element requires "a fact-intensive inquiry," *Melat*, 287

P.3d at 847, the unjust enrichment class members intend to rely on facts that are shared

amongst the class and thus are susceptible to class-wide proof.  The class members

"claim that GEO's retention of the benefit is unjust because GEO utilized a policy [of]

paying extremely low wages to workers who were all detained, uniquely vulnerable as

immigrants, and subject to GEO's physical control."  Aplee. Br. at 48.  They seek to

establish the unjust nature of GEO's benefit based on "evidence of a common course of

conduct by GEO—the uniform VWP and the uniform payments."  *Id.* at 51.  Because the

class members' theory of unjustness depends on shared rather than individualized

circumstances, the unjustness question is common to the class and does not defeat predominance.  *See Tyson Foods*, 136 S. Ct. at 1045 ("[A] common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." (brackets and quotations omitted)).

> 2) The class members need not show a reasonable expectation of payment under Colorado law

GEO's only argument as to why class members would need to rely on individualized circumstances to show unjustness is that Colorado law requires plaintiffs to show a reasonable expectation of payment beyond $1 per day, which the common evidence here does not support.  This argument fails because, as discussed above, the Colorado Supreme Court has made clear that a reasonable expectation of payment is not a required element of unjust enrichment under Colorado law.  *See Ed Duggan*, 821 P.2d at 799-800 & n.19.[17]

In light of *Ed Duggan*, GEO's citation to an earlier, contrary decision by the Colorado Court of Appeals, Aplt. Br. at 46, 51, is not persuasive.  *See Britvar v.*

---

[17] We address GEO's "reasonable expectation" argument—even though it overlaps with the merits of the underlying unjust enrichment claims— "only to the extent . . . [it is] relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).  As we noted above, Rule 23(b)(3) predominance depends on "how the class intends to answer factual and legal questions to prove its claim—and the extent to which the evidence needed to do so is common or individual."  *CGC Holding*, 773 F.3d at 1087.  Answering the predominance question thus requires an understanding of the elements of the class's underlying claim (in this case, whether unjust enrichment has a "reasonable expectation" element under Colorado law).  *See id.* at 1088.

*Schainuck*, 791 P.2d 1183, 1184 (Colo. App. 1989) ("A plaintiff cannot recover for unjust enrichment . . . for services rendered absent proof of circumstances indicating that compensation is reasonably expected.").  Moreover, post-*Ed Duggan* Colorado Supreme Court cases involving unjust enrichment claims have not required plaintiffs to show a reasonable expectation of payment by the defendant.  *See, e.g.*, *City of Arvada ex rel. Arvada Police Dep't v. Denver Health & Hosp. Auth.*, 403 P.3d 609, 616-17 (Colo. 2017) (concluding that a public hospital could seek recovery against a municipality under unjust enrichment theory where it, "by virtue of its statutory obligation, performed a service [providing medical treatment to a municipal arrestee] normally covered under contract," even though the municipality "never promised to pay for that service, and has in fact refused to pay, but . . . may have received a benefit").

* * * *

In deciding the narrow question of whether the unjustness element is susceptible to class-wide proof, we take no position on whether the class would ultimately succeed on such proof at trial.  *See CGC Holding*, 773 F.3d at 1087 ("For the purposes of class certification, our primary function is . . . not to make a determination on the merits of the putative class's claims.").  Rather, we must affirm the district court's determination if it "falls within the bounds of rationally available choices given the facts and law involved in the matter at hand."  *See Soseeah*, 808 F.3d at 808 (quotations omitted).  Under the circumstances here, the district court determined that the class members could establish the unjustness of GEO's benefit based not on individualized transactions but on the "overall context" and "uniform policies" shared by all class members.  *Menocal*, 320

F.R.D. at 269.  For the foregoing reasons, we are satisfied that the district court did not abuse its discretion.

     ii.  <u>Damages</u>

As with the TVPA class, the presence of individualized damages issues does not defeat the predominance of questions common to the unjust enrichment class.  "[T]he fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification."  *XTO Energy*, 725 F.3d at 1220 (quoting *McLaughlin*, 522 F.3d at 231); *see also* Newberg § 4:54 & n.2 (stating that "courts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations" and listing cases).

Here, the district court reasonably found that "individual damages in this case should be easily calculable using a simple formula" based on number of hours worked, type of work performed, and fair market value of such work.  *Menocal*, 320 F.R.D. at 270.  It further stated that if damages proved to be less straightforward, "decertification or amendment of the class for damages determinations may be appropriate at a later juncture."  *Id.*  The court therefore did not abuse its discretion in determining that individual damages would not predominate over the liability issues common to the class—including (1) whether GEO received a benefit from the class members' VWP labor, and (2) whether it retained such a benefit unjustly.  *See XTO Energy*, 725 F.3d at 1220 ("[T]he district court is in the best position to evaluate the practical difficulties which inhere in the class action format, and is especially suited to tailor the proceedings accordingly.").

\* \* \* \*

The district court did not abuse its discretion in certifying the unjust enrichment class based on its "rigorous analysis" of the Rule 23 requirements contested here.  *See CGC Holding*, 773 F.3d at 1086.  The court reasonably determined that the class members shared the circumstances relevant to the unjustness question and that individual damage assessments would not predominate over the class's common issues.  Its findings on commonality, typicality, and superiority were likewise reasonable and fell within its discretion.

III. **CONCLUSION**

We affirm the district court's certification of both classes.  We grant the outstanding motions for leave to file amicus briefs.