**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and DEMETRIO
VALERGA
on their own behalf and on behalf of all others
similarly situated,

                             Plaintiffs,

      v.

THE GEO GROUP, INC.,

                        Defendants.

Civil No. 1:14-cv-02887-JLK

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
<u>REQUEST TO DEPOSE ABSENT CLASS MEMBERS</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.      GEO Cannot Meet Its Burden to Show Depositions of Absent Class Members Are
        Warranted in this Case. ................................................................................................... 2

        A.      Taking Depositions of Absent Class Members Is Unduly Burdensome. ............... 4

        B.      Depositions of Absent Class Members Threaten to Reduce the Size of the Class. 6

        C.      GEO Cannot Show That Absent Class Member Depositions Are Necessary to a
                Trial of Issues Common to the Class. .................................................................... 7

        D.      GEO Can Obtain the Information It Seeks from the Representative Plaintiffs and
                Other Sources. ..................................................................................................... 10

II.     If the Court Permits GEO to Take Discovery of Class Members, Such Discovery Should
        Be Limited. ................................................................................................................... 10

CONCLUSION .......................................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                    **PAGE(S)**

*Adkins v. Mid-Am. Growers, Inc.*,
   141 F.R.D. 466 (N.D. Ill. 1992)................................................................................ 3, 5

*In re Bank of New York Mellon Corp. Forex Transactions Litig.*,
   No. 11 Civ. 6969, 2014 WL 6879835 (S.D.N.Y. Nov. 6, 2014) ................................ 5

*Boynton v. Headwaters, Inc.*,
   No. 02 Civ. 1111, 2009 WL 3103161 (W.D. Tenn. Jan. 30, 2009)............................ 5

*Burgess v. Tesoro Refining & Mktg. Co.*,
   No. 10 Civ. 5870, 2011 WL 13217362 (C.D. Cal. July 5, 2011) ............................. 7

*In re Carbon Dioxide Indus. Antitrust Litig.*,
   155 F.R.D. 209 (M.D. Fla. 1993) ............................................................................ 3

*CGC Holding Co., LLC v. Broad & Cassel*,
   773 F.3d 1076 (10th Cir. 2014) ...................................................................... 2, 7, 8

*Clark v. Universal Builders, Inc.*,
   501 F.2d 324 (7th Cir. 1974) ............................................................................... 3, 4

*Leyva v. Buley*,
   125 F.R.D. 512 (E.D. Wash. 1989)........................................................................... 7

*McPhail v. First Command Fin. Planning, Inc.*,
   251 F.R.D. 514 (S.D. Cal. 2008) ............................................................ 6, 10, 12, 13

*Menocal v. GEO Grp., Inc.*,
   882 F.3d 905 (10th Cir. 2018) ........................................................................ 2, 9, 10

*Morangelli v. Chemed Corp.*,
   No. 10 Civ. 876, 2011 WL 7475 (E.D.N.Y. Jan. 1, 2011) ..................................... 12

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)............................................................................................. 2, 3

*In re Qwest Comm'ns Intern., Inc. Sec. Litig.*,
   283 F.R.D. 623 (D. Colo. 2005) ............................................................................. 4

*Ramirez v. DeCoster*,
   203 F.R.D. 30 (D. Me. 2001)................................................................................... 7

*Roberts v. C.R. England, Inc.*,
   No. 12 Civ. 302, 2017 WL 5312116 (D. Utah Nov. 13, 2017) ......................... passim

*Schwartz v. Celestial Seasonings, Inc.*,
 185 F.R.D. 313 (D. Colo. 1999) ............................................................. 4, 12

*Sibley v. Sprint Nextel Corp.*,
 No. 08 Civ. 2063, 2009 WL 3244696 (D. Kan. Oct. 6, 2009)................................... 11

*Silva-Arriaga v. Tex. Exp., Inc.*,
 222 F.R.D. 684 (M.D. Fla. 2004) ............................................................. 6

*Taylor v. Shippers Transp. Express, Inc.*,
 No. 13 Civ. 2092, 2014 WL 12561080 (C.D. Cal. Apr. 30, 2014)............................ 5

*Transamerican Refining Corp. v. Dravo Corp.*,
 139 F.R.D. 619 (S.D. Tex. 1991)............................................................. 12

*Valenzuela v. Union Pac. R.R. Co.*,
 No. 15 Civ. 1092, 2016 WL 3029887 (D. Ariz. May 27, 2016)............................... 5

*Zivali v. AT&T Mobility, 08-cv-10310*,
 No. 08 Civ. 10310 (S.D.N.Y. April 19, 2010) ........................................... 5

**STATUTES**

18 U.S.C. § 1589 ............................................................................. 1

29 U.S.C. § 216(b) ........................................................................... 12

**RULES**

Fed. R. Civ. P. 26 ........................................................................... 9

**OTHER AUTHORITIES**

William B. Rubenstein, Newberg on Class Actions § 9:11 ...................................... 2, 3

William B. Rubenstein, Newberg on Class Actions § 9:13 ...................................... 3

## PRELIMINARY STATEMENT

The Court should not permit Defendant The GEO Group, Inc. ("GEO") to take highly unusual, unnecessary and unduly burdensome discovery of absent class members.  GEO's request to depose 96 absent class members deprives the Court, Plaintiffs, and the classes they represent of the efficiencies and protections inherent in a class action.  GEO cannot meet its burden to show that absent class member depositions, which courts strongly disfavor, are necessary in this case.  In addition to being unnecessary to GEO's defenses, the depositions threaten to intimidate and burden class members.

## FACTUAL AND PROCEDURAL BACKGROUND

Class representative Plaintiffs Alejandro Menocal, Marcos Brambila, Grisel Xahuentitla, Hugo Hernandez, Lourdes Argueta, Jesus Gaytan, Olga Alexaklina, Dagoberto Vizguerra, and Demetrio Valerga (collectively "Plaintiffs") and the certified classes they represent (collectively, "the Class") are civil immigration detainees held at the Aurora, Colorado detention facility operated by Defendant The GEO Group, Inc. ("GEO" or "Defendant").  Plaintiffs allege that GEO's practice of forcing civil immigration detainees to clean GEO's facility under threat of punishment, including solitary confinement, pursuant to GEO's Housing Unit Sanitation Policy violates the Trafficking Victims Protection Act, 18 U.S.C. § 1589 ("TVPA").  The Class also challenges GEO's practice of paying detainees $1 per day for other work cleaning and maintaining the Aurora facility under GEO's Voluntary Work Program.

On March 14, 2017, the Court granted Plaintiffs' motion to certify the following classes:

(1) **the TVPA class**: All persons detained in Defendant's Aurora Detention Facility in the ten years prior to the filing of this action.

(2) **the unjust enrichment class**: All people who performed work at Defendant's Aurora Detention Facility under Defendant's Voluntary Work Program ("VWP") in the three years prior to the filing of this action.

1

[ECF No. 57].

GEO filed a petition for interlocutory appellate review of the Court's class certification decision under Fed. R. Civ. P. 23(f) [ECF No. 58], and on February 9, 2018, the Tenth Circuit affirmed the Court's class certification decision.  [ECF No. 115].[1]  After good-faith but unsuccessful efforts to resolve this matter, the parties filed a Stipulated Proposed Scheduling and Discovery Order on August 22, 2018.  [ECF No. 139].  In that Proposed Order, GEO stated that it would seek to depose 96 absent class members to rebut the inference of causation for Plaintiffs' TVPA claim allowed by this Court and the Tenth Circuit under the Tenth Circuit's prior decision in *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1093 (10th Cir. 2014).  *Id.*; *see also* Order Granting Motion for Class Certification Under Rule 23(b)(3) and Appointment of Class Counsel Under Rule 23(g) [ECF No. 57] at 13; *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 921-22 (10th Cir. 2018).  Plaintiffs oppose this request.  The parties agreed to file briefs providing supplemental authority to the Court in support of their respective positions no later than August 30, 2018.  [ECF No. 139].

## ARGUMENT

### I.    GEO Cannot Meet Its Burden to Show Depositions of Absent Class Members Are Warranted in this Case.

Discovery from absent class members is strongly disfavored.  *See* William B. Rubenstein, Newberg on Class Actions § 9:11 (5th ed.) ("Requiring absent class members to respond to discovery threatens to turn a class suit into an 'opt in' procedure rather than an 'opt out' mechanism, an approach the Supreme Court has squarely rejected.") (citing *Phillips Petroleum*

---

[1]    GEO subsequently filed a petition for rehearing and rehearing en banc, which the Tenth Circuit denied.  *Menocal v. GEO Group, Inc.*, No. 17-1125 (10th Cir. Mar. 5, 2018).  On June 4, 2018, GEO filed a Petition for a Writ of Certiorari from the Supreme Court.  *GEO Group, Inc. v. Menocal*, No. 17-1648 (U.S.).  The petition has been distributed for consideration in the Court's September 24, 2018 conference.

*Co. v. Shutts*, 472 U.S. 797, 812-13 (1985)). As the Supreme Court clearly stated in *Phillips*, "an absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection." 472 U.S. at 810.

Permitting discovery of absent class members undermines the efficiency of a class action. Newberg on Class Actions § 9:11; *In re Carbon Dioxide Indus. Antitrust Litig.*, 155 F.R.D. 209, 212 (M.D. Fla. 1993) ("The efficiencies of a class action would be thwarted if routine discovery of absent class members is permitted."). "[T]he ideas of a class action and individualized discovery do not fit together well," since "[i]f joinder of all parties is impracticable, propounding discovery like . . . depositions . . . on an individual basis is even more impracticable." *Adkins v. Mid-Am. Growers, Inc.*, 141 F.R.D. 466, 468 (N.D. Ill. 1992) (citation omitted). This is especially true where, as here, class members are geographically dispersed and, as current or former immigration detainees, particularly vulnerable.

In light of this well-established precedent, it is GEO's burden to show that a discovery request to absent class members is appropriate. Newberg on Class Actions § 9:13 ("[T]he burden is on the defendant to demonstrate that a discovery request is appropriate."); *Roberts v. C.R. England, Inc.*, No. 12 Civ. 302, 2017 WL 5312116, at *4 (D. Utah Nov. 13, 2017) ("One consistent factor . . . found among all the tests [for whether to allow limited discovery of absent class members] is the proponent of the discovery bears the burden."). Courts in the Tenth Circuit generally look to the multi-factor test enumerated in *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340-41 (7th Cir. 1974), and other similar multi-factor tests and allow discovery of absent class members only where (1) responding to the discovery requests would not be unduly burdensome or require the assistance of counsel, (2) the discovery is not designed to take undue

advantage of class members or to reduce the size of the class, (3) the discovery is necessary to a

trial of issues affecting the class as a whole, and (4) the discovery seeks information that is not

already known by the proponent or that is not already available from the representative parties or

other sources. *See Roberts*, 2017 WL 5312116, at *3-4; *Schwartz v. Celestial Seasonings, Inc.*,

185 F.R.D. 313, 316-17 (D. Colo. 1999); *In re Qwest Comm'ns Intern., Inc. Sec. Litig.*, 283

F.R.D. 623, 625-26 (D. Colo. 2005).  GEO cannot meet that standard.

### A.    Taking Depositions of Absent Class Members Is Unduly Burdensome.

Depositions of absent class members are unduly burdensome generally and in this

specific case.  Courts assessing the propriety of absent class member discovery look to the

burden on class members, including the complexity of the discovery and whether it will require

the assistance of counsel for class members to respond.  *See Clark*, 501 F.2d at 340 & n.24

(defendants did not meet their burden to show interrogatories to absent class members were

necessary and not unduly burdensome where answering interrogatories "would have required the

assistance of technical and legal advice in understanding the questions and formulating

responsive answers thereto"); *Schwartz*, 185 F.R.D. at 316-17 (finding three-page questionnaire

to absent class members permissible because it "is succinct and clear" and did not appear to

require legal or technical help to complete).

Depositions pose the highest burden of all possible class member discovery requests, as

each class member must be represented by counsel to prepare and sit for his or her deposition,

which consists of aggressive questioning from opposing counsel for several hours.  *Clark*, 501

F.2d at 341.  Thus, courts impose a higher burden on defendants seeking absent class member

depositions, as opposed to other types of discovery.  *See Roberts*, 2017 WL 5312116, at *4 ("[A]

strong showing when seeking depositions of absent class members is required."); *Clark*, 501

F.2d at 341 ("[I]n light of the nature of the deposition process—namely, the passive litigants are

required to appear for questioning and are subject to often stiff interrogation by opposing counsel

with the concomitant need for counsel of their own—we are of the view that the burden

confronting the party seeking deposition testimony should be more severe . . . .").[2]

Here, depositions pose a uniquely high burden.  First, absent class member plaintiffs

number in the tens of thousands.  *See* Order Granting Motion for Class Certification Under Rule

23(b)(3) and Appointment of Class Counsel Under Rule 23(g) [ECF No. 57] at 6 n.1; *cf. Adkins*,

141 F.R.D. at 468 (noting that in class action where there may be "hundreds of thousands of

members," if joinder of parties is impracticable, depositions are even more impracticable and

"individualized discovery would prevent such actions from being litigated").  GEO claims that

the requested 96 depositions will be "representative" of the 50,000 to 60,000-member class, but,

as discussed further below, Plaintiffs are not seeking to prove their case principally through

representative testimony.[3]

Second, class members are geographically dispersed and many are located abroad

because they have been deported or have departed voluntarily.  Although GEO may propose

limiting its deposition requests to class members in the United States, to a sample of class

members, or to class members who are currently detained in an immigration detention facility,

---

[2]    *See also Boynton v. Headwaters, Inc.*, No. 02 Civ. 1111, 2009 WL 3103161, at *1 (W.D.
Tenn. Jan. 30, 2009) ("The burden is heavy to justify asking questions by interrogatories, even
heavier to justify depositions."); *Taylor v. Shippers Transp. Express, Inc.*, No. 13 Civ. 2092,
2014 WL 12561080, at *2 (C.D. Cal. Apr. 30, 2014) (same); *Valenzuela v. Union Pac. R.R. Co.*,
No. 15 Civ. 1092, 2016 WL 3029887, at *3-4 (D. Ariz. May 27, 2016) (denying request to
depose absent class members as defendants did not meet "high threshold" required to justify
request); *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, No. 11 Civ. 6969,
2014 WL 6879835, at *2 (S.D.N.Y. Nov. 6, 2014) (denying request for class member
depositions where defendants did not make "strong showing" required to justify them).
[3]    Plaintiffs have not had the opportunity to assess and rebut any expert testimony from
GEO regarding the appropriate sample size for class member depositions, and would request the
opportunity to do so in the event that GEO seeks to prove its defense using allegedly
"representative" testimony from class members.

such limitations do not solve the problem. Imposing any depositions on these class members is unduly burdensome for the reasons set out above, and because any geographic limitation, or limitation as to detained status, would necessarily decrease the degree of "representativeness" of the sample.

Third, class members are likely to require interpretation services, meaning the depositions and preparation will last longer and will be more arduous for both class members and counsel. Finally, class members are especially vulnerable here. They were all once detained by GEO, which would make discovery from GEO inherently intimidating. Some class members, especially those who are currently detained, may also be fearful of future immigration consequences, or of retaliation inside the facility, for displeasing GEO.

### B. Depositions of Absent Class Members Threaten to Reduce the Size of the Class.

The depositions GEO seeks would have the deleterious effect of intimidating class members and potentially reducing the size of the class if GEO seeks to dismiss class members who are not able to sit for depositions. *See McPhail v. First Command Fin. Planning, Inc.*, 251 F.R.D. 514, 518 (S.D. Cal. 2008) ("[N]otwithstanding Defendants' stated purpose of utilizing the discovery responses to rebut the presumption of reliance and to defend other elements of Plaintiffs' claim, the practical effect of the discovery would be to reduce the size of the class" because the burden required to respond to discovery would "deter many absent class members from responding"). As stated previously, formerly detained immigrants, many of whom have been subjected to trauma both in the process of being deported and in their countries of origin, are a particularly vulnerable population.[4] The burden of traveling to a deposition, whether in the

---

[4]    *See Silva-Arriaga v. Tex. Exp., Inc.*, 222 F.R.D. 684, 691 (M.D. Fla. 2004) (class action superior to joining individual migrant agricultural workers in wage and hour claims, given class members' "limited English skills and limited understanding of the legal system, along with the

United States or abroad, of enduring hours of questioning in English with the necessity of

translation services for many, and of undergoing interrogation by representatives of an institution

that formerly imprisoned them, is likely to intimidate and to deter absent class members from

participation in the case. *Cf. Burgess v. Tesoro Refining & Mktg. Co.*, No. 10 Civ. 5870, 2011

WL 13217362, at *2 (C.D. Cal. July 5, 2011) (denying request to depose absent class members

who were defendant's current employees, since "[w]hile there is no evidence of any overt threats

of adverse action, or intimidation, if they do not testify favorably toward defendant, the very

nature of the relationship could result in their reluctance to participate in the class, thereby

diminishing class membership").

### C.    GEO Cannot Show That Absent Class Member Depositions Are Necessary to a Trial of Issues Common to the Class.

GEO seeks to take the depositions of absent class members to rebut the inference of

causation on Plaintiffs' TVPA claim allowed by this Court and the Tenth Circuit Court of

Appeals under the Tenth Circuit's prior decision in *CGC Holding Co.*, 773 F.3d 1076. To

support the argument that these depositions are necessary to its defenses at trial, GEO relies

principally on *Roberts*, 2017 WL 5312116. In *Roberts*, the plaintiffs alleged that the defendants

fraudulently solicited and sold them a business opportunity to drive large trucks. *Id.* at *1. The

court certified the class based on an inference that class members relied on the defendant's fraud

when they entered into these arrangements. *Id.* at *1-2. The court granted the defendant's

request to depose a group of absent class members to "test whether [defendants'] alleged scheme

---

fact that few live permanently within the [district]"); *Ramirez v. DeCoster*, 203 F.R.D. 30, 36 (D. Me. 2001) (class action mechanism superior where "[e]ach individual claim is relatively modest, these plaintiffs live at great distances from Maine and are not wealthy" and "some of them have language obstacles"); *Leyva v. Buley*, 125 F.R.D. 512, 518 (E.D. Wash. 1989) (finding superiority of class action mechanism where class of immigrant workers were unlikely to be permanently located in the district, had limited English proficiency, and lacked familiarity with U.S. legal system).

. . . did, in fact, uniformly cause drivers to enter into [a contractual relationship with defendants]." *Id.* at *5.

Contrary to what GEO claims, the court in *Roberts* did not permit these depositions merely because the plaintiffs sought to convince the jury to infer reliance or because the plaintiffs had obtained class certification based on the availability of that inference. *Id.* at *5. Rather, the court expressly relied on the fact that to support the inference, the plaintiffs had listed over 160 absent class members as witnesses likely to have discoverable information in their Rule 26 disclosures and had already submitted declarations from 28 absent class members to support their claims. *Id.* Here, Plaintiffs have not listed any absent class members as potential witnesses to support their claims, and have submitted only 3 declarations of absent class members in support of class certification. *See* Ex. A (Plaintiffs' Initial Disclosures); Plaintiffs' Motion for Class Certification [ECF No. 49].[5]

*Roberts* and other cases like it are distinguishable from this case because Plaintiffs plan to prove their claims through persuasive class-wide evidence—not individual class member experiences. The court in *Roberts* relaxed the burden on defendant to show the need for absent class member depositions because, unlike here, the plaintiffs used an inference of reliance and causation to tie together hundreds of individual, arm's-length transactions and to prove they were fraudulent. 2017 WL 5312116, at *4. *CGC Holding Co.* dealt with similar arm's-length transactions, and the Tenth Circuit permitted an inference of reliance to prove that defendant's conduct caused plaintiffs to enter into financial transactions "where it is sensible to assume that rational economic actors would not make a payment unless they assumed that they were

---

[5]    Unless otherwise indicated, all exhibits are attached to the Declaration of Juno Turner in Support of Plaintiffs' Opposition to Defendant's Request to Depose Absent Class Members ("Turner Decl.").

receiving some form of the promised benefit in return." 773 F.3d at 1091. By contrast, as the Tenth Circuit explained in its decision affirming this Court's class certification order, "[this] case—which involves alleged group coercion rather than individual arm's length transacting—not only allows for a class-wide inference of causation for the reasons stated above but arguably supports an even stronger inference." *Menocal*, 882 F.3d at 922 n.13. Because of the uniformly coercive circumstances of detention in the Aurora facility, and because a single, common policy of punishments up to and including solitary confinement for failure to work applied to the whole class, a jury could even more easily infer that class members cleaned because of the policy than it could infer that rational economic actors relied on a defendant's fraud in making a payment.

Plaintiffs have made clear throughout briefing before this Court, and on appeal in the Tenth Circuit, they will seek to convince a jury to infer causation across the class[6] to support their TVPA claims based on GEO's class-wide policies, the class-wide circumstances of detention, and expert testimony regarding the coercive force of those class-wide conditions. Currently, Plaintiffs do not have plans to call absent class members as trial witnesses, but in accordance with Federal Rule of Civil Procedure 26 and the parties' stipulated and proposed scheduling order [ECF No. 139], should Plaintiffs intend to introduce any absent class member witnesses at trial, Plaintiffs will disclose such witnesses no later than sixty (60) days prior to trial, and if Defendant has not had the opportunity to depose such witnesses, will offer such witnesses for deposition prior to trial. Thus, it is not "necessary" for GEO to depose a large number of absent class members now to mount its defenses. *See Menocal*, 882 F.3d at 921

---

[6]    Plaintiffs maintain the position that the TVPA's forced labor prohibition does not require a subjective showing of causation. *See Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 918 (10th Cir. 2018).

(discussing the availability of common, circumstantial evidence to support a class-wide inference of causation in this case).

> **D.     GEO Can Obtain the Information It Seeks from the Representative Plaintiffs and Other Sources.**

GEO cannot show that the information it needs to defend against Plaintiffs' TVPA claim is not obtainable from other sources. *See Roberts*, 2017 WL 5312116, at *5; *McPhail*, 251 F.R.D. at 518. In *Roberts*, the court found that the plaintiffs' "*own* reliance on class member experiences" of hundreds of class members "undermines the argument that Defendants already have the information they need," and found that defendants deserved an opportunity to "challenge representative testimony Plaintiffs propose to present on liability." 2017 WL 5312116, at *5. As noted previously, in contrast to the *Roberts* plaintiffs, Plaintiffs here do not seek to rely principally on absent class member testimony to prove their claims. Further, as the Tenth Circuit noted, GEO can introduce other evidence against all class members at trial, such as testimony from its employees, like Assistant Warden Dawn Ceja, that detainees "help out" with housing unit cleaning to "keep busy." *Menocal*, 882 F.3d at 921 n.12. GEO can also present its own expert and witness testimony and documentary evidence about the conditions of confinement at the Aurora facility and how the Housing Unit Sanitation Policy was applied to rebut the inference of causation for Plaintiffs' TVPA claim. *See McPhail*, 251 F.R.D. at 518 (in securities fraud class action, class member depositions not necessary as defendants could rebut presumption of reliance by showing their sales representatives' representations to class members were not uniform, or that they did not contain material misrepresentations).

**II.     If the Court Permits GEO to Take Discovery of Class Members, Such Discovery Should Be Limited.**

For the reasons noted above, GEO cannot show that depositions of absent class members are necessary, and depositions would be unduly burdensome and would have

deleterious effects on the already-vulnerable class. Even in the unusual circumstances where courts have permitted discovery of absent class members, such discovery has been limited in form and in scope. If the Court is inclined to grant Defendant's request, it should limit such discovery in the interests of fairness and efficiency.

First, because depositions are the most burdensome form of discovery, *see* Section I.A., *supra*, if the Court is inclined to permit class member discovery, Plaintiffs submit that GEO should be limited to written discovery served only on those absent class members who offered declarations in support of class certification, and to no more than three interrogatories and three requests for production to each selected class member. *See Sibley v. Sprint Nextel Corp.*, No. 08 Civ. 2063, 2009 WL 3244696, at *2 (D. Kan. Oct. 6, 2009) (permitting interrogatories and requests for production of documents to 41 putative class members who submitted declarations in support of class certification); *Roberts*, 2017 WL 5312116, at *5 (noting that the discovery sought by defendants "could come via a different mechanism such as questionnaires or interrogatories").

Second, if the Court decides to grant Defendant's request for class member depositions, the number of depositions should be substantially less than 96. *See Roberts*, 2017 WL 5312116, at *6 (rejecting request for 100 depositions, which "could likely be a waste of time and resources . . . without support that such a number is statistically significant").[7] Defendant estimates that with this many depositions, discovery will take over 20 months to complete. [ECF No. 139]. Nearly 18 months have already passed since the Court certified the classes in this action. To ensure that the action proceeds

---

[7]     Plaintiffs reiterate that any alleged "representativeness" of Defendant's proposed sample is undermined by Defendant's own concession that they will have to limit depositions by geographic area for this discovery to be feasible.

fairly and efficiently, if the Court grants Defendant's request, the parties should jointly negotiate a process for selecting a reasonable number of class members to be deposed.

Third, any depositions should be limited in scope to ensure that the depositions do not have the effect of intimidating class members and that they are limited to the topics the Court finds necessary for Defendant to rebut the inference of causation as to Plaintiffs' TVPA claim. *See McPhail*, 251 F.R.D. at 518 (denying request for class member depositions where burden of depositions would have effect of reducing class size); *Transamerican Refining Corp. v. Dravo Corp.*, 139 F.R.D. 619, 621-22 (S.D. Tex. 1991) (permitting limited discovery of class members because scope of clear, concise interrogatories was limited to central, common questions in the litigation); *Schwartz*, 185 F.R.D. at 316-17 (permitting questionnaire to absent class members limited to three pages).

Fourth, any depositions should be limited to two hours in length, and should be conducted via videoconference in cases where the deponent resides abroad. Defendant seeks discovery on the limited question of whether absent class members worked because of its Housing Unit Sanitation Policy, so two-hour depositions will not prejudice Defendant. In the similar context of opt-in collective actions pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), which permits opt-in plaintiff discovery, courts frequently limit depositions of opt-in plaintiffs to two hours. *See, e.g.*, Ex. B (*Zivali v. AT&T Mobility*, 08 Civ. 10310 (S.D.N.Y.) (Dkt No. 143)) (limiting opt-in depositions to two hours); *Morangelli v. Chemed Corp.*, No. 10 Civ. 876, 2011 WL 7475, at *2 (E.D.N.Y. Jan. 1, 2011) (limiting opt-in deposition to two hours). Thus two hours is

more than adequate here, where absent class member discovery is the exception, rather than the rule.

Finally, the effect of a failure to respond to discovery should not prevent absent class members from benefiting from the class action. *See Roberts*, 2017 WL 5312116, at *6 (depositions should be conducted after opt-out period so as to "prevent a class member's decision of whether or not to join the class being improperly based on a potential deposition hanging over their head."); *McPhail*, 251 F.R.D. at 518 (rejecting class member depositions where defendants reserved right to "'seek appropriate relief' (i.e., a dismissal of claims) as to any class members who do not timely respond to the discovery," as this would have the effect of requiring an opt-in procedure in a Rule 23 action).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's request to depose absent class members, or in the alternative, impose the limitations proposed herein on any discovery of absent class members.


Dated: August 30, 2018
       New York, New York

                                        Respectfully submitted,

                                        By: /s/ Juno Turner

                                        Juno Turner
                                        Elizabeth Stork
                                        **OUTTEN & GOLDEN LLP**
                                        685 Third Avenue, 25th Floor
                                        New York, New York 10017
                                        Telephone:  (212) 245-1000
                                        Facsimile:  (212) 977-4005
                                        E-Mail: jturner@outtengolden.com

13

E-Mail: estork@outtengolden.com

Rachel Dempsey
**OUTTEN & GOLDEN LLP**
601 Massachusetts Avenue NW
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
E-Mail: rdempsey@outtengolden.com

David Lopez
**OUTTEN & GOLDEN LLP**
601 Massachusetts Avenue NW
Second Floor West Suite
Washington, D.C. 20001
Telephone:  (202) 847-4400
Facsimile:  (202) 847-4410
E-Mail: pdl@outtengolden.com

Alexander Hood
David  Seligman
Andrew Schmidt
**TOWARDS JUSTICE**
1410 High St., Suite 300
Denver, CO 80218
(720) 441-2236
alex@towardsjustice.org
david@towardsjustice.org
andy@towardsjustice.org

R. Andrew Free
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

Brandt Milstein
**MILSTEIN LAW OFFICE**
1123 Spruce Street
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

Andrew Turner
**THE KELMAN BUESCHER FIRM, P.C.**
600 Grant St., Suite 450
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com

Hans Meyer
**MEYER LAW OFFICE, P.C.**
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*