# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-02887 JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA
on their own behalf and on behalf of all others similarly situated,

      Plaintiffs,

v.

THE GEO GROUP, INC.,

      Defendant.

---

## PLAINTIFFS' MOTION TO COMPEL

---

### TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL AND PROCEDURAL HISTORY ........................................................... 2

    I.   GEO Failed to Produce Complete Responses to Plaintiffs' Discovery Requests.............. 2

    II.  GEO Failed to Produce a Complete Class List. .................................................. 6

ARGUMENT ............................................................................................................... 8

    I.   GEO's Continued Reliance on *Touhy* Violates This Court's Order and Contravenes
        Established Precedent. ..................................................................................... 9

    II.  Production of Detainee Contact Information in GEO's Control is Not Unduly
        Burdensome. ................................................................................................. 11

    III. Plaintiffs Should Be Reimbursed for Attorneys' Fees and Costs. .................... 13

CONCLUSION ........................................................................................................... 13

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                       **PAGE(S)**

*Beltran v. InterExchange, Inc.,*
   No. 14 Civ. 3074, 2018 WL 1704633 (D. Colo. Apr. 9, 2018) ................................................ 12

*Centennial Archaeology, Inc. v. AECOM, Inc.,*
   688 F.3d 673 (10th Cir. 2012) ............................................................................................. 13

*Comm. for Nuclear Responsibility, Inc. v. Seaborg,*
   463 F.2d 788 (D.C. Cir. 1971) ............................................................................................... 4

*Exxon Shipping Co. v. U.S. Dep't of Interior,*
   34 F.3d 774 (9th Cir. 1994) .................................................................................................... 3

*Gulf Grp. Gen. Enters. Co. W.L.L. v. United States,*
   98 Fed. Cl. 639 (Fed. Cl. 2011) ............................................................................................. 4

*In re Home–Stake Prod. Co. Sec. Litig.,*
   76 F.R.D. 351 (N.D. Okla. 1977) ........................................................................................ 12

*Lee v. State Farm Mutual Auto Ins. Co.,*
   249 F.R.D. 662 (D. Colo. 2007) ............................................................................................ 9

*Marcin Eng'g, LLC, v. Founders at Grizzly Ranch, LLC,*
   219 F.R.D. 516 (D. Colo. 2003) ............................................................................................ 9

*In re Motor Fuel Temperature Sales Practices Litig.,*
   641 F.3d 470 (10th Cir. 2011) ........................................................................................... 8, 9

*Mullane v. Central Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950) ............................................................................................................ 11

*National Hockey League v. Metropolitan Hockey Club,*
   427 U.S. 639 (1976) ............................................................................................................ 13

*NLRB v. Capitol Fish Co.,*
   294 F.2d 868 (5th Cir. 1961) ................................................................................................. 4

*Peat, Marwick, Mitchell & Company v. West,*
   748 F.2d 540 (10th Cir. 1984) ............................................................................................... 9

*Resolution Tr. Corp. v. Deloitte & Touche,*
   145 F.R.D. 108 (D. Colo. 1992) ............................................................................... 10, 12, 13

*Roadway Exp., Inc. v. Piper,*
   447 U.S. 752 (1980) ............................................................................................................ 13

*United States ex rel. Touhy v. Ragen*,
   340 U.S. 462 (1951) ............................................................................... *passim*

*United Student Aid Funds, Inc. v. Espinosa*,
   559 U.S. 260 (2010) ............................................................................... 11

*Watts v. S.E.C.*,
   482 F.3d 501 (D.C. Cir. 2007) .............................................................. 3

**STATUTES**

5 U.S.C. § 301 ............................................................................................ 1, 3

5 U.S.C. § 552 ............................................................................................ 7

8 U.S.C. § 1255a(c)(5) ............................................................................... 10

8 U.S.C. § 1367(a)(2) ................................................................................. 10

**RULES**

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................ 11, 12

Fed. R. Civ. P. 26 ...................................................................................... 3, 8

Fed. R. Civ. P. 34(a)(1) ............................................................................. 11

Fed. R. Civ. P. 37 ...................................................................................... 1, 13, 17

**REGULATIONS**

6 C.F.R. § 5.48(a) ...................................................................................... 3

6 C.F.R. §§ 5.41-49 ................................................................................... 1, 2, 5

8 C.F.R. § 208.6 ......................................................................................... 10

**OTHER AUTHORITIES**

Daniel C. Taylor, *Taking* Touhy *Too Far: Why It Is Improper For Agencies To Unilaterally Convert Subpoenas Into FOIA Requests*, 99 Georgetown L. J. 1227 (2011) ............................. 3

## PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 37, D. Colo. Civ. L.R. 37.1, and this Court's Orders of June 6, 2017 (ECF No. 84) and January 14, 2019 (ECF No. 163), Plaintiffs, on behalf of the certified Plaintiff Class (collectively "Plaintiffs") hereby respectfully move (i) to compel disclosures and discovery responses withheld or delayed by the GEO Group, Inc. ("GEO"), including under the purported authority of *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and its implementing regulations, *see* 5 U.S.C. § 301 and 6 C.F.R. §§ 5.41-49; and (ii) to compel the production of a complete class list.

This Court held more than a year and a half ago that GEO cannot hide behind its relationship with Immigration and Customs Enforcement ("ICE") to avoid its discovery obligations. The Court rejected GEO's arguments to the contrary as "without merit and offensive to the judicial process." ECF No. 84 at 2. Despite this unequivocal holding, on February 6, 2019, GEO served discovery responses to Plaintiffs' Third Set of Requests for Documents and Interrogatories that included both general and specific objections that the discovery at issue was subject to *Touhy* and its implementing regulations. GEO likewise refuses to provide complete responses to Plaintiffs' First and Second Sets of Requests for Documents and Interrogatories, which were served on GEO between a year and a half and three-and-a-half years ago. Plaintiffs have been stymied by GEO's continuing insistence that it cannot produce many documents without review by ICE. GEO will not provide Plaintiffs with a timeline for when this review may take place. GEO's ongoing attempt to shield itself from standard litigation discovery—in violation of this Court's clear orders—cannot continue.

In addition, nearly a year after the Tenth Circuit affirmed class certification, *see* ECF No. 125, GEO has failed to produce a full and complete class list. The parties initially agreed that GEO would produce the class list by September 24, 2018. ECF No. 139 at 17. In the proposed

1

scheduling order the parties submitted to the Court, GEO represented that it had detainee data in digital format from 2006-2014 and that it was in the process of obtaining digital files of detainee data for 2004 and 2005.  *Id.* at 17-18.  On November 30, 2018, GEO produced a partial class list. More than three months later, despite repeated requests from Plaintiffs, GEO has neither completed its production nor provided a timeline for doing so, leaving Plaintiffs unable to effect notice more than two years after the class was certified.

Plaintiffs therefore bring this motion to compel production of all documents and other discovery responses GEO is withholding pending ICE review, including (i) those documents requested in Plaintiffs' Requests for Production Nos. 1 through 51, including the complete class list; (ii) complete responses to Plaintiffs' Interrogatories Nos. 1 through 22; and (iii) complete responses to Plaintiffs' Requests for Admissions Nos. 1 through 5.

## FACTUAL AND PROCEDURAL HISTORY

### I.      GEO Failed to Produce Complete Responses to Plaintiffs' Discovery Requests.

Plaintiffs served their First Set of Discovery Requests on GEO on July 31, 2015. Declaration of Juno Turner in Support of Plaintiffs' Motion to Compel ("Turner Decl.") ¶ 4 & Ex. A[1] (Plaintiffs' First Set of Discovery Requests to Defendant).  In its responses and first supplemental responses to these requests, GEO invoked *Touhy* and 6 C.F.R. §§ 5.41-5.49, *Touhy*'s implementing regulations, as the basis for its refusal to produce many categories of responsive documents and information. Ex. B (GEO's Responses to Plaintiffs' First Set of Interrogatories, Requests for Admissions, RFPs, and Request for Inspection); Ex. C (GEO's First Supplemental Responses to Plaintiffs' First Set of Interrogatories and RFPs).  On April 26, 2017,

---

[1]      Except where otherwise stated, all exhibits referenced herein are attached to the Turner Decl.

the parties filed cross-motions aimed at resolving their dispute as to whether *Touhy* is a proper basis for withholding discovery.  ECF Nos. 72, 73.

On June 6, 2017, the Court granted Plaintiffs' motion to compel and denied GEO's motion for a protective order.  *See* ECF No. 84 (the "Prior *Touhy* Order").  In the Prior *Touhy* Order, the Court noted that Federal Rule of Civil Procedure 26 prescribes a liberal discovery standard permitting discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  ECF No. 84 at 2 (quoting Fed. R. Civ. P. 26(b)(1)).  Separately, the federal "Housekeeping Statute," 5 U.S.C. § 301, permits agencies to prohibit their employees from producing official documents in court proceedings under certain circumstances.  ECF No. 84 at 3 (citing *Touhy*, 340 U.S. at 466-67).  GEO argued that ICE's housekeeping regulations supersede GEO's Rule 26 obligations and prevent it from having to participate in discovery absent ICE's permission.  *Id.* at 5.  Plaintiffs countered that such a rule would "allow [ICE] to usurp the court's authority to control discovery, resulting in a separation of powers problem."  *Id.*[2]

---

[2]     As in the previous round of *Touhy* briefing, Plaintiffs do not concede the validity of the *Touhy* regulations at issue, which are *ultra vires* of the statutory authority Congress granted agencies.  *Compare* 5 U.S.C. § 301 ("This section does not authorize withholding information from the public or limiting the availability of records to the public") *with* 6 C.F.R. § 5.48(a) ("In deciding *whether* to comply with a demand or request . . .'"); *see also Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 780 (9th Cir. 1994) ("Section 301 does not create an independent privilege to withhold government information or shield federal employees from valid subpoenas."); *Watts v. S.E.C.*, 482 F.3d 501, 508-09 (D.C. Cir. 2007) ("An agency's *Touhy* regulations are relevant for internal housekeeping and determining who within the agency must decide how to respond to a federal court subpoena," but do not "confer a privilege" that independently allows withholding of responsive information) (internal citation omitted); Daniel C. Taylor, *Taking* Touhy *Too Far: Why It Is Improper For Agencies To Unilaterally Convert Subpoenas Into FOIA Requests*, 99 Georgetown L. J. 1227, 1236 (2011) ("As if to make doubly clear that the Housekeeping Statute does not provide federal agencies with substantive grounds for withholding subpoenaed information, Congress amended the statute in 1958 to formally emphasize that it "does not authorize withholding information from the public or limiting the

The Court held that Plaintiffs were "unquestionably correct."  ECF No. 84 at 5.  "The conspicuous and sensible purpose of the *Touhy* regulations is to protect an agency of government from unrestricted disclosure of official documents when that agency or its 'employees' are *not* parties to the litigation."  *Id*.  The Court also noted that GEO's position attempted to apply *Touhy* as both a sword and a shield: GEO sought to be defined as an ICE employee insofar as required for the *Touhy* regulations to apply, and simultaneously to argue that no ICE employee was a party to the litigation, thus relieving it of the obligation to participate in normal discovery procedures.  *Id*. at 7.  The Court concluded that "[p]ermitting GEO to hide behind the Department's regulations here would mischaracterize the *Touhy* doctrine . . . , distort the intent of the Housekeeping Statute . . . , [and] create a significant separation of powers problem."  *Id*. at 8 (citing *Gulf Grp. Gen. Enters. Co. W.L.L. v. United States*, 98 Fed. Cl. 639, 647 (Fed. Cl. 2011)); *see also Comm. for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 793 (D.C. Cir. 1971) (housekeeping statues "do[] not confer a privilege" or "authorize withholding of information from the public or limiting the availability of records to the public") (citing *NLRB v. Capitol Fish Co*., 294 F.2d 868, 875 (5th Cir. 1961)).  Accordingly, the Court struck GEO's discovery responses and overruled its *Touhy* objections.  *Id*. at 8-9.[3]

Shortly after the Court issued the Prior *Touhy* Order, the Court stayed further discovery, other than as related to the individual plaintiffs' claims, until after the Tenth Circuit ruled on the appeal of this Court's order granting Plaintiffs' motion for class certification.  During the stay, GEO supplemented its responses to Plaintiffs' First Set of Discovery Requests to remove

---

availability of records to the public." Congress believed that the Housekeeping Statute "was being miscited as statutory authority for nondisclosure.") (internal citations omitted).

[3]      The Court also granted Plaintiffs' request for attorneys' fees, and stated that GEO's failure to comply with the order would result in (1) all requests for admission being deemed admitted, and (2) the appointment of a special master to obtain all discovery, paid for by GEO. ECF No. 84 at 9.

objections based on *Touhy* and its implementing regulations.  ECF No. 85.  Ex. D (GEO's

Second Supplemental Responses to Plaintiffs' Written Discovery).  However, these supplemental

responses explicitly provided discovery only as to the individual named plaintiffs, and not as to

the class.  *Id*.  Also during the stay, on September 29, 2017, Plaintiffs served a Second Set of

RFPs and a Second Set of Interrogatories on GEO.  Turner Decl. ¶¶ 8-9; Ex. E (Plaintiffs'

Second Set of RFPs); Ex. F (Plaintiffs' Second Set of Interrogatories).  GEO's responses to these

discovery requests did not invoke *Touhy*.  *Id*., Ex. G (GEO's Responses to Plaintiffs' Second Set

of RFPs); Ex. H (GEO's Responses to Plaintiffs' Second Set of Interrogatories).

After the Tenth Circuit issued its decision affirming the propriety of class certification,

the parties resumed classwide discovery.  Plaintiffs served their Third Sets of Interrogatories and

Requests for Production of Documents and their Second Set of Requests for Admissions, and

also engaged in a meet and confer process with GEO regarding responses to Plaintiffs' prior

discovery requests.  In its responses and objections to Plaintiffs' Third Sets of Requests for

Documents and Interrogatories, GEO raises a general objection that "any discovery relating to

the production of confidential information regarding detainees, GEO employees, GEO policies,

or implications official information of [ICE]" is subject to *United States ex rel. Touhy v. Ragen*,

340 U.S. 462 (1951) and its implementing regulations, 6 C.F.R. §§ 5.41-5.49.  Ex. I (Responses

and Objections to Plaintiffs' Third Set of RFPs) at 1; Ex. J (Responses and Objections to

Plaintiffs' Third Set of Interrogatories) at 1.  Similarly, in correspondence dated January 28,

2019 in response to Plaintiffs' deficiency letter regarding Plaintiffs' First and Second Sets of

Requests for Production of Documents and Interrogatories, GEO informed Plaintiffs that there

are certain "areas of discovery for which GEO must first obtain government approval, or which

the government will insist on reviewing, prior to production." Ex. K (January 28th letter from N. Beer) at 1.

Specifically, GEO is withholding a large swath of documents from discovery pending ICE review, including (i) documents marked "For Official Use Only," "FOUO," "Law Enforcement Use Only," or with similar text; (ii) ICE audits and inspections; (iii) communications with ICE; (iv) invoices submitted to ICE; (v) non-public ICE policies or procedures; (vi) information related to applications submitted pursuant to the Violence Against Women Act; (vii) Visa/U Visa information; (viii) information related to Seasonal Agricultural Worker claims; (ix) information related to asylum/refugee claims; (x) personally identifiable information of detainees (including names and A-numbers); and (xi) personally identifiable information of ICE officials. Ex. L (March 4th letter from N. Beer) at 3. These withheld documents include documents entirely within GEO's custody and control, such as (for example) commissary reports produced for GEO by a private third-party company, and likely include a significant proportion of the discovery at issue in this case.

When asked to provide the basis for this position and identify the documents being withheld, GEO cited to the protective order entered on November 26, 2018, the status report the parties filed attaching the proposed protective order, and *Touhy* and its accompanying regulations. *See* Ex. L (March 4th letter from N. Beer) at 1-2. However, as discussed in further detail below, none of these provides GEO with a basis to withhold the requested discovery.

## II.     GEO Failed to Produce a Complete Class List.

Plaintiffs have sought the data necessary to provide notice to the members of the certified class since August 2018. The parties initially filed a stipulation that GEO would produce the class list for all detainees from 2006 to 2014 on or before September 24, 2018. ECF No. 139. That stipulation also provided that GEO would investigate how to provide a class list for all

detainees from 2004 and 2005. *Id*. After the Department of Justice objected that production of the class list would violate the Privacy Act, 5 U.S.C. § 552 *et seq*., the parties engaged in negotiations over a stipulated protective order. The government suggested specific language the parties could include in the protective order that "would satisfactorily address the Privacy Act concerns identified in [the government's] August 21, 2018 letter." Ex. M (August 28 letter from T. Jafek) at 2. The parties' negotiations over the protective order yielded a modified protective order, which included the language the government suggested would address the Privacy Act concerns.

In light of the parties' renewed negotiations over a protective order, the parties modified their stipulation to provide that GEO would produce the 2006 to 2014 class list within seven days after the entry of a modified protective order that addressed the government's concerns. ECF No. 146. In the modified stipulation, GEO noted that the data from 2004 to 2005, and supplemental data for 2006 to 2014, were available and in its custody and control in an "organized and searchable data set" of detainee files. *Id*. at 17-18.

Four days after the entry of the modified protective order, on November 30, 2018, GEO produced a limited class list for the 2006 to 2014 time period. Subsequent to that production, Plaintiffs repeatedly requested that GEO provide Plaintiffs with clarification about some of the information in the class list and a timeline for completing the class list production. On December 10, 2018, GEO provided partial responses and, in response to Plaintiffs' requests for further clarification, GEO revealed that the class list it produced contained detainee data beginning in 2007—not 2006 as it had originally claimed. Ex. N (December 2018 e-mails between Plaintiffs and N. Beer). GEO also deferred several questions to ICE and informed Plaintiffs that no timeline could be provided for when ICE might answer, despite Plaintiffs'

7

agreement to add the government's requested Privacy Act language to the modified protective order.  *Id.*

The parties met and conferred on this issue on January 15, 2019, and exchanged letters on January 7, February 15, and March 4, 2019.  Within this correspondence, Plaintiffs asked GEO to produce the remainder of the class list by March 1, 2019.  Ex. O (Feb. 15, 2019 letter from J. Turner) at 3.  But, in its most recent letter—sent on March 4, 2019, three days after the requested date for production of the remainder of the class list—GEO continued to hide behind ICE, stating it "has not received a substantive response from ICE" but "remains hopeful that ICE will be able to provide the requested [class list] information."  Ex. L (March 4, 2019 letter from N. Beer) at 4.  GEO still has not provided Plaintiffs with a timeline for producing the remainder of the class list, nor has it provided Plaintiffs with additional details about how the class list information is stored or how it might be retrieved.  Instead, GEO attempts to shirk its responsibility to provide a class list by manufacturing a third-party impediment to producing information that is unquestionably within its custody and control.  At the same time, GEO declines to participate in a meaningful meet-and-confer with Plaintiffs to explore a process that would balance any burden associated with searching the information with Plaintiffs' need to provide notice to the certified class.

## ARGUMENT

The Court should order GEO to promptly produce all discovery withheld on the basis of ICE's objections or claimed need to review, including a complete class list.  Fed. R. Civ. P. 26(b)(1) provides that parties may obtain discovery regarding any non-privileged matter that is relevant to a claim or defense, provided it is proportional to the particular case at hand.  A party resisting discovery or asserting a privilege bears the burden of demonstrating the asserted privilege or legal ground for withholding discovery applies.  *See, e.g.*, *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 489 (10th Cir. 2011) ("A party seeking to

assert a privilege must make a clear showing that it applies." (quoting *Peat, Marwick, Mitchell & Company v. West*, 748 F.2d 540, 542 (10th Cir. 1984)); *accord Marcin Eng'g, LLC, v. Founders at Grizzly Ranch, LLC*, 219 F.R.D. 516, 525 (D. Colo. 2003) (Kane, J.) (applying the burden against the party resisting discovery on the basis of the work-product doctrine); *Lee v. State Farm Mutual Auto Ins. Co.*, 249 F.R.D. 662, 685 (D. Colo. 2007) (same).  GEO cannot meet that burden here.

I.      **GEO's Continued Reliance on *Touhy* Violates This Court's Order and Contravenes Established Precedent.**

Nothing has changed since the Court last ruled on the issue of whether *Touhy* and its implementing regulations allow ICE to dictate what is and is not discoverable in this case: *Touhy* remains an invalid basis for GEO to withhold documents in this action.  Despite this clear mandate, GEO persists in doing exactly that.

As an initial matter, neither the protective order nor the associated status report justifies withholding documents pending ICE review.  To the contrary, the protective order implements rigorous limitations on the use of documents produced in this litigation to accommodate GEO and ICE's concern about the potential disclosure of "law enforcement sensitive" information.  ECF No. 157 at ¶¶ i-iv.  The protective order specifically provides that it "does not prohibit or restrain the disclosure of information between the parties for the performance of the tasks necessary to conduct discovery or prepare for trial."  *Id*. at ¶ 10.  Although the accompanying status report states that "nothing [within the protective order] prohibits the Government from reviewing documents prior to disclosure in discovery," ECF No. 155 at 2, the protective order

also does not *require* such a procedure, which is contrary to case law and the Federal Rules for the reasons stated herein.[4]

GEO acknowledges that the Prior *Touhy* Order holds that *Touhy* does not protect GEO from its responsibilities under the Federal Rules. Ex. L (March 4, 2019 letter from N. Beer) at 2. Nevertheless, GEO apparently intends to adhere to the Department of Justice's position that "*Touhy* still applies to GEO, notwithstanding Judge Kane's order." *Id*. at 3.

GEO's position—that an executive agency can overrule this Court and the Federal Rules and dictate the pace and scope of discovery in federal litigation—is untenable. This Court has explicitly ruled that *Touhy* does not protect GEO from discovery, and neither the protective order nor ICE's interpretation of federal law can change that.

This outcome is consistent with the principle, well-settled in this district, that a party cannot decline to produce discovery simply because the discovery sought is subject to restrictions from a government agency that "has attempted to mandate a different procedure." *Resolution Tr. Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 111 (D. Colo. 1992). GEO's ability to produce documents within its possession that are responsive to Plaintiffs' requests "is not affected by [ICE's] retention of ownership or its unilaterally imposed restrictions on disclosure." *Id.* at 110.

---

[4]     In its March 4, 2019 letter to Plaintiffs, GEO references a "carve[-]out" to the protective order for "Covered Information." Ex. L (March 4, 2019 letter from N. Beer) at 1-2. There is no such carve-out, and the protective order does not define or even mention covered information. ECF No. 157. In the status report that accompanied the proposed protective order, the parties noted that the government had concerns about "covered information" (defined as information covered by 8 C.F.R. § 208.6 and 8 U.S.C. §§ 1255a(c)(5), 1367(a)(2)), but Plaintiffs reserved their right to challenge any assertion that ICE has a right to review the requested information. ECF No. 155 at 2.

## II.     Production of Detainee Contact Information in GEO's Control is Not Unduly Burdensome.

The extreme delay in providing Plaintiffs with the class list is a vivid example of how GEO has been hiding behind ICE to evade its obligations to produce information to which Plaintiffs are entitled. As detailed above, GEO has acknowledged that the complete class list is within its custody and control, and has provided only weak justifications for its failure to produce a complete list—arguing, for example, that providing the contact information for all class members would be unduly burdensome, and that some of the information may be stale. Ex. L (March 4, 2019 letter from N. Beer) at 4. These explanations for non-production are insufficient.

First, GEO has an obligation under the Federal Rules to produce documents within its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). From the limited information GEO has provided, Plaintiffs understand that GEO has in its possession, at a minimum, the names of those class members omitted from the partial class list already produced by GEO. Although those class members' contact information may be in ICE's possession, GEO should promptly produce what information it has—or demonstrate that doing so would be so burdensome that it outweighs the necessity of producing a class list to facilitate "the best notice that is practicable." *See* Fed. R. Civ. P. 23(c)(2)(B).

GEO has acknowledged and represented to the Court that the class list information is available in text-searchable records, ECF No. 146 at p. 17, undermining its burden argument, and GEO's continued withholding threatens the due process rights of the certified class. Absent class members have a due process right to notice "reasonably calculated under all the circumstances, to apprise interested parties of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (quoting *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)). Yet GEO continues

to prevent class members from being notified of the pendency of this action because it refuses to search its own records and produce information within its custody and control.

Second, GEO's speculation that some of the information contained in its files may be outdated highlights the urgency of production. Plaintiffs are required to provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Court has already determined that the best notice that is practicable in this case includes mailing to the last known addresses of the class. *See* ECF No. 163. The longer GEO delays in identifying the members of a class that was certified more than two years ago, the more difficult class members become to reach and the less time they have to meaningfully participate in the action, prejudicing Plaintiffs and the class and threatening their due process rights. *See Beltran v. InterExchange, Inc.,* No. 14 Civ. 3074, 2018 WL 1704633, at *5 (D. Colo. Apr. 9, 2018) (Arguello, J.) (it is "well established" that, to protect the rights of absent class members, "notice must be distributed to all class members at the earliest possible time" (quoting *In re Home–Stake Prod. Co. Sec. Litig.*, 76 F.R.D. 351, 380 (N.D. Okla. 1977)).

Finally, to the extent GEO claims that the class member information in its possession is subject to ICE control, as noted above, ICE's "retention of ownership or its unilaterally imposed restrictions on disclosure" are immaterial to GEO's discovery obligations. *See Resolution Tr. Corp.*, 145 F.R.D. at 110. Further, throughout this litigation Plaintiffs have acted in good faith to accommodate ICE's demands with regard to the production of class member information. Plaintiffs agreed to add the government's requested Privacy Act language to the protective order and even engaged in a meet and confer with government counsel. Turner Decl. ¶ 16. Despite

Plaintiffs' accommodations, GEO continues to adhere, unlawfully, to ICE's "unilaterally imposed restrictions on disclosure." *See Resolution Tr. Corp.*, 145 F.R.D. at 110.

## III.  Plaintiffs Should Be Reimbursed for Attorneys' Fees and Costs.

As noted above, the Court has already issued an order rejecting many of the purported bases for GEO's withholding of discovery.  Despite acknowledging that this order applies, GEO has indicated that it will disregard judicial process to allow the pace and substance of discovery to be dictated by an executive agency.  Accordingly, Plaintiffs request that the Court provide Plaintiffs with reimbursement for their fees and costs associated with bringing this Motion to Compel.  Fed. R. Civ. P. 37(b)(2)(C) (the court "*must* order the disobedient party, the attorney assisting that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" to obey a court order).  Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763-64 (1980) (quoting *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643 (1976)); *see also Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 682-83 (10th Cir. 2012).  Such sanctions are appropriate here.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court (1) compel GEO to produce any documents or discovery responses it is withholding pending ICE review, including the remainder of the class list, within 15 days of the Court's order on this Motion; (2) deem all pending requests for admission admitted, in accordance with the Prior *Touhy* Order; and (3) order GEO to pay the Class's costs and fees associated with bringing this motion.

Dated this 18th day of March, 2019.


Respectfully submitted,

OUTTEN & GOLDEN LLP


By:  *s/ Juno Turner*
Juno Turner
Ossai Miazad
Elizabeth Stork
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
jturner@outtengolden.com
om@outtengolden.com
estork@outtengolden.com

David Lopez
**OUTTEN & GOLDEN LLP**
601 Massachusetts Avenue NW
Second Floor West Suite
Washington, DC 20001
Telephone: (202) 847-4400
pdl@outtengolden.com

Rachel Dempsey
Adam Koshkin
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: rdempsey@outtengolden.com
E-Mail: akoshkin@outtengolden.com

Alexander Hood
David Seligman
Andrew Schmidt
**TOWARDS JUSTICE**
1410 High St., Suite 300
Denver, CO 80218
Telephone: (720) 441-2236
alex@towardsjustice.org
david@towardsjustice.org

14

andy@towardsjustice.org

R. Andrew Free
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
andrew@ImmigrantCivilRights.com

Brandt Milstein
**MILSTEIN LAW OFFICE**
1123 Spruce Street
Boulder, CO 80302
Telephone: (303) 440-8780
brandt@milsteinlawoffice.com

Andrew Turner
**THE KELMAN BUESCHER FIRM**
600 Grant St., Suite 450
Denver, CO 80203
Telephone: (303) 333-7751
aturner@laborlawdenver.com

Hans Meyer
**MEYER LAW OFFICE, P.C.**
P.O. Box 40394
Denver, CO 80204
Telephone: (303) 831-0817
hans@themeyerlawoffice.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March, 2019, a true and correct copy of the foregoing **MOTION TO COMPEL** was electronically filed with the Clerk of the Court using the CM/ECF electronic filing system, which will send notification to all counsel of record.

*s/ Juno Turner*
Juno Turner

**<u>Certification of Counsel</u>**

Pursuant to Fed. R. Civ. P. 37(a)(1), D. Colo. Civ. L.R. 7.1.A, and this Court's

Admonition, I hereby certify on behalf of Class Counsel that counsel have in good faith

conferred with counsel for GEO in an effort to obtain the requested disclosures and discovery

without court intervention. Class Counsel exchanged several emails, exchanged letters on

December 14, 2018, January 31, 2019, February 15, 2019, and March 4, 2019 and conducted a

substantive telephone conferral on or about January 15, 2019 in an effort to resolve the parties'

dispute, but to no avail. Class Counsel previously engaged in extensive negotiations with GEO's

prior local counsel on the *Touhy* issue in both 2016 and 2017.

**/s/ Juno Turner**

17