# Exhibit O



February 15, 2019

**By E-mail**

Naomi Beer
David G. Palmer
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, CO  80202
Telephone: (303) 572-6500
beern@gtlaw.com
palmerd@gtlaw.com

Scott Allyn Schipma
Greenberg Traurig, LLP
2101 L Street, N.W., Suite 1000
Washington, DC  20037
Telephone: (202) 331-3141
schipmas@gtlaw.com

   Re: *Menocal, et al. v. The GEO Group, Inc.*, No. 14-cv-02887 (JLK)

Dear Counsel:

  We write in response to your letter of January 28, 2019, our meet and confer telephone call of January 15, 2019, and our related correspondence.

  As an initial matter, although we appreciate that the government shutdown impacted GEO's ability to correspond with ICE, we would like to meet and confer with respect to the legal basis for GEO's belief that it cannot produce certain documents without ICE's review and/or approval, and the specific documents that GEO has withheld as a result of that belief.  As you know, we negotiated extensively over a revised protective order, including several discussions with and edits by counsel for the government, with the understanding that this would alleviate GEO's concerns that ICE would seek to review all discovery before it is produced to Plaintiffs.  That protective order was entered by the Court on November 26, 2018 and is currently in effect.  ECF No. 157.

  GEO fails to provide any basis for withholding these documents until ICE has reviewed them and approved their disclosure.  The documents that you identify in your letter as being subject to ICE review appear to be in GEO's possession, custody, or control.  *See* Fed. R. Civ. P. 34(a)(1).  For example, the VWP reimbursement records were created by a private company and

New York  685 Third Avenue  25th Floor  New York, NY 10017  Tel (212) 245-1000  Fax (646) 509-2060
Chicago  161 N Clark Street  Suite 1600  Chicago, IL 60601  Tel (312) 809-7010 Fax (312) 809-7011
San Francisco  One Embarcadero Street  38th Floor  San Francisco, CA 94111  Tel (415) 638-8800 Fax (415) 638-8810

www.outtengolden.com

February 15, 2019
Page 2 of 5

GEO has not suggested that they are outside of GEO's possession. If there are specific documents that you believe require ICE review, we request that you identify those documents, the reason why ICE seeks to review or approve their production, and the basis for GEO's failure to produce responsive documents pursuant to Fed. R. Civ. P. 34 no later than March 1, 2019. Absent a satisfactory response, we will seek court intervention.

All other documents should be produced as soon as possible. We know that GEO had a recent change in counsel and have been patient with the slow pace of discovery, but the document requests and interrogatories at issue were served on September 23, 2015 and September 29, 2017—between a year and a half and three and a half years ago. Further, we note that although we have to date accommodated GEO's desire to secure ICE's approval for the release of sensitive documents, Judge Kane has already ruled that "allowing government agency to determine what evidence is discoverable could create a significant separation of powers problem" and that "'[n]o executive official or agency can be given absolute authority to determine what documents in his possession' should be considered by the court." ECF No. 84 at 8 (quoting *Comm. for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 794 (D.C. Cir. 1971)). In this vein, courts in the District of Colorado hold that a party cannot decline to produce discovery simply because the discovery sought is subject to restrictions from a government agency that "has attempted to mandate a different procedure." *Resolution Tr. Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 111 (D. Colo. 1992) (compelling production of documents despite a regulation preventing the disclosure of such documents without agency approval). GEO's ability to produce documents responsive to Plaintiffs' requests "is not affected by [ICE's] retention of ownership or its unilaterally imposed restrictions on disclosure." *Id.* at 110.

With respect to the remaining issues, it appears that we are making progress on filling in the gaps in the production that we identified in our December 14, 2018 deficiency letter. Our responses to the outstanding issues are below:

### **Plaintiffs' First and Second Set of Requests for Production of Documents**

Request Nos. 1–3

As indicated above, we do not understand why GEO believes additional VWP reimbursement documents from Keefe Commissary Network require ICE approval before they can be produced. If those documents are within GEO's custody or control, they are subject to normal discovery procedures and GEO should produce them immediately.

We appreciate the clarification about GEO_MEN_00054503 and GEO_MEN_00042018. Please update us as to whether GEO tracks the hours worked by Class Members.

Request Nos. 5–7 (and related Interrogatory Nos. 5 and 6)

Plaintiffs first requested all documents summarizing, constituting, recording, or referencing any disciplinary or corrective action concerning the VWP and Sanitation Policy in the set of discovery requests issued on September 23, 2015. In her 30(b)(6) deposition, Dawn Ceja testified that she, along with the warden and the chief of security, often received e-mails when a disciplinary charge was logged against a detainee. Ceja 30(b)(6) Tr., 62:11–20, 68:25–69:4. Ms. Ceja also testified that GEO is required to report to the Contracting Officer's

February 15, 2019
Page 3 of 5

Technical Representative at ICE whenever someone is placed in administrative segregation, which is usually done via e-mail. *Id.* at 111:7–17.

If these representations are accurate, many but not all records of corrective action should be available via a search of GEO's ESI. To the extent that there are additional records that are located only in detainee files, Plaintiffs would like to continue to meet and confer as to how GEO plans to produce such responsive information.

### Request No. 8

You represented on Monday, December 10, 2018 that you are making an effort to determine how to compile a class list for the part of the class period before the GEO Track system was implemented. To date, we have not received any substantive update on that process. Please let us know how you plan to identify the remainder of the class members as well as a firm date by which you will do so on or before March 1, 2019. If we have not received a response by this date, we will move to compel the production of a complete class list.

### Request No. 12

Plaintiffs agree to limit this request as follows:

Please provide any and all documents summarizing, constituting, or reflecting any contract and/or agreement you executed to purchase labor for services for which GEO either used or considered using detainee labor, including but not limited to cleaning, housekeeping, laundry, landscaping, kitchen and snow removal services at the Aurora Facility between October 22, 2004 and the present.

### Request Nos. 17–21

Your suggestion that Plaintiffs' requests do not encompass video footage is baseless. Plaintiffs' first set of requests for production incorporates the definitions of documents and ESI set forth in Fed. R. Civ. P. 34(a)(1)(A). *See* Plaintiffs' First Set of Discovery Requests to Defendant at 4. Those definitions encompass "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." Fed. R. Civ. P. 34(a)(1)(A). Plaintiffs' second set of requests for production incorporates an even clearer definition of electronically-stored information that includes, among other things, "floppy disks, diskettes, CDs, zip discs, jazz discs, zip drive, flash memory, DVDs, videotapes, audiotapes, Personal Digital Assistant ("PDA"), [and] memory cards." *See* Plaintiffs' Second Set of Requests for Production of Documents at 2. These definitions, and the plain terms of Fed. R. Civ. P. 34(a)(1)(A), clearly include video footage.

No later than March 1, 2019, please confirm whether responsive video footage of the GEO facility existed and, if yes, whether it was preserved. If GEO destroyed any video footage that is relevant to class members' claims after the filing of the complaint in this action, please provide further detail about when that destruction took place and what efforts, if any, GEO took to comply with its document preservation obligations under the Federal Rules. *See Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621 (D. Colo. 2007) (duty to preserve

February 15, 2019
Page 4 of 5

evidence is triggered by the filing of the complaint, and under certain circumstances may arise earlier).

### Request Nos. 32 & 33

Plaintiffs have previously explained why documents reflecting compensation and other benefits provided to GEO employees are relevant to our calculation of damages and restitution. The wages required under the Service Contract Act are an incomplete response to this request. Plaintiffs are willing to meet and confer to attempt to narrow the scope of the documents requested.

## Plaintiffs' First and Second Set of Interrogatories

### Interrogatory Nos. 3 & 4

Please clarify whether the employee roster at GEO_MEN_00020548 (1) reflects everyone who supervised class members working in the VWP and pursuant to the Housing Unit Sanitation Policy throughout the class period, and (2) includes only employees who supervised class members working in the VWP and pursuant to the Housing Unit Sanitation Policy. If the roster does not reflect all employees or identify those employees who supervised class members working in the VWP and pursuant to the Housing Unit Sanitation Policy throughout the class period, it is not a complete response to Interrogatory Nos. 3 & 4. Plaintiffs repeat their request that GEO respond to this interrogatory and our offer to meet and confer to further understand the burden associated with providing this information.

### Interrogatory No. 8

Interrogatory No. 7 requests every GEO policy that resulted in disciplinary or corrective action taken against a detainee for refusing to work pursuant to the Housing Unit Sanitation Policy. As you note, this Interrogatory is limited to the Aurora Facility. Interrogatory No. 8 expands upon the request in Interrogatory No. 7 to request information about the other GEO facilities that implement the same policies identified in Interrogatory No. 7. As Plaintiffs stated in our prior letter, this information is relevant to whether GEO's conduct at the Aurora facility was purportedly authorized or required by ICE, and to whether GEO's conduct at the Aurora facility was unjust. Please amend your response accordingly.

### Interrogatory No. 16

Plaintiffs reiterate that calculating the fair-market value of Class Members' work requires consideration of the cost to GEO of employee leave, fringe benefits, and other costs attendant to recruiting, screening, hiring, and retention of workers. We would like to continue to meet and confer on a way to provide this information while limiting the need for speculation.

Please let us know when you are available for a meet and confer conference on the outstanding issues discussed in this letter. In addition to the issues discussed in this letter, we have received your responses and objections to Plaintiffs' Third Set of Requests for Discovery, Third Set of Interrogatories, and Second Set of Requests for Admissions, and anticipate providing a written reply in the coming days.

February 15, 2019
Page 5 of 5

          Sincerely,

          Juno Turner

cc:    Class counsel (by email)