# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-02887-JLK

_____

RULE 30(b)(6) DEPOSITION OF:
MELODY JEAN FURST - Volume I
March 29, 2016
The GEO Group, Inc.

_____

ALEJANDRO MENOCAL, et al.,

Plaintiffs,

v.

THE GEO GROUP, INC.,

Defendant.

_____

        PURSUANT TO NOTICE, the Rule 30(b)(6)
deposition of MELODY JEAN FURST, THE GEO GROUP, INC.,
was taken on behalf of the Plaintiffs at 600 Grant
Street, Suite 450, Denver, Colorado 80203, on
March 29, 2016, at 3:08 p.m., before Darcy Curtis,
Registered Professional Reporter and Notary Public
within Colorado.

                        A P P E A R A N C E S

      For the Plaintiffs:

                  ANDREW FREE, ESQ.
                  Law Office of R. Andrew Free
                  1212 7th Avenue North
                  Nashville, Tennessee 37208

                  ALEXANDER HOOD, ESQ.
                  Towards Justice
                  1535 High Street
                  Suite 300
                  Denver, Colorado 80218

                  ANDREW H. TURNER, ESQ.
                  Buescher, Kelman, Perera & Turner, P.C.
                  600 Grant Street
                  Suite 450
                  Denver, Colorado 80203


      For the Defendant:

                  SHELBY A. FELTON, ESQ.
                  Vaughan & DeMuro
                  720 South Colorado Boulevard
                  Penthouse, North Tower
                  Denver, Colorado 80246

Menocal  v. The Geo Group, Inc.        MELODY JEAN FURST                        3/29/2016

                              I N D E X

EXAMINATION OF MELODY JEAN FURST:                      PAGE
March 29, 2016 - Volume I

By Mr. Free                                              4

                                                    INITIAL
DEPOSITION EXHIBITS:                               REFERENCE

Exhibit 10   The GEO Group, Inc., Batch                25
             Summary, 5/14/14

Exhibit 11   E-mail to Hood from Felton,               25
             3/9/16, Subject:  Menocal -
             30(b)(6), with various e-mails
             attached

Exhibit 12   E-mail to Gentlemen from                  28
             Felton, 1/12/16, with e-mail
             attached

Exhibit 13   Detainee Grievance Form,                  39
             Case No. 14-163, with attachment

Exhibit 14   Detainee Grievance Form,                  40
             Case No. 14-189, with attachment


DEPOSITION EXHIBITS:   (Previously Marked)

Exhibit 1    Amended Notice of FRCP 30(b)(6)           10
             Deposition of Defendant The GEO
             Group, Inc.

Exhibit 2    Defendant's Initial 26(a)(1)              34
             Disclosures, with attachments

Exhibit 9    (CONFIDENTIAL) Letter to Sanchez          40
             from Choate, 12/10/12, with
             attachments

```
 1                WHEREUPON, the following proceedings
 2    were taken pursuant to the Federal Rules of Civil
 3    Procedure.
 4                *    *    *    *    *
 5                MELODY JEAN FURST,
 6    having been first duly sworn to state the whole truth,
 7    testified as follows:
 8                (At this time Mr. Hood was not present.)
 9                THE COURT REPORTER:  This is Darcy
10    Curtis, the court reporter.  It is March 29, 2016, at
11    3:07 p.m.  We are on the record.  I am with Hunter +
12    Geist, 1900 Grant Street, Suite 1025, Denver, Colorado
13    80203.  Present in the room are counsel and the
14    deponent.  Parties, please, state your appearances.
15                MR. FREE:  Andrew Free for the
16    plaintiffs.
17                MR. TURNER:  Andrew Turner for the
18    plaintiffs.
19                MS. FELTON:  Shelby Felton for the
20    defendant.
21                        EXAMINATION
22    BY MR. FREE:
23        Q.    Good afternoon, Ms. Furst.
24        A.    Hi.
25        Q.    Can you state your full name for the
```

1    record, please.

2          A.    Melody Jean Furst.

3          Q.    What is your occupation?

4          A.    I am assistant business manager for The

5    GEO Group.

6          Q.    Do you understand that you are here today

7    to testify on behalf of The GEO Group about certain

8    subjects?

9          A.    Yes.

10         Q.    Are you prepared to do so?

11         A.    Yes.

12               (At this time Mr. Hood entered the room.)

13         Q.    If you would please open your binder to

14   Tab 1.  We're going to go to page 3.  It's my

15   understanding that you have been designated by The GEO

16   Group to provide testimony today regarding 3 b, the

17   number of participants in the voluntary work program

18   and documents pertaining to that number.  Is that your

19   understanding?

20         A.    Correct.  Yes.

21         Q.    Are you prepared to testify on that

22   subject today?

23         A.    Yes.

24         Q.    It's also my understanding that you are

25   prepared to provide testimony on 3 c?

 1           A.   Yes.

 2           Q.   **And 3 d?**

 3           A.   Yes.

 4           Q.   **3 e?**

 5                MS. FELTON:  With the exception of other

 6      GEO facilities.

 7                MR. FREE:  Noted.

 8           Q.   **(BY MR. FREE)  But with that exception,**

 9      **which has been lodged through an objection by counsel,**

10      **you are prepared to provide testimony on topic 3 e**

11      **today?**

12           A.   Yes.

13           Q.   **And 3 f?**

14           A.   Yes.

15           Q.   **3 g?**

16           A.   Yes.

17           Q.   **Anything else that you understand you're**

18      **going to be testifying about today?**

19           A.   This is -- I mean, this is what I've been

20      brought in for.

21           Q.   **That's what I thought.  Have you ever**

22      **given a deposition before?**

23           A.   Years and years and years and years ago.

24           Q.   **Well, since it's been a while, I'm going**

25      **to take a second and just walk you through the rules**

 1    of the road here and what we need to do in order to be

 2    efficient and effective with our time and also to make

 3    sure that your testimony is clear going forward.

 4    Okay.

 5              So as I said, I represent the plaintiffs

 6    in this case.  I'm going to be asking you some

 7    questions.  You are here to testify on behalf of GEO.

 8    You're going to be providing some responses.  It's not

 9    an endurance contest.  I know it's late in the

10    afternoon.  If you get tired or you need a restroom

11    break or you need something to drink, please feel free

12    to just tell me.  Okay.  With one exception, if there

13    is a pending question that has not yet been answered,

14    I would appreciate it if you could provide an answer

15    before we take a break.

16         A.    Okay.

17         Q.    During those breaks, I would ask that you

18    not consult with your counsel about anything other

19    than whether you're going to assert a privilege not to

20    provide a response.  Okay.  But anything about your

21    testimony we would ask that you not discuss with your

22    counsel, because you're under oath and it's just like

23    testifying in open court.  Okay?

24         A.    Okay.

25         Q.    If you don't understand a question that I

Menocal  v. The Geo Group, Inc.          MELODY JEAN FURST                          3/29/2016

 1    ask, which happens from time to time, I'm going to

 2    trust that you will let me know before answering.  Is

 3    that fair?

 4         A.   Yes.

 5         Q.   Okay.  If you need me to rephrase a

 6    question or if anything is unclear to you, feel free

 7    to speak up.  I am happy to take another go at it.

 8    Fair?

 9         A.   Fair.

10         Q.   Otherwise, if you do answer the question,

11    I'm going to assume and future readers of your

12    deposition are going to assume that you understood the

13    question that I was asking.  Do you understand that?

14         A.   Yes.

15         Q.   Similarly, if you are confused in any way

16    about terminology or any other part of a document that

17    we're looking at, take all of the time you need to

18    review that document and just let me know when you're

19    ready.  I will try to guide you toward what we're

20    going to talk about so that you don't spend your time

21    reading a bunch of paper that is not going to be

22    relevant for my question.  Okay?

23         A.   Okay.

24         Q.   But I do want you to feel free to ask for

25    time to look at what we're going to look at.  If you

1    get confused, if you get tired, let me know.  If you

2    don't understand a question, let me know.  And then

3    finally, let's make sure that we don't talk over each

4    other.  It's very important that I finish my question

5    and I allow you to finish your answer so that we have

6    a clear understanding of what was said here today.

7    Does that make sense?

8           A.    Yes.

9           Q.    And to that end, if you're going to

10   provide an answer, please provide an answer out loud

11   and try and use yes or no as opposed to uh-huh or

12   huh-uh, because it looks about the same when you type

13   it.  Fair?

14          A.    Fair.

15          Q.    Do you have any question about any of

16   those instructions?

17          A.    No.

18          Q.    Great.  So you testified long ago.  Were

19   you testifying as a GEO employee?

20          A.    No.

21          Q.    Without telling me anything that you

22   discussed with your attorney, what, if anything, did

23   you do to prepare for today's deposition?

24          A.    I just read over the questions or the

25   statements here in the paperwork.

1          Q.    You're pointing there to the documents in

2    front of you --

3          A.    Page 3 and 4.

4          Q.    That was a good example, a good teaching

5    moment.  You're pointing there to the documents in

6    front of you which has been previously marked in

7    Ms. Ceja's deposition as Exhibit 1.

8                MR. FREE:  We're just going to keep that

9    numbering going --

10                MS. FELTON:  Yes, we are.

11                MR. FREE:  -- using a common exhibit.

12                MS. FELTON:  Yes.

13          Q.    (BY MR. FREE)  So you're pointing to

14    pages 3 and 4 of Exhibit 1.  Okay.  So aside from

15    reading over that, did you look at any other

16    documents?

17          A.    No.

18          Q.    Okay.  How long have you been the

19    assistant business manager at the Aurora facility?

20          A.    Since May of 2003.

21          Q.    Okay.  A long time?

22          A.    Correct.

23          Q.    Who is the business manager?

24          A.    Barbara Krumpelmann.

25          Q.    Do you want to spell that?

 1          A.   K-r-u-m-p-e-l-m-a-n-n.

 2          Q.   Is that who you report to?

 3          A.   Yes.

 4          Q.   And where in the chain of command do you

 5     two fall?  Who does Barbara report to?

 6          A.   To the warden.

 7          Q.   What do your duties entail?

 8          A.   Accounts payable, detainee accounts, I

 9     oversee the detainee account clerk, billing, contracts

10     as far as implementing the contract that we have.

11          Q.   Anything else?

12          A.   No.

13          Q.   What is your background professionally?

14          A.   I have a construction background.  I've

15     done accounting for over 30 years and so that's pretty

16     much everything that I've ever done, has been

17     accounting.

18          Q.   Do you have any certifications?

19          A.   No, sir.

20          Q.   Are you a CPA?

21          A.   No, sir.

22          Q.   Do you have any specialized training in

23     accounting?

24          A.   No, sir.

25          Q.   Do you have any degree in accounting?

Case 1:14-cv-02887-JLK-MEH   Document 181-7   Filed 05/30/19   USDC Colorado   Page 13 of
62
Menocal  v. The Geo Group, Inc.          MELODY JEAN FURST                    3/29/2016

Page 12

     1              A.   No, sir.

     2              Q.   What is your educational background?

     3              A.   High school, some college, and work

     4     experience.

     5              Q.   Okay.  How many detainees work in the

     6     voluntary work program per year?

     7              A.   I can't respond to per year.  It's 80 --

     8     we can have up to 80 per day.

     9              Q.   Why can't you respond to per year?

    10              A.   Because the turnover is rapid.

    11              Q.   Is GEO aware of every person who

    12     participates in the voluntary work program?

    13              A.   Yes.

    14              Q.   Does GEO have the name of each person?

    15              A.   Yes.

    16              Q.   Is that in a computer system?

    17              A.   Yes.

    18              Q.   Why are you unable to look in that

    19     computer system and tell me how many names there are?

    20              A.   Because it varies.

    21              Q.   What about for the period of three years

    22     prior to the filing of this litigation and now?  Do

    23     you have any estimate of how many detainees have

    24     worked in the voluntary work program?

    25              A.   No, I don't.

Case 1:14-cv-02887-JLK-MEH   Document 181-7   Filed 05/30/19   USDC Colorado   Page 14 of
62
Menocal  v. The Geo Group, Inc.          MELODY JEAN FURST                    3/29/2016

Page 13

 1          Q.    You said it's up to 80 people per day?

 2          A.    Correct.

 3          Q.    And because of turnover, you're not able

 4     to determine the number in total; is that your

 5     testimony?

 6          A.    Yes.

 7          Q.    Would you say in the three years prior to

 8     the filing of this litigation, which happened almost

 9     two years ago now, up until now, it's at least several

10     hundred people who have participated in the voluntary

11     work program?

12          A.    I would say yes.

13          Q.    Would you say that that number exceeds

14     1,000, more or less?

15          A.    No.

16          Q.    Okay.  So you think it's somewhere

17     between several hundred people and 1,000 who have

18     participated in the voluntary work program between

19     three years before the plaintiffs filed their

20     complaint and the present; is that right?

21          A.    I would say yes.

22          Q.    Okay.  That number is knowable, though,

23     correct?

24          A.    I can probably pull it up via our

25     software program.

1          Q.    What software program is that?

2          A.    We have -- it's Keefe Commissary, which

3     is our banking software.

4          Q.    And, for instance, could you search for

5     the names of people who participated in the program

6     within a certain period?

7          A.    Yes.

8          Q.    And then you could maybe put those names

9     in a spreadsheet?

10         A.    Yes.

11         Q.    And then you could look at the rows on

12    the spreadsheet and figure out how many names there

13    are?

14         A.    Correct.

15         Q.    But despite being asked to testify today

16    about the number of participants in the voluntary work

17    program, you haven't done that?

18              MS. FELTON:  Object to form.  I'm the one

19    that designated her.  We don't have to create any

20    documents.  We don't have to take documents from a

21    software program, put them into a spreadsheet, and

22    count them.  There is no document that we can hand to

23    you that has the name of every participant.  We gave

24    you the documents that do exist, but you have not

25    included in your deposition notebook, that lists all

 1   of the names of all of the people that have

 2   participated in the voluntary work program.  I think I

 3   designated that back to October of 2012.

 4                  MR. FREE:  What is your objection?

 5                  MS. FELTON:  You're telling her that she

 6   did not come prepared for the deposition and she did

 7   come prepared for the deposition.

 8                  MR. FREE:  I'm just asking her.  So what

 9   is the legal objection?

10                  MS. FELTON:  Form.

11                  MR. FREE:  I would appreciate it,

12   Counsel, if you not engage in further speaking

13   objections.

14           Q.   (BY MR. FREE)  Were you asked to

15   investigate the number of people who had participated

16   in the voluntary work program in preparing for this

17   deposition?

18           A.   No.

19           Q.   That's not information that you had in

20   your personal knowledge, correct?

21           A.   Correct.

22           Q.   Okay.  How much has GEO paid, dating back

23   to October of 2012, to detainees participating in the

24   voluntary work program?

25           A.   I would have no idea off the top of my

```
 1   head.

 2            Q.    Well, this shouldn't be coming off the

 3   top of your head, because you've been designated to

 4   testify, again, at Exhibit 1 about the total

 5   compensation paid to voluntary work program

 6   participants at the Aurora Detention Facility.  I

 7   understand your counsel has objected to amounts paid

 8   to other facilities.  You came here and you told me

 9   you were prepared to testify about that and you just

10   told me you have no idea off the top of your head.

11   What steps did you take to become knowledgeable on

12   behalf of The GEO Group about the total compensation

13   paid to voluntary work program participants?

14            MS. FELTON:  I'm going to object, because

15   I specifically designated her in my e-mail to you that

16   she would need to testify based on the reimbursement

17   documents provided to you on February 26 regarding the

18   pay that was paid to them.

19            MR. FREE:  Does she have those documents?

20            MS. FELTON:  I gave them to you on

21   February 26.  It was not designated as a subpoena

22   duces tecum.

23            MR. FREE:  But she's not here with those

24   documents.

25            MS. FELTON:  She doesn't have to be.
```

1    There was no designation or request for a production

2    of documents in the 30(b)(6) notice.

3                    MR. FREE:  What's your legal objection?

4                    MS. FELTON:  You're stating improperly

5    what she was designated to testify for.

6                    MR. FREE:  Was she designated to testify

7    under 3 e, total compensation paid to VWP participants

8    at the Aurora Detention Facility?

9                    MS. FELTON:  Yes.  And I told you in

10   order to do that, she would need the voluntary work

11   program reimbursement documents that I gave to you.

12                   MR. FREE:  Why doesn't she have them?

13                   MS. FELTON:  Because it's not a

14   production request in the 30(b)(6), and I've already

15   given you the documents.  You already have them, and

16   they're already Bates labeled.

17                   MR. FREE:  That's fine.  Why has she

18   never seen them before?

19                   MS. FELTON:  She has seen them before.

20   She's the one that gave them to me.

21                   MR. FREE:  You're now testifying for her.

22   That's fine.

23                   MS. FELTON:  You're talking to me.

24                   MR. FREE:  That's because you're engaging

25   in another speaking objection.  I asked you not to do

 1   that.  I'm asking you -- she told me she has no

 2   idea -- off the top of her head she has no idea how

 3   much the compensation was paid.  Okay.  We came here

 4   without a subpoena duces tecum expecting oral

 5   testimony on the total compensation paid from GEO.

 6              Now, if it is your position as the

 7   company that we are able to glean that from the

 8   documents you provided, fine.  But if it is your

 9   position she needs to rely upon those documents, then

10   it's your position to make sure she has those

11   documents ready to go.  It's your duty to make sure

12   those documents are ready to go.

13              MS. FELTON:  I did.  I gave them to you

14   on February 26 and I told you that in my e-mail to

15   you.  So you could have responded to my e-mail and

16   said bring the documents with you.  I told you in my

17   e-mail she would need the documents.

18              MR. FREE:  So you knew she would need the

19   documents.

20              MS. FELTON:  And I told you that, so you

21   could have responded and told me to bring them with

22   me.

23              MR. FREE:  Okay.  So what's going to

24   happen if we print the documents?  She's going to go

25   through and do the math herself; is that what's going

1    to happen?

2                    MS. FELTON:  Yes.

3                    MR. FREE:  Right here, we're going to do

4    that during the deposition.  Does she need a

5    calculator?

6                    MS. FELTON:  Sure.

7                    MR. FREE:  So that I understand, your

8    February 26 e-mail has informed the plaintiffs that

9    from the documents you provided we will be able to

10   glean the total amount paid?

11                   MS. FELTON:  Both to the participants

12   themselves and reimbursements received from ICE.

13                   MR. FREE:  Okay.  And do you think we

14   would be able to stipulate about that amount just by

15   going through and adding up the math?

16                   MS. FELTON:  Yes.

17                   MR. FREE:  All right.

18                   MS. FELTON:  Which is also what I said in

19   my supplemental discovery responses.  If you would

20   like to go through an example with her, you have it in

21   Tab 11.

22                   MR. FREE:  I don't know why, in the three

23   months since we've started the process of noticing up

24   these depositions, The GEO Group has not been able to

25   just come up with a number, notwithstanding the fact

MELODY JEAN FURST

1   there are documents and that's my concern.  I would

2   like to avoid a situation which we look at the same

3   documents and you say it's one number and I say it's

4   another number.  I think we can get that resolved, I

5   really do, if you do.  But I was hoping what we could

6   do is have a person who is knowledgeable on behalf of

7   the company to come here and say the number.  It's

8   okay.  We can work through it.

9              So the plaintiffs are going to object to

10   the record based on the failure of GEO to provide a

11   person who is knowledgeable on the noticed topic of

12   the total compensation to be paid.  We understand your

13   position, that you wanted us to bring the records you

14   supplied to us so that your witness could look at

15   those records and come up with the number during the

16   deposition.  Do you feel like that's a fair

17   representation of where we just got?

18              MS. FELTON:  Yes.  That if you had --

19   that she could take what is in Tab 11 -- and I've

20   given you every month -- that she could take from

21   every month and verify that she created all of those

22   documents and that each one of those packets tells you

23   the number of people paid and how much they were paid.

24              MR. FREE:  Great.  Let's go off the

25   record for just a moment, please, so I can confer with

1    cocounsel.

2                    (Recess taken, 3:29 p.m. to 3:40 p.m.)

3            Q.    (BY MR. FREE)   Ms. Furst, at the

4    suggestion of your counsel, what we're going to do is

5    mark as an electronic exhibit the documents that your

6    counsel has provided to the plaintiffs beginning with

7    GEO_MEN 00001514 and continuing to GEO_MEN 00004559.

8    What we're going to ask you to do, so we can identify

9    the number of participants in the voluntary work

10   program at the Aurora facility pursuant to your

11   counsel's instruction and Section 3 b of the 30(b)(6)

12   deposition notice previously marked as Exhibit 1, is

13   we're going to ask you to start at page 1514 that's

14   going to be projected up here on the screen and tell

15   us what this document is, who created it, what its

16   purpose is, and then I'll ask you some questions.

17   Okay.  So let's begin.  What is this document?  And

18   can you see?

19           A.    Yes.

20           Q.    Okay.  Does it help if I turn the light

21   off?

22           A.    No.  It's fine.

23           Q.    All right.

24           A.    That is a batch for detainee pay for --

25   what is it -- 1/13 of '14.

1          Q.    For when now?

2          A.    Those are the people that worked on,

3     whatever date that is, 1/13 -- or 5/13.

4               MR. FREE:  Can we project this a little

5     closer to the witness, please, so she can see.  I'm

6     going to move out of the way so she can see, and I'll

7     speak up for the court reporter.

8          Q.    (BY MR. FREE)  So right now we are

9     looking at Bates No. 1514.  Look at the bottom

10    right-hand side of the screen.  If you look on the

11    second page, 1515, it reflects 70 people --

12              MR. FREE:  Can you go back to it again?

13    Thanks.

14         Q.    (BY MR. FREE)  All right.  So beginning

15    at 1514 -- are you able to see that projected on the

16    wall, Ms. Furst?

17         A.    Yes.

18         Q.    -- going down to 1515, can you see the

19    number of people who received deposits on May 14,

20    2014?

21         A.    It looks like 70.

22         Q.    Okay.  Does that indicate to you that 70

23    unique individuals received deposits for the voluntary

24    work program on that day?

25         A.    It would.  There's a possibility that

Menocal  v. The Geo Group, Inc.                    MELODY JEAN FURST                                  3/29/2016

```
 1   there may be somebody from the day before that payroll

 2   may not have been turned in in a timely manner.

 3          Q.   But based on this, there were 70 people

 4   in the voluntary work program on that day?

 5          A.   Yes.

 6          Q.   Now, looking at Bates No. 1516, we

 7   have -- and 1517 --

 8               MR. FREE:  Scroll down, please.

 9          Q.   (BY MR. FREE)  -- it reflects 56 people

10   received deposits on May 14, 2014, in this batch; is

11   that right?

12          A.   Correct.

13          Q.   So these batches were run at the same

14   time, or were they run at different times?

15          A.   They're run daily.

16          Q.   So 1514 to 1515 says May 14, 2014, at

17   10:28.  And then 1515 to 15 -- excuse me.  1516 to

18   1517 says May 15 of 2014 at 11:51.  Do you see that?

19   You can follow along on your counsel's computer.

20          A.   They're run daily.

21          Q.   Okay.  So compare these two lists and see

22   if there is anyone on the previous list who is not on

23   the -- anyone on Wednesday's list who is not on

24   Thursday's list.  We're going to note for the record

25   that you're going to look off of your counsel's
```

1    **computer so that she can scroll up and down for you.**

2                MS. FELTON:  Well, yes, and we can't see.

3    We can't see it.

4                MR. FREE:  Ms. Furst, what we're going to

5    do is we're going to take that question off the table.

6    We're going to ask that you take a moment and review

7    1517 through 4559 and count the number of people who

8    participated in the voluntary work program according

9    to this document, please.  We'll go off the record

10   while she's doing that.  At what time?

11               THE COURT REPORTER:  3:49.

12               (Recess taken, 3:49 p.m. to 4:10 p.m.)

13               MS. FELTON:  We will stipulate that the

14   documents speak for themselves and state how many

15   participants there were in the voluntary work program.

16   We will not stipulate to a number just because

17   there's -- we can't even estimate.  We don't know if

18   200 is a good number.  We don't know if a hundred,

19   300, a thousand, and I'm just not comfortable

20   stipulating to any specific number.  And we think that

21   we've given -- we think we've met our 30(b)(6)

22   obligation, because we've provided the documents in

23   our supplemental discovery responses, and so you have

24   the same information that we have.  And the manner in

25   which to come to that answer is as equally in your

 1    hands as it is in mine, and I don't think we have the

 2    obligation to do the calculation for you.  So we can

 3    agree to disagree and just take it up with the court

 4    on a motion to compel.  But we're not going to -- you

 5    asked us to count for each day for the last three

 6    years how many participants there were, and we don't

 7    think that that's a proper 30(b)(6) question.  But,

 8    again, we can agree to disagree and bring it up on a

 9    motion to compel.

10              MR. FREE:  Okay.  Thank you, Counsel.

11    We're going to enter as Exhibit 10 -- excuse me --

12    Exhibit 11, because 10 was the electronic exhibit.  Go

13    print that out.  We'll do just the first page.

14              (Deposition Exhibit 11 was marked.)

15              MS. FELTON:  So 10, we're going to just

16    put the --

17              MR. FREE:  The first page.

18              MS. FELTON:  That will be 10 and this

19    will be 11.  Now, the tabs --

20              MR. FREE:  They're not going to be

21    sequential.

22              MS. FELTON:  I didn't know if the tabs

23    had some meaning.

24              MR. FREE:  No, they don't.  They're just

25    separators.

     1                    MS. FELTON:  Because when you're telling

     2     me to put this in a tab, I didn't know if --

     3                    MR. FREE:  No, they're just separators.

     4     We'll go by the exhibits.

     5                    MS. FELTON:  All right.

     6                    MR. FREE:  The plaintiffs are going to

     7     enter as Exhibit 11 the March 9, 2016, e-mail from

     8     counsel for GEO which says, "Ms. Furst" -- this is on

     9     page 2.  "Ms. Furst is designated to testify, based on

    10     the reimbursement documents provided on February 26,

    11     2014, regarding:  The pay and number of participants

    12     in the voluntary work program, VWP; the existence and

    13     location of any documents containing this information

    14     or containing information relevant to determining that

    15     number; and total compensation paid to VWP

    16     participants at Aurora."  There is no objection to

    17     these topics in this e-mail that I can find.  And the

    18     e-mail that you referenced from February 26, I

    19     believe, is simply an e-mail from you providing us

    20     discovery responses that were supplemental to your

    21     disclosures or discovery responses from September of

    22     2015.  This is 10.

    23                    (Deposition Exhibit 10 was marked.)

    24                    MR. FREE:  It's the plaintiffs' position

    25     that GEO's failure to prepare its 30(b)(6) witness has

 1   prevented the plaintiffs from obtaining necessary

 2   admissions that will be used in their motion for class

 3   certification, which was the purpose of this

 4   deposition.  The deposition notice could not be

 5   clearer that one of the topics for deposition would be

 6   the number of participants in the voluntary work

 7   program and the total amount paid.  No objection was

 8   made to these.

 9              MS. FELTON:  Actually, there were lots of

10   objections.

11              MR. FREE:  To these subjects, to these

12   particular subjects.

13              MS. FELTON:  If you go back to my

14   original.

15              MR. FREE:  Of what date?  Because you

16   told me there was a February 26 e-mail.  There's no

17   26th e-mail regarding objections.  There's just the

18   production.  We've put the March 9 e-mail in.  That's

19   the most recent designation.  In that designation, you

20   say you can go back to the January e-mail in which you

21   raised a bunch of objections.  For good measure . . .

22              MS. FELTON:  So there's the March 9

23   e-mail that contained objections.

24              MR. FREE:  To these particular subjects?

25              MS. FELTON:  To every subsection that I

Page 28

 1   had an objection to.

 2                  MR. FREE:  Did you move for a protective

 3   order?

 4                  MS. FELTON:  No.

 5                  MR. FREE:  Because you referenced it,

 6   we'll enter the January 9 e-mail.

 7                  MS. FELTON:  March.

 8                  MR. FREE:  No.  We've already entered the

 9   January 9 e-mail -- the March 9 e-mail.  Excuse me.  I

10   meant the January 12 e-mail that you sent with the

11   objections to the previous notice, we'll enter that as

12   Exhibit 12.

13                  (Deposition Exhibit 12 was marked.)

14                  MR. FREE:  That is actually already there

15   at Tab 6.  It's at page 2.  That's your January 12

16   e-mail.

17                  MS. FELTON:  This is exhibit what?

18                  MR. FREE:  12.

19                  MS. FELTON:  What happened to March 9?

20                  MR. FREE:  It's Exhibit 11 and it's at

21   Tab No. -- put that at Tab 6.  Thank you.

22                  MS. FELTON:  Oh, okay.

23                  MR. FREE:  You see, it's already in

24   there.

25                  MS. FELTON:  Okay.  I thought you were

 1   entering -- so you're not entering -- I thought you

 2   were entering the . . .

 3            MR. FREE:  The March 9 e-mail was 11; the

 4   January 12 e-mail that you referenced a moment ago is

 5   12.

 6            MS. FELTON:  But not the one where I

 7   specifically . . .

 8            MR. FREE:  If there's additional

 9   correspondence that you think is necessary to this,

10   then we can attach it to our motions papers.

11            MS. FELTON:  Yes.

12            MR. FREE:  We're going to continue with

13   this deposition.

14            MS. FELTON:  Yes.  It doesn't matter.  It

15   doesn't have to be listed as an exhibit here.  I can

16   just attach it to the motions practice.

17            MR. FREE:  Great.

18            MS. FELTON:  That's fine.

19       Q.   (BY MR. FREE)  All right.  Ms. Furst,

20   thank you very much for bearing with us.

21       A.   Not a problem.

22       Q.   You still have your deposition notebook

23   in front of you; is that right?

24       A.   Correct.

25       Q.   Great.  Is there any reason that you are

     1    not going to be able to testify regarding the rest of

     2    the subjects that we've noticed?  Putting aside the

     3    total pay and the total number of detainees, is there

     4    anything else you're not going to be able to testify

     5    about today that you've been designated for?

     6          A.    I don't believe so.

     7          Q.    Okay.  So you're prepared on behalf of

     8    GEO to provide the rest of that testimony; is that

     9    right?

    10          A.    Yes.

    11          Q.    Okay.  So 3 c is the quantity, scope, and

    12    type of work performed in the voluntary work program.

    13                MS. FELTON:  Can we go off the record one

    14    second?

    15                MR. FREE:  Sure.

    16                (Discussion off the record.)

    17                MR. FREE:  We are back on the record at

    18    4:22.  After a brief off-the-record discussion, we

    19    have determined that Ms. Furst has been designated to

    20    testify regarding topics 3 b, the number of

    21    participants in the Visa Waiver Program -- excuse

    22    me -- the voluntary work program; c, the quantity,

    23    scope, and type of work performed in the VWP; d, the

    24    value of the work; f, detainees use of funds obtained

    25    through participation; g, policies and practices

 1   relating to products sold by GEO or contractors to the

 2   detainees, and everything else included in that.  Do

 3   we agree on that?

 4            MS. FELTON:  Yes.  But let me clarify one

 5   clarification.  In terms of the value of the work

 6   performed, now, you asked Ms. Ceja based on the wage

 7   determination.  Now, that was not a document that I

 8   would have anticipated.  I don't know that Ms. Furst

 9   is familiar with the wage determination.

10            THE DEPONENT:  No.

11            MS. FELTON:  Okay.  So if that's the way

12   you're valuing the work, then she can't speak to the

13   wage determination.

14            MR. FREE:  Okay.  Let's start with that

15   then.

16        Q.   (BY MR. FREE)  So this is topic 3 d, the

17   value of the work performed by the VWP participants

18   and the existence and location of documents containing

19   information relevant to that value.  You're prepared

20   to testify about that today subject to what your

21   counsel just said?

22            MS. FELTON:  She's not understanding,

23   because there are no documents and there is no

24   valuation.  So that's why she's -- answer to the best

25   that you can.

 1         A.    I can't respond to it.

 2              Q.    (BY MR. FREE)   Okay.   Why not?

 3         A.    Because I don't understand exactly what

 4    it is that you're wanting.

 5              Q.    Okay.   Which part is confusing you with

 6    regard to the value of the work?

 7         A.    Value of the work, I can't respond,

 8    because I don't know what they consider -- you know,

 9    what you consider to be value of the work.  It's -- I

10    don't know.

11         Q.    All right.  If you had to go out and

12    contract on the free market for the labor that

13    voluntary work program detainees perform, do you have

14    any idea how much that would cost?

15         A.    No, sir, I do not.

16         Q.    You don't know how much GEO pays those

17    detainees under the dollar-a-day program; is that

18    right?

19              MS. FELTON:   Object to form.

20         Q.    (BY MR. FREE)   You don't know how much

21    they pay them per year; you don't know how much GEO

22    has shelled out during this period from October 2012

23    to the present pursuant to the voluntary work program?

24    I think that's what you told me earlier.  You don't

25    know the total amount, right?

```
 1           A.    I do not.

 2           Q.    So not only do we not have a benchmark of

 3    what you're paying the detainees for the work they're

 4    doing, we also don't know -- we don't know what that

 5    labor would cost if you had to go and purchase it off

 6    the free market; is that right?

 7           A.    Correct.

 8           Q.    These detainees, they don't have a

 9    contract with the government to perform this work; is

10    that right?

11           A.    Correct.

12           Q.    They don't have a contract with GEO to

13    perform this work?

14           A.    No.

15           Q.    They're not subject to the Service

16    Contract Act and the wage determinations within that

17    that's attached to the GEO contract, right?

18           A.    I would say no.

19           Q.    So in other words, what your counsel was

20    talking about earlier is the wage determination that's

21    attached to the GEO contract that makes sure that GEO

22    employees are being paid the wages under the Service

23    Contract Act; GEO doesn't apply that to the detainees

24    because they don't have a contract to do work with

25    GEO, right?
```

 1          A.    Correct.

 2          Q.    Now, is it your understanding on behalf

 3   of The GEO Group that the voluntary work program is

 4   applied equally to every single participant and

 5   there's no variation participant by participant with

 6   regard to how much they're paid?

 7          A.    It's a set dollar amount.

 8          Q.    That dollar amount is set according to

 9   documents that GEO has received from the government

10   and then provided to the detainees; is that right?

11          A.    It's part of our contract.

12          Q.    Now, if you would, please, turn to Tab 7.

13   And if you would look at -- this has previously been

14   marked as Exhibit 2 to the Ceja deposition and we'll

15   just continue using it.  If you would look at page 2,

16   it says, "GEO_MEN."  When you say it's part of our

17   contract, do you see item No. 0004?

18          A.    Yes.

19          Q.    It says, "Stipend for detainee work

20   program"?

21          A.    Yes.

22          Q.    And this is what you're talking about?

23          A.    Yes.

24          Q.    It reads, "Reimbursement for this line

25   item will be at actual cost of $1.00 per day per

 1    detainee"?

 2          A.   Yes.

 3          Q.   **Who is being reimbursed?**

 4          A.   We are reimbursed by ICE.  We pay, they

 5    reimburse.

 6          Q.   Okay.  You pay the detainees, ICE

 7    reimburses you?

 8          A.   Correct.

 9          Q.   Do you happen to know what's underneath

10    this redaction to the right of this, this quantity?

11          A.   $1.

12          Q.   Okay.  And so it says, "The contractor

13    shall not exceed the quantity shown without prior

14    approval by the contracting officer."  Do you see

15    that?

16          A.   Yes.

17          Q.   And underneath that there's some

18    redaction.  Do you know what that says underneath

19    there?

20          A.   No.

21          Q.   We don't either.  This is the

22    reimbursement that ICE pays GEO, correct?

23          A.   Yes.

24          Q.   Okay.  If you would turn to page 15, do

25    you see No. 10 there, "The DHS/ICE PBNDS

1    (Performance-Based National Detention Standards)"?

2          A.   Yes, sir.

3          Q.   Go back one page.  Do you agree on behalf

4    of GEO that the Performance-Based National Detention

5    Standards are listed as a constraint comprising the

6    statutory, regulatory, policy and operational

7    considerations that will affect the contractor?

8          A.   I have no idea what you just said.

9          Q.   I'm simply reading the contract and

10   asking you, as a representative of GEO, are you bound

11   by, among other things, the PBNDS listed at No. 10

12   pursuant to this contract?

13         A.   Yes.

14         Q.   Okay.  If you'll turn your attention to

15   No. 46 within Tab 7, Exhibit 2, this has previously

16   been identified as the Performance-Based National

17   Detention Standard on the voluntary work program.

18   Have you ever seen that before?

19         A.   No, sir, I have not.

20         Q.   Okay.  So if you turn to the next page --

21   actually, page 49 and you look at K at the bottom

22   left, it says, "Compensation."  Do you see that?

23         A.   Yes.

24         Q.   At the top continuing in paragraph K, it

25   says, "The compensation is at least $1.00 per day."

 1    Is that right?

 2              A.    Yes.

 3              Q.    This is part of the Performance-Based

 4    National Detention Standards by which GEO is bound

 5    under the contract, right?

 6              A.    Yes.

 7              Q.    If you would then move on to page 53, do

 8    you see at the top right-hand corner a part of a

 9    document that says, "Detainee Work Program

10    (Voluntary)"?

11              A.    Yes.

12              Q.    As far as you know, is this the policy

13    that is applied uniformly at the Aurora facility?

14              A.    Yes, sir.

15              Q.    Okay.  Please turn to page 60.  Have you

16    ever seen this document?

17              A.    No, sir, I have not.

18              Q.    Does it look like a job description for a

19    dormitory sanitation worker?

20              A.    Yes, sir.

21              Q.    And does that include -- or is the

22    dormitory sanitation worker among one of the jobs that

23    a detainee could perform under the voluntary work

24    program?

25              A.    Yes, sir.

Case 1:14-cv-02887-JLK-MEH   Document 181-7   Filed 05/30/19   USDC Colorado   Page 39 of
62
Menocal  v. The Geo Group, Inc.        MELODY JEAN FURST                    3/29/2016

Page 38

 1          Q.   And uniformly you would compensate that

 2     person $1 per day for performing this work, correct?

 3          A.   Yes, sir.

 4          Q.   Okay.  And similarly, if we go to page

 5     70, you would uniformly pay the laundry sanitation

 6     worker $1 a day?

 7          A.   Yes, sir.

 8          Q.   And similarly, if we go to page 80, you

 9     would uniformly pay the facility cleanup worker a

10     dollar a day?

11          A.   Yes, sir.

12          Q.   If we go to page 105, you would uniformly

13     pay the library sanitation worker a dollar a day; is

14     that right?

15          A.   Yes, sir.

16          Q.   Similarly at 120, the medical sanitation

17     worker, that person gets a dollar a day too, don't

18     they?

19          A.   Yes, sir.

20          Q.   Every person who works for the voluntary

21     work program gets a dollar a day, correct?

22          A.   Yes.

23          Q.   And it is the case, isn't it, that it is

24     GEO's policy that they cannot receive more; is that

25     right?

    1          A.    Yes.

    2          Q.    **Have you ever responded to a complaint or**

    3    **grievance from a detainee who was participating in the**

    4    **voluntary work program about the amount that they're**

    5    **being paid?**

    6          A.    I don't believe I have.

    7          Q.    **Okay.  I would like to turn your**

    8    **attention for a moment to Tab 12.  We will mark the**

    9    **three pages at Tab 12 as Exhibit 13 using a continuous**

   10    **number system.**

   11                (Deposition Exhibit 13 was marked.)

   12          Q.    **Take a look at those three pages.  Excuse**

   13    **me.  It's only two pages.  Sorry.  The handwritten**

   14    **statement of the grievance is a bit illegible, but I**

   15    **would like you to read the second page, please.**

   16          A.    "In response to your grievance dated

   17    7/23, the finding is:  The pricing is approved by ICE.

   18    GEO does not set the pricing.  ICE tells us what the

   19    daily pay is for trustees.  I hope this addresses your

   20    concerns."

   21          Q.    **Who is that from?**

   22          A.    That is from me.

   23          Q.    **And is that your signature?**

   24          A.    Yes, sir.

   25          Q.    **If you could turn to Tab 13, we will**

Page 40

```
 1    enter these two pages as 14.

 2                    (Deposition Exhibit 14 was marked.)

 3         Q.    This will be Exhibit 14 to your

 4    deposition.  On the second page, do you see a response

 5    from you saying, "ICE tells us what the daily pay is

 6    for trustees"?  Is that right?

 7         A.    Yes, sir.

 8         Q.    "GEO does not set the pricing.  The

 9    pricing is approved by ICE."  Is that right?

10         A.    Correct.

11         Q.    If you could, let's look at Tab 11.  This

12    has previously been marked as Exhibit 9 to Ms. Ceja's

13    deposition.  Do you recognize the document at Tab 11?

14         A.    Yes, sir.

15         Q.    What is it?

16         A.    It's a monthly billing for the month of

17    November.

18         Q.    And this indicates that 1,680 hours of

19    work were performed in the voluntary work program

20    during November 2012, right?

21                    MS. FELTON:  Object to form.

22         Q.    (BY MR. FREE)  You can answer the

23    question.

24         A.    It's 1680 people.

25         Q.    People.
```

 1          A.    Not hours.

 2          Q.    Not hours.  That would be --

 3          A.    That would be a lot.

 4          Q.    -- somewhere close to a dollar an hour,

 5    which is still too low, but we're talking a dollar a

 6    day.  So this is 1680 shifts?

 7          A.    Yes.

 8          Q.    In the month of November 2012, right?

 9          A.    $1680 were paid to workers.

10          Q.    For eight-hour shifts --

11                MS. FELTON:  Object to form.

12          Q.    (BY MR. FREE)  -- is that right?

13          A.    No.

14          Q.    No.

15          A.    It could be three hours.

16          Q.    Okay.  I think we've already testified

17    that you can -- you've already told me that if we flip

18    over to page 1612, you can tell how many detainees

19    worked each day using a document like this; is that

20    right?

21          A.    Correct.

22          Q.    For November 1, that's 60 unique

23    participants; is that right?

24          A.    Yes, sir.

25          Q.    And based on that, GEO produced the

```
 1    document at 1613, the batch summary of payroll for all

 2    60 participants, right?

 3         A.   Yes, sir.

 4         Q.   There are 60 lines because there were 60

 5    participants, right?

 6         A.   Yes, sir.

 7         Q.   No participant is allowed to work more

 8    than one shift per day; is that right?

 9         A.   Yes, sir.

10         Q.   This is the consolidated payroll for

11    kitchen, laundry, A pod, B pod, evening kitchen,

12    D pod; is that right?

13         A.   Yes, sir.

14         Q.   This is created in every payment to a

15    detainee under the voluntary work program, this batch

16    summary, correct?

17         A.   Yes, sir.

18         Q.   It is using this document or these

19    records that you then seek reimbursement from ICE,

20    correct?

21         A.   Yes.

22         Q.   The voluntary work program pay is paid

23    almost immediately, correct?

24         A.   Yes.

25         Q.   Detainees don't wait two weeks for a
```

 1   paycheck?

 2          A.   Absolutely not.

 3          Q.   GEO is paying those detainees?

 4          A.   Yes.

 5          Q.   On basically an immediate basis?

 6          A.   Daily.

 7          Q.   Daily.  Okay.  The dollar-a-day rate is

 8   set forward in GEO policy as well, correct?

 9          A.   I believe so.

10               MR. FREE:  Let's go off the record.

11               (Recess taken, 4:41 p.m. to 4:43 p.m.)

12               MR. FREE:  Let's go back on the record.

13          Q.   (BY MR. FREE)  If you could, please, turn

14   to Tab 9.  I would like you to look at the page marked

15   as 1400.  Do you recognize this document?

16          A.   Yes, sir.

17          Q.   What is it?

18          A.   It's our policy and procedure.

19          Q.   On what?

20          A.   The work program.

21          Q.   By "the work program," you mean the

22   detainee voluntary work program?

23          A.   Yes, sir.

24          Q.   This is uniformly applied to all

25   detainees who participate?

```
 1          A.   Yes, sir.

 2          Q.   At 1402, Section J, it says, "Detainees

 3     shall receive a stipend of $1.00 per day, to be paid

 4     daily," correct?

 5          A.   Yes.

 6          Q.   Are you responsible for bidding contracts

 7     or receiving bids for contracts of people who want to

 8     do work for GEO at the Aurora facility?

 9          A.   No.

10          Q.   Who is responsible for that?

11          A.   Ms. Krumpelmann.

12          Q.   Okay.  How many janitors work at the

13     Aurora contract facility?

14          A.   One.

15          Q.   She only works in the executive office of

16     immigration review area and the ICE area; is that

17     correct?

18          A.   EOIR, GEO, and ICE.

19          Q.   So GEO's administrative offices?

20          A.   Correct.

21          Q.   Places where detainees are not allowed?

22          A.   Detainees are allowed.

23          Q.   So why does she do that work and not a

24     detainee voluntary worker?

25          A.   She has detainees that if they want to
```

```
 1   work, they work.

 2           Q.   Okay.  If you had to pay someone to do

 3   her job at the rest of the facility, you would have to

 4   pay someone -- if nobody volunteered, in other words,

 5   for the detainee voluntary work program, you would

 6   have to pay more people, more Danielles, the janitor,

 7   to clean the rest of the facility, right?

 8           A.   Yes, sir.

 9           Q.   And she makes about 12 or $13 an hour,

10   right?

11           A.   Yes.

12           Q.   For that type of work, is it fair to say

13   that the value of the work that the volunteer work

14   program people are contributing is roughly the value

15   of her salary?

16               MS. FELTON:  Object to form.

17           A.   I would say no.

18           Q.   (BY MR. FREE)  Why?

19           A.   Because they do not work a full eight-

20   hour day.

21           Q.   Okay.  Even if they work three hours,

22   they're still getting paid less than she gets paid in

23   an hour, right?

24           A.   Correct.

25           Q.   So hour to hour, why is it that their
```

 1   value is not equal to her value in terms of the

 2   services being rendered to GEO?

 3          A.   I can't respond to that.  That's an

 4   opinion.

 5          Q.   No.  I'm asking GEO's position on this,

 6   which is what you've been called here today to

 7   provide.  You're not able to do that.  You're not able

 8   to provide GEO's position on why -- on the value of

 9   these services that these voluntary work program

10   detainees perform?

11          A.   GEO's position is we're required by the

12   contract to pay them what ICE has stipulated.

13          Q.   We understand.  My question is what the

14   value of that labor is.

15          A.   I can't respond to that.

16          Q.   Okay.  If you would, please, turn to Tab

17   7 and look at page 62.  Do you see that?

18          A.   Yes, sir.

19          Q.   Is that a detainee voluntary work program

20   agreement?

21          A.   I believe it is.

22          Q.   Okay.  This is the agreement that people

23   in the voluntary work program sign and agree to when

24   they're joining the program; is that right?

25          A.   I would say so.

```
 1          Q.    This is uniformly employed by GEO for

 2     people who are participating in the program; is that

 3     right?

 4          A.    Yes.

 5          Q.    The names on the list in the batch

 6     summary are taken from the daily logs, correct, that

 7     the GEO detainees sign?

 8          A.    Yeah, the daily payroll sheets.

 9          Q.    And that is uniform within the voluntary

10     work program, correct?

11          A.    Yes.

12          Q.    What would happen if the voluntary work

13     program did not exist?  If detainees did not volunteer

14     to work, how would GEO perform the functions --

15     specifically, what would it cost GEO to perform the

16     functions of these detainees?

17          A.    I would say probably the wage

18     determination and officers.

19          Q.    We would have to look at the type of

20     function they were performing on the wage

21     determination and look at the salary that you would

22     have to pay someone to come in and do that function;

23     is that right?

24          A.    Correct.

25          Q.    Okay.  And practically speaking, in each
```

 1   department where a voluntary work program detainee

 2   works, your staffing plan currently is not such that

 3   the facility could operate without the VWP; is that

 4   right?

 5              MS. FELTON:  Object to form.

 6        Q.   (BY MR. FREE)  You can answer.  In fact,

 7   you must answer.

 8        A.   Please repeat.

 9        Q.   Practically speaking, the staffing in

10   each department where a voluntary work program

11   detainee works is such that if it went away, if there

12   were no voluntary work program, that department

13   couldn't run; is that correct?

14              MS. FELTON:  Object to form.

15        A.   No.

16        Q.   (BY MR. FREE)  That's incorrect?

17        A.   That is incorrect.

18        Q.   Would you be able to run the kitchen if

19   there were no voluntary workers?

20        A.   Yes.

21        Q.   Would you be able to do janitorial if

22   there were no voluntary workers?

23        A.   Yes.

24        Q.   Would you be able to do the barbershop?

25        A.   I don't know.

 1          Q.    Would you be able to do the library?

 2          A.    Yes.

 3          Q.    Medical?

 4          A.    Yes.

 5          Q.    Dorm cleanup?

 6          A.    Yes.

 7          Q.    Facility cleanup?

 8          A.    Yes.

 9          Q.    If there were no voluntary workers, who

10    would do those jobs?

11          A.    Officers.

12          Q.    At the same staffing level or with

13    additional officers being brought in to do them?

14               MS. FELTON:  Object to form.

15          A.    It would require additional.

16          Q.    (BY MR. FREE)  So you would have to pay

17    more people to do that work if there were no voluntary

18    work program, correct?

19          A.    I believe so.

20          Q.    You would have to pay them at wages set

21    by the wage determination attached to the contract,

22    correct?

23          A.    Correct.

24          Q.    Okay.

25               MR. FREE:  We're losing Mr. Turner for

1    the record.

2                    (At this time Mr. Turner left the room.)

3                    MR. FREE:  I think we're done.  Let's go

4    off the record and be sure.  Thank you very much for

5    your patience.

6                    (Discussion off the record.)

7                    MR. FREE:  Back on the record.

8    Ms. Furst, I really appreciate you coming this

9    afternoon.  We are going to suspend your deposition.

10   What that means is you're going to remain under oath.

11   It's going to be like we're taking a break.  And we

12   are going to attempt to reach a resolution on the

13   issue of number of detainees who have worked and also

14   on the amount that's been paid through the voluntary

15   work program.  And we may need to take that up with

16   the court.  You may need to come back here and testify

17   at some point in the future.  I don't know.

18                    THE DEPONENT:  Okay.

19                    MR. FREE:  For now you're going to remain

20   under oath.  And I'm going to ask you about anything

21   that you were told while you were under oath on these

22   questions the next time we see each other, if we see

23   each other again.  Okay?

24                    THE DEPONENT:  All right.

25                    MR. FREE:  Those are all of my questions.

```
1                    MS. FELTON:  I don't have anything.

2                    WHEREUPON, the within proceedings were

3        adjourned at the approximate hour of 4:53 p.m. on the

4        29th day of March, 2016.

5                         *     *     *     *     *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 52

I, MELODY JEAN FURST, do hereby certify that I have read the above and foregoing deposition and that the same is a true and accurate transcription of my testimony, except for attached amendments, if any.

Amendments attached     ( ) Yes  ( ) No


_____
MELODY JEAN FURST


The signature above of MELODY JEAN FURST was subscribed and sworn to before me in the County of _____, State of Colorado, this _____ day of _____, 2016.




_____
Notary Public
My commission expires




Alejandro Menocal 3/29/16 - Volume I (dc)

REPORTER'S CERTIFICATE

STATE OF COLORADO          )
                          ) ss.
CITY AND COUNTY OF DENVER  )

         I, Darcy Curtis, Registered Professional
Reporter and Notary Public ID 20064016972, State of
Colorado, do hereby certify that previous to the
commencement of the examination, the said MELODY JEAN
FURST was duly sworn by me to testify to the truth in
relation to the matters in controversy between the
parties hereto; that the said deposition was taken in
machine shorthand by me at the time and place
aforesaid and was thereafter reduced to typewritten
form; that the foregoing is a true transcript of the
questions asked, testimony given, and proceedings had.

         I further certify that I am not employed
by, related to, nor of counsel for any of the parties
herein, nor otherwise interested in the outcome of
this litigation.

         IN WITNESS WHEREOF, I have affixed my
signature this 12th day of April, 2016.


         My commission expires May 2, 2018.


__X__ Reading and Signing was requested.

_____ Reading and Signing was waived.

_____ Reading and Signing is not required.

**A**

**able** 13:3 18:7 19:9 19:14,24 22:15 30:1,4 46:7,7 48:18,21,24 49:1
**Absolutely** 43:2
**account** 11:9
**accounting** 11:15 11:17,23,25
**accounts** 11:8,8
**accurate** 52:3
**Act** 33:16,23
**Action** 1:2
**actual** 34:25
**adding** 19:15
**additional** 29:8 49:13,15
**addresses** 39:19
**adjourned** 51:3
**administrative** 44:19
**admissions** 27:2
**affect** 36:7
**affixed** 53:12
**aforesaid** 53:8
**afternoon** 4:23 7:10 50:9
**ago** 6:23 9:18 13:9 29:4
**agree** 25:3,8 31:3 36:3 46:23
**agreement** 46:20 46:22
**al** 1:7
**Alejandro** 1:7 52:25
**ALEXANDER** 2:5
**allow** 9:5
**allowed** 42:7 44:21 44:22
**Amended** 3:17
**amendments** 52:4 52:6
**amount** 19:10,14 27:7 32:25 34:7,8 39:4 50:14
**amounts** 16:7

**Andrew** 2:3,3,8 4:15,17
**answer** 7:14 8:10 9:5,10,10 24:25 31:24 40:22 48:6 48:7
**answered** 7:13
**answering** 8:2
**anticipated** 31:8
**appearances** 4:14
**applied** 34:4 37:13 43:24
**apply** 33:23
**appreciate** 7:14 15:11 50:8
**approval** 35:14
**approved** 39:17 40:9
**approximate** 51:3
**April** 53:13
**area** 44:16,16
**aside** 10:14 30:2
**asked** 14:15 15:14 17:25 25:5 31:6 53:9
**asking** 7:6 8:13 15:8 18:1 36:10 46:5
**assert** 7:19
**assistant** 5:4 10:19
**assume** 8:11,12
**attach** 29:10,16
**attached** 3:9,11 33:17,21 49:21 52:4,6
**attachment** 3:13,14
**attachments** 3:20 3:22
**attempt** 50:12
**attention** 36:14 39:8
**attorney** 9:22
**Aurora** 10:19 16:6 17:8 21:10 26:16 37:13 44:8,13
**Avenue** 2:4
**avoid** 20:2

**aware** 12:11

**B**

**b** 5:16 21:11 30:20 42:11
**back** 15:3,22 22:12 27:13,20 30:17 36:3 43:12 50:7 50:16
**background** 11:13 11:14 12:2
**banking** 14:3
**Barbara** 10:24 11:5
**barbershop** 48:24
**based** 16:16 20:10 23:3 26:9 31:6 41:25
**basically** 43:5
**basis** 43:5
**batch** 3:6 21:24 23:10 42:1,15 47:5
**batches** 23:13
**Bates** 17:16 22:9 23:6
**bearing** 29:20
**beginning** 21:6 22:14
**behalf** 1:13 5:7 7:7 16:12 20:6 30:7 34:2 36:3
**believe** 26:19 30:6 39:6 43:9 46:21 49:19
**benchmark** 33:2
**best** 31:24
**bidding** 44:6
**bids** 44:7
**billing** 11:9 40:16
**binder** 5:13
**bit** 39:14
**bottom** 22:9 36:21
**Boulevard** 2:14
**bound** 36:10 37:4
**break** 7:11,15 50:11
**breaks** 7:17

**brief** 30:18
**bring** 18:16,21 20:13 25:8
**brought** 6:20 49:13
**Buescher** 2:9
**bunch** 8:21 27:21
**business** 5:4 10:19 10:23

**C**

**c** 2:1 5:25 30:11,22
**calculation** 25:2
**calculator** 19:5
**called** 46:6
**case** 3:13,14 7:6 38:23
**Ceja** 31:6 34:14
**Ceja's** 10:7 40:12
**certain** 5:7 14:6
**CERTIFICATE** 53:1
**certification** 27:3
**certifications** 11:18
**certify** 52:1 53:5,10
**chain** 11:4
**Choate** 3:21
**CITY** 53:3
**Civil** 1:2 4:2
**clarification** 31:5
**clarify** 31:4
**class** 27:2
**clean** 45:7
**cleanup** 38:9 49:5,7
**clear** 7:3 9:6
**clearer** 27:5
**clerk** 11:9
**close** 41:4
**closer** 22:5
**cocounsel** 21:1
**college** 12:3
**Colorado** 1:1,14,15 2:7,10,14,15 4:12 52:13 53:2,5
**come** 15:6,7 19:25 20:7,15 24:25 47:22 50:16
**comfortable** 24:19
**coming** 16:2 50:8

**command** 11:4
**commencement** 53:5
**Commissary** 14:2
**commission** 52:19 53:14
**common** 10:11
**company** 18:7 20:7
**compare** 23:21
**compel** 25:4,9
**compensate** 38:1
**compensation** 16:5 16:12 17:7 18:3,5 20:12 26:15 36:22 36:25
**complaint** 13:20 39:2
**comprising** 36:5
**computer** 12:16,19 23:19 24:1
**concern** 20:1
**concerns** 39:20
**confer** 20:25
**CONFIDENTIAL** 3:21
**confused** 8:15 9:1
**confusing** 32:5
**consider** 32:8,9
**considerations** 36:7
**consolidated** 42:10
**constraint** 36:5
**construction** 11:14
**consult** 7:18
**contained** 27:23
**containing** 26:13 26:14 31:18
**contest** 7:9
**continue** 29:12 34:15
**continuing** 21:7 36:24
**continuous** 39:9
**contract** 11:10 32:12 33:9,12,16 33:17,21,23,24 34:11,17 36:9,12

Menocal   v. The Geo Group, Inc. MELODY JEAN FURST                    3/29/2016

37:5 44:13 46:12
49:21
**contracting** 35:14
**contractor** 35:12
36:7
**contractors** 31:1
**contracts** 11:9 44:6
44:7
**contributing** 45:14
**controversy** 53:6
**corner** 37:8
**correct** 5:20 10:22
13:2,23 14:14
15:20,21 23:12
29:24 33:7,11
34:1 35:8,22 38:2
38:21 40:10 41:21
42:16,20,23 43:8
44:4,17,20 45:24
47:6,10,24 48:13
49:18,22,23
**correspondence**
29:9
**cost** 32:14 33:5
34:25 47:15
**counsel** 4:13 6:9
7:18,22 15:12
16:7 21:4,6 25:10
26:8 31:21 33:19
53:10
**counsel's** 21:11
23:19,25
**count** 14:22 24:7
25:5
**County** 52:12 53:3
**court** 1:1 4:9,10
7:23 22:7 24:11
25:3 50:16
**CPA** 11:20
**create** 14:19
**created** 20:21
21:15 42:14
**currently** 48:2
**Curtis** 1:14 4:10
53:4

— D —

**d** 3:1 6:2 30:23

31:16 42:12
**daily** 23:15,20
39:19 40:5 43:6,7
44:4 47:6,8
**Danielles** 45:6
**Darcy** 1:14 4:9
53:4
**date** 22:3 27:15
**dated** 39:16
**dating** 15:22
**day** 12:8 13:1 22:24
23:1,4 25:5 34:25
36:25 38:2,6,10
38:13,17,21 41:6
41:19 42:8 44:3
45:20 51:4 52:13
53:13
**dc** 52:25
**defendant** 1:11
2:12 3:18 4:20
**Defendant's** 3:19
**degree** 11:25
**DeMuro** 2:13
**Denver** 1:14 2:7,10
2:15 4:12 53:3
**department** 48:1
48:10,12
**deponent** 4:14
31:10 50:18,24
**deposition** 1:4,13
3:5,16,18 6:22
8:12 9:23 10:7
14:25 15:6,7,17
19:4 20:16 21:12
25:14 26:23 27:4
27:4,5 28:13
29:13,22 34:14
39:11 40:2,4,13
50:9 52:2 53:7
**depositions** 19:24
**deposits** 22:19,23
23:10
**description** 37:18
**designated** 5:15
14:19 15:3 16:3
16:15,21 17:5,6
26:9 30:5,19

**designation** 17:1
27:19,19
**despite** 14:15
**detainee** 3:12,14
11:8,9 21:24
34:19 35:1 37:9
37:23 39:3 42:15
43:22 44:24 45:5
46:19 48:1,11
**detainees** 12:5,23
15:23 30:3,24
31:2 32:13,17
33:3,8,23 34:10
35:6 41:18 42:25
43:3,25 44:2,21
44:22,25 46:10
47:7,13,16 50:13
**Detention** 16:6
17:8 36:1,4,17
37:4
**determination** 31:7
31:9,13 33:20
47:18,21 49:21
**determinations**
33:16
**determine** 13:4
**determined** 30:19
**determining** 26:14
**DHS/ICE** 35:25
**different** 23:14
**disagree** 25:3,8
**disclosures** 3:20
26:21
**discovery** 19:19
24:23 26:20,21
**discuss** 7:21
**discussed** 9:22
**discussion** 30:16,18
50:6
**DISTRICT** 1:1,1
**document** 8:16,18
14:22 21:15,17
24:9 31:7 37:9,16
40:13 41:19 42:1
42:18 43:15
**documents** 5:18
10:1,5,16 14:20

14:20,24 16:17,19
16:24 17:2,11,15
18:8,9,11,12,16
18:17,19,24 19:9
20:1,3,22 21:5
24:14,22 26:10,13
31:18,23 34:9
**doing** 24:10 33:4
**dollar** 34:7,8 38:10
38:13,17,21 41:4
41:5
**dollar-a-day** 32:17
43:7
**Dorm** 49:5
**dormitory** 37:19
37:22
**drink** 7:11
**duces** 16:22 18:4
**duly** 4:6 53:6
**duties** 11:7
**duty** 18:11

— E —

**e** 2:1,1 3:1 6:4,10
17:7
**e-mail** 3:8,10,11
16:15 18:14,15,17
19:8 26:7,17,18
26:19 27:16,17,18
27:20,23 28:6,9,9
28:10,16 29:3,4
**e-mails** 3:9
**earlier** 32:24 33:20
**educational** 12:2
**effective** 7:2
**efficient** 7:2
**eight-** 45:19
**eight-hour** 41:10
**either** 35:21
**electronic** 21:5
25:12
**employed** 47:1
53:10
**employee** 9:19
**employees** 33:22
**endurance** 7:9
**engage** 15:12
**engaging** 17:24

**entail** 11:7
**enter** 25:11 26:7
28:6,11 40:1
**entered** 5:12 28:8
**entering** 29:1,1,2
**EOIR** 44:18
**equal** 46:1
**equally** 24:25 34:4
**ESQ** 2:3,5,8,13
**estimate** 12:23
24:17
**et** 1:7
**evening** 42:11
**exactly** 32:3
**examination** 3:2
4:21 53:5
**example** 10:4 19:20
**exceed** 35:13
**exceeds** 13:13
**exception** 6:5,8
7:12
**excuse** 23:17 25:11
28:9 30:21 39:12
**executive** 44:15
**exhibit** 3:6,8,10,12
3:14,17,19,21
10:7,11,14 16:4
21:5,12 25:11,12
25:12,14 26:7,23
28:12,13,17,20
29:15 34:14 36:15
39:9,11 40:2,3,12
**exhibits** 3:5,16 26:4
**exist** 14:24 47:13
**existence** 26:12
31:18
**expecting** 18:4
**experience** 12:4
**expires** 52:19 53:14

— F —

**f** 6:13 30:24
**facilities** 6:6 16:8
**facility** 10:19 16:6
17:8 21:10 37:13
38:9 44:8,13 45:3
45:7 48:3 49:7
**fact** 19:25 48:6

Menocal  v. The Geo Group, Inc. MELODY JEAN FURST                    3/29/2016

**failure** 20:10 26:25
**fair** 8:3,8,9 9:13,14
  20:16 45:12
**fall** 11:5
**familiar** 31:9
**far** 11:10 37:12
**February** 16:17,21
  18:14 19:8 26:10
  26:18 27:16
**Federal** 4:2
**feel** 7:11 8:6,24
  20:16
**Felton** 2:13 3:8,11
  4:19,19 6:5 10:10
  10:12 14:18 15:5
  15:10 16:14,20,25
  17:4,9,13,19,23
  18:13,20 19:2,6
  19:11,16,18 20:18
  24:2,13 25:15,18
  25:22 26:1,5 27:9
  27:13,22,25 28:4
  28:7,17,19,22,25
  29:6,11,14,18
  30:13 31:4,11,22
  32:19 40:21 41:11
  45:16 48:5,14
  49:14 51:1
**figure** 14:12
**filed** 13:19
**filing** 12:22 13:8
**finally** 9:3
**find** 26:17
**finding** 39:17
**fine** 17:17,22 18:8
  21:22 29:18
**finish** 9:4,5
**first** 4:6 25:13,17
**flip** 41:17
**follow** 23:19
**following** 4:1
**follows** 4:7
**foregoing** 52:2 53:8
**form** 3:12,14 14:18
  15:10 32:19 40:21
  41:11 45:16 48:5
  48:14 49:14 53:8

**forward** 7:3 43:8
**FRCP** 3:17
**free** 2:3,3 3:3 4:15
  4:15,22 6:7,8 7:11
  8:6,24 10:8,11,13
  15:4,8,11,14
  16:19,23 17:3,6
  17:12,17,21,24
  18:18,23 19:3,7
  19:13,17,22 20:24
  21:3 22:4,8,12,14
  23:8,9 24:4 25:10
  25:17,20,24 26:3
  26:6,24 27:11,15
  27:24 28:2,5,8,14
  28:18,20,23 29:3
  29:8,12,17,19
  30:15,17 31:14,16
  32:2,12,20 33:6
  40:22 41:12 43:10
  43:12,13 45:18
  48:6,16 49:16,25
  50:3,7,19,25
**front** 10:2,6 29:23
**full** 4:25 45:19
**function** 47:20,22
**functions** 47:14,16
**funds** 30:24
**Furst** 1:4,13 3:2
  4:5,23 5:2 21:3
  22:16 24:4 26:8,9
  29:19 30:19 31:8
  50:8 52:1,8,11
  53:6
**further** 15:12
  53:10
**future** 8:11 50:17

— G —
**g** 6:15 30:25
**Geist** 4:12
**Gentlemen** 3:10
**GEO** 1:5,10,13 3:6
  3:18 5:5,7,15 6:6
  7:7 9:19 12:11,14
  15:22 16:12 18:5
  19:24 20:10 26:8
  30:8 31:1 32:16

32:21 33:12,17,21
33:21,23,25 34:3
34:9 35:22 36:4
36:10 37:4 39:18
40:8 41:25 43:3,8
44:8,18 46:2 47:1
47:7,14,15
**GEO's** 26:25 38:24
  44:19 46:5,8,11
**GEO_MEN** 21:7,7
  34:16
**getting** 45:22
**given** 6:22 17:15
  20:20 24:21 53:9
**glean** 18:7 19:10
**go** 5:14 8:7 18:11
  18:12,24 19:20
  20:24 22:12 24:9
  25:12 26:4 27:13
  27:20 30:13 32:11
  33:5 36:3 38:4,8
  38:12 43:10,12
  50:3
**going** 5:14 6:18,24
  7:3,6,8,19 8:1,11
  8:12,20,21,25 9:9
  10:8,9 16:14
  18:23,24,25 19:3
  19:15 20:9 21:4,8
  21:13,14 22:6,18
  23:24,25 24:4,5,6
  25:4,11,15,20
  26:6 29:12 30:1,4
  50:9,10,11,12,19
  50:20
**good** 4:23 10:4,4
  24:18 27:21
**government** 33:9
  34:9
**Grant** 1:13 2:9
  4:12
**Great** 9:18 20:24
  29:17,25
**grievance** 3:12,14
  39:3,14,16
**Group** 1:5,10,13
  3:6,18 5:5,7,16

     16:12 19:24 34:3
**guide** 8:19

— H —
**H** 2:8
**hand** 14:22
**hands** 25:1
**handwritten** 39:13
**happen** 18:24 19:1
  35:9 47:12
**happened** 13:8
  28:19
**happens** 8:1
**happy** 8:7
**head** 16:1,3,10 18:2
**help** 21:20
**hereto** 53:7
**Hi** 4:24
**High** 2:6 12:3
**Hood** 2:5 3:8 4:8
  5:12
**hope** 39:19
**hoping** 20:5
**hour** 41:4 45:9,20
  45:23,25,25 51:3
**hours** 40:18 41:1,2
  41:15 45:21
**huh-uh** 9:12
**hundred** 13:10,17
  24:18
**Hunter** 4:11

— I —
**ICE** 19:12 35:4,6
  35:22 39:17,18
  40:5,9 42:19
  44:16,18 46:12
**ID** 53:4
**idea** 15:25 16:10
  18:2,2 32:14 36:8
**identified** 36:16
**identify** 21:8
**illegible** 39:14
**immediate** 43:5
**immediately** 42:23
**immigration** 44:16
**implementing**
  11:10

**important** 9:4
**improperly** 17:4
**include** 37:21
**included** 14:25
  31:2
**incorrect** 48:16,17
**indicate** 22:22
**indicates** 40:18
**individuals** 22:23
**information** 15:19
  24:24 26:13,14
  31:19
**informed** 19:8
**Initial** 3:5,19
**instance** 14:4
**instruction** 21:11
**instructions** 9:16
**interested** 53:11
**investigate** 15:15
**issue** 50:13
**item** 34:17,25

— J —
**J** 44:2
**janitor** 45:6
**janitorial** 48:21
**janitors** 44:12
**January** 27:20 28:6
  28:9,10,15 29:4
**Jean** 1:4,13 3:2 4:5
  5:2 52:1,8,11 53:5
**job** 37:18 45:3
**jobs** 37:22 49:10
**joining** 46:24
**Justice** 2:6

— K —
**K** 36:21,24
**K-r-u-m-p-e-l-m...**
  11:1
**Keefe** 14:2
**keep** 10:8
**Kelman** 2:9
**kitchen** 42:11,11
  48:18
**knew** 18:18
**know** 7:9 8:2,18
  9:1,2 19:22 24:17

Menocal  v. The Geo Group, Inc. MELODY JEAN FURST                3/29/2016

24:18 25:22 26:2
  31:8 32:8,8,10,16
  32:20,21,25 33:4
  33:4 35:9,18
  37:12 48:25 50:17
**knowable** 13:22
**knowledge** 15:20
**knowledgeable**
  16:11 20:6,11
**Krumpelmann**
  10:24 44:11

### L

**labeled** 17:16
**labor** 32:12 33:5
  46:14
**late** 7:9
**laundry** 38:5 42:11
**Law** 2:3
**left** 36:22 50:2
**legal** 15:9 17:3
**let's** 9:3 20:24
  21:17 31:14 40:11
  43:10,12 50:3
**Letter** 3:21
**level** 49:12
**library** 38:13 49:1
**light** 21:20
**line** 34:24
**lines** 42:4
**list** 23:22,23,24
  47:5
**listed** 29:15 36:5,11
**lists** 14:25 23:21
**litigation** 12:22
  13:8 53:11
**little** 22:4
**location** 26:13
  31:18
**lodged** 6:9
**logs** 47:6
**long** 9:18 10:18,21
**look** 8:25,25 10:15
  12:18 14:11 20:2
  20:14 22:9,10
  23:25 34:13,15
  36:21 37:18 39:12
  40:11 43:14 46:17

47:19,21
**looking** 8:17 22:9
  23:6
**looks** 9:12 22:21
**losing** 49:25
**lot** 41:3
**lots** 27:9
**loud** 9:10
**low** 41:5

### M

**machine** 53:7
**manager** 5:4 10:19
  10:23
**manner** 23:2 24:24
**March** 1:5,14 3:2
  4:10 26:7 27:18
  27:22 28:7,9,19
  29:3 51:4
**mark** 21:5 39:8
**marked** 3:16 10:6
  21:12 25:14 26:23
  28:13 34:14 39:11
  40:2,12 43:14
**market** 32:12 33:6
**math** 18:25 19:15
**matter** 29:14
**matters** 53:6
**mean** 6:19 43:21
**meaning** 25:23
**means** 50:10
**meant** 28:10
**measure** 27:21
**medical** 38:16 49:3
**Melody** 1:4,13 3:2
  4:5 5:2 52:1,8,11
  53:5
**Menocal** 1:7 3:8
  52:25
**met** 24:21
**mine** 25:1
**moment** 10:5 20:25
  24:6 29:4 39:8
**month** 20:20,21
  40:16 41:8
**monthly** 40:16
**months** 19:23
**motion** 25:4,9 27:2

**motions** 29:10,16
**move** 22:6 28:2
  37:7

### N

**N** 2:1 3:1
**name** 4:25 12:14
  14:23
**names** 12:19 14:5,8
  14:12 15:1 47:5
**Nashville** 2:4
**National** 36:1,4,16
  37:4
**necessary** 27:1
  29:9
**need** 7:1,10,11 8:5
  8:17 16:16 17:10
  18:17,18 19:4
  50:15,16
**needs** 18:9
**never** 17:18
**North** 2:4,14
**Notary** 1:15 52:19
  53:4
**note** 23:24
**notebook** 14:25
  29:22
**Noted** 6:7
**notice** 1:12 3:17
  17:2 21:12 27:4
  28:11
**noticed** 20:11 30:2
**noticing** 19:23
**notwithstanding**
  19:25
**November** 40:17
  40:20 41:8,22
**number** 5:17,18
  13:4,13,22 14:16
  15:15 19:25 20:3
  20:4,7,15,23 21:9
  22:19 24:7,16,18
  24:20 26:11,15
  27:6 30:3,20
  39:10 50:13
**numbering** 10:9

### O

**oath** 7:22 50:10,20
  50:21
**object** 14:18 16:14
  20:9 32:19 40:21
  41:11 45:16 48:5
  48:14 49:14
**objected** 16:7
**objection** 6:9 15:4
  15:9 17:3,25
  26:16 27:7 28:1
**objections** 15:13
  27:10,17,21,23
  28:11
**obligation** 24:22
  25:2
**obtained** 30:24
**obtaining** 27:1
**occupation** 5:3
**October** 15:3,23
  32:22
**off-the-record**
  30:18
**office** 2:3 44:15
**officer** 35:14
**officers** 47:18
  49:11,13
**offices** 44:19
**Oh** 28:22
**okay** 7:4,12,16,20
  7:23,24 8:5,22,23
  10:14,18,21 12:5
  13:16,22 15:22
  18:3,23 19:13
  20:8 21:17,20
  22:22 23:21 25:10
  28:22,25 30:7,11
  31:11,14 32:2,5
  35:6,12,24 36:14
  36:20 37:15 38:4
  39:7 41:16 43:7
  44:12 45:2,21
  46:16,22 47:25
  49:24 50:18,23
**open** 5:13 7:23
**operate** 48:3
**operational** 36:6
**opinion** 46:4

**opposed** 9:11
**oral** 18:4
**order** 7:1 17:10
  28:3
**original** 27:14
**outcome** 53:11
**oversee** 11:9

### P

**P** 2:1,1
**P.C** 2:9
**p.m** 1:14 4:11 21:2
  21:2 24:12,12
  43:11,11 51:3
**packets** 20:22
**page** 3:2 5:14 10:3
  21:13 22:11 25:13
  25:17 26:9 28:15
  34:15 35:24 36:3
  36:20,21 37:7,15
  38:4,8,12 39:15
  40:4 41:18 43:14
  46:17
**pages** 10:14 39:9
  39:12,13 40:1
**paid** 15:22 16:5,7
  16:13,18 17:7
  18:3,5 19:10
  20:12,23,23 26:15
  27:7 33:22 34:6
  39:5 41:9 42:22
  44:3 45:22,22
  50:14
**paper** 8:21
**papers** 29:10
**paperwork** 9:25
**paragraph** 36:24
**part** 8:16 32:5
  34:11,16 37:3,8
**participant** 14:23
  34:4,5,5 42:7
**participants** 5:17
  14:16 16:6,13
  17:7 19:11 21:9
  24:15 25:6 26:11
  26:16 27:6 30:21
  31:17 41:23 42:2
  42:5

Menocal   v. The Geo Group, Inc. MELODY JEAN FURST                    3/29/2016

Page 58

participate 43:25
participated 13:10
  13:18 14:5 15:2
  15:15 24:8
participates 12:12
participating 15:23
  39:3 47:2
participation 30:25
particular 27:12,24
parties 4:14 53:7
  53:10
patience 50:5
pay 16:18 21:24
  26:11 30:3 32:21
  35:4,6 38:5,9,13
  39:19 40:5 42:22
  45:2,4,6 46:12
  47:22 49:16,20
payable 11:8
paycheck 43:1
paying 33:3 43:3
payment 42:14
payroll 23:1 42:1
  42:10 47:8
pays 32:16 35:22
PBNDS 35:25
  36:11
pending 7:13
Penthouse 2:14
people 13:1,10,17
  14:5 15:1,15
  20:23 22:2,11,19
  23:3,9 24:7 40:24
  40:25 44:7 45:6
  45:14 46:22 47:2
  49:17
Perera 2:9
perform 32:13 33:9
  33:13 37:23 46:10
  47:14,15
Performance-Ba...
  36:1,4,16 37:3
performed 30:12
  30:23 31:6,17
  40:19
performing 38:2
  47:20

period 12:21 14:6
  32:22
person 12:11,14
  20:6,11 38:2,17
  38:20
personal 15:20
pertaining 5:18
place 53:7
Places 44:21
plaintiffs 1:8,13 2:2
  4:16,18 7:5 13:19
  19:8 20:9 21:6
  26:6 27:1
plaintiffs' 26:24
plan 48:2
please 4:14 5:1,13
  7:11 9:10 20:25
  22:5 23:8 24:9
  34:12 37:15 39:15
  43:13 46:16 48:8
pod 42:11,11,12
point 50:17
pointing 10:1,5,13
policies 30:25
policy 36:6 37:12
  38:24 43:8,18
position 18:6,9,10
  20:13 26:24 46:5
  46:8,11
possibility 22:25
practically 47:25
  48:9
practice 29:16
practices 30:25
prepare 9:23 26:25
prepared 5:10,21
  5:25 6:10 15:6,7
  16:9 30:7 31:19
preparing 15:16
present 4:8,13
  13:20 32:23
pretty 11:15
prevented 27:1
previous 23:22
  28:11 53:5
previously 3:16
  10:6 21:12 34:13

36:15 40:12
pricing 39:17,18
  40:8,9
print 18:24 25:13
prior 12:22 13:7
  35:13
privilege 7:19
probably 13:24
  47:17
problem 29:21
procedure 4:3
  43:18
proceedings 4:1
  51:2 53:9
process 19:23
produced 41:25
production 17:1,14
  27:18
products 31:1
Professional 1:15
  53:4
professionally
  11:13
program 5:17 12:6
  12:12,24 13:11,18
  13:25 14:1,5,17
  14:21 15:2,16,24
  16:5,13 17:11
  21:10 22:24 23:4
  24:8,15 26:12
  27:7 30:12,21,22
  32:13,17,23 34:3
  34:20 36:17 37:9
  37:24 38:21 39:4
  40:19 42:15,22
  43:20,21,22 45:5
  45:14 46:9,19,23
  46:24 47:2,10,13
  48:1,10,12 49:18
  50:15
project 22:4
projected 21:14
  22:15
proper 25:7
protective 28:2
provide 5:16,25
  6:10 7:14,20 9:10

9:10 20:10 30:8
  46:7,8
provided 16:17
  18:8 19:9 21:6
  24:22 26:10 34:10
providing 7:8
  26:19
Public 1:15 52:19
  53:4
pull 13:24
purchase 33:5
purpose 21:16 27:3
pursuant 1:12 4:2
  21:10 32:23 36:12
put 14:8,21 25:16
  26:2 27:18 28:21
Putting 30:2

―――――――――――
          Q
quantity 30:11,22
  35:10,13
question 7:13,25
  8:6,10,13,22 9:2,4
  9:15 24:5 25:7
  40:23 46:13
questions 7:7 9:24
  21:16 50:22,25
  53:9

―――――――――――
          R
R 2:1,3
raised 27:21
rapid 12:10
rate 43:7
reach 50:12
read 9:24 39:15
  52:2
readers 8:11
reading 8:21 10:15
  36:9 53:16,17,18
reads 34:24
ready 8:19 18:11
  18:12
really 20:5 50:8
reason 29:25
receive 38:24 44:3
received 19:12
  22:19,23 23:10

34:9
receiving 44:7
Recess 21:2 24:12
  43:11
recognize 40:13
  43:15
record 4:11 5:1
  20:10,25 23:24
  24:9 30:13,16,17
  43:10,12 50:1,4,6
  50:7
records 20:13,15
  42:19
redaction 35:10,18
reduced 53:8
REFERENCE 3:5
referenced 26:18
  28:5 29:4
reflects 22:11 23:9
regard 32:6 34:6
regarding 5:16
  16:17 26:11 27:17
  30:1,20
Registered 1:15
  53:4
regulatory 36:6
reimburse 35:5
reimbursed 35:3,4
reimbursement
  16:16 17:11 26:10
  34:24 35:22 42:19
reimbursements
  19:12
reimburses 35:7
related 53:10
relating 31:1
relation 53:6
relevant 8:22 26:14
  31:19
rely 18:9
remain 50:10,19
rendered 46:2
repeat 48:8
rephrase 8:5
report 11:2,5
reporter 1:15 4:9
  4:10 22:7 24:11

Menocal  v. The Geo Group, Inc. MELODY JEAN FURST                    3/29/2016

53:4
**REPORTER'S**
53:1
**represent** 7:5
**representation**
  20:17
**representative**
  36:10
**request** 17:1,14
**requested** 53:16
**require** 49:15
**required** 46:11
  53:18
**resolution** 50:12
**resolved** 20:4
**respond** 12:7,9
  32:1,7 46:3,15
**responded** 18:15
  18:21 39:2
**response** 7:20
  39:16 40:4
**responses** 7:8
  19:19 24:23 26:20
  26:21
**responsible** 44:6,10
**rest** 30:1,8 45:3,7
**restroom** 7:10
**review** 8:18 24:6
  44:16
**right** 13:20 19:3,17
  21:23 22:8,14
  23:11 26:5 29:19
  29:23 30:9 32:11
  32:18,25 33:6,10
  33:17,25 34:10
  35:10 37:1,5
  38:14,25 40:6,9
  40:20 41:8,12,20
  41:23 42:2,5,8,12
  45:7,10,23 46:24
  47:3,23 48:4
  50:24
**right-hand** 22:10
  37:8
**road** 7:1
**room** 4:13 5:12
  50:2

**roughly** 45:14
**rows** 14:11
**Rule** 1:4,12
**rules** 4:2 6:25
**run** 23:13,14,15,20
  48:13,18

─────────
**S**
**S** 2:1
**salary** 45:15 47:21
**Sanchez** 3:21
**sanitation** 37:19,22
  38:5,13,16
**saying** 40:5
**says** 23:16,18 26:8
  34:16,19 35:12,18
  36:22,25 37:9
  44:2
**school** 12:3
**scope** 30:11,23
**screen** 21:14 22:10
**scroll** 23:8 24:1
**search** 14:4
**second** 6:25 22:11
  30:14 39:15 40:4
**Section** 21:11 44:2
**see** 21:18 22:5,6,15
  22:18 23:18,21
  24:2,3 28:23
  34:17 35:14,25
  36:22 37:8 40:4
  46:17 50:22,22
**seek** 42:19
**seen** 17:18,19 36:18
  37:16
**sense** 9:7
**sent** 28:10
**separators** 25:25
  26:3
**September** 26:21
**sequential** 25:21
**Service** 33:15,22
**services** 46:2,9
**set** 34:7,8 39:18
  40:8 43:8 49:20
**sheets** 47:8
**Shelby** 2:13 4:19
**shelled** 32:22

**shift** 42:8
**shifts** 41:6,10
**shorthand** 53:7
**shown** 35:13
**side** 22:10
**sign** 46:23 47:7
**signature** 39:23
  52:11 53:13
**Signing** 53:16,17
  53:18
**similarly** 8:15 38:4
  38:8,16
**simply** 26:19 36:9
**single** 34:4
**sir** 11:19,21,24
  12:1 32:15 36:2
  36:19 37:14,17,20
  37:25 38:3,7,11
  38:15,19 39:24
  40:7,14 41:24
  42:3,6,9,13,17
  43:16,23 44:1
  45:8 46:18
**situation** 20:2
**software** 13:25
  14:1,3,21
**sold** 31:1
**somebody** 23:1
**Sorry** 39:13
**South** 2:14
**speak** 8:7 22:7
  24:14 31:12
**speaking** 15:12
  17:25 47:25 48:9
**specialized** 11:22
**specific** 24:20
**specifically** 16:15
  29:7 47:15
**spell** 10:25
**spend** 8:20
**spreadsheet** 14:9
  14:12,21
**ss** 53:2
**staffing** 48:2,9
  49:12
**Standard** 36:17
**Standards** 36:1,5

37:4
**start** 21:13 31:14
**started** 19:23
**state** 4:6,14,25
  24:14 52:13 53:2
  53:4
**statement** 39:14
**statements** 9:25
**STATES** 1:1
**stating** 17:4
**statutory** 36:6
**steps** 16:11
**stipend** 34:19 44:3
**stipulate** 19:14
  24:13,16
**stipulated** 46:12
**stipulating** 24:20
**Street** 1:14 2:6,9
  4:12
**subject** 3:8 5:22
  31:20 33:15
**subjects** 5:8 27:11
  27:12,24 30:2
**subpoena** 16:21
  18:4
**subscribed** 52:12
**subsection** 27:25
**suggestion** 21:4
**Suite** 1:14 2:7,10
  4:12
**summary** 3:7 42:1
  42:16 47:6
**supplemental**
  19:19 24:23 26:20
**supplied** 20:14
**sure** 7:3 9:3 18:10
  18:11 19:6 30:15
  33:21 50:4
**suspend** 50:9
**sworn** 4:6 52:12
  53:6
**system** 12:16,19
  39:10

─────────
**T**
**tab** 5:14 19:21
  20:19 26:2 28:15
  28:21,21 34:12

36:15 39:8,9,25
  40:11,13 43:14
  46:16
**table** 24:5
**tabs** 25:19,22
**take** 6:25 7:15 8:7
  8:17 14:20 16:11
  20:19,20 24:5,6
  25:3 39:12 50:15
**taken** 1:13 4:2 21:2
  24:12 43:11 47:6
  53:7
**talk** 8:20 9:3
**talking** 17:23 33:20
  34:22 41:5
**teaching** 10:4
**tecum** 16:22 18:4
**tell** 7:12 12:19
  21:14 41:18
**telling** 9:21 15:5
  26:1
**tells** 20:22 39:18
  40:5
**Tennessee** 2:4
**terminology** 8:16
**terms** 31:5 46:1
**testified** 4:7 9:18
  41:16
**testify** 5:7,21 7:7
  14:15 16:4,9,16
  17:5,6 26:9 30:1,4
  30:20 31:20 50:16
  53:6
**testifying** 6:18 7:23
  9:19 17:21
**testimony** 5:16,25
  6:10 7:3,21 13:5
  18:5 30:8 52:4
  53:9
**thank** 25:10 28:21
  29:20 50:4
**Thanks** 22:13
**things** 36:11
**think** 13:16 15:2
  19:13 20:4 24:20
  24:21 25:1,7 29:9
  32:24 41:16 50:3

**thought** 6:21 28:25 29:1
**thousand** 24:19
**three** 12:21 13:7,19 19:22 25:5 39:9 39:12 41:15 45:21
**Thursday's** 23:24
**time** 4:8 5:12 7:2 8:1,1,17,20,25 10:21 23:14 24:10 50:2,22 53:7
**timely** 33:2
**times** 23:14
**tired** 7:10 9:1
**today** 5:6,16,22 6:11,18 9:6 14:15 30:5 31:20 46:6
**today's** 9:23
**told** 16:8,10 17:9 18:1,14,16,20,21 27:16 32:24 41:17 50:21
**top** 15:25 16:3,10 18:2 36:24 37:8
**topic** 6:10 20:11 31:16
**topics** 26:17 27:5 30:20
**total** 13:4 16:4,12 17:7 18:5 19:10 20:12 26:15 27:7 30:3,3 32:25
**Tower** 2:14
**training** 11:22
**transcript** 53:8
**transcription** 52:3
**true** 52:3 53:8
**trust** 8:2
**trustees** 39:19 40:6
**truth** 4:6 53:6
**try** 8:19 9:11
**turn** 21:20 34:12 35:24 36:14,20 37:15 39:7,25 43:13 46:16
**turned** 23:2
**Turner** 2:8,9 4:17

4:17 49:25 50:2
**turnover** 12:10 13:3
**two** 11:5 13:9 23:21 39:13 40:1 42:25
**type** 9:12 30:12,23 45:12 47:19
**typewritten** 53:8

**U**
**uh-huh** 9:11
**unable** 12:18
**unclear** 8:6
**underneath** 35:9 35:17,18
**understand** 5:6 6:17 7:25 8:13 9:2 16:7 19:7 20:12 32:3 46:13
**understanding** 5:15,19,24 9:6 31:22 34:2
**understood** 8:12
**uniform** 47:9
**uniformly** 37:13 38:1,5,9,12 43:24 47:1
**unique** 22:23 41:22
**UNITED** 1:1
**use** 9:11 30:24

**V**
**v** 1:9
**valuation** 31:24
**value** 30:24 31:5,17 31:19 32:6,7,9 45:13,14 46:1,1,8 46:14
**valuing** 31:12
**variation** 34:5
**varies** 12:20
**various** 3:9
**Vaughan** 2:13
**verify** 20:21
**Visa** 30:21
**Volume** 1:4 3:2 52:25
**voluntary** 5:17

12:6,12,24 13:10 13:18 14:16 15:2 15:16,24 16:5,13 17:10 21:9 22:23 23:4 24:8,15 26:12 27:6 30:12 30:22 32:13,23 34:3 36:17 37:10 37:23 38:20 39:4 40:19 42:15,22 43:22 44:24 45:5 46:9,19,23 47:9 47:12 48:1,10,12 48:19,22 49:9,17 50:14
**volunteer** 45:13 47:13
**volunteered** 45:4
**VWP** 17:7 26:12,15 30:23 31:17 48:3

**W**
**wage** 31:6,9,13 33:16,20 47:17,20 49:21
**wages** 33:22 49:20
**wait** 42:25
**waived** 53:17
**Waiver** 30:21
**walk** 6:25
**wall** 22:16
**want** 8:24 10:25 44:7,25
**wanted** 20:13
**wanting** 32:4
**warden** 11:6
**way** 8:15 22:6 31:11
**we'll** 24:9 25:13 26:4 28:6,11 34:14
**we're** 5:14 8:17,19 8:25 10:8 19:3 21:4,8,13 23:24 24:4,5,6 25:4,11 25:15 29:12 41:5 46:11 49:25 50:3 50:11

**we've** 19:23 24:21 24:21,22 27:18 28:8 30:2 41:16
**Wednesday's** 23:23
**weeks** 42:25
**went** 48:11
**WHEREOF** 53:12
**witness** 20:14 22:5 26:25 53:12
**words** 33:19 45:4
**work** 5:17 12:3,5,6 12:12,24 13:11,18 14:16 15:2,16,24 16:5,13 17:10 20:8 21:9 22:24 23:4 24:8,15 26:12 27:6 30:12 30:12,22,23,24 31:5,12,17 32:6,7 32:9,13,23 33:3,9 33:13,24 34:3,19 36:17 37:9,23 38:2,21 39:4 40:19,19 42:7,15 42:22 43:20,21,22 44:8,12,23 45:1,1 45:5,12,13,13,19 45:21 46:9,19,23 47:10,12,14 48:1 48:10,12 49:17,18 50:15
**worked** 12:24 22:2 41:19 50:13
**worker** 37:19,22 38:6,9,13,17 44:24
**workers** 41:9 48:19 48:22 49:9
**works** 38:20 44:15 48:2,11

**X**
**X** 3:1 53:16

**Y**
**Yeah** 47:8
**year** 12:6,7,9 32:21
**years** 6:23,23,23,23

11:15 12:21 13:7 13:9,19 25:6

**Z**

**0**
**00001514** 21:7
**00004559** 21:7
**0004** 34:17

**1**
**1** 3:17 5:14 10:7,14 16:4 21:12 35:11 38:2,6 41:22
**1,000** 13:14,17
**1,680** 40:18
**1.00** 34:25 36:25 44:3
**1/12/16** 3:11
**1/13** 21:25 22:3
**1:14-cv-02887-J...** 1:2
**10** 3:6,17 25:11,12 25:15,18 26:22,23 35:25 36:11
**10:28** 23:17
**1025** 4:12
**105** 38:12
**11** 3:8 19:21 20:19 25:12,14,19 26:7 28:20 29:3 40:11 40:13
**11:51** 23:18
**12** 3:10 28:10,12,13 28:15,18 29:4,5 39:8,9 45:9
**12/10/12** 3:21
**120** 38:16
**1212** 2:4
**12th** 53:13
**13** 3:12 39:9,11,25 45:9
**14** 3:14 21:25 22:19 23:10,16 40:1,2,3
**14-163** 3:13
**14-189** 3:14
**1400** 43:15
**1402** 44:2

Menocal   v. The Geo Group, Inc. MELODY JEAN FURST                    3/29/2016

Page 61

| | | |
|---|---|---|
| **15** 23:17,18 35:24 | **3:29** 21:2 | **80** 12:7,8 13:1 38:8 |
| **1514** 21:13 22:9,15 23:16 | **3:40** 21:2 | **80203** 1:14 2:10 4:13 |
| **1515** 22:11,18 23:16,17 | **3:49** 24:11,12 | **80218** 2:7 |
| **1516** 23:6,17 | **30** 11:15 | **80246** 2:15 |
| **1517** 23:7,18 24:7 | **30(b)(6)** 1:4,12 3:9 3:17 17:2,14 | |
| **1535** 2:6 | 21:11 24:21 25:7 26:25 | **9** |
| **1612** 41:18 | **300** 2:7 24:19 | **9** 3:21 26:7 27:18 27:22 28:6,9,9,19 |
| **1613** 42:1 | **34** 3:19 | 29:3 40:12 43:14 |
| **1680** 40:24 41:6,9 | **37208** 2:4 | |
| **1900** 4:12 | **39** 3:12 | |

| | | |
|---|---|---|
| **2** | **4** | |
| **2** 3:19 26:9 28:15 34:14,15 36:15 53:14 | **4** 3:3 10:3,14 | |
| **200** 24:18 | **4:10** 24:12 | |
| **2003** 10:20 | **4:22** 30:18 | |
| **20064016972** 53:4 | **4:41** 43:11 | |
| **2012** 15:3,23 32:22 40:20 41:8 | **4:43** 43:11 | |
| **2014** 22:20 23:10 23:16,18 26:11 | **4:53** 51:3 | |
| **2015** 26:22 | **40** 3:14,21 | |
| **2016** 1:5,14 3:2 4:10 26:7 51:4 52:14 53:13 | **450** 1:14 2:10 | |
| **2018** 53:14 | **4559** 24:7 | |
| **25** 3:6,8 | **46** 36:15 | |
| **26** 16:17,21 18:14 19:8 26:10,18 27:16 | **49** 36:21 | |
| **26(a)(1)** 3:19 | **5** | |
| **26th** 27:17 | **5/13** 22:3 | |
| **28** 3:10 | **5/14/14** 3:7 | |
| **29** 1:5,14 3:2 4:10 | **53** 37:7 | |
| **29th** 51:4 | **56** 23:9 | |

| | | |
|---|---|---|
| **3** | **6** | |
| **3** 5:14,16,25 6:2,4 6:10,13,15 10:3 10:14 17:7 21:11 30:11,20 31:16 | **6** 28:15,21 | |
| **3/29/16** 52:25 | **60** 37:15 41:22 42:2 42:4,4 | |
| **3/9/16** 3:8 | **600** 1:13 2:9 | |
| **3:07** 4:11 | **62** 46:17 | |
| **3:08** 1:14 | | |

| | | |
|---|---|---|
| | **7** | |
| | **7** 34:12 36:15 46:17 | |
| | **7/23** 39:17 | |
| | **70** 22:11,21,22 23:3 38:5 | |
| | **720** 2:14 | |
| | **7th** 2:4 | |

| |
|---|
| **8** |