# Exhibit I



Naomi G. Beer
Tel 303.572.6549
Fax 303.572.6540
BeerN@gtlaw.com

January 28, 2019

VIA EMAIL
Juno Turner
Elizabeth Stork
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, New York 10017
jturner@outtengolden.com
estork@outtengolden.com

    Re:    *Alejandro Menocal v. The GEO Group, Inc.* - Case No. 2014-CV-02887

Dear Juno and Elizabeth,

    I write to follow up on my letter of December 21, 2018, our meet and confer telephone call of January 15, 2019, and other recent correspondence regarding various discovery issues.

    As a preliminary matter, and as discussed during our meet and confer call and also in the context of our discussions regarding the class list, the lengthy government shutdown has impacted discovery because personnel at the government who are necessary to the discovery process were furloughed, and those individuals who have not been furloughed were extremely difficult to reach due to the press of other matters during the shutdown. While the shutdown has now ended, there will be a backlog and delays while the government gets back to normal operations and deals with the myriad of matters that piled up during the past weeks. These issues most directly impact GEO's ability to produce certain information and/or data that must be obtained from the government (such as answers to the class list questions posed by Plaintiffs and the collection of other class-list-related data) and also those areas of discovery for which GEO must first obtain government approval, or which the government will insist on reviewing, prior to production. We do expect that the protective order negotiated by the parties and recently approved by the Court will help streamline the ICE approval process. Unfortunately, however, the protective order does not eliminate the need for GEO to seek approval prior to certain productions.

    That being said, GEO is committed to doing what it can to move discovery forward in an orderly fashion. In that regard, as discussed on our call, GEO previously sent inquiries to its contacts at ICE in an effort to obtain responses to your questions regarding the class list and has continued to follow up (and will continue to follow up) on that issue and others. Unfortunately, even with the shutdown having ended, GEO cannot predict when it might receive a response. As to the requested site inspection, we will send you a separate letter with additional details regarding our understanding of the ICE approval process as it relates to the site inspection so that the parties can move that issue as far forward as possible.

January 28, 2019
Page 2

### Plaintiffs' First and Second Set of Requests for Production of Documents

General Issues:

Your letter asked us to confirm how GEO searched for email correspondence and other custodial ESI. As we explained on our call, as new counsel on the case we have been evaluating what was done previously. We have also been reassessing discovery generally in light of current procedural posture of the case. It is our view that rather than using historical search terms as a starting point, the most efficient course going forward is to develop new search terms with which to supplement past productions and to conduct future discovery. We welcome your input regarding these new search terms and expect to be in a position this week to share our planned search terms and proposed approach, with a goal of having a call with our respective ESI teams the week of February 4. If anything changes with respect to this timeline, we will let you know.

Your letter next asked about certain files, listed in your letter by Bates Number, for which it appears that only slip sheets were produced without any associated documents. We have investigated those Bates Numbers and found that the native files associated with those documents consist of 27 PowerPoint files and one excel spreadsheet. We anticipate being able to produce those this week.

Your letter next asked us to confirm that GEO is not withholding documents created by ICE that are within GEO's custody or control. We can confirm that if documents in GEO's custody or control are otherwise responsive, GEO is not withholding such documents from production on the grounds that the documents may have been created by ICE. This general statement, however, is subject to the caveat that certain documents cannot be produced until GEO receives approval from ICE to produce them. Your letter identifies the National Detainee Handbook as a specific example of a document in this category that has been withheld. The 2016 National Detainee Handbook is available online at www.ice.gov. You confirmed that you were aware of that, but wanted GEO to produce earlier versions as well. We are preparing these documents for production. We also asked if there were other specific examples of documents in this category. You explained that you were able to identify this document because it was noted in the scheduling order, but you did not have other examples at this time.

Your letter also seeks production of unredacted copies of certain documents that had been produced with "PII" redactions. Given that a Protective Order with PII protections is now in place, we believe that future productions applying new search terms as discussed above, and made pursuant to the protective order, will address this request. That being said, if there is a particular document with PII redactions that you need sooner, please let us know by Bates Number and we can look into producing it sooner.

Request Nos. 1–3

Your letter raises concerns about GEO's prior production of VWP reimbursement documents because they only provide "Batch Summary" information. GEO has collected additional VWP reimbursement documents from Keefe Commissary Network, however, these documents need ICE approval before they can be produced. We are seeking that approval, but at this point we cannot say when we will hear back from ICE on that request. We believe that once

Greenberg Traurig, LLP | Attorneys at Law

www.gtlaw.com

January 28, 2019
Page 3

this supplemental production is made, it will address your concerns with these Requests. If you have additional questions once you have reviewed this supplemental production let us know.

We also want to clarify what appears to be some confusion about the records previously produced. The documents that you cite in your letter at Bates Nos. GEO_MEN_00054503 and GEO_MEN-00042018 for the proposition that GEO maintains records of hours worked under the VWP do not reflect actual numbers of hours worked. Rather, these documents reflect a schedule in the form of a standard number of hours per shift based on job assignment – the actual hours worked by any person on any given day may be different than the schedule. We do not believe that GEO tracks actual hours worked, but we are confirming and will let you know if we learn differently.

Request Nos. 4 & 9

These Requests seek "policies, guidelines or authority" pursuant to which GEO conducted the VWP (Request No. 4) and the HUSP (Request No. 9). We did not discuss these Requests during our meet and confer, but your letter asserts that these Requests encompass many more documents than what GEO has produced. In addition to HUSP and VWP policies, you believe the following documents would be responsive as well:

- Any orientation, training or other documents (including ESI) intended for GEO employees, contractors or detainees that refer or relate to the HUSP or VWP; and

- GEO's contract with ICE, as well as documents that relate to its contract with ICE.

GEO has produced orientation and training documents, including various manuals and similar documents (*see, e.g.,* Bates Nos. GEO_MEN 00001395–1513; 6510–12). Other training documents are also included within the set of PowerPoints discussed above. As to contracts, as noted in my December 21, 2018 letter, we are preparing to produce additional contract documents. Finally, to the extent that any further supplementation may be appropriate, we expect that it will be addressed through application of the new search terms discussed above.

Request Nos. 5–7 (and related Interrogatory Nos. 5 & 6)

We briefly discussed these Requests during the meet and confer. In your letter, you assert that these Requests encompass "all" documents referencing disciplinary or corrective action taken against class members, including charge packets, computerized records of disciplinary action, and notices sent to GEO staff or to ICE about disciplinary actions. We discussed the potentially sweeping scope of these Requests given the use of the word "all." We appreciate your clarification that the documents you seek here are limited to the issues in the case—*i.e.*, disciplinary records related to the VWP and HUSP programs. We are conducting searches with that clarity in mind.

January 28, 2019
Page 4

It is also our understanding that disciplinary records are largely contained within the detainee files. We discussed detainee files briefly during our meet and confer, including whether Plaintiffs wanted all detainee files or if a sample might suffice and agreed to table the question of detainee files for now so that we can focus on other Discovery first.

### Request No. 8

During the meet and confer, you clarified that this Request, at bottom, seeks a class list and also to identify which detainees were tasked to work on particular work details on any given day. We have already produced the majority of a class list and we are working to supplement it to the extent feasible. We are considering the request as it relates to work details, and will let you know to what extent such records are available.

### Request No. 12

This Request sought documents "summarizing or constituting any contract [GEO] executed to purchase services, including cleaning services, to be delivered at the Aurora facility..." We agree that GEO's objection to this Request as not related to class certification issues is no longer applicable given the Court's order granting class certification. However, given the breadth of the Request – which as written arguably includes the purchase of services of any kind even if wholly irrelevant to the claims alleged – GEO's other objections, including relevance, remain applicable. We would like to further meet and confer regarding the scope of this Request (including whether you are really seeking documents relating to contracts for services of any kind) which will help guide our investigation into what, if any, supplementation might be appropriate.

### Request Nos. 17–21

These Requests seek various documents relating to the implementation and enforcement of the HUSP (Request No. 17) and the VWP (Request No. 19), "custodial maintenance of housing units or 'pods'" (Request No. 18) and "Plaintiffs" performance of work, tasks and/or duties pursuant to the HUSP (Request No. 20) and the VWP (Request No. 21). Although the word "video" appears nowhere in any of these Requests, you now insist that these Requests contemplate production of surveillance video footage. We disagree. Yet, even assuming the Requests could fairly be read to encompass such footage, it is our understanding that GEO does not have such footage from the class period. We are further investigating the video issue and if our understanding changes we will let you know.

As to your inquiry in this section regarding the VWP, please see the above discussion of Request Nos. 1-3.

Finally, you asked for "confirmation that GEO has produced all ESI responsive to this Request, including communications or memoranda to GEO officers regarding the implementation and enforcement of the HUSP and VWP and custodial maintenance of the Aurora Facility." We can confirm that GEO has produced what it has located thus far. That being said, we expect that the new search terms discussed above will cover any additional supplementation that might be appropriate.

January 28, 2019
Page 5

### Request Nos. 23 & 24

For these Requests, your letter asks us to "confirm that GEO has produced *all* documents that refer or relate to the purpose, results, or effects of the HUSP and VWP, and has not limited its response to documents relating to the named Plaintiffs, and/or the time period during which the named Plaintiffs were detained at Aurora." Again, we can confirm that GEO has produced what it has located thus far. That being said, we expect that the new search terms discussed above will cover any additional supplementation that might be appropriate.

### Request No. 30

For this Request, you ask us to "confirm that GEO has produced all documents, including videos, PowerPoint presentations, handouts, and notes from presentations, relating to any trainings for GEO's employees regarding enforcement of Aurora rules, regulations, and/or policies including guidelines for use of force or use of punishment or discipline in enforcing such rules, regulations, and/or policies." With respect to training documents, please see the discussion of Request Nos. 4 and 9 above.

### Request Nos. 32 & 33

Your letter asserts that our relevance objections to these Requests are not correct. As GEO noted in response to Request No. 32 (which seeks documents reflecting the estimated costs of operating the Aurora facility without detainee work, tasks and/or duties), responsive documents do not exist. Regarding Request No. 33, your letter states that compensation paid to GEO employees is relevant because Plaintiffs' calculation of restitution would include the cost to GEO of employee leave, fringe benefits, and other costs attendant to recruiting, screening, hiring and retention of workers. While we understand your explanation, your stated theory and measure of damages (which GEO reserves the right to challenge), it does not support the need for GEO to produce pay information for individual GEO employees and GEO stands on its prior objections. We further note that pursuant to the Service Contract Act of 1965, the wages and benefits of GEO's non-exempt employees are set by Department of Labor Wage Determinations. The Department of Labor Wage Determinations are public records and incorporated into GEO's contract.

## Plaintiffs' First and Second Sets of Interrogatories

### Interrogatory Nos. 3 & 4

You assert that the names and contact information of employees who supervised detainees subject to the HUSP and the VWP are relevant to this case. In July 2017 and in response to these interrogatories, GEO produced an employee roster for the Aurora facility in Excel format. See GEO_MEN 00020548. The employee roster includes each employee's name, address, job title, hire date, and termination date. We believe this satisfies these Interrogatories, but if you disagree, please let us know.

January 28, 2019
Page 6

### Interrogatory No. 5

You assert GEO's response is incomplete and asks us to amend our response. We agree that the most recent Protective Order resolved GEO's objections related to the Privacy Act. We also agree that GEO's objection related to "class action issues" is no longer applicable. With respect to the remaining points raised, please see the discussion regarding Request Nos. 5-7 above.

### Interrogatory No. 8

This Interrogatory asks GEO to identify GEO facilities other than the Aurora facility which implement policies identified in response to Interrogatory No. 7. Interrogatory No. 7 asked GEO to describe policies that resulted in disciplinary or corrective action being taken against detainees "for refusing to work pursuant to the [HUSP] *in the Aurora Facility*" (emphasis added). As a preliminary matter, given that Interrogatory No. 7 is, on its face, limited to the Aurora facility, it makes no sense that other facilities would implement an Aurora policy. That being said, even if Interrogatory No. 8 could fairly be read to seek information regarding facilities other than Aurora, we disagree that GEO's policies at other facilities are relevant to whether GEO's conduct at the Aurora facility was authorized or required by ICE or was unjust. The policies in effect at other facilities have no bearing on what ICE did or did not authorize at Aurora, nor do they have any bearing on anything GEO did or did not do at Aurora. That being said, GEO has produced various Aurora facility policies, all of which have been expressly approved by ICE. Geo is also, as discussed above, producing the ICE National Detainee Handbooks. In addition, based on our review, it appears that complete versions of ICE's Performance Based National Detention Standards ("PBNDS") may not have been produced. We are, therefore, preparing to produce the PBNDS documents as well. Once GEO completes this production we believe this Interrogatory will be fully answered.

### Interrogatory No. 11

You assert that GEO's response to this Interrogatory is incomplete, stating that "Mr. Gaytan's VWP assignment is not reflected in the documents listed by GEO." Your assertion is misplaced. A detainee's VWP job assignment is included in his or her detainee file, and the various work assignments for Plaintiff Gaytan are included within his detainee file. *See* GEO_MEN 00021935-21973.

As to the hours worked, nothing is false about GEO's responses to this Interrogatory. To the contrary, as explained in connection with Request Nos. 1-3 above, the documents that you cite in your letter at Bates Nos. GEO_MEN_00054503 and GEO_MEN-00042018 for the proposition that GEO maintains records of hours worked under the VWP do not reflect actual number of hours worked. Rather, these documents reflect a schedule in the form of a standard number of hours per shift based on job assignment – the actual hours worked by any person on any given day may be different than the schedule. We do not believe that GEO tracks actual hours worked, but we are confirming and will let you know if we learn differently.

Interrogatory No. 12

You assert that GEO's response is incomplete and asked us to produce all records of Plaintiffs' assignments to clean or explain why GEO failed to comply with its obligation to maintain such records in connection with this action. You also asked us to "confirm whether GEO has any other records – including but not limited to location monitoring records or video taken within the facility – that reflect the time worked by Plaintiffs."

It is our understanding that the assignment sheets you reference in your letter were discarded at the end of each day in the ordinary course of business. Given that the class period ends even before GEO was served with the Complaint, it is our understanding that these records no longer exist. That being said, we are further investigating this issue and if anything changes we will let you know.

As to location monitoring records, the Aurora facility does not monitor detainees' movements in ways that specifically relate to the VWP. As to video, please see the discussion regarding Request Nos. 17-21 above.

Interrogatory No. 15

You assert that GEO's response to this interrogatory is incomplete because GEO has produced evidence showing that the VWP rate is higher than $1 per day at other GEO facilities. And you ask us to explain how GEO determined the rate to be paid to Plaintiffs under the VWP at the Aurora facility.

GEO's response that the rate to be paid Plaintiffs "for the VWP is the amount set in GEO's government contract with the Department of Homeland Security, Office of Immigration and Custom Enforcement" is complete. GEO's government contract for the Aurora facility provides that reimbursement for the VWP will be at the "actual cost" of $1.00 per day per detainee.

Interrogatory No. 16

You assert that GEO's relevance objection to this Interrogatory is incorrect. Specifically, you assert:

> [T]he cost of running the Aurora facility without detainee labor is part of the circumstances relevant to whether GEO was unjustly enriched by paying Plaintiffs' $1 per day under the VWP. To the extent GEO continues to object to these requests based on Plaintiffs' stated method of calculating damages, Plaintiffs have stated that their calculation of restitution would include the cost to GEO of employee leave, fringe benefits, and other costs attendant to recruiting, screening, hiring and retention of workers, and Plaintiffs have further stated that their method is "subject to further refinements as the parties undertake additional fact and expert discovery." ECF No. 149 at 6-7.

January 28, 2019
Page 8

      As noted in GEO's objection, this interrogatory has no bearing on the VWP Class's stated method of calculating damages. In the proposed Scheduling Order dated August 4, 2015 (Doc. No. 28), plaintiffs sought unjust enrichment damages for "the difference between the amount [plaintiffs] were paid for their work and the fair market value of their work." That has been plaintiffs' stated calculation of unjust enrichment damages ever since. Our position remains that, to answer Interrogatory No. 16, GEO would need to assess the overhead costs of administering its program, the duties of which are spread across dozens of GEO employees, and make significant assumptions that would render any calculation wholly speculative. We are happy to meet and confer in an attempt to find middle ground between our positions.

      Thank you for your consideration. If you would like to discuss any of this further, please just let us know.

                                  Very truly yours,

                                  Naomi G. Beer

NGB/je
cc:    Scott Schipma (via email schipmas@gtlaw.com)
       David Palmer (via email palmerd@gtlaw.com)
       Dawn Ellison (via email ellisond@gtlaw.com)
       Dana Eismeier (via email deismeier@bfwlaw.com)
       Mickey Ley (via email mley@bfwlaw.com)
       Ossai Miazad (via email om@outtengolden.com)
       Rachel Dempsey (via email rdempsey@outtengolden.com)
       Adam Koshkin (via email akoshkin@outtengolden.com)
       David Lopez (via email pdl@outtengolden.com)
       Alexander Hood (via email alex@towardsjustice.org)
       David Seligman (via email david@towardsjustice.org)
       Andrew Schmidt (via email andy@towardsjustice.org)
       R. Andrew Free (via email Andrew@ImmigrantCivilRights.com)
       Brandt Milstein (via email brandt@milsteinlawoffice.com)
       Andrew Turner (via email aturner@laborlawdenver.com)
       Hans Meyer (via email hans@themeyerlawoffice.com)