# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-02887-JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA
*on their own behalf and on behalf of all others similarly situated*,

     Plaintiffs,

v.

THE GEO GROUP, INC.,

     Defendant.

---

## PLAINTIFFS' UNOPPOSED MOTION TO AMEND NOTICE PLAN

---

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

I.      Class Data Remains Only Partially Ascertainable. ........................................... 1

II.     Mailed Notice Will Not Be Cost-Effective. ...................................................... 2

        A.      Mailed Notice Would Be Minimally Effective Or Counterproductive. ......... 3

        B.      The Cost of Mailed Notice Is High. ..................................................... 4

III.    Publication Notice Is the Best Notice Practicable Under the Circumstances. ........... 5

CONCLUSION ............................................................................................................. 6

# INTRODUCTION

Plaintiffs hereby move to modify the current Order Approving Plaintiffs' Class Notice Plan (ECF 163) ("Notice Plan") by eliminating the mailed component of the class notice. Through the process of gathering class data and acquiring bids for class notice, it has become clear that mailed notice is not cost-effective insofar as it is unduly expensive and carries a low chance of reaching the majority of class members. Publication notice through radio and social media advertising, which would remain unchanged by this adjustment, will likely be far more effective in reaching the class.

Plaintiffs also seek an extension of time to initiate notice to the class. The Court granted Plaintiffs' Motion for Class Certification on February 27, 2017. ECF No. 57.[1] The Notice Plan, approved on January 14, 2019, ordered that mailed notice and publication notice should be sent 30 days after Class Counsel receives a sufficient class list. *See* ECF No. 163 (Notice Plain) at ¶¶ 9-10. Although the sufficiency of the class list remains in doubt, as discussed below, the notice deadline currently falls on June 21, 2019. Due to the delay caused by the bidding process and the need to resolve the issue of mailed notice, Plaintiffs request that the deadline be extended to thirty days following the Court's entry of an order resolving this motion. GEO does not oppose this motion.

I.   **Class Data Remains Only Partially Ascertainable.**

Despite the parties' best efforts, which include communications with U.S. Immigration and Customs Enforcement ("ICE") about records within the agency's

---

[1] The Tenth Circuit Court of Appeals affirmed the Court's order on February 9, 2018.

custody, the data in the class list remains incomplete. On November 30, 2018, The Geo Group, Inc. ("GEO") produced a confidential Excel spreadsheet of names, alien numbers, countries of origin, and addresses for class members. *See* Declaration of Michael J. Scimone in support of Plaintiffs' Motion to Amend Notice Plan ("Scimone Declaration.") ¶ 5. In many cases, the list contained 15 or more addresses for a single class member. *Id.* ¶ 6. Although this list contained data for approximately 37,300 class members, it only reached back to January 2007. *Id.* The parties have met and conferred several times in an effort to supplement these data. *Id.* ¶ 4. GEO has attempted to cull data prior to 2007 using a manual process, and requested additional data from ICE. *Id.* ¶ 7. By letter dated May 17, 2019, GEO informed Plaintiffs' counsel that while it had obtained some additional information from ICE, it was incomplete, and "may not be up to date or accurate." *Id.* ¶ 8. On May 22, 2019, the parties conferred again, at which time GEO confirmed that there were no further avenues to obtain contact information.[2] *Id.* ¶ 9.

## II. Mailed Notice Will Not Be Cost-Effective.

In the course of obtaining bids from notice administrators, Plaintiffs have concluded that mailed notice will not be cost-effective. Mailed notice to class members whose last known mailing addresses are in Mexico and Central America would be relatively ineffective in reaching the intended recipients, and the cost of sending that notice would be high, thus outweighing the likely benefit.

---

[2] Although the class list remains incomplete, it appears that it will not improve. Therefore Plaintiffs have calculated the 30-day deadline to send notice from the date on which the parties conferred about GEO's efforts to locate contact information, which places the current deadline at June 21, 2019.

Even for addresses located within the U.S., it is not clear from the class data which addresses are still valid. The list contains an average of approximately 7.3 addresses per class member, suggesting that many class members have moved several times and that many of the addresses – which go back to 2007 – are stale. Scimone Decl. ¶ 6. Unlike in many class actions, the dataset lacks Social Security numbers or other unique identifiers that could assist in tracing a change of address. *Id.* In addition, many class members have common surnames, further complicating the task of sorting through the data. *Id.* It would take considerable effort to ascertain which of those addresses are viable, making mailed notice within the U.S. impractical.

### A.   Mailed Notice Would Be Minimally Effective Or Counterproductive.

Plaintiffs attempted to obtain bids for mailed notice from three different notice administrators. Scimone Decl. ¶ 10. One administrator declined to make a proposal, arguing that mailing notice in Mexico and Central America was too complex in light of security and reliability concerns. *Id.* at ¶ 11; Declaration of Scott Simpson ("Simpson Decl."). Advocates for migrant workers, whom Plaintiffs' counsel consulted in connection with the notice process, largely agreed. *See* Declaration of Nan Schivone ("Schivone Decl."); Declaration of Anna Joseph ("Joseph Decl."); Declaration of Nicole Ramos ("Ramos Decl."). Their experience confirms that mail service is infrequent in many rural areas in Mexico and Central America, and mail to those areas often goes undelivered. Ramos Decl. ¶ 5; Simpson Decl. ¶ 4. Similarly, mail sometimes takes months to go out, and packages and letters are often lost. *See* Joseph Decl. ¶ 4. Attorneys who regularly practice law in Mexico and/or have a need to send sensitive

3

documents in the mail do not use the Mexican mail system, and opt for alternative services. *See id.* ¶¶ 3-4; Ramos Decl. ¶ 5; Schivone Decl. ¶ 4.

However, the available alternatives to the public mail system would be no more effective. The two administrators who made proposals included the option of using private couriers, *see* Scimone Decl. ¶ 12, but argued that delivery by courier still raised security and reliability concerns. Simpson Decl. ¶ 5. For example, an individual courier making deliveries in a rural area is not materially different from the individual carriers sent by the Mexican mail system to those same areas. *See* Ramos Decl. ¶ 4 ("mail service is often nothing more than a single individual on a motorcycle"). Couriers are also known to place packages and letters into the mail when they cannot deliver the package themselves. Simpson Decl. ¶ 5. Further, unlike for mail in the United States, there is no database that can be used to verify addresses to which notice is mailed. *Id.* ¶ 6.

Moreover, providing notice by mail to class members in Mexico – the location of the overwhelming majority of last known class member addresses – raises security concerns. Schivone Decl. ¶ 3. In many parts of Mexico, especially outside of urban centers, daily life is highly monitored by organized crime, and a letter from the United States or from a claims administrator is likely to attract attention. Ramos Decl. ¶ 4. Such mail may be intercepted and used as a basis for extortion. *Id.*; Schivone Decl. ¶ 3.

**B.     The Cost of Mailed Notice Is High.**

The marginal benefits and possible risks of mailed notice come with a high price tag. Class Counsel have obtained bids from three third-party administrators, two of

4

which bid on the mailed component (the third, as noted above, declined to do so). Scimone Decl. ¶¶ 11-12. The least expensive bid for the mailed component alone was over $80,000. *Id.* ¶ 13. The other bid quoted $70,000 to print and prepare the notice, exclusive of the cost of each individual mailed item. *Id*. ¶ 14. Costs for courier service, if that option were used, would be significantly higher. *Id*. ¶ 12; Simpson Decl. ¶ 5. The cost of mailed notice, even in the cheapest scenario, is thus approximately double the cost of radio advertising, using the most favorable bid in each category. Scimone Decl. ¶ 15.

### III. Publication Notice Is the Best Notice Practicable Under the Circumstances.

A notice plan that omits mailed notice in favor of radio and social media advertising will provide the "best notice practicable under the circumstances." *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) (quoting Fed. R. Civ. P. 23(b)(3)). "[A]ctual notice to each party intended to be bound by the adjudication of a representative action" is not needed. *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005). Instead, individual class members must receive individual notice only if they can be identified "through reasonable effort." *Id*. Courts in the Tenth Circuit have approved class notice even if it cannot be mailed directly to class members. *See, e.g.*, *id*. at 946 (upholding notice plan even though notice was sent to brokerage houses and not directly to class); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 696 (D. Colo. 2006) (Kane, J.) (publication notice sufficient where it would take "months of effort and huge expenditure" to create a list of potential class members in ADA action); *cf. In re U. S. Fin. Sec. Litig.*, 69 F.R.D. 24, 47 (S.D. Cal. 1975) (finding

5

that adequate notice to any "unknown and not easily ascertainable class members" was "assured" where it was published in the foreign countries where class members were likely to be).

Publication notice is practical here because even after substantial effort, the parties have had only limited success in identifying the class members. In *Lucas*, this Court approved a class notice plan that did not include mailed notice because the administrator would have had to purchase marketing lists to find class member addresses, and, once notice was mailed to those addresses, there was no guarantee the recipient was a class member. *Lucas*, 234 F.R.D. at 696. Taking such steps would have gone "above and beyond the 'reasonable efforts' required for identifying individual class members under FRCP 23(c)(2)(B)." *Id.* Similarly, here, Plaintiffs cannot verify the addresses of class members, and, even if they mailed notice to addresses they do possess, receipt is far from guaranteed because the Mexican mail system is unreliable. Taking steps to mail notice to these addresses – despite the security and reliability concerns related to the Mexican mail service – would require Plaintiffs to go "above and beyond the reasonable efforts" required to contact class members directly. *See id.* Instead, Plaintiffs' robust media notice plan is "best notice practicable under the circumstances," and satisfies absent class members' due process rights. *See Amchem*, 521 U.S. at 593.

## **CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that the Court modify the Notice Plan to eliminate the mailed component of the notice. A proposed order reflecting this change is attached to this motion.

Dated: June 18, 2019

Respectfully submitted,

By: /s/ *Michael J. Scimone*

Michael J. Scimone
Ossai Miazad
Elizabeth Stork
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone:  (212) 245-1000
Facsimile:  (646) 509-2060
E-Mail: mscimone@outtengolden.com
E-Mail: om@outtengolden.com
E-Mail: estork@outtengolden.com

Rachel Dempsey
Adam Koshkin
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
E-Mail: rdempsey@outtengolden.com
E-Mail: akoshkin@outtengolden.com

David Lopez
**OUTTEN & GOLDEN LLP**
601 Massachusetts Avenue NW
Second Floor West Suite
Washington, D.C. 20001
Telephone:  (202) 847-4400
Facsimile:  (202) 847-4410
E-Mail: pdl@outtengolden.com

Alexander Hood
David Seligman
Andrew Schmidt
Juno Turner
**TOWARDS JUSTICE**
1410 High St., Suite 300
Denver, CO 80218
(720) 441-2236

7

alex@towardsjustice.org
david@towardsjustice.org
andy@towardsjustice.org
juno@towardsjustice.org

R. Andrew Free
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

Brandt Milstein
**MILSTEIN LAW OFFICE**
1123 Spruce Street
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

Andrew Turner
**THE KELMAN BUESCHER FIRM, P.C.**
600 Grant St., Suite 825
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com

Hans Meyer
**MEYER LAW OFFICE, P.C.**
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*

8

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of June, 2019, a true and correct copy of the foregoing **MOTION TO AMEND NOTICE PLAN** was electronically filed with the Clerk of the Court using the CM/ECF electronic filing system, which will send notification to all counsel of record.

*s/ Michael J. Scimone*
Michael J. Scimone

9