IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-CV-02887-JLK-MEH

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

        Plaintiffs,

v.

THE GEO GROUP, INC.,

        Defendant.

**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL (ECF 181)**

Defendant The GEO Group, Inc. ("GEO"), through undersigned counsel, submits this opposition to Plaintiffs' Motion to Compel (ECF 181). First, GEO does not oppose Plaintiffs' request for a second Rule 30(b)(6) deposition. GEO does dispute that Plaintiffs are entitled to a second 30(b)(6) of GEO as a matter of right, but GEO has agreed to allow a second deposition subject to ongoing conferral on reasonable restrictions and modifications to the topics identified in Plaintiffs' Notice of 30(b)(6) deposition. Second, Plaintiff's motion to compel unrestricted videography and photography for the site inspection is not necessary to prove their claims, and is

1

unduly burdensome because unrestricted videography and photography compromises the safety and security of the Aurora ICE Processing Center ("APC") and the public, and it compromises the privacy of the detainees and the staff at the APC. A recent escape of three detainees at the APC, one a suspect in a rape investigation, heightens this concern. In addition, in accordance with the Performance Based National Detention Standards ("PBNDS"), GEO does not have authority to grant Plaintiffs what they seek. ICE has informed GEO that it will not authorize videography or photography within the APC because it poses safety, security, and privacy concerns for the detainees and other personnel within the facility, and imposes an undue burden on GEO and ICE. GEO is contractually required to adhere to the PBNDS. In light of these concerns and the lack of relevance of the underlying video and photographs sought, this Court should deny Plaintiffs' request for videography and photography during the site inspection.

**I.     Factual Background**

    **A.     Defendant Has Proposed a Resolution to Plaintiffs' Demand for a Second 30(b)(6) Deposition.**

Subsequent to the filing of the instant motion, GEO contacted Plaintiffs with a specific proposal regarding Plaintiffs' Third Notice of 30(b)(6) deposition. *See* Exhibit ("Ex.") A (June 19, 2019 Brown email to Plaintiffs' Counsel). GEO offered to further confer with Plaintiffs regarding the topics to be included a 30(b)(6) notice. *Id.* In the correspondence, GEO offered to produce two witnesses covering a large majority of the topics listed in the 30(b)(6) notice. *Id.* Defendant proposed removal of topics that do not directly relate to the claims and defenses in this case or that require GEO to manufacture data, information or analysis that does not exist. Ex. B (Proposed Revisions attached to June 19, 2019 Brown email to Plaintiffs' Counsel).

Plaintiffs refused Defendant's attempt to resolve the matter.  Ex. A.

Prior to the filing of this motion, the parties met and conferred on two occasions regarding whether a second 30(b)(6) notice was proper – on March 29, 2019 and April 26, 2019. See Declaration of Valerie Brown in Opposition to Motion to Compel ("Brown Decl.") at ¶ 2. During those conferrals, Counsel for GEO asked Plaintiffs for a basis in the record whereby the parties agreed to a second Rule 30(b)(6) deposition.  Brown Decl. at ¶ 3.  Plaintiffs took the position that GEO's agreement to a Rule 30(b)(6) deposition was not relevant and that Plaintiffs were entitled to a second Rule 30(b)(6) deposition as a matter of legal right pursuant to the Federal Rules.  Brown Decl. at ¶ 4.  GEO disagreed with Plaintiffs' position on this legal issue. Brown Decl. at ¶ 5.  Importantly, Plaintiffs did not refer to any notation in the record where GEO had agreed to a second 30(b)(6) deposition.  Brown Decl. at ¶ 6.

**B.     GEO Cannot Agree to Videography and Photography During the Site Inspection Because of Legitimate Security and Privacy Concerns.**

The dispute over Plaintiffs' request for inspection pursuant to Fed. R. Civ. P. 34(a)(2) is limited to whether Plaintiffs can freely video-record and photograph throughout the APC. Requests to tour the APC and to use recording devices inside of the APC are governed by a number of policies related to GEO's role as a contractor for ICE, including GEO's operable contract for services with ICE which incorporates by reference the 2016 revisions to the 2011 PBNDS.  Declaration of Assistant Warden Dawn Ceja in Opposition to Motion to Compel ("Ceja Decl.") at ¶ 4.  With respect to tours, the PBNDS states:

> Visitors will abide by the policies and procedures of the facility being visited or toured. Visitors must obtain advance permission from the facility administrator and Field Office Director before taking photographs in or of any facility. Detainees have the right not to be photographed (still, movie or video), and not to

>have their voices recorded by the media…If the presence of video, film or audio equipment or related personnel poses a threat to the safety or security of the facility, its staff or its detainees, the Field Office Director may limit or prohibit such access. Prior to the tour, the Field Office Director shall explain the terms and guidelines of the tour to the visitors.

*Id.* at p. 446. In accordance with its contractual obligations to ICE, GEO also has a policy prohibiting third party digital and video recordings of any kind unless the required notifications are made and approval is obtained. This policy does not restrict GEO's operational security procedures. Ceja Decl. at ¶ 5; and Ex. D (GEO Recording Policy). Specific to video-recording, GEO has not allowed video recording to take place within the APC dating back 15 years. Ceja Decl. at ¶ 13.

GEO and ICE have agreed to Plaintiffs' requested site inspection and are providing the same access that would be allowed during a Congressional delegation tour of APC. GEO does not oppose Plaintiffs' request for a site inspection; rather, GEO's concerns rests solely on the unrestricted videography and photography demanded by Plaintiffs during the site inspection. GEO is concerned about the security and privacy risks posed by allowing unrestricted photography and videography during a site inspection of APC, a secure facility that houses detainees that are assigned varying risk classification levels as set forth in the PBNDS. Ceja Decl. at ¶ 3. Allowing unrestricted videography and photography could create security vulnerabilities for APC, which would jeopardize the safety and security of the detainees and staff at APC. Ceja Decl. at ¶ 8. As stated in the PBNDS, if the presence of video, film or audio equipment poses a threat to the safety or security of the facility, its staff or its detainees, the ICE Field Office Director may limit or prohibit such access. Ex. C, at p. 446. ICE has prohibited

///

Plaintiffs from taking photos or video, which GEO is contractually required to follow. *See* Ex. E (Letter from John E. Fabbricatore, Acting Denver Field Office Director dated June 20, 2019).

These concerns are heightened at APC because of the recent rapid increase in the number of detainees housed at APC. In the past six months alone, the population at APC has increased by approximately 600 occupants. Ex. E. This has resulted in staffing concerns which necessitates additional, heightened security measures. *Id*. On June 17, 2019, three detainees escaped from APC, including one detainee who is currently a suspect in a rape case. Ex. E; and Ex. F (The Denver Channel News Article titled "Fort Carson rape suspect among 3 detainees who escaped from Aurora ICE Facility"). This further reinforces the need for heightened security at APC, including the prohibition on videography and photography within the facility by guests. Ex. E. Photography and videography presents a significant risk to operational security, including risk of harm to detainees, facility staff, and the public, as it will allow viewers to potentially exploit any perceived weaknesses in operational security. Ceja Decl. at ¶ 8; and Ex. E. ICE has taken the position that the serious risk of harm to detainees, facility staff, and the general public outweighs any benefit of unrestricted photography and videography at the APC. Ex. E.

In addition to the legitimate security concerns, the use of videography and photography also infringes the privacy rights of detainees, particularly those who have sensitive applications for benefits that are confidential pursuant to statutory provisions. *See* 8 U.S.C. § 1367. This provision prohibits disclosure of any information about a detainee who is the beneficiary of or has an application pending for such relief. *Id.* This provision applies to video and photographs that capture any images of a detainee who is the subject of such relief. *Id.* The detainees that

5

will be impacted by Plaintiffs' video-recording are not part of the certified class, as the class was certified through October 22, 2014. In addition, detainees at the APC have not consented to being photographed and/or video-recorded in this matter. Ceja Decl. at ¶ 18.

The APC staff also has privacy interests implicated by Plaintiffs' request to video-record and photograph throughout the facility. If the APC staff are publicly identified, they and their families face serious risk of harm. Ceja Decl. at ¶ 19; and Ex. E. Hostility towards ICE and, by extension, the APC staff is readily apparent from the protests and demonstrations that have occurred at the APC. Ex. E.

**II.  Argument**

    **A.  GEO has Agreed to a Second 30(b)(6) Deposition and GEO's Proposed Revisions to Plaintiffs' 30(b)(6) Deposition Notice are Reasonable.**

Plaintiffs' Motion to Compel a second 30(b)(6) deposition is mooted by GEO's agreement to produce witnesses to testify on the topics set forth in the current 30(b)(6) Notice. While the parties disagree as to whether Plaintiffs are entitled to a second 30(b)(6) as of right under the Federal Rules without leave of court, the issue can be left for another day.

The only issue remaining with respect to Plaintiffs' Rule 30(b)(6) Notice is the scope of topics set forth in the Notice. Because Plaintiffs have indicated that they intend to continue to pursue the Court's resolution of any issues relating to Plaintiffs' Rule 30(b)(6) Notice, GEO has set forth the basis of its proposed revisions to Plaintiffs' Rule 30(b)(6) Notice below. *See* Ex. B.

GEO acknowledges that the current Rule 30(b)(6) does not expressly contemplate an iterative conferral process on deposition topics. However, that process is arguably required by the conferral requirements in Rule 37(a)(1) and Local Rule 7.1(a), as well as the obligation in

6

Local Rule 30.1 to schedule depositions in a convenient and cost effective manner. Further, the Rules Advisory Committee has proposed an amendment to Rule 30(b)(6) that would expressly require this type of conferral. Ex. G (Excerpts from 2018 Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, and Civil Procedure, and the Federal Rules of Evidence, Request for Comment) at pp. 31-38. The Committee explained, *inter alia*, that "[d]iscussion of the number and description of topics may avoid unnecessary burdens" and that "the discussion may be more productive if the serving party provides a draft of the proposed list of matters for examination, which may then be refined as the parties confer." *Id.* The Committee further noted that process "will often be iterative" and "a single conference may not suffice." *Id.* In sum, GEO's process of redlining Plaintiffs' 30(b)(6) Notice is consistent with the parties' existing conferral obligations and the Rule Advisory Committee's comments on best practices.

The relevant period defined by the Notice extends beyond the class period. The class period in this case is from October 22, 2004 through October 22, 2014 for the Class Member claims pursuant to the Trafficking Victims Protection Act; and October 22, 2011 through October 22, 2014 for the Class Member unjust enrichment claim. *See* ECF No. 146 (Amended Stipulated Discovery and Scheduling Order) at p. 2. Thus, there is no basis for requiring GEO to provide testimony on the topics listed through present day. There are also a number of topics within the Notice that extend beyond the merits issues in this case or pose other concerns identified below, and GEO should not be required to provide testimony on those issues.

Topic Number 2 requests testimony on "GEO's policies and practices relating to discipline for Class Members' violation of GEO's rules or regulations during the relevant period …" ECF No. 181-10 (Plaintiffs' Third Notice of Rule 30(b)(6) Deposition). Plaintiffs' claims in

7

the instant case relate to the application of the Housing Unit Sanitation Policy ("HUSP") to Class Members and the Class Members' participation in the Voluntary Work Program ("VWP").  *See* ECF No. 1 (Complaint).  Plaintiffs' request for testimony in Topic 2 is far broader than these subjects and extends to all rules and regulations regardless of whether those rules and regulations relate to the HUSP or the VWP.  *See* ECF No. 181-10.  GEO is agreeable to providing testimony on Topic 2 so long as it is limited to those rules and regulations that relate to the HUSP or to the VWP.  GEO's proposed tracked changes to Topic 2 reflect this position.  Ex. B.

Topic Number 3 requests testimony on "Class Members' participation in the Voluntary Work Program (VWP) during the relevant period…"  ECF No. 181-10.  GEO proposed limiting this topic to the APC, as class member participation in the VWP at locations other than the APC is not relevant to the claims and defenses in this instant case because the class is limited to the APC.  *See* Ex. B.  GEO also proposed clarifying language in the subtopics of Topic 3 to make clear that GEO's testimony regarding ICE's policies would be specific to GEO's interpretation and application of those policies because GEO cannot speak for ICE.  *Id.*  GEO's other proposed changes within the subtopics enumerated in Topic 3 are clarifying in nature.  *Id.*

Topic Number 4 requests testimony on "[t]he costs and benefits to GEO of using detainee labor under the HUSP and VWP..."  ECF No. 181-10.  GEO proposed adding language to clarify that the testimony would be limited to the class period and to the APC.  *See* Ex. B.  Testimony outside of the class period concerning the costs and benefits to GEO of using detainee labor under the HUSP and VWP at other facilities is not relevant to the Class Members' claims in this case.  Within Topic 4, GEO proposed striking subtopics (e) through (h).  *Id.*  Subtopic (e) requests information regarding current staffing at the APC, which is not relevant to the Class

Members' claims in the instant case, particularly given the substantial recent increase in housing capacity at the APC, which would make any testimony regarding the current staffing levels irrelevant to their claims. ECF No. 181-10. Subtopics (f) and (g) request testimony that would require GEO to make assumptions and speculate about the costs associated with using GEO employees and contractors to perform the tasks performed by Class Members pursuant to the HUSP or the VWP. *Id.* For example, because of the speculative nature of this testimony, which would require GEO to make assumptions about factors including but not limited to facility occupancy, rates of pay, staffing requirements and contract negotiation outcomes, it is not an appropriate topic for a 30(b)(6) deposition and is better suited for expert testimony. *Id.* Finally, subtopic (h) is no longer appropriate for testimony as GEO has withdrawn affirmative defense number 20 on which the request for testimony is based. *See* ECF No. 178.

      **B.**    **GEO's Security and Privacy Interests Outweighs Plaintiffs' Basis for Unrestricted Videography and Photography of the APC.**

Under Rule 26, a party may obtain any non-privileged discovery provided that it is relevant to a party's claim or defense and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). A party may also request entry onto "property possessed or controlled by the responding party" to inspect or photograph that property, provided that it meets the threshold relevance and proportionality standard in Rule 26(b). Fed. R. Civ. P. 34(a).

9

Because "entry upon a party's premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection would seem warranted." *Voggenthaler v. Maryland Square, LLC*, No. 2:08-CV-01618-RCJ, 2011 WL 112115, at *8 (D. Nev. Jan. 13, 2011). Thus, "the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection." *Selvar v. W. Towboat Co.*, No. C12-349RSL, 2012 WL 5389135, at *2 (W.D. Wash. Nov. 2, 2012). Accordingly, courts have denied inspection requests when the premises are not at issue and less burdensome options are available. *See, e.g.*, *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 909 (4th Cir. 1978) (reversing order requiring inspection in employment case because the information sought could be more easily obtained through other discovery methods); *Selvar*, 2012 WL 5389135, at *3 (granting protective order limiting scope of inspection based on safety risks); *E.E.O.C. v. U.S. Bakery*, No. CIV. 03-64-HA, 2004 WL 1307915, at *3-4 (D. Or. Feb. 4, 2004) (rejecting inspection for employment discrimination claim and noting plaintiff did not need to view work conditions or obtain photos of premises to prove claims).

       1.    Plaintiffs Have Not Established the Need for Videography and Photography to Prove Their Claims.

Plaintiffs claim that videography is necessary to prove their claims because they will be able to show that the duties that detainees are required to perform under the Housing Unit Sanitation Policy are broader than what is permissible under the PBNDS. *See* ECF No. 181 (Plaintiffs' Motion to Compel) at pp. 19-20. However, the detainees currently housed at the APC are not part of the certified class, which extends from October 22, 2004 through October

10

22, 2014 for the TVPA claims, and October 22, 2011 through October 22, 2014 for the unjust enrichment claims.  ECF No. 146 at p. 2.  Video footage of the current detainees' activities at APC is not relevant to whether those duties were or were not performed by class members during the class period.  Similarly, the facility's size, layout and population have changed significantly since 2014.  Videotaping the layout and flow of APC, as argued by Plaintiff in their motion, does not prove whether or not those areas are representative or were cleaned by class members during the class period.  In addition, with ICE's permission, GEO has already provided pre-expansion renderings of the APC that set forth the composition of the housing units and the layout and flow of the facility generally, while not revealing sensitive information like the placement of closed circuit surveillance or staffing levels and positioning.  *See* Ex. H (Facility Rendering produced by GEO, filed under seal).  Plaintiffs have not articulated why such renderings fail to address their purported need for documentary evidence of the facility.

Plaintiffs also claim that video footage of the segregation unit is necessary to prove that "labors or services were obtained by means of force; physical restraint; serious harm; or threats of force, physical restraint or serious harm" as part of their claim under the Trafficking Victims Protection Act.  ECF No. 181 at pp. 19-20.  However, video footage of the segregation unit, which would prove only that segregation units exist, does not prove that labor or services were obtained through means of force; physical restraint; serious harm; or through threats of force, physical restraint, or serious harm.

The cases relied upon by Plaintiffs that address videography and photography during site inspections are distinguishable from the instant case.  In *Nourse v. City of Jefferson*, Plaintiffs alleged Fourth Amendment violations related to strip searches at the jail.  No. 17 Civ. 807, 2018

WL 6444226 (N.D.N.Y. Dec. 10, 2018) (unpublished). Part of the relief requested by the plaintiffs was for the jail to hold detainees in custody for approximately four hours in the jail booking facility before conducting the strip searches, and the defendant contended that it lacked sufficient space to make such an accommodation. As such, the size and space of the booking facility was directly related to the claims and defenses in the case; whereas here, no similar argument can be made by Plaintiffs. In addition, the request in *Nourse* dealt only with photographs and not with videography, and the portions of the facility the plaintiffs sought to photograph were far narrower than in the instant case. *Id.*

In *Dang ex. rel. Dang, v. Eslinger*, the plaintiff–who was asserting a claim pursuant to 42 U.S.C. § 1983 related to officer neglect–specifically articulated the need for video recordings of the mental health unit at the jail:

> A key issue in this case is the observation of [Plaintiff] while he was housed in D-Pod (mental health unit) and the medical unit. [Because] no surveillance video of [Plaintiff] has been produced,… it is imperative that Plaintiff and his experts have an opportunity to view the layout of the "pods" [Plaintiff] was placed in to evaluate the extent and ability that correctional officers could observe [Plaintiff]…

No. 14 Civ. 37, 2015 WL 13655675 at * 3 (M.D. Fla. Jan. 20, 2015) (unpublished) (Smith, Mag. J.). Based on this explanation of the need for recording, which is closely tied to the underlying claims and defenses of the case, the court found that the needs of the discovery were substantial and necessary to proving plaintiff's claims. In the instant case, Plaintiffs have not articulated the same close nexus between the need for unrestricted videography throughout the APC and the claims they have asserted. The side of the balance representing Plaintiffs' need for the discovery in the instant case does not weigh as heavily as in *Dang*. In this case, the use of video or

12

photographs does not make it more or less likely that GEO violated the Trafficking Victims Protection Act or was unjustly enriched.

        2.        GEO's Privacy and Security Concerns Outweigh Plaintiffs' Need for Videography and Photography.

GEO has an obligation to provide a secure and safe facility for the detainees it houses and for GEO's staff. Ceja Decl. at ¶ 6. Allowing third-party videography and photography in a manner that is not controlled by ICE or GEO could expose or create potential security vulnerabilities at APC. Ceja Decl. at ¶ 7. It would show, among other things, placement of personnel throughout the building, the identity of the detention officers (which could compromise the officers' safety and security off-site), and the mechanisms and locations for entry and egress from areas of the facility. Ceja Decl. at ¶ 9. The substantial increase in the detainee population at the APC, as well as the recent escape of three detainees from the APC further underscores GEO's security concerns and the need for heightened security measures. During the meet and conferrals on this topic, Plaintiffs declined to agree to any constraints on their request to video-record and photograph the facility that could alleviate these concerns. Brown Decl. at ¶ 11. Plaintiffs also failed to provide any explanation as to why the facility rendering and floor plan were insufficient. Brown Decl. at ¶ 12.

With respect to privacy issues, the use of videography and photography also infringes on the privacy rights of detainees, particularly those who have sensitive applications for benefits (for example, applications for asylum) that are confidential pursuant to statutory provisions. *See* 8 U.S.C. § 1367. This provision prohibits disclosure of any information about a detainee who is the beneficiary of or has an application pending for such relief. *Id.* This provision applies to

video and photographs that capture any images of a detainee who is the subject of such relief. *Id.*

The detainees who will be impacted by Plaintiffs' video-recording are not part of the certified class, as the class was certified through October 22, 2014. In addition, detainees at the APC have not consented to being photographed and/or video-recorded in this matter. Ceja Decl. at ¶ 18. It is not possible to separate those detainees with sensitive benefits applications during the tour without interfering with the daily operations of APC. Ceja Decl. at ¶ 16. Given the highly-sensitive nature of the benefits application process, it is not sufficient to simply blur the faces of detainees who are captured in the video, as Plaintiffs suggest. Ceja Decl. at ¶ 17. Moreover, it is reported that blurring or pixelating images is not a sufficient method to maintain privacy. *See* Ex. I (Quartz titled "Nothing Pixelated Will Stay Safe on the Internet."); Ex. E. Given current technology, it is possible to reverse obfuscation of faces and images. *Id.*

Finally, Plaintiffs' reliance on a Yahoo news article as demonstrating widespread publication of photos depicting the APC to justify their video-recording and photography demands is misplaced. The Yahoo news article referenced by Plaintiffs does not contain any photographs of the interior of APC or of detainees housed at APC. ECF No. 181-10. The three interior photographs appearing in the article are from two other GEO-operated detention facilities located in California and Washington State, respectively. Plaintiffs do not describe the process by which these photographs were obtained by the photographers credited on the article. It is possible that the photographs were supplied to the photographers; and it is also possible that the photographs were taken during a media tour but required approval from GEO and ICE prior to their publication. The mere publication of these photos does not undermine GEO's arguments with respect to ensuring the safety and privacy of the detainees and the security of APC, and it

does not support Plaintiffs' position that they are entitled to unrestricted videography and photography during a site inspection.

       3.    ICE Approval is Required for the Site Inspection and Use of Recording Devices During the Inspection.

Even if GEO did not have legitimate concerns about the security and privacy risks that unrestricted videography and photography pose during a site inspection of the APC, GEO could not authorize use of videography or photography inside the facility without ICE's approval. Ex. C. at pp. 446. GEO is contractually bound by the terms of the PBNDS which require authorization from the Field Office Director for any photography (still, movie or video), and the Field Office Director assigned to the APC has denied GEO's request on Plaintiffs' behalf to video-record and take photographs inside the APC based on the reasons set forth in their correspondence to GEO. Ex. E. If GEO were to allow any photography or videography within the APC without the Field Officer Director approval, it would violate GEO's contract with ICE.

### III. **CONCLUSION**

For the reasons set forth above, GEO respectfully requests that the Court deny Plaintiffs' motion to compel and all relief requested, including its request for fees and costs related to filing this motion, in its entirety.

Dated this 20th day of June, 2019.

                                        Respectfully submitted,

                                        HOLLAND & KNIGHT LLP

                                        By: *s/ Carolyn P. Short*
                                        Carolyn P. Short

Valerie E. Brown
Patrick J. McCabe
Stacy Blank
Holland & Knight LLP
2929 Arch Street, Suite 800
Philadelphia, PA 19104
Telephone: 215.252.9569
Fax: 215.867.6070
Email: Carolyn.Short@hklaw.com
Email: Valerie.brown@hklaw.com
Email: Patrick.Mccabe@hklaw.com
Email: Stacy.Blank@hklaw.com


Dana Eismeier
Michael Ley
BURNS FIGA & WILL
6400 S. Fiddlers Green Circle, Suite 1000
Greenwood Village, Colorado 80111
Telephone: 303.796.2626
Email: deismeier@bfwlaw.com
Email: mley@bfwlaw.com

Attorneys for Defendant The GEO Group, Inc.

## CERTIFICATE OF SERVICE

I hereby certify on this 20th day of June, 2019, a true and correct copy of the foregoing **RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** was e-filed with the Court via CM/ECF system which will send notification of such filing via electronic transmission to the following:

**TOWARDS JUSTICE**
Alexander Hood, Esq.
David Hollis Seligman, Esq.
Juno E. Turner, Esq.
1410 High Street, Suite 300
Denver, CO 80218
david@towardsjustice.org
alex@towardsjustice.org
juno@towardsjustice.org

**OUTTEN & GOLDEN LLP**
Rachel W. Dempsey, Esq.
Adam Koshkin, Esq.
One California Street, 12th Floor
San Francisco, CA 94111
rdempsey@outtengolden.com
akoshkin@outtengolden.com

**OUTTEN & GOLDEN LLP**
P. David Lopez, Esq.
601 Massachusetts Avenue, NW
2nd Floor West Suite
Washington, DC 20001
pdl@outtengolden.com

**OUTTEN & GOLDEN, LLP**
Ossai Miazad, Esq.
Michael J. Scimone
685 Third Ave., 25th Floor
New York, NY 10017
om@outtengolden.com
mscimone@outtengolden.com

**MILSTEIN LAW OFFICE**
Brandt Milstein, Esq.
1123 Spruce Street
Boulder, CO 80302
brandt@milsteinlawoffice.com

**KELMAN BUESCHER, P.C.**
Andrew Turner, Esq.
600 Grant Street, Suite 825
Denver, CO 80203
aturner@laborlawdenver.com

**BURNS, FIGA & WILL, P.C.**
Dana L. Eismeier, Esq.
Michael Y. Ley, Esq.
6400 S. Fiddlers Green Circle, Suite 1000
Greenwood Village, CO 80111
deismeier@bfwlaw.com
mley@bfwlaw.com

**R. ANDREW FREE LAW OFFICE**
Robert Andrew Free
414 Union Street, Suite 900
Nashville, TN 37209
Andrew@ImmigrantCivilRights.com

**MEYER LAW OFFICE, P.C.**
Hans Meyer, Esq.
901 W 10th Avenue, Suite 2A
Denver, CO 80204
hans@themeyerlawoffice.com

Dated this 20th day of June, 2019.

                *s/ Carolyn P. Short*
                Carolyn P. Short