# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-02887 JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA
on their own behalf and on behalf of all others similarly situated,

      Plaintiffs,

v.

THE GEO GROUP, INC.,

      Defendant.

---

## REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL RULE 30(b)(6) DEPOSITION AND INSPECTION WITH VIDEO RECORDING

---

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................. 1

FACTUAL AND PROCEDURAL HISTORY ................................................. 2

   I.   GEO Only Attempted to Negotiate the Scope of the Rule 30(b)(6) Notice at the
Eleventh Hour When Its Opposition to This Motion Was Due. ............................ 2

   II.   ICE Explained Its Privacy and Security Objections to Videotaped Inspection the
Day GEO's Opposition to This Motion Was Due.................................................. 3

ARGUMENT.................................................................................................... 5

   I.   Plaintiffs' Motion to Compel a Rule 30(b)(6) Deposition is Not Moot Because
GEO Now Effectively Seeks a Protective Order, Which the Court Should Deny... 5

   A.   GEO's Objections to The Notice are Procedurally Improper. ................................ 6

   B.   Even if GEO's Objections Were Proper, They are Waived. ................................... 7

   C.   Plaintiffs Oppose GEO's Proposed Limitations to the Notice............................... 8

      1.  Relevant Period Limitations.................................................................... 8

      2.  Limitations on Types of Communications ............................................. 9

      3.  Limitations on Topic 2: GEO's Policies and Practices Relating to Discipline .. 9

      4.  Limitations on Topic 3: Participation in the Voluntary Work Program
("VWP") and ICE Policies .................................................................. 10

      5.  Limitations on Topic 4: Costs and Benefits of Detainee Labor ........................ 11

   II.   The Court Should Allow Plaintiffs to Inspect the Aurora Facility and Take Photos
and Video During the Inspection............................................................................ 12

   A.   Videotaped Footage and Photographs of the Inspection Provide Key Evidence
That is Not Available to Plaintiffs Through Other Means. ................................... 12

   B.   Plaintiffs' Proposed Solutions and the Protective Order Will Protect the Privacy
of Detainees and GEO Employees. ........................................................................ 14

      1.  The Stipulated Protective Order Addresses the Security Concerns GEO and
ICE Identify.......................................................................................... 14

2. Plaintiffs Have Proposed Measures to Address GEO's Remaining Privacy and Security Concerns.................................................................................................. 15

3. GEO's Remaining Concerns are Outweighed by Plaintiffs' Need or Inconsistent with Positions It Has Taken Previously........................................... 16

III. Sanctions are Necessary to Deter GEO's Pattern of Brinksmanship. .................... 18

CONCLUSION ............................................................................................................... 21

## TABLE OF AUTHORITIES

**CASES**                                                            **PAGE(S)**

*Centennial Archaeology, Inc. v. AECOM, Inc.*,
   688 F.3d 673 (10th Cir. 2012) ................................................................... 19

*Dang ex rel. Dang v. Eslinger*,
   No. 14 Civ. 37, 2015 WL 13655675 (M.D. Fla. Jan. 20, 2015), ............................ 13, 14

*e.Digital Corp. v. Pentax of Am., Inc.*,
   No. 09 Civ. 02578, 2011 WL 148083 (D. Colo. Jan. 18, 2011)...................................... 7

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
   No. 09 Civ. 3701, 2013 WL 6439069 (S.D.N.Y. Dec. 9, 2013) ..................................... 6

*Hassan v. United States*,
   No. 05 Civ. 1066, 2006 WL 681038 (W.D. Wash. Mar. 15, 2006) ............................... 17

*Kaufman v. Am. Family Mut. Ins. Co.*,
   601 F.3d 1088 (10th Cir. 2010) ................................................................... 15

*In re Matter of Caswell Silver Family Tr. Created Under the Terms of the Caswell Silver
   Revocable Tr. U/A Dated Nov. 21, 1985*,
   No. 10 Civ. 0934, 2012 WL 13013062 (D.N.M. Apr. 19, 2012) ..................................... 7

*McCarty v. Liberty Mut. Ins. Co.*,
   No. 15 Civ. 210, 2016 WL 8290151 (D. Wyo. Sept. 27, 2016)...................................... 6

*Nat'l Hockey League v. Metro. Hockey Club*,
   427 U.S. 639 (1976)................................................................................. 20

*Nourse v. City of Jefferson*,
   No. 17 Civ. 807, 2018 WL 6444226 (N.D.N.Y. Dec. 10, 2018).................................... 13

*Olcott v. Del. Flood Co.*,
   76 F.3d 1538 (10th Cir. 1996) ..................................................................... 19

*Ordonez v. Serv*,
   No. 13 Civ. 67, 2017 WL 5054398 (D. Utah Mar. 27, 2017) ....................................... 20

*Roadway Express, Inc. v. Piper*,
   447 U.S. 752 (1980)................................................................................. 20

*Rodriguez v. Robbins*,
   No. 07 Civ. 3239, 2012 WL 12953870 (C.D. Cal. May 3, 2012) ................................. 17

*Rosales v. Bd. of Regents of the Univ. of Okla.*,
   No. 15 Civ. 560, 2015 WL 4644832 (W.D. Okla. Aug. 4, 2015) ................................. 21

*St. Regis Paper Co. v. United States*,
   368 U.S. 208 (1961) ................................................................................................. 17

*State of Washington v. GEO Group*,
   No. 17 Civ. 5806 (W.D. Wash.) ............................................................................ 18, 20

*United States ex rel. Touhy v. Ragen*,
   340 U.S. 462 (1951) ................................................................................................... 3

*Zambrano v. INS*,
   972 F.2d 1122 (9th Cir. 1992) ................................................................................ 17

**STATUTES**

18 U.S.C. § 1589(a) ........................................................................................................ 10

**RULES**

Fed. R. Civ. P. 26 .................................................................................................... 5, 6, 11

Fed. R. Civ. P. 30 ................................................................................................ 5, 6, 7, 9

Fed. R. Civ. P. 33 ...................................................................................................... 6, 7

Fed. R. Civ. P. 34 ...................................................................................................... 6, 7

Fed. R. Civ. P. 37 .......................................................................................... 5, 15, 18, 19, 21

Fed. R. Evid. 407 .......................................................................................................... 8

**OTHER AUTHORITIES**

44 Am. Jur. Trials 171 .................................................................................................. 13

McCormick on Evidence (3d ed.) § 212 ......................................................................... 13

## <u>INTRODUCTION</u>

GEO's opposition papers further support Plaintiffs' Motion to Compel.  First, although GEO offered at the eleventh hour to produce a Rule 30(b)(6) witness, it attempted to exact compromises limiting deposition topics in exchange for its agreement to comply with the Court's scheduling order and its previous positions in the litigation. Such last-minute, bad-faith efforts to confer are counter-productive and waste Plaintiffs' and the Court's resources.  GEO's half-hearted attempt at compromise is akin to a belated request for a protective order limiting Rule 30(b)(6) deposition topics, which the Court should deny.

Second, the privacy and security concerns that ICE and GEO associate with a videotaped inspection are addressed by the Amended Stipulated Protective Order ("Protective Order," ECF No. 157) entered in this action, and neither GEO nor ICE has explained why the Protective Order's protections are insufficient.  If anything, GEO's concerns are premised on Plaintiffs violating the Protective Order, which only underscores the fact that the Order solves the problem.  Further, ICE has taken a different position, permitting photography during plaintiffs' inspection, in related cases.  Finally, Plaintiffs have proposed additional measures – blurring faces, removing voice recording, not recording secure entryways and exits, and, to the extent possible, avoiding filming surveillance and other security equipment – to protect detainee and staff privacy.

Finally, GEO's pattern of wasteful brinksmanship and bad-faith negotiation has misused the parties' resources in this case and in related cases, and the Court must order sanctions to deter this conduct.

## **FACTUAL AND PROCEDURAL HISTORY**

**I.**    **GEO Only Attempted to Negotiate the Scope of the Rule 30(b)(6) Notice at the Eleventh Hour When Its Opposition to This Motion Was Due.**

GEO's opposition papers adopt a different position than GEO took during the meet and confer process.  After repeatedly refusing to designate a Rule 30(b)(6) witness in discovery, GEO only expressed willingness to designate a witness and attempted to negotiate the scope of Plaintiffs' Rule 30(b)(6) Notice at the eleventh hour, the day before its opposition to this Motion was due.

As detailed in Plaintiffs' Motion to Compel Rule 30(b)(6) Deposition and Inspection with Video Recording ("Pls.' Br."), ECF No. 181, GEO previously represented that it would produce a 30(b)(6) witness for classwide merits discovery in this litigation, but beginning on April 26 and throughout May of 2019, took a firm and unwavering position that it would not produce any 30(b)(6) witness.  Pls.' Br. at 5-7; ECF No. 181-1 (Declaration of Michael J. Scimone in Support of Plaintiffs' Motion to Compel ("Scimone Decl.")) ¶¶ 5-8; Declaration of Michael J. Scimone in Further Support of Plaintiffs' Motion to Compel Rule 30(b)(6) Deposition and Inspection with Video Recording ("Scimone Reply Decl.") ¶ 5.  GEO maintained this position after Plaintiffs informed it that the parties had reached impasse, and that Plaintiffs would raise the issue with the Court.  Scimone Decl. ¶¶ 7-8; Scimone Reply Decl. ¶ 6.  Plaintiffs tried to break the impasse several times between May 9, 2019 and May 22, 2019, but to no avail, leading to this motion.  Scimone Decl. ¶¶ 5-8; Scimone Reply Decl. ¶ 6.  At no point during this time did GEO raise the specific objections to the deposition topics that it now

seeks to impose through motion practice, and it never attempted to engage Plaintiffs in a negotiation over those objections before forcing Plaintiffs to file this motion.  *Id*.

GEO only offered to negotiate the topics in the notice on June 19, 2019, one day before its response was due, by email.  Scimone Reply Decl. ¶ 7; ECF No. 187-2 (Declaration of Valerie Brown in Opposition to Motion to Compel ("Brown Decl.")), Ex. A.  This is not the first time that GEO has instigated a dispute, waited for Plaintiffs to present the issue to the Court, then tried to negotiate a resolution under the pressure of a court-ordered outcome.  In March 2019, GEO objected to Plaintiffs' discovery requests on the basis of *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and its implementing regulations, despite an order from this Court that *Touhy* did not apply.  *See* ECF No. 168 (Plaintiffs' Motion to Compel dated Mar. 18, 2019) at 2-7.  In that instance, as here, Plaintiffs met and conferred with GEO multiple times and exchanged multiple letters attempting to resolve the dispute, to no avail, before filing a motion to compel production.  *See id*.  Also in that instance, as here, right before GEO's deadline to respond to the motion, GEO abruptly changed position and offered to stipulate to the relief Plaintiffs sought.  *See* Scimone Reply Decl. ¶¶ 10-11.  The parties accordingly stipulated to withdraw Plaintiffs' Motion to Compel.  ECF No. 174.

## II.    ICE Explained Its Privacy and Security Objections to Videotaped Inspection the Day GEO's Opposition to This Motion Was Due.

As explained in Plaintiffs' opening brief, Plaintiffs served their Second Set of Requests for Inspection ("Second RFI") on GEO on November 2, 2018, ECF No. 181-2 (Hood Decl., Ex. O (Second RFI)), which requested a videotaped site inspection.

Although GEO objected generally that the proposed inspection infringed upon the privacy rights and "other statutory, regulatory, and contractually protected rights of individuals who are not party to this litigation," and that due to "privacy and security concerns," it objected to photography and videotaping, it did not explain what "other . . . rights" were at issue, or articulate the "privacy and security concerns" in a way that would permit Plaintiffs to try to address or minimize them.  Hood Decl. ¶ 25, Ex. Q.

Plaintiffs accordingly filed the instant Motion to Compel an inspection with video recording.  On June 20, 2019, the day GEO's response to this Motion was due, ICE – not GEO – sent a letter to Class Counsel stating ICE's position that "[p]ermitting photography and video-recording of [Aurora] could essentially provide a blueprint of the facility," which would pose safety and security risks to "detainees, facility staff, and the public." ECF No. 187-8 (Brown Decl., Ex. E (ICE June 20 letter)) at 1-2.  ICE further stated that "although ICE/ERO may have previously considered possible options to accommodate photography and/or video-recording, ICE/ERO currently cannot make any accommodations in this regard," due to changed leadership in its Denver Field Office, an increase in the number of detainees in the facility, and the June 16, 2019 escape of three detainees from the facility.  *Id*. at 3.  Finally, ICE explained that photography and video recording would also infringe the privacy interests of detainees and staff.  *Id.* at 3-4.  Presumably in response to Plaintiffs' proposal to blur images of detainees and staff (which Plaintiffs had proposed to GEO to address some of its vaguely-articulated privacy concerns), ICE further stated that "it is reported that, given the state of current

technology, individuals and computers are able to reverse obfuscation of faces and images," but cited to no source for this proposition.  *Id*. at 4.[1]

## ARGUMENT

**I.     Plaintiffs' Motion to Compel a Rule 30(b)(6) Deposition is Not Moot Because GEO Now Effectively Seeks a Protective Order, Which the Court Should Deny.**

GEO's response attempts to shift the focus of Plaintiffs' motion from the issue of whether a 30(b)(6) deposition will be allowed at all to the content of that deposition. This attempt to limit the testimony Plaintiffs may seek is functionally a request for a protective order pursuant to Fed. R. Civ. P. 37(a)(5)(B) (authorizing a protective order after the court denies a motion to compel).  Plaintiffs do not agree that GEO's requested limitations are appropriate, and oppose them; therefore Plaintiffs' motion is not moot.[2] The Court should deny GEO's request for the reasons set forth below, and should allow the deposition to proceed, where GEO may evaluate the questions at the time they are asked, and raise objections then, seeking the Court's relief if doing so appears warranted. *See* Fed. R. Civ. P. 30(d)(3).

---

[1]     GEO did cite a *Quartz* article in support of this proposition in its opposition papers.  ECF No. 187 (Response in Opposition to Plaintiffs' Motion to Compel ("Def.'s Br.")) at 14; Brown Decl., Ex. I.  It is unclear whether ICE's letter is referring to this article as the source of the "reporting" it references.

[2]     Although Plaintiffs would have taken the same initial position a month ago, if GEO had raised timely objections, it is possible that the parties could have conferred and reached a compromise, or discussed the scope of Plaintiffs' intended deposition questions and allayed GEO's concerns.  If that process had failed, GEO could have sought a protective order under Fed. R. Civ. P. 26(c), and would have been able to certify that it met and conferred with Plaintiffs, as that rule requires.

### A.    GEO's Objections to The Notice are Procedurally Improper.

The day before filing its opposition, GEO chose to serve formal written objections to the Class Merits Notice.  The Federal Rules of Civil Procedure do not contemplate a process for written objections to deposition notices, as GEO concedes.  *See* Def.'s Br. at 6-7.  Federal Rule of Civil Procedure 30 does not contain a mechanism for formally objecting to a deposition notice, including one served under Rule 30(b)(6).  *See generally* Fed. R. Civ. P. 30.  Unlike other discovery rules that explicitly delineate an objection process, Rule 30 only discusses objections made at the time of deposition.  *Compare* Fed. R. Civ. P. 30(c)(2) ("objection at the time of examination") *with* Fed. R. Civ. P. 33(b) ("responding party must serve its answers and any objections within 30 days after being served with the interrogatories") *and* Fed. R. Civ. P. 34(b) (among other things, response must "state with specificity the grounds for objecting to the request").  The proper vehicle for the relief GEO seeks is a motion for a protective order under Rule 26(c) or a motion to quash the deposition notice, but GEO has filed no such motion.  *See McCarty v. Liberty Mut. Ins. Co.*, No. 15 Civ. 210, 2016 WL 8290151, at *5 (D. Wyo. Sept. 27, 2016) (objections to content of 30(b)(6) deposition notice ruled on in motion for protective order); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co*., No. 09 Civ. 3701, 2013 WL 6439069, at *2 (S.D.N.Y. Dec. 9, 2013) ("The weight of the authority holds that a party believing it has received a flawed 30(b)(6) notice may not merely rest upon its objections, but must move for a protective order. . . . In the absence of an agreement, a party cannot decide on its own to ignore the notice.").

The Court should allow the deposition to proceed as noticed, so that GEO can make its "objection[s] at the time of examination," *see* Fed. R. Civ. P. 30(c)(2), which would conserve the Court's resources because GEO might find that its anticipated objections do not truly require the Court's attention.

### B.     Even if GEO's Objections Were Proper, They are Waived.

Even if GEO's objections to the Class Merits Notice were contemplated under the Federal Rules, their untimeliness would constitute a waiver.  As a general matter, where the Federal Rules do contemplate a formal objection process, discovery objections are waived if they are untimely.  *See, e.g., e.Digital Corp. v. Pentax of Am., Inc.*, No. 09 Civ. 02578, 2011 WL 148083, at *2 (D. Colo. Jan. 18, 2011) ("untimely objections are waived"); *In re Matter of Caswell Silver Family Tr. Created Under the Terms of the Caswell Silver Revocable Tr. U/A Dated Nov. 21, 1985*, No. 10 Civ. 0934, 2012 WL 13013062, at *3 (D.N.M. Apr. 19, 2012) ("Petitioners' objections were not timely asserted and, therefore, are waived.").

GEO's objections are untimely by any reasonable standard.  GEO did not serve its objections until June 19, 2019, nearly eight months after Plaintiffs served the Class Merits Notice and just one day before its deadline to respond to Plaintiffs' Motion to Compel.  GEO's service is far outside the typical thirty-day deadline to object to discovery requests set forth in the Federal Rules.  *See* Fed. R. Civ. P. 33(b)(2); Fed R. Civ. P. 34(b)(2)(A).  Because GEO's "objections were not timely asserted [they] are waived." *See In re Matter of Caswell Silver Family Tr.*, 2012 WL 13013062 at *3.

### C.     Plaintiffs Oppose GEO's Proposed Limitations to the Notice.

Plaintiffs have been open to negotiating the scope of the Class Merits Notice from the outset, but GEO failed to meaningfully engage in these negotiations until Plaintiffs filed a motion to compel and GEO's response deadline loomed.  Productive negotiations cannot occur in this context.  To the extent the Court entertains GEO's objections, Plaintiffs' position on each of GEO's proposed limitations is as follows.

### 1.     Relevant Period Limitations

Plaintiffs do not agree that limiting testimony to only the class period is appropriate.  Testimony regarding changes GEO made to its policies or facility operations since the end of the class period is relevant to Plaintiffs' claims because such testimony may shed light on GEO's ability to implement programmatic and policy change.  *Cf.* Fed. R. Evid. 407 (subsequent remedial measures are admissible to prove the feasibility of precautionary measures).  This would rebut GEO's argument that it was acting pursuant to ICE instructions and unable to deviate from them.  *See* ECF No. 149 (Amended Stipulated Scheduling and Discovery Order) at 5 (explaining position as to defensibility of Sanitation Policy that "GEO is contractually required to abide by the [Performance-Based National Detention Standards ("PBNDS")] and DHS/ICE policy."); ECF No. 23 (Order on Motion to Dismiss) at 12-13 (explaining that government contractor defense is unavailable to extent that GEO could deviate from ICE contract).  It would also inform the type of injunctive relief Plaintiffs may seek.

### 2.      Limitations on Types of Communications

Though not discussed in its brief, GEO seeks in its redline of the Class Merits

Notice to limit all testimony about communications to testimony about written

communications.  Plaintiffs do not believe this limitation to the topics is appropriate at

this time.  Deposition testimony is one of the only ways to discover oral communications,

and there is no reasonable argument that oral communications are not relevant to

Plaintiffs' claims.  If GEO is concerned that it cannot prepare a witness to testify as to all

oral communications, GEO is only obligated to prepare the witness on information

"reasonably available" to it.  *See* Fed. R. Civ. P. 30(b)(6).  Discussions about what the

witness does and does not know, the basis for the information the witness provides, and

the quality of the witness's preparation, are best reserved for the record at the deposition.

### 3.      Limitations on Topic 2: GEO's Policies and Practices Relating to Discipline

GEO seeks to limit testimony on its policies and practices relating to detainee

discipline to testimony regarding those policies with respect to the Housing Unit

Sanitation Policy ("HUSP") at the Aurora Detention Facility.  These limitations are not

appropriate.

First, testimony relating to all of GEO's policies and practices regarding detainee

discipline is relevant so that Plaintiffs can compare the way detainees are disciplined for

failing to clean under the HUSP to the way they are disciplined for other infractions.

Such testimony bears directly on the showing the Plaintiffs must make under the

Trafficking Victims' Protection Act ("TVPA").  *See* 18 U.S.C. § 1589(a) (creating liability for obtaining labor using force, physical restraint, or threats thereof).

Second, testimony relating to other facilities bears on GEO's defenses.  Testimony about how GEO enforces the HUSP at other facilities can shed light on the degree to which it is following ICE's instructions, facts important to rebutting GEO's derivative sovereign immunity defense.  *See* ECF No. 149 (Amended Stipulated Scheduling and Discovery Order) at 5.  It also would bear on GEO's sixth affirmative defense, which pleads that the work Plaintiffs performed was consistent with work done at other ICE facilities throughout the U.S.  *See* ECF No. 26 (Answer).

### 4.     Limitations on Topic 3: Participation in the Voluntary Work Program ("VWP") and ICE Policies

GEO proposes limiting this topic to testimony regarding the Aurora Detention Facility.  Plaintiffs oppose such a limitation.  Testimony regarding the VWP at other facilities is relevant to rebut GEO's defense that paying detainees $1 per day is mandated by its contract with ICE and consistent with work performed in other ICE facilities.  It is also relevant to prove Plaintiffs' claim that paying detainees $1 per day is unjust.

GEO's proposal to limit the testimony to GEO's interpretation of ICE policies rather than the policies themselves would create unnecessary obstacles to establishing a clear record.  Plaintiffs are capable of drawing out this distinction through their questioning, and GEO is equally capable of clarifying the record should the need arise. This objection amounts to an argument about what information is within GEO's personal knowledge, and appears to be geared toward the admissibility of the evidence.  It is well

established that "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). GEO presumably knows something about ICE policies, as suggested by its defense that it was acting within their scope; Plaintiffs are entitled to discover the basis for this knowledge and whether there are grounds for its admissibility at trial.

### 5.    Limitations on Topic 4: Costs and Benefits of Detainee Labor

GEO seeks to limit testimony regarding the costs and benefits of using detainee labor. Specifically, it wishes to strike the subtopics relating to current staffing at the Aurora Detention Facility, as well as testimony about the cost of using GEO employees to replace detainees' labor. Such limitations are inappropriate.

As noted previously, testimony from outside the class period is relevant because it can establish a point of comparison for certain GEO policies, and can shed light on the types of changes GEO is capable of making to the operation of its facilities.

In addition, testimony about subtopics (f) and (g), relating to the cost of using GEO employee labor, would not cause the deponent to "speculate about the costs associated," as GEO claims. Even if GEO has not itself conducted any studies or analyses regarding the cost of operating the facility without detainee labor, Plaintiffs are entitled to ask questions relevant to these subtopics – which are directly relevant to Plaintiffs' damages calculations – and gather any information needed to conduct relevant analyses themselves. If GEO truly does not have knowledge of its own cost structure, its designee can testify to that effect, but that fact is itself relevant to the case, and if true, imposes little cost on GEO to prepare the witness to so testify.

II.     **The Court Should Allow Plaintiffs to Inspect the Aurora Facility and Take Photos and Video During the Inspection.**

A.      **Videotaped Footage and Photographs of the Inspection Provide Key Evidence That is Not Available to Plaintiffs Through Other Means.**

Plaintiffs have established that videotaped footage of an inspection is relevant to their claims.  Video footage will show the layout, size, and flow between detainee living and recreation areas, including bunks, restrooms, showers, dining areas, and common rooms that were subject to the HUSP and VWP.[3]  The blueprints GEO has produced are no substitute, as they show only the positioning of walls, doors, windows, tables, and beds.  They do not show how detainee pods and common areas look, their size, how they are furnished, or how they transition from one area to another.  This information will show that the scope of the cleaning required under the HUSP far exceeds any reasonable definition of "personal housekeeping."

Likewise, video footage of the segregation unit would not, as GEO avers, "prove only that segregation units exist."  Def.'s Br. at 11.  Rather, it would illustrate what the segregation units look like, their condition, and the way they are used, all factors that would illustrate the inherently coercive nature of the detention environment.  This is relevant to whether solitary confinement constitutes force, physical restraint, or serious harm, by means of which GEO obtained Class Members' labor under the TVPA.

---

[3]     Although the Aurora GEO facility has expanded since the class period, Plaintiffs understand that this expansion involved the addition of an annex and not a fundamental restructuring of the spaces that were in use during the class period. *See, e.g.*, Conor McCormick-Cavanagh, Immigration Detention Facility in Aurora Expands With 432-Bed Annex, Westword (Feb. 1, 2019) https://www.westword.com/news/aurora-immigration-detention-facility-in-aurora-expands-with-432-bed-annex-11212275.  Plaintiffs do not seek to videotape areas of the facility that did not exist during the class period.

Because the size, space, and overall environment of the GEO facility is directly related to Plaintiffs' claims, this case is on all fours with the authority Plaintiffs cited in their opening brief. *See* Pls.' Br. 21-23. In *Nourse v. City of Jefferson*, No. 17 Civ. 807, 2018 WL 6444226, at *1 (N.D.N.Y. Dec. 10, 2018), the court held that a videotaped site inspection was merited where the size of the booking area in a jail was at issue in the case. Similarly, in *Dang ex rel. Dang v. Eslinger*, No. 14 Civ. 37, 2015 WL 13655675, at *3 (M.D. Fla. Jan. 20, 2015), a videotaped inspection was granted where liability hinged, in part, on the orientation of the jail's mental health unit. Plaintiffs' claims here are similarly informed by the structure of GEO's Aurora facilities, and just as in *Nourse* and *Dang*, the Court should compel a recorded inspection.

A videotaped inspection is especially important here because surveillance videos from the class period have been destroyed, *see* Scimone Reply Decl. ¶¶ 13-14, Ex. A (Mar. 4, 2019 letter from N. Beer), leaving Plaintiffs without access to this key evidence.[4] *See Dang*, 2015 WL 13655675, at *4-5 (granting request for videotaped inspection where surveillance video was unavailable). Video can convey "a relevant firsthand sense impression to the trier of fact," 44 Am. Jur. Trials 171 § 4 (1992) (quoting McCormick on Evidence (3d ed.) § 212), which for the reasons described above cannot be captured by blueprints alone. Thus, as in *Dang*, "[p]hotographs and videotapes of areas where

---

[4]   Through the meet-and-confer process, Plaintiffs have learned that GEO overwrites its video surveillance footage on a 30-day rotation, meaning that each day, the recording from the 31st day prior is overwritten by new footage. Scimone Reply Decl. ¶¶ 13-14, Ex. A (Mar. 4, 2019 letter from N. Beer). GEO did not take steps to preserve the 30 days of footage that were presumably available to it when it was served with the Complaint, which would have showed the facility's operations during the class period. *Id*. ¶ 14.

Plaintiff[s] [were] held may help the jury better understand the events at issue in the case." *Dang*, 2015 WL 13655675, at *5.

## B.   Plaintiffs' Proposed Solutions and the Protective Order Will Protect the Privacy of Detainees and GEO Employees.

Although Plaintiffs take GEO's security concerns seriously, there are procedures in place that adequately address them.  Plaintiffs have consistently been willing to accommodate ICE security protocols, such as the need to disclose the identity of site inspection attendees in advance.  Had GEO provided more specific security concerns and ICE's position – rather than waiting to present that position in motion practice – the parties could have reached a solution to each of these issues.[5]  Plaintiffs believe their proposed solutions adequately address GEO and ICE's concerns.

### 1.   The Stipulated Protective Order Addresses the Security Concerns GEO and ICE Identify.

GEO's opposition fails to acknowledge the existence of a Protective Order in this case, which was carefully and extensively negotiated between the parties and resolves nearly all of GEO's privacy and security concerns.  Plaintiffs take their obligations under the Protective Order seriously, and as long as GEO designates any inspection footage as Confidential or Highly Confidential – Attorneys' Eyes Only, such footage is restricted to Plaintiffs or, in the case of Highly Confidential material, Class Counsel only.  Violation of the protective order would violate Class Counsel's ethical obligations and could lead

---

[5]   ICE's June 20 letter also reflects an inaccurate understanding of the current state of the parties' negotiations over an inspection, which has limited the areas for proposed inspection significantly.  *Compare* Brown Decl., Ex. E (ICE June 20 letter) *with* Scimone Reply Decl. ¶¶ 15-16, Ex. B (May 15, 2019 email from M. Scimone).

to sanctions up to dismissal of the action or a finding of contempt.  *See, e.g., Kaufman v. Am. Family Mut. Ins. Co.*, 601 F.3d 1088, 1092-93 (10th Cir. 2010) (upholding sanctions issued pursuant to Fed. R. Civ. P. Rule 37(b)(2)(A) for violation of a protective order); Fed. R. Civ. P. 37(b)(2)(A) (listing sanctions for violation of a discovery order including dismissal, default judgment, and contempt).

Moreover, Plaintiffs seek to use video of the Aurora facility as evidence in a legal proceeding, not to publish on the internet.  Thus, concerns about viewers who could, for example, "exploit any perceived weaknesses in operational security," or about the public identification of GEO staff, *see* Def.'s Br. at 5, are not relevant.

To ensure the utmost confidentiality for any footage of the inspection, Plaintiffs propose that any video footage be designated Highly Confidential – Attorneys' Eyes Only, in accordance with Section 5 of the Protective Order.  That designation addresses precisely the concerns GEO raises, *i.e.*, evidence that constitutes "[h]ighly sensitive information, the disclosure of which could result in compromise of the safety or security of GEO facilities and/or harm or retaliation to individuals."  Protective Order at 3-4.

### 2. Plaintiffs Have Proposed Measures to Address GEO's Remaining Privacy and Security Concerns.

With respect to the details of a videotaped inspection, GEO mischaracterizes Plaintiffs' request as one "for unrestricted videography throughout [Aurora]."  Def.'s Br. at 12.  Far from demanding free range of the facility, Plaintiffs have agreed to limited sampling of the areas to be inspected.  Scimone Reply Decl. ¶¶ 15-16, Ex. B (May 15, 2019 email from M. Scimone).  Thus, for example, not all housing units will be subject to

inspection; instead, Plaintiffs will inspect one male and one female pod, plus common areas. *Id.* ¶ 16. This compromise narrows the scope of the inspection and lessens the burden on GEO.

GEO does not substantively respond to Plaintiffs' offer to pixelate or otherwise anonymize any GEO detainees or employees who appear on any video recording. Instead, it cites to a single *Quartz* article that states generally that machine learning may be used to identify some blurred images posted online. Def.'s Br. at 14; Brown Decl. Ex. I (*Quartz* article). Even if this article were probative, it is not relevant, because as noted above, Plaintiffs seek the video to use as evidence in a judicial proceeding, not to post online or otherwise publish to third parties. In order to further anonymize the video, Plaintiffs are also willing to obscure any voice recording.

Furthermore, the stated concern that a video recording may allow a viewer to re-create a blueprint of the facility is unpersuasive, because GEO has already provided Plaintiffs with an *actual* blueprint of the facility. *See* Brown Decl., Ex. E (ICE June 20 letter); ECF No. 189 (Brown Decl., Ex. H (renderings of the Aurora Detention Center)). However, Plaintiffs are willing to agree not to video record secure entryways and exits, and, to the extent possible, to avoid filming surveillance and other security equipment.

### 3.   GEO's Remaining Concerns are Outweighed by Plaintiffs' Need or Inconsistent with Positions It Has Taken Previously.

None of GEO's remaining concerns outweigh the substantial need Plaintiffs have demonstrated for video footage of the facility. As GEO notes, the PBNDS allow video access to immigration detention facilities to be limited "[i]f the presence of video, film, or

audio *equipment* or related personnel poses a threat to the safety or security of the facility, its staff or its detainees."  ECF No. 187-6 (Brown Decl., Ex. C (PBNDS)) at 8 (emphasis added).  But GEO does not explain at any point why or whether the presence of a video camera or a videographer – as opposed to the resulting video – have any impact on safety and security.  To the extent GEO believes that the presence of a videographer increases the risk of a detainee escape, there is no reason to believe this risk is any different for a videographer than any other member of Class Counsel's team.

With respect to the purported statutory bases for GEO's concern about detainee privacy, the anonymizing measures Plaintiffs have proposed alleviate any such concern. Even if they did not, "statutes prohibiting general disclosure of information do not bar judicial discovery absent an express prohibition against such disclosure." *Hassan v. United States*, No. 05 Civ. 1066, 2006 WL 681038, at *2 (W.D. Wash. Mar. 15, 2006) (citing *Zambrano v. INS*, 972 F.2d 1122, 1125 (9th Cir. 1992), and *St. Regis Paper Co. v. United States*, 368 U.S. 208, 217-18 (1961)); *see also Rodriguez v. Robbins*, No. 07 Civ. 3239, 2012 WL 12953870, at *2 (C.D. Cal. May 3, 2012) ("The asylum and VAWA, T & U confidentiality provisions do not foreclose court ordered discovery.").

Finally, GEO's arguments about ICE approval for the video recording represent yet another attempt to allow a third party to commandeer discovery.  This Court has already held that allowing ICE to control discovery would "result[] in a separation of powers problem" and cannot be allowed.  ECF No. 84 (Order Granting Plaintiffs' Motion to Compel and Denying Defendant's Motion for Protective Order) at 5.  Even if the Court were to consider ICE's input, it is unpersuasive.  First, ICE's June 20 letter does not

reflect the request for a videotaped inspection as it currently stands; as noted *supra* n.5, the scope of the inspection that Plaintiffs have agreed to with GEO is much narrower than the one ICE responded to.  Second, ICE set forth nearly the identical position in a letter submitted to the court in *State of Washington v. GEO Group*, No. 17 Civ. 5806 (W.D. Wash.), another set of consolidated cases in which the plaintiffs sought inspection of a GEO facility, but ultimately approved a different result, allowing plaintiffs to photograph the facility.  *Washington*, ECF Nos. 231-1 (Letter from ICE to Warden Langford), 235 (Order) (permitting inspection with photography pursuant to parties' agreement).  To the extent that GEO's position is that Aurora is different because it is overcrowded and understaffed, *see, e.g.*, Def.'s Br. at 5; ECF No, 187-1 (Declaration of Assistant Warden Dawn Ceja in Opposition to Motion to Compel ("Ceja Decl.")) ¶¶ 10-12; Brown Decl., Ex. E (ICE June 20 letter) at 4, denying access to counsel for Plaintiffs asserting civil rights violations *because of poor conditions at the facility* would be a particularly perverse result.[6]

## III.   Sanctions are Necessary to Deter GEO's Pattern of Brinksmanship.

GEO should not get credit for agreeing to designate a Rule 30(b)(6) witness at the last minute, after provoking a discovery dispute.  This conduct supports Plaintiffs' request for sanctions under both Rules 37(b)(2)(C) and 37(a)(5)(A) of the Federal Rules of Civil Procedure.  First, GEO failed to comply with the Court's scheduling order, *see* ECF No. 149 (Amended Stipulated Scheduling Order), and GEO did not reverse its

---

[6]    To the extent that GEO is concerned that overcrowding will tend to mislead a viewer as to conditions that existed during the class period, it may seek a limiting instruction at trial to cure that impression.

position until Plaintiffs expended resources bringing this motion, wasting Plaintiffs' and the Court's resources and delaying discovery.[7]  *See Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1556 (10th Cir. 1996) (affirming district court's sanctions under Rule 37(b) to enforce defendant's obligation to provide complete, meaningful accounting, where defendant's non-compliance and ensuing dispute had "expended far more judicial resources than should have been necessary" and forced plaintiff to relitigate the sufficiency of the accounting several times).

Second, GEO's reversal on the eve of a filing deadline further shows that its position as to the requested discovery was not substantially justified, supporting sanctions under Rule 37(a)(5)(A).  *See* Fed. R. Civ. P. 37(a)(5)(A); *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 680 (10th Cir. 2012) ("[T]he rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists." (alteration in original) (quoting Fed. R. Civ. P. 37(a)(4) advisory committee's note to 1970 amendment [currently Rule 37(a)(5)])).

The Court must apply sanctions here as a deterrent to GEO's pattern of conduct in this and other cases.  "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who

---

[7]     GEO attempts to shift blame for its inconsistent positions to Plaintiffs for allegedly failing to point to a "notation in the record where GEO had agreed to a second Rule 30(b)(6) deposition."  Def.'s Br. at 3; Brown Decl. ¶ 6.  Plaintiffs explained during the parties' meet and confer discussions on this issue that GEO's position was inconsistent with its prior position taken in the litigation and with the bifurcated discovery plan. Scimone Decl. ¶¶ 5-8.  GEO's attempt to shift blame is further evidence that it was negotiating in bad faith, suggesting that it was willing to contradict prior representations to Plaintiffs' counsel only as long as it believed there was no evidence of this contradiction in the record.

might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980) (alteration in original) (quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)); *Ordonez v. Serv*, No. 13 Civ. 67, 2017 WL 5054398, at *2 (D. Utah Mar. 27, 2017) ("[M]onetary sanctions provide the least severe sanction the Court can impose in hopes of deterring continuing discovery abuse."). GEO has not only repeated this wasteful brinksmanship on two occasions in this case, but has also used this tactic in related cases, *Washington*, No. 17 Civ. 5806. There, GEO and ICE took a similar hardline position with respect to inspections of the GEO facility at issue. The same day the parties' briefing on the issue of the inspection request was due to the court, GEO presented the plaintiff with a letter from ICE agreeing to some of the relief the plaintiff sought, but the State of Washington filed its brief anyway because of "the last-minute nature of GEO's and ICE's positions and the fact that the scope of allowable photography and date of the inspection is not clear." *Washington*, ECF No. 232 at 4. The Court must make clear that GEO cannot continue to delay, adopt hardline positions, and then reverse its position as soon as it is required to answer to the Court after Plaintiffs have expended time and resources on a motion to compel.

Finally, GEO's hollow attempt to confer with Plaintiffs on the eve of its deadline to respond undermines the purpose of Local Rule 7.1(a), with which this Court requires "complete compliance." *See* Memorandum of Judge John L. Kane, Pretrial and Trial Procedures – Civil Cases, at 7 (January 2019). The Local Rule and this Court's rules require a "reasonable, good faith effort to confer with opposing counsel to resolve the

issue," *id.*, an obligation Plaintiffs' counsel took seriously in their many attempts to confer with GEO.  GEO, on the other hand, did not take this obligation seriously, but rather acted in contravention of this Court's admonition in its rules that attempts to confer 24 hours prior to a deadline are not good faith efforts.  *See id.* ("Certification that a telephone call, e-mail or fax was directed to opposing counsel fewer than 24 hours before the paper was intended to be filed and 'no response' was received is per se NOT a good faith effort.").  This further supports a monetary sanction as a deterrent to similar future conduct.[8]

GEO's opposition does not address Plaintiffs' request for sanctions associated with this Motion to Compel except for a brief mention in its conclusion in opposition to this motion, so the Court may consider the issue conceded.  Def.'s Br. at 15; *see Rosales v. Bd. of Regents of the Univ. of Okla.*, No. 15 Civ. 560, 2015 WL 4644832, at *1 n.2 (W.D. Okla. Aug. 4, 2015) ("[The plaintiff] failed to respond to the argument in the motion to dismiss, and therefore the Court considers the issue conceded.").

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court (1) compel GEO to produce a witness or witnesses prepared to testify on the topics in Plaintiffs' Class Merits Notice dated November 2, 2018 on a date mutually agreed to by the parties following production of relevant documents, and deny GEO's de facto motion

---

[8]      To the extent that the Court grants GEO's request for a protective order with respect to the deposition topics, a fee award in GEO's favor would not be warranted under Rule 37(a)(5)(B).  For all the reasons discussed above, Plaintiffs' motion was substantially justified, and an award of expenses in GEO's favor would be unjust.

for a protective order limiting the topics in Plaintiffs' Class Merits Notice; (2) permit

inspection of Aurora with video recording; and (3) order GEO to pay the Class's costs

and fees associated with bringing this motion.

Dated this 3rd day of July, 2019.

Respectfully submitted,

OUTTEN & GOLDEN LLP


By:  *s/ Michael J. Scimone*
Michael J. Scimone
Ossai Miazad
Elizabeth Stork
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
mscimone@outtengolden.com
om@outtengolden.com
estork@outtengolden.com

David Lopez
**OUTTEN & GOLDEN LLP**
601 Massachusetts Avenue NW
Second Floor West Suite
Washington, DC 20001
Telephone: (202) 847-4400
pdl@outtengolden.com

Rachel Dempsey
Adam Koshkin
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: rdempsey@outtengolden.com
E-Mail: akoshkin@outtengolden.com

Alexander Hood
David Seligman
Andrew Schmidt
Juno Turner
**TOWARDS JUSTICE**
1410 High St., Suite 300
Denver, CO 80218
Telephone: (720) 441-2236                                    .
alex@towardsjustice.org
david@towardsjustice.org
andy@towardsjustice.org
juno@towardsjustice.org

R. Andrew Free
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
andrew@ImmigrantCivilRights.com

Brandt Milstein
**MILSTEIN LAW OFFICE**
1123 Spruce Street
Boulder, CO 80302
Telephone: (303) 440-8780
brandt@milsteinlawoffice.com

Andrew Turner
**THE KELMAN BUESCHER FIRM**
600 Grant St., Suite 450
Denver, CO 80203
Telephone: (303) 333-7751
aturner@laborlawdenver.com

Hans Meyer
**MEYER LAW OFFICE, P.C.**
P.O. Box 40394
Denver, CO 80204
Telephone: (303) 831-0817
hans@themeyerlawoffice.com

*Counsel for Plaintiffs and the Class*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of July, 2019, a true and correct copy of the foregoing **Reply in Further Support of Plaintiffs' Motion to Compel Rule 30(b)(6) Deposition and Inspection with Video Recording** was electronically filed with the Clerk of the Court using the CM/ECF electronic filing system, which will send notification to all counsel of record.

<i>s/ Michael J. Scimone</i><br>Michael J. Scimone