# Exhibit I

```
 1        IN THE UNITED STATES DISTRICT COURT FOR THE

 2                    DISTRICT OF COLORADO

 3

 4   ALEJANDRO MENOCAL, et al.,    )
                                   )
 5                                 )
             Plaintiff,            )
 6                                 )
          v.                       )Case No. 1:14-cv-02887
 7                                 )         JLK
     THE GEO ROUP, INC.,           )
 8                                 )
             Defendant.            )
 9   _____)

10

11

12

13

14

15          Deposition of JAMES CHARLES HILL, taken on

16   behalf of Plaintiffs, at 3600 Wilshire Boulevard,

17   Suite 1800, Los Angeles, California, commencing at

18   9:26 a.m. on Thursday, March 12, 2020, before Katherine

19   Jones, CSR 10097.

20

21

22

23

24

25
```

```
 1   APPEARANCES OF COUNSEL:

 2


 3       For PLAINTIFF:

 4            OUTTEN & GOLDEN
              BY: ADAM L. KOSHKIN, ESQ.
 5            One California Street
              12th Floor
 6            San Francisco, California 94111
              415 638-8800
 7            akoshkin@outtengolden.com


 8


 9       For DEFENDANT:

10            AKERMAN
              BY: DAMIEN P. DE LANEY, ESQ.
11            601 West Fifth Street
              Suite 300
12            Los Angeles, California 90071
              213 533-5920
13            damien.delaney@akerman.com

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1  hours of the law library -- "we would need an
 2  additional staff member to expand the hours, this is
 3  the cost for us to provide that service, and this is
 4  the costs of that service to provide that to ICE" --
 5  to decide if they want to incorporate that into the
 6  contract and adjust the price on the contract.
 7  Q       Okay.  And just to step back for a second.
 8  You said that's called an "equitable adjustment";
 9  correct?
10  A       The process is a request for equitable
11  adjustment.
12  Q       Can you define the term "equitable
13  adjustment"?
14          MR. DE LANEY:  Objection.  Calls for
15  speculation.  Calls for legal conclusion.
16          You can answer if you know.
17          THE WITNESS:  I don't know.  That's a
18  Government term that we've used in our office.
19  BY MR. KOSHKIN:
20  Q       Okay.  And is that different from a
21  contract modification?
22          MR. DE LANEY:  Objection.  Calls for
23  speculation.  Calls for legal conclusion.
24          You can answer if you know.
25          THE WITNESS:  An REA can be contract
```

```
 1   modifications, but not all contract modifications

 2   are a result of equitable adjustment.

 3   BY MR. KOSHKIN:

 4   Q        Can you give an example of a contract

 5   modification that wouldn't be a request for

 6   equitable adjustment?

 7            MR. DE LANEY:  I'm sorry, "would not be"?

 8            MR. KOSHKIN:  Correct.

 9            THE WITNESS:  Sure.  The client can put in

10   a contract modification as to financial impact to no

11   equitable adjustment that is created for that.  They

12   can amend the terms to include, say, new

13   performance-based standards into the contract.

14   BY MR. KOSHKIN:

15   Q        So am I understanding correctly, then,

16   that the equitable adjustments are changes to the

17   contract involving finances?

18   A        Yes.

19   Q        Okay.  And can you tell me a little bit

20   about the -- strike that.  Can you describe the

21   process for requesting an equitable adjustment?

22   A        Generally, the client will come to the

23   company with a new request for service or some

24   modification to the contract that the Geo would then

25   price out the financial impact and provide a price
```

1    back to the client of what we would be requesting in
2    return to provide that additional service or those
3    additional personnel.  The client then reviews that
4    and they would initiate a contract modification to
5    include that equitable adjustment and to add that
6    into the contract.
7    Q        Okay.  And you also mentioned a few
8    minutes ago that a request for equitable adjustment
9    might occur when conditions change.  Can you give an
10   example of what conditions might change requiring an
11   equitable adjustment?
12   A        So typically, every year, the Department
13   of Bureau and -- Department of Labor issues a new
14   wage schedule that is, then, incorporated into our
15   contract and so the conditions underlying the
16   contract had changed because now we have a new set
17   of standards for our employees' pay scale, and then
18   that would, in turn, have us complete an equitable
19   adjustment request to the client.
20         (Plaintiffs' Exhibit 2 was marked for
21                  identification.)
22   BY MR. KOSHKIN:
23   Q        Just introduce Exhibit 2.  Documents GEO
24   MEN 00050031.  Mr. Hill, do you recognize this
25   document?

James Charles Hill
March 12, 2020                                                    31

| | |
|---|---|
| 1  | A         This is an email communication between |
| 2  | myself and business manager in Aurora with some |
| 3  | other email strings included in it. |
| 4  | Q         Who is the business manager at Aurora? |
| 5  | A         Barbara Krumpelmann. |
| 6  | Q         Do you know who TaShek Hamlette is? |
| 7  | A         She was the contract specialist. |
| 8  | Q         What -- can you tell me a little bit, if |
| 9  | you know, what does that mean? |
| 10 | A         She works within our contract |
| 11 | administration to -- or she did work in our contract |
| 12 | administration department at our corporate office. |
| 13 | They, generally, oversee the process of filing any |
| 14 | adjustments to contracts, contract modifications to |
| 15 | make sure that we have a complete contract in our |
| 16 | database. |
| 17 | Q         Okay.  And is this communication -- strike |
| 18 | that.  Direct your attention to the page labeled |
| 19 | 50033, where Ms. Hamlette references, "Geo's request |
| 20 | for equitable Adjustment in connection with Wage |
| 21 | Determination Number 2005-2081."  Is that the an |
| 22 | example -- are you familiar with that -- what that's |
| 23 | referring to? |
| 24 | A         Generally speaking, I'm familiar with what |
| 25 | they're talking about, here.  Not this specific one, |

1  what that's referring to?
2  A        Yes, EBIT is Earnings Before Income Tax,
3  and so where it says, "Guaranteed ops Margin,"
4  that's referring to the pricing for those guaranteed
5  beds, not necessarily guarantee what our earnings
6  would be, but on the 300 beds.  Assuming the revenue
7  an expenses from above, that's what our earnings
8  should be after the 2.2 million if the depreciation
9  hasn't been priced.
10 Q        Flip two pages ahead.  So the third page
11 of the document it's titled, Geo Group, Inc.,
12 Aurora, Colorado, 525 Detainees for ICE, EXCL
13 Medical and Transportation."  Are you following
14 where I am?
15 A        Yes.
16 Q        Okay.  Dos "EXCL Medical and
17 Transportation," mean excluding medical and
18 transportation?
19 A        I read that to mean excluding.
20 Q        Are you familiar with this spreadsheet?
21 A        I'm familiar with this format.  Not this
22 particular pricing, but I'm familiar with this
23 format.
24 Q        Okay.  And what is this -- a spreadsheet
25 of that format show?

James Charles Hill
March 12, 2020                                               59

```
 1            MR. DE LANEY:  Objection.  Vague and
 2   ambiguous.
 3            You can answer.
 4            THE WITNESS:  This is part of the pricing
 5   model where it's listing different inputs for
 6   expenses and what the estimated costs for each of
 7   those items are.  Then it follows with Total
 8   Expenses and G&A Allocation, and then at the bottom,
 9   it has estimated profit based on this pricing.
10   BY MR. KOSHKIN:
11   Q       What is a G&A allocation?
12   A       G&A, generally, refers to general and
13   administrative overhead.
14   Q       And that's the category you were talking
15   about before, prices in the regional office and the
16   corporate office?
17   A       That's correct.
18   Q       Okay.  And are you familiar with how the
19   estimated profit is calculated in this spreadsheet.
20   A       In these spreadsheets, that's going to
21   take the revenue that's expected based on these
22   assumptions, substract out the expenses that are
23   listed, and then the difference would be what's
24   listed as profit here.
25   Q       Do you have any understanding of -- strike
```

James Charles Hill
March 12, 2020                                                          60

```
 1   that.  Do you know if Geo seeks to achieve a certain
 2   percentage of profit its pricing models?
 3            MR. DE LANEY:  Objection.  Vague and
 4   ambiguous.  Over broad.
 5            THE WITNESS:  I don't personally have any
 6   knowledge of what, perhaps, the CEO or CFO was
 7   looking at in particular projects because our profit
 8   margin has varied, in my experience.  So to my
 9   knowledge, I know that there's a specific target.
10   BY MR. KOSHKIN:
11   Q       Okay.  Let's set this aside for now
12   (indicating).
13        (Plaintiffs' Exhibit 5 was marked for
14                 identification.)
15   BY MR. KOSHKIN:
16   Q       That is Exhibit 5.  This is a document
17   labeled Subject, April 2015 P&L Report.  And it's
18   Bates labeled GEO MEN 00044408.  Are you familiar
19   with this document?
20   A       I'm familiar with these documents.  I
21   haven't reviewed this one in five years, but yes,
22   I'm familiar with this type of document.
23   Q       Okay.  I'm gonna quickly ask you who the
24   folks on cover page is.  Do you know who George C.
25   Zoley is?
```

```
 1   STATE OF CALIFORNIA     )
                             )
 2   COUNTY OF LOS ANGELES   )

 3

 4       I, Katherine Jones, a Certified Shorthand

 5   Reporter, do hereby certify:

 6       That prior to being examined, the witness in the

 7   foregoing proceedings was by me duly sworn to testify to

 8   the truth, the whole truth, and nothing but the truth;

 9       That said proceedings were taken before me at the

10   time and place therein set forth and were taken down by

11   me in shorthand and thereafter transcribed into

12   typewriting under my direction and supervision;

13       I further certify that I am neither counsel for,

14   nor related to, any party to said proceedings, not in

15   anywise interested in the outcome thereof.

16       In witness whereof, I have hereunto subscribed my

17   name.

18

19   Dated:

20

21

22
            [signature: Katherine Jones]
23   _____

24   Katherine Jones
     CSR No. 10097
25
```