# Exhibit K

# DECLARATION OF SHANNON ELY
# CONTRACTING OFFICER
# OFFICE OF ACQUISITION MANAGEMENT
# UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT
# DEPARTMENT OF HOMELAND SECURITY

I, Shannon Ely, make the following statement under oath subject to penalty of perjury:

1. My name is Shannon Ely. I am competent to testify in these matters in that I am over the age of majority and I am familiar with the subjects discussed herein. The statements contained in this declaration are based upon my personal knowledge or information provided to me in my official capacity. The following statements are true and correct to the best of my information, knowledge, and belief.

2. I am a Contracting Officer at U.S. Immigration and Customs Enforcement (ICE), Office of Acquisition Management (OAQ). I have held this position since September 30, 2007. My current work address is: 801 I (Eye) St. NW Washington, D.C. 20536.

3. The ICE Enforcement and Removal Operations (ERO) facility located at 3130 North Oakland Street Aurora, CO 80010, known as the Aurora Contract Detention Facility (Aurora CDF) is a Contract Detention Facility (CDF), owned and operated by a contractor.

4. ICE CDF contracts are performance-based contracts. ICE ERO utilizes requirements document, such as a Statement of Work (SOW), a Statement of Objectives (SOO), or Performance Work Statement (PWS) to outline ICE's requirement, including a list of objectives, applicable standards, and terms and conditions that a contractor must comply with.

5. ICE ERO published its requirement through its requirements documents and solicited proposals and price quotes from vendors.

6. By bidding on the Aurora CDF contracts and providing a proposal and a quoted price, The GEO Group, Inc. (GEO) (formerly known as Wackenhut Correction Corporation) indicated it would meet ICE's requirement in accordance with the contract's requirements documents and corresponding standards.

7. During the timeframe of 2004 to the present, civil immigration detention services at the Aurora CDF have been performed under three different contract vehicles.

8. From March 27, 2003 to September 28, 2006, services were performed by GEO (doing business as Wackenhut Correction Corporation), under Contract No. ACD-3-C-0008.

9. Contract No. ACD-3-C-0008 did not contain a specific term in the SOW regarding personal housekeeping or a voluntary work program.

10. Contract No. ACD-3-C-0008 required "full compliance with the INS Detention Standards," which would have been the 2000 National Detention Standards (NDS).

11. Contract No. ACD-3-C-0008 included a requirement that the contractor create a Quality Assurance Plan (QAP) "that addressed critical, measurable, operational performance standards for the services required under this contract. The contractor shall incorporate in the QAP a periodic system that reviews and updates the changes to all plans, policies and procedures. The QAP shall include a monthly audit, or as directed by INS which shall include the performance review of the facility operations for compliance with the QAP and compliance with the requirements of this contract… The contractor's QAP shall be capable of identifying deficiencies, appropriate corrective action(s) and timely implementation plan(s) to the Contracting Officer."

12. From September 29, 2006 to February 14, 2011, services were performed by GEO under Contract No. HSCEOP-06-D-00010.

13. Contract No. HSCEOP-06-D-00010 contained a section entitled "Manage a Detainee Work Program" at Section 10.6. This section reads: "Detainee labor shall be used in accordance with the detainee work plan developed by the Contractor. The detainee work plan must be voluntary, and may include work or program assignments for industrial, maintenance, custodial, service or other jobs. The detainee work program shall not conflict with any other requirements of the contract and must comply with all applicable laws and regulations.... Detainees shall not be used to perform the responsibilities or duties of an *Employee* of the Contractor. Appropriate safety/protective clothing and equipment shall be provided to detainee workers as appropriate. Detainees shall not be assigned work that is considered hazardous or dangerous. This includes, but is not limited to, areas or assignments requiring great heights, extreme temperatures, use of toxic substances and unusual physical demands."

14. Contract No. HSCEOP-06-D-00010 Modification 18, dated April 28, 2010, incorporated "the new National Performance Based Detention Standards," which would have been the ICE 2008 Performance-Based Detention Standards.

15. The PWS for Contract No. HSCEOP-06-D-00010 contained a requirement that the "Contractor is responsible for management and quality control actions necessary to meet the quality standards set forth in the contract. In compliance with the Federal Acquisition Regulation (FAR) Clause 52.246-4, Inspection of Services-Fixed, the Contractor must provide a quality control plan (QCP) to the CO for concurrent not later than the post award conference."

16. From September 15, 2011 to the present, detention services at Aurora CDF have been performed by GEO under Contract No. HSCEDM-11-D-00003.

DECLARATION OF SHANNON ELY
OFFICE OF ACQUISITION MANAGEMENT
UNITES STATES IMMIGRATION AND CUSTOMS ENFORCEMENT
3 of 7

17. The 2008 Performance-Based National Detention Standards (PBNDS) were incorporated into the award of Contract No. HSCEDM-11-D-00003.

18. The SOW for Contract No. HSCEDM-11-D-00003 contained a requirement that the contractor maintain a "Voluntary Work Program". The section stated: " (1) Detainees may have opportunities to work and earn money while confined, subject to the number of work opportunities available and within the constraints of safety, security, and good order. (2) Detainees will be able to volunteer for work assignments but otherwise not be required to work, except to do personal housekeeping. (3) Essential operations and services will be enhanced through productivity from detainees. (4) the negative impact of confinement will be reduced through less idleness, improved morale and fewer disciplinary incidents. (5) Detainee working conditions will comply will all applicable federal, state, and local work safety laws and regulations. (6) There will be no discrimination regarding voluntary work program access based on any detainee's race, religion, national origin, gender, sexual orientation, or disability. (7) The applicable contents and procedures in this Standard will be communicated to the detainee in a language or manner that the detainee can understand."

19. The 2011 Performance Based National Detention Standards (PBNDS 2011) Minimal standards, several Optimal Standards, and an updated Quality Assurance Surveillance Plan were incorporated into Contract No. HSCEDM-11-D-00003 through Modification 5, dated May 23, 2013.

20. The 2011 PBNDS, 2016 revision was incorporated into HSCEDM-11-D-00003 through Modification 26, dated February 4, 2017. The 2016 revision to the 2011 PBNDS did not include any changes to the Voluntary Work Program (VWP) chapter.

21. Except for the contract references and detention standard references above, there are no other contract terms in any of the three contracts for the Aurora CDF that relate to "personal housekeeping" or the VWP.

22. The Housing Unit Sanitation Policy (HUSP) is a GEO policy, created by GEO. The GEO HUSP is not created by ICE nor is it a requirement of the contract. ICE did not draft or negotiate GEO's HUSP.

23. Contract No. HSCEDM-11-D-00003 contained a Quality Control Plan (QCP), which is a contractor produced self-inspection plan that describes the internal staffing and procedures that the…Contractor will use to meet the quality, quantity, timeliness, responsiveness, customer satisfaction, and other performance standards specified in the contract." The Contract also contained a Quality Assurance Surveillance Plan (QASP), which is a government produced plan that "sets forth the procedures and guidelines that ICE will use to inspect the technical performance of the Contractor. It presents the financial values and mechanisms for applying adjustments to the Contractor's invoices as dictated by work performance measured to the desired level of accomplishment."

24. As part of the QASP, the ERO Contracting Officer Representative (COR) checks for the following criteria with regard to the VWP and personal housekeeping:

   a. Facility has a voluntary work program
   b. Maintain a written chart with work assignments/classification level
   c. Facility complies with work hour and pay requirements for detainees
   d. Detainees are medically screened to participate
   e. Detainees receive proper training and safety requirement
   f. Detainee housekeeping meets standards for neatness, cleanliness and sanitation

25. During the time frame of 2004 to the present, there have been no Contract Discrepancy Reports (CDR) pertaining to VWP or personal housekeeping at Aurora CDF.

26. During the time frame of 2004 to the present, there have been no Requests for Equitable Adjustment (REA) pertaining to personal housekeeping and only one REA related to VWP at the Aurora CDF.

27. The single REA related to the VWP at the Aurora CDF was dated April 18, 2018 and was received as a letter from Amber D. Martin, GEO's Executive Vice President for Contract Administration to the ICE Contracting Officer. In the letter, GEO requested an equitable adjustment of $1,928,433.38 to Contract HSCEDM-11-D-00003 under the contract's Changes Clause, alleging that the "contract requirements are incomplete because GEO reasonably believed that it could perform these specifications and contract requirements without incurring legal fees to defend such specifications and contract requirements."

28. By letter dated June 21, 2018, the ICE Contracting Officer denied the REA request in its entirety. The basis for this determination was: (1) "There have been no constructive changes to the terms of the Contract." (2) "The performance specification and standards are not 'incomplete' and are not defective…the service provider has been on notice about these terms since contract inception [in 2011], when the performance-based contract was negotiated." (3) "GEO's legal fees and expenses are not cognizable costs under the contract terms or under [Federal Acquisition Regulation] FAR 31.205-47…GEO's defense of these private lawsuits is a defense of its contract performance."

I declare, under penalty of perjury under 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED: October 11, 2019

*Shannon Ely*

Shannon Ely
Contracting Officer
Office of Acquisition Management
U.S. Immigration and Customs Enforcement
Department of Homeland Security