# Exhibit Y



| | Aurora Detention Center POLICY and PROCEDURE MANUAL | EFFECTIVE: 6/17/13 |
|---|---|---|
| | **10.2.11-AUR** | **SUPERSEDES:** 4/1/13 |
| | **CHAPTER: Security** **TITLE: Special Management Unit Operations** **RELATED ACA STANDARDS: 4-ALDF-2A-45, 2A-48, 2A-51–2A-54, 2A-56–2A-64** | **APPROVED BY:** |

## I. PURPOSE

To describe the operational standards for housing detainees in administrative and disciplinary housing status while confined in the facility.

## II. POLICY

It is the policy of the facility to maintain safe, secure housing for detainees who require protection or whose behavior indicates they require more physical controls than are available in typical housing units in the facility.

## III. DEFINITIONS

A. **Administrative Segregation** – A form of separation from the general population used when the continued presence of the detainee in the general population would pose a threat to life, property, self, other detainees, or staff or to the security or orderly running of the facility.
B. **Disciplinary Hearing** – Non-judicial administrative procedure to determine whether substantial evidence supports finding a detainee guilty of a rule violation.
C. **Disciplinary Segregation** – Confinement in a cell removed from the general population after a serious violation of facility rules.
D. **Institutional Disciplinary Panel (IDP)** – Review board responsible for conducting disciplinary hearings and imposing sanctions for cases of detainee misconduct referred for disposition following the hearing. The IDP is usually comprised of a Hearing Officer and representatives of different departments in the facility.
E. **Protective Custody (PC)** – Administrative segregation for the detainee's own safety. The facts associated with the need for this status must be fully documented.
F. **Segregation** – Confinement in a cell isolated from the general population; for administrative disciplinary or protective reasons.
G. **Special Management Unit (SMU)** – A housing unit for detainees in administrative or disciplinary segregation.

## IV. PROCEDURES

The facility will operate a locked or secure housing unit that will constitute its prime resource for detainees who are unmanageable, present a threat to themselves or others, or who for other reasons require protection or removal from the general population.

### A. Conditions of Confinement

Segregation housing units provide living conditions that approximate those of the general detainee population. All exceptions are clearly documented. Segregation cells/rooms permit the detainees assigned to them to converse with and be observed by staff members. Cells/rooms used for segregation encompass at least 70 square feet of floor area of which 35 square feet is unencumbered. [4-ALDF-2A-51]

Conditions of confinement in the locked unit will reflect the least restrictive amount of control necessary to adequately supervise and safeguard detainees and staff. Whenever an emergency arises that requires variance from approved conditions on a temporary basis, such as deprivation of otherwise approved items, an immediate report will be made to the Warden. [4-ALDF-2A-58]

A detainee will not be held in the unit without clothing, a mattress, blankets, and a pillow, except when prescribed for medical or psychiatric reasons. If a detainee is so seriously disturbed that he or she is likely to destroy clothing or bedding or create a disturbance that would be serious detrimental to others, medical staff will be notified immediately and a regimen of treatment and control will be instituted with the concurrence of the medical department.

B. **Medical Assessment**

When a detainee is transferred to segregation, health care personnel are informed immediately and provide assessment and review as indicated by the protocols established by the Health Services Administrator. Unless medical attention is needed more frequently, each detainee in segregation receives a daily visit from a health care provider. The presence of a health care provider in segregation is announced and recorded. The health authority determines the frequency of physician visits to segregation. [4-ALDF-2A-45]

A psychiatric or psychological assessment, including a personal interview with the detainee by a qualified mental health professional shall be conducted every 30 days that a detainee continues confinement. This mental health assessment will be submitted to the Warden in a written report for each individual detainee.

C. **Operating Procedures**

Staff members entering the Special Management Unit, and who are not assigned to work in the Special Management Unit, will sign the Visitor's Logbook documenting the date, time and reason for their visit. This does not include detention officer's relieving the assigned staff member for breaks or lunch/dinner.

Any detainee movement out of a cell will be in restraints. The restraints will be removed only when the detainee is in a secure enclosure, such as a recreation area, shower, etc.
High security cells will be specially marked with a notice to designate that a two-officer rule is in operation for the occupant. That cell will only be opened with two officers present. Two officers will remain in the SMU area during the out of cell time for that detainee. High security designations will be made in selected cases. Staff may make a recommendation for such action through their supervisor. The Warden or the Warden's designee will make the final decision.

Staff will personally observe every detainee at least every thirty minutes on an irregular schedule and document the checks in their logbook as well as completing the seg 30 minute check form. Detainees who are violent or mentally disordered or who demonstrate unusual or bizarre behavior receive more frequent observation. Suicidal detainees are under continuous observation until seen by a mental health professional. Subsequent supervision routines are in accordance with that ordered by the mental health professional. [4-ALDF-2A-52]

When a detainee in an SMU is deprived of any usual authorized items or activity, a report of the action shall be forwarded to the Warden for review. This report shall be made part of the detainee's detention file.

When recreation privileges are suspended, the disciplinary panel or facility administrator shall provide the detainee written notification, including the reason(s) for the suspension, any conditions that must be met before restoration of privileges, and the duration of the suspension provided the requisite conditions are met for its restoration.

D. **Placement in Administrative Segregation**

Administrative Segregation status is a non-punitive status in which restricted conditions of confinement are required only to ensure the safety of detainees or others, the protection of property, or the security or good

order of the facility. For matters of safety and security, staff may have to take immediate action to control a detainee, including placement in Administrative Segregation. Examples include detainees who require protective custody, who cannot be placed in the general population because they are en route to another facility ("holdovers"), who are awaiting a disciplinary hearing, or who require separation for medical reasons.

1. Prior to the detainee's placement in administrative segregation, the Warden or designee and the Classification Officer will review the case to determine whether administrative segregation is warranted.

2. A detainee may be placed in administrative segregation when the detainee's continued presence in the general population poses a threat to life, property, self, staff, or other detainees; for the secure or orderly operation of the facility; for medical reasons or other circumstances as set forth below. Examples include, but are not limited to the following:

a. A detainee is awaiting an investigation or a hearing for a violation of facility rules. Pre-disciplinary hearing detention should be ordered only as necessary to prevent further rules violation(s) or to protect the security and orderly operation of the facility. It is not to be used as a punitive measure. Time served in pre-hearing detention may be deducted from any time ordered by the Institutional Disciplinary Panel (IDP).

b. A detainee is a threat to the security of the facility. The Warden may determine that a detainee's criminal record, past behavior at other institutions, behavior while in Immigration and Customs Enforcement (I.C.E.) detention, or other evidence is sufficient to warrant placing the detainee in administrative segregation. Copies of records supporting this action will be attached to the Administrative Segregation Order.

c. A detainee requires protection. A detainee is admitted to protective custody status when there is documentation that protective custody is warranted and no reasonable alternatives are available. [4-ALDF-2A-46] Protective custody (PC) may be initiated at the detainee's request or ordered to protect the detainee from harm. Examples include:

    1) Victims of detainee assaults;
    2) Detainee informants/witnesses - detainees who provide information to the institution staff or any law enforcement agency concerning improper activities by others;
    3) Sexual predators;
    4) Detainees who have been pressured by other detainees to participate in sexual activity;
    5) Detainees who request PC;
    6) Detainees who refuse to enter the general population because of alleged intimidation from other detainees;
    7) Detainees who refuse to return to the general population, but who will not provide the reason for refusal;
    8) Detainees who appear to be in danger of bodily harm; or
    9) Detainees who seek protection, claiming to be former law enforcement officers or to have held sensitive law enforcement position, whether or not there is official information to verify the claim.

d. The IDP may order a detainee into administrative segregation following disciplinary segregation after determining that releasing the detainee into the general population would pose a threat to the security and orderly operation of the facility. A detainee transferred from disciplinary segregation to administrative segregation shall enjoy the same privileges as all others in administrative segregation.

e. A medical professional ordering a detainee removed from the general population shall complete and sign the Administrative Segregation Order, unless the detainee will stay in the medical department's isolation/segregation ward.

f. A detainee is scheduled for release, removal, or transfer within 24 hours. Such segregation may be ordered for security reasons or for the orderly operation of the facility.

E. <u>Administrative Segregation Order</u>

A written order shall be completed and approved by a Shift Supervisor before a detainee is placed in administrative segregation, except when exigent circumstances make this impracticable. In such cases, an order shall be prepared as soon as possible. A copy of the order shall be given to the detainee within 24 hours, unless delivery would jeopardize the safety, security, or orderly operation of the facility.

1. The Warden or the Warden's designee shall complete the Administrative Segregation Order detailing the reasons for placing a detainee in administrative segregation, before actual placement.

2. In an emergency, the detainee's placement in administrative segregation may precede the paperwork, which the Warden will prepare as soon as possible.

3. All memoranda, medical reports, and other relevant documents shall be attached to the segregation order.

4. A copy of the completed Administrative Segregation Order will be given to the detainee within 24 hours of placement in administrative segregation, unless delivery would jeopardize the safe, secure, or orderly operation of the facility.

5. The order will remain on file with the Special Management Unit (SMU) until the detainee is returned to the general population.

6. When the detainee is released from the SMU, the releasing officer will indicate date and time of release on the Administrative Segregation Order, then forward the completed order to the Classification Officer for insertion into the detainee's detention file.

7. If the segregation is ordered for PC purposes, the order shall state whether the detainee requested the segregation; also, whether the detainee requests a hearing concerning the segregation.

8. No Administrative Segregation Order is required for a detainee awaiting removal, release, or transfer within 24 hours.

F. <u>Review of Detainee Status in Administrative Segregation</u>

1. The SMU review committee, chaired by the Programs Coordinator shall conduct a review within 72 hours of the detainee's placement in administrative segregation to determine whether segregation is still warranted. The review shall include an interview with the detainee. A written record shall be made of the decision and the justification. The Administrative Segregation Review Form will be used for the review. If the detainee has been segregated for the detainee's protection, but not at the detainee's request, the signature of the Warden or Assistant Warden is required on the Administrative Segregation Review Form to authorize continued detention.

2. The SMU review committee shall conduct the same type of review after the detainee has spent seven days in administrative segregation, and every week thereafter for the first two months and at least every 30 days thereafter. The review shall include an interview with the detainee. A written record shall be made of the decision and the justification. [4-ALDF-2A-48, 2A-49]

3. A copy of the decision and justification for each review shall be given to the detainee, unless, in exceptional circumstances, this provision would jeopardize security. The detainee shall be given an

opportunity to appeal a review decision to a higher authority within the facility. An additional copy will be placed in the detainees segregation file.

4. Immigration and Customs Enforcement Assistant Director, shall be notified when any detainee has been in administrative detention for more than 30 days. This notification shall be made through the on-site COR. The Region shall then consider whether transfer of the detainee to a facility where he/she may be placed in the general population would be appropriate.

5. If a detainee has been in administrative segregation for more than 30 days and objects to this status, the Warden shall review the case to determine whether that status should continue. This review shall take into account the views of the detainee. A written record shall be made of the decision and the justification. A similar review shall take place every 30 days.

6. After seven consecutive days in administrative segregation, the detainee may exercise the right to appeal to the Warden the conclusions and recommendations of any review conducted. The detainee may use any standard form of written communication, e.g., detainee request, to file the appeal.

G. <u>Conditions of Administrative Segregation (Basic Living Standards)</u>

1. Detainees in administrative segregation shall receive the same general privileges as detainees in the general population, consistent with available resources and security considerations for detainees, facility staff and security.

2. The quarters used for segregation shall be well ventilated, adequately lit, appropriately heated and maintained in a sanitary condition at all times. All cells must be equipped with beds.

3. The number of detainees confined to each cell or room in administrative segregation should not exceed the capacity for which it was designed. The Warden may approve excess occupancy, on a temporary basis, if the Warden finds that the other basic living standards can still be maintained.

   Segregation housing units provide living conditions that approximate those of the general inmate population. All exceptions are clearly documented. Segregation cells permit the detainees assigned to them to converse with and be observed by staff members. Cells used for segregation encompass at least 70 square feet of floor area of which 35 square feet is unencumbered.

4. Clothing and bedding shall be issued to detainees in segregation. Detainees in segregation will be provided the same opportunity for the exchange of clothing, bedding and linen and for laundry as detainees in the general population.

   A detainee in segregation may wear normal institutional clothing and shall be furnished a mattress and bedding. A detainee may not be segregated without clothing, mattress, blankets and pillow, except:

   a. When prescribed by a medical professional for medical or psychiatric reasons. If a detainee is so seriously disturbed that he/she is likely to destroy clothing or bedding, or to create a disturbance putting self or others at risk, the medical department shall be consulted immediately to determine whether a regimen of treatment and control may be instituted.

   b. When the Shift Supervisor determines the detainee poses a threat to self or property.

   Exceptions shall occur only when necessary for security purposes, as determined by the Warden. Any exception, and the reasons, shall be recorded in the housing unit log.

5. Detainees in segregation shall receive three nutritionally adequate meals per day, from the menu served to the general population. For security purposes, detainees in the SMU shall use disposable utensils only. Under no circumstances shall food be used as punishment. The ADC does not utilize alternative meals.

6. Segregated detainees shall have the opportunity to maintain a normal level of personal hygiene. Staff shall provide toilet tissue, a wash basin, tooth brush, shaving utensils, etc., as needed, and may issue retrievable kits of toilet articles.

   Each segregated detainee shall have the opportunity to shower and shave at least daily, unless these procedures would present an undue security hazard. This security hazard will be documented and signed by the Warden or the Warden's designee, indicating his/her review and approval. Denial of showers will be temporary and situational, and will continue only as long as justified by the security threat.

7. Detainees in segregation will be provided, where practicable, barbering services. Exceptions to this procedure may be permitted only when found necessary by the Warden.

8. Detainees in segregation will be offered a minimum of two hour of exercise per day outside their cells, seven days per week.

   These provisions shall be carried out, absent compelling security or safety reasons documented by the Warden. A detainee's recreation privileges may be withheld temporarily after a severely disruptive incident. Staff shall document by memorandum and logbook(s) notation every instance when a detainee is denied recreation. The memorandum shall be placed in the detainee's detention file as well as forwarding a copy of the action to the Warden.

   The case of a detainee denied recreation privileges will be reviewed at least once each week, as part of the reviews required for all detainees in the unit. The reviewer will document whether the detainee continues to pose a threat to self, others, or facility security and, if so, why. Denial of recreation must be evaluated daily by the shift supervisor.

   Denial of recreation privileges for more than 15 days requires the concurrence of the Warden and H.S.A. The Warden will notify ICE when a detainee is denied recreation privileges for more than 15 days.

   When space and resources are available, detainees in administrative segregation will be able to participate in TV viewing, board games, socializing and work details (e.g., a housekeeper in the SMU); and provided opportunities to spend time outside their cells, over and above recreation periods.

9. The Warden will issue guidelines concerning the property that detainees may retain in administrative segregation.

10. A reasonable amount of non-legal reading material will be available to detainees in segregation. The detainee will also be permitted religious material, unless the religious item would pose a threat to security

11. Detainees in segregation will be permitted to retain a reasonable amount of personal legal material, unless this would create a security threat. If personal legal material is placed in storage, the detainee shall be able to access the material promptly, upon request.

Detainees will be permitted to retain all personal legal material upon admittance to segregation, provided such material does not create a safety, security and/or sanitation hazard. Detainees with a large amount of personal legal material may be required to place a portion of the material in their personal property, with access permitted during designated hours. Requests to access such legal material should be met as soon as possible, but in no case longer than twenty-four (24) hours after receipt of the initial detainee request to retrieve documents, unless documented security concerns preclude action within this time-frame.

12. In addition to the direct supervision afforded by the unit officer, the Shift Supervisor shall see each segregated detainee daily, including weekends and holidays.

    Unless medical attention is needed more frequently, each detainee in segregation receives a daily visit from a health care provider. The presence of a health care provider in the Special Management Unit is announced and recorded. The Health Services Administrator determines the frequency of physician visits to segregation units. The medical visit shall be notated on the SMU Activity Sheet. The medical professional will question each detainee to identify medical problems or requests. Any action taken will be documented in a separate logbook.

13. The facility shall follow the "Visitation" standard in setting visitation rules for detainees in segregation. Ordinarily, a detainee retains visitation privileges while in segregation.

14. Detainees in PC will not use the visitation room during normal visitation hours. In addition, violent and disruptive detainees may be limited to non-contact visitation. In extreme cases, visitation may be disallowed for a particular detainee where the visit would present an unreasonable security risk. Under no circumstances are detainees to participate in general visitation while in restraints. If the detainee's behavior warrants restraints, the visit will not be granted.

    General visitation may be restricted or disallowed when a detainee, while in a segregation status, is charged with, or has been found to have committed, a prohibited act having to do with visiting guidelines or has otherwise acted in a way that would reasonably indicate that he or she would be a threat to the orderliness or security of the visiting room.

    Detainees in segregation may not be denied legal visitation, but reasonable security precautions will be taken where necessary. Legal service providers and assistants will be notified of any security concerns prior to the meeting.

15. Detainees in segregation shall have the same correspondence privileges as detainees in the general population.

16. The facility shall follow the "Telephone Access" standard that provides guidelines for detainees in segregation. Detainees in administrative segregation will be permitted telephone access similar to that provided to detainees in the general population, but in a manner consistent with the special security and safety requirements of detainees in these units.

17. Members of the clergy may visit detainees in segregation, unless the Shift Supervisor determines the visit presents a security risk or will interfere with the orderly operating of the facility.

    Violent and uncooperative detainees may be temporarily denied access to religious services until such time as their behavior and attitude warrants.

18. Detainees housed in segregation shall have the same law library access as the general population, consistent with security, although the facility may establish a policy of upon-request-only access. The level of supervision will depend on the individual's behavior and attitude.

Leisure reading materials will be available as requested from the Library. [4-ALDF-2A-63]

Detainees in locked housing shall have the same law library access as the general population, consistent with security, the facility will grant access upon-request-only. The level of supervision will depend on the individual's behavior and attitude. [4-ALDF-2A-62]

Any denial of access to the law library will be supported by compelling security concerns, for the shortest period required for security, fully documented in the SMU housing logbook as well as notification to ICE every time law library access is denied. A general incident report will be placed in the detainee's detention file documenting the reason for the denial.

Detainees in the SMU for protective custody will be required to use the law library separately or will have requested legal material delivered to them.

19. Detainees in segregation shall have the same correspondence privileges as detainees in the general population (see the "Correspondence and Other Mail" standard).

**H. Placement in Disciplinary Segregation**

To provide detainees in the general population a safe and orderly living environment, facility authorities shall discipline anyone whose behavior does not comply with facility rules and regulations. This may involve temporary confinement apart from the general population, in the Special Management Unit (SMU). A detainee may be placed in disciplinary segregation only by order of the Institutional Disciplinary Committee (IDP), after a hearing in which the detainee has been found to have committed a prohibited act. [4-ALDF-2A-47]

The Disciplinary Hearing Officer may order placement in disciplinary segregation only when alternative dispositions would inadequately regulate the detainee's behavior.

A detainee will remain in Disciplinary Segregation for no more than 60 days for violations associated with a single incident, and his or her status will be reviewed after the first 30 days, and each 30 days thereafter by the Warden and the Field Office Director to determine if continued detention in Disciplinary Segregation is still warranted.

**I. Disciplinary Segregation Order**

A written order shall be completed and signed by the Disciplinary Hearing Officer before a detainee is placed in disciplinary segregation. A copy of the order shall be given to the detainee within 24 hours, unless delivery would jeopardize safety, security, or the orderly operation of the facility.

1. The Disciplinary Hearing Officer shall prepare the Disciplinary Segregation Order, detailing the reasons for placing a detainee in disciplinary segregation, before actual placement. All relevant documentation must be attached to the order.

2. A copy of the completed Disciplinary Segregation Order will be given to the detainee within 24 hours of placement in disciplinary segregation, unless delivery would jeopardize the safe, secure, or orderly operation of the facility.

3. The order will be maintained on file with the Special Management Unit (SMU) until the detainee is released from the SMU.

4. When the detainee is released from the SMU, the releasing officer will indicate date and time of release on the Disciplinary Segregation Order, then forward the completed order to the Classification Officer for insertion into the detainee's detention file.

J. **Review of Detainee Status in Disciplinary Segregation**

1. The SMU review committee shall review the status of a detainee in disciplinary segregation within seventy-two hours of admission, every seven days for the first two months, and every thirty days thereafter to determine whether the detainee:

   a. abides by all rules and regulations; and,

   b. is provided showers, meals, recreation, and other basic living standards, weekly review(s) will include an interview with the detainee. The SDEO shall document his/her findings after every review, by completing a Disciplinary Segregation Review Form (I-887).

2. The SMU review committee may recommend the detainee's early release from the SMU upon finding that time in disciplinary segregation is no longer necessary to regulate the detainee's behavior.

3. An early-release recommendation must have the Warden's approval before the detainee can be returned to the general population.

4. The committee may shorten, but not extend, the original sanction.

5. All review documents shall be placed in the detainee's detention file.

6. Provided institutional security is not compromised, the detainee shall receive at each formal review, a written copy of the reviewing officer's decision and the basis for this finding.

K. **Conditions of Disciplinary Segregation (Basic Living Standards)**

1. The conditions of confinement will depend on the amount of supervision required to control the individual and safeguard other detainees and staff.

2. Detainees housed in disciplinary segregation generally have fewer privileges than those housed in administrative segregation. These detainees are subject to more stringent personal property control, restricted reading material, commissary privileges, etc.

3. The Warden shall maintain the same living levels of decency and humane treatment for each detainee in disciplinary segregation, regardless of the purpose for which the detainee has been segregated. When different treatment is required for security concerns presented by an individual detainee, staff shall prepare written documentation justifying this action. The Warden shall sign this document, indicating his/her approval.

4. Detainees in disciplinary segregation will be provided the same opportunity for the exchange of clothing, bedding, and linen and for laundry as detainees in the general population. If, for security purposes, the Warden authorizes an exception, the exception, and its justification, shall be documented in the SMU log.

5. A detainee may be deprived of clothing, mattress, blanket, pillow, etc., for medical or psychiatric reasons only, as determined by the Health Services Administrator.

If a detainee is so seriously disturbed that he/she is likely to destroy clothing or bedding or create a disturbance risking harm to self or others, the medical department shall be notified immediately and a regimen of treatment and control shall be instituted by the Health Services Administrator.

6. As a rule, detainees in disciplinary segregation will have significantly fewer items of personal property than other detainees. With the exception of items of personal hygiene, detainees in disciplinary segregation may lose the privilege of making commissary purchases.

7. Access to legal and non-legal reading material shall be as follows:

   a. The officer providing library services provide segregated detainee's leisure library access upon-request only. This request shall be made using the Detainee Request Form.

   b. When developing the schedule for law library-access, the Warden will set aside blocks of time for the detainees in disciplinary segregation. These detainees will be afforded legal access comparable to, but not the same as, that of the general population. Security constraints may impose limits on law-library access.

- Violent and/or uncooperative detainees may be temporarily denied access to the law library, until such time as their behavior and attitude warrants resumed access.

- On a case-by-case basis, legal material may be brought to individuals in disciplinary segregation. Denial of access to the law library must be justified by compelling security concerns, be fully documented in the SMU logbook, and last no longer than necessary for security purposes.

- Any denial of access to the law library will supported by compelling security concerns, for the shortest period required for security, fully documented in the SMU housing logbook as well as notification to ICE every time law library access is denied.

8. In accordance with the "Telephone Access" standard, detainees in disciplinary segregation not shall be restricted to telephone calls for the following purposes: [4-ALDF-2A-65]

   a. calls relating to the detainee's immigration case or other legal matters, including consultation calls;
   b. calls to consular/embassy officials; and
   c. family emergencies, as determined by the Warden.

9. Segregated detainees shall be allowed visits by members of the clergy, upon request, unless the supervisor determines the visit presents a security risk or will interfere with the orderly operation of the facility.

   a. The clergy member shall be told the detainees present state of behavior.
   b. The clergy member must agree to meet the segregated detainee.
   c. Violent and uncooperative detainees may be temporarily denied access to religious services until such time as their behavior and attitude warrants.

10. Detainees in segregation will receive a minimum of one hour of exercise per day outside their cells, seven days per week.

These provisions shall be carried out, absent compelling security or safety reasons documented by the Warden. A detainee's recreation privileges may be withheld temporarily after a severely disruptive incident. Staff shall document by memorandum and logbook(s) notation every instance

when a detainee is denied recreation. The memorandum shall be placed in the detainee's detention file as well as forwarding a copy of the action to the Warden.

The case of a detainee denied recreation privileges will be reviewed at least once each week, as part of the reviews required for all detainees in the unit. The reviewer will document whether the detainee continues to pose a threat to self, others, or facility security and, if so, why.

Denial of recreation privileges for more than 15 days requires the concurrence of the Warden and H.S.A. The Warden will notify ICE when a detainee is denied recreation privileges for more than 15 days.

## L. Forms and Reviews

1. A permanent log will be maintained in the SMU. The log will record all activities concerning the SMU detainees, e.g., meals served, recreation, visitors, etc.

   **The SMU log will record the detainee's name, A-number, housing location, date admitted, type of infraction or reason for admission, tentative release date (for detainees in disciplinary segregation, administrative detention shall be noted as UNK for unknown), special medical or psychiatric problems or needs and the authorizing official. All releases from the unit will be similarly recorded.**

   All persons visiting the unit will sign a separate log, giving time and date of visit. Unusual activity or behavior of individual detainees will be recorded in the log, with a follow-up memorandum sent through the Warden to the detainee's file.

2. The SMU/Segregation Activity Sheet shall be prepared immediately upon the detainee's placement in the SMU. The form will be filled out at the end of each shift or as the activity takes place.

   The special housing officer for each shift will record whether the detainee ate, showered, exercised and took any medication. The record will also be used to notate additional information, e.g., if the detainee has a medical condition, has exhibited suicidal/assaultive behavior, etc.

   The facility medical staff will be required to sign each individual record when he/she visits the detainee in segregation.

   A new record must be created for each week the detainee is in segregation or when the reason for placement changes such as Administrative Segregation to Disciplinary. The completed Special Housing Activity Sheets will be retained in the SMU until the detainee is released from SMU.

   Upon release from the SMU, the releasing officer will ensure that the entire housing unit record relating to the detainee is attached to the Segregation Order and forwarded to the Classification Officer for inclusion in the detainee's detention file.

## M. Staffing

1. The Chief of Security will select officers for assignment to the SMU on a rotational basis for their experience, judgment, and ability to manage detainees professionally. Supervision of these staff and unit operations will be a priority for management personnel, as indicated by the specified frequency of supervisory visits to the unit. Staff assigned to work in the special management unit is selected based on criteria that include: completion of probationary period, experience and suitability for this

population. Staff is closely supervised with documented quarterly reviews conducted by the shift supervisor. There are provisions for rotation to other duties.

2. All staff assigned to SEG/SMU will receive training that includes information regarding the type of detainees housed in the unit; a course in dealing with detainees typically retained in segregated status; information on the rules governing SMU operation; special instructive discussions relative to safety and security precautions unique to the SMU area; and a basic course covering Aurora/ Detention Center policies governing discipline and the use of segregation.

**N. High Security Cell Access**

High security cells will be specially marked with a notice to designate that a two-officer rule is in operation for the occupant. That cell will only be opened with two officers present. Two officers will remain in the SMU area during the out of cell time for that detainee. High security designations will be made in selected cases. Criteria for such a designation is:

1. Demonstrated violent behavior toward staff;
2. Demonstrated violent behavior toward other detainees;
3. Demonstrated or reported serious escape history or risk; and
4. Other case-by-case circumstances which warrant the high security designation.

Staff may make a recommendation for such action through their supervisor. The Warden or the Wardens designee will make the final decision.

**O. Property and Contraband Control**

Control of property and contraband will include a thorough search and inventory of all personal property brought by a detainee to the unit.

Detainees in disciplinary status may be precluded from commissary purchases.
A secure property storage area is provided in the Intake property room. All property placed in storage will be thoroughly searched and inventoried, and a copy of the inventory sheet will be provided to the detainee.

Food service carts, laundry carts and commissary bins will be thoroughly inspected and searched by staff to prevent the introduction of contraband.

Supervisory staff may remove otherwise permissible items from the cell of a detainee in locked unit status when those items are being used by the detainee to harm himself or herself or others, create a disturbance, or otherwise disrupt the orderly operation of the unit. Such instances will be documented in memo form or using a General Incident Report (GI), placed in the unit log and the individual detainee log sheet, and a copy of the memo or GI will be forwarded to the Chief of Security and the Warden. The Chief of Security must personally approve all such instances that last longer than twenty-four hours.

**P. Special Management Unit Programs**

The programs and activities named below will be available to detainees in the locked housing unit providing documented security or safety considerations do not prevent delivery of such programs for limited periods.

Isolated recreation and exercise will be provided to all detainees in the locked housing unit no fewer than seven times each week for one hour. Detainees may be denied access to recreation on a determination, documenting in writing, that the individual involved presents a serious danger to themselves or others or to institutional security. [4-ALDF-2A-64]

Showers will be offered daily. Detainees will be permitted to shave at this time. Detainees receive laundry, barbering, and hair care services, and are issued and exchange clothing, bedding, and linen on the same basis as detainees in the general population. Exceptions are permitted only when determined to be necessary. Any exception is recorded in the unit log and justified in writing. [4-ALDF-2A-57]

Crisis counseling and other social services will be provided to detainees on an in-cell basis. Detainees requiring private counseling may be moved in restraints to a room where the counseling staff member will remain under the observation of a second staff member, who may be outside the room. The detainee will remain in restraints.

Detainees in locked housing are provided prescribed medication, clothing that is not degrading and access to basic personal items for use in their cells unless there is imminent danger that a detainee or any other detainee(s) will destroy an item or induce self-injury. [4-ALDF-2A-56]

Religious counseling and materials will be permitted in the unit, as provided by approved religious representatives and approved by the Chief of Security. The Chief of Security in conjunction with the Programs Coordinator will determine which religious volunteers, if any, will be permitted to visit the unit and under whose supervision.

Detainees in locked housing can write and receive letters on the same basis as detainees in the general population. [4-ALDF-2A-60]

Social and legal visiting will be permitted for all detainees in locked status provided they are not under visiting restrictions imposed as part of disciplinary actions. Detainees in locked status may visit in the general non-contact visiting area. [4-ALDF-2A-61]

All participation or refusal to participate in recreation, showers, meals, staff interviews, visits or other major unit activities will be logged in the detainees' individual activity sheet.

**Q. Food Service Operations**

Food service operations will be under the general oversight of the Food Services Administrator and will include in-cell service of meals that are the same as those served to the general population.

No detainee will be used to serve food in the unit.

Staff will ensure that food delivered to detainees is at the proper temperature. Modification, reduction, or termination of meals will not be used as a behavioral control measure or for punishment.

Unit staff is responsible for ensuring the sanitary conditions of all utensils and trays.

Detainees who use food or other meal-related items to disrupt operations or threaten others will be served the same food as the general population. However, Styrofoam or disposable trays may be substituted for the regular food tray. [4-ALDF-2A-59]

**R. Other Unit Programs**

The following programs and services are in operation in the locked unit:

1. Detainees may participate in such educational programs as can be provided within the confines of the unit, consistent with the security needs of the unit
2. In-cell programs such as leisure reading, self-study courses, and other activities will be made available to detainees in non-disciplinary status; detainees in disciplinary status may be limited in the number of reading items permitted in their possession at any one time.
3. Sanitation in the unit will be maintained at a high level. Detainees will be responsible for cleaning their own cells. The Chief of Security, on unit staff's recommendation, may approve specially screened detainees housed in the unit for duty as orderlies.
4.

**S. Tours**

Staff mobility and supervisory visibility in locked units are important factors in ensuring smooth operations.

Detainees in segregation receive daily visits from the Chief of Security, members of the program staff on request, and a qualified health care daily unless medical attention is needed more frequently. Detainees requiring medication will be provided that medication as prescribed [4-ALDF-2A-53]

The Food Services Administrator will observe the service of meals once a week in locked units. The Chaplain, classification, or social work staff and other program staff will visit all detainees in locked units as often as necessary to meet the needs of those cases, but in any event no fewer than once a week.

The Shift Supervisor will visit the locked units twice each shift.
A designated medical staff member will visit the unit at least daily and will be available as needed for other required care. Detainees requiring medication will be provided that medication as prescribed.

The Warden, Assistant Wardens and Department Heads will visit detainees confined to the segregation unit weekly.

**T. Other Considerations**

Protective custody cases will require separation, at a minimum, from the detainees by whom they are threatened. In most cases, separation from all other detainees will be required. Records on these cases should reflect their status, any known separates, and any other special precautions that must be taken.

In many instances, careful movement through the facility and in the admission/release process will be needed. When it is necessary in the judgment of the Chief of Security; two staff members will be used to escort protective custody cases for such moves.

Detainees with medical and psychiatric aspects to their cases will be handled in accordance with the medical orders for those cases as long as those orders do not conflict with the facility's security needs. In any case in which there appears to be such a conflict, the Shift Supervisor and, if necessary, the Chief of Security or Warden, will resolve the issue with the Health Services Administrator.

U. Case Reviews

The SMU review committee will review each locked unit detainee's case within seventy-two hours of admission, every seven days for the first two months, and at least every thirty days thereafter. [4-ALDF-2A-48]

**THIS POLICY WILL BE REVIEWED AT LEAST ANNUALLY AND UPDATED AS NEEDED.**

**Gray highlighted areas are the changes made to the current revision.**

**QUESTIONS/SUGGESTIONS REGARDING THIS POLICY SHALL BE ADDRESSED TO THE ASSISTANT WARDEN OF OPERATIONS.**