# EXHIBIT Q

```
 1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
 2

 3          CIVIL ACTION NO.: 1:14-cv-02887-JLK

 4
     ALEJANDRO MENOCAL, et al.,
 5

 6          Plaintiffs,

 7   -vs-

 8
     THE GEO GROUP, INC.,
 9

10          Defendant.
     _____/
11

12
                DEPOSITION OF DANIEL RAGSDALE
13

14
              Thursday, February 27, 2020
15               9:20 a.m. - 3:14 p.m.

16
                Shavitz Law Group, P.A.
17               951 Yamato Road, #285
               Boca Raton, Florida 33431
18

19

20           Stenographically Reported By:
              JOYCE L. BLUTEAU, RPR, FPR
21          Registered Professional Reporter
             Florida Professional Reporter
22

23

24

25
```

Daniel Ragsdale
February 27, 2020                                                    2

```
 1   APPEARANCES:

 2

     On behalf of the Plaintiffs:
 3

 4        TOWARDS JUSTICE
          1410 High Street
 5        Suite 300
          Denver, Colorado 80218
 6        720.441.2236
          juno@towardsjustice.org
 7        BY: JUNO TURNER, ESQUIRE

 8

 9        OUTTEN & GOLDEN, LLP
          685 Third Avenue
10        25th Floor
          New York, New York 10017
11        212.245.1000
          akoshkin@outtengolden.com
12        BY: ADAM L. KOSHKIN, ESQUIRE

13

14   On behalf of the Defendant:
          AKERMAN, LLP
15        1900 Sixteenth Street
          Suite 1700
16        Denver, Colorado 80202
          303.260.7712
17        colin.barnacle@akerman.com
          adrienne.scheffey@akerman.com
18        BY: COLIN L. BARNACLE, ESQUIRE and
              ADRIENNE SCHEFFEY, ESQUIRE
19

20
          THE GEO GROUP, INC.
21        4955 Technology Way
          Boca Raton, Florida 33431
22        561.443.1786
          cwilke@geogroup.com
23        BY:  CHERYL L. WILKE, ESQUIRE, VP CORPORATE COUNSEL

24
                             -  -  -
25
```

```
 1                     INDEX OF PROCEEDINGS

 2

 3    DEPOSITION OF DANIEL RAGSDALE                        PAGE

 4
      DIRECT EXAMINATION BY MS. TURNER:                      5
 5

 6    CERTIFICATE OF OATH                                  184
      CERTIFICATE OF REPORTER                              185
 7    WITNESS NOTIFICATION LETTER                          186
      ERRATA SHEET                                         187
 8

 9
                       PLAINTIFF'S EXHIBITS
10
             (Exhibits were retained by Ms. Turner.)
11

12      Number              Description                   Page

13
       1       Notice of F.R.C.P. 30(b)(6) Deposition      8
14             of Defendant The GEO Group, Inc.
       2       5/27/03 Contract with the Department of    18
15             Homeland Security and Wackenhut
               Corrections Corporation
16     3       9/29/06 Contract between ICE and The       23
               GEO Group
17     4       Aurora ICE Processing Center Policy        28
               and Procedure Manual
18     5       E-mail with Attached 2011 Contract for     39
               operation of the Aurora Facility
19     6       Staffing Plan for a 400-Bed Facility       46
               and a 432-Bed Facility
20     7       Answers to Interrogatories                 53
       8       Aurora Detention Center Policy and         55
21             Procedure Manual Section 12.1.4
               Housekeeping
22     9       Aurora Policy and Procedure Manual         62
               Section 8.1.8, Beginning with GEO_MEN
23             38548
       10      2011 Performance-based National            69
24             Detention Standards
       11      ALDF Standard                              71
25
```

```
 1              PLAINTIFF'S EXHIBITS (cont...)

 2
              (Exhibits were retained by Ms. Turner.)
 3

 4    Number    Description                              Page

 5
      12       E-mail with Attached Ice Contracted        82
 6             Audit, Bates GEO_MEN 44299 to 44377
      13       E-mail with attachments, Bates 15154 to    88
 7             15186
      14       E-Mail with Attachments, Bates             94
 8             Nos. 79073 to 79119
      15       U.S. Marshal Standards                    101
 9    16       Enforcement and Removal Operations        105
               National Detainee Handbook Custody
10             Management, April 2016
      17       5/20/13 ICE Detainee Handbook             112
11    18       Detainee Handbook.  Bates Nos. 00064443   118
               to 00064463
12    19       ACA Standard                              120
      20       Letter Addressed to Acting Director of    136
13             ICE
      21       Aurora's Disciplinary Procedures and      138
14             Hearing Board's Policy
      22       10/15/14 Detainee Payroll Excel           150
15             Spreadsheet
      23       Aurora Policy and Procedure Manual        151
16             Relating to the Detainee Work Program
      24       Housekeeping and Maintenance Plan from    152
17             the Aurora Facility Signed by Johnny
               Choate
18    25       4/17/14 E-mail Chain from Dawn Ceja       158
               with Attachments
19    26       List of GEO Detention Facilities with     164
               Amounts Paid in Voluntary Work Program
20    27       Staffing Plan for the Aurora Facility     172

21

22

23

24

25
```

1           Deposition taken before Joyce L. Bluteau,
2   Registered Professional Reporter, Florida Professional
3   Reporter, and Notary Public in and for the State of
4   Florida at Large in the above cause.
5                           - - -
6           THE COURT REPORTER:  Do you swear the testimony
7      you are about to give will be the truth, the whole
8      truth, and nothing but the truth?
9           THE WITNESS:  I do.
10  Thereupon,
11                      DANIEL RAGSDALE,
12  having been first duly sworn, was examined and testified
13  as follows:
14                      DIRECT EXAMINATION
15  BY MS. TURNER:
16     Q.   Good morning, Mr. Ragsdale.
17     A.   Good morning.
18     Q.   We met briefly before we got started.  My name
19  is Juno Turner.  I'm one of the attorneys for the
20  plaintiffs in this case.
21          Could you just, for purposes of the record,
22  state your full name and your business address?
23     A.   It's Daniel Ragsdale and 1915 Technology Way,
24  Boca Raton, Florida 33431.
25     Q.   Thanks.

1            And the court reporter has sworn you in.  Do
2   you understand that you're under oath for your testimony
3   today and you've sworn to tell the truth here the same
4   way as if we were in a court of law?
5        A.   Yes.  Let me just clarify.  Can I look at my
6   business card?  Because we moved recently.  I want to
7   make sure I got the address right.  4955.  I don't know
8   where I got 1955.  It's 4955 Technology Way.
9        Q.   This happens to me all the time.
10       A.   I was at 951 this morning, 915 Yamato Road,
11  4955.
12       Q.   Thank you for clarifying that.
13            Are you taking any medication that would
14  prevent you from giving complete and accurate testimony
15  today?
16       A.   No.
17       Q.   Is there any other reason you would not be able
18  to give accurate and honest testimony today?
19       A.   No.
20       Q.   As you see, we have a court reporter here.
21  She's going to be writing down everything that we say and
22  the final record will be a written transcript.  So to
23  make her job easier and the transcript clearer, please
24  wait until my question is finished before you begin your
25  answer and I will do the same, okay?

1   develop policies relating to these functional areas and
2   submit them to the government?
3        A.   Yes.  So it's my understanding that the
4   facilities develop policies to implement the standards
5   and those are reviewed and cleared, essentially, or
6   cosigned by ICE.
7        Q.   Okay.  This one is really big.  We'll mark
8   this, please.  I hand you a document marked Exhibit 14 --
9   Exhibit 5.
10            (Exhibit 5, E-mail with Attached 2011 Contract
11  for operation of the Aurora Facility, was marked for
12  identification.)
13  BY MS. TURNER:
14       Q.   This is an e-mail followed by what I believe is
15  the contract starting in 2011 for operation of the Aurora
16  facility, but you can take a look and let me know if you
17  agree.
18       A.   So I see this is mailed under Item 11 to ICE's
19  office in Centennial, so at least there's a reference to
20  Colorado on the first page.  Let me just flip through.
21            There's a --
22       Q.   If you take a look at the e-mail cover as well,
23  the attachment is named "Aurora."
24       A.   Okay.  I see that, "Aurora Agreement with Job
25  Descriptions," yes.

```
 1        Q.   Unfortunately, this is how we got it.  My copy

 2   is partially illegible as well.

 3             So just going back to Exhibit 7, the

 4   interrogatory responses.

 5        A.   Yes.

 6        Q.   On page 3, GEO notes that ICE has approved the

 7   following sections of the Aurora policy and procedure

 8   manual and points to Section 8.1.8 --

 9        A.   Um-hmm.

10        Q.   -- and refers to GEO_MEN 38548.

11        A.   Yes.

12        Q.   And that is the first Bates number on

13   Exhibit 9; correct?

14        A.   Yes.

15        Q.   And so is it correct that this is a portion of

16   the Aurora Detention Center Policy and Procedure Manual?

17        A.   Yes.

18        Q.   And looking at the effective date in the top

19   right, this became effective on May 6, 2013; correct?

20        A.   Yes.

21        Q.   And it superseded the prior policy dated

22   September 10, 2012; correct?

23        A.   Yes.

24        Q.   Okay.  What's your understanding of what this

25   document is?
```

1   detainees are required to do to maintain their immediate

2   living areas in a neat and orderly manner.

3            Do you agree?

4       A.   Yes.  I would say it is a nonexclusive list of

5   things that what are generally understood as to how to

6   keep an area tidy.

7       Q.   And this is the list of things that is included

8   in the policy that was approved by ICE; correct?

9       A.   As it relates to this specific policy, yes.  I

10  mean, on the top left page of this document ending in

11  548, there's a signature that says "ICE approval."

12      Q.   Okay.  Going back to the first page of

13  Exhibit 9, there's a list under A where it states, "A

14  sample of work assignments follow," and it lists eight

15  categories of potential work assignments.

16           Do you see that?

17      A.   I do.

18      Q.   If GEO wants to assign Voluntary Work Program

19  workers a different category of assignments, can it do

20  so?

21      A.   I think it would require ICE approval.  In

22  other words, this is a list of eight items that ICE

23  approved as part of the work program.  If GEO wanted to

24  do something, what I would say is that does not fall in

25  these eight categories, I believe ICE should approve it.

1    Q.   Uh-huh.  And who would approve it for ICE?
2    A.   It would be somebody at the ICE field office
3    level, either the -- in this case it's probably the COTR,
4    the Contractor's Officer's Technical Representative that
5    may sign it, but the facility is led by either some --
6    the title I think is an officer in charge.  There's an
7    ICE supervisory detention and deportation officer that is
8    physically there that is responsible for the ICE work at
9    the facility.
10   Q.   Okay.  Is it fair to say that the use of the
11   term "sample" here suggests that GEO has some flexibility
12   in identifying potential other work assignments and
13   submitting them for approval?
14   A.   I agree that "sample" does mean a nonexhaustive
15   list; however, you know, a reasonable person would say,
16   you know, I don't think this means that someone can do
17   something that's particularly specialized, something
18   that's particularly dangerous, something that sort of
19   exceeds what essentially -- you know, I think it's
20   important to note the standard is what governs.  In other
21   words, this document is subordinate to ICE's
22   Performance-Based Detention Standards.  Those standards,
23   you know, lay out the broad themes in which things are
24   required to be done, and that is really the concrete that
25   these things must be done.  That is the constraining

```
 1                    CERTIFICATE OF REPORTER

 2

      THE STATE OF FLORIDA,       )
 3
      COUNTY OF PALM BEACH.       )
 4

 5

              I, Joyce L. Bluteau, Registered Professional
 6    Reporter, Florida Professional Reporter, certify that I
      was authorized to and did stenographically report the
 7    deposition of DANIEL RAGSDALE; pages 1 through 183; that
      a review of the transcript was requested; and that the
 8    transcript is a true record of my stenographic notes.

 9
              I further certify that I am not a relative,
10    employee, attorney, or counsel of any of the parties, nor
      am I a relative or employee of any of the parties'
11    attorneys or counsel connected with the action, nor am I
      financially interested in the action.
12

13            DATED this 3rd day of March, 2020.

14

15

16

17

18

19            [signature: Joyce L. Bluteau]

20    _____
      Joyce L. Bluteau,
21    Registered Professional Reporter
      Florida Professional Reporter
22

23

24

25
```