# Exhibit 8

# Progress in Implementing 2011 PBNDS Standards and DHS PREA Requirements at Detention Facilities

March 19, 2018

Fiscal Year 2017 Report to Congress



*U.S. Immigration and Customs Enforcement*

# Message from the Deputy Director and Senior Official Performing the Duties of the Director

March 19, 2018

I am pleased to present the following report, "Progress in Implementing 2011 PBNDS Standards and DHS PREA Requirements at Detention Facilities," which has been prepared by U.S. Immigration and Customs Enforcement (ICE).



This report was compiled pursuant to requirements in the Joint Explanatory Statement and House Report 114-668, which accompany the Fiscal Year 2017 Department of Homeland Security (DHS) Appropriations Act (P.L. 115-31).

Pursuant to congressional guidelines, this report is being provided to the following Members of Congress:

> The Honorable John R. Carter
> Chairman, House Appropriations Subcommittee on Homeland Security
>
> The Honorable Lucille Roybal-Allard
> Ranking Member, House Appropriations Subcommittee on Homeland Security
>
> The Honorable John Boozman
> Chairman, Senate Appropriations Subcommittee on Homeland Security
>
> The Honorable John Tester
> Ranking Member, Senate Appropriations Subcommittee on Homeland Security

Inquiries related to this report may be directed to me at (202) 732-3000 or to the Department's Acting Chief Financial Officer, Stacy Marcott, at (202) 447-5751.

Sincerely,



Thomas D. Homan
Deputy Director and Senior Official Performing the Duties of the Director
U.S. Immigration and Customs Enforcement

i



# Progress in Implementing 2011 PBNDS Standards and DHS PREA Requirements at Detention Facilities Fiscal Year 2017

## Table of Contents

I.    Legislative Requirement ................................................................................................  1

II.   Background ....................................................................................................................  2

III.  Implementation of 2011 Performance-Based National Detention Standards and DHS Prison
      Rape Elimination Act Standards ...................................................................................  5
      A. PBNDS 2011 ............................................................................................................  5
         Overview ................................................................................................................  5
         PBNDS 2011 Implementation .................................................................................  7
      B. DHS PREA Standards ..............................................................................................  8
         Overview ................................................................................................................  8
         Implementation of Sexual Abuse and Assault Safeguards .........................................  9
         PREA Implementation ............................................................................................  11
         PREA Audits ...........................................................................................................  11

IV.   Cost of PBNDS 2011 and PREA Implementation .........................................................  12
      A. Cost of PBNDS 2011 Implementation .......................................................................  12
      B. Cost of PREA Implementation .................................................................................  13

V.    Appendices .....................................................................................................................  14
      Appendix A:  Facilities under PBNDS 2011, as of Fiscal Year End 2017 ........................  14
      Appendix B:  Facilities under PBNDS 2008, as of End of Fiscal Year 2017 ....................  15
      Appendix C:  Facilities under NDS 2000, as of Fiscal Year End 2017 .............................  16
      Appendix D:  Facilities under Family Residential Standards, as of Fiscal Year End 2017 ..  21
      Appendix E:  Facilities under DHS PREA Standards, as of Fiscal Year End 2017 ..........  22

Appendix F:  Authorized Detention Management Control Program IGSA Facilities that
have not adopted DHS PREA Standards, as of Fiscal Year End 2017 .............................. 24

# I.    Legislative Requirement

This report was compiled in response to the Joint Explanatory Statement and House Report 114-668, which accompany the Fiscal Year (FY) 2017 Department of Homeland Security (DHS) Appropriations Act (P.L. 115-31).

The Joint Explanatory Statement says:

> Within 45 days after the enactment of this Act, ICE shall report on its progress in implementing the 2011 Performance Based National Detention Standards, including the 2016 revisions, and requirements related to the Prison Rape Elimination Act, as detailed in the House report.

House Report 114-668 states:

> Within 45 days after the date of enactment of this Act, ICE shall report on its progress in implementing the 2011 PBNDS and requirements related to PREA, including a list of facilities that are not yet in compliance; a schedule for bringing facilities into compliance; and current year and estimated future year costs associated with compliance.

# II.   Background

U.S. Immigration and Customs Enforcement (ICE) enforces federal laws governing border control, customs, trade, and immigration to promote homeland security and public safety. Through its Enforcement and Removal Operations (ERO), ICE identifies and apprehends removable aliens, detains them, and effectuates their removal from the United States.

Detention is a necessary tool that ICE uses to accomplish its important mission.  Over the last 20 years, the Nation's immigration detention system has changed significantly—growing from an average daily population (ADP) of fewer than 7,500 detainees in FY 1995 to an ADP of 38,106 detainees for FY 2017.

Currently, ICE uses three sets of adult detention standards, as detailed below, to govern conditions of detention in its facilities.  These standards specify the living conditions appropriate for detainees and ensure that detainees are treated with respect and dignity, and are provided the best possible care while in ICE custody.

The detention standards for a given facility are determined by considerations such as the facility's size, type, capacity to adhere to certain requirements, staffing, and actual or potential associated costs of executing physical or operational changes.  Detention standards apply to a facility through the contract period, following negotiation between ICE and the contractor or locality operating the facility.  The majority of ICE facilities receive an annual inspection to ensure compliance with the relevant detention standards.

The National Detention Standards (NDS) issued in 2000 established consistent conditions of confinement, program operations, and management expectations within ICE's detention system. Today, NDS most frequently is applicable at county or city jails used by ICE pursuant to an intergovernmental service agreement (IGSA) or U.S. Marshals Service (USMS) Intergovernmental Agreement (IGA).

In 2008, ICE revised the NDS by creating the Performance-Based National Detention Standards (PBNDS) 2008.  These updated standards, which were developed by a multidisciplinary ICE working group that also included other departmental stakeholders such as the DHS Office for Civil Rights and Civil Liberties (CRCL), delineate the results or outcomes to be achieved and enhanced safety, security, and conditions of confinement for detainees.  The PBNDS 2008 prescribe both the expected outcomes of each detention standard and the expected practices required to achieve them.

In October 2009, DHS and ICE announced a series of detention reform initiatives as part of an ongoing effort to enhance the security and efficiency of the immigration detention system while prioritizing the health, safety, and well-being of detainees.  These reforms—which were outlined in the October 2009 report to Congress, *Immigration Detention Overview and Recommendations*, and updated in the July 2012 report to Congress, *Detention Process Improvement and Reform*— included the following recommendation, which has become a key agency initiative:

> In coordination with stakeholders, ICE should develop a new set of standards, assessments, and classification tools to inform care, custody restrictions, privileges, programs, and delivery of services consistent with risk level and medical care needs of the population. ICE should expand access to legal materials and counsel, visitation, and religious practice.

On February 27, 2012, ICE issued PBNDS 2011. ICE tailored these revised standards—developed in collaboration with ICE personnel, numerous agency stakeholders, and DHS CRCL—to meet the needs of its diverse detention population. Since that time, ICE has implemented PBNDS 2011 successfully at 31 facilities, representing almost 60 percent of ICE's FY 2017 ADP.

On January 11, 2017, ICE issued a revised version of PBNDS 2011. The revisions were developed in coordination with the agency stakeholders and CRCL, incorporate legal and regulatory requirements, and update text to match existing ICE and ERO policies. The major revisions covered: full implementation of the DHS standards, disability accommodation, language access and communication assistance, disciplinary system and special management units, suicide prevention, detainees with serious mental illness, tracking and reporting assaults, identification and monitoring of pregnant detainees, religious meals, and use of force at detention facilities.

ICE requested adoption of the revisions for detention facilities covered by PBNDS 2011 through a bilateral contract modification of the facility's contract. All PBNDS 2011 facilities also were informed that they would be inspected against the new requirements by June 30, 2017.

As of November 29, 2017, 26 of the 30[1] applicable detention facility contracts requiring the revised version of PBNDS 2011 have been modified to incorporate the revisions. ICE is working with the remaining facilities on adoption and expects the final modifications to be complete by the end of FY 2018.

On March 7, 2014, DHS issued Final Rule, 6 CFR Part 115, Standards to Prevent, Detect, and Respond to Sexual Abuse and Assault in Confinement Facilities, also known as the DHS (Prison Rape Elimination Act of 2003 (PREA) Standards. The DHS PREA Standards establish robust safeguards against sexual abuse and assault of individuals in DHS custody. Meeting a commitment made in the preamble to the DHS PREA Standards, ICE implemented the standards through contract modifications at all ICE-dedicated detention facilities.[2] The DHS PREA Standards are binding at 38 facilities. These facilities house 67 percent of FY 2017 ICE ADP,

---

[1] Two additional facilities were contacted but are no longer in use by ICE, so the modification was not pursued for these two. One additional facility signed onto PBNDS 2011 following the issuance of the revisions so a modification was not necessary; this new facility is included in other areas of this report, which lists a total of 31 facilities operating under the PBNDS 2011.

[2] Dedicated detention facilities are those that exclusively house ICE detainees.

and 85 percent of the ICE ADP when excluding detainees held in USMS-contracted facilities (which are covered by the U.S. Department of Justice (DOJ) PREA regulation).[3]

This report provides an update on ICE's progress in implementing PBNDS 2011 and the DHS PREA Standards at ICE detention facilities.

---

[3] The preamble to the DHS PREA Standards states that the standards "do not apply to facilities used by ICE pursuant to an agreement with a DOJ entity (e.g., BOP facilities) or between a DOJ entity (e.g., USMS) and a state or local government or private entity . . . because they are not 'operated by or pursuant to contract with U.S. Immigration and Customs Enforcement.'"

# III.  Implementation of 2011 Performance-Based National Detention Standards and DHS Prison Rape Elimination Act Standards

ICE operates the largest civil detention system in the Nation, and detention remains an important and necessary part of immigration enforcement.  In FY 2017, ICE maintained an ADP of 38,106 detainees and booked more than 320,000 individuals into ICE custody.  The average length of stay in ICE custody was 44 days.  Fifty percent of the ICE-detained population was removed or released within 16 days, 75 percent was removed or released within 48 days, and 90 percent was removed or released within 109 days.  ICE is committed to ensuring that detainees in ICE custody reside in safe, secure, and humane environments and under appropriate conditions of confinement.  ICE detention standards and DHS PREA safeguards are among the important mechanisms that ICE utilizes for meeting this commitment.

## A.  PBNDS 2011

**Overview**

On February 27, 2012, ICE issued PBNDS 2011 to address the unique needs of ICE's detainee population.  ICE designed the revised standards to improve medical and mental health services, implement stronger protections against sexual assault, increase access to legal services and religious opportunities, improve communication for detainees with limited English proficiency, improve the process for reporting and responding to complaints, and increase recreation and visitation.

More specifically, the PBNDS 2011:

- Improves medical and mental health care services by:  requiring the expanded availability of mental health care staff; requiring faster response times for sick call requests and evaluations of detainees with identified health needs; and ensuring closer monitoring of detainees with serious medical and mental health conditions.

- Reinforces protections against sexual abuse and assault in facilities by:  strengthening requirements for screening, staff training, and detainee education; establishing procedures to ensure the protection and appropriate housing of victims; establishing protocols for conducting prompt and thorough investigations in coordination with criminal law enforcement entities; and putting in place requirements for tracking and monitoring data relating to sexual abuse and assault incidents.

- Broadens detainee access to communications with family, friends, and legal representatives with extended visitation time and enhanced access to telephones.

- Enhances detainee access to legal resources through increasing availability of staff assistance and enabling detainees to attend legal rights group presentations.

- Enhances procedures for reviewing and responding to detainee grievances by: providing for additional levels of review and decreased facility response times; encouraging direct detainee communication with ICE regarding grievances or facility responses; and specifying measures for addressing any indications of retaliation against detainees who have filed grievances.

- Improves communication assistance services for detainees with limited English proficiency or disabilities by mandating more-specific interpretation and translation services.

- Augments religious opportunities by authorizing a greater number of religious practices and implementing a process for recruiting external religious service providers.

PBNDS 2011 also introduced the concept of "optimal" compliance through the development of 18 optimal provisions across nine detention standards. Optimal provisions are adopted through contract negotiation between ICE and the service provider, and are in addition to the mandatory requirements to which a facility is bound when it adopts PBNDS 2011. Examples include increased recreation and visitation hours, increased access to law libraries, and enhanced programming.

On January 11, 2017, ICE issued revisions to the PBNDS 2011. The 2016 revisions updated the detention standards to incorporate applicable regulations, including the DHS PREA Standards, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as amended (Section 504), and updated ICE policy. The updates to the PBNDS 2011 included:

- DHS PREA Standards. The most significant PBNDS 2011 revisions are to PBNDS 2011 Standard 2.11: "Sexual Abuse and Assault Prevention and Intervention." The revised 2.11 standard includes requirements of ICE Directive 11062.2, *Sexual Abuse and Assault Prevention and Intervention (SAAPI)*, and implements all the requirements in the DHS PREA Standards that are applicable to ICE detention facilities and facility personnel. Additionally, these requirements affect numerous aspects of detention facility policies and procedures, requiring revisions to 11 other standards including but not limited to custody classifications, facility security and control, hold rooms, detainee searches, medical care, grievance procedures, and visitation.

- Section 504. ICE detention facilities are required to comply with Section 504, which prohibits discrimination based on disability and requires facilities to provide detainees with disabilities equal access to its programs and activities through the provision of appropriate accommodations, modifications, and services. The PBNDS revisions include a new detention standard, "4.8 Disability Identification, Assessment, and Accommodation," which establishes processes to ensure compliance by detention facilities with the requirements of Section 504.

6

- Use of Special Management Units.  Standard 2.12 "Special Management Units" was revised to incorporate requirements from ICE Directive 11065.1, *Review of the Use of Segregation for ICE Detainees*, including the requirement that the facility notify the appropriate ICE field office of detainees held in special management units (SMU) for 14 days, and as soon as possible but no later than 72 hours for detainees who have a mental illness or a serious medical illness or serious physical disability.  Additional changes were made to Standard 2.12 and to Standard 3.1 Disciplinary System to incorporate a number of the recommendations related to the care of detainees with mental illness and the length of disciplinary sanctions made by DOJ in its "Report and Recommendations Concerning the Use of Restrictive Housing," pursuant to a presidential memorandum directing all agencies using restrictive housing to review the DOJ report and implement corresponding changes.  81 Fed. Reg. 11995 (March 7, 2016).

- Suicide Prevention and Intervention.  Standard 4.6 "Significant Self-harm and Suicide Prevention and Intervention" was revised to incorporate best practices to reduce the frequency of suicide attempts in ICE detention facilities and to ensure the appropriate placement and supervision of detainees on suicide precautions, including requirements that facilities establish a multidisciplinary suicide prevention committee and that staff only house suicidal detainees in the SMU as a last resort.

- Incorporation of requirements from other ICE and ERO policies.  These include:
  - ICE Policy No. 11067.1:  *Identification of Detainees with Serious Mental Disorders or Conditions* (May 7, 2014) (requiring facilities to notify ICE field offices of detainees with specified serious mental disorders) – this notification requirement has been expanded in Standard 4.3 Medical Care to include detainees with specified serious physical illnesses;
  - ERO Memorandum, *Protocol on Reporting and Tracking of Assaults* (June 8, 2006) (requiring the reporting of sexual and physical assaults);
  - ERO Memorandum, *Identification and Monitoring of Pregnant Detainees* (August 2016) (requiring the reporting of detainees determined to be pregnant)[4];
  - ERO Bulletin 14-ERO0001, *Accommodation of Kosher Meals* (April 2014) (explaining facility and ICE obligations to accommodate detainees' religious dietary requirements); and
  - ERO broadcast, *Use of Force at ICE Detention Facilities* (October 19, 2016) (clarifying the types of staff uses of force that detention facilities must report to ICE field offices).

**PBNDS 2011 Implementation**

The application of new detention standards at any given detention facility requires negotiation with the contractor or locality operating the facility, and execution of a separate contract modification incorporating the standards into the facility's agreement with ICE.  The initial rollout of PBNDS required extensive discussions with detention facility operators regarding the

---

[4] This memorandum has been replaced by a new ICE directive of the same name issued in December 2017.  The new directive is consistent with the PBNDS 2011 revisions.

new provisions prior to the contract modifications being finalized. Accordingly, ICE focused its initial efforts on dedicated facilities, which house the greatest numbers of detainees.

As of the end of FY 2017, ICE implemented PBNDS 2011 at all ICE-dedicated adult detention facilities, which consist of five government-owned service processing centers (SPC), seven privately operated contract detention facilities (CDF), and 12 dedicated intergovernmental service agreement facilities (IGSA). Seven nondedicated IGSA facilities also have adopted PBNDS 2011.[5] ICE has implemented PBNDS 2011 at 31 facilities, housing nearly 60 percent of ICE's ADP in FY 2017.[6]

ICE continues to pursue implementation of these standards at any new dedicated detention facility, meaning any facility used for exclusively ICE or federal detainees. ICE does not anticipate deploying PBNDS 2011 to smaller nondedicated detention facilities; the PBNDS 2011 has extensive requirements related to all aspects of detention operations that are not appropriate to require for facilities managing mixed populations including state or local inmate populations.

## B. DHS PREA Standards

**Overview**

On March 7, 2014, DHS promulgated a regulation under PREA (P.L. 108-79), to prevent, detect, and respond to sexual abuse and assault in detention facilities, *Standards to Prevent, Detect, and Respond to Sexual Abuse and Assault in Confinement Facilities* (DHS PREA Standards). The DHS PREA Standards followed the President's May 17, 2012, memorandum, "Implementing the Prison Rape Elimination Act," which directed all federal agencies with confinement facilities to work with the Attorney General to create rules or procedures setting standards to prevent, detect, and respond to sexual abuse in confinement facilities. The DHS PREA Standards also followed the Violence Against Women Reauthorization Act of 2013, which directed DHS to publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of rape and sexual assault in facilities that maintain custody of aliens detained for a violation of U.S. immigrations laws. The DHS PREA Standards require extensive planning and training for officers and others who work in detention facilities, and establish standards for audits and compliance reviews. The DHS PREA Standards include two sets of standards tailored to the types of confinement facilities used by ICE and U.S. Customs and Border Protection (CBP):

---

[5] ICE discontinued its use of the Rolling Plains Detention Center in the second half of FY 2017. Rolling Plains was an IGSA facility covered under PBNDS 2011; therefore, it is not included in the total number of PBNDS 2011 facilities, but its ADP is included in the total PBNDS 2011 ADP. Additionally, ICE signed a contract modification with the Johnson County Jail in January 2017, which included the adoption of PBNDS 2011.

[6] The first set of detention standards, known as NDS, was issued in 2000 and most frequently is applicable at county or city jails used by ICE pursuant to an IGSA or USMS IGA. In FY 2017, NDS covered 24 percent of the ICE ADP. ICE's 2008 PBNDS (PBNDS 2008) subsequently revised these standards to delineate more clearly the results or outcomes to be achieved, and to improve safety, security, and conditions of confinement for detainees. In FY 2017, PBNDS 2008 covered 11 percent of the ICE ADP. ICE Family Residential Standards (FRS) were developed in 2007 to bolster best practices in family detention and are applicable to ICE's three family residential facilities, as well as to one adult detention facility that exclusively houses female detainees. In FY 2017, FRS covered 5 percent of the ICE ADP.

- Immigration detention facilities (Subpart A):  facilities overseen by ICE and used for longer term detention of individuals in immigration proceedings or awaiting removal from the United States; and
- Holding facilities (Subpart B):  facilities used by ICE and CBP for temporary administrative detention of individuals pending release from custody or transfer to a court, jail, prison, other agency, or other unit of the facility or agency.

The DHS PREA Standards cover prevention and responsive planning, hiring procedures, the training and education of both employees and detained individuals, assessment for risk of sexual victimization and abusiveness, reporting requirements, the agency's official response following an allegation of sexual abuse or assault, procedures for both criminal and administrative investigations, the provision of medical and mental health care, and audits for compliance procedures, among other areas.

The DHS PREA Standards include requirements related to:

- Development of a zero-tolerance policy

- Designation of an ICE prevention of sexual assault (PSA) coordinator

- Training of security staff and all employees who may have contact with detainees in proper procedures

- Specialized training for agency and facility investigators and for medical or mental health practitioners in detention facilities

- Consideration of the effect of design or modification of facilities on the ability to protect detainees from sexual abuse

- Development of policies and procedures to ensure that detainees have multiple ways to report sexual abuse, retaliation for reporting sexual abuse, or staff neglect or violations of responsibilities that may have contributed to such incidents

- Development of investigation and evidence protocols to ensure that each allegation of sexual abuse or sexual assault is investigated or referred to an appropriate investigative authority

- Assurance of effective disciplinary sanctions for staff misconduct, neglect, or violations

- Detainee access to medical and mental health assessments, counseling, and support

- Establishment of effective data collection and review procedures

- Requirements for an audit every 3 years of each immigration detention facility that has adopted the DHS PREA Standards, and of every holding facility that houses detainees overnight

**Implementation of Sexual Abuse and Assault Safeguards**

Prior to the issuance of the DHS PREA Standards, ICE had developed strong safeguards against sexual abuse or assault of its detainees in both agency policies and the ICE detention standards.

9

ICE built on the foundation established by these policies as it proceeded with its implementation of the DHS PREA requirements.

Both PBNDS 2008 and PBNDS 2011 contain sexual abuse and assault prevention and intervention standards that outline responsibilities for facility detention staff.  These standards include requirements for screening, training, timely reporting and notification, protection of victims, provision of medical and mental health care, and the investigation and tracking of incidents.  In May 2012, ICE sent a letter to all detention facilities with an ADP of greater than 10 detainees and with which ICE had an IGSA or a contract, requesting that they implement PBNDS 2011 Standard 2.11 "Sexual Abuse and Assault Prevention and Intervention."  As a result, 57 detention facilities not otherwise covered by PBNDS 2011 agreed to sign contract modifications adopting Standard 2.11.

In May 2012, ICE issued the agencywide Directive 11062.1, *Sexual Abuse and Assault Prevention and Intervention* (SAAPI), which established a zero-tolerance policy for sexual abuse and assault of all individuals in ICE custody, and outlined duties of agency employees for timely reporting, coordinating response and investigation, and effective monitoring of all incidents of sexual abuse or assault.  ICE revised and reissued the ICE SAAPI Directive in May 2014 to incorporate the additional agency requirements established under the DHS PREA Standards. SAAPI requires ICE to ensure thorough responses to and investigations of all allegations, even when the allegation occurred at a detention facility not covered by the DHS PREA Standards.

In September 2014, ICE also promulgated a new ERO directive, *Operations of ERO Holding Facilities*, which incorporates DHS PREA Subpart B requirements specifically applicable to ERO hold rooms and staging facilities.  ICE holding facilities exclusively are owned and operated by ICE and are used for the short-term detention of individuals, typically 24 or fewer hours.  This ERO policy complements SAAPI by outlining requirements for screening for risk, conducting appropriate searches, and ensuring an immediate response to allegations.

The DHS PREA Standards require the appointment of an agencywide PSA coordinator to lead in the development, implementation, and oversight of agency efforts to comply with the DHS PREA Standards.  SAAPI further requires the designation of specially trained coordinators at each ICE field office as well as personnel from relevant ICE Headquarters divisions to collaborate in compliance with and implementation of the standards.  The ICE agency PSA coordinator provides regular guidance and technical assistance to the field and works closely with the designated PSA coordinators for ERO and the ICE Office of Professional Responsibility (OPR).

In May 2015, ICE developed and deployed a new interactive database to track all allegations of sexual abuse and assault and to record information about responsive actions and investigative results.  OPR and ERO collaborate daily to review ICE's response to every new allegation of sexual abuse and assault.  As required by SAAPI, the ICE PSA coordinator submits quarterly reports to the ICE Detention Monitoring Council (DMC), along with monthly reports to a subcommittee of the DMC.  The DMC is an ICE intra-agency council that ensures that senior leadership from all ICE programs with detention responsibility jointly examines serious issues, incidents, findings, and allegations related to conditions of detention.

10

**PREA Implementation**

The DHS PREA Standards require that all new, renewed, or substantively modified detention facility contracts incorporate the standards.  By the end of FY 2017, the DHS PREA Standards were binding contractually at 38 detention facilities.  These facilities house 67 percent of FY 2017 ICE ADP, and 85 percent of the ICE ADP when excluding detainees held in USMS-contracted facilities (which are covered by the DOJ PREA regulation).  Further, in the same period, SAAPI standards contained in either the DHS PREA Standards or PBNDS were binding contractually at facilities housing approximately 83 percent of the ICE ADP, covering 97 percent of ICE's ADP when excluding USMS-contracted facilities.  Pursuant to a commitment made in the preamble to the DHS PREA Standards, ICE successfully implemented the DHS PREA Standards at all 28 dedicated ICE facilities within 18 months of the regulation's effective date of May 6, 2014.  ICE also has implemented the DHS PREA Standards at 11 nondedicated facilities.

**PREA Audits**

Immigration detention facilities covered by the DHS PREA Standards must be audited within 3 years of adopting the standards and at least once every 3 years thereafter.  Certain ICE holding facilities also must be audited by July 6, 2018.  Holding facilities deemed by this initial audit to be "low risk" subsequently must be audited at least once every 5 years; holding facilities deemed not to be "low risk" during the initial audit must be audited at least once every 3 years.

To facilitate DHS PREA audits of ICE facilities, OPR, in coordination with other agency programs, solicited and secured a contract vendor to perform the audits.  To promote a consistent and unified approach to conducting the audits required under the DHS PREA Standards, ICE and CBP partnered to award a joint audit contract, although ICE and CBP manage implementation of their respective DHS PREA audits independently.  ICE OPR is responsible for managing the DHS PREA contract and the ICE PREA audit program.

DHS PREA audits of ICE immigration detention and holding facilities began in February 2017, and ICE OPR has established an aggressive audit schedule to facilitate the completion of initial audits of all applicable immigration detention and holding facilities within the regulatory deadline.

# IV. Cost of PBNDS 2011 and PREA Implementation

## A. Cost of PBNDS 2011 Implementation

When issued, the mandatory provisions of PBNDS 2011 were implemented at no cost for all but one of the 20 ICE-dedicated adult detention facilities.[7]  Many service providers submitted requests for both per diem increases and one-time upfront funds; however, these expenses are not tied directly to the implementation of PBNDS 2011 and the additional cost to the Federal Government was accepted only after close scrutiny.

A much smaller number of nondedicated detention facilities has adopted PBNDS 2011 at no additional cost to ICE, although in several cases, the adoption of the new detention standards corresponded with ICE agreements to increase per diem payments for other reasons, typically to reimburse localities for their increased labor or other operating costs.  This means that, although some facility costs were increased, they were not related directly to the standards.  Separately, some upgrades at nondedicated facilities also included the hiring of additional medical staff, although the request for increased medical staffing may not have been directly tied to specific PBNDS 2011 requirements, but to a need for more medical staff generally.  When contracts are revised, a number of areas are reviewed to ensure that they represent optimal performance.

However, to date, a very limited number of nondedicated facilities have been asked to convert to PBNDS 2011.  The nondedicated facilities that operate under PBNDS 2011 are primarily new facilities or those with a larger ICE population and a historic or operational understanding of ICE's earlier standards.  ICE believes that pursing adoption of PBNDS 2011 at a majority of existing NDS facilities would be cost-prohibitive and have a negative impact on operations through the extensive negotiations required and the likelihood of losing facilities that would not comply with the standards or where an agreement on cost could not be reached.  Informally, some facilities approached by ICE to consider housing ICE detainees have refused to accept ICE detainees on the basis of ICE's standards and inspections.  Additionally, a few smaller facilities that adopted PBNDS 2011 have had difficulty meeting the mandates of the stricter standards. ICE believes that a full rollout of PBNDS 2011 to all nondedicated facilities would lead to many facilities refusing to take ICE detainees, drastically hindering ICE operations.

ICE does not have the ability to predict accurately the cost of PBNDS 2011 expansion to all nondedicated facilities, given the very limited historical evidence.  Additionally, each facility has very different staffing and physical infrastructure leading to very site-specific requirements and costs.

---

[7] Implementation of PBNDS 2011 at the Eloy Federal Contract Facility required additional annual expenditures of approximately $44,000 and a one-time cost of approximately $122,000 (for the cost of one additional guard and the physical expansion of the recreation space, respectively).  These additional costs arose from the requirement to provide 1 hour of recreation daily to detainees in administrative segregation; PBNDS 2008 required 1 hour of recreation for 5 days each week.

## B.   Cost of PREA Implementation

All 38 of the facilities that implemented the DHS PREA Standards by the end of FY 2017 did so without requesting any increases in per diem or one-time payments.  ICE estimates that further adoption of the DHS PREA Standards at additional facilities also will result in no additional cost to the government.

Although not requested by detention facilities as a condition of adopting the DHS PREA Standards, in FY 2015, ICE agreed to fund the hiring of 14 additional detention facility staff to assist in compliance with the standards.  DHS PREA § 115.11(d) states, "Each facility shall employ or designate a Prevention of Sexual Assault Compliance Manager (PSA Compliance Manager) who shall serve as the facility point of contact for the agency PSA Coordinator and who has sufficient time and authority to oversee facility efforts to comply with facility sexual abuse prevention and intervention policies and procedures." Additionally, the DHS PREA Standards contain detailed requirements related to detention facility administrative investigations of sexual assault allegations by specially trained investigators, and facilities may require additional staff to review and investigate allegations of sexual abuse or assault appropriately. Although the facility PSA compliance manager or investigator positions can be collateral duties, having a full-time staff member is helpful in ensuring compliance with the standards. Accordingly, ICE offered to pay for one or two additional full-time positions at certain detention facilities.  The anticipated total cost of these additional positions was approximately $325,000 in one-time costs and $900,000 annually thereafter.

As noted, ICE and CBP procured a contract vendor to perform the audits required by the DHS PREA Standards.  ICE initiated DHS PREA audits of ICE immigration detention and holding facilities during the second quarter of FY 2017.  Twenty-seven audits were completed by November 14, 2017, and ICE anticipates approximately 25 audits will be completed during FY 2018.  Because of the vendor declining to pursue a second option year, OPR recompeted the contract and made an award to a new vendor with audits to commence in FY 2018.  Estimated contract-related costs for FY 2018 audits have been adjusted on the basis of experience with the initial year of audits and have been revised and increased in the resolicitation.

# V.  Appendices

## Appendix A:  Facilities under PBNDS 2011, as of end of Fiscal Year (FY) 2017

| Facility Name | State | Facility Type |
|---|---|---|
| ADELANTO ICE PROCESSING CENTER | CA | IGSA |
| ALLEN PARISH PUBLIC SAFETY COMPLEX | LA | IGSA |
| BROWARD TRANSITIONAL CENTER | FL | CDF |
| BUFFALO (BATAVIA) SERVICE PROCESSING CENTER | NY | SPC |
| CIBOLA COUNTY CORRECTIONAL CENTER | NM | IGSA |
| DENVER CONTRACT DETENTION FACILITY | CO | CDF |
| EL PASO SERVICE PROCESSING CENTER | TX | SPC |
| ELIZABETH CONTRACT DETENTION FACILITY | NJ | CDF |
| ELOY FEDERAL CONTRACT FACILITY | AZ | IGSA |
| ESSEX COUNTY CORRECTIONAL FACILITY | NJ | IGSA |
| FLORENCE SERVICE PROCESSING CENTER | AZ | SPC |
| FOLKSTON ICE PROCESSING CENTER (D. RAY JAMES) | GA | IGSA |
| HOUSTON CONTRACT DETENTION FACILITY | TX | CDF |
| HOWARD COUNTY DETENTION CENTER | MD | IGSA |
| IMMIGRATION CENTERS OF AMERICA FARMVILLE | VA | IGSA |
| IMPERIAL REGIONAL DETENTION FACILITY | CA | IGSA |
| JENA/LASALLE DETENTION FACILITY | LA | IGSA |
| JOE CORLEY DETENTION FACILITY | TX | IGSA |
| JOHNSON COUNTY CORRECTIONS CENTER | TX | IGSA |
| KROME NORTH SERVICE PROCESSING CENTER | FL | SPC |
| MESA VERDE DETENTION FACILITY | CA | IGSA |
| NORTHEAST OHIO CORRECTIONAL CTR (YOUNGSTOWN CDF) | OH | CDF |
| NORTHWEST DETENTION CENTER | WA | CDF |
| OTAY MESA DETENTION CENTER (SAN DIEGO CDF) | CA | CDF |
| OTERO COUNTY PROCESSING CENTER | NM | IGSA |
| PINE PRAIRIE CORRECTIONAL CENTER | LA | IGSA |
| PORT ISABEL | TX | SPC |
| PRAIRIELAND DETENTION FACILITY | TX | IGSA |
| PULASKI COUNTY JAIL | IL | IGSA |
| SOUTH TEXAS DETENTION COMPLEX | TX | CDF |
| STEWART DETENTION CENTER | GA | IGSA |

Source:  FY 2017 data:  ICE Integrated Decision Support (IIDS) as of 10/02/2017; Enforcement Integrated Database (EID) data through 09/30/2017

Appendix B:  Facilities under PBNDS 2008, as of end of FY 2017

| Facility Name | State | Facility Type |
|---|---|---|
| BRISTOL COUNTY DETENTION CENTER | MA | IGSA |
| CCA CENTRAL ARIZONA DETENTION CENTER | AZ | USMS IGA |
| CCA FLORENCE CORRECTIONAL CENTER | AZ | USMS IGA |
| DOUGLAS COUNTY DEPARTMENT OF CORRECTIONS | NE | IGSA |
| HUDSON COUNTY CORRECTIONAL CENTER | NJ | IGSA |
| JAMES A. MUSICK FACILITY | CA | IGSA |
| MONROE COUNTY DETENTION CENTER | FL | IGSA |
| ORANGE COUNTY INTAKE RELEASE FACILITY | CA | IGSA |
| PIKE COUNTY CORRECTIONAL FACILITY | PA | IGSA |
| RIO GRANDE DETENTION CENTER | TX | USMS IGA |
| SAINT CLAIR COUNTY JAIL | MI | IGSA |
| STRAFFORD COUNTY CORRECTIONS | NH | IGSA |
| THEO LACY FACILITY | CA | IGSA |
| WESTERN TENNESSEE DETENTION FACILITY | TN | USMS IGA |
| YORK COUNTY PRISON | PA | IGSA |
| BRISTOL COUNTY DETENTION CENTER | MA | IGSA |

Source:  FY 2017 data:  IIDS as of 10/02/2017; EID data through 09/30/2017

Appendix C:  Facilities under NDS 2000, as of end of FY 2017

| Facility Name | State | Facility Type |
|---|---|---|
| ALBANY COUNTY JAIL | NY | USMS IGA |
| ALEXANDRIA CITY JAIL | VA | USMS IGA |
| ALLEGANY COUNTY JAIL | NY | IGSA |
| ANCHORAGE CORRECTIONAL COMPLEX | AK | USMS IGA |
| ATLANTA CITY DETENTION CENTER | GA | USMS IGA |
| BAKER COUNTY SHERIFF'S OFFICE | FL | IGSA |
| BALDWIN COUNTY CORRECTIONAL CENTER | AL | IGSA |
| BEAVER COUNTY JAIL | PA | USMS IGA |
| BEDFORD MUNICIPAL DETENTION CENTER | TX | IGSA |
| BENTON COUNTY DETENTION CENTER | AR | USMS IGA |
| BERGEN COUNTY JAIL | NJ | USMS IGA |
| BOONE COUNTY JAIL | KY | USMS IGA |
| BREMER COUNTY JAIL | IA | USMS IGA |
| BROOKS COUNTY DETENTION CENTER | TX | USMS IGA |
| BURNET COUNTY JAIL | TX | IGSA |
| BUTLER COUNTY JAIL | OH | IGSA |
| BUTLER COUNTY JAIL | KS | USMS IGA |
| CABARRUS COUNTY JAIL | NC | IGSA |
| CALDWELL COUNTY DETENTION CENTER | MO | IGSA |
| CALHOUN COUNTY CORRECTIONAL CENTER | MI | IGSA |
| CAMBRIA COUNTY JAIL | PA | USMS IGA |
| CARVER COUNTY JAIL | MN | IGSA |
| CASCADE COUNTY JAIL (MONTANA) | MT | USMS IGA |
| CASS COUNTY JAIL | NE | USMS IGA |
| CENTRAL TEXAS DETENTION FACILITY | TX | USMS IGA |
| CHARLESTON COUNTY DETENTION CENTER | SC | USMS IGA |
| CHASE COUNTY DETENTION FACILITY | KS | IGSA |
| CHAUTAUQUA COUNTY JAIL | NY | IGSA |
| CHIPPEWA COUNTY SSM | MI | IGSA |
| CHRISTIAN COUNTY JAIL | MO | IGSA |
| CLINTON COUNTY CORRECTIONAL FACILITY | PA | USMS IGA |
| CLINTON COUNTY JAIL | NY | USMS IGA |
| COBB COUNTY JAIL | GA | IGSA |
| COCONINO COUNTY DETENTION FACILITY | AZ | USMS IGA |
| COLLIER COUNTY NAPLES JAIL CENTER | FL | IGSA |
| CONTRA COSTA COUNTY JAIL WEST | CA | USMS IGA |
| CUMBERLAND COUNTY JAIL | ME | USMS IGA |
| DAKOTA COUNTY JAIL | NE | USMS IGA |

| Facility Name | State | Facility Type |
|---|---|---|
| DALE G. HAILE DETENTION CENTER | ID | IGSA |
| DAVIDSON COUNTY SHERIFF | TN | IGSA |
| DEARBORN POLICE DEPARTMENT | MI | IGSA |
| DEKALB COUNTY DETENTION CENTER | AL | USMS IGA |
| DELAWARE CO JAIL (GEORGE W. HILL) | PA | USMS IGA |
| DODGE COUNTY JAIL | WI | USMS IGA |
| EAST HIDALGO DETENTION CENTER | TX | USMS IGA |
| EL PASO COUNTY CRIMINAL JUSTICE CENTER | CO | IGSA |
| ELGIN POLICE DEPARTMENT | IL | IGSA |
| ELMORE COUNTY JAIL | ID | USMS IGA |
| ERIE COUNTY JAIL | PA | USMS IGA |
| ETOWAH COUNTY JAIL (ALABAMA) | AL | USMS IGA |
| EULESS CITY JAIL | TX | IGSA |
| FAIRFAX COUNTY ADULT DETENTION CENTER | VA | IGSA |
| FAIRFAX COUNTY JAIL | VA | USMS IGA |
| FAYETTE COUNTY DETENTION CENTER | KY | USMS IGA |
| FORSYTH COUNTY JAIL | NC | USMS IGA |
| FRANKLIN COUNTY HOUSE OF CORRECTION | MA | USMS IGA |
| FREDERICK COUNTY DETENTION CENTER | MD | IGSA |
| FREEBORN COUNTY ADULT DETENTION CENTER | MN | IGSA |
| GARVIN COUNTY DETENTION CENTER | OK | IGSA |
| GASTON COUNTY JAIL | NC | IGSA |
| GEAUGA COUNTY JAIL | OH | USMS IGA |
| GLADES COUNTY DETENTION CENTER | FL | IGSA |
| GLENDALE POLICE DEPARTMENT | CA | IGSA |
| GRAND FORKS COUNTY CORRECTIONAL FACILITY | ND | IGSA |
| GRAYSON COUNTY JAIL | KY | USMS IGA |
| HALL COUNTY DEPARTMENT OF CORRECTIONS | NE | IGSA |
| HALL COUNTY JAIL | GA | USMS IGA |
| HARDIN COUNTY JAIL | IA | IGSA |
| HENDERSON DETENTION CENTER | NV | USMS IGA |
| JACK HARWELL DETENTION CENTER | TX | USMS IGA |
| JEFFERSON COUNTY JAIL | ID | IGSA |
| JOSEPHINE COUNTY JAIL | OR | USMS IGA |
| KANKAKEE COUNTY JAIL (JEROME COMBS DET CTR) | IL | USMS IGA |
| KARNES COUNTY CORRECTIONAL CENTER | TX | USMS IGA |
| KENOSHA COUNTY DETENTION CENTER | WI | USMS IGA |
| KENT COUNTY JAIL | MI | IGSA |
| LA PAZ COUNTY ADULT DETENTION FACILITY | AZ | USMS IGA |
| LA PLATA COUNTY JAIL | CO | USMS IGA |
| LA SALLE COUNTY REGIONAL DETENTION CENTER | TX | USMS IGA |

| Facility Name | State | Facility Type |
|---|---|---|
| LAREDO PROCESSING CENTER | TX | USMS IGA |
| LEXINGTON COUNTY JAIL | SC | USMS IGA |
| LINCOLN COUNTY DETENTION CENTER | MO | IGSA |
| LINN COUNTY JAIL | IA | USMS IGA |
| LONOKE POLICE DEPARTMENT | AR | IGSA |
| LUBBOCK COUNTY DETENTION CENTER | TX | USMS IGA |
| MARION COUNTY JAIL | IN | USMS IGA |
| MARSHALL COUNTY JAIL | IA | USMS IGA |
| MCHENRY COUNTY CORRECTIONAL FACILITY | IL | USMS IGA |
| MECKLENBURG COUNTY DETENTION CENTER NORTH | NC | USMS IGA |
| MILLER COUNTY JAIL | AR | USMS IGA |
| MINICASSIA DETENTION CENTER | ID | IGSA |
| MOFFAT COUNTY JAIL | CO | IGSA |
| MONROE COUNTY DETENTION-DORM | MI | IGSA |
| MONTGOMERY CITY JAIL | AL | IGSA |
| MONTGOMERY COUNTY JAIL | MO | IGSA |
| MORGAN COUNTY ADULT DETENTION CENTER | MO | IGSA |
| MORROW COUNTY CORRECTIONAL FACILITY | OH | IGSA |
| NATRONA COUNTY JAIL | WY | USMS IGA |
| NAVAJO COUNTY SHERIFF | AZ | IGSA |
| NEW HANOVER COUNTY JAIL | NC | IGSA |
| NOBLES COUNTY JAIL | MN | IGSA |
| NORFOLK COUNTY JAIL | MA | USMS IGA |
| NORTHERN OREGON CORRECTIONAL FACILITY | OR | IGSA |
| NORTHERN REGIONAL JAIL | WV | USMS IGA |
| NORTHWEST STATE CORRECTIONAL CENTER | VT | USMS IGA |
| OLDHAM COUNTY JAIL | KY | IGSA |
| ORANGE COUNTY INTAKE RELEASE FACILITY | CA | IGSA |
| ORANGE COUNTY JAIL | NY | IGSA |
| ORANGE COUNTY JAIL | FL | USMS IGA |
| OTERO COUNTY PRISON FACILITY | NM | USMS IGA |
| PENNINGTON COUNTY JAIL (SOUTH DAKOTA) | SD | USMS IGA |
| PHELPS COUNTY JAIL | NE | USMS IGA |
| PINELLAS COUNTY JAIL | FL | USMS IGA |
| PLATTE COUNTY DETENTION CENTER | MO | IGSA |
| PLATTE COUNTY JAIL | WY | USMS IGA |
| PLYMOUTH COUNTY CORRECTIONAL FACILITY | MA | IGSA |
| POLK COUNTY ADULT DETENTION FACILITY | TX | IGSA |
| POLK COUNTY JAIL | IA | USMS IGA |
| POTTAWATTAMIE COUNTY JAIL | IA | USMS IGA |

| Facility Name | State | Facility Type |
|---|---|---|
| PRINCE WILLIAM COUNTY CORRECTIONAL FACILITY | VA | USMS IGA |
| RAMSEY COUNTY ADULT DETENTION CENTER | MN | USMS IGA |
| RANDALL COUNTY JAIL | TX | USMS IGA |
| RIO COSUMNES CORR. CENTER | CA | IGSA |
| RIO GRANDE COUNTY JAIL | CO | IGSA |
| ROANOKE CITY JAIL | VA | IGSA |
| ROCK ISLAND COUNTY CORRECTIONAL CENTER | IL | USMS IGA |
| ROCKINGHAM COUNTY JAIL | VA | USMS IGA |
| SAINT TAMMANY PARISH JAIL | LA | IGSA |
| SAN LUIS REGIONAL DETENTION CENTER | AZ | USMS IGA |
| SANGAMON COUNTY JAIL | IL | USMS IGA |
| SANTA CRUZ COUNTY JAIL | AZ | USMS IGA |
| SEBASTIAN COUNTY DETENTION CENTER | AR | USMS IGA |
| SENECA COUNTY JAIL | OH | IGSA |
| SHAWNEE COUNTY DEPARTMENT OF CORRECTIONS | KS | IGSA |
| SHERBURNE COUNTY JAIL | MN | USMS IGA |
| SOUTH CENTRAL REGIONAL JAIL | WV | USMS IGA |
| SUFFOLK COUNTY HOUSE OF CORRECTIONS | MA | IGSA |
| TAYLOR COUNTY ADULT DETENTION FACILITY | TX | IGSA |
| TELLER COUNTY JAIL | CO | IGSA |
| TITUS COUNTY JAIL | TX | USMS IGA |
| TOM GREEN COUNTY JAIL | TX | USMS IGA |
| TORRANCE COUNTY DETENTION FACILITY | NM | USMS IGA |
| TULSA COUNTY JAIL (DAVID L. MOSS JUSTICE CTR) | OK | IGSA |
| VAL VERDE CORRECTIONAL FACILITY | TX | USMS IGA |
| VIRGINIA PENINSULA REGIONAL JAIL | VA | USMS IGA |
| WAKE COUNTY SHERIFF DEPARTMENT | NC | IGSA |
| WAKULLA COUNTY JAIL | FL | IGSA |
| WASHINGTON COUNTY DETENTION CENTER | AR | USMS IGA |
| WASHINGTON COUNTY JAIL (PURGATORY CORRECTIONAL FAC | UT | USMS IGA |
| WASHOE COUNTY JAIL | NV | USMS IGA |
| WAYNE COUNTY JAIL | NY | USMS IGA |
| WEBB COUNTY DETENTION CENTER (CCA) | TX | USMS IGA |
| WEST TEXAS DETENTION FACILITY | TX | USMS IGA |
| WHITFIELD COUNTY JAIL | GA | IGSA |
| WILLACY CO  REGIONAL DETENTION FACILITY | TX | USMS IGA |
| WORCESTER COUNTY JAIL | MD | IGSA |
| YAKIMA COUNTY DEPARTMENT OF CORRECTIONS | WA | USMS IGA |
| YANKTON COUNTY JAIL | SD | USMS IGA |
| YAVAPAI COUNTY DETENTION CENTER | AZ | IGSA |

| Facility Name | State | Facility Type |
|---|---|---|
| YORK COUNTY DETENTION CENTER | SC | USMS IGA |
| YUBA COUNTY JAIL | CA | IGSA |

Source:  FY 2017 data:  IIDS as of 10/02/2017; EID data through 09/30/2017

Note:  These include authorized facilities with the last inspection standard "NDS" and exclude the Department of Health and Human Services Office of Refugee Resettlement and the Mexican Interior Repatriation Program as well as Family and the Federal Bureau of Prisons.

Appendix D:  Facilities under Family Residential Standards, as of end of
     FY 2017

| Facility Name | State | Facility Type |
| --- | --- | --- |
| BERKS COUNTY FAMILY SHELTER | PA | FAMILY |
| HUTTO CCA | TX | FAMILY |
| KARNES COUNTY RESIDENTIAL CENTER | TX | FAMILY |
| SOUTH TEXAS FAMILY RESIDENTIAL CENTER | TX | FAMILY |

Source:  FY 2017 data:  IIDS as of 10/02/2017; EID data through 09/30/2017

Appendix E:  Facilities under DHS PREA Standards, as of end of FY
        2017

| Facility Name | State | Facility Type |
|---|---|---|
| ADELANTO ICE PROCESSING CENTER | CA | IGSA |
| ALLEN PARISH PUBLIC SAFETY COMPLEX | LA | IGSA |
| BERKS COUNTY FAMILY SHELTER | PA | IGSA |
| BROWARD TRANSITIONAL CENTER | FL | CDF |
| BUFFALO (BATAVIA) SERVICE PROCESSING CENTER | NY | SPC |
| CIBOLA COUNTY CORRECTIONAL CENTER | NM | IGSA |
| DENVER CONTRACT DETENTION FACILITY | CO | CDF |
| EL PASO SERVICE PROCESSING CENTER | TX | SPC |
| ELIZABETH CONTRACT DETENTION FACILITY | NJ | CDF |
| ELOY FEDERAL CONTRACT FACILITY | AZ | IGSA |
| ESSEX COUNTY CORRECTIONAL FACILITY | NJ | IGSA |
| FLORENCE SERVICE PROCESSING CENTER | AZ | SPC |
| FOLKSTON ICE PROCESSING CENTER (D. RAY JAMES) | GA | IGSA |
| HOUSTON CONTRACT DETENTION FACILITY | TX | CDF |
| HOWARD COUNTY DETENTION CENTER | MD | IGSA |
| HUTTO CCA | TX | IGSA |
| IMMIGRATION CENTERS OF AMERICA FARMVILLE | VA | IGSA |
| IMPERIAL REGIONAL DETENTION FACILITY | CA | IGSA |
| JAMES A. MUSICK FACILITY | CA | IGSA |
| JENA/LASALLE DETENTION FACILITY | LA | IGSA |
| JOE CORLEY DETENTION FACILITY | TX | IGSA |
| JOHNSON COUNTY CORRECTIONS CENTER | TX | IGSA |
| KARNES COUNTY RESIDENTIAL CENTER | TX | IGSA |
| KROME NORTH SERVICE PROCESSING CENTER | FL | SPC |
| MESA VERDE DETENTION FACILITY | CA | IGSA |
| NORTHEAST OHIO CORRECTIONAL CTR (YOUNGSTOWN CDF) | OH | CDF |
| NORTHWEST DETENTION CENTER | WA | CDF |
| OTERO COUNTY PROCESSING CENTER | NM | IGSA |
| PINE PRAIRIE CORRECTIONAL CENTER | LA | IGSA |
| POLK COUNTY ADULT DETENTION FACILITY | TX | IGSA |
| PORT ISABEL | TX | SPC |
| PRAIRIELAND DETENTION FACILITY | TX | IGSA |
| PULASKI COUNTY JAIL | IL | IGSA |
| SOUTH TEXAS DETENTION COMPLEX | TX | CDF |
| SOUTH TEXAS FAMILY RESIDENTIAL CENTER | TX | IGSA |
| STEWART DETENTION CENTER | GA | IGSA |

| | | |
|---|---|---|
| THEO LACY FACILITY | CA | IGSA |
| YORK COUNTY PRISON | PA | IGSA |

Source: FY 2017 data: IIDS as of 10/02/2017; EID data through 09/30/2017

Appendix F:  Authorized Detention Management Control Program
IGSA Facilities that have not adopted DHS PREA Standards, as of
end of FY 2017

| Facility Name | State | Facility Type |
|---|---|---|
| ABRAXAS ACADEMY DETENTION CENTER | PA | IGSA |
| ALLEGANY COUNTY JAIL | NY | IGSA |
| BAKER COUNTY SHERIFF'S OFFICE | FL | IGSA |
| BALDWIN COUNTY CORRECTIONAL CENTER | AL | IGSA |
| BEDFORD MUNICIPAL DETENTION CENTER | TX | IGSA |
| BRISTOL COUNTY DETENTION CENTER | MA | IGSA |
| BURNET COUNTY JAIL | TX | IGSA |
| BUTLER COUNTY JAIL | OH | IGSA |
| CABARRUS COUNTY JAIL | NC | IGSA |
| CALDWELL COUNTY DETENTION CENTER | MO | IGSA |
| CALHOUN COUNTY CORRECTIONAL CENTER | MI | IGSA |
| CARVER COUNTY JAIL | MN | IGSA |
| CARVER COUNTY JUVENILE DETENTION CENTER | MN | IGSA |
| CHASE COUNTY DETENTION FACILITY | KS | IGSA |
| CHAUTAUQUA COUNTY JAIL | NY | IGSA |
| CHIPPEWA COUNTY SSM | MI | IGSA |
| CHRISTIAN COUNTY JAIL | MO | IGSA |
| COBB COUNTY JAIL | GA | IGSA |
| COLLIER COUNTY NAPLES JAIL CENTER | FL | IGSA |
| COMPASS HOUSE SHELTER | NY | IGSA |
| COWLITZ COUNTY JUVENILE | WA | IGSA |
| DALE G. HAILE DETENTION CENTER | ID | IGSA |
| DAVIDSON COUNTY SHERIFF | TN | IGSA |
| DEARBORN POLICE DEPARTMENT | MI | IGSA |
| DOUGLAS COUNTY DEPARTMENT OF CORRECTIONS | NE | IGSA |
| EL PASO COUNTY CRIMINAL JUSTICE CENTER | CO | IGSA |
| ELGIN POLICE DEPARTMENT | IL | IGSA |
| EULESS CITY JAIL | TX | IGSA |
| FAIRFAX COUNTY ADULT DETENTION CENTER | VA | IGSA |
| FREDERICK COUNTY DETENTION CENTER | MD | IGSA |
| FREEBORN COUNTY ADULT DETENTION CENTER | MN | IGSA |
| GARVIN COUNTY DETENTION CENTER | OK | IGSA |
| GASTON COUNTY JAIL | NC | IGSA |
| GLADES COUNTY DETENTION CENTER | FL | IGSA |
| GLENDALE POLICE DEPARTMENT | CA | IGSA |
| GRAND FORKS COUNTY | ND | IGSA |

| | | |
|---|---|---|
| GRAND FORKS COUNTY CORRECTIONAL FACILITY | ND | IGSA |
| HALL COUNTY DEPARTMENT OF CORRECTIONS | NE | IGSA |
| HARDIN COUNTY JAIL | IA | IGSA |
| HUDSON COUNTY CORRECTIONAL CENTER | NJ | IGSA |
| JEFFERSON COUNTY JAIL | ID | IGSA |
| KENT COUNTY JAIL | MI | IGSA |
| LINCOLN COUNTY DETENTION CENTER | MO | IGSA |
| LONOKE POLICE DEPARTMENT | AR | IGSA |
| MAINE YOUTH CENTER - LONG CREEK | ME | IGSA |
| MINICASSIA DETENTION CENTER | ID | IGSA |
| MOFFAT COUNTY JAIL | CO | IGSA |
| MONROE COUNTY DETENTION CENTER | FL | IGSA |
| MONROE COUNTY DETENTION-DORM | MI | IGSA |
| MONTGOMERY CITY JAIL | AL | IGSA |
| MONTGOMERY COUNTY JAIL | MO | IGSA |
| MORGAN COUNTY ADULT DETENTION CENTER | MO | IGSA |
| MORROW COUNTY CORRECTIONAL FACILITY | OH | IGSA |
| NAVAJO COUNTY SHERIFF | AZ | IGSA |
| NEW HANOVER COUNTY JAIL | NC | IGSA |
| NOBLES COUNTY JAIL | MN | IGSA |
| NORTHERN OREGON CORRECTIONAL FACILITY | OR | IGSA |
| NORTHERN OREGON JUVENILE DETENTION | OR | IGSA |
| NORTHERN VIRGINIA JUVENILE DETENTION CENTER | VA | IGSA |
| OLDHAM COUNTY JAIL | KY | IGSA |
| ORANGE COUNTY INTAKE RELEASE FACILITY | CA | IGSA |
| ORANGE COUNTY JAIL | NY | IGSA |
| PIKE COUNTY CORRECTIONAL FACILITY | PA | IGSA |
| PLATTE COUNTY DETENTION CENTER | MO | IGSA |
| PLYMOUTH COUNTY CORRECTIONAL FACILITY | MA | IGSA |
| RIO COSUMNES CORR. CENTER | CA | IGSA |
| RIO GRANDE COUNTY JAIL | CO | IGSA |
| ROANOKE CITY JAIL | VA | IGSA |
| ROLLING PLAINS DETENTION CENTER | TX | IGSA |
| SAINT CLAIR COUNTY JAIL | MI | IGSA |
| SAINT TAMMANY PARISH JAIL | LA | IGSA |
| SENECA COUNTY JAIL | OH | IGSA |
| SHAWNEE COUNTY DEPARTMENT OF CORRECTIONS | KS | IGSA |
| SHAWNEE COUNTY JUVENILE DETENTION CENTER | KS | IGSA |
| STRAFFORD COUNTY CORRECTIONS | NH | IGSA |
| SUFFOLK COUNTY HOUSE OF CORRECTIONS | MA | IGSA |
| TAYLOR COUNTY ADULT DETENTION FACILITY | TX | IGSA |
| TELLER COUNTY JAIL | CO | IGSA |

| | | |
|---|---|---|
| TULSA COUNTY JAIL (DAVID L. MOSS JUSTICE CTR) | OK | IGSA |
| WAKE COUNTY SHERIFF DEPARTMENT | NC | IGSA |
| WAKULLA COUNTY JAIL | FL | IGSA |
| WHITFIELD COUNTY JAIL | GA | IGSA |
| WORCESTER COUNTY JAIL | MD | IGSA |
| YAVAPAI COUNTY DETENTION CENTER | AZ | IGSA |
| YUBA COUNTY JAIL | CA | IGSA |

Source:  FY 2017 data:  IIDS as of 10/02/2017; EID data through 09/30/2017