# Exhibit 12

```
 1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
 2

 3         CIVIL ACTION NO.: 1:14-cv-02887-JLK

 4
     ALEJANDRO MENOCAL, et al.,
 5

 6         Plaintiffs,

 7   -vs-

 8
     THE GEO GROUP, INC.,
 9

10         Defendant.
     _____/
11

12
                  DEPOSITION OF DANIEL RAGSDALE
13

14
                 Thursday, February 27, 2020
15                  9:20 a.m. - 3:14 p.m.

16
                   Shavitz Law Group, P.A.
17                  951 Yamato Road, #285
                   Boca Raton, Florida 33431
18

19

20            Stenographically Reported By:
               JOYCE L. BLUTEAU, RPR, FPR
21           Registered Professional Reporter
               Florida Professional Reporter
22

23

24

25
```

```
 1   APPEARANCES:

 2
     On behalf of the Plaintiffs:
 3

 4       TOWARDS JUSTICE
         1410 High Street
 5       Suite 300
         Denver, Colorado 80218
 6       720.441.2236
         juno@towardsjustice.org
 7       BY: JUNO TURNER, ESQUIRE

 8

 9       OUTTEN & GOLDEN, LLP
         685 Third Avenue
10       25th Floor
         New York, New York 10017
11       212.245.1000
         akoshkin@outtengolden.com
12       BY: ADAM L. KOSHKIN, ESQUIRE

13

14   On behalf of the Defendant:
         AKERMAN, LLP
15       1900 Sixteenth Street
         Suite 1700
16       Denver, Colorado 80202
         303.260.7712
17       colin.barnacle@akerman.com
         adrienne.scheffey@akerman.com
18       BY: COLIN L. BARNACLE, ESQUIRE and
             ADRIENNE SCHEFFEY, ESQUIRE
19

20
         THE GEO GROUP, INC.
21       4955 Technology Way
         Boca Raton, Florida 33431
22       561.443.1786
         cwilke@geogroup.com
23       BY:  CHERYL L. WILKE, ESQUIRE, VP CORPORATE COUNSEL

24
                          -  -  -
25
```

1  what I just tried to say is the agency will audit the
2  facility on some regular basis.  And then on an ad hoc
3  basis they will obviously do spot checks or reviews, if
4  you will, on how the contractor's performing the
5  services.
6      Q.   Okay.  And then sort of moving along, under
7  Item 4 there it says, "The facility will be reviewed at
8  least once every 12 months."
9           Is that consistent with your understanding?
10     A.   I would say, you know, I couldn't again speak
11 for the agency in terms of whether they're like clockwork
12 in getting everything done in 12 months.  I think that's
13 what -- aspirationally, that's what this seems to
14 require.
15     Q.   Okay.  And if you look under Item 5, review
16 process, it lists five phases, the pre-review
17 preparation, on-site review, report production, review of
18 conclusions, and follow-up review.
19          Is that consistent with your understanding of
20 what this review entails?
21     A.   Again, this is the regime the agency uses.  I
22 can't speak for the agency, but I do know that they do
23 audits.  There's a prep process and, you know, this is
24 consistent with what my understanding is.
25     Q.   Okay.  If you could turn to page 59675.

 1            So there under Item 9, it lists the performance
 2   requirements summary and schedule of reductions.  And
 3   then it says, "This performance requirement summary or
 4   PRS serves to communicate what the government intends to
 5   qualitatively inspect."  And then below that there's a
 6   chart.
 7            Is your understanding that these are the areas
 8   that the government intends to inspect as part of the
 9   PRS?
10       A.   Yes.  I mean, I've seen this document, these
11   types of things in documents that ICE uses, so, yes, I
12   believe these are areas that are listed in functional
13   areas that are areas they do inspect, yes.
14       Q.   Okay.  And then if you could just take a look
15   at the chart itself and let me know what portions of this
16   list of functional areas that the government intends to
17   inspect GEO contends relate to detainee labor in the
18   Aurora facility.
19       A.   I would say policy development and monitoring.
20   I would say detainee records.
21       Q.   Let's take them one at a time.  So what aspects
22   of policy development and monitoring would implicate
23   detainee labor?
24       A.   Well, so, in other words, as I said to you
25   earlier, there's a detention standard on the Detainee

```
 1   Work Program.  There is, as we talked about today, HUSP
 2   or Housing Unit Sanitation Policy.  There's a sanitation
 3   policy.
 4           So to the extent this is the overarching policy
 5   development and monitoring, those things, in my mind,
 6   would be subsumed into that area.
 7       Q.   Okay.  Got it.
 8           What about detainee records?
 9       A.   Again, as part of the Voluntary Work Program as
10   a detainee work plan, it is a document that the detainee
11   signs.  They obviously get some level of training
12   depending on what they're doing.  Those are maintained in
13   the detainee's file, so we would expect to see those
14   types of things in detainee records.
15       Q.   Okay.  What else?
16       A.   Again, like personal property, if a person had,
17   you know, again excess property that is related to the
18   housing unit, the HUSP, you know, that could be something
19   that relates to personal property that could be
20   implicated in the Housing Unit Sanitation plan.
21           Quality control, again, as we talked about,
22   those are policies I think would be subsumed in there.
23           It could -- again, personal property could
24   relate to functional areas in security, security
25   inspections, control of contraband, detainee searches.
```

Daniel Ragsdale
February 27, 2020                                                              38

1    Q.   So when you say "personal property" there,
2    you're referring to the requirement that the detainees
3    keep their personal property packed away and in their
4    bunk, for example, they don't hang loose papers, those
5    types of requirements?
6    A.   Right.  In other words -- yes.
7    Q.   Okay.  Not relating to the requirement that
8    they clean the common areas; correct?
9    A.   I guess only to the extent depends where their
10   personal property is.
11   Q.   Right.  Don't leave their personal property
12   lying around the facility.
13   A.   Correct.
14   Q.   Okay.
15   A.   So, again, that could go down to detainee
16   discipline, as we talked about earlier.
17        Then on page ending with 676, sanitation
18   requirements obviously could be implicated.  It could be
19   staff detainee communication, depending on, you know,
20   whether there's issues, detainees want to appeal some,
21   you know, obviously, finding or ruling.  Grievances
22   obviously could be also implicated.  Volunteer work
23   assignments are obviously there, work assignments and
24   security.  I think that's it.
25   Q.   Okay.  Was it your understanding that GEO would

1  develop policies relating to these functional areas and
2  submit them to the government?
3       A.   Yes.  So it's my understanding that the
4  facilities develop policies to implement the standards
5  and those are reviewed and cleared, essentially, or
6  cosigned by ICE.
7       Q.   Okay.  This one is really big.  We'll mark
8  this, please.  I hand you a document marked Exhibit 14 --
9  Exhibit 5.
10           (Exhibit 5, E-mail with Attached 2011 Contract
11  for operation of the Aurora Facility, was marked for
12  identification.)
13 BY MS. TURNER:
14      Q.   This is an e-mail followed by what I believe is
15 the contract starting in 2011 for operation of the Aurora
16 facility, but you can take a look and let me know if you
17 agree.
18      A.   So I see this is mailed under Item 11 to ICE's
19 office in Centennial, so at least there's a reference to
20 Colorado on the first page.  Let me just flip through.
21           There's a --
22      Q.   If you take a look at the e-mail cover as well,
23 the attachment is named "Aurora."
24      A.   Okay.  I see that, "Aurora Agreement with Job
25 Descriptions," yes.

```
 1                    CERTIFICATE OF OATH

 2

 3

 4    THE STATE OF FLORIDA,        )

 5    COUNTY OF PALM BEACH.        )

 6

 7

 8            I, Joyce L. Bluteau, Registered Professional

 9    Reporter, Florida Professional Reporter and Notary

10    Public, State of Florida, certify that DANIEL RAGSDALE

11    personally appeared before me on the 27th day of

12    February, 2020, and was duly sworn.

13

14            Signed this 3rd day of March, 2020.

15

16

17

18

19              [signature: Joyce L. Bluteau]

20    _____
      Joyce L. Bluteau, RPR, FPR
21    Notary Public - State of Florida
      Commission No.:  FF 947453
22    Commission Expires:  March 26, 2020

23

24

25
```

```
 1                    CERTIFICATE OF REPORTER

 2
     THE STATE OF FLORIDA,      )
 3
     COUNTY OF PALM BEACH.      )
 4

 5
              I, Joyce L. Bluteau, Registered Professional
 6   Reporter, Florida Professional Reporter, certify that I
     was authorized to and did stenographically report the
 7   deposition of DANIEL RAGSDALE; pages 1 through 183; that
     a review of the transcript was requested; and that the
 8   transcript is a true record of my stenographic notes.

 9
              I further certify that I am not a relative,
10   employee, attorney, or counsel of any of the parties, nor
     am I a relative or employee of any of the parties'
11   attorneys or counsel connected with the action, nor am I
     financially interested in the action.
12

13            DATED this 3rd day of March, 2020.

14

15

16

17

18

19

20   _____
     Joyce L. Bluteau,
21   Registered Professional Reporter
     Florida Professional Reporter
22

23

24

25
```

```
 1                 WITNESS NOTIFICATION LETTER

 2   March 3, 2020

 3


 4         DANIEL RAGSDALE
     c/o: COLIN L. BARNACLE, ESQUIRE.
 5         AKERMAN, LLP
           1900 Sixteenth Street
 6         Suite 1700
           Denver, Colorado 80202
 7


 8
     IN RE:  ALEJANDRO MENOCAL, et al. vs. THE GEO GROUP, INC.
 9           Deposition, taken on February 27, 2020
             U.S. Legal Support (WPB) Job No. 2107998
10           U.S. Legal Support (NY) Job No. 301680

11   The transcript of the above proceeding is now available
     for your review.
12
     Please call (561) 835-0220 to schedule an appointment
13   between the hours of 9:00 a.m. and 4:00 p.m., Monday
     through Friday, at a U.S. Legal Support office located
14   nearest you.

15   Please complete your review within 30 days.

16
     Sincerely,
17

18
     _____
19   Joyce L. Bluteau, RPR, FPR
     U.S. Legal Support, Inc.
20   700 East Dania Beach Boulevard
     First Floor
21   Dania Beach, Florida 33004
     561.835.0220
22

23   CC via transcript:

24   ADAM KOSHKIN, ESQUIRE

25
```