# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| ALEJANDRO MENOCAL, *et al.*, <br><br>     Plaintiffs, <br><br> v. <br><br> THE GEO GROUP, INC., <br><br>     Defendant. | No. 14 Civ. 2887 (JLK) |

**PLAINTIFF ALEJANDRO MENOCAL'S SUPPLEMENTAL RESPONSES TO
DEFENDANT THE GEO GROUP, INC.'S SIXTH[1] SET OF INTERROGATORIES**

Pursuant to Rules 33 of the Federal Rules of Civil Procedure and the Local Rules of the

District of Colorado, Plaintiff Alejandro Menocal, by his attorneys, makes the following

supplemental response to Defendant's Sixth Set of Interrogatories, dated March 6, 2020.

**PRELIMINARY STATEMENT**

All responses to the following Interrogatories are based on information currently known

to Plaintiffs and are provided without prejudice to Plaintiffs' right to submit additional

information, should it become known.  Plaintiffs anticipate that as investigation and trial

preparation continue, it is possible that additional facts and witnesses may become known, which

may in turn warrant additions to or changes in the responses provided herein.  These responses

are made in a good faith effort to supply such information as is presently known to Plaintiffs.

---

[1]  The set of interrogatories to which this pleading responds was styled incorrectly as "GEO Group, Inc.'s Fourth Set of Interrogatories."  GEO's Fourth set of Interrogatories was served on November 14, 2019, and its Fifth set of Interrogatories was served on November 15, 2019.  The numbering of individual interrogatories is, accordingly, corrected herein, to reflect the fact that GEO has served a total of 37 interrogatories prior to serving the current set.

These responses and objections are made without prejudice to, and are not a waiver of, Plaintiffs' right to rely on other facts or documents at trial.

Plaintiffs reserve all objections to the competence, relevance, materiality, or admissibility at trial of any information or documents requested or identified by any party. The inadvertent disclosure of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such information or any other information.

The production of information and/or documents pursuant to this response is made without waiving, or intending to waive, but on the contrary reserving and intending to reserve: (a) the right to object on any grounds to the use of documents or information produced pursuant to this response in this or any other action or proceeding; (b) the right to object on any and all grounds, at any time, to other requests for production or other discovery mechanisms or proceedings; and (c) the right at any time to revise, correct, or supplement this response.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 38 (Numbered 36 By GEO):

Identify the source, amount, and terms of any third-party litigation financing used by Plaintiffs in this Lawsuit. For each source of financing, identify the contact information for each such source, whether individual or organization.

### RESPONSE TO INTERROGATORY NO. 38:

Plaintiff objects that this interrogatory is irrelevant to the claims and defenses in this case, and is therefore beyond the scope of discovery. Disclosure of the information described in this interrogatory is not authorized or required by the Federal Rules of Civil Procedure. Moreover, this interrogatory is harassing insofar as the request for contact information appears intended to equip Defendant with the means to independently interfere, outside of this litigation, with

Plaintiff's access to funds that might support their claims for restitution for Defendant's violations of the law.

**INTERROGATORY NO. 39 (Numbered 37 By GEO):**

Describe all actions taken by GEO that You allege constitute "force, threats of force, physical restraint, or threats of physical restraint" under 18 U.S.C. § 1589(a)(1).

**RESPONSE TO INTERROGATORY NO. 39:**

Plaintiff objects to this interrogatory as follows:

1. This interrogatory is vague in its use of the term "You."[2] First, this interrogatory does not specify sufficiently which acts it seeks to identify. Plaintiffs respond to this interrogatory based on the understanding that it seeks acts that were directly experienced by the individual named Plaintiffs, based on GEO's representations. Second, although GEO clarified in a conference on April 30, 2020 that this interrogatory sought individualized responses from each of the named Plaintiffs, this interrogatory is phrased in terms of Plaintiffs' allegations, which are not styled as individual claims, but rather as classwide claims and allegations that derive from GEO's policies and practices that were common to the TVPA Class. Accordingly, Plaintiffs allege in this case that the individual acts which each of them experienced are part of a combination of acts which constitute a unified

---

[2]      This set of interrogatories purport to incorporate the definitions from GEO's Second Set of Interrogatories, served on November 8, 2017 ("GEO's 2d Rogs"). GEO's 2d Rogs state that "'you' . . . refers to Plaintiffs in this Lawsuit, and any agent or representative of Plaintiffs." It is unclear whether "Plaintiffs" in the first clause refers to the named Plaintiffs who appear in the caption of the lawsuit, or to members of the TVPA Class, which had been certified as of the date of GEO's 2d Rogs. The term "agent or representative" further confuses matters, as if does not specify whether it is intended to refer to attorneys or other agents, or to the TVPA Class representatives (i.e., the named Plaintiffs); to the extent that the term refers to the latter, it creates further ambiguity as to the meaning of the term "Plaintiffs" in the preceding clause, as it suggests that "any agent or representative of Plaintiffs" could refer to a distinct category from "Plaintiffs."

"scheme, plan, or pattern intended to cause" the members of the TVPA Class to believe that if they did not perform labor under GEO's HUSP, they would suffer serious harm and/or physical restraint.

2. While Plaintiff responds to this interrogatory below as it is drafted (subject to Objection 1), the response to this interrogatory should not be read in isolation from the responses to Interrogatory Nos. 41, 43, and 45 below. The TVPA prohibits persons from obtaining labor "by any one of, or *by any combination of*" the means referred to in each of these interrogatories.

Subject to these objections, Plaintiff Menocal responds to this interrogatory by incorporating his responses to GEO's Interrogatory Nos. 27 and 28, which were served on Defendant on January 19, 2018, and his declaration dated May 6, 2016 (ECF No. 49-2). Moreover, Plaintiff alleges that GEO communicated in the Detainee Handbook, Local Supplement, Bates No. PL000029-55, that he and other members of the TVPA Class could be subjected to discipline, including solitary confinement, for refusing to clean pursuant to the HUSP. *Id*. at PL000047, 53-55. GEO also communicated in an orientation video shown to detainees that they would be subject to discipline for failing to follow rules that included mandatory cleaning pursuant to the HUSP. *See* GEO_MEN00052387 at slides 2, 7.

**INTERROGATORY NO. 40 (Numbered 38 By GEO):**

Describe all tasks You completed as a result of the "force, threats of force, physical restraint, or threats of physical restraint" identified in response to Interrogatory Number [39].

**RESPONSE TO INTERROGATORY NO. 40:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39, Objections 1 and 2, and further object that the cleaning tasks described in

this response were completed as the result of a combination of the acts described in response to Interrogatory Nos. 39, 41, 43, and 45.

Subject to these objections, Plaintiff Menocal responds to this interrogatory by incorporating his responses to GEO's Interrogatory Nos. 29, 30, and 32, which were served on Defendant on January 19, 2018, and his declaration dated May 6, 2016 (ECF No. 49-2).

**INTERROGATORY NO. 41 (Numbered 39 By GEO):**

Describe all actions taken by GEO that You allege constitute "serious harm or threats of serious harm" under 18 U.S.C. § 1589(a)(2).

**RESPONSE TO INTERROGATORY NO. 41:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2). See Plaintiff's response to Interrogatory No. 39.

**INTERROGATORY NO. 42 (Numbered 40 By GEO):**

Describe all tasks You completed as a result of the "serious harm or threats of serious harm" identified in response to Interrogatory Number [41].

**RESPONSE TO INTERROGATORY NO. 42:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40. See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 43 (Numbered 41 By GEO):**

Describe all actions taken by GEO that You allege constitute "the abuse or threatened abuse of law or legal process" under 18 U.S.C. § 1589(a)(3).

**RESPONSE TO INTERROGATORY NO. 43:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Menocal responds to this interrogatory that GEO knowingly caused him to believe that disciplinary infractions, including refusal to comply with GEO's HUSP, could have adverse consequences in his immigration proceeding that was pending during his confinement at the Aurora facility.  *See* PL 000032-33

**INTERROGATORY NO. 44 (Numbered 42 By GEO):**

Describe all tasks You completed as a result of the "the abuse or threatened abuse of law or legal process" identified in response to Interrogatory Number [43].

**RESPONSE TO INTERROGATORY NO. 44:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40.  See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 45 (Numbered 43 By GEO):**

Describe all actions taken by GEO that You allege constitute "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint" under 18 U.S.C. § 1589(a)(4).

**RESPONSE TO INTERROGATORY NO. 45:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Menocal responds that, as described in response to Interrogatory Nos. 39-42, he alleges that GEO coerced him and members of the TVPA class to perform work through the HUSP using threats of discipline, including solitary confinement, and by subjecting detainees to discipline, including solitary confinement, for refusing to clean under the HUSP.  Specific instances of this scheme, plan, and pattern are identified in response to Interrogatory No. 39.

**INTERROGATORY NO. 46 (Numbered 44 By GEO):**

Describe all tasks You completed as a result of "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint" identified in response to Interrogatory Number [45].

**RESPONSE TO INTERROGATORY NO. 46:**

     Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40.  See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 47 (Numbered 45 By GEO):**

Identify the categories and amounts of damages You seek on Your 18 U.S.C. § 1589 claim and for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 47:**

     Plaintiff seeks compensatory damages based on the fair market value of the work he performed pursuant to GEO's HUSP.  *See* ECF No. 149 at 8.  For a specific estimate of the number of hours that Plaintiff worked under the HUSP, see Plaintiff's responses to GEO's Interrogatory Nos. 29, 30, and 32, which were served on Defendant on January 19, 2018. Plaintiff will seek a determination of fair market value based on GEO's records of days worked and types of work performed under the HUSP, at rates of pay and accounting for fringe benefits equivalent to what GEO would have paid for equivalent labor performed by GEO employees.  In addition, Plaintiff seeks punitive damages in an amount to be determined by the jury in this case, and attorneys' fees and costs in an amount to be determined by the Court, following Plaintiff's submission of a fee petition at the conclusion of this litigation.

**INTERROGATORY NO. 48 (Numbered 46 By GEO):**

Identify the categories and amounts of damages You seek on Your unjust enrichment claim and for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 48:**

Plaintiffs seeks restitution in the form of compensatory damages based on the fair market value of the work he performed pursuant to GEO's Voluntary Work Program ("VWP"), minus amounts that GEO paid him pursuant to the VWP.  *See* ECF No. 149 at 6-8.  For a specific estimate of the hours that Plaintiff worked under the VWP, see Plaintiff's response to GEO's Interrogatory No. 31, which was served on Defendant on January 19, 2018.  For janitorial positions, the methodology for calculating the fair market value of Plaintiff's labor is set forth in the Rule 26(a)(2) report of Jeffrey Edelstein.  For laundry positions, the methodology for calculating the fair market value of Plaintiff's labor is set forth in the Rule 26(a)(2) report of Matthew Alexander.  For all other VWP positions, fair market value will be based on GEO's records of days worked and types of work performed under the VWP, at rates of pay and accounting for fringe benefits equivalent to what GEO would have paid for equivalent labor performed by GEO employees

Plaintiff alternatively seeks restitution in the form of disgorgement of the portion of GEO's profits under the Aurora contract that are attributable to the benefit Plaintiff conferred upon GEO.  GEO's profits may be ascertained through GEO's profit and loss statements.  GEO's relative contribution to its profits under the Aurora contract may be ascertained through GEO's pricing spreadsheets, which show the cost to GEO of providing services to ICE through the Aurora contract.  Plaintiff's contribution to GEO's profits may be measured by the fair market value of his labor, which is determinable through the methods described above.  The relative

value of each party's contribution to GEO's profits will establish the percentage of GEO's

profits, during the period covered by Plaintiffs' unjust enrichment claims, which Plaintiff seeks

as restitution.

In addition, Plaintiff seeks exemplary damages in an amount to be determined by the jury

in this case.

**INTERROGATORY NO. 49 (Numbered 47 By GEO):**

For Your unjust enrichment claim, identify each and every benefit that You allege was conferred

upon GEO.

**RESPONSE TO INTERROGATORY NO. 49:**

Plaintiff objects that this interrogatory is vaguely worded in several respects. First, it

does not specify what source or sources of benefits it seeks to identify; Plaintiff presumes that

the interrogatory refers to benefits conferred by labor he performed. Moreover, Plaintiff infers

that this interrogatory is therefore intended to be confined to the three-year time period covered

by the unjust enrichment claim in this case. In addition to these ambiguities, the interrogatory's

use of the word "You" is ambiguous for the reasons explained in response to Interrogatory 39

above. Plaintiff further objects that the use of "each and every" is ambiguous, but appears to

seek an itemized list of every task Plaintiff completed over the course of a three-year period. To

the extent that this interrogatory seeks such a list, Plaintiff objects that this degree of specificity

is not required to prove Plaintiffs' unjust enrichment claim; the extent of the benefit conferred by

Plaintiffs will be proven through the means described in response to Interrogatory No. 51 below.

For a specific estimate of the hours that Plaintiff worked under the VWP, see Plaintiff's response to GEO's Interrogatory No. 31, which was served on Defendant on January 19, 2018.[3]

**INTERROGATORY NO. 50 (Numbered 48 By GEO):**

For each benefit identified in response to Interrogatory [49], identify and describe why it would be unjust for GEO to retain each such benefit without additional payment.

**RESPONSE TO INTERROGATORY NO. 50:**

Plaintiff incorporates the objections stated in response to Interrogatory No. 49 above.

Plaintiff responds that it would be unjust for GEO to retain the benefits identified in response to Interrogatory No. 49 because GEO obtained Plaintiff's labor under circumstances of detention that are inherently coercive, and which compromised class members' agency in deciding to work for unfair wages, and because public policy prohibits underpaid labor.

**INTERROGATORY NO. 51 (Numbered 49 By GEO):**

Set forth Your trial plan for this case including, but not limited to Your trial plan for the following issues:

    a.    Identification of those issues that will be resolved as common issues for all putative class members and how these issues will be resolved;

    b.    Identification of those issues that will be resolved on an individual basis for all putative class members (including, but not limited to, causation, injury, reliance, affirmative defenses and damages) and how these issues will be resolved;

    c.    Process for resolving Class Representative Claims including any limitations on the claims that Class Representatives can litigate;

    d.    Process for resolving Absent Class Member Claims including any limitations on the claims that Absent Class Members can litigate; and

---

[3]    For the method of measuring the value of this labor, Plaintiffs refer GEO to their response to Interrogatory No. 48.

     e.     Identification of the process that Plaintiffs propose be used for the calculation and distribution of any damages that may be awarded in this case to putative class members.

## RESPONSE TO INTERROGATORY NO. 51:

Plaintiffs object that this interrogatory is vague in its use of the term "trial plan," as it does not describe the proposed elements of such a plan or point to any rule describing or requiring such a plan. Plaintiffs further object that subparts c. and d. of this interrogatory are vague in their undefined distinction between "Class Representative Claims" and "Absent Class Member Claims." The claims in this case are identified in the Complaint, and are pled on behalf of the Classes pled in the Complaint and certified by the Court. As in all properly certified class litigation, the representative Plaintiffs' claims are typical of the claims of the Class. *See* ECF No. 57 (Class Certification Order) at 7-10. There is therefore no distinction between claims pursued in this litigation by the named Plaintiffs and the claims pursued by the absent Class Members.

Plaintiffs further object that subpart e. of this interrogatory is premature, as no verdict has been rendered and no damages awarded. The calculation of those damages will be decided by the Jury and the Court, and Plaintiffs will argue for the methodologies described in response to Interrogatories 47 and 48. To the extent that damages are awarded to the Plaintiff Class, the distribution of those damages will be a matter for the Court to decide. Depending on the extent and nature of the damages award, Plaintiffs will request that the funds be distributed through some combination of direct distribution to Class Members, fluid recovery, and/or distribution to a *cy pres* designee. *See generally* 4 Newberg on Class Actions § 12:27 (5th ed.) (describing methods of distributing damages in class actions)

With respect to subparts a. and b., Plaintiffs object that the interrogatory draws an erroneous distinction between "common issues" and "individual" issues. Plaintiffs respond as to subpart b. that there are no individual issues to be resolved through the trial in this action; that all issues tried to the Jury or the Court[4] will be tried on a classwide basis through common proof. Plaintiffs respond as to subpart a. as follows. The response below describes only those issues on which Plaintiffs bear the burden of proof. It is not Plaintiffs' responsibility to propose a plan for how GEO will prove its affirmative defenses at trial.

1.    Trafficking Victims Protection Act claims:

    a.    Whether GEO obtained the Class Members' labor.

        i.    This element will be proven through GEO's records, policies, and the testimony of its corporate officers, as well as the testimony of eyewitness detainees.

    b.    Whether GEO used a combination of force, threats of force, physical restraint, threats of physical restraint, serious harm, threats of serious harm, or a scheme or plan intended to cause the belief that the Class Members would suffer serious harm or physical restraint.

        i.    This element will be proven through GEO's policies and other documents, the testimony of its corporate officers, and the testimony of eyewitnesses. The nature of the harm caused by GEO's use of solitary confinement will be discussed through the expert testimony of Dr. Stuart Grassian.

---

[4]    Plaintiffs' responses herein are not intended to express any position as to which claims or questions should be put to the Jury as opposed to the Court.

c.    Whether GEO's acts described in part b. above caused the Class Members to provide labor to GEO.

    i.    This element will be proven through the testimony of eyewitnesses regarding the nature of detention in Aurora and the use of solitary confinement and threats thereof, as well as through the expert testimony of Dr. Stuart Grassian.

d.    Whether GEO committed the above acts knowingly.

    i.    This element will be proven through the testimony of GEO's corporate officers.

e.    Whether GEO's actions warrant the imposition of punitive damages.

    i.    This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

2.    Unjust Enrichment claim:

a.    Whether GEO received a benefit.

    i.    This element will be proven through GEO's records and policies, the testimony of its corporate officers, and the testimony of eyewitness detainees.  The extent of the benefit will be proven in part through the expert testimony of Jeffrey Edelstein and Matthew Alexander.

b.    Whether GEO received the benefit at Class Members' expense.

    i.    This element will be proven through the testimony of eyewitness detainees, as well as the testimony of GEO's corporate officers.

c.    Whether the circumstances would make retention of that benefit unjust.

    i.    This element will be proven through the testimony of eyewitness detainees, as well as through the expert testimony of Dr. Stuart Grassian.

d.    Whether GEO's actions warrant the remedy of disgorgement of GEO's profits.

    i.    This element will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

e.    The fair apportionment of GEO's profits under the Aurora contract, as a measure of damages pursuant to the remedy of disgorgement.

    i.    This element will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

f.    Whether and to what extent GEO's actions warrant the imposition of exemplary damages.

    i.    This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

Dated: May 8, 2020                    By:    _/s/ Michael J. Scimone_____
                                           Michael J. Scimone

                                   **OUTTEN & GOLDEN LLP**
                                   Michael J. Scimone
                                   685 Third Avenue, 25th Floor

New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-Mail: mscimone@outtengolden.com

Rachel Dempsey
Adam Koshkin
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: rdempsey@outtengolden.com
E-Mail: akoshkin@outtengolden.com

**TOWARDS JUSTICE**
Juno Turner
Alexander Hood
David Seligman
Brianne Power
1410 High St., Suite 300
Denver, CO 80218
(720) 441-2236
juno@towardsjustice.org
alex@towardsjustice.org
david@towardsjustice.org
brianne@towardsjustice.org

**LAW OFFICE OF R. ANDREW FREE**
R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

**MILSTEIN LAW OFFICE**
Brandt Milstein
595 Canyon Boulevard
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

**THE KELMAN BEUSCHER FIRM**
Andrew Turner
600 Grant St., Suite 450
Denver, CO 80203
(303) 333-7751

aturner@laborlawdenver.com

**MEYER LAW OFFICE, P.C.**
Hans Meyer
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*

DocuSign Envelope ID: 28BAD66D-D4ED-49A4-9BD0-899E7FF1B304

## VERIFICATION

I, Alejandro Menocal, verify subject to the penalty of perjury that the foregoing

SUPPLEMENTAL RESPONSES TO DEFENDANT THE GEO GROUP, INC.'S SIXTH SET

OF INTERROGATORIES are true and correct to the best of my knowledge and belief.

Dated: May ___, 2020                    By: _____

5/25/2020

Alejandro Menocal

DocuSign Envelope ID: 2D439FAB-34AE-4422-9DFA-2D0546143994

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

|  |  |
|---|---|
| ALEJANDRO MENOCAL, *et al.*,<br><br>           Plaintiffs,<br><br>    v.<br><br>THE GEO GROUP, INC.,<br><br>           Defendant. | No. 14 Civ. 2887 (JLK) |

**PLAINTIFF MARCOS BRAMBILA'S SUPPLEMENTAL RESPONSES TO
DEFENDANT THE GEO GROUP, INC.'S SIXTH[1] SET OF INTERROGATORIES**

Pursuant to Rules 33 of the Federal Rules of Civil Procedure and the Local Rules of the

District of Colorado, Plaintiff Marcos Brambila, by his attorneys, makes the following

supplemental response to Defendant's Sixth Set of Interrogatories, dated January 22, 2020.

**PRELIMINARY STATEMENT**

All responses to the following Interrogatories are based on information currently known

to Plaintiffs and are provided without prejudice to Plaintiffs' right to submit additional

information, should it become known.  Plaintiffs anticipate that as investigation and trial

preparation continue, it is possible that additional facts and witnesses may become known, which

may in turn warrant additions to or changes in the responses provided herein.  These responses

are made in a good faith effort to supply such information as is presently known to Plaintiffs.

---

[1]      The set of interrogatories to which this pleading responds was styled incorrectly as "GEO Group, Inc.'s Fourth Set of Interrogatories."  GEO's Fourth set of Interrogatories was served on November 14, 2019, and its Fifth set of Interrogatories was served on November 15, 2019.  The numbering of individual interrogatories is, accordingly, corrected herein, to reflect the fact that GEO has served a total of 37 interrogatories prior to serving the current set.

DocuSign Envelope ID: 2D439FAB-34AE-4422-9DFA-2D0546143994

These responses and objections are made without prejudice to, and are not a waiver of, Plaintiffs' right to rely on other facts or documents at trial.

Plaintiffs reserve all objections to the competence, relevance, materiality, or admissibility at trial of any information or documents requested or identified by any party. The inadvertent disclosure of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such information or any other information.

The production of information and/or documents pursuant to this response is made without waiving, or intending to waive, but on the contrary reserving and intending to reserve: (a) the right to object on any grounds to the use of documents or information produced pursuant to this response in this or any other action or proceeding; (b) the right to object on any and all grounds, at any time, to other requests for production or other discovery mechanisms or proceedings; and (c) the right at any time to revise, correct, or supplement this response.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 38 (Numbered 36 By GEO):**

Identify the source, amount, and terms of any third-party litigation financing used by Plaintiffs in this Lawsuit. For each source of financing, identify the contact information for each such source, whether individual or organization.

**RESPONSE TO INTERROGATORY NO. 38:**

Plaintiff objects that this interrogatory is irrelevant to the claims and defenses in this case, and is therefore beyond the scope of discovery. Disclosure of the information described in this interrogatory is not authorized or required by the Federal Rules of Civil Procedure. Moreover, this interrogatory is harassing insofar as the request for contact information appears intended to equip Defendant with the means to independently interfere, outside of this litigation, with

Plaintiff's access to funds that might support their claims for restitution for Defendant's violations of the law.

**INTERROGATORY NO. 39 (Numbered 37 By GEO):**

Describe all actions taken by GEO that You allege constitute "force, threats of force, physical restraint, or threats of physical restraint" under 18 U.S.C. § 1589(a)(1).

**RESPONSE TO INTERROGATORY NO. 39:**

Plaintiff objects to this interrogatory as follows:

1. This interrogatory is vague in its use of the term "You."[2]  First, this interrogatory does not specify sufficiently which acts it seeks to identify.  Plaintiffs respond to this interrogatory based on the understanding that it seeks acts that were directly experienced by the individual named Plaintiffs, based on GEO's representations.  Second, although GEO clarified in a conference on April 30, 2020 that this interrogatory sought individualized responses from each of the named Plaintiffs, this interrogatory is phrased in terms of Plaintiffs' allegations, which are not styled as individual claims, but rather as classwide claims and allegations that derive from GEO's policies and practices that were common to the TVPA Class.  Accordingly, Plaintiffs allege in this case that the individual acts which each of them experienced are part of a combination of acts which constitute a unified

---

[2]      This set of interrogatories purport to incorporate the definitions from GEO's Second Set of Interrogatories, served on November 8, 2017 ("GEO's 2d Rogs").  GEO's 2d Rogs state that "'you' . . . refers to Plaintiffs in this Lawsuit, and any agent or representative of Plaintiffs."  It is unclear whether "Plaintiffs" in the first clause refers to the named Plaintiffs who appear in the caption of the lawsuit, or to members of the TVPA Class, which had been certified as of the date of GEO's 2d Rogs.  The term "agent or representative" further confuses matters, as if does not specify whether it is intended to refer to attorneys or other agents, or to the TVPA Class representatives (i.e., the named Plaintiffs); to the extent that the term refers to the latter, it creates further ambiguity as to the meaning of the term "Plaintiffs" in the preceding clause, as it suggests that "any agent or representative of Plaintiffs" could refer to a distinct category from "Plaintiffs."

DocuSign Envelope ID: 2D439FAB-34AE-4422-9DFA-2D0546143994

"scheme, plan, or pattern intended to cause" the members of the TVPA Class to believe that if they did not perform labor under GEO's HUSP, they would suffer serious harm and/or physical restraint.

2. While Plaintiff responds to this interrogatory below as it is drafted (subject to Objection 1), the response to this interrogatory should not be read in isolation from the responses to Interrogatory Nos. 41, 43, and 45 below. The TVPA prohibits persons from obtaining labor "by any one of, or *by any combination of*" the means referred to in each of these interrogatories.

Subject to these objections, Plaintiff Brambila alleges that GEO communicated in the Detainee Handbook, Local Supplement, Bates No. PL000029-55, that he and other members of the TVPA Class could be subjected to discipline, including solitary confinement, for refusing to clean pursuant to the HUSP. *Id*. at PL000047, 53-55. GEO also communicated in an orientation video shown to detainees that they would be subject to discipline for failing to follow rules that included mandatory cleaning pursuant to the HUSP. *See* GEO_MEN00052387 at slides 2, 7.

**INTERROGATORY NO. 40 (Numbered 38 By GEO):**

Describe all tasks You completed as a result of the "force, threats of force, physical restraint, or threats of physical restraint" identified in response to Interrogatory Number [39].

**RESPONSE TO INTERROGATORY NO. 40:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39, Objections 1 and 2, and further objects that any cleaning tasks were completed as the result of a combination of the acts described in response to Interrogatory Nos. 39, 41, 43, and 45.

DocuSign Envelope ID: 2D439FAB-34AE-4422-9DFA-2D0546143994

Subject to these objections, Plaintiff Brambila does not recall what tasks he completed as a result of the "force, threats of force, physical restrain, or threats of physical restraint" identified in response to Interrogatory No. 39.

**INTERROGATORY NO. 41 (Numbered 39 By GEO):**

Describe all actions taken by GEO that You allege constitute "serious harm or threats of serious harm" under 18 U.S.C. § 1589(a)(2).

**RESPONSE TO INTERROGATORY NO. 41:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2). See Plaintiff's response to Interrogatory No. 39.

**INTERROGATORY NO. 42 (Numbered 40 By GEO):**

Describe all tasks You completed as a result of the "serious harm or threats of serious harm" identified in response to Interrogatory Number [41].

**RESPONSE TO INTERROGATORY NO. 42:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40. See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 43 (Numbered 41 By GEO):**

Describe all actions taken by GEO that You allege constitute "the abuse or threatened abuse of law or legal process" under 18 U.S.C. § 1589(a)(3).

**RESPONSE TO INTERROGATORY NO. 43:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Brambila responds to this interrogatory that GEO knowingly caused him to believe that disciplinary infractions, including refusal to comply with GEO's HUSP, could have

adverse consequences in his immigration proceeding that was pending during his confinement at the Aurora facility.

**INTERROGATORY NO. 44 (Numbered 42 By GEO):**

Describe all tasks You completed as a result of the "the abuse or threatened abuse of law or legal process" identified in response to Interrogatory Number [43].

**RESPONSE TO INTERROGATORY NO. 44:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40. See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 45 (Numbered 43 By GEO):**

Describe all actions taken by GEO that You allege constitute "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint" under 18 U.S.C. § 1589(a)(4).

**RESPONSE TO INTERROGATORY NO. 45:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Brambila responds that, as described in response to Interrogatory Nos. 39-42, he alleges that GEO coerced him and members of the TVPA class to perform work through the HUSP using threats of discipline, including solitary confinement, and by subjecting detainees to discipline, including solitary confinement, for refusing to clean under the HUSP.

**INTERROGATORY NO. 46 (Numbered 44 By GEO):**

Describe all tasks You completed as a result of "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or

another person would suffer serious harm or physical restraint" identified in response to
Interrogatory Number [45].

**RESPONSE TO INTERROGATORY NO. 46:**

Plaintiff objects to this interrogatory for the reasons described in response to
Interrogatory No. 40.  See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 47 (Numbered 45 By GEO):**

Identify the categories and amounts of damages You seek on Your 18 U.S.C. § 1589 claim and
for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 47:**

Plaintiff seeks compensatory damages based on the fair market value of the work he
performed pursuant to GEO's HUSP.  *See* ECF No. 149 at 8.  Plaintiff will seek a determination
of fair market value based on GEO's records of days worked and types of work performed under
the HUSP, at rates of pay and accounting for fringe benefits equivalent to what GEO would have
paid for equivalent labor performed by GEO employees.  In addition, Plaintiff seeks punitive
damages in an amount to be determined by the jury in this case, and attorneys' fees and costs in
an amount to be determined by the Court, following Plaintiff's submission of a fee petition at the
conclusion of this litigation.

**INTERROGATORY NO. 48 (Numbered 46 By GEO):**

Identify the categories and amounts of damages You seek on Your unjust enrichment claim and
for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 48:**

Plaintiff seeks restitution in the form of compensatory damages based on the fair market
value of the work he performed pursuant to GEO's Voluntary Work Program ("VWP"), minus

DocuSign Envelope ID: 2D439FAB-34AE-4422-9DFA-2D0546143994

amounts that GEO paid him pursuant to the VWP.  *See* ECF No. 149 at 6-8.  For janitorial

positions, the methodology for calculating the fair market value of Plaintiff's labor is set forth in

the Rule 26(a)(2) report of Jeffrey Edelstein.  For laundry positions, the methodology for

calculating the fair market value of Plaintiff's labor is set forth in the Rule 26(a)(2) report of

Matthew Alexander.  For all other VWP positions, fair market value will be based on GEO's

records of days worked and types of work performed under the VWP, at rates of pay and

accounting for fringe benefits equivalent to what GEO would have paid for equivalent labor

performed by GEO employees

Plaintiff alternatively seeks restitution in the form of disgorgement of the portion of

GEO's profits under the Aurora contract that are attributable to the benefit Plaintiff conferred

upon GEO.  GEO's profits may be ascertained through GEO's profit and loss statements.  GEO's

relative contribution to its profits under the Aurora contract may be ascertained through GEO's

pricing spreadsheets, which show the cost to GEO of providing services to ICE through the

Aurora contract.  Plaintiff's contribution to GEO's profits may be measured by the fair market

value of his labor, which is determinable through the methods described above.  The relative

value of each party's contribution to GEO's profits will establish the percentage of GEO's

profits, during the period covered by Plaintiffs' unjust enrichment claims, which Plaintiff seeks

as restitution.

In addition, Plaintiff seeks exemplary damages in an amount to be determined by the jury

in this case.

**INTERROGATORY NO. 49 (Numbered 47 By GEO):**

For Your unjust enrichment claim, identify each and every benefit that You allege was conferred

upon GEO.

**RESPONSE TO INTERROGATORY NO. 49**:

Plaintiff objects that this interrogatory is vaguely worded in several respects. First, it does not specify what source or sources of benefits it seeks to identify; Plaintiff presumes that the interrogatory refers to benefits conferred by labor he performed. Moreover, Plaintiff infers that this interrogatory is therefore intended to be confined to the three-year time period covered by the unjust enrichment claim in this case. In addition to these ambiguities, the interrogatory's use of the word "You" is ambiguous for the reasons explained in response to Interrogatory 39 above. Plaintiff further objects that the use of "each and every" is ambiguous, but appears to seek an itemized list of every task Plaintiff completed over the course of a three-year period. To the extent that this interrogatory seeks such a list, Plaintiff objects that this degree of specificity is not required to prove Plaintiffs' unjust enrichment claim; the extent of the benefit conferred by Plaintiffs will be proven through the means described in response to Interrogatory No. 51 below.

**INTERROGATORY NO. 50 (Numbered 48 By GEO)**:

For each benefit identified in response to Interrogatory [49], identify and describe why it would be unjust for GEO to retain each such benefit without additional payment.

**RESPONSE TO INTERROGATORY NO. 50**:

Plaintiff incorporates the objections stated in response to Interrogatory No. 49 above.

Plaintiff responds that it would be unjust for GEO to retain the benefits identified in response to Interrogatory No. 49 because GEO obtained Plaintiff's labor under circumstances of detention that are inherently coercive, and which compromised class members' agency in deciding to work for unfair wages, and because public policy prohibits underpaid labor.

DocuSign Envelope ID: 2D439FAB-34AE-4422-9DFA-2D0546143994

**INTERROGATORY NO. 51 (Numbered 49 By GEO)**:

Set forth Your trial plan for this case including, but not limited to Your trial plan for the

following issues:

      a.     Identification of those issues that will be resolved as common issues for all
putative class members and how these issues will be resolved;

      b.     Identification of those issues that will be resolved on an individual basis for all
putative class members (including, but not limited to, causation, injury, reliance,
affirmative defenses and damages) and how these issues will be resolved;

      c.     Process for resolving Class Representative Claims including any limitations on the
claims that Class Representatives can litigate;

      d.     Process for resolving Absent Class Member Claims including any limitations on
the claims that Absent Class Members can litigate; and

      e.     Identification of the process that Plaintiffs propose be used for the calculation and
distribution of any damages that may be awarded in this case to putative class
members.

**RESPONSE TO INTERROGATORY NO. 51:**

      Plaintiffs object that this interrogatory is vague in its use of the term "trial plan," as it

does not describe the proposed elements of such a plan or point to any rule describing or

requiring such a plan.  Plaintiffs further object that subparts c. and d. of this interrogatory are

vague in their undefined distinction between "Class Representative Claims" and "Absent Class

Member Claims."  The claims in this case are identified in the Complaint, and are pled on behalf

of the Classes pled in the Complaint and certified by the Court.  As in all properly certified class

litigation, the representative Plaintiffs' claims are typical of the claims of the Class.  *See* ECF

No. 57 (Class Certification Order) at 7-10.  There is therefore no distinction between claims

pursued in this litigation by the named Plaintiffs and the claims pursued by the absent Class

Members.

DocuSign Envelope ID: 2D439FAB-34AE-4422-9DFA-2D0546143994

Plaintiffs further object that subpart e. of this interrogatory is premature, as no verdict has been rendered and no damages awarded.  The calculation of those damages will be decided by the Jury and the Court, and Plaintiffs will argue for the methodologies described in response to Interrogatories 47 and 48.  To the extent that damages are awarded to the Plaintiff Class, the distribution of those damages will be a matter for the Court to decide.  Depending on the extent and nature of the damages award, Plaintiffs will request that the funds be distributed through some combination of direct distribution to Class Members, fluid recovery, and/or distribution to a *cy pres* designee.  *See generally* 4 Newberg on Class Actions § 12:27 (5th ed.) (describing methods of distributing damages in class actions)

With respect to subparts a. and b., Plaintiffs object that the interrogatory draws an erroneous distinction between "common issues" and "individual" issues.  Plaintiffs respond as to subpart b. that there are no individual issues to be resolved through the trial in this action; that all issues tried to the Jury or the Court[3] will be tried on a classwide basis through common proof.  Plaintiffs respond as to subpart a. as follows.  The response below describes only those issues on which Plaintiffs bear the burden of proof.  It is not Plaintiffs' responsibility to propose a plan for how GEO will prove its affirmative defenses at trial.

1.      Trafficking Victims Protection Act claims:

a.      Whether GEO obtained the Class Members' labor.

i.      This element will be proven through GEO's records, policies, and the testimony of its corporate officers, as well as the testimony of eyewitness detainees.

---

[3]      Plaintiffs' responses herein are not intended to express any position as to which claims or questions should be put to the Jury as opposed to the Court.

DocuSign Envelope ID: 2D439FAB-34AE-4422-9DFA-2D0546143994

b.    Whether GEO used a combination of force, threats of force, physical restraint, threats of physical restraint, serious harm, threats of serious harm, or a scheme or plan intended to cause the belief that the Class Members would suffer serious harm or physical restraint.

   i.    This element will be proven through GEO's policies and other documents, the testimony of its corporate officers, and the testimony of eyewitnesses. The nature of the harm caused by GEO's use of solitary confinement will be discussed through the expert testimony of Dr. Stuart Grassian.

c.    Whether GEO's acts described in part b. above caused the Class Members to provide labor to GEO.

   i.    This element will be proven through the testimony of eyewitnesses regarding the nature of detention in Aurora and the use of solitary confinement and threats thereof, as well as through the expert testimony of Dr. Stuart Grassian.

d.    Whether GEO committed the above acts knowingly.

   i.    This element will be proven through the testimony of GEO's corporate officers.

e.    Whether GEO's actions warrant the imposition of punitive damages.

   i.    This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

2.    Unjust Enrichment claim:

DocuSign Envelope ID: 2D439FAB-34AE-4422-9DFA-2D0546143994

a.    Whether GEO received a benefit.

   i.    This element will be proven through GEO's records and policies,
         the testimony of its corporate officers, and the testimony of
         eyewitness detainees.  The extent of the benefit will be proven in
         part through the expert testimony of Jeffrey Edelstein and Matthew
         Alexander.

b.    Whether GEO received the benefit at Class Members' expense.

   i.    This element will be proven through the testimony of eyewitness
         detainees, as well as the testimony of GEO's corporate officers.

c.    Whether the circumstances would make retention of that benefit unjust.

   i.    This element will be proven through the testimony of eyewitness
         detainees, as well as through the expert testimony of Dr. Stuart
         Grassian.

d.    Whether GEO's actions warrant the remedy of disgorgement of GEO's
      profits.

   i.    This element will be proven through the totality of the evidence
         described above, and directly through the testimony of GEO's
         corporate officers.

e.    The fair apportionment of GEO's profits under the Aurora contract, as a
      measure of damages pursuant to the remedy of disgorgement.

   i.    This element will be proven through the totality of the evidence
         described above, and directly through the testimony of GEO's
         corporate officers.

DocuSign Envelope ID: 2D439FAB-34AE-4422-9DFA-2D0546143994

  f. Whether and to what extent GEO's actions warrant the imposition of exemplary damages.

   i. This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

Dated: June 15, 2020    By: */s/ Michael J. Scimone*
             Michael J. Scimone

        **OUTTEN & GOLDEN LLP**
        Michael J. Scimone
        685 Third Avenue, 25th Floor
        New York, New York 10017
        Telephone: (212) 245-1000
        Facsimile: (646) 509-2060
        E-Mail: mscimone@outtengolden.com

        Rachel Dempsey
        Adam Koshkin
        One California Street, 12th Floor
        San Francisco, CA 94111
        Telephone: (415) 638-8800
        Facsimile: (415) 638-8810
        E-Mail: rdempsey@outtengolden.com
        E-Mail: akoshkin@outtengolden.com

        **TOWARDS JUSTICE**
        Juno Turner
        Alexander Hood
        David Seligman
        Brianne Power
        1410 High St., Suite 300
        Denver, CO 80218
        (720) 441-2236
        juno@towardsjustice.org
        alex@towardsjustice.org
        david@towardsjustice.org
        brianne@towardsjustice.org

        **LAW OFFICE OF R. ANDREW FREE**

DocuSign Envelope ID: 2D439FAB-34AE-4422-9DFA-2D0546143994

R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

**MILSTEIN LAW OFFICE**
Brandt Milstein
595 Canyon Boulevard
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

**THE KELMAN BEUSCHER FIRM**
Andrew Turner
600 Grant St., Suite 450
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com

**MEYER LAW OFFICE, P.C.**
Hans Meyer
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*

DocuSign Envelope ID: 2D439FAB-34AE-4422-9DFA-2D0546143994

# **VERIFICATION**

I, Marcos Brambila, verify subject to the penalty of perjury that the foregoing

SUPPLEMENTAL RESPONSES TO DEFENDANT THE GEO GROUP, INC.'S SIXTH SET

OF INTERROGATORIES are true and correct to the best of my knowledge and belief.

Dated: ___6/15/2020___    By: _____

Marcos Brambila

DocuSign Envelope ID: FD780E7B-FF01-4D04-A94D-20DD6EAC0B5E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| ALEJANDRO MENOCAL, *et al.*,<br><br>               Plaintiffs,<br><br>    v.<br><br>THE GEO GROUP, INC.,<br><br>               Defendant. | No. 14 Civ. 2887 (JLK) |

## PLAINTIFF GRISEL XAHUENTITLA'S SUPPLEMENTAL RESPONSES TO DEFENDANT THE GEO GROUP, INC.'S SIXTH[1] SET OF INTERROGATORIES

Pursuant to Rules 33 of the Federal Rules of Civil Procedure and the Local Rules of the District of Colorado, Plaintiff Grisel Xahuentitla, by her attorneys, makes the following supplemental response to Defendant's Sixth Set of Interrogatories, dated January 22, 2020.

## PRELIMINARY STATEMENT

All responses to the following Interrogatories are based on information currently known to Plaintiffs and are provided without prejudice to Plaintiffs' right to submit additional information, should it become known. Plaintiffs anticipate that as investigation and trial preparation continue, it is possible that additional facts and witnesses may become known, which may in turn warrant additions to or changes in the responses provided herein. These responses are made in a good faith effort to supply such information as is presently known to Plaintiffs.

---

[1] The set of interrogatories to which this pleading responds was styled incorrectly as "GEO Group, Inc.'s Fourth Set of Interrogatories." GEO's Fourth set of Interrogatories was served on November 14, 2019, and its Fifth set of Interrogatories was served on November 15, 2019. The numbering of individual interrogatories is, accordingly, corrected herein, to reflect the fact that GEO has served a total of 37 interrogatories prior to serving the current set.

DocuSign Envelope ID: FD780E7B-FF01-4D04-A94D-20DD6EAC0B5E

These responses and objections are made without prejudice to, and are not a waiver of, Plaintiffs' right to rely on other facts or documents at trial.

Plaintiffs reserve all objections to the competence, relevance, materiality, or admissibility at trial of any information or documents requested or identified by any party. The inadvertent disclosure of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such information or any other information.

The production of information and/or documents pursuant to this response is made without waiving, or intending to waive, but on the contrary reserving and intending to reserve: (a) the right to object on any grounds to the use of documents or information produced pursuant to this response in this or any other action or proceeding; (b) the right to object on any and all grounds, at any time, to other requests for production or other discovery mechanisms or proceedings; and (c) the right at any time to revise, correct, or supplement this response.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 38 (Numbered 36 By GEO):**

Identify the source, amount, and terms of any third-party litigation financing used by Plaintiffs in this Lawsuit. For each source of financing, identify the contact information for each such source, whether individual or organization.

**RESPONSE TO INTERROGATORY NO. 38:**

Plaintiff objects that this interrogatory is irrelevant to the claims and defenses in this case, and is therefore beyond the scope of discovery. Disclosure of the information described in this interrogatory is not authorized or required by the Federal Rules of Civil Procedure. Moreover, this interrogatory is harassing insofar as the request for contact information appears intended to equip Defendant with the means to independently interfere, outside of this litigation, with

DocuSign Envelope ID: FD780E7B-FF01-4D04-A94D-20DD6EAC0B5E

Plaintiff's access to funds that might support their claims for restitution for Defendant's violations of the law.

**INTERROGATORY NO. 39 (Numbered 37 By GEO):**

Describe all actions taken by GEO that You allege constitute "force, threats of force, physical restraint, or threats of physical restraint" under 18 U.S.C. § 1589(a)(1).

**RESPONSE TO INTERROGATORY NO. 39:**

Plaintiff objects to this interrogatory as follows:

1. This interrogatory is vague in its use of the term "You."[2] First, this interrogatory does not specify sufficiently which acts it seeks to identify. Plaintiffs respond to this interrogatory based on the understanding that it seeks acts that were directly experienced by the individual named Plaintiffs, based on GEO's representations. Second, although GEO clarified in a conference on April 30, 2020 that this interrogatory sought individualized responses from each of the named Plaintiffs, this interrogatory is phrased in terms of Plaintiffs' allegations, which are not styled as individual claims, but rather as classwide claims and allegations that derive from GEO's policies and practices that were common to the TVPA Class. Accordingly, Plaintiffs allege in this case that the individual acts which each of them experienced are part of a combination of acts which constitute a unified

---

[2]    This set of interrogatories purport to incorporate the definitions from GEO's Second Set of Interrogatories, served on November 8, 2017 ("GEO's 2d Rogs"). GEO's 2d Rogs state that "'you' . . . refers to Plaintiffs in this Lawsuit, and any agent or representative of Plaintiffs." It is unclear whether "Plaintiffs" in the first clause refers to the named Plaintiffs who appear in the caption of the lawsuit, or to members of the TVPA Class, which had been certified as of the date of GEO's 2d Rogs. The term "agent or representative" further confuses matters, as it does not specify whether it is intended to refer to attorneys or other agents, or to the TVPA Class representatives (i.e., the named Plaintiffs); to the extent that the term refers to the latter, it creates further ambiguity as to the meaning of the term "Plaintiffs" in the preceding clause, as it suggests that "any agent or representative of Plaintiffs" could refer to a distinct category from "Plaintiffs."

DocuSign Envelope ID: FD780E7B-FF01-4D04-A94D-20DD6EAC0B5E

"scheme, plan, or pattern intended to cause" the members of the TVPA Class to believe that if they did not perform labor under GEO's HUSP, they would suffer serious harm and/or physical restraint.

2. While Plaintiff responds to this interrogatory below as it is drafted (subject to Objection 1), the response to this interrogatory should not be read in isolation from the responses to Interrogatory Nos. 41, 43, and 45 below. The TVPA prohibits persons from obtaining labor "by any one of, or *by any combination of*" the means referred to in each of these interrogatories.

Subject to these objections, Plaintiff Xahuentitla responds to this interrogatory by incorporating her responses to GEO's Interrogatory Nos. 27 and 28, which were served on Defendant on January 22, 2018, and her declaration dated May 6, 2016 (ECF No. 49-3). Moreover, Plaintiff alleges that GEO communicated in the Detainee Handbook, Local Supplement, Bates No. PL000029-55, that she and other members of the TVPA Class could be subjected to discipline, including solitary confinement, for refusing to clean pursuant to the HUSP. *Id*. at PL000047, 53-55. GEO also communicated in an orientation video shown to detainees that they would be subject to discipline for failing to follow rules that included mandatory cleaning pursuant to the HUSP. *See* GEO_MEN00052387 at slides 2, 7. Plaintiff further responds that on one occasion she and other detainees offered to clean in place of a detainee who was ill. A detention officer told Plaintiff and the other detainees to return to their cells and that the ill detainee would be sent to solitary confinement if she did not clean. Plaintiff does not remember exactly when this incident occurred or the name of the detention officer or other detainees involved.

DocuSign Envelope ID: FD780E7B-FF01-4D04-A94A-20DD6EAC0B5E

**INTERROGATORY NO. 40 (Numbered 38 By GEO):**

Describe all tasks You completed as a result of the "force, threats of force, physical restraint, or threats of physical restraint" identified in response to Interrogatory Number [39].

**RESPONSE TO INTERROGATORY NO. 40:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39, Objections 1 and 2, and further objects that the cleaning tasks described in this response were completed as the result of a combination of the acts described in response to Interrogatory Nos. 39, 41, 43, and 45.

Subject to these objections, Plaintiff Xahuentitla responds to this interrogatory by incorporating her responses to GEO's Interrogatory Nos. 29, 30, and 32, which were served on Defendant on January 22, 2018, and her declaration dated May 6, 2016 (ECF No. 49-3).

**INTERROGATORY NO. 41 (Numbered 39 By GEO):**

Describe all actions taken by GEO that You allege constitute "serious harm or threats of serious harm" under 18 U.S.C. § 1589(a)(2).

**RESPONSE TO INTERROGATORY NO. 41:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2). See Plaintiff's response to Interrogatory No. 39.

**INTERROGATORY NO. 42 (Numbered 40 By GEO):**

Describe all tasks You completed as a result of the "serious harm or threats of serious harm" identified in response to Interrogatory Number [41].

**RESPONSE TO INTERROGATORY NO. 42:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40. See Plaintiff's response to Interrogatory No. 40.

DocuSign Envelope ID: FD780E7B-FF01-4D04-A94D-20DD6EAC0B5E

**INTERROGATORY NO. 43 (Numbered 41 By GEO):**

Describe all actions taken by GEO that You allege constitute "the abuse or threatened abuse of law or legal process" under 18 U.S.C. § 1589(a)(3).

**RESPONSE TO INTERROGATORY NO. 43:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Xahuentitla responds to this interrogatory that GEO knowingly caused her to believe that disciplinary infractions, including refusal to comply with GEO's HUSP, could have adverse consequences in her immigration proceeding that was pending during her confinement at the Aurora facility.

**INTERROGATORY NO. 44 (Numbered 42 By GEO):**

Describe all tasks You completed as a result of the "the abuse or threatened abuse of law or legal process" identified in response to Interrogatory Number [43].

**RESPONSE TO INTERROGATORY NO. 44:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40.  See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 45 (Numbered 43 By GEO):**

Describe all actions taken by GEO that You allege constitute "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint" under 18 U.S.C. § 1589(a)(4).

**RESPONSE TO INTERROGATORY NO. 45:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Xahuentitla responds that, as described in response to Interrogatory Nos. 39-42, she alleges that GEO coerced her and members of the TVPA class to perform work through the HUSP using threats of discipline, including solitary confinement, and by subjecting detainees to discipline, including solitary confinement, for refusing to clean under the HUSP. Specific instances of this scheme, plan, and pattern are identified in response to Interrogatory No. 39.

**INTERROGATORY NO. 46 (Numbered 44 By GEO):**

Describe all tasks You completed as a result of "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint" identified in response to Interrogatory Number [45].

**RESPONSE TO INTERROGATORY NO. 46:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40. See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 47 (Numbered 45 By GEO):**

Identify the categories and amounts of damages You seek on Your 18 U.S.C. § 1589 claim and for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 47:**

Plaintiff seeks compensatory damages based on the fair market value of the work she performed pursuant to GEO's HUSP. *See* ECF No. 149 at 8. For a specific estimate of the number of hours that Plaintiff worked under the HUSP, see Plaintiff's responses to GEO's

DocuSign Envelope ID: FD780E7B-FF01-4D04-A94D-20DD6EAC0B5E

Interrogatory Nos. 29, 30, and 32, which were served on Defendant on January 22, 2018.

Plaintiff will seek a determination of fair market value based on GEO's records of days worked

and types of work performed under the HUSP, at rates of pay and accounting for fringe benefits

equivalent to what GEO would have paid for equivalent labor performed by GEO employees. In

addition, Plaintiff seeks punitive damages in an amount to be determined by the jury in this case,

and attorneys' fees and costs in an amount to be determined by the Court, following Plaintiff's

submission of a fee petition at the conclusion of this litigation.

**INTERROGATORY NO. 48 (Numbered 46 By GEO):**

Identify the categories and amounts of damages You seek on Your unjust enrichment claim and

for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 48:**

Plaintiff seeks restitution in the form of compensatory damages based on the fair market

value of the work she performed pursuant to GEO's Voluntary Work Program ("VWP"), minus

amounts that GEO paid her pursuant to the VWP. *See* ECF No. 149 at 6-8. For a specific

estimate of the hours that Plaintiff worked under the VWP, see Plaintiff's response to GEO's

Interrogatory No. 31, which was served on Defendant on January 22, 2018. For janitorial

positions, the methodology for calculating the fair market value of Plaintiff's labor is set forth in

the Rule 26(a)(2) report of Jeffrey Edelstein. For laundry positions, the methodology for

calculating the fair market value of Plaintiff's labor is set forth in the Rule 26(a)(2) report of

Matthew Alexander. For all other VWP positions, fair market value will be based on GEO's

records of days worked and types of work performed under the VWP, at rates of pay and

accounting for fringe benefits equivalent to what GEO would have paid for equivalent labor

performed by GEO employees

DocuSign Envelope ID: FD780E7B-FF01-4D04-A94D-20DD6EAC0B5E

Plaintiff alternatively seeks restitution in the form of disgorgement of the portion of GEO's profits under the Aurora contract that are attributable to the benefit Plaintiff conferred upon GEO.  GEO's profits may be ascertained through GEO's profit and loss statements.  GEO's relative contribution to its profits under the Aurora contract may be ascertained through GEO's pricing spreadsheets, which show the cost to GEO of providing services to ICE through the Aurora contract.  Plaintiff's contribution to GEO's profits may be measured by the fair market value of her labor, which is determinable through the methods described above.  The relative value of each party's contribution to GEO's profits will establish the percentage of GEO's profits, during the period covered by Plaintiffs' unjust enrichment claims, which Plaintiff seeks as restitution.

In addition, Plaintiff seeks exemplary damages in an amount to be determined by the jury in this case.

**INTERROGATORY NO. 49 (Numbered 47 By GEO):**

For Your unjust enrichment claim, identify each and every benefit that You allege was conferred upon GEO.

**RESPONSE TO INTERROGATORY NO. 49:**

Plaintiff objects that this interrogatory is vaguely worded in several respects.  First, it does not specify what source or sources of benefits it seeks to identify; Plaintiff presumes that the interrogatory refers to benefits conferred by labor she performed.  Moreover, Plaintiff infers that this interrogatory is therefore intended to be confined to the three-year time period covered by the unjust enrichment claim in this case.  In addition to these ambiguities, the interrogatory's use of the word "You" is ambiguous for the reasons explained in response to Interrogatory 39 above.  Plaintiff further objects that the use of "each and every" is ambiguous, but appears to

DocuSign Envelope ID: FD780E7B-FF01-4D04-A94D-20DD6EAC0B5E

seek an itemized list of every task Plaintiff completed over the course of a three-year period. To

the extent that this interrogatory seeks such a list, Plaintiff objects that this degree of specificity

is not required to prove Plaintiffs' unjust enrichment claim; the extent of the benefit conferred by

Plaintiffs will be proven through the means described in response to Interrogatory No. 51 below.

For a specific estimate of the hours that Plaintiff worked under the VWP, see Plaintiff's

response to GEO's Interrogatory No. 31, which was served on Defendant on January 22, 2018.[3]

**INTERROGATORY NO. 50 (Numbered 48 By GEO):**

For each benefit identified in response to Interrogatory [49], identify and describe why it would

be unjust for GEO to retain each such benefit without additional payment.

**RESPONSE TO INTERROGATORY NO. 50:**

Plaintiff incorporates the objections stated in response to Interrogatory No. 49 above.

Plaintiff responds that it would be unjust for GEO to retain the benefits identified in

response to Interrogatory No. 49 because GEO obtained Plaintiff's labor under circumstances of

detention that are inherently coercive, and which compromised class members' agency in

deciding to work for unfair wages, and because public policy prohibits underpaid labor.

**INTERROGATORY NO. 51 (Numbered 49 By GEO):**

Set forth Your trial plan for this case including, but not limited to Your trial plan for the

following issues:

   a.   Identification of those issues that will be resolved as common issues for all
        putative class members and how these issues will be resolved;

   b.   Identification of those issues that will be resolved on an individual basis for all
        putative class members (including, but not limited to, causation, injury, reliance,
        affirmative defenses and damages) and how these issues will be resolved;

---

[3]     For the method of measuring the value of this labor, Plaintiff refers GEO to her response
to Interrogatory No. 48.

c.    Process for resolving Class Representative Claims including any limitations on the claims that Class Representatives can litigate;

d.    Process for resolving Absent Class Member Claims including any limitations on the claims that Absent Class Members can litigate; and

e.    Identification of the process that Plaintiffs propose be used for the calculation and distribution of any damages that may be awarded in this case to putative class members.

**RESPONSE TO INTERROGATORY NO. 51:**

Plaintiffs object that this interrogatory is vague in its use of the term "trial plan," as it does not describe the proposed elements of such a plan or point to any rule describing or requiring such a plan.  Plaintiffs further object that subparts c. and d. of this interrogatory are vague in their undefined distinction between "Class Representative Claims" and "Absent Class Member Claims."  The claims in this case are identified in the Complaint, and are pled on behalf of the Classes pled in the Complaint and certified by the Court.  As in all properly certified class litigation, the representative Plaintiffs' claims are typical of the claims of the Class.  *See* ECF No. 57 (Class Certification Order) at 7-10.  There is therefore no distinction between claims pursued in this litigation by the named Plaintiffs and the claims pursued by the absent Class Members.

Plaintiffs further object that subpart e. of this interrogatory is premature, as no verdict has been rendered and no damages awarded.  The calculation of those damages will be decided by the Jury and the Court, and Plaintiffs will argue for the methodologies described in response to Interrogatories 47 and 48.  To the extent that damages are awarded to the Plaintiff Class, the distribution of those damages will be a matter for the Court to decide.  Depending on the extent and nature of the damages award, Plaintiffs will request that the funds be distributed through some combination of direct distribution to Class Members, fluid recovery, and/or distribution to

DocuSign Envelope ID: FD780E7B-FF01-4D04-A94D-20DD6EAC0B5E

a *cy pres* designee.  *See generally* 4 Newberg on Class Actions § 12:27 (5th ed.) (describing methods of distributing damages in class actions)

With respect to subparts a. and b., Plaintiffs object that the interrogatory draws an erroneous distinction between "common issues" and "individual" issues.  Plaintiffs respond as to subpart b. that there are no individual issues to be resolved through the trial in this action; that all issues tried to the Jury or the Court[4] will be tried on a classwide basis through common proof.  Plaintiffs respond as to subpart a. as follows.  The response below describes only those issues on which Plaintiffs bear the burden of proof.  It is not Plaintiffs' responsibility to propose a plan for how GEO will prove its affirmative defenses at trial.

1.    Trafficking Victims Protection Act claims:

    a.    Whether GEO obtained the Class Members' labor.

        i.    This element will be proven through GEO's records, policies, and the testimony of its corporate officers, as well as the testimony of eyewitness detainees.

    b.    Whether GEO used a combination of force, threats of force, physical restraint, threats of physical restraint, serious harm, threats of serious harm, or a scheme or plan intended to cause the belief that the Class Members would suffer serious harm or physical restraint.

        i.    This element will be proven through GEO's policies and other documents, the testimony of its corporate officers, and the testimony of eyewitnesses.  The nature of the harm caused by

---

[4]    Plaintiffs' responses herein are not intended to express any position as to which claims or questions should be put to the Jury as opposed to the Court.

DocuSign Envelope ID: FD780E7B-FF01-4D04-A94D-20DD6EAC0B5E

GEO's use of solitary confinement will be discussed through the expert testimony of Dr. Stuart Grassian.

c.  Whether GEO's acts described in part b. above caused the Class Members to provide labor to GEO.

   i.  This element will be proven through the testimony of eyewitnesses regarding the nature of detention in Aurora and the use of solitary confinement and threats thereof, as well as through the expert testimony of Dr. Stuart Grassian.

d.  Whether GEO committed the above acts knowingly.

   i.  This element will be proven through the testimony of GEO's corporate officers.

e.  Whether GEO's actions warrant the imposition of punitive damages.

   i.  This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

2.  Unjust Enrichment claim:

a.  Whether GEO received a benefit.

   i.  This element will be proven through GEO's records and policies, the testimony of its corporate officers, and the testimony of eyewitness detainees.  The extent of the benefit will be proven in part through the expert testimony of Jeffrey Edelstein and Matthew Alexander.

b.  Whether GEO received the benefit at Class Members' expense.

      i.      This element will be proven through the testimony of eyewitness detainees, as well as the testimony of GEO's corporate officers.

c.      Whether the circumstances would make retention of that benefit unjust.

      i.      This element will be proven through the testimony of eyewitness detainees, as well as through the expert testimony of Dr. Stuart Grassian.

d.      Whether GEO's actions warrant the remedy of disgorgement of GEO's profits.

      i.      This element will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

e.      The fair apportionment of GEO's profits under the Aurora contract, as a measure of damages pursuant to the remedy of disgorgement.

      i.      This element will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

f.      Whether and to what extent GEO's actions warrant the imposition of exemplary damages.

      i.      This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

Dated: May 26, 2020           By:   */s/ Michael J. Scimone*
                                 Michael J. Scimone

DocuSign Envelope ID: FD780E7B-FF01-4D04-A94D-20DD6EAC0B5E

**OUTTEN & GOLDEN LLP**
Michael J. Scimone
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-Mail: mscimone@outtengolden.com

Rachel Dempsey
Adam Koshkin
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: rdempsey@outtengolden.com
E-Mail: akoshkin@outtengolden.com

**TOWARDS JUSTICE**
Juno Turner
Alexander Hood
David Seligman
Brianne Power
1410 High St., Suite 300
Denver, CO 80218
(720) 441-2236
juno@towardsjustice.org
alex@towardsjustice.org
david@towardsjustice.org
brianne@towardsjustice.org

**LAW OFFICE OF R. ANDREW FREE**
R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

**MILSTEIN LAW OFFICE**
Brandt Milstein
595 Canyon Boulevard
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

**THE KELMAN BEUSCHER FIRM**

DocuSign Envelope ID: FD780E7B-FF01-4D04-A94D-20DD6EAC0B5E

Andrew Turner
600 Grant St., Suite 450
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com


**MEYER LAW OFFICE, P.C.**
Hans Meyer
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*

DocuSign Envelope ID: FD780E7B-FF01-4D04-A94D-20DD6EAC0B5E

**VERIFICATION**

I, Grisel Xahuentitla, verify subject to the penalty of perjury that the foregoing

SUPPLEMENTAL RESPONSES TO DEFENDANT THE GEO GROUP, INC.'S SIXTH SET

OF INTERROGATORIES are true and correct to the best of my knowledge and belief.


Dated: 5/29/2020 ____, 2020          By: _____

                                          DocuSigned by:

                                          A009AA66D34A408...

                                          Grisel Xahuentitla

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

---

ALEJANDRO MENOCAL, *et al.*,

               Plaintiffs,

    v.

THE GEO GROUP, INC.,

               Defendant.

No. 14 Civ. 2887 (JLK)

---

**PLAINTIFF HUGO HERNANDEZ'S SUPPLEMENTAL RESPONSES TO DEFENDANT
THE GEO GROUP, INC.'S SIXTH[1] SET OF INTERROGATORIES**

Pursuant to Rules 33 of the Federal Rules of Civil Procedure and the Local Rules of the

District of Colorado, Plaintiff Hugo Hernandez, by his attorneys, makes the following

supplemental response to Defendant's Sixth Set of Interrogatories, dated March 6, 2020.

**PRELIMINARY STATEMENT**

All responses to the following Interrogatories are based on information currently known

to Plaintiffs and are provided without prejudice to Plaintiffs' right to submit additional

information, should it become known.  Plaintiffs anticipate that as investigation and trial

preparation continue, it is possible that additional facts and witnesses may become known, which

may in turn warrant additions to or changes in the responses provided herein.  These responses

are made in a good faith effort to supply such information as is presently known to Plaintiffs.

---

[1]      The set of interrogatories to which this pleading responds was styled incorrectly as "GEO Group, Inc.'s Fourth Set of Interrogatories."  GEO's Fourth set of Interrogatories was served on November 14, 2019, and its Fifth set of Interrogatories was served on November 15, 2019.  The numbering of individual interrogatories is, accordingly, corrected herein, to reflect the fact that GEO has served a total of 37 interrogatories prior to serving the current set.

These responses and objections are made without prejudice to, and are not a waiver of, Plaintiffs' right to rely on other facts or documents at trial.

Plaintiffs reserve all objections to the competence, relevance, materiality, or admissibility at trial of any information or documents requested or identified by any party. The inadvertent disclosure of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such information or any other information.

The production of information and/or documents pursuant to this response is made without waiving, or intending to waive, but on the contrary reserving and intending to reserve: (a) the right to object on any grounds to the use of documents or information produced pursuant to this response in this or any other action or proceeding; (b) the right to object on any and all grounds, at any time, to other requests for production or other discovery mechanisms or proceedings; and (c) the right at any time to revise, correct, or supplement this response.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 38 (Numbered 36 By GEO):**

Identify the source, amount, and terms of any third-party litigation financing used by Plaintiffs in this Lawsuit. For each source of financing, identify the contact information for each such source, whether individual or organization.

**RESPONSE TO INTERROGATORY NO. 38:**

Plaintiff objects that this interrogatory is irrelevant to the claims and defenses in this case, and is therefore beyond the scope of discovery. Disclosure of the information described in this interrogatory is not authorized or required by the Federal Rules of Civil Procedure. Moreover, this interrogatory is harassing insofar as the request for contact information appears intended to equip Defendant with the means to independently interfere, outside of this litigation, with

Plaintiff's access to funds that might support their claims for restitution for Defendant's violations of the law.

**INTERROGATORY NO. 39 (Numbered 37 By GEO):**

Describe all actions taken by GEO that You allege constitute "force, threats of force, physical restraint, or threats of physical restraint" under 18 U.S.C. § 1589(a)(1).

**RESPONSE TO INTERROGATORY NO. 39:**

Plaintiff objects to this interrogatory as follows:

1. This interrogatory is vague in its use of the term "You."[2] First, this interrogatory does not specify sufficiently which acts it seeks to identify. Plaintiffs respond to this interrogatory based on the understanding that it seeks acts that were directly experienced by the individual named Plaintiffs, based on GEO's representations. Second, although GEO clarified in a conference on April 30, 2020 that this interrogatory sought individualized responses from each of the named Plaintiffs, this interrogatory is phrased in terms of Plaintiffs' allegations, which are not styled as individual claims, but rather as classwide claims and allegations that derive from GEO's policies and practices that were common to the TVPA Class. Accordingly, Plaintiffs allege in this case that the individual acts which each of them experienced are part of a combination of acts which constitute a unified

---

[2]       This set of interrogatories purport to incorporate the definitions from GEO's Second Set of Interrogatories, served on November 8, 2017 ("GEO's 2d Rogs"). GEO's 2d Rogs state that "'you' . . . refers to Plaintiffs in this Lawsuit, and any agent or representative of Plaintiffs." It is unclear whether "Plaintiffs" in the first clause refers to the named Plaintiffs who appear in the caption of the lawsuit, or to members of the TVPA Class, which had been certified as of the date of GEO's 2d Rogs. The term "agent or representative" further confuses matters, as it does not specify whether it is intended to refer to attorneys or other agents, or to the TVPA Class representatives (i.e., the named Plaintiffs); to the extent that the term refers to the latter, it creates further ambiguity as to the meaning of the term "Plaintiffs" in the preceding clause, as it suggests that "any agent or representative of Plaintiffs" could refer to a distinct category from "Plaintiffs."

"scheme, plan, or pattern intended to cause" the members of the TVPA Class to believe

that if they did not perform labor under GEO's HUSP, they would suffer serious harm

and/or physical restraint.

2.  While Plaintiff responds to this interrogatory below as it is drafted (subject to Objection

1), the response to this interrogatory should not be read in isolation from the responses to

Interrogatory Nos. 41, 43, and 45 below.  The TVPA prohibits persons from obtaining

labor "by any one of, or *by any combination of*" the means referred to in each of these

interrogatories.

Subject to these objections, Plaintiff Hernandez responds to this interrogatory by

incorporating his responses to GEO's Interrogatory Nos. 27 and 28, which were served on

Defendant on February 5, 2018, and his declaration dated May 6, 2016 (ECF No. 49-8).

Moreover, Plaintiff alleges that GEO communicated in the Detainee Handbook, Local

Supplement, Bates No. PL000029-55, that he and other members of the TVPA Class could be

subjected to discipline, including solitary confinement, for refusing to clean pursuant to the

HUSP.  *Id*. at PL000047, 53-55.  GEO also communicated in an orientation video shown to

detainees that they would be subject to discipline for failing to follow rules that included

mandatory cleaning pursuant to the HUSP.  *See* GEO_MEN00052387 at slides 2, 7.

Additionally, approximately a month into his time at the Aurora facility, a sergeant

convened all of the detainees in Plaintiff Hernandez's pod and explained that failure to clean

under the HUSP and other disciplinary infractions would result in solitary confinement.

**INTERROGATORY NO. 40 (Numbered 38 By GEO):**

Describe all tasks You completed as a result of the "force, threats of force, physical restraint, or

threats of physical restraint" identified in response to Interrogatory Number [39].

**RESPONSE TO INTERROGATORY NO. 40:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39, Objections 1 and 2, and further object that the cleaning tasks described in this response were completed as the result of a combination of the acts described in response to Interrogatory Nos. 39, 41, 43, and 45.

Subject to these objections, Plaintiff Hernandez responds to this interrogatory by incorporating his responses to GEO's Interrogatory Nos. 29, 30, and 32, which were served on Defendant on February 5, 2018, and his declaration dated May 6, 2016 (ECF No. 49-8).

**INTERROGATORY NO. 41 (Numbered 39 By GEO):**

Describe all actions taken by GEO that You allege constitute "serious harm or threats of serious harm" under 18 U.S.C. § 1589(a)(2).

**RESPONSE TO INTERROGATORY NO. 41:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2). See Plaintiff's response to Interrogatory No. 39.

**INTERROGATORY NO. 42 (Numbered 40 By GEO):**

Describe all tasks You completed as a result of the "serious harm or threats of serious harm" identified in response to Interrogatory Number [41].

**RESPONSE TO INTERROGATORY NO. 42:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40. See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 43 (Numbered 41 By GEO):**

Describe all actions taken by GEO that You allege constitute "the abuse or threatened abuse of law or legal process" under 18 U.S.C. § 1589(a)(3).

**RESPONSE TO INTERROGATORY NO. 43:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Hernandez responds to this interrogatory that GEO knowingly caused him to believe that disciplinary infractions, including refusal to comply with GEO's HUSP, could have adverse consequences in his immigration proceeding that was pending during his confinement at the Aurora facility. Approximately a month into his time at the Aurora facility, a sergeant convened all of the detainees in Plaintiff Hernandez's pod and explained that failure to clean under the HUSP and other disciplinary infractions could result in solitary confinement and that if GEO had to send them to "the hole," it would make sure that the paperwork found its way to the Immigration Judge adjudicating their applications for immigration relief. The guard further told them that if the judge saw that the detainees had engaged in misconduct at Aurora, he would be less likely to allow them to remain in the United States and would be more likely to deport them.

**INTERROGATORY NO. 44 (Numbered 42 By GEO):**

Describe all tasks You completed as a result of the "the abuse or threatened abuse of law or legal process" identified in response to Interrogatory Number [43].

**RESPONSE TO INTERROGATORY NO. 44:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40. See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 45 (Numbered 43 By GEO):**

Describe all actions taken by GEO that You allege constitute "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services,

that person or another person would suffer serious harm or physical restraint" under 18 U.S.C. §

1589(a)(4).

**RESPONSE TO INTERROGATORY NO. 45:**

      Plaintiff objects to this interrogatory for the reasons described in response to

Interrogatory No. 39 (Objections 1 and 2).

      Plaintiff Hernandez responds that, as described in response to Interrogatory Nos. 39-42,

he alleges that GEO coerced him and members of the TVPA class to perform work through the

HUSP using threats of discipline, including solitary confinement, and by subjecting detainees to

discipline, including solitary confinement, for refusing to clean under the HUSP.  Specific

instances of this scheme, plan, and pattern are identified in response to Interrogatory No. 39.

**INTERROGATORY NO. 46 (Numbered 44 By GEO):**

Describe all tasks You completed as a result of "any scheme, plan, or pattern intended to cause

the person to believe that, if that person did not perform such labor or services, that person or

another person would suffer serious harm or physical restraint" identified in response to

Interrogatory Number [45].

**RESPONSE TO INTERROGATORY NO. 46:**

      Plaintiff objects to this interrogatory for the reasons described in response to

Interrogatory No. 40.  See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 47 (Numbered 45 By GEO):**

Identify the categories and amounts of damages You seek on Your 18 U.S.C. § 1589 claim and

for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 47:**

Plaintiff seeks compensatory damages based on the fair market value of the work he performed pursuant to GEO's HUSP. *See* ECF No. 149 at 8. For a specific estimate of the number of hours that Plaintiff worked under the HUSP, see Plaintiff's responses to GEO's Interrogatory Nos. 29, 30, and 32, which were served on Defendant on February 5, 2018. Plaintiff will seek a determination of fair market value based on GEO's records of days worked and types of work performed under the HUSP, at rates of pay and accounting for fringe benefits equivalent to what GEO would have paid for equivalent labor performed by GEO employees. In addition, Plaintiff seeks punitive damages in an amount to be determined by the jury in this case, and attorneys' fees and costs in an amount to be determined by the Court, following Plaintiff's submission of a fee petition at the conclusion of this litigation.

**INTERROGATORY NO. 48 (Numbered 46 By GEO):**

Identify the categories and amounts of damages You seek on Your unjust enrichment claim and for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 48:**

Plaintiffs seeks restitution in the form of compensatory damages based on the fair market value of the work he performed pursuant to GEO's Voluntary Work Program ("VWP"), minus amounts that GEO paid him pursuant to the VWP. *See* ECF No. 149 at 6-8. For a specific estimate of the hours that Plaintiff worked under the VWP, see Plaintiff's response to GEO's Interrogatory No. 31, which was served on Defendant on February 5, 2018. For janitorial positions, the methodology for calculating the fair market value of Plaintiff's labor is set forth in the Rule 26(a)(2) report of Jeffrey Edelstein. For laundry positions, the methodology for calculating the fair market value of Plaintiff's labor is set forth in the Rule 26(a)(2) report of

Matthew Alexander.  For all other VWP positions, fair market value will be based on GEO's

records of days worked and types of work performed under the VWP, at rates of pay and

accounting for fringe benefits equivalent to what GEO would have paid for equivalent labor

performed by GEO employees

Plaintiff alternatively seeks restitution in the form of disgorgement of the portion of

GEO's profits under the Aurora contract that are attributable to the benefit Plaintiff conferred

upon GEO.  GEO's profits may be ascertained through GEO's profit and loss statements.  GEO's

relative contribution to its profits under the Aurora contract may be ascertained through GEO's

pricing spreadsheets, which show the cost to GEO of providing services to ICE through the

Aurora contract.  Plaintiff's contribution to GEO's profits may be measured by the fair market

value of his labor, which is determinable through the methods described above.  The relative

value of each party's contribution to GEO's profits will establish the percentage of GEO's

profits, during the period covered by Plaintiffs' unjust enrichment claims, which Plaintiff seeks

as restitution.

In addition, Plaintiff seeks exemplary damages in an amount to be determined by the jury

in this case.

**INTERROGATORY NO. 49 (Numbered 47 By GEO):**

For Your unjust enrichment claim, identify each and every benefit that You allege was conferred

upon GEO.

**RESPONSE TO INTERROGATORY NO. 49:**

Plaintiff objects that this interrogatory is vaguely worded in several respects.  First, it

does not specify what source or sources of benefits it seeks to identify; Plaintiff presumes that

the interrogatory refers to benefits conferred by labor he performed.  Moreover, Plaintiff infers

that this interrogatory is therefore intended to be confined to the three-year time period covered by the unjust enrichment claim in this case.  In addition to these ambiguities, the interrogatory's use of the word "You" is ambiguous for the reasons explained in response to Interrogatory 39 above.  Plaintiff further objects that the use of "each and every" is ambiguous, but appears to seek an itemized list of every task Plaintiff completed over the course of a three-year period.  To the extent that this interrogatory seeks such a list, Plaintiff objects that this degree of specificity is not required to prove Plaintiffs' unjust enrichment claim; the extent of the benefit conferred by Plaintiffs will be proven through the means described in response to Interrogatory No. 51 below.

For a specific estimate of the hours that Plaintiff worked under the VWP, see Plaintiff's response to GEO's Interrogatory No. 31, which was served on Defendant on February 5, 2018.[3]

**INTERROGATORY NO. 50 (Numbered 48 By GEO):**

For each benefit identified in response to Interrogatory [49], identify and describe why it would be unjust for GEO to retain each such benefit without additional payment.

**RESPONSE TO INTERROGATORY NO. 50:**

Plaintiff incorporates the objections stated in response to Interrogatory No. 49 above.

Plaintiff responds that it would be unjust for GEO to retain the benefits identified in response to Interrogatory No. 49 because GEO obtained Plaintiff's labor under circumstances of detention that are inherently coercive, and which compromised class members' agency in deciding to work for unfair wages, and because public policy prohibits underpaid labor.

---

[3]    For the method of measuring the value of this labor, Plaintiffs refer GEO to their response to Interrogatory No. 48.

**INTERROGATORY NO. 51 (Numbered 49 By GEO):**

Set forth Your trial plan for this case including, but not limited to Your trial plan for the

following issues:

> a.    Identification of those issues that will be resolved as common issues for all
>        putative class members and how these issues will be resolved;
>
> b.    Identification of those issues that will be resolved on an individual basis for all
>        putative class members (including, but not limited to, causation, injury, reliance,
>        affirmative defenses and damages) and how these issues will be resolved;
>
> c.    Process for resolving Class Representative Claims including any limitations on the
>        claims that Class Representatives can litigate;
>
> d.    Process for resolving Absent Class Member Claims including any limitations on
>        the claims that Absent Class Members can litigate; and
>
> e.    Identification of the process that Plaintiffs propose be used for the calculation and
>        distribution of any damages that may be awarded in this case to putative class
>        members.

**RESPONSE TO INTERROGATORY NO. 51:**

Plaintiffs object that this interrogatory is vague in its use of the term "trial plan," as it

does not describe the proposed elements of such a plan or point to any rule describing or

requiring such a plan.  Plaintiffs further object that subparts c. and d. of this interrogatory are

vague in their undefined distinction between "Class Representative Claims" and "Absent Class

Member Claims."  The claims in this case are identified in the Complaint, and are pled on behalf

of the Classes pled in the Complaint and certified by the Court.  As in all properly certified class

litigation, the representative Plaintiffs' claims are typical of the claims of the Class.  *See* ECF

No. 57 (Class Certification Order) at 7-10.  There is therefore no distinction between claims

pursued in this litigation by the named Plaintiffs and the claims pursued by the absent Class

Members.

Plaintiffs further object that subpart e. of this interrogatory is premature, as no verdict has been rendered and no damages awarded.  The calculation of those damages will be decided by the Jury and the Court, and Plaintiffs will argue for the methodologies described in response to Interrogatories 47 and 48.  To the extent that damages are awarded to the Plaintiff Class, the distribution of those damages will be a matter for the Court to decide.  Depending on the extent and nature of the damages award, Plaintiffs will request that the funds be distributed through some combination of direct distribution to Class Members, fluid recovery, and/or distribution to a *cy pres* designee.  *See generally* 4 Newberg on Class Actions § 12:27 (5th ed.) (describing methods of distributing damages in class actions)

With respect to subparts a. and b., Plaintiffs object that the interrogatory draws an erroneous distinction between "common issues" and "individual" issues.  Plaintiffs respond as to subpart b. that there are no individual issues to be resolved through the trial in this action; that all issues tried to the Jury or the Court[4] will be tried on a classwide basis through common proof.  Plaintiffs respond as to subpart a. as follows.  The response below describes only those issues on which Plaintiffs bear the burden of proof.  It is not Plaintiffs' responsibility to propose a plan for how GEO will prove its affirmative defenses at trial.

1.    Trafficking Victims Protection Act claims:

    a.    Whether GEO obtained the Class Members' labor.

        i.    This element will be proven through GEO's records, policies, and the testimony of its corporate officers, as well as the testimony of eyewitness detainees.

---

[4]    Plaintiffs' responses herein are not intended to express any position as to which claims or questions should be put to the Jury as opposed to the Court.

b.      Whether GEO used a combination of force, threats of force, physical restraint, threats of physical restraint, serious harm, threats of serious harm, or a scheme or plan intended to cause the belief that the Class Members would suffer serious harm or physical restraint.

      i.      This element will be proven through GEO's policies and other documents, the testimony of its corporate officers, and the testimony of eyewitnesses.  The nature of the harm caused by GEO's use of solitary confinement will be discussed through the expert testimony of Dr. Stuart Grassian.

c.      Whether GEO's acts described in part b. above caused the Class Members to provide labor to GEO.

      i.      This element will be proven through the testimony of eyewitnesses regarding the nature of detention in Aurora and the use of solitary confinement and threats thereof, as well as through the expert testimony of Dr. Stuart Grassian.

d.      Whether GEO committed the above acts knowingly.

      i.      This element will be proven through the testimony of GEO's corporate officers.

e.      Whether GEO's actions warrant the imposition of punitive damages.

      i.      This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

2.      Unjust Enrichment claim:

a.    Whether GEO received a benefit.

i.    This element will be proven through GEO's records and policies, the testimony of its corporate officers, and the testimony of eyewitness detainees.  The extent of the benefit will be proven in part through the expert testimony of Jeffrey Edelstein and Matthew Alexander.

b.    Whether GEO received the benefit at Class Members' expense.

i.    This element will be proven through the testimony of eyewitness detainees, as well as the testimony of GEO's corporate officers.

c.    Whether the circumstances would make retention of that benefit unjust.

i.    This element will be proven through the testimony of eyewitness detainees, as well as through the expert testimony of Dr. Stuart Grassian.

d.    Whether GEO's actions warrant the remedy of disgorgement of GEO's profits.

i.    This element will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

e.    The fair apportionment of GEO's profits under the Aurora contract, as a measure of damages pursuant to the remedy of disgorgement.

i.    This element will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

    f.    Whether and to what extent GEO's actions warrant the imposition of

exemplary damages.

    i.    This issue will be proven through the totality of the evidence

described above, and directly through the testimony of GEO's

corporate officers.

Dated: June 22, 2020               By:    */s/ Michael J. Scimone*
                                   Michael J. Scimone

**OUTTEN & GOLDEN LLP**
Michael J. Scimone
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-Mail: mscimone@outtengolden.com

Rachel Dempsey
Adam Koshkin
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: rdempsey@outtengolden.com
E-Mail: akoshkin@outtengolden.com

**TOWARDS JUSTICE**
Juno Turner
Alexander Hood
David Seligman
Brianne Power
1410 High St., Suite 300
Denver, CO 80218
(720) 441-2236
juno@towardsjustice.org
alex@towardsjustice.org
david@towardsjustice.org
brianne@towardsjustice.org

**LAW OFFICE OF R. ANDREW FREE**

15

R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

**MILSTEIN LAW OFFICE**
Brandt Milstein
595 Canyon Boulevard
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

**THE KELMAN BEUSCHER FIRM**
Andrew Turner
600 Grant St., Suite 450
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com


**MEYER LAW OFFICE, P.C.**
Hans Meyer
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*

# VERIFICATION

I, Hugo Alexander Ceren Hernandez, verify subject to the penalty of perjury that the foregoing SUPPLEMENTAL RESPONSES TO DEFENDANT THE GEO GROUP, INC.'S SIXTH SET OF INTERROGATORIES are true and correct to the best of my knowledge and belief.

Dated: 6/22/, 2020                    By: _____

Hugo Alexander Ceren Hernandez

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

|  |  |
|---|---|
| ALEJANDRO MENOCAL, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE GEO GROUP, INC.,<br><br>        Defendant. | No. 14 Civ. 2887 (JLK) |

**PLAINTIFF LOURDES ARGUETA'S SUPPLEMENTAL RESPONSES TO
DEFENDANT THE GEO GROUP, INC.'S SIXTH[1] SET OF INTERROGATORIES**

Pursuant to Rules 33 of the Federal Rules of Civil Procedure and the Local Rules of the

District of Colorado, Plaintiff Lourdes Argueta, by her attorneys, makes the following

supplemental response to Defendant's Sixth Set of Interrogatories, dated March 6, 2020.

**PRELIMINARY STATEMENT**

All responses to the following Interrogatories are based on information currently known

to Plaintiffs and are provided without prejudice to Plaintiffs' right to submit additional

information, should it become known.  Plaintiffs anticipate that as investigation and trial

preparation continue, it is possible that additional facts and witnesses may become known, which

may in turn warrant additions to or changes in the responses provided herein.  These responses

are made in a good faith effort to supply such information as is presently known to Plaintiffs.

---

[1]    The set of interrogatories to which this pleading responds was styled incorrectly as "GEO Group, Inc.'s Fourth Set of Interrogatories."  GEO's Fourth set of Interrogatories was served on November 14, 2019, and its Fifth set of Interrogatories was served on November 15, 2019.  The numbering of individual interrogatories is, accordingly, corrected herein, to reflect the fact that GEO has served a total of 37 interrogatories prior to serving the current set.

These responses and objections are made without prejudice to, and are not a waiver of, Plaintiffs' right to rely on other facts or documents at trial.

Plaintiffs reserve all objections to the competence, relevance, materiality, or admissibility at trial of any information or documents requested or identified by any party. The inadvertent disclosure of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such information or any other information.

The production of information and/or documents pursuant to this response is made without waiving, or intending to waive, but on the contrary reserving and intending to reserve: (a) the right to object on any grounds to the use of documents or information produced pursuant to this response in this or any other action or proceeding; (b) the right to object on any and all grounds, at any time, to other requests for production or other discovery mechanisms or proceedings; and (c) the right at any time to revise, correct, or supplement this response.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 38 (Numbered 36 By GEO):**

Identify the source, amount, and terms of any third-party litigation financing used by Plaintiffs in this Lawsuit. For each source of financing, identify the contact information for each such source, whether individual or organization.

**RESPONSE TO INTERROGATORY NO. 38:**

Plaintiff objects that this interrogatory is irrelevant to the claims and defenses in this case, and is therefore beyond the scope of discovery. Disclosure of the information described in this interrogatory is not authorized or required by the Federal Rules of Civil Procedure. Moreover, this interrogatory is harassing insofar as the request for contact information appears intended to equip Defendant with the means to independently interfere, outside of this litigation, with

Plaintiff's access to funds that might support their claims for restitution for Defendant's violations of the law.

**INTERROGATORY NO. 39 (Numbered 37 By GEO):**

Describe all actions taken by GEO that You allege constitute "force, threats of force, physical restraint, or threats of physical restraint" under 18 U.S.C. § 1589(a)(1).

**RESPONSE TO INTERROGATORY NO. 39:**

Plaintiff objects to this interrogatory as follows:

1. This interrogatory is vague in its use of the term "You."[2]  First, this interrogatory does not specify sufficiently which acts it seeks to identify.  Plaintiffs respond to this interrogatory based on the understanding that it seeks acts that were directly experienced by the individual named Plaintiffs, based on GEO's representations.  Second, although GEO clarified in a conference on April 30, 2020 that this interrogatory sought individualized responses from each of the named Plaintiffs, this interrogatory is phrased in terms of Plaintiffs' allegations, which are not styled as individual claims, but rather as classwide claims and allegations that derive from GEO's policies and practices that were common to the TVPA Class.  Accordingly, Plaintiffs allege in this case that the individual acts which each of them experienced are part of a combination of acts which constitute a unified

---

[2]  This set of interrogatories purport to incorporate the definitions from GEO's Second Set of Interrogatories, served on November 8, 2017 ("GEO's 2d Rogs").  GEO's 2d Rogs state that "'you' . . . refers to Plaintiffs in this Lawsuit, and any agent or representative of Plaintiffs."  It is unclear whether "Plaintiffs" in the first clause refers to the named Plaintiffs who appear in the caption of the lawsuit, or to members of the TVPA Class, which had been certified as of the date of GEO's 2d Rogs.  The term "agent or representative" further confuses matters, as it does not specify whether it is intended to refer to attorneys or other agents, or to the TVPA Class representatives (i.e., the named Plaintiffs); to the extent that the term refers to the latter, it creates further ambiguity as to the meaning of the term "Plaintiffs" in the preceding clause, as it suggests that "any agent or representative of Plaintiffs" could refer to a distinct category from "Plaintiffs."

"scheme, plan, or pattern intended to cause" the members of the TVPA Class to believe that if they did not perform labor under GEO's HUSP, they would suffer serious harm and/or physical restraint.

2. While Plaintiff responds to this interrogatory below as it is drafted (subject to Objection 1), the response to this interrogatory should not be read in isolation from the responses to Interrogatory Nos. 41, 43, and 45 below. The TVPA prohibits persons from obtaining labor "by any one of, or *by any combination of*" the means referred to in each of these interrogatories.

Subject to these objections, Plaintiff Argueta responds to this interrogatory by incorporating her responses to GEO's Interrogatory Nos. 27 and 28, which were served on Defendant on March 6, 2018, and her declaration dated May 6, 2016 (ECF No. 49-4). Moreover, Plaintiff alleges that GEO communicated in the Detainee Handbook, Local Supplement, Bates No. PL000029-55, that she and other members of the TVPA Class could be subjected to discipline, including solitary confinement, for refusing to clean pursuant to the HUSP. *Id*. at PL000047, 53-55. GEO also communicated in an orientation video shown to detainees that they would be subject to discipline for failing to follow rules that included mandatory cleaning pursuant to the HUSP. *See* GEO_MEN00052387 at slides 2, 7.

**INTERROGATORY NO. 40 (Numbered 38 By GEO):**

Describe all tasks You completed as a result of the "force, threats of force, physical restraint, or threats of physical restraint" identified in response to Interrogatory Number [39].

**RESPONSE TO INTERROGATORY NO. 40:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39, Objections 1 and 2, and further objects that the cleaning tasks described in

this response were completed as the result of a combination of the acts described in response to Interrogatory Nos. 39, 41, 43, and 45.

Subject to these objections, Plaintiff Argueta responds to this interrogatory by incorporating her responses to GEO's Interrogatory Nos. 29, 30, and 32, which were served on Defendant on March 6, 2018, and her declaration dated May 6, 2016 (ECF No. 49-4).

**INTERROGATORY NO. 41 (Numbered 39 By GEO):**

Describe all actions taken by GEO that You allege constitute "serious harm or threats of serious harm" under 18 U.S.C. § 1589(a)(2).

**RESPONSE TO INTERROGATORY NO. 41:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2). See Plaintiff's response to Interrogatory No. 39.

**INTERROGATORY NO. 42 (Numbered 40 By GEO):**

Describe all tasks You completed as a result of the "serious harm or threats of serious harm" identified in response to Interrogatory Number [41].

**RESPONSE TO INTERROGATORY NO. 42:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40. See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 43 (Numbered 41 By GEO):**

Describe all actions taken by GEO that You allege constitute "the abuse or threatened abuse of law or legal process" under 18 U.S.C. § 1589(a)(3).

**RESPONSE TO INTERROGATORY NO. 43:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Argueta responds to this interrogatory that GEO knowingly caused her to believe that disciplinary infractions, including refusal to comply with GEO's HUSP, could have adverse consequences in her immigration proceeding that was pending during her confinement at the Aurora facility.

**INTERROGATORY NO. 44 (Numbered 42 By GEO):**

Describe all tasks You completed as a result of the "the abuse or threatened abuse of law or legal process" identified in response to Interrogatory Number [43].

**RESPONSE TO INTERROGATORY NO. 44:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40.  See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 45 (Numbered 43 By GEO):**

Describe all actions taken by GEO that You allege constitute "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint" under 18 U.S.C. § 1589(a)(4).

**RESPONSE TO INTERROGATORY NO. 45:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Argueta responds that, as described in response to Interrogatory Nos. 39-42, she alleges that GEO coerced her and members of the TVPA class to perform work through the HUSP using threats of discipline, including solitary confinement, and by subjecting detainees to discipline, including solitary confinement, for refusing to clean under the HUSP.  Specific instances of this scheme, plan, and pattern are identified in response to Interrogatory No. 39.

**INTERROGATORY NO. 46 (Numbered 44 By GEO):**

Describe all tasks You completed as a result of "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint" identified in response to Interrogatory Number [45].

**RESPONSE TO INTERROGATORY NO. 46:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40.  See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 47 (Numbered 45 By GEO):**

Identify the categories and amounts of damages You seek on Your 18 U.S.C. § 1589 claim and for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 47:**

Plaintiff seeks compensatory damages based on the fair market value of the work she performed pursuant to GEO's HUSP.  *See* ECF No. 149 at 8.  For a specific estimate of the number of hours that Plaintiff worked under the HUSP, see Plaintiff's responses to GEO's Interrogatory Nos. 29, 30, and 32, which were served on Defendant on March 6, 2018.  Plaintiff will seek a determination of fair market value based on GEO's records of days worked and types of work performed under the HUSP, at rates of pay and accounting for fringe benefits equivalent to what GEO would have paid for equivalent labor performed by GEO employees.  In addition, Plaintiff seeks punitive damages in an amount to be determined by the jury in this case, and attorneys' fees and costs in an amount to be determined by the Court, following Plaintiff's submission of a fee petition at the conclusion of this litigation.

**INTERROGATORY NO. 48 (Numbered 46 By GEO):**

Identify the categories and amounts of damages You seek on Your unjust enrichment claim and for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 48:**

Plaintiff seeks restitution in the form of compensatory damages based on the fair market value of the work she performed pursuant to GEO's Voluntary Work Program ("VWP"), minus amounts that GEO paid her pursuant to the VWP. *See* ECF No. 149 at 6-8. For a specific estimate of the hours that Plaintiff worked under the VWP, see Plaintiff's response to GEO's Interrogatory No. 31, which was served on Defendant on March 6, 2018. For janitorial positions, the methodology for calculating the fair market value of Plaintiff's labor is set forth in the Rule 26(a)(2) report of Jeffrey Edelstein. For laundry positions, the methodology for calculating the fair market value of Plaintiff's labor is set forth in the Rule 26(a)(2) report of Matthew Alexander. For all other VWP positions, fair market value will be based on GEO's records of days worked and types of work performed under the VWP, at rates of pay and accounting for fringe benefits equivalent to what GEO would have paid for equivalent labor performed by GEO employees

Plaintiff alternatively seeks restitution in the form of disgorgement of the portion of GEO's profits under the Aurora contract that are attributable to the benefit Plaintiff conferred upon GEO. GEO's profits may be ascertained through GEO's profit and loss statements. GEO's relative contribution to its profits under the Aurora contract may be ascertained through GEO's pricing spreadsheets, which show the cost to GEO of providing services to ICE through the Aurora contract. Plaintiff's contribution to GEO's profits may be measured by the fair market value of her labor, which is determinable through the methods described above. The relative

value of each party's contribution to GEO's profits will establish the percentage of GEO's profits, during the period covered by Plaintiffs' unjust enrichment claims, which Plaintiff seeks as restitution.

In addition, Plaintiff seeks exemplary damages in an amount to be determined by the jury in this case.

**INTERROGATORY NO. 49 (Numbered 47 By GEO):**

For Your unjust enrichment claim, identify each and every benefit that You allege was conferred upon GEO.

**RESPONSE TO INTERROGATORY NO. 49:**

Plaintiff objects that this interrogatory is vaguely worded in several respects. First, it does not specify what source or sources of benefits it seeks to identify; Plaintiff presumes that the interrogatory refers to benefits conferred by labor she performed. Moreover, Plaintiff infers that this interrogatory is therefore intended to be confined to the three-year time period covered by the unjust enrichment claim in this case. In addition to these ambiguities, the interrogatory's use of the word "You" is ambiguous for the reasons explained in response to Interrogatory 39 above. Plaintiff further objects that the use of "each and every" is ambiguous, but appears to seek an itemized list of every task Plaintiff completed over the course of a three-year period. To the extent that this interrogatory seeks such a list, Plaintiff objects that this degree of specificity is not required to prove Plaintiffs' unjust enrichment claim; the extent of the benefit conferred by Plaintiffs will be proven through the means described in response to Interrogatory No. 51 below.

For a specific estimate of the hours that Plaintiff worked under the VWP, see Plaintiff's response to GEO's Interrogatory No. 31, which was served on Defendant on March 6, 2018.[3]

**INTERROGATORY NO. 50 (Numbered 48 By GEO):**

For each benefit identified in response to Interrogatory [49], identify and describe why it would be unjust for GEO to retain each such benefit without additional payment.

**RESPONSE TO INTERROGATORY NO. 50:**

Plaintiff incorporates the objections stated in response to Interrogatory No. 49 above.

Plaintiff responds that it would be unjust for GEO to retain the benefits identified in response to Interrogatory No. 49 because GEO obtained Plaintiff's labor under circumstances of detention that are inherently coercive, and which compromised class members' agency in deciding to work for unfair wages, and because public policy prohibits underpaid labor.

**INTERROGATORY NO. 51 (Numbered 49 By GEO):**

Set forth Your trial plan for this case including, but not limited to Your trial plan for the following issues:

    a.    Identification of those issues that will be resolved as common issues for all putative class members and how these issues will be resolved;

    b.    Identification of those issues that will be resolved on an individual basis for all putative class members (including, but not limited to, causation, injury, reliance, affirmative defenses and damages) and how these issues will be resolved;

    c.    Process for resolving Class Representative Claims including any limitations on the claims that Class Representatives can litigate;

    d.    Process for resolving Absent Class Member Claims including any limitations on the claims that Absent Class Members can litigate; and

---

[3]    For the method of measuring the value of this labor, Plaintiff refers GEO to her response to Interrogatory No. 48.

e.    Identification of the process that Plaintiffs propose be used for the calculation and distribution of any damages that may be awarded in this case to putative class members.

**<u>RESPONSE TO INTERROGATORY NO. 51</u>:**

Plaintiffs object that this interrogatory is vague in its use of the term "trial plan," as it does not describe the proposed elements of such a plan or point to any rule describing or requiring such a plan.  Plaintiffs further object that subparts c. and d. of this interrogatory are vague in their undefined distinction between "Class Representative Claims" and "Absent Class Member Claims."  The claims in this case are identified in the Complaint, and are pled on behalf of the Classes pled in the Complaint and certified by the Court.  As in all properly certified class litigation, the representative Plaintiffs' claims are typical of the claims of the Class.  *See* ECF No. 57 (Class Certification Order) at 7-10.  There is therefore no distinction between claims pursued in this litigation by the named Plaintiffs and the claims pursued by the absent Class Members.

Plaintiffs further object that subpart e. of this interrogatory is premature, as no verdict has been rendered and no damages awarded.  The calculation of those damages will be decided by the Jury and the Court, and Plaintiffs will argue for the methodologies described in response to Interrogatories 47 and 48.  To the extent that damages are awarded to the Plaintiff Class, the distribution of those damages will be a matter for the Court to decide.  Depending on the extent and nature of the damages award, Plaintiffs will request that the funds be distributed through some combination of direct distribution to Class Members, fluid recovery, and/or distribution to a *cy pres* designee.  *See generally* 4 Newberg on Class Actions § 12:27 (5th ed.) (describing methods of distributing damages in class actions)

11

With respect to subparts a. and b., Plaintiffs object that the interrogatory draws an erroneous distinction between "common issues" and "individual" issues.  Plaintiffs respond as to subpart b. that there are no individual issues to be resolved through the trial in this action; that all issues tried to the Jury or the Court[4] will be tried on a classwide basis through common proof.  Plaintiffs respond as to subpart a. as follows.  The response below describes only those issues on which Plaintiffs bear the burden of proof.  It is not Plaintiffs' responsibility to propose a plan for how GEO will prove its affirmative defenses at trial.

1.      Trafficking Victims Protection Act claims:

    a.      Whether GEO obtained the Class Members' labor.

        i.      This element will be proven through GEO's records, policies, and the testimony of its corporate officers, as well as the testimony of eyewitness detainees.

    b.      Whether GEO used a combination of force, threats of force, physical restraint, threats of physical restraint, serious harm, threats of serious harm, or a scheme or plan intended to cause the belief that the Class Members would suffer serious harm or physical restraint.

        i.      This element will be proven through GEO's policies and other documents, the testimony of its corporate officers, and the testimony of eyewitnesses.  The nature of the harm caused by GEO's use of solitary confinement will be discussed through the expert testimony of Dr. Stuart Grassian.

---

[4]      Plaintiffs' responses herein are not intended to express any position as to which claims or questions should be put to the Jury as opposed to the Court.

    c.       Whether GEO's acts described in part b. above caused the Class Members to provide labor to GEO.

        i.      This element will be proven through the testimony of eyewitnesses regarding the nature of detention in Aurora and the use of solitary confinement and threats thereof, as well as through the expert testimony of Dr. Stuart Grassian.

    d.       Whether GEO committed the above acts knowingly.

        i.      This element will be proven through the testimony of GEO's corporate officers.

    e.       Whether GEO's actions warrant the imposition of punitive damages.

        i.      This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

2.      Unjust Enrichment claim:

    a.       Whether GEO received a benefit.

        i.      This element will be proven through GEO's records and policies, the testimony of its corporate officers, and the testimony of eyewitness detainees.  The extent of the benefit will be proven in part through the expert testimony of Jeffrey Edelstein and Matthew Alexander.

    b.       Whether GEO received the benefit at Class Members' expense.

        i.      This element will be proven through the testimony of eyewitness detainees, as well as the testimony of GEO's corporate officers.

    c.      Whether the circumstances would make retention of that benefit unjust.

          i.     This element will be proven through the testimony of eyewitness detainees, as well as through the expert testimony of Dr. Stuart Grassian.

    d.      Whether GEO's actions warrant the remedy of disgorgement of GEO's profits.

          i.     This element will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

    e.      The fair apportionment of GEO's profits under the Aurora contract, as a measure of damages pursuant to the remedy of disgorgement.

          i.     This element will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

    f.      Whether and to what extent GEO's actions warrant the imposition of exemplary damages.

          i.     This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

Dated: May 26, 2020

By:   */s/ Michael J. Scimone*
        Michael J. Scimone

**OUTTEN & GOLDEN LLP**
Michael J. Scimone
685 Third Avenue, 25th Floor

New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-Mail: mscimone@outtengolden.com

Rachel Dempsey
Adam Koshkin
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: rdempsey@outtengolden.com
E-Mail: akoshkin@outtengolden.com

**TOWARDS JUSTICE**
Juno Turner
Alexander Hood
David Seligman
Brianne Power
1410 High St., Suite 300
Denver, CO 80218
(720) 441-2236
juno@towardsjustice.org
alex@towardsjustice.org
david@towardsjustice.org
brianne@towardsjustice.org

**LAW OFFICE OF R. ANDREW FREE**
R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

**MILSTEIN LAW OFFICE**
Brandt Milstein
595 Canyon Boulevard
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

**THE KELMAN BEUSCHER FIRM**
Andrew Turner
600 Grant St., Suite 450
Denver, CO 80203
(303) 333-7751

aturner@laborlawdenver.com

**MEYER LAW OFFICE, P.C.**
Hans Meyer
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*

DocuSign Envelope ID: 9F804E50-97F8-4967-BE7B-877F23F0BF1B

## VERIFICATION

I, Lourdes Argueta, verify subject to the penalty of perjury that the foregoing

SUPPLEMENTAL RESPONSES TO DEFENDANT THE GEO GROUP, INC.'S SIXTH SET

OF INTERROGATORIES are true and correct to the best of my knowledge and belief.

5/25/2020

Dated: May ___, 2020                    By: _____

DocuSigned by:

C1613A9676A94D9...

Lourdes Argueta

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

|  |  |
|---|---|
| ALEJANDRO MENOCAL, *et al.*,<br><br>            Plaintiffs,<br><br>    v.<br><br>THE GEO GROUP, INC.,<br><br>            Defendant. | No. 14 Civ. 2887 (JLK) |

**PLAINTIFF JESUS YEPEZ GAYTAN'S SUPPLEMENTAL RESPONSES TO
DEFENDANT THE GEO GROUP, INC.'S SIXTH[1] SET OF INTERROGATORIES**

Pursuant to Rules 33 of the Federal Rules of Civil Procedure and the Local Rules of the District of Colorado, Plaintiff Jesus Yepez Gaytan, by his attorneys, makes the following supplemental response to Defendant's Sixth Set of Interrogatories, dated March 6, 2020.

**PRELIMINARY STATEMENT**

All responses to the following Interrogatories are based on information currently known to Plaintiffs and are provided without prejudice to Plaintiffs' right to submit additional information, should it become known. Plaintiffs anticipate that as investigation and trial preparation continue, it is possible that additional facts and witnesses may become known, which may in turn warrant additions to or changes in the responses provided herein. These responses are made in a good faith effort to supply such information as is presently known to Plaintiffs.

---

[1]    The set of interrogatories to which this pleading responds was styled incorrectly as "GEO Group, Inc.'s Fourth Set of Interrogatories." GEO's Fourth set of Interrogatories was served on November 14, 2019, and its Fifth set of Interrogatories was served on November 15, 2019. The numbering of individual interrogatories is, accordingly, corrected herein, to reflect the fact that GEO has served a total of 37 interrogatories prior to serving the current set.

These responses and objections are made without prejudice to, and are not a waiver of, Plaintiffs' right to rely on other facts or documents at trial.

Plaintiffs reserve all objections to the competence, relevance, materiality, or admissibility at trial of any information or documents requested or identified by any party. The inadvertent disclosure of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such information or any other information.

The production of information and/or documents pursuant to this response is made without waiving, or intending to waive, but on the contrary reserving and intending to reserve: (a) the right to object on any grounds to the use of documents or information produced pursuant to this response in this or any other action or proceeding; (b) the right to object on any and all grounds, at any time, to other requests for production or other discovery mechanisms or proceedings; and (c) the right at any time to revise, correct, or supplement this response.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 38 (Numbered 36 By GEO):**

Identify the source, amount, and terms of any third-party litigation financing used by Plaintiffs in this Lawsuit. For each source of financing, identify the contact information for each such source, whether individual or organization.

**RESPONSE TO INTERROGATORY NO. 38:**

Plaintiff objects that this interrogatory is irrelevant to the claims and defenses in this case, and is therefore beyond the scope of discovery. Disclosure of the information described in this interrogatory is not authorized or required by the Federal Rules of Civil Procedure. Moreover, this interrogatory is harassing insofar as the request for contact information appears intended to equip Defendant with the means to independently interfere, outside of this litigation, with

Plaintiff's access to funds that might support their claims for restitution for Defendant's violations of the law.

**INTERROGATORY NO. 39 (Numbered 37 By GEO):**

Describe all actions taken by GEO that You allege constitute "force, threats of force, physical restraint, or threats of physical restraint" under 18 U.S.C. § 1589(a)(1).

**RESPONSE TO INTERROGATORY NO. 39:**

Plaintiff objects to this interrogatory as follows:

1. This interrogatory is vague in its use of the term "You."[2] First, this interrogatory does not specify sufficiently which acts it seeks to identify. Plaintiffs respond to this interrogatory based on the understanding that it seeks acts that were directly experienced by the individual named Plaintiffs, based on GEO's representations. Second, although GEO clarified in a conference on April 30, 2020 that this interrogatory sought individualized responses from each of the named Plaintiffs, this interrogatory is phrased in terms of Plaintiffs' allegations, which are not styled as individual claims, but rather as classwide claims and allegations that derive from GEO's policies and practices that were common to the TVPA Class. Accordingly, Plaintiffs allege in this case that the individual acts which each of them experienced are part of a combination of acts which constitute a unified

---

[2]     This set of interrogatories purport to incorporate the definitions from GEO's Second Set of Interrogatories, served on November 8, 2017 ("GEO's 2d Rogs"). GEO's 2d Rogs state that "'you' . . . refers to Plaintiffs in this Lawsuit, and any agent or representative of Plaintiffs." It is unclear whether "Plaintiffs" in the first clause refers to the named Plaintiffs who appear in the caption of the lawsuit, or to members of the TVPA Class, which had been certified as of the date of GEO's 2d Rogs. The term "agent or representative" further confuses matters, as it does not specify whether it is intended to refer to attorneys or other agents, or to the TVPA Class representatives (i.e., the named Plaintiffs); to the extent that the term refers to the latter, it creates further ambiguity as to the meaning of the term "Plaintiffs" in the preceding clause, as it suggests that "any agent or representative of Plaintiffs" could refer to a distinct category from "Plaintiffs."

"scheme, plan, or pattern intended to cause" the members of the TVPA Class to believe that if they did not perform labor under GEO's HUSP, they would suffer serious harm and/or physical restraint.

2. While Plaintiff responds to this interrogatory below as it is drafted (subject to Objection 1), the response to this interrogatory should not be read in isolation from the responses to Interrogatory Nos. 41, 43, and 45 below. The TVPA prohibits persons from obtaining labor "by any one of, or *by any combination of*" the means referred to in each of these interrogatories.

Subject to these objections, Plaintiff Gaytan responds to this interrogatory by incorporating his responses to GEO's Interrogatory Nos. 27 and 28, which were served on Defendant on February 2, 2018, and his declaration dated May 6, 2016 (ECF No. 49-5). Moreover, Plaintiff alleges that GEO communicated in the Detainee Handbook, Local Supplement, Bates No. PL000029-55, that he and other members of the TVPA Class could be subjected to discipline, including solitary confinement, for refusing to clean pursuant to the HUSP. *Id*. at PL000047, 53-55. GEO also communicated in an orientation video shown to detainees that they would be subject to discipline for failing to follow rules that included mandatory cleaning pursuant to the HUSP. *See* GEO_MEN00052387 at slides 2, 7.

**INTERROGATORY NO. 40 (Numbered 38 By GEO):**

Describe all tasks You completed as a result of the "force, threats of force, physical restraint, or threats of physical restraint" identified in response to Interrogatory Number [39].

**RESPONSE TO INTERROGATORY NO. 40:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39, Objections 1 and 2, and further object that the cleaning tasks described in

this response were completed as the result of a combination of the acts described in response to

Interrogatory Nos. 39, 41, 43, and 45.

Subject to these objections, Plaintiff Gaytan responds to this interrogatory by

incorporating his responses to GEO's Interrogatory Nos. 29, 30, and 32, which were served on

Defendant on February 2, 2018, and his declaration dated May 6, 2016 (ECF No. 49-5).

**INTERROGATORY NO. 41 (Numbered 39 By GEO):**

Describe all actions taken by GEO that You allege constitute "serious harm or threats of serious

harm" under 18 U.S.C. § 1589(a)(2).

**RESPONSE TO INTERROGATORY NO. 41:**

Plaintiff objects to this interrogatory for the reasons described in response to

Interrogatory No. 39 (Objections 1 and 2).  See Plaintiff's response to Interrogatory No. 39.

**INTERROGATORY NO. 42 (Numbered 40 By GEO):**

Describe all tasks You completed as a result of the "serious harm or threats of serious harm"

identified in response to Interrogatory Number [41].

**RESPONSE TO INTERROGATORY NO. 42:**

Plaintiff objects to this interrogatory for the reasons described in response to

Interrogatory No. 40.  See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 43 (Numbered 41 By GEO):**

Describe all actions taken by GEO that You allege constitute "the abuse or threatened abuse of

law or legal process" under 18 U.S.C. § 1589(a)(3).

**RESPONSE TO INTERROGATORY NO. 43:**

Plaintiff objects to this interrogatory for the reasons described in response to

Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Gaytan responds to this interrogatory that GEO knowingly caused him to believe that disciplinary infractions, including refusal to comply with GEO's HUSP, could have adverse consequences in his immigration proceeding that was pending during his confinement at the Aurora facility. Detention officers and other detainees regularly discussed these adverse consequences, noting that causing trouble could harm your case or be brought to the Immigration Judge's attention.

**INTERROGATORY NO. 44 (Numbered 42 By GEO):**

Describe all tasks You completed as a result of the "the abuse or threatened abuse of law or legal process" identified in response to Interrogatory Number [43].

**RESPONSE TO INTERROGATORY NO. 44:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40. See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 45 (Numbered 43 By GEO):**

Describe all actions taken by GEO that You allege constitute "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint" under 18 U.S.C. § 1589(a)(4).

**RESPONSE TO INTERROGATORY NO. 45:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Gaytan responds that, as described in response to Interrogatory Nos. 39-42, he alleges that GEO coerced him and members of the TVPA class to perform work through the HUSP using threats of discipline, including solitary confinement, and by subjecting detainees to

6

discipline, including solitary confinement, for refusing to clean under the HUSP.  Specific

instances of this scheme, plan, and pattern are identified in response to Interrogatory No. 39.

**INTERROGATORY NO. 46 (Numbered 44 By GEO):**

Describe all tasks You completed as a result of "any scheme, plan, or pattern intended to cause

the person to believe that, if that person did not perform such labor or services, that person or

another person would suffer serious harm or physical restraint" identified in response to

Interrogatory Number [45].

**RESPONSE TO INTERROGATORY NO. 46:**

    Plaintiff objects to this interrogatory for the reasons described in response to

Interrogatory No. 40.  See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 47 (Numbered 45 By GEO):**

Identify the categories and amounts of damages You seek on Your 18 U.S.C. § 1589 claim and

for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 47:**

    Plaintiff seeks compensatory damages based on the fair market value of the work he

performed pursuant to GEO's HUSP.  *See* ECF No. 149 at 8.  For a specific estimate of the

number of hours that Plaintiff worked under the HUSP, see Plaintiff's responses to GEO's

Interrogatory Nos. 29, 30, and 32, which were served on Defendant on February 2, 2018.

Plaintiff will seek a determination of fair market value based on GEO's records of days worked

and types of work performed under the HUSP, at rates of pay and accounting for fringe benefits

equivalent to what GEO would have paid for equivalent labor performed by GEO employees.  In

addition, Plaintiff seeks punitive damages in an amount to be determined by the jury in this case,

and attorneys' fees and costs in an amount to be determined by the Court, following Plaintiff's

submission of a fee petition at the conclusion of this litigation.

**INTERROGATORY NO. 48 (Numbered 46 By GEO):**

Identify the categories and amounts of damages You seek on Your unjust enrichment claim and

for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 48:**

Plaintiffs seeks restitution in the form of compensatory damages based on the fair market

value of the work he performed pursuant to GEO's Voluntary Work Program ("VWP"), minus

amounts that GEO paid him pursuant to the VWP. *See* ECF No. 149 at 6-8. For a specific

estimate of the hours that Plaintiff worked under the VWP, see Plaintiff's response to GEO's

Interrogatory No. 31, which was served on Defendant on February 2, 2018. For janitorial

positions, the methodology for calculating the fair market value of Plaintiff's labor is set forth in

the Rule 26(a)(2) report of Jeffrey Edelstein. For laundry positions, the methodology for

calculating the fair market value of Plaintiff's labor is set forth in the Rule 26(a)(2) report of

Matthew Alexander. For all other VWP positions, fair market value will be based on GEO's

records of days worked and types of work performed under the VWP, at rates of pay and

accounting for fringe benefits equivalent to what GEO would have paid for equivalent labor

performed by GEO employees

Plaintiff alternatively seeks restitution in the form of disgorgement of the portion of

GEO's profits under the Aurora contract that are attributable to the benefit Plaintiff conferred

upon GEO. GEO's profits may be ascertained through GEO's profit and loss statements. GEO's

relative contribution to its profits under the Aurora contract may be ascertained through GEO's

pricing spreadsheets, which show the cost to GEO of providing services to ICE through the

Aurora contract.  Plaintiff's contribution to GEO's profits may be measured by the fair market

value of his labor, which is determinable through the methods described above.  The relative

value of each party's contribution to GEO's profits will establish the percentage of GEO's

profits, during the period covered by Plaintiffs' unjust enrichment claims, which Plaintiff seeks

as restitution.

In addition, Plaintiff seeks exemplary damages in an amount to be determined by the jury

in this case.

**INTERROGATORY NO. 49 (Numbered 47 By GEO):**

For Your unjust enrichment claim, identify each and every benefit that You allege was conferred

upon GEO.

**RESPONSE TO INTERROGATORY NO. 49:**

Plaintiff objects that this interrogatory is vaguely worded in several respects.  First, it

does not specify what source or sources of benefits it seeks to identify; Plaintiff presumes that

the interrogatory refers to benefits conferred by labor he performed.  Moreover, Plaintiff infers

that this interrogatory is therefore intended to be confined to the three-year time period covered

by the unjust enrichment claim in this case.  In addition to these ambiguities, the interrogatory's

use of the word "You" is ambiguous for the reasons explained in response to Interrogatory 39

above.  Plaintiff further objects that the use of "each and every" is ambiguous, but appears to

seek an itemized list of every task Plaintiff completed over the course of a three-year period.  To

the extent that this interrogatory seeks such a list, Plaintiff objects that this degree of specificity

is not required to prove Plaintiffs' unjust enrichment claim; the extent of the benefit conferred by

Plaintiffs will be proven through the means described in response to Interrogatory No. 51 below.

For a specific estimate of the hours that Plaintiff worked under the VWP, see Plaintiff's response to GEO's Interrogatory No. 31, which was served on Defendant on February 2, 2018.[3]

**INTERROGATORY NO. 50 (Numbered 48 By GEO):**

For each benefit identified in response to Interrogatory [49], identify and describe why it would be unjust for GEO to retain each such benefit without additional payment.

**RESPONSE TO INTERROGATORY NO. 50:**

Plaintiff incorporates the objections stated in response to Interrogatory No. 49 above.

Plaintiff responds that it would be unjust for GEO to retain the benefits identified in response to Interrogatory No. 49 because GEO obtained Plaintiff's labor under circumstances of detention that are inherently coercive, and which compromised class members' agency in deciding to work for unfair wages, and because public policy prohibits underpaid labor.

**INTERROGATORY NO. 51 (Numbered 49 By GEO):**

Set forth Your trial plan for this case including, but not limited to Your trial plan for the following issues:

   a.   Identification of those issues that will be resolved as common issues for all putative class members and how these issues will be resolved;

   b.   Identification of those issues that will be resolved on an individual basis for all putative class members (including, but not limited to, causation, injury, reliance, affirmative defenses and damages) and how these issues will be resolved;

   c.   Process for resolving Class Representative Claims including any limitations on the claims that Class Representatives can litigate;

   d.   Process for resolving Absent Class Member Claims including any limitations on the claims that Absent Class Members can litigate; and

---

[3]    For the method of measuring the value of this labor, Plaintiffs refer GEO to their response to Interrogatory No. 48.

e.    Identification of the process that Plaintiffs propose be used for the calculation and distribution of any damages that may be awarded in this case to putative class members.

**RESPONSE TO INTERROGATORY NO. 51:**

Plaintiffs object that this interrogatory is vague in its use of the term "trial plan," as it does not describe the proposed elements of such a plan or point to any rule describing or requiring such a plan.  Plaintiffs further object that subparts c. and d. of this interrogatory are vague in their undefined distinction between "Class Representative Claims" and "Absent Class Member Claims."  The claims in this case are identified in the Complaint, and are pled on behalf of the Classes pled in the Complaint and certified by the Court.  As in all properly certified class litigation, the representative Plaintiffs' claims are typical of the claims of the Class.  *See* ECF No. 57 (Class Certification Order) at 7-10.  There is therefore no distinction between claims pursued in this litigation by the named Plaintiffs and the claims pursued by the absent Class Members.

Plaintiffs further object that subpart e. of this interrogatory is premature, as no verdict has been rendered and no damages awarded.  The calculation of those damages will be decided by the Jury and the Court, and Plaintiffs will argue for the methodologies described in response to Interrogatories 47 and 48.  To the extent that damages are awarded to the Plaintiff Class, the distribution of those damages will be a matter for the Court to decide.  Depending on the extent and nature of the damages award, Plaintiffs will request that the funds be distributed through some combination of direct distribution to Class Members, fluid recovery, and/or distribution to a *cy pres* designee.  *See generally* 4 Newberg on Class Actions § 12:27 (5th ed.) (describing methods of distributing damages in class actions)

With respect to subparts a. and b., Plaintiffs object that the interrogatory draws an erroneous distinction between "common issues" and "individual" issues. Plaintiffs respond as to subpart b. that there are no individual issues to be resolved through the trial in this action; that all issues tried to the Jury or the Court[4] will be tried on a classwide basis through common proof. Plaintiffs respond as to subpart a. as follows. The response below describes only those issues on which Plaintiffs bear the burden of proof. It is not Plaintiffs' responsibility to propose a plan for how GEO will prove its affirmative defenses at trial.

1.    Trafficking Victims Protection Act claims:

    a.    Whether GEO obtained the Class Members' labor.

        i.    This element will be proven through GEO's records, policies, and the testimony of its corporate officers, as well as the testimony of eyewitness detainees.

    b.    Whether GEO used a combination of force, threats of force, physical restraint, threats of physical restraint, serious harm, threats of serious harm, or a scheme or plan intended to cause the belief that the Class Members would suffer serious harm or physical restraint.

        i.    This element will be proven through GEO's policies and other documents, the testimony of its corporate officers, and the testimony of eyewitnesses. The nature of the harm caused by GEO's use of solitary confinement will be discussed through the expert testimony of Dr. Stuart Grassian.

---

[4]    Plaintiffs' responses herein are not intended to express any position as to which claims or questions should be put to the Jury as opposed to the Court.

    c.      Whether GEO's acts described in part b. above caused the Class Members to provide labor to GEO.

        i.      This element will be proven through the testimony of eyewitnesses regarding the nature of detention in Aurora and the use of solitary confinement and threats thereof, as well as through the expert testimony of Dr. Stuart Grassian.

    d.      Whether GEO committed the above acts knowingly.

        i.      This element will be proven through the testimony of GEO's corporate officers.

    e.      Whether GEO's actions warrant the imposition of punitive damages.

        i.      This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

2.      Unjust Enrichment claim:

    a.      Whether GEO received a benefit.

        i.      This element will be proven through GEO's records and policies, the testimony of its corporate officers, and the testimony of eyewitness detainees.  The extent of the benefit will be proven in part through the expert testimony of Jeffrey Edelstein and Matthew Alexander.

    b.      Whether GEO received the benefit at Class Members' expense.

        i.      This element will be proven through the testimony of eyewitness detainees, as well as the testimony of GEO's corporate officers.

c.     Whether the circumstances would make retention of that benefit unjust.

     i.     This element will be proven through the testimony of eyewitness detainees, as well as through the expert testimony of Dr. Stuart Grassian.

d.     Whether GEO's actions warrant the remedy of disgorgement of GEO's profits.

     i.     This element will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

e.     The fair apportionment of GEO's profits under the Aurora contract, as a measure of damages pursuant to the remedy of disgorgement.

     i.     This element will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

f.     Whether and to what extent GEO's actions warrant the imposition of exemplary damages.

     i.     This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

Dated: May 28, 2020          By:   */s/ Michael J. Scimone*
                        Michael J. Scimone

                        **OUTTEN & GOLDEN LLP**
                        Michael J. Scimone
                        685 Third Avenue, 25th Floor
                        New York, New York 10017

Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-Mail: mscimone@outtengolden.com

Rachel Dempsey
Adam Koshkin
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: rdempsey@outtengolden.com
E-Mail: akoshkin@outtengolden.com

**TOWARDS JUSTICE**
Juno Turner
Alexander Hood
David Seligman
Brianne Power
1410 High St., Suite 300
Denver, CO 80218
(720) 441-2236
juno@towardsjustice.org
alex@towardsjustice.org
david@towardsjustice.org
brianne@towardsjustice.org

**LAW OFFICE OF R. ANDREW FREE**
R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

**MILSTEIN LAW OFFICE**
Brandt Milstein
595 Canyon Boulevard
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

**THE KELMAN BEUSCHER FIRM**
Andrew Turner
600 Grant St., Suite 450
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com

15

**MEYER LAW OFFICE, P.C.**
Hans Meyer
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*

## VERIFICATION

I, Jesus Yepez Gaytan, verify subject to the penalty of perjury that the foregoing

SUPPLEMENTAL RESPONSES TO DEFENDANT THE GEO GROUP, INC.'S SIXTH SET

OF INTERROGATORIES are true and correct to the best of my knowledge and belief.

Dated: May ___, 2020                    By: _____

                                            Jesus Yepez Gaytan

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

ALEJANDRO MENOCAL, *et al.*,

               Plaintiffs,

   v.

THE GEO GROUP, INC.,

               Defendant.

No. 14 Civ. 2887 (JLK)

**PLAINTIFF OLGA ALEXAKHINA'S SUPPLEMENTAL RESPONSES TO
DEFENDANT THE GEO GROUP, INC.'S SIXTH[1] SET OF INTERROGATORIES**

Pursuant to Rules 33 of the Federal Rules of Civil Procedure and the Local Rules of the

District of Colorado, Plaintiff Olga Alexakhina, by her attorneys, makes the following

supplemental response to Defendant's Sixth Set of Interrogatories, dated January 22, 2020.

**PRELIMINARY STATEMENT**

All responses to the following Interrogatories are based on information currently known

to Plaintiffs and are provided without prejudice to Plaintiffs' right to submit additional

information, should it become known.  Plaintiffs anticipate that as investigation and trial

preparation continue, it is possible that additional facts and witnesses may become known, which

may in turn warrant additions to or changes in the responses provided herein.  These responses

are made in a good faith effort to supply such information as is presently known to Plaintiffs.

---

[1]      The set of interrogatories to which this pleading responds was styled incorrectly as "GEO Group, Inc.'s Fourth Set of Interrogatories."  GEO's Fourth set of Interrogatories was served on November 14, 2019, and its Fifth set of Interrogatories was served on November 15, 2019.  The numbering of individual interrogatories is, accordingly, corrected herein, to reflect the fact that GEO has served a total of 37 interrogatories prior to serving the current set.

These responses and objections are made without prejudice to, and are not a waiver of, Plaintiffs' right to rely on other facts or documents at trial.

Plaintiffs reserve all objections to the competence, relevance, materiality, or admissibility at trial of any information or documents requested or identified by any party. The inadvertent disclosure of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such information or any other information.

The production of information and/or documents pursuant to this response is made without waiving, or intending to waive, but on the contrary reserving and intending to reserve: (a) the right to object on any grounds to the use of documents or information produced pursuant to this response in this or any other action or proceeding; (b) the right to object on any and all grounds, at any time, to other requests for production or other discovery mechanisms or proceedings; and (c) the right at any time to revise, correct, or supplement this response.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 38 (Numbered 36 By GEO):

Identify the source, amount, and terms of any third-party litigation financing used by Plaintiffs in this Lawsuit. For each source of financing, identify the contact information for each such source, whether individual or organization.

### RESPONSE TO INTERROGATORY NO. 38:

Plaintiff objects that this interrogatory is irrelevant to the claims and defenses in this case, and is therefore beyond the scope of discovery. Disclosure of the information described in this interrogatory is not authorized or required by the Federal Rules of Civil Procedure. Moreover, this interrogatory is harassing insofar as the request for contact information appears intended to equip Defendant with the means to independently interfere, outside of this litigation, with

Plaintiff's access to funds that might support their claims for restitution for Defendant's violations of the law.

**INTERROGATORY NO. 39 (Numbered 37 By GEO):**

Describe all actions taken by GEO that You allege constitute "force, threats of force, physical restraint, or threats of physical restraint" under 18 U.S.C. § 1589(a)(1).

**RESPONSE TO INTERROGATORY NO. 39:**

Plaintiff objects to this interrogatory as follows:

1. This interrogatory is vague in its use of the term "You."[2]  First, this interrogatory does not specify sufficiently which acts it seeks to identify.  Plaintiffs respond to this interrogatory based on the understanding that it seeks acts that were directly experienced by the individual named Plaintiffs, based on GEO's representations.  Second, although GEO clarified in a conference on April 30, 2020 that this interrogatory sought individualized responses from each of the named Plaintiffs, this interrogatory is phrased in terms of Plaintiffs' allegations, which are not styled as individual claims, but rather as classwide claims and allegations that derive from GEO's policies and practices that were common to the TVPA Class.  Accordingly, Plaintiffs allege in this case that the individual acts which each of them experienced are part of a combination of acts which constitute a unified

---

[2]    This set of interrogatories purport to incorporate the definitions from GEO's Second Set of Interrogatories, served on November 8, 2017 ("GEO's 2d Rogs").  GEO's 2d Rogs state that "'you' . . . refers to Plaintiffs in this Lawsuit, and any agent or representative of Plaintiffs."  It is unclear whether "Plaintiffs" in the first clause refers to the named Plaintiffs who appear in the caption of the lawsuit, or to members of the TVPA Class, which had been certified as of the date of GEO's 2d Rogs.  The term "agent or representative" further confuses matters, as if does not specify whether it is intended to refer to attorneys or other agents, or to the TVPA Class representatives (i.e., the named Plaintiffs); to the extent that the term refers to the latter, it creates further ambiguity as to the meaning of the term "Plaintiffs" in the preceding clause, as it suggests that "any agent or representative of Plaintiffs" could refer to a distinct category from "Plaintiffs."

"scheme, plan, or pattern intended to cause" the members of the TVPA Class to believe that if they did not perform labor under GEO's HUSP, they would suffer serious harm and/or physical restraint.

2. While Plaintiff responds to this interrogatory below as it is drafted (subject to Objection 1), the response to this interrogatory should not be read in isolation from the responses to Interrogatory Nos. 41, 43, and 45 below. The TVPA prohibits persons from obtaining labor "by any one of, or *by any combination of*" the means referred to in each of these interrogatories.

Subject to these objections, Plaintiff Alexakhina responds to this interrogatory by incorporating her responses to GEO's Interrogatory Nos. 27 and 28, which were served on Defendant on January 31, 2018. Moreover, Plaintiff alleges that GEO communicated in the Detainee Handbook, Local Supplement, Bates No. PL000029-55, that she and other members of the TVPA Class could be subjected to discipline, including solitary confinement, for refusing to clean pursuant to the HUSP. *Id*. at PL000047, 53-55. GEO also communicated in an orientation video shown to detainees that they would be subject to discipline for failing to follow rules that included mandatory cleaning pursuant to the HUSP. *See* GEO_MEN00052387 at slides 2, 7.

**INTERROGATORY NO. 40 (Numbered 38 By GEO):**

Describe all tasks You completed as a result of the "force, threats of force, physical restraint, or threats of physical restraint" identified in response to Interrogatory Number [39].

**RESPONSE TO INTERROGATORY NO. 40:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39, Objections 1 and 2, and further objects that the cleaning tasks described in

this response were completed as the result of a combination of the acts described in response to Interrogatory Nos. 39, 41, 43, and 45.

Subject to these objections, Plaintiff Alexakhina responds to this interrogatory by incorporating her responses to GEO's Interrogatory Nos. 29, 30, and 32, which were served on Defendant on January 31, 2018.

**INTERROGATORY NO. 41 (Numbered 39 By GEO):**

Describe all actions taken by GEO that You allege constitute "serious harm or threats of serious harm" under 18 U.S.C. § 1589(a)(2).

**RESPONSE TO INTERROGATORY NO. 41:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2). See Plaintiff's response to Interrogatory No. 39.

**INTERROGATORY NO. 42 (Numbered 40 By GEO):**

Describe all tasks You completed as a result of the "serious harm or threats of serious harm" identified in response to Interrogatory Number [41].

**RESPONSE TO INTERROGATORY NO. 42:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40. See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 43 (Numbered 41 By GEO):**

Describe all actions taken by GEO that You allege constitute "the abuse or threatened abuse of law or legal process" under 18 U.S.C. § 1589(a)(3).

**RESPONSE TO INTERROGATORY NO. 43:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Alexakhina responds to this interrogatory that GEO knowingly caused her to believe that disciplinary infractions, including refusal to comply with GEO's HUSP, could have adverse consequences in her immigration proceeding that was pending during her confinement at the Aurora facility.

**INTERROGATORY NO. 44 (Numbered 42 By GEO):**

Describe all tasks You completed as a result of the "the abuse or threatened abuse of law or legal process" identified in response to Interrogatory Number [43].

**RESPONSE TO INTERROGATORY NO. 44:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40.  See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 45 (Numbered 43 By GEO):**

Describe all actions taken by GEO that You allege constitute "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint" under 18 U.S.C. § 1589(a)(4).

**RESPONSE TO INTERROGATORY NO. 45:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Alexakhina responds that, as described in response to Interrogatory Nos. 39-42, she alleges that GEO coerced her and members of the TVPA class to perform work through the HUSP using threats of discipline, including solitary confinement, and by subjecting detainees to discipline, including solitary confinement, for refusing to clean under the HUSP.  Specific instances of this scheme, plan, and pattern are identified in response to Interrogatory No. 39.

**INTERROGATORY NO. 46 (Numbered 44 By GEO):**

Describe all tasks You completed as a result of "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint" identified in response to Interrogatory Number [45].

**RESPONSE TO INTERROGATORY NO. 46:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40.  See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 47 (Numbered 45 By GEO):**

Identify the categories and amounts of damages You seek on Your 18 U.S.C. § 1589 claim and for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 47:**

Plaintiff seeks compensatory damages based on the fair market value of the work she performed pursuant to GEO's HUSP.  *See* ECF No. 149 at 8.  For a specific estimate of the number of hours that Plaintiff worked under the HUSP, see Plaintiff's responses to GEO's Interrogatory Nos. 29, 30, and 32, which were served on Defendant on January 31, 2018. Plaintiff will seek a determination of fair market value based on GEO's records of days worked and types of work performed under the HUSP, at rates of pay and accounting for fringe benefits equivalent to what GEO would have paid for equivalent labor performed by GEO employees.  In addition, Plaintiff seeks punitive damages in an amount to be determined by the jury in this case, and attorneys' fees and costs in an amount to be determined by the Court, following Plaintiff's submission of a fee petition at the conclusion of this litigation.

**INTERROGATORY NO. 48 (Numbered 46 By GEO):**

Identify the categories and amounts of damages You seek on Your unjust enrichment claim and for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 48:**

Plaintiff seeks restitution in the form of compensatory damages based on the fair market value of the work she performed pursuant to GEO's Voluntary Work Program ("VWP"), minus amounts that GEO paid her pursuant to the VWP. *See* ECF No. 149 at 6-8. For a specific estimate of the hours that Plaintiff worked under the VWP, see Plaintiff's response to GEO's Interrogatory No. 31, which was served on Defendant on January 31, 2018. For janitorial positions, the methodology for calculating the fair market value of Plaintiff's labor is set forth in the Rule 26(a)(2) report of Jeffrey Edelstein. For laundry positions, the methodology for calculating the fair market value of Plaintiff's labor is set forth in the Rule 26(a)(2) report of Matthew Alexander. For all other VWP positions, fair market value will be based on GEO's records of days worked and types of work performed under the VWP, at rates of pay and accounting for fringe benefits equivalent to what GEO would have paid for equivalent labor performed by GEO employees

Plaintiff alternatively seeks restitution in the form of disgorgement of the portion of GEO's profits under the Aurora contract that are attributable to the benefit Plaintiff conferred upon GEO. GEO's profits may be ascertained through GEO's profit and loss statements. GEO's relative contribution to its profits under the Aurora contract may be ascertained through GEO's pricing spreadsheets, which show the cost to GEO of providing services to ICE through the Aurora contract. Plaintiff's contribution to GEO's profits may be measured by the fair market value of her labor, which is determinable through the methods described above. The relative

value of each party's contribution to GEO's profits will establish the percentage of GEO's

profits, during the period covered by Plaintiffs' unjust enrichment claims, which Plaintiff seeks

as restitution.

In addition, Plaintiff seeks exemplary damages in an amount to be determined by the jury

in this case.

**INTERROGATORY NO. 49 (Numbered 47 By GEO):**

For Your unjust enrichment claim, identify each and every benefit that You allege was conferred

upon GEO.

**RESPONSE TO INTERROGATORY NO. 49:**

Plaintiff objects that this interrogatory is vaguely worded in several respects. First, it

does not specify what source or sources of benefits it seeks to identify; Plaintiff presumes that

the interrogatory refers to benefits conferred by labor she performed. Moreover, Plaintiff infers

that this interrogatory is therefore intended to be confined to the three-year time period covered

by the unjust enrichment claim in this case. In addition to these ambiguities, the interrogatory's

use of the word "You" is ambiguous for the reasons explained in response to Interrogatory 39

above. Plaintiff further objects that the use of "each and every" is ambiguous, but appears to

seek an itemized list of every task Plaintiff completed over the course of a three-year period. To

the extent that this interrogatory seeks such a list, Plaintiff objects that this degree of specificity

is not required to prove Plaintiffs' unjust enrichment claim; the extent of the benefit conferred by

Plaintiffs will be proven through the means described in response to Interrogatory No. 51 below.

For a specific estimate of the hours that Plaintiff worked under the VWP, see Plaintiff's response to GEO's Interrogatory No. 31, which was served on Defendant on January 31, 2018.[3]

**INTERROGATORY NO. 50 (Numbered 48 By GEO):**

For each benefit identified in response to Interrogatory [49], identify and describe why it would be unjust for GEO to retain each such benefit without additional payment.

**RESPONSE TO INTERROGATORY NO. 50:**

Plaintiff incorporates the objections stated in response to Interrogatory No. 49 above.

Plaintiff responds that it would be unjust for GEO to retain the benefits identified in response to Interrogatory No. 49 because GEO obtained Plaintiff's labor under circumstances of detention that are inherently coercive, and which compromised class members' agency in deciding to work for unfair wages, and because public policy prohibits underpaid labor.

**INTERROGATORY NO. 51 (Numbered 49 By GEO):**

Set forth Your trial plan for this case including, but not limited to Your trial plan for the following issues:

a. Identification of those issues that will be resolved as common issues for all putative class members and how these issues will be resolved;

b. Identification of those issues that will be resolved on an individual basis for all putative class members (including, but not limited to, causation, injury, reliance, affirmative defenses and damages) and how these issues will be resolved;

c. Process for resolving Class Representative Claims including any limitations on the claims that Class Representatives can litigate;

d. Process for resolving Absent Class Member Claims including any limitations on the claims that Absent Class Members can litigate; and

---

[3]    For the method of measuring the value of this labor, Plaintiff refers GEO to her response to Interrogatory No. 48.

e.    Identification of the process that Plaintiffs propose be used for the calculation and distribution of any damages that may be awarded in this case to putative class members.

**RESPONSE TO INTERROGATORY NO. 51:**

Plaintiffs object that this interrogatory is vague in its use of the term "trial plan," as it does not describe the proposed elements of such a plan or point to any rule describing or requiring such a plan.  Plaintiffs further object that subparts c. and d. of this interrogatory are vague in their undefined distinction between "Class Representative Claims" and "Absent Class Member Claims."  The claims in this case are identified in the Complaint, and are pled on behalf of the Classes pled in the Complaint and certified by the Court.  As in all properly certified class litigation, the representative Plaintiffs' claims are typical of the claims of the Class.  *See* ECF No. 57 (Class Certification Order) at 7-10.  There is therefore no distinction between claims pursued in this litigation by the named Plaintiffs and the claims pursued by the absent Class Members.

Plaintiffs further object that subpart e. of this interrogatory is premature, as no verdict has been rendered and no damages awarded.  The calculation of those damages will be decided by the Jury and the Court, and Plaintiffs will argue for the methodologies described in response to Interrogatories 47 and 48.  To the extent that damages are awarded to the Plaintiff Class, the distribution of those damages will be a matter for the Court to decide.  Depending on the extent and nature of the damages award, Plaintiffs will request that the funds be distributed through some combination of direct distribution to Class Members, fluid recovery, and/or distribution to a *cy pres* designee.  *See generally* 4 Newberg on Class Actions § 12:27 (5th ed.) (describing methods of distributing damages in class actions)

With respect to subparts a. and b., Plaintiffs object that the interrogatory draws an erroneous distinction between "common issues" and "individual" issues. Plaintiffs respond as to subpart b. that there are no individual issues to be resolved through the trial in this action; that all issues tried to the Jury or the Court[4] will be tried on a classwide basis through common proof. Plaintiffs respond as to subpart a. as follows. The response below describes only those issues on which Plaintiffs bear the burden of proof. It is not Plaintiffs' responsibility to propose a plan for how GEO will prove its affirmative defenses at trial.

1.    Trafficking Victims Protection Act claims:

    a.    Whether GEO obtained the Class Members' labor.

        i.    This element will be proven through GEO's records, policies, and the testimony of its corporate officers, as well as the testimony of eyewitness detainees.

    b.    Whether GEO used a combination of force, threats of force, physical restraint, threats of physical restraint, serious harm, threats of serious harm, or a scheme or plan intended to cause the belief that the Class Members would suffer serious harm or physical restraint.

        i.    This element will be proven through GEO's policies and other documents, the testimony of its corporate officers, and the testimony of eyewitnesses. The nature of the harm caused by GEO's use of solitary confinement will be discussed through the expert testimony of Dr. Stuart Grassian.

---

[4]    Plaintiffs' responses herein are not intended to express any position as to which claims or questions should be put to the Jury as opposed to the Court.

    c.      Whether GEO's acts described in part b. above caused the Class Members to provide labor to GEO.

        i.      This element will be proven through the testimony of eyewitnesses regarding the nature of detention in Aurora and the use of solitary confinement and threats thereof, as well as through the expert testimony of Dr. Stuart Grassian.

    d.      Whether GEO committed the above acts knowingly.

        i.      This element will be proven through the testimony of GEO's corporate officers.

    e.      Whether GEO's actions warrant the imposition of punitive damages.

        i.      This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

2.      Unjust Enrichment claim:

    a.      Whether GEO received a benefit.

        i.      This element will be proven through GEO's records and policies, the testimony of its corporate officers, and the testimony of eyewitness detainees.  The extent of the benefit will be proven in part through the expert testimony of Jeffrey Edelstein and Matthew Alexander.

    b.      Whether GEO received the benefit at Class Members' expense.

        i.      This element will be proven through the testimony of eyewitness detainees, as well as the testimony of GEO's corporate officers.

c.    Whether the circumstances would make retention of that benefit unjust.

    i.    This element will be proven through the testimony of eyewitness detainees, as well as through the expert testimony of Dr. Stuart Grassian.

d.    Whether GEO's actions warrant the remedy of disgorgement of GEO's profits.

    i.    This element will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

e.    The fair apportionment of GEO's profits under the Aurora contract, as a measure of damages pursuant to the remedy of disgorgement.

    i.    This element will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

f.    Whether and to what extent GEO's actions warrant the imposition of exemplary damages.

    i.    This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

Dated: May 26, 2020          By:   */s/ Michael J. Scimone*
                        Michael J. Scimone

                 **OUTTEN & GOLDEN LLP**
                 Michael J. Scimone
                 685 Third Avenue, 25th Floor

New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-Mail: mscimone@outtengolden.com

Rachel Dempsey
Adam Koshkin
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: rdempsey@outtengolden.com
E-Mail: akoshkin@outtengolden.com

**TOWARDS JUSTICE**
Juno Turner
Alexander Hood
David Seligman
Brianne Power
1410 High St., Suite 300
Denver, CO 80218
(720) 441-2236
juno@towardsjustice.org
alex@towardsjustice.org
david@towardsjustice.org
brianne@towardsjustice.org

**LAW OFFICE OF R. ANDREW FREE**
R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

**MILSTEIN LAW OFFICE**
Brandt Milstein
595 Canyon Boulevard
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

**THE KELMAN BEUSCHER FIRM**
Andrew Turner
600 Grant St., Suite 450
Denver, CO 80203
(303) 333-7751

aturner@laborlawdenver.com

**MEYER LAW OFFICE, P.C.**
Hans Meyer
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*

DocuSign Envelope ID: 1D056423-52A9-4FE7-8A28-D852FEA55EF7

**VERIFICATION**

I, Olga Alexakhina, verify subject to the penalty of perjury that the foregoing

SUPPLEMENTAL RESPONSES TO DEFENDANT THE GEO GROUP, INC.'S SIXTH SET

OF INTERROGATORIES are true and correct to the best of my knowledge and belief.

Dated: May __26__, 2020                          By: _____

                                                      Olga Alexakhina

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

|  |  |
|---|---|
| ALEJANDRO MENOCAL, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>THE GEO GROUP, INC.,<br><br>    Defendant. | No. 14 Civ. 2887 (JLK) |

**PLAINTIFF DAGOBERTO VIZGUERRA'S SUPPLEMENTAL RESPONSES TO DEFENDANT THE GEO GROUP, INC.'S SIXTH[1] SET OF INTERROGATORIES**

Pursuant to Rules 33 of the Federal Rules of Civil Procedure and the Local Rules of the District of Colorado, Plaintiff Dagoberto Vizguerra, by his attorneys, makes the following supplemental response to Defendant's Sixth Set of Interrogatories, dated March 6, 2020.

**PRELIMINARY STATEMENT**

All responses to the following Interrogatories are based on information currently known to Plaintiffs and are provided without prejudice to Plaintiffs' right to submit additional information, should it become known. Plaintiffs anticipate that as investigation and trial preparation continue, it is possible that additional facts and witnesses may become known, which may in turn warrant additions to or changes in the responses provided herein. These responses are made in a good faith effort to supply such information as is presently known to Plaintiffs.

---

[1] The set of interrogatories to which this pleading responds was styled incorrectly as "GEO Group, Inc.'s Fourth Set of Interrogatories." GEO's Fourth set of Interrogatories was served on November 14, 2019, and its Fifth set of Interrogatories was served on November 15, 2019. The numbering of individual interrogatories is, accordingly, corrected herein, to reflect the fact that GEO has served a total of 37 interrogatories prior to serving the current set.

These responses and objections are made without prejudice to, and are not a waiver of, Plaintiffs'
right to rely on other facts or documents at trial.

Plaintiffs reserve all objections to the competence, relevance, materiality, or admissibility
at trial of any information or documents requested or identified by any party.  The inadvertent
disclosure of any privileged information shall not be deemed to be a waiver of any applicable
privilege with respect to such information or any other information.

The production of information and/or documents pursuant to this response is made without
waiving, or intending to waive, but on the contrary reserving and intending to reserve:  (a) the right
to object on any grounds to the use of documents or information produced pursuant to this response
in this or any other action or proceeding; (b) the right to object on any and all grounds, at any time,
to other requests for production or other discovery mechanisms or proceedings; and (c) the right
at any time to revise, correct, or supplement this response.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 38 (Numbered 36 By GEO):

Identify the source, amount, and terms of any third-party litigation financing used by Plaintiffs in
this Lawsuit. For each source of financing, identify the contact information for each such source,
whether individual or organization.

### RESPONSE TO INTERROGATORY NO. 38:

Plaintiff objects that this interrogatory is irrelevant to the claims and defenses in this case,
and is therefore beyond the scope of discovery.  Disclosure of the information described in this
interrogatory is not authorized or required by the Federal Rules of Civil Procedure.  Moreover,
this interrogatory is harassing insofar as the request for contact information appears intended to
equip Defendant with the means to independently interfere, outside of this litigation, with

Plaintiff's access to funds that might support their claims for restitution for Defendant's violations of the law.

**INTERROGATORY NO. 39 (Numbered 37 By GEO):**

Describe all actions taken by GEO that You allege constitute "force, threats of force, physical restraint, or threats of physical restraint" under 18 U.S.C. § 1589(a)(1).

**RESPONSE TO INTERROGATORY NO. 39:**

Plaintiff objects to this interrogatory as follows:

1. This interrogatory is vague in its use of the term "You."[2] First, this interrogatory does not specify sufficiently which acts it seeks to identify. Plaintiffs respond to this interrogatory based on the understanding that it seeks acts that were directly experienced by the individual named Plaintiffs, based on GEO's representations. Second, although GEO clarified in a conference on April 30, 2020 that this interrogatory sought individualized responses from each of the named Plaintiffs, this interrogatory is phrased in terms of Plaintiffs' allegations, which are not styled as individual claims, but rather as classwide claims and allegations that derive from GEO's policies and practices that were common to the TVPA Class. Accordingly, Plaintiffs allege in this case that the individual acts which each of them experienced are part of a combination of acts which constitute a unified

---

[2]    This set of interrogatories purport to incorporate the definitions from GEO's Second Set of Interrogatories, served on November 8, 2017 ("GEO's 2d Rogs"). GEO's 2d Rogs state that "'you' . . . refers to Plaintiffs in this Lawsuit, and any agent or representative of Plaintiffs." It is unclear whether "Plaintiffs" in the first clause refers to the named Plaintiffs who appear in the caption of the lawsuit, or to members of the TVPA Class, which had been certified as of the date of GEO's 2d Rogs. The term "agent or representative" further confuses matters, as it does not specify whether it is intended to refer to attorneys or other agents, or to the TVPA Class representatives (i.e., the named Plaintiffs); to the extent that the term refers to the latter, it creates further ambiguity as to the meaning of the term "Plaintiffs" in the preceding clause, as it suggests that "any agent or representative of Plaintiffs" could refer to a distinct category from "Plaintiffs."

"scheme, plan, or pattern intended to cause" the members of the TVPA Class to believe that if they did not perform labor under GEO's HUSP, they would suffer serious harm and/or physical restraint.

2. While Plaintiff responds to this interrogatory below as it is drafted (subject to Objection 1), the response to this interrogatory should not be read in isolation from the responses to Interrogatory Nos. 41, 43, and 45 below. The TVPA prohibits persons from obtaining labor "by any one of, or *by any combination of*" the means referred to in each of these interrogatories.

Subject to these objections, Plaintiff Vizguerra responds to this interrogatory by incorporating his responses to GEO's Interrogatory Nos. 27 and 28, which were served on Defendant on February 13, 2018. Moreover, Plaintiff alleges that GEO communicated in the Detainee Handbook, Local Supplement, Bates No. PL000029-55, that he and other members of the TVPA Class could be subjected to discipline, including solitary confinement, for refusing to clean pursuant to the HUSP. *Id*. at PL000047, 53-55. GEO also communicated in an orientation video shown to detainees that they would be subject to discipline for failing to follow rules that included mandatory cleaning pursuant to the HUSP. *See* GEO_MEN00052387 at slides 2, 7.

**INTERROGATORY NO. 40 (Numbered 38 By GEO):**

Describe all tasks You completed as a result of the "force, threats of force, physical restraint, or threats of physical restraint" identified in response to Interrogatory Number [39].

**RESPONSE TO INTERROGATORY NO. 40:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39, Objections 1 and 2, and further object that the cleaning tasks described in

this response were completed as the result of a combination of the acts described in response to Interrogatory Nos. 39, 41, 43, and 45.

Subject to these objections, Plaintiff Vizguerra responds to this interrogatory by incorporating his responses to GEO's Interrogatory Nos. 29, 30, and 32, which were served on Defendant on February 13, 2018.

**INTERROGATORY NO. 41 (Numbered 39 By GEO):**

Describe all actions taken by GEO that You allege constitute "serious harm or threats of serious harm" under 18 U.S.C. § 1589(a)(2).

**RESPONSE TO INTERROGATORY NO. 41:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).  See Plaintiff's response to Interrogatory No. 39.

**INTERROGATORY NO. 42 (Numbered 40 By GEO):**

Describe all tasks You completed as a result of the "serious harm or threats of serious harm" identified in response to Interrogatory Number [41].

**RESPONSE TO INTERROGATORY NO. 42:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40.  See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 43 (Numbered 41 By GEO):**

Describe all actions taken by GEO that You allege constitute "the abuse or threatened abuse of law or legal process" under 18 U.S.C. § 1589(a)(3).

**RESPONSE TO INTERROGATORY NO. 43:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Vizguerra responds to this interrogatory that GEO knowingly caused him to believe that disciplinary infractions, including refusal to comply with GEO's HUSP, could have adverse consequences in his immigration proceeding that was pending during his confinement at the Aurora facility.  Specifically, detention officers regularly told Plaintiff Vizguerra that if he did not listen to them, any resulting infraction could be brought to the Immigration Judge's attention and harm Plaintiff Vizguerra's case.

**INTERROGATORY NO. 44 (Numbered 42 By GEO):**

Describe all tasks You completed as a result of the "the abuse or threatened abuse of law or legal process" identified in response to Interrogatory Number [43].

**RESPONSE TO INTERROGATORY NO. 44:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40.  See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 45 (Numbered 43 By GEO):**

Describe all actions taken by GEO that You allege constitute "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint" under 18 U.S.C. § 1589(a)(4).

**RESPONSE TO INTERROGATORY NO. 45:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Vizguerra responds that, as described in response to Interrogatory Nos. 39-42, he alleges that GEO coerced him and members of the TVPA class to perform work through the HUSP using threats of discipline, including solitary confinement, and by subjecting detainees to

discipline, including solitary confinement, for refusing to clean under the HUSP.  Specific

instances of this scheme, plan, and pattern are identified in response to Interrogatory No. 39.

**INTERROGATORY NO. 46 (Numbered 44 By GEO):**

Describe all tasks You completed as a result of "any scheme, plan, or pattern intended to cause

the person to believe that, if that person did not perform such labor or services, that person or

another person would suffer serious harm or physical restraint" identified in response to

Interrogatory Number [45].

**RESPONSE TO INTERROGATORY NO. 46:**

Plaintiff objects to this interrogatory for the reasons described in response to

Interrogatory No. 40.  See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 47 (Numbered 45 By GEO):**

Identify the categories and amounts of damages You seek on Your 18 U.S.C. § 1589 claim and

for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 47:**

Plaintiff seeks compensatory damages based on the fair market value of the work he

performed pursuant to GEO's HUSP.  *See* ECF No. 149 at 8.  For a specific estimate of the

number of hours that Plaintiff worked under the HUSP, see Plaintiff's responses to GEO's

Interrogatory Nos. 29, 30, and 32, which were served on Defendant on February 13, 2018.

Plaintiff will seek a determination of fair market value based on GEO's records of days worked

and types of work performed under the HUSP, at rates of pay and accounting for fringe benefits

equivalent to what GEO would have paid for equivalent labor performed by GEO employees.  In

addition, Plaintiff seeks punitive damages in an amount to be determined by the jury in this case,

and attorneys' fees and costs in an amount to be determined by the Court, following Plaintiff's

submission of a fee petition at the conclusion of this litigation.

**INTERROGATORY NO. 48 (Numbered 46 By GEO):**

Identify the categories and amounts of damages You seek on Your unjust enrichment claim and

for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 48:**

Plaintiffs seeks restitution in the form of compensatory damages based on the fair market

value of the work he performed pursuant to GEO's Voluntary Work Program ("VWP"), minus

amounts that GEO paid him pursuant to the VWP.  *See* ECF No. 149 at 6-8.  For a specific

estimate of the hours that Plaintiff worked under the VWP, see Plaintiff's response to GEO's

Interrogatory No. 31, which was served on Defendant on February 13, 2018.  For janitorial

positions, the methodology for calculating the fair market value of Plaintiff's labor is set forth in

the Rule 26(a)(2) report of Jeffrey Edelstein.  For laundry positions, the methodology for

calculating the fair market value of Plaintiff's labor is set forth in the Rule 26(a)(2) report of

Matthew Alexander.  For all other VWP positions, fair market value will be based on GEO's

records of days worked and types of work performed under the VWP, at rates of pay and

accounting for fringe benefits equivalent to what GEO would have paid for equivalent labor

performed by GEO employees

Plaintiff alternatively seeks restitution in the form of disgorgement of the portion of

GEO's profits under the Aurora contract that are attributable to the benefit Plaintiff conferred

upon GEO.  GEO's profits may be ascertained through GEO's profit and loss statements.  GEO's

relative contribution to its profits under the Aurora contract may be ascertained through GEO's

pricing spreadsheets, which show the cost to GEO of providing services to ICE through the

Aurora contract.  Plaintiff's contribution to GEO's profits may be measured by the fair market value of his labor, which is determinable through the methods described above.  The relative value of each party's contribution to GEO's profits will establish the percentage of GEO's profits, during the period covered by Plaintiffs' unjust enrichment claims, which Plaintiff seeks as restitution.

In addition, Plaintiff seeks exemplary damages in an amount to be determined by the jury in this case.

**INTERROGATORY NO. 49 (Numbered 47 By GEO):**

For Your unjust enrichment claim, identify each and every benefit that You allege was conferred upon GEO.

**RESPONSE TO INTERROGATORY NO. 49:**

Plaintiff objects that this interrogatory is vaguely worded in several respects.  First, it does not specify what source or sources of benefits it seeks to identify; Plaintiff presumes that the interrogatory refers to benefits conferred by labor he performed.  Moreover, Plaintiff infers that this interrogatory is therefore intended to be confined to the three-year time period covered by the unjust enrichment claim in this case.  In addition to these ambiguities, the interrogatory's use of the word "You" is ambiguous for the reasons explained in response to Interrogatory 39 above.  Plaintiff further objects that the use of "each and every" is ambiguous, but appears to seek an itemized list of every task Plaintiff completed over the course of a three-year period.  To the extent that this interrogatory seeks such a list, Plaintiff objects that this degree of specificity is not required to prove Plaintiffs' unjust enrichment claim; the extent of the benefit conferred by Plaintiffs will be proven through the means described in response to Interrogatory No. 51 below.

For a specific estimate of the hours that Plaintiff worked under the VWP, see Plaintiff's
response to GEO's Interrogatory No. 31, which was served on Defendant on February 13, 2018.[3]

**INTERROGATORY NO. 50 (Numbered 48 By GEO):**

For each benefit identified in response to Interrogatory [49], identify and describe why it would
be unjust for GEO to retain each such benefit without additional payment.

**RESPONSE TO INTERROGATORY NO. 50:**

Plaintiff incorporates the objections stated in response to Interrogatory No. 49 above.

Plaintiff responds that it would be unjust for GEO to retain the benefits identified in
response to Interrogatory No. 49 because GEO obtained Plaintiff's labor under circumstances of
detention that are inherently coercive, and which compromised class members' agency in
deciding to work for unfair wages, and because public policy prohibits underpaid labor.

**INTERROGATORY NO. 51 (Numbered 49 By GEO):**

Set forth Your trial plan for this case including, but not limited to Your trial plan for the
following issues:

    a.    Identification of those issues that will be resolved as common issues for all
putative class members and how these issues will be resolved;

    b.    Identification of those issues that will be resolved on an individual basis for all
putative class members (including, but not limited to, causation, injury, reliance,
affirmative defenses and damages) and how these issues will be resolved;

    c.    Process for resolving Class Representative Claims including any limitations on the
claims that Class Representatives can litigate;

    d.    Process for resolving Absent Class Member Claims including any limitations on
the claims that Absent Class Members can litigate; and

---

[3]    For the method of measuring the value of this labor, Plaintiffs refer GEO to their
response to Interrogatory No. 48.

e.    Identification of the process that Plaintiffs propose be used for the calculation and distribution of any damages that may be awarded in this case to putative class members.

**<u>RESPONSE TO INTERROGATORY NO. 51</u>:**

Plaintiffs object that this interrogatory is vague in its use of the term "trial plan," as it does not describe the proposed elements of such a plan or point to any rule describing or requiring such a plan.  Plaintiffs further object that subparts c. and d. of this interrogatory are vague in their undefined distinction between "Class Representative Claims" and "Absent Class Member Claims."  The claims in this case are identified in the Complaint, and are pled on behalf of the Classes pled in the Complaint and certified by the Court.  As in all properly certified class litigation, the representative Plaintiffs' claims are typical of the claims of the Class.  *See* ECF No. 57 (Class Certification Order) at 7-10.  There is therefore no distinction between claims pursued in this litigation by the named Plaintiffs and the claims pursued by the absent Class Members.

Plaintiffs further object that subpart e. of this interrogatory is premature, as no verdict has been rendered and no damages awarded.  The calculation of those damages will be decided by the Jury and the Court, and Plaintiffs will argue for the methodologies described in response to Interrogatories 47 and 48.  To the extent that damages are awarded to the Plaintiff Class, the distribution of those damages will be a matter for the Court to decide.  Depending on the extent and nature of the damages award, Plaintiffs will request that the funds be distributed through some combination of direct distribution to Class Members, fluid recovery, and/or distribution to a *cy pres* designee.  *See generally* 4 Newberg on Class Actions § 12:27 (5th ed.) (describing methods of distributing damages in class actions)

With respect to subparts a. and b., Plaintiffs object that the interrogatory draws an erroneous distinction between "common issues" and "individual" issues.  Plaintiffs respond as to subpart b. that there are no individual issues to be resolved through the trial in this action; that all issues tried to the Jury or the Court[4] will be tried on a classwide basis through common proof. Plaintiffs respond as to subpart a. as follows.  The response below describes only those issues on which Plaintiffs bear the burden of proof.  It is not Plaintiffs' responsibility to propose a plan for how GEO will prove its affirmative defenses at trial.

1.    Trafficking Victims Protection Act claims:

    a.    Whether GEO obtained the Class Members' labor.

        i.    This element will be proven through GEO's records, policies, and the testimony of its corporate officers, as well as the testimony of eyewitness detainees.

    b.    Whether GEO used a combination of force, threats of force, physical restraint, threats of physical restraint, serious harm, threats of serious harm, or a scheme or plan intended to cause the belief that the Class Members would suffer serious harm or physical restraint.

        i.    This element will be proven through GEO's policies and other documents, the testimony of its corporate officers, and the testimony of eyewitnesses.  The nature of the harm caused by GEO's use of solitary confinement will be discussed through the expert testimony of Dr. Stuart Grassian.

---

[4]    Plaintiffs' responses herein are not intended to express any position as to which claims or questions should be put to the Jury as opposed to the Court.

c.  Whether GEO's acts described in part b. above caused the Class Members to provide labor to GEO.

  i.  This element will be proven through the testimony of eyewitnesses regarding the nature of detention in Aurora and the use of solitary confinement and threats thereof, as well as through the expert testimony of Dr. Stuart Grassian.

d.  Whether GEO committed the above acts knowingly.

  i.  This element will be proven through the testimony of GEO's corporate officers.

e.  Whether GEO's actions warrant the imposition of punitive damages.

  i.  This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

2.  Unjust Enrichment claim:

a.  Whether GEO received a benefit.

  i.  This element will be proven through GEO's records and policies, the testimony of its corporate officers, and the testimony of eyewitness detainees.  The extent of the benefit will be proven in part through the expert testimony of Jeffrey Edelstein and Matthew Alexander.

b.  Whether GEO received the benefit at Class Members' expense.

  i.  This element will be proven through the testimony of eyewitness detainees, as well as the testimony of GEO's corporate officers.

c.    Whether the circumstances would make retention of that benefit unjust.

i.    This element will be proven through the testimony of eyewitness detainees, as well as through the expert testimony of Dr. Stuart Grassian.

d.    Whether GEO's actions warrant the remedy of disgorgement of GEO's profits.

i.    This element will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

e.    The fair apportionment of GEO's profits under the Aurora contract, as a measure of damages pursuant to the remedy of disgorgement.

i.    This element will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

f.    Whether and to what extent GEO's actions warrant the imposition of exemplary damages.

i.    This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

Dated: May 28, 2020                    By:    _/s/ Michael J. Scimone_____
                                               Michael J. Scimone

                                        **OUTTEN & GOLDEN LLP**
                                        Michael J. Scimone
                                        685 Third Avenue, 25th Floor

New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-Mail: mscimone@outtengolden.com

Rachel Dempsey
Adam Koshkin
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: rdempsey@outtengolden.com
E-Mail: akoshkin@outtengolden.com

**TOWARDS JUSTICE**
Juno Turner
Alexander Hood
David Seligman
Brianne Power
1410 High St., Suite 300
Denver, CO 80218
(720) 441-2236
juno@towardsjustice.org
alex@towardsjustice.org
david@towardsjustice.org
brianne@towardsjustice.org

**LAW OFFICE OF R. ANDREW FREE**
R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

**MILSTEIN LAW OFFICE**
Brandt Milstein
595 Canyon Boulevard
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

**THE KELMAN BEUSCHER FIRM**
Andrew Turner
600 Grant St., Suite 450
Denver, CO 80203
(303) 333-7751

aturner@laborlawdenver.com

**MEYER LAW OFFICE, P.C.**
Hans Meyer
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*

## VERIFICATION

I, Dagoberto Vizguerra, verify subject to the penalty of perjury that the foregoing

SUPPLEMENTAL RESPONSES TO DEFENDANT THE GEO GROUP, INC.'S SIXTH SET

OF INTERROGATORIES are true and correct to the best of my knowledge and belief.

Dated: May 28, 2020                          By: _Dagoberto Vizguerra_

                                             Dagoberto Vizguerra

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

ALEJANDRO MENOCAL, *et al.*,

         Plaintiffs,

    v.

THE GEO GROUP, INC.,

         Defendant.

No. 14 Civ. 2887 (JLK)

## PLAINTIFF DEMETRIO VALERGA'S SUPPLEMENTAL RESPONSES TO DEFENDANT THE GEO GROUP, INC.'S SIXTH[1] SET OF INTERROGATORIES

Pursuant to Rules 33 of the Federal Rules of Civil Procedure and the Local Rules of the District of Colorado, Plaintiff Demetrio Valerga, by his attorneys, makes the following supplemental response to Defendant's Sixth Set of Interrogatories, dated March 6, 2020.

## PRELIMINARY STATEMENT

All responses to the following Interrogatories are based on information currently known to Plaintiffs and are provided without prejudice to Plaintiffs' right to submit additional information, should it become known. Plaintiffs anticipate that as investigation and trial preparation continue, it is possible that additional facts and witnesses may become known, which may in turn warrant additions to or changes in the responses provided herein. These responses are made in a good faith effort to supply such information as is presently known to Plaintiffs.

---

[1]    The set of interrogatories to which this pleading responds was styled incorrectly as "GEO Group, Inc.'s Fourth Set of Interrogatories." GEO's Fourth set of Interrogatories was served on November 14, 2019, and its Fifth set of Interrogatories was served on November 15, 2019. The numbering of individual interrogatories is, accordingly, corrected herein, to reflect the fact that GEO has served a total of 37 interrogatories prior to serving the current set.

These responses and objections are made without prejudice to, and are not a waiver of, Plaintiffs'
right to rely on other facts or documents at trial.

Plaintiffs reserve all objections to the competence, relevance, materiality, or admissibility
at trial of any information or documents requested or identified by any party. The inadvertent
disclosure of any privileged information shall not be deemed to be a waiver of any applicable
privilege with respect to such information or any other information.

The production of information and/or documents pursuant to this response is made without
waiving, or intending to waive, but on the contrary reserving and intending to reserve: (a) the right
to object on any grounds to the use of documents or information produced pursuant to this response
in this or any other action or proceeding; (b) the right to object on any and all grounds, at any time,
to other requests for production or other discovery mechanisms or proceedings; and (c) the right
at any time to revise, correct, or supplement this response.

## RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 38 (Numbered 36 By GEO):

Identify the source, amount, and terms of any third-party litigation financing used by Plaintiffs in
this Lawsuit. For each source of financing, identify the contact information for each such source,
whether individual or organization.

## RESPONSE TO INTERROGATORY NO. 38:

Plaintiff objects that this interrogatory is irrelevant to the claims and defenses in this case,
and is therefore beyond the scope of discovery. Disclosure of the information described in this
interrogatory is not authorized or required by the Federal Rules of Civil Procedure. Moreover,
this interrogatory is harassing insofar as the request for contact information appears intended to
equip Defendant with the means to independently interfere, outside of this litigation, with

Plaintiff's access to funds that might support their claims for restitution for Defendant's violations of the law.

**INTERROGATORY NO. 39 (Numbered 37 By GEO):**

Describe all actions taken by GEO that You allege constitute "force, threats of force, physical restraint, or threats of physical restraint" under 18 U.S.C. § 1589(a)(1).

**RESPONSE TO INTERROGATORY NO. 39:**

Plaintiff objects to this interrogatory as follows:

1. This interrogatory is vague in its use of the term "You."[2]  First, this interrogatory does not specify sufficiently which acts it seeks to identify.  Plaintiffs respond to this interrogatory based on the understanding that it seeks acts that were directly experienced by the individual named Plaintiffs, based on GEO's representations.  Second, although GEO clarified in a conference on April 30, 2020 that this interrogatory sought individualized responses from each of the named Plaintiffs, this interrogatory is phrased in terms of Plaintiffs' allegations, which are not styled as individual claims, but rather as classwide claims and allegations that derive from GEO's policies and practices that were common to the TVPA Class.  Accordingly, Plaintiffs allege in this case that the individual acts which each of them experienced are part of a combination of acts which constitute a unified

---

[2]    This set of interrogatories purport to incorporate the definitions from GEO's Second Set of Interrogatories, served on November 8, 2017 ("GEO's 2d Rogs").  GEO's 2d Rogs state that "'you' . . . refers to Plaintiffs in this Lawsuit, and any agent or representative of Plaintiffs."  It is unclear whether "Plaintiffs" in the first clause refers to the named Plaintiffs who appear in the caption of the lawsuit, or to members of the TVPA Class, which had been certified as of the date of GEO's 2d Rogs.  The term "agent or representative" further confuses matters, as it does not specify whether it is intended to refer to attorneys or other agents, or to the TVPA Class representatives (i.e., the named Plaintiffs); to the extent that the term refers to the latter, it creates further ambiguity as to the meaning of the term "Plaintiffs" in the preceding clause, as it suggests that "any agent or representative of Plaintiffs" could refer to a distinct category from "Plaintiffs."

"scheme, plan, or pattern intended to cause" the members of the TVPA Class to believe
that if they did not perform labor under GEO's HUSP, they would suffer serious harm
and/or physical restraint.

2.  While Plaintiff responds to this interrogatory below as it is drafted (subject to Objection
    1), the response to this interrogatory should not be read in isolation from the responses to
    Interrogatory Nos. 41, 43, and 45 below.  The TVPA prohibits persons from obtaining
    labor "by any one of, or *by any combination of*" the means referred to in each of these
    interrogatories.

Subject to these objections, Plaintiff Valerga responds to this interrogatory by
incorporating his responses to GEO's Interrogatory Nos. 27 and 28, which were served on
Defendant on February 2, 2018, and his declaration dated August 27, 2015 (ECF No. 49-6).
Moreover, Plaintiff alleges that GEO communicated in the Detainee Handbook, Local
Supplement, Bates No. PL000029-55, that he and other members of the TVPA Class could be
subjected to discipline, including solitary confinement, for refusing to clean pursuant to the
HUSP.  *Id.* at PL000047, 53-55.  GEO also communicated in an orientation video shown to
detainees that they would be subject to discipline for failing to follow rules that included
mandatory cleaning pursuant to the HUSP.  *See* GEO_MEN00052387 at slides 2, 7.

**INTERROGATORY NO. 40 (Numbered 38 By GEO):**

Describe all tasks You completed as a result of the "force, threats of force, physical restraint, or
threats of physical restraint" identified in response to Interrogatory Number [39].

**RESPONSE TO INTERROGATORY NO. 40:**

Plaintiff objects to this interrogatory for the reasons described in response to
Interrogatory No. 39, Objections 1 and 2, and further object that the cleaning tasks described in

this response were completed as the result of a combination of the acts described in response to Interrogatory Nos. 39, 41, 43, and 45.

Subject to these objections, Plaintiff Valerga responds to this interrogatory by incorporating his responses to GEO's Interrogatory Nos. 29, 30, and 32, which were served on Defendant on February 2, 2018, and his declaration dated August 27, 2015 (ECF No. 49-6).

**INTERROGATORY NO. 41 (Numbered 39 By GEO):**

Describe all actions taken by GEO that You allege constitute "serious harm or threats of serious harm" under 18 U.S.C. § 1589(a)(2).

**RESPONSE TO INTERROGATORY NO. 41:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).  See Plaintiff's response to Interrogatory No. 39.

**INTERROGATORY NO. 42 (Numbered 40 By GEO):**

Describe all tasks You completed as a result of the "serious harm or threats of serious harm" identified in response to Interrogatory Number [41].

**RESPONSE TO INTERROGATORY NO. 42:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40.  See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 43 (Numbered 41 By GEO):**

Describe all actions taken by GEO that You allege constitute "the abuse or threatened abuse of law or legal process" under 18 U.S.C. § 1589(a)(3).

**RESPONSE TO INTERROGATORY NO. 43:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Valerga responds to this interrogatory that GEO knowingly caused him to believe that disciplinary infractions, including refusal to comply with GEO's HUSP, could have adverse consequences in his immigration proceeding that was pending during his confinement at the Aurora facility.

**INTERROGATORY NO. 44 (Numbered 42 By GEO):**

Describe all tasks You completed as a result of the "the abuse or threatened abuse of law or legal process" identified in response to Interrogatory Number [43].

**RESPONSE TO INTERROGATORY NO. 44:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40.  See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 45 (Numbered 43 By GEO):**

Describe all actions taken by GEO that You allege constitute "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint" under 18 U.S.C. § 1589(a)(4).

**RESPONSE TO INTERROGATORY NO. 45:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 39 (Objections 1 and 2).

Plaintiff Valerga responds that, as described in response to Interrogatory Nos. 39-42, he alleges that GEO coerced him and members of the TVPA class to perform work through the HUSP using threats of discipline, including solitary confinement, and by subjecting detainees to discipline, including solitary confinement, for refusing to clean under the HUSP.  Specific instances of this scheme, plan, and pattern are identified in response to Interrogatory No. 39.

**INTERROGATORY NO. 46 (Numbered 44 By GEO):**

Describe all tasks You completed as a result of "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint" identified in response to Interrogatory Number [45].

**RESPONSE TO INTERROGATORY NO. 46:**

Plaintiff objects to this interrogatory for the reasons described in response to Interrogatory No. 40. See Plaintiff's response to Interrogatory No. 40.

**INTERROGATORY NO. 47 (Numbered 45 By GEO):**

Identify the categories and amounts of damages You seek on Your 18 U.S.C. § 1589 claim and for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 47:**

Plaintiff seeks compensatory damages based on the fair market value of the work he performed pursuant to GEO's HUSP. *See* ECF No. 149 at 8. For a specific estimate of the number of hours that Plaintiff worked under the HUSP, see Plaintiff's responses to GEO's Interrogatory Nos. 29, 30, and 32, which were served on Defendant on February 2, 2018. Plaintiff will seek a determination of fair market value based on GEO's records of days worked and types of work performed under the HUSP, at rates of pay and accounting for fringe benefits equivalent to what GEO would have paid for equivalent labor performed by GEO employees. In addition, Plaintiff seeks punitive damages in an amount to be determined by the jury in this case, and attorneys' fees and costs in an amount to be determined by the Court, following Plaintiff's submission of a fee petition at the conclusion of this litigation.

**INTERROGATORY NO. 48 (Numbered 46 By GEO):**

Identify the categories and amounts of damages You seek on Your unjust enrichment claim and for each category and amount, describe how You calculated such amounts.

**RESPONSE TO INTERROGATORY NO. 48:**

Plaintiffs seeks restitution in the form of compensatory damages based on the fair market value of the work he performed pursuant to GEO's Voluntary Work Program ("VWP"), minus amounts that GEO paid him pursuant to the VWP. *See* ECF No. 149 at 6-8. For a specific estimate of the hours that Plaintiff worked under the VWP, see Plaintiff's response to GEO's Interrogatory No. 31, which was served on Defendant on February 2, 2018. For janitorial positions, the methodology for calculating the fair market value of Plaintiff's labor is set forth in the Rule 26(a)(2) report of Jeffrey Edelstein. For laundry positions, the methodology for calculating the fair market value of Plaintiff's labor is set forth in the Rule 26(a)(2) report of Matthew Alexander. For all other VWP positions, fair market value will be based on GEO's records of days worked and types of work performed under the VWP, at rates of pay and accounting for fringe benefits equivalent to what GEO would have paid for equivalent labor performed by GEO employees

Plaintiff alternatively seeks restitution in the form of disgorgement of the portion of GEO's profits under the Aurora contract that are attributable to the benefit Plaintiff conferred upon GEO. GEO's profits may be ascertained through GEO's profit and loss statements. GEO's relative contribution to its profits under the Aurora contract may be ascertained through GEO's pricing spreadsheets, which show the cost to GEO of providing services to ICE through the Aurora contract. Plaintiff's contribution to GEO's profits may be measured by the fair market value of his labor, which is determinable through the methods described above. The relative

value of each party's contribution to GEO's profits will establish the percentage of GEO's

profits, during the period covered by Plaintiffs' unjust enrichment claims, which Plaintiff seeks

as restitution.

In addition, Plaintiff seeks exemplary damages in an amount to be determined by the jury

in this case.

## INTERROGATORY NO. 49 (Numbered 47 By GEO):

For Your unjust enrichment claim, identify each and every benefit that You allege was conferred

upon GEO.

## RESPONSE TO INTERROGATORY NO. 49:

Plaintiff objects that this interrogatory is vaguely worded in several respects.  First, it

does not specify what source or sources of benefits it seeks to identify; Plaintiff presumes that

the interrogatory refers to benefits conferred by labor he performed.  Moreover, Plaintiff infers

that this interrogatory is therefore intended to be confined to the three-year time period covered

by the unjust enrichment claim in this case.  In addition to these ambiguities, the interrogatory's

use of the word "You" is ambiguous for the reasons explained in response to Interrogatory 39

above.  Plaintiff further objects that the use of "each and every" is ambiguous, but appears to

seek an itemized list of every task Plaintiff completed over the course of a three-year period.  To

the extent that this interrogatory seeks such a list, Plaintiff objects that this degree of specificity

is not required to prove Plaintiffs' unjust enrichment claim; the extent of the benefit conferred by

Plaintiffs will be proven through the means described in response to Interrogatory No. 51 below.

For a specific estimate of the hours that Plaintiff worked under the VWP, see Plaintiff's response to GEO's Interrogatory No. 31, which was served on Defendant on February 2, 2018.[3]

**INTERROGATORY NO. 50 (Numbered 48 By GEO):**

For each benefit identified in response to Interrogatory [49], identify and describe why it would be unjust for GEO to retain each such benefit without additional payment.

**RESPONSE TO INTERROGATORY NO. 50:**

Plaintiff incorporates the objections stated in response to Interrogatory No. 49 above.

Plaintiff responds that it would be unjust for GEO to retain the benefits identified in response to Interrogatory No. 49 because GEO obtained Plaintiff's labor under circumstances of detention that are inherently coercive, and which compromised class members' agency in deciding to work for unfair wages, and because public policy prohibits underpaid labor.

**INTERROGATORY NO. 51 (Numbered 49 By GEO):**

Set forth Your trial plan for this case including, but not limited to Your trial plan for the following issues:

    a.    Identification of those issues that will be resolved as common issues for all putative class members and how these issues will be resolved;

    b.    Identification of those issues that will be resolved on an individual basis for all putative class members (including, but not limited to, causation, injury, reliance, affirmative defenses and damages) and how these issues will be resolved;

    c.    Process for resolving Class Representative Claims including any limitations on the claims that Class Representatives can litigate;

    d.    Process for resolving Absent Class Member Claims including any limitations on the claims that Absent Class Members can litigate; and

---

[3] For the method of measuring the value of this labor, Plaintiffs refer GEO to their response to Interrogatory No. 48.

e.      Identification of the process that Plaintiffs propose be used for the calculation and distribution of any damages that may be awarded in this case to putative class members.

**RESPONSE TO INTERROGATORY NO. 51:**

Plaintiffs object that this interrogatory is vague in its use of the term "trial plan," as it does not describe the proposed elements of such a plan or point to any rule describing or requiring such a plan.  Plaintiffs further object that subparts c. and d. of this interrogatory are vague in their undefined distinction between "Class Representative Claims" and "Absent Class Member Claims."  The claims in this case are identified in the Complaint, and are pled on behalf of the Classes pled in the Complaint and certified by the Court.  As in all properly certified class litigation, the representative Plaintiffs' claims are typical of the claims of the Class.  *See* ECF No. 57 (Class Certification Order) at 7-10.  There is therefore no distinction between claims pursued in this litigation by the named Plaintiffs and the claims pursued by the absent Class Members.

Plaintiffs further object that subpart e. of this interrogatory is premature, as no verdict has been rendered and no damages awarded.  The calculation of those damages will be decided by the Jury and the Court, and Plaintiffs will argue for the methodologies described in response to Interrogatories 47 and 48.  To the extent that damages are awarded to the Plaintiff Class, the distribution of those damages will be a matter for the Court to decide.  Depending on the extent and nature of the damages award, Plaintiffs will request that the funds be distributed through some combination of direct distribution to Class Members, fluid recovery, and/or distribution to a *cy pres* designee.  *See generally* 4 Newberg on Class Actions § 12:27 (5th ed.) (describing methods of distributing damages in class actions)

11

With respect to subparts a. and b., Plaintiffs object that the interrogatory draws an erroneous distinction between "common issues" and "individual" issues.  Plaintiffs respond as to subpart b. that there are no individual issues to be resolved through the trial in this action; that all issues tried to the Jury or the Court[4] will be tried on a classwide basis through common proof. Plaintiffs respond as to subpart a. as follows.  The response below describes only those issues on which Plaintiffs bear the burden of proof.  It is not Plaintiffs' responsibility to propose a plan for how GEO will prove its affirmative defenses at trial.

1.      Trafficking Victims Protection Act claims:

   a.      Whether GEO obtained the Class Members' labor.

      i.      This element will be proven through GEO's records, policies, and the testimony of its corporate officers, as well as the testimony of eyewitness detainees.

   b.      Whether GEO used a combination of force, threats of force, physical restraint, threats of physical restraint, serious harm, threats of serious harm, or a scheme or plan intended to cause the belief that the Class Members would suffer serious harm or physical restraint.

      i.      This element will be proven through GEO's policies and other documents, the testimony of its corporate officers, and the testimony of eyewitnesses.  The nature of the harm caused by GEO's use of solitary confinement will be discussed through the expert testimony of Dr. Stuart Grassian.

---

[4]      Plaintiffs' responses herein are not intended to express any position as to which claims or questions should be put to the Jury as opposed to the Court.

c.      Whether GEO's acts described in part b. above caused the Class Members to provide labor to GEO.

      i.      This element will be proven through the testimony of eyewitnesses regarding the nature of detention in Aurora and the use of solitary confinement and threats thereof, as well as through the expert testimony of Dr. Stuart Grassian.

d.      Whether GEO committed the above acts knowingly.

      i.      This element will be proven through the testimony of GEO's corporate officers.

e.      Whether GEO's actions warrant the imposition of punitive damages.

      i.      This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

2.      Unjust Enrichment claim:

a.      Whether GEO received a benefit.

      i.      This element will be proven through GEO's records and policies, the testimony of its corporate officers, and the testimony of eyewitness detainees.  The extent of the benefit will be proven in part through the expert testimony of Jeffrey Edelstein and Matthew Alexander.

b.      Whether GEO received the benefit at Class Members' expense.

      i.      This element will be proven through the testimony of eyewitness detainees, as well as the testimony of GEO's corporate officers.

c.    Whether the circumstances would make retention of that benefit unjust.

    i.    This element will be proven through the testimony of eyewitness detainees, as well as through the expert testimony of Dr. Stuart Grassian.

d.    Whether GEO's actions warrant the remedy of disgorgement of GEO's profits.

    i.    This element will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

e.    The fair apportionment of GEO's profits under the Aurora contract, as a measure of damages pursuant to the remedy of disgorgement.

    i.    This element will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

f.    Whether and to what extent GEO's actions warrant the imposition of exemplary damages.

    i.    This issue will be proven through the totality of the evidence described above, and directly through the testimony of GEO's corporate officers.

Dated: June 17, 2020

By:   */s/ Michael J. Scimone*
            Michael J. Scimone

**OUTTEN & GOLDEN LLP**
Michael J. Scimone
685 Third Avenue, 25th Floor
New York, New York 10017

Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-Mail: mscimone@outtengolden.com

Rachel Dempsey
Adam Koshkin
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: rdempsey@outtengolden.com
E-Mail: akoshkin@outtengolden.com

**TOWARDS JUSTICE**
Juno Turner
Alexander Hood
David Seligman
Brianne Power
1410 High St., Suite 300
Denver, CO 80218
(720) 441-2236
juno@towardsjustice.org
alex@towardsjustice.org
david@towardsjustice.org
brianne@towardsjustice.org

**LAW OFFICE OF R. ANDREW FREE**
R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

**MILSTEIN LAW OFFICE**
Brandt Milstein
595 Canyon Boulevard
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

**THE KELMAN BEUSCHER FIRM**
Andrew Turner
600 Grant St., Suite 450
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com

**MEYER LAW OFFICE, P.C.**
Hans Meyer
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*

**VERIFICATION**

I, Demetrio Valerga, verify subject to the penalty of perjury that the foregoing

SUPPLEMENTAL RESPONSES TO DEFENDANT THE GEO GROUP, INC.'S SIXTH SET

OF INTERROGATORIES are true and correct to the best of my knowledge and belief.

Dated: June 17, 2020                    By: _____

                                        Demitrio Valerga