# EXHIBIT N

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-CV-02887-JLK-MEH

ALEJANDRO MENOCAL, et al.

    Plaintiffs,

v.

THE GEO GROUP, INC.,

    Defendant.

## DECLARATION OF SERGIO GALLEGOS

I, Sergio Gallegos, declare as follows:

1. I have worked at GEO since 1998. I have worked at the Aurora ICE Processing Center ("AIPC" or the "Facility") since September 2011. I have been a detention officer during all that time, most of it working in the housing units supervising detainees.

2. A daily meal clean-up list is created each day by the night shift officer. Every day, six detainees are asked to clean the day area after the three meal services—two to sweep, two to mop, and two to clean tables. The clean-up on average takes about 15 minutes per meal to complete. If a detainee is participating in the VWP, that detainee will not be asked to participate in meal clean-up.

3. During the many years I worked on the housing units, I was present on a few rare occasions where a detainee did not want to participate in the meal clean-up and was sent to segregation as a result. These occasions were very infrequent and almost always involved a secondary infraction that created a safety or security risk within the facility.

54241161;1

4. While on a few rare occasions I was present when detainees were sent to segregation, it was my typical practice that if a detainee refused to clean the day area, I would simply ask a different detainee to clean.

5. In my experience, most other GEO officers did not impose sanctions on detainees who refused to clean. Rather they simply moved on to another detainee.

6. I obtain regular training from the AIPC. I have never been trained that the sanction of segregation should be used to encourage detainees to participate in the meal clean-up.

7. It has never been my intention to use threats to force anybody to clean.

8. On some occasions, I have cleaned the detainee's living areas myself when there were no detainees willing to do so.

9. I have been told by detainees on a number of occasions that they wanted to have something to do to keep busy.

10. I never intended to threaten any detainee with my actions or words.

I declare under the penalty of perjury under the laws of the United States and State of Colorado that the foregoing is true and correct.

Executed on this __17__ day of August, 2020, at __10:00 am__.

_____
Sergio Gallegos

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-CV-02887-JLK-MEH

ALEJANDRO MENOCAL, et al.

    Plaintiffs,

v.

THE GEO GROUP, INC.,

    Defendant.

**DECLARATION OF LUIS PAGAN**

I, Luis Pagan, declare as follows:

1. I have been employed at the Aurora ICE Processing Center ("AIPC" or the "Facility") since 2006. During that time period, my job has been as a detention officer.

2. As a detention officer, I worked in the housing units, which we usually call dorms or pods. This is also called being on the "floor."

3. Each day, the night shift officers would make a list of everyone in the dorm who was not part of the Voluntary Work Program ("VWP"). The next day, the dorm officer would ask the detainees on that list to help clean up after each of the three meals. Each day, approximately six detainees would be asked to clean tables, mop and sweep after meals. On this schedule, a detainee would be assigned to clean about once per week.

4. Occasionally, a detainee would say they do not want to clean up after meals, but it was not my practice to force a detainee to clean. It is my understanding that other detention officers

54241159;1

took this same approach. If the detainee does not want to clean, the dorm trustee (which is a VWP position) usually takes the detainee's place. If the dorm trustee did not want to clean, I would ask another detainee to volunteer to clean.

5. Detention officers at the AIPC are instructed to resolve issues with detainees informally whenever possible. It was my regular practice to do that.

6. I have never threatened a detainee with segregation if they refuse to clean. I have never personally heard another detention officer threatening segregation if a detainee does not want to clean up after meals. I have heard of a detainee being written up for refusing to clean their assigned bed, but not threatened with segregation even for that.

7. I receive regular training as an employee of the AIPC. During that training, I have never been instructed to use warnings of segregation to motivate detainees to participate in the meal clean-up.

8. While I am aware of the Performance Based National Detention Standards ("PBNDS"), and that the refusal to clean can result in up to 72 hours of segregation, I am also aware there are many lesser sanctions that can be imposed or that a refusal to clean can be resolved informally.

9. I am not aware of any uniform policy at the AIPC to threaten to place or to actually place detainees in segregation for the refusal to clean. Instead, it is my experience that the typical practice involved an informal resolution or lesser sanctions where permitted by the PBNDS,

10. I never intended to threaten any detainee with my actions or words.

11. I never intended any of my actions to violate the Trafficking Victims Protection Act, 18 U.S.C. § 1589.


I declare under the penalty of perjury under the laws of the United States and State of Colorado that the foregoing is true and correct.

Executed on this ___14___ day of August, 2020, at _____.

_____
Louis Pagan

3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 14-CV-02887-JLK-MEH

ALEJANDRO MENOCAL, et al.

    Plaintiffs,

v.

THE GEO GROUP, INC.,

    Defendant.

## DECLARATION OF JOYCE QUEZADA

I, Joyce Quezada, declare as follows:

1. I have worked at the Aurora ICE Processing Center ("AIPC" or "Facility") since 2001. I started working as a kitchen supervisor from approximately 2001 to 2011. Then, I became a detention officer and worked in the dorms as a dorm officer. In late 2019, I became a court officer.

2. During the time I worked as a dorm officer, I supervised the post meal clean-up protocols in the dorms. Each day a post meal cleaning list was made by a detention officer according to rotating room numbers. Each day six detainees were listed. Of those six, two would clean tables, two would mop, and two would sweep as needed for a total of three times a day after meals. The cleaning process would usually take twenty minutes and sometimes could take as little as ten minutes per meal. Total clean-up time per day would be an hour or less in the dorms. Detainees who participated in the VWP were generally not asked to clean. Each dorm would have two "dorm trustees." These were VWP members who helped with cleaning process.

3. I would regularly help detainees clean after meals. If a detainee did not want to clean, my practice was to just do the extra work myself or ask another detainee to volunteer to help. It is my understanding that other detention officers also took this approach. I never threated any kind of punishment if a detainee did not clean. I never personally heard a detention officer tell a detainee that they would be sent to segregation if they did not clean.

4. Detention officers at the AIPC are instructed to resolve issues with detainees informally whenever possible. It was my regular practice to do that.

5. I was not trained to use warnings of segregation to motivate detainees to participate in the meal clean-up.

6. While I am aware of the Performance Based National Detention Standards ("PBNDS"), and that the refusal to clean can result in up to 72 hours of segregation, I am also aware there are many lesser sanctions that can be imposed or that a refusal to clean can be resolved informally.

7. I am not aware of any uniform policy at the AIPC to threaten to place or to actually place detainees in segregation for the refusal to clean. Instead, it is my experience that the typical practice involved an informal resolution or lesser sanctions where permitted by the PBNDS,

8. I never intended to threaten any detainee with my actions or words.

9. I never intended any of my actions to violate the Trafficking Victims Protection Act, 18 U.S.C. § 1589.

I declare under the penalty of perjury under the laws of the United States and State of Colorado that the foregoing is true and correct.

Executed on this ___14___ day of August, 2020, at ___2:10 pm___

_____
Joyce Quezada

Page 3 of 3

54217928;1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:14-cv-02887-JLK

ALEJANDRO MENOCAL, et al.,

    Plaintiffs,
v.

THE GEO GROUP, INC.,

    Defendant.

## DECLARATION OF DAWN CEJA

I, Dawn Ceja, declare:

1. I am employed by the GEO Group, Inc. ("GEO") as Assistant Warden – Operations at the Aurora ICE Processing Center ("AIPC"). I am over 18 years of age and competent to make this declaration. If called to testify as a witness in this matter, I could and would testify truthfully to each of the statements in this declaration.

2. I have worked at the AIPC since 1995.

3. The AIPC is a secure facility that houses detainees in the custody of the United States Immigrations and Customs Enforcement ("ICE").

4. During the relevant class period in this lawsuit (2004 – 2014) and continuing through today, dozens of ICE employees have offices in the AIPC.

5. The AIPC is audited multiple times each year, including by ICE (or its contractors) to ensure that the AIPC complies with ICE's Performance Based National Detention Standards ("PBNDS").

1

54241228;1

6. During a typical audit, the auditors are given access to all of GEO's policies and procedures.

7. It is my standard practice to print out all written policies and provide them to the auditors while they are on-site. It is my understanding that the auditors review these documents for compliance with the GEO-ICE contract and the PBNDS.

8. In addition, auditors have access to all operations in the building and can observe any area they wish.

9. Auditors also interview detainees about their experiences at the AIPC; including asking questions about their access to services; the quality and quantity of the food served; and the general procedures in place at the facility.

10. In my experience, detainees are candid with the auditors about their experience at the AIPC.

11. During the applicable class period, no ICE audit determined that GEO's post-meal cleanup practices violate the PBNDS.

12. In addition to the audits, ICE has an on-site representative who reviews the AIPC's policies and practices for compliance with the contract and PBNDS.

13. ICE's on-site representative is provided all policies for review.

14. In addition, ICE's on-site representative was alerted of each disciplinary infraction and given the opportunity to weigh in, if she felt it would be necessary.

15. It was my understanding that if ICE had a concern about the operation of the facility, ICE would express that concern through its on-site contract representative or another on-site ICE representative.

16. ICE never expressed any concern to me about the meal clean-up policy.

17. The AIPC has adopted ICE's disciplinary severity scale, which comes straight from the PBNDS. ICE's disciplinary scale lists segregation as one of a range of possible punishments, which include a warning or a reprimand, when a detainee refuses to clean his or her assigned living area. Most importantly, per the express requirements of the PBNDS, detention officers are instructed to use their discretion to "informally settle minor transgressions through mutual consent, wherever possible." PBNDS, § 3.1 (2011).

18. Since 2004, AIPC officers have been trained to use lesser sanctions or informal resolution wherever possible.

19. I am not aware of a widespread or uniform practice of warning detainees that segregation was a possible sanction for the failure to clean. Such a warning would be reserved to rare circumstances where the detainee was otherwise acting out or endangering the safety of other detainees.

20. In my position, I receive notices of disciplinary incidents and the sanctions imposed for the same. While I am aware of a small number of detainees who have been sent to segregation for the refusal to clean (typically in connection with another infraction), such an instance is very rare and not routine.

I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made as evidence in court and is subject to penalty for perjury.

Dated: August 13, 2020

Dawn M. Ceja
Assistant Warden
The GEO Group, Inc.

3

54218823;1