# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:14-cv-02887-JLK

ALEJANDRO MENOCAL, et al.,

    Plaintiffs,
v.

THE GEO GROUP, INC.,

    Defendant.

## DECLARATION OF DAWN CEJA

I, Dawn Ceja, declare:

1. I am employed by the GEO Group, Inc. ("GEO") as Assistant Warden – Operations at the Aurora ICE Processing Center ("AIPC"). I am over 18 years of age and competent to make this declaration. If called to testify as a witness in this matter, I could and would testify truthfully to each of the statements in this declaration.

2. I have worked at the AIPC since 1995.

3. The AIPC is a secure facility that houses detainees in the custody of the United States Immigrations and Customs Enforcement ("ICE").

4. During the relevant class period in this lawsuit (2004 – 2014) and continuing through today, dozens of ICE employees have offices in the AIPC.

5. The AIPC is audited multiple times each year, including by ICE (or its contractors) to ensure that the AIPC complies with ICE's Performance Based National Detention Standards ("PBNDS").

1

6. During a typical audit, the auditors are given access to all of GEO's policies and procedures.

7. It is my standard practice to print out all written policies and provide them to the auditors while they are on-site. It is my understanding that the auditors review these documents for compliance with the GEO-ICE contract and the PBNDS.

8. In addition, auditors have access to all operations in the building and can observe any area they wish.

9. Auditors also interview detainees about their experiences at the AIPC; including asking questions about their access to services; the quality and quantity of the food served; and the general procedures in place at the facility.

10. In my experience, detainees are candid with the auditors about their experience at the AIPC.

11. During the applicable class period, no ICE audit determined that GEO's post-meal cleanup practices violate the PBNDS.

12. In addition to the audits, ICE has an on-site representative who reviews the AIPC's policies and practices for compliance with the contract and PBNDS.

13. ICE's on-site representative is provided all policies for review.

14. In addition, ICE's on-site representative was alerted of each disciplinary infraction and given the opportunity to weigh in, if she felt it would be necessary.

15. It was my understanding that if ICE had a concern about the operation of the facility, ICE would express that concern through its on-site contract representative or another on-site ICE representative.

16. ICE never expressed any concern to me about the meal clean-up policy.

17. The AIPC has adopted ICE's disciplinary severity scale, which comes straight from the PBNDS. ICE's disciplinary scale lists segregation as one of a range of possible punishments, which include a warning or a reprimand, when a detainee refuses to clean his or her assigned living area. Most importantly, per the express requirements of the PBNDS, detention officers are instructed to use their discretion to "informally settle minor transgressions through mutual consent, wherever possible." PBNDS, § 3.1 (2011).

18. Since 2004, AIPC officers have been trained to use lesser sanctions or informal resolution wherever possible.

19. I am not aware of a widespread or uniform practice of warning detainees that segregation was a possible sanction for the failure to clean. Such a warning would be reserved to rare circumstances where the detainee was otherwise acting out or endangering the safety of other detainees.

20. In my position, I receive notices of disciplinary incidents and the sanctions imposed for the same. While I am aware of a small number of detainees who have been sent to segregation for the refusal to clean (typically in connection with another infraction), such an instance is very rare and not routine.

I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made as evidence in court and is subject to penalty for perjury.

Dated: August 13, 2020

Dawn M. Ceja
Assistant Warden
The GEO Group, Inc.

3

54218823;1