# EXHIBIT A

1             IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF COLORADO

3    _____

4

     ALEJANDRO MENOCAL, et al.,              )
5                                            )
                                             )
6             Plaintiffs,                    ) Case No.
                                             )
7         vs.                                ) 1:14-cv-
                                             ) 02887-JLK
8    THE GEO GROUP, INC.,                     )
                                             )
9                                            )
              Defendant.                     )
10                                           )

11

12   _____

13

              VIDEOTAPED DEPOSITION OF KEVIN MARTIN
14
                    November 19, 2019
15
                       9:31 a.m.
16
                  205 North First Street
17
                  La Conner, Washington
18

19

20

21

22

23   Reported by:
     Connie Recob, CCR, RMR, CRR
24   CCR No. 2631
     Job No. 854755 - NE 288153
25

Kevin Martin
November 19, 2019                                                    2

```
 1        APPEARANCES:

 2

 3        For the Plaintiffs:

 4             ELIZABETH STORK
               MICHAEL J. SCIMONE
 5             OUTTEN & GOLDEN LLP
               685 Third Avenue, 25th Floor
 6             New York, New York 10017
               (212) 245-1000
 7             estork@outtengolden.com
               mscimone@outtengolden.com

 8

 9        For the Defendant:

10             ALLISON ANGEL
               AKERMAN LLP
11             1900 Sixteenth Street, Suite 1700
               Denver, Colorado 80202
12             (303) 640-2511
               allison.angel@akerman.com

13

14        Also Present:

15                  Danielle Greene - Videographer

16

17

18

19

20

21

22

23

24

25
```

1                        INDEX TO EXAMINATION

2

3                     WITNESS:  KEVIN MARTIN

4        EXAMINATION                              PAGE NO.

5        BY MS. STORK                             8

6        BY MS. ANGEL                             280

7        BY MS. STORK                             287

8        BY MS. ANGEL                             291

9

10

11              WITNESS INSTRUCTED NOT TO ANSWER

12

13                        (None)

14

15

                    INFORMATION REQUESTED
16

17
                          (None)
18

19

20

21

22

23

24

25

```
 1                    INDEX TO EXHIBITS

 2                      KEVIN MARTIN

 3                  MENOCAL V. GEO GROUP

 4               Tuesday, November 19, 2019

 5            Connie Recob, CCR #2631, RMR, CRR

 6

 7    MARKED           DESCRIPTION                 PAGE NO.

 8    Exhibit 1        Resume, Bates Nos. GEO_MEN
                       00019835 through 37            26
 9
      Exhibit 2        Performance-Based National
10                     Detention Standards 2011, Bates
                       Nos. GEO-MEN 00064018 through
11                     64414                          38

12    Exhibit 3        AUR-3, Bates Nos. GEO-MEN
                       00079602 through 608           93
13
      Exhibit 4        Memorandum, Bates Nos. GEO_MEN
14                     00056798 through 799           99

15    Exhibit 5        Administrative Segregation
                       Review, Bates No. GEO_MEN
16                     00056745                      120

17    Exhibit 6        Facility Building Schedule, Bates
                       Nos. GEO_MEN 00047547 through 56 138
18
      Exhibit 7        8.1.8-AUR, Bates Nos. GEO_MEN
19                     00038548 through 52           158

20    Exhibit 8        Standards Compliance Checklist,
                       Bates Nos. GEO_MEN 00042008
21                     through 28                    160

22    Exhibit 9        Memorandum, Bates Nos. GEO_ MEN
                       00053783 through 791          171
23
      Exhibit 10       12.1.4-AUR, Bates Nos. GEO_MEN
24                     00001419 through 513          178

25
```

Kevin Martin
November 19, 2019                                                    5

```
 1                      INDEX TO EXHIBITS

 2                        KEVIN MARTIN

 3                    MENOCAL V. GEO GROUP

 4                 Tuesday, November 19, 2019

 5              Connie Recob, CCR #2631, RMR, CRR

 6

 7     MARKED           DESCRIPTION                    PAGE NO.

 8     Exhibit 11       e-mail string with attachment,
                        Bates Nos. GEO_MEN 00006614
 9                      through 626                    211

10     Exhibit 12       e-mail string with attachment,
                        Bates No. GEO_MEN 00052386     214
11
       Exhibit 13       e-mail string, Bates Nos.
12                      GEO_MEN 00007310 through 11    220

13     Exhibit 14       e-mail string, Bates Nos.
                        GEO-MEN 00114478 through 79    222
14
       Exhibit 15       e-mail string, Bates Nos.
15                      GEO_MEN00047041 through 45     232

16     Exhibit 16       e-mail string, Bates Nos.
                        GEO_MEN 00056676 through 77    236
17
       Exhibit 17       e-mail string, Bates No.
18                      GEO_MEN 00056695              240

19     Exhibit 18       e-mail string, Bates No.
                        GEO-MEN 00090984             242
20
       Exhibit 19       e-mail string, Bates Nos.
21                      GEO-MEN 00051630 through 31   245

22     Exhibit 20       Department of Homeland Security,
                        Bates Nos. GEO-MEN 00133153
23                      through 231                   247

24     Exhibit 21       Department of Homeland Security,
                        Bates Nos. GEO-MEN 00135305
25                      through 312                   261
```

```
 1                    INDEX TO EXHIBITS

 2                       KEVIN MARTIN

 3                  MENOCAL V. GEO GROUP

 4                Tuesday, November 19, 2019

 5            Connie Recob, CCR #2631, RMR, CRR

 6

 7      MARKED            DESCRIPTION                 PAGE NO.

 8      Exhibit 22        e-mail string, Bates Nos.
                          GEO-MEN 00071300 through 20    271
 9
        Exhibit 23        e-mail string, Bates No.
10                        GEO-MEN 00091015               288

11      Exhibit 24        National Detainee Handbook,
                          Bates Nos. GEO-MEN 00081776
12                        and 1794                       291

13      Exhibit 25        Detainee Handbook Table of
                          Contents                       293
14

15

16

17

18

19

20

21

22

23

24

25
```

 1                        La Conner, Washington

 2                 Tuesday, November 19, 2019, 9:31 a.m.

 3
                          <<<<<<   >>>>>>
 4

 5                 THE VIDEOGRAPHER:  We are now on the record.

 6      The time is 9:31 a.m. on November 19th, 2019.  Audio

 7      and video recording will continue to take place until

 8      all parties agree to go off the record.  Please note

 9      microphones are sensitive and may pick up whispering

10      and private conversations.

11                 This is the video-recorded deposition of

12      Kevin Martin in the matter of Menocal versus The GEO

13      Group Inc., filed in the United States District Court

14      of Colorado.

15                 This deposition is being held at 205 North

16      First Street, La Conner, Washington 98257.  My name is

17      Danielle Greene.  I am the videographer appearing on

18      behalf of U.S. Legal Support.  The court reporter

19      today is Connie Recob on behalf of U.S. Legal Support.

20      I am not related to any party in this action nor am I

21      financially interested in the outcome.

22                 Will counsel please state their appearances

23      for the record.

24                 MS. STORK:  Elizabeth Stork for plaintiffs

25      with the firm Outten & Golden.

1              MR. SCIMONE:  Michael Scimone for the

2     plaintiffs, also of Outten & Golden.

3              MS. ANGEL:  Allison Angel for defendant, The

4     GEO Group from Akerman.

5              THE VIDEOGRAPHER:  And will the court

6     reporter please swear in the witness.

7                        KEVIN MARTIN,

8                  having been first duly sworn,

9                      was examined and

10                     testified as follows:

11

12                        EXAMINATION

13     BY MS. STORK:

14        Q.  Good morning, Mr. Martin.

15        A.  Good morning.

16        Q.  My name is Elizabeth Stork.  I'm counsel for

17     the plaintiffs in a lawsuit that the videographer just

18     mentioned, Menocal versus The GEO Group.  I'm here

19     with my colleague, Michael Scimone, who's also counsel

20     for the plaintiffs.

21              Could you please state your full name for the

22     record again.

23        A.  Kevin Ken Martin.

24        Q.  And could you state your address, please, as

25     well?

```
 1          A.  524 Klamath Drive, La Conner, Washington

 2     98257.

 3          Q.  And Mr. Martin, have you ever been deposed

 4     before?

 5          A.  Not that I recall.

 6          Q.  Okay.  So I'm just going to go over some

 7     ground rules.  The court reporter can't take down

 8     shakes of your head or nods or gestures, so I just ask

 9     that you try to give verbal answers to my questions.

10          Does that make sense?

11          A.  Yes, it does.

12          Q.  And for a similar reason, it's important that

13     we don't talk over each other.  So please wait for me

14     to finish my question before you begin to answer and I

15     will also do my best to wait for you to finish

16     answering before I begin asking another question.

17          Does that sound okay?

18          A.  Yes.

19          Q.  And you're under -- you understand you're

20     under oath today?

21          A.  Yes.

22          Q.  And that your testimony today here has the

23     same significance as it would have in a court of law

24     before a jury or a judge?

25          A.  Yes.
```

 1          A.  For refusing -- not that I recall.  Refusing

 2     to assign clean -- to clean assigned living area, not

 3     that I recall.

 4          Q.  If they were sent to -- if someone were sent

 5     to admin seg for that reason -- strike that.

 6                    (Exhibit No. 5 marked

 7                     for identification.)

 8     BY MS. STORK:

 9          Q.  Okay.  The court reporter has handed you

10     Exhibit 5.

11              Do you recognize that document?

12          A.  Yes, I do.

13          Q.  Okay.  What is it?

14          A.  It's the "Administrative Segregation Review."

15          Q.  And when is this document used, or when was

16     this document used at GEO?

17          A.  The entire time that -- from that 2004 to

18     2010 time period it was used.  So the -- and I'd have

19     to look through the standards to see the exact time

20     frames, but there was reviews that were conducted

21     every three days, five days, seven days.  It kind of

22     depends on the situation.  And again, like I said, the

23     programs coordinator or programs manager, that name --

24     title's the same, but some stuff you'll see either

25     name on it, conducted these reviews.

1    time frame is this Exhibit 4 from?

2         A.   Exhibit 4 would have been prior to -- would

3    have been prior to 2006, or at least when -- when

4    Teresa Hunt was there, which would have been 2006.

5    But after that -- let's see.

6              I became compliance in 2006.  One of the

7    first things that I did was go change all the policies

8    and any form from the reference "facility

9    administrator" to "warden," because she had come from

10   the Bureau of Prisons, so she was used to that

11   terminology.

12        Q.   I see.

13        A.   So during the process, she wanted everything

14   changed to reference that.

15        Q.   Okay.  So because this says "facility

16   administrator" at the bottom, this -- you know that

17   this is from the pre-2006 time period?

18        A.   Correct.  And then also the Level 3 I

19   recalled because we did have -- I re- -- I couldn't

20   give you a name, but we had a female detainee that

21   came in that scored extremely high, and at that time,

22   we only had one female housing unit.  So they ended up

23   having to empty out an entire housing unit, place her

24   there until they could get her transferred to another

25   facility because she was a Level 3.

Kevin Martin
November 19, 2019                                                            144

1        A.  So they -- basically, they would take their

2    trays, put them back on a cart.  They would wipe off

3    the tables, sweep the day area, mop and be done with

4    it, and that would be -- that would be it.

5        Q.  And do you recall whether all the detainees

6    who were eating at the time would participate or

7    whether it was a -- a group of detainees assigned?

8        A.  There was a group that was assigned, but

9    there were a lot of other detainees that just

10   volunteered to do it because, again, the quicker it

11   was done, the quicker they could start watching TV.

12       Q.  And how was the group who was -- who were

13   designated to clean assigned?

14       A.  A list was generated based off of the

15   detainees that were housed in that unit.  If they

16   were -- if they were trustees, they weren't placed on

17   the list because they were -- they might have been

18   already working somewhere else.  So it was, I want to

19   say a change from the old building to the new

20   building, the -- the number of detainees, because the

21   old building, we had smaller housing units.  So I want

22   to say there was three people assigned; in the new

23   building, there was five people assigned.

24            And they would post this list on the front of

25   the officer station, and the detainees all knew

1    basically who -- who was going to be that day or even

2    the next day unless somebody got out and it might

3    shift by one or two people.  But basically those --

4    those five people, or three depending on which unit it

5    was in, would be -- would clean up.

6              Now, in the old -- in the new facility in

7    2010, there were also two paid dorm trustees that also

8    cleaned the whole area, the -- in addition to -- their

9    responsibility was cleaning the entire day area --

10   excuse me, day area, but -- and they would also help

11   after meal service.

12        Q.  And when you say "trustees," you're referring

13   to detainees who participated in the Voluntary Work

14   Program, correct?

15        A.  Correct.

16        Q.  And the people who -- but the group that was

17   assigned to clean, apart from the two dorm trustees

18   you mentioned in the new building, the group assigned

19   to clean after meal service were not -- they were not

20   enlisted in the Voluntary Work Program, correct?

21        A.  Correct, unless they just happened to

22   volunteer, I mean, because there was people -- other

23   than the five people, there were other guys, like I

24   said, that they just, Get it over with, bam, so we can

25   watch TV.  But those five people that were on the list

Kevin Martin
November 19, 2019                                          200

 1            In over 18 years, I don't ever recall an

 2    issue, not a single time, whether it was when I was an

 3    officer, a lieutenant or compliance or sitting in

 4    disciplinary of ever hearing issues of detainees

 5    cleaning up after -- after meal service or of them

 6    having an issue or being forced to clean up.  I don't

 7    ever recall that as an issue.

 8        Q.  Okay.  If we just turn to the next page,

 9    Page 3 of 5 in the Housekeeping Maintenance Plan

10    ending 1506 -- or I'm sorry, 1507.

11        A.  Yes.

12        Q.  Do you see where it says:  "Pod Cleaning"?

13        A.  Pod cleaning I see, yes.

14        Q.  Okay.  So I'm trying to make sense of this

15    chart here.  What -- what is this chart showing, A

16    pod, B pod, C pod?

17        A.  This was -- again, I don't -- on a weekly

18    basis.  Off the top of my head, I'm not familiar with

19    it.

20        Q.  The second sentence under pod cleaning says:

21    "The responsibility for cleaning each pod will be

22    shared by second and third shifts as follows" -- "as

23    followed."

24            Do you see that?

25        A.  Yes.

Kevin Martin
November 19, 2019                                                208

```
 1    who cleans.  All he cares is --

 2         Q.  Right.

 3         A.  -- what's being cleaned and what chemicals

 4    are being used to clean it with.

 5         Q.  Yeah.

 6         A.  So when he developed this, it wasn't

 7    developed as far as, Well, John's going to clean this,

 8    but Bill's going to clean that.  It specifically was

 9    just about what chemicals would be used to clean.  So

10    he didn't put detail that I understand what you would

11    be looking for.

12         Q.  Right.  Yeah.  Thank you.  I think -- I

13    appreciate that, and I think that's why I'm trying to

14    figure out where that -- where that dividing line was

15    set?

16         A.  Okay.

17         Q.  Like what documents would have said, The

18    five-person crew cleans this and trustees clean that?

19         A.  Okay.

20         Q.  But you're saying there isn't -- there's

21    just -- there was a general understanding in the

22    facility of what the crew was supposed to clean versus

23    what the trustees were supposed to clean?

24         A.  The trustees, it would have been on their job

25    description and their training of what -- of what all
```

```
 1          A.  No.

 2          Q.  Okay.  Do you recall any time in which a

 3   detainee was put in administrative segregation for

 4   refusing to clean their general living area?

 5          A.  No.

 6          Q.  Do you recall a time in which a detainee was

 7   put in disciplinary segregation for refusing to clean

 8   their general living area?

 9          A.  No.

10          Q.  And when I'm referring to the "general living

11   area," that's not limited to just their -- what you

12   refer to as their pod, correct?

13          A.  Their general living area...

14               MS. STORK:  Objection to form.

15               THE WITNESS:  I'm sorry.  Could you repeat.

16   BY MS. ANGEL:

17          Q.  Sure.  When detainees -- when we say

18   detainees are required to keep their general living

19   area clean, does that -- is that limited to just their

20   cell?

21          A.  No.  That would be the general, the day area

22   after the meal service after that we discussed.

23          Q.  Okay.

24          A.  Yes.

25          Q.  So the general living area is broader than
```

1    just their individual cells where they sleep?

2         A.   Correct, correct.

3         Q.   Okay.  Are you aware of any instance in which

4    a detainee was threatened with being put into

5    segregation if they refused to clean their general

6    living area?

7         A.   No.

8         Q.   Are detention officers allowed to force

9    detainees to clean anything other than their general

10   living area?

11        A.   No.

12        Q.   Okay.  And do you recall earlier we spoke

13   about what we've been referring to, I suppose

14   informally, as the post-meal cleanup crew?

15        A.   Yes.

16        Q.   Was all the work done by the post-meal

17   cleanup crew part of the requirement that detainees

18   keep their general living areas clean?

19        A.   Yes.

20        Q.   Okay.  And that policy is approved by ICE?

21        A.   Yes.

22        Q.   You testified earlier that there are -- I

23   forget the exact number, but a number of ICE employees

24   actually present at the GEO Aurora facility during the

25   relevant time period?

1                    REPORTER'S CERTIFICATE

2

3        I, CONNIE A. RECOB, the undersigned Certified

4   Court Reporter, pursuant to RCW 5.28.010 authorized to

5   administer oaths and affirmations in and for the State

6   of Washington, do hereby certify that the sworn

7   testimony and/or proceedings, a transcript of which is

8   attached, was given before me at the time and place

9   stated therein; that any and/or all witness(es) were

10  duly sworn to testify to the truth; that the sworn

11  testimony and/or proceedings were by me

12  stenographically recorded and transcribed under my

13  supervision, to the best of my ability; that the

14  foregoing transcript contains a full, true, and

15  accurate record of all the sworn testimony and/or

16  proceedings given and occurring at the time and place

17  stated in the transcript; that a review of which was

18  requested; that I am in no way related to any party to

19  the matter, nor to any counsel, nor do I have any

20  financial interest in the event of the cause.

21       WITNESS MY HAND and SIGNATURE this 3rd day of

22  December, 2019.

23

    _____

24  CONNIE A. RECOB, RMR, CRR
    Washington Certified Court Reporter, CCR 2631
25  c.recob@gmail.com