# EXHIBIT F

Dawn Ceja 30(b)(6)
August 05, 2020                                                       1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF COLORADO

 3    Civil Action No. 1:14-cv-02887-JLK-MEH
      _____
 4
                      RULE 30(b)(6) DEPOSITION OF:
 5            DAWN CEJA, VOLUME I - August 5, 2020
                        The GEO Group, Inc.
 6                       (Via RemoteDepo)
      _____
 7
      ALEJANDRO MENOCAL, MARCOS BRAMBILA, GRISEL
 8    XAHUENTITLA, HUGO HERNANDEZ, LOURDES ARGUETA,
      JESUS GAYTAN, OLGA ALEXAKLINA, DAGOBERTO
 9    VIZGUERRA, and DEMETRIO VALERGA, on their own and
      on behalf of all others similarly situated,
10
      Plaintiffs,
11
      v.
12
      THE GEO GROUP, INC.,
13
      Defendant.
14
      _____
15
                 PURSUANT TO NOTICE, the Rule 30(b)(6)
16    deposition of DAWN CEJA, THE GEO GROUP, INC., Volume
      I, was taken on behalf of the Plaintiffs by remote
17    means in Arapahoe County, Colorado, on August 5, 2020,
      at 9:04 a.m. MDT, before Sherry Wallin, Certified
18    Realtime Reporter, Registered Merit Reporter and
      Notary Public within Colorado, appearing remotely from
19    Adams County, Colorado.

20

21

22

23

24

25
```

```
 1                      REMOTE APPEARANCES

 2

     For the Plaintiffs:
 3
              JUNO E. TURNER, ESQ.
 4            BRIANNE POWER, ESQ.
              Towards Justice
 5            1410 High Street
              Suite 300
 6            Denver, Colorado 80218
              juno@towardsjustice.com
 7            brianne@towardsjustice.com


 8
     For the Defendant:
 9
              ADRIENNE SCHEFFEY, ESQ.
10            Akerman LLP
              1900 Sixteenth Street
11            Suite 1700
              Denver, Colorado 80202
12            adrienne.scheffey@akerman.com

13            DANA L. EISMEIER, ESQ.
              MICHAEL "MICKEY" Y. LEY, ESQ.
14            Burns, Figa & Will, P.C.
              6400 South Fiddlers Green Circle
15            Suite 1000
              Greenwood Village, Colorado 80111
16            deismeier@bfwlaw.com
              mley@bfwlaw.com
17

18

19

20

21

22

23

24

25
```

```
 1                        I N D E X

 2    EXAMINATION OF DAWN CEJA:                          PAGE
      August 5, 2020 - Volume I
 3
      By Ms. Turner                                         7
 4
                                                      INITIAL
 5    DEPOSITION EXHIBITS:                          REFERENCE

 6    (Exhibits provided electronically to the reporter.)

 7    Exhibit 1    Notice of FRCP 30(b)(6)              10
                   Deposition of Defendant The
 8                 GEO Group, Inc.

 9    Exhibit 2    PowerPoint presentation -            26
                   Housing Unit Sanitation
10
      Exhibit 3    Aurora Detention Center              32
11                 Housing Unit Officer Post
                   Order AUR-2
12
      Exhibit 4    Aurora/ICE Processing Center         44
13                 Policy and Procedure Manual,
                   Chapter: Sanitation, Revised
14                 on 3/3/10, and attached
                   Housekeeping/Maintenance Plan
15
      Exhibit 5    Video orientation statement,         88
16                 beginning with Warden's
                   opening statement
17
      Exhibit 6    PowerPoint document: Detainee       101
18                 Orientation Video

19    Exhibit 7    Detainee Handbook, GEO_MEN          115
                   00056937 through 56961
20
      Exhibit 8    Detainee Handbook, GEO_MEN          131
21                 00065783 through 00065808

22    Exhibit 9    Aurora Detention Center             134
                   Policy and Procedure Manual,
23                 11.2.1-AUR, Chapter: Detainee
                   Issues, Effective 8/18/14
24

25
```

| | | | |
|---|---|---|---|
| 1 | Exhibit 10 | Email chain. Top email to Bowen from Ceja, 7/27/11, and attached emails and attachments | 141 |
| 2 | Exhibit 11 | Memorandum to Hunt from Andrews, 2/19/08, RE: Administrative Officer of the Day | 160 |
| 3 | Exhibit 12 | PowerPoint presentation: Detainee Orientation Video | 167 |
| 4 | Exhibit 13 | ICE Detention Policy and Procedure Manual, Chapter: Detainee Issues, Effective 07/01/2019 | 170 |
| 5 | Exhibit 14 | General Incident Report, 6/19/09 | 176 |
| 6 | Exhibit 15 | Aurora/ICE Processing Center Policy and Procedure Manual, Chapter: Post Orders, Revised on 2/22/10 | 177 |
| 7 | Exhibit 16 | Aurora Detention Center Policy and Procedure Manual, 10.2.11-AUR, Chapter: Security | 188 |
| 8 | Exhibit 17 | Email chain. Top email to Cassel from Ceja, 12/22/09, Subject: FW: Segregation review | 197 |
| 9 | Exhibit 18 | 2015 Annual Training Plan - Western Region | 201 |
| 10 | Exhibit 19 | Tables entitled "Staff Training" | 207 |
| 11 | Exhibit 20 | The GEO Group, Inc., Aurora ICE Processing Center, Detainee Handbook Local Supplement, Revised June 2011 | 214 |

```
 1   Exhibit 21    Email chain.  Top email to        215
                   Rowden from Andrews,
 2                 10/26/07, Subject: RE: Lesson
                   Plans, with attachments
 3
     Exhibit 22    2013 Annual Training Plan -       239
 4                 Western Region, The GEO
                   Group, Inc., Aurora Detention
 5                 Facility

 6   Exhibit 23    Aurora Detention Center           241
                   Policy and Procedure Manual,
 7                 8.1.8-AUR, Chapter: Detainee
                   Work Program, Effective
 8                 5/6/13

 9   Exhibit 24    Email chain.  Top email to        254
                   Ceja from Martin, 3/11/15,
10                 Subject: Re: Detainee Job
                   Descriptions please, with
11                 attachments

12   Exhibit 25    Aurora Detention Center           263
                   Policy and Procedure Manual,
13                 8.1.8-AUR, Chapter: Detainee
                   Work Program, Effective
14                 5/6/13

15

16   INFORMATION REQUESTED:

17   Page 93, Line 17
     Page 175, Line 5
18

19

20

21

22

23

24

25
```

```
 1              WHEREUPON, the following proceedings
 2   were taken pursuant to the Federal Rules of Civil
 3   Procedure.
 4              *       *       *       *       *
 5              THE REPORTER:  The attorneys
 6   participating in this deposition acknowledge that I am
 7   not physically present in the deposition room and that
 8   I will be reporting this deposition remotely.
 9              They further acknowledge that in lieu of
10   an oath administered in person the witness will
11   verbally declare her testimony in this matter is under
12   penalty of perjury.
13              The parties and their counsel consent to
14   this arrangement and waive any objections to this
15   manner of reporting.
16              Please indicate your agreement by
17   stating your name and your agreement on the record.
18              MS. SCHEFFEY:  Adrienne Scheffey,
19   counsel on behalf of defendant GEO, and we agree.
20              Sorry, Juno.
21              MS. TURNER:  Juno Turner, class counsel
22   for plaintiffs.  We agree as well.
23              THE REPORTER:  And Ms. Dawn Ceja, do you
24   solemnly state that the testimony you are about to
25   give in the cause now pending will be the truth, the
```

1  whole truth, and nothing but the truth?
2           THE DEPONENT:  Yes.
3                    DAWN CEJA,
4  having sworn to state the whole truth, testified as
5  follows:
6           THE REPORTER:  Thank you.  Please
7  proceed.
8                    EXAMINATION
9  BY MS. TURNER:
10      Q.   Thank you.  Good morning, Ms. Ceja.  We
11  met briefly before we got on the record again.  My
12  name is Juno Turner, and I am one of the attorneys
13  who's been appointed as class counsel for the
14  plaintiff class in this matter.
15           Could you just please state your full
16  name and business address for the record?
17      A.   Dawn Ceja.  Business address 3130 North
18  Oakland Street, Aurora, Colorado 80010.
19      Q.   Thank you.  And is that the Aurora
20  detention facility operated by The GEO Group?
21      A.   Yes.  The Aurora ICE Processing Center.
22      Q.   Great.  Thank you.  And do you
23  understand that although, given the circumstance of
24  the deposition, the court reporter wasn't able to
25  administer an oath to you in person, you've agreed to

```
 1        Q.   Okay.  And when was that meeting?
 2        A.   Yesterday.
 3        Q.   Okay.  And you mentioned that you
 4   reviewed documents during your meeting?
 5        A.   Yes.
 6        Q.   Okay.  What documents did you review?
 7        A.   There were quite a few in a binder.
 8        Q.   Do you recall specifically any of the
 9   documents?
10        A.   I believe there were ICE national
11   handbooks, one of the facility handbooks, some emails.
12             MS. SCHEFFEY:  And Juno, I can represent
13   on the record that they were the documents you
14   provided us the list of prior to this deposition.
15             MS. TURNER:  The policies and
16   communications that I provided?
17             MS. SCHEFFEY:  Yes.
18             MS. TURNER:  Okay.
19        Q.   (BY MS. TURNER)  And then you mentioned
20   that you spoke with a detention officer?
21        A.   Yes.
22        Q.   Who was that?
23        A.   John Good.
24        Q.   How do you spell Good?
25        A.   G-o-o-d.
```

```
1         Q.   Okay.  And is he a current detention
2    officer at the Aurora facility?
3         A.   Yes.
4         Q.   And when did you meet with Mr. Good?
5         A.   I did not meet with him.  It was a phone
6    call.
7         Q.   I see.  Okay.  And when was the phone
8    call with Mr. Good?
9         A.   Yesterday.
10        Q.   Okay.  And what did you discuss with
11   Mr. Good?
12        A.   It was in reference to one of the
13   documents in the binder.  There was an email about an
14   incident, and he was contacted for his recollection on
15   that issue.
16        Q.   Do you recall what the incident was that
17   was referenced in the email?
18        A.   It had to do with detainees that had
19   been charged with refusing to clean, I believe five or
20   six detainees.
21        Q.   And what did he tell you about the
22   incident?
23        A.   He stated that he did remember that
24   incident because he had been a fairly new detention
25   officer and he was very concerned about their actions
```

1  and he felt that they were going to possibly riot, and

2  that is why he wrote the report that they had refused

3  to clean.  And I believe there was another charge on

4  there as well on those reports.  Because I found it

5  odd that there were so many detainees that were

6  written up for the same charges.

7          Q.  Got it.  Thank you.

8              Other than meeting with counsel and

9  reviewing the documents and speaking with Mr. Good,

10 did you do anything else to prepare for your

11 deposition today?

12         A.  No.

13         Q.  Okay.  Did you speak with anybody in

14 connection with the fact of your deposition today?

15         A.  No.

16         Q.  Have you ever had any conversations with

17 anyone besides the attorneys who represent The GEO

18 Group in this case about this litigation?

19         A.  No.

20         Q.  So I know that you were deposed

21 previously as part of this case, correct?

22         A.  Yes.

23         Q.  And that was in March 2016, correct?

24         A.  That sounds correct.

25         Q.  Okay.  And during that deposition,

1   correct?
2         A.   Yes.
3         Q.   Is the segregation unit coed?
4         A.   No.
5         Q.   What happens -- well, strike that.
6              Is there a separate SMU for female
7   detainees?
8         A.   No.  So in the old building, no.  In the
9   new building, there is a section that was attached to
10  the female unit that had two cells in it which was
11  typically used in the event that we had a high-level
12  detainee.
13             So over the course of all of the years
14  that I've worked there and working with ICE, the
15  facility never housed high-level detainees or the
16  medium-high detainees that had some type of violent
17  criminal history or aggravated felon for their
18  background.
19             So over the last handful of years, which
20  is outside of the class period, we have utilized those
21  two cells to house high-level detainees as a general
22  population unit.
23        Q.   So prior to that did you use those two
24  cells as a sort of female SMU?
25        A.   No.

1      Q.   Where, if -- in the event that a female
2   detainee needed to be placed in the SMU, where did you
3   place them?
4      A.   So we had the option in the old
5   facility, due to where the females were housed, that
6   we could resolve those issues by separating the
7   females and putting them in a different housing unit.
8   So that's how we got away with that.
9           And our female population has fluctuated
10  over the years, but that's how we did that is by
11  having more than one general population unit.
12     Q.   And what about in the new facility, how
13  did you handle the need there?
14     A.   It depends on the time, but it's the
15  same thing.  So our population had increased quite a
16  bit so we had more than one unit that housed females.
17  We had two of the larger units so we could just move
18  them back and forth.
19          However, when we got the high-level
20  females, they would stay in that smaller unit until
21  ICE would transfer them out to another facility.
22          MS. TURNER:  Do you guys want to take a
23  quick break or are you doing okay?
24          MS. SCHEFFEY:  That would be great.  I
25  need more water.

```
 1                    REPORTER'S CERTIFICATE

 2   STATE OF COLORADO       )
                             )  ss.
 3   CITY AND COUNTY OF DENVER )

 4

              I, SHERRY WALLIN, Certified Realtime
 5   Reporter, Registered Merit Reporter and Notary Public
     ID 19874212873, State of Colorado, do hereby certify
 6   that previous to the commencement of the examination,
     the said DAWN CEJA verbally declared her testimony in
 7   this matter is under penalty of perjury; that the said
     deposition was taken in machine shorthand by me at the
 8   time and place aforesaid and was thereafter reduced to
     typewritten form; that the foregoing is a true
 9   transcript of the questions asked, testimony given,
     and proceedings had.
10
              I further certify that I am not employed
11   by, related to, nor of counsel for any of the parties
     herein, nor otherwise interested in the outcome of
12   this litigation.

13            IN WITNESS WHEREOF, I have affixed my
     signature this 10th day of August, 2020.
14
              My commission expires May 14, 2023.
15

16   __X__ Reading and Signing was requested.

17   _____ Reading and Signing was waived.

18   _____ Reading and Signing is not required.

19
                    [signature: Sherry A. Wallin]
20
                    _____
21                  Sherry Wallin
                    Certified Realtime Reporter
22                  Registered Merit Reporter

23

24

25
```