# EXHIBIT I

*MENOCAL*

*VS.*

**THE GEO GROUP**

<u>**Deposition**</u>

*GRISEL XAHUENTITLA*

*10/26/2017*

---

***AB Court Reporting & Video***
*216 16th Street, Suite 600*
*Denver Colorado, 80202*
*303-296-0017*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-CV-02887-JLK
_____

VIDEO DEPOSITION OF GRISEL XAHUENTITLA
October 26, 2017
_____

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others
similarly situated,

Plaintiffs,

vs.

THE GEO GROUP, INC.,

Defendant.
_____

APPEARANCES:

        TOWARDS JUSTICE-DENVER
                By Alexander N. Hood, Esq.
                   1535 High Street, Suite 300
                   Denver, Colorado  80218
                     and
        THE MEYER LAW OFFICE, P.C.
                By Hans C. Meyer, Esq.
                   1029 Santa Fe
                   Denver, Colorado  80204
                     and
        THE KELMAN BUESCHER FIRM
                By Andrew H. Turner, Esq.
                   600 Grant Street, Suite 450
                   Denver, Colorado  80203
                      Appearing on behalf of Plaintiffs

```
 1   APPEARANCES (Continued):

 2        NORTON ROSE FULBRIGHT US, LLP
              By Charles A. Deacon, Esq.
 3                300 Convent Street, Suite 2100
                  San Antonio, Texas  78205
 4                   and
          BURNS, FIGA & WILL, P.C.
 5                By Dana L. Eismeier, Esq.
                  6400 S. Fiddlers Green Circle
 6                Suite 1000
                  Greenwood Village, Colorado  80111
 7                   Appearing on behalf of Defendant

 8   Also Present: Monika Cary, videographer

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1       Pursuant to Notice and the Federal

2   Rules of Civil Procedure, the video deposition of

3   GRISEL XAHUENTITLA, called by Defendant, was taken

4   on Thursday, October 26, 2017, commencing at

5   10:30 a.m., at 1225 - 17th Street, Suite 3050,

6   Denver, Colorado, before Tracy L. Harris,

7   Certified Realtime Reporter, Registered Merit

8   Reporter, and Notary Public within and for the

9   State of Colorado.

10

11

12              I N D E X

13  VIDEO DEPOSITION OF GRISEL XAHUENTITLA

14  EXAMINATION BY:                            PAGE

15      Mr. Hood                               163

16      Mr. Meyer                               --

17      Mr. Turner                              --

18      Mr. Deacon                          6, 173

19      Mr. Eismeier                            --

20

    EXHIBITS                    INITIAL REFERENCE
21

    Exhibit 1 Defendant's Amended Notice of        21
22            Intention to take Oral and
              Videotaped Deposition of
23            Grisel Xahuentitla

24  Exhibit 2 U.S. Department of Homeland           25
              Security Record of Deportable/
25            Inadmissible Alien

```
 1              I N D E X (Continued)

 2   EXHIBITS                        INITIAL REFERENCE
```

```
 3    Exhibit 3  Detainee Grievance Form          50
                 Case# 14-114, Grisel
 4               Xahuentitla-Flores

 5    Exhibit 4  Detainee Work Detail Application  52
                 for Grisel Xahuentitla-Flores
 6

 7    Exhibit 5  Service Processing Center/Contract 60
                 Detention Facility The Geo Group,
                 Inc./Aurora Ice Processing Center
 8               Detainee Voluntary Work Program
                 Agreement
 9

10    Exhibit 6  Order to Detain or Release Alien  65

11    Exhibit 7  U.S. Immigration and Customs      65
                 Enforcement, Enforcement and
                 Removal Operations National
12               Detainee Handbook Detention
                 Management Division
13

14    Exhibit 8  Emergency Notification and       117
                 Property Disposition Form for
                 Grisel Xahuentitla-Flores
15

16    Exhibit 9  Declaration of Grisel            118
                 Xahuentitla-Flores
17
      Exhibit 10 Ex-detainees: Detention center's 141
18               practices border on slavery by
                 Colleen Slevin, June 22, 2017
```

```
19

20

21

22

23

24

25
```

1               P R O C E E D I N G S

2          (Exhibits 1 through 10 marked.)

3          THE VIDEOGRAPHER:  We're on the record

4   at 10:30 a.m.  Today is October 26, 2017.  This

5   begins the videotape deposition of Grisel

6   Xahuentitla, taken by the defendant in the matter

7   of Menocal, et al. vs. The Geo Group.

8          We are located at 1225 - 17th Street,

9   Suite 3050, Denver, Colorado.  The court reporter

10  is Tracy Harris.  The videographer is Monika Cary.

11  Counsel will introduce themselves and the parties

12  they represent beginning with plaintiff's counsel

13  first.

14          MR. HOOD:  Alexander Hood for the

15  plaintiff from Towards Justice.

16          MR. MEYER:  Hans Meyer with the Meyer

17  Law Office

18          MR. TURNER:  Andrew Turner, the Kelman

19  Buescher Firm.

20          MR. DEACON:  This is Charlie Deacon

21  with Norton Rose Fulbright, representing The

22  Geo Group.

23          MR. EISMEIER:  And Dana Eismeier, Burns

24  Figa & Will, also for Geo Group.

25          THE VIDEOGRAPHER:  Will the court

1    reporter please swear in the witness.

2                    GRISEL XAHUENTITLA,

3    being first duly sworn in the above cause, was

4    examined and testified as follows:

5                    EXAMINATION

6    BY MR DEACON:

7        Q    Ms. Grisel (sic), we met just briefly

8    before your deposition.  Could you identify

9    yourself for the record.

10       A    My name is Grisel Xahuentitla-Flores.

11            MR. HOOD:  Mr. Deacon, before -- before

12   we get started, could we just put a few things on

13   the record?

14            MR. DEACON:  Absolutely.

15            MR. HOOD:  First, I'd just like to pass

16   my witness a glass of water.

17            MR. DEACON:  Good idea.

18            MR. HOOD:  And prior to going on the

19   record, we discussed a stipulation that simply

20   saying the word "Objection" would be sufficient to

21   preserve any deposition-appropriate objections

22   and -- with no further language; is that correct?

23            MR. DEACON:  It is.  Why don't we just

24   keep that the same for all depos.

25                    Fair?

1   don't drink, and I don't use drugs, of course.

2   It's good to kill time when you're there in a good

3   way.

4        Q    Okay.  So you were just assisting with

5   the AA meetings because you wanted --

6        A    Yes, sir.

7        Q    -- to do something with your time?

8        A    Yeah.  I --  I took the Christian Bible

9   classes.  I went to --  I am Catholic, so I went

10  for the Catholic services.  I just did everything

11  and anything that was possible to help me -- to

12  help me learn new things and to help me kill time

13  in a good way.

14       Q    Okay.  So doing something positive was

15  good for you, rather than just sitting around?

16       A    Yes.

17       Q    Okay.  And you would rather be occupied

18  than just sit around?

19       A    I can probably tell you right now that

20  I can read a book in English.

21       Q    Was that as a result of your time in

22  the jail?

23       A    Yes --

24       Q    Oh.

25       A    -- taking my GED classes.

1      Q      Oh, congratulations.

2             Was there any other activities that you

3   did while you were in the jail?

4      A      No, sir.

5      Q      Okay.  Did you ever participate in any

6   cleaning of the area around where you stayed?

7             MR. HOOD:  Objection.

8      A      No.

9             MR. HOOD:  You can respond.

10     A      No.

11     Q      (By Mr. Deacon)  Did you have to make

12  your bed?  Wash your sinks?

13     A      Of course.

14     Q      Okay.

15     A      You have your cell, so I am --  I like

16  to have my room clean and neat.  It doesn't matter

17  where you are.  I believe it tells you too

18  much about -- it tells people too much about

19  yourself.

20     Q      So you keep your place tidy?

21     A      Yes.

22     Q      And clean?

23     A      Yes.

24     Q      I assume you do that at home as well?

25     A      Of course.

1          MR. HOOD:  Objection.

2     A     Okay.

3     Q     (By Mr. Deacon)  All right.  Do you --

4  Did you --  Did you understand that was ICE that

5  made that determination?

6          MR. HOOD:  Objection.

7     A     I do understand that.

8     Q     (By Mr. Deacon)  You did understand

9  that, okay?

10    A     I do now.

11    Q     Okay.  All right.  Let me ask you, were

12  you --  Were you ever disciplined while you were

13  at Aurora?

14    A     Disciplined?

15    Q     Yeah.  Did you ever do anything that

16  got you in trouble?

17    A     No.

18    Q     All right.  Were you ever placed in

19  administrative segregation?

20         MR. HOOD:  Objection.

21    A     What's --  What's that?

22    Q     (By Mr. Deacon)  Okay.  Well, that's

23  probably a good answer, because if you don't know,

24  you probably didn't.

25         Do you recall ever getting the

1    equivalent of a time-out and you would be placed

2    away from other people?

3                MR. HOOD:  Objection.

4        A     No, sir.

5        Q     (By Mr. Deacon)  All right.  So I guess

6    if I asked you to described administrative

7    segregation, you wouldn't know what that was?

8        A     No.

9                MR. HOOD:  Objection.

10       Q     (By Mr. Deacon)  Okay.  All right.  How

11   about disciplinary segregation?  Do you know what

12   that would be?

13       A     No.

14       Q     All right.

15       A     Discipline sounds like Mom, but --  No.

16       Q     Okay.  Well, you know, you don't have

17   to have answers to everything, because I --  You

18   know, I'm only asking you questions in case you

19   know.  If you don't know, just tell me you don't

20   know.

21       A     Thank you.

22       Q     Fair?

23       A     Yes.  Thank you.

24       Q     Okay.  Do you know of anybody who was

25   placed in administrative segregation or in

1    you ever know anybody who was placed in the hole?

2        A      No.

3        Q      Okay.  So you don't have any --  I

4    can't ask you any information about what it

5    consisted of or what was inside there --

6        A      What it looked like, no.

7        Q      All right.  What guard pointed out the

8    hole to you?

9        A      I don't remember the names of the

10   guards.

11       Q      Okay.  Was it male?  Was it female?

12       A      We always got females.

13       Q      Okay.  So you only had female guards?

14       A      Yes, sir.

15       Q      Okay.  And do you recall any guard ever

16   threatening to put somebody in the hole?

17       A      About three times.

18       Q      And who was --  When was that?

19       A      One time this lady was sick -- well, a

20   girl, not a lady -- this girl was sick, and her

21   name was on the board to clean -- to clean the --

22   I --  I --  I don't remember if it was sweeping or

23   mopping.  And so she had a really bad abdominal

24   pain, and -- and so another girl and I volunteered

25   to do the work for her.  And the guard said -- she

1    said "No."  She said that we had to go back to our

2    beds and she had to do the job, because her name

3    was on the board.  She was in real bad pain.

4              And so that's when -- that's when the

5    guard said that if she didn't do the work, she was

6    going to be sent to the hole.  And so she was

7    pointing at it like (indicating) -- like it was

8    right next to our dorm.  And --  And she said that

9    it wasn't going to be any pleasant.

10             That's all I know.

11   Q     Do you know if there's any -- where the

12   medical facilities are at Aurora?

13   A     Who is the what?

14   Q     Medical --  Where you receive medical

15   care, do you know where that's located at Aurora?

16   A     In the same --  In the same Geo

17   detention.

18   Q     Yes.  But in terms of where the guard

19   was pointing, do you know where the medical center

20   is in relationship to what you called the hole?

21   A     Oh, yes.  So you get out of the dorms,

22   and you walked to your -- to your left, and then

23   you walked to your right, and then I think you

24   again walked to the right, and then you wait for

25   the medical.

1    tidy; is that correct?

2         MR. HOOD:  Objection.

3    A    It's not what?

4    Q    (By Mr. Deacon)  You would expect

5    people to clean up after themselves, right?

6         MR. HOOD:  Objection.

7    A    I can speak for myself.

8    Q    (By Mr. Deacon)  All right.  But if I

9    make a mess and -- on a bathroom sink, shouldn't I

10   have to clean it up?

11        MR. HOOD:  Objection.

12   A    I don't know.

13   Q    (By Mr. Deacon)  Okay.  Well, if you

14   make a mess on a kitchen -- on a bathroom sink, do

15   you think someone else should come and clean it up

16   after you or should you clean it up?

17        MR. HOOD:  Objection.

18   A    I should clean it, because I like to be

19   a clean person.

20   Q    (By Mr. Deacon)  Right.  And if

21   you mess -- make a mess on a commode or a toilet,

22   should somebody else have to clean up after you or

23   should you clean it?

24        MR. HOOD:  Objection.

25   A    I wouldn't clean it.

1       Q       When you say "tall" --  You said you're

2    5 foot 2 and that the lieutenant was about 5 foot

3    5.  How much taller was this lady --

4               MR. HOOD:  Objection.

5       Q       (By Mr. Deacon)  -- to your -- to the

6    best of your estimate.

7       A       Tall.

8       Q       Okay.

9       A       She was tall for a girl.

10      Q       And is this the one that had, like,

11   light -- or lighter reddish hair?

12      A       Yes.

13      Q       Okay.  Did she use the word hole,

14   h-o-l-e?

15      A       Yes.

16      Q       Did anybody ever describe to you what

17   was in the hole or where the hole was -- or what

18   was inside the alleged hole?

19      A       No.

20              MR. HOOD:  Objection.

21      A       Nobody knew what -- what it was in

22   there.

23      Q       (By Mr. Deacon)  Okay.  Because you

24   didn't know anybody that went there, right?

25      A       No.

1    Q    Correct?

2    A    Yes, sir.

3    Q    Okay.

4    A    Oh, I meant yes, I didn't know anyone.

5    Q    I know.  It's confusing --

6    A    Okay.

7    Q    -- so that's why I corrected it.

8    A    Okay.

9    Q    Okay.  So you personally didn't know

10   anybody that was ever sent to solitary confinement

11   or administrative segregation --

12   A    Exactly.

13   Q    -- or disciplinary segregation,

14   correct?

15   A    Yes.

16   Q    Okay.  Paragraph 4, which is on the

17   next page, it talks about the time you worked in

18   the voluntary work program, and it has the word,

19   quote, trustee in my pod where you were paid $1 a

20   day.  When you testified earlier about when you

21   were cleaning as a trustee, was that part of the

22   voluntary work program?

23   A    Was it the $1 a day program?

24   Q    Yes.

25   A    Yes.

1    STATE OF COLORADO )

2                     )ss.    REPORTER'S CERTIFICATE

3    COUNTY OF DENVER )

4        I, Tracy L. Harris, do hereby certify that I

5    am a Certified Realtime Reporter, Registered Merit

6    Reporter, and Notary Public within the State of

7    Colorado; that previous to the commencement of the

8    examination, the deponent was duly sworn to

9    testify to the truth.

10        I further certify that this deposition was

11    taken in shorthand by me at the time and place

12    herein set forth, that it was thereafter reduced

13    to typewritten form, and that the foregoing

14    constitutes a true and correct transcript.

15        I further certify that I am not related to,

16    employed by, nor of counsel for any of the parties

17    or attorneys herein, nor otherwise interested in

18    the result of the within action.

19        In witness whereof, I have affixed my

20    signature this 6th day of November, 2017.

21        My commission expires July 30, 2021.

22

23

24                        _____
                          Tracy L. Harris, CRR, RMR, RPR
                          216 - 16th Street, Suite 600
25                        Denver, Colorado  80202