# EXHIBIT K

```
 1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
 2
      Civil Action No.: 1:14-cv-02887-JLK
 3    _____

 4                       DEPOSITION OF
                 JOYCE QUEZADA - July 28, 2020
 5                       via RemoteDepo
      _____
 6
      ALEJANDRO MENOCAL, ET AL.,
 7
      Plaintiffs,
 8
      v.
 9
      THE GEO GROUP, INC.,
10
      Defendant.
11    _____

12
                  PURSUANT TO NOTICE, the deposition of
13    JOYCE QUEZADA was taken on behalf of the Plaintiffs by
      remote means, on July 28, 2020, at 9:32 a.m., before
14    Shannon Clementi, Registered Professional Reporter,
      Colorado Realtime Certified Reporter and Notary Public,
15    appearing remotely from Arapahoe County, Colorado.

16

17

18

19

20

21

22

23

24

25
```

```
 1                  REMOTE APPEARANCES

 2   For the Plaintiffs and Class:

 3          ANDREW TURNER, ESQ.
            The Kelman Buescher Firm
 4          600 Grant Street, Suite 450
            Denver, Colorado 80203
 5          aturner@laborlawdenver.com


 6
     For the Defendant:
 7
            ADRIENNE SCHEFFEY, ESQ.
 8          Akerman, LLP
            1900 Sixteenth Street, Suite 1700
 9          Denver, Colorado 80202
            adrienne.scheffey@akerman.com
10
            DANA EISMEIER, ESQ.
11          Burns, Figa & Will
            6400 South Fiddlers Green Circle
12          Suite 1000
            Greenwood Village, Colorado 80111
13          deismeier@bfwlaw.com

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        I N D E X

 2   EXAMINATION OF JOYCE QUEZADA:                    PAGE
     July 28, 2020
 3
     By Mr. Turner                                    5, 151
 4
     By Ms. Scheffey                                  148, 153
 5

 6                                                    INITIAL
     DEPOSITION EXHIBITS:                             REFERENCE
 7   (Exhibits provided electronically to the reporter.)

 8   Exhibit 1    Application for Employment for Joyce    13
                  Quezada dated 12/20/00
 9
     Exhibit 2    Transfer records for Joyce Quezada      22
10
     Exhibit 3    Email exchange                          70
11
     Exhibit 4    Officer of the Year Award letter from   73
12                Johnny Choate to Joyce Quezada dated
                  5/1/15
13
     Exhibit 5    Applications Cover Letter Aurora/ICE    75
14                Processing Center dated 10/24/05

15   Exhibit 6    (Not marked)                            81

16   Exhibit 7    Aurora ICE Processing Center Detainee   81
                  Handbook, Local Supplement, Revised
17                10/13

18   Exhibit 8    Shift Supervisor Daily Log/Post         106
                  Assignments
19
     Exhibit 9    Excerpt entitled "Suicide Management    137
20                Policy Intervention Procedures"

21

22

23

24

25
```

```
 1                  WHEREUPON, the following proceedings

 2    were taken pursuant to the Colorado Rules of Civil

 3    Procedure.

 4                    *      *      *      *      *

 5                  THE REPORTER:  The attorneys participating

 6    in this deposition acknowledge that I am not physically

 7    present in the deposition room and that I will be

 8    reporting this deposition remotely.  They further

 9    acknowledge that in lieu of an oath administered in

10    person, the witness will verbally declare her testimony

11    in this matter is under penalty of perjury.  The

12    parties and their counsel consent to this arrangement

13    and waive any objections to this manner of reporting.

14                  Please indicate your agreement by stating

15    your name and agreement on the record.

16                  MS. SCHEFFEY:  Adrienne Scheffey on behalf

17    of the GEO Group.  I agree.

18                  MR. TURNER:  Andrew Turner on behalf of

19    the plaintiff class, and we agree.

20                         JOYCE QUEZADA,

21    having been first duly sworn to state the whole truth,

22    testified as follows:

23                  (Deponent's reply to oath:  Yes, I swear.)

24

25
```

```
 1                MS. SCHEFFEY:  Object to form.
 2         A.    Possibly.
 3         Q.    (BY MR. TURNER)  I'm sorry?  What was the
 4   answer?
 5         A.    Yes.
 6         Q.    Okay.  You weren't always assigned to
 7   female dorms?
 8         A.    No.
 9         Q.    What do the dorm trustees do?
10         A.    We would have dorm trustees, and then we'd
11   have the cleanup crew, six of them, and they would help
12   me serve the trays.
13                And then after the trays were served, we
14   would get the cleanup crew, the six that -- two to
15   clean tables, two to mop and two to sweep.  And the
16   trustees would just help them.
17                I would help them also.  I'd get the spray
18   bottle and spray the tables for them, and they would
19   wipe.
20         Q.    Okay.
21         A.    And I'd have their buckets ready for them,
22   and they would just clean up.
23         Q.    And you're talking about general cleanup
24   of the common area, right?
25         A.    Yes, the day area.
```

```
 1         Q.   So how have you done that when detainees
 2   are resistant?
 3         A.   We call a code.  The watch commander and
 4   first responders, they come to the kitchen.
 5         Q.   Let's talk about your time in the
 6   detention officer job on the floor.  Now we're not
 7   talking about the kitchen.
 8         A.   Okay.
 9         Q.   What do you do when you've got resistant
10   detainees there?
11              MS. SCHEFFEY:  Object to form.
12         A.   Resisting in which way?
13         Q.   (BY MR. TURNER)  Well, have you ever had
14   them not to follow the rules?
15              MS. SCHEFFEY:  Object to form.
16         A.   No.  The only -- when -- like I said, the
17   volunteer workers, if they didn't want to work, I told
18   them it was fine, they don't need to work.  We're not
19   forcing them; they don't have to.  And they wouldn't
20   cause a big old scene or no nothing.  I would just talk
21   to them.
22         Q.   (BY MR. TURNER)  What do you tell them
23   when you talk to them?
24         A.   If they tell me that they don't want to
25   work, I tell them, "That's fine.  Don't worry about it.
```

1  I can do it."
2              Or another detainee sometimes volunteers,
3  and they want to do it, I say, "Sure."
4              But no.
5       Q.   So is it against the rules to disobey an
6  officer's command?
7              MS. SCHEFFEY:  Object to form.
8  Foundation.
9       A.   Yes.
10      Q.   (BY MR. TURNER)  And you have to enforce
11 those rules, don't you?
12             MS. SCHEFFEY:  Object to form.
13      A.   Yeah, but we're not forcing them to work
14 or no nothing.  So if they don't want to work, we don't
15 enforce it on them.  If they don't want to do it, we
16 say, "That's fine.  We'll get somebody else," or I can
17 do it.  I can help them a lot.
18      Q.   (BY MR. TURNER)  Would you agree that to
19 maintain order in the facility, it's important that the
20 detainees know there are rules?
21             MS. SCHEFFEY:  Object to form.
22 Foundation.
23      A.   Yes.
24      Q.   (BY MR. TURNER)  They don't get to just
25 choose not to follow the rules, right?

```
 1  think is important about that?
 2         A.   Well, I know that I mentioned if they
 3  don't want to clean -- there was this one incident
 4  where I worked in the -- "David" -- D with the females,
 5  and there was one where the cleanup crew didn't want to
 6  mop.  And, you know, I talked to her and told her that
 7  was her job for the day, but if she didn't want to do
 8  it, I did it for her.  I think she felt pretty bad and
 9  all and she came back and did it.
10              But if you talk to them the right way and
11  let them know exactly, you know, the way it's got to be
12  and all, they do a better job, and they do it.
13              It's not like -- you hardly ever hear
14  anybody saying, "I'm not going to do it."  There's
15  probably one in 50 that doesn't want to do it.  But
16  it's not like every time.  The next time it's his turn,
17  he'll do it.  It's not like every time they all say no
18  or --
19              Like there was that one time when it was
20  time for count and they didn't want to go in.  They
21  were just sitting there.  I told them, "Okay.  Listen,
22  I'm going to turn off the TVs if you don't go in."  And
23  right away they got up and they did it.  They went to
24  their pods.
25              It's just how you talk to them and treat
```

1    them.
2           Q.   Do you recall any other specific
3    occasions, other than the D2 female mopping incident,
4    in which you did the cleanup work for the detainee?
5           A.   Yeah.  There was times if they were
6    shorthanded or one happened to go to the library, and
7    it was right after court and their name was on there, I
8    would help them clean.  One of the other detainees
9    would clean for them.
10          Q.   The incident you just described regarding
11   being in D2 with a female who didn't want to mop, when
12   was that?
13          A.   That was when I first started on the floor
14   as a detention officer.  I started off -- I was in
15   "David."
16          Q.   Do you think you can tell me a month?
17          A.   Oh, gosh.  I should know.
18               I sure can't.  I don't remember.  Let me
19   think.
20               It was still in the summer, sometime
21   before winter.  Just before winter.  But what month,
22   no.  I'm sorry.
23          Q.   Do you have any other information you
24   believe would help the jury in deciding this case?
25          A.   I think me -- I can only speak for myself,

1    I never threatened them with segregation
2    or anything, but I just told them what the -- you know,
3    what the good is about all that.
4         Q.   And when you told someone they wouldn't
5    get their ice cream, would you consider that to be a
6    loss of privileges?
7         A.   It would, yes.
8         Q.   And do you see here on the screen where it
9    says "Sanctions," "Loss of privileges"?
10        A.   Yes.
11        Q.   Is it your understanding that these
12   sanctions are all permissible consequences for failing
13   to follow a rule in the high moderate category?
14        A.   Yes.
15        Q.   And how do you decide which sanction to
16   use?
17        A.   Which sanction to use?
18        Q.   So A through M, do you have discretion to
19   decide which sanction to use?
20        A.   Yes.  It depends on what it is and all,
21   yes.
22        Q.   And earlier you testified that some people
23   may not do certain things because they're afraid of the
24   consequences of segregation.
25             Do you remember that?

1        A.   Yes.

2        Q.   Is it -- have you ever had people

3   cooperate with you because you threatened to turn off

4   the TV?

5        A.   Well, there was one time when they didn't

6   want to go in their door at count time, and I told

7   them, "Okay.  If you don't go to your dorms, I'm going

8   to shut off the TVs."  I didn't threaten them or

9   anything.  They all know, "Okay.  We'll go to the dorms

10  to ourselves," which they did right away.  And I left

11  the TVs on for them.

12            I didn't threaten them or anything.  I

13  just let them know they got to go to their dorms so we

14  can do count.  And if they didn't, I would turn off the

15  TVs, but I would leave it on if they did.

16            And that was it.  And they did it right

17  away.  They didn't argue.  They didn't -- anything.

18  They went.

19       Q.   In your experience, do detainees want to

20  cooperate?

21       A.   Yes, they did.  They were real good.

22            MS. SCHEFFEY:  No further questions.

23            MR. TURNER:  I have a few follow-ups,

24  please.

25

```
 1                    REPORTER'S CERTIFICATE

 2   STATE OF COLORADO        )
                              )  ss.
 3   CITY AND COUNTY OF DENVER )

 4              I, Shannon Clementi, Registered
     Professional Reporter, Colorado Realtime Certified
 5   Reporter and Notary Public ID 20004025632, State of
     Colorado, do hereby certify that previous to the
 6   commencement of the examination, the said JOYCE QUEZADA
     verbally declared his/her testimony in this matter is
 7   under penalty of perjury; that the said deposition was
     taken in machine shorthand by me at the time and place
 8   aforesaid and was thereafter reduced to typewritten
     form; that the foregoing is a true transcript of the
 9   questions asked, testimony given, and proceedings had.

10              I further certify that I am not employed
     by, related to, nor of counsel for any of the parties
11   herein, nor otherwise interested in the outcome of this
     litigation.
12
                IN WITNESS WHEREOF, I have affixed my
13   signature this 12th day of August, 2020.

14              My commission expires June 3, 2021.

15
     __X__ Reading and Signing was requested.
16
     _____ Reading and Signing was waived.
17
     _____ Reading and Signing is not required
18
                                 _____
19                               Shannon Clementi
                                 Registered Professional Reporter
20                               Colorado Realtime Certified Reporter

21

22

23

24

25
```