# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 1:14-cv-02887-JLK-MEH

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA,
*on their own and on behalf of all others similarly situated*,

      Plaintiffs,

v.

THE GEO GROUP, INC.,

      Defendant.

---

### EXHIBIT A TO GEO'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

---

| | GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|---|
| **1.** | ICE is a federal agency tasked with enforcing U.S. immigration laws. 6 U.S.C. § 542. ECF 270 at 5 (Material Undisputed Fact #1). | Undisputed | |
| **2.** | The United States Congress delegated to the Department of Homeland Security, and its agency ICE, the sole authority to arrange for all aspects of the detention of | Admit that 8 U.S.C. § 1231(g) constitutes one source of the Secretary's detention authority. Dispute | No further response required. |

1

| | GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|---|
| | aliens pending the results of their immigration proceedings. 8 U.S.C. § 1231(g)(1) ("The [Secretary of Homeland Security] shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."). | that it is the sole source, as other sources include 8 U.S.C. § 1103(a)(A)(11)(A) & (B), and 8 U.S.C. § 1555(d), and dispute that these enactments provide authority for ICE to arrange for "all aspects" of the detention of immigration detainees. The text and history of 8 U.S.C. § 1555(d) and funds relating to specific aspects of the detention of immigration detainees. | |
| 3. | ICE has the authority to detain foreign nationals suspected of entering the United States unlawfully. 8 U.S.C. §§ 1101 *et seq.*; ECF 270 at 5 (Material Undisputed Fact #2). | Undisputed. | |
| 4. | In making these arrangements, ICE must consider the use of private contractors to detain aliens prior to constructing its own facilities. 8 U.S.C. § 1231(g)(2) ("Prior to initiating any project for the construction of any new detention facility for the Service, the Commissioner shall consider the availability for purchase or lease of any existing prison, jail, detention center, or other comparable | Admit that ICE is required to consider alternatives to building its own detention centers, and that these may include subcontracts with private entities. Dispute that the text of 8 USC § 1231(g)(2) requires use of a private subcontractor in every instance, as ICE also enters into contracts with state and local governments. Plaintiffs' Opp. Ex. 1 (Venturella Dep. 162:13-18). | GEO does not dispute Plaintiffs' added explanation. |

54284070;1

| GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|
| facility suitable for such use."). | | |
| **5.** As a result of Congress' directive, ICE neither constructs nor operates its own immigration detention facilities, ECF 271-2 (Dec. of Tae Johnson, cited as "Ex. B"), and therefore its state and private contractors are critical to carrying out the federal function of immigration detention. | Dispute. ICE owns and operates, at least in part, some of its own facilities, including the Krome detention center in South Florida. Plaintiffs' Reply Ex. 2, ECF No. 287-2 (Evans Dep. 48:13-49:6); GEO Ex. B, ECF No. 271-2 (Tae Johnson Decl. ¶ 9) ("Service Processing Centers are owned by ICE and staffed by a combination of federal and contract employees.") The evidence GEO provides does not support the statement that ICE does not construct or operate its own immigration detention facilities, or the statement that it does not do so as "a result of Congress's directive," or the statement that state and private contractors are "critical." Moreover, ICE could operate detention centers itself if it so desired. Plaintiffs' Opp. Ex. 1 (Venturella Dep. 190:13-18). | No further response required. |
| **6.** ICE contracts with GEO to house some of its detainees in detention facilities throughout the country. *See* https://www.geogroup.com/Locations. ECF 270 at 5 | Undisputed. | |

| GEO's Statement of Undisputed Facts | | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|---|
| | (Material Undisputed Fact #3). | | |
| 7. | Among GEO's portfolio of ICE detention facilities is the Aurora Facility. *Id*. | Undisputed. | |
| 8. | ICE chose to contract with the AIPC to detain aliens pending the resolution of their immigration proceedings. ECF 270 at 9 (Additional Undisputed Fact #5). | Undisputed. | |
| 9. | GEO owns and has continuously operated AIPC, under contracts with ICE from October 22, 2004 to October 22, 2014. ECF 270 at 5 (Material Undisputed Fact #5). | Undisputed. | |
| 10. | A contract between ICE and GEO may be modified during its term by mutual consent of GEO and ICE. ECF 270 at 5 (Material Undisputed Fact #6) | Undisputed. | |
| 11. | All immigration detention processing centers, including the AIPC, must adhere to ICE's standards. In 2000, the Immigration and Naturalization Service ("INS"), ICE's predecessor, adopted the original National Detention Standards (the "2000 NDS"). | Undisputed. | |
| 12. | Subsequently, ICE promulgated similar standards in the form of the PBNDS in 2008 (the "2008 PBNDS") and 2011 (later updated in 2016) (the "2011 PBNDS"). (2000 NDS | Undisputed. | |

4

| | GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|---|
| | available at https://www.ice.gov/detention-standards/2000; 2008 PBNDS available at: https://www.ice.gov/detention-standards/2008; 2011 PBNDS available at: https://www.ice.gov/detention-standards/2011). | | |
| 13. | In each contract GEO entered into with ICE for the operation of the AIPC, the 2000 NDS, 2008 PBNDS, or the 2011 PBNDS, as applicable, were incorporated into the contract and GEO was required to comply with the same. ECF 270 at 9-10 (Additional Undisputed Fact #7). | Admit. The parties dispute the mechanism by which the operative version of the PBNDS were "incorporated" into the contract. *See* Fact Nos. 14-15, 17-18. | |
| 14. | GEO's contract with ICE, number ACD-3-C-0008, required it to comply with the 2000 NDS from March 27, 2003 to September 28, 2006. ECF 262-5 at 12 (GEO_MEN 00059754). | Admit. GEO's contract with ICE, number ACD-3-C-0008, required that, "[u]nless otherwise specified by an authorized INS representative," GEO "perform in continual compliance *with the most current* editions of the INS Detention Standards and the American Correctional Association, Standards for Adult Local Detention Facilities (ACA ALDF)." Plaintiffs' Ex. D, ECF 262-5 at 12 (emphasis added). The 2000 NDS were the most current edition of the INS Detention Standards during the stated period. | |

5

| GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|
| **15.** GEO's contract with ICE, number HSCEOP-06-D-00010, effective September 29, 2006, similarly required it to comply with the 2000 NDS. ECF 24-4 at 11 (GEO_MEN 00059644); ECF 260 at 3 (proffering as undisputed the fact that HSCEOP-06-D-00010 was one of GEO's contracts with ICE during the class period); ECF 262-4 (incorporating the 2000 NDS into the contract). | Dispute. GEO's contract with ICE, number HSCEOP-06-D-00010, effective September 29, 2006, does not explicitly incorporate the 2000 NDS. Plaintiffs admit that GEO's contract with ICE, number HSCEOP-06-D-00010, effective September 29, 2006, required that, "[u]nless otherwise specified by the CO," GEO "perform in accordance with the most current Functional Areas (as outlined in the Performance Requirement Summary), ICE Detention Standards, and American Correctional Association (ACA) Performance-Based Standards for Adult Local Detention Facilities (ALDF)." Plaintiffs Ex. C., ECF 262-4 at 11. Plaintiff's admit that the 2000 NDS were the most current ICE Detention Standards at the time the contract was signed, but other versions of the PBNDS were published during the term of the above-cited contract. | |
| **16.** On April 28, 2010, GEO entered into a contract modification with ICE (HSCEOP-06-D-00010/P00018) which required it to comply with the 2008 PBNDS, effective | Undisputed. | GEO denies any change in the PBNDS would automatically change GEO's contract with ICE to incorporate new standards. GEO and ICE specifically incorporated each change to |

| | GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|---|
| | immediately. ECF 270 at 10 (Additional Undisputed #10) (citing ECF 271-3, cited as "Ex. C"); ECF 261-9 (2008 PBNDS). | | the PBNDS into its contract modifications so that any cost ramifications could be addressed prior to changing the contract requirements. Ex. G (Amber Martin Dep. 46-47). |
| 17. | GEO's subsequent contract with ICE, number HSCEDM-11-D-00003, required it to continue to comply with the 2008 PBNDS. That contract was effective September 15, 2011. ECF 262-2 at 38 (incorporating the 2008 PBNDS into the contract); ECF 270 at 10 (Additional Undisputed Fact #11, #12) (noting Plaintiffs proffer as undisputed the fact that HSCEDM-11-D-00003 was one of GEO's contracts with ICE during the Class Period). | Dispute. HSCEDM-11-D-00003 incorporated the "DHS/ICE PBNDS (Performance Based National Detention Standards)," and stated that "a copy of the current version is obtainable on the internet Website: http://www.ice.gov/detention-standards/2008/." The contract also required that "these constraints may change over time; the Contractor shall be knowledgeable of any changes to the constraints and perform in accordance with the most current version of the constraints." ECF No. 262-2 at 37-38. The 2011 PBNDS were published on February 27, 2012, and were thus the "most current" version of the PBNDS after that date. Reply Ex. 8, ECF No. 287-8 at 10 (ICE report re PBNDS). | GEO denies any change in the PBNDS would automatically change GEO's contract with ICE to incorporate new standards. GEO and ICE specifically incorporated each change to the PBNDS into its contract modifications so that any cost ramifications could be addressed prior to changing the contract requirements. Ex. G (Amber Martin Dep. 46-47). |
| 18. | On May 23, 2013, GEO entered into a contract modification with ICE (HSCEDM-11-D-00003/P00005) agreeing that, | Admit. Plaintiffs note that GEO was required to remain aware of and perform in accordance with ongoing changes to the | GEO denies any change in the PBNDS would automatically change GEO's contract with ICE to incorporate new standards. |

7

| GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|
| effective June 23, 2013, GEO would comply with the 2011 PBNDS. ECF 270 at 10 (Additional Undisputed Fact #12) (citing ECF 271-4, cited as "Ex. D"); ECF 262-3, 2 (GEO-MEN 00020406; ECF 270 at 10 (Additional Undisputed Fact #11, #12) (noting Plaintiffs proffer as undisputed the fact that HSCEDM-11-D-00003/P00005 was one of GEO's contracts with ICE during the Class Period). | PBNDS under its existing contract, and in fact began implementing changes associated with the 2011 PBNDS long before the contract modification. Reply Ex. 9, ECF No. 287-9 (A. Martin 30(b)(6) Dep. 43:23-46:6) (describing an email sent April 4, 2012 that included an attachment regarding the major changes between the 2008 and 2011 PBNDS and explicitly mentioning the new language stating that compensation for VWP work is "at least $1.00"). | GEO and ICE specifically incorporated each change to the PBNDS into its contract modifications so that any cost ramifications could be addressed prior to changing the contract requirements. Ex. G (Amber Martin Dep. 46-47). |
| **19.** The 2000 NDS and all applicable versions of the PBNDS require GEO to adopt, without alteration, the ICE disciplinary severity scale. ECF 261-10 at 17 (2000 NDS) (Contract Detention Facilities "shall adopt, without changing, the offense categories and disciplinary sanctions set forth in this section."); ECF 261-9 at 45 (2008 PBNDS) (Contract Detention Facilities "shall adopt, without alteration, the offense categories and disciplinary sanctions set forth in this section."); ECF 261-8 at 39 (2011 PBNDS) ("All facilities shall have graduated scales of offenses and | Undisputed. | |

8

| GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|
| | disciplinary consequences as provided in this section."). | | |
| 20. | The 2000 NDS and all versions of the PBNDS require GEO to provide notice to detainees, in the local detainee handbook, of the ICE-mandated disciplinary severity scale. ECF 261-10 at 10 (2000 NDS) ("The detainee handbook, or supplement, issued to each detainee upon admittance, shall provide notice of … the disciplinary severity scale …"); ECF 261-9 at 44 (2008 PBNDS) ("The detainee handbook, or supplement, issued to each detainee upon admittance, shall provide notice of … the disciplinary severity scale …"); ECF 261-8 at 38 (2011 PBNDS) ("The detainee handbook, or supplement, issued to each detainee upon admittance, shall provide notice of … the disciplinary severity scale …"). | Undisputed. | |
| 21. | Likewise, the 2000 NDS and all versions of the PBNDS explicitly provide a disciplinary severity scale that includes the "[r]efusal to clean assigned living area" as an offense which can be sanctioned by "[d]isciplinary segregation (up to 72 hours)." ECF 261-10 at 24 (2000 NDS); ECF 261-9 at 56 (2008 PBNDS); 261-8 at 47 (2011 | Undisputed. | |

9

| GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|
| PBNDS); ECF 260 at 17 (Plaintiffs' Undisputed Facts #77 and #79). | | |
| 22. The 2000 NDS and all versions of the PBNDS also explicitly provide a disciplinary severity scale that lists "[r]efusing to obey the order of a staff member or officer" as an offense which can be sanctioned by "[d]isciplinary segregation (up to 72 hours)." ECF 261-10 at 24 (2000 NDS); ECF 261-9 at 56 (2008 PBNDS); 261-8 at 47 (2011 PBNDS); ECF 260 at 17 (Plaintiffs' Undisputed Facts #77 and #79). | Undisputed. | |
| 23. The Aurora Detainee Handbook (the "AIPC Handbook") is issued to all detainees entering Aurora. ECF 270 at 7 (Material Undisputed Fact #14). | Undisputed. | |
| 24. The AIPC's Handbook's disciplinary severity scale does not deviate from the 2000 NDS or the applicable PBNDS. ECF 273-1 (2005 AIPC Handbook, cited as "Ex. E"); (GEO_MEN | Dispute. The severity scales listed in the GEO handbooks do deviate from the NDS and PBNDS. For example, the 2005 Handbook adds additional possible sanctions for | GEO notes that during the deposition of Ms. Ceja, she indicated that the highlights within the document indicate a handbook was a non-final version and likely being updated to comply with new |

10

| | GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|---|
| | 00054151-222); ECF 273-2 (2007 AIPC Handbook, cited as "Ex. F"); ECF 273-3 (2008 AIPC Handbook, cited as "Ex. G"); ECF 273-4 (2010 AIPC Handbook, cited as "Ex. H"); ECF 273-5 (2011 AIPC Handbook, cited as "Ex. I"); ECF 261-17 (October 2013 AIPC Handbook) (Specifically identified in Plaintiffs discovery responses as the basis for their claims); ECF 271-5, Kevin Martin Dep. 40:21-24 ("Q. Do you know if there's any deviation from between . . . the GEO Detainee Handbook and the PBNDS as far as disciplinary requirements? A. Not as far as disciplinary requirements[.]") (cited as "Ex. J" to ECF 270). | "greatest" offenses. *Compare* GEO Ex. E, ECF No. 273-1 at 25 (Local Detainee Handbook (2005 version)) (listing seven potential sanctions for "greatest" offenses) *with* Plaintiffs' Ex. N, ECF 261-10 at 20 (INS Standards) (listing four potential sanctions for "greatest" offenses"). | requirements. Ex. B (Ceja 30(b)(6) Dep. 132:6-11 8/05/20). Therefore it is likely this version is one that was in the process of being updated to be used for a different version of the PBNDS.<br><br>GEO further notes that Plaintiffs do not dispute that the disciplinary severity scale appeared verbatim in every other handbook—nor can they. |
| 25. | All of GEO's policies are reviewed and approved by an on-site ICE official. ECF 270 at 7 (Material Undisputed Fact #15). | Undisputed. | |
| 26. | The 2000 NDS and the applicable versions of the PBNDS provide for the exact graduated scales of offenses and disciplinary consequences for dedicated facilities, such as the AIPC. ECF 261-10 at 24 (2000 NDS); ECF 261-9 at 56 (2008 PBNDS); 261-8 at 47 (2011 PBNDS). | Undisputed. | |

| | GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|---|
| 27. | The graduated scale of offenses (of which detainees must be made aware) are explicitly laid out in the 2000 NDS and the applicable PBNDS, providing GEO no discretion whatsoever to alter the disciplinary severity scale. ECF 261-10 at 24 (2000 NDS); ECF 261-9 at 56 (2008 PBNDS); 261-8 at 47 (2011 PBNDS). | Undisputed. | |
| 28. | As required by the 2000 NDS and the applicable versions of the PBNDS, the disciplinary severity scale is copied verbatim into the AIPC Handbook. ECF 271-5, Kevin Martin Dep. 40:13-16 ("And does the Detainee Handbook lay out these exact rules from the PBNDS for the detainees as far as discipline goes? A: Yes.") (cited as "Ex. J" to ECF 270); 83:17-22 (same). | Dispute. Kevin Martin's testimony is incorrect; the severity scales listed in the GEO handbooks deviate from the NDS and PBNDS. *Compare* GEO Ex. E, ECF No. 273-1 at 25 (Local Detainee Handbook (2005 version)) (listing seven potential sanctions for "greatest" offenses) *with* Plaintiffs' Ex. N, ECF No. 261-10 at 20 (INS Standards) (listing four potential sanctions for "greatest" offenses"). | GEO notes that during the deposition of Ms. Ceja, she indicated that the highlights within the document indicate a handbook was a non-final version and likely being updated to comply with new requirements. Ex. B (Ceja 30(b)(6) Dep. 132:6-11 8/05/20). Therefore it is likely this version is one that was in the process of being updated to be used for a different version of the PBNDS. Therefore, Kevin Martin's testimony is dispositive.

GEO further notes that Plaintiffs do not dispute that the disciplinary severity scale appeared verbatim in every other handbook—nor can they. |
| 29. | In addition to the disciplinary severity scale, GEO has detailed a Sanitation Procedures document that contains a section entitled | Admit that ECF No. 262-8 is a GEO document about Sanitation Procedures; it is entitled simply, "Sanitation Procedures" and is a | No further response. |

12

| | GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|---|
| | "Detainee Sanitation Procedures." ECF 262-8; ECF 50-4 (the "<u>Sanitation Procedures</u>"). | different document from ECF No. 50-4, which is a GEO policy describing the Voluntary Work Program. | |
| 30. | The Sanitation Procedures set forth general standards for sanitation that must be followed by both GEO employees and detainees. *Id.* | Admit as to ECF No. 262-8. | No further response. |
| 31. | While the sanitation policies for detainees apply to those detainees housed at the AIPC who participate in cleaning tasks through the VWP or by cleaning their living area, ECF 50-1 at 9 (Ceja Dep. 29:13-16), the Sanitation Procedures were not developed to assign tasks to specific individuals, but rather to detail the actual process for cleaning and materials and supplies to be used. ECF 271-5, Kevin Martin Depo. 208:6-11 (cited as "Ex. J" to ECF 270). | Undisputed. | |
| 32. | The Sanitation Procedures do not specify which aspects of cleaning are the responsibility of all detainees and which are the responsibility of VWP workers. ECF 270 at 7 (Material Undisputed Fact #19). | Undisputed. | |
| 33. | The Sanitation Procedures also contain a section detailing the consequences for non-compliance, stating: "The Dormitory/Unit Officer will inspect all living areas daily and report any | Undisputed. | |

| GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|
| infraction of these regulations to the immediate supervisor. The officer will notify detainees of unsatisfactory conditions, in cases of continued noncompliance, staff will issue an incident report." ECF 262-8 at 4; ECF 50-4. The Sanitation Procedures do not provide for any other penalty for non-compliance. *Id.* | | |
| **34.** GEO has never maintained a separate policy or practice of placing a detainee in solitary confinement for the refusal to clean a living area. Ex. _ (Amber Martin Dep., 134, 135). | Dispute. Although not formally documented in a single written policy, GEO maintained a practice throughout the time period covered by this case of requiring detainees to clean the common living areas without pay (the "Housing Unit Sanitation Policy," or "HUSP"), and of threatening them with solitary confinement if they did not comply. GEO's own 30(b)(6) witness admitted the scope of the HUSP, and that solitary confinement was a possible sanction for noncompliance. Plaintiffs' Ex. P, ECF No. 26112 (Ceja 30(b)(6) Dep. 36:8-37:9; 84:3-85:15); Reply Ex. 5, ECF No. 287-5 (Ceja 30(b)(6) Dep. 79:19-25). Both the sanitation requirements and the penalties for noncompliance are referenced in the | GEO states that the witness describes the cleanup as a meal cleanup. GEO further states that the cited sections of Ms. Ceja's testimony do not support Plaintiffs' descriptions. |

54284070;1

| GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|
| | orientation video that GEO shows detainees when they arrive at the AIPC. Plaintiffs' Ex. X, ECF No. 262-10 at 3, 8 (Detainee Orientation Video). And in fact, GEO did impose solitary confinement on detainees who refused to perform HUSP duties. Plaintiffs' Ex. Z, ECF No. 262-12 (disciplinary charges and reports). GEO also threatened detainees with solitary confinement on a regular basis when they refused to clean pursuant to the HUSP. *See, e.g.*, Reply Ex. 10, ECF No. 287-10 (Xahuentitla-Flores Dep. 73:19-74:9; 83:7-19); Plaintiffs' Opp. Ex. 2 (Hernandez-Ceren Dep. 74:23-75:11, 78:10-79:5); Plaintiffs' Opp. Ex. 3 (Hernandez-Torres Dep. 60:8-14). | |
| **35.** | ICE audits GEO to ensure that GEO complies with all requirements of its contract, including its obligations under the PBNDS. ECF 270 at 13 (Additional Undisputed Fact #24) (citing ECF 273-6, cited as "Ex. L"). | Admit that ICE audits GEO to ensure that it complies with certain requirements of its contract, including PBNDS obligations, but dispute that these audits review or capture all such requirements, or all aspects of the PBNDS. The audits review specific components of PBNDS requirements, which are listed on the audit documents themselves. *See* GEO Ex L., ECF No. 273-6 | GEO disputes that Plaintiffs documents provide any information about the scope of ICE audits. Indeed, Mr. Ragsdale made clear he did not speak for ICE. Further, the testimony in question did not discuss ICE's audits, but instead was discussing a portion of GEO's contract with ICE. Ex. H (Ragsdale Dep. 32:21-25). |

| | GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|---|
| | | (Denver Contract Detention Facility Annual Review); Reply Ex. 12, ECF No. 287-12 (Ragsdale 30(b)(6) Dep. 36:1-38:10) (acknowledging that ICE audits do not cover "the requirement that [detainees] clean the common areas"). | |
| **36.** | As part of each inspection, each audit reviews compliance with each PBNDS requirement. *Id.* | Admit that certain audits review compliance with certain PBNDS requirements; however, Plaintiffs dispute that the audits comprehensively review compliance with "each" PBNDS requirement. The audits review specific components of PBNDS requirements, which are listed on the audit documents themselves. *See* GEO Ex L., ECF No. 273-6 (Denver Contract Detention Facility Annual Review); Reply Ex. 12, ECF No. 287-12 (Ragsdale 30(b)(6) Dep. 36:1-38:10). | GEO disputes that Plaintiffs documents provide any information about the scope of ICE audits. Indeed, Mr. Ragsdale made clear he did not speak for ICE. Further, the testimony in question did not discuss ICE's audits, but instead was discussing a portion of GEO's contract with ICE. Ex. H (Ragsdale Dep. 32:21-25). |
| **37.** | The materials provided to detainees at intake, including the handbook and orientation video, are regularly audited and have passed each audit since 2004. *Id.* | Admit; however, the audit reviews only whether the orientation includes sections covering: "Unacceptable activities and behavior; and corresponding sanctions; How to contact ICE; The availability of *pro bono* legal services, and how to pursue such services; Schedule of programs, services, daily activities, | GEO states that the documents cited do not cover the entirety of the content of the week long audits. Indeed, auditors are provided all of GEO's policies. ECF 308-1 ¶ 6.

Additionally, Plaintiffs' own response admits that ICE reviews the AIPC Detainee Handbook which includes |

| | GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|---|
| | | including visitation, telephone usage, mail service, religious programs, count procedures, access to and use of the law library and the general library; sick-call procedures, etc., and the detainee handbook." GEO Ex. L ECF No. 273-6 at 3 (105//2007), 12 (10/22/2009), 26 (10/21/2010), 38 (9/29/2011). | all of the policies at issue in this case. |
| 38. | The audits specifically review intake procedures to ensure that the orientation information provides information about '[u]nacceptable activities and behavior, and corresponding sanctions" as well as the detainee handbook. *Id.* (GEO-MEN 00131895). | Undisputed. | |
| 39. | The disciplinary severity scale is audited and has passed each audit since 2004. *Id.* | Dispute that the "disciplinary severity scale is audited." The audit reviews whether the facility *has* a "written disciplinary system using progressive levels of reviews and appeals." GEO Ex. L., ECF No. 273-6 at 6 (10/5/2007), 14 (10/22/2009), 28 (10/21/2010), 40 (9/29/2011), 58 (9/29/2016). | Plaintiffs' dispute cites to a single sentence of the same audit documents cited by GEO which dedicate over a page to the audit of the disciplinary severity scale and thus the basis for their dispute is without merit.

GEO notes that the cited documents include "remarks" for each year which indicate that the auditors reviewed the detainee handbook every year, which includes the disciplinary severity scale. |

17

| GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|
| | | GEO further states that the documents cited do not cover the entirety of the content of the week long audits. Indeed, auditors are provided all of GEO's policies. ECF 308-1 ¶ 6. |
| **40.** Audits review whether GEO provides notice of the disciplinary severity scale and have found GEO compliance based upon a review of its handbooks. *Id.* (GEO-MEN 00131936). | Undisputed. | |
| **41.** ICE has not only approved of the disciplinary severity scale but has also acted to implement and enforce the sanctions therein. One of the named Plaintiffs in this case—Demetrio Valerga— explained during his deposition that ICE officers also enforced the ICE sanctions. After claiming that one of GEO's corrections officers told Mr. Valerga he could be placed in segregation if he did not help clean his own common area, ECF 272-7, Demetrio Valerga Dep., 135:15-137:19 (cited as "Ex. M" to ECF 270), Mr. Valerga then | Admit the events stated above; however, Plaintiffs dispute that the ICE officers onsite at Aurora were authorized to condone acts that deviate from the requirements of the Contract, as GEO's implementation of the HUSP does. Plaintiffs' Ex. A, ECF No. 261-2 (A. Martin Dep. 198:22-199:10); Reply Ex. 6, ECF No. 287-6 (A. Martin Dep. 81:22-82:13); GEO's Second Notice of Supplemental Authority Ex. B, ECF No. 297-2 at 3-4 (Contracting Officer's Representative ("COR") | No further response. |

| | GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|---|
| | explained ICE officers woke him up, pulled him out of his housing unit, and spoke to him directly. *Id.* at 138:2-13. During that conversation, ICE officers told Mr. Valerga that he could, in fact, be taken to segregation for refusing to help clean his living area. *Id.* at 138:15-23. | Appointment Letter) (listing functions and actions the COR "shall not" undertake, including "direct the contractor . . . to operate in conflict with the contract terms and conditions" and "[c]hange or modify any of the terms and conditions . . . of a contract"). | |
| **42.** | The 2000 NDS and all applicable versions of the PBNDS require that GEO provide detainees the opportunity to participate in a VWP. ECF 270 at 8 (Material Undisputed Fact #20). | Undisputed. | |
| **43.** | The 2000 NDS, with which the AIPC was contractually obligated to comply from March 27, 2003 to April 28, 2010, required GEO to provide "compensation" and explicitly directed that "the stipend is $1.00 per day, to be paid daily." ECF 261-10 at 5 (2000 NDS). | Admit except for GEOs use of the phrase "directed that," which implies that the quoted statement in the PBNDS is an instruction about how GEO must pay VWP workers, as opposed to a statement about the amount that ICE would reimburse GEO for VWP labor. Plaintiff Ex. A, ECF No. 261-2 (A. Martin Dep. 106:6107:22). Plaintiffs also note that GEO was required to comply with the 2008 PBNDS when they were published, *see* Fact No. 15, which occurred during the stated period, NDS and the 2008 PBNDS. *See* ECF 261-9 at 63 (2008 PBNDS) ("the compensation is $1.00 per day") | No further response. |

19

| GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|
| **44.** Likewise, the 2008 PBNDS, with which the AIPC was contractually obligated to comply from April 28, 2010 to June 22, 2013, mandated that "the compensation is $1.00 per day." ECF 261-9 at 63 (2008 PBNDS). | Admit that the cited document contains the quoted text; however dispute GEO's statement that this constituted a "mandate[]," as opposed to a statement about the reimbursement offered from ICE to GEO. GEO paid more than $1.00 a day to detainees at other ICE facilities, including paying up to $3.00 a day to detainees at its South Texas Detention Facility in 2009, and was therefore well aware that higher pay was an option. Reply Ex. 13, ECF No. 287-13 at 7-13 (South Texas 2009 detainee pay). In addition, GEO can and does request modifications of the Contract when it needs to. Plaintiffs' Ex. A, ECF No. 261-2 (A. Martin Tr. 106:8-108:10). GEO did not request a contract modification to pay detainees more than $1.00 per day at the AIPC. *Id.* at 105:3-12. | No further response as Plaintiffs admit substance of the fact. GEO states that the amounts *some* detainees received at other facilities are not relevant here. |
| **45.** Beginning on June 23, 2013, AIPC was bound by the 2011 PBNDS, which state that participants in the VWP will be compensated with "at least $1.00 (USD) per day." ECF 261-8 at 53 (2011 PBNDS). Thus, the "at least" language upon which the VWP Class | Admit the quoted content of the document, and that the 2011 PBNDS was formally incorporated into the Contract on June 23, 2013. Plaintiffs do not agree with GEO's implication that the option to pay more than $1 per day did not exist prior to | No further response. GEO states that the amounts *some* detainees received at other facilities are not relevant here. |

| | GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|---|
| | relies was not implemented at the AIPC until approximately halfway through the VWP Class Period. | it formally agreeing to incorporate portions of the 2011 PBNDS into its contract. GEO had an obligation under the relevant contract to be "knowledgeable of any changes to the [PBNDS] and perform in accordance with the most current version of the [PBNDS]." *See* Response to Additional Fact ¶ 11. In addition, GEO can and does request modifications of the Contract when it needs to. Plaintiffs' Ex. A, ECF No. 261-2 (A. Martin Tr. 106:8-108:10). GEO did not request a contract modification to pay detainees more than $1.00 per day. *Id.* at 105:3-12. | |
| 46. | Before the 2011 PBNDS were implemented at the AIPC, GEO paid the amount it was explicitly directed by ICE to pay to VWP participants: $1.00 per day. ECF 270 at 15 (Additional Undisputed Fact #36). | Admit that GEO paid VWP participants $1.00 prior to the implementation of the 2011 PBNDS; dispute that ICE "explicitly directed" GEO to pay this amount. | No further response required. |
| 47. | Thereafter, GEO continued to pay members of the VWP Class $1.00 per day; the minimum payment explicitly permitted by the 2011 PBNDS. ECF 270 at 15 (Additional Undisputed Fact cc#37). | Undisputed. | |

21

| | GEO's Statement of Undisputed Facts | Plaintiffs' Response and Supporting Evidence | GEO's Reply to Plaintiffs' Response |
|---|---|---|---|
| **48.** | ICE reimburses its contractors no more than $1.00 per day for work performed in the VWP. ECF 270 at 8 (Material Undisputed Fact #22). | Undisputed. | |
| **49.** | The VWP has been audited each year and has passed each audit since 2004. ECF 270 at 14 (Additional Undisputed Fact #29) (citing GEO-MEN 00131936). | Undisputed | |

| | Plaintiffs' Additional Facts | GEO's Responses |
|---|---|---|
| **1.** | The " HUSP is not created by ICE nor is it a requirement of the Contract." Plaintiffs' Ex. K, ECF No. 261-7 ¶ 22 (Ely Decl.) | <u>Disputed.</u> As previously stated, this statement is inadmissible hearsay that cannot be admitted at this stage of the litigation. GEO has previously noted that it is impossible to know what this statement means without knowing what documents ICE considered to be the "HUSP."<br><br>The Ely declaration does not refer to the AIPC Handbook and by extension the meal clean-up or the disciplinary policy (the documents at issue in this case). Ex. D (ICE email).<br><br>Indeed, the attached Exhibit D demonstrates that the drafter of the declaration did <u>not</u> review the AIPC Detainee Handbook when drafting this declaration. Thus, this statement cannot be used reliably to express ICE's opinion on the meal clean-up (which appears |

| | | |
|---|---|---|
| | | only in the AIPC Handbook) or the disciplinary severity scale (which also is contained within the AIPC Handbook). Indeed, ICE drafted the disciplinary severity scale to which Plaintiffs refer in the term "HUSP." |
| 2. | "ICE" did not draft or negotiate GEO's HUSP." | <u>Disputed.</u> As previously stated, this statement is inadmissible hearsay that cannot be admitted at this stage of the litigation. GEO has previously noted that it is impossible to know what this statement means without knowing what documents ICE considered to be the "HUSP."<br><br>The Ely declaration does not refer to the AIPC Handbook and by extension the meal clean-up or the disciplinary policy (the documents at issue in this case). Ex. D (ICE email).<br><br>Indeed, the attached Exhibit D demonstrates that the drafter of the declaration did <u>not</u> review the AIPC Detainee Handbook when drafting this declaration. Thus, this statement cannot be used reliably to express ICE's opinion on the meal clean-up (which appears only in the AIPC Handbook) or the disciplinary severity scale (which also is contained within the AIPC Handbook). Indeed, ICE drafted the disciplinary severity scale to which Plaintiffs refer in the term "HUSP." |
| 3. | The HUSP is "a GEO Policy, created by GEO." | <u>Disputed.</u> As previously stated, this statement is inadmissible hearsay that cannot be admitted at this stage of the litigation. GEO has previously noted that it is impossible to know what this statement means without knowing what documents ICE considered to be the "HUSP."<br><br>The Ely declaration does not refer to the AIPC Handbook and by extension the meal clean-up or the disciplinary policy (the documents at issue in this case). Ex. D (ICE email).<br><br>Indeed, the attached Exhibit D demonstrates that the drafter of the declaration did <u>not</u> review the AIPC |

| | | |
|---|---|---|
| | | Detainee Handbook when drafting this declaration. Thus, this statement cannot be used reliably to express ICE's opinion on the meal clean-up (which appears only in the AIPC Handbook) or the disciplinary severity scale (which also is contained within the AIPC Handbook). Indeed, ICE drafted the disciplinary severity scale to which Plaintiffs refer in the term "HUSP." |
| 4. | On February 14, 2018 GEO sent a letter to ICE requesting an equitable adjustment to its contract for the Aurora facility to assist it in paying its legal fees in connection with this litigation. Plaintiffs' Reply Ex. 3, ECF No. 287-3 (February 14 letter). | GEO admits it sent a letter to ICE on February 14, 2018, but denies that the letter is about only the present action. |
| 5. | The February 14 letter was signed by GEO's Senior Vice President of Business Development, David Venturella, and drafted in collaboration between Venturella, GEO's legal department and other GEO officials, including GEO's General Counsel or other representatives from the General Counsel's Office. Plaintiffs' Opp. Ex. 1 (Venturella Dep. 61:1-21; 62:10-63:7). | Admit. |
| 6. | GEO did not disclose the full scope of the mandatory cleaning required under the HUSP in the February 14 letter, describing the policy as requiring only that detainees "perform basic housekeeping chores." Plaintiffs' Reply Ex. 3, ECF No. 287-3 (February 14 letter). | Dispute. GEO states that the letter speaks for itself and notes that there can be no claim that GEO did not disclose the "full scope" of the present litigation as it cited to the entirety of the docket in this case in footnote 1 of the letter, thereby providing ICE with all information about this case. ECF 287-3. Additionally, there is no recognized meaning of "basic housekeeping chores," and Plaintiffs do not point to one. To the extent that Plaintiffs do not believe that cleaning up after a meal including sweeping up crumbs and wiping down tables is not "basic housekeeping" GEO disputes this description. |

| | | |
|---|---|---|
| **7.** | In a letter dated June 21, 2018, ICE denied GEO's request for an equitable adjustment, explaining that "GEO's defense of these private lawsuits is a defense of its contract performance." Plaintiffs' Opp. Ex. 4 (GEO-MEN00186866 (June 21 letter)). | <u>Dispute</u>. GEO states that the letter speaks for itself and indicates that it responds to a request dated April 18, 2018. The letter sets forth a myriad of reasons for denial, namely that GEO has failed to "provide adequate supporting data for the quantum sought." |
| **8.** | The housing pods in the Aurora facility house up to 80 detainees. Plaintiffs' Opp. Ex. 5 (Pagan Dep. at 108:13-17) | GEO <u>admits</u> that some of its housing pods have the capacity to hold as many as 80 detainees. |
| **9.** | The Aurora housing pods include both cells where detainees sleep and common areas where they eat, use the phone, and shower. Plaintiffs' Opp. Ex. 2 (Hernandez-Ceren Dep. at 25:3-17); Plaintiffs' Ex. P, ECF No. 261-12 (Ceja 30(b)(6) Dep. 36:25-37:4) | GEO <u>admits</u> that detainees may be housed in pods, which are one such style of housing unit layout, and that those pods include showers, phones, and tables. However, GEO <u>disputes</u> that all detainees are housed in the same style housing unit, noting that some detainees are held in dormitory spaces which do not include cells. ECF 313-10 at 15 (Gallegos Dep. 126:17-25) |
| **10.** | GEO told detainees that they have a "common obligation to clean . . . the communal areas" of the housing pods, including the dayroom and bathrooms, on a rotating basis. Plaintiffs' Ex. F, ECF No. 261-4 (Ragsdale 30(b)(6) Dep. 16:14-18) | <u>Dispute</u>. Mr. Ragsdale did not provide testimony about what detainees were told but rather about his personal understanding of general cleaning in the Aurora Facility. ECF 261-4. Communications to detainees about cleaning would be handled at the local facility, not the corporate level where Mr. Ragsdale works. Furthermore, Plaintiffs added to Mr. Ragsdale's testimony in an improper attempt to conflate different types of cleaning with the rotating meal clean-up at issue in this lawsuit. Plaintiffs added in the phrase "on a rotating basis" at the end of their description. His full quote states:

"That folks will clean their immediate living area, meaning making their bed, dealing with their own personal property in their immediate living area.· And they also share sort of a common obligation to clean, you know, where the microwave is, where the, you know, game boards are, video games, to keep things in place in a reasonable cleanliness; the bathroom, you know . . ." |

54284070;1

| | | |
|---|---|---|
| | | Additionally, it is worth noting that Mr. Ragsdale was not designated for testimony about the local AIPC practices and communications with detainees—Ms. Ceja was and therefore Mr. Ragsdale's testimony does not speak to communications with detainees at the AIPC as that would be a topic about the local practices. |
| 11. | GEO guards threatened to send detainees to solitary confinement for failing to clean under the HUSP. Plaintiffs' Opp. Ex. 2 (Hernandez-Ceren Dep. 74:2375:11, 78:10-18); Plaintiffs' Reply Ex. 10, ECF No. 287-10 (Xahuentitla-Flores Dep. 73:19-74:9; 83:7-19) | <u>Dispute</u>. GEO officers never intended to "threaten" anyone. ECF 306-12. |
| 12. | Sending detainees to solitary confinement for failing to clean under the HUSP was within the regular authority of GEO guards. Plaintiffs' Opp. Ex. 5 (134:18-135:20) | <u>Dispute</u>.  Plaintiffs' Exhibit 5 does not include a page 134.<br><br>GEO reiterates that "HUSP" is a term created by the Plaintiffs. GEO states that the ICE disciplinary severity scale permitted detainees to be sent to segregation for "refusal to clean assigned living area." Undisputed Fact 21. |
| 13. | GEO placed detainees in segregation during the class period for refusing to clean. Plaintiffs' Ex. Z, ECF No. 262-12 (disciplinary charges and reports); Plaintiffs' Opp. Ex. 3 (Hernandez-Torres Dep. 60:8-14); Plaintiffs' Opp. Ex. 5 (Pagan Dep. at 124:19-125:4) | GEO <u>admits</u> that detainees were placed in segregation during the class period where at least one of the charges listed was the refusal to clean. GEO denies that these were the only charges listed and notes that the documents speak for themselves. |
| 14. | The HUSP requires detainees to "clean up the tables, wipe down the tables, and sweep and mop the floors" in the common areas, Plaintiffs' Ex. P., ECF No. 261-12 (Ceja 30(b)(6) Dep. at 36:24-37:9), as well as "clean the rec yard, | <u>Dispute.</u> The rotating meal clean up, which Plaintiffs refer to as the "HUSP," involves three tasks: two detainees sweep crumbs from the meal, two detainees mop if needed, and two detainees wipe the tables. The meal clean-up does not involve cleaning the phones, microwaves, garbage, showers, or recreation which are all VWP positions. Ex. I (Gallegos Dep. 130-133); Ex. |

26

| | | |
|---|---|---|
| | wipe the [] phones, clean the microwave, change the garbage bag, clean the showers, disinfect the showers, [and] pick up all the trash." Plaintiffs' Opp. Ex. 2 (Hernandez-Ceren Dep. at 163:3-6) | B (Ceja 30(b)(6) Dep. 72-74, 77 (8/5/2020); Ex. J (Quezada Dep. 64-66). |
| 15. | These tasks go beyond the basic housekeeping chores permitted by the PBNDS, which states: "Work assignments are voluntary; however, all detainees are responsible for personal housekeeping. Detainees are required to maintain their *immediate* living areas in a neat and orderly manner by: 1. making their beds daily; 2. stacking loose papers; 3. keeping the floor free of debris and dividers free of clutter; and 4. refraining from hanging/draping clothing, pictures, keepsakes, or other objects from beds, overhead lighting fixtures or other furniture." *See* Plaintiffs' Ex. L, ECF No. 261-8 at 51 (GEO-MEN 00064345 (2011 PBNDS)) (emphasis added); *see also* Plaintiffs' Ex. M, ECF No. 261-9 at 61-62 (GEO-MEN 00063294-95 (2008 PBNDS)); Plaintiffs' Ex. N, ECF No. 261-10 at 3 (GEO-MEN 00063672 (INS Detention Standard)) | Dispute. This fact is predicated on the assumption that Plaintiffs' additional fact 14 is accurate, which it is not as described above. Indeed, a number of the above tasks are performed as Voluntary Work Program positions as explicitly anticipated by the PBNDS. See Plaintiffs' Ex. L, ECF No. 261-8 at 51 (GEO-MEN 00064345 (2011 PBNDS)) (emphasis added); see also Plaintiffs' Ex. M, ECF No. 261-9 at 61-62 (GEO-MEN 00063294-95 (2008 PBNDS)); Plaintiffs' Ex. N, ECF No. 261-10 at 3 (GEO-MEN 00063672 (INS Detention Standard)).<br><br>Further, Plaintiffs cite to the Voluntary Work Program Section of the PBNDS, not the disciplinary section and provide no explanation as to how the Voluntary Work Program Section limits ICE's disciplinary scale. Section 5.8 does not mention discipline and does not contain a cross-reference to the disciplinary severity scale despite having a specific section titled "References" which includes internal cross references to other sections of the PBNDS. There is no colorable argument that Section 5.8 instructs detainees that they can make a mess at each meal without the personal obligation to clean-up before moving on to their next activity or face the consequence of a reprimand or warning. |
| 16. | GEO never verified with ICE whether common areas of the housing pods are part of the "living area" described in the PBNDS. Plaintiffs' Ex. A, | Dispute. ICE's National Detainee Handbook instructs that detainees may be disciplined if they do not "keep areas that you use clean, including your living area and any general-use areas that you use." ECF 310-1, 37. |

| | | |
|---|---|---|
| | ECF No. 261-2 (A. Martin Dep. 196:23-198:6) | |
| **17.** | The Department of Homeland Security's Office of Inspector General concluded that "requiring detainees to clean common areas used by all detainees is in violation of ICE standards, as detainees are only required to clean their immediate living area." Reply Ex. 17, ECF No. 287-17 at 8 (Theo Lacy OIG report) | <u>Dispute</u>. GEO states that this document is inadmissible hearsay and is not related to the Aurora facility so GEO has no knowledge of the same. Indeed, Plaintiffs cite to a blog post as the source of the report with no information about the reliability of that source. *See* ECF 287 at 4 (declaration of Michael Scimone). Further, the report does not address the Aurora Facility and is therefore not probative of any issue before this Court. |
| **18.** | The ICE/GEO contract incorporated the "DHS/ICE PBNDS (Performance Based National Detention Standards)," and stated that "a copy of the current version is obtainable on the internet Website: http://www.ice.gov/detention-standards/2008/." The contract also required that "these constraints may change over time; the Contractor shall be knowledgeable of any changes to the constraints and perform in accordance with the most current version of the constraints." Plaintiffs' Ex. B, ECF No. 262-2, 37-38 (GEO-MEN 00019655-56). The 2011 PBNDS were published on February 27, 2012, and were thus the "most current" version of the PBNDS after that date. Reply Ex. 8, ECF No. 287-8 at 8 (ICE report re PBNDS) | GEO admits that the quoted statement appears in the document, but denies that any change in the PBNDS would automatically change GEO's contract with ICE to incorporate new standards. GEO and ICE specifically incorporated each change to the PBNDS into its contract modifications so that any cost ramifications could be addressed prior to changing the contract requirements. Ex. G (Amber Martin Dep. 46-47). As to this specific change, on May 23, 2013, GEO entered into a contract modification with ICE (HSCEDM-11-D-00003/P00005) agreeing that, effective June 23, 2013, GEO would comply with the 2011 PBNDS. ECF 270 at 10 (Additional Undisputed Fact #12) (citing ECF 271-4, cited as "Ex. D"); ECF 262-3, 2 (GEO-MEN 00020406; ECF 270 at 10 (Additional Undisputed Fact #11, #12) (noting Plaintiffs proffer as undisputed the fact that HSCEDM-11-D-00003/P00005 was one of GEO's contracts with ICE during the Class Period). |
| **19.** | GEO pays detainees more than $1.00 per day at other ICE facilities, including $1.00 to $3.00 per day at its South | GEO admits that some detainees receive more than $1.00 per day at other facilities but denies that *all* detainees at the listed facilities get the rates listed. Indeed, rates vary by position. GEO further states that |

| | | |
|---|---|---|
| | Texas Detention Facility, $1.00 to $2.50 per day at its Folkston ICE Processing Center, $1.00 to $3.00 per day at its Joe Corley Detention Facility, and $1.00 to $4.00 per day at its LaSalle Detention Facility. Plaintiffs' Reply Ex. 13, ECF No. 287-13 at 11 (South Texas Detention Center Invoices); Plaintiffs' Ex. A, ECF No., 261-2 (A. Martin Dep. 109:15-110:13); Plaintiffs' Ex. BB, ECF No. 261-18 (GEO-MEN 00170339 (VWP Pay Rates)) | this information is irrelevant to GEO's contract with ICE for the Aurora facility. |
| **20.** | In these facilities where GEO pays detainees more than $1.00 per day for VWP work, it does so "on [its] own dime." Plaintiffs' Ex. A, ECF No. 261-2 (A. Martin Dep. 107:18-22; 109:15-110:13) | Admit. |