# EXHIBIT B

pg. 2 of 16

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                FOR THE DISTRICT OF COLORADO

 3    Civil Action No. 1:14-cv-02887-JLK-MEH
     _____

 4
                  RULE 30(b)(6) DEPOSITION OF:
 5             DAWN CEJA, VOLUME I - August 5, 2020
                     The GEO Group, Inc.
 6                    (Via RemoteDepo)

 7   _____

     ALEJANDRO MENOCAL, MARCOS BRAMBILA, GRISEL
 8   XAHUENTITLA, HUGO HERNANDEZ, LOURDES ARGUETA,
     JESUS GAYTAN, OLGA ALEXAKLINA, DAGOBERTO
 9   VIZGUERRA, and DEMETRIO VALERGA, on their own and
     on behalf of all others similarly situated,
10
     Plaintiffs,
11
     v.
12
     THE GEO GROUP, INC.,
13
     Defendant.
14
     _____
15
                 PURSUANT TO NOTICE, the Rule 30(b)(6)
16   deposition of DAWN CEJA, THE GEO GROUP, INC., Volume
     I, was taken on behalf of the Plaintiffs by remote
17   means in Arapahoe County, Colorado, on August 5, 2020,
     at 9:04 a.m. MDT, before Sherry Wallin, Certified
18   Realtime Reporter, Registered Merit Reporter and
     Notary Public within Colorado, appearing remotely from
19   Adams County, Colorado.

20

21

22

23

24

25
```

```
 1                    REMOTE APPEARANCES

 2

     For the Plaintiffs:

 3
              JUNO E. TURNER, ESQ.
 4            BRIANNE POWER, ESQ.
              Towards Justice
 5            1410 High Street
              Suite 300
 6            Denver, Colorado 80218
              juno@towardsjustice.com
 7            brianne@towardsjustice.com

 8

     For the Defendant:

 9
              ADRIENNE SCHEFFEY, ESQ.
10            Akerman LLP
              1900 Sixteenth Street
11            Suite 1700
              Denver, Colorado 80202
12            adrienne.scheffey@akerman.com

13            DANA L. EISMEIER, ESQ.
              MICHAEL "MICKEY" Y. LEY, ESQ.
14            Burns, Figa & Will, P.C.
              6400 South Fiddlers Green Circle
15            Suite 1000
              Greenwood Village, Colorado 80111
16            deismeier@bfwlaw.com
              mley@bfwlaw.com

17

18

19

20

21

22

23

24

25
```

```
 1                       I N D E X

 2   EXAMINATION OF DAWN CEJA:                        PAGE
     August 5, 2020 - Volume I
 3
     By Ms. Turner                                      7
 4
                                                    INITIAL
 5   DEPOSITION EXHIBITS:                         REFERENCE

 6   (Exhibits provided electronically to the reporter.)

 7   Exhibit 1    Notice of FRCP 30(b)(6)            10
                  Deposition of Defendant The
 8                GEO Group, Inc.

 9   Exhibit 2    PowerPoint presentation -          26
                  Housing Unit Sanitation
10
     Exhibit 3    Aurora Detention Center            32
11                Housing Unit Officer Post
                  Order AUR-2
12
     Exhibit 4    Aurora/ICE Processing Center       44
13                Policy and Procedure Manual,
                  Chapter: Sanitation, Revised
14                on 3/3/10, and attached
                  Housekeeping/Maintenance Plan
15
     Exhibit 5    Video orientation statement,       88
16                beginning with Warden's
                  opening statement
17
     Exhibit 6    PowerPoint document: Detainee     101
18                Orientation Video

19   Exhibit 7    Detainee Handbook, GEO_MEN        115
                  00056937 through 56961
20
     Exhibit 8    Detainee Handbook, GEO_MEN        131
21                00065783 through 00065808

22   Exhibit 9    Aurora Detention Center           134
                  Policy and Procedure Manual,
23                11.2.1-AUR, Chapter: Detainee
                  Issues, Effective 8/18/14
24

25
```

| | | |
|---|---|---|
| Exhibit 10 | Email chain.  Top email to Bowen from Ceja, 7/27/11, and attached emails and attachments | 141 |
| Exhibit 11 | Memorandum to Hunt from Andrews, 2/19/08, RE: Administrative Officer of the Day | 160 |
| Exhibit 12 | PowerPoint presentation: Detainee Orientation Video | 167 |
| Exhibit 13 | ICE Detention Policy and Procedure Manual, Chapter: Detainee Issues, Effective 07/01/2019 | 170 |
| Exhibit 14 | General Incident Report, 6/19/09 | 176 |
| Exhibit 15 | Aurora/ICE Processing Center Policy and Procedure Manual, Chapter: Post Orders, Revised on 2/22/10 | 177 |
| Exhibit 16 | Aurora Detention Center Policy and Procedure Manual, 10.2.11-AUR, Chapter: Security | 188 |
| Exhibit 17 | Email chain.  Top email to Cassel from Ceja, 12/22/09, Subject: FW: Segregation review | 197 |
| Exhibit 18 | 2015 Annual Training Plan - Western Region | 201 |
| Exhibit 19 | Tables entitled "Staff Training" | 207 |
| Exhibit 20 | The GEO Group, Inc., Aurora ICE Processing Center, Detainee Handbook Local Supplement, Revised June 2011 | 214 |

```
 1    Exhibit 21    Email chain.  Top email to        215
                    Rowden from Andrews,
 2                  10/26/07, Subject: RE: Lesson
                    Plans, with attachments
 3
               Exhibit 22    2013 Annual Training Plan -        239
 4                  Western Region, The GEO
                    Group, Inc., Aurora Detention
 5                  Facility

 6    Exhibit 23    Aurora Detention Center           241
                    Policy and Procedure Manual,
 7                  8.1.8-AUR, Chapter: Detainee
                    Work Program, Effective
 8                  5/6/13

 9    Exhibit 24    Email chain.  Top email to        254
                    Ceja from Martin, 3/11/15,
10                  Subject: Re: Detainee Job
                    Descriptions please, with
11                  attachments

12    Exhibit 25    Aurora Detention Center           263
                    Policy and Procedure Manual,
13                  8.1.8-AUR, Chapter: Detainee
                    Work Program, Effective
14                  5/6/13
```

15

16    INFORMATION REQUESTED:

17    Page 93, Line 17
      Page 175, Line 5
18

19

20

21

22

23

24

25

 1            WHEREUPON, the following proceedings

 2    were taken pursuant to the Federal Rules of Civil

 3    Procedure.

 4            *       *       *       *       *

 5            THE REPORTER:  The attorneys

 6    participating in this deposition acknowledge that I am

 7    not physically present in the deposition room and that

 8    I will be reporting this deposition remotely.

 9            They further acknowledge that in lieu of

10    an oath administered in person the witness will

11    verbally declare her testimony in this matter is under

12    penalty of perjury.

13            The parties and their counsel consent to

14    this arrangement and waive any objections to this

15    manner of reporting.

16            Please indicate your agreement by

17    stating your name and your agreement on the record.

18            MS. SCHEFFEY:  Adrienne Scheffey,

19    counsel on behalf of defendant GEO, and we agree.

20            Sorry, Juno.

21            MS. TURNER:  Juno Turner, class counsel

22    for plaintiffs.  We agree as well.

23            THE REPORTER:  And Ms. Dawn Ceja, do you

24    solemnly state that the testimony you are about to

25    give in the cause now pending will be the truth, the

 1   whole truth, and nothing but the truth?

 2                   THE DEPONENT:  Yes.

 3                           DAWN CEJA,

 4   having sworn to state the whole truth, testified as

 5   follows:

 6                   THE REPORTER:  Thank you.  Please

 7   proceed.

 8                        EXAMINATION

 9   BY MS. TURNER:

10        Q.   Thank you.  Good morning, Ms. Ceja.  We

11   met briefly before we got on the record again.  My

12   name is Juno Turner, and I am one of the attorneys

13   who's been appointed as class counsel for the

14   plaintiff class in this matter.

15             Could you just please state your full

16   name and business address for the record?

17        A.   Dawn Ceja.  Business address 3130 North

18   Oakland Street, Aurora, Colorado 80010.

19        Q.   Thank you.  And is that the Aurora

20   detention facility operated by The GEO Group?

21        A.   Yes.  The Aurora ICE Processing Center.

22        Q.   Great.  Thank you.  And do you

23   understand that although, given the circumstance of

24   the deposition, the court reporter wasn't able to

25   administer an oath to you in person, you've agreed to

Davita Dejer 30(b)(6)
August 05, 2020                                    72

```
 1   is performed in the day area by housing units assigned

 2   to the rotation -- housing detainees assigned to the

 3   rotation, correct?

 4             MS. SCHEFFEY:  Object to form.

 5   Argumentative.

 6        A.    Those are just the meal cleanup.

 7        Q.    (BY MS. TURNER)  Right.  And the meal

 8   cleanup is a cleanup of the day area, correct?

 9             MS. SCHEFFEY:  Object to form.

10        A.    Cleaning up the tables and sweeping,

11   mopping the floor after meal service.

12        Q.    (BY MS. TURNER)  Right.  And that's

13   cleaning the day area, correct?

14             MS. SCHEFFEY:  Object to form.  Asked

15   and answered.  You can answer.

16        A.    I don't know if it's a mix on words or a

17   play on words, but -- if we want to encompass

18   everything?  I'm not sure if I'm understanding what

19   you're asking, then, or if you're just saying the same

20   question a different way.

21        Q.    (BY MS. TURNER)  I'm just saying -- my

22   question is how you can be sure that this references

23   only VWP workers.

24             MS. SCHEFFEY:  Object to form.

25        A.    In my experience and working there for
```

 1    25 years, that's my experience.

 2            Q.   (BY MS. TURNER)  So your experience is

 3    that only VWP -- only VWP workers are charged with

 4    cleaning the day areas?

 5                 MS. SCHEFFEY:  Object to form.

 6    Misstates prior testimony.

 7            A.   That's not what I'm saying.  I don't

 8    want to have you confuse the two.  You have your daily

 9    ones that are assigned just to clean up after meal

10    service; and at this time, in 2010, you also had unit

11    trustees that would clean the day area before bed,

12    clean up the showers, clean up the bathroom.  That was

13    all part of VWP.

14            Q.   (BY MS. TURNER)  Okay.  Just to clarify,

15    this document we reviewed a few minutes ago dates from

16    2013, correct?

17            A.   No, 2014.  Isn't it 2014?  I'm sorry.

18            Q.   2013, I think.  If you look at

19    page 1509, it says August 20, 2013.

20            A.   2013, yes.

21            Q.   So it's your testimony that VWP workers,

22    before everybody goes to bed, would clean the common

23    areas; and it's your testimony that VWP workers would

24    clean the bathrooms in the housing units, correct?

25            A.   Yes.

 1                    MS. SCHEFFEY:  Object to form.

 2          Q.   (BY MS. TURNER)  However, you also

 3   testified that each day a group of detainees is

 4   required to clean up after the meals, correct?

 5          A.   It's two different things.

 6          Q.   Right.  That's why I said you also

 7   testified that there is a group of detainees outside

 8   of the VWP who are assigned to clean up after meals in

 9   the housing unit, correct?

10                    MS. SCHEFFEY:  Object to form.

11          A.   Yes.

12          Q.   (BY MS. TURNER)  And that cleaning

13   consists of wiping down the furniture, sweeping the

14   floors.  Might it consist of mopping the floors as

15   well?

16          A.   Yes.

17          Q.   Okay.  And they do that after each meal,

18   correct?

19          A.   Yes.  In the general use area.

20          Q.   Okay.  So it seems to me that this

21   language at the bottom of 1506 regarding housekeepers

22   encompasses work done by both individuals in the VWP

23   and individuals who are assigned to clean up after

24   meals.

25                    MS. SCHEFFEY:  Object to form.  Asked

 1    are responsible for cleaning up after themselves, both

 2    in their cells and in the general common use areas,

 3    correct?

 4              MS. SCHEFFEY:  Object to form.

 5    Misstates prior testimony.

 6         A.   No.  I think you're confusing it.

 7    There's --

 8         Q.   (BY MS. TURNER)  Okay.  Tell me why I'm

 9    confused.

10         A.   There is the group that is assigned, the

11    five or six detainees that clean up after the meal

12    service.  That's one set.

13              And then you have your trustees, your

14    porters, your whatever you want to call them that fall

15    under the VWP that do all of the other cleanup like in

16    the showers and the bathrooms.

17         Q.   Right.

18         A.   Or at the end of the evening in the

19    common area.

20         Q.   Right.  Okay.  So that's -- I think

21    we're on the same page.  But my only question is, in

22    addition, I believe just a moment ago you testified

23    that pursuant to the housing unit sanitation policy

24    all detainees are generally required to keep their

25    housing unit clean, correct?

```
 1              Q.   Okay.  And if you just sort of scroll

 2    through the document, you'll see a number of places

 3    where there appears additional highlighting.  Do you

 4    see that?

 5              A.   Yes.

 6              Q.   Okay.  And I'm wondering if that

 7    highlighting indicates changes that were made from the

 8    prior version, if you know.

 9              A.   Yes.  Typically, when items were

10    highlighted, that would mean that they're either

11    being -- there is some type of change.

12              Q.   And I will just note for the record that

13    the document that we've marked as Exhibit 7 contains

14    those same -- the language that is highlighted, but it

15    is no longer highlighted.  And so is it possible that

16    that indicates that Exhibit 7 is, in fact, a finalized

17    version?

18              A.   It's possible, but I wouldn't know for

19    sure until I saw a signed copy.  But. . .

20              MS. TURNER:  Okay.  So we'll leave it,

21    Adrienne, that you all will verify on your end and, if

22    necessary, will produce her again to ask about any

23    differences between this and some other final version,

24    okay?

25              MS. SCHEFFEY:  Okay.
```

```
 1    it back in the chat for you.  Would you like me to do

 2    that?

 3            A.    Yes, please.

 4                  Okay.

 5            Q.    Okay.  And so in reviewing the

 6    procedures set forth in this document, we talked about

 7    a number of different types of documents that are

 8    generated through the disciplinary process.

 9                  When -- so starting at sort of the most

10    basic level, with the general incident report, you

11    testified that that's something that an officer can

12    complete about any incident that happens during the

13    course of a shift, correct?

14            A.    Yes.

15            Q.    And are those general incident reports

16    shared with ICE?

17            A.    Yes.

18            Q.    In what context?

19            A.    What do you mean?

20            Q.    Like do you hand somebody, you know, a

21    member of the ICE team at the facility a document?  Do

22    you send it to them by email?  Is it shared in a

23    meeting?  How are the general incident reports shared

24    with ICE?

25            A.    I guess it would depend on the time.  I
```

Case No. 1:14-cv-02887-JLK-CYC    Document 317-2    filed 08/21/20    USDC Colorado
Page 15 of 16
Depo of Rule 30(b)(6)
August 05, 2020                                                    233

 1    mean, if we're talking all the way back in 2004 and

 2    2005, it was probably all hard copy and put in

 3    somebody's mailbox or hand delivered to them.  As

 4    technology has grown, a lot of that is emailed.

 5            Q.   And then what about the incident reports

 6    that are generated as part of the disciplinary

 7    process, are those shared with ICE?

 8            A.   Yes.

 9            Q.   And same question as to them.  Are they

10    provided in hard copy?  Are they emailed?  Has the

11    process changed over time?

12            A.   It will be the same response, how it's

13    changed over time.

14            Q.   Okay.  Are there -- during the time

15    period covered by this case, did you or other GEO

16    personnel at the Aurora facility have meetings

17    regularly with ICE personnel at the facility?

18            A.   Yes.

19            Q.   Is there a name for those meetings?

20            A.   We just refer to them as weekly

21    meetings.

22            Q.   And were they weekly?

23            A.   Yes.

24            Q.   They were in person?

25            A.   The majority of them, yes.

```
 1                    REPORTER'S CERTIFICATE

 2   STATE OF COLORADO        )
                              )  ss.
 3   CITY AND COUNTY OF DENVER )

 4

 5           I, SHERRY WALLIN, Certified Realtime
     Reporter, Registered Merit Reporter and Notary Public
 6   ID 19874212873, State of Colorado, do hereby certify
     that previous to the commencement of the examination,
 7   the said DAWN CEJA verbally declared her testimony in
     this matter is under penalty of perjury; that the said
 8   deposition was taken in machine shorthand by me at the
     time and place aforesaid and was thereafter reduced to
 9   typewritten form; that the foregoing is a true
     transcript of the questions asked, testimony given,
10   and proceedings had.

11           I further certify that I am not employed
     by, related to, nor of counsel for any of the parties
12   herein, nor otherwise interested in the outcome of
     this litigation.

13           IN WITNESS WHEREOF, I have affixed my
     signature this 10th day of August, 2020.

14
             My commission expires May 14, 2023.
15

16   __X__ Reading and Signing was requested.

17   _____ Reading and Signing was waived.

18   _____ Reading and Signing is not required.

19

20                 _____

21                 Sherry Wallin
                   Certified Realtime Reporter
22                 Registered Merit Reporter

23

24

25
```