# EXHIBIT E

STEVE KING
4TH DISTRICT, IOWA

ICE OES
MAR 20 2018

COMMITTEES:

AGRICULTURE

JUDICIARY

SMALL BUSINESS

Congress of the United States

House of Representatives

Washington, DC 20515-1504

March 7, 2018

The Honorable Jefferson B. Sessions
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

The Honorable Alexander Acosta
Secretary
U.S. Department of Labor
S-2521
200 Constitution Ave., N.W.
Washington, D.C. 20210

Thomas D. Homan
Acting Director
U.S. Immigration and
Customs Enforcement
500 12th Street, SW
Washington, DC 20536

Re:   **Recent Lawsuits Seeking Substantial Payments to Alien Detainees for Voluntary Institutional Work Performed while in Immigration Detention at Contract Detention Facilities**

Dear Attorney General Sessions, Secretary Acosta, and Acting Director Homan:

We write to inquire as to whether your agencies are taking any actions or adopting any legal positions to address recent lawsuits filed by pro-immigration interest groups and activist state government officials seeking substantial payments from government contractors for work done by alien detainees for institutional maintenance purposes pursuant to what is known as the Voluntary Work Program (VWP). We are currently aware of the existence of at least five such nuisance lawsuits filed against Contract Detention Facilities (CDFs). The core allegations of each of these lawsuits is that the CDFs' payments of $1 per day to detainees who work in the VWP violates state minimum wage laws, the Trafficking Victims Protection Act (TVPA), unjust enrichment, and other labor law statutes and doctrines.

A few facts are important to note at the outset. First, any alien detained at a CDF is being detained at a facility that is contractually required to meet federal standards as established by Immigration and Customs Enforcement's (ICE) 2011 Performance-Based National Detention Standards (PBNDS). The PBNDS are considered to be among the leading standards in the country for ensuring safe and humane detention conditions. Second, contractors are required by both the PBNDS, and by their contracts with ICE, to provide detainees with opportunities for voluntary work assignments at all CDFs. Third, contractors are paying detainees $1 per day for work under the VWP because that is the statutory reimbursement rate expressly set by Congress for paying aliens for voluntary work in this specific instance. In other words, if an alien is detained at a facility operated solely by ICE, they are paid $1 per day for voluntary work. The inexplicable premise of these lawsuits is that aliens should be paid 800% to 1500% more for work at CDFs than at ICE-operated facilities, even though these facilities serve the exact same purpose, engage in the exact same mission (i.e. detention and removal), and even though an alien's placement at any particular detention facility has nothing to do with the Voluntary Work Program.

AMES OFFICE
1421 S. BELL AVENUE, SUITE 102
AMES, IA 50010
(515) 232-2885
FAX: (515) 232-2844

FORT DODGE OFFICE
723 CENTRAL AVENUE
FORT DODGE, IA 50501
(515) 573-2738
FAX: (515) 576-7141

MASON CITY OFFICE
2020 1ST STREET SE, SUITE 126
MASON CITY, IA 50401
(641) 201-1624
FAX: (641) 201-1523

HTTP://WWW.STEVEKING.HOUSE.GOV

SIOUX CITY OFFICE
320 6TH STREET
ROOM 112
SIOUX CITY, IA 51101
(712) 224-4692

SPENCER OFFICE
P.O. BOX 650
SPENCER, IA 51301
(712) 580-7754

WASHINGTON, D.C. OFFICE
2210 RAYBURN
WASHINGTON, D.C. 20515
(202) 225-4426
(202) 225-3193

2018-ICLI-00052   2134

ICE-FOIA2018_0000087

To be clear, alien detainees performing institutional work at CDFs are not employees of the facilities detaining them, and should not be able to file lawsuits seeking remuneration as if they were employees of these facilities. It is our expectation that you will soon get involved in this litigation and take the position that these lawsuits lack legal merit and should be dismissed.

It is important to emphasize that the VWP is not a new program. It was initially authorized in 1950, and was codified that year in Title 8, Section 1555, which states that "Appropriations now or hereafter provided for the Immigration and Naturalization Service shall be available for. . . (d) payment of allowances (at such rate as may be specified from time to time in the appropriation Act involved) to aliens, while held in custody under the immigration laws, for work performed." Pursuant to the Department of Justice Appropriation Act of 1978, Congress has explicitly stated that "payment of allowances (at a rate not in excess of $1 per day) to aliens, while held in custody under the immigration laws, for work performed," is the rate that is to be paid to aliens in immigration detention. Pub. L. No. 95-86, 91 Stat. 419, 426 (1978). This is the statutory reimbursement rate that continues to govern work performed pursuant to the VWP.

For decades, including during the Obama Administration, pursuant to these established guidelines, facilities have been paying alien detainees $1 per day for VWP work without any legal controversy. ICE-operated facilities pay aliens $1 per day and are not being sued, and ICE's contracts with CDFs only provide reimbursement for work at the same rate of $1 per day pursuant to the 1978 statute. The reason there has been no past issue with this program has been because the purpose of the program, as articulated even by the Obama Administration, is to: (1) enhance detention operations and services through detainee productivity; and to (2) reduce the negative impact of confinement through decreased idleness, improved morale, and fewer disciplinary incidents.[1]

Simply put, work under the VWP does not violate the TVPA, the FLSA, state minimum-wage laws, or any other laws. Alien detainees who perform work under the VWP while in contractor custody are not "employees" of these facilities, as they are unauthorized to work by the Secretary of Homeland Security pursuant to 8 U.S.C. § 1324a and are performing work for institutional maintenance, not compensation. *See* Genco Op. No. 92-8 (INS), 1992 WL 1369347. Moreover, the state law minimum wage and unjust enrichment claims in these cases are preempted by federal law, as detainees are being paid for work within a field of immigration enforcement exclusively controlled by federal law. This is because ICE is barred by Congress from reimbursing work at a rate of higher than $1 per day. It would provide an unnecessary windfall to the detainees, and drain the federal government of limited taxpayer resources, to require contractors to pay these detainees anywhere between 800%-1500% above what is currently required by law. These costs will simply be passed on to the taxpayers either through a required higher rate of contractual reimbursement or through increased detention costs generally.

The very goal of the advocates who file these lawsuits is to raise the overall costs of immigration detention, in order to discourage its use and diminish the overall level of immigration enforcement in the United States. If these lawsuits succeed, in the absence of immigration detention, the rate of alien "no-shows" to immigration court and the rate of recidivist arrests will undoubtedly increase. These lawsuits are being filed by the same organizations and jurisdictions that are

---

[1] U.S. Immigration and Customs Enforcement, Performance-Based National Detention Standards 2011, *available at* https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf (Page 405)

advancing sanctuary city and sanctuary state legislation and who join states and localities to file lawsuits against the Trump Administration's efforts to prioritize the removal of criminal aliens.

There are three critical steps that your agencies can take in very short order that can assist the Courts in clarifying the legal obligations under the VWP.

- First, ICE can issue guidance that updates legacy-INS guidance from February 26, 1992, and makes it clear that alien detainees who perform work at CDFs under the VWP while in contractor custody are not considered "employees" of the facilities.

- Second, DOJ and ICE can participate in the pending litigation either as a party, an interested entity under 28 U.S.C. § 517, or as an *amicus curiae*.

- Third, the Department of Labor can issue clarifying guidance that neither the FLSA nor the federal minimum wage laws apply to alien detainees who perform work at CDFs under the VWP.

Alien detainees should not be able to use immigration detention as a means of obtaining stable employment that will encourage them to pursue frivolous claims to remain in the country and in detention for as long as possible. Unless your agencies act to intervene in these lawsuits, immigration enforcement efforts will be thwarted and the end result will be millions of dollars of unnecessary loss to the federal government in terms of additional expenses for immigration detention.

Please let us know if you have any questions.

_____
Steve King (IA-04)

_____
Lamar Smith (TX-21)

_____
Mike Rogers (AL-03)

_____
Paul A. Gosar D.D.S. (AZ-04)

_____
Matt Gaetz (FL-01)

_____
Andy Biggs (AZ-05)

_____  
Louie Gohmert (TX-01)

_____  
Paul Cook (CA-08)

_____  
Earl L. "Buddy" Carter (GA-01)

_____  
Jody Hice (GA-10)

_____  
Bob Gibbs (OH-07)

_____  
John Rutherford (FL-04)

_____  
Dana Rohrabacher (CA-48)

_____  
Scott Taylor (VA-02)

_____  
John Ratcliffe (TX-04)

_____  
Duncan Hunter (CA-50)

_____  
Brian Babin, D.D.S. (TX-36)

_____  
Barry Loudermilk (GA-11)

**ICE OES**
**MAR 2 0 2018**



U.S. House of Representatives
WASHINGTON, DC 20515-1504

OFFICIAL BUSINESS

Steve King M.C.

Thomas D. Homan
Acting Director
U.S. Immigration and Customs Enforcement
500 12th Street, SW
Washington, DC 20536

