# EXHIBIT G

```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF COLORADO

          CIVIL ACTION NO.:  1:14-CV-02887-JLK


ALEJANDRO MENOCAL, et al.,

        Plaintiffs,

-vs-

THE GEO GROUP, INC.,

        Defendant.
_____/




                 DEPOSITION OF AMBER MARTIN



                Friday, February 28, 2020
                  9:23 a.m. - 11:40 a.m.



                 SHAVITZ LAW GROUP, PA
               951 Yamato Road, Suite 285
                  Boca Raton, Florida




              Stenographically Reported By:
                   JULIE BRUENS, FPR
              Florida Professional Reporter
```

```
 1                       APPEARANCES

 2

 3   On behalf of the Plaintiffs:
         TOWARDS JUSTICE
 4       1410 High Street, Suite 300
         Denver, Colorado 80218
 5       720-441-2236
         juno@towardsjustice.org
 6       BY: JUNO TURNER, ESQUIRE

 7       OUTTEN & GOLDEN, LLP
         One California Street, 12th Floor
 8       San Francisco, California 94111
         415-638-8800
 9       akoshkin@outtengolden.com
         BY: ADAM KOSHKIN, ESQUIRE
10
     On behalf of the Defendant:
11       AKERMAN
         1900 Sixteenth Street, Suite 1700
12       Denver, Colorado 80202
         303-260-7712
13       colin.barnacle@akerman.com
         adrienne.scheffey@akerman.com
14       BY: COLIN BARNACLE, ESQUIRE
             ADRIENNE SCHEFFEY, ESQUIRE
15
         THE GEO GROUP, INC.
16       4955 Technology Way
         Boca Raton, Florida 33431
17       561-443-1786
         cwilke@geogroup.com
18       BY: CHERYL WILKE, ESQUIRE

19
                         -  -  -
20

21

22

23

24

25
```

```
 1                          INDEX

 2   DIRECT EXAMINATION BY MS. TURNER.......................3
     CERTIFICATE OF OATH...................................78
 3   CERTIFICATE OF REPORTER...............................79
     READ LETTER...........................................80
 4   ERRATA SHEET..........................................81

 5

                           EXHIBIT INDEX
 6
     PLAINTIFF'S          DESCRIPTION              PAGE
 7
         1            NOTICE OF DEPOSITION          7
 8       2            2008 PBNDS                   13
         3            ACA STANDARDS                15
 9       4            2011 PBNDS                   24
         5            INTERROGATORY RESPONSES      28
10       6            ICE DETAINEE HANDBOOK        34
         7            ICE DETAINEE HANDBOOK        37
11       8            ICE DETAINEE HANDBOOK        39
         9            E-MAIL                       44
12      10            E-MAIL                       50
        11            E-MAILS                      53
13      12            CONTRACT                     63
        13            E-MAIL                       69
14      14            HOUSEKEEPING PLAN            74

15             (EXHIBITS RETAINED BY MS. TURNER.)
```

1       Deposition taken before Julie Bruens, Florida
2  Professional Reporter, and Notary Public in and for the
3  State of Florida at Large in the above cause.
4                          *****
5       THE COURT REPORTER:  Do you swear or affirm the
6    testimony you are about to give will be the truth,
7    the whole truth, and nothing but the truth?
8       THE WITNESS:  I do.
9  Thereupon,
10                     AMBER MARTIN,
11 having been first duly sworn or affirmed, was examined and
12 testified as follows:
13                   DIRECT EXAMINATION
14 BY MS. TURNER:
15     Q.   Good morning, Ms. Martin.
16     A.   Good morning.
17     Q.   My name is Juno Turner.  We met briefly before
18 we got started.  I'm one of the attorneys for the
19 plaintiffs in this lawsuit.  Could you just for the
20 record state your name and business address please?
21     A.   Amber Martin, and the business address -- we
22 just moved.
23        MS. WILKE:  It's 4955.
24        THE WITNESS:  Thank you.  4955 Technical --
25        MS. WILKE:  Technology Way.

1   increased from one dollar per day to "at least one
2   dollar per day".  Do you see that?
3        A.   Yes.
4        Q.   Okay.  Was GEO aware of this change to the
5   PBNDS?
6        A.   Yes.
7        Q.   And did GEO make any changes to the
8   compensation it pays to detainees as a result of this
9   change to the PBNDS?
10       A.   Not at Aurora, no.
11       Q.   What about at other facilities?
12       A.   I don't believe there was any changes made.
13  There are different compensations at different
14  facilities, but there's no changes made, no.
15       Q.   So to the extent that the compensation was
16  more at other facilities, it wasn't because of this
17  change to the PBNDS?
18       A.   Correct.
19       Q.   When, as in this document, ICE has made
20  changes to the PBNDS that effects GEO's operations, how
21  does that -- how does GEO sort of account for those
22  changes in operating the Aurora facility?
23       A.   Well, this change here had several different
24  layers.  There was optimal standards, and there was
25  standards, and we had a negotiation back and forth with

```
 1   ICE on which standards they wanted us to use.  When
 2   those standards were memorialized, we changed any
 3   handbooks, policies, and procedures that were
 4   applicable.
 5       Q.   Okay.  So ICE rolls out this new set of
 6   standards, and GEO and ICE have a conversation about the
 7   degree to which GEO's operations need to adjust to
 8   reflect those new standards; is that correct?
 9       A.   Correct.  There were several standards that
10   had financial impact, and so there was discussions
11   whether, you know, those standards wanted to be changed
12   by ICE.  That's why they sub-categoried them.
13       Q.   And you say whether those standards wanted to
14   be changed by ICE.  What does that mean?
15       A.   Like I said, there's optimal standards, and
16   then I can't remember the other word, but there were
17   provisional standards, and any time there was a
18   financial impact that was significant to the government,
19   then we decided -- you know, we had discussions on
20   whether or not to -- ICE would enforce those standards.
21   That's why they had two categories of standards.
22       Q.   And the two categories again were --
23       A.   Optimal, and I can't remember the other word.
24       Q.   Was one of them mandatory?
25       A.   It may have been.
```

```
 1                    CERTIFICATE OF REPORTER

 2

 3    THE STATE OF FLORIDA,

 4    COUNTY OF PALM BEACH.

 5

 6              I, Julie Bruens, Florida Professional

 7    Reporter, certify that I was authorized to and did

 8    stenographically report the deposition of AMBER MARTIN;

 9    pages 1 through 77; that a review of the transcript was

10    requested; and that the transcript is a true record of

11    my stenographic notes.

12              I further certify that I am not a

13    relative, employee, attorney, or counsel of any of the

14    parties, nor am I a relative or employee of any of the

15    parties' attorneys or counsel connected with the action,

16    nor am I financially interested in the action.

17

18              Dated this 4th day of March, 2020.

19

20              [signature]

21

22              _____
                Julie Bruens, FPR
23              Florida Professional Reporter

24

25
```