# EXHIBIT K



# Progress in Implementing 2011 PBNDS Standards and DHS PREA Requirements at Detention Facilities

**January 17, 2017**
**Fiscal Year 2016 Report to Congress**



*U.S. Immigration and Customs Enforcement*

# Message from the Director

January 17, 2017

I am pleased to present the following report, "Progress in Implementing 2011 PBNDS Standards and DHS PREA Requirements at Detention Facilities," which has been prepared by U.S. Immigration and Customs Enforcement (ICE).



This report was compiled pursuant to requirements in House Report 114-215 that accompanies the Fiscal Year 2016 Department of Homeland Security (DHS) Appropriations Act (P.L. 114-113).

Pursuant to congressional guidelines, this report is being provided to the following Members of Congress:

> The Honorable John R. Carter
> Chairman, House Appropriations Subcommittee on Homeland Security

> The Honorable Lucille Roybal-Allard
> Ranking Member, House Appropriations Subcommittee on Homeland Security

> The Honorable John Hoeven
> Chairman, Senate Appropriations Subcommittee on Homeland Security

> The Honorable Jeanne Shaheen
> Ranking Member, Senate Appropriations Subcommittee on Homeland Security

Inquiries related to this report may be directed to me at (202) 732-3000 or to the Department's Deputy Under Secretary for Management and Chief Financial Officer, Chip Fulghum, at (202) 447-5751.

Sincerely,

Sarah R. Saldaña
Director
U.S. Immigration and Customs Enforcement



# Progress in Implementing 2011 PBNDS Standards and DHS PREA Requirements at Detention Facilities Fiscal Year 2016

## Table of Contents

I.    Legislative Requirement ........................................................................... 1

II.   Background ............................................................................................... 2

III.  Implementation of 2011 Performance-Based National Detention Standards and
      DHS Prison Rape Elimination Act Standards ........................................... 4
      A. PBNDS 2011 .................................................................................... 4
      B. DHS PREA Standards ....................................................................... 6

IV.   Cost of PBNDS 2011 and PREA Implementation .................................... 10
      A. Cost of PBNDS 2011 Implementation .............................................. 10
      B. Cost of PREA Implementation ......................................................... 11

V.    Appendices .............................................................................................. 12
      Appendix A:  ICE Detention Population by Facility Type ...................... 12
      Appendix B:  ICE Detention Population by Inspection Standard............ 13
      Appendix C:  ICE Detention Population by PREA Adoption .................. 14
      Appendix D:  FY 2016 Facilities under PBNDS 2011 (28 Facilities)* ... 15
      Appendix E:  FY 2016 Facilities under PBNDS 2008 (16 Facilities) ...... 16
      Appendix F:  FY 2016 Facilities under NDS 2000 (144 Facilities) ......... 17
      Appendix G: FY 2016 Facilities under FRS (4 Facilities) ..................... 21
      Appendix H:  FY 2016 Facilities under DHS PREA Standards (30 Facilities) ...... 22
      Appendix I:  List of Abbreviations/Acronyms ....................................... 25

# I.   Legislative Requirement

This report was compiled in response to legislative language in House Report 114-215 that accompanies the Fiscal Year (FY) 2016 Department of Homeland Security (DHS) Appropriations Act (P.L. 114-113).

House Report 114-215 states:

> The recommendation supports ongoing training and stakeholder outreach related to the Prison Rape Elimination Act (PREA) and implementation of the 2011 Performance Based National Detention Standards (PBNDS). Within 45 days after the date of enactment of this Act, ICE shall report on its progress in implementing the 2011 PBNDS and requirements related to PREA, including a list of facilities that are not yet in compliance, and current year and estimated future year costs associated with compliance.

# II.   Background

ICE enforces federal laws governing border control, customs, trade, and immigration to promote homeland security and public safety.  ICE, through its Office of Enforcement and Removal Operations (ERO), identifies and apprehends removable aliens, detains these individuals when necessary, and effects removals from the United States.

Over the last 20 years, the Nation's immigration detention system has changed significantly—growing from an average daily population (ADP) of fewer than 7,500 detainees in FY 1995 to an ADP of 34,000 detainees for FY 2016.  This growth has presented challenges and opportunities for ICE.

In October 2009, DHS and ICE announced a series of detention reform initiatives as part of an ongoing effort to enhance the security and efficiency of the immigration detention system while prioritizing the health, safety, and well-being of detainees.  These reforms—which were outlined in the October 2009 report to Congress, *Immigration Detention Overview and Recommendations*, and updated in the July 2012 report to Congress, *Detention Process Improvement and Reform*—included the following recommendation, which has become a key agency initiative:

> In coordination with stakeholders, ICE should develop a new set of standards, assessments, and classification tools to inform care, custody restrictions, privileges, programs, and delivery of services consistent with risk level and medical care needs of the population.  ICE should expand access to legal materials and counsel, visitation, and religious practice.

On February 27, 2012, ICE issued the 2011 Performance Based National Detention Standards (PBNDS).  ICE tailored these revised standards, developed in collaboration with ICE personnel and numerous agency stakeholders, to meet the needs of its diverse detention population.  Since that time, ICE has implemented PBNDS 2011 successfully at 28 facilities, representing 60 percent of ICE's FY 2016 ADP.

On March 7, 2014, DHS issued Final Rule, 6 CFR Part 115, Standards to Prevent, Detect, and Respond to Sexual Abuse and Assault in Confinement Facilities, also known as the DHS Prison Rape Elimination Act (PREA) Standards.  The DHS PREA Standards establish robust safeguards against sexual abuse and assault of individuals in DHS custody.  Meeting a commitment made in the preamble to the DHS PREA Standards, ICE implemented DHS PREA standards through contract modifications at all of the agency's ICE-dedicated detention facilities.[1]  DHS PREA standards are binding at 30 facilities housing approximately 80 percent of the ICE FY 2016 ADP (excluding U.S. Marshals

---

[1] Dedicated detention facilities are those that exclusively house ICE detainees.

Service (USMS) facilities, which are covered by Department of Justice (DOJ) PREA regulations).[2]

This report provides an update on the progress that ICE has made in implementing PBNDS 2011 and DHS PREA Standards at ICE detention facilities.

---

[2] The preamble to the DHS standards states that the standards "do not apply to facilities used by ICE pursuant to an agreement with a DOJ entity (e.g., BOP facilities) or between a DOJ entity (e.g., USMS) and a state or local government or private entity . . . because they are not 'operated by or pursuant to contract with U.S. Immigration and Customs Enforcement.'"

# III. Implementation of 2011 Performance-Based National Detention Standards and DHS Prison Rape Elimination Act Standards

ICE operates the largest detention system in the Nation, and detention remains an important and necessary part of immigration enforcement. In FY 2016, ICE maintained an ADP of 34,376 detainees, and booked more than 350,000 individuals into ICE custody. The average length of stay in ICE custody was 35 days. Fifty percent of the ICE detained population was removed or released within 11 days, 75 percent was removed or released within 40 days, and 90 percent was removed or released within 90 days. ICE is committed to ensuring that detainees in ICE custody reside in safe, secure, and humane environments and under appropriate conditions of confinement. ICE detention standards and PREA safeguards are among the important mechanisms that ICE utilizes for meeting this essential commitment.

## A. PBNDS 2011

**Overview**

In February 2012, ICE issued the PBNDS to better address the unique needs of ICE's detainee population. ICE designed the revised standards to improve medical and mental health services, implement stronger protections against sexual assault, increase access to legal services and religious opportunities, improve communication for detainees with limited English proficiency, improve the process for reporting and responding to complaints, and increase recreation and visitation.

More specifically, the PBNDS standards:

- Improve medical and mental health care services by requiring the expanded availability of mental health care staff, requiring faster response times for sick call requests and evaluations of detainees with identified health needs, and ensuring closer monitoring of detainees with serious medical and mental health conditions.

- Reinforce protections against sexual abuse and assault in facilities by strengthening requirements for screening, staff training, and detainee education; establishing procedures to ensure the protection and appropriate housing of victims; establishing protocols for conducting prompt and thorough investigations in coordination with criminal law enforcement entities; and putting in place requirements for tracking and monitoring data relating to sexual abuse and assault incidents.

- Broaden detainee access to communications with family, friends, and legal representatives with extended visitation time and enhanced access to telephones.

- Enhance detainee access to legal resources through increasing availability of staff assistance and enabling detainees to attend legal rights group presentations.

- Enhance procedures for reviewing and responding to detainee grievances by providing for additional levels of review and decreased facility response times, encouraging direct detainee communication with ICE regarding grievances or facility responses, and specifying measures for addressing any indications of retaliation against detainees who have filed grievances.

- Improve communication assistance services for detainees with limited English proficiency or disabilities by mandating more specific interpretation and translation services.

- Augment religious opportunities by authorizing a greater number of religious practices and implementing a recruitment process for external religious service providers.

PBNDS also introduced the concept of "optimal" compliance through the development of 18 optimal provisions across nine detention standards. Optimal provisions are adopted through contract negotiation between ICE and the service provider, and are in addition to the mandatory requirements to which a facility is bound when it adopts PBNDS 2011. Examples include increased recreation and visitation hours, increased access to law libraries, and enhanced programming.

**Implementation**

The application of new detention standards at any given detention facility requires negotiation with the contractor or locality operating the facility, and execution of a separate contract modification incorporating the standards into the facility's agreement with ICE. The initial rollout of PBNDS required extensive discussions with detention facility operators regarding the new provisions prior to the contract modifications being finalized. Accordingly, ICE focused its initial efforts on dedicated facilities, which house the greatest numbers of detainees.

To date, ICE has implemented PBNDS at all ICE-dedicated adult detention facilities, which consist of five government-owned service processing centers (SPC), seven privately operated contract detention facilities (CDF), and eight dedicated intergovernmental service agreement facilities (DIGSA). Eight nondedicated

5

intergovernmental service agreement (IGSA) facilities also have adopted PBNDS.  In FY 2016, 60 percent of the ICE ADP was housed in a facility governed by PBNDS.[3]

The agency continues, on an ongoing basis, to pursue implementation of these standards at additional nondedicated facilities, with priority given to those facilities housing the largest populations of ICE detainees.  ICE requests that service providers adopt PBNDS 2011 for new facilities that are expected to house sizable ICE detention populations, and when their existing contractual agreements expire, when service providers seek equitable rate adjustments, or when other opportunities arise to modify the contract.

## B.  DHS PREA Standards

**Overview**

In March 2014, DHS promulgated regulations under the Prison Rape Elimination Act of 2003 (PREA; P.L. 108-79), to prevent, detect and respond to sexual abuse and assault in detention facilities.  The DHS PREA rules followed the President's May 17, 2012, Memorandum, "Implementing the Prison Rape Elimination Act," which directs all federal agencies with confinement facilities to work with the Attorney General to create rules or procedures setting standards to prevent, detect, and respond to sexual abuse in confinement facilities.  The DHS PREA rules also followed the Violence Against Women Reauthorization Act of 2013, which directed DHS to publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of rape and sexual assault in facilities that maintain custody of aliens detained for a violation of U.S. immigrations laws.  The DHS PREA regulations, *Standards to Prevent, Detect, and Respond to Sexual Abuse and Assault in Confinement Facilities*, require extensive planning and training for officers and others who work in detention facilities, and establish standards for audits and compliance reviews.  DHS PREA includes two sets of standards tailored to the types of confinement facilities used by ICE and U.S. Customs and Border Protection (CBP):

- Immigration detention facilities (Subpart A):  facilities overseen by ICE and used for longer-term detention of individuals in immigration proceedings or awaiting removal from the United States; and

---

[3] The first set of detention standards, known as the National Detention Standards (NDS), was issued in 2000 and is most frequently applicable at county or city jails used by ICE pursuant to an IGSA or U.S. Marshals Service (USMS) Intergovernmental Agreement (IGA).  In FY 2016, NDS covered 20 percent of the ICE ADP.  ICE's 2008 Performance-Based National Detention Standards (PBNDS 2008) subsequently revised these standards to delineate more clearly the results or outcomes to be achieved, and to improve safety, security, and conditions of confinement for detainees.  In FY 2016, PBNDS 2008 covered 13 percent of the ICE ADP.  ICE Family Residential Standards (FRS) were developed in 2007 to bolster best practices in family detention and are applicable to ICE's three family residential facilities, as well as to one adult detention facility that exclusively houses female detainees.  In FY 2016, FRS covered 6 percent of the ICE ADP.

- **Holding facilities (Subpart B)**:  facilities used by ICE and CBP for temporary administrative detention of individuals pending release from custody or transfer to a court, jail, prison, other agency, or other unit of the facility or agency.

DHS PREA Standards cover prevention and responsive planning, hiring procedures, the training and education of both employees and detained individuals, assessment for risk of sexual victimization and abusiveness, reporting requirements, the agency's official response following an allegation of sexual abuse or assault, procedures for both criminal and administrative investigations, the provision of medical and mental care, and audits for compliance procedures, among other areas.

DHS PREA requirements include:

- Development of a zero-tolerance policy

- Designation of an ICE Prevention of Sexual Assault (PSA) Coordinator

- Training of security staff and all employees who may have contact with detainees in proper procedures

- Specialized training for agency and facility investigators and for medical or mental health practitioners in detention facilities

- Consideration of the effect of design or modification of facilities on the ability to protect detainees from sexual abuse

- Development of policies and procedures to ensure that detainees have multiple ways to report sexual abuse, retaliation for reporting sexual abuse, or staff neglect or violations of responsibilities that may have contributed to such incidents

- Development of investigation and evidence protocols to ensure that each allegation of sexual abuse or sexual assault is investigated or referred to an appropriate investigative authority

- Assurance of effective disciplinary sanctions for staff misconduct, neglect, or violations

- Detainee access to medical and mental health assessments, counseling, and support

- Establishment of effective data collection and review procedures

- Requirements for an audit every 3 years of each immigration detention facility that has adopted DHS PREA, and of every holding facility that houses detainees overnight

**Implementation**

Prior to the issuance of DHS PREA standards, ICE had developed strong safeguards against sexual abuse or assault of its detainees in both agency policies and the ICE detention standards.  ICE built on the foundation established by these policies as it proceeded with its implementation of PREA requirements.

Both PBNDS 2008 and PBNDS 2011 contain sexual abuse and assault prevention and intervention standards that outline responsibilities for facility detention staff.  These standards include requirements for screening, training, timely reporting and notification, protection of victims, provision of medical and mental health care, and the investigation and tracking of incidents.  In May 2012, ICE sent a letter to all detention facilities with an ADP of greater than 10 detainees and with which ICE had an IGSA or a contract, requesting that they implement PBNDS 2011 Standard 2.11 "Sexual Abuse and Assault Prevention and Intervention."  As a result, 57 detention facilities not otherwise covered by PBNDS 2011 agreed to sign contract modifications adopting Standard 2.11.

In May 2012, ICE issued the agencywide Directive 11062.1, *Sexual Abuse and Assault Prevention and Intervention* (SAAPI), which established a zero-tolerance policy for sexual abuse and assault of all individuals in ICE custody, and outlined duties of agency employees for timely reporting, coordinating response and investigation, and effective monitoring of all incidents of sexual abuse or assault.  ICE revised and reissued the ICE SAAPI Directive in May 2014 to incorporate the additional agency requirements established under DHS PREA.  SAAPI requires ERO Field Offices and ICE Office of Professional Responsibility (OPR) investigators to ensure thorough responses to and investigations of all allegations, even when the allegation occurred at a detention facility not covered by DHS PREA standards.

In September 2014, ICE also promulgated a new ERO Directive, *Operations of ERO Holding Facilities*, which incorporates DHS PREA Subpart B requirements specifically applicable to ERO hold rooms and staging facilities.  ICE holding facilities are exclusively owned and operated by ICE and are used for the short-term detention of individuals, typically 24 or fewer hours.  This ERO policy complements SAAPI by outlining requirements for screening for risk, conducting appropriate searches, and ensuring an immediate response to allegations.

DHS PREA standards require the appointment of an agencywide PSA Coordinator to lead in the development, implementation, and oversight of agency efforts to comply with DHS PREA standards.  SAAPI further requires the designation of specially trained coordinators at each field office as well as personnel from relevant ICE Headquarters divisions to collaborate in PREA compliance and implementation efforts.  The ICE agency PSA Coordinator, located in the ICE Office of Detention Policy and Planning,

provides regular guidance and technical assistance to the field and works closely with the designated PSA Coordinators for ERO and OPR.

In May 2015, ICE developed and deployed a new interactive database to track all allegations of sexual abuse and assault and to record information about responsive actions and investigative results.  OPR, ERO, and the PSA Coordinator collaborate daily to review the agency's response to every new allegation of sexual abuse and assault.  As required by SAAPI, the ICE PSA Coordinator submits quarterly reports to the ICE Detention Monitoring Council (DMC), along with monthly reports to a subcommittee of the DMC.  The DMC is an ICE intra-agency council that serves as a formal setting to ensure that senior leadership from all ICE programs with detention responsibility jointly examines serious issues, incidents, findings, and allegations related to conditions of detention.

**Detention Facility PREA Implementation**

DHS PREA standards require that all new, renewed, or substantively modified detention facility contracts incorporate the PREA standards.  By the end of FY 2016, DHS PREA contractually was binding at 30 detention facilities.  These facilities housed 64 percent of FY 2016 ICE ADP, and 79 percent of the FY 2016 ICE ADP when excluding detainees held in USMS-contracted facilities (which are covered by DOJ PREA regulations).  Further, by the end of FY 2016, SAAPI standards contained in either PREA or PBNDS contractually were binding at facilities housing approximately 87 percent of the ICE ADP (96 percent of ICE ADP when excluding USMS-contracted facilities).  Pursuant to a commitment made in the preamble to the DHS PREA standards, ICE successfully implemented PREA standards at all 23 dedicated ICE facilities within 18 months of PREA's effective date of May 6, 2014.  ICE also has implemented PREA standards at seven nondedicated facilities.

**PREA Audits**

Immigration detention facilities covered by the DHS PREA Standards must be audited within 3 years of adopting the standards, and at least once every 3 years thereafter.  Each ICE holding facility housing detainees overnight also must be audited by July 6, 2018.  Holding facilities deemed by this initial audit to be "low risk" subsequently must be audited at least once every 5 years; holding facilities deemed not to be "low risk" during the initial audit must be audited at least once every 3 years.  To facilitate PREA audits of ICE facilities, OPR, in coordination with other agency programs, solicited and secured a contract vendor to perform the audits.  To promote a consistent and unified approach to conducting the audits required under the DHS PREA Standards, ICE and CBP partnered to award a joint audit contract, although ICE and CBP will manage implementation of their respective PREA audits independently.

# IV.  Cost of PBNDS 2011 and PREA Implementation

## A.   Cost of PBNDS 2011 Implementation

The cost of implementing PBNDS 2011, thus far, has been within expectations.  The mandatory provisions in the PBNDS 2011 standards were implemented at no cost at all but one of the 20 ICE dedicated adult detention facilities.[4]  Many service providers did submit requests to ICE for both per-diem increases and one-time upfront funds, and the minimal cost to the Federal Government was accepted only after close scrutiny of the original requests submitted.  ICE estimates that further adoption of PBNDS 2011 at additional facilities also will be at no additional cost to the government; however, facilities may request per-diem increases for other reasons that cannot be estimated at this time.

Nondedicated detention facilities generally have adopted PBNDS 2011 at no additional cost, although in several cases the adoption of the new detention standards has corresponded with ICE agreements to increase per diem payments for other reasons, typically to reimburse localities for their increased labor or other operating costs.  Some upgrades at nondedicated facilities also included the hiring of additional medical staff, although the request for increased medical staffing was not directly tied to PBNDS 2011 requirements.

In FY 2015, ICE also funded enhancements at a number of detention facilities, including facilities governed by PBNDS 2011 as well as by PBNDS 2008 and NDS.  These enhancements resulted in a one-time cost of approximately $3.3 million and recurring annual costs of approximately $150,000.  The enhancements assisted facilities in providing detainees with services and programming at an optimal level in a number of areas, including:

- Added hours for family visitation

- Additional security cameras and other security measures

- Improved legal access for detainees

- Improved religious resources and expanded religious services

- Enhanced programming and recreation

---

[4] Implementation of PBNDS 2011 at the Eloy Federal Contract Facility required additional annual expenditures of approximately $44,000 and a one-time cost of approximately $122,000.  These additional costs arose from the requirement to provide 1 hour of recreation daily to detainees in administrative segregation; PBNDS 2008 requires 1 hour of recreation for 5 days each week.

## B.   Cost of PREA Implementation

All 30 of the facilities that implemented DHS PREA standards by the end of FY 2016 did so without requesting any increases in per diem or one-time payments.  ICE estimates that further adoption of DHS PREA standards at additional facilities also will be at no additional cost to the government.

Although not requested by detention facilities as a condition of adopting DHS PREA standards, in FY 2015, ICE agreed to fund the hiring of 14 additional detention facility staff to assist in PREA compliance.  The anticipated total cost of these additional positions was approximately $325,000 in one-time costs and $900,000 annually thereafter.  DHS PREA § 115.11(d) states, "Each facility shall employ or designate a Prevention of Sexual Assault Compliance Manager (PSA Compliance Manager) who shall serve as the facility point of contact for the agency PSA Coordinator and who has sufficient time and authority to oversee facility efforts to comply with facility sexual abuse prevention and intervention policies and procedures."  Additionally, DHS PREA standards contain detailed requirements related to detention facility administrative investigations of sexual assault allegations by specially trained investigators, and facilities may require additional staff to review and investigate allegations of sexual abuse or assault appropriately.  Although the facility PSA Compliance Manager or investigator positions can be collateral duties, having a full-time staff member is helpful in ensuring compliance with PREA.  Accordingly, ICE offered to pay for one or two additional full-time positions at certain detention facilities.

As mentioned in this report, ICE has procured a contract vendor to perform the audits required by the DHS PREA standards.  ICE PREA audits are scheduled to begin in the second quarter of FY 2017, and ICE currently expects to ensure the completion of approximately 35 audits during FY 2017 and approximately 25 audits during FY 2018.  ICE estimates expenditures of approximately $350,000 over the first 2 years of auditing.

# V.   Appendices

## Appendix A:  ICE Detention Population by Facility Type

There are six types of ICE immigration detention facilities:

- Contract Detention Facilities (CDF)
- Dedicated Intergovernmental Service Agreement (DIGSA) Facilities
- Inter-Governmental Service Agreement (IGSA) Facilities
- Service Processing Centers (SPC)
- U.S. Marshals Service (USMS) Intergovernmental Agreement (IGA) Facilities
- Family residential centers[5]



*The "Other" category includes short-term ICE hold rooms and staging facilities, juvenile facilities, hospitals, and facilities operated by the Department of Justice Bureau of Prisons (BOP).[6]

---

[5] The three ICE family residential centers are governed IGSAs but are delineated as a separate category.
[6] In FY 2016, the ICE average daily population (ADP) of detainees held at BOP facilities was 43.

Appendix B:  ICE Detention Population by Inspection Standard



Appendix C:  ICE Detention Population by PREA Adoption



## Appendix D:  FY 2016 Facilities under PBNDS 2011 (28 Facilities)*

| Facility Name | State | Facility Type | FY 2016 ADP |
|---|---|---|---|
| SOUTH TEXAS DETENTION COMPLEX | TX | CDF | 1,728 |
| ADELANTO CORRECTIONAL FACILITY | CA | DIGSA | 1,472 |
| ELOY FEDERAL CONTRACT FACILITY | AZ | DIGSA | 1,433 |
| NORTHWEST DETENTION CENTER | WA | CDF | 1,411 |
| STEWART DETENTION CENTER | GA | DIGSA | 1,369 |
| JENA/LASALLE DETENTION FACILITY | LA | DIGSA | 1,105 |
| PORT ISABEL | TX | SPC | 1,104 |
| HOUSTON CONTRACT DETENTION FACILITY | TX | CDF | 916 |
| JOE CORLEY DETENTION FACILITY | TX | IGSA | 894 |
| OTERO COUNTY PROCESSING CENTER | NM | DIGSA | 844 |
| OTAY MESA DETENTION CENTER (SAN DIEGO CDF) | CA | USMS IGA | 835 |
| EL PASO SERVICE PROCESSING CENTER | TX | SPC | 819 |
| IMPERIAL REGIONAL DETENTION FACILITY | CA | DIGSA | 681 |
| BROWARD TRANSITIONAL CENTER | FL | CDF | 618 |
| IMMIGRATION CENTERS OF AMERICA FARMVILLE | VA | DIGSA | 579 |
| KROME NORTH SERVICE PROCESSING CENTER | FL | SPC | 558 |
| BUFFALO (BATAVIA) SERVICE PROCESSING CENTER | NY | SPC | 540 |
| ESSEX COUNTY CORRECTIONAL FACILITY | NJ | IGSA | 539 |
| ROLLING PLAINS DETENTION CENTER | TX | IGSA | 490 |
| PINE PRAIRIE CORRECTIONAL CENTER | LA | IGSA | 479 |
| DENVER CONTRACT DETENTION FACILITY | CO | CDF | 477 |
| FLORENCE SERVICE PROCESSING CENTER | AZ | SPC | 387 |
| MESA VERDE DETENTION FACILITY | CA | DIGSA | 368 |
| ELIZABETH CONTRACT DETENTION FACILITY | NJ | CDF | 295 |
| SANTA ANA CITY JAIL | CA | IGSA | 189 |
| PULASKI COUNTY JAIL | IL | IGSA | 167 |
| HOWARD COUNTY DETENTION CENTER | MD | IGSA | 60 |
| ALLEN PARISH PUBLIC SAFETY COMPLEX | LA | IGSA | 18 |

*Excludes facilities no longer in use as of 9/30/2016

Appendix E:  FY 2016 Facilities under PBNDS 2008 (16 Facilities)

| Facility Name | State | Facility Type | FY 2016 ADP |
|---|---|---|---|
| CCA, FLORENCE CORRECTIONAL CENTER | AZ | USMS IGA | 712 |
| YORK COUNTY PRISON | PA | IGSA | 671 |
| IRWIN COUNTY DETENTION CENTER | GA | USMS IGA | 546 |
| HUDSON COUNTY CORRECTIONAL CENTER | NJ | USMS IGA | 491 |
| RIO GRANDE DETENTION CENTER | TX | USMS IGA | 476 |
| THEO LACY FACILITY | CA | IGSA | 448 |
| JAMES A. MUSICK FACILITY | CA | IGSA | 290 |
| PIKE COUNTY CORRECTIONAL FACILITY | PA | IGSA | 169 |
| BRISTOL COUNTY DETENTION CENTER | MA | IGSA | 116 |
| NEVADA SOUTHERN DETENTION CENTER | NV | USMS IGA | 74 |
| SAINT CLAIR COUNTY JAIL | MI | IGSA | 69 |
| STRAFFORD COUNTY CORRECTIONS | NH | IGSA | 67 |
| CLAY COUNTY JAIL | IN | USMS IGA | 53 |
| MONROE COUNTY DETENTION CENTER | FL | IGSA | 52 |
| WESTERN TENNESSEE DETENTION FACILITY | TN | USMS IGA | 3 |
| CCA CENTRAL ARIZONA DETENTION CENTER | AZ | USMS IGA | 0.2 |

## Appendix F: FY 2016 Facilities under NDS 2000 (144 Facilities)[7]

| Facility Name | State | Facility Type | FY 2016 ADP |
|---|---|---|---|
| POLK COUNTY ADULT DETENTION FACILITY | TX | IGSA | 563 |
| WEST TEXAS DETENTION FACILITY | TX | USMS IGA | 452 |
| LAREDO PROCESSING CENTER | TX | USMS IGA | 301 |
| ETOWAH COUNTY JAIL (ALABAMA) | AL | USMS IGA | 278 |
| HENDERSON DETENTION CENTER | NV | USMS IGA | 240 |
| JOHNSON COUNTY LAW ENFORCEMENT CENTER | TX | IGSA | 216 |
| UTAH COUNTY JAIL | UT | IGSA | 215 |
| MCHENRY COUNTY CORRECTIONAL FACILITY | IL | USMS IGA | 207 |
| DODGE COUNTY JAIL | WI | USMS IGA | 199 |
| CONTRA COSTA COUNTY JAIL WEST | CA | USMS IGA | 196 |
| SUFFOLK COUNTY HOUSE OF CORRECTIONS | MA | IGSA | 192 |
| YUBA COUNTY JAIL | CA | IGSA | 189 |
| BAKER COUNTY SHERIFF'S OFFICE | FL | IGSA | 188 |
| ORANGE COUNTY JAIL | NY | IGSA | 172 |
| KENOSHA COUNTY DETENTION CENTER | WI | USMS IGA | 166 |
| WORCESTER COUNTY JAIL | MD | USMS IGA | 165 |
| CALHOUN COUNTY CORRECTIONAL CENTER | MI | IGSA | 148 |
| BERGEN COUNTY JAIL | NJ | USMS IGA | 147 |
| BOONE COUNTY JAIL | KY | USMS IGA | 142 |
| ATLANTA CITY DETENTION CENTER | GA | USMS IGA | 139 |
| RIO COSUMNES CORR. CENTER | CA | IGSA | 136 |
| TULSA COUNTY JAIL (DAVID L. MOSS JUSTICE CTR) | OK | IGSA | 132 |
| GLADES COUNTY DETENTION CENTER | FL | IGSA | 130 |
| EAST HIDALGO DETENTION CENTER | TX | USMS IGA | 128 |
| SHERBURNE COUNTY JAIL | MN | USMS IGA | 127 |
| SAN LUIS REGIONAL DETENTION CENTER | AZ | USMS IGA | 101 |
| PLYMOUTH COUNTY CORRECTIONAL FACILITY | MA | IGSA | 86 |
| DOUGLAS COUNTY DEPARTMENT OF CORRECTIONS | NE | IGSA | 82 |
| BUTLER COUNTY JAIL | OH | IGSA | 81 |
| FRANKLIN HOUSE OF CORRECTIONS | MA | USMS IGA | 71 |
| WAKULLA COUNTY JAIL | FL | IGSA | 62 |
| FREEBORN COUNTY ADULT DETENTION CENTER | MN | IGSA | 61 |
| MORGAN COUNTY ADULT DETENTION CENTER | MO | IGSA | 51 |
| MONROE COUNTY DETENTION-DORM | MI | IGSA | 51 |
| VIRGINIA PENINSULA REGIONAL JAIL | VA | USMS IGA | 50 |
| SENECA COUNTY JAIL | OH | IGSA | 49 |
| HARDIN COUNTY JAIL | IA | IGSA | 45 |
| TORRANCE COUNTY DETENTION FACILITY | NM | USMS IGA | 45 |
| CHASE COUNTY DETENTION FACILITY | KS | IGSA | 44 |

[7] Some adult detention facilities are not held to any set of ICE detention standards; ICE Office of Enforcement and Removal Operations refers to these as "non-authorized" facilities. These include facilities operated by the U.S. Department of Justice's (DOJ) Bureau of Prisons (BOP), which are held to BOP standards and policies; the FY 2016 average daily population (ADP) of ICE detainees at BOP facilities was 45. Adult detention facilities that are used irregularly and/or infrequently are also on the list of nonauthorized facilities; this category applies to any facility with less than 60 man-days in a fiscal year, which is a cumulative sum of the number of detainees present within a facility each evening at midnight. The FY 2016 ADP of adult detention facilities in this category was 4.

| Facility Name | State | Facility Type | FY 2016 ADP |
|---|---|---|---|
| FREDERICK COUNTY DETENTION CENTER | MD | IGSA | 39 |
| GEAUGA COUNTY JAIL | OH | USMS IGA | 38 |
| LA SALLE COUNTY REGIONAL DETENTION CENTER | TX | USMS IGA | 35 |
| MARSHALL COUNTY JAIL | IA | USMS IGA | 31 |
| ALBANY COUNTY JAIL | NY | USMS IGA | 29 |
| MORROW COUNTY CORRECTIONAL FACILITY | OH | IGSA | 29 |
| CARVER COUNTY JAIL | MN | IGSA | 29 |
| YORK COUNTY DETENTION CENTER | SC | USMS IGA | 28 |
| BROOKS COUNTY DETENTION CENTER | TX | USMS IGA | 23 |
| WILLACY CO  REGIONAL DETENTION FACILITY | TX | USMS IGA | 23 |
| DEKALB COUNTY DETENTION CENTER | AL | USMS IGA | 22 |
| CALDWELL COUNTY DETENTION CENTER | MO | IGSA | 21 |
| KARNES COUNTY CORRECTIONAL CENTER | TX | USMS IGA | 20 |
| MONTGOMERY COUNTY JAIL | MO | IGSA | 18 |
| EULESS CITY JAIL | TX | IGSA | 18 |
| CHIPPEWA COUNTY SSM | MI | IGSA | 18 |
| BEDFORD MUNICIPAL DETENTION CENTER | TX | IGSA | 16 |
| CLINTON COUNTY JAIL | NY | USMS IGA | 14 |
| HALL COUNTY DEPARTMENT OF CORRECTIONS | NE | IGSA | 14 |
| WASHOE COUNTY JAIL | NV | USMS IGA | 14 |
| NORTHERN OREGON CORRECTIONAL FACILITY | OR | IGSA | 14 |
| TENSAS PARISH DETENTION CENTER | LA | IGSA | 13 |
| CHRISTIAN COUNTY JAIL | MO | IGSA | 13 |
| POTTAWATTAMIE COUNTY JAIL | IA | USMS IGA | 12 |
| CLINTON COUNTY CORRECTIONAL FACILITY | PA | USMS IGA | 12 |
| ALLEGANY COUNTY JAIL | NY | IGSA | 12 |
| RAMSEY COUNTY ADULT DETENTION CENTER | MN | USMS IGA | 11 |
| TELLER COUNTY JAIL | CO | IGSA | 10 |
| VAL VERDE CORRECTIONAL FACILITY | TX | USMS IGA | 9 |
| CHARLESTON COUNTY DETENTION CENTER | SC | USMS IGA | 9 |
| YAKIMA COUNTY DEPARTMENT OF CORRECTIONS | WA | USMS IGA | 8 |
| LINCOLN COUNTY DETENTION CENTER | MO | IGSA | 7 |
| SOUTH CENTRAL REGIONAL JAIL | WV | USMS IGA | 6 |
| CASS COUNTY JAIL | NE | USMS IGA | 6 |
| EL PASO COUNTY CRIMINAL JUSTICE CENTER | CO | IGSA | 6 |
| BUTLER COUNTY JAIL | KS | USMS IGA | 5 |
| ELMORE COUNTY JAIL | ID | USMS IGA | 5 |
| CHAUTAUQUA COUNTY JAIL | NY | IGSA | 5 |
| CAMBRIA COUNTY JAIL | PA | USMS IGA | 4 |
| DAVIDSON COUNTY SHERIFF | TN | IGSA | 4 |
| COLLIER COUNTY NAPLES JAIL CENTER | FL | IGSA | 4 |
| WAYNE COUNTY JAIL | NY | USMS IGA | 4 |
| SAINT TAMMANY PARISH JAIL | LA | IGSA | 4 |
| SHAWNEE COUNTY DEPARTMENT OF CORRECTIONS | KS | IGSA | 3 |
| PHELPS COUNTY JAIL | NE | USMS IGA | 3 |
| LINN COUNTY JAIL | IA | USMS IGA | 3 |
| GRAND FORKS COUNTY CORRECTIONAL FACILITY | ND | IGSA | 3 |
| MINICASSIA DETENTION CENTER | ID | IGSA | 3 |
| WAKE COUNTY SHERIFF DEPARTMENT | NC | IGSA | 3 |

| Facility Name | State | Facility Type | FY 2016 ADP |
|---|---|---|---|
| WASHINGTON COUNTY JAIL (PURGATORY CORRECTIONAL FAC | UT | USMS IGA | 3 |
| POLK COUNTY JAIL | IA | USMS IGA | 3 |
| ERIE COUNTY JAIL | PA | USMS IGA | 3 |
| LEXINGTON COUNTY JAIL | SC | USMS IGA | 2 |
| DEARBORN POLICE DEPARTMENT | MI | IGSA | 2 |
| HALL COUNTY JAIL | GA | USMS IGA | 2 |
| BALDWIN COUNTY CORRECTIONAL CENTER | AL | IGSA | 2 |
| ALEXANDRIA CITY JAIL | VA | USMS IGA | 1 |
| NOBLES COUNTY JAIL | MN | IGSA | 1 |
| FAYETTE COUNTY DETENTION CENTER | KY | USMS IGA | 1 |
| ELGIN POLICE DEPARTMENT | IL | IGSA | 1 |
| BURNET COUNTY JAIL | TX | IGSA | 1 |
| DELAWARE CO JAIL (GEORGE W. HILL) | PA | USMS IGA | 1 |
| PLATTE COUNTY DETENTION CENTER | MO | IGSA | 1 |
| RANDALL COUNTY JAIL | TX | USMS IGA | 1 |
| JEFFERSON COUNTY JAIL | ID | IGSA | 1 |
| FORSYTH COUNTY JAIL | NC | USMS IGA | 1 |
| SEBASTIAN COUNTY DETENTION CENTER | AR | USMS IGA | 1 |
| MECKLENBURG COUNTY DETENTION CENTER NORTH | NC | USMS IGA | 1 |
| COBB COUNTY JAIL | GA | IGSA | 1 |
| WHITFIELD COUNTY JAIL | GA | IGSA | 1 |
| LONOKE POLICE DEPARTMENT | AR | IGSA | 1 |
| ROCK ISLAND COUNTY CORRECTIONAL CENTER | IL | USMS IGA | 1 |
| MARION COUNTY JAIL | IN | USMS IGA | 1 |
| CASCADE COUNTY JAIL (MONTANA) | MT | USMS IGA | 1 |
| GRAYSON COUNTY JAIL | KY | USMS IGA | 1 |
| ROANOKE CITY JAIL | VA | IGSA | 1 |
| OLDHAM COUNTY JAIL | KY | IGSA | 1 |
| JOSEPHINE COUNTY JAIL | OR | USMS IGA | 1 |
| MONTGOMERY CITY JAIL | AL | IGSA | 1 |
| ORANGE COUNTY JAIL | FL | USMS IGA | 1 |
| GARVIN COUNTY DETENTION CENTER | OK | IGSA | 1 |
| LUBBOCK COUNTY DETENTION CENTER | TX | USMS IGA | 1 |
| MILLER COUNTY JAIL | AR | USMS IGA | 1 |
| CUMBERLAND COUNTY JAIL | ME | USMS IGA | 1 |
| DAKOTA COUNTY JAIL | NE | USMS IGA | 1 |
| NEW HANOVER COUNTY JAIL | NC | IGSA | 0.5 |
| LA PAZ COUNTY ADULT DETENTION FACILITY | AZ | USMS IGA | 0.4 |
| NATRONA COUNTY JAIL | WY | USMS IGA | 0.4 |
| PINELLAS COUNTY JAIL | FL | USMS IGA | 0.4 |
| JACK HARWELL DETENTION CENTER | TX | USMS IGA | 0.4 |
| PENNINGTON COUNTY JAIL (SOUTH DAKOTA) | SD | USMS IGA | 0.3 |
| ORANGE COUNTY INTAKE RELEASE FACILITY | CA | IGSA | 0.3 |
| GLENDALE POLICE DEPARTMENT | CA | IGSA | 0.2 |
| KENT COUNTY JAIL | MI | IGSA | 0.2 |
| NORTHWEST STATE CORRECTIONAL CENTER | VT | USMS IGA | 0.2 |
| ANCHORAGE CORRECTIONAL COMPLEX | AK | USMS IGA | 0.2 |
| MOFFAT COUNTY JAIL | CO | IGSA | 0.2 |

| Facility Name | State | Facility Type | FY 2016 ADP |
|---|---|---|---|
| CENTRAL TEXAS DETENTION  FACILITY | TX | USMS IGA | 0.2 |
| CABARRUS COUNTY JAIL | NC | IGSA | 0.1 |
| GASTON COUNTY JAIL | NC | IGSA | 0.1 |
| YAVAPAI COUNTY DETENTION CENTER | AZ | IGSA | 0.1 |
| DALE G. HAILE DETENTION CENTER | ID | IGSA | 0.1 |
| SANGAMON COUNTY JAIL | IL | USMS IGA | 0.04 |
| SALEM COUNTY CORRECTIONAL FACILITY | NJ | USMS IGA | 0.02 |
| NORTHERN REGIONAL JAIL | WV | USMS IGA | 0.01 |

## Appendix G: FY 2016 Facilities under FRS (4 Facilities)

| Facility Name | State | Facility Type | FY16 ADP |
|---|---|---|---|
| SOUTH TEXAS FAMILY RESIDENTIAL CENTER | TX | FAMILY | 1,015 |
| KARNES COUNTY RESIDENTIAL CENTER | TX | FAMILY | 512 |
| HUTTO CCA | TX | DIGSA | 493 |
| BERKS COUNTY FAMILY SHELTER | PA | FAMILY | 79 |

## Appendix H:  FY 2016 Facilities under DHS PREA Standards (30 Facilities)

| Facility Name | State | Facility Type | FY16 ADP |
|---|---|---|---|
| SOUTH TEXAS DETENTION COMPLEX | TX | CDF | 1,728 |
| ADELANTO CORRECTIONAL FACILITY | CA | DIGSA | 1,472 |
| ELOY FEDERAL CONTRACT FACILITY | AZ | DIGSA | 1,433 |
| NORTHWEST DETENTION CENTER | WA | CDF | 1,411 |
| STEWART DETENTION CENTER | GA | DIGSA | 1,369 |
| JENA/LASALLE DETENTION FACILITY | LA | DIGSA | 1,105 |
| PORT ISABEL | TX | SPC | 1,104 |
| SOUTH TEXAS FAMILY RESIDENTIAL CENTER | TX | FAMILY | 1,015 |
| HOUSTON CONTRACT DETENTION FACILITY | TX | CDF | 916 |
| JOE CORLEY DETENTION FACILITY | TX | IGSA | 894 |
| OTERO COUNTY PROCESSING CENTER | NM | DIGSA | 844 |
| EL PASO SERVICE PROCESSING CENTER | TX | SPC | 819 |
| IMPERIAL REGIONAL DETENTION FACILITY | CA | DIGSA | 681 |
| BROWARD TRANSITIONAL CENTER | FL | CDF | 618 |
| IMMIGRATION CENTERS OF AMERICA FARMVILLE | VA | DIGSA | 579 |
| POLK COUNTY ADULT DETENTION FACILITY | TX | IGSA | 563 |
| KROME NORTH SERVICE PROCESSING CENTER | FL | SPC | 558 |
| BUFFALO (BATAVIA) SERVICE PROCESSING CENTER | NY | SPC | 540 |
| ESSEX COUNTY CORRECTIONAL FACILITY | NJ | IGSA | 539 |
| KARNES COUNTY RESIDENTIAL CENTER | TX | FAMILY | 512 |
| HUTTO CCA | TX | DIGSA | 493 |
| PINE PRAIRIE CORRECTIONAL CENTER | LA | IGSA | 479 |
| DENVER CONTRACT DETENTION FACILITY | CO | CDF | 477 |
| FLORENCE SERVICE PROCESSING CENTER | AZ | SPC | 387 |
| MESA VERDE DETENTION FACILITY | CA | DIGSA | 368 |
| ELIZABETH CONTRACT DETENTION FACILITY | NJ | CDF | 295 |
| SANTA ANA CITY JAIL | CA | IGSA | 189 |
| PULASKI COUNTY JAIL | IL | IGSA | 167 |
| BERKS COUNTY FAMILY SHELTER | PA | FAMILY | 79 |
| HOWARD COUNTY DETENTION CENTER | MD | IGSA | 60 |

# Appendix I:  FY 2016 Authorized Facilities that have not adopted DHS PREA Standards (78 Facilities)[8]

| Facility Name | State | Facility Type | FY16 ADP |
|---|---|---|---|
| YORK COUNTY PRISON | PA | IGSA | 671 |
| ROLLING PLAINS DETENTION CENTER | TX | IGSA | 490 |
| THEO LACY FACILITY | CA | IGSA | 448 |
| JAMES A. MUSICK FACILITY | CA | IGSA | 290 |
| JOHNSON COUNTY LAW ENFORCEMENT CENTER | TX | IGSA | 216 |
| UTAH COUNTY JAIL | UT | IGSA | 215 |
| SUFFOLK COUNTY HOUSE OF CORRECTIONS | MA | IGSA | 192 |
| YUBA COUNTY JAIL | CA | IGSA | 189 |
| BAKER COUNTY SHERIFF'S OFFICE | FL | IGSA | 188 |
| ORANGE COUNTY JAIL | NY | IGSA | 172 |
| PIKE COUNTY CORRECTIONAL FACILITY | PA | IGSA | 169 |
| WORCESTER COUNTY JAIL | MD | IGSA | 165 |
| CALHOUN COUNTY CORRECTIONAL CENTER | MI | IGSA | 148 |
| RIO COSUMNES CORR. CENTER | CA | IGSA | 136 |
| TULSA COUNTY JAIL (DAVID L. MOSS JUSTICE CTR) | OK | IGSA | 132 |
| GLADES COUNTY DETENTION CENTER | FL | IGSA | 130 |
| BRISTOL COUNTY DETENTION CENTER | MA | IGSA | 116 |
| PLYMOUTH COUNTY CORRECTIONAL FACILITY | MA | IGSA | 86 |
| DOUGLAS COUNTY DEPARTMENT OF CORRECTIONS | NE | IGSA | 82 |
| BUTLER COUNTY JAIL | OH | IGSA | 81 |
| SAINT CLAIR COUNTY JAIL | MI | IGSA | 69 |
| STRAFFORD COUNTY CORRECTIONS | NH | IGSA | 67 |
| WAKULLA COUNTY JAIL | FL | IGSA | 62 |
| FREEBORN COUNTY ADULT DETENTION CENTER | MN | IGSA | 61 |
| MONROE COUNTY DETENTION CENTER | FL | IGSA | 52 |
| MORGAN COUNTY ADULT DETENTION CENTER | MO | IGSA | 51 |
| MONROE COUNTY DETENTION-DORM | MI | IGSA | 51 |
| SENECA COUNTY JAIL | OH | IGSA | 49 |
| HARDIN COUNTY JAIL | IA | IGSA | 45 |
| CHASE COUNTY DETENTION FACILITY | KS | IGSA | 44 |
| FREDERICK COUNTY DETENTION CENTER | MD | IGSA | 39 |
| MORROW COUNTY CORRECTIONAL FACILITY | OH | IGSA | 29 |
| CARVER COUNTY JAIL | MN | IGSA | 29 |
| CALDWELL COUNTY DETENTION CENTER | MO | IGSA | 21 |
| MONTGOMERY COUNTY JAIL | MO | IGSA | 18 |
| EULESS CITY JAIL | TX | IGSA | 18 |
| ALLEN PARISH PUBLIC SAFETY COMPLEX | LA | IGSA | 18 |
| CHIPPEWA COUNTY SSM | MI | IGSA | 18 |

---

[8] This list does not include the U.S. Department of Justice's (DOJ) Bureau of Prisons and U.S. Marshals Service facilities, which are covered by DOJ Prison Rape Elimination Act regulations.  The list also excludes other detention facilities categorized as "non-authorized" because they are used irregularly and/or infrequently; this category applies to any facility with less than 60 man-days in a fiscal year, which is a cumulative sum of the number of detainees present within a facility each evening at midnight.

| Facility Name | State | Facility Type | FY16 ADP |
|---|---|---|---|
| BEDFORD MUNICIPAL DETENTION CENTER | TX | IGSA | 16 |
| HALL COUNTY DEPARTMENT OF CORRECTIONS | NE | IGSA | 14 |
| NORTHERN OREGON CORRECTIONAL FACILITY | OR | IGSA | 14 |
| TENSAS PARISH DETENTION CENTER | LA | IGSA | 13 |
| CHRISTIAN COUNTY JAIL | MO | IGSA | 13 |
| ALLEGANY COUNTY JAIL | NY | IGSA | 12 |
| TELLER COUNTY JAIL | CO | IGSA | 10 |
| LINCOLN COUNTY DETENTION CENTER | MO | IGSA | 7 |
| EL PASO COUNTY CRIMINAL JUSTICE CENTER | CO | IGSA | 6 |
| CHAUTAUQUA COUNTY JAIL | NY | IGSA | 5 |
| DAVIDSON COUNTY SHERIFF | TN | IGSA | 4 |
| COLLIER COUNTY NAPLES JAIL CENTER | FL | IGSA | 4 |
| SAINT TAMMANY PARISH JAIL | LA | IGSA | 4 |
| SHAWNEE COUNTY DEPARTMENT OF CORRECTIONS | KS | IGSA | 3 |
| GRAND FORKS COUNTY CORRECTIONAL FACILITY | ND | IGSA | 3 |
| MINICASSIA DETENTION CENTER | ID | IGSA | 3 |
| WAKE COUNTY SHERIFF DEPARTMENT | NC | IGSA | 3 |
| DEARBORN POLICE DEPARTMENT | MI | IGSA | 2 |
| BALDWIN COUNTY CORRECTIONAL CENTER | AL | IGSA | 2 |
| NOBLES COUNTY JAIL | MN | IGSA | 1 |
| ELGIN POLICE DEPARTMENT | IL | IGSA | 1 |
| BURNET COUNTY JAIL | TX | IGSA | 1 |
| PLATTE COUNTY DETENTION CENTER | MO | IGSA | 1 |
| JEFFERSON COUNTY JAIL | ID | IGSA | 1 |
| COBB COUNTY JAIL | GA | IGSA | 1 |
| WHITFIELD COUNTY JAIL | GA | IGSA | 1 |
| LONOKE POLICE DEPARTMENT | AR | IGSA | 1 |
| ROANOKE CITY JAIL | VA | IGSA | 1 |
| OLDHAM COUNTY JAIL | KY | IGSA | 1 |
| MONTGOMERY CITY JAIL | AL | IGSA | 1 |
| GARVIN COUNTY DETENTION CENTER | OK | IGSA | 1 |
| NEW HANOVER COUNTY JAIL | NC | IGSA | 0.5 |
| ORANGE COUNTY INTAKE RELEASE FACILITY | CA | IGSA | 0.3 |
| GLENDALE POLICE DEPARTMENT | CA | IGSA | 0.2 |
| KENT COUNTY JAIL | MI | IGSA | 0.2 |
| MOFFAT COUNTY JAIL | CO | IGSA | 0.2 |
| CABARRUS COUNTY JAIL | NC | IGSA | 0.1 |
| GASTON COUNTY JAIL | NC | IGSA | 0.1 |
| YAVAPAI COUNTY DETENTION CENTER | AZ | IGSA | 0.1 |
| DALE G. HAILE DETENTION CENTER | ID | IGSA | 0.1 |

Appendix J:  List of Abbreviations/Acronyms

**Abbreviation/Acronym**          **Definition**

| Abbreviation/Acronym | Definition |
|---|---|
| ADP | Average Daily Population |
| BOP | Bureau of Prisons |
| CBP | U.S. Customs and Border Protection |
| CDF | Contract Detention Facility |
| DHS | U.S. Department of Homeland Security |
| DIGSA | Dedicated Intergovernmental Service Agreement |
| DMC | Detention Monitoring Council |
| DOJ | U.S. Department of Justice |
| ERO | Office of Enforcement and Removal Operations |
| FRS | Family Residential Standards |
| FY | Fiscal Year |
| ICE | U.S. Immigration and Customs Enforcement |
| IGA | Intergovernmental Agreement |
| IGSA | Intergovernmental Service Agreement |
| NDS | National Detention Standards |
| OPR | Office of Professional Responsibility |
| PBNDS | Performance Based National Detention Standards |
| PREA | Prison Rape Elimination Act |
| PSA | Prevention of Sexual Assault |
| SAAPI | Sexual Abuse and Assault Prevention and Intervention |
| SPC | Service Processing Center |
| USMS | U.S. Marshals Service |