IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 1:14-cv-02887-JLK-MEH

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA,
*on their own and on behalf of all others similarly situated*,

      Plaintiffs,

v.

THE GEO GROUP, INC.,

      Defendant.

---

**DEFENDANT THE GEO GROUP, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR JURY VIEW**

---

Defendant The GEO Group, Inc. ("<u>Defendant</u>" or "<u>GEO</u>"), by and through its undersigned

counsel, hereby submits its Response in Opposition to Plaintiffs' Motion for Jury View (ECF No.

301) ("Motion") and respectfully requests that this Court deny Plaintiffs' Motion for Jury View.

## I.    INTRODUCTION

Plaintiffs' Motion is premature. Multiple motions that could dispose of the case, or at a

minimum reduce the number of issues for trial, remain outstanding including a motion to decertify

the class, a motion to dismiss the case, and three motions for summary judgment. *See* ECF Nos.

54391423;1

312, 307, 305, 284, 260. Because these motions are unresolved, consistent with this Court's Practice Standard V.A.1, no pretrial conference has been set. As is to be anticipated at this stage in the litigation, the parties have not discussed jury instructions, witness lists, or exhibits. Thus, it is impossible to meaningfully discuss how a jury view would be helpful for the presentation of either side's case to the jury, how to avoid undue prejudice, and whether such evidence would be cumulative. Indeed, jury views are "highly unusual" and "rarely appropriate" and therefore a determination on such an issue should not be made without careful consideration of the other evidence that would be available at trial that could obviate the need for a jury view. *United States v. Santiago*, 203 F. Supp. 3d 1135, 1137 (D. Colo. 2016). It is impractical to resolve these issues without first having a better sense of the issues and framework of trial, not to mention how to account for the coronavirus pandemic. [1] Even if this Court finds Plaintiffs' motion is not premature, Plaintiffs have failed to meet their burden to establish that there are not other sources of evidence available that would outweigh the logistical hurdles to a jury view. As it currently stands, the jury view requested by Plaintiffs would be cumulative and would not help the jury resolve any key issues. Accordingly, GEO respectfully requests that this Court deny Plaintiffs' Motion.

## II.    LAW

Jury views are "highly unusual" and "rarely appropriate." *Santiago*, 203 F. Supp. 3d at 1137. Thus, in considering whether to grant a jury view, the Court is guided by "a number of considerations, including but not limited to: the availability of other sources of documentary evidence and/or witness testimony[;]" "whether conditions at the site have changed since the time

---

[1] At a minimum, this Court should reserve ruling on this issue until after the Pretrial Conference when the issues for trial have been crystallized.

54391423;1

of the incident[;]" and "any logistical difficulties that may be associated with coordinating and executing an out-of-court excursion." *Id.* "A court generally acts within that discretion in denying a motion for a view when there is sufficient evidence describing the scene in the form of testimony, diagrams, or photographs." *United States v. Crochiere*, 129 F.3d 233, 236 (1st Cir. 1997). The requesting party "bears the burden of demonstrating the need for a jury view." *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 778-79 (E.D. Tex. 2000).

### III.     ANALYSIS

#### a.  The Motion is Premature Because the Issues for Trial are Unknown.

Plaintiffs' Motion seeks to bring the jury to the Aurora ICE Processing Center ("AIPC") in order to show the jury an empty women's dorm, men's dorm, and the segregation unit. Plaintiffs vaguely state that viewing the housing unit will better help the jury understand their claims under the Trafficking Victims Protection Act ("TVPA"). ECF 301 at 2. Currently, Plaintiffs' TVPA claim is the subject of four pending dispositive motions and a motion to decertify. *See* ECF Nos. 312, 307, 305, 284, 260. If any of those motions narrow or resolve Plaintiffs' TVPA claims, it could obviate the need for a jury view. Even if Plaintiffs' claims are not narrowed or resolved by the pending motions, because the trial plan remains unsettled, Plaintiffs have not met their burden to establish why a jury view would be necessary or helpful to the jury in proving their TVPA claim. Indeed, touring vacant areas of the facility, rather than looking at extensive photographs and facility layouts, would not provide any additional probative information about why detainees may have worked or GEO's intent (or lack thereof) in enforcing and implementing the policies at the facility.

54391423;1

The Court must balance the probative value of a jury view against the potential for undue prejudice, confusion, waste of time, and/or needless presentation of cumulative evidence. At this stage, determinations about the relevance of the information and the alternative sources of evidence that may be presented to the jury are nebulous: the witness lists and exhibits have not been exchanged among the parties, trial has not been set, and pretrial motions have not been filed or resolved. Importantly, it is unresolved what evidence Plaintiffs will rely upon at trial to prove their case. Will they present evidence of the named Plaintiffs' experiences and attempt to extrapolate those to the entire class? Or, will they present evidence of a single classwide policy, as they represented at the class certification stage? If they are presenting evidence of a classwide policy, in this case the AIPC Handbook, a jury view would not be necessary as the case will turn on whether the representations in the policy were themselves threatening. Indeed, there are no allegations that detainees had seen (or knew of) the layout and schematics of the segregation unit when they reviewed the policy. Additionally, if Plaintiffs' TVPA claim is resolved by the pending motions, the issue would be moot.

If Plaintiffs' TVPA claim is not dismissed, narrowed, or moot and a jury view is appropriate, GEO may seek to have the jury view include additional portions of the Facility or have the jury experience the meal clean-up of which Plaintiffs complain—rather than showing only the areas unilaterally chosen by Plaintiffs. Additional areas of the AIPC may be probative of GEO's defenses, depending upon the witnesses available at trial and the exhibits the parties will be able to introduce (following any motions in limine). Indeed, depending upon the status of COVID-19 at the time this case is set for trial, the witness list could shrink or a number of witnesses may be remote, both of which could impact whether a jury view is appropriate. At this time,

54391423;1

however, the key details remain unknown. It is not possible for GEO to address specifics without

first understanding what other evidence will be presented at trial. Thus, resolution of this issue

should, at a minimum, be delayed until the parties have a better sense of what trial will look like.

### b. A Jury View Would Not Assist the Jury.

In order to determine whether Plaintiffs' request involves relevant information or merely

an attempt to prejudice the jury by taking them to a detention facility where there are currently

ongoing protests,[2] it is necessary to consider the relevance of the jury view and the potential

alternatives to the proposed jury view. *Santiago*, 203 F. Supp. 3d at 1137.

As an initial matter, because Plaintiffs seek a jury view for their TVPA claims, viewing the

current facility would not assist the jury. Plaintiffs' claims span the timeframe between 2004 and

2014. From 2004 to 2010, detainees were housed in a different building. Thereafter, in July 2010,

all operations were moved to a new building. Ex. 2 (Ceja 30(b)(6) Dep. at 27).[3] In showing the

jury only the building used between 2010 and 2014, the jury will be misled into believing that the

building was the same for the entirety of the class period, when really, the layout was significantly

different for the majority of the class period (between 2004 and 2010). Between 2004 and 2010,

all detainees were housed in dorm style units, with no cells. Ex. 2 (Ceja 30(b)(6)Dep. at 27-28)

(describing the layout of the old building). When detainees were moved to the new building, they

---

[2] Protestors have been camped outside of GEO's Aurora facility for three months. Those protestors have large signs that would be prejudicial to a jury. See ICE Protests Aurora, 303 Magazine, *available at* https://303magazine.com/2020/08/ice-protests-aurora-colorado/ (last visited August 26, 2020). GEO has no way of predicting whether these protests will continue through the time of trial.

[3] Per this Court's recent order, ECF 320, the Declaration of Adrienne Scheffey is attached hereto as Exhibit 1. All documents referenced in the Declaration are filed as their own exhibits to the instant motion and referred to throughout by their exhibit numbers. An index of these exhibits is included with this filing.

54391423;1

were housed in both dorm-style units and pod-style units with cells. *Id.* Thus, a jury view of a facility that was in use for less than half of the class period would not assist the jury.

Furthermore, in their Motion, Plaintiffs argue: "It is one thing to hear a description of solitary confinement, or even expert testimony about its effects; it is another to actually see a solitary confinement cell and imagine what it would be like to be confined inside it or to be threatened with such a sanction." ECF 301 at 9. It is hard to square this statement with Plaintiffs' current theory of the case: that Plaintiffs could have felt threatened by the mere mention of segregation as a possible sanction for failing to clean, despite having no knowledge of the actual conditions of segregation. ECF 260 ("GEO compelled detainees at the Aurora Facility to perform necessary janitorial work without pay by threatening anyone who tried to refuse with solitary confinement.") (emphasis added). Indeed, none of the Plaintiffs were ever sent to segregation for refusing to clean. ECF 305 at 13. Those Plaintiffs that did go segregation did so for other reasons. Thus, there is no reason to believe that Plaintiffs' knowledge of the layout and schematics of the segregation unit—if they even had such knowledge— were in any way relevant to their perceptions of the alleged threats. A jury view would serve only to overemphasize information that the Plaintiffs themselves did not have at the time they allegedly perceived the AIPC Handbook as a threat. Such a use of a jury view would be improper.

Plaintiffs also argue that the jury will be able to draw an inference about causation by "viewing the size of the housing unit" and what the meal clean-up entailed. But Plaintiffs do not seek to make the jury view informative or have the jury view a meal clean-up. Instead, they seek to show the jury an empty dorm, without any detainees, to emphasize size of the room, rather than the actual details about what the clean-up entailed. Because the dorm would be empty, it would

6

not be as it appeared during the actual meal clean-up. The jury will not be able to see the average

number of detainees in the room, nor will they see how detainees maintain their personal area.

Thus, an empty dorm would not be helpful to the jury. What *could* be helpful to the jury would be

observing the meal clean-up to see what actually occurred. Or, how the detainees experience living

in such a dorm, how they interact with one another, and the general experiences in the dorm. But

these details have not yet been worked out with ICE. Rather, Plaintiffs determined unilaterally to

file this Motion seeking a jury view without allowing GEO sufficient time to consider its trial plan

and information that may assist the jury in its factfinding. Thus, as currently proposed, Plaintiffs'

request for a jury view should be denied.

### c.   The Jury View As Proposed Would Likely Be Cumulative.

Based upon the evidence available in this case, it is likely that a jury view would be

cumulative. The parties already went to extensive lengths to conduct a site visit wherein Plaintiffs

were permitted to take 177 photographs of the AIPC, in addition to the stock photographs provided

by ICE. Ex. 3 (March 27, 2020 Letter from ICE); *see also United States v. Bernal*, 533 F. App'x

795, 796 (9th Cir. 2013) (holding that a jury view would have been cumulative where the trial

evidence included "over one hundred photographs and exhibits related to the rock face at the Red

Elk Rock Shelter, and testimony of witnesses who described the site and the damage caused to the

site."). GEO has also disclosed architectural drawings depicting the layout of the Facility.  Further,

the nine named Plaintiffs can easily describe their living conditions with the aid of the photographs.

Similarly, those Plaintiffs who went to segregation for reasons other than refusing to clean will be

able to testify about their experience. Finally, there are no fewer than four GEO officers who have

54391423;1

been deposed in this case that can provide a firsthand description of the segregation unit. Thus, a jury view would be cumulative.

In support of their contention that schematics and photographs are insufficient to allow the jury to decide the issues before them, Plaintiffs state (in a footnote) that Dr. Grassian was unable to support his position that the AIPC was "tighter than in prisons" without viewing the Facility in person. ECF 301, 10 at n.4. Yet, this is not a full description of Dr. Grassian's testimony. In reviewing the entire testimony, Dr. Grassian expressed an opinion that the Facility was more cramped than in prisons, but had not made any effort to support his statement. ECF 304-1, (Grassian Dep. at 296-97). He had not compared the square footage (which was available to him) to that of a prison or otherwise made any objective comparison. ECF 304-1, (Grassian Dep. at 298). Nor had he presented with his report any schematic of a prison. Indeed, such a comparison was unwarranted given that the AIPC itself also houses individuals who are detained by the U.S. Marshals unrelated to ICE's enforcement authority. Plaintiffs have similarly not disclosed any prison schematics to which the Facility could be compared. Thus, Dr. Grassian's testimony does not provide a compelling basis for a jury view.

### d.  The Logistics Required Must Be Weighed Against the Relevance.

"A trial judge would understandably be reluctant to halt a trial and cause the jurors to be transported to the jail for a view. The security problems are not small and the risk of comment by the prisoners is not insubstantial." *Stokes v. Delcambre*, 710 F.2d 1120, 1129 (5th Cir. 1983). In addition to the other considerations noted above, in considering Plaintiffs' Motion, this Court should also take into account the logistics involved in permitting such a view. First, ICE has represented that individuals must pass a background check prior to entering the Facility. This raises

8

the question of whether individuals who likely cannot pass that background check will be screened

from the jury pool in advance. Additionally, the jurors will need to be transported to the Facility

from the courthouse—presumably at Plaintiffs' expense, along with the Court, its staff, any

appropriate witnesses who may be asked to provide testimony about the jury view, the parties, and

counsel. This trip could easily take at least a half of a day, if not more. Depending on the length of

trial, such a dalliance may not be appropriate. In a week-long trial, a half-day trip would not be

warranted, whereas such a time-consuming endeavor may make more sense in a three-week trial.

Moreover, if a jury view is granted, GEO's staff at the Facility will be required to adjust their daily

routines within the Facility to ensure the jury can be safely escorted between dorms, requiring

them to take time away from their normal duties. Further, the Parties will be required to coordinate

with ICE to ensure the background checks are granted and access to the Facility is permitted. As

ICE is not a party to this action, additional coordination will be required to ensure any approval is

timely. Thus, the logistics weigh against a jury view.

### e.   The Date Of Trial is Unknown, As is The Trajectory of COVID-19.

Finally, the trial date is unknown. As of the date of this filing, any jury trial scheduled to

commence between now and October 2, 2020 has been continued. General Order 2020-14. The

COVID-19 pandemic is ongoing and ICE has suspended all social visitation at its facilities,

including the AIPC.[4] Surely, if detainees' social visitation is not permitted, a jury visit would

likewise pose concerns about the safety of the detainees in the midst of a pandemic. Further,

Plaintiffs have not provided a solution for jurors who are uncomfortable visiting the AIPC during

---

[4] Ex. 3 (March 27, 2020 Letter from ICE); *see also* ICE Guidance on COVID-19, *available at* https://www.ice.gov/coronavirus (last visited August 25, 2020).

54391423;1

the pandemic (if it is ongoing). Will jurors be permitted to opt-out of the visit? Will they be instructed at the beginning before serving on the jury? Will jurors be required to be tested before entering the facility? Given the current state of the pandemic, these are unknowns that cannot be resolved without a better understanding of when trial will be set and the status of the ongoing pandemic. At the present moment, given the tangential relevance to the jury, a jury view does not seem warranted when weighed against the substantial risk of exposing detainees to a large group of individuals from outside of the facility.

## IV.    CONFERRAL

Plaintiffs submitted the declaration of Michael Scimone with their motion for a jury view indicating that they had satisfied their conferral obligations under the Local Rules. ECF 302. In his declaration, Mr. Scimone suggests that he met his conferral obligations regarding the instant motion for a jury view by insinuating that there was unreasonable delay on GEO's counsel's behalf in responding to his conferral request. *Id.* The declaration suggests that GEO had sufficient time to digest the information provided by ICE and form a position regarding the same. *Id.* To the contrary, on Friday July 17, 2020, ICE indicated to the Parties that it would provide specific information about the background screening procedures it would require as soon as it received those procedures from ERO. Ex. 1, ¶ 6; Ex. 4. Without awaiting a reply, on a Friday, July 31, 2020, Plaintiff asked for GEO's position on Plaintiffs' motion for a jury view and simultaneously followed up with ICE about the background check requirements for jury members visiting the facility. *Id.* The following Monday, the undersigned replied to Mr. Scimone that it was conferring with its client and would get back to him in the near future. *Id.* Thereafter, the undersigned was tied-up with matters in this case and others. *Id.* On the morning of Friday, August 7, 2020, ICE

provided additional background requirements for jury members who may visit the facility. *Id.*

Before GEO's counsel could digest the additional information and respond to Plaintiffs' counsel,

Plaintiffs filed the instant motion at 3:43 p.m. on August 7, 2020. GEO had less than a full work

day between when it received the additional information from ICE and when Plaintiffs filed their

motion. Thus, this Court should not consider Plaintiffs' conferral requirements to have been met.

## V.    CONCLUSION

For the foregoing reasons, GEO respectfully requests that the Court deny Plaintiffs' Motion

for Jury View.

Respectfully submitted, this 28th day of August, 2020.

**AKERMAN LLP**

*s/ Adrienne Scheffey*

Colin L. Barnacle
Adrienne Scheffey
Christopher J. Eby
Melissa L. Cizmorris
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:(303) 260-7712
Facsimile: (303) 260-7714
Email: colin.barnacle@akerman.com
Email: christopher.eby@akerman.com
Email: melissa.cizmorris@akerman.com
Email: adrienne.scheffey@akerman.com

**BURNS, FIGA & WILL, P.C.**
Dana L. Eismeier
Michael Y. Ley
6400 S. Fiddlers Green Circle, Suite 1000
Greenwood Village, CO 80111
Phone: (303) 796-2626
Fax: (303) 796-2777
Email: deismeier@bfwlaw.com
Email: mley@bfwlaw.com
*Attorneys for Defendant The GEO Group, Inc.*

11

54391423;1

## CERTIFICATE OF SERVICE

I hereby certify on this 28th day of August, 2020, a true and correct copy of the foregoing **DEFENDANT THE GEO GROUP, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR JURY VIEW** was filed and served electronically via the Court's CM/ECF system on the following:

### Counsel for Plaintiffs:

Alexander N. Hood
David H. Seligman
Juno E. Turner
Andrew Schmidt
TOWARDS JUSTICE
1410 High St., Ste. 300
Denver, CO 80218
alex@towardsjustice.org
david@towardsjustice.org
juno@towardsjustice.org
andy@towardsjustice.org

Andrew H. Turner
Matthew Fritz-Mauer
KELMAN BUESCHER FIRM
600 Grant St., Ste. 825
Denver, CO 80203
aturner@laborlawdenver.com
mfritzmauer@laborlawdenver.com

Hans C. Meyer
MEYER LAW OFFICE, P.C.
P.O. Box 40394
Denver, CO 80204
hans@themeyerlawoffice.com

P. David Lopez
OUTTEN & GOLDEN, LLP
601 Massachusetts Ave. NW
2nd Floor West Suite
Washington, DC 20001
pdl@outtengolden.com

Adam L. Koshkin
Rachel W. Dempsey
OUTTEN & GOLDEN, LLP
One California St., 12th Fl.
San Francisco, CA 94111
akoshkin@outtengolden.com
rdempsey@outtengolden.com

Michael J. Scimone
Ossai Miazad
OUTTEN & GOLDEN, LLP
685 Third St., 25th Fl.
New York, NY 10017
mscimone@outtengolden.com
om@outtengolden.com

R. Andrew Free
LAW OFFICE OF R. ANDREW FREE
P.O. Box 90568
Nashville, TN 37209
andrew@immigrantcivilrights.com

Brandt P. Milstein
MILSTEIN LAW OFFICE
1123 Spruce St.
Boulder, CO 80302
brandt@milsteinlawoffice.com

_s/ Nick Mangels_
Nick Mangels

54391423;1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 1:14-cv-02887-JLK-MEH

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA,
*on their own and on behalf of all others similarly situated*,

      Plaintiffs,

v.

THE GEO GROUP, INC.,

      Defendant.

**INDEX OF EXHIBITS TO DEFENDANT THE GEO GROUP, INC.'S RESPONSE IN
OPPOSITION TO PLAINTIFFS' MOTION FOR JURY VIEW**

| Exhibit | Description |
|---|---|
| **1.** | Declaration of Adrienne Scheffey dated August 28, 2020. |
| **2.** | Attachment A to Declaration of Adrienne Scheffey – Excerpts of Dawn Ceja's Deposition Transcript dated August 5, 2020 |
| **3.** | Attachment B to Declaration of Adrienne Scheffey – Letter from ICE to Parties dated March 27, 2020 |
| **4.** | Attachment C to Declaration of Adrienne Scheffey – E-mails between Anne Rose and Parties regarding a Jury View |

13

54391423;1