# EXHIBIT 3
# (Attachment B to Declaration of Adrienne Scheffey)

*Office of the Principal Legal Advisor*
**U.S. Department of Homeland Security**
500 12th Street, SW; MS 5900
Washington, DC 20024



March 27, 2020

Michael J. Scimone
685 Third Avenue, 25th Floor
New York, NY 10017
mscimone@cuttengolden.com

Re: *Menocal v. The GEO Group*, No. 14-cv-2887-JLK (D. Colo.)

Dear Mr. Scimone,

      A copy of your subpoenas dated March 4, 2020 to the U.S. Immigration and Customs Enforcement (ICE) has been forwarded to my attention. One subpoena requests testimony pursuant to Rule 45 of the Federal Rules of Civil Procedure and the Local Rules of the District of Colorado for use in the above federal proceeding, to which the United States is not a party. The deposition was noticed for April 7, 2020 at 10:00 a.m. in Washington D.C. For the reasons that follow, your request for the testimony of an ICE official is denied pursuant to the Department of Homeland Security's (DHS) *Touhy* regulations. *See* 6 C.F.R. §§ 5.41-5.49; *see also generally United States ex. rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Accordingly, ICE does not intend to produce the requested witness in response to the subpoena. In addition, even were the request for testimony not denied, ICE nonetheless objects to the requested testimony pursuant to Federal Rule of Civil Procedure 45(d)(2)(B).

      The second subpoena requests to enter, inspect, photograph and videotape the Aurora Contract Detention Facility, located at 3130 Oakland Street, Aurora, Colorado, pursuant to Rule 45 of the Federal Rules of Civil Procedure and the Local Rules of the District of Colorado for use in the above federal proceeding, to which the United States is not a party. For the reasons that follow, your request for inspection is also denied pursuant to the DHS *Touhy* regulations. *See* 6 C.F.R. §§ 5.41-5.49. Accordingly, ICE does not intend to permit a subsequent inspection of the facility. In addition, even if the request for inspection were not denied, ICE nonetheless objects to the requested inspection pursuant to Federal Rule of Civil Procedure 45(d)(2)(B).

      The parties made an agreement in January 2020 regarding how to proceed with respect to Plaintiffs' inspection of the Aurora Contract Detention Facility. ICE had expected to receive from Plaintiffs a proposal if they sought an additional inspection. Plaintiffs issued a subpoena. Therefore, in order to preserve all of its rights, ICE is providing this formal response. Nevertheless, this letter should be seen as ICE's initial position and the agency welcomes further discussions regarding the inspection issue.

      ICE also notes that GEO may also object to an inspection of the Aurora Contract Detention Facility. This response is not made on behalf of GEO and is not intended to affect any rights GEO may have with respect to an inspection.

## Touhy

As noted above, there are published procedural prerequisites for obtaining information, whether oral or written, from the Department of Homeland Security (DHS) of which ICE is a component. DHS has promulgated regulations that govern the release of testimony by DHS employees or documents in a legal proceeding where the United States is not a party. These regulations are commonly referred to as *Touhy* regulations and can be found at 6 C.F.R. §§ 5.41-5.49. *See Touhy*, 340 U.S. 462. Compliance with the *Touhy* regulations is an absolute condition precedent to obtaining testimony or other information from a DHS employee, as well as documents. *See U.S. v. Soriano-Jarquin*, 492 F.3d 495 (4th Cir. 2007); *Ho v. U.S.,* 374 F.Supp.2d 82 (D.D.C. 2005); *Boeh v. Gates*, *et. al*., 25 F.3d 761 (9th Cir. 1994); *Saunders v. Great Western Sugar Co.*, 396 F.2d 794 (10th Cir. 1968); *United States Steel Corp. v. Mattingly*, 663 F.2d 68 (10th Cir. 1980*).*

Section 5.43 of the DHS *Touhy* regulations requires that service of subpoenas, court orders, and other demands or requests for official information be served on the DHS Office of the General Counsel (OGC). DHS OGC has delegated the ability to receive service of and respond to such requests to its components. In the event that the request for ICE information is delivered directly to an employee, the employee is to immediately forward a copy of that document to DHS OGC or its designee, ICE Office of the Principal Legal Advisor (OPLA).

Further, DHS regulations bar all DHS employees, including former employees, from *inter alia* providing responses to questions by attorneys in situations involving litigation regarding any material contained in the files of the Department, any information relating to material contained in the files of the Department, or any information acquired while the subject of the request for information is or was employed by DHS, unless authorized to do so by the DHS Office of General Counsel or its designees. *See* 6 C.F.R. § 5.44. Section 5.45 of the regulations also requires that the party seeking information must "set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought."

Upon receipt of a sufficiently detailed request, DHS or ICE will consider the following factors: (1) whether compliance would be unduly burdensome or otherwise inappropriate; (2) whether compliance is appropriate under the relevant substantive law concerning privilege or disclosure of information; (3) the public interest; (4) the need to conserve the time of DHS employees for the conduct of official business; (5) the need to avoid spending the time and money of the United States for private purposes; (6) the need to maintain impartiality between private litigants in cases where a substantial government interest is not implicated; (7) whether compliance would have an adverse effect on performance by the DHS of its mission and duties; and (8) the need to avoid involving the DHS in controversial issues not related to its mission. *See* 6 C.F.R. § 5.48(a).

In addition, ICE will not comply with a request when such compliance would violate a statute, regulation, Executive Order, or agency policy. Likewise, the ICE will not comply with a request when such compliance would reveal agency deliberations, or potentially impede or prejudice an on-going law enforcement investigation. *See* 6 C.F.R. § 5.48(b). Also, to the extent that your request calls for legal conclusions and/or expert or opinion testimony, this type of testimony and information is generally prohibited under 6 C.F.R. § 5.49.

ICE has reviewed your subpoenas and accompanying "*Touhy* Statements" and has determined that these requests do not currently meet the requirements of 6 C.F.R. § 5.45. The subpoenas do not adequately specify what information is being requested nor do they describe how the information sought is relevant to the present legal proceeding. For example, your request regarding testimony does not identify a specific ICE official. Moreover, the information sought in the subpoenas may be law-enforcement sensitive and/or subject to an Executive Privilege. Your requests as currently written are also overly broad and unduly burdensome as they request necessarily duplicative access to the Aurora Contract Detention Facility which the agency has already provided.

**Request for Testimony:**

Your subpoena for testimony requests ICE "produce any and all representatives of ICE or DHS that have been or will be identified to The GEO Group, Inc., as witnesses in *Alejandro Menocal, et. al. v. The GEO Group Inc.*".[1] At this time, ICE is not aware of any ICE officials who have been identified as witnesses in this case. Therefore, Plaintiffs' request for depositions of ICE officials is unnecessary to "test the claims and the evidence GEO has indicated it will present at trial." ICE also objects under Federal Rules of Civil Procedure Rule 45(d)(2)(B) because the subpoena is not directed to a specific person and also purports to require the appearance of a specific person through a Rule 30(b)(6) notice. ICE reserves the right to raise additional objections to the requested testimony if specific ICE officials are later identified.

**Request for a Second Inspection:**

Your subpoena requests a second tour of the Aurora Contract Detention Facility for the purpose of "inspecting, photographing and videotaping" the facility. ICE has already permitted a tour of the facility. Four attorneys representing the Plaintiffs were permitted to tour the facility on February 13, 2020, for several hours, accompanied by ICE officials. During this tour, an ICE photographer took 177 photos, at your colleagues' direction, of many locations within the facility. There were only two locations of which you colleagues requested photos that were not photographed: (1) the laundry room and (2) areas within an administrative segregation unit. ICE did not permit photos of those areas for security reasons. Your colleagues were also able to access the facility and take notes; they were not prohibited from accessing any areas to which they requested access.

ICE provided the photos taken during the tour, along with stock photos of the facility, within approximately two weeks after the tour. Your *Touhy* statement indicates you need a second tour to in order to obtain videography of the facility, but you do not explain how the photographs ICE has already provided to you fail to depict the information necessary for you to advance your claims. The photographs provided clearly depict detainee "bunks, restrooms, showers, dining areas, and common areas" including the "scale, layout and flow of these areas." There are several photographs of "the barbershop, where detainees cut hair…the areas throughout the interior of the facility where detainees performed maintenance, janitorial and cleaning work." The overwhelming majority of the request appears to duplicate the areas toured

---

[1] This response is solely on behalf of ICE, not DHS.

**3**

and photographed on February 13, 2020. ICE further notes that you are in possession of blueprints of the facility's layout.

You provided a follow-up response on March 25, 2020. You indicated the reason for the follow-up inspection was because the segregation unit and the laundry room were previously excluded and that "it's more difficult to get a sense of scale from a photograph as compared with video." You have been provided multiple photographs from different angles, with clearly identifiable items to serve as points of reference, such as doorways, table, chairs, bulletin boards, etc. and you have the blueprints to the facility. ICE concludes the totality of the information in your possession may adequately demonstrate "a sense of scale" compared to the burden of a second tour with videography.

Your *Touhy* statement indicates a videotaped inspection would "increase efficiency because it would eliminate the need for future inspections" but you do not explain why the previously negotiated tour and photographs failed to accomplish this, with the exception of two discrete locations with security concerns. ICE cannot foresee any need for future inspections. Especially since your request to inspect "all housing units…[and] all areas where detainees performed work…" involve the same locations you were previously permitted to tour and photograph. Thus, ICE denies your request for a subsequent tour to videotape the facility.

ICE highlights that the February 13th tour came at the conclusion of extensive negotiations over the terms of this tour. ICE has previously articulated the agency's objections and heighted security concerns regarding this facility, including denying your previous request for videography. Those objections remain valid and are re-incorporated here. *See* Letter from ICE Enforcement and Removal Operations Field Office Director Fabbricatore to Warden Choate (June 20, 2019).

Please note, due to COVID-19, social visitation has been suspended in all facilities. Facility inspections are subject to strict protocols to ensure the safety of detainees and employees. *See* www.ice.gov/covid19 . Currently, this would require personal protective equipment (PPE) (e.g., gloves, N-95 masks, and eye protection) for all participants and further limitations may be in place at the time of any scheduled inspection.

### Rule 45

Additionally, this letter serves as notice pursuant to Federal Rules of Civil Procedure Rule 45(d)(2)(B) that ICE is objecting to the requirements of the subpoena to permit a second inspection of the Aurora Contract Detention Facility with videography.

The subpoena, as currently written, contains requests that are overly broad and unduly burdensome in violation of Rules 26 and 45 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 26(c), 45(d)(1), (d)(3).  Your requests are also unduly burdensome under the applicable agency *Touhy* regulations.  *See* 6 C.F.R. § 5.48(a)(1).  Additionally, your requests seek an "overly broad" inspection and information for a civil dispute in which the Executive is not a party.  *See Cheney v. U.S. Dist. Court for Dist. Of Columbia*, 542 U.S. 367, 386 (2004).  As the Supreme Court has noted, "special considerations control" when discovery such as that involved in your subpoena is sought from the Executive. *Id.* at 385.  The "paramount necessity of protecting the Executive Branch from vexatious litigation that might distract from the energetic

4

performance of its constitutional duties," as well as the unique privileges that may be implicated in this context, require a subpoenaing party, at the very least, to meet "exacting standards" of relevancy, admissibility, and specificity." *Id.* At 382, 386-87.

Under Rule 45(d)(1) of the Federal Rules of Civil Procedure, a party issuing a subpoena must avoid imposing undue burden or expense on the respondent. As currently written; however, the subpoena in this matter violates that obligation. This subpoena is overly broad and unduly burdensome because the subpoena seeks a fundamentally identical request for inspection as was afforded on February 13, 2020. In addition, you have already been provided substantial photographic evidence that clearly demonstrates the layout, flow and scope of many areas of the facility. A second tour yielding essentially the same documentary evidence which is currently in your possession is overbroad and unduly burdensome on ICE, who is not a party to this litigation.

In addition, as ICE objects to the inspection to the extent it seeks information protected under the law-enforcement privilege. The limitations on the scope of the tour and on photo and video equipment is based on serious operational security and law enforcement concerns. These restrictions aim to limit risk of harm to persons including detainees, facility staff, and the public; limit risk to property, prevent the introduction of contraband, including drugs, weapons, and/or escape tools into the facility; and prevent detainee escapes from the facility. The segregation units and laundry rooms are locations with heighted security concerns due to their purpose and location in the facility relative to the external perimeter.

ICE reserves the right to assert further privileges should a more detailed request be provided.

### Conclusion and Counteroffer

As stated above, ICE denies your request for testimony and request for a subsequent inspection with videography. In an effort to prevent further expenditure of ICE resources in duplicative negotiation and litigation where the agency is not a party, ICE is willing to provide Plaintiffs with still photographs of the segregation unit and the laundry room. ICE will provide these photographs within ninety days of the parties' agreement. The photographs will be taken by an ICE photographer, at ICE's direction, provided in the same manner as previous photographs taken on the February 13th tour, and subject to the same confidentiality agreement.

I trust that this information clarifies ICE's position. I look forward to further discussing this matter with regard to your request for a second tour of the Aurora Contract Detention Facility. Thank you.

Sincerely,

Christa Lesh
Associate Legal Advisor
District Court Litigation Division
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement

5

cc:
Adrienne Scheffey
Colin Barnacle
Akerman LLP
1900 Sixteenth Street, Suite 1700
Denver, CO 80202

6