# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:14-cv-02887-JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

      Plaintiffs,

v.

THE GEO GROUP, INC.,

      Defendant.

_____

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR JURY VIEW
_____

Plaintiffs respectfully submit the following reply in support of their Motion for Jury View. ECF No. 301. For the reasons set forth in that motion and explained more fully below, Plaintiffs' Motion should be granted.

**I.  The Prompt Resolution of Plaintiffs' Motion Will Promote Efficiency in the Lead-Up to Trial.**

GEO's objection that Plaintiffs' Motion is premature should be disregarded. "When a jury view is desired, counsel should request it as early as possible." A

1

MANUAL ON JURY TRIAL PROCEDURES § 3.12.A.2 (4th ed. 2013).[1] This case has been pending for nearly six years, *see* ECF No. 1, and nearly all discovery closed last month, *see* ECF No. 293, contradicting GEO's position that it is too early to evaluate a jury view.

In fact, the only significant discovery remaining is discovery that involves ICE, which is a third party to this action. ECF No. 293. And, as relevant to this Motion, Plaintiffs have sought—and both ICE and GEO have opposed—leave to take video recordings of the areas at issue. ECF No. 301 at 6, n. 1. Although Magistrate Judge Hegarty already found in Plaintiffs' favor on this issue, ICE promised to appeal the ruling, and pursuant to Judge Hegarty's suggestion, Plaintiffs have worked to find an alternate solution that ICE does not oppose. *Id.* The requested jury view is just such a solution. Resolving this motion now will thus promote efficient case management because it will leave time to evaluate and work toward other alternatives in the event that the motion is denied.

GEO's objection that it cannot assess Plaintiffs' Motion for lack of sufficient detail concerning Plaintiffs' trial plan is without merit. Plaintiffs provided a detailed four-page overview of their trial plan in response to GEO's Interrogatory # 51 seeking the same. *See* Ex. A[2] at 10-14. GEO has raised no deficiency concerning that interrogatory response. *See* Turner Decl. ¶ 5. GEO's argument that there is no need to evaluate what

---

[1]   The Manual on Jury Procedures is available at https://www.ca9.uscourts.gov/district/guides/MJTP.pdf.

[2]   Unless otherwise noted, all exhibits referenced herein are attached to the Declaration of Andrew H. Turner in Support of Plaintiff's Motion for Jury View ("Turner Decl.").

evidence will be presented to the Jury until *after* the pretrial conference misconstrues the very purpose of discovery, which is to define the universe of evidence from which the parties then build their case for trial.  *See, e.g., Dienstag v. Bronsen*, 49 F.R.D. 327, 328–29 (S.D.N.Y. 1970) (noting that the purpose of civil discovery "is to make possible fair and expeditious preparation of cases, minimizing to the extent possible trial time spent in wasteful sparring unrelated to the merits of the case").  A decision on the jury view motion will facilitate this process.

## II.     The Proposed Jury View Would Materially Assist the Jury.

The reason Plaintiffs request a jury view with respect to the Trafficking Victims' Protection Act claims is simple: the Jury will be tasked, in part, with assessing whether a reasonable detainee would respond to threats of solitary confinement by performing the labor GEO required under the Housing Unit Sanitation Policy.  *See* 18 U.S.C. § 1589(a); *United States v. Kalu*, 791 F.3d 1194, 1211 (10th Cir. 2015) (upholding a jury instruction defining serious harm as "any harm . . . that is sufficiently serious, under all the surrounding circumstances, to cause a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm" (internal emphasis omitted)).  Viewing the condition of the threatened solitary confinement unit is key to that determination.

GEO's arguments to the contrary are rife with internal contradictions.  On the one hand, GEO suggests that it, too, would like to "have the jury experience . . . meal clean-

3

up," and that a jury view would be "probative of GEO's defenses." ECF No. 323 at 4.[3] Then, a page later, GEO argues that any jury view would be unnecessary, cumulative, and not relevant. ECF No. 323 at 5-7. GEO also argues simultaneously that Plaintiffs "will be able to testify about their experience" in segregation, thus rendering a jury view cumulative, *see* ECF No. 323 at 7; *and* that Plaintiffs have "no knowledge of the actual conditions of segregation, *see id*. at 6. Setting aside that these things cannot simultaneously be true, GEO's argument misses the point. Several Plaintiffs had solitary confinement described to them by guards or other detainees. *See, e.g.*, Ex. B (Deposition of Grisel Xahuentitla) at 160:17-20 (reporting that a guard told her, "I will send you to the hole. It's not going to be pleasant. You're going to be there by yourself. You're not going to take a shower at least for three days."); Ex. C (Deposition of Jesus Yepez Gaytan) at 76:15-78:15 (stating that he heard about solitary confinement from a detainee placed there for refusing to clean). Other Plaintiffs experienced solitary confinement themselves. *See, e.g.*, Ex. D (Deposition of Demetrio Valerga) at 11:1-12:4 (describing segregation as "one person, one bed, one desk . . . one toilet," and noting that in disciplinary segregation "they take your canteen, they take your radio, and you have limited access to go out to the yard"); Ex. E (Deposition of Alejandro Hernandez Torres) at 141:20-142:11 (describing segregation as a room with "a bed . . . made of steel," and a

---

[3] GEO acknowledges that ICE has not consented to the more expansive and operationally intrusive jury view GEO might prefer. ECF No. 323 at 7. GEO has made no motion for such a jury view and no such request is before the Court. By contrast, Plaintiffs' request for a limited jury view of unoccupied areas is before the Court and is unopposed by ICE.

"door . . . made of steel [with] glass for about half a meter and with 3 or 4 inches where all the guards have a bell.  So every 15 or 20 minutes, they will drag this device through the door until it rings.  There's no way you can go to sleep because the light is always on.  That's segregation.").  To the extent GEO is concerned that the Jury will have trouble recognizing the difference between firsthand experience and secondhand description,[4] the trial can be structured to present both, for example by hearing testimony about what detainees heard about solitary confinement prior to the jury visit.[5]  And jury instructions can allow jurors to be "informed in context about what they are to look for in the testimony, and about credibility and burdens of proof," thus mitigating any potential confusion.  *See* John L. Kane, "Riding Jury Instructions to Victory," 36 Litigation 28, 32 (Winter 2010).  Such distinctions are well within the ability of juries to recognize and apply.

Moreover, GEO itself has put the nature of solitary confinement at issue, relying in its motion for summary judgment on Warden Dawn Ceja's testimony that some detainees "elected to be placed in segregation voluntarily, seeing it not as a punishment, but instead a location where they could receive peace and quiet."  ECF No. 305 at 13.  Indeed, GEO's attempt in the opposition to this motion to pick apart and undermine

---

[4]  A secondhand description related to a witness by another detainee, of course, would be hearsay if presented for the accuracy of the description itself, although not if presented to show the impact of the description on the listener.  *See* Fed. R. Evid. 801.  Thus, as an evidentiary matter, the jury view would provide clearly admissible evidence of a matter that the secondhand description would not.

[5]  Resolving this motion in advance of the pretrial conference will best position the parties to evaluate and address such sequencing issues.

Plaintiffs' expert Dr. Stuart Grassian's impressions of the conditions of confinement, *see* ECF No. 323 at 8, highlights precisely why a firsthand viewing is required: GEO can and likely will argue that still photographs are distorted or out of context and that testimony is misleading or misinformed. Letting the Jury see solitary confinement itself, rather than relying exclusively on conflicting witness testimony, is relevant to such factual disputes. GEO's position that witness testimony is sufficient is further undermined by the conflicting position taken in its decertification motion, where GEO argues that Plaintiffs should be estopped from presenting evidence of individual class member experience, and instead limited only to "classwide" evidence. *See, e.g.*, ECF No. 312 at 45 n.1.

    GEO's objection that the housing and solitary confinement units Plaintiffs propose viewing have only been in use since July 2010 also falls flat. *See* ECF No. 323 at 6. Plaintiffs' TVPA claims run from October of 2004 through October of 2014, while their unjust enrichment claims run from October of 2011 through October of 2014. Therefore, the new housing units have been in use for the full unjust enrichment class period, and 40% of the TVPA class period. An appropriate jury instruction could remedy any confusion as to time period. Fed R. Evid. 105 ("If the court admits evidence that is admissible against a party or for a purpose but not against another party or for another purpose – the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.") Moreover, GEO has not identified any material ways in which the facility used from 2004 to 2010 differs from the current facility; rather, its motion concedes that while the old facility contained large common rooms filled with

6

bunk beds,[6] the new facility contains such rooms *as well as* cells.  And even if the new building and the old building *are* materially different, GEO fails to mention that the old building is once again in use for housing immigration detainees, and therefore could also be included on a site visit.[7]  Therefore, the proposed jury view would assist the Jury and should be ordered.

### III.   Logistical And Operational Challenges Do Not Preclude a Jury View.

GEO also argues that logistical and operational considerations require the denial or deferral of Plaintiffs' Motion.  ECF No. 323 pg. 8-10.  Notably, however, these concerns are not shared by ICE, the neutral, non-party governmental agency tasked with assuring safe and effective operation of the Aurora facility, which does not oppose this motion.  ECF No. 301 at 5.  GEO has previously taken the position that only ICE, not GEO, has the authority to grant Plaintiffs access to the GEO facility, making its newfound independence unpersuasive.  *See, e.g.*, ECF No. 187 at 2 (stating that "GEO does not have authority" to grant permission for photos or videos of the facility because such authority is contractually vested in ICE).

GEO's argument that ICE's requirement of a background check "raises the question of whether individuals who likely cannot pass that background check will be

---

[6]  The fact that GEO characterizes such housing as "dorm-style," ECF No. 323 at 5, implicitly inviting comparison with housing provided to college undergraduates, again illustrates how the Jury would be better informed by a live viewing.

[7]  *See* Conor McCormick-Cavanagh, "ICE, GEO Group Extend Contract for Annex at Aurora Immigration Detention Center," *Westword*, https://www.westword.com/news/ice-geo-group-extend-contract-for-annex-at-aurora-immigration-detention-center-11307303 (April 16, 2019) (reporting that the old facility reopened as an annex in 2019).

screened from the jury pool in advance" ECF No. 323 pgs. 8-9, overlooks that the requirements for federal jury service and for ICE security clearance are largely coextensive. As relevant here, the Jury Selection and Service Act disqualifies from service an individual who "has a charge pending against him for the commission of, or has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year and his civil rights have not been restored." 28 U.S.C. § 1865(b). By email dated August 7, 2020, a lawyer from ICE explained that the agency's background check "typically" screens out people with felony convictions, arrests, or charges at any time, and certain misdemeanor convictions within the last five years. *See,* Turner Decl. ¶¶ 11-14. The only areas where ICE's screen may be more restrictive are (1) felony arrests or charges that have been resolved; (2) felony convictions with civil rights restored; and (3) some misdemeanor convictions. *Id*. But ICE's criminal background screen is not a hard-and-fast rule. ICE has granted waivers in the past to accommodate the visits of individuals who are not visiting pursuant to Court Order. *See* Ex. F, Declaration of Martin M. Rosenbluth at ¶¶ 3-7.[8] Given counsel's representation that any jury tour would be comprehensively supervised by GEO personnel (ECF No. 323 at 9)—as was Class Counsel's February 13, 2020 entry and inspection of property— such a waiver should be appropriate, in the event it were necessary.

---

[8]   ICE also requires visitors to present a government-issued ID and may in some cases exclude foreign nationals, *see* Turner Decl. ¶ 13, but identification is also required to enter the courthouse, *see* D.C. Colo L. Civ. R. 83.2(b), and only U.S. citizens may serve on juries, *see* 28 U.S.C. § 1865(b)(1).

Finally, GEO's concerns about the current COVID-19 pandemic are similarly coextensive with limitations on jury trials. First, Plaintiffs propose—and ICE consents to—a jury tour of unoccupied areas of the facility. It is *GEO* that insists a jury view must tour populated areas, observing meals, clean up and, "how the detainees experience living in such a dorm, how they interact with one another, and the general experiences in the dorm." ECF No. 323 at 7. Furthermore, like the Aurora facility and workplaces all over America, the Court is itself currently running at limited capacity as a result of COVID-19, and is not scheduling jury trials before October 2, 2020 due to safety concerns.[9] Conducting a safe jury trial is a problem that must be solved before a site visit could be permitted in any event, and will most likely be solved for civil trials when the medical community develops effective countermeasures to COVID-19. The present state of affairs is a poor argument for circumscribing the presentation of evidence based on hypothetical future concerns about an evolving situation.

## IV.  Conclusion

For the foregoing reasons, and for the reason set forth in their initial brief, Plaintiffs' Motion for Jury View should be granted.

Dated: Denver, CO
      September 11, 2020

Respectfully submitted,

By: */s/ Andrew H. Turner*
Andrew H. Turner
Atty. Reg. # 43869
Matthew Fritz-Mauer

---

[9] This date has been extended several times. *See, e.g.*, D.C. Colo. General Order 2020-10 (continuing all jury trials through July 31, 2020)

Atty. Reg. # 54334
**THE KELMAN BUESCHER FIRM**
600 Grant St., Suite 825
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com
mfritzmauer@laborlawdenver.com

Michael J. Scimone
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-Mail: mscimone@outtengolden.com

Rachel Dempsey
Adam Koshkin
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: rdempsey@outtengolden.com
E-Mail: akoshkin@outtengolden.com

Alexander Hood
David Seligman
Andrew Schmidt
Juno Turner
**TOWARDS JUSTICE**
1410 High St., Suite 300
Denver, CO 80218
(720) 441-2236
alex@towardsjustice.org
david@towardsjustice.org
andy@towardsjustice.org
juno@towardsjustice.org

R. Andrew Free
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209

T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

Brandt Milstein
**MILSTEIN LAW OFFICE**
1123 Spruce Street
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

Hans Meyer
**MEYER LAW OFFICE, P.C.**
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2020, a copy of the foregoing document was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Andrew H. Turner*
Andrew H. Turner
**THE KELMAN BUESCHER FIRM, P.C.**
600 Grant St., Suite 825
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com

*Class Counsel*

## **EXHIBIT LIST**

ECF No. 326: Decl. of Andrew H. Turner, dated September 11, 2020.

Ex. A: ECF No. 326-1, Ex. A to Decl. of Andrew H. Turner, Pl. 2d Supl. Resp. to Defs. 6th Interrogatories

Ex. B: ECF No. 326-2, Ex. B to Decl. of Andrew H. Turner, Excerpt from the transcript of the Deposition of Plaintiff Grisel Xahuentitla.

Ex, C: ECF No. 326-3, Ex. C to Decl. of Andrew H. Turner, Excerpt from the transcript of the Deposition of Plaintiff Jesus Gaytan.

Ex. D: ECF No. 326-4, Ex. D to Decl. of Andrew H. Turner, Excerpt from the transcript of the Deposition of Plaintiff Demetrio Valerga.

Ex. E: ECF No. 326-5, Ex. E to Decl. of Andrew H. Turner, Excerpt from the transcript of the Deposition of Absent Class Member Alejandro Hernandez Torres.

Ex. F:  ECF No. 326-6, Ex F. to Decl. of Andrew H. Turner, Decl. of Martin M. Rosenbluth, Esq.