# Exhibit 18

```
 1           IN THE UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF COLORADO
 2
                    CASE NO. 1:14-cv-02887-JLK
 3

 4   ALEJANDRO MENOCAL, et al.,

 5                Plaintiffs,

 6   -vs-

 7   THE GEO GROUP, INC.,

 8                Defendant.
     _____/
 9

10

11

12

13                 DEPOSITION OF AMBER MARTIN
                      Pages 1 Through 209
14

15

16

17              Wednesday, October 9, 2019
                  8:58 a.m. - 3:21 p.m.
18
                     951 Yamato Road
19                      Suite 285
                  Boca Raton, Florida 33431
20

21

22

23

24           Stenographically Reported By:
                 Nancy Cannizzaro, RMR
25              Registered Merit Reporter
```

```
 1   $1 a day or the detainee couldn't get paid more than $1 a
 2   day.
 3           Q.   Okay.  Let me see if I have it straight.
 4   So ICE changed the standards to permit GEO to pay more
 5   than $1 a day, but because GEO wasn't getting reimbursed
 6   more than $1 a day, it didn't seek to increase that
 7   amount?
 8           A.   And ICE couldn't pay more than $1 a day.
 9           Q.   But it didn't seek permission from ICE to
10   pay more than $1 a day?
11           A.   Right.  Because there wasn't the
12   possibility to pay more.
13           Q.   And GEO didn't want to pay it if it wasn't
14   getting reimbursed by ICE?
15           A.   Well, it's a contractual requirement as
16   far as we're concerned and we've already priced this.
17           Q.   Right.  But I guess I'm -- what I'm saying
18   is, the decision was based on the pricing, not whether --
19   not whether GEO was permitted to pay more than $1 a day.
20   In other words, GEO could have paid more than $1 a day
21   notwithstanding the fact it wasn't getting reimbursed?
22           A.   Well, again, we had to seek permission from
23   ICE to do that.
24           Q.   Sure.
25           A.   I think the person that put this together
```

Amber Martin
October 09, 2019                                                           106

1   was trying to open the door for future issues, so it was
2   more broad and they didn't have to, you know, change this
3   again.  ICE couldn't pay more than $1 a day; we couldn't
4   get reimbursed more than $1 a day.  So this was all
5   conflicted in this statement.
6         Q.   Well, I guess I'm trying to understand
7   "conflicted."  Because as I --
8         A.   If I wanted to go modify a contract and pay
9   $1.50 a day, ICE could not pay that.  So the contract
10  could never be modified.
11        Q.   Well, you could pay something without
12  getting reimbursed from ICE if ICE gave you permission to
13  do that, right?
14        A.   Yeah.  But they couldn't give permission to
15  do that because they couldn't pay more than $1 a day.
16        Q.   No.  I understand they couldn't pay more,
17  but they could give permission for GEO to pay more; it
18  would just be a cost borne by GEO, right?
19        A.   I guess.
20        Q.   Okay.  We saw earlier there was a term in
21  the 2006 contract that says that all costs are -- of
22  complying with the contract are to be borne by the
23  contractor?
24        A.   Right.
25        Q.   So that would then become a cost that GEO

1  would have to bear if it got permission from ICE to pay
2  more than $1 a day but was still being reimbursed only at
3  $1 a day?
4          A.   Yes.  But it would be difficult to modify
5  the contract to do that.
6          Q.   More so than any other contract
7  modification?
8          A.   Again, because there's strict parameters
9  of ICE can't pay more than $1 a day, we can't -- if we
10 can't be reimbursed more than $1 a day, in order to give
11 permission to do something that is outside the realm, it
12 would -- I don't know how that would be done in a
13 contract modification.
14         Q.   Well, there are contract modifications --
15         A.   I think this would be done outside that.  I
16 don't know.
17         Q.   Outside what?  I'm sorry?
18         A.   Like I said, I don't see ICE permitting
19 that as a contract modification since statutorily they
20 can't pay more than $1 a day and we can't get reimbursed
21 more than $1 a day.  It wasn't just asked along those
22 bases.  I guess we could do it on our own dime.
23         Q.   Right.
24         A.   But the contract was priced this way, et
25 cetera.

```
 1          Q.   Right.  I guess, procedurally, if GEO made
 2   that decision to do this, as you put it, on your own
 3   time -- on its own dime, the process for getting that
 4   permission from ICE would be -- would it be the same as
 5   any other contract modification?
 6          A.   Yes.
 7          Q.   So there's a process that's well
 8   established to do that, and we talked about it earlier
 9   today, right?
10          A.   Yes.
11               MR. SCIMONE:  Okay.  Off the record for a
12          minute.
13               (A discussion was held off the record.)
14               (Plaintiff Exhibit No. 11 was marked for
15          identification.)
16   BY MR. SCIMONE:
17          Q.   Okay.  Ms. Martin, the court reporter has
18   just handed you Exhibit 11.  This has a document
19   identification number at the bottom, a little different
20   than the others.  This is 2018-ICLI-0052 2141, running
21   through 2169.  I was just getting all that on the record.
22               Do you recognize this document?
23          A.   No.  I mean, it looks like a detention
24   handbook -- Detainee Handbook for LaSalle Processing
25   Center, but I haven't seen it specifically.
```

```
 1         Q.   Okay.  LaSalle Processing Center is a
 2    facility operated by The GEO Group?
 3         A.   Yes, it is.
 4         Q.   Okay.  Is that an ICE detention facility?
 5         A.   Yes, it is.
 6         Q.   If you'll look at page 10, there's a
 7    section here titled "Voluntary Work Program" at the
 8    bottom of the page.
 9         A.   Okay.
10         Q.   First of all, before I ask about this, do
11    you have any responsibility for the contract at LaSalle?
12         A.   Yes.
13         Q.   Okay.
14         A.   I have responsibility over all contracts.
15         Q.   Okay.  So this Voluntary Work Program
16    section, if you look at the second sentence, says:  "Any
17    detainee assigned to work in the kitchen will be paid
18    $4.00 per day."  Do you see that?
19         A.   Uh-huh.
20         Q.   And laundry work details and barbershop
21    workers will be paid $3 per day?
22         A.   Uh-huh.
23         Q.   And then special detail workers are paid $2
24    a day?
25         A.   Yes.
```

1        Q.    And then all other job assignments are $1
2   per day, correct?
3        A.    Correct.
4        Q.    The same PBNDS provision applies at LaSalle
5   as applies at Aurora, correct?
6        A.    Yes.
7        Q.    Okay.  So the reimbursement for the LaSalle
8   facility is also $1 per day for the VWP, right?
9        A.    Correct.
10       Q.    So this is an example of a case where GEO
11  did in fact opt to pay more, at least in certain jobs,
12  than it was getting reimbursed by ICE, correct?
13       A.    Yes.
14       Q.    Did GEO get permission from ICE to do that?
15       A.    I'm assuming they did.
16       Q.    Were you involved in seeking that
17  permission?
18       A.    No.
19       Q.    Do you know when that happened?
20       A.    No.  Just an assumption on my part reading
21  this.
22       Q.    Okay.  Do you know why GEO pays more for
23  these jobs at LaSalle than it does at Aurora?
24       A.    No.
25       Q.    Do you know if that's still the case at

Amber Martin
October 09, 2019                                                        111

```
 1    LaSalle?  This says, if you look at the first page,
 2    revised June 2017.
 3         A.    I don't know.
 4         Q.    Okay.  And do you know what the -- what the
 5    term of the contract at -- of the current contract at
 6    LaSalle is?
 7         A.    LaSalle is an IGSA, which is a different
 8    type.  It's not a direct contract.  It's an
 9    Intergovernmental Service Agreement.  The actual contract
10    is between the LaSalle Economic Development Division and
11    ICE, and LaSalle then contracts with us to operate the
12    facility.  So we don't have a direct contract.  This may
13    be why the differences.
14         Q.    Okay.  So the contract is between GEO and
15    LaSalle?
16         A.    Yes.
17         Q.    Is that a municipal division: LaSalle?
18         A.    Yes.  Well, it's a parish, but it's --
19    LaSalle Economic Development Division is who the contract
20    is with.
21         Q.    Do you know who pays the difference in the
22    cost of VWP program?  The difference meaning the amount
23    over $1 per day for these specific jobs.
24         A.    They would be -- LaSalle would be
25    responsible or GEO would be responsible.
```

CERTIFICATE OF REPORTER

THE STATE OF FLORIDA )

COUNTY OF PALM BEACH )

       I, Nancy Cannizzaro, Registered Merit Reporter, certify that I was authorized to and did stenographically report the foregoing deposition of AMBER MARTIN, pages 1 through 207; that a review of the transcript was requested; and that the transcript is a true and complete record of my stenographic notes.

       I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

       DATED this 23rd day of October, 2019.


_____
Nancy Cannizzaro, RMR