**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-02887 JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA
on their own behalf and on behalf of all others similarly situated,

      Plaintiffs,

v.

THE GEO GROUP, INC.,

      Defendant.

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS FOR FAILURE TO JOIN REQUIRED PARTY**

---

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................. 2

III.   ARGUMENT ......................................................................................... 5

    A.    Legal Standard ............................................................................ 5

    B.    ICE Is Not a Necessary Party. ................................................... 6

        1.    Two District Courts Have Already Rejected GEO's Arguments. ........ 6

        2.    Complete Relief Is Available From GEO. .......................... 7

        3.    ICE Does Not Have a Legally Protected Interest in this Litigation that Would be Impaired by Failure to Join it in this Action. .................... 8

            i.    The Court Does Not Need to Interpret the ICE-GEO Contract. .......................................................................... 10

            ii.    GEO's Forced-Labor Scheme Was Not Required By ICE. ... 14

            iii.   Plaintiffs' Statements to the Media Are Irrelevant to the Rule 19 Analysis. ................................................................. 16

            iv.   Plaintiff Hernandez Ceren's T-Visa Application Does Not Implicate ICE. ...................................................................... 17

            v.    This Case Is Not an Effort to "Step into the Shoes" of ICE. .................................................................................. 18

            vi.   Plaintiffs Allege No Wrongdoing by ICE. ........................... 19

            vii.  Allowing Plaintiffs' Unjust Enrichment Claims to Proceed Without Joining ICE Would Not Impede ICE's Interests. ... 20

        4.    GEO Faces No Risk of Inconsistent Obligations. ........................ 22

    C.    If ICE Is Not Joined, Dismissal Is Not Warranted. ....................................... 23

IV.   CONCLUSION ................................................................................... 26

# TABLE OF AUTHORITIES

**CASES**                                                                              **PAGE(S)**

*Barrientos v. CoreCivic, Inc.*,
951 F.3d 1269 (11th Cir. 2020) ...................................................................... 14

*Boles v. Greenville Housing Auth.*,
  468 F.2d 476 (6th Cir. 1972) ........................................................................ 15

*Burger King Corp. v. Am. Nat'l Bank & Tr. Co. of Chi.*,
  119 F.R.D. 672 (N.D. Ill. 1988) .................................................................... 12

*Chao Chen v. GEO Grp. Inc.*,
  No. 17 Civ. 5769, 2018 WL 1963669 (W.D. Wash. Apr. 26, 2018) ............... 6, 7, 9, 25

*Citizen Potawatomi Nation v. Norton*,
  248 F.3d 993 (10th Cir.) ............................................................................... 15

*Colo. First Const. Co. v. U.S. Dep't of Hous. & Urban Dev.*,
  No. 05 Civ. 00755, 2006 WL 355224 (D. Colo. Feb. 15, 2006) .................... 10

*Corr. Servs. Corp. v. Malesko*,
  534 U.S. 61 (2001) ....................................................................................... 10

*Corsi v. Eagle Publ'g, Inc.*,
  No. 07 Civ. 2004, 2008 WL 239581 (D.D.C. Jan. 30, 2008) ........................ 12

*Crandall v. City & Cty. of Denver, Colorado*,
  No. 05 Civ. 242, 2006 WL 8429736 (D. Colo. Feb. 24, 2006) ..................... 18

*Dorsey v. Tompkins*,
  917 F. Supp. 1195 (S.D. Ohio 1996) ............................................................ 16

*Ente Nazionale Idrocarburi v. Prudential Sec. Grp., Inc.*,
  744 F. Supp. 450 (S.D.N.Y. 1990) ............................................................... 12

*Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel*,
  883 F.2d 890 (10th Cir. 1989) ...................................................................... 25

*Francisco v. Susano*,
  No. 10 Civ. 332, 2013 WL 4849109 (D. Colo. Sept. 10, 2013) .................... 7

*Ins. Co. of State of Penn. v. LNC Communities II, LLC*,
  No. 11 Civ. 649, 2011 WL 5548955 (D. Colo. Aug. 23, 2011) ..................... 8

*M.B. Guran Co. v. City of Akron,*
   546 F.2d 201 (6th Cir. 1976) ........................................................................ 15

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.,*
   471 F.3d 377 (2d Cir. 2006) ............................................................... 13, 21, 22

*Northrop Corp. v. McDonnell Douglas Corp.,*
   705 F.2d 1030 (9th Cir. 1983) ...................................................................... 21

*Novoa v. GEO Grp., Inc.,*
   No. 17 Civ. 2514, 2018 WL 4057814 (C.D. Cal. Aug. 22, 2018) ............................ 6, 25

*Republic of Philippines v. Pimentel,*
   553 U.S. 851 (2008) ..................................................................................... 25

*Rivera Rojas v. Loewen Grp. Int'l, Inc.,*
   178 F.R.D. 356 (D.P.R. 1998) ........................................................................ 12

*Sierra Club v. Young Life Campaign, Inc.,*
   176 F. Supp. 2d 1070 (D. Colo. 2001) ................................................. 15, 16, 19

*Temple v. Synthes Corp.,*
   498 U.S. 5 (1990) (per curiam ....................................................................... 7, 9

*Travelers Indem. Co. v. Household Int'l, Inc.,*
   775 F. Supp. 518 (D. Conn. 1991) .................................................................. 12

*U.S. ex rel. Hall v. Tribal Dev. Corp.,*
   100 F.3d 476 (7th Cir. 1996) ......................................................................... 12

*United States v. Sabhnani,*
   599 F.3d 215 (2d Cir. 2010) ............................................................................ 8

*Ward v. Apple Inc.,*
   791 F.3d 1041 (9th Cir. 2015) ....................................................................... 17

*Wichita & Affiliated Tribes of Okla. v. Hodel,*
   788 F2d 765 (D.C. Cir. 1986) ........................................................................ 25

*Wis. Res. Prot. Council, Ctr. for Biological Diversity v. Flambeau Min. Co.,*
   903 F. Supp. 2d 690 (W.D. Wis. 2012) ............................................................ 19

*Wisehart v. Wisehart,*
   No. 18 Civ. 21, 2018 WL 11182737 (D. Colo. Nov. 1, 2018) ................................ 16

**STATUTES**

8 U.S.C. § 1555 ....................................................................................................... 6, 21

18 U.S.C. § 1589 .......................................................................................................... 8

**RULES**

Fed. R. Civ. P. 19.....................................................................................................*passim*

## I.     INTRODUCTION

In large part, GEO's Motion to Dismiss rests on the shaky premise that U.S. Immigration and Customs Enforcement ("ICE") is responsible for the GEO policies that Plaintiffs challenge.  That is wrong – as ICE itself has stated – but GEO clings doggedly to this position because it is the basis for GEO's Derivative Sovereign Immunity ("DSI") defense, which is now the subject of pending cross-motions for summary judgment.  ECF Nos. 260 (Pls.' DSI MSJ Br.), 284 (GEO's DSI MSJ Br.).  Should the Court admit into evidence ICE's testimony that Plaintiffs' TVPA claim concerns "a GEO policy, created by GEO" that was "not created by ICE," was not required by the ICE-GEO contract, and was not drafted or negotiated by ICE, *see* ECF No. 261-7 (Declaration of Shannon Ely) ¶ 22, most of GEO's Rule 19 arguments – and its DSI defense – collapse.

More specifically, GEO's motion fails because Plaintiffs can obtain complete relief stemming from these GEO policies without joining ICE, and because ICE does not have an interest that would be impaired by proceeding in its absence.  The tangential interests GEO identifies can be (and to date, have been) protected through other means.

Even if ICE were a necessary party that could not be joined due to sovereign immunity, the Court should still not dismiss this case.  ICE is not indispensable, and dismissal after six years of litigation would be extraordinarily prejudicial to Plaintiffs, especially when balanced against ICE's minimal interest in the litigation and in light of the other means by which ICE can protect and has protected the interests GEO claims to identify.

## II.   FACTUAL BACKGROUND[1]

Plaintiffs filed this case in October 2014, alleging that GEO had violated the

Trafficking Victims' Protection Act ("TVPA") and Colorado Minimum Wages of

Workers Act, and had been unjustly enriched by its failure to pay more than $1/day to

immigration detainees who participated in the Voluntary Work Program ("VWP") at the

Aurora Detention Facility.  ECF No. 1 (complaint).  GEO moved to dismiss on various

grounds, which did *not* include failure to join a necessary party under Fed. R. Civ. P.

12(b)(7).  ECF No. 11 (Def.'s Mot. to Dismiss Br.).  However, in its reply, GEO did raise

arguments that relied on its contract with ICE; specifically, GEO argued that wage

determinations under the Service Contract Act, which were incorporated into the ICE-

GEO contract, preempted Plaintiffs' minimum wage claims, and that GEO's government

contractor defense applied to Plaintiffs' unjust enrichment claims because the

government had directed GEO to pay no more than $1/day.  ECF No. 18 (Def.'s Reply

Br. ISO Mot. to Dismiss).  The Court rejected these arguments.  ECF No. 23 (Order

Denying Mot. to Dismiss).

In March 2016, Plaintiffs took a 30(b)(6) deposition of GEO.  In that deposition,

Plaintiffs explored the scope of GEO's Housing Unit Sanitation Policy ("HUSP"),

specifically identifying the ways in which it was inconsistent with ICE's Performance-

---

[1]     GEO's Motion presents factual material in the Court's preferred format for motions for summary judgment.  Plaintiffs have attached a response to GEO's proposed facts as Exhibit 1 to the Scimone Declaration, but have not adopted the admit-or-deny format in this brief because this Motion is not subject to the summary judgment standard for disputed issues of fact.

Based National Detention Standards ("PBNDS"), which were incorporated into the ICE-GEO contract.[2]

In 2017, two other cases were filed against GEO making similar allegations about its conduct at other immigration detention facilities. *See Nwauzor v. The GEO Grp., Inc.*, No. 17 Civ. 5769 (W.D. Wash); *Novoa v. The GEO Grp., Inc.*, No. 17 Civ. 2514 (C.D. Cal). Within a few months of the *Novoa* filing, Representative Steve King of Iowa, along with 17 other Congressional Representatives, wrote a letter to the U.S. Attorney General, U.S. Secretary of Labor, and Acting Director of ICE asking them to intervene or otherwise participate in all three cases, arguing that ICE policies and interests were directly implicated by the plaintiffs' allegations.[3] But ICE did not intervene, and motions to dismiss proceeded to adjudication in both *Nwauzor* and *Novoa*, including motions to dismiss for failure to join ICE. Both courts rejected those motions.[4]

GEO also requested ICE's intervention directly. In approximately the same timeframe that it lobbied members of Congress to request ICE's intervention, in February 2018, GEO sent a letter to ICE, citing *Menocal*, *Nwauzor*, and *Novoa*, and arguing that "[t]here is an urgent need for the federal government to participate in the current and

---

[2]     Ex. 2 (Ceja 30(b)(6) Tr. I) 121:19-126:25. Except as otherwise noted, all exhibits are attached to the Declaration of Michael Scimone in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss for Failure to Join a Required Party.

[3]     Ex. 3 (Mar. 7, 2018 Letter from Rep. King to Att. Gen. Sessions, Sec. Acosta, and Dir. Homan). GEO lobbied Rep. King and other politicians to ask that they write this letter. *See* Ex. 4 (Venturella Tr.) 115:15-117:16.

[4]     Ex. 5 (*Nwauzor*, No. 17 Civ. 5769, ECF No. 28 (W.D. Wash.) (Order Denying GEO's Mot. to Dismiss); Ex. 6 (*Novoa*, No. 17 Civ. 2514, ECF No. 61 (C.D. Cal) (Order Denying GEO's Mot. to Dismiss).

anticipated future litigation, as well as, to justify and defend the programs and policies that ICE requires of its detention contractors."[5]  GEO met with ICE officials to discuss this request.[6]  Ultimately, ICE did not intervene, and it did not agree to adjust GEO's contract price to reimburse GEO for the cost of defending the lawsuits.[7]

Litigation in this case continued, with discovery taking place throughout 2019 and most of 2020.[8]  Because GEO continued to assert government contractor and DSI defenses, Plaintiffs sought discovery from ICE by subpoena about what direction, if any, it provided to GEO that might support such a defense.[9]  In addition, a perennial discovery issue arose concerning whether GEO was prevented by ICE regulations from disclosing documents in discovery.  ECF Nos. 62 (Discovery Order re *Touhy* Regulations), 207 (Motion to Compel re *Touhy* Regulations).  That issue was resolved at a discovery conference before Magistrate Judge Hegarty, in which ICE participated through its Department of Justice representative.[10]  As other matters relating to ICE arose in the course of discovery, the agency continued to send representatives to discovery conferences as needed.  *See* ECF Nos. 236 (Courtroom Minutes), 328 (same).  And the parties have maintained regular correspondence with ICE through the process of meeting and conferring in response to Plaintiffs' subpoenas.[11]  In response to those subpoenas,

---

[5]      Ex. 7 (Feb. 14, 2019 Letter from GEO to Dir. Homan, 2018-ICLI-00052 2751-55) at 2018-ICLI-00052 2751; *see also* Ex. 4 (Venturella Tr.) 65:6-66:5.
[6]      Ex. 4 (Venturella Tr.) 94:11-97:24.
[7]      *Id*. 98:16-99:23.
[8]      Scimone Decl. ¶ 4.
[9]      *Id.* ¶¶ 5-6.
[10]      *See* Ex. 8 (Court Tr., Oct. 18, 2019 discovery hearing) 66:24-72:21.
[11]      Scimone Decl. ¶ 7.

ICE has to date produced nearly 13,000 pages of documents as well as declarations by ICE witnesses in lieu of live testimony, and has facilitated an in-person inspection of the Aurora detention facility as well as production of photographs taken during that inspection.[12]

## III.   ARGUMENT

### A.   Legal Standard

Fed. R. Civ. P. 19 has two parts.  Rule 19(a) sets forth the standard to determine whether a person is a "required party," who must be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.

If a party is required under Rule 19(a), but joinder is impossible, the court then proceeds to Rule 19(b), which sets forth factors to determine whether the case should be dismissed.  Those factors are (1) the extent to which a judgment rendered in the party's absence might prejudice either them or the existing parties; (2) the extent to which any prejudice could be lessened or avoided; (3) whether a judgment rendered in the party's

---

[12]   *Id.* ¶ 8.

absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed.  Fed. R. Civ. P. 19(b).

GEO's arguments as to both subsections of Rule 19 are flawed.  ICE is neither a necessary nor an indispensable party, and dismissal of this case after six years of litigation is not warranted.

### B.      ICE Is Not a Necessary Party.

#### 1.      Two District Courts Have Already Rejected GEO's Arguments.

Two courts have already conducted a necessary-party analysis regarding ICE's interest in similar cases against GEO, and rejected arguments similar to those GEO raises here.  In *Novoa v. GEO Grp., Inc.*, No. 17 Civ. 2514, 2018 WL 4057814, at *4 (C.D. Cal. Aug. 22, 2018), the court found that ICE was not a necessary party, even though the plaintiffs sought an injunction requiring GEO to pay more than $1/day to VWP workers, relief which, GEO argued, required ICE's consent.  The court rejected GEO's arguments because (1) the contractual $1/day VWP reimbursement rate did not preclude GEO from paying more, and because (2) "since 1979, Congress has abandoned direct appropriations for allowances under 8 U.S.C. § 1555(d)."  *Id.*  Thus, there was no prohibition on ICE's approval of a higher rate, and complete relief between the parties was available.[13]  *Id.*

Similarly, in *Chao Chen v. GEO Grp. Inc.*, No. 17 Civ. 5769, 2018 WL 1963669 (W.D. Wash. Apr. 26, 2018), the court rejected the argument that the ICE-GEO contract was at issue in a challenge to $1/day VWP wages paid at a GEO facility, because GEO's

---

[13]      The court also rejected other arguments not raised or implicated in this case.

argument was "premised on only one of multiple plausible interpretations of the GEO-ICE Contract." *Id.* at *3.  And it rejected the argument that ICE had a legally protected interest in the case, noting that ICE had previously declined an invitation by members of Congress to intervene, and that a judgment in the plaintiffs' favor would not set aside the ICE-GEO contract. *Id.* at *3-4.  GEO's arguments in this Motion rehash many of those arguments, and are no more persuasive.

### 2.    Complete Relief Is Available From GEO.

GEO's argument begins with the contention that ICE is a required party under Rule 19(a)(1)(A) because the court "cannot accord complete relief" on the Class's TVPA claims absent ICE.  The thrust of the argument appears to be that ICE is in fact liable for the TVPA violations alleged here because it knew of them.  ECF No. 307 (Def.'s R.19 Mot. to Dismiss Br.) at 16-18.

Putting aside the plausibility of GEO's expansive theory of TVPA liability, it cannot lead to the conclusion that ICE is a necessary party.  Assuming for the sake of argument that ICE had actual knowledge of GEO's TVPA violations (a proposition for which GEO cites only weak circumstantial evidence), and thus participated in a "joint venture" with GEO, ECF No. 307 at 16, this would only give rise to joint liability under the TVPA.  *See Francisco v. Susano*, No. 10 Civ. 332, 2013 WL 4849109, at *4 (D. Colo. Sept. 10, 2013) (labor recruiter and employer who cooperated to confine and starve plaintiffs held jointly and severally liable for damages under TVPA).  And it is well established that a party with joint-and-several liability "is merely a permissive party to an action against another with like liability," not a necessary party under Rule 19. *Temple v.*

*Synthes Corp.*, 498 U.S. 5 (1990) (per curiam) (quoting Fed. R. Civ. P 19(a) advisory committee's note to 1966 amendment).[14]

GEO's only support for the idea that the TVPA may be different is that its provisions describing criminal liability under the statute state that a party found liable "shall be" punished.  18 U.S.C. § 1589(d).  Aside from presuming ICE's liability, the conclusion that this renders ICE a necessary party is illogical because it would force victims of human trafficking to locate and join all people who knowingly benefitted from the harm they suffered.  Given that trafficking operations often span national borders and involve members of organized crime who take pains to avoid detection, this would impose an impossible burden on victims of forced labor.

>### 3.  ICE Does Not Have a Legally Protected Interest in this Litigation that Would be Impaired by Failure to Join it in this Action.

Although ICE has participated sporadically in certain aspects of this litigation, it has remained, in other ways, on the sidelines.  And while GEO is correct that courts in this District have interpreted the requirement that a party "claim" an interest to not require an affirmative act, those cases do not hold that a party's conduct is *irrelevant* to the interest analysis.  In *Insurance Co. of State of Pennsylvania v. LNC Communities II, LLC*, No. 11 Civ. 649, 2011 WL 5548955, at *7 (D. Colo. Aug. 23, 2011), the court reasoned that requiring a party to take an affirmative step to claim an interest "would

---

[14]      *United States v. Sabhnani*, 599 F.3d 215, 244 (2d Cir. 2010), which GEO cites, is not to the contrary.  *Sabhnani* addresses what evidence is sufficient to hold a party (jointly) liable under the TVPA; it does not require that all such parties be joined.

seemingly offer Rule 19(a)(1)(B)(i)'s protections only to those absent parties who actually know of the litigation." But here, it is clear that ICE *does* know of this litigation; it has submitted declaration testimony and produced documents in response to subpoenas,[15] sent DOJ attorneys to discovery conferences on its behalf,[16] and as further discussed below, appeared on the docket of this case as an Interested Party to oppose Plaintiff Hugo Hernandez Ceren's writ of *habeus corpus*. ECF Nos. 281 (ICE Mot. for Reconsideration), 289 (Notice re ICE Mot. for Reconsideration). But ICE has not intervened as a party, even after GEO invited it to do so, and has refused to produce a witness for live testimony on behalf of either party.[17] The Court may consider ICE's forbearance in evaluating the extent to which its interests are implicated. *See Chao Chen*, 2018 WL 1963669, at *3 (noting that despite knowing of TVPA and wage claims against GEO, "ICE has not asserted any interest in the case," and concluding that ICE was not a necessary party under Rule 19).[18]

---

[15]    Scimone Decl. ¶ 8.

[16]    Ex. 8 (Court Tr., Oct. 18, 2019 discovery hearing) 66:24-72:21; ECF Nos. 236, 328.

[17]    Ex. 9 (Oct. 11, 2019 Letter from ICE to M. Scimone re Pls.' subpoena) at 2.

[18]    Notably, ICE later did assert an interest in that litigation, now captioned *Nwauzor, et al. v. The GEO Group, Inc.* After a suit by the State of Washington seeking to enforce its minimum wage laws against GEO was consolidated with the claims of the private class in *Chao Chen*, ICE filed a Statement of Interest to make its views known. Ex. 20 (*Nwauzor*, No. 17 Civ. 5769, ECF No. 185 (W.D. Wash.) (Statement of Interest of U.S.A.)). In its Statement, ICE argued that the State of Washington's claims against GEO, which seek to enforce the State's wage laws, implicate issues of intergovernmental immunity and the Supremacy Clause, which are not implicated here. *Id.* at 5-16. This shows that ICE knows how to protect the federal government's interests in private litigation concerning its detention contractors.

### i.       The Court Does Not Need to Interpret the ICE-GEO Contract.

The core of GEO's argument that ICE has a legally protected interest in this litigation for the purposes of Rule 19(a)(1)(B) is its suggestion that this case requires the Court to interpret GEO's contract with ICE.  That is incorrect.  All of the inquiries GEO points to stem from GEO's DSI defense.  *See* ECF No. 307 at 14-16.  And contrary to GEO's view of the law of DSI, the defense requires more than showing that a contractor did not *breach* its agreement with the government; it requires GEO to show that "the government has directed [the] contractor to do the very thing that is the subject of the claim."  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 n.6 (2001).  That is an inquiry into what the government has said, not what its contracts permit.  *See* ECF No. 298 (Pls.' Opp. Br. to Def.'s DSI MSJ) at 26-30.

But more importantly, GEO's analysis does not satisfy the requirements of Rule 19(a), because GEO fails to show that a determination of what the government said will "impair or impede" ICE's ability to protect its interests.  Fed. R. Civ. P. 19(a)(1)(B)(i).  This is not a breach of contract action, or a suit that seeks to set aside a contract, and GEO does not adequately explain how merely interpreting the contract – to the extent the Court must do so – will impair ICE's interests.  *See Colorado First Const. Co. v. U.S. Dep't of Hous. & Urban Dev.*, No. 05 Civ. 00755, 2006 WL 355224, at *8 (D. Colo. Feb. 15, 2006) (rejecting argument that "court's interpretation of one or more [contractual] documents in this case may somehow constrain [an absent party] in a hypothetical future suit against [defendant]").

10

First, although the parties disagree about whether the 2008 PBNDS set a floor or a ceiling of $1/day for payments in the VWP (given that the 2008 version lacks the "at least" language of the 2011 PBNDS), the Court can adjudicate GEO's DSI defense without interpreting the contract.  The relevant inquiry is whether there was an explicit government direction to pay *only* $1/day.  And the facts show that GEO itself did not interpret the 2008 PBNDS as such a direction, because it already paid more than $1/day at other facilities long before the 2011 PBNDS had been drafted.[19]

Second, and similarly, GEO's contention that a low-level ICE technical representative's approval of GEO's sanitation procedures supports DSI fails as a matter of law.  DSI requires an explicit directive, not tacit approval, and there is no ICE directive commanding GEO to force detainees to clean common living areas.[20]

Third, GEO is wrong that Plaintiffs seek to "invalidate a portion of ICE's disciplinary severity scale."  ECF No. 307 at 16.  Plaintiffs seek to hold GEO liable for *abusing* that disciplinary scale by applying it to situations outside ICE guidelines.[21]

And fourth, a verdict for Plaintiffs in this case would not "invalidat[e]" the ICE-GEO contract, even if it were true that the contract "sets the payment of $1.00 as a permissible floor."  Def.'s Br. 16.  A floor is just that – a floor – and paying more than the floor allows does no violence to the contract.

---

[19]    *See* ECF No. 260 (Pls.' DSI MSJ Br.) at 20, Statement of Facts ¶ 96.
[20]    *See* ECF No. 286 (Pls.' DSI MSJ Reply Br.), Statement of Facts ¶¶ 98-101.
[21]    *Id.* at ¶¶ 93-97.

GEO's authorities, ECF No. 307 at 14-15, are not to the contrary.  All of them involved contractual rights that were directly implicated by the claims in the case and would have been impaired by the party's absence.  *U.S. ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 477 (7th Cir. 1996) was a case seeking to rescind a contract, in the absence of a party to that contract.  *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518, 521-22 (D. Conn. 1991) was a breach-of-contract action where the absent party, a subsidiary of the plaintiff and party to the contract, would have been liable as an insurer.  *Rivera Rojas v. Loewen Grp. Int'l, Inc.*, 178 F.R.D. 356, 361-63 (D.P.R. 1998) was also a breach-of-contract case in which the absent party was a subsidiary of the defendant that was both party to the agreements and used as a vehicle by the defendant to commit the breaches, such that its conduct was directly at issue.  *Corsi v. Eagle Publ'g, Inc.*, No. 07 Civ. 2004, 2008 WL 239581, at *3 (D.D.C. Jan. 30, 2008) involved several quasi-contract and tort claims that would be derivative of a breach-of-contract claim against the absent party, which the plaintiff brought against the parent of the absent party to avoid arbitration.  *Ente Nazionale Idrocarburi v. Prudential Sec. Grp., Inc.*, 744 F. Supp. 450, 458 (S.D.N.Y. 1990) involved claims for tortious interference with contract, although the Rule 19 issue turned specifically on the possibility for conflicting adjudications stemming from a separate proceeding.  And *Burger King Corp. v. Am. Nat'l Bank & Tr. Co. of Chicago*, 119 F.R.D. 672, 674 (N.D. Ill. 1988) was a case between a lessee and a lessor seeking a determination of whether a sublessee had the right to assign the sublease without the lessor's permission; the sublessee was the absent party, so his ability to assign the sublease was directly at issue.

In all of the above cases, contract rights of the absent parties would have been impaired in specific, material ways.  That is not the case here, where GEO argues only that there are contract provisions at issue, without pointing to any way in which decisions related to those provisions would "impair or impede" ICE's interests.  Fed. R. Civ. P. 19(a)(1)(B)(i).  Even if the Court ruled that (1) the 2008 PBNDS applied to GEO in early 2011; (2) the ICE technical representative had no authority to bind ICE for purposes of sovereign immunity; (3) GEO applied the disciplinary scale in ways that were at odds with the PBNDS; and (4) that the law of unjust enrichment required GEO to pay more than the "floor" of $1/day, none of those holdings would impair ICE's rights.  At most, the third finding could form the basis for ICE to bring a breach-of-contract claim against GEO, but that would tend to buttress ICE's rights, not impair or impede them.  That outcome is similar to the one contemplated in *MasterCard*, where MasterCard sued FIFA, the international body that governs worldwide soccer, for violating a contractual right-of-first-refusal provision by entering into a new contract with Visa.  *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc*., 471 F.3d 377, 380 (2d Cir. 2006).  The Second Circuit ruled that Visa was not a necessary party, because "[e]ven if MasterCard prevails and receives the relief it seeks, that does not render the Visa Contract invalid.  It means that FIFA likely has breached the warranty provision of that contract, and Visa has the right to sue FIFA for that breach."  *Id.* at 386.  Rather than impairing ICE's interests, if anything, this case would tend to *improve* ICE's position.  GEO's argument to the contrary is speculative.

Notably, although Rule 19 was not specifically at issue in *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269 (11th Cir. 2020), the Eleventh Circuit engaged in exactly the "interpretive" exercise GEO points to without suggesting that ICE need be joined as a result. The *Barrientos* court described the extent of personal housekeeping permitted under the plain language of the PBNDS, and held that a TVPA violation could be alleged against an ICE contractor, in part because "nothing in the PBNDS permits CoreCivic, or other private contractors operating immigration detention facilities, to force detainees to perform labor (beyond personal housekeeping tasks)." *Id.* at 1272, 1277-78 & n.5. Indeed, the Department of Justice submitted an *amicus curiae* brief in *Barrientos* that took the position that an immigration detention facility would not face liability under the TVPA for taking "legitimate steps *consistent with* the PBNDS" and that "courts should carefully scrutinize the allegations in a complaint to determine whether a plaintiff plausibly alleges conduct inconsistent with the PBNDS."[22]

### ii.     GEO's Forced-Labor Scheme Was Not Required By ICE.

ICE's contract with GEO does not require forced labor. That claim is demonstrably false, as discussed at length in the parties' briefing regarding the DSI defense. *See* ECF Nos. 260, 284. GEO's Housing Unit Sanitation Policy ("HUSP") requires detainees to clean their entire 80-person housing pod,[23] in direct contravention of ICE regulations that are incorporated into the ICE-GEO contract.[24] None of these facts

---

[22]     Ex. 21 (*Ahmed v. CoreCivic, Inc.*, No. 18-15081 (11th Cir.), Brief for the United States as *Amicus Curiae* in Support of Neither Party) at 22-23 (emphasis added).

[23]     ECF No. 260 (Pls.' DSI MSJ Br.), Statement of Facts ¶¶ 45, 47-51

[24]     *Id.* ¶¶ 24-25, 36.

implicate ICE, because according to ICE, the HUSP "is a GEO policy, created by GEO. The GEO HUSP is not created by ICE nor is it a requirement of the contract. ICE did not draft or negotiate GEO's HUSP."[25] GEO has not produced evidence to the contrary.[26]

GEO's reliance on *Boles v. Greenville Housing Authority*, 468 F.2d 476 (6th Cir. 1972) is misplaced. In *Boles*, the Department of Housing and Urban Development ("HUD") approved a development plan that designated the plaintiffs' property as part of a "blighted" area, and appropriated it to expand a dairy. *Id.* at 477-79 & n.1. This taking was at the heart of the development plan the plaintiffs challenged; therefore, their suit directly attacked HUD's decision. In contrast, Plaintiffs in this case do not challenge ICE's rules or decisions, but rather GEO's policies that skirt those rules. As noted above, GEO has failed to show that ICE had actual knowledge of the extent of the HUSP, making this case distinguishable from *Boles*.[27] And the Sixth Circuit itself has distinguished *Boles* on similar grounds. *See M.B. Guran Co. v. City of Akron*, 546 F.2d

---

[25]     ECF No. 261-7 (Ely Decl.) ¶ 22.

[26]     ECF No. 286 (Pls.' DSI MSJ Reply Br.), Statement of Facts ¶¶ 54-57. GEO may argue that considering these facts requires the Court to adjudicate its DSI defense on the merits, and that this is contrary to Circuit precedent. *See Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 998 (10th Cir.), *opinion modified on reh'g*, 257 F.3d 1158 (10th Cir. 2001) (holding that the "the underlying merits of the litigation are irrelevant" to the Rule 19 analysis). But the Tenth Circuit issued that ruling in the context of a pre-discovery motion to dismiss, whereas here, the merits of the DSI defense are fully briefed and awaiting a decision on summary judgment. Nothing precludes the Court from considering facts in evidence that are relevant to the Rule 19 analysis, even if they overlap with the merits. *See Sierra Club v. Young Life Campaign, Inc*., 176 F. Supp. 2d 1070, 1076 (D. Colo. 2001) (Kane, J.) (the Court may "consider . . . extraneous materials outside the pleadings").

[27]     Although GEO will likely point out that ICE *approved* the HUSP, that approval is unlike the approval in *Boles*, which undisputedly included specific approval of the land use decisions at the heart of the development plans. *See Boles*, 468 F.2d at 479.

201, 204 n.3 (6th Cir. 1976) (no indispensable-party analysis required where plaintiff did not claim that federal agency violated its own rule, but rather that defendant "is violating the HUD rule which [defendant] is contractually committed to obey"); *see also Dorsey v. Tompkins*, 917 F. Supp. 1195, 1200 (S.D. Ohio 1996) (distinguishing *Boles* where plaintiff did not attack the absent federal agency's administrative interpretation, but rather alleged that the defendant failed to comply with it).

This case is more like *Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070 (D. Colo. 2001) (Kane, J.), where this Court found that a state agency was not a necessary party to a citizen suit challenging whether an alleged polluter had violated the terms of a permit granted by the agency. *Id.* at 1078. The Court found that the agency was not a necessary party because the plaintiff was "not seeking to change the terms of the Permit approved by [the agency], only to enforce the Permit terms as written." *Id.* Here, Plaintiffs do not even attempt to *enforce* ICE regulations; they seek to recover damages for actions going beyond the regulations that violate their statutory rights.

### iii. Plaintiffs' Statements to the Media Are Irrelevant to the Rule 19 Analysis.

GEO claims that Plaintiffs' Counsel's statements to the media suggest that the "real" target of this case – whatever that means – is the Trump Administration's policies. ECF No. 307 at 19-20. This argument fails for two reasons. First, as GEO acknowledges, the practices at issue occurred during the Bush and Obama administrations. *Id.* Second, the Rule 19 analysis considers whether the absent party has a "*legally protected* interest in the outcome of the action." *Wisehart v. Wisehart*, No. 18

16

Civ. 21, 2018 WL 11182737, at *1 (D. Colo. Nov. 1, 2018) (emphasis added).  That does not include an interest in avoiding bad press.  Even if Plaintiffs went so far as to allege that ICE was a joint tortfeasor, which they do not, the consequent reputational impacts would be insufficient to make ICE a necessary party.  *See Ward v. Apple Inc*., 791 F.3d 1041, 1053 (9th Cir. 2015) ("We are aware of no cases holding that a joint tortfeasor's reputational interests alone may make it a required party under Rule 19(a).").

GEO's argument would sweep countless parties into litigation in cases where public interest organizations engage in press or political advocacy that touches on systemic problems that are also the subject of litigation.  That would greatly stifle the work of many nonprofits, from the ACLU to the Chamber of Commerce.  Class Counsel Towards Justice uses litigation and other advocacy methods to support marginalized groups in advancing their human and civil rights.  This litigation is part of that advocacy, but it is by no means the extent of it.  The fact that Towards Justice issued a press release advocating for changes to ICE policies that affect the same communities that were exploited by GEO is insufficient to sustain a Rule 19 argument.

###### iv.      Plaintiff Hernandez Ceren's T-Visa Application Does Not Implicate ICE.

Nor is this case an elaborate effort to seek immigration relief from ICE.  ECF No. 307 at 20.  Only one Plaintiff, Hugo Hernandez Ceren, has sought to obtain a T-visa based on the allegations of this case, after several other avenues of immigration relief were denied to him.  ECF No. 274 (H. Hernandez Ceren Mot. for Writ of Habeas Corpus) at 1-3.  ICE filed an appearance in this case to oppose Plaintiff Hernandez Ceren's

*habeus corpus* petition.  ECF No. 281 (ICE Mot. for Reconsideration).  ICE's interests would therefore appear to have been protected in the one instance of collateral immigration-related consequences to which GEO can point.

GEO's claim that "*Menocal* could form the basis for thousands of individuals to potentially seek a modified immigration status" is speculative.  And GEO's conclusory pronouncement that ICE "clearly has an interest in whether visas should issue based upon the operation of [the Aurora facility]," ECF No. 307 at 20-21, rests, again, on the erroneous premise that ICE is somehow to blame for GEO's policies.  In any event, GEO's claim is fundamentally misguided; USCIS, the ICE sister agency that adjudicates T-visa applications, stands as an impartial decisionmaker in such cases, not as an adversary to trafficking victims seeking relief.  GEO fails to persuasively articulate USCIS's (much less ICE's) "interest" in light of this posture.

> **v.      This Case Is Not an Effort to "Step into the Shoes" of ICE.**

GEO's fourth argument, that ICE's interests are implicated by the tenor of Plaintiffs' filings, ECF No. 307 at 21, is based on a distortion of Plaintiffs' positions.  Plaintiffs have not argued that ICE's audits are insufficient, only that there is no evidence that they uncovered the specific violations at issue (much less that ICE *directed* the violations, as GEO must show to sustain its DSI defense).  *See* ECF No. 260 at 31-32.  Nor do Plaintiffs assert a breach of contract claim, so there is no question of Plaintiffs "step[ping] into ICE's shoes."  ICE's interests cannot be impaired by things Plaintiffs have not said or alleged.  *See Crandall v. City & Cty. of Denver, Colorado*, No. 05 Civ.

242, 2006 WL 8429736, at *8 (D. Colo. Feb. 24, 2006) (rejecting necessary-party argument that "assumes a remedy . . . that has not been requested by the Plaintiffs").

### vi.        Plaintiffs Allege No Wrongdoing by ICE.

Nor have Plaintiffs made any allegations or statements regarding ICE's role as an enforcement agency. *See* ECF No. 307 at 21-22. The fact that ICE has some enforcement and oversight authority to prevent human trafficking does not make it a necessary party. GEO's hyperbolic claim that Plaintiffs allege that "ICE is participating in and overseeing a massive, decades-long human trafficking operation" is just so much editorializing. Moreover, the statement falls apart at the word "participating," because there is no evidence (or even allegation, except those made by GEO) that ICE participated in any part of the TVPA violations.[28]

In any event, GEO's reliance on ICE's role as an enforcement agency is insufficient to establish an interest cognizable under Rule 19. GEO "fails to identify any . . . suit in which a court held the responsible government agency was a necessary party because disposition of the action in the agency's absence could impair or impede its ability to protect its interests in the federal . . . program at issue." *Sierra Club*, 176 F. Supp. 2d at 1079; *see also Wis. Res. Prot. Council, Ctr. for Biological Diversity v.*

---

[28]        The only example of ICE's involvement that GEO can cite is an incident in which an on-site ICE officer told Plaintiff Demetrio Valerga that GEO could put him in "the hole" (i.e. solitary confinement) for refusing to clean. *See* ECF No. 307 at 8, ¶ 26. It is unclear from this testimony whether the ICE officer was aware that GEO was trying to enforce cleaning requirements that went beyond the PBNDS. In any event, it hardly supports the conclusion that ICE's involvement was "massive" or "decades-long." ECF No. 307 at 21.

*Flambeau Min. Co.*, 903 F. Supp. 2d 690, 708-09 (W.D. Wis. 2012) (substantively same; distinguishing *Boles* on the ground that it involved an attack on a decision by a federal agency, whereas "[i]n this case, plaintiffs are challenging the actions of a private company, not an action taken by the [agency]." (citations omitted)).  GEO's position is extreme and would require dismissal of, *inter alia*, nearly all statutory employment claims due to a plaintiff's inability to join the Department of Labor, Equal Employment Opportunity Commission, or other federal enforcement agency, rendering private rights of action illusory.

### vii.  Allowing Plaintiffs' Unjust Enrichment Claims to Proceed Without Joining ICE Would Not Impede ICE's Interests.

Plaintiffs' unjust enrichment claims also do not implicate a legally protected interest that would require ICE to be joined in this litigation.  As a threshold matter, the Court need not reach the issue of whether ICE had Congressional authority to mandate a rate of pay in the VWP to dispose of GEO's DSI defense.  It is sufficient to hold that the reimbursement rate in the PBNDS – whether in the 2008 or 2011 iterations – does not actually mandate the rate of pay.  And GEO's conduct shows that it did not consider the PBNDS to contain such a mandate, because it paid more than $1/day in other facilities well before the 2011 PBNDS went into effect.[29]

To the extent that the Court does reach this issue, GEO's arguments are based on speculation about future impacts on Voluntary Work Programs in other ICE contracts. *See* ECF No. 307 at 26-28.  That is insufficient to show that ICE is a necessary party.  *See*

---

[29]    *See* ECF No. 286 (Pls.' DSI MSJ Reply Br.), Statement of Facts ¶¶ 73-75, 95-96.

*MasterCard*, 471 F.3d at 387 (declining to find a Rule 19 interest where an action "could in the future impact a third party's rights under a separate contract."); *see Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1046 (9th Cir. 1983) (explaining, while rejecting mandatory joinder argument, that "[s]peculation about the occurrence of a future event ordinarily does not render all parties potentially affected by that future event necessary or indispensable parties under Rule 19" (collecting cases)).

GEO fails to articulate persuasively how ICE's interests would be impaired by a ruling that ICE lacked Congressional authority to mandate a $1/day pay rate for VWP workers. Plaintiffs do not argue that ICE lacked authority to create a VWP program *at all*; only that Congress withheld from ICE the authority to mandate a rate of pay, because the last Congressional enactment authorizing ICE to spend funds for that program specified that ICE should do so "at such rate as may be specified from time to time in the appropriation Act involved." 8 U.S.C. § 1555(d). When Congress stopped including those funds in appropriations bills after 1979, no authority to set the VWP rate was delegated to ICE. *See* ECF No. 298 at 38-40. But a finding by this Court agreeing with this argument would not "put an end to the VWP." ECF No. 307 at 26. It would only mean that ICE could require a VWP without mandating the rate of pay that contractors must offer, because the rate-setting authority was withheld by Congress.

GEO's argument that such a ruling would leave ICE subject to liability, ECF No. 307 at 27, is poorly articulated, because it does not describe the legal theory under which a contractor might bring such a suit against ICE. Presumably GEO is thinking about a hypothetical breach-of-contract action in the Court of Federal Claims, following other

suits by VWP participants, but this chain of speculation is too attenuated to satisfy Rule 19, which requires more than conjecture about future impacts on other parties' contracts. *See MasterCard*, 471 F.3d at 387.

### 4.    GEO Faces No Risk of Inconsistent Obligations.

Finally, Rule 19(a)(1)(B)(ii) does not apply here because GEO faces no risk of inconsistent obligations.  The idea that ICE's contract would require GEO to continue violating the TVPA is belied by the fact that GEO claims to have already taken remedial steps to prevent such violations from recurring.  GEO Vice President Amber Martin testified that after this lawsuit was filed, GEO implemented a policy prohibiting detainees from being placed in solitary confinement for refusal to clean.[30]  Indeed, if Ms. Martin's testimony is to be believed in its entirety, GEO never had any such practice, notwithstanding the testimony of the Plaintiffs and documentary record showing otherwise.[31]  GEO's claim that ICE policies require it to place people in solitary confinement for violating a GEO policy that goes beyond ICE regulations is unsupported by the facts, contrary to its own factual positions in this litigation, contrary to *ICE's* position, and depends (again) on the fiction that ICE required GEO to create the HUSP and enforce it using the most extreme disciplinary options available.  None of that is true.

Nor do Plaintiffs' unjust enrichment claims expose GEO to inconsistent adjudications.  As noted above, Plaintiffs do not argue that the VWP *program* is not Congressionally authorized – only that setting the pay rate is outside ICE's authority.

---

[30]    Ex. 22 (A. Martin Tr.) 134:11-135:8.
[31]    ECF No. 298, Statement of Facts ¶ 34.

Further, GEO's contract with ICE requires it to comply with the law; therefore, if GEO is not bound by ICE's determination, it is bound by what the law requires (i.e., by the outcome of Plaintiffs' unjust enrichment claims).[32]  A ruling in Plaintiffs' favor would thus only require GEO to comply with that provision of its contract.

### C.    If ICE Is Not Joined, Dismissal Is Not Warranted.

Should the Court conclude that ICE is a required party that cannot be joined because of sovereign immunity, the Court should still deny GEO's motion because "in equity and good conscience, the action should proceed among the existing parties" as opposed to being dismissed.  Fed. R. Civ. P. 19(b).  Any interest ICE has in this litigation (and any interest GEO may have in ICE participating in this litigation) can be protected without joining ICE.  On the other hand, dismissing the case after six years of litigation would shut the courthouse doors to a class of tens of thousands and foreclose a remedy made available to them for forced labor by a federal statute.

Rule 19(b) directs a court to consider (1) the extent to which a judgment rendered in the party's absence might prejudice either them or the existing parties; (2) the extent to which any prejudice could be lessened or avoided; (3) whether a judgment rendered in the party's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed.  Fed. R. Civ. P. 19(b)(1)-(4).

Many of these factors have already been addressed above under Rule 19(a).  As discussed in Part II *supra*, neither ICE nor GEO will be prejudiced by a ruling in ICE's

---

[32]    ECF No. 262-2 (2011 Contract, GEO_MEN 00019613-817) at 37-39.

absence.  ICE has had and will continue to have ample opportunity to express its views in this matter.  And GEO's interest in ICE's involvement turns on the incorrect assertion that the ICE-GEO contract requires the conduct Plaintiffs challenge.  ECF No. 307 at 30. GEO has had every opportunity to litigate its DSI defense, and even to seek discovery from ICE by way of subpoena.  It has fully briefed summary judgment on that defense, and did not assert any inability under Fed. R. Civ. P. 56(d) to present facts relevant to DSI.

As to whether any prejudice (if it exists) can be lessened or avoided, the record on the DSI defense consists of evidence produce both by GEO and – through subpoena – by ICE, which has participated in discovery throughout this litigation to ensure that its own interests are protected.[33]

As discussed in Part II.A *supra*, complete relief in this case is available from GEO, and the inchoate interest it ascribes to the Class's purported non-monetary interests, ECF No. 307 at 31, fall flat.  The idea that "only ICE can change the practices" at issue is belied by the fact that GEO has already changed the practices giving rise to Plaintiffs' TVPA claim, and already exceeds the $1/day reimbursement rate that is challenged by Plaintiffs' unjust enrichment claim.[34]  And Plaintiffs do not seek injunctive relief, so joining ICE to change future practices does not resolve the claims in the case.

---

[33]     *See* Ex 7 (Oct 18, 2019 Court Tr.) 66:24-72:21; ECF No. 236 (Minute Order re Jan. 21, 2020 Disc. Conf.) (noting Timothy Jafek's appearance for the United States), 328 (Minute Order re Oct. 1, 2020 Disc. Conf.) (same).
[34]     ECF No. 287-13 (VWP Pay Rates at GEO's South Texas Facility) at 11-12.

GEO's suggestion that a declaratory judgment is an adequate substitute for the Class's interest in back pay, ECF No. 307 at 31, is unpersuasive.  GEO posits here that the satisfaction of a declaration in the Class's favor is as good as getting paid for their labor.  That is self-evidently wrong, and rests (again) on the notion that the declaration would be sufficient because it is "really" ICE policies at issue.  More importantly, GEO ignores the enormous prejudice to Plaintiffs and the Class that would result from dismissal.  Although GEO is correct that Rule 19 may be raised at any point in litigation, here, GEO has raised it after nearly six years of litigation and discovery that include decisions on dispositive motions and class certification by this Court and the Tenth Circuit.  It is no coincidence that neither GEO nor those courts, acting *sua sponte*, have raised necessary-party issues to date; the facts simply don't support GEO's claims, just as they did not in *Chao Chen*, 2018 WL 1963669, at *3 or *Novoa*, 2018 WL 4057814, at *4.

GEO's reliance on *Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008) and *Enterprise Management Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989) is misplaced, because both cases concerned the immunity of sovereigns other than the United States – respectively, the Philippines and the Citizen Band Potawatomi Tribe of Oklahoma.  *Pimentel* cited "comity interests" in giving greater weight to the Philippines' sovereign immunity, which is not a factor where the United States' immunity is at issue.  553 U.S. at 866.  And the language GEO quotes from *Enterprise* originates in an earlier case that noted that the sovereign immunity of Native American tribes reflects "the fact that society has consciously opted to shield Indian tribes from suit."  883 F.2d at 894 (quoting *Wichita & Affiliated Tribes of Oklahoma v.*

25

*Hodel*, 788 F2d 765, 777 (D.C. Cir. 1986)).  In contrast, where the United States' own immunity is at issue, no concerns of comity preclude a federal court from balancing the interests of the United States and private litigants.

## IV.     CONCLUSION

At the end of the day, the practical effect of what GEO seeks is this: knowing its Derivative Sovereign Immunity defense is unsustainable, it argues that it cannot even be adjudicated because ICE must be joined to do so – but ICE cannot be joined because it enjoys sovereign immunity, so the case must be dismissed.  The argument is as flawed as the defense it is meant to compensate for.  It depends on the same mistaken premises, which have been rebutted by the very party GEO seeks to join.  The Court should reject GEO's conclusion that ICE is a necessary party, much less an indispensable one.

Dated: New York, NY
       October 26, 2020

Respectfully submitted,

By: */s/ Michael J. Scimone*
Michael J. Scimone
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-Mail: mscimone@outtengolden.com

Rachel Dempsey
Adam Koshkin
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: rdempsey@outtengolden.com

E-Mail: akoshkin@outtengolden.com

Alexander Hood
David Seligman
Juno Turner
**TOWARDS JUSTICE**
1410 High St., Suite 300
Denver, CO 80218
(720) 441-2236
alex@towardsjustice.org
david@towardsjustice.org
juno@towardsjustice.org

R. Andrew Free
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

Brandt Milstein
**MILSTEIN LAW OFFICE**
1123 Spruce Street
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

Andrew Turner
**THE KELMAN BUESCHER FIRM, P.C.**
600 Grant St., Suite 825
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com

Hans Meyer
**MEYER LAW OFFICE, P.C.**
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 26, 2020, a copy of the foregoing document was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Michael J. Scimone*
Michael J. Scimone
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone:  (212) 245-1000
E-Mail: mscimone@outtengolden.com

**Exhibit List (Attached to Opposition to Motion to Dismiss for Failure to Join a Required Party)**

**Ex. 1**: Decl. of Michael J. Scimone ("Scimone Decl.") in support of Plaintiffs' Opposition to Defendant's Motion to Dismiss for Failure to Join a Required Party, dated October 26, 2020

**Ex. 2**: Att. 1 to Scimone Decl., Pls.' Opposition Ex. 1, Plaintiffs' Response to GEO's Statement of Facts

**Ex. 3**: Att. 2 to Scimone Decl., Pls.' Opposition Ex. 2, excerpts from the March 29, 2016 30(b)(6) deposition of Dawn Ceja

**Ex. 4**: Att. 3 to Scimone Decl., Pls.' Opposition Ex. 3, March 7, 2018 letter to Attorney General Jefferson B. Sessions, Secretary of Labor Alexander Acosta, and Acting Director of ICE Thomas D. Homan from Representative Steve King of Iowa and 17 other signatories, titled "Recent Lawsuits Seeking Substantial Payments to Alien Detainees for Voluntary Institutional Work Performed while in Immigration Detention at Contract Detention Facilities."

**Ex. 5**: Att. 4 to Scimone Decl., Pls.' Opposition Ex. 4, excerpts from the July 21, 2020 deposition of David Venturella

**Ex. 6**: Att. 5 to Scimone Decl., Pls.' Opposition Ex. 5, Order on Defendant the GEO Group, Inc's Motion to Dismiss Class Action Complaint for Damages, ECF No. 28 in *Chao Chen v. GEO Group, Inc.*, No. 17 Civ. 5769 (W.D. Wash. Dec. 6, 2017)

**Ex. 7**: Att. 6 to Scimone Decl., Pls.' Opposition Ex. 6, Order Denying Defendant's Motion to Dismiss, ECF No. 61 in *Novoa v. GEO Group, Inc.*, No. 17 Civ. 2514 (C.D. Cal. Aug. 22, 2018)

**Ex. 8**: Att. 7 to Scimone Decl., Pls.' Opposition Ex. 7, February 14, 2018 letter to Acting Director of ICE Thomas D. Homan from GEO's Senior Vice President for Business Development, titled "Request for Equitable Adjustment in the Amount of $2,057,000 and Legal Assistance from ICE/DOJ."

**Ex. 9**: Att. 8 to Scimone Decl., Pls.' Opposition Ex. 8, transcript from the October 18, 2019 discovery hearing in *Menocal v. GEO Grp., Inc.*, No. 14 Civ. 2887 (D. Colo.)

**Ex. 10**: Att. 9 to Scimone Decl., Pls.' Opposition Ex. 9, October 11, 2019 letter from Anne M. Rose to Michael J. Scimone titled *Re: Menocal et al. v. The Geo Group, Inc*., 14-cv-02297 (D.Colo.)

**Ex. 11**: Att. 10 to Scimone Decl., Pls.' Opposition Ex. 10, Statement of Interest of the United States, ECF No. 185 in *Washington v. GEO Grp., Inc.*, No. 17 Civ. 5769 (W.D.

Wash. Aug. 22, 2019)

**Ex. 12**: Att. 11 to Scimone Decl., Pls.' Opposition Ex. 11, Brief for the United States as Amicus Curiae in Support of Neither Party, *Ahmed v. CoreCivic, Inc.*, No. 18-15081 (11th Cir. Apr. 1, 2019)

**Ex. 13**: Att. 12 to Scimone Decl., Pls.' Opposition Ex. 12, excerpts from the October 9, 2019 deposition of Amber Martin