# Exhibit 23

| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| 2 | FOR THE DISTRICT OF COLORADO |
| 3 | Civil Action No. 1:14-cv-02887-JLK |
| 4 | _____ |
| 5 | VIDEOTAPED RULE 30(b)(6) DEPOSITION OF: DAWN CEJA, Volume 2 |
| 6 | THE GEO GROUP, INC. September 16, 2020 |
| 7 | (via RemoteDepo™) _____ |
| 8 | ALEJANDRO MENOCAL, et al., |
| 9 | Plaintiffs, |
| 10 | v. |
| 11 | THE GEO GROUP, INC., |
| 12 | Defendant. |
| 13 | _____ |
| 14 | |
| 15 | PURSUANT TO NOTICE, the Rule 30(b)(6) deposition of DAWN CEJA, THE GEO GROUP, INC., was taken on behalf of the Defendant, in Arapahoe County, |
| 16 | Colorado, on September 16, 2020, at 1:03 p.m., before Wendy C. Heath, Certified Realtime Reporter, |
| 17 | Registered Professional Reporter and Notary Public within Colorado, appearing remotely from Jefferson |
| 18 | County, Colorado. |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

```
 1   might make a determination to transfer her.
 2          Q.   What if you felt as though a female
 3   detainee was a danger to herself or to others, did you
 4   have a way to segregate her from the main population
 5   in the old facility?
 6               MS. SCHEFFEY:  Object to form.
 7          A.   That's a very broad question.  So  when
 8   you say a detainee that could hurt or harm herself,
 9   then obviously medical would get involved, mental
10   health would get involved.  There could be the
11   possibility that that detainee might be placed on a
12   constant watch.  There are a lot of things that play
13   into that.  So is there something specific?
14          Q.   (BY MS. TURNER)  I'm just trying -- it
15   seems odd that you didn't have a means to segregate
16   them the same as you would for male detainees,
17   particularly in light of the lengthy segregation
18   policies that in were effect.
19               So I'm just -- I'm trying to figure out,
20   you know, what options you had available to you to
21   segregate a female detainee.
22               MS. SCHEFFEY:  Object to form.
23          A.   In my opinion and in my experience that
24   really wasn't an issue because ICE would not bring us
25   high-level females early on in, you know, 2004, 2005,
```

1    whatever the case is.  We always had lower-level
2    detainees, so we never had a lot of problems with the
3    female detainees.
4              Our contract and the building setup in
5    the old facility had the one restrictive housing unit
6    and that was it.
7         Q.   (BY MS. TURNER)  Okay.  And so if you
8    did have -- if the circumstance had arisen where you
9    did have a detainee who needed to be segregated, you
10   didn't really have an option for that; is that your
11   testimony?
12        A.   That's correct.  And like I've testified
13   before, each case, you know, should be based on its
14   own merits.  So every issue would be looked at and a
15   solution would be made.
16        Q.   Do female detainees receive the same
17   orientation that male detainees did?
18        A.   Yes.
19        Q.   So they were advised of the disciplinary
20   policies the same as the male detainees were?
21        A.   Yes.  There was no difference in the
22   information received, whether it was a male detainee
23   or a female detainee.
24        Q.   So The GEO Group didn't advise female
25   detainees that segregation was not an option for them,

```
 1   correct?
 2              MS. SCHEFFEY:  Object to form.
 3         A.   As I just stated, the information was
 4   the same.
 5         Q.   (BY MS. TURNER)  Okay.  And similarly
 6   with regard to the new facility, in the new facility
 7   is there a place where female detainees can be sent to
 8   segregation?
 9         A.   No.  So I think this was brought up in
10   my deposition before, wasn't it?
11         Q.   Yeah, I can -- I can put what you said
12   there.  And I'm just not entirely clear what it means.
13   I'll put that in the chat, too.  So are you able to
14   see it in the chat?  You testified that --
15         A.   I don't see it yet.
16         Q.   Nothing has --
17              MS. SCHEFFEY:  I don't see anything.
18              MS. TURNER:  Let me see.  There.  Sorry.
19              MS. SCHEFFEY:  Okay.  I'm just getting
20   it in now.
21              MS. TURNER:  Okay.
22         Q.   (BY MS. TURNER)  So here again where you
23   said -- line 17 there it says:  We have two of the
24   larger units so we can just move them back and forth.
25              Was what you were referencing there the
```

1   same as you in the old facility where you could
2   separate two detainees who had had a fight?
3           A.  Yes.  At one point there was one unit
4   for females and then that ended up being two housing
5   units.  So if there were issues, they could move
6   between the female housing units.
7           Q.  Okay.  So if there are issues between
8   the detainees, they could just be separated between
9   the two units, correct?
10          A.  Correct.
11          Q.  But there wasn't a separate segregation
12  unit for females?
13          A.  No.
14          Q.  But, again, that's not something that
15  was conveyed to detainees, correct?
16              MS. SCHEFFEY:  Object to form.
17          A.  I don't understand what you are asking.
18          Q.  (BY MS. TURNER)  You didn't tell
19  detainees, female detainees, when they arrived at the
20  facility, that there was not a segregation unit for
21  them, right?
22          A.  No, as I just said, the information
23  provided to the males was exactly the same that was
24  provided to the females.
25          Q.  Okay.  Do you know who Paul Pinkonsly

```
 1                   REPORTER'S CERTIFICATE

 2   STATE OF COLORADO        )
                              ) ss.
 3   CITY AND COUNTY OF DENVER )

 4
              I, WENDY C. HEATH, Certified Realtime
 5   Reporter, Registered Professional Reporter and Notary
     Public ID 20094009780, State of Colorado, do hereby
 6   certify that previous to the commencement of the
     examination, the said deponent, DAWN CEJA, verbally
 7   declared her testimony in this matter was under the
     penalty of perjury; that the said deposition was taken
 8   in machine shorthand by me at the time and place
     aforesaid and was thereafter reduced to typewritten
 9   form; that the foregoing is a true transcript of the
     questions asked, testimony given, and proceedings had.
10
              I further certify that I am not employed
11   by, related to, nor of counsel for any of the parties
     herein, nor otherwise interested in the outcome of
12   this litigation.

13            IN WITNESS WHEREOF, I have affixed my
     signature this 30th day of September, 2020.
14
              My commission expires April 20, 2021.
15

16   __X__ Reading and Signing was requested.

17   _____ Reading and Signing was waived.

18   _____ Reading and Signing is not required.

19                  [signature: Wendy C. Heath]

20                  _____

                    Wendy C. Heath
21                  Certified Realtime Reporter
                    Registered Professional Reporter
22

23

24

25
```