# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-02887 JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA
on their own behalf and on behalf of all others similarly situated,

    Plaintiffs,

v.

THE GEO GROUP, INC.,

    Defendant.

## PLAINTIFFS' RESPONSE TO DEFENDANT'S
## NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs respectfully submit this response to Defendant GEO's Notice of Supplemental Authority, ECF No. 335.  GEO's Notice submits a declaration from an Immigration & Customs Enforcement ("ICE") officer, Jay Brooks, that was obtained in another action.  The Brooks Declaration is of marginal relevance to the factual and legal issues in this case, fails to meet the standard for evidence admissible at summary judgment because it is not based on personal knowledge, *see* Fed. R. Civ. Proc. 56(c)(2), (4), and has little impact on the motions now before the Court.

As a threshold matter, the Brooks Declaration does not refer to the GEO policies at issue in this case. In a recent hearing in *Novoa v. GEO Group*, where the Brooks declaration was produced, ICE clarified this point, explaining that in contrast to *Menocal*, where ICE has determined that "we didn't draft this particular [HUSP]," Ex. A (Novoa Hrg. Tr.) 61:19-62:16, the Brooks declaration provides information about 11 other facilities that form the *Novoa* class – which specifically excludes the Aurora facility during the time period at issue in this case. *See Novoa v. GEO Grp., Inc.*, No. 17 Civ. 2514, 2019 WL 7195331, at *10 (C.D. Cal. Nov. 26, 2019) (noting exclusions from class definition). The time period is of particular importance because the pre-2014 Aurora HUSP differs from the current version; GEO's Vice President Amber Martin testified that GEO changed that policy after this case was filed. *See* ECF No. 261-2 (A. Martin Tr.) 145:7-148:23. Thus, whatever input ICE had into the *Novoa* policies (including, perhaps, the post-2104 Aurora HUSP), the Brooks Declaration does not establish that it had input into the policy at issue here.

Whatever marginal relevance the Brooks Declaration has is further diminished when it is examined through the lens of the various motions currently before the Court.

I.  **The Brooks Declaration Sheds No Light on GEO's Derivative Sovereign Immunity Defense.**

GEO's Notice continues to attack a straw man by focusing on whether GEO breached its contract with ICE. This is not a breach of contract case. GEO's DSI defense turns on whether "the government has directed [GEO] to do the very thing that is the subject of the claim." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 n.6 (2001).

Whether ICE *directed* GEO to coerce detainees into deep-cleaning common areas is a different question than whether ICE tacitly approved such policies, *see* ECF No. 298, Part IV.A., and that inquiry is not furthered by a suggestion that ICE "may have" done so, or by claims about ICE's subjective intent in drafting the PBNDS.

### A. Brooks' Statements Do Not Raise Genuine Disputes of Fact Sufficient to Change the Outcome on Summary Judgment.

The vague and conclusory statements in the Brooks Declaration do little to bolster GEO's immunity arguments and are not enough to raise a genuine issue of fact in favor of either party. Ms. Brooks' central claim – that "ICE may have had some input and may have reviewed GEO HUSPs at . . . various facilities [not including the 2004-2014 Aurora HUSP,]" ECF No. 335-2 (Brooks Decl.) ¶ 10 – is too vague to have any bearing on the Parties' summary judgment motions. The statement fails to specify the kind of input, the nature of the review, or even which policies are being described. These kinds of "'conclusory allegations without specific supporting facts have no probative value,'" and therefore "cannot be used to support summary judgment." *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) (quoting *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990)). GEO extrapolates from these conclusory statements that ICE "did, in fact, provide input into the policies [at issue in this case]," GEO's Notice 4, but this goes beyond reasonable inference-drawing and ventures into the realm of speculation. It adds nothing to GEO's motion for summary judgment on its Derivative Sovereign Immunity ("DSI") defense, because it requires several inferences to be drawn in favor of GEO, the moving party.

3

Nor does the Brooks Declaration create a genuine issue of fact in the context of Plaintiffs' motion for summary judgment on DSI. Even if one were to supply the missing statement that ICE "may have provided some input" into the *Aurora HUSP*, and draw the multiple inferences that "may have" means "did," and "some input" means "a direction to perform in accordance with," these inferences fail to raise a *genuine* issue of material fact in the face of Amber Martin's specific testimony that GEO *never* discussed the scope of cleaning duties permitted by the PBNDS with anyone at ICE. ECF No. 261-2 (A. Martin Tr.) 196:16-198:6. To defeat summary judgment, a party must set forth "specific facts," not "mere allegations or denials." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal quotation marks omitted). In the face of clear record evidence, a statement that contrary evidence "may" exist, without a showing that it actually *does* exist, is not enough to find that a reasonable jury could return a verdict in GEO's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record . . . a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").[1]

---

[1] For the same reasons, GEO's claim that the Brooks Declaration clarifies the Shannon Ely Declaration is wrong; because Brooks is vague about the degree of input that ICE "may have had" (into unspecified policies), her declaration only muddies the waters. Ely specifically speaks to the Aurora HUSP, and states definitively that the HUSP "was not created by ICE nor is it a requirement of the contract. ICE did not draft or negotiate GEO's HUSP." ECF No. 261-7 (Ely Decl.) ¶ 22; *see also* Ex. A. (Novoa Tr.) 61-62.

4

B.  **Brooks Fails to Raise Material Questions About the Scope of Cleaning Permitted By the PBNDS.**

Nor is the DSI analysis altered by the Brooks Declaration's second claim, that the description of "personal housekeeping" in the Performance Based National Detention Standards ("PBNDS") is not an exhaustive list of tasks that a contractor may require.  As an initial matter, this statement relies on speculation and hearsay, not personal knowledge, and Plaintiffs object to its consideration at summary judgment pursuant to Fed. R. Civ. P. 56(c)(2) and (4) (affidavits used at summary judgment must be based on admissible evidence and made on personal knowledge).  Brooks bases her claim on the purported intent of ICE's drafters rather than the text of the PBNDS.  *See* Brooks Decl. ¶ 14.  But Brooks only participated in drafting the 2011 PBNDS, *id.*, and the language she describes also existed in the 2008 and 2000 standards.  ECF Nos. 261-9 (2008 PBNDS) at GEO-MEN 00063294-95; 261-10 (2000 NDS) at GEO-MEN 00063672.  To the extent Brooks has knowledge of the intent of those earlier drafting teams, it appears to be based on "discussion with [unidentified] ERO subject matter experts," Brooks Decl. ¶ 15, and thus fails to satisfy Rule 56(c)(4)'s requirement that affidavits used to support or oppose summary judgment must be "made on personal knowledge." Fed. R. Civ. P. 56(c)(4).  Brooks' vague references to discussions with unidentified individuals rely on hearsay, and fail to establish that knowledge.  *See Hansen v. PT Bank Negara Indonesia*, 706 P.3d 1244, 1250-51 (10th Cir. 2013) (affirming finding that declaration was inadmissible due to lack of sufficiently detailed foundation to show personal knowledge); *Ewing v. Doubletree DTWC LLC*, No. 2:14-CV-00526 DS, 2016 WL 750653, at *2 (D. Utah, Feb.

5

24, 2016) (statement that "everyone . . . knew" certain facts was too conclusory and speculative to satisfy Rule 56(c)(4)). Ms. Brooks' belief that others shared her understanding is not enough.

In any case, although Brooks states that the PBNDS does not provide an "exhaustive list" of permitted tasks, she stops short of saying that sanitizing, sweeping, and mopping common areas used for meals *is* permitted. Brooks maintains a distinction between "keeping general-use or detainee common areas clean and orderly," and "[c]leaning of recreation areas, dining rooms, [and] multi-purpose rooms . . . ." Brooks Decl. ¶ 17. These statements beg the question, because the housing pods at Aurora fit both descriptions. And there is a common-sense distinction between keeping an area clean of one's own mess and scrubbing, sweeping, and mopping it. If the list of housekeeping tasks in the PBNDS mean anything at all, they at least illustrate the *kinds* of tasks that are permitted. *See In re McDaniel*, 973 F.3d 1083, 1097 (10th Cir. 2020) (describing *noscitur a sociis* canon that words are read in the context of "the company they keep"). Thus, placing one's own meal tray on a cart might be analogous to "keeping the floor free of debris and dividers free of clutter," but scrubbing, sweeping, and mopping up after 80 other people are not. Brooks fails to provide the needed specificity to create a material dispute of fact about what a plain reading of the PBNDS reveals.

GEO's preferred inferential reading, that the PBNDS permits any extent of communal housekeeping GEO likes, is contrary to several explicit ICE statements of

policy.[2]  First, as Brooks notes, a Department of Homeland Security inspection at a GEO facility in 2017 found that "requiring detainees to clean common areas used by all detainees is in violation of ICE standards, as detainees are only required to clean their immediate living area."  Brooks Decl. ¶ 12.  Brooks points out that ICE did not comment specifically on this statement, *id*.; but ICE did state that it concurred with the resulting recommendation that it "undertake a full review and inspection . . . to ensure compliance with ICE's 2008 [PBNDS]."  If ICE believed that OIG misunderstood ICE policy, one would expect it to state that disagreement in the report, as it did elsewhere when it noted that "USDA methods or protocols for safe food handling are not a requirement of ICE's 2008 PBNDS."  ECF No. 287-17 (OIG Report) at 5.

Second, Brooks' statement is inconsistent with the Department of Justice's position, which was adopted by the Eleventh Circuit in *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269, 1277 (11th Cir. 2020) ("nothing in the PBNDS permits CoreCivic, or other private contractors operating immigration detention facilities, to force detainees to perform labor (beyond personal housekeeping tasks).")  The DOJ argued as *amicus curiae* that the TVPA does not bar a detention contractor from acting "in accord with the PBNDS, including by . . . requiring detainees to complete basic personal housekeeping tasks,"[3] but that courts adjudicating TVPA claims against detention contractors "must

---

[2]   If ICE did in fact permit forced cleaning without limit, that agency action would violate the Thirteenth Amendment's prohibition on involuntary servitude.  *See* U.S. Const. amend. XIII, § 1.  ICE does not have the authority to "validly confer" permission to violate the Constitution.  *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 20 (1940).
[3]   The DOJ specifically quoted the list of permitted housekeeping tasks elsewhere in its brief.  ECF No. 338-12 (DOJ *Amicus Curiae* Brief on Behalf of Neither Party) at 3.

7

carefully scrutinize" the allegations to determine whether they allege forced labor beyond those limits.  ECF No. 338-12 (DOJ *Amicus Curiae* Brief on Behalf of Neither Party) at 6.  As GEO characterizes Brooks' reading of the PBNDS, no such careful scrutiny is possible, because the PBNDS contain no clear indication of what tasks are permitted.

Third, ICE has explicitly *disagreed* with the proposition that the PBNDS are unclear in this respect.  When GEO argued that ICE should indemnify it for defending this lawsuit, based on the argument that the PBNDS failed to specify what conduct was permitted, ICE responded that, "the performance specifications and standards are not 'incomplete' and are not defective . . . the PBNDS outlines the purpose, scope, and expected outcomes of the [Voluntary Work] program," and cited the section of the PBNDS that contains the permitted list of mandatory "personal housekeeping."  ECF No. 300-1 (ICE denial letter) at GEO-MEN00186866.  Brooks, apparently, disagrees with her agency's own determination, claiming that the PBNDS "would greatly benefit from clarification," and recognizing that such clarification would require formal agency action.  Brooks Decl. ¶ 15.

All of these contradictions cast doubt on the accuracy of statements made in the Brooks Declaration, and GEO's interpretation thereof.  But none of them creates a genuine dispute of fact.  Nowhere does Brooks state that the PBNDS permit the kind of cleaning that goes on at Aurora.  At best, she begs the question, but in the face of a plain reading of the PBNDS that is consistent with ICE's position in this and other litigation

8

(and common sense), vague suggestions such as those in the Brooks Declaration fall short of the showing required to defeat summary judgment.  *Scott*, 550 U.S. at 380.[4]

## II.     The Brooks Declaration Has No Bearing on the Rule 19 Analysis.

For all of the reasons discussed above, the Brooks Declaration does not show that ICE is a necessary party under Rule 19.  Whatever information the declaration supplies about the agency's intent in drafting the PBNDS, it does not show that GEO's interpretation of the PBNDS is correct, or outweigh ICE's other, more explicit statements disclaiming any interest in this case.  If anything, the existence of the declaration shows that ICE has ample means to express its views in litigation.

## III.    The Brooks Declaration Does Nothing to Advance GEO's Motion for Summary Judgment.

Brooks' claim that ICE "may have had input" into GEO policies other than the ones at issue in this case does not convert the threat of solitary confinement into a "legitimate consequence" that is insulated from a jury's review.  For all of the reasons discussed in Plaintiffs' opposition to GEO's motion for summary judgment, *see* ECF No. 336, Part V.A.4., determining whether GEO threatened detainees with serious harm to coerce their labor, as opposed to innocently reminding them of legitimate consequences,

---

[4]     To the extent the Court finds the Brooks declaration probative, Plaintiffs respectfully request leave to depose Ms. Brooks, at GEO's expense, to eliminate any prejudice caused by GEO's disclosure of her declaration after the close of discovery.  *See Smith v. Aurora Pub. Schs.*, 318 F.R.D. 429, 433 (D. Colo. 2016) (failure to disclose witnesses was not justified or harmless pursuant to Rule 37(c)(1) and permitting opportunity to depose affiants, with partial cost-sharing by producing party).

is a fact-based determination that is properly left to the jury, and is not appropriate for summary judgment.

Dated: New York, NY
November 10, 2020

Respectfully submitted,

By: */s/ Michael J. Scimone*
Michael J. Scimone
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-Mail: mscimone@outtengolden.com

Rachel Dempsey
Adam Koshkin
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: rdempsey@outtengolden.com
E-Mail: akoshkin@outtengolden.com

Alexander Hood
David Seligman
Juno Turner
**TOWARDS JUSTICE**
1410 High St., Suite 300
Denver, CO 80218
(720) 441-2236
alex@towardsjustice.org
david@towardsjustice.org
juno@towardsjustice.org

R. Andrew Free
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

Brandt Milstein
**MILSTEIN LAW OFFICE**
1123 Spruce Street
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

Andrew Turner
**THE KELMAN BUESCHER FIRM, P.C.**
600 Grant St., Suite 825
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com

Hans Meyer
**MEYER LAW OFFICE, P.C.**
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2020, a copy of the foregoing document was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Michael J. Scimone*
Michael J. Scimone
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
E-Mail: mscimone@outtengolden.com

12