**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 1:14-cv-02887-JLK-MEH

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA,
*on their own and on behalf of all others similarly situated*,

      Plaintiffs,

v.

THE GEO GROUP, INC.,

      Defendant.

---

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
FOR FAILURE TO JOIN REQUIRED PARTY**

---

Defendant The GEO Group, Inc. ("GEO"), through its undersigned counsel, respectfully submits the following reply brief in support of its motion to dismiss the class's claims for a violation of the Trafficking Victim's Protection Act ("TVPA") and unjust enrichment under Rule 19 and Rule 12(b)(7) (the "Motion") based upon the class's failure to join a required party, namely, United States Immigration and Customs Enforcement ("ICE").

## TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................... 1

II.   ICE IS A NECESSARY PARTY ............................................................... 3

    A.    The *Novoa* and *Chen* orders cited by Plaintiffs applied different law to different facts, particularly as to the Plaintiffs' TVPA claim ...................................... 3

    B.    Disposing of Plaintiffs' claims without ICE would impair ICE's ability to protect its interests ....................................................................................................... 4

        i.    TVPA Claim ............................................................................. 6

            a.    ICE's contract rights are directly implicated and impaired ..................... 6

            b.    Plaintiffs challenge ICE's policies and decisions ........................... 8

            c.    Plaintiffs' counsels' statements to the media contradict the position taken in Plaintiffs' Response ................................................................ 9

            d.    Plaintiffs have attempted to obtain T nonimmigrant status based on the allegations in this lawsuit ............................................................. 10

            e.    Plaintiffs allege ICE failed to enforce the TVPA ......................... 11

        ii.    Unjust Enrichment Claim .......................................................... 12

            a.    ICE's contract rights are directly implicated and impaired ..................... 12

            b.    ICE's policies and practices are directly implicated and impaired ........ 14

    C.    Absent joinder of ICE, GEO would be subject to inconsistent obligations ............. ........................................................................................................................ 16

        i.    TVPA Claim ......................................................................... 16

        ii.    Unjust Enrichment Claim ...................................................... 19

III.  JOINDER IS NOT FEASIBLE BECAUSE ICE IS IMMUNE .................... 20

IV.   WITHOUT ICE, THE ACTION SHOULD BE DISMISSED ........................ 20

V.    CONCLUSION ............................................................................................ 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barrientos v. CoreCivic, Inc.*,
    951 F.3d 1269 (11th Cir. 2020) ....................................................................................3

*Boles v. Greenville Hous. Auth.*,
    468 F.2d 476 (6th Cir. 1972) ...................................................................................12, 15

*Center for Biological Diversity v. Pizarchik*,
    858 F. Supp. 2d 1221 (D. Colo. 2012)..........................................................................2

*Citizen Potawatomi Nation v. Norton*,
    248 F.3d 993 (10th Cir. 2001) ......................................................................................4

*Crouse-Hinds Co v. InterNorth, Inc.*,
    634 F.2d 690 (2d Cir. 1980).........................................................................................15

*Dep't of Army v. Blue Fox, Inc.*,
    525 U.S. 255 (1999).....................................................................................................20

*Gonzalez v. CoreCivic, Inc.*,
    17-CV-02573, 2018 WL 1621543 (S.D. Cal. Apr. 4, 2018).........................................3

*Ins. Co. of State of Penn. v. LNC Cmtys. II, LLC*,
    11-cv-649-MSK-KMT, 2011 WL 5548955 (D. Colo. Aug. 23, 2011) ..............................4, 5

*Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v. Babbitt*,
    43 F.3d 1491 (D.C. Cir. 1995) ..................................................................................4, 5

*Mastercard International Inc. v. Visa International Service Association*,
    471 F.3d 377 (2d Cir. 2006).......................................................................................15

*Ndambi v. CoreCivic, Inc.*,
    RDB-18-3521, 2019 WL 4735428 (D. Md. Sept. 27, 2019) ......................................3

*Northrop Corp. v. McDonnell Douglas Corp*,
    705 F.2d 1030 (9th Cir. 1983) ...............................................................................15, 16

*Three Stars Prod. Co. v. BP Am. Prod. Co.*,
    No. 11-cv-1162-WYD-MJW, 2012 WL 32916 (D. Colo. Jan. 6, 2012) .....................3

*United States v. Brye*,
    146 F.3d 1207 (10th Cir. 1998) ...............................................................................................19

**Other Authorities**

7 Fed. Prac. & Proc. § 1617 (3d ed. 2018).................................................................................2, 20

iii

## I.    INTRODUCTION

Plaintiffs' Response fails to address a key piece of evidence from GEO's Motion: the ICE National Detainee Handbook that expressly and unambiguously provides that detainees must clean their living area and general use area, will not be paid to do so, and are subject to discipline for failing to clean. *See* ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), pp. 7-8, ¶ 18. Plaintiffs admit that the ICE National Detainee Handbook is an ICE policy and that GEO's contract with ICE requires GEO to comply with ICE policies above any other conflicting contractual standard. ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 5, ¶ 9. Thus, it is undisputed that GEO's contract with ICE required GEO to enforce ICE's rules requiring detainees to clean their living areas and general use areas, including subjecting detainees to discipline for refusing to clean. Those are the very rules that Plaintiffs allege violate the TVPA. Further, Plaintiffs do not dispute ICE's crucial role in enforcing the TVPA's criminal prohibitions. ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), pp. 12-14, ¶¶ 28-33. Thus, as argued in GEO's Motion, it is undisputed that Plaintiffs allege ICE's own policies violate the TVPA—a statute that ICE is statutorily charged with enforcing. Against this backdrop, there can be no question that ICE is a necessary party under Rule 19.

Indeed, the Declaration of Jay Brooks—who is a supervisory detention and deportation officer in ICE's Custody Management Division—definitively establishes that Plaintiffs' TVPA claim directly attacks ICE policy. Importantly, Ms. Brooks' Declaration was provided at the request of *Plaintiffs'* counsel Andrew Free for a declaration that would serve as Rule 30(b)(6) testimony. ECF 335-1 (ICE Ltr.), p. 2. Ms. Brooks' Declaration should come as no surprise, as she simply restates what is expressly set forth in the ICE National Detainee Handbook. Specifically, she states that ICE's policy is "[e]veryone living in a group housing unit shares a co-responsibility

to keep the dormitory, dayroom, shower and bathroom areas tidy and clean." ECF 335-2 (Brooks Dec.), p. 6, ¶ 17. That requirement is precisely what Plaintiffs allege violates the TVPA.[1]

As to Plaintiffs' unjust enrichment claim, Plaintiffs' Response argues different standards applied to GEO's government contract than those expressly agreed to by ICE and GEO and attempts to shy away from Plaintiffs' sweeping argument that ICE's Voluntary Work Program ("VWP") lacks Congressional authorization. *See* ECF 298 (Pltfs.' Resp. to Cross M.S.J.), pp. 40-45. Further, Plaintiffs fail to address the natural and logical consequences for ICE of a ruling that ICE's decades-old $1.00 per day allowance is not a legal safe harbor for ICE's contractors. Such a ruling would disrupt operations at ICE's facilities around the country.

Finally, Plaintiffs do not contest that ICE's sovereign immunity precludes it from being joined in this case. As Wright and Miller observe, when the government is a necessary party and cannot be joined because of sovereign immunity, "the suit has been dismissed." 7 Fed. Prac. & Proc. § 1617 (3d ed. 2018). Plaintiffs' Response does not identify a single case where an action went forward in which the government was a necessary party shielded from joinder by sovereign immunity. As courts in this District have observed, when an immune sovereign is a necessary party under Rule 19(a), a court's discretion to allow the case to proceed under Rule 19(b) "is to a great degree circumscribed." *Center for Biological Diversity v. Pizarchik*, 858 F. Supp. 2d 1221, 1228

---

[1] Plaintiffs, not GEO, asked ICE for Ms. Brooks' Declaration. They received it at least three days before their Response to GEO's Rule 19 Motion was due. Two days before Plaintiffs' Response was due, GEO filed a non-argumentative Notice of Supplemental Authorities (ECF 335) to its pending motions adding this new Declaration for the Court's consideration. Plaintiffs ignored the Brooks Declaration in their Response. Instead, two weeks later, they filed an improper and argumentative Response to GEO's Notice of Supplemental Authorities (ECF 345) attempting to discredit the very Declaration from ICE that they asked for. Plaintiffs also inconsistently argue that the Brooks Declaration is hearsay but that the Shannon Ely Declaration is not, even though both Declarations are based upon information the declarant received in their official capacities.

(D. Colo. 2012); *see also, Three Stars Prod. Co. v. BP Am. Prod. Co.*, No. 11-cv-1162-WYD-MJW, 2012 WL 32916, at * 6 (D. Colo. Jan. 6, 2012). Here, ICE is a necessary party, is immune from suit, and its interests would be impaired by adverse rulings in this case. Accordingly, the case must be dismissed.

## II.    ICE IS A NECESSARY PARTY

**A.    The *Novoa* and *Chen* orders cited by Plaintiffs applied different law to different facts, particularly as to the Plaintiffs' TVPA claim**

The *Novoa* and *Chen* orders cited by Plaintiffs did not address the Plaintiffs' unique argument in this lawsuit that GEO violates the TVPA by implementing ICE's rule that detainees must clean their living area and general use. No similar argument was before either court. Rather, the *Novoa* and *Chen* decisions solely addressed how GEO implemented ICE's VWP at the California and Washington ICE facilities. Neither court was forced to grapple with Plaintiffs' argument—unique to this Motion—that GEO violates the TVPA by doing exactly what ICE expressly tells detainees in the ICE National Detainee Handbook.

To be sure, the *Novoa* and *Chen* orders did address arguments related to the VWP that are similar to Plaintiffs' unjust enrichment claim in this case. But the orders in *Novoa* and *Chen* did not address Plaintiffs' argument that ICE's VWP lacks Congressional authorization. Those orders also failed to address how the lack of a safe harbor VWP payment amount to detainees would affect ICE facilities in states like Colorado, where neither the Fair Labor Standards Act nor Colorado Minimum Wage Order applies to detainees.[2] Indeed, both the *Novoa* and *Chen* cases

---

[2] Highlighting that Plaintiffs challenge an ICE policy, GEO is not the only ICE contractor facing similar VWP-related allegations. *See e.g. Ndambi v. CoreCivic, Inc.*, RDB-18-3521, 2019 WL 4735428 (D. Md. Sept. 27, 2019); *Gonzalez v. CoreCivic, Inc.*, 17-CV-02573, 2018 WL 1621543 (S.D. Cal. Apr. 4, 2018); *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269 (11th Cir. 2020).

include claims for minimum wage under applicable state law and neither court has yet resolved whether detainees are "employees" under Washington or California state law. This Court dismissed Plaintiffs' minimum wage claim long ago. ECF 23 (Memorandum Opinion & Order).

Finally, both *Novoa* and *Chen* applied Ninth Circuit law, which requires an absent party to affirmatively claim an interest under Rule 19. But as to this case, GEO argued—and Plaintiffs did not contest—that the Tenth Circuit standard differs. Unlike the Ninth Circuit, "the Tenth Circuit has construed Rule 19's requirement that an absent party 'claims an interest' to mean that the interest need not be demonstrably and legally valid." *Ins. Co. of State of Penn. v. LNC Cmtys. II, LLC*, 11-cv-649-MSK-KMT, 2011 WL 5548955, at *8 (D. Colo. Aug. 23, 2011), *recommendation accepted by* 2011 WL 5553808 (Nov. 15, 2011). *See also Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 998 (10th Cir. 2001) (quoting prior Tenth Circuit precedent for the rule that Rule 19 "does not require the absent party to actually *possess* an interest" and only excludes "interests that are patently frivolous"). In summary, the *Novoa* and *Chen* cases applied different law to different facts and are not helpful or instructive for resolving GEO's Motion, particularly as to Plaintiffs' TVPA claim.

**B.     Disposing of Plaintiffs' claims without ICE would impair ICE's ability to protect its interests**

Plaintiffs incorrectly argue that ICE's "sporadic" participation in certain aspects of this litigation indicates that ICE does not have a legally protected interest that could be impaired if it is not joined. ECF 338 (Resp.), p. 13. If anything, the opposite is true—ICE would not be participating, even just "sporadically," unless its interests were implicated by this lawsuit. And the sovereign's refusal to intervene in a lawsuit is not part of the Rule 19 analysis. *Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v. Babbitt*, 43 F.3d 1491, 1498 (D.C. Cir. 1995)

4

("Failure to intervene is not a component of the prejudice analysis where intervention would require the absent party to waive sovereign immunity."). Unlike some other Circuits, the Tenth Circuit does not require an absent party to intervene in a suit or otherwise affirmatively claim an interest to qualify as a required party under Rule 19(a)(1)(B). *See* ECF 307 (Mot.), pp. 22-23. Plaintiffs' Response neither identifies any Tenth Circuit case law to the contrary nor argues that the Court should depart from the existing Tenth Circuit law.

Instead, Plaintiffs cite the *Novoa* and *Chen* district court cases in the Ninth Circuit where the courts considered whether ICE had taken steps to affirmatively claim an interest in the litigation. ECF 338, pp, 13-14. But, unlike the Tenth Circuit, the Ninth Circuit specifically requires an absent party to affirmatively claim an interest to quality as a necessary party under Rule 19. *See Ins. Co. of State of Penn. v. LNC Cmtys. II, LLC*, 11-cv-649-MSK-KMT, 2011 WL 5548955, at *8 (D. Colo. Aug. 23, 2011) ("While an absent party may be required to affirmatively 'claim' its interest in the Second Circuit and the Ninth Circuit, there does not appear to be any such requirement in the Tenth Circuit."). Plaintiffs point out that ICE expressly claimed an interest in the Ninth Circuit cases, but has not done so here. The logical conclusion is ICE has not done so in this case because it is not required to under Tenth Circuit law, and ICE's failure to intervene is not a component of the Rule 19 analysis. *Kickapoo*, 43 F.3d at 1498.

Throughout their Response, Plaintiffs also improperly conflate the standard for GEO's derivative sovereign immunity defense with the standard for ICE's interests being impaired under Rule 19(a). ECF 338 (Resp.), p. 15. But while some underlying evidence is similar, the basis for GEO's Rule 19 Motion is legally and factually distinct from the basis for GEO's claim to derivative sovereign immunity. GEO's derivative sovereign immunity defense is premised on the argument

that GEO is immune from Plaintiffs' claims by virtue of authorization and direction that GEO received from ICE. GEO's Rule 19 Motion rests on the premise that Plaintiffs' claims implicate ICE's interests to such an extent that ICE is a necessary party under Rule 19(a) and that the case should be dismissed under Rule 19(b) because ICE's sovereign immunity precludes it from being joined. Again, while the underlying evidence is similar, these are different arguments with different legal standards.

The undisputed evidence in the record makes clear that Plaintiffs' claims would impair ICE's ability to protect its contractual, policy, and statutory interests. Those interests are set forth in more detail below.

     **i.**     **TVPA Claim**

          **a.**     **ICE's contract rights are directly implicated and impaired**

Three pieces of undisputed evidence show that ICE's contract rights are directly implicated by Plaintiffs' claims. First, Plaintiffs admit that the ICE National Detainee Handbook is an ICE policy and that ICE's contract with GEO requires GEO to comply with ICE policy above any other conflicting standard. ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 5, ¶ 9. The ICE National Detainee Handbook unambiguously informs detainees that they must clean their general use areas and will be disciplined for refusing to do so. ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), pp. 7-8, ¶ 18. Second, Plaintiffs admit that ICE's contract with GEO requires GEO to comply with ICE's Performance Based National Detention Standards ("PBNDS") and that all applicable versions of the PBNDS provide that detainees are subject to up to 72 hours of disciplinary segregation for refusing to clean their assigned living area. ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), pp. 5-7, ¶¶ 9-14. Third, the Declaration of Ms. Jay Brooks—who is a supervisory detention and deportation officer in ICE's Custody Management Division— eliminates any doubt as to how ICE interprets

the ICE National Detainee Handbook and the PBNDS: "Everyone living in a group housing unit shares a co-responsibility to keep the dormitory, dayroom, shower and bathroom areas tidy and clean." ECF 335-2 (Brooks Dec.), p. 6, ¶ 17.[3] Clearly, ICE has a contractual right to have GEO implement the very policies that Plaintiffs allege violate the TVPA.

Plaintiffs argue that GEO's cited cases involve "contractual rights that were directly implicated by the claims in the case and would have been impaired by the party's absence." ECF 338 (Resp.), p. 17. But that is exactly what is happening here. Plaintiffs admit that ICE's contract with GEO requires GEO to adhere to the ICE National Detainee Handbook and to implement the PBNDS. The ICE National Detainee Handbook and the PBNDS expressly provide that detainees must clean their living area and general use area, will not be paid to do so, and will be disciplined for refusing to clean. That is the very alleged "threat" that underlies Plaintiffs' TVPA claim. Thus, ICE's "contractual right" to have these policies implemented by GEO is "directly implicated" by Plaintiffs' TVPA claim and ICE's interest in enforcing and defending its contractual rights would be "impaired by [ICE's] absence." Indeed, a TVPA judgment in Plaintiffs' favor would mean ICE's own policies—policies that ICE contractually requires GEO to enforce—violate the TVPA, a statute ICE is statutorily charged with enforcing.

///

///

---

[3] Plaintiffs' improperly argumentative response to GEO's Notice of Supplemental Authority argues that Ms. Brooks does not clearly state that detainees must help clean up their common areas after meals. Plaintiffs ignore that Ms. Brooks expressly states that the PBNDS does not "preclude detainees from participating in maintaining the cleanliness of common or shared living areas." ECF 335-2, p. 6, ¶ 14. In is undisputed that detainees at AIPC eat in the "common or shared living areas."

55421884;1

### b.    Plaintiffs challenge ICE's policies and decisions

Plaintiffs' Response relies upon the following claim that is demonstrably false: "Plaintiffs in this case do not challenge ICE's rules or decisions, but rather GEO's policies that skirt those rules." ECF 338 (Resp.), p. 20. Plaintiffs allege that GEO violated the TVPA by informing detainees that they were required to help clean their living area and general use area, and could be subject to discipline, ranging from a warning to disciplinary segregation, for refusing to clean. Contrary to Plaintiffs' false claim, the overwhelming undisputed evidence proves that GEO complied with ICE's rules and that Plaintiffs' TVPA allegations directly attack ICE's policies and decisions:[4]

- The ICE National Detainee Handbook tells detainees: "You are not entitled to compensation for tasks that involve maintaining your personal area or cleaning up after yourself in general use areas. You are required to perform basic cleaning tasks within your living unit, regardless of where you are held. For example, you could be disciplined if you refuse to make your bed or otherwise refuse to clean up after yourself." ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), pp. 7-8, ¶ 18.

- The PBNDS explicitly provide a disciplinary severity scale that includes the "[r]efusal to clean assigned living area" as an offense which can be sanctioned by "[d]isciplinary segregation (up to 72 hours)." ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 7, ¶ 14.

---

[4] Plaintiffs incorrectly argue that GEO's Motion is untimely. ECF 338 (Resp.), pp. 28-30. GEO filed the Motion after the completion of discovery and before the deadline to file dispositive motions. GEO noted it would be filing the Motion in the Amended Stipulated Scheduling and Discovery Order dated September 11, 2018. ECF 146, p. 20.

55421884;1

- Jay Brooks confirms in her Declaration that ICE policy is correctly reflected in the ICE National Detainee Handbook and PBNDS and that detainees share a "co-responsibility to keep the dormitory, dayroom, shower and bathroom areas tidy and clean." ECF 335-2 (Brooks Dec.), p. 6, ¶ 17.

- All of GEO's policies are reviewed and approved by an on-site ICE official. ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 8, ¶ 20.

- GEO has passed each ICE audit since 2004. ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 10, ¶ 23.

- ICE has its own offices and personnel inside the Aurora facility. ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 10, ¶ 24.

- ICE personnel told class representative Demetrio Valerga that he could be taken to segregation for refusing to clean his living area. ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 11, ¶ 26.

A jury verdict in Plaintiffs' favor would necessarily also be a verdict that ICE's own policies and decisions violated the TVPA.

### c. Plaintiffs' counsels' statements to the media contradict the position taken in Plaintiffs' Response

Plaintiffs and GEO can agree on one thing—no one has a legal "interest in avoiding bad press." ECF 338 (Resp.), p. 22. And that is not what GEO argued in its Motion. Rather, GEO pointed to Plaintiffs' counsel's statements to media as evidence that this lawsuit is part of their "larger battle" to change ICE policy. ECF 307 (Mot.), pp. 26-27. The relevance of those statements does not come from any party's interest in avoiding bad press, but rather in juxtaposing them with Plaintiffs' current position that this lawsuit will not affect ICE's policies. Plaintiffs' counsel has

publicly stated that this lawsuit is, in fact, part of their "larger battle" to change ICE's policies.[5]

Those statements are admissions that this lawsuit aims to implicate ICE's interests by attempting

to change ICE policies through lawsuits brought against ICE's contractors. There are appropriate

legal and political channels for Plaintiffs and Plaintiffs' counsel to accomplish their goal, but this

lawsuit is not one of them.

> **d.     Plaintiffs have attempted to obtain T nonimmigrant status based on the allegations in this lawsuit**

Plaintiffs do not dispute that one of the class representatives, Hugo Hernandez, has sought

to obtain T nonimmigrant status based on the allegations in this lawsuit. ECF 338 (Resp.), pp. 22-

23. And while Plaintiffs argue that Mr. Hernandez is the only named Plaintiff to seek such relief,

Plaintiffs do not address the actions of the tens of thousands of other absent class members.

Plaintiffs also side-step their allegation that ICE was deporting Mr. Hernandez to "shortchange"

his application, plainly suggesting that ICE was implicated by Mr. Hernandez's trafficking

allegations. ICE has an interest in whether its contracts, policies, and conduct will form the basis

for its affiliate agency, USCIS, to issue T-visas to detainees based upon circumstances that

occurred while the detainees were in ICE custody.

---

[5] Plaintiffs write that "GEO claims that Plaintiffs' Counsel's statements to the media suggest that the 'real' target of this case – whatever that means – is the Trump Administration's policies." ECF 338 (Resp.), p. 21. The quoted language never appears in GEO's Motion. GEO argued this case is part of Plaintiffs' "larger battle," which is a direct quote from Plaintiffs' counsel's press release.

e.     **Plaintiffs allege ICE failed to enforce the TVPA**

Last, and perhaps most important, beyond not-so-indirectly alleging that ICE's policies and decisions violate the TVPA, Plaintiffs also necessarily allege that ICE has failed to adhere to its statutory mandate to find and disrupt human trafficking operations. Under the heading "Plaintiffs Allege No Wrongdoing by ICE," Plaintiffs call this "editorializing" by GEO. ECF 338 (Resp.), p. 24. Considering the undisputed evidence listed in the bullet points in section II(B)(i)(b) above, the logical extension of Plaintiffs' TVPA claim is clear, even if Plaintiffs are unwilling to say so in their attempt to avoid dismissal. Namely, Plaintiffs allege that ICE is overseeing, auditing, and even participating in a systematic forced labor operation despite ICE's statutory obligation to enforce the TVPA.

Plaintiffs attempt to downplay ICE's participation in this alleged forced labor scheme by noting that only one named Plaintiff testified that ICE threatened him or her with segregation for refusing to clean general use areas. ECF 338 (Resp.), p. 24, n. 28. But that argument ignores that GEO has only been entitled to discovery from the named Plaintiffs and one additional absent class member handpicked by Plaintiffs' counsel. *See* ECF 147 (Order denying GEO's request for discovery from absent class members). And even then, three of the named Plaintiffs—Olga Alexaklina, Lourdes Argueta, and Marcos Brambila—were never made available for GEO to depose. Thus, even among the very limited number of detainees handpicked by Plaintiffs' counsel, GEO was still able to elicit that ICE directly participated in the policy that Plaintiffs allege violates the TVPA.

Finally, GEO is not arguing that ICE must be joined simply because this case involves TVPA allegations and ICE enforces the TVPA. ICE must be joined because Plaintiffs challenge

ICE's contracts, policies, practices, and statutory responsibilities in such a way that Plaintiffs allege ICE is violating the TVPA instead of enforcing it. In fact, the allegations in this case mirror allegations in other cases that do not involve GEO. It is not merely coincidental that other ICE contractors implement similar policies and practices. The logical conclusion is that the lawsuits challenge similar policies not because each entity created the policies on their own, but instead because ICE's contracts, policies, and practices are similar. Plaintiffs' analogy using the Equal Employment Opportunity Commission is incomplete. A better analogy would be a class action lawsuit filed by alleged victims of employment discrimination against a management company alleging that the EEOC hired, audited, and contractually required the management company to discriminate in violation of Title VII of the Civil Rights Act. In that hypothetical case, the EEOC would clearly be a necessary party. *See Boles v. Greenville Hous. Auth.*, 468 F.2d 476, 477–79 (6th Cir. 1972). The same is true for ICE here.

     **ii.**    **Unjust Enrichment Claim**

     **a.**    **ICE's contract rights are directly implicated and impaired**

Plaintiffs do not dispute that they are asking this Court to determine that, for over a year, a different version of the PBNDS applied to GEO's AIPC than the version GEO and ICE expressly agreed to in a contract modification. The 2008 PBNDS provided that, for participants in the VWP, "the compensation is $1.00 per day." ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 14, ¶ 37. The 2011 PBNDS changed this language to provide that participants in the VWP will be compensated with "at least $1.00 (USD) per day." ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 16, ¶ 38. The parties agree that ICE's contract with GEO required GEO to comply with the applicable version of the PBNDS. ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 5, ¶¶ 9-11. The question, then, is

when did the 2011 PBNDS apply to GEO's AIPC? *See* ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 5, ¶ 11 ("The parties dispute the mechanism by which the operative version of the PBNDS were 'incorporated' into the contract.").

GEO and ICE resolved this question in a written and signed contract modification. ECF 271-4 (Contract Mod.). That document expressly provided that its purpose was to "incorporate" the 2011 PBNDS in the contract. ECF 271-4 (Contract Mod.), p. 2. It further stated that "[w]ithin 30 days of execution of this modification the facility shall be compliant with all PBNDS 2011 Standards stated herein." ECF 271-4 (Contract Mod.), p. 3. The contract modification was signed on May 23, 2013, ECF 271-4, p. 2, so thirty days later was June 23, 2013. Accordingly, per ICE's and GEO's signed contract modification, the 2011 PBNDS applied to GEO's AIPC on June 23, 2013.

Plaintiffs argue that the 2011 PBNDS applied to AIPC more than one year earlier than ICE and GEO contractually agreed. ECF 286 (Pltfs.' Reply Re: M.S.J.), p. 108-109. Specifically, Plaintiffs argue that because ICE published the 2011 PBNDS in February 2012, GEO's AIPC was required to comply with the 2011 PBNDS starting in February 2012. ECF 286 (Pltfs.' Reply Re: M.S.J.), pp. 108-109; *see also* ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 16, ¶ 38. Plaintiffs' argument not only directly contradicts ICE's and GEO's signed contract modification, it also argues that, for over one year, ICE was incorrectly auditing the standards with which AIPC was required to comply.

More specifically, Plaintiffs admit that ICE audits GEO to ensure compliance with the applicable PBNDS standards. ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), pp. 9-10, ¶ 22. Plaintiffs argue GEO was required to comply with the 2011 PBNDS starting in February 2012. ICE audited

13

GEO in October 2012, which is after Plaintiffs allege the 2011 PBNDS were in effect at AIPC, but before ICE and GEO agreed that the 2011 PBNDS were in effect at AIPC. ECF 273-6 (ICE Ltr. Re: 2012 Audit), p. 45. ICE's official audit correspondence reflects that ICE audited GEO based on the 2008 PBNDS in October 2012 and based on the 2011 PBNDS in October 2013. Ex. J, Oct. 10, 2013 Audit Corr. Therefore, in addition to advancing a contract interpretation at odds with the contract modification signed by ICE and GEO, Plaintiffs allege that ICE audited GEO against the wrong set of PBNDS standards in 2012.

**b.    ICE's policies and practices are directly implicated and impaired**

Plaintiffs unsuccessfully attempt to sidestep their sweeping argument that ICE's VWP lacks Congressional authorization, arguing that the Court need not reach the issue. As noted above, the 2008 PBNDS, which applied at AIPC from before the start of the unjust enrichment class period through June 23, 2013, expressly provided that "the [VWP] compensation is $1.00 per day." ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 14, ¶ 37. Plaintiffs admit that ICE's contract with GEO required GEO to comply with the applicable version of the PBNDS. ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 5, ¶¶ 9-11. To avoid the clear implications of that directive from ICE for GEO's derivative sovereign immunity, Plaintiffs argue two things: (1) that GEO paid detainees more than $1.00 per day at other facilities prior to June 23, 2013 and (2) that ICE's VWP lacked Congressional authorization.

First, Plaintiffs have presented no evidence as to the similarities or differences between AIPC and other GEO facilities, including their contracts, dates of incorporation of the 2011 PBNDS, and course of dealing with ICE as to the VWP. Without proving that GEO's other facilities were subject to the same contractual standards as AIPC, there is no factual or legal

support for Plaintiffs' argument that GEO need not comply with certain contractual requirements at AIPC because other facilities operating under different contracts were doing different things.

Thus, unless the Court dismisses or decertifies the VWP class period prior to June 23, 2013, the Court must address Plaintiffs' second argument: that ICE's VWP has lacked Congressional authorization for decades. As noted in *Boles*, any such determination without ICE would "deprive it of the right to defend the integrity of its administrative decisions in these areas which so intimately affect its policies and procedures." 468 F.2d at 479. Plaintiffs attempt to downplay the effect of their position by arguing that ICE had the authority to create a VWP, but did not have the authority to fund it—a distinction without a difference. For one, Plaintiffs ignore that ICE's contract with GEO requires ICE to reimburse GEO for detainees participating in the VWP. Plaintiffs' argument would thus require ICE to either pay GEO without Congressional authorization or breach the contract by not reimbursing GEO.

The cases cited by Plaintiffs—*Mastercard International Inc. v. Visa International Service Association*, 471 F.3d 377 (2d Cir. 2006) and *Northrop Corp. v. McDonnell Douglas Corp*, 705 F.2d 1030 (9th Cir. 1983)—do not support their position. In *Mastercard*, the absent non-party was not a party to the contract at issue. 471 F.3d at 386. The *Mastercard* court distinguished its facts from another Second Circuit case, *Crouse-Hinds Co v. InterNorth, Inc.*, 634 F.2d 690 (2d Cir. 1980), where the absent non-party was a necessary party under Rule 19 "because the absent non-party was a party to the contract at issue" and therefore "its ability to protect its interest in that contract would have been seriously impaired if it were not made a party to the action." *Id.* Here, unlike in *Mastercard*, ICE is a party to the contract at issue. And *Mastercard* says nothing about the Rule 19 implications of arguing that a non-party government agency has been acting *ultra vires*

for over thirty years. In *Northrop*, the court considered arguments that a certain ruling might prevent one of the parties from entering into a hypothetical contract with the government in the future. 705 F.2d at 1044-46. That is nothing like this case, where ICE has existing contractual obligations that require it to reimburse contractors like GEO. Plaintiffs' argument would directly and adversely affect those contractual obligations.

Finally, Plaintiffs ignore the effect of their argument on facilities that ICE operates itself. Plaintiffs admit that ICE owns and operates many of its own facilities. ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 3, ¶ 5. At these facilities, if the VWP lacks authorized funds from Congress, then there is no way to carry on the VWP. The ruling Plaintiffs have requested would impair ICE's operations around the country. Such a ruling cannot be made in ICE's absence.

## C.    Absent joinder of ICE, GEO would be subject to inconsistent obligations

### i.    TVPA Claim

GEO would be subject to inconsistent obligations if Plaintiffs' succeed on their TVPA claim. Plaintiffs' TVPA claim rests on the allegation that ICE's disciplinary severity scale, which GEO incorporated into its local detainee handbook, illegally threatened detainees with discipline—up to and including disciplinary segregation—if a detainee refused to clean his or her assigned living area. ICE's disciplinary severity scale provides that a detainee's "[r]efusal to lean assigned living area" can be sanctioned by "[d]isciplinary segregation (up to 72 hours)." ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 7, ¶ 14. But Plaintiffs admit that ICE's contract with GEO required GEO to adopt ICE's disciplinary severity scale without alteration and to incorporate ICE's disciplinary severity scale into GEO's local detainee handbook. ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 6, ¶¶ 12-13. Thus, the very practices that Plaintiffs allege violate the TVPA are undisputedly required by GEO's government contract.

Plaintiffs misleadingly point to GEO's new policies aimed at reducing or eliminating the number of times disciplinary segregation is *actually used* as a punishment when a detainee refuses to clean. Those policies are consistent with ICE's disciplinary severity scale, which affords detention officers and disciplinary panels discretion to choose from a range of permissible discipline for a detainee's refusal to clean based on the unique circumstances of each case—punishments that range from a warning to disciplinary segregation. But Plaintiffs' certified TVPA class action does not challenge the practice of actually placing detainees in segregation for refusing to clean. Indeed, the evidence before the Court proves that was exceedingly rare—none of the named Plaintiffs were placed in segregation for refusing to clean and, after years of discovery, Plaintiffs have only identified a handful of such instances over the ten-year TVPA class period with tens of thousands of class members. ECF 262-12 (Pltfs.' Compilation of Incident Reports). And even then, those instances were almost always accompanied by aggravating factors or additional infractions, such as insolence toward a staff member or inciting a riot. ECF 262-12 (Pltfs.' Compilation of Incident Reports); ECF 339-11 (S. Gallegos Depo.), p. 69. Rather, Plaintiffs' certified TVPA class primarily challenges the practice of allegedly "threatening" detainees, via the local detainee handbook, that they could be placed in segregation for refusing to clean their assigned living areas. But that is exactly what is expressly required by GEO's government contract—GEO must place the ICE disciplinary severity scale in the local detainee handbook. How GEO's detention officers and disciplinary panels exercised their discretion to implement the range of available punishments in ICE's disciplinary severity scale based on the unique facts of each case is a different question.

Plaintiffs create and attack a straw man by incorrectly characterizing GEO's position to be that "ICE policies require [GEO] to place people in solitary confinement . . . ." ECF 338 (Resp.), p. 27. That is not GEO's position. GEO's position is that ICE's disciplinary severity scale provides that detainees are subject to a range of possible punishments for refusing to clean their assigned living area. Detention officers and disciplinary panels have discretion to choose from a range of permissible discipline for a detainee's refusal to clean based on the unique circumstances of each case. One of those punishments—and the most severe—is disciplinary segregation. ICE requires GEO to inform detainees of the disciplinary severity scale in GEO's local detainee handbook. The foundation of Plaintiffs' TVPA claim is not the rare instances when detainees were placed in segregation, but rather GEO's adherence to ICE's requirement that GEO inform detainees of ICE's disciplinary severity scale.

Finally, Plaintiffs' argument that GEO's practices are contrary to ICE's position is belied by a mountain of undisputed evidence, including the ICE National Detainee Handbook, Jay Books' Declaration, the ICE disciplinary severity scale, the fact that all of GEO's policies are reviewed and approved by an on-site ICE official, the fact that GEO has passed each ICE audit since 2004, the fact that ICE has personnel and offices on site, and that an ICE official told Plaintiff Demetrio Valerga that he could be sent to segregation for refusing to clean his assigned living area. *See supra* § II(B)(i)(b). Thus, if Plaintiffs prevail on their TVPA claim, GEO would be subject to the inconsistent obligations of not violating the TVPA while being contractually required by the government to do the very thing that violated the TVPA.

### ii.      Unjust Enrichment Claim

For the majority of the unjust enrichment class period, GEO was operating under the express direction in the 2008 PBNDS that "the [VWP] compensation is $1.00 per day." ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 14, ¶ 37. The parties agree GEO was contractually obligated to comply with the PBNDS. ECF 338-2 (Pltfs.' Resp. to Stmt. of Facts), p. 5, ¶¶ 9-11. Per the express agreement between ICE and GEO, the 2008 PBNDS applied from the beginning of the unjust enrichment class period (October 22, 2011) through June 23, 2013. ECF 271-4 (Contract Mod.). Thus, if Plaintiffs prevail on their unjust enrichment claim, GEO would have been subject to inconsistent obligations from the beginning of the unjust enrichment class period through June 23, 2013.

GEO also maintains that its government contract required a VWP payment to detainees of no more than $1.00 per day for the entire unjust enrichment class period. The contract provides that VWP reimbursement "will be *at actual cost of* $1.00 per day per detainee." ECF 262-2 (2011 Contract Excerpt), pp. 5, 6, 8, 10, 12 (emphasis added). Plaintiffs interpret this provision to only limit GEO's reimbursement by the government, not the amount that GEO can pay to detainees participating in the VWP. But that interpretation is unreasonable because it renders the words "at actual cost of" superfluous. *See United States v. Brye*, 146 F.3d 1207, 1210-11 (10th Cir. 1998).

Further, Plaintiffs cannot avoid the natural and logical effect of their argument that the VWP lacks Congressional authorization. Even if Plaintiffs can split the hair by arguing that the VWP lacks Congressionally authorized funding, not Congressional authorization in general, the conclusion remains that GEO was contractually obligated to implement a government program that Plaintiffs argue lacked Congressionally authorized funds. *See* ECF 338-2 (Pltfs.' Resp. to

Stmt. of Facts), p. 14, ¶ 34 (admitting that GEO's contract with ICE required GEO to implement ICE's VWP).

### III.    JOINDER IS NOT FEASIBLE BECAUSE ICE IS IMMUNE

Plaintiffs do not dispute that joining ICE is not feasible because of ICE's sovereign immunity. Indeed, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). Like any other federal agency, ICE is protected by sovereign immunity apart from any express statutory waiver. Neither GEO nor Plaintiffs have identified any explicit waiver of sovereign immunity for TVPA and unjust enrichment claims. Thus, ICE's sovereign immunity bars it from being joined to defend against the class's TVPA and unjust enrichment claims.

### IV.    WITHOUT ICE, THE ACTION SHOULD BE DISMISSED

Plaintiffs' Response does not identify a single case that was allowed to proceed when an immune government agency was a necessary party under Rule 19(a). Wright and Miller aptly summarize the case law when courts have been presented with such a circumstance: "the suit has been dismissed." 7 Fed. Prac. & Proc. § 1617 (3d ed. 2018).

### V.    CONCLUSION

The Court should issue an order dismissing the class's TVPA and unjust enrichment claims because ICE is a required party that cannot feasibly be joined.

///

///

///

///

Respectfully submitted this 18th day of November 2020.

**AKERMAN LLP**

*s/ Adrienne Scheffey*
Colin L. Barnacle
Adrienne Scheffey
Christopher J. Eby
Melissa L. Cizmorris
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  (303) 260-7712
Facsimile:   (303) 260-7714
Email: colin.barnacle@akerman.com
Email: adrienne.scheffey@akerman.com
Email: christopher.eby@akerman.com
Email: melissa.cizmorris@akerman.com

**BURNS, FIGA & WILL, P.C.**
Dana L. Eismeier
Michael Y. Ley
6400 S. Fiddlers Green Circle, Suite 1000
Greenwood Village, Colorado 80111
Telephone:  (303) 796-2626
Facsimile:   (303) 796-2777
Email: deismeier@bfwlaw.com
Email: mley@bfwlaw.com

*Attorneys for Defendant The GEO Group, Inc.*

21

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify on this 18th day of November, 2020 a true and correct copy of the foregoing

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO JOIN**

**REQUIRED PARTY** was filed and served electronically via the Court's CM/ECF system on the

following:

<u>**Counsel for Plaintiffs:**</u>

Alexander N. Hood
David H. Seligman
Juno E. Turner
Andrew Schmidt
TOWARDS JUSTICE
PO Box 371680
PMB 44465
Denver, CO 80237-5680
alex@towardsjustice.org
david@towardsjustice.org
juno@towardsjustice.org
andy@towardsjustice.org

Andrew H. Turner
Matthew Fritz-Mauer
KELMAN BUESCHER FIRM
600 Grant St., Ste. 825
Denver, CO 80203
aturner@laborlawdenver.com
mfritzmauer@laborlawdenver.com

Hans C. Meyer
MEYER LAW OFFICE, P.C.
P.O. Box 40394
Denver, CO 80204
hans@themeyerlawoffice.com

P. David Lopez
OUTTEN & GOLDEN, LLP
601 Massachusetts Ave. NW
2nd Floor West Suite
Washington, DC 20001
pdl@outtengolden.com

Adam L. Koshkin
Rachel W. Dempsey
OUTTEN & GOLDEN, LLP
One California St., 12th Fl.
San Francisco, CA 94111
akoshkin@outtengolden.com
rdempsey@outtengolden.com

Michael J. Scimone
Ossai Miazad
OUTTEN & GOLDEN, LLP
685 Third St., 25th Fl.
New York, NY 10017
mscimone@outtengolden.com
om@outtengolden.com

R. Andrew Free
LAW OFFICE OF R. ANDREW FREE
P.O. Box 90568
Nashville, TN 37209
andrew@immigrantcivilrights.com

Brandt P. Milstein
MILSTEIN LAW OFFICE
1123 Spruce St.
Boulder, CO 80302
brandt@milsteinlawoffice.com

<u>*s/ Nick Mangels*</u>
Nick Mangels