# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:14-cv-02887-JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

    Plaintiffs,

v.

THE GEO GROUP, INC.,

    Defendant.

_____

### SUPPLEMENTAL BRIEF IN SUPPORT OF
### PLAINTIFFS' MOTION FOR JURY VIEW
_____

    Plaintiffs respectfully submit the following supplemental brief in support of their Motion for Jury View [ECF No. 301] (the "Motion") pursuant to the Court's Minute Order dated October 20, 2022 [ECF No. 382] ("Minute Order").

    The Parties have conferred as directed, which has made two points clear.  <u>First</u>, the Parties continue to disagree about whether a jury view or video recording of the Aurora facility is appropriate or feasible.  Plaintiffs believe a jury view is probative of several disputes the Court identified in its October 10, 2022 Summary Judgment Order, and that

1

a video recording is both impractical and inadequate to that task for the reasons explained below.  GEO believes (1) photographs provide sufficient visual evidence for the Jury; (2) that video, if permitted, should be approved by U.S. Customs and Immigration Enforcement ("ICE"); and (3) that a live viewing is inappropriate.

Second, the Parties agree in principle that, if a jury view is permitted, it should be structured to (1) assure the Jury's security; (2) maintain the privacy of detainees and GEO staff; and (3) avoid jury taint.[1]  The Parties disagree about how to effectuate these principles.  This provides context for the answers to the Court's questions below.

## I.     No Material Circumstances Have Changed Since The Motion.

No material changes have been made at the Aurora facility since August 2020.  The only change the Parties are aware of is a camera upgrade in December 2020.

## II.    No Adequate Video Recording of the Aurora Detention Facility Is Available.

GEO reports that the ICE Office of Public Affairs made a video recording of the facility on August 6, 2019, six months before the Plaintiffs' Court-ordered entry and inspection of the facility on February 13, 2020.  That video is publicly available here: https://www.dvidshub.net/video/701993/aurora-contract-detention-facility-media-b-roll (henceforth referred to as the "Media b-roll").

The Media b-roll video is inadequate for evidentiary purposes.  One of the key disputes in this case is whether threats of solitary confinement would, objectively and

---

[1]     It also appears that the Parties now agree that the original scope of visual evidence proposed in the Motion – i.e., the housing units and the segregation unit – could appropriately be expanded to include areas such as the laundry, where some class members worked.

2

subjectively, have caused class members to clean the housing units at GEO's direction. ECF No. 380 (Summary Judgment Order) at 62-65.  To answer that question, the Jury must understand both the nature of the threat and the scope of the labor GEO's policies demanded.  And the Court's ruling that Plaintiffs' unjust enrichment claim is not barred by the $1/day contracts they signed illustrates how the conditions of confinement are relevant to that claim as well; not only do they render the contracts unconscionable, *id*. at 73-75, they also support Plaintiffs' claim that it was unjust for GEO to enrich itself by bidding for government contracts using low-cost, unconscionably obtained VWP labor.  The Parties also dispute the scope of the work in the VWP, and the attendant damages.  The requested view would assist the Jury in making all of these determinations.

The Media b-roll sheds no light on those issues.  It provides a selective 6-minute view that excludes the segregation unit and the women's housing unit.  The 25 seconds showing the sleeping area depict a single men's cell, taken from a vantage point that does not show the cell's size, contents, or geographic relationship to common areas.  Media b-roll at 3:10-3:25.  The 56 seconds showing the common areas include prejudicial shots of detainees in orange jumpsuits (with faces blurred), and allows no assessment of the dimensions or condition of the space.  *Id* at 3:37-4:33.  Most of the Media b-roll focuses on the recreational facilities, medical care, and food provided at Aurora.

GEO has proposed that a new video be created for trial, subject to ICE approval.  In detailed negotiations prior to the Motion, ICE took the position that creating such a video creates serious operational security concerns, which stem from the risk of a video revealing the facility's "layout, secure entrances and exits, the secure control center, and

3

the positioning of staff and staffing level of the various areas of the facility." **Ex 1**, Letter from ICE to Warden Choate (June 20, 2019).[2]  Neither Party wants to compromise the safety of "detainees, facility staff, and the general public" by creating the risks ICE cites. *Id.*  But to safeguard against ICE's concerns, a video would have to *exclude* precisely the security features that make the detention environment inherently threatening and coercive.  That would not serve the evidentiary needs of the case.

But "ICE does not oppose the jury viewing the segregation unit and male/female housing units at Aurora [on a site visit], subject to Plaintiffs' agreement not to seek further photo or video of the facility" and subject to security procedures described in the Motion.  ECF No. 323-4 (July 14, 2020 Correspondence among ICE and Parties' Counsl) at 4.  Plaintiffs agree with ICE that a live viewing is preferable to video for this reason.

### III. U.S. Marshalls Should Accompany the Jury, Subject to Due-Process Constraints.

Plaintiffs believe that U.S. Marshals should accompany the Jury during a site visit, which should not present insurmountable challenges, as the Marshals had a regular presence in the facility for many years.  ECF No. 323 (Opposition to the Motion) at 8. (Aurora "houses individuals who are detained by the U.S. Marshals").  Any Marshals or GEO staff who escort the jury should be instructed not to comment on the subject matter of this case or the facility within earshot of the Jury, except for the purpose of guiding the

---

[2]  Plaintiffs have contacted ICE to ask whether there has been any change in its position since the Motion.  To date, ICE has not responded.

group.[3]  Both Parties agree that attorney representatives, under the same restraints, should be allowed to accompany the visit, to ensure these protocols are followed.

## IV. Other Logistical Considerations.

The Parties have discussed other logistical questions not identified by the Court's Minute Order. These include the number of Party representatives who should join the visit; whether the date and timing of the visit should be limited from public disclosure, to avoid the possibility of protesters disrupting the site visit (which neither Party wants); what jury instructions may be needed to contextualize the site visit; and whether the visit should tour only unoccupied areas.[4]  If the Court permits a jury view, Plaintiffs request the opportunity to confer further with GEO, based on the Court's guidance, to answer these open questions.

Dated: Denver, CO
       November 4, 2022

Respectfully submitted,

By: */s/ Michael J. Scimone*

Michael J. Scimone
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-Mail: mscimone@outtengolden.com

---

[3]   Plaintiffs have requested that ICE notify the parties of any concern ICE may have with U.S. Marshals' presence during a jury view.

[4]   GEO has represented that this is feasible, but has not agreed that it is appropriate; GEO has proposed that a visit should occur while detainees are cleaning the housing area after a meal.  Plaintiffs are not convinced this viewing would be probative, and in any case believe it would be prejudicial and could compromise the privacy and safety of both detainees and the Jury.  *See* Fed. R. Evid. 401; 403.

5

Adam Koshkin
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: akoshkin@outtengolden.com

Andrew H. Turner
Brandt P. Milstein
**MILSTEIN TURNER, PLLC**
1490 Lafayette St. #304
Denver, CO 80218
(303) 305-8230
andrew@milsteinturner.com
brandt@milsteinturner.com

Alexander Hood
David Seligman
Andrew Schmidt
Juno Turner
Rachel Dempsey
Brianne Power
**TOWARDS JUSTICE**
PO. Box 371680, PMB 44465
Denver, CO 80237
(720) 441-2236
alex@towardsjustice.org
david@towardsjustice.org
andy@towardsjustice.org
juno@towardsjustice.org
rachel@towardsjustice.org
brianne@towardsjustice.org

Robert Andrew Free
**TOWARDS JUSTICE**
P.O. Box 90568
Nashville, TN 37209
(844) 321-3221

Hans Meyer
**MEYER LAW OFFICE, P.C.**
P.O. Box 40394

6

        Denver, CO 80204
        (303) 831-0817
        hans@themeyerlawoffice.com

        *Class Counsel*

Case No. 1:14-cv-02887-JLK-CYC    Document 386    filed 11/04/22    USDC Colorado    pg 7 of 9

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2022, a copy of the foregoing document was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the Court's system.

／s/ *Andrew H. Turner*
Andrew H. Turner

***Class Counsel***

8

List of Exhibits Attached to Supplemental Brief In Support Of Plaintiffs' Motion For Jury View

Exhibit 1: Letter from ICE to Warden Choate (June 20, 2019).