# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02887-JLK-MEH

_____

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

       Plaintiffs,

v.

THE GEO GROUP, INC.,

       Defendant.

_____

## DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR A JURY VIEW

_____

Defendant The GEO Group, Inc. respectfully submits the following Supplemental Brief in Opposition to Plaintiffs' Motion for a Jury View (ECF No. 386).

## I.    Introduction

On October 20, 2022, this Court ordered the parties to confer as to the following issues: (1) whether a videorecording of the Aurora Detention Facility (the "Facility") is now available; (2) if a videorecording is available, whether the videorecording is sufficient in lieu of a jury view; and (3) if a jury view is permitted, whether U.S. Marshals may accompany the jurors and, if so, whether the parties propose any limitations on the U.S. Marshals accompanying the jury to a jury view. ECF No. 382. The parties have conferred on these issues. As detailed below, in light of the additional video footage available to Plaintiffs and the dozens of photographs collected from ICE, GEO's position remains that the existing photographs and video are more than sufficient to assist the jury in deciding the issues before it.

Plaintiffs' supplemental brief offers nothing to meet the "highly unusual" and "rarely appropriate" circumstances to conduct a jury view of a detention facility. *United States v. Santiago*, 203 F. Supp. 3d 1135, 1137 (D. Colo. 2016). As noted by Plaintiffs, there is a video available from ICE that can be used at trial. ECF No. 386 at 2 (providing a link to the same). Between that video, the photographs, and diagrams, the jury has sufficient information to understand the nature and layout of the Facility. No additional visit or video is necessary, or would even be helpful, to the jury in deciding the actual issues before it. As detailed herein, such a visit would only pose significant security concerns to all involved and risk of unfair prejudice to GEO if a protest or other conduct were staged at the same time as the visit. Should the Court find, however, that any additional evidence is needed for the jury to consider the layout of the Facility, then the additional evidence should be presented through videographic means which would significantly quell GEO's security concerns, as well as concerns that activists or detainees may unduly prejudice the jurors on the day

1

of the jury visit, which would likely have the effect of tainting the jury such that GEO would be forced to seek a mistrial. Accordingly, Plaintiffs' purported need for a jury view of the Facility serves no valid purpose in helping to resolve the issues before it and is <u>far outweighed</u> by security concerns and potential unfair prejudice to GEO.

## II.    Security Concerns Override Any Potential Relevance of a Jury Visit

While Plaintiffs spent a significant portion of their brief addressing ICE's purported concerns[1] with a jury view, what they do not address are GEO's legitimate safety and operational concerns. Should this Court order a jury view, whereby a jury, counsel, this Court, and others[2] will visit the Facility—the potential liability for any adverse incidents will likely lie with and prejudice GEO. And because the Facility is a secure operation, there are inherent risks in touring the Facility: fights could break out among detainees; the tour could be disrupted as a result of protests staged by area activists opposed to the Facility and ICE (*e.g.* protestors have previously torn down and replaced the United States flag that flies over the federal Facility);[3] and the detainees regular activities and movement would be severely curtailed during a Court-ordered tour. As such, should a jury view take place, GEO will be required to severely disrupt the normal operations of the Facility and take numerous precautions to minimize the risks to those in attendance and to those who work at the Facility.

Even if the risks can be minimized, they cannot be eliminated. There is always a chance that an unexpected, unforeseen incident could occur. Should that happen, GEO will be prejudiced in its case through the jury's experience at the Facility, while also potentially facing liability for the same.

---

[1] GEO notes that ICE is not a party to this lawsuit and this Court has ruled that it is not indispensable. Therefore, its position on a jury view should not control the inquiry. ICE's position can be found at ECF 323-4 and 323-3. ICE has further clarified that should additional video be shown to the jury, it should be done under seal. *See* Ex. A.

[2] *Gonzalez-Perez v. Gomez-Aguila*, 296 F. Supp. 2d 117, 121 (D.P.R. 2003) (finding a court reporter should be retained to record what transpires at a jury view).

[3] Aurora Police Investigate After U.S. Flag Removed During Protest, Associated Press July 14, 2019, https://kdvr.com/news/local/aurora-police-investigate-after-u-s-flag-removed-during-protest (last visited November 14, 2022).

The attendance of U.S. Marshals must also be considered. While GEO does not oppose their presence, GEO is wary of the safety risks involved with having armed (or even unarmed) law enforcement officials on GEO's premises. Indeed, what happens if a U.S. Marshal is required to use force to keep jurors safe from a real or perceived threat in the Facility? At a minimum, each juror would need to sign a waiver prior to attending the site visit, but it is not clear that such a waiver would resolve outstanding issues of juror safety. In short, the safety concerns associated with a jury view far outweigh any benefit to the jury in visiting the Facility. These concerns, however, can and would be completely eliminated through the use of the extensive photographs that have already been taken (which include photographs of the segregation area) as well as the video produced by ICE. To the extent there is any legitimate deficiency identified, it can be addressed through additional photographs and/or a video recording of specific areas of the Facility where the existing photos are allegedly inadequate.

### III.    Potential Protests or Other Irregularities Could Lead to a Mistrial

In addition to the safety concerns listed above, GEO opposes a jury view due to the likely prejudice it would suffer should the jury be exposed to protests or other incidents while at the Facility. Indeed, in approximately the past 12 months alone, there have been seven different protests at the Facility—most recently on November 2, 2022. *See* attached Dec. of James Black (Senior Vice President, President Secure Services). The protests can be violent and often include political messages against ICE and immigration detention alongside other signs or messages for unrelated cases, which if present at the time of the site visit, would without question prejudice GEO. Should a jury view occur, activist groups would almost certainly plan to stage a protest on the day of the visit. GEO believes a significant protest (either inside or outside of the Facility) occurring on the date of the visit would be likely as: 1) the date for the site visit would need to be cleared in advance so that ICE could perform the necessary background checks; 2) this Court's trial proceedings are open to

3

the public (not to mention disclosure to the jurors, obtaining juror transportation, etc.); and 3) word would certainly get around the Facility that jurors in a case that potentially impacts them are coming for a visit.

A protest, or other incident, at the Facility on the day of the visit could derail the trial as the prejudice would likely be so great that GEO would be compelled to move for a mistrial. Additionally, there is no guarantee how the detainees would comport themselves when they find out that jurors are touring the Facility on a case that could potentially affect their interests. If photographs and video were to be utilized instead, the possibility of a highly prejudicial protest, or other incident viewed by the jury, at the Facility impacting the jurors would be eliminated. While Plaintiffs try to downplay the reality of these circumstances, considering all of the factors that could go potentially wrong, a jury view represents an unnecessary risk without any benefit.

### IV.     The Site Visit Plaintiffs Seek Will Not Provide Additional Probative Evidence for the Jury

Finally, a site visit would not materially benefit the jury to resolve the actual issues before it. Where photographs, video, and diagrams are available, a site visit is not necessary to provide further explanation or clarity to a jury. *See e.g.*, *Timpanaro v. Hampton Roads Golf Clubs, LC*, No. 2:07CV593, 2008 WL 11379927, at *14 (E.D. Va. Nov. 21, 2008). This is particularly true where, as here, there is no indication that the photographs, testimony, video, and diagrams will be insufficient to convey the nature and quality of the Facility. *See e.g., J.G. by & through Greenberg v. Dep't of Educ.*, 772 F. App'x 567, 568 (9th Cir. 2019). Indeed, Plaintiffs submitted numerous photographs to this Court during the summary judgment briefing. *See e.g.,* ECF No. 337-2. In addition, Plaintiffs obtained supplemental photographs from ICE depicting the segregation and laundry room areas. Plaintiffs' briefing fails to demonstrate why a site visit would add additional context that the photographs and video fail to provide. Moreover, a site visit would not even show the Facility under its normal operations as safety precautions would need to be taken to ensure that

4

no detainees are in the areas visited. It bears noting that this is not a "conditions of confinement" case where a jury view of allegedly harsh conditions might be of some probative value.

As for Plaintiffs' claim that they need the jury to understand the "nature of the threat" by showing the jury the segregation area in person—this argument also falls flat. Understanding the layout and conditions of the segregation unit is not part of Plaintiffs' claim of unlawful threats. Rather, Plaintiffs claim that even if no one was ever placed in segregation, the mere concept of segregation was sufficient to coerce Plaintiffs to clean. Plaintiffs have been steadfast that actually knowing the conditions of segregation is not necessary for a fact finder to determine that a detainee reasonably felt threatened. In fact, none of the named Plaintiffs have first-hand knowledge of the segregation unit at the Facility (as they have admitted in response to GEO's motion for summary judgment) because none of the named plaintiffs were ever placed in segregation for refusing to clean. *See* ECF No. 336 at 14 (Response to Fact 28). To that end, what Plaintiffs are seeking to have the jury view would be an area of the Facility that the named Plaintiffs never saw themselves.

For that reason, there is no need for the jury to obtain an in-depth view of a segregation unit in order to understand if Plaintiffs' beliefs were those of a reasonable person. Accordingly, a jury view of the segregation area would be improper as it would only serve to provide the jury with context those who claimed to be harmed by its mere contemplation do not have themselves. *See e.g., Timpanaro*, 2008 WL 11379927, at *14 ("The object of a view of the grounds at the scene of an accident which is the basis of an action is to enable the jury to apply the testimony disclosed upon the trial, and is not intended to supply evidence but only to explain and clarify it. A jury cannot be allowed to become silent witnesses to facts not testified to in open court.").

## V. Conclusion

For the foregoing reasons, and those previously briefed, GEO respectfully requests that this Court deny Plaintiffs' "highly unusual" and "rarely appropriate" request for a jury view.

Respectfully submitted this 18th day of November, 2022.

　　　　　　　　　　　　　S/ *Wayne Calabrese*
　　　　　　　　　　　　　The GEO Group
　　　　　　　　　　　　　Wayne Calabrese
　　　　　　　　　　　　　Joseph Negron
　　　　　　　　　　　　　4955 Technology Way
　　　　　　　　　　　　　Boca Raton, FL 33431
　　　　　　　　　　　　　Email: wcalabrese@geogroup.com
　　　　　　　　　　　　　　jnegron@geogroup.com
　　　　　　　　　　　　　Phone: 561-999-7344


　　　　　　　　　　　　　S/ *Adrienne Scheffey*
　　　　　　　　　　　　　BURNS, FIGA & WILL, P.C.
　　　　　　　　　　　　　Dana L. Eismeier
　　　　　　　　　　　　　Michael Y. Ley
　　　　　　　　　　　　　Adrienne Scheffey
　　　　　　　　　　　　　6400 S. Fiddler's Green Circle, Suite 1000
　　　　　　　　　　　　　Greenwood Village, CO 80111
　　　　　　　　　　　　　Phone:　　　(303) 796-2626
　　　　　　　　　　　　　Facsimile:　　(303) 796-2777
　　　　　　　　　　　　　Email:　　　deismeier@bfwlaw.com
　　　　　　　　　　　　　　　　　　mley@bfwlaw.com
　　　　　　　　　　　　　　ascheffey@bfwlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 18 day of November 2022, I electronically filed the foregoing **DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR A JURY VIEW** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following or deposited a copy of the filing in the United States mail, postage prepaid, addressed as follows:

Alexander N. Hood
David H. Seligman
Juno E. Turner
Andrew Schmidt
TOWARDS JUSTICE
PO Box 371680
PMB 44465
Denver, CO 80237-5680
(alex@ towardsjustice.org
david@ towardsjustice.org
juno@ towardsjustice.org
andy@towardsjustice.org)

P. David Lopez
OUTTEN & GOLDEN, LLP
601 Massachusetts Ave. NW
2nd Floor  West Suite
Washington, DC 20001
(pdl@outtengolden.com)

R. Andrew Free
LAW OFFICE OF
R. ANDREW FREE
P.O. Box 90568
Nashville, TN 37209
(andrew@immigrantcivilrights.com)

Matthew  Fritz-Mauer
KELMAN BUESCHER FIRM
600  Grant St., Ste. 825
Denver, CO 80203
(aturner@laborlawdenver.com
mfritzmauer@laborlawdenver.com)

Adam L. Koshkin
OUTTEN & GOLDEN, LLP
One California St., 12th Fl.
San Francisco, CA 94111
(akoshkin@outtengolden.com
rdempsey@outtengolden.com)

Brandt P. Milstein
MILSTEIN LAW OFFICE
1123 Spruce St.
Boulder, CO 80302
(brandt@milsteinlawoffice.com)

Hans C. Meyer
MEYER LAW OFFICE, P.C.
P.O. Box 40394
Denver, CO 80204
(hans@themeyerlawoffice.com)

Michael J. Scimone
Ossai Miazad
OUTTEN & GOLDEN, LLP
685 Third St., 25th Fl.
New York, NY 10017
(mscimone@outtengolden.com
om@outtengolden.com)

 S/*Lauren Sitzman*
    Lauren Sitzman

7

8