IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:14-cv-02887-JLK-MEH

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

    Plaintiffs,

v.

THE GEO GROUP, INC.,

    Defendant.

_____

**MOTION FOR JURY VIEW**
_____

```
```

## TABLE OF CONTENTS

CERTIFICATION PURSUANT TO D.C. COLO. L. CIV. R. 7.1 ................................................ v

Introduction ......................................................................................................................... 1

I.    A Jury View of the Aurora Facility Will Assist the Jury. ........................................ 2

II.    Discretionary Factors Weigh in Favor of a Jury View. ........................................ 4

    A.    A Jury View of the Aurora Facility Will Provide Unique Probative Evidence. ................................................................................. 5

    B.    A Jury View Will Not Cause Unwarranted Delay or Inconvenience. .............................. 7

    C.    A Jury View Would Not Expose Jurors to Prejudicial Comments or Conditions. .......................................................................................... 9

    D.    The Relevant Parts of the Aurora Facility Have Not Meaningfully Changed in Appearance. ........................................................................... 10

    E.    The Jury View Will Not Invite Jurors to Tamper with the Site. ..................................... 11

Conclusion ........................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**CASES**                                                                                    **PAGE(S)**

*Arnold v. Evatt*,
   113 F.3d 1352 (4th Cir. 1997) .......................................................................................... 9

*Clemente v. Carnicon-Puerto Rico Mgmt. Assocs.*,
   52 F.3d 383 (1st Cir. 1995) ........................................................................................ 1, 11

*Dugas v. Coplan*,
   506 F.3d 1 (1st Cir. 2007) ................................................................................................ 10

*Estate of Ronquillo v. City & Cty. of Denver*,
   720 Fed. App'x 434 (10th Cir. 2017) ............................................................................... 5

*Fitzpatrick v. Sooner Oil Co.*,
   212 F.2d 548 (10th Cir. 1954) .......................................................................................... 2

*Jewell v. Life Ins. Co. of N. Am.*,
   508 F.3d 1303 (10th Cir. 2007) ........................................................................................ 5

*Jones v. Consol. Coal Co.*,
   No. 13 Civ. 11, 2014 WL 1091214 (N.D.W. Va. Mar. 19, 2014) ................................... 8

*Menocal v. GEO Grp., Inc.*,
   882 F.3d 905 (10th Cir.) ............................................................................................... 2-3

*N.W. Nat'l Cas. Co. v. Global Moving & Storage Co.*,
   533 F.2d 320 (6th Cir. 1976) ............................................................................................. 2

*United States v. Banks*,
   213 Fed. App'x 155 (4th Cir. 2007) ................................................................................ 9

*United States v. Chiquito*,
   175 F. App'x 215 (10th Cir. 2006) ................................................................................... 5

*United States v. Culpepper*,
   834 F.2d 879 (10th Cir. 1987) .................................................................................. 2, 10

*United States v. Davis*,
   40 F.3d 1069 (10th Cir. 1994) .......................................................................................... 5

*United States v. Drougas*,
   748 F.2d 8 (1st Cir. 1984) ................................................................................................. 8

*United States v. Dupree*,
   540 Fed. App'x 884 (10th Cir. 2014) ............................................................................... 5

*United States v. Santiago*,
    203 F. Supp. 3d 1135 (D. Colo. 2016) ......................................................................................... 10

**STATUTES**

18 U.S.C. § 1589 ............................................................................................................................. 3

**RULES**

Fed. R. Evid. 401 ............................................................................................................................ 5

Fed. R. Evid. 403 ............................................................................................................................ 9

**OTHER AUTHORITIES**

*A Manual on Jury Trial Procedures* § 3.12A (2013) ....................................................................... 4

**CERTIFICATION PURSUANT TO D.C. COLO. L. CIV. R. 7.1**

Class Counsel have conferred with Defendant regarding this motion to permit the Jury to visit and view the segregation unit, housing units, and other areas of the Aurora ICE Processing Center (the "Facility") where Class Members worked. Plaintiffs also conferred with ICE prior to filing this same motion in August 2020. Their respective positions are set forth below. *See* Declaration of Michael J. Scimone in Support of Plaintiffs' Motion for Jury View ("Scimone Decl.").

**ICE**: ICE does not oppose this motion. ICE requests that the Jury's admission be subject to the facility's usual security procedures, which include that the Jurors be escorted through the Facility, and that the Jurors provide identification for a background check 72 hours in advance of the visit.

**Defendant**: Defendant The GEO Group, Inc. ("GEO") opposes this motion, arguing that photographs and video produced in the course of discovery are sufficient to show the jury the conditions of the facility.

## Introduction

Plaintiffs move the Court for an order allowing the Jury to view portions of Defendant The GEO Group, Inc.'s ("GEO's") property at the Aurora Detention Facility. The areas in question – the detainee housing units; the solitary confinement unit; and other areas of the facility where Class Members worked, such as the laundry and kitchen – are at the heart of Plaintiffs' claims. Although trial is not currently scheduled, Plaintiffs first brought this motion in 2020 and renew it now, following GEO's interlocutory appeal, because "counsel should be alerted to a proposed [jury] view at the earliest practicable time and given an opportunity to be heard concerning it." *Clemente v. Carnicon-Puerto Rico Mgmt. Assocs.*, 52 F.3d 383, 386 (1st Cir. 1995), *abrogated on other grounds by United States v. Gray*, 199 F.3d 547 (1st Cir. 1999).

Prior to the initial filing of this motion, Plaintiffs negotiated extensively with ICE and GEO over the course of several months about discovery requests for video recordings of relevant sections of the Aurora Facility. Both GEO and ICE repeatedly expressed concern that allowing video recordings of the Aurora Facility posed a security risk, but existing publicly available video recordings of the Aurora Facility are too limited to be adequate evidence.[1] Permitting the

---

[1] After GEO refused to permit such a recording, Plaintiffs filed a Motion to Compel Rule 30(b)(6) Deposition and Inspection with Video Recording on May 30, 2019. ECF No. 181. At a hearing on October 18, 2019, Magistrate Judge Hegarty agreed to grant Plaintiffs' demand to inspect and record video of the Aurora Facility; but at the Government's suggestion, Judge Hegarty recommended that Plaintiffs first tour the facility, review publicly-available footage, and then determine whether they still needed additional video recordings. Scimone Decl. ¶¶ 4-5. After ICE's counsel informed Plaintiffs that ICE intended to appeal Judge Hegarty's decision, Plaintiffs conducted the tour without recording video, *id.* ¶¶ 6-7, but maintain that additional evidence of the conditions at the Aurora Facility is necessary. Granting this motion and allowing a jury view would provide such evidence, remove the need for video recordings, and avoid further motion practice to resolve ICE's renewed objections to video recording. *Id.* ¶¶ 9-10.

1

Jury to view the premises directly will provide direct, firsthand evidence that will assist the Jury in understanding the issues in this case and rendering a verdict. It will also obviate the need to create additional video recordings of the Aurora Facility, which ICE has indicated would pose serious operational security concerns.

All of the factors that courts consider in deciding such motions fall in favor of allowing the Jury to view the Aurora Facility.

I.   **A Jury View of the Aurora Facility Will Assist the Jury.**

Trial courts have the inherent power to permit a jury to view the premises involved in a civil action. *Fitzpatrick v. Sooner Oil Co.*, 212 F.2d 548, 551 (10th Cir. 1954); *see also N.W. Nat'l Cas. Co. v. Global Moving & Storage Co.*, 533 F.2d 320, 323 (6th Cir. 1976). The decision to do so is within the sound discretion of the trial court. *United States v. Culpepper*, 834 F.2d 879, 883 (10th Cir. 1987). This motion seeks to permit the Jury to view the Aurora Facility's solitary confinement unit; housing units;[2] and other areas of the Aurora Facility where Class Members worked, including the kitchen and laundry facilities – locations that are at the heart of Plaintiffs' claims. An in-person view of these sites will greatly assist the Jury in at least three of the mixed determinations of law and fact that it must make: (1) whether solitary confinement, as practiced at Aurora, constitutes "serious harm," (2) whether the circumstances of this case permit an inference that GEO's threats and use of solitary confinement caused the Plaintiffs and Class Members to work; and (3) the extent of the benefit conferred on GEO by detainees' work, for which GEO paid $1/day. *See Menocal v. GEO Grp., Inc.*, 882 F.3d 905,

---

[2]   Plaintiffs seek to include both one male housing unit and one female housing unit on the Jury's visit. The layouts of male and female living spaces are different; thus, allowing the Jury to view both will provide a more representative experience. *See* Dempsey Decl. ¶ 7.

2

919-20 (10th Cir.), cert. denied, 139 S. Ct. 143 (2018) (discussing classwide inference regarding causation element); *see also* ECF No. 380 at 55-67 (discussing serious harm and causation elements of Plaintiffs' claims); *id.* at 72-75.

A firsthand view of a solitary confinement unit will help the Jury evaluate whether solitary confinement is a form of "serious harm" under the TVPA, and whether it caused the Class Members to perform work. The TVPA prohibits a person from:

> knowingly provid[ing] or obtain[ing] the labor or services of a person by any one of, or by any combination of . . . (1) . . . force, threats of force, physical restraint, or threats of physical restraint . . . (2) . . . serious harm or threats of serious harm . . . or (4) . . . any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a). The Court found that "a jury could conclude that the threat of 72 hours in segregation" is the type of threatened serious harm the TVPA prohibits, and that the question could be answered on a class-wide basis. ECF No. 380 at 54-62. The TVPA also requires that Plaintiffs show they and Class Members performed the labor at issue because of these threats of serious harm. The Court held that Plaintiffs can establish this causation element through "circumstantial evidence and that it can be proven on a class-wide basis in this case." *Id.* at 62-67. To rule on these questions, the Jury in this case will be called upon to place themselves in the shoes of the Class Members by deciding whether solitary confinement is a form of "serious harm," and whether the threat of such confinement caused Class Members to work. The Jury will be better positioned to make these decisions if it can view the inside of a solitary confinement cell and see the scope of the work (i.e. the size and configuration of the housing unit) that GEO imposed on Class Members through the use of the threat. It is one thing to hear a description of solitary confinement, or even expert testimony about its effects; it is another to

3

actually experience the dark, cramped confines of a solitary confinement cell and imagine what it would be like to be confined inside it or to be threatened with such a sanction.

Likewise, the Jury will be better equipped to draw an inference about causation if it can view the size and configuration of the housing unit and appreciate what GEO's forced-labor demands actually entailed. With respect to Plaintiffs' unjust enrichment claims predicated on the $1/day Voluntary Work Program, a viewing of the areas where this work was performed (e.g. the laundry and kitchen facilities) will allow the jury to better appreciate the extent of the benefit GEO received from that labor. In briefing in this case, GEO has used "flippant comparisons" to minimize the extent of this work, such as equating mopping floors; cleaning tables, fixtures, and recreation yards; and disinfecting showers in an 80-person housing unit in an immigration detention center with "ordinary parents requiring chores." ECF No. 380 at 57-58 ("[T]he Facility is not a household, and GEO is not in a familial relationship with detainees."). A firsthand view of the scene will equip the Jury to evaluate arguments like these in a way that no other evidence can.

## II.     Discretionary Factors Weigh in Favor of a Jury View.

In deciding whether a jury view is warranted, courts have considered: (1) whether the view will be cumulative of other evidence; (2) whether the view will incur delay and inconvenience; (3) whether the view will expose the jury to unfairly prejudicial comments or conditions; (4) whether the view has changed in appearance since the event in question; and (5) whether the view will invite jury members to experiment or tamper with the site. *See A Manual on Jury Trial Procedures* § 3.12A (2013) (citing cases). All five factors weigh in favor of granting Plaintiffs' motion.

4

### A. A Jury View of the Aurora Facility Will Provide Unique Probative Evidence.

In evaluating motions for jury views, courts consider whether a view would be simply cumulative of other evidence. *See United States v. Chiquito*, 175 F. App'x 215, 217-18 (10th Cir. 2006) (denying motion for jury view where tour of crime scene was cumulative of extensive video evidence, among other types); *see also* Fed. R. Evid. 401

. "Evidence is cumulative if its probative effect is already achieved by other evidence in the record; that is, 'if the small increment of probability it adds may not warrant the time spent in introducing it.'" *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1314 (10th Cir. 2007) (quoting *United States v. Davis*, 40 F.3d 1069, 1076 (10th Cir. 1994)) (internal quotation marks and citation omitted). Here, a jury view of Aurora's segregation and housing units will provide unique evidence.

Alternative forms of evidence about the conditions of the Aurora Facility include a short publicly available video ("Media b-roll"),[3] photographs, floor plans, or narrative descriptions by witnesses.[4] If a jury view is permitted, Plaintiffs will have no need to introduce the existing video, photographs, or schematics, each of which would inevitably be less informative than a live viewing. Video recordings and photographs are often unclear and/or misleading. *See, e.g., Estate of Ronquillo v. City & Cty. of Denver*, 720 Fed. App'x 434, 436-37 (10th Cir. 2017); *United States v. Dupree*, 540 Fed. App'x 884, 893 n.7 (10th Cir. 2014). Aspects of a location are

---

[3] The video is publicly available here: https://www.dvidshub.net/video/701993/aurora-contract-detention-facility-media-b-roll

[4] As noted above, ICE has objected to Plaintiffs recording video of the Aurora Facility and expressed its intent to seek an appeal of Judge Hegarty's ruling on this discovery dispute. Scimone Decl. ¶ 5. But ICE does not oppose this motion, and Plaintiffs have agreed not to seek video recording to the extent this motion is granted. If this motion is denied, Plaintiffs anticipate moving to enforce their request for a site inspection to allow video recording over ICE's objection.

5

inevitably omitted, shot perspectives may be confusing, and it can be hard – if not impossible – for third-party viewers to fully grasp the layout, setup, and details of a space. This is particularly true with respect to the existing publicly available video of the Aurora Facility, which provides a selective six-minute view that excludes the segregation unit and the women's housing unit, two of the areas directly at issue in the action that Plaintiffs seek to include in the view. The 25 seconds showing a sleeping area depict a single men's cell, taken from a vantage point that does not show the cell's size, contents, or geographic relationship to common areas. Media b-roll at 3:10-3:25. The 56 seconds showing the common areas include prejudicial shots of detainees in orange jumpsuits (with faces blurred) and do not allow for an assessment of the dimensions or condition of the space. *Id* at 3:37-4:33. Most of the Media b-roll focuses on the recreational facilities, medical care, and food provided at Aurora. *See generally id.*

      GEO has taken the position that a new video be created for trial, obviating the need for a jury view, but, as discussed, a video alone cannot replace the perspective that Jurors would gain from being inside the Aurora Facility, and doing so would be logistically challenging. ICE has told the Parties that shooting a video for trial would create serious operational security concerns, which stem from the risk of a video revealing the facility's "layout, secure entrances and exits, the secure control center, and the positioning of staff and staffing level of the various areas of the facility." Scimone Decl., Ex. 1, Letter from ICE to Warden Choate (June 20, 2019). For this reason, "ICE does not oppose the jury viewing the segregation unit and male/female housing units at Aurora [on a site visit], subject to Plaintiffs' agreement not to seek further photo or video of the facility" and subject to security procedures described in the Motion. ECF No. 323-4 (July 14, 2020 Correspondence among ICE and Parties' Counsel) at 4.

      Other forms of alternative evidence are similarly deficient. Jurors who lack experience

6

reading or understanding floor plans would likely have difficulty interpreting the scale they depict.

The other alternative source of evidence is witness testimony. A live viewing of the facility would not duplicate, but rather enhance the witness testimony that the Jury will hear. The Jury will be asked to weigh, among other things, the effect of the physical spaces viewed on Class Members' state of mind and mental health. Having viewed those spaces themselves, members of the Jury will be able to focus on the impact of those spaces on the witnesses and evaluate their testimony in light of that information. The witnesses' testimony will be streamlined because it will begin from a shared experience of having seen the areas in question, thus reducing trial time spent describing layouts.

In other words, there is no substitute for a personal visit. This is especially true in areas such as a housing unit that are too large to capture in a single photograph.[5] Because the jury view will provide probative evidence that could not otherwise be replicated, this first factor falls strongly in favor of a jury view.

### B.   A Jury View Will Not Cause Unwarranted Delay or Inconvenience.

A jury view would not cause delay or inconvenience because the Aurora Facility is located near the Court, and GEO has security measures and protocols in place for outside visitors, having previously granted tours to the media and Class Counsel.

The Aurora Facility is approximately 11 miles from the federal courthouse in Denver.

---

[5]   GEO's counsel alluded to similar concerns in their questioning of Plaintiffs' expert Dr. Stuart Grassian; after Dr. Grassian observed that photographs and schematics of the Aurora Facility's housing units show more cramped conditions than most prisons he had toured, GEO's counsel called that conclusion into question by asking whether he had toured the Aurora facility in person. *See* Dempsey Decl., Ex. 1 (Grassian Tr. at 297:3-298:24).

Unlike in other cases where courts have held that a jury view would create an unreasonable delay or inconvenience, *see, e.g.*, *United States v. Drougas*, 748 F.2d 8, 30-31 (1st Cir. 1984); *Jones v. Consol. Coal Co.*, No. 13 Civ. 11, 2014 WL 1091214, at *2 (N.D.W. Va. Mar. 19, 2014), a visit to this site could be accomplished without meaningful difficulty.  In *Jones*, for example, the court denied a jury view where the site was 40 minutes away, "significant travel accommodations would need to be made for the jury," and it was uncertain, "given the time of year . . . whether or not the weather [would] be appropriate for travel to the [open air] subject property. . . ." 2014 WL 1091214, at *2.

These concerns are not present here.  The Aurora Facility is near the Court, and a jury view could be organized without unnecessary difficulty or expense.  In addition, GEO has a security system in place, receives visitors regularly, and is experienced at providing guided tours to outside groups, including Class Counsel.  *See, e.g.*, Conor McCormick-Cavanagh, *Inside the Aurora Immigrant Detention Center*, Westword (Aug. 14, 2019), *available at* https://www.westword.com/news/geo-group-ice-take-media-on-tour-of-immigrant-detention-facility-in-aurora-11443489 ("Westworld Article") ("ICE and GEO hosted over a dozen local and national reporters for a tour of the facility on August 9.").[6]  Such tours have even included views of the segregation unit.  *See* Prison Rape Elimination Act (PREA) Audit Report 4 (Aug. 6, 2018), *available at* https://www.geogroup.com/Portals/0/PREA_Certifications/Final%20PREA%20Report%20-%20GEO%20Aurora%20ICE%20Processing%20Center.pdf ("Areas visited during the tour included . . . restrictive housing . . . .").  Class Counsel have toured the Aurora facility, and can

---

[6]     Plaintiffs note that GEO granted this media tour not in the interest of justice, but for its own public-relations purposes following a series of exposés of conditions at the Aurora Facility.  *See* McCormick-Cavanagh, Westword Article.

8

attest that the security check required for entry is comparable to the security checks in place at federal courthouses or other federal buildings. Dempsey Decl. ¶ 5. A jury tour would thus be streamlined and efficient.

### C. A Jury View Would Not Expose Jurors to Prejudicial Comments or Conditions.

There is no danger that the Jury will be exposed to overly prejudicial conditions. *See, e.g.*, *United States v. Banks*, 213 Fed. App'x 155, 158-59 (4th Cir. 2007). As with other forms of evidence, this inquiry asks whether the jury view's "probative value [will be] substantially outweighed by a danger of . . . unfair prejudice. . . ." Fed. R. Evid. 403.

The Aurora Facility is secure, and operated exclusively by the GEO Group pursuant to its contract with ICE (which, Plaintiffs reiterate, does not oppose this motion). There is no danger that third parties or the general public will be present to influence jurors' impressions. Moreover, Plaintiffs agree to conduct the tour in an unoccupied housing unit to the extent possible, and to tour other areas such as the kitchen and laundry when they are unoccupied, thus minimizing the possibility that the presence of non-Class Member detainees could affect Jurors' perceptions. To the extent that some source of prejudice arises, the Court may issue limiting instructions to the Jurors, including that they disregard any irrelevant aspects of the visit or remain silent during the view. *See, e.g.*, *Arnold v. Evatt*, 113 F.3d 1352, 1361 (4th Cir. 1997) (holding that "any possible prejudice" as a result of the jury view was mitigated by "[t]he presence of the trial judge, and his instruction that the jury view be conducted in silence"). This factor falls in favor of granting this motion.

> D. **The Relevant Parts of the Aurora Facility Have Not Meaningfully Changed in Appearance.**

Although the Aurora Facility has expanded since the end of the class period in 2014, the areas at issue in this motion – the segregation unit and housing units – are, to Class Counsel's knowledge, substantially unchanged, eliminating another possible source of confusion. *See e.g.*, *Culpepper*, 834 F.2d at 883 (denying a jury view, in part, because a field's condition had changed "substantially" due to rain). Although changed circumstances, without more, are not enough to justify denying a jury view, *see Dugas v. Coplan*, 506 F.3d 1, 12-13 (1st Cir. 2007) (finding the District Court's decision to allow jury view reasonable even though the site had been altered), the absence of change here supports Plaintiffs' motion. *Cf. United States v. Santiago*, 203 F. Supp. 3d 1135, 1138 (D. Colo. 2016) (denying jury view where the prison recreation yard at issue had changed from a "single, open area" to "separate, barred, metal recreation enclosures").[7]

GEO may argue that the portions of the Aurora Facility used to house Class Members changed during the class period, making a jury view misleading. But such an argument ignores both that (a) the housing unit used prior to the change is still in use and could be included as part

---

[7] GEO may cite *Santiago* to argue that jury views of prisons are disfavored, but that case is readily distinguishable. Besides the change in the condition of the premises, *Santiago* turned on the logistical challenges of a visit to a supermax prison, which included the need for jurors to wear "stab-proof vests" that would still not fully guarantee their safety. *Santiago*, 203 F. Supp. 3d at 1138. No such security measures are needed at Aurora. Dempsey Decl. ¶ 6. The *Santiago* site was also over 100 miles from the courthouse and the jury view would have disrupted the normal operations of the prison. 203 F. Supp. 3d at 1138. Aurora, in contrast, is just 11 miles from the Court, and Plaintiffs have agreed to limit the tour to unoccupied sections of the Facility to the extent possible. Scimone Decl. ¶ 11.

of the jury's tour[8] and (b) the change occurred in 2010, meaning that for the entire VWP class period and 40% of the TVPA class period, Class Members worked in the current facility layout.

### E.   The Jury View Will Not Invite Jurors to Tamper with the Site.

Finally, there is no reason to think that the Jury will be able to tamper or experiment with the site. *See Clemente v. Carnicon-P.R. Mgmt. Assocs., L.C.*, 52 F.3d 383, 388 & n.4 (1st Cir. 1995), *abrogated on other grounds by United States v. Gray*, 199 F.3d 547, 548 (1st Cir. 1999). As noted above, the Aurora Facility is secure, and GEO is experienced in providing tours with sufficient security measures. *See supra* Part III(B). Further, the Parties agree that if the Jury were to visit the facility, the U.S. Marshals should accompany them for the visit, further lessening the risk to both the Jurors and the Facility. ECF No. 386 at p. 4; ECF No. 390 at p. 3. The Jury will have no opportunity to tamper with the Aurora Facility, which further weighs in favor of granting this motion.

### Conclusion

For the forgoing reasons, Plaintiffs respectfully request that the Court grant this motion and allow the Jury to view the Aurora Facility in person.

Dated: New York, NY
        November 20, 2024

Respectfully submitted,

By: */s/ Michael J. Scimone*
Michael J. Scimone
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000

---

[8]   *See* Conor McCormick-Cavanagh, "ICE, GEO Group Extend Contract for Annex at Aurora Immigration Detention Center," *Westword*, https://www.westword.com/news/ice-geo-group-extend-contract-for-annex-at-aurora-immigration-detention-center-11307303 (April 16, 2019) (reporting that the old facility reopened as an annex in 2019).

11

Facsimile: (646) 509-2060
E-Mail: mscimone@outtengolden.com

Adam Koshkin
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: akoshkin@outtengolden.com

David Seligman
Juno Turner
Alexander Hood
Rachel Dempsey
Brianne Power
**TOWARDS JUSTICE**
1580 N Logan Street
Denver, CO 80203
Telephone: (720) 441-2236
E-Mail: alex@towardsjustice.org
E-Mail: david@towardsjustice.org
E-Mail: andy@towardsjustice.org
E-Mail: juno@towardsjustice.org
E-Mail: rachel@towardsjustice.org
E-Mail: brianne@towardsjustice.org

Andrew Turner
Brandt Milstein
**MILSTEIN TURNER, PLLC**
1490 Lafayette St. #304
Denver, CO 80218
Telephone: (303) 305-8230
E-Mail: andrew@milsteinturner.com
E-Mail: brandt@milsteinturner.com

Hans Meyer
**MEYER LAW OFFICE, P.C.**
P.O. Box 40394
Denver, CO 80204
Telephone: (303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2024, a copy of the foregoing document was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Michael J. Scimone*
Michael J. Scimone
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
E-Mail: mscimone@outtengolden.com

13