# Exhibit 1



12445 E. Caley Avenue
Centennial, CO 80111

June 20, 2019

**Via Email**
jchoate@geogroup.com

      **RE:**    *Menocal, et al. v. The GEO Group*, 1:14-cv-02887

Dear Warden Choate:

      I write to clarify the position of U.S. Immigration and Customs Enforcement (ICE) regarding Plaintiffs' request for inspection of the Aurora Contract Detention Facility, also known as the Denver Contract Detention Facility (DCDF). It is my understanding that Plaintiffs are requesting to inspect: (1) all facilities used for administrative or disciplinary segregation of immigration detainees; (2) all housing units occupied by any Class Member, including both individual cells and common areas; (3) all areas, including but not limited to The GEO Group's (GEO) on-site medical facility, laundry room, dining area, kitchen, law library, barbershop, intake area, solitary confinement unit, warehouses, any exterior or outdoor areas, and ICE and GEO offices, including, but not limited to, conference rooms and break rooms, where any Class Member performed work, including cleaning, pursuant to the Housing Unit Sanitation Policy; (4) all areas in which GEO stores or stored records and/or electronically-stored information; (5) all areas, including but not limited to GEO's on-site medical facility, laundry room, dining area, kitchen, law library, barbershop, intake area, solitary confinement unit, warehouses, any exterior or outdoor areas, and ICE and GEO offices, including, but not limited to, conference rooms and break rooms where any Class Member performed work pursuant to the Voluntary Work Program. It is also my understanding that Plaintiffs are requesting to photograph and/or video-record the DCDF.

      GEO's current contract at the DCDF incorporated the latest version of the ICE 2011 Performance-Based National Detention Standards, 2016 revision (PBNDS 2011) on February 14, 2017. ICE has not received a subpoena from Plaintiffs for entry into the DCDF. However, as demonstrated below, the PBNDS 2011 provides guidance that addresses several of Plaintiffs' requests.

      <u>**Scheduling a Tour of the DCDF**</u>

1

Case 1:14-cv-10283-JEK Document 686-1 Filed 11/04/22 Page 3 of 7
Case No. 1:20-cv-02697-JLK Document 415 Filed 11/28/24 USDC Colorado Page 3 of 7
pg 3 of 7

ICE regularly provides tours of its detention facilities to advocacy and non-governmental organizations, members of Congress, the media, and other members of the public subject to the limitations outlined in agency policy and the agency's detention standards, including the PBNDS 2011. As stated in the PBNDS 2011, ICE and its Enforcement and Removal Operations (ERO) division support the provision of public access to non-classified, non-sensitive and non-confidential information about operations in the interest of transparency. PBNDS 2011 Standard 7.2., part V.A.1. Under the PBNDS, all requests for tours must be submitted in writing to the local ICE/ERO Field Office supervising the facility. PBNDS 2011 7.2.V.B. In reviewing the request, the ICE Field Office Director, or his or her designee, takes into consideration safety and security, and the availability of ICE/ERO personnel to staff the tour. *Id.* All tour participants are expected to submit personal information required by applicable ICE policies, so the Field Office can perform background checks as necessary. *Id.*

As stated above, ICE/ERO maintains an open and transparent approach to immigration detention through managed access of public participation in approved tours. Regarding Plaintiffs' request to visit the DCDF, ICE/ERO has advised Plaintiffs that it has no objection to providing Plaintiffs with a tour of the requested five areas of the DCDF outlined above. Plaintiffs can communicate with the local ICE Community Relations Officer to coordinate the tour, including the date, time, and background steps prior to the tour.

### **ICE Security Concerns Presented by Photography and/or Video-Recording**

As stated in the PBNDS 2011, if the presence of video, film or audio equipment poses a threat to the safety or security of the facility, its staff or its detainees, the Field Office Director may limit or prohibit such access. PBNDS 7.2.V.A.3. The limitation on photo and video equipment is based on serious operational security and law enforcement concerns that aim to limit risk of harm to persons (including detainees, facility staff, and the public) and property; introduction of contraband, including drugs, weapons, and/or escape tools into the facility; and detainee escape from the facility, among other concerns. The DCDF is a secure facility with a secure control center that is staffed continuously. The front entrance is a controlled access point for entry of both individuals and vehicles. Security officers are posted immediately adjacent to housing units and other areas of the facility to permit officers to see or hear and respond to emergency situations. Facility staff observe, supervise and control movement of detainees from one area to another.

Permitting photography and video-recording of the DCDF could essentially provide a blueprint of the facility, including its layout, secure entrances and exits, the secure control center, and the positioning of staff and staffing level of the various areas of the facility. Photography and video-recording presents a significant risk to operational security, including risk of harm to

2

detainees, facility staff, and the public, as it will allow viewers to potentially exploit any perceived weaknesses in operational security.

Although ICE/ERO may have previously considered possible options to accommodate photography and/or video-recording, ICE/ERO currently cannot make any accommodations in this regard. First, the Denver Field Office is under new leadership, which has reassessed and reinforced certain aspects of operational security. Second, the DCDF previously held approximately 400-500 immigration detainees and now houses approximately 1,400 detainees. There has been an increase of 600 immigration detention beds at the DCDF in the last 18 months alone. This significant increase requires additional, heightened security measures. Finally, on June 16, 2019, as widely reported in the media, three detainees (including one who is currently a suspect in a rape case) escaped from the DCDF. As a result of these operational security and law enforcement concerns, ICE/ERO has determined that it cannot permit photography or video-recording in the DCDF.

Given the serious risk of harm to detainees, facility staff, and the general public, ICE believes that any benefit of photography and video-recording is outweighed by the security concerns outlined above. ICE further believes that, even with a protective order in this case, the subsequent possible harm following an inadvertent release of photos and/or videos dwarfs any value from photography and video-recording.

### **Detainee and Staff Privacy Concerns Presented by Photography and/or Video-Recording**

As stated in the PBNDS, limitations on photography and video-recording protect the privacy of detainees and facility staff, including the right of a detainee not to be photographed or recorded. PBNDS 2011 7.2.II.2.

Detainees have the right not to be photographed (still, movie or video) and not to have their voices recorded. PBNDS 2011 7.2.III.3. ICE/ERO has a responsibility to protect these rights, which it takes seriously. PBNDS 2011 7.2.V.A.1. Detainees at the DCDF have not consented to being photographed and/or video-recorded in this matter. Additionally, detainees at the DCDF have significant personal safety interests in maintaining their privacy. Detainees may have sensitive applications for benefits that are confidential pursuant to statutory provisions. 8 U.S.C.§ 1367 protects several categories of confidential information that prohibit disclosure of **any** information which relates to an alien who is the beneficiary of an application for relief under the Violence Against Women Act (VAWA); trafficking Victims (T Visa) and; victims of crimes (U Visa), among other categories of individuals. *See* U.S.C. 8 §1367(a)(2). This provision prohibits disclosure of any information about a detainee who is the beneficiary of or has an

3

application pending for such relief. This provision not only applies to documents regarding a detainee, but would also include photographs and/or video that capture any images of a detainee who is the subject of such relief. Penalties for violating this provision include disciplinary action and civil money penalties for each violation. *See* 8 C.F.R. §1367(c). Additionally, detainees may also be at risk of gang or other organized violence if their identities and locations are exposed.

ICE staff also have major privacy interests which are implicated by Plaintiffs' request for photography and/or video-recording. If ICE staff are publicly identified (whether by face, uniform, vehicle license plate, or other method of identification), they and their families face serious risk of harm. It is clear that there is hostility to ICE in the local community, as the DCDF is regularly the subject of protests and demonstrations. Further, there have been instances where ICE employees are followed when driving home in their personal vehicles, harassed, and otherwise targeted for public abuse. In the summer of 2018, hackers posted the personal information of approximately 9,000 ICE employees online.

Additionally, it is reported that blurring or pixelating images, if considered as an alternative, are not legitimate methods of maintaining privacy. It is further reported that, given the state of current technology, individuals and computers are able to reverse obfuscation of faces and images. As a result, ICE does not believe that the blurring of photographs of detainees or ICE staff mitigates these privacy concerns.

Thank you in advance for your cooperation in this matter. Should you have any questions or concerns regarding the above, please do not hesitate to contact me.

Sincerely,

John E. Fabbricatore
Acting Denver Field Office Director
Enforcement and Removal Operations
U.S Immigration and Customs Enforcement

Case 1:14-cv-02887-JLK-MEH Document 436-1 Filed 11/04/22 USDC Colorado Page 6 of 7
Case No. 1:14-cv-02887-JLK-MEH Document 415 Filed 11/21/2024 USDC Colorado Page 6 of 7
pg 6 of 7

CC:

Valerie Brown
Holland & Knight
2929 Arch Street, Suite 800
Philadelphia, PA 19104
Email: Valerie.Brown@hklaw.com

Juno Turner
Ossai Miazad
Elizabeth Stork
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, New York 10017
E-Mail: jturner@outtengolden.com
E-Mail: om@outtengolden.com
E-Mail: estork@outtengolden.com

David Lopez
Outten & Golden LLP
601 Massachusetts Avenue NW
Second Floor West Suite
Washington, D.C. 20001
E-Mail: pdl@outtengolden.com

Rachel Dempsey
Adam Koshkin
Outten & Golden LLP
One California Street, 12th Floor
San Francisco, CA 94111
E-Mail: rdempsey@outtengolden.com
E-Mail: akoskin@outtengolden.com

Alexander Hood
David Seligman
Andrew Schmidt
Towards Justice
1410 High St., Suite 300
Denver, CO 80218
(720) 441-2236
E-Mail: alex@towardsjustice.org
E-Mail: david@towardsjustice.org
E-Mail: andy@towardsjustice.org

Case 1:14-cv-02887-JLK-MEH Document 436-1 Filed 11/04/21 USDC Colorado Page 7 of 7
Case No. 1:24-mc-00097-JLK Document 4-5 Filed 11/20/24 USDC Colorado Page 7 of 7
pg 7 of 7

R. Andrew Free
Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
E-Mail: Andrew@ImmigrantCivilRights.com

Brandt Milstein
Milstein Law Office
595 Canyon Boulevard
Boulder, CO 80302
(303) 440-8780
E-Mail: brandt@milsteinlawoffice.com

Andrew Turner
The Kelman Buescher Firm
600 Grant St., Suite 450
Denver, CO 80203
(303) 333-7751
E-Mail: aturner@laborlawdenver.com

Hans Meyer
Meyer Law Office, P.C.
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
E-Mail: hans@themeyerlawoffice.com