IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:14-cv-02887-JLK-MEH

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

    Plaintiffs,

v.

THE GEO GROUP, INC.,

    Defendant.

---

### DEFENDANT'S RESPONSE TO MOTION FOR JURY VIEW

---

Defendant The GEO Group, Inc. ("Defendant" or "GEO"), by and through its undersigned counsel, hereby submits its Response in opposition to Plaintiffs' Motion for Jury View (ECF No. 414) ("Motion") and respectfully requests that this Court deny Plaintiffs' Motion for Jury View.

### I. Introduction

A jury view of the Aurora ICE Processing Facility ("Facility") in this case would be unnecessarily time consuming and duplicative and therefore Plaintiffs' motion should be denied. This case is about whether various tasks that Plaintiffs completed were the product of forced labor or otherwise constituted labor that unjustly enriched GEO. This case is not about the conditions of confinement. The issue of whether Plaintiffs should be allowed to take the jury to view the Facility

1

in person has been briefed several times in this case already. Prior briefing can be found at ECF Numbers 301-304; 323; 325; 386; and 390. Throughout the briefing, Plaintiffs' basic argument is that the Facility's scale cannot be understood by an average juror based upon pictures, videos, a detailed floor plan, and witness testimony. They argue that this visual scale is purportedly only palpable in person and that it is an important consideration for the jury in determining whether detainee labor was forced or unfair. GEO disagrees. The issue of whether detainee labor was forced or created a scenario of unjust enrichment is largely detached from the scale and size of the Facility. Instead, the jury's decision will be guided by Plaintiff's stated motivations for performing work and the relevant policies at the Facility. The ultimate decision by the jury does not hinge on whether a detainee cleaned an area that felt cramped or expansive—it matters <u>why</u> they cleaned in the first place. Thus, the evidence Plaintiffs seek is of little probative value. To the extent the size of the Facility is tangentially relevant, it is duplicative. Plaintiffs have significant evidence at their disposal, including at least a hundred photographs taken during counsels' tour of the Facility, a diagram of the facility, witness testimony, and a six-minute video. Accordingly, the request for an inconvenient and time-consuming visit to the facility, in order to obtain cumulative evidence, should be denied.

## II.     Legal Standard

While a trial court has the discretion to grant a jury view, the decision to do so is "highly unusual" and "rarely appropriate." *United States v. Santiago*, 203 F. Supp. 3d 1135, 1137 (D. Colo. 2016). The *Santiago* case provides a number of considerations for a Court in determining whether a jury view is appropriate, including, (1) whether there are other sources of documentary evidence or witness testimony available; (2) whether conditions at the site have changed since the time of the incident; and (3) logistical difficulties that may present themselves during the out-of-court

excursion. [1] The balance of these factors weigh against a jury view of the Facility.

### III.   Sufficient Evidence Exists for the Jury to Visualize the Layout of the Facility.

Courts routinely deny jury views where other sufficient evidence in the form of diagrams, photographs, and testimony can be introduced in its stead. For example, in *United States v. Chiquito*, 175 F. App'x 215, 217 (10th Cir. 2006), the party seeking a jury view alleged that the only way to show the jury the distances between various points and the general layout of the crime scene was to take the jury to the scene in person. On a review of other available evidence, the Tenth Circuit (and district court) disagreed. Chiquito's request was denied by the district court (which denial was upheld by the Tenth Circuit) because the visit would be cumulative—there were already available photographs of the area where the incident occurred as well as videographic evidence. Similarly, in *Santiago*, evidence of a prison's layout, photographs of the same, and testimonial evidence were available—warranting the denial of the request for a jury view of the Florence, Colorado prison. *Santiago*, 203 F. Supp. 3d at 1137-38.

Here, Plaintiffs claim that a jury view is needed so that the jury can "view the size and configuration of the housing unit." Motion at 4. But, as Plaintiffs effectively concede in their motion, ample evidence already exists to show the layout and size of the Facility, including "a short publicly available video ("Media b-roll)", photographs, floor plans, [and] narrative descriptions by witnesses." ECF 414 at 5. [2] This existing evidence negates the need for a jury view. *See e.g.*, *United States v. Triplett*, 195 F.3d 990, 999 (8th Cir. 1999) (upholding the denial of a jury view where "the evidence presented at trial included photographs and diagrams of the sites of

---

[1] These factors differ from those listed by Plaintiffs as theirs appear to be the product of the Jury Instructions Committee of the Ninth Circuit; not Tenth Circuit caselaw. That said, the relevant factors are similar enough under either test to warrant denial of Plaintiffs' motion.
[2] The nearly six minute "Media b-roll" video is available at the following link: https://www.dvidshub.net/video/701993/aurora-contract-detention-facility-media-b-roll. The photographs provide significantly more detail of the Facility.

Triplett's arrests, as well as witness testimony regarding the circumstances and conditions at those locations at the relevant times.").[3] While Plaintiffs complain that the photographs and video alone do not make clear the dimensions of a cell or living unit, in connection with testimony and the available layout of the Facility, Plaintiffs will be well equipped to tell the jury of the size of the unit as each Plaintiff previously lived in the Facility. Surely, any lay person would be able to understand the general expanse of a home or business when given photographs, a floor plan, and testimony about its size. The Facility is no different. A juror's inability to read a floor plan would not prevent the juror from understanding how big a space is when the juror is also provided with a photograph and testimony about the space, thereby orienting the juror to its approximate size. Indeed, Plaintiffs' damage's expert relies upon his understanding of the square footage of the facility to determine what it would cost to commercially clean, paint, and care for the facility—belying any argument that insufficient evidence would be available to Plaintiffs at trial. Witnesses can provide further color with relatable comparisons. Thus, under the same case cited by Plaintiffs, any jury visit would be cumulative, and therefore, unnecessary. *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1314 (10th Cir. 2007) ("Evidence is cumulative if its probative effect is already achieved by other evidence in the record; that is, 'if the small increment of probability it adds may not warrant the time spent in introducing it.'") .

      A jury visit would add very little to the evidence already available. Importantly, the issue of the size of the facility is not a highly relevant issue for the jury to consider. The key dispute between the Parties is not *how big* the housing units were, but instead, whether detainees performed forced labor. The size of a cell or housing unit will be of little probative value in determining a detainee's motivation for participating in tasks within the Facility. And to the extent

---

[3] It is worth noting that Plaintiffs have *voluntarily* forwent obtaining video of the Facility and now complain about that which is available to them. *See* ECF 414 at 5 ("Plaintiffs have agreed not to seek video recording to the extent this motion is granted.").

it is probative, jurors will be able to understand the relative sizing of the housing units with the testimony, video, floor plans and photographs available. In short, Plaintiffs have not provided a compelling argument that a jury visit (requiring transportation for the jury, court reporter, and counsel to the facility ~20 minutes away) would materially add to the already voluminous evidence showing the Facility's condition, layout, and its relative size.

### IV.     The Jury View Would be Inconvenient.

In addition to being duplicative of other evidence that will be offered, the jury view would be inconvenient and would unnecessarily lengthen what is sure to be an already long trial. *See* ECF 383 (estimating a three-week jury trial). The GEO Facility is located ~20 minutes driving time from the downtown federal courthouse. Transportation would need to be arranged for and provided[4] to the Jury, the Court staff, and counsel (along with Marshalls as the Court sees fit). At least 72 hours prior to the visit, each and every juror would need to be pre-screened by both GEO and ICE for security reasons. ECF 323-4. The requirements for pre-screening are set forth by ICE in ECF 323-4 and reattached here as Exhibit A. Then, on the day of the visit, each juror would need to leave behind their cell phone at the Courthouse or in the vehicle transport, as cell phones are not allowed in the Facility. *Id.* Once there, each juror would need to go through standard screening at the Facility, much like at the Federal Courthouse. This screening would take additional time from the day. By the time the jury was through with the tour and back to the Courthouse, GEO estimates conservatively that this would take a minimum of half of a trial day, plus an additional few hours for pre-screening and juror concerns. In short, a visit to the Facility requires hours of preparation and at least half of a day of trial time (and likely more), with no clear evidentiary benefit to Plaintiffs or the jury. On this basis alone, the motion should be denied.

---

[4] Presumably, this would be at Plaintiffs' expense.

## V. The Jury View Could be Prejudicial.

In addition to being duplicative, the proposed jury view could unnecessarily prejudice GEO. Among other concerns, GEO has no way of ensuring that there are not protestors present at the Facility when the jury arrives. Indeed, protestors often target the Facility.[5] And, GEO has previously submitted a list of disturbances at the Facility that could disrupt the viewing if repeated. *See* ECF 390-2. Among those disturbances include numerous protests of twenty or more people. *Id.* GEO has updated this declaration, attached here as Exhibit B. The renewed declaration makes clear that the ongoing disturbances have not ceased over the past two years. *See* Exhibit B. It is GEO's understanding that the trial, including details of the jury visit, would be available to the public. GEO would have no way to stop protestors from learning of the timing and planning for the jury view. Nor would it be able to prohibit the media from reporting on the jury view from outside of the Facility. Either the presence of media or of protestors could unfairly bias jurors against GEO, causing unnecessary prejudice. Given the wealth of alternate evidence on the layout and sizing of the Facility, a jury view is not worth the risk of prejudice.

## VI. Conclusion

In short, Plaintiff's Motion provides nothing "highly unusual" about the circumstances of this case that would require a site visit. Nor does Plaintiff identify any critically probative evidence that could not be otherwise proven through the existing evidence in the case. Accordingly, GEO respectfully requests that this Court deny Plaintiffs' motion.

---

[5] *See e.g.* Activists hold Día de los Muertos vigil outside Aurora ICE detention center to demand information on Nicaraguan inmate's death, Colorado Public Radio News, *available at:* https://www.cpr.org/2022/11/03/advocates-immigration-customs-enforcement-custody-death/ (last visited December 3, 2024); *See also* Aurora Police Investigate After U.S. Flag Removed During Protest, Associated Press July 14, 2019, https://kdvr.com/news/local/aurora-police-investigate-after-u-s-flag-removed-during-protest (last visited December 3, 2024).

Dated: December 11, 2024                  Respectfully submitted,

By: <u>Adrienne Scheffey</u>
Adrienne Scheffey
Dana L. Eismeier
Michael Y. Ley
**BURNS, FIGA & WILL, P.C.**
6400 S. Fiddler's Green Circle, Suite 1000
Greenwood Village, CO 80111
Phone: (303) 796-2626
Facsimile: (303) 796-2777
deismeier@bfwlaw.com
mley@bfwlaw.com
ascheffey@bfwlaw.com

Joseph Negron
Scott Schipma
**THE GEO GROUP, INC.**
4955 Technology Way
Boca Raton, FL 33431
Phone: 561-999-7344
jnegron@geogroup.com
sschipma@geogroup.com

*Attorneys for Defendant The GEO Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of December, 2024, a true and correct copy of the foregoing **DEFENDANT'S RESPONSE TO MOTION FOR JURY VIEW** was electronically filed with the Clerk of the Court using the CM/ECF electronic filing system, which will send notification to all counsel of record:

| | |
|---|---|
| Joseph Negron<br>Scott Schipma<br>THE GEO GROUP, INC.<br>4955 Technology Way<br>Boca Raton, FL 33431<br>Telephone: 561-999-7344<br>jnegron@geogroup.com<br>sschipma@geogroup.com<br>*Attorneys for Defendant*<br>*The GEO Group, Inc.* | Michael J. Scimone<br>OUTTEN & GOLDEN, LLP<br>685 Third Avenue, 25th Floor<br>New York, NY 10017<br>Telephone: (212) 245-1000<br>mscimone@outtengolden.com<br><br>Adam Koshkin<br>OUTTEN & GOLDEN, LLP<br>One California Street, 12th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 638-8800<br>akoshkin@outtengolden.com |
| David Seligman<br>Juno Turner<br>Alexander Hood<br>Andrew Schmidt<br>Rachel Dempsey<br>Brianne Power<br>TOWARDS JUSTICE<br>1410 High St., Suite 300<br>Denver, CO 80218<br>Telephone: (720)441-2236<br>alex@towardsjustice.org<br>david@towardsjustice.org<br>andy@towardsjustice.org<br>juno@towardsjustice.org<br>rachel@towardsjustice.org<br>brianne@towardsjustice.org | Andrew H. Turner<br>Brandt P. Milstein<br>MILSTEIN TURNER, PLLC<br>1490 Lafayette St., Suite 304<br>Denver, CO 80218<br>Telephone: (303) 305-8230<br>andrew@misteinturner.com<br>brandt@milsteinturner.com<br><br>Hans Meyer<br>MEYER LAW OFFICE, P.C.<br>P.O. Box 40394<br>Denver, CO 80204<br>Telephone: (303) 831-0817<br>hans@themeyerlawoffice.com |

By: */s/ Adrienne C. Scheffey*
Adrienne C. Scheffey