**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:14-cv-02887-JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

    Plaintiffs,

v.

THE GEO GROUP, INC.,

    Defendant.

_____

**REPLY IN SUPPORT OF PLAINTIFFS' RENEWED
MOTION FOR JURY VIEW**
_____

1

**Table of Contents**

I.   Introduction ................................................................................................................... 3

II.  The Proposed Jury View Would Materially Assist the Jury. ............................................ 4

    A.   Plaintiffs' TVPA Claim Requires the Jury to Make Findings About the Conditions of Confinement. ................................................................................................ 4

    B.   Like the TVPA Claim, the Unjust Enrichment Claim Requires the Jury to Understand the Conditions of the Facility. .............................................................. 5

    C.   A Jury View Provides the Best Possible Evidence of the Conditions of Confinement. ................................................................................................ 6

III. There Are No Serious Logistical Challenges to a Jury View. ........................................... 9

IV.  The Jury View Would Not Be Prejudicial. ..................................................................... 10

**I.      Introduction**

GEO's opposition to this Motion misunderstands Plaintiffs' arguments and misconstrues the legal standards that apply to this case. GEO focuses exclusively on Plaintiffs' argument that a jury view will allow jurors to experience and process the size, scope, and layout of the facility. While understanding the size and layout of the facility are important reasons on their own for the Jury to view the facility (among other issues, those facts bear on damages; state of mind; causation; and the scope of the benefit conferred on GEO), GEO fails to acknowledge a more complex picture. Despite GEO's insistence that "[t]his case is not about the conditions of confinement," Def.'s Br. 1 (emphasis in original), it acknowledges in the next breath that the Jury will be asked to determine whether GEO's threats of solitary confinement caused detainees to clean the common areas of the facility – while failing to acknowledge the direct line the Court has already articulated between the conditions of confinement and the causation standard that applies to Plaintiffs' TVPA claim. Meanwhile, GEO ignores Plaintiffs' unjust enrichment claim entirely, failing to recognize that it relies precisely on whether the circumstances of Plaintiffs' labor – that is, their conditions of confinement – make it unjust for GEO to retain the benefit of their labor. In sum, it appears that its view of this case continues to "blind[] GEO from honest argument." ECF No. 380 at 57 (Summary Judgment Order).

The Parties are well capable of handling the logistics required to facilitate a jury view, and there are adequate protections to prevent prejudice to the Parties. Accordingly, the Court should grant Plaintiffs' motion.

## II. The Proposed Jury View Would Materially Assist the Jury.

### A. Plaintiffs' TVPA Claim Requires the Jury to Make Findings About the Conditions of Confinement.

A view of the Facility would assist the Jury in multiple ways. It would help them decide Plaintiffs' TVPA claim because the conditions of the facility are probative of (1) whether solitary confinement, as practiced at Aurora, constitutes "serious harm," (2) whether the circumstances of this case permit an inference that GEO's threats and use of solitary confinement caused the Plaintiffs and Class Members to work, and (3) the size of the facility and the scope of the cleaning required. The conditions of confinement are key to answering these questions.

On the question of serious harm, GEO plans to offer expert testimony describing the segregated housing unit as "architecturally similar to congregate housing units," (i.e. non-solitary confinement) and the expert's opinion that isolation in Aurora's solitary confinement cells is not harmful to detainees. ECF No. 339-20 (Report of Jeffrey Kropf) at 8 ("[S]egregated housing units at most institutions including the AIPC are not dungeons, holes in the ground, elevated cages, or sensory deprivation chambers."). By introducing expert testimony on the layout and condition of the segregated housing unit, GEO places the conditions of confinement at issue; the Jury will have to weigh this opinion testimony. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016)

4

(probative value of expert testimony is "is the near-exclusive province of the jury"). Visiting the Facility in-person will give the jurors important context they need to determine whether isolation in solitary confinement is a serious harm.

Similarly, the Jury will be asked to determine whether the conditions of confinement at the facility are such that detainees worked because of the threat of solitary confinement. GEO has repeatedly argued that detainees are held in comfortable conditions and that asking detainees to work within the Facility is not different from "ordinary parents requiring chores." ECF No. 380 at 57 ("GEO's tone and arrogance are not well taken" as to arguments about the conditions of confinement). A tour of the facility will put Jurors in the best possible position to evaluate whether immigration detention is more like a familial unit requiring chores or a coercive environment devoid of basic freedoms.

Additionally, GEO is correct that a tour of the Facility will help jurors gain a sense of the size and layout of the space, allowing them to better estimate the amount of time and effort required to clean it. Def.'s Br. 4.

### B. Like the TVPA Claim, the Unjust Enrichment Claim Requires the Jury to Understand the Conditions of the Facility.

A jury view would also assist the Jury in evaluating Plaintiffs' unjust enrichment claims for many of the same reasons it would assist with the TVPA claims, including that class members' conditions of confinement play a crucial role in an element of the claim.

In particular, in establishing that the benefit GEO obtained from detainees working for $1/day was unjust, Plaintiffs will show that GEO used underpaid labor to win

5

lucrative government contracts by exploiting immigration detainees who were uniquely vulnerable. The Jury will have to determine whether GEO's business strategy requiring labor at rates far below the minimum wage from detainees who, as the Court has observed, "have many shared vulnerabilities," including that they "were detained in the same institution subject to universal policies; they were fighting immigration cases; they were not free to leave; they lived in the company of mostly strangers; their ability to see and communicate with their family and loved ones was restricted; and they had little—if any—privacy," ECF No. 380 at 61, is unjust. To make that equitable determination, the Jury will need a firsthand understanding of the conditions the class members experienced to evaluate whether the detainees were particularly susceptible to exploitation, rendering GEO's strategy unjust. A jury view will permit them to do just that.

And, as GEO notes in its opposition, like with the TVPA claim, a jury view will give the jury a clear understanding of the size and layout of the space so that it can properly determine the restitution owed to class members.

### C. A Jury View Provides the Best Possible Evidence of the Conditions of Confinement.

GEO elides the relevant standard that applies to a motion for a jury view. The standard is not whether a jury view would be "duplicative" of other evidence, as GEO repeatedly claims – it is whether there are adequate *alternative* sources of evidence. *See United States v. Santiago*, 203 F. Supp. 35 1135, 1137 (D. Colo 2016) (factors considered in deciding to permit a jury view include the "availability of other sources of documentary evidence and/or witness testimony"). The point of a jury view is to

6

substitute firsthand observation for secondhand depiction – to select the best evidence, not duplicate other evidence.  GEO's opposition disregards the real and material differences between a depiction of a place in testimony, photographs, video, and floor plans and observing it firsthand.  By GEO's logic, nobody would ever visit the Rocky Mountains because looking at photos, watching a video of the landscape, and learning that the mountain range includes 25 peaks at 14,000 feet or higher is sufficient to convey what the Rockies are like.  And yet Rocky Mountain tourism thrives because thousands of people every year prefer firsthand experience.  So too here.  Photographs, videos,[1] descriptions, and floor plans are no substitute for a personal observation of a solitary confinement cell.

      A jury view is simply more effective than other forms of evidence at providing jurors with an understanding of Plaintiffs' circumstances and claims.  As discussed thoroughly in Plaintiffs' Motion, ECF No. 414 at 5-7, courts have recognized that video recordings and photographs are often unclear and/or misleading.  *See, e.g.*, *Estate of Ronquillo v. City & Cty. of Denver*, 720 Fed. App'x 434, 436-37 (10th Cir. 2017); *United States v. Dupree*, 540 Fed. App'x 884, 893 n.7 (10th Cir. 2014).  And that is particularly true of the video at issue here, which excludes footage of the solitary confinement unit and the women's housing unit, and only shows the common areas for 56 seconds.

---

[1] The Media b-roll video does not contain images of the solitary confinement unit. *See* https://www.dvidshub.net/video/701993/aurora-contract-detention-facility-media-b-roll

A jury view would complement, not duplicate, Plaintiffs' testimony and floor plans. There is no doubt that Jurors will learn a lot about the Facility from witness testimony – including Plaintiffs' and other detainees' subjective experience of hearing about solitary confinement, observing its effects on others, and experiencing confinement firsthand.[2] Seeing the solitary confinement wing themselves will help Jurors understand why Plaintiffs and the detainees they witnessed suffered precisely the same negative effects described by Plaintiffs' expert, Dr. Stuart Grassian.[3] Floor plans may similarly be helpful in showing the square footage of areas detainees cleaned – the plans and square footage were considered by Plaintiffs' damages expert – but the prospect of mopping and sanitizing the housing unit will come to life on a visit.

Accordingly, an in-person visit will permit Jurors to evaluate for themselves whether Class Members worked under conditions similar to "ordinary parents requiring chores," ECF No. 380 at 57-58, and whether the "looming threat of segregation" was "sufficient to compel a victim to provide labor." *Id.* at 65-67.

---

[2] *See, e.g.*, testimony of Alejandro Hernandez Torres, ECF No. 336-13 at 28-29 (solitary confinement cells are "8 meters wide by 3 ½ meters" with a bed "made of steel", the cell is "always very cold", and "[t]here's no way you can go to sleep because the light is always on"); testimony of Hugo A. Hernandez Ceren, ECF No. 336-4 at 7-8 (describing threats of solitary confinement).

[3] *See., e.g.,* testimony of Dr. Stuart Grassian, ECF No. 336-3 at 4 (describing a "baseline level of psychiatric harm that's associated with" being in solitary confinement); 9 ("the risk of suicide . . . [is] much more sever, much worse in the first days" of solitary confinement).

8

### III. There Are No Serious Logistical Challenges to a Jury View.

Contrary to GEO's arguments, Def.'s Br. 5, a half-day visit is not an outsized inconvenience in the course of an approximately three-week jury trial. GEO cites no authority for its contention. In half of a trial day, a jury might typically hear between one and three witnesses testify. It is highly likely that without a jury view, multiple witnesses would spend far longer describing the facility at trial – and if GEO's witnesses echo Defendant's briefing, it is likely that their characterization of the facility will lead to cross-examination or rebuttal testimony that might be unnecessary if the Jury has its own experience to fall back on. *See* ECF No. 305 (GEO Mot. for Summ. J.) at 27 (citing Menocal's out-of-court statement that detention at the Facility was "pretty nice . . . for being incarcerated" and detainees were provided "three meals a day, time for exercise, television, and reading books supplied by GEO, and the opportunity to speak to their families on the phone, as well as access to legal materials in a law library. Detainees were largely free to do what they wanted during the day and were not deprived of social opportunities").

Nor is the ICE background check or security screening – which is similar to courthouse security procedures – a logistical challenge. A background check can be completed in advance of the trial, allowing ICE to process the information well in

advance of the Jury view date.[4] And arranging transportation for 12 jurors and a few alternates is no challenge.

## IV.    The Jury View Would Not Be Prejudicial.

GEO's concerns about protestors are easily addressed.  Def.'s Br. 6.  The presence of media or protestors outside the site of a high-profile trial touching on hot-button political issues is not unusual and could arise here whether or not the Jury views the Facility.  If protestors are at the Facility while the Jury is there, the Court could (and should) instruct the Jury to ignore their presence and not take it into account when viewing the facility.[5]  Despite GEO's contention that it "would have no way to stop protestors from learning of the timing and planning for the jury view," *id.*, Plaintiffs do not object to keeping the date and time of the jury view off of the public docket and prohibiting the information from being shared in open court.

## V.    Conclusion

For the foregoing reasons, and for the reason set forth in their initial brief, Plaintiffs' Motion for Jury View should be granted.

Dated: New York, NY
      January 2, 2025

Respectfully submitted,

By: */s/ Michael J. Scimone*
Michael J. Scimone
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor

---

[4] The Parties can select alternate Jurors at the outset who can be called upon in the event any juror does not pass the ICE screening.

[5] GEO expresses concern that protests might prejudice the jury against GEO. Plaintiffs are equally concerned that protests (advocating any political viewpoint) could prejudice the jury against them.  So this is a point of mutual concern.

New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-Mail: mscimone@outtengolden.com

Adam Koshkin
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: akoshkin@outtengolden.com

David Seligman
Juno Turner
Alexander Hood
Rachel Dempsey
Brianne Power
**TOWARDS JUSTICE**
1580 N Logan Street
Denver, CO 80203
Telephone: (720) 441-2236
E-Mail: alex@towardsjustice.org
E-Mail: david@towardsjustice.org
E-Mail: andy@towardsjustice.org
E-Mail: juno@towardsjustice.org
E-Mail: rachel@towardsjustice.org
E-Mail: brianne@towardsjustice.org

Andrew Turner
Brandt Milstein
**MILSTEIN TURNER, PLLC**
1490 Lafayette St. #304
Denver, CO 80218
Telephone: (303) 305-8230
E-Mail: andrew@milsteinturner.com
E-Mail: brandt@milsteinturner.com

Hans Meyer
**MEYER LAW OFFICE, P.C.**
P.O. Box 40394
Denver, CO 80204

            Telephone: (303) 831-0817
            hans@themeyerlawoffice.com

*Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2025, a copy of the foregoing document was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Michael J. Scimone*
Michael J. Scimone
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
E-Mail: mscimone@outtengolden.com