**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO**

Civil Action No.: 1:14-cv-02887-JLK-CYC

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA and
DEMETRIO VALERGA,
*on their own behalf and on behalf of all
others similarly situated*,

      Plaintiffs,

v.

THE GEO GROUP, INC.,

      Defendant.

---

**DEFENDANT'S MOTION TO STAY PROCEEDINGS**

---

**D.C.COLO.LCivR 7.1(a) Certificate of Compliance**: Counsel for Defendant, The Geo Group Inc., hereby certify that they have conferred with Plaintiffs' counsel via email and telephone regarding the relief requested herein, more than 24 hours in advance of the filing of this Motion.  Plaintiffs' Counsel opposes the requested relief.

**Certification Regarding the Use of Generative Artificial Intelligence**: Counsel for GEO hereby attests that no Generative Artificial Intelligence was used in connection with the drafting of this Motion.

1

## I.   INTRODUCTION

Defendant The GEO Group, Inc. ("GEO") requests this Court stay all deadlines through June 1, 2026.  GEO alternatively requests the Court stay proceedings as to Plaintiffs' claims for unjust enrichment based on the amount that GEO paid participants in the Voluntary Work Program ("VWP").  Plaintiffs' counsel have filed multiple lawsuits over that program and its federally mandated $1-per-day stipend.  One of those cases is currently the subject of a petition for writ of certiorari before the Supreme Court.  *The Geo Grp., Inc. v. Nwauzor*, No. 25-828 (filed Jan. 9, 2026) (Ex. A).  Among the issues presented to the high court is whether state-law claims for unjust enrichment regarding the VWP stipend are preempted or offend intergovernmental immunity.  If the Supreme Court grants review, its decision could dispose of Plaintiffs' claim.  GEO expects a decision on certiorari next month and, if the Court does not stay all deadlines until June 1, 2026, GEO respectfully moves the Court to stay proceedings on the unjust enrichment claim until the Supreme Court decides whether to hear *Nwauzor*.

This Motion requests expedited proceedings in response to the breakneck pace of this case since the Supreme Court's decision on February 25, 2026.  Not long after that decision, but before the Supreme Court transmitted its judgment on March 30, 2026, this Court lifted its stay and set the case for a pretrial conference and trial.  Since then, the Tenth Circuit recalled its mandate.  GEO moved on April 2, 2026, for the appellate court to re-issue the mandate and for the panel to retain jurisdiction over future appeals; the Tenth Circuit directed Plaintiffs to file a response by April 10, 2026.

Practically speaking, the current deadlines in this Court gave the parties less than five weeks to contact witnesses, identify exhibits, and engage in meaningful settlement discussions—as required by the pretrial order due April 29, 2026.  Further complicating the truncated timeline is the pending petition for certiorari in *Nwauzor* and the concurrently filed

2

Motion for Partial Summary Judgment or Judgment on the Pleadings on qualified immunity and Defendant's Motion to Certify Question for Interlocutory Appeal. Any of those filings, if granted, would significantly impact this case. An expedited resolution thus ensures a stay is granted before the parties expend significant resources preparing for trial.

## II.    BACKGROUND

This lawsuit is not unique. It is one of several that plaintiffs' lawyers and state governments have brought against GEO alleging some subset of the claims in this case: violations of state minimum-wage laws, the Trafficking Victims Protection Act ("TVPA"), and unjust enrichment. Those cases have progressed at different rates and are currently in differing procedural postures. Most notably, the *Nwauzor* case from Washington State has progressed through trial and appeal and is now the subject of a pending petition before the Supreme Court.

Like this case, the complaint in *Nwauzor* asserted state-law claims based on the $1-per-day stipend provided to participants in the VWP. As here, the *Nwauzor* plaintiffs asserted that the federally mandated stipend violated the relevant minimum-wage law and state common law preventing unjust enrichment. They did not include federal TVPA claims. This Court correctly dismissed the minimum-wage claim in the present case as inapplicable to persons in detention facilities. (Doc. 23). The Western District of Washington, on the other hand, permitted minimum-wage and unjust enrichment claims to go forward, in spite of a number of Supremacy Clause doctrines that prevent claims against contractors performing as directed by the federal government. A jury eventually found in the plaintiffs' favor.

GEO appealed and argued again that preemption and intergovernmental immunity preclude States from regulating the manner in which federal immigration contractors perform their work, including the payment of a stipend that complies with federal requirements. After

3

a certified question to the Washington Supreme Court regarding whether detainees qualify as "employees" for purposes of the Washington minimum-wage law, *Nwauzor v. The Geo Group, Inc.*, 540 P.3d 93 (Wash. 2023), a Ninth Circuit panel ruled against GEO over Judge Bennett's dissent, *Nwauzor v. The Geo Grp., Inc.*, 127 F.4th 750 (9th Cir. 2025). Seven judges dissented from the Ninth Circuit's denial of rehearing en banc. *Nwauzor v. The Geo Grp., Inc.*, 146 F.4th 1280 (9th Cir. 2025). On January 9, 2026, GEO filed its petition for writ of certiorari. The brief in opposition is due April 10, 2026, and GEO's reply is due two weeks later, on April 24, 2026. The Supreme Court will conference the petition in May.

### III.   LEGAL STANDARD

The Court's ability to stay proceedings is part of "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). Staying a matter pending a development in related litigation depends on several factors: "whether the defendants are likely to prevail in the related proceeding; whether, absent a stay, the defendants will suffer irreparable harm; whether the issuance of a stay will cause substantial harm to the other parties to the proceeding; and the public interests at stake." *United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003). Where a question of immunity is pending, courts are more inclined to enter a stay. *Moore v. Busby*, 92 F. App'x 699, 702 (10th Cir. 2004) (affirming stay of discovery pending resolution of absolute immunity).

### IV.   ARGUMENT

The Supreme Court will soon decide whether to review GEO's petition in *Nwauzor*. That petition focuses on a pair of Supremacy Clause doctrines that would dispose of Plaintiffs' state-law claim in this case and reshape the issue before this Court. A short stay of all deadlines through June 1, 2026, is needed to learn whether the Supreme Court grants certiorari; such a

stay would impose no prejudice on Plaintiffs. By contrast, subjecting GEO to the expense and distraction of litigating a state-law claim based on its work for the federal government imposes significant prejudice on both GEO and the government. This Court correctly applied that rule and stayed proceedings when GEO appealed its eligibility for derivative sovereign immunity. (Doc. 400). It should do so again, especially since this stay will be materially shorter in duration.

*Nwauzor* asks the Supreme Court to address two doctrines that could dispose of Plaintiffs' state-law unjust-enrichment claim without trial. The first is preemption, which GEO argues forecloses state-law claims because they encroach on the exclusively federal field of immigration detention and conflict with federal regulations that govern every aspect of detention operations.

GEO first raised conflict preemption and federal-interest field preemption during the early stages of this litigation. (*See* Doc. 29 at 30) (noting "a significant conflict between the state law unjust enrichment claim and federal interest in limiting the amount of remuneration provided to detainees for work performed under the VWP")). GEO did not re-raise preemption during summary judgment. But that fact is of no moment. A defendant can advance preemption at any time. *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 883 (9th Cir. 2006) ("Preemption is a power of the federal government, not an individual right of a third party that the party can 'waive.'"). Exempting preemption from ordinary waiver rules ensures that "the allocation of power and decision-making authority between the federal government and the state and local governments" is maintained. *See id.* at 882.

Federal control over the entry, admission, and removal of noncitizens is "undoubted" as part of its "inherent power as sovereign to control and conduct relations with foreign nations." *Arizona v. United States*, 567 U.S. 387, 394–95 (2012). In exercising that power,

Congress has adopted a host of statutes empowering the Secretary of Homeland Security to use contractors for immigration detention and to promulgate regulations establishing how detention service providers are to perform. *E.g.*, 8 U.S.C. § 1231(g); 28 U.S.C. § 530C(a)(4); 6 U.S.C. § 112(b). Those regulations include Section 5.8 of the Performance Based National Detention Standards, which requires GEO to offer a VWP and to pay a stipend of at least $1 per day. Confirming Congress's intent that federal law governs VWP stipends, Congress provided that participants should receive "allowances at []such rate as may be specified" in appropriations from Congress. 8 U.S.C. § 1555(d). Not only is immigration an exclusively federal field, consistent with the constitutional assignment of immigration to Congress, U.S. Const. art. I, § 8, cl. 4, but the ensuing thicket of regulation is "so pervasive . . . that Congress left no room for the States to supplement it." *Arizona*, 567 U.S. at 399.

The second Supremacy Clause doctrine at issue in *Nwauzor* is intergovernmental immunity, which prevents States from regulating federal operations. The Supremacy Clause is broader than preemption and immunizes all "activities of the [f]ederal [g]overnment." *Hancock v. Train*, 426 U.S. 167, 178 (1976). "[T]he federal function must be left free of [state] regulation" even when "the federal function is carried out by a private contractor." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988). Applying this doctrine, the Supreme Court has struck down state laws requiring federal contractors to secure state approval before charging certain rates, *see Public Utilities Commission v. United States*, 355 U.S. 534, 543–44 (1958), to obtain a state license before initiating construction projects, *see Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 190 (1956) (per curiam), and to obtain an air-pollution permit before operating a uranium processing facility, *see Hancock*, 426 U.S. at 174 n.23. In each instance, the federal government approved a contractor's proposed course of action, leaving the State powerless to impose different requirements under state law. Like preemption,

6

intergovernmental immunity is a right held by the federal government that also protects "those with whom it deals"—not for their own sake, but because of their work for the sovereign. *North Dakota v. United States*, 495 U.S. 423, 435 (1990).

In light of the legal issues presented in *Nwauzor*, the case for a stay is straightforward.

***First***, GEO is likely to prevail. On preemption, GEO and the United States—across the last three presidential administrations—argued that immigration detention is a uniquely federal field. The Ninth Circuit panel majority erred in concluding that States historically regulate employment and could therefore apply minimum-wage laws to federal detainees participating in a federal program. *Nwauzor*, 127 F.4th at 768. The problem with that reasoning is that States have no historic power to regulate federal immigration operations. To the contrary, it is the federal government, not the States, that has "broad" and "undoubted" power over immigration. *Arizona*, 567 U.S. at 394; *see also Hines v. Davidowitz*, 312 U.S. 52, 62 (1941). And the federal government has determined that a daily stipend of $1 is appropriate for immigration detainees who choose to participate in the VWP. That is, after all, the exact amount that Congress has appropriated and that the government pays in its own facilities.

Regarding intergovernmental immunity, the Ninth Circuit panel majority erred in fixating on the fact that GEO is not the government. *Nwauzor*, 127 F.4th at 760–61. The Supreme Court has already rejected that distinction when the government uses a contractor to carry out its work. *Goodyear Atomic*, 486 U.S. at 181. At the very least, GEO and the seven judges who dissented from rehearing en banc have a reasonable likelihood of being correct—enough of a likelihood that this Court should stay all deadlines through June 1, 2026, to see whether the Supreme Court takes the case. *See Hilton v. Braunskill*, 481 U.S. 770, 778 (1987) (explaining that likelihood of success is also the standard in the analogous context of stays pending appeal).

*Second*, GEO will suffer irreparable harm without a stay. An irreparable harm is one for which there is a "significant risk" that the moving party will not be compensated for its injury after the fact. *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). The expense and disruption caused by litigation is an injury to both GEO and the government that will not be repaid if the Supreme Court accepts review in *Nwauzor* and rules in GEO's favor. At best, GEO will be able to move for judgment as a matter of law or to set aside an adverse judgment based on the preempted unjust enrichment claim. That relief, to the extent it is available, will come too late to avoid the burden and expense of litigation, and Plaintiffs will, of course, be under no obligation to repay GEO for the fees and costs it incurs in the meantime. Furthermore, as the United States explained as amicus curiae in *Nwauzor*, the possibility that state law can require greater payments to VWP participants than Congress has selected upends the constitutional order. Br. of United States, *Nwauzor*, No. 21-36024, at 2 (Ex. B). The continued enforcement of state laws that offend the Constitution is an irreparable harm. *See Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016) (noting "the violation of a constitutional right must weigh heavily" when determining if an irreparable injury exists because "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary").

*Third*, Plaintiffs suffer no harm from a modest stay. In fact, if the Supreme Court grants certiorari in *Nwauzor*, they will be better off for not investing in pointless litigation. *See Atlantic Richfield Co. v. NL Indus., Inc.*, No. 20-cv-00234-NYW-KAS, 2023 WL 5333756, at *12 (D. Colo. Aug. 18, 2023) (holding a stay is appropriate when the appeal will substantially impact trial). The same is true for the Court. Conservation of judicial resources counsels in favor of waiting to see if litigating the unjust enrichment claim is unnecessary. The flurry of filings that the parties have already submitted demonstrates that this matter will be extremely

time-consuming. Moreover, the Court has already blunted any harm that might accrue to Plaintiffs from immigration enforcement by granting Plaintiff Hernandez Ceren's motion for certification of his U Visa. (Doc. 434). It bears emphasis that the class period ended in 2014, meaning that all class members detained pending removal or a hearing on removal—the only groups housed at GEO's facility—have been released. This is therefore not a case in which plaintiffs seek to halt alleged ongoing harms. Even if they were to succeed, plaintiffs are seeking only monetary relief, which is unaffected by delay due to the availability of pre-judgement interest.

*Fourth*, a short stay likely has no impact on the public interest. But if this factor were to place a slight weight on the scale, it would be in favor of a stay to avoid unnecessary use of judicial resources and to serve the purposes identified in *Filarsky v. Delia*, 566 U.S. 377 (2012). The latter include avoiding fear of litigation so that the government's agents can act "with the decisiveness and the judgment required by the public good." *Id.* at 390 (citation omitted). Moreover, avoiding the cost of trial serves "the government's need to attract talented individuals," which "is not limited to full-time public employees." *Id.* Those concerns are no less implicated in cases of intergovernmental immunity, which is among the issues on appeal in *Nwauzor*. If GEO is correct in *Nwauzor* that intergovernmental immunity protects federal contractors as well as the government they serve, then proceedings related to state-law causes of action impose a cost that should not be possible under the Supremacy Clause. The public interest in avoiding the harmful effect of such proceedings on government recruiting and the discharge of governmental functions weighs in favor of a stay.

\*      \*      \*

Taken together, these factors weigh heavily in favor of a stay pending the Supreme Court's decision whether or not to grant certiorari in *Nwauzor*. If the Court takes that case and

9

concludes that the Ninth Circuit was incorrect in permitting state-law claims for unjust enrichment related to detainee wages to proceed against a federal contractor—when they concededly could not proceed against the government itself—such a holding should dispose of Plaintiffs' unjust enrichment claim in this case.  Waiting until next month to see whether the Court accepts review is a negligible delay in this long-running controversy, which is part of a broader context of litigation against contractors.  *See, e.g.*, *CoreCivic, Inc. v. Governor of N.J.*, 145 F.4th 315 (3d Cir. 2025) (detention); *United States v. King County, Wash.*, 122 F.4th 740 (9th Cir. 2024) (charter flights).  The wisdom of using the courts to impose liability on contractors serving Presidents of both political parties is a topic for another day, but the deleterious effects of that campaign can be mitigated with a stay.

## V.    CONCLUSION

GEO requests this Court stay all deadlines through June 1, 2026, to allow the Supreme Court to decide whether to grant certiorari in *Nwauzor*.  Doing so avoids expending resources on an unjust enrichment claim that might well fail under the Supremacy Clause.

GEO further requests expedited proceedings on this Motion in the interests of judicial economy.  If the normal response and reply deadlines are followed, this Motion will not be fully briefed before the pretrial order due April 29, 2026.  D.C.COLO.LCivR 7.1(d).  The extensive effort needed to prepare that filing favors deciding this Motion as soon as possible, especially considering that a grant of certiorari by the Supreme Court—or a finding of qualified immunity or certification for interlocutory appeal by this Court—will significantly impact this case.  GEO thus proposes this Court order Plaintiffs to file a response in five days.  GEO will file a reply brief three days later.

Respectfully submitted this 6th day of April, 2026.

**GREENBERG TRAURIG LLP**

By: */s/ Dominic E. Draye*
       Dominic E. Draye
       2375 East Camelback Road, Suite 800
       Phoenix, Arizona, 85016
       Telephone: (602) 445-8425
       Facsimile: (602) 445-8100
       Email: drayed@gtlaw.com

       David G. Palmer
       Naomi G. Beer
       1144 15th Street, Suite 3300
       Denver, Colorado 80202
       Telephone: (303) 572-6500
       Facsimile: (303) 572-6540
       Email: beern@gtlaw.com
       Email: palmerdg@gtlaw.com

**JENNINGS HAUG KELEHER MCLEOD
WATERFALL LLP**

       Adrienne Scheffey
       3300 East 1st Ave, Suite 590
       Denver, Colorado 80206
       Telephone: (720) 509-0273
       Email: acs@jkwlawyers.com

       *Attorneys for Defendant-The Geo Group, Inc.*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2026, a copy of the foregoing document was filed electronically.   Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system.  Parties may access this filing through the Court's system.


By: */s/ Dominic E. Draye*
Dominic E. Draye

**INDEX OF EXHIBITS TO DEFENDANT'S MOTION TO STAY PROCEEDINGS**

| Exhibit | Description |
|---------|-------------|
| A | GEO's Petition for Writ of Certiorari in *The Geo Grp., Inc. v Nwauzor*, No. 25-828 (filed Jan. 9, 2026) |
| B | Brief for the United States as Amicus Curiae in Support of Appellant, filed in *The Geo Grp., Inc. v Nwauzor*, No. 21-36024 |