**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-02887-JLK

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA,
*on their own behalf and on behalf of all others similarly situated*,

Plaintiffs,

v.

THE GEO GROUP, INC.,

Defendant.

---

**ORDER ON PRETRIAL MOTIONS
(ECF NOS. 481, 483, 484, 485, 486, 487, 488, 543)**

---

Kane, J.

After twelve years of litigation, this case is set for a three-week trial to begin November 2, 2026. In preparation for trial, the parties filed a slew of pretrial motions. This Order primarily addresses their Motions in Limine, which involve the full spectrum of exclusionary requests, from hearsay objections to alleged discovery violations.

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question, which the court may provide at its discretion to aid the parties in formulating trial strategy." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (internal quotation marks and citation

omitted). I encourage motions in limine of the sort that the parties have filed in this case because they generally streamline the trial process and reduce confusion and delay for the jury.[1]

Plaintiffs filed a single consolidated Motion in Limine (ECF No. 481), in which they make eleven[2] requests. Plaintiffs' Motion seeks to:

1. Exclude testimony, evidence, or argument regarding issues decided on summary judgment;

2. Exclude testimony from U.S. Immigration and Customs Enforcement ("ICE") or from GEO employees offering ICE's perspective;

3. Prohibit GEO from calling its current and former employees as witnesses if they are not made available for Plaintiffs' case-in-chief;

4. Permit Plaintiffs to control the presentation of their case by precluding GEO from going beyond the scope of direct examination, allowing Plaintiffs to use leading questions for adverse witnesses, and preventing GEO from using leading questions for witnesses that are or were its employees;

5. Designate the class for the first claim as the "Forced Labor Class";

6. Preclude evidence and argument of Plaintiffs' and class members' criminal history and other bad acts;

7. Limit evidence and argument concerning Plaintiffs' and class members' immigration histories and statuses;

8. Prohibit the use of incendiary terms in reference to immigration status, including "illegal," "illegal alien," "illegal immigrant," "undocumented," and the like;

9. Admit Department of Homeland Security ("DHS") Office of Inspector General Reports ("OIG");

10. Exclude recorded phone calls Plaintiffs allege are prejudicial; and

11. Preclude evidence and argument that might attempt to relitigate class certification.

[1] I have detailed the facts of this case in other orders and so do not undertake that task here.
[2] Plaintiffs' Motion includes twelve requests, but I address one of their requests in another Order that is being issued simultaneously with this one.

GEO, for its part, filed six separate Motions in Limine, as well as another pretrial motion relating to the presentation of evidence at the trial:

1. GEO's Motion in Limine to Preclude Evidence or Argument Regarding Other Facilities, Other Lawsuits, or Unidentified Officers or Employees (ECF No. 483);

2. GEO's Motion in Limine to Preclude Evidence or Argument Regarding Alleged Collateral Conditions that are not Classwide or Included in the Complaint (ECF No. 484);

3. GEO's Motion in Limine to Exclude Evidence or Argument Regarding its Resources, Revenues, Profits, or Size (ECF No. 485);

4. GEO's Motion to Bifurcate or Phase Trial Before a Single Jury (ECF No. 543);

5. GEO's Motion in Limine to Preclude Evidence or Argument Regarding Unnamed and Unidentified GEO Employees (ECF No. 486);

6. GEO's Motion in Limine to Preclude Testimonial and Documentary Evidence Related to Absent Class Members' Individualized Experiences (ECF No. 487); and

7. GEO's Motion in Limine to Preclude Evidence or Argument Regarding Defendant's Legal Expenses (ECF No. 488).

I address each of these eighteen requests in turn.

## I. Plaintiffs' Motion in Limine

### A. Plaintiffs' Motion in Limine: Summary Judgment Issues

Plaintiffs' first request in their Motion in Limine seeks an order precluding GEO from presenting evidence or argument at trial regarding matters that were addressed on summary judgment. In particular, Plaintiffs contend GEO should be precluded from presenting evidence or argument that (1) it was merely following ICE's instructions or authorizations and for that reason it lacked the requisite scienter for Plaintiffs' forced labor claim and its payment of $1 per day to participants in its Voluntary Work Program ("VWP") was acceptable; (2) the consequences GEO imposed for detainees' refusal to clean were legitimate because ICE permitted them and they

were tied to ICE's disciplinary scale; and (3) VWP workers signed contracts agreeing to be paid $1 per day. GEO responds that Plaintiffs' request would "strip GEO of any ability to explain the federal regulatory environment in which it operated, to contextualize its actions, or to rebut the specific elements of Plaintiffs' claims." GEO's Resp. to Pls.' Mot. in Limine at 3, ECF No. 509.[3] Because the parties' arguments relate to the elements of Plaintiffs' claims, I review what Plaintiffs must prove at trial to succeed on each of their two claims.

*Elements of Forced Labor Claim*

Plaintiffs first claim alleges GEO has violated 18 U.S.C. § 1589, the forced labor provision of the Trafficking Victims Protection Act ("TVPA").[4] This statute makes it unlawful for anyone to, among other actions:

> knowingly provide[] or obtain[] the labor or services of a person. . .
>
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> . . .
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

---

[3] GEO represents that it intends to assert the *Yearsley* defense only to the extent Plaintiffs premise their forced labor claim on personal housekeeping tasks. I have ruled on this matter, *see* 08/27/26 Tr. at 19:12-20:14, ECF No. 542, and as such, GEO will not be permitted to raise the *Yearsley* defense at trial. GEO's Proposed Jury Instruction No. 3.13 is, therefore, stricken.

[4] The parties and I have referred to this claim as the Trafficking Victims Protection Act or TVPA claim. However, at trial, the claim will be described as Plaintiffs' "forced labor" claim, as using the term "trafficking" may confuse the jurors regarding the allegations in the case.

18 U.S.C. § 1589(a). Throughout this case, Plaintiffs have indicated that they intend to present their forced labor claim under these three theories—that GEO obtained the detainees' labor or services (1) by using physical restraint or making threats of physical restraint; (2) by causing the detainees' serious harm or making threats of serious harm; and (3) through a scheme, plan, or pattern intended to cause the detainees to believe they would suffer serious harm or physical restraint if they did not perform the labor or services. *See, e.g.*, Compl. ¶¶ 76-78, ECF No. 1; Pls.' Resp. to GEO's Mot. for Summ. J., ECF No. 336 at 56. In the parties' proposed Jury Instructions (ECF No. 545), GEO contends that Plaintiffs have abandoned the third theory by not specifically using the words scheme, plan, or pattern in the Joint Pretrial Order (ECF No. 540). While I strongly motivate and urge the parties to narrow the issues for trial, GEO's argument is unpersuasive. In the Pretrial Order, Plaintiffs clearly describe GEO's actions that they allege constitute a pattern of conduct intended to cause the detainees to believe they would suffer serious harm or physical restraint. *See* Joint Pretrial Order at 3, ECF No. 540 (alleging that GEO obtained the detainees unpaid labor through its Housing Unit Sanitation Policy, threatened detainees with solitary confinement, placed some detainees in solitary confinement, and imposed a "work detail").

In response to GEO's argument that they had abandoned their pattern theory, Plaintiffs filed Motion to Amend the Pretrial Order (ECF No. 564) that includes a proposed amendment to add the language: "a pattern of conduct intended to cause the detainees to believe that they would suffer harm or physical restraint if they did not provide labor or services." Redlined Proposed Pretrial Order, ECF No. 564-3 at 4. This request confirms that the original Pretrial Order included Plaintiffs' pattern theory, as the only change Plaintiffs seek to make is the addition of language regurgitating the statute. Plaintiffs do not propose the addition of any further

allegations or explanation about the alleged pattern of conduct—that information is already in the Pretrial Order. As such, I find Plaintiffs have not abandoned their pattern theory.

Therefore, to succeed on their forced labor claim, Plaintiffs must prove each element below:

1. That GEO obtained the labor or services of members of the Cleaning Class;
2. AND at least one of the following:
    a. That GEO knowingly obtained the labor or services of the members of the Cleaning Class by physically restraining or threatening to physically restrain them;
    b. That GEO knowingly obtained the labor or services of the members of the Cleaning Class by seriously harming them or threatening them with serious harm; OR
    c. That GEO engaged in a pattern of conducted that it intended to cause the members of the Cleaning Class to believe that they would suffer harm or be physical restrained if they did not perform the labor or services for GEO.

As I have previously found, knowledge is required for Plaintiffs' first two theories of their forced labor claim, while intent is only necessary for Plaintiffs' pattern theory. *See Menocal v. GEO Grp.*, 635 F. Supp. 3d 1151, 1194 (D. Colo. 2022) (citing 18 U.S.C. § 1589(a); *United States v. Dann*, 652 F.3d 1160, 1169-70 (9th Cir. 2011)).

*Elements of Unjust Enrichment Claim*

For their unjust enrichment claim, Plaintiffs must establish:

1. That GEO received a benefit;

2. That GEO received this benefit at the expense of members of the Work-Program Class; AND
3. That under the circumstances, it would be unjust for GEO to keep that benefit without paying more to members of the Work-Program Class.

GEO argues that, in order to establish the last element, Plaintiffs must prove that GEO engaged in some form of misconduct such as coercion or duress. *See* Proposed Jury Instructions at 71, ECF No. 545. GEO cites *DCB Construction Co., Inc. v. Central City Development Co.*, for this requirement, but that case merely suggests that "coercion or duress *might* provide a foundation for unjust enrichment . . . ." 965 P.2d 115, 122 (Colo. 1998) (emphasis added). *DCB Construction* clarifies that, in the context of disputes between landlords, tenants, and contractors, a finding that retention of a conferred benefit is unjust "requires some type of improper, deceitful, or misleading conduct by the landlord." *Id.* That requirement, however, is not generally applicable to all unjust enrichment claims. *See Lewis v. Lewis* 189 P.3d 1134, 1142 (Colo. 2008) (declining to apply the malfeasance requirement from *DCB Construction*, as that requirement "is specific to a contractor's claim that the landlord was unjustly enriched and d[oes] not extend to all unjust enrichment circumstances").[5] Thus, contrary to GEO's assertions, Colorado law does not require Plaintiffs to show that GEO engaged in some type of improper, deceitful, or

[5] Two years after it decided *DCB Construction*, the Colorado Supreme Court again considered an unjust enrichment claim in *Salzman v. Bachrach*, 996 P.2d 1263 (Colo. 2000). There, the court implied that retention of any benefit received at another's expense could be deemed unjust "[a]bsent some countervailing consideration," and the Court determined that the doctrine of unclean hands might limit the *plaintiff's* claim for relief. *Id.* at 1266, 1269.

misleading conduct.[6] As the jury is advising me on this equitable claim, I find the question of what is unjust in this context is best left to the jury.

*GEO's Contractual Obligations*

With the elements of each claim established, I now consider the specific evidence Plaintiffs seek to limit. GEO insists that, "[b]ecause the TVPA's forced-labor provisions require proof that GEO knowingly used prohibited means to obtain labor . . . and because Plaintiffs' unjust-enrichment claim likewise turns on whether GEO's retention of any benefit was unjust, GEO must be permitted to explain why it acted as it did—including the federal mandates, ICE oversight, and contractual obligations that shaped its conduct." GEO's Resp. to Pls.' Mot. in Limine at 5. I agree that GEO's perspective is relevant, but GEO glosses over any link between the specific evidence it seeks to present and the elements of the claims it aims to refute.

Only Plaintiffs' pattern theory of its forced labor claim requires it to show GEO's intent. For their other theories, Plaintiffs must only show that GEO was aware of: (1) its policies, including of the consequences they imposed or threatened, and (2) that it was obtaining labor or services from the class members as a result of those policies. *See Menocal*, 635 F. Supp. 3d at 1194.

The intent required for Plaintiffs' pattern theory is specific, as GEO says. However, the specific intent is not that GEO intended to violate the law; it is that GEO intended to cause the class members to believe that, if they did not perform the labor or services for GEO, they would suffer serious harm or physical restraint. *See* 18 U.S.C. § 1589(a). GEO argues that it should be

[6] I also find that the inclusion of "improper conduct" in this context makes the malfeasance requirement so encompassing that it becomes unhelpful and perilous. For example, does "improper" mean unlawful, immoral, or simply unfair?

able to point to the authority of the federal government in explaining its allegedly unlawful conduct. *See* GEO's Resp. to Pls.' Mot. in Limine at 4. But, even if GEO thought that it was required by its contracts with ICE to create and implement its cleaning policies, that fact is, at best, irrelevant to GEO's defense that it did not intend to cause the class members to believe they would suffer serious harm or physical restraint if they failed to clean.[7] Simply put, the terms of GEO's contracts and its relationship with ICE do not have any tendency to make GEO's possession of the requisite intent more or less probable. *See* Fed. R. Evid. 401(a). Consequently, I grant Plaintiffs' Motion in Limine in this regard—GEO may not cloud the record by arguing or presenting evidence that it did not act with the requisite intent because it was only attempting to comply with its contracts with ICE. If GEO does not follow this directive, I will instruct the jury that GEO's contracts with ICE did not mandate GEO's cleaning policies and that GEO's attempts to comply with the contracts are irrelevant as to its intent.

On the other hand, GEO's beliefs about its contractual obligations related to the VWP may be relevant for deciding whether GEO's retention of any benefit conferred by the class members is unjust. Even though I have determined that Plaintiffs need not show GEO acted improperly, the jury could presume that GEO acted based on financial motivation alone, which might factor into the jury's consideration of whether the circumstances are unjust. Thus, I will allow GEO to present argument and evidence explaining the subjective reasons that it paid VWP participants $1 per day. The relevant evidence relates to GEO's perspective, not ICE's perspective or what was actually required under the contracts, as I have already found there is no

---

[7] At worst, this evidence is detrimental to GEO's defense. If GEO erroneously thought that its contracts required it to obtain the detainees' labor through such a pattern of conduct and GEO sought to succeed in that aim in order to comply with the contracts, those facts could prove the intent element of Plaintiffs' claim.

evidence in the record that ICE prohibited GEO from compensating participants in the VWP more than $1 per day. *Menocal*, 635 F. Supp. 3d at 1176. I make this ruling with the caveat that GEO may not argue or present evidence at trial that contradicts my previous determinative findings in this case.

*The Legitimacy of the Consequences for Failing to Clean*

Plaintiffs also contend that GEO should be barred from arguing or introducing evidence at trial that solitary confinement was a "legitimate consequence" for refusing to clean. Pls.' Mot. in Limine at 16. I will not prohibit GEO from using the term "legitimate." But I will not permit GEO to argue that ICE "legitimated" GEO's cleaning policies and specifically the sanction of solitary confinement for failing to clean common areas. I have already found that GEO "independently developed and implemented" its cleaning policies, that those policies "far exceeded its contractual obligations with ICE," and that the evidence does not show ICE directed or required those policies or their implementation. *Menocal*, 635 F. Supp. 3d at 1173-74. Any attempt by GEO to contradict or relitigate these findings will not be tolerated.

Additionally, GEO asserts that disciplinary consequences imposed on a detainee are legitimate if they are objectively reasonable. This assertion has no basis in the law relevant to this case. Here, the consequences would be legitimate if they do not violate 18 U.S.C. § 1589, and that inquiry does not involve consideration of whether the consequences are objectively reasonable. GEO will not be allowed to present irrelevant argument or evidence on the objective reasonableness of any consequences.

GEO claims that it is entitled to present evidence of the applicable detention standards, the range of consequences available for various categories of noncompliance, and the process

afforded to detainees before consequences were imposed. At this time, I will not limit this evidence, as it is likely relevant and Plaintiffs have not challenged specific exhibits or witness testimony.

*The VWP Contracts*

On the Unified Exhibit List submitted by the parties, GEO lists the agreements for VWP participation that were signed by the named plaintiffs. I previously found that these agreements were procedurally and substantively unconscionable and thus did not constitute enforceable contracts. *Menocal,* 635 F. Supp. 3d at 1197-98. Nevertheless, I agree with GEO that these contracts are relevant to whether GEO's retention of any benefit is unjust.[8] Because the jury would likely be confused by the agreements, however, the parties should jointly propose a related limiting instruction. Plaintiffs Instruction No. 2.7 is inadequate as there would be no reason for the jury to see the agreements if they "should not have any affect on [its] decisions in this case." Proposed Jury Instructions at 55.

To summarize, I grant Plaintiffs' first request in their Motion in Limine in part, as discussed above. Based on my previous findings and rulings here, GEO may not argue or present evidence:

[8] I do not, however, find the agreements are relevant on the basis they show that Plaintiffs participated in the VWP voluntarily. GEO's related argument cites the forced labor statute—18 U.S.C. § 1589(a), *see* GEO's Resp. to Pls.' Mot. in Limine at 8, yet Plaintiffs' unjust enrichment claim does not arise from that statute. Even though Plaintiffs challenge whether they were fairly compensated for their participation in the VWP, whether they voluntarily participated in the program is not at issue.

- That ICE required, authorized, directed, endorsed, etc. GEO's cleaning policies that are challenged in this case, *see, e.g.*, *Menocal*, 635 F. Supp. 3d at 1173-74;
- That "specific intent" is required for Plaintiffs' physical restraint and serious harm theories of its forced labor claim, *see id.* at 1194;
- That GEO did not act with the requisite intent for Plaintiffs' pattern theory of their forced labor claim because GEO was only attempting to comply with its contracts with ICE;
- That disciplinary consequences imposed on a detainee are legitimate if they are objectively reasonable;
- That GEO was required by its contracts with ICE to pay participants in the VWP no more than $1 per day, *id.* at 1176; or
- That ICE approved, authorized, endorsed, etc. GEO's payment of $1 per day to VWP participants, *id.* at 1176-77.

**B. Plaintiffs' Motion in Limine: Testimony on ICE's Perspective**

Plaintiffs' second request in their Motion in Limine involves the testimony of witnesses employed by ICE.[9] Plaintiffs seek to exclude any testimony from these witnesses about "ICE's requirements for detainee sanitation, ICE's authorization of certain sanctions for the refusal to clean, ICE's intentions behind key provisions of the [Performance Based National Detention Standards] at issue in this case, and ICE's requirements for Voluntary Work Programs." Pls.' Mot. in Limine at 19 (quoting Proposed Joint Pretrial Order at 15, ECF No. 479). GEO again

---

[9] While Jay Brooks is the only witness listed in the Pretrial Order as an ICE employee, David Venturella, a former GEO executive, is now the Acting Director of ICE. And Plaintiffs suggest that Daniel Ragsdale and Amber Martin might both attempt to testify about ICE's requirements and its role at the Aurora Detention Facility (the "Facility").

argues that this testimony is necessary for it to refute Plaintiffs' claim that it acted with the specific intent required to establish a forced labor violation and that the testimony is probative of whether it engaged improper conduct as required for Plaintiffs' unjust enrichment claim. As discussed above, a showing of improper conduct is not necessary for Plaintiffs to succeed on their unjust enrichment claim, intent is only an element for one of Plaintiffs' theories for their forced labor claim, and what GEO was obligated to do or what it thought it was obligated to do under its contracts with ICE is irrelevant to that intent element.

GEO indicates that it intends to present "[e]vidence of the environment in which GEO operated, the standards it was required to follow, and the oversight to which it was subject." GEO's Resp. to Pls.' Mot. in Limine at 10. GEO may present background evidence that it operated pursuant to a series of contracts with ICE and was required to comply with those contracts. But any evidence interpreting the terms of those contracts would be improper, as contract interpretation is generally a question of law for the Court. *See, e.g.*, *McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1144 (10th Cir. 2023). If GEO wades into this territory, it will invite an instruction from the Court summarizing my findings on the extracontractual nature of its cleaning policies and the lack of evidence that ICE obligated it to pay VWP participants only $1 per day. Ultimately, I see no need for the testimony of any ICE witness, but I will not bar such testimony within the confines given and subject to further reasoned objections at trial.[10]

Plaintiffs also contend that any testimony by ICE employee Jay Brooks should not be permitted because she was not previously disclosed as a witness. The Pretrial Order lists Jay Brooks as a "may-call" witness and the Unified Exhibit List includes a Declaration from Jay

[10] Plaintiff maintains that ICE witnesses should not be permitted to testify because GEO has not complied with the applicable *Touhy* regulations. I agree with GEO that this matter is premature and will address it if or when necessary at trial.

Brooks. Pretrial Order at 15; Unified Exhibit List at 62, ECF No. 475-1. From GEO's Response to Plaintiffs' Motion in Limine, I gather that GEO only intends to introduce the Declaration at trial. I am inclined to exclude the Declaration as irrelevant or cumulative and will, if the parties desire, hear argument on its admissibility at the Final Trial Preparation Conference. If any portion of the Declaration is deemed to be relevant and admissible, confusing and irrelevant information in the Declaration will need to be redacted. If GEO attempts to call Jay Brooks as a witness at trial, I will entertain additional argument on GEO's alleged improper disclosure of the witness, the potential violation of the parties' witness stipulation, and compliance with the *Touhy* regulations.

**C. Plaintiffs' Motion in Limine: GEO Witnesses Not Made Available for Plaintiffs' Case and Plaintiffs' Control of the Presentation of Their Case**

Plaintiffs' third request in their Motion in Limine relates to current and former GEO employees whom Plaintiffs intend to call and GEO may call as witnesses at trial. These witnesses are located outside of the Court's subpoena range. Plaintiffs are concerned that they will have to present the testimony of these witnesses via deposition during their case but that GEO will then call them as live, in-person witnesses during its own case. Plaintiffs' fourth request in its Motion in Limine ties into Plaintiffs' concern about the GEO-employee witnesses. Plaintiffs seek an order (1) precluding GEO from going beyond the scope of Plaintiffs' direct examination, even when GEO also intends to call the witness; (2) permitting Plaintiffs to ask leading questions of adverse witnesses; and (3) preventing GEO from using leading questions for witnesses that are or were its employees.

Primarily, I agree with Plaintiffs that in-person testimony is preferable and that GEO should not be permitted to present live, in-person testimony from witnesses whose testimony

Plaintiffs may only present via deposition. So, in the interest of fairness, I rule that each subject witness—Amber Martin, Brian Evans, David Venturella, and Charles Hill—must testify via the same means for both parties. If those witnesses provide in-person testimony for GEO, GEO must make them available to do the same for Plaintiffs. If they testify via video for GEO, which I will permit, then the witnesses must be available to do the same for Plaintiffs. And, as a last resort, if the witnesses' deposition testimony must be used by Plaintiffs, GEO will also be limited to deposition testimony. I expect the parties to confer regarding a plan for this testimony and to advise me of that plan at the Final Trial Preparation Conference.

Although calling witnesses twice during the trial may prove to be tedious, I am convinced Plaintiffs should be able to present their case without deviation. Thus, GEO will not be permitted to ask the individuals whom both parties identify as witnesses any questions on cross-examination that exceed the scope of Plaintiffs' direct examination.[11] Because GEO's current and former employees are adverse witnesses for Plaintiffs, Plaintiffs may use leading questions during their direct examination of those witness. *See* Fed. R. Evid. 611(c). I will not, however, prohibit GEO from using leading questions in its cross-examination of these same witnesses.

**D. Plaintiffs' Motion in Limine: Designation of the Class for Plaintiffs' Forced Labor Claim**

Plaintiffs' fifth request in their Motion in Limine seeks an order requiring the parties to refer to the certified class for Plaintiffs' claim brought under 18 U.S.C. §1589 as the "Forced Labor Class." GEO prefers for the class to be called the "TVPA Class," but also suggests the

[11] Based on my rulings in this Order, the parties may wish to reconsider their positions on the order of the trial. In the event they are able to reach an agreement on how to otherwise efficiently proceed with the trial, I would accept such a stipulation.

label “Housekeeping Class” or “Sanitation Policy Class.” Generally, I find acronyms and initialisms to unnecessarily complicate communication and avoid their use whenever possible. I also agree with Plaintiffs that reference to the Trafficking Victims Protection Act could confuse the jury, as the traditional notion of trafficking is not at issue in this case. GEO contends the use of “Forced Labor” as a descriptor would prejudice GEO as it would ascribe to the class the facts Plaintiffs must prove. Noting the parties’ objections to the names proposed by each side, I find the designation “Cleaning Class” is neutral and accurate and should be used at trial and in the Jury Instructions. Because the designation for the Cleaning Class does not mirror the description of the claim (i.e., the forced labor claim), the designation for the unjust enrichment class should be described using the same approach. As such, the class for Plaintiffs unjust enrichment claim should be designated as the “Work-Program Class.”

**F. Plaintiffs’ Motion in Limine: Plaintiffs’ and Class Members’ Criminal History**

With their sixth request in their Motion in Limine, Plaintiffs seek an order excluding any evidence of or argument about the criminal histories of the Plaintiffs and class members. GEO acknowledges that “the specific convictions may not be relevant.” GEO’s Resp. to Pls.’ Mot. in Limine at 20. But GEO contends “the general fact that the individuals have a prior criminal history, the general nature of that history, and the fact of multiple prior incarcerations bear directly on Plaintiffs’ claims and are, therefore, relevant and admissible.” *Id.* According to GEO this information is relevant because it “informed GEO’s classification and housing decisions, the work assignments for which Plaintiffs were eligible under the [VWP], and Plaintiffs’ own reasons for volunteering to work.” *Id.* As Plaintiffs’ point out, however, GEO fails to connect that

information to the elements of Plaintiffs' claims. *See* Pls.' Reply in Supp. of Motion in Limine at 17, ECF No. 517.

Why Plaintiffs were eligible for particular work assignments and not others is irrelevant. The Work-Program Class is made up of only individuals who participated in the VWP, Plaintiffs do not challenge the particular jobs they were assigned, and all VWP jobs paid $1 per day. *See id.* Plaintiffs' reasons for participating in the VWP may be relevant, if it is shown that they received some benefit other than financial compensation for their participation because that fact might weigh against a finding that GEO's retention of any benefit is unjust. However, Plaintiffs' criminal histories do provide insight into why they may have participated in the VWP. Plaintiffs' past periods in custody and any reasons they might have participated in work programs during those periods are wholly irrelevant to why they may have cleaned the common areas or participated in the VWP in the Aurora Facility. Conditions in various facilities may differ substantially, and Plaintiffs' legal, personal, social, and psychological circumstances cannot be presumed to be consistent.

Although GEO does not make this specific argument, detainees' classifications might be relevant for the causation and serious harm elements of Plaintiffs' forced labor claim. To establish causation, Plaintiffs must prove both an objective component—that a reasonable person in the same circumstances as members of the Cleaning Class would have provided labor or services as a result of GEO's conduct—and a subjective component—that members of the Cleaning Class actually provided their labor or services as a result of GEO's conduct. *See Menocal*, 635 F. Supp. 3d at 1191-92; *Menocal v. GEO Grp., Inc.*, 320 F.R.D. 258, 267 (D. Colo. 2017). Serious harm is defined under the forced labor statute as "any harm . . . that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same

background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2). Thus, the jury should be permitted to hear evidence of circumstances that could have impacted whether a reasonable person in the position of members of the Cleaning Class would have provided his labor or services as a result of GEO's conduct. Evidence regarding GEO's classification system, including the restrictions placed on and differential treatment of certain detainees, may be relevant in this regard. Generally, I will allow GEO to present background evidence on its classification process, the factors that are considered in determining classification levels, and the resulting consequences for detainees. GEO may also present evidence on the overall classification-level breakdown of the Cleaning Class and the specific classification level of each testifying Plaintiff. But GEO may not reference Plaintiffs' specific criminal histories or prior incarcerations—GEO has not persuaded me that those facts are relevant to whether the named Plaintiffs or a reasonable person in the class members' position would have provided their labor or services. As an example, GEO may present evidence that Plaintiff Hernandez-Ceren was classified at a Level 3, which meant that he was required to wear a red uniform, could not be housed with Level 1 detainees, and was restricted in other specific ways, but GEO may not introduce evidence that Plaintiff Hernandez-Ceren had been incarcerated multiple times before or was classified at a Level 3 because of his criminal history or the nature of that history. If Plaintiffs fear that evidence regarding Plaintiffs' and class members' classification levels will cause the jury to speculate about their criminal histories, a limiting instruction may be appropriate. Such an instruction would advise the jury that it may take into consideration the classification levels only for the purposes of understanding the conditions in which Plaintiffs and class members made their decisions to provide or not provide their labor or services and not for

any other purposes, including evaluating Plaintiffs' and class members' character, credibility, or rights.

**G. Plaintiffs' Motion in Limine: Plaintiffs' and Class Members' Immigration Statuses**

The analysis for Plaintiffs' seventh request in their Motion in Limine is similar to that for its sixth request. Plaintiffs ask that GEO be prohibited from presenting argument and evidence concerning Plaintiffs' and class members' immigration histories and statuses. Specifically, Plaintiffs seek to exclude evidence or argument about the following:

1) Nationality or country of origin;
2) The circumstances of Plaintiffs' and Class Members' entry into the United States;
3) The circumstances of Plaintiffs' and Class Members' departure from the United States;
4) The existence, nature, or basis of any application for immigration relief;
5) The details, history, or outcomes of immigration proceedings; and
6) Any alleged violations of immigration law.

Pls.' Mot. in Limine at 38. GEO insists that evidence in each of these categories "may be directly relevant to disputed elements of the parties' claims and defenses—in the same way that the detention and classification evidence discussed above bears on those elements." GEO's Resp. to Pls.' Mot. in Limine at 28. GEO contends that each category "connects directly to the same classification system, work-eligibility determinations, and voluntariness inquiry that pervade this case." *Id.* Just as with the criminal history evidence, the work-eligibility determinations and "voluntariness inquiry" GEO mentions are not relevant for the elements of Plaintiffs' claims. I consider GEO's arguments for each of the categories of evidence and find that the only relevant

information is that Plaintiffs and class members were noncitizens involved in immigration proceedings such that they were subject to immigration detention.

First, GEO argues that "a Plaintiff's or class member's nationality or country of origin may bear on where and with whom that individual was housed at [the Facility]." *Id.* I agree that where an individual was housed at the Facility may be relevant to the causation and serious harm elements of Plaintiffs forced labor claim, but that information can be presented without reference to a class member's nationality or country of origin. The nationality and country of origin are not independently relevant.

Second, GEO claims the circumstances of Plaintiffs' and class members' entry and departure into the U.S. "may bear on GEO's assessment of the risk an individual posed to himself or others, the classification GEO assigned the individual under the PBNDS, and consequently the work, if any, for which that individual was eligible." *Id.* Again, the work for which Plaintiffs' and members of the Work Program Class were eligible to perform is irrelevant—all class members were participants in the VWP, do not challenge their work assignments, and all assignments paid $1 per day. The classification of the detainees may be relevant, as I discussed above, but GEO has not shown that any Plaintiff's or any class member's entry or departure circumstances could be.

Third, GEO maintains that evidence regarding immigration applications "may bear on the length and conditions of an individual's detention, since certain forms of deportation relief affect custody determinations." *Id.* Once more, it is the custody determination that could be potentially relevant and not the existence, nature, or basis of the immigration applications.

Fourth, GEO asserts that evidence regarding immigration proceedings "may bear on a Plaintiffs' knowledge of the consequences of noncompliance with facility rules, or on why a

particular Plaintiff used the [Facility] law library—both of which bear on the voluntariness of that Plaintiff's participation in the VWP, an element Plaintiffs themselves must prove. *See* 18 U.S.C. § 1589." *Id.* GEO's citation to § 1589 is misplaced. The VWP is only relevant for Plaintiffs' unjust enrichment claim, which is not based on § 1589. No element of either of Plaintiffs' claims requires them to prove that participation in the VWP was or was not voluntary.

Lastly, GEO contends that alleged violations of immigration law by Plaintiffs or class members may bear on "GEO's risk assessment and classification determinations, independent of any character-based inference." *Id.* While evidence of the classification determinations may be relevant, *alleged* violations of immigration law do not make any fact of consequence to Plaintiffs' claims more or less probable.

Based on the above analysis, the immigration related evidence listed in Plaintiffs' seventh request in their Motion in Limine is not relevant or probative of any fact in issue. As I did in evaluating the criminal history evidence, I recognize that GEO's classification process and assigned levels for detainees might be relevant for elements of Plaintiffs' forced labor claim. But evidence regarding Plaintiffs' and class members' immigration histories does not provide the same context. Plaintiffs' and class members' immigration statuses and proceedings are only relevant to the extent they explain Plaintiffs' and class members' detention in the Facility.

Plaintiffs propose that the Jury be instructed that "[t]he Plaintiffs were in legal proceedings to determine whether they should be deported, and during those proceedings, they were detained at the Aurora Facility." Pls.' Mot. in Limine at 37. I am not certain that this statement is accurate, as legal determinations may have already been made that some detainees "should be deported." *See, e.g.*, 8 U.S.C. § 1231(a) (authorizing the detention of noncitizens for a limited period after final orders of removal have been issued). If the parties could agree on an

accurate stipulation, I would permit it. Alternatively, the parties may present background evidence that all detainees at the Facility, including Plaintiffs and class members, were noncitizens involved in immigration proceedings such that they were subject to immigration detention.

**H. Plaintiffs' Motion in Limine: Terms Related to Immigration Status**

Plaintiffs' eighth request in their Motion in Limine seeks an order prohibiting the parties from using "incendiary terms referencing immigration status," including "illegal," "illegal alien," "illegal immigrant," "undocumented," or the like. Pls.' Mot. in Limine at 39. GEO responds that these terms "are legally accurate, neutral, and central to the parties' claims and defenses." GEO's Resp. to Pls.' Mot in Limine at 31. Throughout the trial, Plaintiffs and class members generally should be referred to as "Plaintiffs" and "class members" or as "detainees." But I acknowledge that the terms "alien," "illegal," and "unauthorized" are used in the Immigration and Nationality Act ("INA"). In the unexpected event that quoting from that Act during the trial is necessary, the terms in the relevant statutory provision may be used. Otherwise, the parties should use the term "noncitizen" as equivalent to the term "alien" in the INA. *See, e.g.*, *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1234 n.2 (10th Cir. 2026) (using noncitizen in place of alien). The word "alien" conjures meanings other than noncitizen, as does the descriptor "illegal." I find "noncitizen" is not only more appropriately descriptive but also less likely to carry any of the potential biases that the terms referenced by Plaintiffs might. Additionally, because any immigration status that is more specific than noncitizen is not relevant, the term noncitizen should suffice.

**G. Plaintiffs' Motion in Limine: Department of Homeland Security Reports**

Plaintiffs' ninth request in their Motion in Limine asks that I admit into evidence five reports issued by the Department of Homeland Security Office of the Inspector General. In particular, Plaintiffs seek a finding that the reports are self-authenticating under Federal Rule of Evidence 902(1) and fall under the hearsay exception in Federal Rule of Evidence 803(8)(A)(i). GEO does not contest that the reports are self-authenticating. It does, however, argue that the reports are not relevant, contain hearsay, include inadmissible legal conclusions, constitute impermissible character evidence under Federal Rule of Evidence 404(b), are inadmissible as untimely disclosed expert evidence, and would cause undue prejudice and confuse the jury. In their Reply in Support of their Motion in Limine, Plaintiffs indicate that: "If the Court grants Plaintiffs' motions relating to ICE, the reports may not be necessary. But should GEO place the subjects covered by the reports in issue, Plaintiffs should be allowed to introduce them as rebuttal evidence, and the Court can assess their relevance (and any claimed prejudice) then." Pls.' Reply in Supp. of Mot. in Limine at 21. Because I have granted in substantial part Plaintiffs' requests to limit evidence from ICE, I reserve any admissibility determination regarding the reports until the evidence may be offered at trial. In that event, a strong showing of relevance will need to be made for any part of the reports to be admitted and redactions of any irrelevant or unfairly prejudicial material will be required.

**H. Plaintiffs' Motion in Limine: Recorded Phone Calls**

Plaintiffs' tenth request in their Motion in Limine is that I exclude the 758 hours of phone call recordings GEO has listed as potential exhibits on the Unified Exhibit List. Plaintiffs complain that GEO has failed to identify these recordings with particularity and that some of the

recordings are prejudicial and contain hearsay. GEO agrees that prejudicial statements in Plaintiff Menocal's calls may be redacted under Federal Rule of Evidence 403. And GEO submitted that, "[t]o the extent the Court is . . . concerned about the number of recordings on GEO's exhibit list, that concern is best addressed not through exclusion, but through the ordinary trial preparation process: GEO will refine the number of recordings it intends to use as the parties confer on trial exhibits in advance of submitting their final exhibit list and copies of exhibits to the Court on October 20, 2026." GEO's Resp. to Pls.' Motion in Limine at 44.

To the extent there is any doubt, I am concerned. GEO repeatedly represented to the Court that trial in this case should take only two weeks. *See, e.g.,* Proposed Pretrial Order at 24 ("Defendants believe that this case only requires two weeks for trial."). Yet, the Unified Exhibit List the parties submitted with their proposed Pretrial Order is 443 pages and appears to include 9,411 exhibits! *See* Unified Exhibit List, ECF No. 475-1. Exhibits 1009 to 9411 contain the audio recordings. *See id.* The purpose of having the parties attach an Exhibit List to their proposed Pretrial Order is not for them to list broad swaths of discovery materials. The purpose of the Pretrial Order, and thus the attached Exhibit List, is to narrow the issues for trial and to enable the parties to adequately and efficiently prepare for trial. Listing 9,411 exhibits (or even 8,402 exhibits) defeats that intention. GEO asserted that it would winnow its list of exhibits for Plaintiffs by October 20, 2026, which is less than two weeks before the trial is to begin. From GEO's briefing, I had no concept of what portion of the thousands of audio recordings GEO would eliminate from the Exhibit List by October 20, and consequently, I could not judge whether Plaintiffs would be able to adequately prepare for GEO to introduce the audio recordings that remained on the List. Either GEO would continue to list an inordinate number of recordings, all of which it could not possibly introduce during a two-week trial, or GEO would

eliminate thousands of recordings and the only possible conclusion would be that it had not complied with the letter or spirit of the Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 1 & 16. GEO either intended for Plaintiffs to remain in the dark regarding the evidence it would introduce at trial or for Plaintiffs to waste precious preparation time unnecessarily reviewing hundreds of hours of audio recordings.

After GEO filed its Response to Plaintiffs' Motion in Limine, the parties reached a stipulated timeline for GEO to provide a list of no more than 50 audio files, for the parties to confer regarding objections to those files, and for Plaintiffs to submit additional objections. *See* Stipulation on Disclosure and Objections, ECF No. 530; *see also* 10/6/26 Minute Order, ECF No. 566. I commend the parties for continuing to confer and for keeping the Court informed of their progress. On October 14, 2026, Plaintiffs submitted a Filing Regarding Audio Exhibits (ECF No. 572), which contains their objections to the twenty-seven audio recordings GEO now intends to offer at trial. Because GEO has not responded to that filing, I will address Plaintiffs' objections at the Final Trial Preparation Conference, along with the parties' other objections to the exhibits. Here, I discuss only the two objections in Plaintiffs' Motion in Limine: that the previously identified recordings contain hearsay and are unfairly prejudicial.

I agree with GEO that the recordings are not hearsay. Federal Rule of Evidence 801(c) defines hearsay as a statement "the declarant does not make while testifying at the current trial or hearing and [which] a party offers in evidence to prove the truth of the matter asserted in the statement." Pursuant to Rule 801(d)(2), the statement of a party opponent does not constitute hearsay. The statements made by Plaintiffs on the audio recordings are statements by an opposing party, and the statements of other individuals on the recordings are not offered for their truth. *See* Fed. R. Evid. 801(c)(2) & (d)(2)(A). As such, the audio recordings should not contain

hearsay. The recordings include relevant statements about the detainees' experiences at the Facility, and that particular evidence is admissible. Obviously prejudicial material along with any irrelevant information, such as that relating to the detainees' personal family matters, criminal history, and immigration proceedings, should be redacted from the recordings and not played for the jury.

Because of the number of exhibits listed on the parties' Unified Exhibit List and the parties' estimated time for the trial, I advise the parties that only exhibits referenced during the trial (i.e., during the examination of a witness) will go with the final exhibits to the jury room for deliberations. If I permitted the parties to include stipulated exhibits that are not presented to the jury during the trial, jury deliberations could take an excessive amount of time, as the jurors would have to go through evidence for the first time, and on appeal, no assumption could be made that the jurors actually viewed all the evidence.

**J. Plaintiffs' Motion in Limine: Attempts to Relitigate Class Certification**

Plaintiffs' final request in their Motion in Limine is that GEO be precluded from presenting evidence or argument that attempts to relitigate the certification of the classes or the adequacy of Plaintiffs as representatives of the classes. Plaintiffs assert that GEO should be prevented from arguing that: "(1) liability must be determined on an individualized basis; (2) differences among class members defeat classwide proof; (3) Named Plaintiffs are not representative of the Class in a manner that undermines the classwide framework; or (4) Plaintiffs must prove elements of their claims through individualized rather than common evidence." Pls.' Mot. in Limine at 47. I agree with Plaintiffs that class certification is a matter for the Court to decide and, while the Court may revisit certification, the jury should not be invited

to question whether the case is properly proceeding as a class action. Thus, GEO should not make any of the numbered arguments above to the jury. At the same time, I agree with GEO that it may introduce evidence that some detainees worked for reasons other GEO's challenged conduct. Understanding that this guidance is not comprehensive, more specific objections to related evidence or argument may be made at trial when I can rule knowing the full justifications and context.

In sum, I grant in part and deny in part Plaintiffs' Motion in Limine as detailed above.

## II. GEO's Motion in Limine to Preclude Evidence or Argument Regarding Other Facilities, Other Lawsuits, or Unidentified Officers or Employees

I move on to address GEO's six Motions in Limine and its Motion to Bifurcate or Phase the Trial. GEO's first-filed Motion in Limine seeks to exclude any evidence or argument concerning its other facilities, other legal disputes in which it is involved, or unidentified employees. ECF No. 483 at 2-3. GEO contends that this evidence is irrelevant, constitutes improper character evidence, and is unfairly prejudicial. *Id.* at 3-11. The Motion is moot in part, as Plaintiffs have indicated that they will not present evidence at trial regarding other lawsuits in which GEO is a party. ECF No. 503 at 8 (representing that Plaintiffs will not seek to introduce evidence of lawsuits pending against GEO in Washington and California). GEO's request to preclude evidence related to unidentified officers also appears to be moot or premature, as Plaintiffs do not mention that they will present evidence of the actions or statements of unidentified individuals at other facilities and GEO points to no such evidence.

On the single at-issue matter, I conclude that some evidence concerning GEO's other facilities is relevant and admissible. In particular, evidence concerning the pay for detainees

participating in the VWP at other GEO facilities is highly relevant and probative in determining whether it was unjust for GEO to retain any benefit it received from participants in the VWP without paying them additional compensation. It is evidence of what civil immigration detainees in GEO facilities perhaps could or should have been paid.[12]

GEO argues this evidence could risk "substantial prejudice by inviting the jury to improperly infer a propensity for wrongdoing by GEO and threatening to delay the proceedings with argument over *why* rates may have differed elsewhere." ECF No. 522 at 2. I am not persuaded. Any possible prejudice could be avoided with a limiting instruction directing the jury that it may not consider whether the VWP rate of pay in other facilities was lawful for the specific facility and may not infer anything about GEO's general corporate practices based on that evidence. Additionally, with a few questions on cross-examination, GEO may clarify why rates may have been higher in other facilities; this explanation is not likely to cause the delay GEO claims.

GEO also contends that any evidence concerning its other facilities would constitute improper character evidence. Plaintiffs do not, however, offer the evidence to show that GEO had the propensity for wrongdoing. Rather, they offer it to establish that GEO had discretion to set payment rates for detainees in the Voluntary Work Program. Because the evidence is offered for that purpose, it is not character evidence.

Consequently, I deny GEO's Motion in full, denying it in part because it is moot (or insufficiently precise) and in remaining part because I will allow evidence and argument regarding GEO's other facilities, as specified.

---

[12] This is true even if Plaintiffs regard the higher payment amounts as inadequate.

### III. GEO's Motion in Limine to Preclude Evidence or Argument Regarding Alleged Collateral Conditions that are not Classwide or Included in the Complaint

With its second Motion in Limine, GEO requests that Plaintiffs "be precluded from presenting evidence or making argument concerning purported conditions, alleged wrongdoing, incidents, or detainee complaints outside of Plaintiffs' class-wide allegations and theories of liability." ECF No. 484 at 1-2. GEO argues that this evidence "is inadmissible because: (1) it is irrelevant to Plaintiffs' claims; (2) its probative value is minimal and is outweighed by the danger of unfair prejudice to GEO; and (3) it constitutes impermissible character evidence." *Id.* at 2. GEO provides as examples of the evidence it seeks to exclude: "evidence regarding incidents with other detainees, the cost or availability of telephone calls, visitation with their families, the conditions of the bathroom and showers, or statements or actions by GEO unrelated to a refusal to clean or the VWP." *Id.* at 2-3.

Just as evidence of GEO's classification system and Plaintiffs' descriptions of their experiences in the Facility is relevant, so is evidence of the Facility's restrictions, the detainees' relationships or interactions with GEO staff, and the conditions of the showers, bathrooms, and communal spaces. This evidence is relevant for the labor and services, serious harm, and causation elements of Plaintiffs' forced labor claim and for the benefit conferred and unjust retention elements of Plaintiffs' unjust enrichment claim.

GEO contends that this "collateral conditions" evidence is irrelevant because "[t]he only inference, or chain of inferences, that the trier of fact could make based on collateral conditions at [the Facility] is that Plaintiffs were generally unhappy with being confined and with the restrictions that attended their confinement." But the specific restrictions placed on Plaintiffs and their state of mind is relevant to whether they felt or a reasonable person in their circumstances

would feel compelled by GEO's conduct to perform labor or services for GEO. As Plaintiffs note, "[e]vidence that GEO directed detainees to clean moldy showers, unsanitary bathrooms, and other heavily used communal areas tends to make it less probable that detainees would have performed that work simply to pass the time—as GEO has suggested throughout this litigation—and more probable that the work was done because GEO commanded it with the threat of solitary confinement." ECF No. 503 at 14. Contrary to GEO's assertions, the state of the areas participants in the VWP cleaned is similarly relevant to whether it was unjust for GEO to receive any benefit from that work without compensating the participants more than $1 per day.[13]

Alternatively, GEO argues that, even if the evidence has probative value, the risk of undue prejudice or of confusing the jury substantially outweighs that value. Federal Rule of Evidence 403 authorizes exclusion of evidence if the danger of unfair prejudice from the evidence substantially outweighs its probative value. Prejudice from evidence is not unfair just because the evidence portrays a party in a negative light. Here, the evidence GEO seeks to exclude is central to Plaintiffs' claims and, thus, any prejudice to GEO as a result of the evidence is not unfair and certainly does not substantially outweigh its probative value. Likewise, the jury is not likely to be confused by the evidence. Clear instructions on the theories of Plaintiffs' claims will be provided to the jury, and objections may be made if Plaintiffs arguments stray from those theories. GEO is welcome to present its own evidence on the conditions of the Facility and detainees' experiences there. Such evidence is expected, which is demonstrated by GEO's insistence that it be permitted to introduce evidence of its detainee classification

[13] GEO asserts that the state of the areas that were cleaned has no bearing on Plaintiffs' VWP claim, "as the work must be performed irrespective of those conditions." ECF No. 524. This assertion ignores that all work is not the same; some work could be easier to compel, and some work might merit greater compensation.

procedures and housing determinations. Evidence regarding the conditions of the Facility and detainee experiences there will not cause the trial to devolve into a series of tangential mini-trials as GEO claims. Instead, it will paint a full picture of the circumstances in which detainees chose to provide or not provide their labor and services in the Facility and in which they performed jobs as participants in the VWP for $1 per day.

GEO asserts a third basis for excluding the "collateral conditions" evidence—that the evidence constitutes improper character evidence under Federal Rule of Evidence 404. In support of this justification, GEO claims the "collateral conditions evidence necessarily involves different situations which were not comparable to alleged forced labor." ECF No. 484 at 8. GEO overlooks how the jury is to determine whether the labor provided was *forced*. The relevance of the conditions and experiences of the detainees at the Facility is not based on the conclusion that GEO had a particular character or trait and acted in conformity with that character or trait, or that GEO committed other bad acts and so must have also forced detainees to labor and must have been unjustly enriched. The evidence is directly relevant to the elements of Plaintiffs' claims. It does not ask the jury to render a verdict for Plaintiffs because GEO mistreats its detainees; it asks the jury to find that detainees living in those conditions would feel compelled to provide their labor or services based on GEO's policies and to find that it is unjust for GEO to receive the benefit of labor from detainees under those conditions without compensating them more than $1 per day.

I find evidence of the conditions of the Facility and detainees' experiences there is generally relevant, its probative value is not substantially outweighed by any unfair prejudice or juror confusion it might cause, and it is not excludable under Rule 404. Consequently, I deny GEO's Motion to preclude this evidence.

### IV. GEO's Motion in Limine to Exclude Evidence or Argument Regarding its Resources, Revenues, Profits, or Size and GEO's Motion to Bifurcate or Phase Trial Before a Single Jury

GEO also seeks to prohibit the presentation of evidence regarding its resources, revenues, profits, or size, arguing that this evidence has "no tendency to prove or disprove any element of Plaintiffs' forced labor or unjust enrichment claims." ECF No. 485 at 3. Additionally, GEO contends that any probative value the evidence could have is substantially outweighed by its potential for prejudice. This evidence's relevance and potential for unfair prejudice must be considered in relation to each of the elements Plaintiffs must prove for their claims and the specific damages they seek. Plaintiffs contend that some of the evidence covered by GEO's Motion is relevant for determining liability on their unjust enrichment claim and for calculating punitive damages on their forced labor claim.[14] Acknowledging that I might find evidence of its resources, revenues, and profits to be relevant to any punitive damages award, GEO has filed a Motion requesting that the trial occur in two phases, with liability and compensatory damages determined in the first phase and the amount of punitive damages considered in the second. I grant in part GEO's Motion in Limine and grant in full its Motion for the trial to proceed in two phases.

As set out above, for Plaintiffs to succeed on their unjust enrichment claim, they must show that GEO received a benefit, that GEO received this benefit at the expense of the Work-Program Class members, and that under the circumstances, it would be unjust for GEO to keep that benefit without paying more to the Work-Program Class members. I find that facility and function-specific contract revenue could be admissible for the limited purpose of demonstrating

---

[14] The Tenth Circuit has made clear that punitive damages are available under 18 U.S.C. § 1595. *See Francisco v. Susano*, 525 F. App'x 828, 833-35 (10th Cir. 2013) (unpublished).

that Plaintiffs performed services GEO was contractually obligated to provide and for which GEO received compensation. This evidence would assist the jury in evaluating any benefit GEO obtained from the labor of participants in the VWP.

However, evidence of GEO's global profits and overall resources is inadmissible for determining liability and compensatory damages because its negligible probative value for either of Plaintiffs' claims is substantially outweighed by its potential for prejudice. As GEO highlights, courts "regularly exclude evidence and argument about a defendant's resources and profits as unfairly prejudicial." ECF No. 485 at 5. And the Tenth Circuit has explicitly stated that "[r]eference to the wealth or poverty of either party, or reflection on financial disparity, is clearly improper argument." *Garcia v. Sam Tanksley Trucking, Inc.*, 708 F.2d 519, 522 (10th Cir. 1983).

In a different case involving GEO, Judge Robert J. Bryan granted GEO's Motion in Limine seeking to exclude evidence of its "national 'profitability, financial status and overall wealth.'" *Washington v. GEO Group, Inc.*, 2021 WL 4847662, at *2 (W.D. Wash. Sept. 28, 2021).[15] But the court allowed evidence of GEO's "local finances" as they were "relevant to the impact on GEO of the way Voluntary Work Programs detainees [we]re used at the Center." I find it appropriate to strike that same balance here and, for the jury's determination of liability and compensatory damages, will allow evidence of facility and function-specific contract revenue but not of GEO's global profits and overall resources.

For punitive damages, the evaluation of the evidence differs. Evidence of the wealth of a party is admissible for calculating punitive damages. In the context of a forced labor case, a panel of the Tenth Circuit endorsed the court's holding in a previous case that "'the wealth and

[15] GEO has filed a Petition for Writ of Certiorari in the Washington case, and that Petition is the subject of the most recent Motion to Stay filed by GEO in this case.

size of the defendant are relevant considerations' for the imposition of punitive damages in federal civil rights claims." *Villanueva Echon v. Sackett*, 809 F. App'x 468, 474 (10th Cir. 2020) (unpublished) (quoting *Deters v. Equifax Credit Info. Servs.*, 202 F.3d 1262, 1273 (10th Cir. 2000)). This is consistent with Supreme Court precedent, which has stated: "[E]vidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981). Thus, I conclude that evidence of GEO's profits and wealth are admissible for calculating any punitive damages award on Plaintiffs' forced labor claim.[16]

Given that conclusion and that such evidence is unfairly prejudicial for the determination of liability and compensatory damages, I find GEO is correct that the trial should proceed in two

---

[16] In its Motion to Bifurcate or Phase Trial, GEO raises new and untimely arguments that should have been included in its Motion in Limine. For example, GEO argues that "Colorado law imposes an 'absolute' bar on financial-condition evidence in any action in which punitive damages may be awarded." GEO's Mot. to Bifurcate at 4, ECF No. 543 (quoting *Corbetta v. Albertson's, Inc.*, 975 P.2d 718, 719 (Colo. 1999)). In addition to its untimeliness, this argument lacks merit. As a panel of the Tenth Circuit has explained in a suit bringing a forced labor claim alongside Colorado state law claims, the Supreme Court and Tenth Circuit case law permit the admission of evidence of a defendant's wealth for the determination of punitive damages. *Villanueva Echon*, 809 F. App'x at 474. In that case, the panel was unpersuaded by the defendants' contention that Colorado law applied to exclude evidence of wealth for the purpose of assessing punitive damages, *id.*, and the panel found it did not need to analyze whether 42 U.S.C. § 1988(a) dictates that state law should apply in adjudicating federal civil rights claims because the Tenth Circuit had already rejected that argument. *Id.* n.8 (citing *Karnes v. SCI Colo. Funeral Servs., Inc.*, 162 F.3d 1077, 1081-82 (10th Cir. 1988)). The court concluded that testimony about the defendants' assets "provided relevant evidence for Plaintiffs' legitimate punitive damages argument." *Id.* I find the analysis and conclusions by the Tenth Circuit panel are sound and, consequently, permit evidence regarding GEO's profits and wealth for determining punitive damages on Plaintiffs' forced labor claim.

Another argument GEO belatedly raises in its Reply in Support of Motion to Bifurcate is that only evidence related to its profits at the Aurora Facility may be relevant because evidence of its overall profitability "sweeps in information related to other detention facilities that have nothing to do with this case." GEO's Reply in Supp. of Mot. to Bifurcate at 9, ECF No. 562. However, the purpose of this evidence is not to determine the profits that should be disgorged but the amount of punitive damages that would achieve the purposes of retribution and deterrence.

phases. Under Federal Rule of Civil Procedure 42(b), the court may order the separate trial of one or more separate issues or claims in order to avoid prejudice or to expedite and economize. The Rules "give district courts broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused." *Easton v. City of Boulder*, 776 F.2d 1441, 1447 (10th Cir. 1985). Still, a decision to bifurcate a trial "must be made with regard to judicial efficiency, judicial resources, and the likelihood that a single proceeding will unfairly prejudice either party or confuse the jury." *York v. American Tel. & Tel. Co.,* 95 F.3d 948, 958 (10th Cir. 1996).

GEO has persuaded me that conducting the trial in two phases in front of the same jury will allow the jury to consider the relevant evidence without subjecting GEO to unfair prejudice. The first phase will resolve the issues of liability, compensatory damages, and entitlement to punitive damages, and if necessary, a second phase will determine the amount of any award of punitive damages. In the second phase, the jury may hear evidence, argument, and instruction specific to calculating the punitive damages for the forced labor claim. This procedure is superior to providing a limiting instruction on proper consideration of the evidence of GEO's profits and wealth. A limiting instruction risks confusing the jury because the evidence pertains to some of the damages allowed on the forced labor claim but not all of them. At most, proceeding with the trial in two phases will add a few hours to the total trial time, as Plaintiffs acknowledge that the relevant evidence of GEO's current profitability "can be moved into evidence quickly." Pls.' Resp. to Mot. to Bifurcate at 12, ECF No. 553. With my rulings above, I see no reason for the parties to present duplicative evidence in the second phase of the trial, and to the extent possible, the parties should avoid doing so. Because phasing the trial could obviate the need to present the punitive damages related evidence and argument, I find that the procedure promotes judicial

efficiency and could conserve resources. Plaintiffs suggest that phasing the trial will prejudice them by motivating the jury to find Plaintiffs are not entitled to punitive damages so that the trial will end sooner. This argument underestimates our jurors. After investing three weeks into achieving a just outcome in the case, it is unlikely that the twelve selected jurors would agree to shirk their responsibilities simply to avoid a few additional hours of service.

Accordingly, I deny in part GEO's Motion in Limine seeking to exclude evidence of its resources, revenues, profits, or size in that evidence of GEO's profits and resources will be permitted in the second phase of the trial, and evidence of facility and function-specific contract revenue will be allowed in the first phase. I otherwise grant the Motion. And I grant GEO's Motion to Bifurcate or Phase Trial.

## V. GEO's Motion in Limine to Preclude Evidence or Argument Regarding Unnamed and Unidentified GEO Employees

Next, GEO seeks to preclude Plaintiffs from testifying about statements or threats made by unidentified GEO officers and employees. GEO contends Plaintiffs' testimony regarding those statements should be excluded because (1) the identities of the GEO officers were not properly disclosed as required by Federal Rule of Civil Procedure 26, (2) the testimony contains hearsay, and (3) the testimony would be unfairly prejudicial. ECF No. 486 at 3-6.

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires a party, as part of its initial disclosures, to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." GEO argues that, under Rule 26, Plaintiffs were obligated to disclose the identities of the officers who allegedly made the threatening statements about which

Plaintiffs intend to testify. ECF No. 486 at 3-4. GEO claims that Plaintiffs' failure to disclose that information warrants the exclusion of related testimony under Federal Rule of Civil Procedure 37. *Id.*

GEO misses a critical limitation of Rule 26. Part (a)(1)(E) clarifies that the required disclosures are "based on the information then reasonably available to" the party. Information that is reasonably available "covers information known to a party, its agents and counsel, as well as information obtainable through reasonable investigation." *See S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011); *see also* Adv. Comm. Notes to 1993 Amendment to Fed. R. Civ. P. 26(a). GEO's Motion confirms that the identity of the officers who made the relevant statements was and is not known to Plaintiffs. *See* ECF No. 486 at 1-2 (acknowledging that Plaintiffs Valerga, Argueta, Vizguerra, and Gaytan were unable to identify the specific GEO employees who made the alleged threatening statements). Plaintiffs cannot disclose information that remains unknown to them despite reasonable efforts to obtain it. In this case, GEO is as likely as Plaintiffs to have information about its officers who may have made the statements to Plaintiffs. Thus, because Rule 26 does not require disclosure of information that is not reasonably available to a party, Plaintiffs cannot be found in violation of that Rule.

Alternatively, GEO asserts that Plaintiffs' testimony regarding the statements of unidentified GEO officers must be excluded because the statements constitute impermissible hearsay that does not fall under any of the exceptions. *Id.* at 4-5. Again, hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. *See* Fed. R. Evid. 802(c). But "[a] statement offered to establish its effect on the listener is not hearsay." *Maccagnan v. Cherry Creek Sch. Dist. No. 5*, 182 F.4th 1169, 1196 (10th Cir. 2026) (quoting *United States v. Murry*, 31 F.4th 1274, 1292 (10th Cir. 2022)). I find that Plaintiffs offer the

statements made by GEO officers for that purpose—to establish their effect on the listener, and thus that those statements do not constitute hearsay. Plaintiffs do not offer the statements to prove the truth of the matter asserted in them. For example, Plaintiffs do not seek to establish that any segregation threatened by GEO officers would actually have actually occurred if a detainee refused to clean. Rather, Plaintiffs offer these statements as evidence of what they understood to be threats of adverse consequences for failing to clean and how they were impacted by those perceived threats. Whether the GEO officers were truthful in making threats or giving directions is irrelevant. Thus, the credibility of the officers is not at issue. The focus, instead, is on the Plaintiffs' experience and Plaintiffs' credibility, which GEO may certainly challenge by cross-examining Plaintiffs regarding inconsistencies in their representations and by presenting contrary evidence, including from GEO employees. Because the statements from the unidentified GEO officers are offered to establish their effect on Plaintiffs, they are not hearsay.

Lastly, GEO contends that the statements by unidentified GEO officers should be excluded under Federal Rule of Evidence 403 for the unfair prejudice GEO will suffer if the evidence is allowed. GEO claims that it will not be able to rebut either the substance of the statements or their attribution to GEO, given that the individuals who made the statements are unidentified. ECF No. 486 at 5-6. Plaintiffs' testimony about the statements of GEO officers has significant probative value because it directly reflects on why Plaintiffs and class members may have provided their labor to GEO and whether a reasonable person in the same circumstances as the detainees would have provided his labor or services for the same reason. Any prejudice GEO may face from not knowing the identity of the officers who made the statements does not substantially outweigh the probative value of the testimony, as GEO has other clear avenues to call into question Plaintiffs' credibility and testimony and negate the highly probative evidence.

Consequently, I deny GEO's Motion in Limine to preclude Plaintiffs from testifying about statements or threats made by unidentified GEO officers and employees.

## VI. GEO's Motion in Limine to Preclude Testimonial and Documentary Evidence Related to Absent Class Members' Individualized Experiences

GEO also seeks to preclude the submission of disciplinary records for "absent" class members and any other related evidence based on three objections to that evidence: (1) that under Federal Rule of Evidence 602, "[t]estimony and evidence about individualized incidents or circumstances should be limited to that of which the named Plaintiffs have personal knowledge and that was the subject of the discovery process," *id.* at 3; (2) that the class members were not identified in disclosures or the Pretrial Order and were not made available for depositions; and (3) that admission of the class members' disciplinary records would unfairly prejudice GEO under Federal Rule of Evidence 403.

To start, I find the disciplinary records contain relevant and probative evidence concerning the functioning and implementation of GEO's policies. This evidence is directly relevant to the causation element of Plaintiffs' forced labor claim. GEO's briefing does not specify how Rule 602 may apply to documentary evidence that was created by GEO employees in the course of running the Aurora Facility. These disciplinary records were maintained, produced in discovery, and authenticated by GEO. As a result, they are proper evidence of the incidents documented within them.

Of course, GEO may present evidence clarifying the circumstances of the disciplinary actions described in the reports. GEO claims that allowing this process to play out—introduction of the disciplinary records by Plaintiffs and presentation of rebuttal evidence by GEO—would result in mini-trials for each incident. Viewed this way, however, every disputed fact in a trial

causes a mini-trial such that a trial is a series of mini-trials. Plaintiffs may present evidence relevant to the elements of their claims, and GEO may challenge that evidence. GEO argues that it is at a disadvantage in attempting to rebut the disciplinary records because it cannot explain the circumstance surrounding each record without deposing the absent class members. That argument is fruitless. Even though I denied GEO's request to depose the absent class members, GEO has been able to question its own employees—the ones who created the records—about the circumstances surrounding each record. And GEO has, in fact, provided the deposition testimony of three GEO employees, Officers Gallagos and Vasquez and Ms. Ceja, clarifying particular records. ECF No. 487 at 5-7. Thus, I find there is no basis for concluding under Rule 403 that GEO would be subject to unfair prejudice if the reports are admitted.

Additionally, GEO argues that the exclusion of these records is warranted because the parties previously stipulated that absent class members must be disclosed and made available for deposition if their accounts are to be relied on at trial. *Id.* at 5. But that is not what the parties' stipulation provides. The relevant provision of the stipulation states:

> If, despite a good faith effort to do so, either party is unable to complete a deposition of one or more of the opposing party's proposed *trial witnesses* prior to trial, then the opposing party shall be *precluded from calling that witness to testify at trial*, unless that witness is called solely for purposes of rebuttal.

Stip. Regarding Trial Witnesses, ECF No. 228 at 2 (emphasis added). The stipulation only applies to witnesses Plaintiffs intend to call at trial, and consequently, the disciplinary records may be admitted even if GEO was unable to depose the relevant detainee.[17]

---

[17] To the extent GEO's Motion could be construed to seek the exclusion of Plaintiffs' accounts of incidents they witnessed involving other class members, that request is unavailing. Plaintiffs would have personal knowledge of such incidents, and Plaintiffs had no duty to identify the other individuals involved as witnesses.

Because GEO's disciplinary records are admissible and GEO has put forward no legitimate basis for excluding them, I deny GEO's related Motion in Limine.

## VII. GEO's Motion in Limine to Preclude Evidence or Argument Regarding Legal Expenses

Finally, I consider GEO's last motion in limine. In that motion, GEO seeks to preclude the introduction of any evidence concerning its litigation expenses. ECF No. 488 at 2-4. I agree that such evidence should be excluded. GEO's legal expenses are not relevant to either of Plaintiffs' claims. Plaintiffs represent that they do not intend to introduce such evidence but that their otherwise admissible evidence may contain references to GEO's litigation expenses. Any documentary evidence referencing GEO's litigation expenses should be redacted. However, evidence that ICE is not an adversary party in this case and is not defending GEO may be admissible. A stipulation stating that fact might be appropriate. Nevertheless, GEO's request to exclude any evidence concerning its litigation expenses is granted.

## VIII. Conclusion

Accordingly, it is ORDERED:

1. Plaintiffs' Motion *in Limine* (ECF No. 481) is GRANTED IN PART and DENIED IN PART as indicated above and summarized here:

    a. GEO may not argue or present evidence at trial that it did not act with the requisite intent for Plaintiffs' forced labor claim because it was only attempting to comply with its contracts with ICE.

    b. GEO may not argue or present evidence that contradicts my previous determinative findings in this case.

    c. GEO may present argument and evidence explaining the subjective reasons that it paid VWP participants $1 per day.

d. GEO may use the term legitimate in reference to the potential consequences for detainees who failed to clean, but GEO may not argue that ICE "legitimated" its cleaning policies.

e. GEO will not be allowed to present argument or evidence on the objective reasonableness of any consequences detainees faced for failing to clean.

f. GEO may present evidence of the applicable detention standards, the range of consequences available for various categories of noncompliance, and the process afforded to detainees before consequences were imposed.

g. GEO may introduce the VWP agreements, but the parties must submit a proposed limiting instruction.

h. GEO may call ICE-employee witnesses to present background evidence that GEO operates the Facility pursuant to contract with ICE and was required to comply with those contracts but may not elicit testimony interpreting the relevant contracts. Other challenges to these witnesses may be entertained at trial.

i. Amber Martin, Brian Evans, David Venturella, and Charles Hill must testify via the same means for both parties.

j. GEO may not ask the individuals both parties identify as witnesses any questions on cross-examination that exceed the scope of Plaintiffs' direct examination.

k. Plaintiffs may use leading questions during their direct examination of GEO's current and former employees, and GEO may likewise use leading questions in its cross-examination of those witnesses.

l. The class for Plaintiffs forced labor claim will not be designated as the "Forced Labor Class" and instead will be designated as the "Cleaning Class"; the class for Plaintiffs' unjust enrichment claim will be designated as the "Work-Program Class."

m. Evidence regarding GEO's classification system, including the restrictions placed on and differential treatment of certain detainees, may be admissible. However, evidence and argument of Plaintiffs' or class members' specific criminal histories will not be permitted.

n. Evidence of Plaintiffs' and class members' immigration statuses and proceedings will be permitted to the extent it explains Plaintiffs' and class members' detention in the Facility. Otherwise, evidence of Plaintiffs' and class members' immigration histories will not be allowed.

o. The term "noncitizen" will be used to describe any corresponding immigration status or individual. The terms "illegal," "illegal alien," "illegal immigrant,"

"undocumented," and the like will not be used unless quoting a relevant statute or policy.

p. I reserve any admissibility determination regarding the OIG reports until the evidence may be offered at trial.

q. Particular audio recordings of the detainees' relevant experiences at the Facility are admissible. But any obviously prejudicial material and irrelevant matters, including regarding personal family matters, criminal history, and immigration proceedings, must be redacted from the recordings and may not be played for the jury.

r. GEO may not invite the jury to question whether the case is properly proceeding as a class action. But it may introduce evidence that some detainees worked for reasons other than GEO's challenged conduct. More specific objections related to evidence bearing on or argument regarding class certification may be made at trial.

2. GEO's Motion in Limine to Preclude Evidence or Argument Regarding Other Facilities, Other Lawsuits, or Unidentified Officers or Employees (ECF No. 483) is DENIED IN PART as MOOT and otherwise DENIED.

3. GEO's Motion in Limine to Preclude Evidence or Argument Regarding Alleged Collateral Conditions that are not Classwide or Included in the Complaint is DENIED (ECF No. 484).

4. GEO's Motion in Limine to Exclude Evidence or Argument Regarding its Resources, Revenues, Profits, or Size (ECF No. 485) is GRANTED IN PART and DENIED IN PART, as evidence and argument regarding GEO's local revenue will be permitted in the first phase of the trial, but evidence or argument regarding its resources, revenues, profits, or size will only be permitted in the second phase.

5. GEO's Motion to Bifurcate or Phase Trial Before a Single Jury (ECF No. 543) is GRANTED.

6. GEO's Motion in Limine to Preclude Evidence or Argument Regarding Unnamed and Unidentified GEO Employees (ECF No. 486) is DENIED.

7. GEO's Motion in Limine to Preclude Testimonial and Documentary Evidence Related to Absent Class Members' Individualized Experiences (ECF No. 487) is DENIED.

8. GEO's Motion in Limine to Preclude Evidence or Argument Regarding Defendant's Legal Expenses (ECF No. 488) is GRANTED.

9. The parties are DIRECTED to revise their proposed Jury Instructions in accordance with the rulings in this Order and to resubmit the updated document on or before October 23, 2026.

10. Only exhibits referenced during the trial (i.e., during the examination of a witness) will go with the final exhibits to the jury room for deliberations.

DATED this 20th day of October, 2026.

John L. Kane

JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE