UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:14-cv-02887-JLK-CYC

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

Plaintiffs,

v.

THE GEO GROUP, INC.

Defendant.

---

**JOINT JURY INSTRUCTIONS AND PROPOSED VERDICT FORMS**

---

**TABLE OF CONTENTS**

Joint Jury Instructions and Proposed Verdict Forms ..... i

JOINT JURY INSTRUCTIONS ..... 1

PRELIMINARY NOTE ..... 1

*SECTION 1.0: INTRODUCTORY INSTRUCTIONS* ..... 3

INSTRUCTION NO. 1.0: INTRODUCTION TO THE CASE AND THE TRIAL STRUCTURE ..... 3

STIPULATED – INSTRUCTION NO. 1.2: INSTRUCTIONS AND PROCEDURES FOR TRIAL ..... 13

STIPULATED – INSTRUCTION NO. 1.3: DUTY TO FOLLOW INSTRUCTIONS ..... 18

STIPULATED – INSTRUCTION NO. 1.4: EVIDENCE – GENERAL ..... 20

STIPULATED – INSTRUCTION NO. 1.5: EVIDENCE – DIRECT AND CIRCUMSTANTIAL – INFERENCES ..... 22

STIPULATED – INSTRUCTION NO. 1.6: CONFERENCES WITH COUNSEL ..... 23

STIPULATED – INSTRUCTION NO. 1.7: CREDIBILITY OF WITNESSES ..... 24

STIPULATED – INSTRUCTION NO. 1.8: EXPERT WITNESSES ..... 26

INSTRUCTION NO. 1.9: BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE ..... 27

JURY VIEW OF THE SCENE ..... 28

GEO'S PROPOSED INSTRUCTION NO. 1.11: EQUALITY OF PARTIES ..... 30

GEO'S PROPOSED INSTRUCTION NO. 1.12: DUTY TO FIND FACTS AND FOLLOW LAW ..... 31

*SECTION 2.0: INSTRUCTIONS FOR USE DURING TRIAL (LIMITING INSTRUCTIONS)* ..... 33

STIPULATED – INSTRUCTION NO. 2.0: CHARTS AND SUMMARIES ..... 33

STIPULATED – INSTRUCTION NO. 2.1: STIPULATED FACTS ..... 34

STIPULATED – INSTRUCTION NO. 2.2: EVIDENCE ADMITTED FOR A LIMITED PURPOSE ..... 36

STIPULATED – INSTRUCTION NO. 2.3 EVIDENCE CONTAINING REDACTIONS ..... 37

*SECTION 3.0: SUBSTANTIVE INSTRUCTIONS* ..... 53

STIPULATED – INSTRUCTION NO. 3.0: LIABILITY IN GENERAL ..... 54

GEO'S PROPOSED INSTRUCTION NO. 3.1: CLAIM ONE: TRAFFICKING VICTIMS PROTECTION ACT ..... 55

GEO'S PROPOSED INSTRUCTION NO. 3.5: CLAIM TWO: UNJUST ENRICHMENT ..... 71

STIPULATED – INSTRUCTION NO. 3.6: AWARDING DAMAGES ..... 77

GEO'S PROPOSED INSTRUCTION NO. 3.7: CLAIM ONE: COMPENSATORY DAMAGES ..... 78

GEO'S INSTRUCTION NO. 3.8: CLAIM ONE: PUNITIVE DAMAGES – LIABILITY ..... 81

GEO'S PROPOSED INSTRUCTION NO. 3.9: CLAIM ONE: PUNITIVE DAMAGES – AMOUNT ..... 82

GEO'S PROPOSED INSTRUCTION NO. 3.10: CLAIM TWO: DISGORGEMENT ..... 85

*SECTION 4.0: FINAL INSTRUCTIONS* ..... 91

STIPULATED – INSTRUCTION NO. 4.0: GENERAL FINAL INSTRUCTIONS ..... 91

STIPULATED – INSTRUCTION NO. 4.1: JURY – PROCEDURES ..... 92

STIPULATED – INSTRUCTION NO. 4.2: JURY – DELIBERATIONS ..... 93

STIPULATED – INSTRUCTION NO. 4.3: COMMUNICATIONS WITH THE JUDGE ..... 97

STIPULATED – INSTRUCTION NO. 4.4: UNANIMOUS AGREEMENT AND JURY VERDICT FORM ..... 98

PLAINTIFFS' PROPOSED VERDICT FORM ..... 99

DEFENDANT'S PROPOSED VERDICT FORM ..... 104

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:14-cv-02887-JLK-CYC

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

Plaintiffs,

v.

THE GEO GROUP, INC.

Defendant.

---

**[REVISED] JOINT JURY INSTRUCTIONS**

---

**PRELIMINARY NOTE**

In certain sections of these proposed instructions, the Parties have highlighted specific language that one Party or the other objects to. This language is addressed in the Parties' objections following each instruction. Language highlighted in yellow is objected to by the Plaintiffs. Language highlighted in blue is objected to by GEO.

GEO notes that the proposed revisions in this draft are intended to comply with the Court's rulings on the parties' various pretrial motions. *See* Dkts. 582, 583. GEO expressly

preserves all arguments and positions set forth in its previous filings, including its previous proposed jury instructions and objections to Plaintiffs' proposed instructions.

A redlined comparison of these revised jury instructions and verdict forms against the version previously filed with the Court is attached as Exhibit A.

## *SECTION 1.0: INTRODUCTORY INSTRUCTIONS*

**INSTRUCTION NO. 1.0:**[1]

**INTRODUCTION TO THE CASE AND THE TRIAL STRUCTURE**

During jury selection and the trial you have heard or will hear me use a few terms that you may not have heard before. I will briefly explain them to you. If there are other terms you don't recognize, please let me know and I will explain them.

When I use the term "party," I am referring to a person or entity that is either bringing or defending this case. The party who brings a lawsuit is called the plaintiff. In this case, the plaintiffs are Alejandro Menocal, Marcos Brambila, Grisel Xahuentitla, Hugo Hernandez, Lourdes Argueta, Jesus Gaytan, Olga Alexaklina, Dagoberto Vizguerra, and Demetrio Valerga. They will often be referred to collectively as "plaintiffs" or individually as "plaintiff." These nine Plaintiffs represent two larger groups of similarly situated people called "classes," because this is a class action.

The party against whom the lawsuit is brought is called the defendant. In this case, the defendant is a company named The GEO Group, Inc., which will often be called "GEO" or "defendant."

Sometimes I will refer to the lawyers as "counsel"; that's just another way of saying lawyer or attorney.

---

[1] Judge Kane's Sample Instruction No. 1.0; *Menocal v. GEO Group, Inc.*, 635 F. Supp. 3d 1151 (D. Colo. 2022); Joint Pretrial Order.

Ms. Smotts, who is in charge of taking care of you, is my courtroom deputy. Also in the courtroom is my court reporter, who is making stenographic notes of everything that is said, and my law clerk, who assists me in legal matters.

Now I will briefly tell you about what this case is about. The Plaintiffs in this case are former immigration detainees at the Aurora ICE Processing Center in Aurora, Colorado, a private immigration processing center that I'll sometimes refer to as the "Aurora Facility." GEO is a government contractor that, since March 2003, has operated the Facility under a series of contracts with U.S. Immigration and Customs Enforcement, or "ICE." ICE is an agency within the U.S. Department of Homeland Security that is primarily tasked with enforcing the nation's immigration laws, including by arranging for the detention of individuals who are in immigration proceedings. The Plaintiffs and the class members were detained at the Aurora facility in connection with proceedings to determine whether or not they should be deported.

Plaintiffs bring claims related to two policies they allege GEO implemented at the Facility. First, Plaintiffs allege that, between October 2004 and October 2014, GEO threatened detainees with solitary confinement to force them to do janitorial work as part of a daily cleaning detail, which they allege violated the forced-labor provisions of the Trafficking Victims Protection Act. The detainees who are covered by this claim will be referred to at times as the "Cleaning Class," which consists of all detainees at the Facility from December 23, 2004, through October 22, 2014.

GEO denies that it is liable for forced labor. GEO asserts that it operated the facility based on its understanding of standards and guidelines necessary to ensure the safety and security of residents and staff and the cleanliness and sanitation of the facility. GEO asserts that

any fear of segregation was unfounded because its policy disfavored using segregation and because none of the named Plaintiffs were ever sent to segregation for refusing to clean. GEO asserts that it sent other members of the Cleaning Class to segregation because other aggravating factors such as fighting, outbursts, or behavior threatening injury were present.

Second, Plaintiffs allege that, between October 2011 and October 2014, GEO operated a program, called the Voluntary Work Program, that allowed detainees to have jobs in the Aurora facility. Those jobs paid the detainees $1 per day. The Plaintiffs allege that GEO was unjustly enriched at their expense by using their labor to operate the detention center. They argue that GEO profited from using $1/day detainee labor to do work that was necessary to run the facility instead of hiring staff or contractors, and that this allowed GEO to win contracts from the government by keeping its bid price low. The detainees who are covered by this claim will be referred to as the "Work-Program Class," which consists of all detainees who worked at the Facility under the Voluntary Work Program from October 22, 2011, through October 22, 2014.

GEO denies that it was unjustly enriched at the expense of Plaintiffs. GEO alleges that the Voluntary Work Program is a program that the federal government requires facilities like AIPC to offer so that detainees may have an opportunity to work while they are detained at the facility. GEO argues that the program benefits detainees rather than GEO by providing opportunities for detainees to engage in productive activities while detained. According to GEO, it would have been more profitable for it to hire its own staff or contractors to perform the work because it would be permitted under contracting regulations to add a profit margin to staff or contractor labor.

The trial of this case will proceed in two phases. In the first phase, you will decide whether GEO is liable for Plaintiffs' claims and the amount of actual damages and disgorgement, if any, Plaintiffs can recover from GEO. You will also decide whether GEO is liable for additional "punitive" damages as punishment. If you decide that GEO is liable for punitive damages, then a brief second phase will immediately commence in which you will decide the amount of punitive damages to be awarded. If you decide that GEO is not liable for punitive damages, then a second phase will be unnecessary.

The first step in the first phase of the trial is the selection of jurors. The second step is my reading of the instructions. Then come the opening statements. What is said in the opening statements is not evidence. It is a road map to show what lies ahead and what the evidence will be. After the opening statements, Plaintiffs will present evidence to support their claims, and GEO's lawyers may cross-examine Plaintiffs' witnesses. After Plaintiffs' evidence, GEO may present evidence and Plaintiffs' lawyers may cross-examine GEO's witnesses. Plaintiffs may then present what is known as rebuttal evidence to counter GEO's evidence. After the evidence related to liability for actual and punitive damages is presented, the parties' lawyers will make closing arguments explaining what they think the evidence has shown. What is said in the closing arguments is also not evidence. Once all of these steps are finished, I will read the instructions to be used in deciding the verdict on liability for actual and punitive damages, and you will go to deliberate.

If necessary, a second phase will then commence with my reading of instructions related to the amount of punitive damages. Opening statements will be made thereafter, followed by a presentation of evidence by both sides on the issue of the amount of punitive damages, closing

arguments by the parties' lawyers, and my reading of instructions to be used in deciding the verdict. You will then deliberate on the amount of punitive damages to be awarded.

A jury is the judge of the facts in the case—that means you listen to the evidence in the case and apply to that evidence the law as I give it to you. That's the short and simple description of what the job is. The essential requirement for a fair trial is that you decide the case based on all the evidence and the law presented at trial, and only the evidence and law presented at trial.

So, from now until when you are permanently excused from this case, you should not talk about it with any witness, the Plaintiffs, the Defendant, any of the lawyers, or anyone else at all. Do not read or watch any news reports about this case, including on the internet, on social media, in the paper, or anywhere else. You must not gather, or attempt to gather, any information or otherwise investigate this case or anything related to it.

You should also know that no one who is employed need be concerned about how your employer might react to your service on a jury during trial. There is a federal law that forbids any discrimination of any kind against anyone on account of jury service. If you need a note for your employer, please inform the jury coordinator or my courtroom deputy, and one will be provided to you.

## Parties' Objections To Instruction 1.0

**Plaintiffs object to the following language in the above instruction:**

1. Plaintiffs are concerned that the Court's descriptor "Cleaning Class" to refer to the class certified for forced labor claims under the Trafficking Victims' Protection Act will confuse the jury. The Voluntary Work Program, which is the subject of the unjust enrichment claims, also involved many cleaning jobs. There will be substantial testimony at trial about detainees cleaning as part of the $1/day work program. Plaintiffs therefore propose that GEO's original proposal to describe this as the "Sanitation Policy Class," while describing the unjust enrichment class as the "Work Program Class," would be less confusing. GEO originally proposed "Sanitation Policy Class," so this term should be unobjectionable.
2. Plaintiffs object to GEO's assertion in Paragraph 8, in the context of the forced labor claim, "that it operated the facility based on its understanding of standards and guidelines necessary to ensure the safety and security of residents and staff and the cleanliness and sanitation of the facility." The Court ruled in is Order on Pretrial Motions that GEO's perspective as to its contractual obligations is relevant *only* to whether retaining the benefit of Plaintiffs' VWP work is unjust. ECF No. 583 at 9. The Court expressly forbid GEO from "cloud[ing] the record by arguing or presenting evidence that it did not act with the requisite intent because it was only attempting to comply with its contracts" with respect to the force labor claims, as it attempts to do here.
3. Plaintiffs object to the highlighted language in paragraph 8, referring to "fighting, outbursts, or behavior threatening injury" because previewing facts to be introduced into

evidence is unnecessary to describe GEO's position, and the facts are prejudicial as they tend to create an impression that detainees were habitually violent and lacked self-control.

**GEO objects to the following language in the above instruction:**

1. GEO objects to the highlighted term "solitary confinement" in paragraph 7 as prejudicially conjuring an image of unwarranted punishment. It proposes the neutral term "segregation" instead.
2. GEO objects to the highlighted phrase "do janitorial work" in paragraph 7 on the grounds that it prejudicially assumes the work qualifies as "labor" within the meaning of the TVPA, which is something Plaintiffs must prove. GEO proposes "clean up after meals" instead.
3. GEO objects to the highlighted term "brief" in paragraph 11. The length of the second phase that will depend on the evidence that Plaintiffs present in that phase.

**GEO responds to Plaintiffs' objections as follows:**

1. In response to Plaintiffs' first objection above, GEO agrees with the Court's decision to use the "neutral and accurate" term "Cleaning Class." Dkt. 583 at 16. There is no risk of juror confusion because the instruction expressly defines that term to mean the class of detainees who allege that GEO threatened them with segregation for refusing to clean. By contrast, Plaintiffs' proposed term would mislead the jury into believing that GEO had the very "Sanitation Policy" that Plaintiffs must prove at trial. That is clearly prejudicial. Plaintiffs' assertion that "GEO originally proposed" that term ignores that, at the time, GEO was under the impression that Plaintiffs had waived their "pattern" theory of forced

labor by failing to include it in the pretrial order. Thus, any reference to a "policy" would not have misled the jury into assuming the conclusion that GEO had an unlawful policy. The opposite is true now that the Court has permitted Plaintiffs to amend the pretrial order to include their "pattern" theory, which is premised on the allegation that GEO had a policy of threatening segregation for refusal to clean.

2. Regarding Plaintiffs' second objection, the Court squarely ruled both that GEO can provide "background" evidence that it operated pursuant to contracts with ICE and was required to comply with those contracts, Dkt. 583 at 13, and that "GEO's perspective" concerning its obligations under those contracts is "relevant," *id.* at 8. The Court did not rule that such evidence is relevant "*only* to whether retaining the benefit of Plaintiffs' VWP work is unjust," as Plaintiffs assert. For the avoidance of doubt, GEO does not seek to introduce evidence of its "understanding" for intent purposes (in view of the Court's ruling), but rather to provide appropriate context for the claims in this case and illustrate its understanding of the standards and guidelines that govern operation of the facility.
3. As for Plaintiffs' third objection, GEO notes that previewing the types of aggravating behaviors that it intends to prove at trial will help clarify the issues for the jury and responds that Plaintiffs are entitled to offer argument about the appropriate weight to be given that evidence at the appropriate time. Concealing those facts from the instructions will prejudice GEO by misleadingly suggesting to the jury that class members' experiences occurred in a vacuum.

**Plaintiffs respond to GEO's objections as follows:**

1. In response to GEO's objection No. 1, Plaintiffs respond that describing solitary confinement as "segregation" is ambiguous because the word "segregation" has multiple ordinary meanings, most of which are not at issue in this case; it is perhaps most familiar to many as a description of practices in Southern U.S. states between the Civil War and the civil rights era. None of that is at issue in the case, and simply describing the conduct in this case as "segregation" is likely to be confusing and distracting. "Solitary confinement," in contrast, has one meaning that is fairly well understood by most people.
2. In response to GEO's objection No. 2, Plaintiffs respond that GEO's proposed phrase "clean up after meals" minimizes the extent of the work at issue. Describing the work as "janitorial" is necessary to help the jury distinguish the work related to the forced-labor claim from the work related to the Voluntary Work Program.
3. As Plaintiffs have explained to GEO in conferring about these instructions and in their opposition to GEO's bifurcation motion, Plaintiffs only anticipating introducing evidence of GEO's self-authenticating filings with the SEC as relevant to the punitive damages inquiry. Unless GEO intends to introduce additional evidence, which it has not proffered, the second stage will be brief. Jurors will be relieved to hear this.

**JOINT PROPOSED INSTRUCTION NO. 1.1**

**CLASS ACTION**[2]

As I mentioned, the Plaintiffs here represent two larger groups of people called "classes." That is because this case is a class action. That means the Plaintiffs brought this lawsuit on behalf of a larger group of detainees who have similar legal claims.

In a class action, the claims of many individuals can be resolved at the same time instead of requiring each member to sue separately. Because of the large number of class members at issue in this case, not everyone in the class will testify. All members of the class will be bound by the result of this trial.

[2] Relevant Authorities: Judicial Council of California Civil Jury Instructions (2026 ed.), Instr. No. 115; ECF No. 57 (Order granting class certification); ECF No. 380 (Order denying decertification and modifying class definition).

**STIPULATED – INSTRUCTION NO. 1.2:**[3]

**INSTRUCTIONS AND PROCEDURES FOR TRIAL**

In any trial, there are, in effect, two judges. I am one of the judges; you are the other. I am the judge of the law. You, as jurors, are the judges of the facts.

It is my duty to direct the trial and decide what evidence is proper for you to consider. When I reject evidence, I am saying that evidence may not legally be considered by you. I am not telling you what is true or not true. In explaining the law that you must follow, I will first give you some general instructions that apply in every case. Then, I will give you some specific laws that apply to this case, and finally, I will explain the procedures you should follow when deciding your verdicts. These instructions will be given to you for use during the trial.

As judges of the facts, you must determine the facts from the evidence presented. The evidence consists of the testimony of witnesses, documents and other things allowed into the record as exhibits, and any facts to which Plaintiffs and GEO agree or I say must be accepted as true. You are to consider all the evidence received in this trial and only that evidence. It will be up to you to decide what evidence to believe and how much of any witness's testimony to accept or reject.

At times during the trial, a lawyer may object to a question asked by another lawyer or to an answer by a witness. This means the lawyer is requesting that I make a decision on whether evidence may be presented or considered. Do not conclude anything from any objections or my rulings on the objections. When I "sustain" an objection, I am ruling that evidence cannot be presented or considered. When you hear that I have "overruled" an objection, I am allowing that

[3] Judge Kane's Sample Instruction No. 1.1.

evidence to be presented or considered. If I "sustain" an objection to a question, the witness may not answer it. Do not attempt to guess what answer might have been given if I had allowed the answer. If I "overrule" the objection, the witness will be allowed to answer the question, and you should treat it as any other answer. If I tell you not to consider a particular statement, you may not consider that statement as evidence or refer to that statement in your discussions as a jury.

When I say "admitted into evidence" or "received into evidence," I mean that the statement or exhibit may be considered by you in making the decisions you must make at the end of the case. I am not indicating in any way that you must accept it, but only that you may consider it. If I tell you to consider a particular piece of evidence for a specific purpose, you may consider it only for that purpose.

I may have to interrupt the trial at times to speak with the attorneys about the law that should apply. We may talk briefly at the bench. But, if our discussion takes more time, I will excuse you from the courtroom. I will try to avoid such interruptions whenever possible, but please be patient even if the trial seems to be moving slowly because our talks can often save time in the end.

During the course of the trial, I may ask a question of a witness or an attorney. If I do, that does not mean I have any opinion about the facts in the case. I am only trying to bring out facts that you may consider. From time to time during the trial, I may also direct your attention to one of these instructions.

Ordinarily, the attorneys will show you all the legally allowed evidence that is necessary for you to reach your verdicts. However, in rare situations, a juror may have a question that is very important for considering a necessary element of the case. In that situation, the juror may

write out a question and give it to the courtroom deputy at the next recess. I will then consider that question with the lawyers. If it is a proper and necessary question, it will be asked. If it is not, I will tell you why and explain why you cannot consider what the answer to the question might be. Please remember that responding to your notes takes time and effort. I usually have to talk the issue over with the attorneys, consider their arguments, and decide the correct answer. In some cases, we might have to do additional research.

If you would like to take notes during the trial, you may. On the other hand, you do not have to take notes. If you decide to take notes, be careful not to get so involved in note taking that you become distracted. Remember that your notes will not necessarily reflect exactly what was said, so you should only use your notes as memory aids. You should not rely on your notes over your independent memory of the evidence. You should also not be unduly influenced by the notes of other jurors. If you do take notes, leave them in the jury room at night and do not discuss their contents with anyone until I send you to decide the verdict at the end of the trial.

Although the court reporter is making stenographic notes of everything that is said, you will not have a typewritten copy of the testimony to use during your discussions. Any exhibits admitted at trial, though, will be available to you at that time.

You may not discuss the evidence in this case with each other until you have gone to the jury room to make your decision at the end of the trial. It is important that you wait until all the evidence is presented and you have again heard my instructions before you discuss the case with each other. In other words, keep an open mind and form no opinions until you can consider all the evidence and the instructions together.

During the trial, you will receive all the evidence you legally may consider to decide the case. Gathering any information on your own that you think might be helpful in this case is against the law and violates your oath. Do not do any outside reading on this case, including even dictionaries or a bible, do not attempt to visit any places mentioned in the case, and do not in any other way try to learn about the case outside the courtroom. Part of my job is to protect you from outside influences. Your job is to limit your decisions to what happens in this courtroom.

I wish I did not have to spend so much time on this topic, but recent events around the United States and recent technologies require me to point out that some common practices and habits many of you enjoy are strictly forbidden for you as jurors. You may not, under any circumstances, have your cell phones, iPhones, smart phones and watches, or the like turned on when court is in session. Whether you are here or away from the court during recess you may not Google, tweet, text message, post on social media, blog, or do anything else with those gadgets about anything to do with this case. If anyone does, it could cause a mistrial, meaning all of our efforts would have been wasted and we would have to start all over again with a new trial before a new jury. If you were to cause a mistrial by violating these orders, you could have to pay all the costs of this trial and perhaps be punished for contempt of court. What you may do is advise anyone who needs to know, such as family members, employers, employees, schools, teachers, or daycare providers that you are a juror in a case and the judge has ordered you not to discuss it until you have reached a verdict and been discharged from the case. At that point you will be free to discuss this case or search for any information about it to your heart's delight.

Fairness to all concerned requires that all of us connected with this case deal with the same information and with nothing other than the same information. The reason for this is that justice requires a full and public understanding of the basis for any verdict. If you follow these instructions, no one has the right to challenge your decisions and any criticism of your service as a juror will not be tolerated.

**STIPULATED – INSTRUCTION NO. 1.3:[4]**

**DUTY TO FOLLOW INSTRUCTIONS**

You, as jurors, are the judges of the facts. But in figuring out what actually happened, it is your sworn duty to follow all of the law as I explain it to you.

You may not ignore or give special attention to any one instruction or question the wisdom or correctness of any rule I tell you about. You must not substitute or follow your own idea or opinion as to what the law is or should be. It is your duty to apply the law as I explain it to you, regardless of the result.

In your discussions you must make sure that no one else on the jury ignores the instructions or attempts to decide the case on anything other than the law that is given to you by me and the evidence that has been presented in this trial. You must remember that we are all committed to equal justice under the law. Matters of race, religious belief, color, nationality, gender, sexual orientation, citizenship, and corporate status have no place in this process. To the best of your ability, you are to judge others as you would want others to judge you under the law I give you. The very heart of justice is that all apply the same law to the same evidence and leave our personal desires out of it.

You should not read these instructions or anything else I say or do as a suggestion about what your verdict should be. That is entirely up to you.

It is also your duty to base your verdict only on the evidence, without prejudice or sympathy. All persons are equal before the law regardless of race, religious belief, color, nationality, gender, and citizenship, whether the party is a corporation or not. I tell you that all

---

[4] Judge Kane's Sample Instruction No. 1.2.

parties are equal before the law to remind you that you must base any decision in this case on the law and the facts, not outside factors such as citizenship or corporate status. That is the promise you make and the oath you take.

**STIPULATED – INSTRUCTION NO. 1.4:**[5]

**EVIDENCE – GENERAL**

You must make your decision based only on the evidence that you see and hear here in court. Do not let rumors, guesses, social media, newspapers, or anything else that you may have seen or heard outside of court influence your decision in any way. You, and you alone, are the judges of the facts. You will hear the evidence, decide what the facts are, and then apply those facts to the law I give you. That is how you will reach your verdict.

You will decide what the facts are from the evidence that the parties will present to you during the trial. That evidence will include the sworn testimony of witnesses on both direct- and cross-examination, documents and other things received into evidence as exhibits, and any facts on which the lawyers agree or which I may instruct you to accept as true.

The following things are not evidence and you must not consider them as evidence in deciding the facts of this case:

1. The fact that Plaintiffs filed this lawsuit is not evidence that GEO violated the law. Similarly, the fact that GEO denies Plaintiffs' allegations is not evidence that it did not violate the law. Both the complaint and the denial are merely the formal way in which the case is brought to court for you to decide.

2. Statements and arguments by lawyers are not evidence. The lawyers are not witnesses. What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of the facts controls.

---

[5] Judge Kane's Sample Instruction No. 1.3.

3. Questions and objections by the lawyers are not evidence. Lawyers have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by my ruling on it.

4. The lawyers may highlight parts of some exhibits. While the exhibit is evidence, the highlights are not. It is for you to determine the significance of the highlighted parts.

5. Testimony that I do not allow or that I instruct you to disregard is not evidence and must not be considered by you.

6. Anything you may see or hear when the Court is not in session is not evidence, even if what you see or hear is done or said by one of the parties or by one of the witnesses.

During the trial, I may not let you hear the answers to some of the questions that lawyers ask. I may also rule that you cannot see some of the exhibits that the lawyers want you to see. And sometimes I may order you to ignore things that you saw or heard. I may "strike" things from the record, which means you cannot consider that piece of evidence. Do not even think about it. Do not guess what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

**STIPULATED – INSTRUCTION NO. 1.5:**[6]

**EVIDENCE – DIRECT AND CIRCUMSTANTIAL – INFERENCES**

Generally speaking, there are two types of evidence. One is direct evidence, and the other is circumstantial evidence.

Direct evidence is evidence that proves a fact directly. For example, where a witness testifies to what he or she saw, heard, or observed, that is direct evidence.

Circumstantial evidence is evidence that tends to prove a fact by proof of other facts. To give a simple example, suppose that when you came into the courthouse today the sun was shining and it was a nice day, but the courtroom blinds were drawn and you could not look outside. Then later, as you were sitting here, someone walked in with a dripping wet umbrella and, soon after, somebody else walked in with a dripping wet raincoat. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But the combined facts about the umbrella and the raincoat make it reasonable for you to "infer" that it had begun raining.

An inference is a conclusion that reason and common sense may lead you to make based on facts which have been proved. While you must consider only the evidence in this case, you can make reasonable inferences from the testimony and exhibits, inferences you think are justified by common experience.

The law makes no distinction between direct and circumstantial evidence. Circumstantial evidence is of no less value than direct evidence, and you may consider either or both, and may give them such weight as you conclude you should.

---

[6] Judge Kane's Sample Instruction No. 1.4.

**STIPULATED – INSTRUCTION NO. 1.6:[7]**

**CONFERENCES WITH COUNSEL**

It may be necessary for me to talk to the lawyers about an issue of law out of your hearing. The purpose of these conferences is to decide how certain legal matters are to be treated. We will not be discussing factual matters.

Sometimes we will talk briefly at the bench. But if some of these conferences take more time, I will excuse you from the courtroom. I will try to avoid such interruptions whenever possible, but please be patient even if the trial seems to be moving slowly because conferences often actually save time in the end. The lawyers and I will do what we can to limit the number and length of these conferences.

---

[7] Judge Kane's Sample Instruction No. 1.5.

**STIPULATED – INSTRUCTION NO. 1.7:[8]**

**CREDIBILITY OF WITNESSES**

In deciding the facts of this case, you will have to decide which witnesses to believe and which witnesses not to believe. You are the only judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. You should think about the testimony of each witness you hear and decide whether you believe all or part of what each witness has to say and how important that testimony is. In making that decision, I suggest that you ask yourself a few questions: Did the witness seem to be honest? Did the witness have any reason not to tell the truth? Did the witness have a personal interest in the outcome of this case? Did the witness have any relationship with either Plaintiffs or GEO? Did the witness have a good memory? Did the witness clearly see or hear the things about which he or she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses?

When weighing conflicting testimony, you should consider whether the conflict has to do with a significant fact or with an unimportant detail. And you should keep in mind that an innocent failure to remember is not uncommon.

If you believe a witness has willfully lied regarding any material fact, you have the right to disregard all or any part of that witness's testimony. In reaching a conclusion on a particular point or a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other. If, after consideration of all the evidence in the case, you hold greater belief in the accuracy and reliability of one witness, the testimony of that single

---

[8] Judge Kane's Sample Instruction No. 1.6.

witness is sufficient to prove any fact and can justify a verdict, even if a number of other witnesses testified to the contrary.

If a party or a representative of a party testifies, that testimony should be weighed and its credibility evaluated in the same way as that of any other witness.

**STIPULATED – INSTRUCTION NO. 1.8:[9]**

**EXPERT WITNESSES**

Witnesses are generally limited to testifying about what they saw, heard, felt or other matters relating to the five senses. In some situations, however, scientific, technical, or other specialized knowledge may assist you in understanding the evidence or in finding a fact to be true or not true. A witness who has special knowledge, skill, experience, training, or education, may testify and state his or her opinion based on that background. When a witness is qualified to express an opinion based on his or her expertise, that witness's background is relevant to the credibility of such opinion.

You do not have to accept expert opinions. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the reasons given for the opinion, and other evidence in the trial.

9 Judge Kane's Sample Instruction No. 1.8.

**INSTRUCTION NO. 1.9:**[10]

**BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

To be entitled to a favorable verdict, Plaintiffs must meet their burden of proof. In this case, the standard to determine whether that burden has been met as to Plaintiffs' claims is proof by a preponderance of the evidence.

To prove something "by a preponderance of the evidence" means that, no matter who produces the evidence, when you consider one of Plaintiffs' claims in light of all the facts, you believe that Plaintiffs' claim is more likely true than not true. To put it differently, if you were to put all of the evidence in favor of Plaintiffs and all the evidence in favor of GEO on opposite sides of the scale, the Plaintiffs would have to make the scale tip to their side to prove their claims. If Plaintiffs meet their burden of proof by proving one or more of their claims by a preponderance of the evidence, GEO will be liable. If Plaintiffs fail to meet this burden for all the required facts necessary to succeed on a claim, your verdict must be for GEO.

In evaluating whether Plaintiffs have met their burdens on their claims, you should also know that the law does not require parties to call as witnesses all persons who may have been involved in the case or who may appear to have some knowledge of the issues brought up in this trial. Nor does the law require parties to present as exhibits all papers or other things mentioned in the evidence in the case.

---

[10] Dkt. 634 in *BlueRadios, Inc. v. Kopin Corp.*, No. 16-cv-2052 (D. Colo. Jan. 12, 2024) (Kane, J.) ("*BlueRadios*"), Instruction No. 1.10.

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 1.10**

**JURY VIEW OF THE SCENE**[11]

I have concluded that you will be permitted to view the location where the events that will be discussed in this trial took place. Consequently, you will be taken by bus to the Aurora Ice Processing Center, where you will have an opportunity to view parts of the detention center. You are not to consider what you see during this viewing as evidence in this case. The purpose is to assist you in understanding the testimony and other evidence that will be introduced at trial.

During the trip to the detention center, while you view the detention center, and on your return trip to the courthouse, you should not speak with one another, or with anyone else accompanying you, about the site visit or about other matters involving the case. Please reserve any conversation about these matters for your deliberations once you have returned to the courthouse.

[11] Relevant Authorities: *Figaniak v. Fraternal Ord. of Owl's Home Nest*, No. 15 Civ. 111, 2017 WL 10442121, at *2 (N.D.W. Va. July 21, 2017). *See* ECF No. 255 at 135.

**Geo's Objection To Plaintiffs' Proposed Instruction No. 1.10**

GEO maintains its objection to the jury view taking place. Subject to and without waiving that objection, GEO has no objection to the substance of this instruction in the event the jury view takes place.

**JOINT PROPOSED INSTRUCTION NO. 1.11:[12]**

**EQUALITY OF PARTIES**

All parties are equal before the law regardless of race, national origin, gender, citizenship, whether the party is a natural person or a corporate entity. I tell you that all parties are equal before the law to remind you that you must make any decision in this case on the law and the facts, not outside factors such as national origin or corporate status.

You will hear testimony in this case that is given in Spanish, which will be translated for you. You must base your evaluation of that testimony on its content, not on the fact that is given in a language other than English.

---

12 Judge Kane's Sample Instruction No. 1.9.

**GEO'S PROPOSED INSTRUCTION NO. 1.12:**[13]

**DUTY TO FIND FACTS AND FOLLOW LAW**

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. Likewise, you should not make any decisions based upon your politics or on a belief that the law should be different. While this case may raise issues that involve political opinions, that is not what you are being asked to decide here. Whatever your views about immigration enforcement and detention, opinions about Plaintiffs being in civil detention while their immigration cases were proceeding, or opinions concerning GEO's operation of the Aurora facility under contract with ICE, they have no place in your decision-making process. You must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

[13] Ninth Circuit Civil Jury Instruction No. 1.3.

**Plaintiffs' Objection To Geo's Proposed Instruction No. 1.12**

Plaintiffs object to the highlighted text because the prior and subsequent sentences are sufficient to address the concern that jurors may bring their political views to bear on their deliberations. Highlighting these specific concerns unnecessarily focuses the jurors on specific and divisive political issues which may distract them from the task at hand.

**Geo's Response To Plaintiffs' Objection**

GEO agrees that the instruction, standing alone, suffices to caution the jury against allowing personal beliefs to influence their decision. Plaintiffs, however, have proposed acutely prejudicial instructions that portray the detainee class members in a favorable light while depriving GEO of critical context for its actions. As set forth in its response to Plaintiffs' Proposed Instruction Nos. 2.5 and 2.6, GEO has proposed the highlighted text here as an alternative to those prejudicial instructions to ensure that biases against the parties—whether detainees or GEO, as operator of the detention facility and an ICE contractor—play no role in this case. It is Plaintiffs who improperly seek to weaponize "divisive political issues" to prejudice the jury against GEO. And notably, Plaintiffs themselves concede (in responding to GEO's Objection to Plaintiffs' Proposed Instruction No. 2.6) that the basic intent of instructing the jury on the "role of ICE" is "the same as instructions that all parties are equal under the law." If that is all Plaintiffs seek to convey, there is no reason to create an entirely separate, prejudicial instruction. The issue can be dealt with succinctly here.

## *SECTION 2.0: INSTRUCTIONS FOR USE DURING TRIAL (LIMITING INSTRUCTIONS)*

### STIPULATED – INSTRUCTION NO. 2.0:[14]

### CHARTS AND SUMMARIES

During trial, the parties may present charts or summaries to help explain things to you. Charts or summaries that are not received in evidence are known as demonstratives, while charts or summaries that are received in evidence are exhibits.

The only purpose of a demonstrative chart or summary is to help explain the evidence in the case. The demonstrative is not evidence itself and does not prove any fact. Some charts or summaries, however, are evidence because they accurately and reliably summarize complex or voluminous evidence in a manner that may assist you in understanding that evidence. Such a summary or chart exhibit is only as valid and reliable as the underlying evidence it summarizes and is not independent evidence on its subject matter.

---

[14] Judge Kane's Sample Instruction No. 2.0.

**STIPULATED – INSTRUCTION NO. 2.1:**

**STIPULATED FACTS[15]**

Before the trial of this case, the parties stipulated to certain facts, which means the parties agreed that the following facts can be taken as true without further proof.[16]

1. The Aurora ICE Processing Center ("AIPC") is a U.S. Immigration and Customs Enforcement ("ICE") detention facility that The GEO Group owns and operates under a contract with the federal government. Those contracts cover the entire time period of this case, which is 2004 to 2014.

2. GEO entered into 3 contracts with ICE during the class period. The first contract was in effect beginning March 27, 2003 (the "2003 Contract"). The second contract was in effect beginning September 29, 2006 (the "2006 Contract"). The third contract was in effect beginning September 15, 2011 (the "2011 Contract").

3. GEO was required to comply with ICE's Performance-Based National Detention Standards under its contracts with ICE.

4. The class members were detained by ICE at the Aurora facility in connection with proceedings to determine whether or not they should be deported.

5. During the time period covered by this lawsuit, GEO paid detainees $1 per day for participation in the Voluntary Work Program, for which it was reimbursed $1 per day from ICE.

6. None of the named Plaintiffs were placed in segregation for refusing to clean.

---

15 Judge Kane's Sample Instruction No. 2.1.

16 Joint Pretrial Order at 6–7.

7. Plaintiff Olga Alexaklina was never personally threatened by GEO employees with disciplinary or administrative segregation for failing to clean.

**STIPULATED – INSTRUCTION NO. 2.2:**[17]

**EVIDENCE ADMITTED FOR A LIMITED PURPOSE**

During the trial, certain evidence is admitted for a limited purpose. You may consider that evidence only for that purpose and for no other.

[17] Judge Kane's Sample Instruction No. 2.4.

**STIPULATED – INSTRUCTION NO. 2.3**

**EVIDENCE CONTAINING REDACTIONS**

Evidence, including documents and audio files, will be admitted at trial with certain information redacted. You should not infer anything from the fact that such redactions have been applied to that evidence.

**THE COURT'S INSTRUCTION NO. 2.4**[18]

**VISIT TO AURORA DETENTION FACILITY**

As a part of the trial in this case, you will visit the Aurora Detention Facility, where the events in this this trial took place. The morning of the visit, you will be taken from the courthouse to the Aurora Facility by bus. We anticipate that the visit will take two hours. Then, you will return to the courthouse from the Facility by bus. Myself, the courtroom deputy, the court reporter, my law clerk, Deputy U.S. Marshals, and lawyers for both sides will join you on the visit. You will need to leave your cell phones and all internet-connected devices at the courthouse, but you will be able to take a notepad and pen on the visit.

During the visit, you will view a number of locations in the Facility, such as the men's and women's dorm units and their common and recreation areas, the Segregated Housing Unit, the kitchen, laundry, library, and barbershop. The purpose of this visit is to assist you in understanding the testimony and other evidence that will be presented to you during the trial. The visit may provide evidence of the physical structure of the Facility as it is today. You may hear other evidence during the trial that some of this structure has changed since the relevant events took place. You may not consider as evidence anything you see at the Facility other than the physical structure. Specifically, you may not consider as evidence any interactions with or conduct by the lawyers, court staff, Facility staff, or individuals detained at the Facility.

---

[18] This instruction is to be given in connection with the Jury view of the Aurora Ice Processing Center. Plaintiffs propose that it be given on site after the participants have been cleared through security, in the conference room, prior to continuing into the facility, so that it is fresh in the jurors' minds.

GEO staff will give instructions as you move around the Facility. GEO staff will provide directions on how to pass through security and will announce the locations and the estimated time you may wish to spend in each location. You will be given green sheets of paper, and when you are ready to move on to the next location, please hold up your green sheet of paper. When all jurors are holding up their green sheets of paper, you will be escorted to the next location on the visit.

The Facility is a working detention center. Please remember that the people who work here are doing their jobs and deserve to be treated with respect and allowed to work with minimal disruption. We will try to minimize interactions with individuals detained at the Facility. However, if you do encounter people who are being detained at the Facility, please be respectful but do not attempt to engage with them.

If you have a question during the visit to the Facility, please write the question down and give it to my courtroom deputy, Ms. Smotts. While you view the Facility, and on your return trip to the courthouse, you should not speak with the other jurors or with anyone else accompanying you—including the attorneys, court staff, and Facility staff—about the visit or about other matters involving the case. You may not discuss any of these matters until you begin your deliberations after all the evidence is presented in the trial. You may have normal interactions with the other jurors and individuals accompanying you on the visit, for example by saying "excuse me" or "thank you," but you should avoid giving any observations or opinions, even through gestures or facial expressions.

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 2.5**

**CIVIL DETENTION**[19]

As I said earlier this case concerns Plaintiffs who were in civil detention because of immigration proceedings. Civil detention is different from being imprisoned as a punishment for a crime. The Plaintiffs in this case were not detained at the Aurora detention center as punishment for any criminal conviction or even any criminal charges. Instead, they were detained while they were awaiting the outcome of proceedings that could end in them being deported. The fact that the Plaintiffs were detained, pending the result of an administrative hearing, is not something you should hold against them in weighing your decision in this case.

And because these Plaintiffs were not held at the Aurora detention center as punishment for a crime, as jurors you must guard against viewing them as criminals or judging their actions (or the standards GEO must meet) based on any comparison to people incarcerated due to criminal activity. If you find yourself making such comparisons, you must put them out of your mind and base your decision on the law as I have given it to you.

---

[19] Relevant Authorities: ECF No. 479 (Proposed Pretrial Order) at 7; *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

**Geo's Objection To Plaintiffs' Proposed Instruction No. 2.5**

GEO objects to the entirety of this instruction as impermissibly attempting to immunize Plaintiffs from evidence regarding class members' individualized circumstances. Instruction No. 1.0 already makes clear that class members were detained while they "await[ed] results from immigration proceedings to determine whether they could be deported," and the parties' fourth stipulated fact makes clear that class members were "detained by ICE and held at the AIPC while their immigration cases were pending." There is no suggestion anywhere that Plaintiffs were detained as "punishment for a crime," a concept confusingly introduced here. Indeed, the jury *cannot* hear any evidence to that effect because the Court has found evidence of criminal histories inadmissible. *See* Dkt. 385 at 18. This instruction is therefore unnecessary to avoid the risk that the jury will "speculate about … criminal histories." *Id.*

Equally problematic, this instruction directs the jury to conclude that the "fact that Plaintiffs were detained" has no weight—as if their cleaning duties and participation in the facility's voluntary work program occurred *in spite of* their detention rather than because of it. Evidence that they were detained and thus subject to federally mandated and authorized policies and programs is directly relevant to Plaintiffs' claims and is critical context for this case.

This instruction would cause significant prejudice. Through this instruction and Plaintiffs' Proposed Instruction No. 2.6 (on "The Role of ICE"), Plaintiffs attempt to provide favorable context for their assertions and allegations, while excising any context for GEO's defenses and positions in this litigation. They suggest that the very contracts and regulations under which GEO operated must be disregarded. Such instructions would deprive GEO of an opportunity to mount a meaningful defense at trial and predetermine the verdict.

If necessary, language can be added to Instruction No. 1.13 ("Duty to Find Facts and Follow the Law") directing the jury to ignore opinions it may have about class members being subject to civil detention—the same as opinions about GEO's operation of a detention facility under contract with ICE. A separate, lengthy instruction to that effect is improper. Should the Court nonetheless permit this separate instruction, the jury must receive a similar instruction about GEO, such as the following:

> I have instructed you not to allow the fact that Plaintiffs were civilly detained to influence your decision in this case. Equally important is that you do not base your decision on the fact that GEO operates private detention facilities like the one at issue in this case. Congress has authorized the detention of individuals accused of violating our country's immigration laws while their removal cases are being adjudicated. Sometimes, the federal government uses private contractors to operate immigration detention centers. That is what happened here, where ICE contracted with GEO to operate the Aurora facility. That arrangement is lawful and subject to federal oversight and regulation, and as such, it should not influence your decision in any way. Your decision must be based on the facts of this case, not your views of GEO's federally authorized activities.

**Plaintiffs' Response To Geo's Objection**

The distinction between civil detention and punitive incarceration is a juridical distinction that may not be widely understood by laypeople, or understood in the context of immigrant detention. There is a perception among many people that being unlawfully present in the United States is a crime that deserves punishment, when in fact, removal proceedings "are civil, not criminal" and intended to be "nonpunitive in purpose and effect." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). GEO's proposed additional instruction in its above objection conveys precisely this confusion by stating that detainees are "accused of violating our country's immigration laws." This mistaken notion that unlawful presence is a crime leads to an inference that unlawfully present residents deserve punishment. That is incorrect as a question of law. *Id.*

Jurors must be instructed that there is a difference between civil and criminal detention, and that they should not view civil detainees as criminals who deserve punishment – and therefore perhaps as criminals who deserve to be forced to do hard labor or placed in solitary confinement. Such an instruction is consistent with the Court's ruling on Plaintiffs' motion *in limine* to exclude criminal history, in which the Court excluded evidence of Plaintiffs' criminal history and expressed concern about evidence that might "cause the jury to speculate about their criminal histories." ECF No. 385 at 18.

Plaintiffs' proposed instruction is the most modest instruction that might be given on this topic. It would, perhaps, be appropriate for the Court to provide further instruction on the difference between civil detention and criminal incarceration, and explain that while, for example, the Thirteenth Amendment allows the latter to be sentenced to mandatory labor, it does not allow it to be imposed on the former. Plaintiffs do not propose this instruction, out of concern that it might further confuse the jury. Plaintiffs' instruction simply states the legally correct proposition that there is a distinction between civil and criminal confinement, and that they should be treated as distinct; and that no court has sentenced the detainees to hard labor at Aurora. None of these facts are disputed.

GEO's argument that jurors *should* give weight to the fact that detainees are in detention, and that this information is necessary to its ability to defend itself, is an invitation to bias that ignores the procedural history of this case. The "defenses" GEO describes have either already been adjudicated by this Court, *see* ECF Nos. 380, 582. The jury will have all the "context" it needs; these instructions refer in various places to the fact that GEO operates under a

government contract with ICE, and the jury will hear evidence about that contract throughout the case.

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 2.6[20]**

**THE ROLE OF ICE[21]**

As I mentioned earlier, GEO operated the Aurora detention center under a contract with ICE, a federal agency that handles certain aspects of immigration. That fact alone, while part of the background of this case, should not affect your decision as jurors. I have already determined that ICE's role in contracting with GEO to run the detention facility does not affect whether GEO can be held liable in this case. You should not take the mere fact that GEO worked for the government as a defense or allow it to affect your decision. This case is about GEO's conduct, and any opinions you might have about ICE should have no bearing on how you view the facts. If you find that the facts meet the legal standards I am giving you, so that GEO is liable for any of the Plaintiffs' claims, then you must give your verdict accordingly.

---

[20] The need for this instruction is subject to the Court's ruling on Plaintiffs' Motions *in Limine* # 2, Part A, and # 3.

[21] Relevant authorities: ECF No. 380 (Order on summary judgment).

**Geo's Objection To Plaintiffs' Proposed Instruction No. 2.6**

GEO objects to the entirety of this instruction as prejudicially depriving GEO of critical context for its actions in this case. Plaintiffs cannot receive the benefit of contextualizing class members' detention at the Aurora facility (as they seek through their Proposed Instruction No. 2.5) while directing the jury to ignore the contractual and regulatory context under which GEO operates that very facility. It is improper to suggest that such evidence has "no bearing" on how the jury views the facts and "does not affect [its] decision." This case is fundamentally about that evidence. And indeed, the Court expressly ruled that GEO's perspective about its obligations is permissible, *see* Dkt. 583 at 8, 9–10, which necessitates evidence about the context in which it operated. Again, to the extent the Court disagrees, GEO respectfully requests guidance on the permissible nature of evidence regarding its "perspective."

As with Plaintiffs' improper proposed instruction about civil detention, any concern about the jury's views of ICE generally can be addressed in Instruction No. 1.13 ("Duty to Find Facts and Follow the Law"). But anything beyond a directive not to allow those views to influence the jury's decision—especially a lengthy, separate instruction—would be improper.

**Plaintiffs' Response To Geo's Objection**

Both Instruction No. 2.5 and this instruction serve a similar purpose: they rebut understandable, common-sense ideas that some jurors may hold that are, nevertheless, mistaken. Laypeople cannot be expected to understand the legal nuances of the various immunities that apply to government employees, government contractors, or government vendors like GEO. It would be natural for many jurors to assume that actions carried out under contract with the government are automatically legal. As this Court has held, based on well established precedent,

*see* ECF No. 380, that is not true under the facts of this case and evidence on that point will not be presented at trial. ECF No. 583 at 8-10.

The effect of this instruction is the same as instructions that all parties are equal under the law. It is intended to place GEO on the same footing as any other party charged with civil liability. GEO's continued conduct throughout these proceedings, including after this Court's denial of its *Yearsley* defense, is that it should instead receive special treatment because it worked under a contract with the federal government. And the Court has now ruled that it cannot present its case at trial in this manner. *Id*. This instruction provides the jury and the parties with the tools to separate that advocacy from legally correct principles that are consistent with the law of the case.

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 2.7**

**AGREEMENTS TO WORK FOR $1/DAY[22]**

You have [heard/seen] evidence that the Plaintiffs and some detainees signed a paper stating that they agreed to work for $1/day. I have already determined that the papers the Plaintiffs signed are not contracts that have any legally binding effect.

You may consider the fact that the Plaintiffs signed these papers in determining whether it was unjust for GEO to retain the benefit of detainee labor in the Voluntary Work Program. But the agreements are not the whole of the inquiry. The question you must decide is whether GEO's intentions, expectations, and behavior aligned with the detainees' expectations. The agreements the detainees signed may be one piece of that, but you must also consider the whole picture.

The fact that the Plaintiffs voluntarily participated in the work program is not at issue. That is not part of the unjust enrichment claim. Whether the work was voluntary is only relevant to Plaintiffs' forced labor claim.

[22] Relevant Authorities: ECF No. 380 (Order on summary judgment).

**Geo's Objection To Plaintiffs' Proposed Instruction No. 2.7**

GEO objects to Plaintiffs' confusing and inaccurate formulation of this instruction. The Court concluded that the agreements are relevant to whether GEO's retention of any benefit from detainee labor was unjust. This proposed instruction incorrectly invites the jury to nevertheless conclude that, contrary to the Court's ruling, the agreements "should not have any effect on [its] decisions" (*see* Dkt. 583 at 11) because the "whole picture" overwhelms their probative value. The Court sought a limiting instruction addressing the enforceability of the agreements, not eliminating their relevance and usurping the jury's role in weighing the evidence. *See id.*

GEO similarly objects to the final paragraph, which offers unnecessary guidance on the voluntariness of the VWP. As the Court recognized, detainees' voluntary participation in the VWP is "not at issue." *Id.* at 11 n.8. An instruction advising the jury that the agreements are not relevant to an issue the Court has stated is not relevant would only serve to confuse and further prejudice GEO by influencing the jury to view the agreements as altogether irrelevant. Consistent with the Court's request, an instruction distinguishing between the enforceability of the agreements and their relevance to the overall circumstances—without attempting to cabin their probative value as part of that inquiry—is all that is warranted, exactly as GEO has proposed below.

**Plaintiffs' Response To Geo's Objection**

GEO's objections seek to strip this proposed instruction of its "limiting" character. The Court has held that the $1/day agreements are relevant to the third prong of unjust enrichment, not that they are dispositive. This instruction draws the jury's attention to the proper scope of that inquiry, using language both parties include in their proposed instructions on unjust

enrichment ("intentions, expectations, and behavior"). It does not say anything about that inquiry "overwhelming" the relevance of the agreements; rather, it situates them alongside other evidence that is probative of the same question, because the agreements are merely relevant, not dispositive. As for the final paragraph, it tracks the Court's ruling in its order at ECF No. 583 n.8. The language is intended to help the jury distinguish the two claims.

**GEO's COUNTER-PROPOSED INSTRUCTION NO. 2.7[23]**

**AGREEMENTS TO WORK FOR $1/DAY**

You have [heard/seen] evidence that some detainees signed agreements to work for $1/day. I have determined that the agreements have no legally binding effect as contracts. If you find that GEO benefitted from detainee labor, then you must consider all the circumstances in deciding whether it would be unjust for GEO to retain that benefit. The fact that detainees signed agreements to work for $1 per day is one of the circumstances that you may consider.

**Plaintiffs' Objection to GEO's Counter-Proposed Instruction No. 2.7**

GEO's proposed instruction is vague and does not properly limit the jury's consideration of the VWP agreements, as the Court ordered. ECF No. 583 at 11. It affirmatively advances the notion that the jury *should* consider the agreements as evidence weighing against injustice, thereby giving the evidence greater weight than other evidence. That is not a limiting instruction, it is an enhancing instruction. GEO's instruction would exacerbate the tendency of a purported agreement to weigh in jurors' minds as dispositive of unjust enrichment, giving it the same effect as a legally binding contract, frustrating the Court's prior decision. Furthermore, GEO's proposed instruction leaves out a key piece of the Court's ruling by not informing jurors that "whether [detainees] voluntarily participated in the program is not at issue." *Id.* The absence of that information may further mislead jurors into believing that voluntary participation automatically resolves the question of whether it would be unjust for GEO to retain the benefit.

[23] Dkt. 583 at 11.

**GEO's Response to Plaintiffs' Objection**

Plaintiffs mischaracterize GEO's proposal. The instruction nowhere says that "the jury *should* consider the agreements," but that it "may consider" them. That framing properly avoids the pitfalls of Plaintiffs' proposal, which seeks to limit the agreements' probative value by directing the jury to treat them as non-dispositive—again, usurping the jury's role in weighing evidence. There is no possible way that this instruction will somehow prompt the jury to "giv[e] the [agreements] the same effect as a legally binding contract" when it explicitly says that the agreements "have no legally binding effect as contracts." And the instruction does not "leave[] out a key piece of the Court's ruling," because the Court never invited an instruction on the voluntariness of the program. The Court merely stated in a footnote that voluntariness is "not at issue." Dkt. 583 at 11 n.8. Introducing the issue would unnecessarily interpose a concededly irrelevant issue, going beyond the scope of what the Court requested.

## JOINT PROPOSED INSTRUCTION NO. 2.8

## OTHER FACILITIES[24]

You have [heard/seen] evidence that detainees housed at other facilities who participated in similar voluntary work programs at those facilities were occasionally paid at different rates than the detainees in this case. You may consider that evidence in assessing whether it was unjust for GEO to retain any benefit from the labor of detainees in this case, but you may not consider the rates at other facilities as proof that those particular rates were lawful or as proof that GEO has a general practice of paying particular rates. You must determine whether GEO's compensation practices at this facility, not others, were unjust.

[24] Dkt. 583 at 28.

## ***SECTION 3.0: SUBSTANTIVE INSTRUCTIONS***

**STIPULATED – INSTRUCTION NO. 3.0:**[25]

**LIABILITY IN GENERAL**

With the previous instructions in mind, we now turn to the specific claims brought by Plaintiffs against GEO. In evaluating the claims, you must decide whether Plaintiffs have proved each element "by a preponderance of the evidence." This is known as proving liability.

If you find that Plaintiffs have proven each element of their claims so that GEO is liable, you must determine the amount and type of damages to which Plaintiffs are entitled.

---

25 Judge Kane's Sample Instruction No. 3.0.

**GEO'S PROPOSED INSTRUCTION NO. 3.1:[26]**

**CLAIM ONE: TRAFFICKING VICTIMS PROTECTION ACT**

The Trafficking Victims Protection Act prohibits knowingly obtaining the labor of any person by means of the use or threat of physical restraint or serious harm. The statute was enacted to address trafficking crimes such as human trafficking and involuntary servitude.

The term "knowingly" means knowledge of the means used to obtain labor and knowledge that labor was obtained as a result.[27]

The term "obtain" means to gain, acquire, or attain.[28]

The term "labor" means the expenditure of difficult or fatiguing physical effort.[29]

The term "by means of" means the use of unlawful coercion caused a person to render labor.[30]

The term "physical restraint" means the use of force to check a person's free activity or otherwise control the person's actions.[31]

The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the

---

26 Ninth Circuit Criminal Jury Instruction 24.27.
27 *Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1156–57 (9th Cir. 2022).
28 *United States v. Kaufman*, 546 F.3d 1242, 1260–63 (10th Cir. 2008).
29 *Id.*
30 *Menocal v. GEO Group, Inc.*, 882 F.3d 905, 918 (10th Cir. 2018).
31 *United States v. Thompson*, 109 F.3d 639, 641–42 (9th Cir. 1997).

same circumstances to labor to avoid incurring that harm. "Serious harm" does not include legitimate consequences for the person's conduct.[32]

The term "threat" means an avowed present determination or intent to cause serious harm presently or in the future. A "threat" does not include warning of legitimate consequences for a person's conduct.[33]

For Plaintiffs to recover against GEO under the Trafficking Victims Protection Act, you must find that Plaintiffs have proven all of the following by a preponderance of the evidence[34]:

1. That GEO knowingly obtained labor or services from detainees housed at AIPC between October 22, 2004 and October 22, 2014, through use of one or more of the following means:

   a. Threatening detainees with segregation due to refusing to clean the common areas of the units in which they were housed;

   b. Placing detainees in segregation due to refusing to clean the common areas; or

   c. Through a pattern of conduct intended to cause the detainees to believe that they would face segregation if they did not clean the common areas.

2. That placing detainees in segregation due to refusing to clean common areas of housing units amounts to physical restraint or serious harm.

3. That GEO's threatened or actual use of segregation caused Plaintiffs to labor.

---

[32] 18 U.S.C. § 1589(c)(2); *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012).

[33] *United States v. Dysart*, 705 F.2d 1247, 1256 (10th Cir. 1983); *Headley*, 687 F.3d at 1180; *Barrientos*, 951 F.3d at 1278 n.5.

[34] Joint Pretrial Order at 3; *Menocal*, 882 F.3d at 916.

If you find that Plaintiffs have proven all of these elements by a preponderance of the evidence, you must find in favor of Plaintiffs. If Plaintiffs fail to prove any one of these elements, you must find in favor of GEO.

**<u>Plaintiffs' Objection To Geo's Proposed Instruction No. 3.1</u>**

Plaintiffs object to several aspects of GEO's proposed instruction.

1. GEO's statement that the TVPA was passed "to address trafficking crimes such as human trafficking and involuntary servitude" is inappropriate because (a) it is an incomplete statement of policy, as the TVPA was passed "to combat severe forms of worker exploitation that do not rise to the level of involuntary servitude," *United States v. Kaufman*, 546 F.3d 1242, 1261 (10th Cir. 2008); and (b) it prejudicially orients the jury toward forms of conduct that are not at issue in this case, inviting the jury to find a contrast between GEO's conduct and the described conduct.

2. Nothing in *United States v. Kaufman*, 546 F.3d 1242 (10th Cir. 2008) supports GEO's proposed instruction that "[t]he term 'labor' means the expenditure of difficult or fatiguing physical effort." *Kaufman* rejected a defendant's argument that the TVPA only applies to "work in an economic sense." 546 F.3d at 1263. The only reference to "effort" in the case is a passing reference to an instruction that neither party challenged, which told the jury that "'Labor' means the expenditure of physical or mental effort." *Id.* at 1260. The only reference to such labor being "difficult" or "fatiguing" is a citation to an instruction given in a *different* case, which the *Kaufman* court did not opine on. *Id.* at 1262 (*citing United States v. Marcus*, 487 F.Supp.2d 289 (E.D.N.Y.2007), *vacated on other grounds,* 538 F.3d 97 (2d Cir. 2008)). In any event, the instruction given in *Marcus* was that "labor" meant "physical or mental effort

*especially* when fatiguing, difficult, or compulsory," which is different from GEO's formulation suggesting that fatigue or difficulty are required. In any event, the jury here does not require a definition of the term "labor," which is an ordinary English word that most laypeople are familiar with.

3. GEO's attempt to include references to "legitimate consequences" as part of the serious harm inquiry defies the Court's Order on Pretrial Motions. ECF No. 583 at 10. Though the Court authorized GEO to use the *word* "legitimate" in describing its disciplinary policies, the Court cautioned that the "inquiry does not involve consideration of whether the consequences are objectively reasonable." *Id.* The language GEO offers in this instruction invites the jury to consider whether the consequences it imposed on detainees who refused to clean were objectively reasonable, obscuring the correct legal inquiry which defines legitimate consequences as those that "do not violate 18 U.S.C. § 1589." *Id.* Moreover, by using the term "legitimate consequences" twice, to define both "serious harm" and "threat," GEO gives its argument undue weight. The notion of "legitimacy," as GEO uses it, is a far cry from the distinction discussed in *Headley v. Church of Scientology*, and twists the meaning of the statute far out of recognition.

4. GEO's proposed definition of "threat" inappropriately relies on *United States v. Dysart*, 705 F.2d 1247 (10th Cir. 1983), a criminal prosecution under 18 U.S.C. § 871 involving alleged threats against the President of the United States. *Dysart* addressed whether such statements constituted a "true threat" rather than protected First Amendment speech. Those concerns are not at issue in that case; nobody alleges that GEO's First Amendment rights allow it to use threats to coerce detainees to work. Nor does the jury need instruction on the meaning of

the term "threat," which is an ordinary English word that most laypeople are familiar with. Moreover, as with respect to its definition of serious harm, GEO's definition of threat improperly uses the phrase "legitimate consequences," implying to the jury that warnings of objectively reasonable consequences do not violate the TVPA. ECF No. 583 at 10. But, as the Court has made clear, this is not the inquiry; reasonableness is not a component of TVPA liability, and consequences are only legitimate if they do not violate the TVPA. *Id.* GEO's invocation of "legitimate consequences" is thus misleading to the jury.

**<u>Geo's Response To Plaintiffs' Objection</u>**

GEO disagrees with each of Plaintiffs' objections.

1. To the extent the statement regarding the TVPA's purpose is "incomplete," the missing portion can be added. The solution is not to omit that statement altogether. The jury should be advised about the purpose of the very statute under which Plaintiffs assert their claim. If anything, the omission would prejudice GEO by obscuring the severity of the misconduct the TVPA was designed to address and that Plaintiffs must prove.

2. Plaintiffs misread *United States v. Kaufman*, 546 F.3d 1242 (10th Cir. 2008). Although the "labor" instruction at issue was given without objection at trial, the defendants challenged it on appeal as "too broad." *Id.* at 1260. The Tenth Circuit rejected that challenge on the ground that the instruction "set forth the ordinary meaning" of the term, *id.* at 1261, citing as consistent with that "ordinary meaning" another case's instruction defining "labor" to mean the "expenditure of physical or mental effort especially when fatiguing, difficult, or compulsory," *id.* at 1262 (quoting *United States v. Marcus*, 487 F. Supp. 2d 289 (E.D.N.Y. 2007)). That is nearly identical to the definition GEO offers here. That the instruction modified the terms "difficult"

and "fatiguing" with the adverb "especially" is a distinction without any material difference, and the same modifier can easily be used here to clear up any confusion. Further, the fact that the defendants in that case insisted on defining "labor" to mean "work in an economic sense" only proves the need for a definition here, to ensure that the jury actually applies the "ordinary" meaning Plaintiffs claim is self-evident.

3. Plaintiffs attempt to read the Court's limitation on GEO characterizing consequences as "objectively reasonable" to mean that GEO cannot actually argue that some disciplinary consequences were legitimate. That is detached from the text of GEO's proposal. Nothing in GEO's proposal has anything to do with the objective reasonableness of the consequences; it says only that "Serious harm" does not include legitimate consequences for the person's conduct," properly training the inquiry on the relationship of the consequence to the underlying conduct rather than suggesting that a consequence is *per se* legitimate. Surely that is appropriate under the Court's ruling. Plaintiffs' unexplained contention that the instruction is a "far cry from the distinction discussed in" the case law is likewise incorrect. In *Headley v. Church of Scientology International*, 687 F.3d 1173 (9th Cir. 2012), the court made the very point that a person's conduct determines whether the consequence was legitimate—for example, "a church is entitled to stop associating with someone who abandons it." *Id.* at 1180. Not only that, but the Court concluded that the legitimacy of a consequence bears *both* on whether "serious harm" *or* a "threat" under the TVPA has occurred, *see id.* ("The former is a legitimate consequence, the latter a legitimate warning"), rejecting Plaintiffs' suggestion to the contrary.

4. It is irrelevant that GEO's proposed definition of "threat" derives from a criminal case involving First Amendment rights. The definition approved by the Tenth Circuit in *United*

*States v. Dysart*, 705 F.2d 1247 (10th Cir. 1983), had nothing to do with the specific facts of the case, but instead set forth the term's ordinary meaning—a meaning that Plaintiffs *do not dispute*. Plaintiffs simply point out that *Dysert* involved questions about a "true threat," conveniently ignoring that the jury received a separate instruction on that term. *See id.* at 1256. Lacking any substantive objection to the definition, Plaintiffs resort to dismissing it as unnecessary because "threat" is an "ordinary English word" understood by "most laypeople." That juries routinely receive an instruction on that term—including in *Dysart*—belies that assertion. Any ambiguity should be eliminated by a clear instruction, not left to chance on the assumption that jurors will uniformly adopt the same "ordinary" meaning. Similarly, as explained above, the reference to legitimate consequences is entirely appropriate because "threats" under the TVPA do not include "legitimate warning[s]." *Headley*, 678 F.3d at 1180. Again, nothing in the instruction suggests a "reasonableness" component, as Plaintiffs argue.

**PLAINTIFFS' COUNTER-PROPOSED INSTRUCTION NO. 3.1**

**CLAIM ONE: FORCED LABOR[35]**

I will now instruct you on Plaintiffs' claims.

To prove their forced labor claims, the Plaintiffs must prove by a preponderance of the evidence that GEO knowingly obtained labor or services from the detainees through one or more of the following:

1. By physically restraining or threatening to physically restrain them;
2. By seriously harming them or threatening them with serious harm; or
3. Through a pattern of conduct intended to cause the detainees to believe that they would suffer harm or physical restraint if they did not provide labor or services.

The Plaintiffs argue that GEO threatened detainees with solitary confinement if they did not participate in daily cleaning details, and that solitary confinement is both a physical restraint and a serious harm. They also argue that GEO did impose solitary confinement in some cases, and that its conduct was intended to cause detainees to believe they would suffer physical restraint or serious harm if they did not work in cleaning details.

You do not need to agree on whether solitary confinement is serious harm, physical restraint, or both; or on whether GEO's conduct also shows the pattern of conduct described

---

[35] Relevant authorities: Jury Instructions in *Kurian David, et al. v. Signal International LLC et. al.*, No. 2:08-cv-01220 (E.D. La. Feb. 10, 2015) ECF. No. 2309 ("*Signal* Instructions") at 17-20; 18 U.S.C. § 1589(c)(2); Jury Instructions in *U.S. v. Kalu*, No. 12-cr-00106 (D. Col. 2013) ECF No. 255 ("*Kalu* Instructions") at 32-34; Jury Instructions in *U.S. v. Dann*, No. 4:08-cr-00390 (N.D. Cal. Oct. 6, 2009) ECF No. 92 ("*Dann* Instructions") at 10-11; *U.S. v. Bradley*, 390 F.3d 145, 150 (1st Cir. 2004), *vacated on other grounds* 545 U.S. 1101 (2005) (immigrant status may make individual particularly vulnerable to pressure); *United States v. Nnaji*, 447 Fed. App'x. 558, 559 (5th Cir. Tex. 2011) (highlighting the inability of Plaintiff to speak English in ways Defendants took advantage of her vulnerabilities to coerce her to work).

above. If all of you find that GEO's conduct meets at least one of these elements, that is sufficient, so long as you all agree that GEO knowingly engaged in the conduct and obtained detainees' labor as a result.[36]

Here, "physical restraint" can include restraining someone who is already restrained, by restricting their movement further.

"Serious harm" can be physical or non-physical. It can include psychological harm, if it is serious enough to compel a reasonable person of the same background as the detainees, in the same circumstances as the detainees, to provide their labor to avoid that harm.

To decide if the harm was serious enough to compel a reasonable person to work, you should consider the nature and impact of the solitary confinement. You should consider the cumulative effect of the conduct of GEO and its employees on the detainees. You may consider the detainees' background, physical and mental condition, experience, education, socioeconomic status, and age. You may also consider any inequalities between the detainees and GEO, including differences in their relative stations in life, citizenship status, cultural background, language, social isolation, and social status.

The Plaintiffs do not need to prove that detainees were actually placed in segregation, because the law also prohibits the knowing use of threats and patterns of conduct to coerce people to work.

Whether a Plaintiff may have initially agreed, voluntarily, to do the work may be considered but does not determine whether GEO subjected them to forced labor.

---

[36] *See United States v. Barai*, 55 F.4th 1245, 1250 (9th Cir. 2022) (district court did not err in rejecting jury instruction that required jurors to agree on the means by which the defendant obtained labor).

**Geo's Objection To Plaintiffs' Counter-Proposed Instruction No. 3.1**

GEO objects to this instruction and submits that its GEO's Proposed Instruction No. 3.1 is more accurate and more closely follows this Court's approach to providing all definitions and elements for a claim in a single instruction.

GEO further objects to the highlighted references to "solitary confinement" as prejudicial, as set forth above, and proposes the neutral term "segregation" instead.

GEO also objects to the omission of any definition for the terms "obtain," "labor," "by means of," and "threat," the absence of which will only risk confusing the jury in deciding the issues. GEO refers to its Proposed Instruction No. 3.1 for those definitions and to its Response to Plaintiffs' Objection to GEO's Proposed Instruction No. 3.1 for argument about those terms. Further, GEO objects to the highlighted text directing the jury to consider alleged "inequalities" between Plaintiffs and GEO. While Plaintiffs' *status* as immigrants may bear on whether the harm was sufficiently serious, there is no authority for the notion that such status amounts to an "inequality," much less that "inequalities" are relevant to the inquiry.

GEO objects to the penultimate paragraph as superfluous. The instructions already require the jury to find actual *or threatened* segregation, and an additional instruction about the sufficiency of a threat adds nothing. The instruction thus amounts to improper argument. GEO also objects to the final paragraph as confusing and prejudicial. If a given class member's voluntary agreement to perform work *may* be considered, it makes no sense to instruct the jury that the agreement is nevertheless irrelevant.

**<u>Plaintiffs' Response To Geo's Objection</u>**

The authority for the proposition that the jury may consider inequalities between the parties to evaluate the seriousness of the harm is the text of 18 U.S.C. § 1589(c)(2) (seriousness turns on whether, "under all the surrounding circumstances," it would "compel a reasonable person of the same background and in the same circumstances" to work), as well as the authorities cited in Plaintiffs' footnote 39, particularly *U.S. v. Bradley*, 390 F.3d 145, 150 (1st Cir. 2004), *vacated on other grounds* 545 U.S. 1101 (2005) (immigrant status may make individual particularly vulnerable to pressure) and *United States v. Nnaji*, 447 Fed. App'x. 558, 559 (5th Cir. Tex. 2011) (highlighting the inability of Plaintiff to speak English in ways Defendants took advantage of her vulnerabilities to coerce her to work).

GEO's other objections are largely addressed elsewhere in this filing and those arguments need not be repeated here.

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 3.2**

**CLAIM ONE: FORCED LABOR – KNOWLEDGE AND INTENT**[37]

As I stated earlier, the Plaintiffs must prove by a preponderance of the evidence that GEO obtained labor through threats, or serious harm, or restraint, "knowingly." That means the Plaintiffs must show that GEO knew that detainees who did not clean were told they would be sent to solitary confinement, and that GEO knew it was obtaining their labor as a result. Here, you may consider GEO to have the combined knowledge of its employees.

"Knowledge" means more than acting out of ignorance, mistake, or accident. However, it does not require Plaintiffs to prove that GEO had a specific intent to violate the law. If you find that GEO committed a violation as part of its normal business practice, no further showing is required.

If you find that GEO engaged in a pattern of conduct that caused members of the Cleaning Class to believe they would suffer harm or restraint if they did not labor, then you must find that GEO intended to cause class members to have that belief. This means you must find that GEO had the purpose of causing detainees to believe they would suffer serious harm or restraint that would probably cause them to labor.

[37] Relevant authorities: ECF No. 380 (Order on Summary Judgment) at 67; *Dann* instructions at 11; *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011); Colorado Pattern Jury Instruction 20.3, "Intent To Place Another In Apprehension – Defined."

**Geo's Objection To Plaintiffs' Proposed Instruction No. 3.2**

GEO objects to this instruction and submits that its GEO's Proposed Instruction No. 3.1 is more accurate and more closely follows this Court's approach to providing all definitions and elements for a claim in a single instruction.

GEO maintains its objection to the highlighted reference to "solitary confinement" as prejudicial, as set forth above, and proposes the neutral term "segregation" instead. GEO further objects to the highlighted text in the second paragraph stating that "specific intent to violate the law" is not required, and that a violation as part of GEO's "normal business practice" suffices for TVPA liability. First, "specific intent to violate the law" is a non-sequitur, because TVPA liability requires intent to apply the "coercive pressures and its effects." *Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1156–57 (9th Cir. 2022). And second, no authority stands for the proposition that a violation should be measured in relation to a "normal business practice," an inherently vague term that Plaintiffs have not defined with any specificity. Finally, GEO objects to the highlighted term "probably cause," a requirement with no apparent basis in case law involving TVPA claims that would risk confusing the jury as to the requisite "probability."

**Plaintiffs' Response To Geo's Objection**

The term "solitary confinement" is a commonly used and accurate descriptor of the punishment Plaintiffs allege GEO used to threaten detainees. It is also the technical term that will be used by Dr. Grassian. GEO's objection to the term is a matter of semantic preference and unfounded.

As confirmed by the Court's October 20 order, ECF No. 583 at p. 6, the only component of the TVPA that requires a showing of intent is the "pattern of conduct" prong discussed under

Plaintiffs' Proposed Counter-Instruction No. 3.1 above. Plaintiffs have revised this instruction to reflect that element. This instruction as originally drafted is otherwise accurate. To establish knowledge, the jury may consider GEO to have "the combined knowledge of its employees and agents." ECF No. 380 at 67 (quoting 3 Fletcher Cyc. Corp. § 807). The "best test" of whether knowledge of a corporation's employees can be imputed to the corporation itself is "whether the conditions and facts known were within the sphere of the authority of the particular agent" or employee. 3 Fletcher Cyc. Corp. § 807. Instructing the jury that it can find GEO knowingly committed a TVPA violation if it committed the violation as part of its normal business practice is consistent with that standard. If the jury finds that GEO's normal business practices constituted a violation (ie its housing unit sanitation policy coupled with a list of consequences caused detainees to believe that they would be sent to solitary confinement if they did not provide labor), it follows that GEO's agents and employees had knowledge of those business practices within the sphere of their authority. In that context, the reference to "specific intent to violate the law" is not a non-sequitir; it is a statement of the opposite of the type of knowledge the jury must find and is included to clarify the meaning of normal business practice by drawing that contrast.

The phrase "probably cause" is drawn from Colorado Pattern Jury Instruction 20.3, "Intent To Place Another In Apprehension – Defined."

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 3.3**

**CLAIM ONE: FORCED LABOR – CAUSATION[38]**

If you find that GEO subjected, or threatened to subject, the detainees to physical restraint, serious harm, or the pattern of conduct described in my earlier instructions, and if you find that GEO did these things knowingly, then you must also consider whether GEO's actions caused the detainees to work as part of the daily cleaning detail.

This element is satisfied if you find that Plaintiffs have proved by a preponderance of the evidence that the detainees participated in the cleaning detail where they otherwise would have declined, as a result of the alleged conduct I have described. This does not require you to find that GEO's conduct was always successful in obtaining detainees' labor, so long as you find that it was at least initially successful, or was successful for a significant period of time.[39]

To decide whether GEO's actions caused detainees to work, you should also consider whether a reasonable person in the same circumstances as the detainees would have felt compelled to work by GEO's conduct. In doing so, you may consider all the circumstances, including the age, knowledge, and experience of the detainees. You may consider the nature and severity of the threats, restraint, or harm. You may consider whether the detainees had any opportunities to escape from the situation, as well as any other circumstances you consider relevant to deciding how a reasonable person in the same circumstances would respond.

---

38 Relevant authorities: ECF No. 380 (Order on Summary Judgment); *Kalu* instructions at 34; *see also United States v. Kalu*, 791 F.3d 1194, 1211-12 (10th Cir. 2015).

39 *See Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1156 (9th Cir. 2022) ("The fact that Funk Dairy's coercive pressures were not *indefinitely* successful in obtaining the sought-after nonprofessional labor from Plaintiffs would not preclude a jury from reasonably finding that it was *initially* successful for a significant period of time. That partial success is sufficient to establish the requisite causation as to the labor thereby obtained.").

**<u>Geo's Objection To Plaintiffs' Proposed Instruction No. 3.3</u>**

GEO objects to this instruction and submits that its GEO's Proposed Instruction No. 3.1 is more accurate and more closely follows this Court's approach to providing all definitions and elements for a claim in a single instruction.

**GEO'S PROPOSED INSTRUCTION NO. 3.4:**

**CLAIM TWO: UNJUST ENRICHMENT**[40]

Under Colorado law, a defendant has been unjustly enriched if it received a benefit at the plaintiff's expense under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation.

Whether the defendant's retention of the benefit would be "unjust" depends upon the particular facts of the case, such as the intentions, expectations, and behavior of the parties.[41] Good-faith reliance on perceived contractual requirements or other standards is relevant to whether retention of a benefit is unjust.

To help me decide whether Plaintiffs can recover against GEO for unjust enrichment, please determine whether Plaintiffs have proven all of the following by a preponderance of the evidence[42]:

1. That, between October 22, 2011 and October 22, 2014, GEO:

   a. GEO's performance of its contractual requirements relied on physical labor by detainees at AIPC performing janitorial, food service, laundry, and other work;

   b. The physical labor performed by detainees was necessary to the operation of AIPC; and

---

40 Because Plaintiffs' unjust-enrichment claim is equitable in nature, it is triable by the Court and not the jury. *Zokari v. Gates*, 561 F.3d 1076, 1086 (10th Cir. 2009).

41 *Menocal*, 882 F.3d at 923.

42 Joint Pretrial Order at 3–4; *Ninth Dist. Prod. Credit Ass'n v. Ed Duggan, Inc.*, 821 P.2d 788, 799 (Colo. 1991); *Walshe v. Zabors*, 178 F. Supp. 3d 1071, 1087 (D. Colo. 2016)*; see also Menocal*, 882 F.3d at 923.

c. GEO compensated that labor at a rate of $1 per day.

2. That GEO received a benefit at the expense of detainees at AIPC.

3. That GEO accepted the benefit under such circumstances that it would be unjust for GEO to retain the benefit.

I will take your findings into consideration and later render an appropriate ruling on the issue of unjust enrichment.

**Plaintiffs' Objections To Geo's Proposed Instruction No. 3.4**

Plaintiffs object to GEO continued efforts to argue that "relied on perceived contractual requirements" by ICE , which flies in the face of the Court's ruling that GEO "may not argue . . . . That GEO was required by its contracts with ICE to pay participants in the VWP no more than $1 per day. The Court has informed the Parties that "GEO's beliefs about its contractual obligations related to the VWP may be relevant for deciding whether GEO's retention of any benefit conferred by the class members is unjust," but cautioned that "the relevant evidence relates to GEO's perspective, not ICE's perspective or what was actually required under the contracts." ECF No. 583 at 9. GEO's language, which merely repackages GEO's arguments, revives GEO's *Yearsley* defense and tends to "contradict[] [the Court's] previous determinative findings in this case." *Id.* at 10.

Plaintiffs further object to GEO's articulation of the first prong of unjust enrichment. As correctly stated at the outset of the instruction, that prong asks whether the defendant received a benefit. While some of the facts GEO articulates in the enumerated part 1 are relevant to this matter, others are not, and are misleading; for example, whether GEO's "performance of its contractual requirements" relied on detainee labor tends to shift the focus away from the benefit,

and to GEO's contract with ICE, which the Court ruled is relevant only to the third element, whether retention of the benefit is unjust. ECF No. 583 at 9.. At worst, GEO's phrasing implies that it had no choice but to rely on detainee labor, which is a disputed point, and contrary to the record. This instruction would mislead the jury.

**<u>Geo's Response To Plaintiffs' Objections</u>**

GEO's "[g]ood-faith reliance on perceived contractual requirements or other standards" is directly relevant to the unjustness inquiry because it bears on GEO's intentions and expectations in paying detainees $1 per day. *See Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 923 (10th Cir. 2018). The jury cannot possibly conduct the requisite "fact-intensive inquiry" if the fact that GEO believed its compensation practices were required by its contract or other standards is excluded. *See id.* That the jury might credit that fact in its decision is not tantamount to granting GEO *immunity*, as Plaintiffs' arguments about *Yearsley* suggest. And indeed, as Plaintiffs recognize, the Court found GEO's perception of its contractual obligations relevant to the unjustness inquiry. Dkt. 538 at 9. The Court cautioned that only "ICE's perspective" is irrelevant, *id.*, and the proposed instruction does not even reference any governmental requirements—let alone *ICE's* perspective on their import. The instruction fully comports with the Court's ruling.

GEO is confused by Plaintiffs' objection to the "first prong," which merely tracks Plaintiffs' allegations in the Joint Pretrial Order. *See* Dkt. 540 at 4.

**PLAINTIFFS' COUNTER-PROPOSED INSTRUCTION NO. 3.4**

**CLAIM TWO: ADVISING ME WITH RESPECT TO UNJUST ENRICHMENT**[43]

Here, you will advise me.

Unjust enrichment is a claim that one party benefitted, unfairly, to the disadvantage of another party. Here, the detainees claim that GEO was unjustly enriched by paying them $1 per day for their participation in the voluntary work program.

For the detainees to recover from GEO on the unjust enrichment claim, you must find the following by a preponderance of the evidence:

1. That GEO received a benefit;
2. That GEO received the benefit at the detainees' expense; and
3. That under the circumstances, it would be unjust for GEO to retain that benefit without additional compensation to the detainees.

If you find that all three statements have been proved, then you must find for the detainees. If you find that any one or more of these statements has not been proved, then you must find for GEO.

In deciding whether the circumstances make it unjust for GEO to retain the benefit, you may consider the intentions, expectations, and behavior of the parties to determine whether recovery for unjust enrichment is appropriate. For example, you may consider whether GEO

[43] Relevant authorities: *Lewis v. Lewis*, 189 P.3d 1134, 1141, 1143 (Colo. 2008), *as modified on denial of reh'g* (Aug. 18, 2008); *Ciancio v. Adams Indus. Dev. Grp., LLC*, No. 23-CA-1380, 2024 WL 3897997, at *3 (Colo. App. June 20, 2024).

deviated from some mutual purpose or expectation of the detainees, resulting in its enrichment at their expense.[44]

I will take your findings into consideration and render an appropriate ruling on whether GEO was unjustly enriched.

[44] *See Lewis v. Lewis*, 189 P.3d 1134, 1140, 1142-43 (Colo. 2008), *as modified on denial of reh'g* (Aug. 18, 2008)

**<u>Geo's Objection To Plaintiffs' Counter-Proposed Instruction No. 3.4</u>**

GEO also objects to the highlighted language discussing deviation from a "mutual purpose or expectation of the detainees," a concept Plaintiffs have borrowed from a case explicitly limiting its holding to claims involving close family member or confidant, where there is a "commonality of purpose." *Lewis v. Lewis*, 189 P.3d 1134, 1143 (Colo. 2008). None of that is present in this case, where the respective "purposes" of the detainees and GEO differ greatly—not to mention that they lack a familial or confidential relationship. Giving such an instruction here would only confuse the issues and prejudice GEO.

**STIPULATED – INSTRUCTION NO. 3.5:[45]**

**AWARDING DAMAGES**

If you find in favor of Plaintiffs on their claims of forced labor under the Trafficking Victims Protection Act or unjust enrichment under Colorado law, then you must determine the damages or disgorgement to which Plaintiffs are entitled.

You should not interpret the fact that I have given instructions about Plaintiffs' damages to mean that I am instructing you to actually award damages. I am instructing you on damages only so that you will have guidance in the event you decide that GEO is liable and that Plaintiffs are entitled to recover money from GEO.

---

[45] Colorado Pattern Civil Jury Instruction No. 5:1.

**GEO'S PROPOSED INSTRUCTION NO. 3.6:[46]**

**CLAIM ONE: COMPENSATORY DAMAGES**

If you find in favor of Plaintiffs on their claim of forced labor under the Trafficking Victims Protection Act, then you must decide whether Plaintiffs are entitled to compensatory damages. Such damages are intended to make Plaintiffs whole and must not exceed the actual loss, if any, that Plaintiffs prove they suffered by a preponderance of the evidence as a result of GEO's actions. If you find in favor of Plaintiffs but do not find that they suffered any actual loss, then you shall award Plaintiffs "nominal" damages in the sum of one dollar.

46 *See BlueRadios* Instruction No. 3.6.

**Plaintiffs' Objection To Geo's Proposed Instruction No. 3.6**

The cited instruction from *BlueRadios, Inc. v. Kopin Corporation* bears no resemblance to GEO's proposed instruction. That instruction applies to a claim for breach of contract and the implied duty of good faith and fair dealing. It contains no limitation to the effect that the damages "must not exceed the actual loss, if any" that the Plaintiffs suffered. To the contrary, claims under the TVPA allow access to a broad range of remedies, *see Francisco v. Susano*, 525 F. App'x 828, 830 (10th Cir. 2013), and instructing the jury that it should limit remedies to "actual loss" would be prejudicial to, *e.g.*, claims for exemplary damages.

**Geo's Response To Plaintiffs' Objection**

Arguing against of blackletter law, Plaintiffs appear to take the position that compensatory damages are not limited to actual losses. That is incorrect. *See Burke v. Regalado*, 935 F.3d 960, 1041 (10th Cir. 2019) ("A claimant generally may not recover compensatory damages for more than actual loss."). Similarities to *BlueRadios* obviously cannot dictate the law applicable to Plaintiffs' demand for compensatory damages in this case. Nor does the TVPA's provision for a "broad range of remedies" somehow authorize unlimited compensatory damages. Plaintiffs' supposed concern that instructing the jury about actual loss will prejudice their claim for punitive damages is difficult to understand when punitive damages are measured *against* actual loss. *See Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1075 (10th Cir. 2016) (punitive damages must be "reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered" (citation omitted)). The absence of any guardrails on the amount of compensatory damages that can be imposed would severely prejudice GEO, not the other way around.

**PLAINTIFFS' COUNTER-PROPOSED INSTRUCTION NO. 3.6**
**CLAIM ONE: FORCED LABOR – DAMAGES**[47]

If you find that Plaintiffs have proved their forced labor claims, you may award damages. Plaintiffs seek compensatory and exemplary damages.

The purpose of compensatory damages is to make the person whole for the harms they suffered – here, that means to compensate detainees for their unpaid labor.

You may consider the value of Plaintiffs' labor to GEO, calculated as the prevailing wages and benefits that GEO would have paid non-detained individuals to do the same work.[48]

**Geo's Objection To Plaintiffs' Counter-Proposed Instruction No. 3.6**

GEO objects to this instruction as vague in its explanation of the purpose of compensatory damages. Such damages are not intended to merely compensate for "harms" that were "suffered," but rather "actual losses," as explained in the Response to Plaintiffs' Objection to GEO's Proposed Instruction No. 3.7. The absence of such specificity risks confusing the issues and prejudicing GEO.

47 Relevant authorities: *Signal* Instructions at 21-22; *see also* 18 U.S.C. § 1595(a); *Arreguin v. Sanchez*, 398 F. Supp. 3d 1314, 1326-29 (S.D. Ga. 2019).

48 *See Francisco v. Susano*, 525 F. App'x 828, 835 (10th Cir. 2013) ("there is nothing inappropriate in requiring those who have engaged in or benefited from forced labor to rectify the wrong by compensating the victim at the prevailing wage rate for the work done").

**STIPULATED[49] – INSTRUCTION NO. 3.7:[50]**

**CLAIM ONE: PUNITIVE DAMAGES – LIABILITY**

If you find in favor of Plaintiffs on their claim of forced labor, then you may also decide whether to award punitive damages in addition to compensatory damages. Punitive damages are awarded to punish the wrongdoer for some grossly wrong misconduct and to serve as an example or warning to others not to engage in such conduct.

To award punitive damages, you must find that Plaintiffs have proven by a preponderance of the evidence that GEO acted with reckless or callous disregard or indifference to detainees' rights or safety. In other words, GEO must have consciously disregarded a substantial and unjustifiable risk of harm to detainees.

If you find by a preponderance of the evidence that GEO engaged in reckless conduct or with callous disregard or indifference, then a second phase of the trial will commence in which you may determine an amount of punitive damages.

[49] GEO maintains it previous objections set forth in prior jury instruction submissions.

[50] Colorado Pattern Civil Jury Instruction No. 5:4; *BlueRadios* Instruction No. 3.19.

**GEO'S PROPOSED INSTRUCTION NO. 3.8:[51]**

**CLAIM ONE: PUNITIVE DAMAGES – AMOUNT**

Punitive damages are intended to punish rather than compensate, and to serve as an example or warning to others not to engage in such conduct.

The damages cannot be greater than reasonably necessary to accomplish those purposes.[52] In determining whether an amount of punitive damages is reasonably necessary for punishment, you must account for the reprehensibility of the conduct at issue.[53] You may take into account GEO's financial resources, circumstances, conditions, and net worth.[54] You may also consider whether the harm caused was physical or economic; whether the conduct reflected an indifference to or reckless disregard of the health or safety of others; whether the target of GEO's conduct—here, the detainees—were financially vulnerable; whether the conduct involved repeated actions rather than an isolated event; and whether the conduct involved intentional malice, trickery, or deceit rather than mere accident.[55] The amount of damages should not be based on potential or actual harm to third parties not before the court.[56] The amount must also be reasonable in light of the amount of the amount of compensatory damages awarded,[57] and should not exceed that amount.[58]

---

51 To be given only if a second phase of the trial is held.

52 *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1065 (10th Cir. 2016).

53 *Burke v. Regalado*, 935 F.3d 960, 1037 (10th Cir. 2019).

54 *Crisostomo v. Kuhn Mgmt., Inc.*, No. 606-CV-1914-ORL-22-UAM, 2008 WL 11336638, at *3 (M.D. Fla. Sept. 25, 2008) ("It is settled law that the jury may consider the financial resources of Defendant in fixing the amount of punitive damages) (internal citations omitted).

55 *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

56 *Philip Morris USA v. Williams*, 549 U.S. 346 (2007).

57 *State Farm*, 538 U.S. at 425.

58 *State Farm*, 538 U.S. at 428 (punitive awards must be reasonable in light of the civil penalties "authorized or imposed in comparable cases); *see also Solano v. Preciado*, 738 F.

**<u>Plaintiffs' Objection to GEO's Proposed Instruction No. 3.8</u>**

GEO's statement that punitive damages "cannot be greater than reasonably necessary" to accomplish their deterrent purpose is a standard that courts apply in evaluating the reasonableness and proportionality of a jury's award of compensatory damages. *See Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1065 (10th Cir. 2016). It is not appropriate for a jury instruction. The same objection applies to other statements in GEO's proposed instructions. The statement that punitive damages must "account for the reprehensibility of the conduct" invokes the standard for post-trial review of a jury's award, *see Burke v. Regalado*, 935 F.3d 960, 1037 (10th Cir. 2019), as does GEO's statement that the "amount must also be reasonable in light of the amount of the amount of compensatory damages awarded, and should not exceed that amount." These recitations of the standard for post-trial review of a punitive damages award invoke a legal analysis that is not intended for a jury's consideration.

Plaintiffs further object to the reference to "harm to third parties not before the court," which would be misleading to the jury in a class action case such as this one. Absent class members are not "before the court" in the technical sense, but GEO's conduct toward them is central to evaluating the scope of the harms caused by GEO's conduct, in contrast to, *e.g.*, a single-plaintiff wrongful death case. *See Philip Morris USA v. Williams*, 549 U.S. 346, 349 (2007).

---

Supp. 3d 1356, 1369–70 (D. Or. 2024) (collecting cases approving no more than a 1:1 ration of punitive to compensatory damages).

**Geo's Response To Plaintiffs' Objection**

Plaintiffs' objections do not take issue with the accuracy of the instructions on the relevant considerations for calculating the amount of punitive damages. They simply offer the proposition that those issues are for the Court to decide rather than the jury, citing three cases that say no such thing. In fact, instructions about the reasonableness of a punitive-damages award and the reprehensibility of the underlying conduct are entirely appropriate. *Truesdell v. Thomas*, 889 F.3d 719, 727 (11th Cir. 2018) (affirming instructions that punitive damages must "bear a reasonable relationship to the amount of compensatory damages" and that the jury must consider the "gravity and extent" of the misconduct). An instruction on disregarding harm to third parties is even more important, as its absence raises due-process problems. *White v. Ford Motor Co.*, 500 F.3d 963, 972 (9th Cir. 2007). The class-action context changes nothing, irrespective of any potential confusion about "[a]bsent class members." In any event, such confusion can easily be cured by a clarifying instruction about harm to those individuals factoring into the jury's decision. Finally, because punitive damages must be reasonable in light of the civil penalties authorized in comparable cases, an instruction limiting any award to a 1:1 ratio—the amount in comparable cases—is appropriate. *Solano v. Preciado*, 738 F. Supp. 3d 1356, 1369–70 (D. Or. 2024) (collecting cases).

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 3.9**

**CLAIM ONE – FORCED LABOR – EXEMPLARY DAMAGES – AMOUNT**[59]

You must now decide what amount of monetary damages is sufficient to fulfill the purposes of punishing GEO's wrongdoing and setting an example for other potential wrongdoers.

In setting the amount of punitive damages, you should consider the nature of GEO's conduct. You may take into account GEO's financial resources, circumstances, conditions, and net worth to decide what kind of award would constitute a punishment.[60] And you may consider whether the target of GEO's conduct—here, the detainees—were financially vulnerable.[61]

---

59 To be given only if a second phase of the trial is held.

60 *Crisostomo v. Kuhn Mgmt., Inc.*, No. 606-CV-1914-ORL-22-UAM, 2008 WL 11336638, at *3 (M.D. Fla. Sept. 25, 2008) ("It is settled law that the jury may consider the financial resources of Defendant in fixing the amount of punitive damages) (internal citations omitted).

61 *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 901 F.3d 1282, 1288 (11th Cir. 2018) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 576 (1996)).

**GEO'S PROPOSED INSTRUCTION NO. 3.9:**[62]

**CLAIM TWO: DISGORGEMENT**[63]

If you find in favor of Plaintiffs on their claim of unjust enrichment under Colorado law, then you must advise me on whether Plaintiffs are entitled to "disgorgement." Disgorgement is measured by GEO's wrongful gain, if any, that is attributable to Plaintiffs' labor. To be awarded disgorgement, Plaintiffs must prove by a preponderance of the evidence the amount of any uncompensated monetary benefit that GEO received from Plaintiffs' labor and that GEO acted intentionally.

I will take your findings into consideration and later render an appropriate ruling on the issue of disgorgement.

**Plaintiffs' Objection To Geo's Proposed Instruction No. 3.9**

Plaintiffs object to GEO's insertion of an intent requirement into the disgorgement inquiry. The disgorgement remedy does not generally turn on a requirement of intent, but rather serves the "function of . . . undo[ing] the unjust enrichment" wrought by the defendant. *BlueRadios, Inc. v. Kopin Corp.*, No. 16-CV-02052-JLK, 2025 WL 2886547, at *13 (D. Colo. Sept. 4, 2025)

**Geo's Response To Plaintiffs' Objection**

Plaintiffs' objection ignores that this Court required "intentional" wrongdoing for disgorgement in *BlueRadios*, exactly as GEO proposes here. That disgorgement is intended to undo unjust enrichment does not render an intent requirement improper.

---

62 *BlueRadios* Instruction No. 3.7.

63 As an equitable remedy, Plaintiffs' request for disgorgement is triable by the Court and not the jury. *Zokari*, 561 F.3d at 1086.

**PLAINTIFFS' COUNTER-PROPOSED INSTRUCTION NO. 3.9**

**CLAIM TWO: UNJUST ENRICHMENT – ADVISING ME WITH RESPECT TO REMEDIES**[64]

Here, you will advise me.

If you find that the detainees were unjustly enriched at GEO's expense, then you must decide how much compensation GEO owes to the members of the Work-Program Class.

When a party has been unjustly enriched, the injured party is entitled to recover the value of the benefit that it conferred on the other party. If you find that GEO was unjustly enriched, then you must decide the market value of the labor that the detainees provided to GEO over the three-year class period for the Work-Program Class.

The detainees' burden is to offer a reasonable estimate of the market value of their labor. They are not required to prove an exact amount. Any uncertainty in the calculation should not be used to deny recovery and should be resolved against GEO.

I will take your findings into consideration and render an appropriate ruling on the issue of remedies.

---

64 Relevant authorities: Restatement (Third) of Restitution and Unjust Enrichment § 49 (2011); *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008), *as modified on denial of reh'g* (Aug. 18, 2008) ("The proper remedy upon a finding of unjust enrichment is to restore the harmed party to the position he formerly occupied either by the return of something which he formerly had or by the receipt of its monetary equivalent." (cleaned up)); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562-65 (1931) (holding that the value of recovery may be established through "just and reasonable inference, although the result be only approximate" and that "the risk of the uncertainty should be thrown upon the wrongdoer"); *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264-65 (1946) (approving a "just and reasonable estimate" of damages and holding that "the wrongdoer shall bear the risk of the uncertainty which his own wrong has created"); *DeVries v. Starr*, 393 F.2d 9, 19-22 (10th Cir. 1968) ("mathematical exactness" is not required, and the evidence need only provide a "reasonable approximation").

**Geo's Objection To Plaintiffs' Counter-Proposed Instruction No. 3.9**

GEO objects to the instruction that the amount of disgorgement is measured by the "market value of the labor that the detainees provided." Only the amount that was *wrongfully* gained is subject to disgorgement, and the market value does not automatically equate to that amount—especially in a case like this, where Plaintiffs have uncertain immigration status and cannot lawfully render labor at a market value.

In the final paragraph, GEO objects to the instruction that any "uncertainty" cannot be "used to deny recovery" and should be "resolved against GEO." None of Plaintiffs' cited authorities remotely support such a proposition. Indeed, neither *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931), nor *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946), even involved claims for unjust enrichment, much less announced a categorical rule that uncertainties must be resolved against the wrongdoer. And while Plaintiffs cite *United States v. RaPower-3, LLC*, 960 F.3d 1240 (10th Cir. 2020), in their instruction on disgorgement below, that case resolved uncertainties against the wrongdoer based on the case's specific facts. The court explained that the defendants were *at fault* for the uncertainty because they had maintained ambiguous records. Not only that, but the court cited the defendant's "obstruction of discovery" and "decision not to put on any evidence or call any witnesses who could have helped the court reach a more precise estimate of their receipts or any legitimate expenses." Nothing like that has happened here such that, in effect, GEO should be subject to an adverse inference. Plaintiffs plainly bear the burden of proving their claims, short of GEO engaging in some misconduct—which it has not done.

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 3.10**

**CLAIM TWO: UNJUST ENRICHMENT – DISGORGEMENT[65]**

If you find that GEO was unjustly enriched, then you must also advise me on whether the market value of the detainees' labor is enough to remedy the unjust enrichment.

In some cases, the loss to one party has the same value as the benefit to the other party. However, if you find that the benefit to GEO was greater than the amount of the detainees' loss, then instead of focusing on the value of the detainees' labor, you must focus on the gain to GEO.

If you find that GEO received a benefit from the detainees' labor that was greater than the market value of the labor, then the detainees are entitled to recover the portion of GEO's profits from the Aurora facility that resulted from detainees' labor.

In deciding how much GEO was enriched by the detainees' labor, the detainees' burden is to provide a reasonable basis for estimating GEO's profits from the Aurora facility. The detainees are not required to prove an exact amount. GEO may present evidence showing that some portion of its profit was attributable to factors other than the detainees' labor. Any remaining uncertainty in the calculation should not be used to deny recovery and should be resolved against GEO.

I will take your findings into consideration and render an appropriate ruling on the issue of disgorgement.

---

[65] Relevant authorities: Restatement (Third) of Restitution and Unjust Enrichment § 51(5)(d); *United States v. RaPower-3, LLC*, 960 F.3d 1240, 1251-53 (10th Cir. 2020) (affirming disgorgement award based on "reasonable approximation" and holding that defendants "bore the risk of uncertainty"); *Ciancio v. Adams Indus. Dev. Grp., LLC*, No. 23-CA-1380, 2024 WL 3897997, at *4 (Colo. App. June 20, 2024); *Engel v. Engel*, 902 P.2d 442, 445 (Colo. App. 1995); *Blueradios Inc. v. Kopin Corp.*, No. 16 Civ. 2052 at ECF No. 634-1 (D. Colo. Jan. 12, 2024) (Instruction No. 3.7).

**<u>Geo's Objection To Plaintiffs' Proposed Instruction No. 3.10</u>**

For the same reasons set forth in GEO's objection to Plaintiffs' Proposed Instruction No. 3.11, GEO objects to this instruction's references to the "market value" of the detainees' labor and discussion of "uncertainty." GEO further objects to the second paragraph as confusing and likely to mislead the jury. In the third and fourth paragraphs, GEO objects to the unqualified references to its "profits," which are admissible under federal law solely for purposes of calculating punitive damages, *Whitely*, 719 F.2d at 1055, and which are the subject of this Court's rulings limiting the scope of financial information to be presented to the jury. The instruction effectively asks the jury to look at GEO's overall profits and work backwards to find the amount subject to disgorgement, but that would just invite the jury to overinflate the number based on its views about GEO's overall profitability. That risk is deeply prejudicial.

## *SECTION 4.0: FINAL INSTRUCTIONS*

**STIPULATED – INSTRUCTION NO. 4.0:[66]**

**GENERAL FINAL INSTRUCTIONS**

Now that you have heard the evidence and the parties' arguments, it is your duty to find the facts from all the evidence in the case. And to those facts, you must apply and follow the laws contained in these instructions, whether you agree with them or not. If there is any difference between the law stated by the lawyers and the law in these instructions, you are governed by my instructions. You must follow all of these instructions and not single out some and ignore others; they are all equally important. The decision you reach by applying the law in these instructions to the facts as you find them is called a verdict.

You must not read into these instructions or into anything I say or do any suggestions as to what verdict you should return. Your verdict is a matter entirely for you to decide. You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, bias, or public opinion. All parties expect that you will carefully consider all the evidence, follow the law in these instructions, and reach a just verdict, regardless of the consequences. You have taken an oath promising to do so.

**STIPULATED – INSTRUCTION NO. 4.1:**

**JURY – PROCEDURES[67]**

In a moment, you will be taken to the jury room so you can begin your discussions on the verdict. You will have a copy of the instructions and verdict form, and any exhibits I allowed will also be in the jury room for you to review. The original exhibits are a part of the court record. Do not place any marks or notes on them. Your copy of the instructions may be marked or used in any way you see fit.

When you go to the jury room, you must choose one of you to serve as your Presiding Juror. He or she will direct your discussions and speak for you here in court. You will then talk about the case with your fellow jurors to try to reach an agreement. Your verdict must be unanimous, meaning you must all completely agree.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it with the other jurors, and listened to their views. I offer some suggestions on how you might do this in the next jury instruction, entitled "Jury—Deliberations."

One thing you should do in your discussions is follow these jury instructions and the verdict form. Not only will you be more productive if you understand the legal standards, but for a verdict to be valid, you must follow the instructions during your discussions. Remember, you are judges of the facts, but you have to obey your oath to follow the law stated in these instructions. Your talks will be secret. You will never have to explain your verdict to anyone.

---

[67] Judge Kane's Sample Instruction No. 4.1.

**STIPULATED – INSTRUCTION NO. 4.2:**[68]

**JURY – DELIBERATIONS**

Once you have elected your Presiding Juror as directed by the previous instruction, you can move forward as you agree you should. I am not telling you how to proceed, but I offer the following suggestions that other juries have found helpful. They should help you move forward in an orderly way with each juror fully taking part so that you can arrive at a verdict that is satisfactory to each of you.

First, it is the responsibility of the Presiding Juror to encourage good communication and participation by all jurors and to maintain fairness and order. Your Presiding Juror should be able to make your discussions useful even when jurors cannot agree. Second, the Presiding Juror should let each of you speak and be heard before stating his or her own views.

Third, the Presiding Juror should not try to promote or permit anyone else to promote his or her personal opinions by pressuring, intimidating, or bullying others.

Fourth, the Presiding Juror should make certain that discussions are not rushed to reach a conclusion.

If the Presiding Juror you select does not meet these standards, he or she should voluntarily step down or should be replaced by a majority vote.

After you select a Presiding Juror you should think about choosing a secretary to tally the votes, help keep track of who has or hasn't spoken on each issue, to make sure everyone is there during the discussions, and to otherwise help the Presiding Juror.

---

68 Judge Kane's Sample Instruction No. 4.2.

Some juries are tempted to start by holding a preliminary vote on the case to "see where we stand." It is better, however, not to vote until a full discussion is had on the issue, otherwise you might lock yourself into a certain view before thinking about the other and possibly more reasonable interpretations of the evidence. Experience has also shown that such early votes often cause disruptive, inefficient debate and ineffective decision-making.

Instead, I suggest the Presiding Juror begin your discussions by getting you to create informal rules for how you will proceed. These rules should assure that you will focus on, analyze, and evaluate the evidence fairly and efficiently and that each of your views is heard and considered before any decisions are made. No one should be ignored. You may agree to discuss the case in the order of the questions presented in the special verdict form or in chronological order or based on the testimony of each witness. Whatever order you select, however, it is advisable to be consistent and not jump from one topic to another.

To move the process along in the event you reach a controversial issue, it is wise to pass it temporarily and move on to less controversial ones and then come back to it. You should then continue through each issue in the order you have agreed upon unless a majority of you agrees to change the order.

It is helpful for votes to be taken by secret ballot, as it helps you to focus on the issues and not be overly influenced by others. Each of you should also consider any disagreement you have with another juror or jurors as an opportunity to improve your decision. You should treat each other with respect. Any differences in your views should be discussed calmly and, if a break is needed for that purpose, it should be taken. As I mentioned at the beginning of this trial, each

of you is responsible for making sure that no juror bases a decision on matters that are not evidence.

Each of you should listen attentively and openly to one another before making any judgment. This is sometimes called "active listening" and it means that you should not listen with only one ear while thinking about a response. Only after you have heard and understood what the other person is saying should you think about a response.

Obviously, this means that, unlike TV talk shows, you should try very hard not to interrupt. If one of you is going on and on, it is the Presiding Juror who should suggest that the point has been made and it is time to hear from someone else.

You each have a right to your own opinion, but you should be open to others. When you focus your attention and best listening skills, others will feel respected and, even while they may disagree, they will respect you. It helps if you are open to the possibility that you might be wrong or at least that you might change your mind about some issues after listening to other views.

Not understanding each other can hurt your efforts. Ask for clarification if you do not understand or if you think others are not talking about the same thing. From time to time the Presiding Juror should set out the items on which you agree and those on which you have not yet agreed. In the rare case that a juror is not following the Court's instructions or complying with the juror's oath, the Presiding Juror should alert the Court by sending a note as explained in Instruction No. 4.3.

Even with all your efforts, it is still possible that there may be serious disagreements. In that happens, realize and accept that "getting stuck" is often part of the decision-making process. It is easy to fall into the trap of believing that there is something wrong with someone who is not

ready to move on. Thinking that way is not helpful. It can lead to focusing on personalities rather than the issues. It is best to be patient with one another. At such times, slower is usually faster.

There is a tendency to set deadlines and try to force decisions. Taking a break or more time, however, often helps shorten the overall process.

Every once in a while, it is a good idea for you all to express your mutual respect for each other and to repeat your commitment to work through any differences. Then, you will most likely decide a verdict that leaves each of you satisfied that you achieved justice.

**STIPULATED – INSTRUCTION NO. 4.3:**[69]

**COMMUNICATIONS WITH THE JUDGE**

If it becomes necessary during your discussions to communicate with me, you may send a folded note through the Court Security Officer, signed by one of you. Do not reveal the content of your note to the Court Security Officer. No member of the jury should try to communicate with me except by signed writing; and I will only communicate with any member of the jury on anything concerning the case in writing or orally here in open court. You should never reveal to me, the Court Security Officer, or anyone else not on the jury where you stand or what your vote might be until after you have reached your verdict or I have let you go. If you send a note to me with a question or request for further direction, please think about how a response takes a lot of time and effort. Before giving an answer or direction I must first tell the attorneys and bring them back to the court. I must discuss the note with them, listen to arguments, research the law, if necessary, and reduce the answer or direction to writing.

There may be some question that, under the law, I am not permitted to answer. If I cannot answer the question, I will tell you that. Please do not guess about what the answer to your question might be or why I am not able to answer a particular question. In some instances jurors request that certain testimony be read to them. This cannot be done as it is inappropriate for the court to single out testimony. You must rely on your own memory.

69 Judge Kane's Sample Instruction No. 4.3.

## STIPULATED – INSTRUCTION NO. 4.4:[70]

## UNANIMOUS AGREEMENT AND JURY VERDICT FORM

To help you, we have given you each copies of a document called a Jury Verdict Form. After you reach a verdict, the Presiding Juror will mark the answers agreed to by each and every juror in the spaces on the Original Jury Verdict Form. You must reach unanimous agreement on each question you answer on the Form.

There are two claims in this case. Plaintiffs have presented evidence under multiple theories for each of its claims that you must now assess. Each section on the Verdict Form represents one of Plaintiffs' theories under each of its given claims.

Once you have completed the Original Jury Verdict Form, the Presiding Juror should date the Form, sign it, and then the rest of you should sign it. When you are done, the Presiding Juror should tell the Court Security Officer who is outside the jury room that you have reached a verdict, but do not tell the Court Security Officer what your verdict is. The Court Security Officer will then inform me that you have reached a verdict.

---

70 Judge Kane's Sample Instruction No. 4.4.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-02887-JLK-CYC

---

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA, and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

Plaintiffs,

v.

THE GEO GROUP, INC.,

Defendant.

---

**PLAINTIFFS' PROPOSED VERDICT FORM**

---

<u>Claim 1: Forced Labor</u>

1. Did Plaintiffs prove by a preponderance of the evidence that GEO knowingly obtained detainees' labor by **any** of the following means:[71]

a. physical restraint;
b. threats of physical restraint;
c. serious harm;
d. threats of serious harm; or
e. a pattern of conduct intended to cause detainees to believe they would suffer serious harm or physical restraint if they did not provide labor

---

[71] *See* instructions 3.1, 3.2, and 3.3.

____ YES _____ NO

*If you answered "Yes" to Question 1, proceed to Question 2. Otherwise, proceed to Question 5.*

2. State the value of the labor done by detainees who participated in the daily cleaning details:[72]

$________________

3. Do you find that GEO acted toward the detainees with reckless or callous disregard or indifference to their rights or safety?[73]

____ YES _____ NO

Claim 2: Unjust Enrichment

5. Did Plaintiffs prove by a preponderance of the evidence that GEO benefitted at the detainees' expense from the work done in the $1/day work program?[74]

____ YES _____ NO

*If you answered "Yes" to Question 5, proceed to Question 6. Otherwise, proceed no further.*

6. Did Plaintiffs prove by a preponderance of the evidence that it would be unjust under the circumstances for GEO to retain the benefit it received from detainees in the Unjust Enrichment Class?[75]

*If you answered "Yes" to Question 6, proceed to Question 7. Otherwise, proceed no further.*

---

[72] *See* instruction 3.6.

[73] *See* instruction 3.7.

[74] *See* instruction 3.4.

[75] *See* instruction 3.4.

7. State the value of the benefit GEO received from the detainees in the Unjust Enrichment Class:[76]

$________________

8. Do you find that GEO received a greater benefit from detainee labor than the amount stated in response to Question 7?[77]

____ YES _____ NO

*If you answered "Yes" to Question 8, proceed to Question 9.*

9. State the estimated amount of GEO's profits from October 22, 2011 through October 22, 2014:[78]

$________________

10. State the portion of the profits stated in answer to Question 9 that GEO showed were attributable to factors other than the detainees' labor:[79]

_______ %

Your deliberations are complete. The foreperson should sign and date this verdict form.

___________________________________
[Signature of Jury Foreperson]

___________________________________
[Printed Name of Jury Foreperson]

Dated at Denver, Colorado this ____ day of November, 2026, at ____ a.m./p.m.

---

76 *See* instruction 3.9.

77 *See* instruction 3.10.

78 *See* instruction 3.10.

79 *See* instruction 3.10.

Question for Phase 2, if required:

1. State the amount of exemplary damages, if any, that you award to the Forced Labor Class:[80]

$_________________

[80] *See* instruction 3.9.

**Geo's Objections To Plaintiffs' Proposed Verdict Form.**

other deficiencies, the proposed form fails to properly set forth the elements of Plaintiffs' claims and the remedies they seek, and it omits GEO's affirmative defenses. GEO recognizes that the verdict form may require revision following the Court's rulings on the parties' respective objections to the proposed jury instructions. At that time, GEO will submit an amended proposed verdict form consistent with the Court's rulings.

Accordingly, GEO respectfully requests that the Court determine the content and sequence of the verdict form after resolving the parties' objections to the proposed jury instructions and afford the parties an opportunity to revise their respective proposed verdict forms accordingly.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:14-cv-02887-JLK-CYC

ALEJANDRO MENOCAL,
MARCOS BRAMBILA,
GRISEL XAHUENTITLA,
HUGO HERNANDEZ,
LOURDES ARGUETA,
JESUS GAYTAN,
OLGA ALEXAKLINA,
DAGOBERTO VIZGUERRA and
DEMETRIO VALERGA,
on their own behalf and on behalf of all others similarly situated,

Plaintiffs,

v.

THE GEO GROUP, INC.

Defendant.

---

**DEFENDANT'S PROPOSED VERDICT FORM**

---

**To the jury:** You are instructed to answer the following questions. You must apply the law in the instructions that the Court gave you to the facts that were proved by the evidence. You must all agree on your answer to each question.

We, the jury, present our answers to the following questions submitted by the Court, to which we have all agreed:

**<u>CLAIM ONE: TRAFFICKING VICTIMS PROTECTION ACT</u>**

**QUESTION NO. 1:** Did Plaintiffs prove by a preponderance of the evidence that GEO knowingly obtained labor or services from detainees housed at AIPC between October 22, 2004 and October 22, 2014, through use of one of the following means:

Threatened detainees with segregation due to refusing to clean the common areas of the units in which they were housed?

**Yes______ No______**

Placed detainees in segregation due to refusing to clean the common areas?

**Yes______ No______**

Engaged in a pattern of conduct intended to cause the detainees to believe that they would face segregation if they did not clean the common areas?

**Yes______ No______**

If you answered "Yes" to either of the above, proceed to question 2. If you answered "No" to both of the above, skip to Claim Two.

**QUESTION NO. 2:** Did Plaintiffs prove by a preponderance of the evidence that placing detainees in segregation due to refusing to clean common areas of housing units amounts to physical restraint or serious harm?

**Yes______ No______**

If you answered "Yes," proceed to question 3. If you answered "No," skip to Claim Two.

**QUESTION NO. 3:** Did Plaintiffs prove by a preponderance of the evidence that GEO's threatened or actual use of segregation actually caused Plaintiffs to render labor?

**Yes______ No______**

If you answered "Yes," proceed to question 4. If you answered "No," skip to Claim Two.

**QUESTION NO. 4:** If you have found that Plaintiffs proved all elements listed above, state the amount of actual losses caused by GEO's conduct that Plaintiffs proved by a preponderance of the evidence. If nothing, state $1.

**Compensatory damages (Instruction No. 3.4): $____________**

Proceed to question 5.

**QUESTION NO. 5:** Did Plaintiffs prove by a preponderance of the evidence that GEO acted with reckless or callous disregard or indifference to detainees' rights or safety?

**Yes______ No______**

Proceed to Claim Two.

## CLAIM TWO: UNJUST ENRICHMENT

**QUESTION NO. 1:** Did Plaintiffs prove by a preponderance of the evidence that, between October 22, 2011 and October 22, 2014, all the following occurred:

GEO bid on and won contracts from the Department of Homeland Security to operate AIPC?

**Yes______ No______**

Those contracts relied on physical labor by detainees at AIPC performing janitorial, food service, laundry, and other work?

**Yes______ No______**

The physical labor performed by detainees was necessary to the operation of AIPC?

**Yes______ No______**

GEO compensated that labor at a rate of $1 per day?

**Yes______ No______**

If you answered "Yes" to all of the above, proceed to question 2. If you answered "No" to any of the above, do not answer any further questions, and sign this verdict form.

**QUESTION NO. 2:** Did Plaintiffs prove by a preponderance of the evidence that GEO received a benefit at the expense of detainees at AIPC?

**Yes______ No______**

If you answered "Yes," proceed to question 3. If you answered "No," do not answer any further questions, and sign this verdict form.

**QUESTION NO. 3:** Did Plaintiffs prove by a preponderance of the evidence that, under all the circumstances, GEO accepted the benefit in a manner that would make it unjust for GEO to retain the benefit?

**Yes______ No______**

If you answered "Yes," proceed to question 4. If you answered "No," do not answer any further questions, and sign this verdict form.

**QUESTION NO. 4:** Did Plaintiffs prove by a preponderance of the evidence that GEO acted intentionally?

**Yes______ No______**

If you answered "Yes," proceed to question 5. If you answered "No," do not answer any further questions, and sign this verdict form.

**QUESTION NO. 5:** If you have found that Plaintiffs proved all elements listed above, state the amount of disgorgement, if any, that you recommend for GEO's unjust enrichment.

**Disgorgement (Instruction No. 3.7): $____________**

Proceed to question 6.

**QUESTION NO. 1[81]:** State the amount of punitive damages that you recommend for GEO's conduct.

**Punitive damages (Instruction No. 3.5):** **$____________**

Sign this verdict form.

[81] To be given only if a second phase of the trial is held.

**<u>Plaintiffs' Objections To Geo's Proposed Verdict Form.</u>**

<u>Objections to Claim One, Question No. 1</u>: Plaintiffs object that the jury need not reach a unanimous verdict on the means by which GEO knowingly coerced detainees' labor. *See United States v. Barai*, 55 F.4th 1245, 1250 (9th Cir. 2022).

<u>Objections to Claim One, Question No. 4</u>: Plaintiffs object to the reference to "actual losses," which are not the limit of damages available under the TVPA. *See Francisco v. Susano*, 525 F. App'x 828, 830 (10th Cir. 2013).

<u>Objections to Claim Two, Question No. 1</u>: Plaintiffs object that this question is duplicative of Question No. 2.

<u>Objections to Claim Two, Question No. 4</u>: Plaintiffs object that this question misstates the standard for disgorgement, for reasons explained in Plaintiffs' objection to GEO's Proposed Instruction No. 3.5 and 3.10.

Dated: October 23, 2026

Respectfully submitted,

*Plaintiffs' counsel has authorized GEO to file this document on behalf of both parties*

*s/Michael J. Scimone*
Michael J. Scimone
Aaron Bryce Lee
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone.: 212.245.1000
Facsimile: 646.509.2060
Email: mscimone@outtengolden.com
alee@outtengolden.com

Adam Koshkin
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: 415.638.8800
Facsimile: 415.638.8810
Email: akoshkin@outtengolden.com

David Seligman
Juno Turner
Alexander Hood
Rachel Dempsey
Brianne Power
**TOWARDS JUSTICE**
1580 N Logan Street
Ste 660 PMB 44465
Denver, CO 80203
Telephone: 720.441.2236
Email: alex@towardsjustice.org
david@towardsjustice.org

*s/ Shiloh A. Rainwater*
Carolyn J. Fairless
Frederick R. Yarger
James N. (Nick) Boeving
William D. Hauptman
Shiloh A. Rainwater
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile: 303.244.1879
Email: fairless@wtotrial.com
yarger@wtotrial.com
boeving@wtotrial.com
hauptman@wtotrial.com
rainwater@wtotrial.com

Adrienne Scheffey
Dana L. Eismeier
Michael Ley
Jennings Haug Keleher McLeod Waterfall LLP
3300 East 1st Avenue, Suite 590
Denver, CO 80206
Telephone: 720.509.0280
Email: acs@jkwlawyers.com
dle@jkwlawyers.com
myl@jkwlawyers.com

Dominic E. Draye
Nicholas LeFevre
Greenberg Traurig, LLP
2375 East Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: 602.445.8425
Facsimile: 602.445.8100
Email: Nicholas.Lefevre@gtlaw.com
drayed@gtlaw.com

andy@towardsjustice.org
juno@towardsjustice.org
rachel@towardsjustice.org
brianne@towardsjustice.org

Andrew Turner
Brandt Milstein
**MILSTEIN TURNER, PLLC**
1490 Lafayette St. #304
Denver, CO 80218
Telephone: 303.305.8230
Email: andrew@milsteinturner.com
brandt@milsteinturner.com

Hans Meyer
MEYER LAW OFFICE, P.C.
P.O. Box 40394
Denver, CO 80204
Telephone: 303.831.0817
Email: hans@themeyerlawoffice.com

*Class Counsel*

David G. Palmer
Naomi G. Beer
Greenberg Traurig, LLP
1144 15th Street, Suite 3300
Denver, CO 80202
Telephone: 303.572.6500
Facsimile: 303.572.6540
Email: beern@gtlaw.com
palmerdg@gtlaw.com

*Attorneys for Defendant The GEO Group, Inc.*

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on October 23, 2026, I electronically filed the foregoing **JOINT JURY INSTRUCTIONS AND PROPOSED VERDICT FORMS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record registered through the CM/ECF system.

*s/ Shiloh A. Rainwater*